

# Potter
# Anderson
# &Corroon LLP

1313 North Market Street
P.O. Box 951
Wilmington, DE 19899-0951
302 984 6000

www.potteranderson.com

**Richard L. Horwitz**
Partner
Attorney at Law
rhorwitz@potteranderson.com
302 984-6027 Direct Phone
302 658-1192 Fax

June 3, 2005

### VIA ELECTRONIC FILING
### AND HAND DELIVERY

The Honorable Joseph J. Farnan, Jr.
U.S. District Court
District of Delaware
J. Caleb Boggs Federal Building
844 N. King Street, Room 4124, Lockbox 27
Wilmington, DE  19801

      Re:    Bridgestone Sports Co., LTD, and Bridgestone Golf, Inc.
              v. Acushnet Company, CA No. 05-132 (JJF)

Dear Judge Farnan:

      We submit the following on behalf of defendant, counterclaimant Acushnet Company ("Acushnet") in the above-identified patent infringement suit. Acushnet designs, manufacturers and sells golf related products under the brand names Titlest®, Footjoy®, Cobra®, Pinnacle® and others. Bridgestone Sports Co. is a Japanese corporation, and Bridgestone Golf Inc. (USA) is a subsidiary of Bridgestone Sports Co. (plaintiffs and counter-defendants, collectively referred to as "Bridgestone") that also designs, manufactures and sells golf-related products. At issue in this case are the golf balls sold in the United States by both parties.

      Acushnet and Bridgestone have agreed on several of the milestones and deadlines in the Rule 16 Scheduling Order but have been unable to reach an agreement regarding the case schedule in several material respects. The parties do not agree on the amount of time required for discovery, the number or hours allowed for depositions, and the appropriate timing and constraints for a claim construction hearing. A case schedule showing the parties disagreements is attached to plaintiffs' submission to the Court.

      With regard to the first issue, Acushnet proposes that a longer discovery period (i.e., 3 more months) is needed for discovery, because this is an extraordinarily complex patent case. This case involves 15 patents (i.e., 10 Bridgestone patents and 5 Acushnet patents), and virtually none of these patents are related to each other. These 15 patents each have different patent specifications and claim different inventions. In addition, this case involves 16 different accused golf balls (i.e., 10 Bridgestone golf balls and 6

The Honorable Joseph J. Farnan, Jr.
June 3, 2005
Page 2

Acushnet golf balls). Thus, based solely on the number of patents and number of accused products, this case will involve significantly more claim construction, infringement and invalidity issues than a typical patent case.

Because Bridgestone is a Japanese corporation, Acushnet's case will also involve extensive Japanese discovery. Bridgestone's patents were originally filed in the Japanese Patent Office and have 13 Japanese inventors. Depositions of most of these inventors will be critical trial preparation. In addition, Bridgestone's 10 accused golf balls were designed and developed in Japan. Thus, Acushnet will need to discover and translate a large number of Japanese documents related to Bridgestone's 10 asserted patents and Bridgestone's 10 accused products.

Some of the prior art is also located in Japan. Acushnet, for example, has identified several different Bridgestone golf balls that may have created "on sale" bars to many of Bridgestone's patents. Acushnet has also identified anticipatory prior art developed by Sumitomo Rubber Industries -- another Japanese corporation. Moreover, Acushnet's Answer asserts Bridgestone has engaged in inequitable conduct with respect to at least four of the Bridgestone patents, which also will require discovery from Bridgestone's Japanese patent attorneys. As a result, Acushnet will need extensive Japanese discovery to prepare its defenses and infringement positions in this case.

In addition, Bridgestone has agreed to make any witnesses under its control available for deposition at a mutually convenient location in the U.S. But, Bridgestone's accommodation does not alleviate the timing issues with regard to witnesses outside of Bridgestone's control, such as inventors or employees who are no longer employed by Acushnet and witnesses related to prior art. In those cases, Acushnet will need to schedule those depositions based on the availability of the U.S. Embassy in Japan which usually needs at least six month's advance notice should we need a week of depositions in Japan, as well as many logistical issues associated therewith.

In contrast, Acushnet's documents are in English and its relevant witnesses are in the United States. Thus, Bridgestone wants to treat this case as a typical patent case because the burden of the Japanese discovery required by Acushnet weighs heavily in Bridgestone's favor. Bridgestone simply wants to convert Acushnet's disproportionate burden into a tactical advantage. Accordingly, Acushnet respectfully requests that the Court provide Acushnet with three additional months for discovery.

Also, Acushnet will need a minimum of 400 hours of fact depositions and 100 hours of 30(b)(6) witnesses based on the complexity and sheer number of patents and issues in this case which amounts to only 40 hours per Bridgestone patent -- all with Japanese inventors. Bridgestone, in contrast, proposes that there only be 20 depositions and 70 hours for 30(b)(6) witnesses. Bridgestone, however, has asserted 10 different patents with 13 different inventors that Acushnet will need to depose. As stated above, Acushnet will also need to depose several of Bridgestone's U.S. and Japanese patent

The Honorable Joseph J. Farnan, Jr.
June 3, 2005
Page 3

attorneys in connections with its inequitable conduct defenses asserted against four patents. Moreover, Acushnet will need depositions regarding the design of 10 different accused products. Because the first language for most of these witnesses is Japanese, these depositions will also take significantly longer than a standard deposition based on the need for a translator. Accordingly, Acushnet respectfully requests it will need at least 400 hours for fact depositions and 100 hours for 30(b)(6) depositions. Bridgestone attempts to limit depositions to 20 does not even cover the inventors and attorneys who prosecuted these patents, along with Bridgestone's product designers and others. A strict number of depositions, (i.e., 20) also fails to take into consideration that some necessary depositions may only take a few hours, and this Court and others in the District of Delaware have been more flexible in limiting depositions to a set number of hours.

With regard to the final issue, Acushnet proposes to schedule the claim construction hearing for February 1, 2007 -- after the necessary fact discovery. Bridgestone, in contrast, proposes to schedule this hearing very early in the discovery process -- February 17, 2006 -- well before the close of fact discovery, even under Bridgestone's accelerated schedule proposal. Based on the amount of Japanese document and deposition discovery identified above, Bridgestone's proposal simply does not provide enough time for proper development and analysis of the patents in suit and analysis of the golf balls accused of infringement. Acushnet, instead, proposes to schedule a hearing later in the pretrial schedule to ensure the issues are crystallized and the Markman will be meaningful for the Court and the parties. Bridgestone also proposes also to have only 30 "disputed" terms for a Markman hearing. There are 10 patents, numerous claims with multiple subparts, and 10 accused golf balls. There should be no limitations at this time on the number of disputed terms, and of course, the parties will attempt to minimize the number of terms brought to the Court for construction. Thus, Acushnet respectfully requests that the Court schedule the claim construction hearing around the time set for the filing of dispositive motions and the end of expert discovery -- February 1, 2007.

We look forward to discussing these issues with the Court on June 8.

Respectfully,

Richard L. Horwitz

RLH/kgm/PAC/684649v1
cc: Robert M. Masters, Esquire
    Jack B. Blumenfeld, Esquire