# Exhibit A

**APPENDIX F: CLAIM CHART FOR THE '834 PATENT**
Page F-1

### APPENDIX F: CLAIM CHART FOR THE '834 PATENT (Pinnacle Exception)

| The '834 Patent | Pinnacle Exception |
|---|---|
| **CLAIM 1** | |
| 1. A two-piece solid golf ball comprising a solid core and a cover enclosing the core and having a number of dimples in its surface, wherein | The Pinnacle Exception is a two-piece solid golf ball having a solid core and a cover enclosing the core and having a number of dimples in its surface. |
| said solid core has such a distribution of hardness as measured by a JIS-C scale hardness meter that a surface hardness is up to 85 degrees, a center hardness is lower than the surface hardness by not less than 8 to less than 20 degrees, and a hardness within 5 mm inside the core surface is up to 8 degrees lower than the surface hardness, | The solid core of the Pinnacle Exception has such a distribution of hardness as measured by a JIS-C scale hardness meter that a surface hardness is within the scope of the claim range, a center hardness is lower than the surface hardness by an amount that is within the scope of the claim range, and a hardness within 5 mm inside the core surface is within the scope of the claim range. |
| said cover has a hardness which is higher than the surface hardness of the core by 1 to 15 degrees and a gage of 1.5 to 1.95 mm, and | The Pinnacle Exception's cover has a hardness which is higher than the surface hardness of the core by an amount that is within the scope of the claim range, and a gage that is also within the scope of the claim range. |
| the number of dimples is 360 to 450. | The Pinnacle Exception has 392 dimples. |
| **CLAIM 2** | |
| 2. The two-piece solid golf ball of claim 1 wherein said solid core experiences a distortion of 2.8 to 4.0 mm under a load of 100 kg. | The Pinnacle Exception's solid core experiences a distortion under a load of 100 kg that is within the scope of the claim range. |
| **CLAIM 4** | |
| 4. The two-piece golf ball of claim 1 wherein said cover has a hardness of 75 to 90 degrees as measured by a JIS-C scale hardness meter. | The Pinnacle Exception's cover has a hardness as measured by a JIS-C scale hardness meter that is within the scope of the claim range. |

**APPENDIX F: CLAIM CHART FOR THE '834 PATENT**
Page F-2

### APPENDIX F: CLAIM CHART FOR THE '834 PATENT (DT Solo)

| The '834 Patent | DT Solo |
|---|---|
| **CLAIM 1** | |
| 1. A two-piece solid golf ball comprising a solid core and a cover enclosing the core and having a number of dimples in its surface, wherein | The DT Solo is a two-piece solid golf ball having a solid core and a cover enclosing the core and having a number of dimples in its surface. |
| said solid core has such a distribution of hardness as measured by a JIS-C scale hardness meter that a surface hardness is up to 85 degrees, a center hardness is lower than the surface hardness by not less than 8 to less than 20 degrees, and a hardness within 5 mm inside the core surface is up to 8 degrees lower than the surface hardness, | The solid core of the DT Solo has such a distribution of hardness as measured by a JIS-C scale hardness meter that a surface hardness is within the scope of the claim range, a center hardness is lower than the surface hardness by an amount that is within the scope of the claim range, and a hardness within 5 mm inside the core surface is within the scope of the claim range. |
| said cover has a hardness which is higher than the surface hardness of the core by 1 to 15 degrees and a gage of 1.5 to 1.95 mm, and | The DT Solo's cover has a hardness which is higher than the surface hardness of the core by an amount that is within the scope of the claim range, and a gage that is also within the scope of the claim range. |
| the number of dimples is 360 to 450. | The DT Solo has 392 dimples. |
| **CLAIM 2** | |
| 2. The two-piece solid golf ball of claim 1 wherein said solid core experiences a distortion of 2.8 to 4.0 mm under a load of 100 kg. | The DT Solo's solid core experiences a distortion under a load of 100 kg that is within the scope of the claim range. |
| **CLAIM 4** | |
| 4. The two-piece golf ball of claim 1 wherein said cover has a hardness of 75 to 90 degrees as measured by a JIS-C scale hardness meter. | The DT Solo's cover has a hardness as measured by a JIS-C scale hardness meter that is within the scope of the claim range. |

