# Morris, Nichols, Arsht & Tunnell

1201 North Market Street
P.O. Box 1347
Wilmington, Delaware 19899-1347

302 658 9200
302 658 3989 Fax

Jack B. Blumenfeld
302 575 7291
302 425 3012 Fax
jblumenfeld@mnat.com

October 3, 2005

<u>By Electronic Filing</u>

The Honorable Joseph J. Farnan, Jr.
United States District Court
844 King Street
Wilmington, DE  19801

       RE:    Bridgestone Sports Co., Ltd., *et al.* v. Acushnet Company
              C.A. No. 05-132 (JJF)

Dear Judge Farnan:

       We are writing on behalf of Plaintiffs Bridgestone Sports Co., Ltd. and Bridgestone Golf, Inc. (collectively "Bridgestone") in advance of the hearing scheduled for October 5, 2005 at 1:00 p.m. to identify and explain briefly disputed discovery issues which the parties have been unable to resolve. The Court has also deferred ruling on extending the limitations on depositions, and we address this issue as well.

       Bridgestone commenced this action against defendant Acushnet Company ("Acushnet"), on March 7, 2005. The Court held an initial Conference on June 8, 2005 to set a schedule, which was entered on June 29, 2005 (D.I. 18). The Court set an initial period for the parties to conduct document discovery and to exchange contention interrogatories. A September 9 hearing was postponed until October 5 at the request of the parties to permit additional time to resolve discovery disputes. The Court had ruled that no depositions take place prior to this conference.

       The parties have met and conferred on several occasions to resolve essentially discovery issues. However, the parties have not reached agreement on the following issues.

      1.    **Identification of Acushnet Golf Balls Sold and Offered For Sale**

       Bridgestone requested basic information (such as model, type, version or similar designation) for all golf balls sold or offered for sale by Acushnet since 1998, as well as the date these golf balls were first made, used, sold and/or offered for sale in, exported out of, or

imported into, this country. See Bridgestone's Interrogatory Nos. 1 and 2. This information is relevant to Bridgestone's identification of all models of the accused products and other models that also may infringe Bridgestone's patents-in-suit.

Acushnet has objected on relevance grounds and has limited its response to golf balls that Bridgestone has expressly accused of infringement, as set forth in Bridgestone's Complaint.

Bridgestone believes Acushnet's objection is unfounded. Bridgestone seeks this basic information to determine whether it has accurately identified all of the models, types, versions or similar designations of Acushnet's golf balls that infringe the asserted patents. Without this information, Bridgestone has no way to know whether it has considered all potentially relevant golf balls. For example, Bridgestone is entitled to know if there are golf balls that have been discontinued but may infringe the patents-in-suit, or golf balls that are sold under a different name than the accused golf balls but are otherwise the same or substantially similar. Also, to the extent any non-accused golf balls are covered by Acushnet's patents, Bridgestone is entitled to responsive information and documents to the extent Acushnet seeks damages prior to actual notice of infringement.

2.   **Acushnet's Financial Projections And Estimates**

Bridgestone requested Acushnet's projected or estimated sales, pricing, profit margin and market share information for each of the accused Acushnet golf balls since 1998. See Bridgestone Request for Production Nos. 89 and 90. This information is highly relevant and fundamental to the calculation of a reasonable royalty. Acushnet objects on the basis of lack of relevance, and "declines to provide any 'projected' or 'estimated' information, as well as any detailed information – assuming it exists in the manner as sought by this request."

Acushnet's objection is unfounded. Projected or estimated sales, pricing, profit margin and market share information for the accused golf balls is directly relevant to the issue of determining a reasonable royalty. *See, e.g., Interactive Pictures Corp. v. Infinite Pictures, Inc., et al.*, 274 F.3d 1371, 1384-1385 (Fed Cir. 2001) (relying on "… the rule that recognizes sales expectations at the time when infringement begins as a basis for a royalty base …"). In fact, Acushnet propounded substantially the same document requests to Bridgestone, and Bridgestone has produced responsive documents. See Acushnet's Request for Production Nos. 31-33 and 71.

