# EXHIBIT 1

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

*(280)*

ST. CLAIR INTELLECTUAL PROPERTY      :
CONSULTANTS, INC.,                   :
                                     :
          Plaintiff,                 :
                                     :
     v.                              :   Civil Action No. 01-557-JJF
                                     :
SONY CORPORATION, SONY               :
ELECTRONICS, INC., and SONY          :
CORPORATION OF AMERICA,              :
                                     :
          Defendants.                :

## MEMORANDUM ORDER

The parties have, by letters recently submitted to the Court (D.I. 245, D.I. 259), set forth their positions on the procedural aspects of how the separated trials should be conducted.

The Court has ordered that separation of the issues for trial is warranted in this case due to: 1) the number of patents and patent claims at issue in this case; 2) the large number of invalidity theories asserted by the Defendants; 3) the highly technical nature of the invention; 4) the intense factual questions involved in the invalidity defenses; 5) the complexity of the damages issue; 6) the amount of time citizens should reasonably be expected to be ordered to commit to jury service; and 7) the Court's concern regarding the ability of a jury to sit through, absorb and deliberate the complex, factual, technical and legal aspects of a patent trial.  The parties have not objected to the separation of issues for trial, but have offered

their position/objection to certain aspects of a separated trial. The Court has considered the parties' positions, the Court's experience in conducting patent jury trials, the discretion permitted a trial court concerning the presentation of evidence, and the reasons cited above for ordering a separation of issues for trial in this case and has concluded that:

1) Two separate juries are warranted in the circumstances of this case. The first jury will decide the infringement and damages issue. The second jury will decide the invalidity issues. In this case, the Court finds that the use of two distinct jury panels will address, in a number of obvious ways, items 3, 4, 5, 6, and 7 above. Also, in the Court's view, the use of two juries will reduce the likelihood of the jury being confused by the overlapping legal principles of patent law.

2) The second jury may be told and will not be unduly prejudiced by being told the first jury's decision concerning the infringement issues. In the Court's view, the infringement dispute and decision will put the invalidity dispute in an understandable and real context for the second jury. The Court will not permit a rehash of the infringement issues, only an appropriate reference. Lastly, the Court finds no probative or useful purpose to the reference in the second trial of any sum of damages that may

be awarded by the first jury.

3) The Court has previously addressed the propriety of procedurally separating issues for trial, and again, notes that the procedure is not unique to this district and has been recommended in numerous articles as a preferred method of making patent jury trials manageable and fair to juries and parties.

2|10|03
DATE

UNITED STATES DISTRICT JUDGE

# EXHIBIT 2

1

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

FENSTER FAMILY PATENT      )
HOLDINGS, INC., et al.,    )
                           )
        Plaintiffs,        )
                           )
v.                         )  No. 04-0038-JJF
                           )
                           )
SIEMENS MEDICAL SOLUTIONS  )
USA, INC., et al.,         )
                           )
        Defendants.        )

COPY


                    Monday, November 22, 2004
                    3:04 p.m.
                    Courtroom 4B

                    844 King Street
                    Wilmington, Delaware


BEFORE:  THE HONORABLE JOSEPH J. FARNAN, JR.
         United States District Court Judge


APPEARANCES:


            YOUNG, CONAWAY, STARGATT & TAYLOR, LLP
            BY:  ADAM W. POFF, ESQ.

                -and-

            GREENBLUM & BERNSTEIN, P.L.C.
            BY:  NEIL F. GREENBLUM, ESQ.
            BY:  VAN C. ERNEST, ESQ.


                        Counsel for the Plaintiffs

4

1    this case, at present, involves the assertion of

2    eight patents against 16 products.  The

3    plaintiffs have indicated that they're going to

4    hopefully narrow that number as the matter moves

5    closer to trial.

6           In considering the inconvenience, I

7    find that there is -- that no inconvenience will

8    result to either -- any of the parties in this

9    case.

10           As to delay, I find that the delay

11    will result with regard to the trial and

12    discovery on damages, because it will be held

13    after the liability phase of the case.  However,

14    I'm persuaded that any delay that will occur on

15    the damages, discovery, and trial will be

16    inconsequential given that there will more than

17    likely be post-trial motions filed in this case.

18           And my present intention would be to

19    start discovery during the post-trial motion

20    phase, and to utilize two separate juries, one

21    for the liability phase, and then one for the

22    damages phase.

23           And on the matter of prejudice, in

24    reading the papers, the only asserted prejudice

# EXHIBIT 3

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

FENSTER FAMILY PATENT HOLDINGS,    :
INC.; ELSCINT LTD.; ELSCINT, INC., :
                                   :
        Plaintiffs,                :
                                   :
        v.                         :   Civil Action No. 04-038 JJF
                                   :
SIEMENS MEDICAL SOLUTIONS USA,     :
INC.; SIEMENS MEDICAL SYSTEMS,     :
INC.; SIEMENS CORPORATION; and     :
SIEMENS AG,                        :
                                   :
        Defendants.                :

**O R D E R**

WHEREAS, Defendants Siemens Medical Solutions USA, Inc, Siemens Medical Systems, Inc., Siemens Corporation, and Siemens AG (collectively, "Siemens") filed a Motion For Bifurcation Of Discovery And Trial On Issues Relating To Damages (D.I. 38);

NOW THEREFORE, IT IS HEREBY ORDERED that, for the reasons discussed on the record at the hearing held on November 22, 2004:

1) The Motion For Bifurcation Of Discovery And Trial On Issues Relating To Damages (D.I. 38) filed by Siemens is **GRANTED** with respect to damages;

2) The Motion For Bifurcation Of Discovery And Trial On Issues Relating To Damages (D.I. 38) filed by Siemens is **DENIED** with respect to the issue of willfulness.

December 9 , 2004
DATE

UNITED STATES DISTRICT JUDGE

# EXHIBIT 4

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| BRIDGESTONE SPORTS CO., LTD., | ) | |
| And BRIDGESTONE GOLF, INC., | ) | |
| | ) | C. A. No. 05-132 (JJF) |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | **DEMAND FOR JURY TRIAL** |
| | ) | |
| ACUSHNET COMPANY, | ) | |
| | ) | |
| Defendant. | ) | |

## ACUSHNET'S ANSWER AND COUNTERCLAIM

Defendant Acushnet Company ("Acushnet") hereby answers plaintiffs

Bridgestone Sports Co., Ltd. and Bridgestone Golf, Inc. (collectively "Bridgestone")

Complaint For Patent Infringement And Declaratory Judgment ("Complaint") as follows:

### PARTIES

1.    Acushnet admits the allegations of paragraph 1.

2.    Acushnet lacks knowledge or information sufficient to form a belief as to

the truth of the allegations of paragraph 2 of the Complaint and therefore denies the same.

3.    Acushnet admits the allegations of paragraph 3.

### JURISDICTION AND VENUE

4.    Acushnet admits that this action arises under the patent laws of the United

States. Acushnet admits that this court has jurisdiction over the subject matter of

Bridgestone's infringement counts pursuant to 28 U.S.C. §§ 1331 and 1338(a) and

Bridgestone's declaratory judgment counts (i.e., counts XI, XII, XIII, and XIV) pursuant

to 28 U.S.C. §§ 2201 and 2202.

5.    Acushnet admits that it resides in this district and is selling and offering to

sell its products, including certain golf balls that Bridgestone accuses of infringement of

## FIRST DEFENSE

### (Non-infringement)

130.    Acushnet does not infringe, has not infringed, and does not and has not induced infringement or contributed to infringement of any of the Bridgestone patents-in-suit.

## SECOND DEFENSE

### (Prosecution History Estoppel)

131.    Bridgestone is estopped from maintaining that any claim of the Bridgestone patents-in-suit covers any of the golf balls made, used, sold or offered for sale by Acushnet.

## THIRD DEFENSE

### (Invalidity under 35 U.S.C. §§ 101, 102, 103 and 112)

132.    Each claim of the Bridgestone patents-in-suit is invalid for failure to comply with one or more provisions of 35 U.S.C. §§ 101, 102, 103 and 112.

## FOURTH DEFENSE

### (Inequitable Conduct)

**The '125 Patent is Unenforceable.**

133.    The '125 patent is unenforceable because the inventors and prosecuting attorneys failed to disclose material prior art discovered during the prosecution of the Japanese equivalent to the '125 patent, JP9-228902. This Japanese application was filed on August 11, 1997. During the prosecution of this application, the Japanese Patent Office received a third party submission identifying at least one material piece of prior art, JP 09-56848. Based on this prior art, the Japanese Patent Office issued a Rejection Notice on December 26, 2000 and a Final Rejection on April 17, 2001. Although Bridgestone appealed the Final Rejection, this application was ultimately abandoned on March 10, 2003.

