# EXHIBIT 1




FILED IN CLERK'S OFFICE
U.S.D.C. Atlanta
JUL 24 2000
LUTHER D. THOMAS, Clerk
By: Deputy Clerk

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

BRIDGESTONE SPORTS CO., LTD.,

Plaintiff,

v.

CALLAWAY GOLF COMPANY, CALLAWAY GOLF BALL COMPANY, and WOODMONT GOLF CLUB, LLC

Defendants.

Civil Action No. 1 00-CV-1871

## COMPLAINT FOR PATENT INFRINGEMENT

Plaintiff, Bridgestone Sports, Co., Ltd. ("Bridgestone Sports"), by and through its attorneys, brings this action seeking damages and injunctive relief against defendants, Callaway Golf Company and Callaway Golf Ball Company (collectively "Callaway") and Woodmont Golf Club, LLC ("Woodmont Golf Club"), to remedy defendants' willful and wanton infringement of a substantial number of patents owned by Bridgestone Sports, in violation of the Patent Act of the United States, 35 U.S.C. §§ 1 *et seq*. Bridgestone Sports specifically complains of Callaway and Woodmont Golf Club as follows:

## NATURE OF THIS ACTION

1. Bridgestone Sports has been and is today a recognized worldwide leader in the design and development of golf balls, and in the manufacture of golf balls. For many years,





Company. Callaway Golf Ball Company is registered to do business in the State of Georgia; with its registered agent being National Registered Agents, Inc., in Duluth, Georgia.

10. Callaway Golf Company is engaged in the design, manufacture, and sale of golf equipment and related products. Together with Callaway Golf Ball Company, Callaway is engaged in the design, manufacture and sale of golf balls, including the Rule 35 Softfeel (Blue) and Firmfeel (Red) throughout this district, the United States, and other countries.

11. Woodmont Golf Club is a Georgia limited liability company engaged in the retail market and in particular sporting equipment, with its principal place of business at 3105 Gaddis Road, Canton, Georgia. Woodmont Golf Club together with Callaway offers for sales and sells the Callaway golf Balls in at least this district.

**BRIDGESTONE SPORTS' EXTENSIVE ANALYSIS AND TESTING OF THE CALLAWAY GOLF BALLS**

12. Prior to its formal introduction of golf balls in the U.S. market, Callaway was aware of its infringement of Bridgestone Sports' extensive patent portfolio. Callaway concluded, based upon its own analysis of the Softfeel (Blue) and Firmfeel (Red) golf balls that their design infringed several of Bridgestone Sports' patents. As a result, on the eve of the introducing its golf balls to the U.S. market, Callaway instructed one of its executives to contact Bridgestone Sports and request a license. Callaway was aware of the specific Bridgestone Sports patents alleged to be infringed in this Complaint. A license from Bridgestone Sports under its patents was requested. When Bridgestone Sports refused the broad request for a license, Callaway continued its infringing acts by manufacturing and selling the Rule 35 golf balls, thereby knowingly and willfully infringing many of Bridgestone Sports' patents. Callaway blatantly

disregarded the valid patent rights of a third party to realize immediate entrance into the market with an acceptable product.

13. Since the introduction of the Callaway golf balls, Bridgestone Sports has purchased on the open market Callaway's Rule 35 golf ball products, including the Softfeel (Blue) and Firmfeel (Red) model golf balls and has also received the Softfeel (Blue) and Firmfeel (Red) golf balls directly from Callaway Golf. Bridgestone Sports has conducted extensive analysis on these golf balls, and has concluded that these products have been developed using Bridgestone Sports' technology in violation of its patent rights. As alleged below, Callaway's golf ball products have been and currently are infringing a substantial number of Bridgestone Sports' patents.

14. The results of Bridgestone Sports' extensive analysis and testing of the Callaway Rule 35 golf balls, including the Softfeel (Blue) and Firmfeel (Red) models, reveal that both the Softfeel (Blue) and Firmfeel (Red) are multi-piece golf balls consisting of a core, an inner layer and an outer cover layer made of urethane.

15. Based on the analysis carried out by Bridgestone Sports, the Softfeel (Blue) and Firmfeel (Red) golf balls have the following characteristics:

| Callaway Rule 35 | | | Softfeel (Blue) | Firmfeel (Red) |
|---|---|---|---|---|
| **Number of dimples** | | | 382 | 382 |
| **Ball** | Diameter (mm) | | 42.69 | 42.71 |
| N=10 | Cover thickness (mm) | | 0.99 | 0.80 |
| | Weight of ball (g) | | 45.48 | 45.66 |
| | M.I.* | | 83.7 | 83.8 |
| | Hardness | 100kg | 2.52 | 2.29 |

| Callaway Rule 35 | | | Softfeel Blue | Firmfeel Red |
|---|---|---|---|---|
| | s.g. | | 1.13 | 1.16 |
| | Sheet hardness | JIS-C | 53.6 | 60.7 |
| | | Shore-D | 38.1 | 43.5 |
| **IML** | Color | | half transparent/white | half transparent/pink |
| | Diameter (mm) | | 40.70 | 41.11 |
| N=5 | Thickness of IML (mm) | | 1.48 | 1.32 |
| | Weight of sphere up to IML (g) | | 39.86 | 41.09 |
| | Hardness | 100kg | 2.61 | 2.36 |
| | s.g. | | 1.03 | 1.03 |
| | Sheet hardness | JIS-C | 89.3 | 92.0 |
| | | Shore-D | 63.1 | 64.5 |
| **Core** | Color | | blue | violet |
| | Diameter (mm) | | 37.74 | 38.47 |
| | s.g. | | 1.16 | 1.16 |
| | Weight (g) | | 32.59 | 34.23 |
| | Hardness | 100kg | 3.19 | 2.93 |
| | Surface hardness | JIS-C | 82.5 | 84.4 |
| | Hardness at center | JIS-C | 63.6 | 64.8 |

16. Given these physical characteristics of the golf balls, Callaway has infringed and continues to infringe Bridgestone Sports' patents covering an extensive and broad spectrum of technology contained in the most sophisticated golf balls sold today. This includes technology covering the internal composition of the golf ball as well as the composition and geometry of the dimples.

