# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF DELAWARE

BRIDGESTONE SPORTS CO., LTD.,
and BRIDGESTONE GOLF, INC.,

               Plaintiffs,

      v.

ACUSHNET COMPANY,

            Defendant.

C.A. No.  05-132 (JJF)

---

## BRIDGESTONE'S ANSWERING BRIEF IN OPPOSITION TO ACUSHNET'S MOTION TO BIFURCATE LIABILITY FROM DAMAGES AND WILLFULNESS

MORRIS, NICHOLS, ARSHT & TUNNELL
Jack B. Blumenfeld (#1014)
Maryellen Noreika (#3208)
Leslie A. Polizoti (#4299)
1201 N. Market Street
P.O. Box 1347
Wilmington, DE  19801
(302) 658-9200
   *Attorneys for Bridgestone Sports Co., Ltd.*
   *and Bridgestone Golf, Inc.*

OF COUNSEL:

Robert M. Masters
John T. Callahan
Raja Saliba
SUGHRUE MION, PLLC
2100 Pennsylvania Avenue, N.W.
Washington, DC  20037
(202) 293-7060


December 16, 2005

i.

## TABLE OF CONTENTS

| | Page |
|---|---|
| TABLE OF CITATIONS | ii |
| NATURE AND STAGE OF THE PROCEEDING | 1 |
| SUMMARY OF ARGUMENT | 2 |
| STATEMENT OF FACTS | 4 |
| ARGUMENT | 5 |
|     I.    DISCOVERY SHOULD NOT BE BIFURCATED. | 5 |
|         A.    Bifurcation Would Prejudice Bridgestone. | 5 |
|         B.    Damages And Liability Issues Cannot Be Cleanly Severed. | 6 |
|         C.    Bifurcation Would Be Costly And Wasteful As It Would Require Repeated Visits To The U.S. By Bridgestone Personnel. | 7 |
|         D.    The Scope Of This Case Does Not Warrant The Exceptional Remedy Of Bifurcated Discovery. | 7 |
|         E.    Bridgestone Seeks A Prompt Resolution Of This Dispute. | 8 |
|     II.    ACUSHNET'S MOTION TO BIFURCATE THE TRIAL IS PREMATURE. | 9 |
| CONCLUSION | 10 |

## TABLE OF CITATIONS

Page(s)

Cases

*Callaway Golf Co. v. Dunlop Slazenger,*
    2004 U.S. Dist. LEXIS 15498 (D.Del. 2004)    10

*Critikon, Inc. v. Becton Dickinson Vascular Access, Inc.,*
    C.A. No. 93-108-JJF (D.Del. Sept. 30, 1993)    9

*Datastrip Ltd. v. Symbol Techs., Inc.,*
    C.A. No. 97-70-JJF (D.Del. Jan. 7, 1998)    5, 9

*Fuji Mach. Mfg. Co., Ltd. v. Hover-Davis Inc.,*
    982 F. Supp. 923 (W.D.N.Y. 1997)    8

*General Signal Corp. v. Applied Materials Inc.,*
    46 U.S.P.Q.2d 1160 (D.Del. 1997)    9

*Matsushita Elec. Indus. Co., Ltd. v. Cinram Int'l, Inc.,*
    C.A. No. 01-882-SLR (D.Del. Dec. 15, 2003)    7, 8, 9

*Novartis Pharms. Corp. v. EON Labs. Mfg., Inc.,*
    206 F.R.D. 396 (D.Del. 2002)    7

*Security and Access Ltd. v. Motorola, Inc.,*
    C.A. No. 96-287-SLR (D.Del. March 4, 1997)    9

*Square D Co. v. Power Measurement Ltd.,*
    C.A. No. 95-201-SLR (D.Del. Oct. 5, 1995)    10

*St. Clair Intellectual Property Consultants, Inc. v. Canon, Inc.,*
    C.A. No. 03-241-JJF (D.Del. Feb. 12, 2004)    7

*St. Clair Intellectual Property Consultants, Inc. v. Sony Corp.,*
    C.A. No. 05-557-JJF (D.Del. Aug. 16, 2002)    7

*Willemijn Houdstermaatschaapij BV v. Apollo Computer Inc.,*
    707 F. Supp. 1429 (D.Del. 1989)    6, 9

1.

