IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| BRIDGESTONE SPORTS CO., LTD., and BRIDGESTONE GOLF, INC., <br><br> Plaintiffs, <br><br> v. <br><br> ACUSHNET COMPANY, <br><br> Defendant. | C.A. No. 05-132 (JJF) |

**BRIDGESTONE'S ANSWERING BRIEF IN OPPOSITION TO
ACUSHNET COMPANY'S MOTION FOR REPRESENTATIVE
CLAIMS AND TO REQUIRE DETAILED INFRINGEMENT CONTENTIONS**

MORRIS, NICHOLS, ARSHT & TUNNELL
Jack B. Blumenfeld (#1014)
Maryellen Noreika (#3208)
Leslie A. Polizoti (#4299)
1201 N. Market Street
P.O. Box 1347
Wilmington, DE 19801
(302) 658-9200
  *Attorneys for Bridgestone Sports Co., Ltd.
  and Bridgestone Golf, Inc.*

OF COUNSEL:

Robert M. Masters
John T. Callahan
Raja Saliba
SUGHRUE MION, PLLC
2100 Pennsylvania Avenue, N.W.
Washington, DC 20037
(202) 293-7060

December 16, 2005

# TABLE OF CONTENTS

|  | Page |
|---|---|
| TABLE OF CITATIONS | ii |
| NATURE AND STAGE OF THE PROCEEDING | 1 |
| SUMMARY OF ARGUMENT | 1 |
| STATEMENT OF FACTS | 1 |
| ARGUMENT | 2 |
| I. BRIDGESTONE DOES NOT DISAGREE WITH THE IDEA OF SELECTING A SUBSET OF THE ASSERTED CLAIMS FOR PURPOSES OF TRIAL. | 2 |
| II. ACUSHNET OVERSTATES THE COMPLEXITY OF THIS CASE. | 4 |
| III. ACUSHNET'S REQUEST TO LIMIT THE TOTAL NUMBER OF CLAIMS TO TEN IS ARBITRARY AND PREJUDICES BRIDGESTONE. | 6 |
| IV. ACUSHNET'S REQUEST TO COMPEL DETAILED CONTENTIONS BY JANUARY 13, 2006 IS PREMATURE AND AN ATTEMPT TO FORCE BRIDGESTONE TO WAIVE PRIVILEGE. | 7 |
| CONCLUSION | 11 |

# TABLE OF CITATIONS

Page(s)

Cases

*Fenster Family Patent Holdings, Inc. v. Siemens Medical Solutions USA*,
    C.A. No. 04-038-JJF, 2005 WL 2304190 (D.Del. Sept. 20, 2005)     3, 4

*In Re: Cendant Corp. Sec. Litig.*,
    343 F.3d 658 (3rd Cir. 2003)     8, 9

*J.T. Eaton & Co., Inc. v. Atlantic Pate & Glue Co.*,
    CV-84-4438 (EHN), 1987 U.S. Dist. LEXIS 16792
    (E.D.N.Y. 1987)     9

*Loctite Corp. v. Fel-Pro, Inc.*,
    667 F.2d 577 (7th Cir. 1981)     9

*Upjohn Co. v. U.S.*,
    449 U.S. 383 (1981)     9

*Vardon Golf Co., Inc. v. BBMG Golf, Ltd.*,
    156 F.R.D. 641 (N.D. Ill. 1994)     9

*Zenith Radio Corp. v. United States*,
    764 F.2d 1577 (Fed. Cir. 1985)     9

Statutes

Fed. R. Civ. P. 26(b)(3)     9

1.

## NATURE AND STAGE OF THE PROCEEDING

Bridgestone filed this patent infringement action on March 7, 2005 (D.I. 1). Acushnet answered on April 28, 2005 (D.I. 7). Trial is scheduled for April 18, 2007.

## SUMMARY OF ARGUMENT

Bridgestone opposes Acushnet's Motion For Representative Claims And To Require Detailed Infringement Contentions on the grounds that it is premature and based entirely on arbitrary parameters in selecting the number of claims that would be representative of Bridgestone's infringement contentions. Although Bridgestone does not dispute that a reduction in the number of claims asserted will be necessary for purposes of trial, the time to do so is not on January 13, 2006, as Acushnet requests, but later in the discovery phase of the case.

