# EXHIBIT A

# In The Matter Of:

*Bridgestone Sports Co LTD  &  Golf Inc   v.*
*Acushnet Company*

---

*Hearing*
*October 5, 2005*

---

*Hawkins Reporting Service*
*715 N. King Street, Suite 3*
*Wilmington, DE  19801*
*(302) 658-6697*

*Original File 100505~1.TXT, 56 Pages*
*Min-U-Script® File ID: 3579056218*

**Word Index included with this Min-U-Script®**

[16] the side of the scale that you should get an [17] earlier claim reduction.

[18] **MR. MOORE:** Okay.

[19] **THE COURT:** I mean, that's the [20] rational way to do this.

[21] **MR. MOORE:** Yeah.

[22] **THE COURT:** So stop giving them [23] stuff and file the motion.

[24] **MR. MOORE:** Okay.

Page 29

[1] **THE COURT:** And you've got, or may- [2] be you can sit down and get it narrowed, so that you [3] can both be exchanging meaningful material.

[4] **MR. MASTERS:** Your Honor, just to [5] address one point with counsel. It's one thing [6] to say how many dimples are on a golf ball, [7] because they can be counted.

[8] But if we look at, and we have a [9] binder prepared for Your Honor, the claim chart [10] given to us by Acushnet, with respect to one of [11] the Acushnet patents in suit, they do exactly [12] what they're complaining about here.

[13] And they should understand they have [14] patents against us, and that if they want [15] something, it works both ways. And in here, [16] where it talks about the material having the [17] resilience index of at least about 40, they say [18] the Bridgestone ball has resilience index of [19] about 40.

[20] They mimic the claim language back, [21] which is the same thing we did. We provided, I [22] would say, more detail because we told them [23] exactly the golf ball, the model number to the [24] best we can identify it.

Page 30

[1] This has four pieces. We identified [2] which piece of the golf ball covers that claim [3] limitation.

[4] **THE COURT:** But you're both playing [5] with each other, which is understandable. But, [6] you know, maybe you ought to sit down and spend [7] your time reaching an agreement on what you're [8] actually going to try in this case. And if you [9] can't agree, bring the dispute to me, because [10] then I'll make them give you better answers, too.

[11] **MR. MASTERS:** Your Honor, we [12] understand that this is a large case. We will [13] try to — we will trim it down, but it's just so [14] early in discovery right now. We're not prepared [15] to select the best claim to present at trial.

[16] **THE COURT:** Well, I guess you should [17] have told me that in responses to your motion.

[18] **MR. MASTERS:** It will be — we'll [19] try to work it out.

[20] **THE COURT:** You know, these cases —

[21] it's kind of like — I had a case with DuPont, [22] and who was it, Lucent or Verizon. Somebody [23] couldn't tell you how many phones they sold to [24] DuPont in a year.

Page 31

[1] I don't understand how you could [2] sell something and not get paid. How would you [3] get paid if you didn't know how many you sold?

[4] But then when the case got about six [5] months down the road, we knew how many buttons [6] were on every phone.

[7] So I don't want to waste your time [8] or my time. When I read the papers, the problem [9] is the case is too big now.

[10] And I understand why you want it big [11] now. I understand why they want it small.

[12] But my job would be to get you a [13] little bit moved down the road, and then get the [14] case to where it's going to be, and then you can [15] really have at each other. But I think you'll [16] probably be able to reach more agreements when [17] you know what the case is really going to be, and [18] maybe you might be able to tell what the case is [19] going to be.

[20] Because if you aren't be able to [21] agree, give me that. I'll give you — in 15 [22] minutes, I'll get the case to where it's [23] going to be. Okay?

[24] **MR. MOORE:** Thank you, Your Honor.

Page 32

[1] We've got three other small [2] contentions. One's — they're all, again, [3] inadequate contentions by Bridgestone. I think [4] they're more focused on the infringement [5] contention.

[6] The first one is willfulness. [7] Bridgestone contends that Acushnet is willful.

