# Exhibit A



HOWREY
SIMON
ARNOLD
& WHITE
ATTORNEYS AT LAW

1299 PENNSYLVANIA AVE., NW
WASHINGTON, DC 20004-2402
PHONE 202 783 0800
FAX 202.383 6610
A LIMITED LIABILITY PARTNERSHIP

DIRECT DIAL 202 383.6904
FILE 00634 0002

November 10, 2005

<u>BY FACSIMILE</u>

Steven M. Gruskin, Esq.
Sughrue Mion, PLLC
2100 Pennsylvania Avenue, N.W.
Washington, D.C. 20037-3213

     Re:    *Bridgestone Sports Co. v. Acushnet Co.,*
            <u>Civil Action No. 05-132 (JJF) (D. Del.)</u>

Dear Steve:

    I have enclosed a listing of all golf balls sold by Acushnet since 2000, as discussed at the October 5, 2005 discovery hearing.

    Please let me know if you have any questions.

             Regards,

             Brian S. Seal

Enclosure

AMSTERDAM    BRUSSELS    CHICAGO    HOUSTON    IRVINE    LONDON    LOS ANGELES    MENLO PARK    SAN FRANCISCO    WASHINGTON, DC

EX. A

# Titleist/Pinnacle Product Line 2000 - 2005

## 2000

**Titleist**
- Professional
- Tour Prestige
- Tour Balata
- Tour Distance SF
- HP Tour
- HP Eclipse
- HP Distance
- DT Spin
- DT Distance
- Pro V1 (on tour only)

*sidestamp*
- Tour Prestige 90, 100
- Tour Balata ~ 90, 100
- < Tour Distance SF >
- HP Tour
- < HP Eclipse >
- < HP Distance >
- < DT Spin >
- < DT Distance >
- Pro V1 392

**Pinnacle**
- Titanium Extreme Distance
- Titanium Precision Spin
- Titanium Precision Feel
- Gold Distance
- Gold Spin
- Gold Equalizer
- Gold for Women

*sidestamp*
- Precision Spin
- Precision Feel
- Gold Distance
- Gold Spin
- Gold Equalizer
- pink ribbon logo

## 2001

**Titleist**
- Pro V1
- Professional
- Tour Prestige
- Tour Distance SF
- HP Tour
- HP Distance
- DT Spin
- DT Distance

*sidestamp*
- < Pro V1 @ 392 >
- Professional ~ 90, 100
- Tour Prestige 90, 100
- Tour Distance SF
- HP Tour
- < HP Distance >
- < DT Spin >
- < DT Distance >

**Pinnacle**
- Titanium Extreme Distance
- Titanium Precision Spin
- Titanium Precision Feel
- Gold Distance
- Gold Spin
- Gold Equalizer
- 392 LS

*sidestamp*
- Extreme Distance
- Precision Spin
- Precision Feel
- Gold Distance
- Gold Spin
- Gold Equalizer
- pink ribbon logo
- 392 LS

## 2002

**Titleist**
- Pro V1
- Pro V1 (star)
- Professional
- NXT Tour
- NXT Tour
- DT Distance
- HVC Tour
- HVC Distance
- HVC Distance L

*sidestamp*
- < Pro V1 @ 392 >
- < Pro V1 #/392 >
- Professional ~ 90, 100
- Tour Distance SF
- < NXT @ Tour >
- < DT Spin >
- < DT Distance >
- HVC Tour
- HVC Distance
- HVC Distance-L

**Pinnacle**
- Power Core Straight Distance
- Power Core Soft Feel
- Gold Distance
- Gold Lady
- Gold Senior
- Distance LS

*sidestamp*
- Straight Distance
- Soft Feel
- Gold Distance
- pink ribbon logo
- Power Core

## 2003

**Titleist**
- Pro V1x
- Pro V1
- NXT
- NXT Tour
- DT SoLo
- DT Solo
- HVC Soft Feel
- HVC Soft Distance
- HVCL

*sidestamp*
- < Pro V1 @ 392 >
- < Pro V1x .332 @ >
- < NXT >
- < NXT Tour >
- DT SoLo
- HVC Soft Feel
- HVC Soft Distance
- HVCL

**Pinnacle**
- Exception
- Gold Distance
- Gold Maximum Velocity
- Gold Lady
- Power Core

*sidestamp*
- Straight Distance
- Soft Feel
- Gold Distance
- Gold Maximum Velocity
- pink ribbon logo
- Power Core

## 2004

**Titleist**
- Pro V1x
- Pro V1
- NXT
- NXT Tour
- DT SoLo
- DT Solo
- HP Tour SF
- HP Distance MX
- HP Distance LSS
- HVC Soft Feel
- HVC Soft Distance
- HVC-L

*sidestamp*
- < Pro V1 .392 @ >
- < Pro V1x .332 @ >
- < NXT >
- < NXT Tour >
- DT SoLo
- HP Tour SF
- HP Distance MX
- HP Distance LSS
- HVC - Soft Feel
- HVC Soft Distance
- HVC-L

**Pinnacle**
- Exception
- Gold Distance
- Gold Maximum Velocity
- Gold Lady
- Power Core

*sidestamp*
- Straight Distance
- Soft Distance
- Gold Distance
- pink ribbon logo
- Power Core

## 2005

**Titleist**
- Pro V1x
- Pro V1
- NXT
- NXT Tour
- DT SoLo
- HP Tour SF
- HP Distance MX
- HP Distance LSS
- HVC Soft Feel

*sidestamp*
- < Pro V1 .392 @ >
- < Pro V1x .332 @ >
- < NXT >
- < NXT - Tour >
- DT - SoLo
- HP Tour SF
- HP Distance MX
- HP Distance LSS
- HVC - Soft Feel

**Pinnacle**
- Exception
- Gold Distance
- Max Velocity
- Gold Lady
- Power Core

*sidestamp*
- Straight Distance
- Gold Distance
- Max Velocity
- pink ribbon logo
- Power Core

# Exhibit B



2100 Pennsylvania Avenue, NW
Washington, DC 20037-3213
T 202.293.7060
F 202.293.7860

www.sughrue.com

December 22, 2005

*Via Facsimile: (202) 383-6610*

Mr. Matthew J. Moore
HOWREY LLP
1299 Pennsylvania Ave., N.W.
Washington, DC 20004

Re:    **Deficiencies in Acushnet Production**
*Bridgestone Sports Co., Ltd. et al. v. Acushnet Co.*
**Civil Action No. 05-132 (JJF)**

Dear Matt:

We have compared Acushnet's list of golf balls sold since 2000 (*see* Mr. Seal's letter of November 10, 2005) against Acushnet's current document production and have identified further production deficiencies that need to be corrected immediately.

