## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

BRIDGESTONE SPORTS CO., LTD.,  )
and BRIDGESTONE GOLF, INC.,  )
)
Plaintiffs,  )
)
v.  )    C. A. No. 05-132 (JJF)
)
ACUSHNET COMPANY,  )    **DEMAND FOR JURY TRIAL**
)
Defendant.  )
_____  )
ACUSHNET COMPANY,  )    **PUBLIC VERSION**
)
Counterclaim Plaintiff,  )
)
v.  )
)
BRIDGESTONE SPORTS CO., LTD.  )
and BRIDGESTONE GOLD, INC.  )
)
Counterclaim Defendant.  )

### ACUSHNET'S REPLY BRIEF IN SUPPORT OF ITS MOTION FOR
### REPRESENTATIVE CLAIMS AND
### TO REQUIRE DETAILED INFRINGEMENT CONTENTIONS

OF COUNSEL:

Alan M. Grimaldi
Joseph P. Lavelle
Matthew J. Moore
Vivian S. Kuo
HOWREY LLP
1299 Pennsylvania Avenue, N.W.
Washington, DC 20004
Telephone (202) 783-0800

Dated: December 22, 2005
Public Version Dated: January 30, 2006

Richard L. Horwitz (#2246)
David E. Moore (#3983)
POTTER ANDERSON & CORROON LLP
Hercules Plaza, 6th Floor
1313 North Market Street
P. O. Box 951
Wilmington, DE 19899-0951
(302) 984-6000
rhorwitz@potteranderson.com
dmoore@potteranderson.com

*Attorneys for Defendant*
*Acushnet Company*

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................................................ ii

PRELIMINARY STATEMENT ..................................................................................1

ARGUMENT .................................................................................................................2

I.    BRIDGESTONE HAS HAD ALL THE TIME AND
      INFORMATION THAT IT NEEDS TO EVALUATE ITS CASE .........................2

II.   BRIDGESTONE HAS MISSTATED THE COMPLEXITY OF
      THIS CASE .........................................................................................................4

III.  ACUSHNET'S SUGGESTED NUMBER OF
      REPRESENTATIVE CLAIMS IS NOT ARBITRARY .........................................7

IV.   BRIDGESTONE'S TEST DATA ARE NOT PRIVILEGED OR
      WORK PRODUCT AND SHOULD HAVE BEEN PROVIDED
      TO ACUSHNET IN RESPONSE TO ITS INTERROGATORIES
      NOS. 1, 2 AND 14.................................................................................................8

CONCLUSION..............................................................................................................11

# TABLE OF AUTHORITIES

## CASES

*Bio-Technology General Corp. v. Genentech, Inc.,*
   80 F.3d 1553 (Fed. Cir. 1996)..................................................................................7

*Hercules Inc. v. Exxon Corp.,*
   434 F. Supp. 136 (D. Del. 1977).............................................................................11

*J.T. Eaton & Co., Inc. v. Atlantic Paste & Glue Co.,*
   1987 U.S. Dist. LEXIS 16792 (E.D.N.Y. 1987)......................................................10

*Loctite Corp. v. Fel-Pro, Inc.,*
   667 F.2d 577 (7th Cir. 1981) ..............................................................................9, 10

*Panduit Corp. v. Dennison Manufacturing Co.,*
   836 F.2d 1329 (Fed. Cir. 1987)................................................................................7

*Phillips Electrics North America Corp. v. Universal Electrics,*
   892 F. Supp. 108 (D. Del. 1995)..............................................................................9

*Vardon Golf Co., Inc. v. BBMG Golf, Ltd.,*
   156 F.R.D. 641 (N.D. Ill. 1994)................................................................................9

*Wesley Jessen Corp. v. Bausch & Lomb, Inc.,*
   209 F. Supp. 2d 348 (D. Del. 2002).........................................................................7

## STATUTES

35 U.S.C. § 271(a) .......................................................................................................7

35 U.S.C. § 281 ...........................................................................................................7

## OTHER

Fed. R. Civ. Pro. 16.....................................................................................................11

Fed. R. Civ. Pro. 26(b)(3) .........................................................................................8, 9

## PRELIMINARY STATEMENT

This case is highly complex, regardless of Bridgestone's assertions to the contrary. To prevent an enormous waste of resources and focus this case, Acushnet has made numerous proposals to Bridgestone. Bridgestone, however, has rejected every one. Bridgestone, in fact, has filed a second patent infringement suit against Acushnet in Japan, further complicating this matter. Simply put, Bridgestone wants to keep this case complicated.