**APPENDIX F: CLAIM CHART FOR THE '834 PATENT**
Page F-3

## APPENDIX F: CLAIM CHART FOR THE '834 PATENT (NXT)

| The '834 Patent | NXT |
|---|---|
| **CLAIM 1** | |
| 1. A two-piece solid golf ball comprising a solid core and a cover enclosing the core and having a number of dimples in its surface, wherein | The NXT is a two-piece solid golf ball having a solid core and a cover enclosing the core and having a number of dimples in its surface. |
| said solid core has such a distribution of hardness as measured by a JIS-C scale hardness meter that a surface hardness is up to 85 degrees, a center hardness is lower than the surface hardness by not less than 8 to less than 20 degrees, and a hardness within 5 mm inside the core surface is up to 8 degrees lower than the surface hardness, | The solid core of the NXT has such a distribution of hardness as measured by a JIS-C scale hardness meter that a surface hardness is within the scope of the claim range, a center hardness is lower than the surface hardness by an amount that is within the scope of the claim range, and a hardness within 5 mm inside the core surface is within the scope of the claim range. |
| said cover has a hardness which is higher than the surface hardness of the core by 1 to 15 degrees and a gage of 1.5 to 1.95 mm, and | The NXT's cover has a hardness which is higher than the surface hardness of the core by an amount that is within the scope of the claim range, and a gage that is also within the scope of the claim range. |
| the number of dimples is 360 to 450. | The NXT has 392 dimples. |
| **CLAIM 2** | |
| 2. The two-piece solid golf ball of claim 1 wherein said solid core experiences a distortion of 2.8 to 4.0 mm under a load of 100 kg. | The NXT's solid core experiences a distortion under a load of 100 kg that is within the scope of the claim range. |
| **CLAIM 4** | |
| 4. The two-piece golf ball of claim 1 wherein said cover has a hardness of 75 to 90 degrees as measured by a JIS-C scale hardness meter. | The NXT's cover has a hardness as measured by a JIS-C scale hardness meter that is within the scope of the claim range. |

# Exhibit B

## INTERROGATORY NO. 4

Identify on a claim-by-claim basis all facts that support your contention that Acushnet has willfully infringed the Bridgestone Patents, including without limitation when and how you contend Acushnet first became aware of the patent that includes the claim.

## RESPONSE TO INTERROGATORY NO. 4

In addition to the General Objections, Bridgestone objects to the interrogatory as being premature at this early stage of discovery, particularly since Bridgestone does not have the benefit of Acushnet's discovery and the Court has not construed the claims of the Bridgestone Patents. In addition, Bridgestone objects to this interrogatory as premature to the extent it seeks Bridgestone's contentions regarding claim construction. Subject to and without waiving the general and specific objections, Bridgestone responds as follows.

Upon information and belief, Acushnet monitors competitors' patents and would have become aware of the Bridgestone's patents as they issued. Further, Bridgestone notified Acushnet prior to the filing of this lawsuit of Acushnet's infringement of the Bridgestone Patents. Despite being aware of the Bridgestone Patents and being given notice of its infringement of these patents, Acushnet intentionally manufactured, offered to sell and sold products that Acushnet knew or should have known were covered by these Patents. In addition, Acushnet's past and continued infringement of at least the ten Bridgestone Patents (*see* Bridgestone's Response to Interrogatory No. 1) demonstrates a pattern of intentional and willful disregard of Bridgestone's patent rights.

Bridgestone reserves the right to later amend or supplement its contentions after further investigation, discovery and after the Court construes the claims.

# Exhibit C

### INTERROGATORY NO. 9

Identify and describe in detail all Bridgestone and/or all third-party products that have ever been sold commercially or used in the public that embody any of the claims of the Bridgestone Patents, and for each such product, identify the time period(s) and geographical location in which that product was made, used and/or sold.

### RESPONSE TO INTERROGATORY NO. 9

In addition to the General Objections, Bridgestone objects to the interrogatory as being a multiple and compound request constituting more than one interrogatory. Bridgestone also objects to the interrogatory as being overly broad and unduly burdensome and oppressive because it is not limited in geographical location or time period relevant to the issues of this case. Further, Bridgestone objects to the interrogatory as seeking information in the possession of third parties. Bridgestone further objects to the interrogatory to the extent that it purports to require Bridgestone to disclose information in violation of legal or contractual obligation of nondisclosure to a third party.