3.   **Acushnet Samples Of Components and Materials**

Bridgestone requested sample component materials acquired directly from Acushnet's manufacturing and testing processes (e.g., the core material composition, the intermediate layer material and the cover material) for each of the accused Acushnet golf balls. See Bridgestone's Request for Production No. 119. The accused balls are made of multiple layers including one or two-piece cores, a mantle or casing layer, and an outer cover layer.

Acushnet objects on the basis of lack of relevance, and contends that the component materials are not needed if the golf balls are produced. Acushnet also contends that the component materials are hazardous.

Bridgestone believes Acushnet's objections are unfounded. The sample materials are needed to test the properties of the components of the accused balls, such as hardness, thickness, etc., properties recited in the claims of the patents-in-suit and therefore central to proving infringement. It is difficult to separate the components from the finished golf balls particularly without affecting certain properties of the components. Moreover, because of the size and curvature of the layers of the golf balls, test plaques might need to be made from the component materials obtained from Acushnet to measure accurately or validate certain physical properties (such as hardness) of the different layers. Finally, Bridgestone believes that the component materials requested are not hazardous nor burdensome for Acushnet to produce and that these are simply excuses for not producing the component materials.

4. **Acushnet Samples Of Golf Balls Rejected From Its Manufacturing Process**

Bridgestone requested sample components of each accused Acushnet golf ball randomly selected from those that Acushnet <u>rejected</u> from the specified manufacturing stage. See Bridgestone's Request for Production No. 117. Acushnet objects on the basis of lack of relevance, and refuses to produce any sample components for rejected golf balls.

Bridgestone believes Acushnet's objection is unfounded. For example, rejected components are relevant to establish tolerances in the manufacturing process. To the extent these tolerances relate to the claimed properties of the golf balls, such components are directly relevant to proof of infringement. Bridgestone needs the rejected sample components to test the components itself. Moreover, Acushnet has requested documents and things relating to the basis for rejecting golf balls (but not rejected sample components), and Bridgestone has produced responsive, non-privileged documents. See Acushnet's Request for Production Nos. 73 and 74.

5. **Deposition Limits**

During the June 8 conference, the Court deferred ruling on whether to extend the limitations on depositions beyond what is provided for by Rule 33 of the Federal Rules of Civil Procedure (ten depositions of seven hours each). Acushnet seeks to expand that limit to over 70 depositions,[1] and that is apparently only for liability issues.

This case does not require over 70 depositions per side. Rather, Bridgestone proposes increasing the limit to 20 depositions of individual witnesses, and 70 hours of Rule

---

[1] Acushnet proposes 500 hours of deposition time. Assuming each deposition is seven hours, Acushnet is requesting over 71 full days of depositions. Depositions conducted in a foreign language and translated can extend up to 14 hours.

The Honorable Joseph J. Farnan, Jr.
October 3, 2005
Page 4

30(b)(6) depositions. This effectively increases the deposition limit to 30, and provides more than enough time for discovery on all issues.

Further, although there are 14 different inventors named on the ten Bridgestone patents, many are inventors on more than one patent. Several of the patents have at least three named inventors and it is not necessary to depose all of the inventors on each patent. Similarly, three of the five Acushnet patents are closely related, sharing the same specification and having the same inventors.

Thus, although Bridgestone recognizes that ten depositions is not enough, 70 depositions is excessive and likely to lead only to abuse and prolonging of the discovery process.

Bridgestone is prepared to elaborate on the above issues and address any other issues that may arise at the hearing on October 5.

Respectfully,

/s/ *Jack B. Blumenfeld (#1014)*

Jack B. Blumenfeld

JBB/bls

cc:   Peter T. Dalleo, Clerk (By Hand)
      Richard L. Horwitz, Esquire (By Hand)
      Alan M. Grimaldi, Esquire (By Fax)
      Robert M. Masters, Esquire (By Fax)

495693