134.    One year after Bridgestone filed this Japanese application, Bridgestone also filed an equivalent U.S. patent application, which ultimately issued as the '125 patent. The claims in the U.S. Patent Application were substantially identical to the claims pending in the Japanese application. Yet during prosecution of this U.S. patent application, neither the inventors nor prosecuting attorneys ever disclosed the JP 09-056848 reference identified as material to these claims by the Japanese Patent Office. The inventors and prosecuting attorneys never disclosed this prior art to the U.S. Patent Office even though this prior art reference ultimately required Bridgestone to abandon its corresponding Japanese patent application. This reference teaches certain aspects of the claims of the '125 patent that formed the basis for allowance and would have rendered the claimed invention obvious at least in view of various admissions that Bridgestone made throughout prosecution of the '125 patent. On information and belief, the inventors and prosecuting attorneys knew or should have know of the prior art identified during the prosecution of the corresponding Japanese patent application. Thus, the inventors and prosecuting attorneys did not act in accordance with the duty of good faith and candor imposed on them by the U.S. Patent Office Rules, but instead withheld this prior art to mislead the examiner regarding the patentability of the subject matter claimed in their applications.

135.    The '125 patent is also unenforceable because the inventors and prosecuting attorneys failed to disclose the Altus Newing Massy and Precept Dynawing Double Cover S+ golf balls. These golf balls were material to the prosecution of the '125 patent because they anticipate at least claim 1 of the '125 patent and contradict arguments made to the examiner. The Altus Newing Massy and Precept Dynawing Double Cover S+ golf balls were designed and manufactured by Bridgestone. On information and belief, the inventors and prosecuting attorneys knew or should have known of these balls and failed to disclose them to the United States Patent and Trademark Office (U.S. Patent Office). Thus, the inventors and prosecuting attorneys did not act in accordance with the

14

duty of good faith and candor imposed on them by the U.S. Patent Office Rules, but instead withheld this prior art to mislead the examiner regarding the patentability of the subject matter claimed in their applications.

**The '924 Patent Is Unenforceable**.

136.    The '924 patent is unenforceable because the inventors and Bridgestone's attorneys failed to disclose the Precept EV Extra Spin golf ball during prosecution. The Precept EV Extra Spin golf ball is material to the prosecution of the '924 patent because it anticipates at least claim 1 of the '924 patent. The Precept EV Extra Spin ball was designed and manufactured by Bridgestone. On information and belief, the inventors and prosecuting attorneys knew or should have known of this ball and failed to disclose it to the U.S. Patent Office. Thus, the inventors and prosecuting attorneys did not act in accordance with the duty of good faith and candor imposed on them by the U.S. Patent Office Rules, but instead withheld this prior art to mislead the examiner regarding the patentability of the subject matter claimed in their applications.

**The '817 Patent Is Unenforceable**.

137.    The '817 patent is unenforceable because the inventors and prosecuting attorneys failed to disclose the Precept EV Extra Spin golf ball during prosecution. The Precept EV Extra Spin golf ball was material to this prosecution because it discloses many of the claim elements. The Precept EV Extra Spin ball was designed and manufactured by Bridgestone. On information and belief, the inventors and prosecuting attorneys knew or should have known of this ball and failed to disclose it to the U.S. Patent Office. Thus, the inventors and prosecuting attorneys did not act in accordance with the duty of good faith and candor imposed on them by the U.S. Patent Office Rules, but instead withheld this prior art to mislead the examiner regarding the patentability of the subject matter claimed in their applications.

15

**The '707 Patent Is Unenforceable**.

138.    The '707 patent is unenforceable based on the failure to disclose European Patent Application Publication 0 633 043 ("the EP 043 publication") or its U.S. equivalent, the '852 patent. The EP 043 application and the '852 patent are material because they anticipate or renders obvious at least claim 1. The EP 043 publication and the '852 patent are assigned to Bridgestone. In fact, two of the inventors of the '707 patent, Mr. Yamasishi and Mr. Higuchi, are also inventors on the EP 043 publication and the '852 patent. In addition, the same attorney that prosecuted the '707 patent, Mr. Siegel, also prosecuted the '852 patent. Thus, the inventors and prosecuting attorneys knew of the EP 043 publication and the '852 patent and failed to disclose it to the U.S. Patent Office. Accordingly, the inventors and prosecuting attorneys did not act in accordance with the duty of good faith and candor imposed on them by the U.S. Patent Office Rules, but instead withheld this prior art to mislead the examiner regarding the patentability of the subject matter claimed in their applications.

## FIFTH DEFENSE

### (Unclean Hands)

139.    Bridgestone is not entitled to any relief in this action because it has knowingly asserted at least one invalid patent.

## SIXTH DEFENSE

### (Waiver/Estoppel/Laches)

140.    Plaintiff's claims are barred by the equitable doctrines of waiver, estoppel and laches.

## SEVENTH DEFENSE

### (Failure to State a Claim)

141.    Plaintiff's complaint fails to state a claim on which relief can be granted.

16

# EXHIBIT 5

## IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| BRIDGESTONE SPORTS CO., LTD.,<br>and BRIDGESTONE GOLF, INC., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| ACUSHNET COMPANY, | ) | C. A. No. 05-132 (JJF) |
| | ) | |
| Defendant. | ) | |
| | ) | **DEMAND FOR JURY TRIAL** |
| ACUSHNET COMPANY, | ) | |
| | ) | |
| Counterclaim Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| BRIDGESTONE SPORTS CO., LTD.,<br>and BRIDGESTONE GOLF, INC., | ) | |
| | ) | |
| Counterclaim Defendant. | ) | |

## ACUSHNET'S OBJECTIONS AND RESPONSES TO
## BRIDGESTONE'S FIRST SET OF INTERROGATORIES
## DIRECTED TO ACUSHNET (NOS. 1-24)

Pursuant to Rule 33 of the Federal Rules of Civil Procedure, defendant and counterclaim plaintiff Acushnet Company ("Acushnet") hereby responds to *the First Set of Interrogatories Directed to Acushnet (Nos. 1-24)* ("First Set of Interrogatories") of defendants Bridgestone Sports Co., Ltd. and Bridgestone Golf, Inc. (collectively, "Bridgestone").

## GENERAL STATEMENT

In responding to Bridgestone's First Set of Interrogatories, Acushnet does not waive any objection that may be applicable to: (a) the use, for any purpose, of any information or documents given in response to Bridgestone's First Set of Interrogatories; or (b) the admissibility, relevancy, or materiality of any information or documents to any issue in this case.

knowledgeable about manufacturing, and three individuals most knowledgeable about selling of Acushnet products.

Without waiving, and subject to, these objections, Acushnet identifies Jeff Dalton of the Acushnet Company, located at 333 Bridge Street, Fairhaven, Massachusetts 02719-0965 as a person having knowledge of each of the Titleist® Pro V1™, Titleist® Pro V1x™, Titleist® NXT™, Titleist® NXT Tour™, Titleist® DT SoLo™, and Pinnacle® Exception™ golf balls and the conception, design, development, testing, manufacturing, and selling thereof.

**Interrogatory No. 4:**

State each fact on which Acushnet bases its Third Defense (Invalidity under 35 U.S.C. § 101, 102, 103 and 112) set forth in the Answer, and with respect to each such fact, identify each person with knowledge of that fact and each document concerning that fact.

**Response to Interrogatory No. 4:**

Acushnet incorporates all of its General Objections and Objections to Definitions as though fully set forth herein and further specifically objects to this interrogatory as overly broad to the extent it seeks information protected by attorney-client privilege and/or work-product immunity. Acushnet further objects to this interrogatory as premature, as discovery in this case is ongoing. Bridgestone, with the service of this First Set of Interrogatories (Nos. 1-24) has just identified which claims it alleges are infringed by Accused Acushnet Products. Acushnet is continuing its investigation of the Bridgestone patents-in-suit. Accordingly, Acushnet reserves the right to supplement, amend or change any part of the entirety of its response to this interrogatory. Without waiving, and subject to, these objections, Acushnet responds as follows:

- **The '652 patent:** At least one claim of the '625 patent is obvious over United States Patent No. 4,556,220 to Tominaga et al., titled "Solid Golf Balls" (issued Dec. 3, 1985) or United States Patent No. 4,683,257 to Kakiuchi et al., titled "Rubber Compositions for Solid Golf Balls" (issued Jul. 28, 1987) in view of either United States Patent No. 4,722,977 to Heinz Fischer, titled "Process and Composition for Viscosity Degradation of Diene Rubbers" (issued Feb. 2, 1988)

7

or H. Fries et al. "Mastication of Rubber," Vol. 55, Rubber Chemistry and Technology, pp. 309-327.

- **The '852 patent:** At least one claim of the '852 patent is anticipated and/or obvious over the following prior art: the Wilson Ultra Tour Balata 90 golf ball made by Wilson Sporting Goods Co.; the Wilson Ultra Tour Balata 100 golf ball made by Wilson Sporting Goods Co.; United States Patent No. 4,431,193 to R. Dennis Nesbitt, titled "Golf Ball and Method of Making Same" (issued Feb. 14, 1984). At least one claim of the '852 patent is obvious over United States Patent No. 5,314,187 to James R. Proudfit, titled "Golf Ball with Improved Cover" (issued May 24, 1994). Additionally, at least one claim is obvious over any one of the Wilson Ultra Tour Balata 90, Wilson Ultra Tour Balata 100, U.S. Patent No. 4,431,193 to R. Dennis Nesbitt, or U.S. Patent No. 5,314,187 to James R. Proudfit in view of any one of United States Patent No. 6,210,293 to Michael J. Sullivan, titled "Multi-Layer Golf Ball" (issued Apr. 3, 2001); United States Patent No. 6,213,894 to Michael J. Sullivan, titled "Multi-Layer Golf Ball" (issued Apr. 10, 2001); United States Patent No. 6,503,156 to Michael J. Sullivan, titled "Golf Ball with Unique Outer Cover Characteristics" (issued Jan. 7, 2003); or United States Patent No. 6,595,873 to Michael J. Sullivan, titled "Multi-Layer Golf Ball" (issued Jul. 22, 2003).