17. Callaway's manufacture, use and sale of the Softfeel (Blue) and Firmfeel (Red) golf balls results in direct infringement of at least the following United States patents owned by Bridgestone Sports: United States Letter Patent Nos. 5,553,852, attached hereto as Exhibit 2; 5,782,707, attached hereto as Exhibit 3; 5,899,822, attached hereto as Exhibit 4; and 5,857,924, attached hereto as Exhibit 5 (collectively referred to herein as "Bridgestone Sports' Patents").

**COUNT I**
**(U.S. Patent No. 5,553,852)**

18. Bridgestone Sports repeats and reavers paragraphs 1 through 17 of this Complaint, as though fully set forth herein.

19. U.S. Patent No. 5,553,852 (the "'852 patent"), entitled "Three-Piece Solid Golf Ball" was duly and legally issued on September 10, 1996. Bridgestone Sports is the owner, by means of assignment, of all right, title and interest in the '852 Patent, together with all rights to sue and recover damages for patent infringement. The '852 Patent issued from an application filed with the U.S. Patent and Trademark Office ("PTO") on July 8, 1994, based upon an earlier application that had been filed with the Japanese Patent Office on July 8, 1993.

20. Bridgestone Sports is informed and believes, and based thereon avers, that Callaway has been and is now infringing, contributorily infringing, and actively inducing infringement of the '852 Patent by making, using, offering to sell, and/or selling within this Judicial District and elsewhere in the United States, without license or authority from Bridgestone Sports, certain golf balls, including at least the Softfeel (Blue) golf balls.

21. Bridgestone Sports is informed and believes, and based thereon avers, that Woodmont Golf Club has been and is now infringing, contributorily infringing, and actively

# EXHIBIT 2

**IN UNITED STATES DISTRICT COURT**
**DISTRICT OF DELAWARE**

**BRIDGESTONE SPORTS CO., LTD., AND BRIDGESTONE GOLF, INC.,**

**Plaintiffs,**

v.

**ACUSHNET COMPANY,**

**Defendant.**

C.A. No. 05-132(JJF)

DEMAND FOR JURY TRIAL

**PLAINTIFFS' RESPONSES TO DEFENDANT'S FIRST SET OF INTERROGATORIES**

Pursuant to Rule 33 of the Federal Rules of Civil Procedure, Plaintiffs Bridgestone Sports Co., Ltd., and Bridgestone Golf, Inc., (individually or collectively "Bridgestone") hereby respond to Defendant's First Set Of Interrogatories To Plaintiff dated June 10, 2005.

**GENERAL OBJECTIONS**

The following general objections are made to each and every interrogatory, irrespective of whether they are stated specifically in response thereto:

1. The following responses are based upon information presently available to and located by Bridgestone and its attorneys. Bridgestone has not completed its investigation of the facts relating to this action, and has not completed discovery in this action. Bridgestone's responses are based upon (1) a reasonable search, given the time allotted to Bridgestone to respond to the interrogatories, and (2) inquiries of Bridgestone employees and/or representatives who could reasonably be expected to possess responsive information. The subject matter of these requests is under continuing investigation. Bridgestone's responses are without prejudice to its rights to identify and to use additional information revealed in subsequent investigations and discovery.

discovery, as well as information in the possession of Acushnet that forms a basis for damages. Further, Bridgestone objects to the interrogatory as being overly broad and unduly burdensome.

Subject to and without waiving the general and specific objections, Bridgestone will seek all damages permitted by the patent statutes, and including costs and expenses to Bridgestone for bringing suit, including reasonable attorney's fees

Bridgestone reserves the right to later amend or supplement its disclosures after further investigation, discovery and based on positions taken by, or contentions of, Acushnet.

**INTERROGATORY NO. 16**

On a claim-by-claim basis, identify and describe in detail in a claim chart the factual bases for Bridgestone's non-infringement contention in its First Affirmative Defense in the *Reply and Counterclaim of Bridgestone to Acushnet's Answer and Counterclaim*, namely, that "Bridgestone has not infringed and does not infringe, either directly or indirectly and either literally or by application of the doctrine of equivalents," any claim of any of the Acushnet Patents, including all witnesses with knowledge of such facts and all documents that support such facts.

**RESPONSE TO INTERROGATORY NO. 16**

In addition to the General Objections, Bridgestone objects to the interrogatory as being a multiple and compound request constituting more than one interrogatory. Bridgestone also objects to the interrogatory as premature at this early stage of discovery, especially because Acushnet bears the burden of proof of its infringement allegations and because the interrogatory calls for expert opinion and expert discovery. In addition, the claims of the Acushnet Patents have not been construed by a Court.

Subject to and without waiving the general and specific objections, Bridgestone responds that no accused Bridgestone Product infringes any asserted claim, either literally or under the doctrine of equivalents, because, for each asserted claim, the accused Bridgestone products do not meet at least one claim limitation under any conceivable claim construction. With respect to

the '861, '587 and '367 patents, the accused Bridgestone products do not meet the claimed requirement that at least 80 percent of the distances between adjacent dimples being less than 0.065 inches. With respect to the '976 patent, the accused Bridgestone products do not meet the claimed requirements for the aerodynamic coefficient magnitudes and the aerodynamic force angles.

Bridgestone reserves the right to later amend or supplement its contentions after further investigation, discovery and after the Court construes the claims.

**INTERROGATORY NO. 17**

If Bridgestone alleges the invention in the United States of any apparatus, product, device, process, method, act or other instrumentality that practiced any invention claimed in the Acushnet Patents prior to the earliest claimed priority date of such claims, identify, separately for each such claim, the circumstances of such prior invention, including all places or facilities involved in research and development related to the prior invention, all persons involved in the conception and reduction to practice of the prior invention, and the dates of conception and reduction to practice of the prior invention.