## NATURE AND STAGE OF THE PROCEEDING

Bridgestone filed this patent infringement action more than nine months ago, on March 7, 2005 (D.I. 1). Acushnet filed its Answer and Counterclaims on April 28, 2005 (D.I. 7). Trial is scheduled to commence on April 18, 2007 (D.I. 18, ¶ 9).

During the negotiation of the scheduling order last Spring, Acushnet raised as an issue "consideration of the bifurcation suggestion i.e. all liability issues vs. damages - discovery and trial" (Exh. A). Just before the parties submitted their proposals to the Court, however, on June 3, 2005, Acushnet's counsel advised us that *"[w]e have decided not to push for bifurcated discovery and trial of damages . . ."* (Exh. B).

On June 10, Acushnet served discovery, including numerous document requests directed at damages, including such things as "marketing plans, forecasts, projections," "market forecasts, sales projections, financial projections or profit margins," "costs, returns, discounts and rebates," and "[a]ll documents referring or relating to any computation, calculation or estimates of damages suffered by Bridgestone whether in terms of lost profits or royalties . . ." (Exh. C, ¶ 32-37). As late as November 22, 2005, Acushnet was still pursuing damages discovery. (Exh. D).

Discovery has been ongoing since June 2005. Pursuant to the Court's June 29, 2005 Scheduling Order (D.I. 18, ¶ 3), the parties were to have completed document production by August 31, 2005. Bridgestone has timely produced its documents to Acushnet, including Bridgestone's sensitive financial documents.

Now, after it decided not to raise bifurcation six months ago, and after a schedule has been set and the parties are well into discovery, Acushnet seeks to bifurcate both discovery

and trial on damages and willfulness.  This is Bridgestone's brief in opposition to Acushnet's motion.

## SUMMARY OF ARGUMENT

During the negotiation preceding the scheduling conference last June, Acushnet raised, but then dropped, bifurcation of discovery and trial.  Acushnet and Bridgestone then both requested damages documents and served interrogatories on the issues of damages.  The parties were supposed to complete production by August 31, 2005.  Acushnet did not advise Bridgestone that it was withholding responsive financial documentation called for by Bridgestone's discovery requests.  On November 22, 2005 (just over a week before filing the pending motion to bifurcate), Acushnet acknowledged that it had not produced "massive" amounts of responsive financial documentation.

Having failed to comply with the Court's discovery deadline, and having received Bridgestone's financial documentation, Acushnet now requests the Court to stay discovery on damages and willfulness pending a liability determination.  Acushnet's proposed changes to the discovery schedule would, if permitted, result in substantial prejudice to Bridgestone.

Bridgestone would be prejudiced by the considerable delay that would result from separated discovery periods.  After more than two years of settlement discussions, the parties failed to reach an agreement.  Bridgestone then filed this lawsuit.  The proposed bifurcation would further delay the resolution of the issues between the parties.

In addition, many of Bridgestone's witnesses are Japanese.  To force those witnesses to testify more than once, including repeated trips to the United States (*i.e.*, for a liability-phase deposition, at the liability phase of the trial, for damages and/or willfulness

deposition(s), and for the damages/willfulness phase of the trial) would be wasteful and disruptive to Bridgestone's business.

Further, bifurcation would likely result in contentious and time-consuming motion practice resulting from the difficulty in attempting to divide out issues that cannot be cleanly divided. *See Dentsply Int'l v. New Tech. Co.*, C.A. 96-272 MMS, 1996 U.S. Dist. LEXIS 19846 (D.Del. Dec. 19, 1996) ("More importantly, a stay of discovery on antitrust issues would most likely devolve into a series of time-consuming and expensive discovery disputes as to whether particular discovery is directed at the patent or antitrust claims. Efficiency dictates that discovery on all claims, including the antitrust counterclaims, continue apace.").

Acushnet also bases its motion on an overstatement of the complexity of the case. Although there are fifteen patents in suit, many of the patents are related, thus reducing the alleged complexity. In many instances, the technology and limitations at issue are basic and easy to understand (e.g., hardness, thickness, diameter, etc.).