Further, as to providing detailed infringement contentions, Acushnet confuses contentions with proof at trial. Bridgestone maintains that the results of tests it conducted constitute attorney work product and need not be disclosed. However, the time to produce test results is during expert discovery, to the extent that experts rely on results of tests conducted to prove infringement. Furthermore, Acushnet's own contentions provide the same level of detail as Bridgestone's.

Accordingly, Bridgestone respectfully requests that this Court deny Acushnet's motion.

## STATEMENT OF FACTS

Following about two years of failed negotiations, Bridgestone commenced this action on March 7, 2005, asserting that several Acushnet's golf ball products infringe ten patents. Acushnet counterclaimed, asserting five of its own patents. With 15 patents in the case, and

2.

considering arguments by both Acushnet and Bridgestone about the schedule, the Court issued a Scheduling Order (D.I. 18) requiring that all document discovery and contention interrogatories be completed by August 31, 2005, followed by depositions. Fact discovery is to conclude on August 8, 2006 and expert discovery on December 5, 2006.

Although the exchange of documents was to take place by August 31, 2005, Acushnet continues to produce documents. For example, on November 29, 2005, Acushnet produced eight additional boxes of documents. To this day, Acushnet has not produced the complete file histories for three of the five patents in the case. Further, Acushnet has produced over 39 boxes of documents, one CD (containing about 90 boxes of documents when printed) and four VHS tapes in all and Bridgestone continues to review that production. Neither party has taken any depositions yet.

Although Bridgestone acknowledges that the number of claims will have to be narrowed for purposes of making this case triable to a jury, it is premature to do so now.

## ARGUMENT

I. **BRIDGESTONE DOES NOT DISAGREE WITH THE IDEA OF SELECTING A SUBSET OF THE ASSERTED CLAIMS FOR PURPOSES OF TRIAL.**

As Bridgestone stated during the October conference with this Court, each party will need to limit the number of patent claims that it wants to try to the jury. (Ex. A, Tr. at 31.) The time for making this selection, however, is not in January, as Acushnet requests, but after substantial fact discovery has taken place. To force the parties to make a selection now is premature. The parties are in the early stages of fact discovery and neither party has had an opportunity to analyze the document production, conduct depositions, or engage experts for the purposes of understanding the technology and refining the theories of the case to a point where

3.

selecting representative claims would be meaningful. Selecting the claims now would be akin to throwing darts in the dark.

Acushnet has also been slow in producing its documents to Bridgestone. Although all documents were ordered to be produced by August 31, 2005, and despite Acushnet's statement that it has produced all its manufacturing guidelines for each of the accused balls and recipes actually used (Acushnet Br. at 7), Acushnet has produced at least 16 boxes of documents over the past several months subsequent to the August 31, 2005 deadline. This represents more than one-third of Acushnet's production of documents. In fact, as recently as November 29, Acushnet produced eight additional boxes of documents. (Exs. B-C.) Acushnet has yet to produce complete copies of the file histories for three of its patents in the case. Thus, in effect, Acushnet is attempting to use its motion as a way to obtain summary judgment on certain claims by having Bridgestone prematurely reduce the asserted claims, as opposed to selecting a number of claims at the appropriate time, in order to make a jury trial more manageable.

Even if Acushnet's statement that it has produced all of the documentation on the process of making the accused golf balls were correct (which does not appear to be the case), Acushnet ignores the time necessary to analyze this information. With the large production of documents from Acushnet (produced in no easily understood order) and the numerous invalidity defenses raised, Bridgestone cannot in a matter of a few months distill the information down to a point of selecting the best claims to proceed at trial.

Acushnet relies on *Fenster Family Patent Holdings, Inc. v. Siemens Medical Solutions USA*, C.A. No. 04-038-JJF, 2005 WL 2304190 (D.Del. Sept. 20, 2005), where this Court limited the plaintiff's claims. In *Fenster*, the plaintiff had asserted 90 claims from eight

patents against at least 49 products related to digital angiography and digital fluoroscopy. In contrast, Bridgestone's ten asserted patents cover only four families of accused golf balls. The technology involved in this lawsuit is relatively simple and hardly comparable to the complex technology in *Fenster*. Moreover in *Fenster*, the Court did not require the plaintiff to limit the claims until *well after* the initial fact discovery period concluded. As such, *Fenster* cuts against Acushnet's request to limit the claims *well before* meaningful discovery has taken place, and nearly eight months before fact discovery is scheduled to close.