[8] But it just makes the conclusory [9] assertion that we're willful. It doesn't tell us [10] when we got notified of these patents, how they [11] think we got notified, or provide any facts in [12] support of the contention.

[13] **THE COURT:** In discovery, it's too [14] early for willfulness.

[15] **MR. MOORE:** They pled it in their [16] complaint.

[17] **THE COURT:** I know they did.

[18] **MR. MOORE:** They have to have a Rule [19] 11 basis.

[20] **THE COURT:** But I think it's too [21] early to get to willfulness. And it might even [22] be — well, go ahead. What's the other two?

[23] **MR. MOORE:** The other two, I think [24] they may fall in the same category here, that

Page 33

[1] another interrogatory, Number 9 requires [2] Bridgestone to identify and describe in detail [3] all third-party products that embody any claim, [4] to the extent that they think third-party [5] products in the market infringe.

[6] We want a detailed [7] element-by-element analysis of how —

[8] **THE COURT:** You're going to get [9] that. You're going to be able to get that.

[10] **MR. MOORE:** Okay. And —

[11] **MR. MASTERS:** Your Honor, could I [12] just clarify? There's no obligation on [13] Bridgestone's part to go out and to do that [14] study, is there?

[15] **THE COURT:** There's no obligation, [16] but if you want to be serious about it as part of [17] your case, it's a piece of evidence you're going [18] to need.

[19] **MR. MASTERS:** Well, what I [20] understand Acushnet is asking for is for us to [21] give them our contentions on all third-party [22] products that are covered by our patents. Now, [23] he has — counsel has —

[24] **THE COURT:** I don't think that's

Page 34

[1] what he said exactly.

[2] **MR. MASTERS:** That's how I [3] understood it.

[4] **THE COURT:** Maybe I misunderstood. [5] Tell us again what it is.

[6] **MR. MOORE:** We want any Bridgestone [7] products or third-party products that embody any [8] claim of the asserted patents. We want this for [9] non-infringing alternatives, because we want to [10] be able to point to other balls that are in the [11] market being sold that don't infringe these [12] patents for damages purposes.

[13] **THE COURT:** Right.

[14] **MR. MASTERS:** That's different than [15] what's stated here in the papers.

[16] **THE COURT:** Right.

[17] **MR. MASTERS:** With respect to our [18] own products, we've agreed to give Acushnet the [19] Bridgestone products that are covered by the [20] Bridgestone patent. I think that's not an issue.

[21] But the request here, Number 9, says [22] as written here, that they want us to go out and [23] look at all third-party products out there and to [24] do an analysis as to whether they're covered by

Page 35

[1] the Bridgestone patents in suit.

[2] I mean, if we have something in our [3] files where we've done that already, we would [4] produce that. But I don't believe that there's [5] an obligation.

# EXHIBIT B



1299 Pennsylvania Avenue, NW
Washington, DC 20004-2402
T 202.783.0800
F 202.383.6610
www.howrey.com

November 22, 2005

**_VIA Hand Delivery_**

Raja Saliba, Esq.
Sughrue Mion, PLLC
2100 Pennsylvania Avenue, N.W.
Washington, D.C. 20037

Dear Mr. Saliba:

    Enclosed please find Acushnet production documents bearing bates numbers AB 0052321 - AB 0061362.

Sincerely,

Geneva J. Eaddy
Case Manager

Enclosures

# EXHIBIT C

# HOWREY LLP

1299 Pennsylvania Avenue, NW
Washington, DC 20004-2402
T 202.783.0800
F 202.383.6610
www.howrey.com

November 29, 2005

***VIA Hand Delivery***

Raja Saliba, Esq.
Sughrue Mion, PLLC
2100 Pennsylvania Avenue, N.W.
Washington, D.C. 20037

Re: *Bridgestone Sports Co. v. Acushnet Co.*,
    Civil Action No. 05-132 (JJF) (D. Del.)

Dear Mr. Saliba:

Enclosed please find Acushnet production documents bearing bates numbers AB 0061363 - AB 0080140.