First, we note that Acushnet's list of golf balls is incomplete, as it does not identify <u>all balls sold worldwide</u>. One such example that we only recently uncovered from a search of the web is the Titleist PTS SoLo offered for sale in the United Kingdom (see attached printout of a web page from "www.clickgolf.co.uk"). We have also compared Acushnet's list of golf balls against the USGA List of Conforming Golf Balls for certain years and have uncovered many omissions. For example, for the USGA's 2005 listing alone, we have identified at least seventeen golf balls that are missing from Acushnet's list. Attached is a partial copy of the USGA's 2005 listing with these missing balls highlighted.

Accordingly, please provide us with a complete and accurate listing of all Acushnet golf balls sold anywhere in the world since 2000, including all those submitted to the USGA since 2000. We remind you that Acushnet's answer to Interrogatory No. 1 must also be updated with this information.

Regarding Acushnet's production deficiencies, we believe Acushnet has not produced all responsive documents relating to several of the accused golf balls. As an example, although Acushnet has produced manufacturing guidelines for some balls (*see, e.g.*, Bates Nos. AB 0038532-38560 for the August, 2000 "<Pro V1 - 392>" ball), we have not found similar manufacturing guidelines for each of the accused golf balls by side stamp and year. One notable example is the Pro V1 (star), for which we have not located any documents in Acushnet's production.

Other examples of production deficiencies include correspondence with the USGA, including USGA submission sheets that contain Acushnet's specifications for each version of the accused golf balls, again, by side stamp and year. While USGA submission sheets have been

EX. B



**SUGHRUE MION, PLLC**

Mr. Matthew J. Moore
HOWREY LLP
December 22, 2005
Page 2

produced for certain accused balls (*see e.g.*, Bates Nos. AB 0053406 for <Pro V1 - 392> and AB 0053407 for <Pro V1x - 392>), clearly Acushnet has not produced its submission sheets for all the accused balls and all other related correspondence with the USGA.

Please take immediate steps to correct the foregoing production deficiencies and confirm that, for <u>each version</u> of the accused golf balls (*i.e.*, for each side stamped version and year of the Pro V1, Pro V1x, DT SoLo, NXT, NXT Tour, and Pinnacle Exception golf ball), Acushnet will or has already provided all responsive documents. We consider the Pro V1 (star) to be within the Pro V1 family, and is an accused ball.

Please contact me to schedule a teleconference to discuss these and other outstanding discovery matters in preparation for next month's conference with the Court.

Very truly yours,

Raja N. Saliba

RNS/clf

Effective - 11/02/05 thru 12/06/05

| Pole / Seam Marking | Color | Construction | Spin Rating | Dimples | Country | Manufacturer |
|---|---|---|---|---|---|---|
| Srixon –Hi-Spin– | white | 2P-SC-1c | M-H | 432 | UNITED STATES | Srixon Sports USA, Inc. |
| Srixon –Soft Feel– | white | 2P-SC-1c | M-L | 410 | UNITED STATES | Srixon Sports USA, Inc. |
| Srixon Soft Feel in green | white | 2P-SC-1c | M-L | 410 | UNITED STATES | Srixon Sports USA, Inc. |
| Strata Tour Professional | white | 3P-SC-2c | M-M | 332 | UNITED STATES | Top-Flite Golf Company |
| Strata with T logo TL-Tour | white | 3P-SC-2c | L-H | 332 | UNITED STATES | Top-Flite Golf Company |
| Super Newing | white | 3P-SC-2c | L-L | 432 | JAPAN | Bridgestone Sports Co. Ltd |
| Super Newing in blue | white/blue | 3P-SC-2c | L-L | 432 | JAPAN | Bridgestone Sports Co. Ltd |
| Super Newing in blue ◀ IV 330 ▶ in blue | white | 3P-SC-2c | L-L | 330 | JAPAN | Bridgestone Sports Co. Ltd |
| Super Newing in blue ◀ IV ★ 330 ▶ in blue | blue | 3P-SC-2c | L-L | 330 | JAPAN | Bridgestone Sports Co. Ltd |
| Super Newing in dark red ◀ IV 330 ▶ in dark red | white | 3P-SC-2c | L-L | 330 | JAPAN | Bridgestone Sports Co. Ltd |
| Super Newing in gold | white | 3P-SC-2c | L-L | 432 | JAPAN | Bridgestone Sports Co. Ltd |
| Super Newing in gold ◀ IV 330 ▶ in gold | white | 3P-SC-2c | L-L | 330 | JAPAN | Bridgestone Sports Co. Ltd |
| Super Newing in gold ◀ IV ★ 330 ▶ in gold | white | 3P-SC-2c | L-L | 330 | JAPAN | Bridgestone Sports Co. Ltd |
| Super Newing in green | white | 3P-SC-2c | L-L | 432 | JAPAN | Bridgestone Sports Co. Ltd |
| Super Newing in orange | white | 3P-SC-2c | L-L | 432 | JAPAN | Bridgestone Sports Co. Ltd |
| Super Newing in pink | white/pink | 3P-SC-2c | L-L | 432 | JAPAN | Bridgestone Sports Co. Ltd |
| Super Newing in pink ◀ IV ★ 330 ▶ in pink | pink | 3P-SC-2c | L-L | 330 | JAPAN | Bridgestone Sports Co. Ltd |
| Super Sonic in blue Soft in red | white | 2P-SC-1c | L-L | 398 | JAPAN | Kasco Corporation |
| Super Sonic in blue Soft in red | orange/yellow | 2P-SC-1c | L-L | 398 | JAPAN | Kasco Corporation |
| Super Sonic in pink Soft in red | white | 2P-SC-1c | L-L | 398 | JAPAN | Kasco Corporation |
| Symb@lls with @ and arrow in red | white | 2P-SC-1c | M-M | 416 | UNITED STATES | Symballs, Inc. |
| The Hanberry Diamond with diamond logo ExD-Tour | white | 2P-SC-1c | L-L | 400 | UNITED STATES | EDH Development Corp. |
| Titan 462 Distance with Distance in red USA Ultra Soft | white | 2P-SC-1c | M-M | 462 | JAPAN | Asahi Golf Co., Ltd. |
| Titan V logo in blue Fitway in blue | white | 2P-SC-1c | L-M | 432 | JAPAN | Japana Co. Ltd. |
| Titan V logo in blue Super Soft in red | white | 2P-SC-1c | M-H | 432 | JAPAN | Japana Co. Ltd. |
| Titleist ◀ – NXT – ▶ | white | 2P-SC-1c | L-M | 392 | UNITED STATES | Acushnet Company |
| Titleist ◀ • Pro V1 392 • ▶ | white | 3P-SC-2c | M-H | 392 | UNITED STATES | Acushnet Company |
| ✓ Titleist ◀ • Pro V1-392 • ▶ | white | 3P-SC-2c | M-H | 392 | UNITED STATES | Acushnet Company |
| Titleist ◀ • Pro V1x 332 • ▶ | white | O-SC-2c | M-H | 332 | UNITED STATES | Acushnet Company |
| Titleist ✓ ◀ Pro V1x-332 • ▶ | white | O-SC-2c | M-H | 332 | UNITED STATES | Acushnet Company |
| Titleist ✓ ◀ DT So/Lo ▶ (DT / in red) (◀ ▶ So Lo in blue) | white | 2P-SC-1c | L-M | 392 | UNITED STATES | Acushnet Company |