As part of that strategy, Bridgestone has refused to provide Acushnet proper infringement contentions, which would help focus the parties' disputes. Instead, Bridgestone has simply asserted that Acushnet's accused golf balls satisfy the claim limitations without any factual support. Acushnet moved to compel Bridgestone to produce proper contentions in October and the Court instructed the parties that Acushnet's motion was premature because the Court was not going to require Bridgestone to produce a large volume of ultimately irrelevant contentions <u>before</u> Bridgestone focused its infringement case down from 83 claims. (Oct. 5, 2005 Tr. at 27 (Ex. 1 hereto).) The Court even stated that, "if you can't get an agreement, bring it to me, and we'll get it narrowed." *Id.* Despite these instructions, Bridgestone has continued to reject Acushnet's attempts to focus the case or provide its contentions.

Now, the February 28, 2006 deadline for the parties to supplement their contentions is rapidly approaching and Bridgestone still opposes focusing the case. Bridgestone makes only the vague counterproposal that it will agree to focus its case to an unspecified number of claims several months <u>after</u> the deadline for the parties to supplement their contentions. (Bridgestone Opp. at 4.) Bridgestone's proposal, however, prejudices Acushnet by preventing it from focusing its efforts on the real claims at-issue, forcing it to waste considerable resources on ultimately irrelevant claims, and denying it a fair opportunity to prepare its <u>responsive</u> noninfringement and invalidity contentions.

Further, the Court indicated that such a procedure would put the cart before the horse. (Ex. 1 at 27.)

Based on the Court's Scheduling Order, the deadline to supplement responses to contention interrogatories is February 28, 2006. Based on this Court's instructions, the Court expected the parties to focus this case before requiring Bridgestone to produce detailed contentions. As a result, the time to focus this case is now.

## ARGUMENT

**I.    BRIDGESTONE HAS HAD ALL THE TIME AND INFORMATION THAT IT NEEDS TO EVALUATE ITS CASE**

Bridgestone argues that it is premature to focus the case now because the parties are in the early stages of discovery and neither party has had an opportunity to analyze the productions or conduct depositions. (Bridgestone Opp. at 2.) The parties, however, have been in negotiations over these patents for more than two years. Unlike Bridgestone, Acushnet has also provided proper noninfringement and invalidity contentions amounting to over 220 pages of contentions for all of Bridgestone's 83 asserted claims on September 28, 2005—over two months ago. (Ex. 2 hereto (Acushnet's non-infringement and invalidity contentions).) Acushnet, for example, identified the measurements (i.e., scientific facts) supporting its noninfringement positions and identified its invalidity positions with element-by-element claim charts.[1]

---

[1] Bridgestone points to one claim from the 43 claims Acushnet asserts against Bridgestone to allege that Acushnet has provided the same level of detail as Bridgestone in response to Bridgestone's contention interrogatories. (Bridgestone Opp. at 10; Cf. Ex. 3 hereto (Acushnet's Infringement Contentions demonstrating that Acushnet has provided detailed infringement contentions for all the other claim limitations).) Bridgestone fails to recognize that, with respect to two claim limitations, Acushnet plead infringement of these limitations on "information and belief." Acushnet is currently in the process of verifying its belief, and will provide this information to Bridgestone in a timely manner.

2

While Bridgestone argues that Acushnet has been slow in producing its documents (Bridgestone Opp. at 2), Acushnet has produced all the documents necessary to evaluate Bridgestone's infringement case months ago. Bridgestone, in fact, does not dispute that Acushnet produced all but one of its manufacturing guidelines[2] and all recipes related to the accused balls months ago—on August 31, 2005.[3] (Bridgestone Opp. at 3.)