Subject to and without waiving the general and specific objections, Bridgestone will produce, pursuant to Fed. R. Civ. P. 33(d), documents responsive to the interrogatory sufficient to permit Acushnet to determine an answer as readily as Bridgestone, except that Bridgestone will not disclose information subject to a legal or contractual obligation of nondisclosure to a third party without either the written consent of the third party or a court order compelling such production.

### INTERROGATORY NO. 10.

Separately for each of the Bridgestone Patents, state whether you contend there is objective evidence of nonobviousness, and if so, identify on a claim-by-claim basis all facts that you contend support or evidence such alleged objective evidence of nonobviousness or secondary considerations (including but not limited to commercial success, long-felt need, failure of others, commercial acquiescence, unexpected results, improved results, and/or new results) that should be considered in determining whether the claim is invalid for obviousness.

14

# Exhibit D

one or more of the Bridgestone Patents as a condition for settlement of the lawsuit *Bridgestone Sports Co. Ltd. v. Callaway Golf Company, et. al.* Case No. 1:00-cv-01871-JEC.

## INTERROGATORY NO. 12

Separately for each of the Bridgestone Patents, state whether Bridgestone contends it has complied with the marking provision of 35 U.S.C. § 287, and if so, identify the article so marked and describe all facts supporting such contention, including dates of first alleged compliance and whether such compliance has been continuous to the filing of the Complaint.

## RESPONSE TO INTERROGATORY NO. 12

In addition to the General Objections, Bridgestone objects to the interrogatory as being a multiple and compound request constituting more than one interrogatory. Further, Bridgestone objects to the interrogatory as being overly broad and unduly burdensome. Subject to and without waiving the general and specific objections, see Bridgestone's response to Interrogatory No. 5.

Bridgestone reserves the right to later amend or supplement its disclosures after further investigation, discovery and based on positions taken by, or contentions of, Acushnet.

## INTERROGATORY NO. 13

Separately for each of the Bridgestone Patents, describe in detail any investigation relating to the allegations against Acushnet undertaken by you or on your behalf prior to filing the Complaint.

## RESPONSE TO INTERROGATORY NO. 13

In addition to the General Objections, Bridgestone objects to the interrogatory as being a multiple and compound request constituting more than one interrogatory. Bridgestone also objects to the interrogatory as being overly broad and unduly burdensome. Bridgestone further objects to the interrogatory as calling for privileged information.

## INTERROGATORY NO. 14.

Separately for each claim and each product identified in RESPONSE TO INTERROGATORY NO. 1, describe all testing, analysis and/or evaluation by you or on your behalf of such products, including the type of test(s) performed, the testing equipment, test

16

# Exhibit E

Case 1:05-cv-00132-JJF    Document 34-2    Filed 10/03/2005    Page 11 of 12

general and specific objections, Bridgestone responds that upon information and belief Acushnet knew of the Bridgestone products for years before notifying Bridgestone of the alleged infringement of the Acushnet Patents.

Bridgestone reserves the right to later amend or supplement its contentions after further investigation and discovery.

**INTERROGATORY NO. 23**

Identify in detail for each of the Acushnet Patents the factual bases for Bridgestone's Seventh Affirmative Defense in the *Reply and Counterclaim of Bridgestone to Acushnet's Answer and Counterclaim,* namely, that Acushnet's Counterclaims are "barred or limited by the failure of Acushnet to mark its products or to otherwise give notice to Bridgestone pursuant to 35 U.S.C. § 287," including all witnesses with knowledge of such facts and all documents that support such facts.

**RESPONSE TO INTERROGATORY NO. 23**

In addition to the General Objections, Bridgestone objects to the Interrogatory on the ground that it is premature at this early stage of discovery and because Acushnet has not produced discovery concerning 35 U.S.C. §287. Bridgestone further objects on the grounds that Acushnet bears the burden to prove the damages it claims are not limited by 35 U.S.C. §287. Subject to and without waiving the general and specific objections, Bridgestone responds that Acushnet has failed to give actual notice or has failed to otherwise mark its products with one or more Acushnet Patents pursuant to 35 U.S.C. § 287 and, therefore, Acushnet's claims for damages are limited.

Bridgestone reserves the right to later amend or supplement its contentions after further investigation and discovery.

**INTERROGATORY NO. 24**

Identify in detail for each of the Acushnet Patents the factual bases for Bridgestone's Eighth Affirmative Defense in the *Reply and Counterclaim of Bridgestone to Acushnet's Answer and Counterclaim,* namely, that "Acushnet's Counterclaims are barred in whole or in part

23