- **The '413 patent:** At least one claim of the '413 patent is anticipated and/or obvious over JP 6-14228 to Bridgestone Sports, titled "Multi-Piece Solid Golf Ball" (published May 24, 1994); United States Patent No. 5,439,227 to Egashira et al., titled "Multi-piece Solid Golf Ball" (issued Aug. 8, 1995); United States Patent No. 5,507,493 to Sullivan et al., titled "Golf Ball" (issued Apr. 16, 1996); and/or United States Patent No. 4,848,770 to Sami Shama, titled "Three-Piece Solid Golf Ball" (issued Jul. 18, 1989).

8

- **The '817 patent:** At least one claim of the '817 patent is anticipated and/or obvious over Wilson Ultra Competition 90 golf ball manufactured by Wilson Sporting Goods Co.; UK Patent Application Publication No. 2 276 628 to Bridgestone Sports Co Ltd. (published Oct. 5, 1994); JP 6-14228 to Bridgestone Sports, titled "Multi-Piece Solid Golf Ball" (published May 24, 1994); United States Patent No. 5,439,227 to Egashira et al., titled "Multi-Piece Solid Golf Ball" (issued Aug. 8, 1995); United States Patent No. 4,858,924 to Saito et al., titled "Solid Golf Ball" (issued Aug. 22, 1989); and/or United States Patent No. 4,848,770 to Sami Shama, titled "Three-Piece Solid Golf Ball" (issued Jul. 18, 1989).

- **The '707 patent:** At least one claim is anticipated and/or obvious over at least the Wilson Ultra Tour Balata 90 golf ball manufactured by Wilson Sporting Goods Co.; Wilson Ultra Tour Balata 100 golf ball manufactured by Wilson Sporting Goods Co.. Additionally, at least one claim is obvious over at least any one of Wilson Ultra Tour Balata 90 golf ball, Wilson Ultra Tour Balata 100 golf ball, EP 0 633 043 to Bridgestone Sports Co. Ltd., entitled "Golf Balls" (published Jan. 11. 1995) in view of United States Patent No. 4,804,189 to William Gobush, entitled "Multiple Dimple Golf Ball" (issued Feb. 14, 1989). At least one claim is obvious over at least any one of Wilson Ultra Tour Balata 90 golf ball, Wilson Ultra Tour Balata 100 golf ball, EP 0 633 043 in view of United States Patent No. 4,804,189 to William Gobush, entitled "Multiple Dimple Golf Ball" (issued Feb. 14, 1989) and any one of United States Patent No. 6,210,293 to Michael J. Sullivan, entitled "Multi-Layer Golf Ball" (issued Apr. 3, 2001); United States Patent No. 6,213,894 to Michael J. Sullivan, entitled "Multi-Layer Golf Ball" (issued Apr. 10, 2001); United States Patent No. 6,503,156 to Michael J. Sullivan, entitled "Golf Ball with Unique Outer Cover Characteristics" (issued Jan. 7, 2003); or United States Patent No. 6,595,873 to Michael J. Sullivan, entitled "Multi-Layer Golf Ball" (issued Jul. 22, 2003).

9

- **The '834 patent:** At least one claim of the '834 patent is anticipated and/or obvious over at least the Wilson Ultra Competition 90 golf ball manufactured by Wilson Sporting Goods Co.; Wilson Ultra Competition 100 golf ball manufactured by Wilson Sporting Goods Co.; or Precept EV Extra Spin golf ball manufactured by Bridgestone Sports, Ltd.

- **The '924 patent:** At least one claim of the '924 is anticipated and/or obvious in over at least one of the Wilson Ultra Competition 90 golf ball manufactured by Wilson Sporting Goods Co.; Wilson Ultra Competition 100 golf ball manufactured by Wilson Sporting Goods Co.; Precept Dynawing Double Cover S+ golf ball manufactured by Bridgestone Sports, Ltd. and/or Precept EV Extra Spin golf ball manufactured by Bridgestone Sports, Ltd. At least one claim is obvious over at least any one of JP 6-14228 to Bridgestone Sports, titled "Multi-Piece Solid Golf Ball" (published May 24, 1994); United States Patent No. 4,858,924 to Saito et al., titled "Solid Golf Ball" (issued Aug. 22, 1989); United States Patent No. 5,779,563 to Yamagishi et al., titled "Multi-Piece Solid Golf Ball" (effective filing date May 13, 1996) or the Reygrande WF 432 golf ball manufactured by Bridgestone Sports, Ltd. golf ball manufactured by Bridgestone Sports, Ltd. in view of at least one of either the Precept Dynawing Double Cover S+ golf ball or the Precept EV Extra Spin golf ball.

- **The '961 patent:** At least one claim of the '961 patent is anticipated by at least United States Patent No. 6,486,261 to Wu et al., titled "Thin-layer-covered Golf Ball with Improved Velocity;" and/or United States Patent No. 6,875,131 to Cavallaro et al., titled "Multi-Layer Golf Ball" (effective filing date Mar. 14, 2001) and United States Patent No. 6,162,135 to Bulpett et al., titled "Low Compression, Resilient Golf Balls Including an Inorganic Catalyst and Methods for Making the Same" (issued Dec. 19, 2000).

10

- **The '791 patent:** At least one claim is anticipated and/or obvious over at least United States Patent No. 6,390,935 to Kazushige Sugimoto, titled "Three-Piece Solid Golf Ball" (effective filing date Oct. 7, 1999); United States Patent No. 6,465,578 to Bissonnette et al., titled "Low Compression, Resilient Golf Balls Including an Organosulfur Catalyst and Method for Making Same" (effective filing date Dec. 24, 1998); EP 0 577 058 B1 to Wilson Sporting Goods Company, titled "Golf Ball with Improved Cover" (published Jan. 5, 1994); Top Flite System C golf ball manufactured by the Top Flite Golf Company; Tour Stage U-Spin golf Ball manufactured by Bridgestone Sports, Ltd. At least one claim of the '961 patent is obvious over at least United States Patent No. 6,390,935 to Kazushige Sugimoto, titled "Three-Piece Solid Golf Ball" (effective filing date Oct. 7, 1999) in view of at least one of the following United States Patent No. 5,252,652 to Egashira et al., titled "Solid Golf Ball" (issued Oct. 12, 1993); United States Patent No. 4,556,220 to Tominaga et al., titled "Solid Golf Balls" (issued Dec. 3, 1985); United States Patent No. 4,722,977 to Heinz Fischer, titled "Process and Composition for Viscosity Degradation of Diene Rubbers" (issued Feb. 2, 1988); H. Fries et al. "Mastication of Rubber," Vol. 55, Rubber Chemistry and Technology, pp. 309-327.

- **The '125 patent:** At least one claim of the '125 patent is anticipated and/or obvious over at least the Altus Newing Massy golf ball manufactured by Bridgestone Sports, Ltd. and/or Precept Dynawing Double Cover S+ golf ball manufactured by Bridgestone Sports, Ltd. At least one claim is obvious over at least JP 09-056848 to Bridgestone Sports, Ltd., titled "Multipiece Solid Golf Ball" (published Mar. 4, 1997) in view of at least one of United States Patent No. 5,779,563 to Yamagishi et al., titled "Multi-Piece Solid Golf Ball" (issued Jul 14, 1998); WO 97/09093 to Acushnet Company, titled "Enhanced Lofting Golf Balls" (published Mar. 13, 1997); United States Patent No. 5,009,428 to Yamagishi et al., titled "Golf Ball" (issued Apr. 23, 1991); United States Patent No. 5,033,750 to Yamagishi et al., titled "Golf Ball" (issued Jul. 23, 1991) and/or

11

United States Patent No. 5,024,444 to Yamagishi et al., titled "Golf Ball" (issued Jun. 18, 1991).

**Interrogatory No. 5:**

Separately, for each claim of the Bridgestone patents-in-suit that Acushnet contends is invalid, identify all Prior Art and/or Prior Art Golf Balls that Acushnet contends affects or relates to the validity of the Bridgestone patents-in-suit.

**Response to Interrogatory No. 5:**

Acushnet incorporates all of its General Objections and Objections to Definitions as though fully set forth herein and further specifically objects to this interrogatory as overly broad to the extent it seeks information protected by attorney-client privilege and/or work-product immunity. Acushnet further objects to this interrogatory as premature, overly broad and unduly burdensome. Bridgestone, with the service of this First Set of Interrogatories (Nos. 1-24) has just identified which claims it believes are infringed by Accused Acushnet Products. Acushnet is continuing its investigation of the Bridgestone patents-in-suit. Accordingly, Acushnet reserves the right to supplement, amend or change any part of the entirety of its response to this interrogatory. Without waiving, and subject to, these objections, Acushnet responds as follows:

To the extent that Bridgestone claims that the Bridgestone patents-in-suit cover the Accused Acushnet products, then the claims of the Bridgestone patents-in-suit are invalid for at least the following reasons:

# EXHIBIT 6

1

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE


BRIDGESTONE SPORTS CO.,    )
LTD, and BRIDGESTONE GOLF, )
INC.,                      )
                           )
          Plaintiffs,  )
                           ) C.A. No. 05-132 (JJF)
v.                         )
                           )
ACUSHNET COMPANY,          )
                           )
          Defendant.   )
_ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _
ACUSHNET COMPANY,          )
                           )
          Plaintiff,   )
                           )
V.                         )
                           )
BRIDGESTONE SPORTS CO.,    )
LTD, and BRIDGESTONE GOLF, )
INC.,                      )
                           )
          Defendants.  )



Wednesday, October 5, 2005
1:35 p.m.
Courtroom 4B




BEFORE:  THE HONORABLE JOSEPH J. FARNAN, JR.
          United States District Court Judge

2

APPEARANCES:


      MORRIS, NICHOLS, ARSHT & TUNNELL
      BY:  JACK BLUMENFELD, ESQ.