**RESPONSE TO INTERROGATORY NO. 17**

In addition to the General Objections, Bridgestone objects to the interrogatory as being a multiple and compound request constituting more than one interrogatory. Bridgestone also objects to the interrogatory as being overly broad, unduly burdensome, and oppressive. Bridgestone further objects to the phrase "earliest claimed priority date of such claim" as vague and ambiguous. Further, Bridgestone objects to the interrogatory as premature at this early stage of discovery. Acushnet has not specifically identified which claims of the Acushnet Patents are asserted to be infringed by the accused Bridgestone Products. Subject to and without waiving the general and specific objections, Bridgestone will produce, pursuant to Fed. R. Civ. P. 33(d), documents responsive to the interrogatory sufficient to permit Acushnet to determine an answer as readily as Bridgestone.

Bridgestone reserves the right to later amend or supplement its contentions after further investigation and discovery.

**INTERROGATORY NO. 18**

Identify on a claim-by-claim basis for each one of the Acushnet Patents that Bridgestone contends is invalid and provide a chart identifying specifically under which section(s) of the Patent Code that Bridgestone contends each identified claim is invalid and how Bridgestone contends that each identified claim fails to satisfy such section(s), including where, specifically, in the prior art Bridgestone contends a teaching or suggestion of or motivation to combine each element of each identified claim is found.

**RESPONSE TO INTERROGATORY NO. 18**

In addition to the General Objections, Bridgestone objects to the interrogatory as being a multiple and compound request constituting more than one interrogatory. Bridgestone also objects to the interrogatory as premature at this early stage of discovery, because Acushnet has not specifically identified which claims of the Acushnet Patents are asserted to be infringed by the accused Bridgestone Products and because the interrogatory calls for expert opinion and expert discovery. In addition, the claims of the Acushnet Patents have not been construed by a Court.

Subject to and without waiving the general and specific objections, Bridgestone responds that all of the claims of the Acushnet Patents are invalid under 35 U.S.C. §112, and at least the '705 patent is also invalid under 35 U.S.C. §§102 and 103. For example, the claims of the '705 patent is invalid as anticipated under 35 U.S.C. § 102 based upon at least U.S. Patent 5,980,396 and U.S. Patent 5,929,171, or for obviousness under 35 U.S.C. § 103 in view of that prior art. Additionally, at least the '861 patent has already expired and is no longer enforceable.

Bridgestone reserves the right to later amend or supplement its contentions after further investigation, discovery and after the Court construes the claims.

**INTERROGATORY NO. 19**

Identify all publications and other materials alleged by Bridgestone to be relevant to the patentability of the Acushnet Patents, including each document, thing, or other evidence supporting the chart requested in Interrogatory No. 18.

**RESPONSE TO INTERROGATORY NO. 19**

In addition to the General Objections, Bridgestone objects to the Interrogatory on the ground that it is premature at this early stage of discovery. Subject to and without waiving the general and specific objections, pursuant to Fed. R. Civ. P. 33(d), Bridgestone will produce all prior art presently known on which Bridgestone may rely in support of one or more invalidity defenses.

Bridgestone reserves the right to later amend or supplement its contentions after further investigation, discovery and after the Court construes the claims.

**INTERROGATORY NO. 20**

Identify each term in the claims of the Bridgestone Patents and Acushnet Patents that you contend should be given a meaning other than the plain and ordinary meaning for that term, and for each such identified term, state the meaning you contend it should be given and the factual basis for your contention.

**RESPONSE TO INTERROGATORY NO. 20**

In addition to the General Objections, Bridgestone objects to the interrogatory as it misstates the law regarding the interpretation of claims. Bridgestone additionally objects to the standard in the interrogatory for interpreting claim terms without regard to one of ordinary skill in the art. Bridgestone further objects to the interrogatory as premature at this early stage of discovery, since the Court's Rule 16 Scheduling Order requires the parties to agree on disputed claim terms by May 5, 2006. Additionally, Acushnet has not specifically identified which claims of the Acushnet Patents are asserted to be infringed by the accused Bridgestone Products and how the Bridgestone Products allegedly infringe the claims of the Acushnet Patents.

**INTERROGATORY NO. 21**

## APPENDIX B: CLAIM CHART FOR THE '852 PATENT (Pro V1)

| The '852 Patent | Pro V1 |
|---|---|
| **CLAIM 1** | |
| 1. A three-piece solid golf ball comprising; | The Pro V1 is a three-piece solid golf ball. |
| a center core, an intermediate layer, and a cover enclosing the core through the intermediate layer, | The Pro V1 has a center core, an intermediate layer, and a cover enclosing the core through the intermediate layer. |
| said center core having a diameter of at least 29 mm and a specific gravity of less than 1.4, | The center core of the Pro V1 has a diameter and a specific gravity within the scope of the claim ranges. |
| said intermediate layer having a thickness of at least 1 mm, a specific gravity of less than 1.2, and a hardness of at least 85 on JIS C scale, the specific gravity of said intermediate layer being lower than the specific gravity of said center core, and | The intermediate layer of Pro V1 has an intermediate layer having a thickness, a specific gravity of less than 1.2, and a hardness within the scope of the claim ranges, and the specific gravity of the intermediate layer is lower than the specific gravity of the center core. |
| said cover having a thickness of 1 to 3 mm and being softer than said intermediate layer. | The Pro V1 has a cover with a thickness within the scope of the claim range. |
| **CLAIM 2** | |
| 2. The golf ball of claim 1 wherein said intermediate layer is formed of a high repulsion ionomer resin base composition. | The Pro V1 has an intermediate layer that is formed of a high repulsion ionomer resin base composition. |
| **CLAIM 3** | |