Finally, Acushnet's motion to bifurcate the trial is premature. The way in which this case should be tried will depend on what issues remain in the case at the time of trial. The issues that will be tried cannot be sufficiently identified at this stage of discovery. That decision should be made after discovery, claim construction and summary judgment proceedings, at the pretrial conference.

4.

## <u>STATEMENT OF FACTS</u>

The facts relevant to this motion are set forth in the preceding sections.

## ARGUMENT

### I.    DISCOVERY SHOULD NOT BE BIFURCATED.

#### A.    Bifurcation Would Prejudice Bridgestone.

Acushnet has the burden to demonstrate that bifurcation is warranted. *Datastrip Ltd. v. Symbol Techs., Inc.*, C.A. No. 97-70-JJF, at p. 5 (D.Del. Jan. 7, 1998) (Exh. E). The bare suggestion that a party moving for bifurcation might save some time, expense or effort will not support the grant of a motion to bifurcate. *Id.* Acushnet has asserted a savings of time, expense or effort, while ignoring the prejudice the grant of its motion would cause to Bridgestone. This is insufficient to warrant a stay of discovery. This is particularly so when Acushnet decided not to seek bifurcation last June, proceeded with discovery -- including damages discovery -- for six months, and when document production was then ordered to be completed on all issues more than three months ago.

Staying discovery now -- after Acushnet has requested and received Bridgestone's damages documents -- would give Acushnet an unfair advantage for purposes of both trial and settlement discussions. Acushnet has already received Bridgestone's financial documents, whereas Bridgestone has only partial and incomplete financial information regarding the sale of the infringing Acushnet golf balls. Despite the August 31, 2005 document production deadline, nearly three months later, on November 22, 2005, Acushnet's counsel advised Bridgestone that Acushnet had failed to produce "massive" amounts of financial documentation responsive to Bridgestone's document requests. (Exh. D). Thus, Acushnet has denied Bridgestone critical financial documentation that should have been produced long ago. To bifurcate discovery now would leave Acushnet in a substantially better position than Bridgestone with respect to the production of financial documentation and would reward Acushnet for its failure to comply with

its discovery obligations. Acushnet's motion to bifurcate discovery should be denied for this reason alone.

Bridgestone would also be prejudiced by a stay of discovery in connection with a potential settlement. Acushnet has in hand Bridgestone's detailed financial information. Although Bridgestone should have Acushnet's detailed financial documentation, Acushnet's unilateral decision to withhold "massive" amounts of financial documentation has prevented this from happening. Bridgestone is thus without critical information that could facilitate settlement.

### B.     Damages And Liability Issues Cannot Be Cleanly Severed.

The damages issues cannot be cleanly severed from the liability issues in this case. Commercial success and licensing -- issues for which relevant discovery would be withheld under Acushnet's proposed bifurcation -- are important secondary considerations that would be relevant to rebut an obviousness allegation by Bridgestone. Similarly, sales and marketing documents go directly to the issue of the nexus of any secondary considerations upon which Acushnet may rely in support of the patentability of its claims. Thus, bifurcation is likely to complicate fact discovery and lead to time-consuming and expensive discovery disputes as to where particular discovery falls. *See Dentsply*, 1996 U.S. Dist. LEXIS 19846; *Willemijn Houdstermaatschaapij BV v. Apollo Computer Inc.*, 707 F. Supp. 1429, 1435 (D.Del. 1989) ("it appears that, if the motion to bifurcate were granted, both the discovery process and the liability trial would be repeatedly delayed by disputes regarding the discovery or admissibility of evidence").

The willfulness issues also cannot be cleanly separated from liability. The documents and testimony on the willfulness issues are also relevant to the issue of whether Acushnet is infringing Bridgestone's patents or whether the Bridgestone patents are invalid.