Bridgestone believes a more reasonable and workable solution, without prejudicing either party, is to select claims later in the fact discovery, but before the parties submit their Joint Claim Construction Statement in May. This would allow both sides to conduct additional fact discovery necessary to determine which claims they wish to assert for trial and would occur sufficiently before the parties engage in the claim construction process and before experts begin drafting their reports. Moreover, on this schedule, the Court will only be asked to construe claims that will be presented at trial. (See Acushnet Br. at 9.)

## II. ACUSHNET OVERSTATES THE COMPLEXITY OF THIS CASE.

This case is not so complex or "unwieldy" as to make it unmanageable. Although there are 15 patents, the technology is not as diverse and complicated as Acushnet makes it out to be. The patents relate to golf ball construction and dimple patterns. It does not relate to digital angiography and digital fluoroscopy as in *Fenster*. Of the ten Bridgestone patents, four relate to two-piece golf balls; three relate to three-piece golf balls; and the remaining three relate to the chemical composition of the core material. Three of Acushnet's five patents are derived from the same application and hence the claims are directed to very similar subject matter. In all

cases, the claims of different patents have very similar and overlapping features (e.g., hardness or thickness of a layer) of golf balls.

Acushnet's argument that this case is too complex is surprising, given that Acushnet's golf ball sales approach one billion dollars per year and exceed Bridgestone's by about a factor of ten. Acushnet reports itself to be the number one manufacturer of golf balls with a market share of about 70%. Acushnet's attempt to scale back the case at this stage is simply a backdoor attempt to chip away at the merits of Bridgestone's infringement allegations and win prior to any litigation on the merits.

Nor is the case unwieldy. At the scheduling conference, the Court put into place an Order that methodically laid out a schedule tailored for the 15 patents in the case and the scope of the discovery to be conducted. At the time, Acushnet was well aware of Bridgestone's infringement contentions from the prior failed settlement negotiations. Acushnet also raised the fact that plaintiff Bridgestone Sports Co., Ltd. is a Japanese company and that discovery would involve documents in the Japanese language and depositions of Japanese speaking deponents. (D.I. 12). The Court took these factors into account when it set the schedule and there is no legitimate reason why the case needs to be limited now.

In accordance with the Court's schedule, the parties have already exchanged documents and contention interrogatories -- on all issues including infringement, validity and damages -- regarding all 15 patents in suit. The parties are less than halfway into fact discovery, and nothing has changed to warrant the drastic measure of forcing Bridgestone's hand to limit the case before discovery is completed. To do so now would unfairly disadvantage Bridgestone's prosecution of its infringement claims.

6.

Acushnet argues that if the number of asserted claims is limited now, the amount of document discovery and the need to translate documents will be reduced. (Acushnet Br. at 4.) Whether Bridgestone is asserting 83 claims in all or one claim from each of its ten patents, Acushnet will still be required to review all the documents that Bridgestone has produced in response to Acushnet's document requests. There is simply no correlation between the claims being asserted and the documents produced. Importantly, limiting the claims now does <u>not</u> mean that Acushnet will translate fewer documents, and because all ten patents remain in the case, Acushnet will still be left deposing the same number of Japanese inventors. As a result, limiting the number of claims will not result in a reduction in the amount of discovery.

### III. ACUSHNET'S REQUEST TO LIMIT THE TOTAL NUMBER OF CLAIMS TO TEN IS ARBITRARY AND PREJUDICES BRIDGESTONE.

Acushnet argues that Bridgestone should be limited to a total of ten claims, which is apparently based on a one claim per patent rule. Regardless of whether and when the Court requires the parties to limit the number of claims being asserted, Acushnet's insistence on one claim per patent is arbitrary and highly prejudicial to Bridgestone. To focus the issues for this case and make it manageable for trial, there is no reason why Bridgestone should be limited merely to ten claims, or to a preset number of claims per patent.

Limiting Bridgestone to one claim per patent prevents Bridgestone from strategically selecting claims of varying scope from each patent. For example, depending on information learned from the Acushnet's document production and depositions, Bridgestone might decide to assert at trial both a broad and a narrow claim from one or more patents or some other combination of claims. That decision, however, should be left to Bridgestone and not arbitrarily imposed at this early stage in the case.