Sincerely,

Geneva J. Eaddy
Case Manager

Enclosures

# EXHIBIT D

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| BRIDGESTONE SPORTS CO., LTD, and BRIDGESTONE GOLF, INC.<br><br>Plaintiff,<br><br>v.<br><br>ACUSHNET COMPANY,<br><br>Defendant.<br><br>ACUSHNET COMPANY,<br><br>Counterclaim Plaintiff,<br><br>v.<br><br>BRIDGESTONE SPORTS CO., LTD, and BRIDGESTONE GOLF, INC.<br><br>Counterclaim Defendant. | C. A. No. 05-132 (JJF) |

ACUSHNET'S SUPPLEMENTAL RESPONSES TO
BRIDGESTONE'S FIRST SET OF INTERROGATORIES
DIRECTED TO ACUSHNET (NOS. 1-24)

Pursuant to Rule 33 of the Federal Rules of Civil Procedure, defendant and counterclaim plaintiff Acushnet Company ("Acushnet") hereby supplements its response to the *First Set of Interrogatories Directed to Acushnet (Nos. 1-24)* ("First Set of Interrogatories") of defendants Bridgestone Sports Co., Ltd. and Bridgestone Golf, Inc. (collectively, "Bridgestone").

DM_US\8246253.v1

Exhibit C
Supplement to Interrogatory No. 9
USP 6,818,705

| CLAIM 1 | BRIDGESTONE TOUR B330 | PRECEPT U-TRI EXTRA SPIN | PRECEPT U-TRI EXTRA DISTANCE | NIKE ONE GOLD | NIKE ONE TW |
|---|---|---|---|---|---|
| A golf ball comprising: | The Bridgestone Tour B330 is a golf ball. | The Precept U-Tri Extra Spin is a golf ball. | The Precept U-Tri Extra Distance is a golf ball. | The Nike OneGold is a golf ball. | The Nike One TW is a golf ball. |
| a center comprising a material formed from the conversion reaction of at least a cis-to-trans catalyst and a polybutadiene | The core of this ball includes a polybutadiene rubber; upon information and belief the material also includes the claimed cis-to-trans catalyst | The core of this ball includes a polybutadiene rubber; upon information and belief the material also includes the claimed cis-to-trans catalyst | The core of this ball includes a polybutadiene rubber; upon information and belief the material also includes the claimed cis-to-trans catalyst | The core of this ball includes a polybutadiene rubber; upon information and belief the material also includes the claimed cis-to-trans catalyst | The core of this ball includes a polybutadiene rubber; upon information and belief the material also includes the claimed cis-to-trans catalyst |
| wherein the material has a molecular weight of greater than about 200,000 | Upon information and belief, the polybutadiene rubber has a molecular weight of greater than about 200,000 | Upon information and belief, the polybutadiene rubber has a molecular weight of greater than about 200,000 | Upon information and belief, the polybutadiene rubber has a molecular weight of greater than about 200,000 | Upon information and belief, the polybutadiene rubber has a molecular weight of greater than about 200,000 | Upon information and belief, the polybutadiene rubber has a molecular weight of greater than about 200,000 |
| and a resilience index of at least about 40; | Upon information and belief the resilience index of this rubber is above about 40 | Upon information and belief the resilience index of this rubber is above about 40 | Upon information and belief the resilience index of this rubber is above about 40 | Upon information and belief the resilience index of this rubber is above about 40 | Upon information and belief the resilience index of this rubber is above about 40 |
| an inner cover layer; and | This ball has an inner cover | This ball has an inner cover | This ball has an inner cover | This ball has an inner cover | This ball has an inner cover |
| an outer cover layer disposed about the inner cover layer comprising a polyurethane composition. | This ball has an outer cover including a polyurethane composition | This ball has an outer cover including a polyurethane composition | This ball has an outer cover including a polyurethane composition | This ball has an outer cover including a polyurethane composition | This ball has an outer cover including a polyurethane composition |

DM_US\8258520.v1