Effective - 11/02/05 thru 12/06/05

| Pole / Seam Marking | Color | Construction | Spin Rating | Dimples | Country | Manufacturer |
|---|---|---|---|---|---|---|
| Titleist | white | 2P-SC-1c | L-M | 392 | UNITED STATES | Acushnet Company |
| ✓ ◀ DT-So/Lo ▶ (DT - / in red) (◀ ▶ So Lo in blue) / Titleist | white | 2P-SC-1c | L-M | 392 | UNITED STATES | Acushnet Company |
| ◀ NXT ▶ / Titleist | white | 2P-SC-1c | L-M | 392 | UNITED STATES | Acushnet Company |
| ✓ ◀ [redacted] ▶ / Titleist | white | 2P-SC-1c | M-H | 392 | UNITED STATES | Acushnet Company |
| ◀ NXT Tour ▶ / Titleist | white | 3P-1c | L-M | 392 | UNITED STATES | Acushnet Company |
| ✓ ◀ [redacted] Tour ▶ / Titleist | white | 3P-1c | L-M | 392 | UNITED STATES | Acushnet Company |
| ◀ NXT-Tour ▶ / Titleist | white | 3P-SC-2c | M-H | 392 | UNITED STATES | Acushnet Company |
| ◀ Pro V1-392 ▶ / Titleist | white | 3P-SC-2c | M-H | 392 | UNITED STATES | Acushnet Company |
| ✓ ◀ [redacted] V1x-392 ▶ / Titleist | white | O-SC-2c | M-H | 332 | UNITED STATES | Acushnet Company |
| ✓ ◀ [redacted] V1x-332 ▶ / Titleist | white | O-SC-2c | M-H | 332 | UNITED STATES | Acushnet Company |
| ◀ [redacted] V1x1-332 ▶ / Titleist | white | O-SC-2c | M-H | 332 | UNITED STATES | Acushnet Company |
| ✓ ◀ [redacted] V1x2-332 ▶ / Titleist | white | O-SC-2c | M-H | 332 | UNITED STATES | Acushnet Company |
| ◀ Pro V1x-332 ▶ / Titleist | white | O-SC-2c | M-H | 332 | UNITED STATES | Acushnet Company |
| ✓ ◀ [redacted] V1x3-332 ▶ / Titleist | white | O-SC-2c | M-H | 332 | UNITED STATES | Acushnet Company |
| ✓ ◀ [redacted] V1x4-332 ▶ / Titleist | white | 2P-SC-1c | L-M | 392 | UNITED STATES | Acushnet Company |
| ✓ ◀ PTS So/Lo ▶ (PTS / in red) (◀ ▶ So Lo in blue) / Titleist | yellow | 2P-SC-1c | L-M | 392 | UNITED STATES | Acushnet Company |
| ✓ ◀ PTS So/Lo ▶ (PTS / in red) (◀ ▶ So Lo in blue) / Titleist | yellow | 2P-SC-1c | L-M | 392 | UNITED STATES | Acushnet Company |
| ◀ PTS-So/Lo ▶ (PTS- / in red) (◀ ▶ So Lo in blue) / Titleist | white | 2P-SC-1c | L-M | 392 | UNITED STATES | Acushnet Company |
| ✓ ◀ PTS-So/Lo ▶ (PTS-/ in red) (◀ ▶ So Lo in blue) / Titleist | white | 2P-SC-1c | L-M | 392 | UNITED STATES | Acushnet Company |
| ✓ DT • in red So/Lo in blue w/red line / Titleist | white | 2P-SC-1c | L-M | 392 | UNITED STATES | Acushnet Company |
| DT in red So/Lo in blue w/red line / Titleist | white | 2P-SC-1c | L-L | 416 | UNITED STATES | Acushnet Company |
| HP Distance LSS / Titleist | white | 2P-SC-1c | L-M | 416 | UNITED STATES | Acushnet Company |
| HP Distance MX / Titleist | white | 2P-SC-1c | L-M | 416 | UNITED STATES | Acushnet Company |
| HP Tour SF / Titleist | white | 2P-SC-1c | L-M | 392 | UNITED STATES | Acushnet Company |
| HVC - Soft Feel / Titleist | white | 2P-SC-1c | L-M | 440 | UNITED STATES | Acushnet Company |
| HVC Soft Distance / Titleist | white | 2P-SC-1c | L-M | 416 | UNITED STATES | Acushnet Company |
| HVC Soft Feel / Titleist | white | 2P-SC-1c | L-L | 440 | UNITED STATES | Acushnet Company |
| HVC-L / Titleist | white | 2P-SC-1c | L-M | 392 | UNITED STATES | Acushnet Company |
| PTS • in red So/Lo in blue w/red line / Titleist | white | 2P-SC-1c | L-M | 392 | UNITED STATES | Acushnet Company |
| PTS in red So/Lo in blue w/red line / Titleist | yellow | 2P-SC-1c | L-M | 392 | UNITED STATES | Acushnet Company |
| PTS So/Lo (PTS / in red) (So Lo in blue) / Tobunda and symbol in blue / U-Plus and symbols in blue | white | 2P-SC-1c | L-H | 312 | JAPAN | Japana Co. Ltd. |

# Exhibit C

# HOWREY LLP

January 4, 2006

1299 Pennsylvania Avenue, NW
Washington, DC 20004-2402
www.howrey.com

**Matthew J. Moore**
Partner
T 202.383.7275
F 202.383.6610
moorem@howrey.com

BY FACSIMILE

Raja N. Saliba, Esq.
Sughrue Mion, PLLC
2100 Pennsylvania Avenue, N.W.
Washington, D.C. 20037-3213

> Re:    Response to Your Letter of December 22 re Deficiencies
>        *Bridgestone Sports Co. v. Acushnet Co.*,
>        Civil Action No. 05-132 (JJF) (D. Del.)