Bridgestone claims it is burdened by Acushnet's recent production of 16 boxes of documents. (Bridgestone Opp. at 2.) Bridgestone, however, fails to identify even a single technical document in the supplemental production that is necessary for its evaluation of Bridgestone's infringement contentions – because there are none. Acushnet's recent production included e-mails and other information unrelated to Bridgestone's infringement case.

The only documents that Bridgestone identifies are absent from Acushnet's production are the prosecution histories for patents related to the <u>Acushnet</u> patents-in-suit. Bridgestone, however, does not need Acushnet's prosecution histories to evaluate its infringement case. Thus, Bridgestone has had more than enough time and information to evaluate its case.

Bridgestone's attempts to distinguish *Fenster Family Patent Holdings, Inc. v. Siemens Med. Solutions USA*, C.A. No. 04-038-JJF, 2005 WL 2304190 (D. Del. Sept. 20, 2005) also ring hollow. While the *Fenster* case included 8 patents with 90 claims against

---

[2] The manufacturing guidelines provided by Acushnet identify the raw materials used in each of the golf balls as well as describe each step of the process by which each golf ball is manufactured and the tolerances for each of the cover layer thicknesses. Additionally, Acushnet has produced its core formulation recipes and manufacturing change orders to indicate what chemicals were used in the golf balls manufactured by Acushnet.

[3] One set of manufacturing guidelines (having only 17 pages) for the 2003 Pinnacle Exception golf ball was inadvertently omitted from Acushnet's original production, and included in the more recent production.

49 products, Bridgestone has asserted 10 patents with 83 asserted claims against 6 different Acushnet products. In addition, as described below, the technology in this lawsuit is not "relatively simple" as Bridgestone suggests. Moreover, this case is not "well before" meaningful discovery has taken place. Bridgestone has had the necessary document production from Acushnet for months. Accordingly, the time is ripe for the parties to focus their cases.

## II.    BRIDGESTONE HAS MISSTATED THE COMPLEXITY OF THIS CASE

Bridgestone argues that the patents at issue are not complex. Bridgestone's position, however, is refuted by its own patents, its large number of assertions and the large amount of Japanese discovery required to resolve these issues. The Bridgestone patents, for example, relate to many different aspects of golf ball design, including dimple configurations, aerodynamic properties, the chemical composition of the core or cover layers, the interplay between the various layers in two and three piece golf balls, and their impacts on aerodynamics, durability, spin, and feel. In addition, each of these various designs is further complicated because they are based on complex chemical compositions and measurements:

- **The '652 Patent:** "about 0.05 to about 2 parts by weight of a sulfur compound selected from the group consisting of pentachlorothiophenol, 4-t-tubyl-o-thiocresol, 4-t-butyl-p-thiocresol, 2-benzamidothiophenol, thiobenzoic acid, and zinc salts thereof" ('652 patent, col. 5, lines 13-17 (claim 1));

- **The '413 Patent:** "said cover being composed mainly of an ionomer resin and having … a 300% modulus in the range of 15 to 35 MPa" ('413 patent, col. 6, lines 11-13 (claim 1));

4

- **The '707 Patent:** "wherein the dimples in the ball surface total in number to 360 to 450 and include at least two types of dimples having different diameters and an index (Dst) of overall dimple surface area give by the following expression is at least 4,

$$Dst = \frac{n\sum_{k=1}^{n}(Dmk^2 + Dpk^2)xV_okxNk}{4R^2},"$$

('707 patent, col. 11, line 14-col. 12, line 7 (claim 6).) Where $V_o$ is defined by $\frac{V_p}{V_q}$, $V_p$ is defined as $V_p = \int_{0}^{\frac{Dm}{2}} 2\pi xy dx$ and $V_q$ is defined as $V_q = \frac{\pi D_m^2 D_p}{4}$ (*Id.* at col. 6, lines 15-25);

- **The '924 Patent:** "the value of the spatial volume of each dimple below a plane defined by an edge of the dimple divided by the volume of a cylinder wherein the bottom of said cylinder is defined by said plane and the height is determined by the maximum depth of the dimple from said plane ranges from 0.390 to 0.550" ('924 patent, col. 10, line 1-6 (claim 1));