            -and-

      SUGHRUE MION, PLLC
      BY:  ROBERT M. MASTERS, ESQ.
      BY:  STEVEN M. GRUSKIN, ESQ.
      BY:  RAJA N. SALIBA, ESQ.

                    Counsel for the Plaintiff


      POTTER, ANDERSON & CORROON, LLP
      BY:  RICHARD HORWITZ, ESQ.

            -and-

      HOWREY, LLP
      BY:  ALAN M. GRIMALDI, ESQ.
      BY:  MATTHEW MOORE, ESQ.

                  Counsel for the Defendant

39

1    with consulting with us.

2              THE COURT:  Well, I'm going to let

3    the issue lie now, because it will get -- when I

4    read these papers, I had a certain decision

5    dynamic that I was adopting.

6              I'm going to keep that, because I

7    think it keeps me -- well, to the extent you can

8    be consistent in patent discovery disputes, it

9    helps me stay consistent.  So I'm going to give

10   them a little extension after that.

11             One thing I wanted to go back to was

12   willfulness.  You know, sometimes we try all the

13   issues, sometimes we don't.

14             But one of the things that I come

15   upon, you may want to discuss this, is

16   willfulness is a bad thing to have in an

17   infringement trial for me.  Because it allows

18   everybody to argue something, well, it overlaps

19   into willfulness.

20             And it -- it just really muddies the

21   water on a straight forward infringement case.

22   So you ought to talk about putting willfulness

23   someplace else for the time being, because I

24   think it will damage your ability, if you ever

40

1  get to a trial, to have a clean, straight forward

2  trial.

3              MR. MASTERS:  Your Honor, we did

4  discuss yesterday or the day before setting in

5  the schedule, a date when each side would have to

6  make the election to produce their opinions of

7  counsel, if they're going to rely on the advice

8  of counsel for willfulness.

9              We were going to trigger that

10  towards the end of discovery maybe.  They

11  suggested 30 to 45 days.  We said 90 days before

12  the end.

13             So each side, I think, is prepared

14  to do that.

15             THE COURT:  Well, that's good.

16  That's a good thing.  And then I think we might

17  take it out of trial.

18             MR. MASTERS:  Okay.

19             MR. GRIMALDI:  And Your Honor,

20  consistent with that, Alan Grimaldi, for

21  Acushnet.  The third attempt in my letter to you

22  suggested just what you did in the Fence to

23  Family patent case with Siemens bifurcating

24  liability from damages.  And I think that would

# EXHIBIT 7

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

BRIDGESTONE SPORTS CO., LTD.,
and BRIDGESTONE GOLF, INC.,

          Plaintiffs,

    v.

ACUSHNET COMPANY,
     a Delaware Corporation,

          Defendant.

C. A. No.  05-132 (JJF)

## BRIDGESTONE'S FIRST SET OF REQUESTS FOR PRODUCTION DOCUMENTS AND THINGS (REQUEST NOS. 1-100)

Pursuant to Rules 26 and 34 of the Federal Rules of Civil Procedure, plaintiffs Bridgestone Sports Co., Ltd. and Bridgestone Golf, Inc. hereby request that defendant Acushnet Company produce and permit inspection and copying, the documents and things described herein. Production should be made at the offices of plaintiffs' attorneys, Sughrue Mion, PLLC, 2100 Pennsylvania Avenue, NW, Washington. DC 20037 within thirty (30) days of these requests.

## DEFINITIONS

Notwithstanding any definition set forth below, each word, term, or phrase used in this Request is intended to have the broadest meaning permitted under the Federal Rules of Civil Procedure.  As used in this Request, the following terms are to be interpreted in accordance with these definitions:

    1.     The term "Bridgestone," "Plaintiff," and/or "Plaintiffs" means Bridgestone Sports Company, Ltd. and/or Bridgestone Golf, Inc., the plaintiffs in this action, and all predecessors, successors, subsidiaries, divisions, parents and/or affiliates thereof, past or present, and all past

83.    All Documents and Things constituting, or referring or relating to, any communication between Acushnet and any Third Party concerning this lawsuit or any defense that Acushnet has asserted or may assert in this lawsuit.

84.    All Documents and Things concerning the licensing of each of the Acushnet patents-in-suit, including, but not limited to:

     (a)    any and all licenses agreements;
     (b)    any and all documents evidencing any payments made under any such licenses;
     (c)    any and all licensing policies;
     (d)    any and all expressions of interest in licensing any of the Acushnet patents-in-suit; and
     (e)    any and all rejections of an offer to take a license to any of the Acushnet patents-in-suit.

85.    All Documents and Things concerning sales and marketing literature and other sales tools developed that evidence, relate or refer to any of the Acushnet products, including, without limitation:

     (a)    business and/or marketing plans,
     (b)    product comparisons,
     (c)    product launch plans, and
     (d)    promotional and advertising materials

86.    All Documents and Things concerning any studies or evaluations of the market or business done by or for Acushnet, including without limitation:

     (a)    business marketing or strategic plans,
     (b)    product launch plans,
     (c)    lost order reports,
     (d)    sales call reports, and
     (e)    general market studies.

87.    All Documents and Things concerning Acushnet's annual revenues and annual revenues derived on a per customer basis from the license, sale, export or use of the Acushnet products since March 7, 1998.

88.    All Documents and Things concerning sales, pricing and profit margin information for each of the Acushnet products since March 7, 1998, including, without limitation, each product's:

(a) total gross unit sales;
(b) total net unit sales;
(c) total gross dollar sales;
(d) total net dollar sales;
(e) average unit gross wholesale selling price;
(f) average unit net wholesale selling price;
(g) total cost of goods sold;
(h) average unit cost of goods sold;
(i) revenue and unit summaries by geography;
(j) revenue and unit summaries by customer;
(k) revenue and unit summaries by product;
(l) revenue and unit summaries by month, quarter and/or year;
(m) total gross profit margin;
(n) average gross profit margin per unit;
(o) total net profit margin;
(p) average net profit margin per unit;
(q) product line gross/standard margin reports;
(r) electronic sales databases;
(s) corporate profit and loss statements;
(t) divisional profit and loss statements;
(u) product line profit and loss statements;
(v) price elasticity/sensitivity analyses;
(w) product line contribution reports;
(x) production summaries; and
(y) cost allocation procedures.

89.    All Documents and Things concerning any estimates or projections Acushnet has made with respect to the sales, pricing and profit margin information for each of the Acushnet products since March 7, 1998, including, without limitation, each product's:

(a) total gross unit sales;
(b) total net unit sales;
(c) total gross dollar sales;
(d) total net dollar sales;
(e) average unit gross wholesale selling price;
(f) average unit net wholesale selling price;
(g) total cost of goods sold;
(h) average unit cost of goods sold;
(i) revenue and unit summaries by geography;
(j) revenue and unit summaries by customer;
(k) revenue and unit summaries by product;
(l) revenue and unit summaries by month, quarter and/or year;

(m) total gross profit margin;
(n) average gross profit margin per unit;
(o) total net profit margin;
(p) average net profit margin per unit;
(q) product line gross/standard margin reports;
(r) electronic sales databases;
(s) corporate profit and loss statements;
(t) divisional profit and loss statements;
(u) product line profit and loss statements;
(v) price elasticity/sensitivity analyses;
(w) product line contribution reports;
(x) production summaries; and
(y) cost allocation procedures

90.    All Documents and Things concerning actual or projected market share information for the Acushnet products since March 7, 1998.

91.    All Documents and Things concerning the submission of any model, version, type or revision of the Acushnet products to the USGA for listing on the List of Conforming Golf Balls since March 7, 1998, including, but not limited to, all USGA applications, USGA testing results, communications either to or from the USGA, and documents and things concerning or referencing such submissions or communications.

92.    All Documents and Things concerning the use and/or testing of any model, version, type or revision of the Acushnet products by any member of the Professional Golfers' Association of America ("PGA") or Ladies Professional Golf Association ("LPGA") from March 7, 1998 to the present, including, but not limited to, endorsement contracts, licenses, and the models, versions, types or revisions of the Acushnet products used and/or tested.

93.    All Documents and Things concerning the number, type, model and configuration of each of the Acushnet products sold, provided, exported or otherwise supplied by Acushnet to each of its customers since March 7, 1998.

94.    All Documents and Things concerning the number, type, model and configuration of each of the Acushnet products manufactured by Acushnet since March 7, 1998.