**APPENDIX J: CLAIM CHART FOR THE '125 PATENT**
**Page J-1**

## APPENDIX J: CLAIM CHART FOR THE '125 PATENT (Pro V1)

| The '125 Patent | Pro V1 (2003-present) |
|---|---|
| **CLAIM 2** | |
| A multi-piece solid golf ball comprising; a solid core and a cover consisting of inner and outer layers surrounding the core, the outer cover layer having a surface formed with a plurality of dimples, | The Pro V1 is a multi-piece solid golf ball having: a solid core and a cover consisting of inner and outer layers surrounding the core, the outer cover layer having a surface formed with a plurality of dimples |
| said solid core having a distortion of 2.8 to 3.0 mm under an applied load of 100 kg, and | The solid core of the Pro V1 has a distortion within the scope of the claimed range. |
| a product of the Shore D hardnesses of said inner cover layer multiplied by the Shore D hardness of said outer cover layer and a proportion VR (%) of the total of the volumes of dimple space each defined below a plane circumscribed by the dimple edge to the overall volume of a phantom sphere given on the assumption that the golf ball surface is free of dimples satisfy any one of the following combinations (1) to (5):<br>(1) the product of Shore D hardnesses of inner and outer cover layers: 1,500 to less than 2,000 VR : 0.8 to 1.1%<br>(2) the product of Shore D hardnesses of inner and outer cover layers: 2,000 to less than 2,500 VR : 0.75 to 1.05%<br>(3) the product of Shore D hardnesses of inner and outer cover layers: 2,500 to less than 3,000 VR : 0.7 to 1%<br>(4) the product of Shore D hardnesses of inner and outer cover layers: 3,000 to less than 3,500 VR : | The product of the Shore D hardnesses of the inner cover layer multiplied by the Shore D hardness of the outer cover layer for the Pro V1 and a proportion VR (%) of the total of the volumes of dimple spaces for the Pro V1, each defined below a plane circumscribed by the dimple edge to the overall volume of a phantom sphere given on the assumption that the golf ball surface is free of dimples, satisfy one of the claimed combinations. |

## APPENDIX F: CLAIM CHART FOR THE '834 PATENT (Pinnacle Exception)

| The '834 Patent | Pinnacle Exception |
|---|---|
| **CLAIM 1** | |
| 1. A two-piece solid golf ball comprising a solid core and a cover enclosing the core and having a number of dimples in its surface, wherein | The Pinnacle Exception is a two-piece solid golf ball having a solid core and a cover enclosing the core and having a number of dimples in its surface. |
| said solid core has such a distribution of hardness as measured by a JIS-C scale hardness meter that a surface hardness is up to 85 degrees, a center hardness is lower than the surface hardness by not less than 8 to less than 20 degrees, and a hardness within 5 mm inside the core surface is up to 8 degrees lower than the surface hardness, | The solid core of the Pinnacle Exception has such a distribution of hardness as measured by a JIS-C scale hardness meter that a surface hardness is within the scope of the claim range, a center hardness is lower than the surface hardness by an amount that is within the scope of the claim range, and a hardness within 5 mm inside the core surface is within the scope of the claim range. |
| said cover has a hardness which is higher than the surface hardness of the core by 1 to 15 degrees and a gage of 1.5 to 1.95 mm, and | The Pinnacle Exception's cover has a hardness which is higher than the surface hardness of the core by an amount that is within the scope of the claim range, and a gage that is also within the scope of the claim range. |
| the number of dimples is 360 to 450. | The Pinnacle Exception has 392 dimples. |
| **CLAIM 2** | |
| 2. The two-piece solid golf ball of claim 1 wherein said solid core experiences a distortion of 2.8 to 4.0 mm under a load of 100 kg. | The Pinnacle Exception's solid core experiences a distortion under a load of 100 kg that is within the scope of the claim range. |
| **CLAIM 4** | |
| 4. The two-piece golf ball of claim 1 wherein said cover has a hardness of 75 to 90 degrees as measured by a JIS-C scale hardness meter. | The Pinnacle Exception's cover has a hardness as measured by a JIS-C scale hardness meter that is within the scope of the claim range. |

# EXHIBIT 3

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

BRIDGESTONE SPORTS CO., LTD, and BRIDGESTONE GOLF, INC.,

Plaintiffs,

v.

ACUSHNET COMPANY,

Defendant.

C.A. No. 05-132 (JJF)

- - - - - - - - - - - - - - - - -

ACUSHNET COMPANY,

Plaintiff,

V.

BRIDGESTONE SPORTS CO., LTD, and BRIDGESTONE GOLF, INC.,

Defendants.

Wednesday, October 5, 2005
1:35 p.m.
Courtroom 4B

BEFORE: THE HONORABLE JOSEPH J. FARNAN, JR.
United States District Court Judge

you a copy of that.

THE COURT: That's probably why they've given you some because they're the ones you're going to see ultimately in the case. Your motion -- I mean, your request is important.

And I mean this seriously, that you should have detailed responses to your contention interrogatories. And when I'll get serious about it is when we have the claims and patents that are actually going to be in the case.

Now, there's no burden on you except what you would say is we don't know how to get our expert ready, but that goes to the timing of your motions or your agreement to get this case narrowed down.

When this case is narrowed down, I'm going to make them give you detailed contention responses.

MR. MOORE: Okay. Candidly, our problem now is that the case is so overwhelming, we're getting all this discovery. A large percentage of which -- I think we have ten boxes of Japanese documents. And our effort to prepare our defense is getting way late and just a burden

in this case.

THE COURT: Well, then it may be time to get it narrowed down by the end of the year.

MR. MOORE: And that's exactly the point we're going at.

THE COURT: See, I'd put that horse before the cart of getting the case narrowed before you bring motions to get their contentions detailed out.

MR. MOORE: Okay. Because we were also considering --

THE COURT: And maybe get an agreement to narrow the case. But if you can't get an agreement, bring it to me, and we'll get it narrowed.

MR. MOORE: We were thinking of filing Rule 11 and Rule 37 motions.

THE COURT: I would grant your motion if the case is where it's going to be. But if I grant the motion today, all I've done is caused a lot more paper to come over the transfer for no purpose, because it's going to go away. And you'd be preparing defenses against all that

paper.

So I understand what you need. It's a little too early, but you're going to get it. And that goes to that the time is going to be better for you.

MR. MOORE: One last fairness point here is that we've already provided this information to them on all the accused claims, all our invalidity claims, element by element, all our measurements, element by element.

We have already gone through that work trying to resolve the issues and focus the issues of this case. We've done a huge burden to go after all those claims.