*Matsushita Elec. Indus. Co., Ltd. v. Cinram Int'l, Inc.*, C.A. No. 01-882-SLR (D.Del. Dec. 15, 2003) (Exh. F).  Bifurcating that issue will not simplify discovery.  *St. Clair Intellectual Property Consultants, Inc. v. Canon, Inc.*, C.A. No. 03-241-JJF (D.Del. Feb. 12, 2004) (Exh. G).[2]

> **C.     Bifurcation Would Be Costly And Wasteful As It Would Require Repeated Visits To The U.S. By Bridgestone Personnel.**

Many of the witnesses Acushnet is likely to want to depose and that Bridgestone is likely to call at trial live in Japan.  Bridgestone has agreed to bring these witnesses to the United States for deposition.  Bifurcation would require these witnesses to make repeated trips to the United States (*i.e.*, for a liability-phase deposition, to testify at the liability phase of the trial, for damages and/or willfulness deposition(s), and for the damages/willfulness phase of the trial).  This would be time consuming, costly and wasteful.  As the plaintiff, Bridgestone anticipates some disruption of its business.  There is no reason to exacerbate such disruption.

> **D.     The Scope Of This Case Does Not Warrant The Exceptional Remedy Of Bifurcated Discovery.**

Acushnet's motion is based on an overstatement of the complexity of this case.  Although there are fifteen patents in suit, many are related and all relate to golf balls.  Those share common limitations that are easy to understand (e.g., hardness, thickness, diameter, etc.).

---

[2]     In *St. Clair Intellectual Property Consultants, Inc. v. Sony Corp.*, C.A. No. 05-557-JJF (D.Del. Aug. 16, 2002) (Moore Exhibit 9), this Court denied Sony's motion to bifurcate damages, but bifurcated willfulness, for both discovery and trial.  The basis for the Court's decision to stay discovery and bifurcate the trial with respect to *willfulness* was due to a substantive change in the law regarding a parties' discovery obligations when relying on opinions of counsel (i.e., a broadening of discovery obligations).  *Id.* at 2-3 (explaining recently issued decision in *Novartis Pharms. Corp. v. EON Labs. Mfg., Inc.*, 206 F.R.D. 396 (D.Del. 2002)).

Acushnet has had several years to digest the issues in this case. Acushnet is the leading manufacturer of golf balls in the United States and, according to its own marketing materials, markets the "#1 ball in golf." Acushnet is certainly capable of litigating all issues in this multi-patent case.

Acushnet's contention that "numerous experts" will be required to present damages issues (Acushnet Br. at p. 4) is similarly exaggerated. Typically each party in a patent case retains only one economic expert to testify on damages issues. These experts are asked to analyze multiple damages scenarios. Indeed, this is the type of analysis these experts routinely perform. In any event, whether to bifurcate trial is an issue that should be decided during the pre-trial conference, not now.

The damages issues in the case should be straightforward. Bridgestone is seeking a reasonable royalty, not lost profits, further simplifying the damages issues. Acushnet's arguments regarding the supposed complexity of this case are nothing more than boilerplate recitations that this is a complex case. Acushnet's arguments do not distinguish this case from any other patent case. *See Matsushita* (citing *Fuji Mach. Mfg. Co., Ltd. v. Hover-Davis Inc.*, 982 F. Supp. 923, 924 (W.D.N.Y. 1997)) (holding that bifurcation of discovery is, even in patent cases, the exception, not the rule) (Exh. F).

**E.    Bridgestone Seeks A Prompt Resolution Of This Dispute.**

Finally, Bridgestone wants a prompt resolution of its infringement claims against Acushnet. This dispute has been lingering for several years. Bridgestone attempted to resolve this dispute through two years of settlement discussions. Bridgestone then filed this lawsuit. Acushnet should not be able to delay the resolution of the case by delaying both discovery and trial of certain issues. This bifurcation motion is just another in a long line of attempts to slow

this case. Bridgestone wants a determination of its claims that will not be delayed by bifurcation. *See Willemijn Houdstermaatschaapij BV*, 707 F. Supp. at 1435 ("prejudice under those circumstances may simply amount to unfair delay of the final disposition of the matter").