Moreover, Acushnet's insistence that Bridgestone be limited to one claim per patent is in essence summary judgment as to the non-elected claims. Bridgestone should not be prejudiced because of Acushnet's complaint that this case is too complex and unwieldy. The question of how to present the claims of infringement to a jury can be addressed later, at a more appropriate time, after the parties have had an opportunity to refine their theories of the case. For example, the trial can be segmented into phases with each phase dealing with a subset of related patents or issues in the case. It is, however, premature to decide at this time how to try the case to a jury.

### IV. ACUSHNET'S REQUEST TO COMPEL DETAILED CONTENTIONS BY JANUARY 13, 2006 IS PREMATURE AND AN ATTEMPT TO FORCE BRIDGESTONE TO WAIVE PRIVILEGE.

Bridgestone has already provided detailed infringement contentions. In so doing, it has identified the claims of each Bridgestone patent that Acushnet infringes, the Acushnet golf balls that infringe the patents, and the portions of the accused golf balls that satisfy the limitations in each of the asserted claims on an element-by-element basis. Acushnet thus knows the details of Bridgestone's infringement contentions and Bridgestone's invalidity contentions.

However, Acushnet wants Bridgestone's precise and complete proofs of infringement, which are not fully developed and will not be developed until expert discovery. To require this level of detail puts the cart before the horse. Bridgestone should be entitled to full discovery -- both fact and expert -- to prepare its case for trial.

Bridgestone also should not be forced to waive attorney-client privilege and work product privilege, but should be entitled to disclose its final proofs of infringement at the appropriate time during expert discovery. Acushnet waves the Rule 11 flag often (Acushnet Br. at 6), but what Acushnet is seeking to do is to force Bridgestone to take positions prematurely.

Bridgestone clearly had a basis to bring suit against Acushnet on each of the ten patents. It is time to move forward.

Acushnet also confuses trial proofs with contentions. As discovery proceeds, Bridgestone will be sifting through and conducting further discovery to develop proofs to support the infringement and other contentions, as well as engage experts to further support the contentions. There is no reason, however, why Bridgestone should be forced to waive its privileges and provide the type of detail and protected information that Acushnet seeks, namely, results of tests Bridgestone conducted at advice of counsel in anticipation of litigation. On the other hand, Bridgestone is relying on independent experts to conduct testing of the Acushnet golf balls to support the infringement claims. To the extent that Bridgestone's experts conduct tests and rely on those tests, then the results will be disclosed during expert discovery. As expert discovery is not slated to take place until later in 2006, Bridgestone should not be forced to produce any protected privileged information at this time.

Bridgestone maintains that any of the tests on Acushnet's golf balls that were done at the request and instruction of counsel are protected from disclosure on the basis of attorney client privilege and work product privilege. Acushnet seeks to compel Bridgestone to produce communications and test data communicated between Bridgestone and its counsel, where the communications were for the purposes of seeking legal advice. These communications are plainly protected by the attorney client privilege.

In addition, Fed. R. Civ. P. 26(b)(3) protects from discovery documents and things prepared in "anticipation of litigation or for trial" and Bridgestone's tests and the results fall squarely within the protection of Rule 26. *See In Re: Cendant Corp. Sec. Litig.*, 343 F.3d 658, 661-62 (3rd Cir. 2003). Furthermore, a party does not waive these privileges by bringing

9.

suit. *Zenith Radio Corp. v. United States*, 764 F.2d 1577 (Fed. Cir. 1985). *See also, Vardon Golf Co., Inc. v. BBMG Golf, Ltd.*, 156 F.R.D. 641, 648-649 (N.D. Ill. 1994) (attorney initiated test data was found to fall within the textbook definition of work product); *J.T. Eaton & Co., Inc. v. Atlantic Pate & Glue Co.*, CV-84-4438 (EHN), 1987 U.S. Dist. LEXIS 16792, * 3, * 10-*11 (E.D.N.Y. 1987) (documents and test data relating to defendant's and third party products conducted informally for the preparation of trial is not discoverable).

Acushnet's reliance on *Upjohn Co. v. U.S.*, 449 U.S. 383 (1981) (Acushnet Br. at 6), for the proposition that the attorney-client privilege protects communications not facts is inapposite. Bridgestone is not withholding facts, but has produced all non-privileged information. Acushnet's further reliance on *Loctite Corp. v. Fel-Pro, Inc.*, 667 F.2d 577 (7th Cir. 1981), also does not apply here, as it was an expert who conducted the tests. *Id.* at 579-80. Bridgestone agrees that during expert discovery its experts needs to produce the tests results being relied upon to support the contentions.