Dear Raja:

We have received your letter of December 22 in which you identify alleged deficiencies in Acushnet's document production.

With regard to the USGA List of Conforming Golf Balls attached to your letter of December 22, the various sidestamps listed therein represent golf balls submitted to the USGA; they do not each represent golf balls sold by Acushnet. Instead, the list of sidestamps provided to you by Mr. Seal on November 10 is the comprehensive list of all golf balls sold by Acushnet since 2000, with one exception – in the United Kingdom, Acushnet uses the PTS SoLo sidestamp on the DT SoLo golf ball. We will supplement our response to Bridgestone's Interrogatory No. 1 to indicate that the DT SoLo golf ball is sold under the name PTS SoLo in the United Kingdom.

Further, we have produced all of the manufacturing guidelines, USGA submission sheets and related USGA correspondence in our possession, custody or control for the accused golf balls.

Finally, we note that the ProV1 Star is a separate and distinct golf ball from both the Pro V1 and the Pro V1x. If you contend that the Pro V1 Star infringes any claim from one of the asserted Bridgestone patents, please explain the basis for that contention.

Very truly yours,

*Matt Moore*

Matthew J. Moore

**EX. C**

# Exhibit D

### IN THE UNITED STATES DISTRICT COURT

### FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| BRIDGESTONE SPORTS CO., LTD., and BRIDGESTONE GOLF, INC., <br><br> Plaintiffs, <br><br> v. <br><br> ACUSHNET COMPANY, <br><br><br> Defendant. | C. A. No. 05-132 (JJF) |

### BRIDGESTONE'S FIRST SET OF INTERROGATORIES
### (INTERROGATORY NOS. 1-24)

Pursuant to Fed. R. Civ. P. 33, Plaintiffs Bridgestone Sports Co. Ltd. and Bridgestone Golf, Inc., by their undersigned attorneys, propound these Interrogatories, to which Defendant Acushnet Company shall respond separately and fully, in writing and under oath, within the time prescribed by the Federal Rules of Civil Procedure, in accordance with the Definitions and Instructions set forth hereinafter.

### DEFINITIONS

Notwithstanding any definition set forth below, each word, term, or phrase used in this Request is intended to have the broadest meaning permitted under the Federal Rules of Civil Procedure. As used in this set of interrogatories, the following terms are to be interpreted in accordance with these definitions:

1)      The term "Bridgestone," "Plaintiff," and/or "Plaintiffs" means Bridgestone Sports Company, Ltd. and/or Bridgestone Golf, Inc., the plaintiffs in this action, and all predecessors, successors, subsidiaries, divisions, parents and/or affiliates thereof, past or present, and all past

**EX. D**

31)     The phrase "Prior Art Golf Ball" or "Prior Art Golf Balls" means and includes, by way of example, any golf ball that is encompassed by one or more subsections of 35 U.S.C. § 102, with respect to one of the Acushnet patents-in-suit or Bridgestone Patents-in-suit.

32)     The phrase "Acushnet products" means and includes each and every model, type, version and revision of golf balls made, used, sold, and/or offered for sale in the United States, exported from the United States, and/or imported into the United States from 1998 to the present, and including by way of example, the golf balls sold under the brands of at least: Titleist® Pro V1™, Titleist® Pro V1x™, Titleist® NXT™, Titleist® NXT Tour, Titleist® DT SoLo, and Pinnacle® Exception™.

33)     The phrase "Accused Acushnet products" means and includes all models, types, versions and revisions of at least the Titleist® Pro V1™, the Titleist® Pro V1x™, the Titleist® NXT™, Titleist® NXT Tour, the Titleist® DT SoLo, and the Pinnacle® Exception™ golf balls.

34)     The phrase "Accused Bridgestone products" means and includes the Bridgestone golf balls that Acushnet alleges infringe one or more of the Acushnet patents-in-suit.

35)     The phrase "Bridgestone products" means and includes each and every model, type, version and revision of golf balls made, used, sold, and/or offered for sale in the United States, exported from the United States, and/or imported into the United States by Bridgestone.

36)     The phrase "Acushnet patent inventor" means and includes each and every inventor named on any of the Acushnet patents-in-suit and any person who contributed in whole or in part to any claim or claims of any of the Acushnet patents-in-suit.

37)     The phrase "Acushnet patented product" means any product manufactured, distributed, exported, used, offered for sale or sold at any time, by, on behalf of, or under license from Acushnet that Acushnet contends embodies the subject matter of any claim of any of the Acushnet patents-in-suit.

38)     The term "USGA" means and includes the United States Golf Association.

39)     The present tense includes the past and future tenses.  The singular includes the plural, and the plural includes the singular.  "All" means "any and all," "any" means "any and

6

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

BRIDGESTONE SPORTS CO., LTD.,
and BRIDGESTONE GOLF, INC.,

        Plaintiffs,

    v.

ACUSHNET COMPANY,
      a Delaware Corporation,

        Defendant.

C. A. No.  05-132 (JJF)

## BRIDGESTONE'S FIRST SET OF REQUESTS FOR PRODUCTION DOCUMENTS AND THINGS (REQUEST NOS. 1-100)

Pursuant to Rules 26 and 34 of the Federal Rules of Civil Procedure, plaintiffs Bridgestone Sports Co., Ltd. and Bridgestone Golf, Inc. hereby request that defendant Acushnet Company produce and permit inspection and copying, the documents and things described herein.  Production should be made at the offices of plaintiffs' attorneys, Sughrue Mion, PLLC, 2100 Pennsylvania Avenue, NW, Washington. DC 20037 within thirty (30) days of these requests.