- **The '961 Patent:** "100 parts by weight of a base rubber composed of (a) 20 to 100 wt % of a polybutadiene having a cis-1,4 content of at least 60% and a 1,2 vinyl content of at most 2%, having a viscosity η at 25ºC. as a 5 wt % solution in toluene of up to 600 mPa·s, being synthesized using a rare-earth catalyst and satisfying the relationship: $10B+5 \leq A \leq 10B+60$, wherein A is the Mooney viscosity ($ML_{1+4}$ (100° C)) of the polybutadiene and B is the ratio Mw/Mn between the weight-average molecular weight Mw and the number-average molecular weight Mn of the polybutadiene, in combination with (b) 0 to 80 wt % of a diene rubber other than component (a)" ('961 patent, col. 14, lines 12-23 (claim 1));

5

- **The '791 Patent:** "wherein said elastic core is formed of rubber as the base material comprising an ingredient selected from a group consisting of pentachlorothiophenol, pentafluorothiophenol, pentabromothiophenol, p-chlorothiophenol and the zinc salt of pentachlorothiophenol" ('791 patent col. 9, lines 26-31 (claim 11));

- **The '125 Patent:** "a proportion $V_R$ (%) of the total of the volumes of dimple spaces each defined below a plane circumscribed by the dimple edge to the overall volume of a phantom sphere given on the assumption that the golf ball surface is free of dimples" ('125 patent, col. 9, line 51-col. 10, line 1 (claim 1).) where $V_R$ is based, in part on $V_p = \int_0^{\frac{Dm}{2}} 2\pi xy\,dx$ and $V_q = \dfrac{\pi D_m^2 D_p}{4}$ (*Id.* at col. 5, lines 61-67); and

- **The '861 Patent:** "selecting a dimple diameter and dimple depth that satisfy the following relationship:

$$S = \left[\frac{831.5(d-x) - 55.56(D-y)}{a}\right]^2 + \left[\frac{83.15(D-y) + 555.6(d-x)}{b}\right]^2$$

where s is a value between 0 and 1.0" ('861 patent, col. 9, line 67-col. 10, line 9 (claim 1).)

Thus, this case is not as simple as Bridgestone would have the Court believe.

Bridgestone's arguments that the scheduling order accommodated the complexity of the litigation rings hollow. The scheduling order was signed on June 29, 2005, before Bridgestone notified Acushnet of the vast number of claims it was asserting against Acushnet. Thus, the current complexity of this case was not taken into account in the scheduling order.

**III.    ACUSHNET'S SUGGESTED NUMBER OF REPRESENTATIVE CLAIMS IS NOT ARBITRARY**

While Bridgestone has asserted that Acushnet's recommendation that Bridgestone be required to select 10 claims is "arbitrary," Bridgestone has correctly identified Acushnet's logic in choosing 10 claims as the appropriate number—that Bridgestone can select its best claim for each patent in suit based on the information that it has been collecting for *two years*. (Bridgestone Opp. at 1.)

Acushnet's selection of 10 claims for litigation is supported by law. The Patent Act creates a single civil action for infringement of *the patent*, not multiple causes of action on each individual claim of the patent. 35 U.S.C. § 281 ("A patentee shall have remedy by civil action for infringement of *his patent*") (emphasis added); *see also* 35 U.S.C. § 271(a) ("whoever without authority makes, uses, offers to sell, or sells any patented invention … infringes *the patent*") (emphasis added). Consistent with the statute, many courts have stated that a patent owner prevails on its cause of action for patent infringement by showing infringement of one patent claim. *Panduit Corp. v. Dennison Mfg. Co.*, 836 F.2d 1329, 1330 n.1 (Fed. Cir. 1987) ("One is liable for patent infringement if one claim be infringed"); *Bio-Technology General Corp. v. Genentech, Inc.*, 80 F.3d 1553, 1562 n.8 (Fed. Cir. 1996) ("Infringement of one valid and enforceable claim is all that is required for liability to arise"); *Wesley Jessen Corp. v. Bausch & Lomb, Inc.*, 209 F. Supp. 2d 348, 383 (D. Del. 2002) ("Infringement occurs where the alleged infringer's product contains every element of at least one claim of the patent.") Therefore, requiring Bridgestone select 10 claims from 10 patents for litigation is in accord with the Patent Act and is hardly "arbitrary."