23

# EXHIBIT 8

Westlaw.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2004 WL 1376586 (D.Del.)
(Cite as: 2004 WL 1376586 (D.Del.))

Page 1

# H

**Motions, Pleadings and Filings**

Only the Westlaw citation is currently available.

United States District Court,
D. Delaware.
PFIZER INC., Pfizer Ireland Pharmaceuticals,
Warner-Lambert Company, Warner-
Lambert Company, LLC, and Warner-Lambert
Export, Ltd , Plaintiffs,
v.
RANBAXY LABORATORIES LIMITED and
Ranbaxy Pharmaceuticals, Inc , Defendants.
No. Civ.A.03-209-JJF.

June 18, 2004.

Rudolf E. Hutz, Jeffrey B. Bove, and Mary W.
Bourke, of Connolly Bove Lodge & Hutz LLP,
Wilmington, Delaware, for Plaintiffs.

Steven J. Balick, and John G. Day, of Ashby &
Geddes, Wilmington, Delaware, Darrell L. Olson,
John P. Giezentanner, and William R. Zimmerman,
of Knobbe, Martens, Olson & Bear, LLP, Irvine,
California, Jay R. Deshmukh, and George E. Heibel,
of Ranbaxy Inc., Princeton, New Jersey, for
Defendants, of counsel.

*MEMORANDUM OPINION*

FARNAN, J.

**\*1** Pending before me is a Motion To Compel
Production Of Documents Withheld On Grounds Of
Privilege (D.I 122) filed by Plaintiffs Pfizer Inc.,
Pfizer Ireland Pharmaceuticals, Warner-Lambert
Company, Warner-Lambert Company, LLC and
Warner-Lambert Export, Ltd. (collectively, "Pfizer")
against Ranbaxy Laboratories Limited and Ranbaxy
Pharmaceuticals, Inc. (collectively, "Ranbaxy"). By
its Motion, Pfizer contends that Ranbaxy has
improperly refused to produce certain documents
forming the basis of the statements and conclusions
made in Ranbaxy's Paragraph IV notification letters.
The documents at issue are three e-mail letters
reflecting the review, analysis and written opinions of
Ranbaxy's in-house and outside counsel. Pfizer
contends that Ranbaxy waived any claim of attorney-

client privilege with respect to these documents by
including information from the documents in its non-
privileged paragraph IV notification letters.

In response, Ranbaxy contends that it has not waived
any claim of attorney-client privilege or work product
immunity with respect to the documents at issue.
Ranbaxy contends that the mere fact that the ANDA
notification was based on or consistent with the
opinions of its counsel does not amount to a waiver
of the attorney-client privilege or work product
immunity. Ranbaxy further contends that Pfizer's
motion to compel is an attempt to circumvent my
order bifurcating the issue of willful infringement
from the other issues in the case. Ranbaxy contends
that it has not yet made the decision of whether it will
rely on the opinions of its counsel in the willfulness
phase of the trial, and it should not have to make that
decision during this phase of the case.

Based on the parties' respective arguments, it appears
that Pfizer does not contest Ranbaxy's assertion that
the documents at issue are protected by work product
immunity and/or the attorney-client privilege. Thus,
the only question remaining for me is the narrow
inquiry of whether Ranbaxy waived its privilege
and/or immunity by filing its Paragraph IV
notification letters based on the advice and opinions
of its counsel as relayed in the subject documents.
Pursuant to 21 U.S.C. § 355(j)(2)(A)(vii)(IV), an
abbreviated new drug application ("ANDA") must
contain a certification that, in the opinion of the
applicant and to the best of his or her knowledge, the
patent on the subject drug is "invalid or will not be
infringed by the manufacture, use or sale of the new
drug for which the application is submitted." In
addition, the ANDA applicant is required to provide
the patent owner with a "detailed statement of the
factual and legal basis of the opinion of the applicant
that the patent is invalid or will not be infringed." 21
U.S.C. § 355(j)(2)(B)(iv)(II).

I conclude that the fact that an ANDA applicant
bases its Paragraph IV notification letter on the
opinions and advice of its attorneys is insufficient to
constitute a waiver of the attorney-client privilege
and/or work product immunity with respect to the
underlying documents expressing that advice or
opinion. Pfizer points to several cases suggesting that
a party's partial disclosure of attorney-client
communications is sufficient to waive the privilege;

© 2005 Thomson/West. No Claim to Orig. U.S. Govt Works.

Not Reported in F Supp.2d
Not Reported in F.Supp.2d, 2004 WL 1376586 (D.Del.)
**(Cite as: 2004 WL 1376586 (D.Del.))**

however, none of these cases involve an ANDA applicant. In this regard, I agree with Ranbaxy that the circumstances of this case are analogous to the numerous litigation circumstances in which a client and attorney discuss general information and some of that information makes its way into public filings, such as complaints and answers to interrogatories. Courts considering such circumstances have concluded that the privileges are not waived with respect to the underlying communication between the attorney and the client. *See Beery v. Thomson Consumer Electronics, Inc.,* 218 F.R.D. 599 (S.D.Ohio 2003) (plaintiff in patent infringement suit did not waive attorney-client privilege by relying on attorney's claim construction or infringement opinions at deposition); *Frieman v. USAir Group, Inc.,* 1994 WL 675221, *7 (E.D. Pa.1994) (holding that privilege was not waived with respect to attorney-client communications about cause of accident where certain information was divulged in interviews, depositions and pleadings); *Bristol-Myers Co. v. Sigma Chemical Co.,* 7 U.S.P.Q.2d 1574 (D.Del.1988) (holding that Rule 11 affidavit submitted for purposes of demonstrating a good faith basis for instituting infringement actions did not waive privilege with respect to documents protected by privileges); *Knogo Corp. v. United States,* 213 U.S.P.Q. 936, 941 (Ct.Cl.1980) (holding that assertion of privilege is not precluded over communications in which attorney and client discussed technical information concerning the patent, and some of the technical information was later disclosed in patent application and recognizing that client does not waive privilege by testing validity of patent).

*2 Further, I am persuaded, based on the line of questioning pursued by Pfizer at the deposition of Ranbaxy's Jay R. Deshmukh, Esquire, that the subject documents relate primarily to Pfizer's allegations of willful infringement. I have bifurcated the issue of willful infringement from the issues of infringement and validity, and therefore, the issue of whether Ranbaxy will rely on its opinions of counsel to defend against Pfizer's claims of willful infringement is not currently an active issue. Accordingly, Pfizer is not yet entitled to the discovery of these otherwise privileged documents.

An appropriate Order will be entered.

### ORDER

At Wilmington, this 18th day of June 2004, for the reasons set forth in the Memorandum Opinion issued this date;

IT IS HEREBY ORDERED that Plaintiff Pfizer's Motion To Compel Production Of Documents Withheld On Grounds Of Privilege (D.I.122) is DENIED.

Not Reported in F Supp.2d, 2004 WL 1376586 (D.Del.)

**Motions, Pleadings and Filings (Back to top)**

• 1:03cv00209 (Docket) (Feb. 21, 2003)

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

# EXHIBIT 9

Westlaw.

Not Reported in F.Supp.2d                                                                                    Page 1
Not Reported in F.Supp.2d, 2002 WL 1901268 (D.Del.)
**(Cite as: 2002 WL 1901268 (D.Del.))**

▷

**Motions, Pleadings and Filings**

Only the Westlaw citation is currently available.

United States District Court, D. Delaware.
ST. CLAIR INTELLECTUAL PROPERTY
CONSULTANTS, INC., Plaintiff,
v.
SONY CORPORATION, Sony Electronics, Inc., and
Sony Corporation of America,
Defendants.
**No. Civ.A.01-557-JJF.**

Aug. 16, 2002.
Frederick L. Cottrell, III and Thomas H. Kovach, of
Richards, Layton & Finger, Wilmington, Delaware
Ronald J. Schutz, Jake M. Holdreith, Becky R.
Thorson, and Carrie M. Smith, of Robins, Kaplan,
Miller & Ciresi, L.L.P., Minneapolis, Minnesota, for
Plaintiff, of counsel

Josy W. Ingersoll and Adam W. Poff, of Young
Conaway Stargatt & Taylor, L.L.P., Wilmington,
Delaware. Sidney David, Joseph S. Littenberg,
Jonathon A. David, Jeffrey S. Dickey, and April M.
Mayo, of Lerner, David, Littenberg, Krumholz &
Mentlik, L.L.P., Westfield, New Jersey, of counsel.

*MEMORANDUM OPINION*

FARNAN, J.

 *1 Presently before the Court is a Motion For
Bifurcation Of Liability And Damages/Willfulness
Issues And For A Stay Of Discovery Regarding
Damages/Willfulness Issues (D.I.43) filed by
Defendants Sony Corporation, Sony Electronics, Inc.,
and Sony Corporation of America (collectively
"Sony") For the reasons set forth below, Sony's
Motion will be granted in part and denied in part.

I. BACKGROUND

This is a patent infringement action in which
Plaintiff St. Clair Intellectual Property Consultants,
Inc. (hereinafter "St. Clair") alleges that Sony
willfully infringes four of St. Clair's patents by
manufacturing, using and selling numerous models of

digital camcorders and still cameras. (D.I. 44 at 1).
Sony answers these allegations by denying
infringement, claiming the patents are invalid, and
asserting a laches defense Sony also asserts
counterclaims, including patent misuse and unfair
competition. [FN1] (D.I. 44 at 1)

> FN1. Originally, Sony also pleaded the
> defense of estoppel. (D.I. 44 at 1). However,
> Sony has since withdrawn this defense. (*See*
> D.I. 47 at 1).