THE COURT: And it's going to lay on the side of the scale that you should get an earlier claim reduction.

MR. MOORE: Okay.

THE COURT: I mean, that's the rational way to do this.

MR. MOORE: Yeah.

THE COURT: So stop giving them stuff and file the motion.

MR. MOORE: Okay.

This has four pieces. We identified which piece of the golf ball covers that claim limitation.

THE COURT: But you're both playing with each other, which is understandable. But, you know, maybe you ought to sit down and spend your time reaching an agreement on what you're actually going to try in this case. And if you can't agree, bring the dispute to me, because then I'll make them give you better answers, too.

MR. MASTERS: Your Honor, we understand that this is a large case. We will try to -- we will trim it down, but it's just so early in discovery right now. We're not prepared to select the best claim to present at trial.

THE COURT: Well, I guess you should have told me that in responses to your motion.

MR. MASTERS: It will be -- we'll try to work it out.

THE COURT: You know, these cases -- it's kind of like -- I had a case with DuPont, and who was it, Lucent or Verizon. Somebody couldn't tell you how many phones they sold to DuPont in a year.

# EXHIBIT 4

Only the Westlaw citation is currently available.

United States District Court,
D. Delaware.
FENSTER FAMILY PATENT HOLDINGS, INC., ELSCINT LTD., and Elscint Inc., Plaintiffs,
v.
SIEMENS MEDICAL SOLUTIONS USA, INC., Siemens Medical Systems, Inc., Siemens Corporation, and Siemens AG, Defendants.
**No. Civ.A.04-0038 JJF.**

Sept. 20, 2005.

Josy W. Ingersoll, John W. Shaw, Adam W. Poff, of Young Conaway Stargatt & Taylor, Wilmington, Delaware, Neil F. Greenblum, Michael J. Fink, Jill M. Browning, and Van C. Ernest, of Greenblum & Bernstein, P.L.C., for Plaintiffs, of counsel.

Arthur G. Connolly, III, of Connolly Bove Lode & Hutz, LLP, Wilmington, Delaware, Eugene M. Gelernter, Scott B. Howard, Chad J. Peterman, Melissa Mandrgoc, and Adrian H. von Hassell, of Patterson, Belknap, Webb & Tyler, LLP, New York, New York., for Defendants, of counsel.

*MEMORANDUM OPINION*

FARNAN, J.

*1 Presently before the Court are (1) Defendant Siemens' Motion For An Expedited Briefing Schedule (D.I.69); (2) Defendant Siemens' Motion For A Protective Order With Respect To Plaintiffs' Rule 30(b)(6) Deposition Notice (D.I.70); (3) Defendants' Combined Emergency Motion Pursuant To The Rule 16 Scheduling Order To: (1) Limit The Number Of Asserted Claims, And (2) Modify The Existing Schedule (D.I.71); (4) Defendants' Rule 37 Motion To Compel Discovery (D.I.72); (5) Plaintiffs' Motion To Compel Responses To Interrogatory Nos. 9 And 10 And Alleged Joint Defense Communications (D.I.74); (6) Plaintiffs' Motion To Compel 30(b)(6) Witness (D.I.75); (7) Plaintiffs' Renewed Motion For Access To Defendants' Intranet (D.I.80); (8) Plaintiffs' Revised Motion To Compel Discovery Responses With Respect To Sienet Product (D.I.84); (9) Plaintiffs' Motion To Quash And/Or In The Alternative For Protective Order In Response To Defendants; Notice Of Deposition And Subpoena Duces Tecum Issued On March 16, 2005 To General Electric Company And General Electric Medical Systems, Inc. (D.I.101); (10) Plaintiffs' Motion To Compel Deposition Testimony Of Mssrs. Ruggiero And Keller (D.I.107); (11) Plaintiffs' Motion To Preclude Defendants From Relying On Expert Testimony (D.I.113); and (12) Siemens' Conditional Cross-Motion To Preclude Plaintiffs From Offering Expert Testimony On Infringement (D.I.114).

BACKGROUND

This is a lawsuit filed by Fenster Family Patent Holdings, Inc. ("Fenster"), Elscint Ltd., and Elscint, Inc. (collectively, "Fenster") against Siemens Medical Solutions USA, Inc., Siemens Medical Systems, Inc., Siemens Corporations, and Siemens AG, (collectively, "Siemens"). Fenster asserts eight unrelated patents against Siemens: U.S. Patent Nos. 4,555,728 ("the '728 patent"); 4,693,864 ("the '864 patent"); 4,459,990 ("the '990 patent"); 4,685,146 ("the '146 patent"); 4,644,398 ("the '398 patent"); 4,595,949 ("the '949 patent"); 4,590,518 ("the '518 patent'); 4,777,620 ("the '620 patent"). Fenster seeks declarations of infringement, willful infringement, inducement of infringement, and contributory infringement plus damages and permanent injunctive relief. Fenster alleges that each of the patents in suit is owned by Elscint Ltd. and exclusively licensed to Fenster Family Patent Holdings, Inc.

The technology at issue is generally referred to as Digital Angiography and Digital Fluoroscopy ("DF"). DF refers to X-ray diagnostic apparatus and techniques that are used to measure cardiovascular function.

Plaintiff Fenster Family Patent Holdings, Inc. is a Delaware corporation with its principal place of business in Wilmington, Delaware. Plaintiff Elscint Ltd. is an Israeli Company located in Tel Aviv, and is the owner of the patents-in-suit. Plaintiff Elscint Inc. is a Massachusetts corporation, and a wholly owned U.S. subsidiary of parent company Elscint Ltd.

Defendant Siemens Medical Solutions USA, Inc. is a Delaware corporation, with its principal place of business in Malvern, Pennsylvania. Fenster alleges that Siemens Medical Solutions USA, Inc. is a

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

wholly owned subsidiary of Defendant Siemens AG.

*2 Defendant Siemens Medical Systems, Inc is a Delaware corporation with its principal place of business in Iselin, New Jersey Fenster alleges that Siemens Medical Systems, Inc. is a wholly owned subsidiary of Defendant Siemens AG.