## II.  ACUSHNET'S MOTION TO BIFURCATE THE TRIAL IS PREMATURE.

The decision to bifurcate issues for trial is one left to this Court's sound discretion in consideration of the facts of a particular case. *Critikon, Inc. v. Becton Dickinson Vascular Access, Inc.*, C.A. No. 93-108-JJF (D.Del. Sept. 30, 1993) (refusing to bifurcate discovery and trial on issues of liability and damages, including willfulness, issues) (Exh. H).  It is Acushnet's burden to prove "that bifurcation is warranted in light of the general principle that a single trial tends to lesson the delay, expense and inconvenience to all the parties." *Datastrip*, at p. 5 (Exh. E); *Matsushita* ("Even if bifurcation might somehow promote judicial economy, courts should not order separate trials when bifurcation would result in unnecessary delay, additional expense, or some other form of prejudice.") (Exh. F); *Willemijn Houdstermaatschaapij BV*, 707 F. Supp. at 1433.

Trial of this case is scheduled for April of 2007, nearly a year and a half from now.  Thus, regardless of the merits of Acushnet's position, the case is not sufficiently advanced to determine the appropriateness of bifurcation.  In *General Signal Corp. v. Applied Materials Inc.*, 46 U.S.P.Q.2d 1160 (D.Del. 1997), this Court found that a party's contentions regarding the appropriateness of bifurcation were premature prior to the final pre-trial conference and, accordingly, denied the motion to bifurcate the liability and willfulness issues while permitting the defendant to raise the issue later. *See also Security and Access Ltd. v. Motorola, Inc.*, C.A. No. 96-287-SLR (D.Del. March 4, 1997) (Exh. I) (refusing to bifurcate issues for purposes of trial, but agreeing to reconsider the motion after the close of discovery and resolution of

10.

dispositive motions); *Square D Co. v. Power Measurement Ltd.,* C.A. No. 95-201-SLR (D.Del. Oct. 5, 1995) (same) (Exh. J); *see also Callaway Golf Co. v. Dunlop Slazenger*, C.A. 01-669 KAJ, 2004 U.S. Dist. LEXIS 15498 (D.Del. 2004) (considering motion to bifurcate trial at final pre-trial conference).

Issues may be dropped after further discovery, or resolved by claim construction or on summary judgment. The posture of this case may change considerably prior to trial, once the parties have had a full and fair opportunity to investigate their claims through discovery. Thus, any motion to bifurcate the trial at this stage is premature. It is an issue that should be addressed at the pretrial conference.

<u>**CONCLUSION**</u>

For the foregoing reasons, Bridgestone asks this Court to deny Acushnet's Motion to bifurcate.

MORRIS, NICHOLS, ARSHT & TUNNELL

*/s/ Jack B. Blumenfeld*
_____
Jack B. Blumenfeld (#1014)
Maryellen Noreika (#3208)
Leslie A. Polizoti (#4299)
1201 N. Market Street
P.O. Box 1347
Wilmington, DE  19801
(302) 658-9200
  *Attorneys for Bridgestone Sports Co., Ltd.*
  *and Bridgestone Golf, Inc.*

OF COUNSEL:
Robert M. Masters
John T. Callahan
Raja Saliba
SUGHRUE MION, PLLC
2100 Pennsylvania Avenue, N.W.
Washington, DC  20037
(202) 293-7060

December 16, 2005

## CERTIFICATE OF SERVICE

I hereby certify that on December 16, 2005, I electronically filed Bridgestone's Answering Brief In Opposition To Acushnet's Motion To Bifurcate Liability From Damages And Willfulness with the Clerk of the Court using CM/ECF, which will send notification of such filing(s) to:

> Richard L. Horwitz
> Potter Anderson & Corroon

I further certify on December 16, 2005, copies of the foregoing document were served upon counsel of record in the manner indicated:

### BY HAND

> Richard L. Horwitz
> Potter Anderson & Corroon LLP
> 1313 N. Market Street
> Wilmington, DE  19801

### BY FEDERAL EXPRESS

> Alan M. Grimaldi
> Howrey LLP
> 1299 Pennsylvania Avenue, NW
> Washington, DC  20004

> */s/ Jack B. Blumenfeld*
> Jack B. Blumenfeld (#1014)
> 1201 N. Market Street
> P.O. Box 1347
> Wilmington, DE  19899
> (302) 658-9200
> jblumenfeld@mnat.com