Acushnet has not made a sufficient showing of substantial need where the information is not otherwise available to it without undue hardship, such that Bridgestone should be forced to disclose the test results. *In Re: Cendant Corp. Sec. Litig.*, 343 F.3d at 663 ("first, work prepared in anticipation of litigation by an attorney or his agent is discoverable only upon a showing of need and hardship[]".) Acushnet knows Bridgestone's infringement contentions, and Acushnet knows the construction and make of its own golf balls, which Bridgestone accuses of infringement. Acushnet has not made the requisite showing of substantial need or demonstrated any hardship.

Acushnet's last argument is that Bridgestone disclosed some test data in another, unrelated case against Callaway Golf Co. (Acushnet Br. 7.) Even if true, that does not mean that Bridgestone needs to waive privilege here to disclose test results to Acushnet.

Finally, Acushnet complains that Bridgestone's infringement contentions "are inadequate because they are nothing more than conclusory assertions that Acushnet's accused golf balls satisfy all of the recited limitations." (Acushnet Br. at 5.) Apparently, Acushnet overlooks its own infringement contentions as to the '705 patent, which are in the same format and at the same level of detail. For example, claim 1 of the '705 patent requires "wherein the material has a molecular weight of greater than about 200,000 and a resilience index of at least about 40[.]" As to this claim limitation, Acushnet alleges that the polybutadiene rubber of the accused Bridgestone golf balls "has a molecular weight of greater than about 200,000" and "the resilience index of this rubber is above about 40." (Ex. D.) More importantly, Acushnet's statement that it has provided this data more than four months ago to Bridgestone (Acushnet Br. at p. 7) is simply wrong. Assuming that Acushnet had tested Bridgestone golf balls to make an allegation of infringement of the '705 patent, which Acushnet says is a requirement to comply with Rule 11 (*Id.* at p. 6), then according to Acushnet's position, Acushnet should have disclosed detailed information about its infringement contentions on the '705 patent. Acushnet has not done so, however, and it seems disingenuous for Acushnet to chide Bridgestone for not providing the same type of information it is holding back. Acushnet simply is in no position to complain about Bridgestone's infringement contentions.

11.

## CONCLUSION

For the above reasons, Bridgestone respectfully request that this Court deny Acushnet's motion. To the extent the Court is inclined to limit the number of claims before trial, that should be done no sooner than late April, just before the parties engage in *Markman* hearing. As to detailed infringement contentions and producing test results, Bridgestone believes that its claim of privilege is appropriate and disclosure is not required. Moreover, Acushnet's request is premature and that test results need not be produced until experts render their reports in the expert discovery phase, provided that experts conduct tests and plan to rely on the results as a matter of proof.

MORRIS, NICHOLS, ARSHT & TUNNELL

/s/ Jack B. Blumenfeld

Jack B. Blumenfeld (#1014)
Maryellen Noreika (#3208)
Leslie A. Polizoti (#4299)
1201 N. Market Street
P.O. Box 1347
Wilmington, DE  19801
(302) 658-9200
  *Attorneys for Bridgestone Sports Co., Ltd.
  and Bridgestone Golf, Inc.*

OF COUNSEL:

Robert M. Masters
John T. Callahan
Raja Saliba
SUGHRUE MION, PLLC
2100 Pennsylvania Avenue, N.W.
Washington, DC  20037
(202) 293-7060

December 16, 2005

## CERTIFICATE OF SERVICE

I hereby certify that on December 16, 2005, I electronically filed Bridgestone's Answering Brief In Opposition To Acushnet Company's Motion for Representative Claims and to Require Detailed Infringement Contentions with the Clerk of the Court using CM/ECF, which will send notification of such filing(s) to:

Richard L. Horwitz
Potter Anderson & Corroon

I further certify on December 16, 2005, copies of the foregoing document were served upon counsel of record in the manner indicated:

**BY HAND**

Richard L. Horwitz
Potter Anderson & Corroon LLP
1313 N. Market Street
Wilmington, DE 19801

**BY FEDERAL EXPRESS**

Alan M. Grimaldi
Howrey LLP
1299 Pennsylvania Avenue, NW
Washington, DC 20004

/s/ *Jack B. Blumenfeld*
Jack B. Blumenfeld (#1014)
1201 N. Market Street
P.O. Box 1347
Wilmington, DE 19899
(302) 658-9200
jblumenfeld@mnat.com