## DEFINITIONS

Notwithstanding any definition set forth below, each word, term, or phrase used in this Request is intended to have the broadest meaning permitted under the Federal Rules of Civil Procedure.  As used in this Request, the following terms are to be interpreted in accordance with these definitions:

1.      The term "Bridgestone," "Plaintiff," and/or "Plaintiffs" means Bridgestone Sports Company, Ltd. and/or Bridgestone Golf, Inc., the plaintiffs in this action, and all predecessors, successors, subsidiaries, divisions, parents and/or affiliates thereof, past or present, and all past

25.     The term "the '367 patent" means U.S. Patent No. 5,080,367, entitled "Golf Ball" and issued on January 14, 1992.

26.     The term "the '976 patent" means U.S. Patent No. 6,729,976, entitled "Golf Ball With Improved Flight Performance" and issued on May 4, 2004.

27.     The term "the '705 patent" means and includes U.S. Patent No. 6,818,705, entitled "Thin-Layer-Covered Golf Ball With Improved Velocity" and issued on November 16, 2004.

28.     The term "Acushnet patents-in-suit", as used herein, means and includes one or more of the '861 patent, the '587 patent, the '367 patent, the '976 patent, and the '705 patent.

29.     The phrase "Prior Art" means and includes, by way of example, the subject matter encompassed by one or more subsections of 35 U.S.C. § 102, and includes, without limitation, any information, Document, product and/or Thing.

30.     The phrase "Prior Art Golf Ball" or "Prior Art Golf Balls" means and includes, by way of example, any golf ball that is encompassed by one or more subsection of 35 U.S.C. § 102, with respect to one of the Acushnet patents-in-suit or Bridgestone Patents-in-suit.

31.     The phrase "Acushnet products" means and includes each and every model, type, version and revision of golf balls made, used, sold, and/or offered for sale in the United States, exported from the United States, and/or imported into the United States from 1998 to the present, and including by way of example, the golf balls sold under the brands of at least: Titleist® Pro V1™, Titleist® Pro V1x™, Titleist® NXT™, Titleist® NXT Tour, Titleist® DT SoLo, and Pinnacle® Exception™.

32.     The phrase "accused Bridgestone products" means and includes the Bridgestone golf balls that Acushnet alleges infringe one or more of the Acushnet patents-in-suit.

33.     The phrase "Bridgestone products" means and includes each and every model, type, version and revision of golf balls made, used, sold, and/or offered for sale in the United States, exported from the United States, and/or imported into the United States by Bridgestone.

# Exhibit E

IN UNITED STATES DISTRICT COURT
DISTRICT OF DELAWARE

**BRIDGESTONE SPORTS CO., LTD.,**
**AND BRIDGESTONE GOLF, INC.,**

                    Plaintiffs,

        v.

**ACUSHNET COMPANY,**

                    Defendant.

C.A. No. 05-132(JJF)

DEMAND FOR JURY TRIAL

## PLAINTIFFS' RESPONSES TO DEFENDANT'S FIRST SET OF INTERROGATORIES

Pursuant to Rule 33 of the Federal Rules of Civil Procedure, Plaintiffs Bridgestone Sports Co., Ltd., and Bridgestone Golf, Inc., (individually or collectively "Bridgestone") hereby respond to Defendant's First Set Of Interrogatories To Plaintiff dated June 10, 2005.

### GENERAL OBJECTIONS

The following general objections are made to each and every interrogatory, irrespective of whether they are stated specifically in response thereto:

1.    The following responses are based upon information presently available to and located by Bridgestone and its attorneys. Bridgestone has not completed its investigation of the facts relating to this action, and has not completed discovery in this action. Bridgestone's responses are based upon (1) a reasonable search, given the time allotted to Bridgestone to respond to the interrogatories, and (2) inquiries of Bridgestone employees and/or representatives who could reasonably be expected to possess responsive information. The subject matter of these requests is under continuing investigation. Bridgestone's responses are without prejudice to its rights to identify and to use additional information revealed in subsequent investigations and discovery.

**EX. E**

## SPECIFIC OBJECTIONS AND RESPONSES

### INTERROGATORY NO. 1

Identify on a claim-by-claim basis for the Bridgestone Patents, each Acushnet product that you contend infringes any claim of the Bridgestone Patents.

### RESPONSE TO INTERROGATORY NO. 1

In addition to the General Objections, Bridgestone objects to the interrogatory as being premature at this early stage of discovery, particularly since Bridgestone does not have the benefit of Acushnet's discovery, the Court has not construed the Bridgestone Patents, and the interrogatory calls for expert opinion and expert discovery. In addition, Bridgestone objects to this interrogatory as premature to the extent it seeks Bridgestone's contentions regarding claim construction. Subject to and without waiving the general and specific objections, Bridgestone responds as follows.

1.      At least claims 1, 3, 5-13 of the '652 patent are infringed by at least one or more of the Titleist® Pro V1™, Titleist® Pro V1x™, Titleist® NXT™, Titleist® NXT Tour, Titleist® DT SoLo and Pinnacle ® Exception ™ golf balls, and all other golf balls made or sold by Acushnet under a different brand and being substantially identical to any of the foregoing golf balls.

2.      At least claims 1-4 and 6-8 of the '852 patent are infringed by at least one or more of the Titleist® Pro V1™ and Titleist® Pro V1x™ golf balls, and all other golf balls made or sold by Acushnet under a different brand and being substantially identical to any of the foregoing golf balls.

3.      At least claims 1-4 and 9-11 of the '413 patent are infringed by at least one or more of the Titleist® DT SoLo and Pinnacle ® Exception ™ golf balls, and all other golf balls

# Exhibit F

# REDACTED

# Exhibit G

# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF DELAWARE

BRIDGESTONE SPORTS CO., LTD.,
and BRIDGESTONE GOLF, INC.,

            Plaintiffs,

    v.

ACUSHNET COMPANY,
    a Delaware Corporation,

            Defendant.

C. A. No.  05-132 (JJF)

## BRIDGESTONE'S FIRST SET OF REQUESTS FOR PRODUCTION DOCUMENTS AND THINGS (REQUEST NOS. 1-100)

Pursuant to Rules 26 and 34 of the Federal Rules of Civil Procedure, plaintiffs Bridgestone Sports Co., Ltd. and Bridgestone Golf, Inc. hereby request that defendant Acushnet Company produce and permit inspection and copying, the documents and things described herein. Production should be made at the offices of plaintiffs' attorneys, Sughrue Mion, PLLC, 2100 Pennsylvania Avenue, NW, Washington. DC 20037 within thirty (30) days of these requests.