In addition, nothing prevents Bridgestone from selecting multiple claims from a single patent based on a fair assessment of its case. For example, Bridgestone may opt to select multiple claims from one patent and select no claims from the '852 patent because

7

. (Ex. 4 hereto.)  That decision, however, is up to Bridgestone.

## IV.  BRIDGESTONE'S TEST DATA ARE NOT PRIVILEGED OR WORK PRODUCT AND SHOULD HAVE BEEN PROVIDED TO ACUSHNET IN RESPONSE TO ITS INTERROGATORIES NOS. 1, 2 AND 14

The results of Bridgestone's tests of Acushnet's products are scientific fact—merely numbers—and are not "work product."  Bridgestone has asserted that the results of its tests are privileged because these tests were performed at the request of counsel and some may have been performed with Bridgestone attorneys present. (Ex. 1 at 38-39.) Bridgestone's argument is akin to saying that if an attorney witnesses a fact, that fact becomes work product.[4]  This proposition is facially false.

The work-product immunity protects "documents and tangible things." Fed. R. Civ. P. 26(b)(3).  Underlying facts—such as the results of tests performed by

---

[4] As put by Hon. Kent A. Jordan during a recent telephone conference in another litigation:

> "[I]f there is a testing protocol and they're not telling you the testing protocol and the reason they're not telling you the testing protocol is because they say their lawyer told us not to tell you what is the testing protocol, I would agree it's not legal advice, its scientific information and they can't turn it into attorney-client privilege by putting it in the mouth of their lawyer first...."

Jul. 13, 2005 Tr. at 13 (*Ciba Specialty Chems. Corp., Inc. v. Hercules Inc.*, C. A. No. 04-293(KAJ)) (Ex. 5 hereto).  After briefing on this topic, the Judge ordered the production of the test results and protocols:

> [These documents] reveal nothing in the way of seeking advice or giving opinions.  There is no legal decision whatsoever.  This is purely a rendition of lab results, samples tested, viscosity, cross-linking levels, statements of amounts by percentage and by molar amounts.  I mean this is no more privileged than if somebody were to drop a lab notebook in an envelope, address it to a lawyer and say, "well, now my lab work is all privileged."  It's factual information.  It's not privileged information.

Aug. 31, 2005 Tr. at 3-4 (*Ciba Specialty Chems. Corp., Inc. v. Hercules Inc.*, C. A. No. 04-293(KAJ)) (Ex. 6 hereto).

Bridgestone—are not protected by the work-product doctrine or the attorney client privilege. *See Phillips Elecs. North Am. Corp. v. Universal Elecs.*, 892 F. Supp. 108, 110 (D. Del. 1995) ("However, as is the case with documents and communications protected by the attorney-client privilege, plaintiff may not rely on Rule 26(b)(3) or claims of work product as a basis for refusing to respond to discovery requests seeking the disclosure of non-privileged facts."). Bridgestone's own argument that it "is not withholding facts, but has produced all non-privileged information" contradicts its assertion that it is in actuality withholding test results as privileged. (Bridgestone Opp. at 9.)

Moreover, Bridgestone, in distinguishing *Loctite*, overlooks the essential nature of this test data. The court in *Loctite* stated:

> In a chemical patent, there is no way to show that these elements exist in the accused products without utilizing highly technical tests performed by experts. In order to establish that a justicable controversy existed, Loctite had to have test results showing the existence of infringing ingredients in the specific amounts in Fel-Pro's products. Thus, the production of the test results was not only relevant, ***but essential to the case.***

*Loctite Corp. v. Fel-Pro, Inc.*, 667 F.2d 577, 581 (7th Cir. 1981) (emphasis added). As illustrated above, this case is complex and many of the claim limitations cannot be determined to be present without technical tests. The results of these tests are "essential to the case" and should have been produced to Acushnet in response to its contention interrogatories.