 On March 28, 2002, after discovery had commenced
in this action, the Court issued a decision in *Novartis
Pharmaceuticals Corp. v. EON Labs Mfg., Inc.,* 206
F.R.D. 396 (D.Del.2002). As a result of the *Novartis*
decision, Sony filed the instant Motion (D.I.43)
pursuant to Federal Rule of Civil Procedure 42(b),
seeking to bifurcate the issues of damages and willful
infringement from the other issues in this case.

 On July 17, 2002, the Court heard argument on
Sony's Motion During the course of the argument,
Sony's counsel represented that Sony intends to rely
on opinions of counsel in defense of St. Clair's
willfulness claim. (D.I.80). At the close of the parties'
arguments, the Court denied Sony's Motion to the
extent it pertains to damages, and ordered Sony's
counsel to provide the opinion letters Sony intends to
rely upon for an *in camera* review. [FN2] (D.I.80).

> FN2. The Court agrees with St. Clair that
> Sony will not suffer any undue prejudice if
> the liability and damages issues are not
> bifurcated.

 On August 1, 2002, the Court received Sony's
opinion letters, as well as other related documents,
and has since reviewed them. This Memorandum
Opinion will address whether separation of St. Clair's
willfulness claim is warranted in the circumstances of
this case.

II. DISCUSSION

 Counsel for Sony contends that the discovery
required by *Novartis* in the circumstances of this case
(i.e. that Sony has elected to present a reliance on
advice of counsel defense in response to St. Clair's
charge of willfulness, and the fact that Sony's trial
counsel authored the legal opinion relied upon)

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2002 WL 1901268 (D.Del.)
**(Cite as: 2002 WL 1901268 (D.Del.))**

Page 2

requires that the issue of willfulness be separated for both discovery and trial. (D.I. 44 at 2-4). Specifically, Sony's counsel represents that communications occurred between Sony and its counsel which relate to issues other than willfulness as well as strategies that Sony might undertake with regard to those issues. (D.I. 44 at 2; D.I. 80). According to Sony, in the event the Court fails to separate the issue of willfulness, the disclosure of these communications to St. Clair will result in undue prejudice to Sony. (D.I. 44 at 2-4).

In response, St. Clair contends that separation of the willfulness issue is not warranted in this case. (D.I. 45 at 4). Specifically, St. Clair contends that separation would result in delay and wasteful duplication of discovery. (D.I. 45 at 11-13).

**\*2** After reviewing the documents submitted by Sony, the Court finds that undue prejudice could result if these otherwise privileged documents were exchanged and used during the trial of the infringement and validity issues. Neither Sony nor St. Clair had the benefit of the Court's *Novartis* decision when Sony engaged counsel to obtain an infringement opinion. Sony and trial counsel conducted their dialogue without the knowledge that their communications on matters other than infringement could be revealed in litigation. For these reasons, the Court is sensitive to Sony's prejudice claim and will separate willfulness from the other patent issues for both discovery and trial.

III. CONCLUSION

For the reasons set forth above, the Court will grant Sony's Motion For Bifurcation (D.I.43) to the extent it pertains to willfulness and deny Sony's Motion For Bifurcation (D.I.43) to the extent it pertains to damages.

An appropriate Order will be entered.

*ORDER*

At Wilmington this 16th day of August, 2002, for the reasons set forth in the Memorandum Opinion issued this date, IT IS HEREBY ORDERED that:

1. Sony's Motion (D.I.43) to bifurcate the issue of willfulness for both discovery and trial is *GRANTED*;

2. Sony's Motion (D.I.43) to bifurcate the issue of damages is *DENIED*,

3. Discovery on the issue of willfulness is *STAYED* pending resolution of the issues of infringement, validity, and damages.

Not Reported in F.Supp.2d, 2002 WL 1901268 (D.Del.)

**Motions, Pleadings and Filings (Back to top)**

• 1:01cv00557 (Docket) (Aug. 14, 2001)

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

# EXHIBIT 10

Westlaw.

Slip Copy
Slip Copy, 2005 WL 2304190 (D.Del.)
(Cite as: 2005 WL 2304190 (D.Del.))

Page 1

Only the Westlaw citation is currently available.

United States District Court,
D. Delaware.
FENSTER FAMILY PATENT HOLDINGS, INC.,
ELSCINT LTD., and Elscint Inc.,
Plaintiffs,
v.
SIEMENS MEDICAL SOLUTIONS USA, INC.,
Siemens Medical Systems, Inc., Siemens
Corporation, and Siemens AG, Defendants.
No. Civ.A.04-0038 JJF.

Sept. 20, 2005.

Josy W. Ingersoll, John W. Shaw, Adam W. Poff, of Young Conaway Stargatt & Taylor, Wilmington, Delaware, Neil F. Greenblum, Michael J. Fink, Jill M. Browning, and Van C. Ernest, of Greenblum & Bernstein, P.L.C., for Plaintiffs, of counsel.

Arthur G. Connolly, III, of Connolly Bove Lode & Hutz, LLP, Wilmington, Delaware, Eugene M. Gelernter, Scott B. Howard, Chad J. Peterman, Melissa Mandrgoc, and Adrian H. von Hassell, of Patterson, Belknap, Webb & Tyler, LLP, New York, New York., for Defendants, of counsel.

*MEMORANDUM OPINION*

FARNAN, J.

*1 Presently before the Court are (1) Defendant Siemens' Motion For An Expedited Briefing Schedule (D.I.69); (2) Defendant Siemens' Motion For A Protective Order With Respect To Plaintiffs' Rule 30(b)(6) Deposition Notice (D.I.70); (3) Defendants' Combined Emergency Motion Pursuant To The Rule 16 Scheduling Order To: (1) Limit The Number Of Asserted Claims, And (2) Modify The Existing Schedule (D.I.71); (4) Defendants' Rule 37 Motion To Compel Discovery (D.I.72); (5) Plaintiffs' Motion To Compel Responses To Interrogatory Nos. 9 And 10 And Alleged Joint Defense Communications (D.I.74); (6) Plaintiffs' Motion To Compel 30(b)(6) Witness (D.I.75); (7) Plaintiffs' Renewed Motion For Access To Defendants' Intranet (D.I.80); (8) Plaintiffs' Revised Motion To Compel Discovery Responses With Respect To Sienet Product (D.I.84); (9) Plaintiffs' Motion To Quash

And/Or In The Alternative For Protective Order In Response To Defendants; Notice Of Deposition And Subpoena Duces Tecum Issued On March 16, 2005 To General Electric Company And General Electric Medical Systems, Inc. (D.I.101); (10) Plaintiffs' Motion To Compel Deposition Testimony Of Mssrs. Ruggiero And Keller (D.I.107); (11) Plaintiffs' Motion To Preclude Defendants From Relying On Expert Testimony (D.I.113); and (12) Siemens' Conditional Cross-Motion To Preclude Plaintiffs From Offering Expert Testimony On Infringement (D.I.114).

BACKGROUND

This is a lawsuit filed by Fenster Family Patent Holdings, Inc. ("Fenster"), Elscint Ltd., and Elscint, Inc. (collectively, "Fenster") against Siemens Medical Solutions USA, Inc., Siemens Medical Systems, Inc., Siemens Corporations, and Siemens AG, (collectively, "Siemens"). Fenster asserts eight unrelated patents against Siemens: U.S. Patent Nos. 4,555,728 ("the '728 patent"); 4,693,864 ("the '864 patent"); 4,459,990 ("the '990 patent"); 4,685,146 ("the '146 patent"); 4,644,398 ("the '398 patent"); 4,595,949 ("the '949 patent"); 4,590,518 ("the '518 patent'); 4,777,620 ("the '620 patent"). Fenster seeks declarations of infringement, willful infringement, inducement of infringement, and contributory infringement plus damages and permanent injunctive relief. Fenster alleges that each of the patents in suit is owned by Elscint Ltd. and exclusively licensed to Fenster Family Patent Holdings, Inc.

The technology at issue is generally referred to as Digital Angiography and Digital Fluoroscopy ("DF"). DF refers to X-ray diagnostic apparatus and techniques that are used to measure cardiovascular function.

Plaintiff Fenster Family Patent Holdings, Inc. is a Delaware corporation with its principal place of business in Wilmington, Delaware. Plaintiff Elscint Ltd. is an Israeli Company located in Tel Aviv, and is the owner of the patents-in-suit. Plaintiff Elscint Inc. is a Massachusetts corporation, and a wholly owned U.S. subsidiary of parent company Elscint Ltd.

Defendant Siemens Medical Solutions USA, Inc. is a Delaware corporation, with its principal place of business in Malvern, Pennsylvania. Fenster alleges that Siemens Medical Solutions USA, Inc. is a

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works

Slip Copy
Slip Copy, 2005 WL 2304190 (D Del )
(Cite as: 2005 WL 2304190 (D.Del.))

Page 2

wholly owned subsidiary of Defendant Siemens AG.