Defendant Siemens Corporation is a Delaware corporation with its principal place of business in New York, New York. Fenster alleges that Siemens Corporation is a wholly owned subsidiary of Defendant Siemens AG and is the parent corporation of Siemens Medical Solutions USA, Inc. and Siemens Medical Systems, Inc.

Defendant Siemens AG is organized under the laws of Germany, with its principal place of business in Munich, Germany Fenster alleges that Siemens AG includes a medical technology business unit, Siemens Medical Solutions (Germany).

Fenster filed its Complaint (D.I.1) on January 20, 2004. On February 6, 2004, Fenster filed a First Amended Complaint (D.I.12). On July 7, 2004, the Court entered a Rule 16 Scheduling Order, whereby Fact Discovery ended on March 15, 2005, and the deadline for filing case dispositive motions was August 12, 2005. There is a *Markman* hearing scheduled on October 3, 2005, a Pretrial Conference scheduled on November 10, 2005, and a jury trial scheduled to begin on January 17, 2006.

On November 22, 2004, the Court held a discovery hearing at which the Court granted Siemens' Motion For Bifurcation (D.I.38) with regard to damages and denied it with regard to willfulness At the November 22 hearing, the Court also ruled on a Revised Motion To Compel (D.I 46-1) filed by Fenster denying access to the Siemens' electronic database or Intranet and granting access to documents related to products wherein a cardiac diagnostic image from an X-ray is received and processed.

In compliance with the Scheduling Order, on February 8, 2005, Fenster identified 90 patent claims and listed 49 accused products.

## DISCUSSION

The motions pending in this case can be divided into two categories (1) motions related to the scope of discovery, and (2) other discovery motions.

I. Motions Related To The Scope Of Discovery

At the heart of most of the discovery related motions is Siemens' contention that the 90 claims and 49 accused products asserted by Fenster are unreasonable in number and that Siemens cannot prepare its defense or maintain the current case schedule under these conditions Fenster, in turn, seeks to compel Siemens to respond to its discovery requests.

A. *Defendants' Motion For An Expedited Briefing Schedule (D.I.69)*

By its Motion, Siemens requests an order expediting the briefing schedule with regard to Siemens' Combined Emergency Motion Pursuant To The Rule 16 Scheduling Order to limit the number of claims asserted and modify the existing schedule. In response, Fenster contends that Siemens has failed to diligently pursue its discovery and has impeded Fenster from conducting discovery. Specifically, Fenster contends that Siemens has failed to notice depositions, has not pursued publicly available foreign patent documents, has refused to present any witnesses in response to Fenster's 30(b)(6) notice for February 14, 2005, and has produced documents long after the December 2004 date by which the Court wanted document production to be completed.

*3 Because this motion has been pending for several months, the Court will deny Defendants' Motion For An Expedited Briefing Schedule.

B. *Defendants' Combined Emergency Motion Pursuant To The Rule 16 Scheduling Order To: (1) Limit The Number Of Asserted Claims. And (2) Modify The Existing Schedule (D.I.71)*

By its motion, Siemens requests an order limiting the number of claims and modifying the existing schedule Specifically, Siemens contends that allowing Fenster to assert 90 claims is unreasonable. Further, Siemens contends that, because Fenster expanded the scope of this litigation five weeks before the close of fact discovery and eleven weeks before the date for expert reports on validity, Siemens is unable to prepare its defenses. Siemens further contends that Fenster has impeded discovery by refusing to make all inventors available for depositions and failing to produce key documents (the subject of a separate rule 37 motion). Siemens requests that the current schedule be modified as follows: fact discovery will end eight weeks after Fenster identifies a reasonable number of asserted claims and a reasonable number of accused products; opening expert reports will be due four weeks after

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

the close of fact discovery (instead of six weeks under the current scheduling order); rebuttal expert reports would be due four weeks after opening expert reports; and the remainder of the schedule be adjusted accordingly.

In response, Fenster contends that the number of asserted claims should not be further limited because Fenster will likely limit them after full discovery. Further, Fenster contends that the Court indicated at the November 22, 2004, discovery hearing that the parties would not lose their trial date Fenster also contends that Siemens has not noticed a single deposition, and has failed to provide a 30(b)(6) witness.

The Court agrees with Siemens that Fenster's number of asserted claims is unreasonable. The Court would prefer the parties to address such issues among themselves, but when that does not happen; the Court must intervene The Court finds that Fenster should be limited, at this juncture, to ten (10) claims and five (5) products asserted. This decision is obviously arbitrary; however, it is appropriate from the viewpoint of the typical patent litigation Because a modification of the Scheduling Order is required as a result of the Court's decision, the Court will order the parties to submit a proposed, revised scheduling order for the Court's consideration.

C. *Defendants' Motion For A Protective Order With Respect To Plaintiffs' Rule 30(b)(6) Deposition Notice (D.I 70)*

By its Motion, Siemens contends that Fenster' Rule 30(b)(6) deposition notice is overly broad and unduly burdensome because it designates "all versions" of 49 different products as "Accused Products," and seeks testimony on a multitude of topics (36 subject matter categories) for each of them. As relief, Siemens seeks the entry of a protective order. Based on the Court's decision reducing the number of asserted claims, the Court will deny this motion as moot.

D. *Siemens' Rule 37 Motion To Compel Discovery (D.I. 72)*

*4 By its motion, Siemens contends that Fenster has failed to produce: file histories of foreign counterpart applications, and related documents; documents relating to conception, reduction-to-practice, and best mode, in response to Document Requests No. 14 and 15; complete answers to Siemens' Interrogatories 3 and 4, which ask for information relating to Siemens' laches defense and the priority dates for the patents-in-suit. In response, Fenster contends that Fenster's foreign file histories are publically available, that Fenster has no other documents that are responsive to Document Requests 14 and 15, and that Fenster has fully responded to Interrogatory Nos. 13 and 14. Because the Court has limited the number of asserted claims and accused products and will modify the schedule in this case, the Court will deny this motion with leave to renew.