## DEFINITIONS

Notwithstanding any definition set forth below, each word, term, or phrase used in this Request is intended to have the broadest meaning permitted under the Federal Rules of Civil Procedure.  As used in this Request, the following terms are to be interpreted in accordance with these definitions:

1.    The term "Bridgestone," "Plaintiff," and/or "Plaintiffs" means Bridgestone Sports Company, Ltd. and/or Bridgestone Golf, Inc., the plaintiffs in this action, and all predecessors, successors, subsidiaries, divisions, parents and/or affiliates thereof, past or present, and all past

**EX. G**

83.    All Documents and Things constituting, or referring or relating to, any communication between Acushnet and any Third Party concerning this lawsuit or any defense that Acushnet has asserted or may assert in this lawsuit.

84.    All Documents and Things concerning the licensing of each of the Acushnet patents-in-suit, including, but not limited to:

(a)    any and all licenses agreements;
(b)    any and all documents evidencing any payments made under any such licenses;
(c)    any and all licensing policies;
(d)    any and all expressions of interest in licensing any of the Acushnet patents-in-suit; and
(e)    any and all rejections of an offer to take a license to any of the Acushnet patents-in-suit.

85.    All Documents and Things concerning sales and marketing literature and other sales tools developed that evidence, relate or refer to any of the Acushnet products, including, without limitation:

(a)    business and/or marketing plans,
(b)    product comparisons,
(c)    product launch plans, and
(d)    promotional and advertising materials

86.    All Documents and Things concerning any studies or evaluations of the market or business done by or for Acushnet, including without limitation:

(a)    business marketing or strategic plans,
(b)    product launch plans,
(c)    lost order reports,
(d)    sales call reports, and
(e)    general market studies.

87.    All Documents and Things concerning Acushnet's annual revenues and annual revenues derived on a per customer basis from the license, sale, export or use of the Acushnet products since March 7, 1998.

88.    All Documents and Things concerning sales, pricing and profit margin information for each of the Acushnet products since March 7, 1998, including, without limitation, each product's:

   (a)  total gross unit sales;
   (b)  total net unit sales;
   (c)  total gross dollar sales;
   (d)  total net dollar sales;
   (e)  average unit gross wholesale selling price;
   (f)  average unit net wholesale selling price;
   (g)  total cost of goods sold;
   (h)  average unit cost of goods sold;
   (i)  revenue and unit summaries by geography;
   (j)  revenue and unit summaries by customer;
   (k)  revenue and unit summaries by product;
   (l)  revenue and unit summaries by month, quarter and/or year;
   (m) total gross profit margin;
   (n)  average gross profit margin per unit;
   (o)  total net profit margin;
   (p)  average net profit margin per unit;
   (q)  product line gross/standard margin reports;
   (r)  electronic sales databases;
   (s)  corporate profit and loss statements;
   (t)  divisional profit and loss statements;
   (u)  product line profit and loss statements;
   (v)  price elasticity/sensitivity analyses;
   (w) product line contribution reports;
   (x)  production summaries; and
   (y)  cost allocation procedures.

89.    All Documents and Things concerning any estimates or projections Acushnet has made with respect to the sales, pricing and profit margin information for each of the Acushnet products since March 7, 1998, including, without limitation, each product's:

   (a)  total gross unit sales;
   (b)  total net unit sales;
   (c)  total gross dollar sales;
   (d)  total net dollar sales;
   (e)  average unit gross wholesale selling price;
   (f)  average unit net wholesale selling price;
   (g)  total cost of goods sold;
   (h)  average unit cost of goods sold;
   (i)  revenue and unit summaries by geography;
   (j)  revenue and unit summaries by customer;
   (k)  revenue and unit summaries by product;
   (l)  revenue and unit summaries by month, quarter and/or year;

22

(m) total gross profit margin;
(n) average gross profit margin per unit;
(o) total net profit margin;
(p) average net profit margin per unit;
(q) product line gross/standard margin reports;
(r) electronic sales databases;
(s) corporate profit and loss statements;
(t) divisional profit and loss statements;
(u) product line profit and loss statements;
(v) price elasticity/sensitivity analyses;
(w) product line contribution reports;
(x) production summaries; and
(y) cost allocation procedures

90.    All Documents and Things concerning actual or projected market share information for the Acushnet products since March 7, 1998.

91.    All Documents and Things concerning the submission of any model, version, type or revision of the Acushnet products to the USGA for listing on the List of Conforming Golf Balls since March 7, 1998, including, but not limited to, all USGA applications, USGA testing results, communications either to or from the USGA, and documents and things concerning or referencing such submissions or communications.

92.    All Documents and Things concerning the use and/or testing of any model, version, type or revision of the Acushnet products by any member of the Professional Golfers' Association of America ("PGA") or Ladies Professional Golf Association ("LPGA") from March 7, 1998 to the present, including, but not limited to, endorsement contracts, licenses, and the models, versions, types or revisions of the Acushnet products used and/or tested.

93.    All Documents and Things concerning the number, type, model and configuration of each of the Acushnet products sold, provided, exported or otherwise supplied by Acushnet to each of its customers since March 7, 1998.

94.    All Documents and Things concerning the number, type, model and configuration of each of the Acushnet products manufactured by Acushnet since March 7, 1998.

95.    All Documents and Things concerning the number, type, model and configuration of each of the Acushnet products exported by Acushnet since March 7, 1998.

96.    All Documents and Things concerning the sale or potential sale of Acushnet or the merger of Acushnet with another corporate entity, including, without limitation, any valuations of Acushnet.

97.    Documents and Things sufficient to describe Acushnet's document retention, management and/or destruction policies and practices, including policies and practices related to electronic mail from 1990 to the present.

98.    All Documents and Things concerning the allegations and denials set forth by Acushnet in the Answer, including, but not limited to, all Documents and Things which tend to contradict or draw into question any of the allegations and denials set forth in the Answer.

99.    All Documents and Things concerning resilience index, as that phrase is used in the '705 patent.

100.   All Documents and Things concerning CB23, CB22, BR-60, BR-40, Taktene 8855, CARIFLEX BR1220, BUDENE 1207G, and BR11, and the resilience index, lost tangent thereof, and the analysis, investigation, inspection, and use of any of the foregoing materials in golf balls.

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF DELAWARE

BRIDGESTONE SPORTS CO., LTD.,
and BRIDGESTONE GOLF, INC.,

Plaintiffs,

v.