The case law relied on by Bridgestone is distinguishable. First, *In re Cendant* is irrelevant because Acushnet is not seeking the mental impressions of Bridgestone's attorneys. Rather Acushnet is seeking scientific facts. Likewise, *Vardon Golf* is also not analogous because there, the movant was inquiring into which allegedly infringing golf clubs the defendant had tested—information that would divulge attorney opinion. *Vardon Golf Co., Inc. v. BBMG Golf, Ltd.*, 156 F.R.D. 641, 648-49 (N.D. Ill. 1994) ("the

selection of clubs to be cut open is strongly indicative of mental impressions, conclusions, or legal theories of Dunlop's attorneys.") Here, Acushnet knows which golf balls and which characteristics of those golf balls Bridgestone has tested. Thus, there is no threat that mental impressions will be divulged because of the existence of test data.

Finally, the *J.T. Eaton* case distinguishes itself from the *Loctite* case, because (1) the test results were not the ***"sole basis"*** for the law suit and (2) because there were no chemical patents involved in the *J.T. Eaton* case. *J.T. Eaton & Co., Inc. v. Atlantic Paste & Glue Co.*, 1987 U.S. Dist. LEXIS 16792, *12 n.2 (E.D.N.Y. 1987) (Ex 7. hereto). Unlike the *J.T. Eaton* case, Bridgestone's test results ***are the sole basis*** for the suit as visual inspection of the accused products would reveal little to nothing regarding the claimed properties—testing is required. Moreover, this case does involve chemical patents. Because Acushnet is seeking scientific fact in response to its contention interrogatories—not documents including mental impressions.

Acushnet's requests for test results seeks the results of all tests performed on the accused Acushnet's products, not the mental impressions or opinions of counsel that may be said to follow from such facts. Acushnet is entitled to these scientific facts as they are not privileged.



Accordingly, Acushnet respectfully requests that this court grant Acushnet's motion to compel Bridgestone's answers to Acushnet's interrogatories 1, 2, and 14 related to test results.

## CONCLUSION

For the reasons set forth above, Acushnet respectfully moves for representative claims and to compel Bridgestone to provide more detailed noninfringement and invalidity contentions. To comply with this Court's Rule 16 Scheduling order, Acushnet needs this relief for a fair opportunity to meet the February 28, 2006 deadline for supplementing its interrogatory responses to provide final contentions.

Respectfully submitted,

POTTER ANDERSON & CORROON LLP

OF COUNSEL:

Alan M. Grimaldi
Joseph P. Lavelle
Matthew J. Moore
Vivian S. Kuo
HOWREY LLP
1299 Pennsylvania Avenue, N.W.
Washington, DC 20004
Telephone (202) 783-0800

Dated: December 22, 2005
Public Version Dated: January 30, 2006

717340

By: */s/ David E. Moore*
    Richard L. Horwitz (#2246)
    David E. Moore (#3983)
    Hercules Plaza, 6th Floor
    1313 North Market Street
    P. O. Box 951
    Wilmington, DE 19899-0951
    (302) 984-6000
    rhorwitz@potteranderson.com
    dmoore@potteranderson.com

*Attorneys for Defendant*
*Acushnet Company*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

### CERTIFICATE OF SERVICE

I, David E. Moore, hereby certify that on January 30, 2006, the attached document

was hand delivered to the following persons and was electronically filed with the Clerk of

the Court using CM/ECF which will send notification of such filing(s) to the following

and the document is available for viewing and downloading from CM/ECF.

Jack B. Blumenfeld
Maryellen Noreika
Leslie A. Polizoti
Morris, Nichols, Arsht & Tunnell
1201 N. Market Street
Wilmington, DE 19801

I hereby certify that on January 30, 2006, I have Federal Expressed the documents

to the following non-registered participants:

Robert M. Masters
John T. Callahan
Raja Saliba
Sughrue Mion, PLLC
2100 Pennsylvania Avenue, NW
Washington, DC 20037

_/s/ David E. Moore_____
Richard L. Horwitz
David E. Moore
Potter Anderson & Corroon LLP
Hercules Plaza – Sixth Floor
1313 North Market Street
P.O. Box 951
Wilmington, DE 19899-0951
(302) 984-6000
rhorwitz@potteranderson.com
dmoore@potteranderson.com

680012