*2 Defendant Siemens Medical Systems, Inc. is a Delaware corporation with its principal place of business in Iselin, New Jersey. Fenster alleges that Siemens Medical Systems, Inc. is a wholly owned subsidiary of Defendant Siemens AG.

Defendant Siemens Corporation is a Delaware corporation with its principal place of business in New York, New York. Fenster alleges that Siemens Corporation is a wholly owned subsidiary of Defendant Siemens AG and is the parent corporation of Siemens Medical Solutions USA, Inc. and Siemens Medical Systems, Inc.

Defendant Siemens AG is organized under the laws of Germany, with its principal place of business in Munich, Germany. Fenster alleges that Siemens AG includes a medical technology business unit, Siemens Medical Solutions (Germany).

Fenster filed its Complaint (D.I. 1) on January 20, 2004. On February 6, 2004, Fenster filed a First Amended Complaint (D.I.12). On July 7, 2004, the Court entered a Rule 16 Scheduling Order, whereby Fact Discovery ended on March 15, 2005, and the deadline for filing case dispositive motions was August 12, 2005. There is a *Markman* hearing scheduled on October 3, 2005, a Pretrial Conference scheduled on November 10, 2005, and a jury trial scheduled to begin on January 17, 2006.

On November 22, 2004, the Court held a discovery hearing at which the Court granted Siemens' Motion For Bifurcation (D.I 38) with regard to damages and denied it with regard to willfulness. At the November 22 hearing, the Court also ruled on a Revised Motion To Compel (D.I 46-1) filed by Fenster denying access to the Siemens' electronic database or Intranet and granting access to documents related to products wherein a cardiac diagnostic image from an X-ray is received and processed.

In compliance with the Scheduling Order, on February 8, 2005, Fenster identified 90 patent claims and listed 49 accused products.

## DISCUSSION

The motions pending in this case can be divided into two categories (1) motions related to the scope of discovery, and (2) other discovery motions.

I. Motions Related To The Scope Of Discovery

At the heart of most of the discovery related motions is Siemens' contention that the 90 claims and 49 accused products asserted by Fenster are unreasonable in number and that Siemens cannot prepare its defense or maintain the current case schedule under these conditions. Fenster, in turn, seeks to compel Siemens to respond to its discovery requests.

A. *Defendants' Motion For An Expedited Briefing Schedule (D 1.69)*

By its Motion, Siemens requests an order expediting the briefing schedule with regard to Siemens' Combined Emergency Motion Pursuant To The Rule 16 Scheduling Order to limit the number of claims asserted and modify the existing schedule. In response, Fenster contends that Siemens has failed to diligently pursue its discovery and has impeded Fenster from conducting discovery. Specifically, Fenster contends that Siemens has failed to notice depositions, has not pursued publicly available foreign patent documents, has refused to present any witnesses in response to Fenster's 30(b)(6) notice for February 14, 2005, and has produced documents long after the December 2004 date by which the Court wanted document production to be completed.

*3 Because this motion has been pending for several months, the Court will deny Defendants' Motion For An Expedited Briefing Schedule.

B. *Defendants' Combined Emergency Motion Pursuant To The Rule 16 Scheduling Order To (1) Limit The Number Of Asserted Claims, And (2) Modify The Existing Schedule (D 1.71)*

By its motion, Siemens requests an order limiting the number of claims and modifying the existing schedule. Specifically, Siemens contends that allowing Fenster to assert 90 claims is unreasonable. Further, Siemens contends that, because Fenster expanded the scope of this litigation five weeks before the close of fact discovery and eleven weeks before the date for expert reports on validity, Siemens is unable to prepare its defenses. Siemens further contends that Fenster has impeded discovery by refusing to make all inventors available for depositions and failing to produce key documents (the subject of a separate rule 37 motion). Siemens requests that the current schedule be modified as follows: fact discovery will end eight weeks after Fenster identifies a reasonable number of asserted claims and a reasonable number of accused products; opening expert reports will be due four weeks after

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy
Slip Copy, 2005 WL 2304190 (D.Del.)
(Cite as: 2005 WL 2304190 (D.Del.))

the close of fact discovery (instead of six weeks under the current scheduling order); rebuttal expert reports would be due four weeks after opening expert reports; and the remainder of the schedule be adjusted accordingly.

In response, Fenster contends that the number of asserted claims should not be further limited because Fenster will likely limit them after full discovery. Further, Fenster contends that the Court indicated at the November 22, 2004, discovery hearing that the parties would not lose their trial date. Fenster also contends that Siemens has not noticed a single deposition, and has failed to provide a 30(b)(6) witness.

The Court agrees with Siemens that Fenster's number of asserted claims is unreasonable. The Court would prefer the parties to address such issues among themselves, but when that does not happen; the Court must intervene. The Court finds that Fenster should be limited, at this juncture, to ten (10) claims and five (5) products asserted. This decision is obviously arbitrary; however, it is appropriate from the viewpoint of the typical patent litigation. Because a modification of the Scheduling Order is required as a result of the Court's decision, the Court will order the parties to submit a proposed, revised scheduling order for the Court's consideration.

*C. Defendants' Motion For A Protective Order With Respect To Plaintiffs' Rule 30(b)(6) Deposition Notice (D.I.70)*

By its Motion, Siemens contends that Fenster' Rule 30(b)(6) deposition notice is overly broad and unduly burdensome because it designates "all versions" of 49 different products as "Accused Products," and seeks testimony on a multitude of topics (36 subject matter categories) for each of them. As relief, Siemens seeks the entry of a protective order. Based on the Court's decision reducing the number of asserted claims, the Court will deny this motion as moot.

*D. Siemens' Rule 37 Motion To Compel Discovery (D.I.72)*

*4 By its motion, Siemens contends that Fenster has failed to produce: file histories of foreign counterpart applications, and related documents; documents relating to conception, reduction-to-practice, and best mode, in response to Document Requests No. 14 and 15; complete answers to Siemens' Interrogatories 3 and 4, which ask for information relating to Siemens' laches defense and the priority dates for the patents-

in-suit. In response, Fenster contends that Fenster's foreign file histories are publically available, that Fenster has no other documents that are responsive to Document Requests 14 and 15, and that Fenster has fully responded to Interrogatory Nos. 13 and 14. Because the Court has limited the number of asserted claims and accused products and will modify the schedule in this case, the Court will deny this motion with leave to renew.

*E. Fenster' Motion To Compel Responses To Interrogatory Nos. 9 And 10 And Alleged Joint Defense Communications (D.I.74)*

By its motion, Fenster moves to compel Siemens to respond to Interrogatory Nos. 9 and 10 of Fenster' Second Set of Interrogatories. Specifically, Fenster seeks the dates of the first and last sales of each of the identified products. In response, Siemens asserts that these interrogatories seek information duplicative of that requested in Fenster's Interrogatory Nos. 1 and 2.

In reply to Siemens' argument, Fenster contends that Interrogatory Nos. 1 and 2 requested that Siemens identify each model and all components made, used, sold, offered for sale and/or imported since 1994. Fenster contends that identification of the models and components sold since 1994 is different from identification of the first and last dates of sale.

Because the Court has limited the number of asserted claims and accused products and will modify the schedule in this case, the Court will deny this motion with leave to renew.

*F. Fenster's Motion To Compel 30(b)(6) Witness (D.I.75)*

Because the Court has denied as moot Siemens' Motion For A Protective Order With Respect To Fenster's Rule 30(b)(6) Deposition Notice (D.I.70), the Court will likewise deny as moot Fenster's Motion To Compel 30(b)(6) Witness.

*G. Fenster's Motion To Preclude Siemens From Relying On Expert Testimony (D.I.113)*

By its motion, Fenster moves to preclude Siemens from relying on expert testimony because Siemens failed to serve its expert reports prior to April 22, 2005, the date specified in the Scheduling Order. In response, Siemens contends that Fenster's designation of 90 asserted claims made it impossible for Siemens' experts to conduct a meaningful validity analysis

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy
Slip Copy, 2005 WL 2304190 (D.Del.)
(Cite as: 2005 WL 2304190 (D.Del.))

Because the Court has limited the number of asserted claims and accused products and will modify the schedule in this case, the Court will deny this motion as moot.

### H. Siemens' Conditional Cross-Motion To Preclude Fenster From Offering Expert Testimony On Infringement (D.I.114)

Siemens' Conditional Cross-Motion To Preclude Fenster From Offering Expert Testimony On Infringement (D.I.114) is related to Fenster's Motion To Preclude Siemens From Relying On Expert Testimony (D.I.113). Because the Court has limited the number of asserted claims and accused products and will modify the schedule in this case, the Court will deny this motion as moot.

### II. Other Discovery Motions

### A. Fenster's Renewed Motion For Access To Siemens' Intranet (D.I.80)

*5 By its motion, Fenster renews its motion to compel Siemens to provide Fenster with access to its corporate Intranet or other electronic databases or networks. The Court denied Fenster's original motion on November 22, 2004, stating that the Court based its decision in part on Siemens' representation that the production would be in a searchable electronic format. However, Fenster contends that two developments warrant reconsideration of this issue. First, Fenster contends that Siemens provided access to documents in two warehouses, which requires document-by-document review of over a million pages of documents without the benefit of any type of electronic searching. Second, Fenster contends that Siemens produced other large batches of documents in electronic format, but many of these documents are not in searchable format.