E. *Fenster' Motion To Compel Responses To Interrogatory Nos. 9 And 10 And Alleged Joint Defense Communications (D.I 74)*

By its motion, Fenster moves to compel Siemens to respond to Interrogatory Nos. 9 and 10 of Fenster' Second Set of Interrogatories. Specifically, Fenster seeks the dates of the first and last sales of each of the identified products. In response, Siemens asserts that these interrogatories seek information duplicative of that requested in Fenster's Interrogatory Nos. 1 and 2.

In reply to Siemens' argument, Fenster contends that Interrogatory Nos. 1 and 2 requested that Siemens identify each model and all components made, used, sold, offered for sale and/or imported since 1994. Fenster contends that identification of the models and components sold since 1994 is different from identification of the first and last dates of sale.

Because the Court has limited the number of asserted claims and accused products and will modify the schedule in this case, the Court will deny this motion with leave to renew.

F. *Fenster's Motion To Compel 30(b)(6) Witness (D.I.75)*

Because the Court has denied as moot Siemens' Motion For A Protective Order With Respect To Fenster's Rule 30(b)(6) Deposition Notice (D.I.70), the Court will likewise deny as moot Fenster's Motion To Compel 30(b)(6) Witness

G. *Fenster's Motion To Preclude Siemens From Relying On Expert Testimony (D.I 113)*

By its motion, Fenster moves to preclude Siemens from relying on expert testimony because Siemens failed to serve its expert reports prior to April 22, 2005, the date specified in the Scheduling Order. In response, Siemens contends that Fenster's designation of 90 asserted claims made it impossible for Siemens' experts to conduct a meaningful validity analysis.

© 2005 Thomson/West No Claim to Orig U.S. Govt. Works.

Because the Court has limited the number of asserted claims and accused products and will modify the schedule in this case, the Court will deny this motion as moot.

H. *Siemens' Conditional Cross-Motion To Preclude Fenster From Offering Expert Testimony On Infringement (D.I.114)*

Siemens' Conditional Cross-Motion To Preclude Fenster From Offering Expert Testimony On Infringement (D.I.114) is related to Fenster's Motion To Preclude Siemens From Relying On Expert Testimony (D.I.113). Because the Court has limited the number of asserted claims and accused products and will modify the schedule in this case, the Court will deny this motion as moot.

II. Other Discovery Motions

A. *Fenster's Renewed Motion For Access To Siemens' Intranet (D.I. 80)*

*5 By its motion, Fenster renews its motion to compel Siemens to provide Fenster with access to its corporate Intranet or other electronic databases or networks. The Court denied Fenster's original motion on November 22, 2004, stating that the Court based its decision in part on Siemens' representation that the production would be in a searchable electronic format. However, Fenster contends that two developments warrant reconsideration of this issue. First, Fenster contends that Siemens provided access to documents in two warehouses, which requires document-by-document review of over a million pages of documents without the benefit of any type of electronic searching. Second, Fenster contends that Siemens produced other large batches of documents in electronic format, but many of these documents are not in searchable format.

In response, Siemens contends that Fenster's motion is a motion for reconsideration, not a renewed motion. Siemens contends that it will produce the specific documents that Fenster has previously identified as non-searchable in "searchable form." Further, Siemens contends that some older documents are only available on microfilm, are not on the Intranet, and that Siemens fulfilled its obligations under the Federal Rules by producing them in the format in which they are maintained.

In a letter to the Court (D.I.106), Fenster cites deposition testimony of a Siemens' employee wherein the employee states that it would be easy to determine whether there were any documents from Pie Medical on Siemens' Intranet. Fenster contends that Siemens has not produced any documents from Pie Medical and that this testimony is new evidence that shows Fenster's motion for access to Siemens' Intranet should have been granted.

The Court finds that Fenster has not demonstrated an intervening change in controlling law, the availability of new evidence that was not available when the Court issued its first Order, or the need to correct a clear error of law or fact to prevent a manifest injustice. Accordingly, the Court will deny this motion.

B. *Fenster's Revised Motion To Compel Discovery Responses With Respect To Sienet Product (D.I.84)*

By its motion, Fenster seeks production of documents related to Siemens' SIENET. Fenster contends that SIENET is a Picture Archiving and Communication System ("PACS"), which is relevant to this litigation. Fenster acknowledges that Siemens' responses to Fenster's most recent discovery requests were not due until March 7, 2005, after Fenster filed its motion.

In response, Siemens contends that SIENET comprises three components: patient management, long-term image archiving (known as PACS), and image post processing. Siemens contends that SIENET allows for the linking of image data from various x-ray imaging systems and provides data on a patient-based scheme to radiologists. Further, Siemens contends that SIENET has a component with PACS functionality that is merely used in part for long-term storage and archiving. Because the x-ray imaging systems function independently of SIENET and discovery is limited to digital x-ray imaging systems, Siemens contends that SIENET is outside the scope of discovery. Siemens further contends that SIENET is capable of operating with a host of x-ray systems (such as MRI, CT scanning, ultra-sound, and nuclear medicine) that are outside the scope of this litigation.

*6 The Court will deny Fenster's motion on two grounds. First, the Court concludes that this motion was filed prematurely, before Siemens' discovery responses were due. Second, it appears to the Court that SIENET is not a digital x-ray imaging system, but rather a way to knit such a system together with other components. Accordingly, the Court concludes that SIENET is outside the scope of discovery.

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

C. *Fenster' Motion To Quash And/Or In The Alternative For Protective Order In Response To Siemens' Notice Of Deposition And Subpoena Duces Tecum Issued On March 16, 2005 To General Electric Company And General Electric Medical Systems, Inc. (D.I.101)*

By its motion, Fenster seeks to quash Siemens' notice of deposition with regard to a Rule 30(b)(6) Deposition of General Electric Company and General Electric Medical Systems, Inc. (collectively, "GE") and a subpoena duces tecum, both issued on March 16, 2005, after the close of fact discovery.