ACUSHNET COMPANY,

Defendant.

C. A. No.  05-132 (JJF)

## BRIDGESTONE'S SECOND SET OF REQUESTS FOR PRODUCTION DOCUMENTS AND THINGS (REQUEST NOS. 101-155)

Pursuant to Rules 26 and 34 of the Federal Rules of Civil Procedure, plaintiffs Bridgestone Sports Co., Ltd. and Bridgestone Golf, Inc. hereby request that defendant Acushnet Company produce and permit inspection and copying, the documents and things described herein.  Production should be made at the offices of plaintiffs' attorneys, Sughrue Mion, PLLC, 2100 Pennsylvania Avenue, NW, Washington. DC 20037 within thirty (30) days of these requests.

## DEFINITIONS

Bridgestone incorporates by reference the DEFINITIONS set forth in BRIDGESTONE'S FIRST SET OF REQUESTS FOR PRODUCTION DOCUMENTS AND THINGS (REQUEST NOS. 1-100) as though fully set forth herein.

Additionally, the following terms in this Request are to be interpreted in accordance with these definitions:

1.    The term "on-course retailer" means a retailer of golf equipment, including golf balls, located on a golf course facility.

104.    All Documents and Things concerning Acushnet's knowledge or awareness of any Prior Art to any of the Acushnet patents-in-suit and foreign counterparts thereof.

105.    All Documents and Things concerning any commercial success of products, machines, processes, services, and/or technology covered by one or more of the Acushnet patents-in-suit.

106.    All Documents and Things that Acushnet contends support or undercuts its interpretation of any of the asserted claims for any of the Acushnet patents-in-suit and for any claim of any of the Bridgestone patents-in-suit.

107.    All Documents and Things concerning the maintenance of the Acushnet patents-in-suit by payment of fees to the United States Patent and Trademark Office as required by 35 U.S.C. § 41.

108.    All Documents and Things concerning all domestic and foreign administrative and judicial proceedings, including prosecution, oppositions and any other challenges to the patentability or validity thereof, involving any of the Acushnet patents-in-suit and foreign counterparts and instructions and communications related thereto.

109.    All reports prepared for use by management, whether periodic or not, referring or relating to Acushnet's costs, returns, discounts and rebates, including without limitation, costs for manufacture, sales, marketing, distribution, overhead administration, advertising, promotion,

3

production, labor, taxes, research and development for products, machines, processes, services, and technology covered by the Acushnet patents-in-suit and foreign counterparts.

110.    All Documents and Things concerning any computation, calculation or estimation of damages suffered by Acushnet, whether in terms of lost profits or royalties, as a consequence of Bridgestone's alleged infringement of the Acushnet patents-in-suit.

111.    All Documents and Things concerning market demand for products, machines, processes, services, and/or technology covered by the Acushnet patents-in-suit as related to Acushnet's ability to manufacture or have manufactured, use or sell sufficient products, machines, processes, services, and/or technology to meet such demand.

112.    All reports prepared for use by management, whether periodic or not, referring or relating to unit quantities and dollar amounts of sales by Acushnet relating to products, machines, processes, services, and/or technology covered by the Acushnet patents-in-suit and foreign counterparts and all price lists, promotional materials, show specials and associated literature.

113.    All Documents and Things concerning the design of all Acushnet products that Acushnet believes would have been commercially acceptable alternatives to the Accused Products.

114.    Two dozen samples of each model, type, version and revision of the Acushnet products randomly selected and appropriately labeled or otherwise identified to indicate the model, manufacturing lot number, part number, and date of manufacture.

115.    A sample of the retail packaging for each of the Acushnet Products, appropriately labeled or otherwise identified to indicate the model and year of the Acushnet Product intended to be used with the packaging.

116.    Two dozen samples of each of the following components for each of the Acushnet Products (unless otherwise specified), randomly selected from the specified manufacturing stage at Acushnet's manufacturing plant, and appropriately labeled or otherwise identified to indicate the model, manufacturing lot number, part number, and date of manufacture:

a.    the golf ball core just prior to the addition of the next layer (*i.e.*, prepped and ready for the addition of the intermediate layer for the Titleist® Pro V1$^{TM}$, Titleist® Pro V1x$^{TM}$ golf balls and prepped and ready for the addition of the golf ball cover for the Titleist® NXT$^{TM}$, Titleist® NXT Tour, Titleist® DT SoLo, and Pinnacle® Exception$^{TM}$ golf balls);

b.    for the Titleist® Pro V1x$^{TM}$ and Titleist® NXT Tour golf balls, the inner golf ball core portion just prior to the addition of the outer golf ball core portion (*i.e.*, prepped and ready for the addition of the outer golf ball core);

c.    for the Titleist® Pro V1$^{TM}$, Titleist® Pro V1x$^{TM}$, the golf ball core plus the golf ball intermediate layer just prior to the addition of the cover on the golf ball intermediate layer (*i.e.*, prepped and ready for the addition of the cover).

5

117.    Two dozen samples of each of the following components for each of the Acushnet Products (unless otherwise specified), randomly selected from those that Acushnet *rejected* from the specified manufacturing stage at Acushnet's manufacturing plant, and appropriately labeled or otherwise identified to indicate the model, manufacturing lot number, part number, and date of manufacture:

a.      the golf ball core just prior to the addition of the next layer (*i.e.*, prepped and ready for the addition of the intermediate layer for the Titleist® Pro V1™, Titleist® Pro V1x™ golf balls and prepped and ready for the addition of the golf ball cover for the Titleist® NXT™, Titleist® NXT Tour, Titleist® DT SoLo, and Pinnacle® Exception™ golf balls);

b.      for the Titleist® Pro V1x™ and Titleist® NXT Tour golf balls, the inner golf ball core portion just prior to the addition of the outer golf ball core portion (*i.e.*, prepped and ready for the addition of the outer golf ball core);

c.      for the Titleist® Pro V1™, Titleist® Pro V1x™, the golf ball core plus the golf ball intermediate layer just prior to the addition of the cover on the golf ball intermediate layer (*i.e.*, prepped and ready for the addition of the cover).

118.    All Documents and Things concerning the basis for rejecting Acushnet products and component parts thereof during each manufacturing stage for each of the Acushnet products, including without limitation any statistical data representative of any physical characteristics of the Acushnet products, for example, data on mean or average, standard deviation, range (high and low values), distribution, and CpK.