In response, Siemens contends that Fenster's motion is a motion for reconsideration, not a renewed motion. Siemens contends that it will produce the specific documents that Fenster has previously identified as non-searchable in "searchable form." Further, Siemens contends that some older documents are only available on microfilm, are not on the Intranet, and that Siemens fulfilled its obligations under the Federal Rules by producing them in the format in which they are maintained.

In a letter to the Court (D.I.106), Fenster cites deposition testimony of a Siemens' employee wherein the employee states that it would be easy to determine whether there were any documents from Pie Medical on Siemens' Intranet. Fenster contends that Siemens has not produced any documents from Pie Medical and that this testimony is new evidence that shows Fenster's motion for access to Siemens' Intranet should have been granted.

The Court finds that Fenster has not demonstrated an intervening change in controlling law, the availability of new evidence that was not available when the Court issued its first Order, or the need to correct a clear error of law or fact to prevent a manifest injustice. Accordingly, the Court will deny this motion.

### B. Fenster's Revised Motion To Compel Discovery Responses With Respect To Sienet Product (D.I.84)

By its motion, Fenster seeks production of documents related to Siemens' SIENET. Fenster contends that SIENET is a Picture Archiving and Communication System ("PACS"), which is relevant to this litigation. Fenster acknowledges that Siemens' responses to Fenster's most recent discovery requests were not due until March 7, 2005, after Fenster filed its motion.

In response, Siemens contends that SIENET comprises three components: patient management, long-term image archiving (known as PACS), and image post processing. Siemens contends that SIENET allows for the linking of image data from various x-ray imaging systems and provides data on a patient-based scheme to radiologists. Further, Siemens contends that SIENET has a component with PACS functionality that is merely used in part for long-term storage and archiving. Because the x-ray imaging systems function independently of SIENET and discovery is limited to digital x-ray imaging systems, Siemens contends that SIENET is outside the scope of discovery. Siemens further contends that SIENET is capable of operating with a host of x-ray systems (such as MRI, CT scanning, ultra-sound, and nuclear medicine) that are outside the scope of this litigation.

*6 The Court will deny Fenster's motion on two grounds. First, the Court concludes that this motion was filed prematurely, before Siemens' discovery responses were due. Second, it appears to the Court that SIENET is not a digital x-ray imaging system, but rather a way to knit such a system together with other components. Accordingly, the Court concludes that SIENET is outside the scope of discovery.

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works

Slip Copy                                                                Page 5
Slip Copy, 2005 WL 2304190 (D.Del.)
(Cite as: 2005 WL 2304190 (D.Del.))

*C. Fenster' Motion To Quash And/Or In The Alternative For Protective Order In Response To Siemens' Notice Of Deposition And Subpoena Duces Tecum Issued On March 16, 2005 To General Electric Company And General Electric Medical Systems, Inc (D.I.101)*

By its motion, Fenster seeks to quash Siemens' notice of deposition with regard to a Rule 30(b)(6) Deposition of General Electric Company and General Electric Medical Systems, Inc. (collectively, "GE") and a subpoena duces tecum, both issued on March 16, 2005, after the close of fact discovery.

In response, Siemens contends that because its counsel represents GE in unrelated matters, counsel could not take third-party discovery from GE without obtaining a waiver from GE of any conflict of interest that may be presented by taking such discovery Siemens contends that Fenster stood in the way of Siemens' attempts to obtain the waiver On March 9, 2005, GE informed Siemens' counsel that it would not waive the conflict. Thus, Siemens had to retain other counsel, and served the subpoena less than a week after GE's refusal. Siemens also contends that a decision by the Court to modify the existing schedule would moot Fenster's objections to the GE subpoena.

Because the Court has limited the number of asserted claims and accused products and will modify the schedule in this case, the Court will deny this motion.

*D. Fenster' Motion To Compel Deposition Testimony Of Mssrs. Ruggiero And Keller (D.I.107)*

By its motion, Fenster contends that it deposed two Siemens Medical Solutions employees, Tom Ruggiero on April 6, 2005, and Mike Keller on April 7, 2005 Fenster contends that, during each deposition, counsel for Siemens instructed each witness not to testify regarding a device called "AXIS." Fenster moves to compel further deposition testimony of Messrs. Ruggiero and Keller with regard to AXIS pursuant to Federal Rule of Civil Procedure 26(b)(1) and 37(a)(2). Fenster contends that Siemens' counsel's instructions not to answer questions about AXIS were improper because the line of questioning did not involve a matter of privilege

In response, Siemens contends that the design for the AXIS project has not been finalized and it remains in flux. Siemens further contends that there is no commercial AXIS product because Siemens has not yet sought or obtained FDA approval for a commercial product. Thus, Siemens contends that

discovery with regard to AXIS is not reasonably calculated to lead to discovery of relevant information.

The Court limited the scope of discovery in this case to digital x-ray imaging systems. In its briefing, neither party addresses whether AXIS is a digital x-ray imaging system, but it seems to be one that is still in the stages of research and development. Accordingly, the Court will deny this motion, because it is directed to a yet to be developed product which appears to be outside the scope of discovery set by the Court.

CONCLUSION

*7 For the reasons discussed, the Court will (1) deny Defendant Siemens' Motion For An Expedited Briefing Schedule (D.I.69); (2) deny as moot Defendant Siemens' Motion For A Protective Order With Respect To Plaintiffs' Rule 30(b)(6) Deposition Notice (D.I.70); (3) grant Defendants' Combined Emergency Motion Pursuant To The Rule 16 Scheduling Order To: (1) Limit The Number Of Asserted Claims, And (2) Modify The Existing Schedule (D.I.71); (4) deny with leave to renew Defendants' Rule 37 Motion To Compel Discovery (D.I.72); (5) deny with leave to renew Plaintiffs' Motion To Compel Responses To Interrogatory Nos. 9 And 10 And Alleged Joint Defense Communications (D.I.74); (6) deny as moot Plaintiffs' Motion To Compel 30(b)(6) Witness (D.I.75); (7) deny Plaintiffs' Renewed Motion For Access To Defendants' Intranet (D.I.80); (8) deny Plaintiffs' Revised Motion To Compel Discovery Responses With Respect To Sienet Product (D.I.84); (9) deny Plaintiffs' Motion To Quash And/Or In The Alternative For Protective Order In Response To Defendants; Notice Of Deposition And Subpoena Duces Tecum Issued On March 16, 2005 To General Electric Company And General Electric Medical Systems, Inc. (D.I.101); (10) deny Plaintiffs' Motion To Compel Deposition Testimony Of Mssrs. Ruggiero And Keller (D.I.107); (11) deny as moot Plaintiffs' Motion To Preclude Defendants From Relying On Expert Testimony (D.I.113); and (12) deny as moot Siemens' Conditional Cross-Motion To Preclude Plaintiffs From Offering Expert Testimony On Infringement (D.I.114).

An appropriate Order will be entered.

ORDER

At Wilmington, this *20* day of September 2005, for the reasons set forth in the Memorandum Opinion issued this date;

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works

Slip Copy
Slip Copy, 2005 WL 2304190 (D.Del.)
(Cite as: 2005 WL 2304190 (D.Del.))

Page 6

IT IS HEREBY ORDERED that:

1. Defendant Siemens' Motion For An Expedited Briefing Schedule (D.I.69) is *DENIED*.

2. Defendant Siemens' Motion For A Protective Order With Respect To Plaintiffs' Rule 30(b)(6) Deposition Notice (D.I.70) is *DENIED AS MOOT*.

3. Defendants' Combined Emergency Motion Pursuant To The Rule 16 Scheduling Order To: (1) Limit The Number Of Asserted Claims, And (2) Modify The Existing Schedule (D.I.71) is *GRANTED*. The parties shall submit a revised, proposed scheduling order within twenty (20) days of the date of this Order.

4. Defendants' Rule 37 Motion To Compel Discovery (D.I.72) is *DENIED WITH LEAVE TO RENEW*.

5. Plaintiffs' Motion To Compel Responses To Interrogatory Nos. 9 And 10 And Alleged Joint Defense Communications (D.I.74) is *DENIED WITH LEAVE TO RENEW*.

6. Plaintiffs' Motion To Compel 30(b)(6) Witness (D.I.75) is *DENIED AS MOOT*.

7. Plaintiffs' Renewed Motion For Access To Defendants' Intranet (D.I.80) is *DENIED*.

8. Plaintiffs' Revised Motion To Compel Discovery Responses With Respect To Sienet Product (D.I.84) is *DENIED*.

9. Plaintiffs' Motion To Quash And/Or In The Alternative For Protective Order In Response To Defendants; Notice Of Deposition And Subpoena Duces Tecum Issued On March 16, 2005 To General Electric Company And General Electric Medical Systems, Inc. (D.I.101) is *DENIED*.

*8 10. Plaintiffs' Motion To Compel Deposition Testimony Of Mssrs. Ruggiero And Keller (D.I.107) is *DENIED*.

11. Plaintiffs' Motion To Preclude Defendants From Relying On Expert Testimony (D.I.113) is *DENIED AS MOOT*.

12. Siemens' Conditional Cross-Motion To Preclude Plaintiffs From Offering Expert Testimony On Infringement (D.I.114) is *DENIED AS MOOT*.

Slip Copy, 2005 WL 2304190 (D.Del.)

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.