In response, Siemens contends that because its counsel represents GE in unrelated matters, counsel could not take third-party discovery from GE without obtaining a waiver from GE of any conflict of interest that may be presented by taking such discovery. Siemens contends that Fenster stood in the way of Siemens' attempts to obtain the waiver. On March 9, 2005, GE informed Siemens' counsel that it would not waive the conflict. Thus, Siemens had to retain other counsel, and served the subpoena less than a week after GE's refusal. Siemens also contends that a decision by the Court to modify the existing schedule would moot Fenster's objections to the GE subpoena.

Because the Court has limited the number of asserted claims and accused products and will modify the schedule in this case, the Court will deny this motion.

D. *Fenster' Motion To Compel Deposition Testimony Of Mssrs. Ruggiero And Keller (D.I.107)*

By its motion, Fenster contends that it deposed two Siemens Medical Solutions employees, Tom Ruggiero on April 6, 2005, and Mike Keller on April 7, 2005. Fenster contends that, during each deposition, counsel for Siemens instructed each witness not to testify regarding a device called "AXIS." Fenster moves to compel further deposition testimony of Messrs. Ruggiero and Keller with regard to AXIS pursuant to Federal Rule of Civil Procedure 26(b)(1) and 37(a)(2). Fenster contends that Siemens' counsel's instructions not to answer questions about AXIS were improper because the line of questioning did not involve a matter of privilege.

In response, Siemens contends that the design for the AXIS project has not been finalized and it remains in flux. Siemens further contends that there is no commercial AXIS product because Siemens has not yet sought or obtained FDA approval for a commercial product. Thus, Siemens contends that discovery with regard to AXIS is not reasonably calculated to lead to discovery of relevant information.

The Court limited the scope of discovery in this case to digital x-ray imaging systems. In its briefing, neither party addresses whether AXIS is a digital x-ray imaging system, but it seems to be one that is still in the stages of research and development. Accordingly, the Court will deny this motion, because it is directed to a yet to be developed product which appears to be outside the scope of discovery set by the Court.

CONCLUSION

*7 For the reasons discussed, the Court will (1) deny Defendant Siemens' Motion For An Expedited Briefing Schedule (D.I.69); (2) deny as moot Defendant Siemens' Motion For A Protective Order With Respect To Plaintiffs' Rule 30(b)(6) Deposition Notice (D.I.70); (3) grant Defendants' Combined Emergency Motion Pursuant To The Rule 16 Scheduling Order To: (1) Limit The Number Of Asserted Claims, And (2) Modify The Existing Schedule (D.I.71); (4) deny with leave to renew Defendants' Rule 37 Motion To Compel Discovery (D.I.72); (5) deny with leave to renew Plaintiffs' Motion To Compel Responses To Interrogatory Nos. 9 And 10 And Alleged Joint Defense Communications (D.I.74); (6) deny as moot Plaintiffs' Motion To Compel 30(b)(6) Witness (D.I.75); (7) deny Plaintiffs' Renewed Motion For Access To Defendants' Intranet (D.I.80); (8) deny Plaintiffs' Revised Motion To Compel Discovery Responses With Respect To Sienet Product (D.I.84); (9) deny Plaintiffs' Motion To Quash And/Or In The Alternative For Protective Order In Response To Defendants; Notice Of Deposition And Subpoena Duces Tecum Issued On March 16, 2005 To General Electric Company And General Electric Medical Systems, Inc. (D.I.101); (10) deny Plaintiffs' Motion To Compel Deposition Testimony Of Mssrs. Ruggiero And Keller (D.I.107); (11) deny as moot Plaintiffs' Motion To Preclude Defendants From Relying On Expert Testimony (D.I.113); and (12) deny as moot Siemens' Conditional Cross-Motion To Preclude Plaintiffs From Offering Expert Testimony On Infringement (D.I.114).

An appropriate Order will be entered.

*ORDER*

At Wilmington, this *20* day of September 2005, for the reasons set forth in the Memorandum Opinion issued this date;

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works

IT IS HEREBY ORDERED that:

1. Defendant Siemens' Motion For An Expedited Briefing Schedule (D.I.69) is *DENIED*.

2. Defendant Siemens' Motion For A Protective Order With Respect To Plaintiffs' Rule 30(b)(6) Deposition Notice (D.I.70) is *DENIED AS MOOT*.

3. Defendants' Combined Emergency Motion Pursuant To The Rule 16 Scheduling Order To: (1) Limit The Number Of Asserted Claims, And (2) Modify The Existing Schedule (D.I.71) is *GRANTED*. The parties shall submit a revised, proposed scheduling order within twenty (20) days of the date of this Order.

4. Defendants' Rule 37 Motion To Compel Discovery (D.I.72) is *DENIED WITH LEAVE TO RENEW*.

5. Plaintiffs' Motion To Compel Responses To Interrogatory Nos. 9 And 10 And Alleged Joint Defense Communications (D.I.74) is *DENIED WITH LEAVE TO RENEW*.

6. Plaintiffs' Motion To Compel 30(b)(6) Witness (D.I.75) is *DENIED AS MOOT*.

7. Plaintiffs' Renewed Motion For Access To Defendants' Intranet (D.I.80) is *DENIED*.

8. Plaintiffs' Revised Motion To Compel Discovery Responses With Respect To Sienet Product (D.I.84) is *DENIED*.

9. Plaintiffs' Motion To Quash And/Or In The Alternative For Protective Order In Response To Defendants; Notice Of Deposition And Subpoena Duces Tecum Issued On March 16, 2005 To General Electric Company And General Electric Medical Systems, Inc. (D.I.101) is *DENIED*.

***8** 10. Plaintiffs' Motion To Compel Deposition Testimony Of Mssrs. Ruggiero And Keller (D.I.107) is *DENIED*.

11. Plaintiffs' Motion To Preclude Defendants From Relying On Expert Testimony (D.I.113) is *DENIED AS MOOT*.

12. Siemens' Conditional Cross-Motion To Preclude Plaintiffs From Offering Expert Testimony On Infringement (D.I.114) is *DENIED AS MOOT*.

Slip Copy, 2005 WL 2304190 (D.Del.)

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.