6

119.    Samples of the following component materials for each of the Acushnet products (unless otherwise specified):

a.    for the Titleist® Pro V1™, Titleist® NXT™, Titleist® NXT Tour (single core model), and Titleist® DT SoLo, and Pinnacle® Exception™ golf balls, core material composition immediately prior to molding core (1 kilogram core precursor),

b.    for the Titleist® Pro V1x™ and Titleist® NXT Tour golf balls that have dual cores, inner core material composition immediately prior to molding core (1 kilogram inner core precursor) and outer core material composition immediately prior to molding core (1 kilogram outer core precursor),

c.    for the Titleist® Pro V1™, Titleist® Pro V1x™, golf ball intermediate layer material (2 kg of dry blend of resins), and

d.    golf ball cover material (1 kg of solid mixed and cured cover material and a sufficient amount of the material components of the cover prior to mixing to generate 4 kilograms of solid mixed and cured cover material) for the Acushnet products.

120.    Plaques and sample blocks of material made or used to test or analyze, or that are substantially similar in composition and structure to, any of the components of the Acushnet products, including the cores, intermediate layers and covers.

# Exhibit H

# HOWREY LLP

1299 Pennsylvania Avenue, NW
Washington, DC 20004-2402
www.howrey.com

Matthew J. Moore
Partner
702.383.7275
202.383.6610
moorem@howrey.com

File 00634.0002

November 18, 2005

BY FACSIMILE

Raja N. Saliha, Esq.
Sughrue Mion, PLLC
2100 Pennsylvania Avenue, N.W.
Washington, D.C. 20037-3213

Re:   *Bridgestone Sports Co. v. Acushnet Co.,*
      Civil Action No. 05-132 (JJF) (D. Del.)

Dear Raja:

I write to follow up on my correspondence to you of November 10 regarding the production of samples responsive to Bridgestone's document requests and additional deficiencies in Bridgestone's document production.

Regarding the production of golf ball samples, as indicated in my letter of November 10, we have a limited number of samples in our possession of the accused Bridgestone balls, previous versions of the accused Acushnet golf balls, and prior art golf balls. We thus reiterate our proposal that we make one sample of each golf ball in our possession available for testing by an independent third party testing agent, based on mutual agreement of the tests to be performed and applicable procedures, on whose results both parties may rely.

We do have (1) plaques, (2) golf ball components randomly selected from Acushnet's current manufacturing lines, (3) golf ball components rejected in Acushnet's quality control process and randomly selected from Acushnet's manufacturing lines, and (4) samples of the finished product for each of the current versions of the accused golf balls, which we will make available to you. Each plaque, component or finished golf ball tested by Bridgestone, however, must be returned to us within a reasonable amount of time of testing - in any event, no more than a week - with an identification of the test(s) performed, so that we may conduct an identical test. For any ball or ball component subjected to destructive testing, we need to be notified in advance of any such testing, with an assurance that there will be enough material remaining for us to conduct an identical test. Further, any component or ball subjected to such testing must be returned to us within two days, as certain properties of that component may change shortly after the destructive testing.

We also have samples of the various rubber and Surlyn components used in the accused Acushnet products available for your inspection at Acushnet's facilities in Fairhaven, Massachusetts. Please let us know when you are ready to inspect those samples, so we can make the appropriate arrangements

AMSTERDAM  BRUSSELS  CHICAGO  HOUSTON  IRVINE  LONDON
LOS ANGELES  MENLO PARK  NORTHERN VIRGINIA  PARIS  SAN FRANCISCO  WASHINGTON, DC

EX. H

# HOWREY

Raja N Saliba
November 18, 2005
Page 2

Bridgestone's Document Request 119 asks for "1 kg of solid mixed and cured cover material and a sufficient amount of the material components of the cover prior to mixing to generate 4 kilograms of solid mixed and cured cover material" for the accused golf balls. While we are willing to produce those materials to you, we note that the prepolymer and curative blend components used in the ProV1 and ProV1x outer covers come in 55-gallon drums and we have no means to provide a sufficient amount of these materials to produce 4 kilograms of solid mixed and cured cover material to you. We are willing to provide a 55-gallon drum of each component to you at cost. Please let us know whether that is acceptable or whether you have an alternate solution.

Further, our review of Bridgestone's document production revealed that a significant number of documents are illegible and/or improperly formatted. A list of the bates numbers for these documents is attached. Please produce legible and properly formatted copies of these documents as soon as possible.

In addition, we expect to produce an additional 8 to 10 boxes of documents to you next week. These boxes include documents responsive to the complaints raised in your September 30 letter as well as some additional documents from Acushnet's marketing department.

We propose holding a meet-and-confer on these issues, along with the issues raised in my November 10, 2005 letter regarding deficiencies in Bridgestone's document production, on either Tuesday, November 22 or Wednesday, November 23.

Very truly yours,

Matthew J. Moore

Enclosure

# Exhibit I

# HOWREY LLP

1299 Pennsylvania Avenue, NW
Washington, DC 20004-2402
T 202.783.0800
F 202.383.6610
www.howrey.com

Direct Dial 202.383.6904
File 00634.0002

November 22, 2005

**BY FACSIMILE**

Raja N. Saliba, Esq.
Sughrue Mion, PLLC
2100 Pennsylvania Avenue, N.W.
Washington, D.C. 20037-3213

Re:     ***Bridgestone Sports Co. v. Acushnet Co.,***
         ***Civil Action No. 05-132 (JJF) (D. Del.)***

Dear Raja:

I write in response to your November 17 letter in which you request, among other things, financial documents "at a more detailed level." We have uncovered additional data that does provide more detailed information. The volume of this data, however, is massive.

In addition, our review of Bridgestone's document production revealed that there is likely to be a similarly large number of additional Bridgestone financial documents at the same level of detail as the Acushnet data. We believe there may be a way to focus the production of documents to include only those documents required by both parties, thus avoiding any unnecessary burden and expense. We anticipate reaching a reciprocal solution and look forward to discussing this with you during our pre-hearing conference.

We are looking into the remaining questions raised in your November 17 letters and hope to have answers for you within a few days.

Regards,

Brian S. Seal

AMSTERDAM  BRUSSELS  CHICAGO  HOUSTON  IRVINE  LONDON
LOS ANGELES  MENLO PARK  NORTHERN VIRGINIA  PARIS  SAN FRANCISCO  WASHINGTON, DC

EX. K