# EXHIBIT A

**IN UNITED STATES DISTRICT COURT**
**DISTRICT OF DELAWARE**

| | |
|---|---|
| **BRIDGESTONE SPORTS CO., LTD.,**<br>**AND BRIDGESTONE GOLF, INC.,**<br><br>*Plaintiffs,*<br><br>*v.*<br><br>**ACUSHNET COMPANY,**<br><br>*Defendant.* | C.A. No. 05-132(JJF) |

## PLAINTIFFS' FIFTH SUPPLEMENTAL RESPONSES TO DEFENDANT'S FIRST SET OF INTERROGATORIES

Pursuant to Rule 33 of the Federal Rules of Civil Procedure, Plaintiffs Bridgestone Sports

Co., Ltd., and Bridgestone Golf, Inc., (individually or collectively "Bridgestone") hereby

supplements its responses to Defendant's First Set of Interrogatories to Plaintiff.

### GENERAL OBJECTIONS

The General and Specific Objections set forth in Plaintiffs' First Responses to

Defendant's First Set of Interrogatories, Plaintiff's First Supplemental Responses to Defendant's

First Set of Interrogatories, Plaintiff's Second Supplemental Responses to Defendant's First Set

of Interrogatories, Plaintiff's Third Supplemental Responses to Defendant's First Set of

Interrogatories, and Plaintiff's Fourth Supplemental Responses to Defendant's First Set of

Interrogatories are incorporated herein by reference.

The following responses are based upon Acushnet's production of documents and things

to date. Acushnet has failed to produce all relevant and responsive information, documents and

things in response to Bridgestone's Requests for the Production of Documents and Things and

Bridgestone's Interrogatories to Acushnet. Accordingly, Bridgestone reserves the right to later

amend or supplement its contentions and responses after further production of such information,

or more of the claims of the Bridgestone Patents as set forth therein.

Bridgestone reserves the right to later amend and/or supplement its disclosures after

further investigation, discovery and based on positions taken by, or contentions of, Acushnet.

## INTERROGATORY NO. 16

On a claim-by-claim basis, identify and describe in detail in a claim chart the factual
bases for Bridgestone's non-infringement contention in its First Affirmative Defense in the *Reply
and Counterclaim of Bridgestone to Acushnet's Answer and Counterclaim,* namely, that
"Bridgestone has not infringed and does not infringe, either directly or indirectly and either
literally or by application of the doctrine of equivalents," any claim of any of the Acushnet
Patents, including all witnesses with knowledge of such facts and all documents that support
such facts.

## RESPONSE TO INTERROGATORY NO. 16

In addition to the General Objections, Bridgestone objects to the interrogatory as being a

multiple and compound request constituting more than one interrogatory. Bridgestone also

objects to the interrogatory as premature at this early stage of discovery, especially because

Acushnet bears the burden of proof of its infringement allegations and because the interrogatory

calls for expert opinion and expert discovery. In addition, the claims of the Acushnet Patents

have not been construed by a Court.

Subject to and without waiving the general and specific objections, Bridgestone responds

that no accused Bridgestone Product infringes any asserted claim, either literally or under the

doctrine of equivalents, because, for each asserted claim, the accused Bridgestone products do

not meet at least one claim limitation. With respect to the '861, '587 and '367 patents, the

accused Bridgestone products do not meet the claimed requirement that at least 80 percent of the

distances between adjacent dimples be less than 0.065 inches.

With respect to the '976 patent, the accused Bridgestone products do not meet the

claimed requirements for the aerodynamic coefficient magnitudes and the aerodynamic force

angles. Further. Acushnet has withdrawn its allegation of infringement with respect to the '976 patent.

With respect to the '705 patent, under the proper construction of the claim, the accused Bridgestone products do not meet the claimed requirement for a center comprising a material formed from the conversion reaction of at least a cis-to-trans catalyst and a polybutadiene, wherein the material has a molecular weight of greater than about 200,000 and a resilience index of at least about 40.

Bridgestone reserves the right to later amend or supplement its contentions after further investigation, discovery and after the Court construes the claims.

## INTERROGATORY NO. 21

On a claim-by-claim basis, for each claim of the Acushnet Patents that Bridgestone contend is not infringed by Bridgestone by reasons of the proceedings in the U.S. Patent and Trademark Office during prosecution of the Acushnet Patents, identify each term in each such claim and state all factual bases for your contention, including the page and line number of any portion of the prosecution history relied upon.

## RESPONSE TO INTERROGATORY NO. 21

In addition to the General Objections, Bridgestone objects to the interrogatory as being a multiple and compound request constituting more than one interrogatory. Bridgestone also objects to the interrogatory as Acushnet has failed to produce the entire file history for the Acushnet patents-in-suit. Acushnet bears the burden of proof on infringement. In addition, Acushnet has yet to provide its final claim contentions concerning infringement. Further, the Court has not construed the claims of the Acushnet Patents.

In addition, Bridgestone provides an identification of the following portions of the prosecution histories of the Acushnet Patents which Bridgestone may rely on to establish non-infringement.

As to each of the asserted claims of the '861, '587 and '367 patents, Bridgestone identifies the following documents:

1. From U.S. Application No. 05/236,318:

    a. Application filed March 20, 1972,

    b. Office Action dated September 22, 1972,

    c. Amendment dated January 8, 1973, and

    d. Office Action dated March 27, 1973.

2. From U.S. Application No. 05/363,353:

    a. Application filed May 21, 1973,

    b. Office Action dated January 2, 1974,

    c. Request for Extension of Time dated March 19, 1974,

    d. Amendment dated April 19, 1974,

    e. Affidavit of Francis des. Lynch dated April 15, 1974,

    f. Supplemental Amendment filed May 20, 1974,

    g. Office Action dated September 20, 1974,

    h. Response dated January 14, 1975,

    i. Affidavit of Francis des Lynch dated January 10, 1975, and

    j. Office Action dated April 23, 1976.

3. From U.S. Application No. 05/716,100:

    a. Amendment dated August 19, 1976, and

    b. Office Action dated March 23, 1977.

4. From U.S. Application No. 06/091,087:

    a. Office Action dated August 29, 1980.

5. From U.S. Application No. 07/713,298 (the '861 patent):

   a. Preliminary Amendment and attachments dated March 10, 1985,

   b. Office Action dated March 10, 1986,

   c. Amendment dated June 9, 1986,

   d. Office Action dated September 10, 1986,

   e. Amendment and attachments dated January 12, 1987,

   f. Office Action dated May 7, 1987,

   g. Amendment dated June 9, 1987,

   h. Office Action dated September 14, 1987,

   i. Amendment and Prior Art Statement dated October 6, 1987,

   j. Notice of Allowability dated October 27, 1987,

   k. Response to Notice filed November 9, 1987,

   l. Request for Certificate of Correction dated March 18, 1988,

   m. Notification of Approval In-Part of Certificate of Correction dated August 25, 1988,

   n. Response to Notice Regarding Certificate of Correction dated September 9, 1988,

   o. Request for Certificate of Correction dated January 25, 1990, and

   p. Request for Certificate of Correction filed April 17, 1990.

6. From U.S. Application No. 07/213,056 (the '587 patent):

   a. Preliminary Amendment with attachments dated November 26, 1980,

   b. Amendment before Action dated October 29, 1981,

   c. Affidavit of David Just dated June 10, 1982,

LEGAL_US_E # 70827327.1

d.  Submission of U.S. Application No.: 05/363,353 dated April 14, 1983,

e.  Office Action dated October 24, 1983,

f.  Amendment and Request for Transfer of Drawings dated April 24, 1984,

g.  Supplemental Amendment dated April 25, 1984,

h.  Restriction Requirement dated July 6, 1984,

i.  Provisional Election dated August 2, 1984,

j.  Supplemental Amendment dated September 20, 1984,

k.  Restriction Requirement dated February 11, 1985,

l.  Response dated March 10, 1985,

m.  Interview Summary dated September 20, 1985,

n.  Amendment dated March 10, 1986,

o.  Supplemental Amendment dated April 10, 1986,

p.  Interview Summary dated July 3, 1986,

q.  Submission and Response dated August 14, 1986,

r.  Interview Summary dated February 2, 1987,

s.  Office Action dated February 10, 1987,

t.  Amendment and attachments dated August 10, 1987,

u.  Prior Art Statement dated October 7, 1987,

v.  Amendment dated January 18, 1988 filed with and the Declaration of John
    Jepson dated January 18, 1988,

w.  Office Action dated November 13, 1989,

x.  Amendment dated February 7, 1990,

y.  Notice of Allowability dated April 4, 1990,

    z.  Amendment dated April 16, 1990, and

    aa. Request for Certificate of Correction dated July 2, 1990.

7.  From U.S. Application No. 07/543,968 (the '367 patent):

    a.  Preliminary Amendment dated June 26, 1990,

    b.  Office Action dated December 4, 1990,

    c.  Amendment and attachments dated March 4, 1991,

    d.  Supplemental Amendment and Terminal Disclaimer dated March 19, 1991,

    e.  Interview Summary dated March 28, 1991, and

    f.  Response dated May 13, 1991 along with Affidavit of William Gobush dated May 8, 1991.

As to each of the asserted claims of the '705 patent, Bridgestone identifies the following documents:

1.  From U.S. Application No. 10/256,011 (the '705 patent):

    a.  Office Action dated February 25, 2004,

    b.  Response to Office Action and Terminal Disclaimer dated May 25, 2004, and

    c.  Notice of Allowability and Issue Fees Due dated July 30, 2004.

In addition, pursuant to Fed. R. Civ. P. 33(d), Bridgestone specifies documents upon which Bridgestone may rely to establish that Bridgestone does not infringe the Acushnet Patents based on positions taken and arguments made before the U.S. Patent and Trademark Office bearing Bates Nos. BSP096001-098279, from which the information may be derived or ascertained.

Bridgestone's investigation is ongoing. Bridgestone reserves the right to amend or

13.

supplement its contentions after further investigation. and based on positions taken by, or

contentions of, Acushnet, and after the Court construes the claims of the Acushnet patents.

## INTERROGATORY NO. 22

Identify in detail for each of the Acushnet Patents the factual bases for Bridgestone's Sixth Affirmative Defense in the *Reply and Counterclaim of Bridgestone to Acushnet's Answer and Counterclaim,* namely, that "Acushnet's claims are barred by the equitable doctrine of [waiver], estoppel and laches," including all witnesses with knowledge of such facts and all documents that support such facts.

## RESPONSE TO INTERROGATORY NO. 22

In addition to the General Objections, Bridgestone objects to the Interrogatory on the

ground that it is premature at this early stage of discovery. Subject to and without waiving the

general and specific objections, Bridgestone responds that upon information and belief Acushnet

knew of the Bridgestone products for years before notifying Bridgestone of the alleged

infringement of the Acushnet Patents.

In addition, Bridgestone responds that Acushnet is barred by the equitable doctrine of

estoppel from asserting any claim from U.S. Patent Nos. 4,729,861; 4,936,587; and 5,080367

against Bridgestone, on the grounds that Acushnet has failed to produce complete file histories

for each of these patents. Specifically, Acushnet has failed to produce or otherwise make

available file histories for U.S. patent application serial nos. 05/920,396 and 05/816,882, which

fall within the claim of priority for each of the foregoing three patents.

As a result, under the Federal Circuit precedent, including for example, Markman v.

Westview Instruments, Inc., 52 F.3d 967, 976 (Fed. Cir. 1995) (en banc), *aff'd,* 517 U.S. 370

(1996) and Phillips v. AWH Corp., 415 F.3d 1303. 1312, 75 USPQ2d 1321 (Fed. Cir. 2005). the

claims of these patents cannot as a matter of law be construed. The legal precedent of the

Federal Circuit requires that this Court consider the intrinsic evidence including the patent's file

14.

As to objections:

MORRIS, NICHOLS, ARSHT & TUNNELL

DATED:     May 1, 2006          Jack B. Blumenfeld (#1014)
                                Maryellen Noreika (#3208)
                                Leslie A. Polizoti (#4299)
                                1201 N. Market Street
                                P.O. Box 1347
                                Wilington, DE 19801
                                (302) 658-9200
                                *Attorneys for Bridgestone Sports Co., Ltd. and Bridgestone
                                Golf, Inc*

                                OF COUNSEL:

                                Robert M. Masters
                                Scott M. Flicker
                                Terrance J. Wikberg
                                Brandon M. White
                                PAUL, HASTINGS, JANOFSKY & WALKER LLP
                                875 15th St., N.W.
                                Washington, D.C. 20005
                                (202) 551-7100

16.

# EXHIBIT B

**IN THE UNITED STATES DISTRICT COURT**
**DISTRICT OF DELAWARE**

|  |  |  |
|---|---|---|
| BRIDGESTONE SPORTS CO., LTD., AND BRIDGESTONE GOLF, INC., | ) ) ) ) | |
| Plaintiff, | ) ) | C.A. No. 05-132(JJF) |
| v. | ) ) | |
| ACUSHNET COMPANY, | ) ) | |
| Defendant. | ) | |

## DEFENDANT'S FIRST SET OF INTERROGATORIES TO PLAINTIFF

Pursuant to Rule 33 of the Federal Rules of Civil Procedure, defendant Acushnet Company ("Acushnet") hereby requests that plaintiff Bridgestone Sports Co., Ltd. and Bridgestone Golf, Inc. (collectively "Bridgestone") answer the following interrogatories in the time required by law at the offices of Howrey LLP, 1299 Pennsylvania Avenue, NW, Washington DC 20004.

### DEFINITIONS

The following definitions apply to these requests:

1.    The term "Bridgestone" or "you" or "your" shall mean Bridgestone Sports Co., Ltd., Bridgestone Golf, Inc., and any parent, subsidiary, partner (including general and limited partners), member and/or affiliated entities, past or present, of Bridgestone, and any person or entity, past or present, acting on behalf of Bridgestone, including each of its present and former officers, executives, general partners, limited partners, directors, employees, attorneys, agents and/or representatives.

2.    The term "Acushnet" as used herein each shall refer to the named defendant, Acushnet Company and its present and/or former officers, directors, employees, agents, attorneys, and/or representatives.

**INTERROGATORY NO. 20.**

Identify each term in the claims of the Bridgestone Patents and Acushnet Patents that you contend should be given a meaning other than the plain and ordinary meaning for that term, and for each such identified term, state the meaning you contend it should be given and the factual basis for your contention.

**INTERROGATORY NO. 21.**

On a claim-by-claim basis, for each claim of the Acushnet Patents that Bridgestone contend is not infringed by Bridgestone by reasons of the proceedings in the U.S. Patent and Trademark Office during prosecution of the Acushnet Patents, identify each term in each such claim and state all factual bases for your contention, including the page and line number of any portion of the prosecution history relied upon.

**INTERROGATORY NO. 22.**

Identify in detail for each of the Acushnet Patents the factual bases for Bridgestone's Sixth Affirmative Defense in the *Reply and Counterclaim of Bridgestone to Acushnet's Answer and Counterclaim*, namely, that "Acushnet's claims are barred by the equitable doctrine of wavier, estoppel and laches," including all witnesses with knowledge of such facts and all documents that support such facts.

**INTERROGATORY NO. 23.**

Identify in detail for each of the Acushnet Patents the factual bases for Bridgestone's Seventh Affirmative Defense in the *Reply and Counterclaim of Bridgestone to Acushnet's Answer and Counterclaim*, namely, that Acushnet's Counterclaims are "barred or limited by the failure of Acushnet to mark its products or to otherwise give notice to Bridgestone pursuant to 35 U.S.C. § 287," including all witnesses with knowledge of such facts and all documents that support such facts.

OF COUNSEL:

Alan M. Grimaldi
Joseph P. Lavelle
Matthew J. Moore
Vivian S. Kuo
HOWREY LLP

1299 Pennsylvania Avenue, N.W.
Washington, D.C. 20004
Telephone (202) 783-0800

Dated: June 10, 2005

686174

POTTER ANDERSON & CORROON LLP

BY: _____

Richard L. Horwitz (#2246)
David E. Moore (#3983)
Hercules Plaza, 6th Floor
1313 N. Market Street
Wilmington, DE 19801
Telephone (302) 984-6000
rhorwitz@potteranderson.com
dmoore@potteranderson.com

*Attorneys for Defendant*

13

# EXHIBIT C

# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF DELAWARE

BRIDGESTONE SPORTS CO., LTD.,
and BRIDGESTONE GOLF, INC.,

                Plaintiffs,

      v.

ACUSHNET COMPANY,

                Defendant.

C. A. No. 05-132 (JJF)

## BRIDGESTONE'S SECOND SET OF INTERROGATORIES (INTERROGATORY NOS. 25-39)

Pursuant to Fed. R. Civ. P. 33, Plaintiff Bridgestone Sports Co. Ltd., by their undersigned attorneys, propound these Interrogatories, to which Defendant Acushnet Company shall respond separately and fully, in writing and under oath, within the time prescribed by the Federal Rules of Civil Procedure, in accordance with the Definitions and Instructions set forth hereinafter.

39.    On a claim-by-claim basis, for each claim of the Bridgestone patents-in-suit that Acushnet contends is not infringed by Acushnet by reasons of the proceedings in the U.S. Patent and Trademark Office during prosecution of the Bridgestone patents-in-suit, identify each term in each such claim and state all factual bases for your contention, including the page and line number of any portion of the prosecution history relied upon.

Date:  July 29, 2005

By:

**MORRIS, NICHOLS, ARSHT & TUNNELL**
JACK B. BLUMENFIELD (#1014)
MARYELLEN NOREIKA (#3208)
LESLIE A. POLIZOTI (#4299)
1201 N. Market St.
P.O. Box 1347
Wilmington, DE 19801
Telephone:  (302) 658-9200

OF COUNSEL:

**SUGHRUE MION, PLLC**
ROBERT M. MASTERS
JOHN T. CALLAHAN
RAJA SALIBA
2100 Pennsylvania Ave., N.W.
Washington, D.C. 20037
Telephone:  (202) 293-7060

Attorneys for Plaintiffs

# EXHIBIT D

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| BRIDGESTONE SPORTS CO., LTD, and BRIDGESTONE GOLF, INC. <br><br> Plaintiff, <br><br> v. <br><br> ACUSHNET COMPANY, <br><br> Defendant. <br><br> ACUSHNET COMPANY, <br><br> Counterclaim Plaintiff, <br><br> v. <br><br> BRIDGESTONE SPORTS CO., LTD, and BRIDGESTONE GOLF, INC. <br><br> Counterclaim Defendant. | C. A. No. 05-132 (JJF) |

## ACUSHNET'S SECOND SUPPLEMENT TO OBJECTIONS AND RESPONSES TO BRIDGESTONE'S SECOND SET OF INTERROGATORIES DIRECTED TO ACUSHNET (NOS. 25-39)

Pursuant to Rule 33 of the Federal Rules of Civil Procedure, defendant and counterclaim

plaintiff Acushnet Company ("Acushnet") hereby supplements its responses to *the Second Set of*

*Interrogatories Directed to Acushnet (Nos. 25-39)* ("Second Set of Interrogatories") of plaintiffs

Bridgestone or Acushnet, as well as any Opposition, or Reply brief filed in connection with the Markman hearing by either Acushnet or Bridgestone. Acushnet further incorporates any declarations filed by either Acushnet or Bridgestone in support of its Opening, Opposition or Reply Markman Briefs. Acushnet also specifically identifies Bridgestone's OPPOSITION OF PLAINTIFF BRIDGESTONE SPORTS TO MOTION FOR PARTIAL SUMMARY JUDGMENT OF INVALIDITY OF CLAIMS 1, 2, 4, 6 AND 8 OR U.S. PATENT NO. 5,553,852 BY THE CALLAWAY DEFENDANTS filed in the action that Bridgestone brought against Callaway Golf Company and Callaway Golf Ball Company in the Northern District of Georgia, Atlanta Division, Civil Action No. 1 00-CV-1871, and Bridgestone's assertions made therein.

### Interrogatory No. 39:

On a claim-by-claim basis, for each claim of the Bridgestone patents-in-suit that Acushnet contends is not infringed by Acushnet by reasons of the proceedings in the U.S. Patent and Trademark Office during prosecution of the Bridgestone patents-in-suit, identify each term in each such claim and state all factual bases for your contention, including the page and line number of any portion of the prosecution history relied upon.

### Response to Interrogatory No. 15:

Acushnet incorporates all of its General Objections and Objections to Definitions as though fully set forth herein and further specifically objects to this interrogatory as overly broad to the extent it seeks information protected by attorney-client privilege and/or work-product immunity. Acushnet specifically objects to this interrogatory as premature as discovery is ongoing. Acushnet reserves the right to supplement this response as new facts and evidence become available, including the submission of expert reports. Subject to and without waiving those objections, Acushnet responds that, pursuant to Fed. R. Civ. Pro. 33(d), it will produce non-privileged documents sufficient to allow Bridgestone to ascertain or derive the response to this Interrogatory as readily as Acushnet.

16

**Supplemental Response to Interrogatory No. 39:**

Acushnet hereby supplements its response by indicating that the immediately preceding paragraph is in response to interrogatory No. 39. Acushnet further supplements its response to this interrogatory by indicating that pursuant to Fed. R. Civ. Pro. 33(d), Acushnet has produced documents responsive to this interrogatory from which the answer can be derived or ascertained by Bridgestone as readily as Acushnet. These documents are identified by the following bates numbers: AB0003520- AB0003682, AB0003683- AB0004458, AB0030726- AB0032548, AB0040695- AB0043739.

**Acushnet's Second Supplemental Response to Interrogatory No. 39:**

Subject to and without waiving any of its General or Specific Objections, Acushnet supplements its response to Bridgestone's Interrogatory No. 39 by identifying the following documents entered as part of the official file history during the course of proceedings in the United States Patent and Trademark Office as limiting the scope of equivalents to which Bridgestone may be entitled. Bridgestone has not identified any limitations of the claims of the Bridgestone patents-in-suit that are allegedly infringed under the doctrine of equivalents. Therefore, Acushnet expressly reserves the right to supplement its response to this interrogatory to the extent Bridgestone alleges infringement under the doctrine of equivalents.

      A.     **United States Patent No. 5,252,652 ("the '652 patent")**

Bridgestone is estopped from asserting that Acushnet's products infringe under the doctrine of equivalents based on at least the following documents entered as part of the official file history during the course of proceedings in the United States Patent and Trademark Office:

1. The originally-filed specification at page 4, lines 23-28; Table 1 (page 7); Table 2 (page 8);

2. "Examiner's Action" mailed December 12, 1990 (pages 2-4);

3. PTO-892, "Notice of References Cited" (dated December 1, 1990);

4. Declaration of Yoshinori Egashira filed on April 12, 1991 (executed on March 25, 1991);

17

5. "Amendment" filed on April 12, 1991 (all pages);

6. "Examiner's Action" mailed July 8, 1991 (pages 2-3);

7. PTO-892, "Notice of References Cited" (dated June 27, 1991);

8. "Amendment Under 37 C.F.R. § 1.115," filed October 8, 1991 (all pages);

9. "Examiner's Action" filed on December 11, 1991 (pages 2-4);

10. PTO-892, "Notice of References Cited" (dated November 22, 1991);

11. Declaration of Yoshinori Egashira filed on April 13, 1992 (executed on April 6, 1992);

12. "Amendment Under 37 C.F.R. § 1.116" filed April 13, 1992 (all pages);

13. "Examiner's Action" mailed May 5, 1992 (pages 2-3);

14. PTO-892, "Notice of References Cited," (dated April 1992);

15. Declaration of Yoshinori Egashira on August 5, 1992 (executed July 24, 1992);

16. "Response" filed August 5, 1992 (all pages);

17. "Examiner's Action" mailed October 13, 1992 (pages 2-4);

18. "Amendment Under 37 C.F.R. § 1.116" filed March 12, 1993 (all pages);

19. "Notice of Allowability" mailed April 8, 1993 (pages 1-2);

20. "Amendment Under 37 C.F.R. § 1.312" filed April 13, 1993 (all pages);

21. United States Patent No. 2,378,519 to Vincent;

22. United States Patent No. 2,467,789 to Verbanc *et al.*;

23. United States Patent No. 2,543,845 to Fryling;

24. United States Patent No. 3,175,992 to Anderson, Jr.;

25. United States Patent No. 3,804,421 to Alex *et al.*;

26. United States Patent No. 3,923,719 to Gattuso;

27. United States Patent No. 4,076,255 to Moore *et al.*;

28. United States Patent No. 4,129,538 to Kaplan *et al.*;

29. United States Patent No. 4,398,000 to Kataoka *et al.*;

30. United States Patent No. 4,556,220 to Tominga *et al.*;

31. United States Patent No. 4,595,721 to Devaux *et al.*;

18

32. United States Patent No. 4,683,257 to Kakiuchi *et al.*;

33. United States Patent No. 4,735,980 to Sturm *et al.*; and

34. United States Patent No. 4,770,422 to Issac.

In addition to the documents listed above, each of which is relevant to Acushnet's non-infringement of the '652 patent both literally and under the doctrine of equivalents, Acushnet identifies the following exemplary claim limitations that Acushnet contends are not infringed either literally or under the doctrine of equivalents and identifies exemplary portions of the prosecution history that limits the applicability of the doctrine of equivalents. Acushnet reserves the right to supplement this list when and if Bridgestone alleges infringement of any limitation under the doctrine of equivalents.

(a) Bridgestone is not entitled to any equivalents on the term "**about 0.05 to about 2 parts by weight of a sulfur compound selected from the group consisting of pentachlorothiophenol, 4-t-tubyl-o-thiocresol, 4-t-butyl-p-thiocresol, 2-benzamidothiophenol, thiobenzoic acid, and zinc salts thereof**" because Bridgestone surrendered any such equivalents. *See, e.g.*, Originally-filed Specification at 4, lines 23-28, 9, claims 1-2; "Examiner's Action" mailed Dec. 12, 1990 at pages 2-4); United States Patent No. 4,770,422 to Isaac (*see, e.g.*, col. 2, lines 41-49); Declaration of Yoshinori Egashira filed on Apr. 12, 1991 (executed on March 25, 1991); "Amendment" filed Apr. 12, 1991 (pages 1, 3-4 (claims 13-18), 5-9); "Examiner's Action" mailed Jul. 8, 1991 (pages 2-3); United States Patent No. 4,683,257 to Kakuchi et al. (*see, e.g.*, Abstract, Examples 1-6); United States Patent No. 4,556,220 to Tominaga (*see e.g.*, col. 1, lines 31-50; Tables 1-3); "Amendment Under 37 C.F.R. § 1.115" filed Oct. 8, 1991 (pages 1-6); "Examiner's Action" mailed Dec. 11, 1991; United States Patent No. 2,467,789 to Verbanc *et al.* (*see, e.g.*, col. 1, line 31-col. 2, line 13, claim 1); Declaration of Yoshinori Egashira filed Apr. 13, 1992 (executed Apr. 6, 1992); "Amendment Under 37 C.F.R. § 1.116" filed on Apr. 13, 1992 (pages 1-7); "Examiner's Action" mailed May 5, 1992 (pages 2-3); United States Patent No. 4,129,538 to Kaplan *et al.* (*see, e.g.*, col. 1, lines 14-62, claim 1.); Declaration of Yoshinori Egashira filed Aug. 5, 1992 (executed Jul. 24, 1992);

19

"Response" filed Aug. 5, 1992 (pages 1-6); Examiner's Action mailed Oct. 13, 1992 (pages 2-3); "Amendment Under 37 C.F.R. § 1.116" filed Mar. 12, 1993 (pages 1-10); and "Notice of Allowability" (including "Reasons for Allowance") mailed Apr. 9, 1993 (pages 1-2).

(b) Bridgestone is not entitled to any equivalents on the term **"about 25 to 40 parts by weight of a zinc or magnesium salt of an unsaturated fatty acid having 3 to 8 carbon atoms"** because Bridgestone surrendered any such equivalents. *See, e.g.,* Originally-filed Specification at 9, claims 1 and 2; "Examiner's Action" mailed Dec. 12, 1990 at pages 2-4); United States Patent No. 4,770,422 to Isaac (*see, e.g.,* col. 2, lines 41-49); Declaration of Yoshinori Egashira filed on Apr. 12, 1991 (executed on March 25, 1991); "Amendment" filed Apr. 12, 1991 (pages 1, 3-9); "Examiner's Action" mailed Jul. 8, 1991 (pages 2-3); United States Patent No. 4,683,257 to Kakuchi et al. (*see, e.g,* Abstract, Examples 1-6); United States Patent No. 4,556,220 to Tominaga (*see e.g.,* col. 1, lines 31-50; Tables 1-3); "Amendment Under 37 C.F.R. § 1.115" filed Oct. 8, 1991 (pages 1-6); "Examiner's Action" mailed Dec. 11, 1991; United States Patent No. 2,467,789 to Verbanc *et al.* (*see, e.g.,* col. 1, line 31-col. 2, line 13, claim 1); Declaration of Yoshinori Egashira filed Apr. 13, 1992 (executed Apr. 6, 1992); "Amendment Under 37 C.F.R. § 1.116" filed on Apr. 13, 1992 (pages 1-7); "Examiner's Action" mailed May 5, 1992 (pages 2-3); United States Patent No. 4,129,538 to Kaplan *et al.* (*see, e.g.,* col. 1, lines 14-62, claim 1.); Declaration of Yoshinori Egashira filed Aug. 5, 1992 (executed Jul. 24, 1992); "Response" filed Aug. 5, 1992 (pages 1-6); Examiner's Action mailed Oct. 13, 1992 (pages 2-3); "Amendment Under 37 C.F.R. § 1.116" filed Mar. 12, 1993 (pages 1-10); and "Notice of Allowability" (including "Reasons for Allowance") mailed Apr. 9, 1993 (pages 1-2).

(c) Bridgestone is not entitled to any equivalents on the term **"rubber composition containing 100 parts by weight of a base rubber selected from the group consisting of polybutadiene rubber, natural rubber, polyisoprene rubber and styrene-butadiene rubber"** because Bridgestone surrendered any such equivalents. *See, e.g.,* Originally-filed Specification at 9, claims 1 and 2; "Examiner's Action" mailed Dec. 12, 1990 at pages 2-4); United States Patent No. 4,770,422 to Isaac (*see, e.g.,* col. 2, lines 41-49); Declaration of Yoshinori Egashira

20

filed on Apr. 12, 1991 (executed on March 25, 1991); and "Amendment" filed Apr. 12, 1991 (pages 1, 3-9).

(d) Bridgestone is not entitled to any equivalents on the term **"an improved rebound property and initial velocity"** because Bridgestone surrendered any -such equivalents. *See, e.g.,* Originally-filed Specification at 2 (lines 17-22), 9 (claims 1-2); "Examiner's Action" mailed Dec. 12, 1990 at pages 2-4); United States Patent No. 4,770,422 to Isaac (*see, e.g.,* col. 2, lines 41-49); Declaration of Yoshinori Egashira filed on Apr. 12, 1991 (executed on March 25, 1991); "Amendment" filed Apr. 12, 1991 (pages 1, 3-4 (claims 13-18), 5-9); "Examiner's Action" mailed Jul. 8, 1991 (pages 2-3); United States Patent No. 4,683,257 to Kakuchi et al. (*see, e.g.,* Abstract, Examples 1-6); United States Patent No. 4,556,220 to Tominaga (*see e.g.,* col. 1, lines 31-50; Tables 1-3); "Amendment Under 37 C.F.R. § 1.115" filed Oct. 8, 1991 (pages 1-6); "Examiner's Action" mailed Dec. 11, 1991; United States Patent No. 2,467,789 to Verbanc *et al.* (*see, e.g.,* col. 1, line 31-col. 2, line 13, claim 1); Declaration of Yoshinori Egashira filed Apr. 13, 1992 (executed Apr. 6, 1992); "Amendment Under 37 C.F.R. § 1.116" filed on Apr. 13, 1992 (pages 1-7); "Examiner's Action" mailed May 5, 1992 (pages 2-3); United States Patent No. 4,129,538 to Kaplan *et al.* (*see, e.g.,* col. 1, lines 14-62, claim 1.); Declaration of Yoshinori Egashira filed Aug. 5, 1992 (executed Jul. 24, 1992); "Response" filed Aug. 5, 1992 (pages 1-6); Examiner's Action mailed Oct. 13, 1992 (pages 2-3); "Amendment Under 37 C.F.R. § 1.116" filed Mar. 12, 1993 (pages 1-10); and "Notice of Allowability" (including "Reasons for Allowance") mailed Apr. 9, 1993 (pages 1-2).

    **B.**    **United States Patent No.5,553,852 ("the '852 patent")**

Bridgestone is estopped from asserting that Acushnet's products infringe under the doctrine of equivalents based on at least the following documents filed during the course of proceedings in the United States Patent and Trademark Office:

1.    The originally filed specification at page 4, line 19 to page 5, line 6; page 5, line 16 to page 6, line 4; page 6, line 25 to page 7, line 5; page 8, line 24 to page 9, line 22; page 10, line 15 to page 11, line 1; pages 18-19;

2.    "Information Disclosure Statement" filed December 8, 1994;

3.    "Examiner's Action" mailed May 18, 1995 (pages 2-4);

4.    PTO-892, "Notice of References Cited," dated May 10, 1995;

5.    "Amendment Under 37 C.F.R. § 1.115," filed October 18, 1995 (all pages);

6.    Declaration of Hisashi Yamagishi filed October 18, 1995 (executed September 26, 1995);

7.    "Notice of Allowability," mailed December 26, 1995 (pages 1-2);

8.    United States Patent No. 4,650,193 to Molitor *et al.*;

9.    United States Patent No. 4,714,253 to Nakahara *et al.*;

10.    United States Patent No. 4,781,383 to Kamada *et al.*;

11.    United States Patent No. 5,048,838 to Chikaraishi *et al.*;

12.    United States Patent No. 5,184,828 to Kim *et al.*;

13.    United States Patent No. 5,253,871 to Viollaz;

14.    GB 1 118 847;

15.    GB 2 232 162;

16.    GB 2 185 890; and

17.    FR 2 666 018.

In addition to the documents listed above, each of which is relevant to Acushnet's non-infringement of the '852 patent both literally and under the doctrine of equivalents, Acushnet identifies the following exemplary claim limitations that Acushnet contends are not infringed either literally or under the doctrine of equivalents and identifies exemplary portions of the prosecution history that limits the applicability of the doctrine of equivalents. Acushnet reserves the right to supplement this list when and if Bridgestone alleges infringement of any limitation under the doctrine of equivalents.

22

(a) Bridgestone is not entitled to any equivalents on the term **"intermediate layer having a thickness of at least 1 mm"** because Bridgestone surrendered any such equivalents. *See, e.g.,* Originally-filed specification at page 9, lines 5-6, page 18 (claim 1); "Examiner's Action" mailed May 18, 1995 (pages 2-4); United States Patent No. 4,650,193 to Molitor *et al.*; United States Patent No. 4,714,253 to Nakahara *et al.*; United States Patent No. 4,781,383 to Kamada *et al.*; United States Patent No. 5,048,838 to Chikaraishi *et al.*; United States Patent No. 5,184,828 to Kim *et al.*; United States Patent No. 5,253,871 to Viollaz; "Amendment Under 37 C.F.R. § 1.115," filed Oct. 18, 1995 (pages 1-15); Declaration of Hisashi Yamagishi filed October 18, 1995 (executed September 26, 1995). "Notice of Allowability," mailed Dec. 26, 1995 (pages 1-2).

(b) Bridgestone is not entitled to any equivalents on the term **"cover having a thickness of 1 to 3 mm"** because Bridgestone surrendered any such equivalents. *See, e.g.,* Originally filed specification at page 10, lines 15-19, page 18 (claim 1), "Examiner's Action" mailed May 18, 1995 (pages 2-4); United States Patent No. 4,650,193 to Molitor *et al.*; United States Patent No. 4,714,253 to Nakahara *et al.*; United States Patent No. 4,781,383 to Kamada *et al.*; United States Patent No. 5,048,838 to Chikaraishi *et al.*; United States Patent No. 5,184,828 to Kim *et al.*; United States Patent No. 5,253,871 to Viollaz; "Amendment Under 37 C.F.R. § 1.115," filed Oct. 18, 1995 (pages 1-15); Declaration of Hisashi Yamagishi filed Oct. 18, 1995 (executed Sep. 26, 1995); and "Notice of Allowability," mailed Dec. 26, 1995 (pages 1-2).

(c) Bridgestone is not entitled to any equivalents on the term **"three-piece solid golf ball"** because Bridgestone surrendered any such equivalents. *See, e.g.,* Originally-filed specification at page 6, lines 12-14, page 11, line 23 to page 12, line 1, Abstract; "Examiner's Action" mailed May 18, 1995 (page 3); "Amendment Under 37 C.F.R. § 1.115," filed Oct. 18, 1995 (pages 5-14); Declaration of Hisashi Yamagishi filed Oct. 18, 1995 (executed Sep. 26, 1995). "Notice of Allowability," mailed Dec. 26, 1995 (pages 1-2).

23

(d) Bridgestone is not entitled to any equivalents on the term **"center core having a diameter of at least 29 mm"** because Bridgestone surrendered any such equivalents. *See, e.g.,* Originally-filed Specification at page 6, line 25-page 7, line 5.

### C.    United States Patent No. 5,782,707 ("the '707 patent")

Bridgestone is estopped from asserting that Acushnet's products infringe under the doctrine of equivalents based on at least the following documents entered as part of the official file history during the course of proceedings in the United States Patent and Trademark Office:

1.    The originally-filed specification at pages 5, 7-9;

2.    "Notice of Allowability" mailed November 21, 1997 (page 2);

3.    "Amendment under 37 C.F.R 1.312" filed January 28, 1998 (pages 1-4);

4.    United States Patent No. 4,431,193 to Nesbitt;

5.    United States Patent No. 5,048,838  to Chikaraishi;

6.    United States Patent No. 5,273,286 to Sun;

7.    United States Patent No. 5,439,227 to Egashira *et al.*;

8.    United States Patent No. 5,601,503 to Yamagishi *et al.*; and

9.    United States Patent No. 5,688,191 to Cavallaro *et al.*

1.    In addition to the documents listed above, each of which is relevant to Acushnet's non-infringement of the '707 patent both literally and under the doctrine of equivalents, Acushnet identifies the following exemplary claim limitations that Acushnet contends are not infringed either literally or under the doctrine of equivalents and identifies exemplary portions of the prosecution history that limits the applicability of the doctrine of equivalents. Acushnet reserves the right to supplement this list when and if Bridgestone alleges infringement of any limitation under the doctrine of equivalents.

2.    (a) Bridgestone is not entitled to any equivalents on the term **"core center hardness is up to 75 degrees"** because Bridgestone surrendered any such equivalents. *See, e.g.,* Originally-filed specification at page 5, lines 18-21.

24

3.    (b) Bridgestone is not entitled to any equivalents on the term **"the core surface hardness is up to 85 degrees"** because Bridgestone surrendered any such equivalents. *See, e.g.,* Originally-filed specification at page 5, lines 18-21.

4.    (c) Bridgestone is not entitled to any equivalents on the term **"the core surface hardness is higher than the core center hardness by 8 to 20 degrees"** because Bridgestone surrendered any such equivalents. *See, e.g.,* Originally-filed specification at page 5, lines 26-32.

5.    (d) Bridgestone is not entitled to any equivalents on the term **"the intermediate layer hardness is higher than the core surface hardness by at least 5 degrees"** because Bridgestone surrendered any such equivalents. *See, e.g.,* Originally-filed specification at page 7, lines 34-37.

6.    (e) Bridgestone is not entitled to any equivalents on the term **"the dimples occupy at least 62% of the ball surface"** because Bridgestone surrendered any such equivalents. *See, e.g.,* Originally-filed specification at page 9, lines 28-30.

7.    (f) Bridgestone is not entitled to any equivalents on the term **"a hardness of up to 90 degrees"** because Bridgestone surrendered any such equivalents. *See, e.g.,* Originally-filed specification at page 8, lines 28-34.

8.    (g) Bridgestone is not entitled to any equivalents on the term **"a hardness in the range of 70 to 90 degrees"** because Bridgestone surrendered any such equivalents. *See, e.g.,* Originally-filed specification at page 8, lines 28-34.

**D.    United States Patent No 6,634,961 ("the '961 patent")**

Bridgestone is estopped from asserting that Acushnet's products infringe under the doctrine of equivalents based on at least the following documents entered as part of the official file history during the course of proceedings in the United States Patent and Trademark Office:

1.    Originally-filed specification at page 1, line 14 to page 2, line 31;

2.    "Information Disclosure Statement" filed May 30, 2002;

25

3.    "Office Action" mailed September 10, 2002 (pages 1-8);

4.    PTO-892, "Notice of References Cited" mailed September 10, 2002;

5.    "Information Disclosure Statement" filed January 7, 2003;

6.    "Amendment Under 37 C.F.R. § 1.111," filed February 10, 2003 (pages 1-9);

7.    "Notice of Allowability," mailed May 13, 2003;

8.    United States Patent No. 4,683,257 to Kakiuchi *et al.*;

9.    United States Patent No. 4,929,678 to Hamada *et al.*;

10.    United States Patent No. 4,955,613 to Gendreau *et al.*;

11.    United States Patent No. 5,252,652 to Egashira *et al.*;

12.    United States Patent No. 5,733,205 to Higuchi *et al.*;

13.    United States Patent No. 6,045,460 to Hayashi *et al.*;

14.    United States Patent No. 6,149,505 to Sone *et al.*;

15.    United States Patent No. 6,315,679 to Sano;

16.    M.R. Farrally, A.J. Cochran "Science and Golf III," 1999, Human Kinetics, pp. 410, 412, 413;

17.    JP-A 2-268778;

18.    JP-A 62-89750;

19.    JP-A 11-70187;

20.    JP-A 11-319148;

21.    JP-A 11-164912;

22.    JP-A 63-275356;

23.    JP-A 3-151985;

24.    JPA-6-281078;

25.    JP-A 6-343718;

26.    JP-A 7-24085;

27.    JP-A 9-239068;

28.    JP-A 10-151226;

26

29.    JP-A 10-210880;

30.    JP-A 11-104273;

31.    JP-A 11-104271;

32.    Japanese Patent Application No. 2000-274807;

33.    Japanese Patent Application No. 2000-274843;

34.    EP 0920886 A2;

35.    GB 2 324 740;

36.    C. Jeff Harlan et al., "Three-Coordinate Aluminum is Not a Prerequisite for Catalytic Activity in the Zirconocene-Alumoxane Polymerization of Ethylene", American Chemical Society, Vol. 117, No. 24, 1995, pp. 6465-6474; and

37.    Mark R. MASON et al., "Hydrolisis of Tri-*tert*-buytlaluminum: The first Structural Characterization of Alkylalumozanes [(R$_2$Al)$_2$O]$_n$ and (RAlO)$_n$", American Chemical Socitey, Vol. 115, No. 12, pp. 4971-4984.

In addition to the documents listed above, each of which is relevant to Acushnet's non-infringement of the '961 patent both literally and under the doctrine of equivalents, Acushnet identifies the following exemplary claim limitations that Acushnet contends are not infringed either literally or under the doctrine of equivalents and identifies exemplary portions of the prosecution history that limits the applicability of the doctrine of equivalents. Acushnet reserves the right to supplement this list when and if Bridgestone alleges infringement of any limitation under the doctrine of equivalents.

(a) Bridgestone is not entitled to any equivalents on the term "**100 parts by weight of a base rubber composed of (a) 20 to 100 wt % of a polybutadiene having a cis-1,4 content of at least 60% and a 1,2 vinyl content of at most 2%, having a viscosity η at 25°C as a 5 wt % solution in toluene of up to 600 mPa·s, being synthesized using a rare-earth catalyst and satisfying the relationship: 10B+5≤A≤ 10B+60, wherein A is the Mooney viscosity (ML$_{1+4}$ (100°C.)) of the polybutadiene and B is the ratio Mw/Mn between the weight-average molecular weight Mw and the number-average molecular weight Mn of the polybutadiene**

27

..." because Bridgestone surrendered any such equivalents. *See, e.g.,* "Office Action" mailed Sep. 10, 2002 (pages 1-8); United States Patent No. 5,252,652 to Egashira *et al.*; United States Patent No. 6,149,505 to Sone *et al.*; United States Patent No. 6,315,679 to Sano; "Amendment Under 37 C.F.R. § 1.111," filed Feb. 10, 2003 (pages 1-9); and "Notice of Allowability," mailed May 13, 2003.

(b) Bridgestone is not entitled to any equivalents on the term **"the inner cover layer has a Shore D hardness of 50 to 80"** because Bridgestone surrendered any such equivalents. *See, e.g.,* "Office Action" mailed Sep. 10, 2002 (pages 1-8); United States Patent No. 5,252,652 to Egashira *et al.*; United States Patent No. 6,149,505 to Sone *et al.*; United States Patent No. 6,315,679 to Sano; "Amendment Under 37 C.F.R. § 1.111," filed Feb. 10, 2003 (pages 1-9); and "Notice of Allowability," mailed May 13, 2003.

(c) Bridgestone is not entitled to any equivalents on the term **"the outer cover layer has a Shore D hardness of 35 to 60"** because Bridgestone surrendered any such equivalents. *See, e.g.,* "Office Action" mailed Sep. 10, 2002 (pages 1-8); United States Patent No. 5,252,652 to Egashira *et al.*; United States Patent No. 6,149,505 to Sone *et al.*; United States Patent No. 6,315,679 to Sano; "Amendment Under 37 C.F.R. § 1.111," filed Feb. 10, 2003 (pages 1-9); and "Notice of Allowability," mailed May 13, 2003.

### E.    United States Patent No. 6,679,791 ("the '791 patent")

Bridgestone is estopped from asserting that Acushnet's products infringe under the doctrine of equivalents based on at least the following documents filed during the course of proceedings in the United States Patent and Trademark Office:

1.    Originally-filed specification at pages 4-8;

2.    "Examiner's Action" mailed May 17, 2002 (pages 2-4);

3.    "Amendment" filed August 15, 2002 (pages 1-8);

4.    "Examiner's Action" mailed October 29, 2002 (pages 2-5);

28

5.   "Amendment" filed January 29, 2003 (page 1-8);

6.   "Examiner's Action" mailed April 14, 2003 (pages 2-4);

7.   "Amendment" filed July 11, 2003 (page 2-10);

8.   United States Patent No. 5,002,281 to Nakahara *et al.*;

9.   United States Patent No. 5,072,944 to Nakahara *et al.*;

10.  United States Patent No. 5,184,828 to Kim *et al.*;

11.  United States Patent No. 5,645,496 to Endo *et al.*;

12.  United States Patent No. 5,711,723 to Hiraoka *et al.*;

13.  United States Patent No. 5,782,707 to Yamagishi *et al.*;

14.  United States Patent No. 5,803,833 to Nakamura *et al.*;

15.  United States Patent No. 5,830,085 to Higuchi *et al.*;

16.  United States Patent No. 6,190,269 to Moriyama;

17.  United States Patent No. 6,287,218 to Ohama;

18.  United States Patent No. 6,315,682 to Iwami et al.;

19.  United States Patent No. 6,319,155 to Moriyama *et al.*;

20.  United States Patent No. 6,336,872 to Moriyama *et al.*;

21.  United States Patent No. 6,354,967 to Nakamura *et al.*;

22.  United States Patent No. 6,358,159 to Yamagishi *et al.*;

23.  United States Patent No. 6,379,268 to Yamagishi *et al.*;

24.  JP 10-127823;

25.  JP 11-290479;

26.  JP 11-333026; and

27.  Farrally, M.R. et al., Science and Golf III: Proceedings of the 1998 World Scientific Congress of Golf, Illinois: Human Kinetics, copyright 1999, p. 413.

In addition to the documents listed above, each of which is relevant to Acushnet's non-infringement of the '791 patent both literally and under the doctrine of equivalents, Acushnet identifies the following exemplary claim limitations that Acushnet contends are not infringed

29

either literally or under the doctrine of equivalents and identifies exemplary portions of the prosecution history that limits the applicability of the doctrine of equivalents. Acushnet reserves the right to supplement this list when and if Bridgestone alleges infringement of any limitation under the doctrine of equivalents.

(a) Bridgestone is not entitled to any equivalents on the term **"a golf ball comprising a rubbery elastic core having a center and a radially outer surface, a cover having a plurality of dimples on the surface thereof, and at least one intermediate layer situated between the core and the cover"** because Bridgestone surrendered any such equivalents. *See, e.g.,* Originally-filed specification at page 6, line 32 to page 7, line 5.

(b) Bridgestone is not entitled to any equivalents on the term **"a difference in JIS-C hardness of at least 22 between the center and the surface"** because Bridgestone surrendered any such equivalents. *See, e.g.,* Originally-filed Specification at page 5, lines 22-36; "Examiner's Action" mailed April 14, 2003 (pages 2-4); "Amendment" filed July 11, 2003 (page 2-10); United States Patent No. 6,336,872 to Moriyama *et al.* (*see, e.g.,* col. 2, lines 15-32; col. 3 lines 15-39); "Examiner's Action" mailed May 17, 2002 (pages 2-4); "Amendment" filed August 15, 2002 (pages 1-8); United States Patent No. 5,803,833 to Nakamura *et al.*; "Examiner's Action" mailed October 29, 2002 (pages 2-5); "Amendment" filed January 29, 2003 (page 1-8); United States Patent No. 5,782,707 to Yamagishi *et al.* (*see, e.g.,* col. 3, lines 30-51).

(c) Bridgestone is not entitled to any equivalents on the term **"a hardness which gradually increases radially outward from the center to the surface thereof"** because Bridgestone surrendered any such equivalents. *See, e.g.,* "Amendment" filed Jan 29, 2003 (1-8); United States Patent No. 5,803,833 to Nakamura *et al.*; "Examiner's Action" mailed October 29, 2002 (pages 2-5); "Amendment" filed January 29, 2003 (page 1-8).

(d) Bridgestone is not entitled to any equivalents on the term **"intermediate layer is composed of a resin material which is harder than the cover"** because Bridgestone surrendered any such equivalents. *See, e.g.,* Originally-filed specification at page 7, lines 21-32; United States Patent No. 6,336,872 to Moriyama *et al.* (*see, e.g.,* col. 3, lines 50-59, col. 4, lines

30

49-56; col. 5, lines 20-37); "Examiner's Action" mailed May 17, 2002 (pages 2-4);
"Amendment" filed August 15, 2002 (pages 1-8); Farrally, M.R. et al., Science and Golf III:
Proceedings of the 1998 World Scientific Congress of Golf, Illinois: Human Kinetics, p. 413
(1999); "Examiner's Action" mailed October 29, 2002 (pages 2-5); "Amendment" filed January
29, 2003 (page 1-8); United States Patent No. 5,782,707 to Yamagishi *et al.* (*see, e.g.*, col. 4,
lines 39-67); "Examiner's Action" mailed April 14, 2003 (pages 2-4); "Amendment" filed July
11, 2003 (page 2-10).

    (e) Bridgestone is not entitled to any equivalents on the term **"said core at the center has
a JIS-C hardness of 50 to 65, and at the surface a JIS-C hardness of 70 to 90"** because
Bridgestone surrendered any such equivalents. *See, e.g.,* Originally-filed specification at pages 6,
lines 1-12.

    (f) Bridgestone is not entitled to any equivalents on the term **"said core undergoes a
deformation of 3.0 to 5.0 mm when the load applied thereto is increased from an initial load
of 98 N (10 kgf) to a final load of 1,275 N (130 kgf)"** because Bridgestone surrendered any such
equivalents. *See, e.g.,* Originally-filed specification at pages 6, lines 13-23; United States Patent
No. 5,803,833 to Nakamura *et al.*; "Examiner's Action" mailed October 29, 2002 (pages 2-5);
"Amendment" filed January 29, 2003 (page 1-8).

    (g) Bridgestone is not entitled to any equivalents on the term **"difference in JIS-C
hardness between the center of the elastic core and the surface thereof is 22 to 30 units"**
because Bridgestone surrendered any such equivalents. *See, e.g.,* Originally-filed specification at
pages 5, lines 22-36.

    (h) Bridgestone is not entitled to any equivalents on the term **"JIS-C hardness
difference between said intermediate layer and said core surface is 2 to 22 units"** because
Bridgestone surrendered any such equivalents. *See, e.g.,* "Examiner's Action" mailed October
29, 2002 (pages 2-5); "Amendment" filed January 29, 2003 (page 1-8); United States Patent No.
6,336,872 to Moriyama *et al.* (*see, e.g.,* col. 5, lines 20 to 37); United States Patent No.

31

5,782,707 to Yamagishi *et al.* (see, e.g. col. 4, lines 39-67); "Examiner's Action" mailed April 14, 2003 (pages 2-4); "Amendment" filed July 11, 2003 (page 2-10).

(i) Bridgestone is not entitled to any equivalents on the term **"a Shore D hardness of 45 to 60"** because Bridgestone surrendered any such equivalents. *See, e.g.*, Originally-filed specification at page 8, lines 29-37; United States Patent No. 5,782,707 to Yamagishi *et al.* (*see, e.g.*, col. 5, lines 1-34); "Examiner's Action" mailed April 14, 2003 (pages 2-4); "Amendment" filed July 11, 2003 (page 2-10).

(j) Bridgestone is not entitled to any equivalents on the term **"elastic core is formed of rubber as the base material comprising an ingredient of zinc salt of pentachlorothiophenol added in an amount of 0.4 to 2.0 parts by weight, to per 100 parts by weight of the base rubber"** because Bridgestone surrendered any such equivalents. *See, e.g.*, Originally-filed specification at page 4, lines 9-27.

### F.     United States Patent No. 6,780,125 ("the '125 patent")

Bridgestone is estopped from asserting that Acushnet's products infringe under the doctrine of equivalents based on at least the following documents entered as part of the official file history during the course of proceedings in the United States Patent and Trademark Office:

1.     The originally-filed specification at page 3, line 30 to page 4, line 33; page 4 , line 17 to page 6, line 29; page 7, line 12 to page 11, line 5; page 11, line 18 to page 17, line 13; page 18, line 1 to page 19, line 7; page 20, line 1 to page 21, line 2;

2.     JP 09-228902;

3.     "Preliminary Amendment" filed August 6, 1998 (page 1);

4.     "Office Action" mailed August 19, 1999 (pages 1-4);

5.     United States Patent No. 4,840,381 to Ihara, *et al.*;

6.     United States Patent No. 5,779,563 to Yamagishi, *et al.*;

7.     United States Patent No. 5,830,087 to Sullivan, *et al.*;

32

8.  "Amendment Under 37 C.F.R. § 1.111" filed March 8, 2000 (all pages, including attachment);

9.  "Office Action" mailed April 28, 2000 (pages 1-5);

10. United States Patent 5,695,413 to Yamagishi *et al.*;

11. "Amendment Under 37 C.F.R. § 1.111" filed September 5, 2000 (all pages, including attachment);

12. "Office Action" mailed November 13, 2000 (pages 1-6);

13. United States Patent No. 5,816,942 to Hayashi *et al.*;

14. "Response Under 37 C.F.R. § 1.116" filed April 16, 2001 (all pages);

15. "Advisory Action" mailed April 23, 2001 (pages 1-2);

16. "Amendment Under 37 C.F.R. § 1.116" filed July 16, 2001 (all pages, including appendix);

17. "Appellant's Brief on Appeal Under 37 C.F.R. § 1.192" filed July 16, 2001 (all pages, including appendix);

18. "Examiner's Answer" mailed September 21, 2001 (pages 1-13);

19. "Reply Brief Pursuant to 37 C.F.R. § 1.192(b)" filed November 21, 2001 (all pages);

20. GB 2 301 291;

21. GB 2 298 583;

22. GB 2 306 118;

23. European Search Report dated April 25, 2001;

24. "Decision of the Board of Patent Appeals and Interferences" mailed May 29, 2003 (pages 1-17);

25. "Office Action" mailed July 25, 2003 (pages 1-9);

26. U.S. Patent No. 5,439,227 to Egashira, *et al.*;

27. U.S. Patent No. 5,702,311 to Higuchi, *et al.*;

28. "Amendment Under 37 C.F.R. § 1.111" filed January 22, 2004 (all pages);

33

29.     "Supplemental Amendment Under 37 C.F.R. § 1.111" filed February 20, 2004 (all pages); and

30.     "Notice of Allowability" mailed April 17, 2004 (all pages).

In addition to the documents listed above, each of which is relevant to Acushnet's non-infringement of the '125 patent both literally and under the doctrine of equivalents, Acushnet identifies the following exemplary claim limitations that Acushnet contends are not infringed either literally or under the doctrine of equivalents and identifies exemplary portions of the prosecution history that limits the applicability of the doctrine of equivalents. Acushnet reserves the right to supplement this list when and if Bridgestone alleges infringement of any limitation under the doctrine of equivalents.

(a) Bridgestone is not entitled to any equivalents for the term **"said solid core having a distortion of 2.8 to 3.0 mm under an applied load of 100 kg"** because Bridgestone surrendered any such equivalents. *See, e.g.*, Originally-filed specification, page 4, lines 31-33; page 5, lines 17–32; page 11, line 18 to page 17, line 13; page 18, line 1 to page 19, line 7; page 20, line 1 to page 21, line 2; United States Patent No. 5,695,413 to Yamagishi *et al.*; United States Patent No. 5,816,942 to Hayashi *et al.*; GB 2 301 291; GB 2 298 583; GB 2 306 118; United States Patent No. 5,439,227 to Egashira, *et al.*; "Office Action" mailed Aug. 19, 1999 (pages 1-4); "Amendment Under 37 C.F.R. § 1.111" mailed Mar. 8, 2000 (pages 1-11); "Office Action" mailed Apr. 28, 2000 (pages 1-5); "Amendment Under 37 C.F.R. § 1.111" filed Sep. 5, 2000 (pages 1-7); "Office Action" mailed Nov. 13, 2000 (pages 1-6); "Response Under 37 C.F.R. § 1.116" filed Apr. 16, 2001 (pages 1-8); "Amendment Under 37 C.F.R. § 1.116" filed Jul. 16, 2001 (pages 1-8); "Appellant's Brief on Appeal Under 37 C.F.R. § 1.192" filed Jul. 16, 2001 (pages 1-24); "Examiner's Answer" mailed Sep. 21, 2001 (pages 1-13); "Reply Brief Pursuant to 37 C.F.R. § 1.192(b)" filed Nov. 21, 2001 (pages 1-9); "Decision of the Board of Patent Appeals and Interferences" mailed May 29, 2003 (pages 1-17); "Office Action" mailed Jul. 25, 2003 (pages 1-9); "Amendment Under 37 C.F.R. § 1.111" filed Jan. 22, 2004 (pages 1-8);

DM_US\8340934.v1

"Supplemental Amendment Under 37 C.F.R. § 1.111" filed Feb. 20, 2004 (pages 1-8); and "Notice of Allowability" mailed April 17, 2004 (all pages).

(b) Bridgestone is not entitled to any equivalents for **the claimed combinations of (a) the product of Shore D hardnesses of inner and outer cover layers and (b) $V_R$ because it** surrendered any such equivalents. *See, e.g.,* United States Patent No. 4,840,381 to Ihara, *et al.*; United States Patent No. 5,779,563 to Yamagishi, *et al.*; United States Patent No. 5,830,087 to Sullivan, *et al.*; United States Patent No. 5,695,413 to Yamagishi *et al.*; United States Patent No. 5,816,942 to Hayashi *et al.*; GB 2 301 291; GB 2 298 583; GB 2 306 118; United States Patent No. 5,439,227 to Egashira *et al.*; "Office Action" mailed Aug. 19, 1999 (pages 1-4); "Amendment Under 37 C.F.R. § 1.111" filed Mar. 8, 2000 (pages 1-11); "Office Action" mailed Apr. 28, 2000 (pages 1-5); "Amendment Under 37 C.F.R. § 1.111" filed Sep. 5, 2000 (pages 1-7); "Office Action" mailed Nov. 13, 2000 (pages 1-6); "Response Under 37 C.F.R. § 1.116" filed Apr. 16, 2001 (pages 1-8); "Amendment Under 37 C.F.R. § 1.116" filed Jul. 16, 2001 (pages 1-8); "Appellant's Brief on Appeal Under 37 C.F.R. § 1.192" filed Jul. 16, 2001 (pages 1-24); "Examiner's Answer" mailed Sep. 21, 2001 (pages 1-13); "Reply Brief Pursuant to 37 C.F.R. § 1.192(b)" filed Nov. 21, 2001 (pages 1-9); "Decision of the Board of Patent Appeals and Interferences" mailed May 29, 2003 (pages 1-17); "Office Action" mailed Jul. 25, 2003 (pages 1-9); "Amendment Under 37 C.F.R. § 1.111" filed Jan. 22, 2004 (pages 1-8); "Supplemental Amendment Under 37 C.F.R. § 1.111" filed Feb. 20, 2004 (pages 1-8); and "Notice of Allowability" mailed April 17, 2004 (all pages).

(c) Bridgestone is not entitled to any equivalents for the term "**wherein both the hardnesses of the inner and outer cover layers are up to 63 in Shore D hardness**" because it surrendered any such equivalents. *See* United States Patent No. 4,840,381 to Ihara, *et al.*; United States Patent No. 5,779,563 to Yamagishi *et al.*; United States Patent No. 5,830,087 to Sullivan, *et al.*; United States Patent No. 5,695,413 to Yamagishi *et al.*; United States Patent No. 5,816,942 to Hayashi *et al.*; GB 2 301 291; GB 2 298 583; GB 2 306 118; United States Patent No. 5,439,227 to Egashira *et al.*; "Office Action" mailed Aug. 19, 1999 (pages 1-4);

35

"Amendment Under 37 C.F.R. § 1.111" filed Mar. 8, 2000 (pages 1-11); "Office Action" mailed Apr. 28, 2000 (pages 1-5); "Amendment Under 37 C.F.R. § 1.111" filed Sep. 5, 2000 (pages 1-7); "Office Action" mailed Nov. 13, 2000 (pages 1-6); "Response Under 37 C.F.R. § 1.116" filed Apr. 16, 2001 (pages 1-8); "Amendment Under 37 C.F.R. § 1.116" filed Jul. 16, 2001 (pages 1-8); "Appellant's Brief on Appeal Under 37 C.F.R. § 1.192" filed Jul. 16, 2001 (pages 1-24); "Examiner's Answer" mailed Sep. 21, 2001 (pages 1-13); "Reply Brief Pursuant to 37 C.F.R. § 1.192(b)" filed Nov. 21, 2001 (pages 1-9); "Decision of the Board of Patent Appeals and Interferences" mailed May 29, 2003 (pages 1-17); "Office Action" mailed Jul. 25, 2003 (pages 1-9); "Amendment Under 37 C.F.R. § 1.111" filed Jan. 22, 2004 (pages 1-8); "Supplemental Amendment Under 37 C.F.R. § 1.111" filed Feb. 20, 2004 (pages 1-8); and "Notice of Allowability" mailed April 17, 2004 (all pages).

### G.    United States Patent No. 5,695,413 ("the '413 patent")

Bridgestone is estopped from asserting that Acushnet's products infringe under the doctrine of equivalents based on at least the following documents entered as part of the official file history during the course of proceedings in the United States Patent and Trademark Office:

1.    The originally-filed specification at page 2, lines 7-34; page 3, lines 1-13, page 3, line 33 to page 4, line 4; page 6, line 8 to page 9, line 24 (including Tables 1-3); and page 10 (claims 1-3);

2.    JP 07-125966;

3.    "Office Action" mailed Oct. 2, 1996 (pages 2-3);

4.    United States Patent No. 5,439,227 to Egashira *et al*;

5.    U.S. Patent No. 5,492,972 to Stefani;

6.    GB 2 276 628;

7.    "Amendment Under 37 C.F.R. § 1.116" filed April 13, 1992 (all pages); and

8.    "Notice of Allowability" mailed May 29, 1997 (pages 1-2).

36

In addition to the documents listed above, each of which is relevant to Acushnet's non-infringement of the '413 patent both literally and under the doctrine of equivalents, Acushnet identifies the following exemplary claim limitations that Acushnet contends are not infringed either literally or under the doctrine of equivalents and identifies exemplary portions of the prosecution history that limits the applicability of the doctrine of equivalents. Acushnet reserves the right to supplement this list when and if Bridgestone alleges infringement of any limitation under the doctrine of equivalents.

(a) Bridgestone is not entitled to any equivalents for the term **"said cover being composed mainly of an ionomer resin and having a Shore D hardness in the range of 50 to 60"** because Bridgestone surrendered any such equivalents. *See, e.g.*, Originally-filed specification at page 2, lines 7-34; page 3, lines 1-3; page 3, line 33 to page 4, line 4; page 6, line 8 to page 9, line 24 (including Tables 1-3); "Office Action" mailed Oct. 2, 1996 (page 2-3); "Amendment Under 37 C.F.R. § 1.116" filed Apr. 13, 1992 (all pages); and "Notice of Allowability" mailed May 29, 1997 (pages 1-2); United States Patent No. 5,439,227 to Egashira *et al.*; United States Patent No. 5,492,972 to Stefani; GB 2 276 628.

(b) Bridgestone is not entitled to any equivalents for the term **"a 300% modulus in the range of 15-35 MPa"** because Bridgestone surrendered any such equivalents. *See, e.g.*, Originally-filed specification at page 3, line 33 to page 4, line 4.; "Office Action" mailed Oct. 2, 1996 (pages 2-3); "Amendment Under 37 C.F.R. § 1.116" filed Apr. 13, 1992 (all pages); and "Notice of Allowability" mailed May 29, 1997 (pages 1-2); United States Patent No. 5,439,227 to Egashira *et al.*; United States Patent No. 5,492,972 to Stefani; GB 2 276 628.

(c) Bridgestone is not entitled to any equivalents for the term **"said cover being composed mainly of an ionomer resin and having a Shore D hardness in the range of 55 to 60"** because Bridgestone surrendered any such equivalents. *See, e.g.*, Originally-filed specification at page 2, lines 7-34; page 3, lines 1-3; page 3, line 33 to page 4, line 4; page 6, line 8 to page 9, line 24 (including Tables 1-3); "Office Action" mailed Oct. 2, 1996 (pages 2-3); "Amendment Under 37 C.F.R. § 1.116" filed Apr. 13, 1992 (all pages); and "Notice of

37

Allowability" mailed May 29, 1997 (pages 1-2); United States Patent No. 5,439,227 to Egashira *et al.*; United States Patent No. 5,492,972 to Stefani; GB 2 276 628.

### H.    United States Patent No.5,743,817 ("the '817 patent")

Bridgestone is estopped from asserting that Acushnet's products infringe under the doctrine of equivalents based on at least the following documents filed during the course of proceedings in the United States Patent and Trademark Office:

1.    Originally-filed Specification at page 2, line 36 to page 3, line 13; page 3, lines 27-30; page 4, lines 11-24;  page 11;

2.    "Information Disclosure Statement" filed Apr. 12, 1996;

3.    Office Action mailed September 4, 1996 (pages 2-4);

4.    PTO-892, "Notice of References Cited," dated August 22, 1996;

5.    "Amendment Under 37 C.F.R. § 1.115," filed March 4, 1997 (pages 1-8);

6.    "Notice of Allowability," mailed April 29, 1997 (pages 1-2);

7.    United States Patent No. 4,858,924 to Saito *et al.*;

8.    United States Patent No. 4,919,434 to Saito *et al.*;

9.    United States Patent No. 5,304,608 to Yabuki *et al.*;

10.    United States Patent No. 5,516,110 to Yabuki *et al.*; and

11.    GB 2 226 628 A.

In addition to the documents listed above, each of which is relevant to Acushnet's non-infringement of the '817 patent both literally and under the doctrine of equivalents, Acushnet identifies the following exemplary claim limitations that Acushnet contends are not infringed either literally or under the doctrine of equivalents and identifies exemplary portions of the prosecution history that limits the applicability of the doctrine of equivalents.  Acushnet reserves the right to supplement this list when and if Bridgestone alleges infringement of any limitation under the doctrine of equivalents.

38

(a) Bridgestone is not entitled to any equivalents on the term "**cover ... [having] a Shore D hardness of up to 60**" because Bridgestone surrendered any such equivalents. *See, e.g.*, Originally-filed specification at page 2, line 36 to page 3, line 4; page 4, lines 11-17; page 11 (claim 1); "Office Action" mailed Sep. 4, 1996 (pages 2-4); United States Patent No. 4,858,924 to Saito *et al.*; United States Patent No. 4,919,434 to Saito *et al.*; United States Patent No. 5,304,608 to Yabuki *et al.*; United States Patent No. 5,516,110 to Yabuki *et al.*; GB 2 226 628 A; "Amendment Under 37 C.F.R. § 1.115," filed Mar. 4, 1997 (pages 1-8); and "Notice of Allowability," mailed April 29, 1997 (pages 1-2).

(b) Bridgestone is not entitled to any equivalents on the term a "**cover ... consists of an ionomer resin as a resin component**" because Bridgestone surrendered any such equivalents. *See, e.g.*, "Office Action" mailed Sep. 4, 1996 (pages 2-4); United States Patent No. 4,858,924 to Saito *et al.*; United States Patent No. 4,919,434 to Saito *et al.*; United States Patent No. 5,304,608 to Yabuki *et al.*; United States Patent No. 5,516,110 to Yabuki *et al.*; GB 2 226 628 A; "Amendment Under 37 C.F.R. § 1.115," filed Mar. 4, 1997 (pages 1-8); and "Notice of Allowability," mailed April 29, 2997 (pages 1-2).

(c) Bridgestone is not entitled to any equivalents on the term "**cover ... has a thickness of 1.3 to 1.8 mm**' because Bridgestone surrendered any such equivalents. *See, e.g.*, Originally-filed specification at page 3, lines 4-13, page 4, lines 18-24.

## I.    United States Patent No. 5,803,834 ("the '834 patent")

Bridgestone is estopped from asserting that Acushnet's products infringe under the doctrine of equivalents based on at least the following documents filed during the course of proceedings in the United States Patent and Trademark Office:

1)    The originally-filed specification at pages 4-7;

2)    "Notice of Allowability," mailed November 21, 1997 (page 2);

3)    United States Patent No. 5,403,010 to Yabuki *et al.*;

4)    United States Patent No. 5,439,227 to Egashira *et al.*;

39

As To Objections:

Respectfully submitted,

POTTER ANDERSON & CORROON LLP

Richard L. Horwitz (#2246)
David E. Moore (#3983)
Hercules Plaza, 6th Floor
1313 N. Market Street
Wilmington, DE 19801
Telephone: (302) 984-6000
rhorwitz@potteranderson.com
dmoore@potteranderson.com

Of Counsel:

Alan M. Grimaldi
Joseph P. Lavelle
Matthew J. Moore
Brian S. Seal
HOWREY LLP
1299 Pennsylvania Ave., N.W.
Washington, D.C. 20004
Telephone: (202) 783-0800

Attorneys for Defendant
Acushnet Company

Dated: May 1, 2006

# EXHIBIT E

# HOWREY LLP

1299 Pennsylvania Avenue, NW
Washington, DC 20004-2402
www.howrey.com

**Alan M. Grimaldi**
Partner
T 202 383 6989
F 202 383 6610
grimaldia@howrey.com

File 00634 0002

May 5, 2006

<u>BY FACSIMILE</u>

Robert M. Masters, Esq.
Paul, Hastings, Janofsky & Walker LLP
875 15th Street, N.W.
Washington, D.C. 20005

      **Re:**   ***Bridgestone Sports Co. v. Acushnet Co.,***
               **C.A. No. 05-132 (JJF) (D. Del.)**
               <u>**Continued Deficiencies in Bridgestone's Discovery Responses**</u>

Dear Rob:

      This letter summarizes the deficiencies in Bridgestone's discovery responses. Many have not been addressed or corrected for months after repeated requests. Even though Acushnet has informed Bridgestone that it needed certain documents Bridgestone has been withholding in order to complete its final contentions, we have received no response from Bridgestone to date to several matters raised by Acushnet. Despite our request for a meet and confer prior to the deadline for exchanging final contentions, we heard nothing from you.

      We would like to meet and confer with you regarding these issues next week, either Wednesday or Thursday afternoon. Please inform us of your availability for this meet and confer. We will be available to discuss any issues that you have raised then as well.

      Acushnet believes that the following deficiencies exist in Bridgestone's discovery responses to date:

## I.      DEFICIENCIES IN BRIDGESTONE'S DOCUMENT PRODUCTION

### A.      Development Documents for Golf Balls Practicing the Bridgestone Patents.

      In Bridgestone's response to Acushnet's Interrogatory No. 12, Bridgestone identifies over 30 golf balls that allegedly practice the Bridgestone patents-in-suit. By Bridgestone's own admission, each of these golf balls constitute a reduction to practice of the claimed invention. Documents relating to the manufacture and development of these golf balls are clearly responsive to Acushnet Requests for Production ("RFP") 4 ("documents and things referring or relating to the ... reduction to practice of any of the subject matter of the Bridgestone Patents.")

AMSTERDAM  BRUSSELS  CHICAGO  EAST PALO ALTO  HOUSTON  IRVINE  LONDON
LOS ANGELES  NORTHERN VIRGINIA  PARIS  SALT LAKE CITY  SAN FRANCISCO  TAIPEI  WASHINGTON, DC

# HOWREY LLP

Robert M. Masters
May 5, 2006
Page 2

and 5 ("documents referring or relating to the ... sale, offer for sale ... using ... any of the inventions claimed in the Bridgestone Patents.")

Additionally, we do not believe that the list provided to us in response to Acushnet Interrogatory No. 12 constitutes all of the golf balls manufactured by Bridgestone that are reductions to practice of the alleged inventions claimed in the Bridgestone patents-in-suit. Bridgestone manufactures and sells numerous golf balls in Japan that are not sold in the United States. Information related to these golf balls is clearly relevant to issues relating to the lack of commercial success of the alleged Bridgestone inventions. For example, documents related to these other Bridgestone golf balls, such as, for example, any Rextar golf ball that embodies one or more claim of the Bridgestone patents-in-suit would be responsive to Acushnet's requests.

We have repeatedly requested such documents. (*See*, *e.g.*, Ltr. from Moore to Saliba, Nov. 10, 2005, Ltr. from Seal to Masters, Apr. 6, 2006, Ltr. from Seal to Masters Apr. 18, 2006.)

### B.     Documents Relating to the Testing of Third Party Golf Balls

On November 10, 2005 and again on April 18, 2006 we requested that Bridgestone produce its competitive testing of the Wilson golf balls that Acushnet has shown anticipate the claims of various Bridgestone patents-in-suit. (*See* Ltr. from Moore to Saliba on Nov. 10, 2006 and Ltr. from Seal to Masters on Apr. 18, 2006.) Acushnet has asserted that these Wilson golf balls are invalidating prior art to at least the '852, '707, '817, '834 and '924 patents. To date, Bridgestone has not produced any such documents despite Bridgestone's prior representations that they had tested these prior art golf balls.

Acushnet's request for production No. 23 calls for Bridgestone to produce "documents that refer or relate to ... testing ... related to Wilson's Ultra Competition 90 and 100 and Ultra Tour Balata golf balls." (Acushnet. Req. for Prod. No. 23). Moreover, Acushnet's request for production No. 24 calls for Bridgestone to produce "documents ... referring or relating to any analysis or test performed by or on behalf of Bridgestone on ... Wilson's Ultra Competition 90 and 100 and Ultra tour Balata golf balls ...."

On the same note, during our November 28, 2005 conference, you agreed to provide us with a list of all prior art golf balls and accused golf balls in Bridgestone's possession. (*See* Ltr. from Moore to Saliba dated December 12, 2005 at 3.) It has been over five months since you agreed to produce this list and since Acushnet provided you with a similar list. (*See* Ltr. from Seal to Saliba dated November 28, 2005.) Acushnet is entitled to the same courtesy given Bridgestone.

### C.     Documents Relating to the Previous Callaway Litigation

On November 10, 2005 and again on December 12, 2005 we asked you to produce all documents related to the prior litigation with Callaway including all documents related to the Motion for Partial Summary Judgment in that litigation. (Ltr. from Moore to Saliba on Nov. 10,

# HOWREY LLP

2005; Ltr. from Moore to Saliba on Dec. 12, 2005 (discussing production of Callaway-Bridgestone license).) Bridgestone has produced a limited number of documents relating to that litigation, all of which were filed in the United States District Court for the Northern District of Georgia. Bridgestone has yet to produce any documents related to the license negotiations with Callaway. These documents are responsive to Acushnet's RFP No. 11 ("documents referring or relating to proposed or actual licenses ... and agreements related to any of the Bridgestone Patents or Bridgestone Related Patents.") Bridgestone has not produced any draft licenses or any documents from licensing discussions with Callaway. Moreover, prior to instituting this litigation, Acushnet and Bridgestone engaged in numerous written correspondence concerning the patents-in-suit. Bridgestone may have similar correspondence related to its litigation with Callaway.

Acushnet's request for production No. 10 calls for Bridgestone to produce "documents referring or relating to litigation concerning any of the Bridgestone Patents or Bridgestone Related Patents." (Acushnet Req. No. 10.) On December 22, 2005, Bridgestone produced documents related to the previous Callaway litigation involving at least the '852 and '707 patents it is asserting in this litigation. (*See* BSP099230-BSP099629.) The declaration of Mr. Cadorniga, however, is missing from that production. As Acushnet has already informed Bridgestone, Acushnet believes that this declaration is highly material to at least the interpretation of the claims of the '852 patent, specifically to the meaning of the term "intermediate layer."

If that declaration has been destroyed or is otherwise no longer in Bridgestone's possession, custody or control, please indicate why it is no longer in Bridgestone's possession, custody, or control. In particular, if destroyed, provide us with information related to its destruction, including an identification of who destroyed the document, who requested that the document be destroyed and when the document was destroyed. If the declaration of Mr. Cadorniga was destroyed, we would like to take his deposition regarding issues addressed in his declaration as soon as possible.

### D.     Manufacturing Guidelines for Bridgestone Prior Art Golf Balls

On April 6, 2006 we informed you that Bridgestone's document production does not include any manufacturing guidelines or specifications for golf balls identified by Acushnet as prior art to the Bridgestone patents-in-suit. For example, while we have located such documents for certain Bridgestone golf balls, we have located no such guidelines or specifications for the Altus Newing Massy or Tour Stage U-Spin golf balls. Any such documents are responsive to Acushnet Request Nos. 6, 23, and 47. We asked that you produce these documents. To date, we have not received a response to our request.

# HOWREY LLP

Robert M. Masters
May 5, 2006
Page 4

### E.    Samples of Bridgestone's Retail Packaging

On November 10, 2005, we informed Bridgestone that they had not produced any samples of their retail packaging for the accused products. Such samples are responsive to Acushnet RFP No. 72.

### F.    Bridgestone's Documents Relating to Testing Protocols

On April 6, 2006 we informed you that Bridgestone's document production does not include any documents describing Bridgestone's past or current testing protocols, including protocols for testing 300% modulus or any protocols for measuring hardness gradient across the core (e.g. JIS-C). We also stated that such information is responsive to Acushnet Interrogatory No. 14, while any documents are responsive to Acushnet Request No. 5, 14, 20, 24, 25, 48 and 49, 51. (*See* Ltr. from Seal to Masters, Apr. 6, 2006.) We have not received a response to our letter.

Moreover, on April 18, 2006, we informed you that and e-mail in Bridgestone's production referenced a piece of equipment for measuring 300% modulus. We informed you that this "e-mail references a piece of equipment manufactured by Instron and used by Bridgestone to test for 300% modulus as well as software for use in connection with such a machine. (*See* BSP167255-BSP167259.) To date, Bridgestone has yet to produce any documents related to that piece of equipment despite Acushnet's request that Bridgestone produce "documents and things concerning testing devices, testing equipment and/or testing facilities and any changes, revisions or updates thereto, used to test and/or determine golf ball characteristics, performance, physical attributes, compositions and make-up, from 1990 to the present...." (Acushnet Req. for Prod. No. 51). (*See* Ltr. from Seal to Masters on Apr. 18, 2006.)

In that letter we informed you that:

> The aforementioned documents are critical to Acushnet's evaluation of the prior art and the timely completion of Acushnet's final contentions. Therefore, Bridgestone must immediately produce all documents relating to the 300% modulus of various cover materials, including the cover materials for at least the above-identified golf balls that allegedly practice the claims of the '413 patent and documents relating to the test equipment for determining 300% modulus.

(*Id.*) Despite Acushnet's request that Bridgestone produce such documents promptly, we did not even receive a reply to our request.

Furthermore, Acushnet repeats its request that certain Bridgestone test protocols be dedesignated from "highly confidential." As Acushnet has informed you, Bridgestone has designated some of its testing protocols as being "highly confidential." Bridgestone, however,

# HOWREY LLP

Robert M. Masters
May 5, 2006
Page 5

has claimed measurements in its patents-in-suit such as Shore/JIS hardness (BSP059696-BSP059701), specific gravity (BSP059702-BSP059734), dimple geometry measurements (BSP059776-BSP059779), 100 kg distortion (BSP059780-BSP059782, BSP059861), cover gauge (BSP059881) and cover hardness (BSP059882).[1]

Under the Court's protective order, "Highly Confidential" information is:

> (i) proprietary research and development and/or highly sensitive technical information that is not publicly available; (ii) highly sensitive business-related financial or commercial information that is not publicly available and that is not expressly contained in public information; (iii) trade secrets; and (iv) unpublished patent applications and patent prosecution documents that are not available upon request form the U.S. Patent and Trademark Office or any other patent office.

(Stip. Protective Order at ¶ 4.) We find it interesting that Bridgestone has claimed ranges of various measurements of, for example, the physical properties of a golf ball in each of its patents-in-suit and has now taken the position that the methods for making these measurements are "highly confidential." This raises concerns under 35 U.S.C. § 112. Accordingly, please confirm whether you intend to maintain your designation the testing protocols identified above as "highly confidential."

### G.    Documents Surrounding the Testing of Pro V1's Cover Thickness to be Less than 1 mm

On April 6, 2006, we informed you that certain documents pertaining to Bridgestone's measurement of the cover thickness of the Pro V1 golf ball were responsive to Acushnet's requests for production. Particularly, in response to Acushnet's Request for Admission Nos. 21 and 22, Bridgestone admitted that an employee measured the outer cover thickness of the Titleist Pro V1 and Pro V1x golf balls, respectively, to be less than 1 mm. (Pls.' Supp. Response to Def.'s Requests for Admission at 2-3). The facts surrounding those tests, and the results obtained, are responsive to Acushnet Interrogatory No. 14, while any related documents are responsive to Acushnet Request No. 21.

### H.    Documents Related to the Testing of Materials for 300% Modulus.

By letter on April 6, 2006 and again on April 18, 2006, we requested that Bridgestone produce documents related to the testing of materials for 300% modulus as described in the

---

[1] Numerous other testing protocols can be found at BSP059856-BSP059882.

# HOWREY

Robert M. Masters
May 5, 2006
Page 6

Bridgestone '413 patent. (*See* Ltrs. From Seal to Masters on Apr. 6, 2006, Apr. 18, 2006.)
Specifically, we noted that in Bridgestone's supplemental response to Interrogatory No. 12,
which requested that Bridgestone identify all facts that support its contention that it has complied
with 35 U.S.C. § 287, Bridgestone provided the following chart:

| '413 | Precept MC Tour Premium | on or about October 1, 1999 |
|------|-------------------------|-----------------------------|
|      | Precept MC Double Cover | on or about September 1, 1998 |
|      | Precept MC Lady | on or about September 1, 1998 |
|      | Precept MC Tour Advantage | on or about October 1, 1999 |
|      | Precept Extra Distance | on or about August 15, 2000 |
|      | Precept Laddie | on or about January 1, 2002 |
|      | Precept Lady | on or about January 31, 2003 |
|      | Precept D▲Feel | on or about July 18, 2003 |
|      | Precept PWR Drive | on or about April 8, 2004 |

(Pls. Supp. Resp. To Def. First Set of Interrog. No. at 8.) One of the limitations of claim 1 of the
'413 patent calls for the cover to have a particular 300% modulus. ('413 patent, claim 1.)
According to Bridgestone's response to Acushnet's Interrogatory No. 12, Bridgestone has
concluded that the Precept MC Tour Premium, Precept MC Double Cover, Precept MC Lady,
Precept MC Tour Advantage, Precept Extra Distance, Precept Laddie, Precept Lady, Precept D
▲ Feel and the Precept PWR Drive golf balls include covers that satisfy the limitations of claim
1.

We also told you that Bridgestone, however, has failed to produce any documents
showing the 300% modulus of the covers of these golf balls or the compositions of such covers.
Any such documents are directly responsive to Acushnet Request No. 5, which calls for
Bridgestone to produce "documents … relating to the … testing … of products … embodying
practicing, or using in whole or in substantial part any of the inventions claimed in the
Bridgestone Patents." (Def.'s First Set of Req. for the Production of Documents and Things to
Pl. at 4 (served on June 10, 2005).)[2]

Additionally we informed you that, buried in the over 95,000 pages of Japanese-language
documents that Bridgestone produced subject to Court order in January is a document referring
to specific equipment and procedures used for determining 300% modulus. (*See* BSP167255-
BSP167259.) This document is an e-mail discussing the testing of the 300% modulus of
"WILSON 90," "S8120," "S8320," and "WO545"). (*See* BSP167256.) Based on this e-mail, it

---

[2] Acushnet has noted that Bridgestone's document production remains deficient due to Bridgestone's failure to
produce documents related to each of the golf balls specified in Bridgestone's response to Interrogatory 12. As
Acushnet has pointed out, each of these golf balls constitute reductions to practice of Bridgestone's alleged
inventions and therefore, documents related to each of the golf balls identified by Bridgestone in response to
Acushnet's Interrogatory No. 12 must be produced. (*See* Ltr. from Seal to Masters dated April 6, 2005 at pp. 1-2.)
After nearly two weeks, Acushnet is still waiting for a reply to its letter.

**HOWREY**LLP

appears that Bridgestone performs competitive testing of golf balls for 300% modulus, as Bridgestone had tested the 300% modulus of "Wilson 90," which appears to be a golf ball manufactured by Wilson Sporting Goods Co. Please produce all other documents including competitive testing of golf balls for 300% modulus, Shore D hardness, etc..

Based on this document, it appears that Bridgestone evaluates various resins for both Shore D hardness and 300% modulus. (*See id.* (evaluating Surlyn® 8320 and Surlyn® 8120 for Shore D hardness and 300% modulus.)) Please produce all documents related to the testing of any material for Shore D hardness and 300% modulus in Bridgestone's possession as those documents are responsive at least to Acushnet's request No. 48 which requests that Bridgestone produce "documents ... concerning any testing, experimentation, or research done by or on behalf of Bridgestone to determine the 300% modulus of any material suitable for use in a golf ball, including, but not limited to any resins including ionomer resins or blends thereof and or ethylene copolymer resins, polyurethanes and rubbers." (Acushnet's Second Set of Req. for the Production of Documents and Things Directed to Bridgestone (Nos. 44-86).)

I.    **Documents Relating to Bridgestone's Strategy Office**

By letter on April 18, 2006, we informed you that Bridgestone failed to produce documents from its "Strategy Office." (Ltr. from Seal to Masters on Apr. 18, 2006.) We told you that a document produced by Bridgestone indicates that Bridgestone has a Strategy Office that works closely with the Golf Ball Development Department and the Intellectual Property Office on matters of golf ball development and patents. (*See* BSP 172625). While Bridgestone has produced periodic reports and other documents from both the Golf Ball Development Department and the Intellectual Property Department, you have produced no such documents from the Strategy Office.

Any such documents are responsive to Acushnet's Request Nos. 22 and 23, which call for Bridgestone to produce, *inter alia,* "documents and things referring or relating to the research, design, design changes, development, ... [and] patent activities" related to the accused Bridgestone golf balls and prior art golf balls identified by Acushnet, respectively. (Acushnet Req. Nos. 22-23.) Moreover, the Strategy Office's relationship with the Golf Ball Development Department suggests that any documents from the Strategy Office are subject to the Court's Order of January 13, 2006, which required Bridgestone to produce all documents related to the development of the accused Bridgestone golf balls and the patents-in-suit by January 30, 2006.

To date, Bridgestone has not even provided an organizational chart to indicate the Bridgestone employees and other personnel employed in the Strategy Office. Any such charts are responsive to Acushnet Request No. 52, which calls for Bridgestone to produce documents "sufficient to identify Bridgestone's corporate management and personnel responsible for management, research and development, ... patenting or any patent related activities." (Acushnet Req. No. 52.)

# HOWREY.

### J.    The "Summary Pro V1 Spreadsheet"

As we informed you by letter on April 18, 2006, as part of its production of over 95,000 pages on January 30, Bridgestone produced an e-mail discussing Acushnet's Pro V1 golf ball. (*See* BSP 145526.) The e-mail was sent with an attached Excel spreadsheet titled "Summary V1." (*Id.*) That spreadsheet, however, was not produced. Given that the subject of the e-mail itself is the Pro V1 golf ball and that the attachment is titled "Summary V1," the attachment is almost certainly responsive to Acushnet Request No. 21, which calls for the production of all documents "referring or relating to any analysis or test performed by or on behalf of Bridgestone of any of the Accused Products ...." (Acushnet Req. No. 21.)

### K.    Missing Golf Ball Development Reports

Despite the Court's January 13, 2006 Order requiring Bridgestone to produce all documents related to the development of the accused Bridgestone golf balls and the Bridgestone patents-in-suit, Bridgestone's document production remains deficient with regard to those documents. In particular, while Bridgestone's document production includes a number of monthly golf ball development reports for the period of April 1999 through February 2005 (generally titled "ゴルフボール開発状況報告"), the production is incomplete. For example, for 2003, Bridgestone produced reports for only the months of January-April (BSP 026144-026149, BSP 171120-171125, BSP 026182-026186,BSP 066213-066218, respectively), July (BSP 066302-066308), and September-November (BSP 066341-066346, BSP 066382-066385, and BSP 066432-066436, respectively). Reports for May, June, August, and December 2003 are missing. Bridgestone also has failed to produce reports for July 1999, November 2000, December 2000, February 2001, March 2001, December 2001, January 2002, June 2002, July 2002, August 2002, September 2002, October 2002, November 2002, December 2002, January 2004, March 2004, May 2004, and October 2004.

We brought this matter to your attention in a letter dated April 21, 2006. Please provide us a response and produce all such documents immediately.

### L.    Bridgestone Prior Art and Documents Relevant to Acushnet's Invalidity Contentions

On April 21, 2006 we informed you that we believed that certain Bridgestone patents filed on or about the same date as some of the Bridgestone patents-in-suit amounted to obviousness-type double patenting.

We informed you that Bridgestone has failed to produce documents concerning certain non-asserted Bridgestone patents that relate to the subject matter of the Bridgestone patents-in-suit. For example, Bridgestone's U.S. Patent No. 5,556,098 ("the '098 patent"), appears to be almost identical to Bridgestone's asserted U.S. Patent No. 5,553,852 ("the '852 patent"). In fact, it was filed on the same date as the '852 patent by the same four inventors named on the '852

**HOWREY** LLP

Robert M. Masters
May 5, 2006
Page 9

patent. This patent includes a nearly identical disclosure to the '852 patent. All documents related to the conception, reduction to practice and diligence toward reduction to practice are relevant to any possible double patenting analysis and Bridgestone's failure to disclose this materially related co-pending application to the PTO during prosecution of the '852 patent.

Further, Bridgestone's U.S. Patent Nos. 6,786,836 ("the '838 patent") and 6,921,345 ("the '345 patent") relate to the subject matter of Bridgestone's asserted U.S. Patent No. 6,634,961 ("the '961 patent"). In fact, the '345 patent, the '836 patent and the '961 patent each claim a particular polybutadiene rubber and an almost identical chemical composition. The '836 patent was filed on May 30, 2002—the same filing date as the '961 patent—and has the same two named inventors as the '961 patent. The '345 patent was filed only one day before the '961 and '836 patents and again has the same two named inventors. All documents related to the conception, reduction to practice and diligence toward reduction to practice are relevant to any possible double patenting analysis and Bridgestone's failure to disclose this material related co-pending application to the PTO during prosecution of the '961 patent.

Still further, Bridgestone's U.S. Patent No. 5,452,898 ("the '898 patent") includes claims that are almost identical to the claims of Bridgestone's asserted U.S. Patent No. 5,743,817 ("the '817 patent"). The '898 patent was filed by Bridgestone over one year before its application for the '817 patent, but was never disclosed to the PTO during prosecution. Both the '898 patent and the '817 patent have the same three named inventors. All documents related to the conception, reduction to practice and diligence toward reduction to practice are relevant to any possible double patenting analysis and Bridgestone's failure to disclose this material related co-pending application to the PTO during prosecution of the '817 patent.

All documents relating to the '098, '836 and '345 patents, their foreign counterpart applications (including Japanese patent application No. JP 5-193064, JP 2001-163215 and JP 2001-163174), the development of the technology disclosed therein, any decision not to disclose these co-pending patent applications to the PTO and any public disclosure of the technology disclosed therein are responsive to at least Acushnet Document Request Nos. 4 (calling for all "documents related to the conception, diligence toward reduction to practice, or reduction to practice of any of the subject matter of the Bridgestone Patents…." (Acushnet's Req. for Prod. No. 4, Jun. 10, 2005.) (emphasis added), 5 ("documents referring to or relating to the invention, conception, research, design, development … of the invention claimed in the Bridgestone Patents") (Req. for Prod. No. 5), 6 ("all documents and things referring, relating to, or embodying information that may be considered Prior Art to any of the Bridgestone Patents….") (Req. for Prod. No. 6) and 7 ("documents and things referring or relating to Bridgestone's knowledge or awareness of any Prior Art to any of the Bridgestone Patents ….") (Req. for Prod. No. 7). Bridgestone's continued failure to produce documents so closely related to development of the patents-in-suit, despite the Court's Order on January 13, 2006, is causing prejudice to Acushnet.

Each of the aforementioned patents is relevant to Acushnet's invalidity defenses, as set forth in Acushnet's recently served invalidity contentions. Moreover, Acushnet, in its final

# HOWREY.

contentions identifies a number of prior art references that were assigned to Bridgestone. Acushnet believes that all documents relevant to each of these patents is responsive to at least the aforementioned requests for production.

### M.    Documents Related to the New NIKE Golf Balls

As we informed you by letter on April 24, 2006, Acushnet believes that the new NIKE golf balls satisfy the claims of the '705 patent. We informed you that Acushnet would be supplementing its interrogatory responses to contend that the new NIKE products, released on February 1, 2006 infringed the '705 patent.

In our meet and confer, we would like to discuss a time-table for Bridgestone's production of all documents relevant to these golf balls.

### N.    Numerous Documents Appear to be Missing Pages

There are a number of documents in Bridgestone's document production that are missing pages. For example the document at pages BSP088712-BSP088785 in Bridgestone's production appears to be missing pages 1-7, 9, 11-23, 30-31, 38-51, 55-57 and 59. We also cannot tell if there may be other pages missing at the end of this document. Additionally the document beginning at page BSP109522 appears to be missing the last two pages. Moreover, a presentation at BSP088811 appears to start on page 21 and appears to be missing numerous pages both before page 21 and after page 28. These examples are not exhaustive and Acushnet requests that Bridgestone review its production to determine whether other documents may have had pages inadvertently removed.

Please produce documents responsive to Acushnet's request as soon as possible. Due to the time and expense of translating Bridgestone's Japanese-language production, Bridgestone's delay has, and continues to prejudice Acushnet.

## II.    DEFICIENCIES IN BRIDGESTONE'S INTERROGATORY RESPONSES

### A.    Employee Numbers for Each Bridgestone Employee Referenced by Number in Bridgestone's Document Production

Acushnet's Interrogatory ("Rog.") 28, in part, requested that Bridgestone identify each individual referenced by an employee number by full name. Bridgestone has identified some organizational charts, which it contends permits Acushnet to derive the answer to its interrogatory. By letter on April 6, we informed you that we have reviewed the documents you identified and concluded that are not sufficient to answer the interrogatory in full. (Ltr. from Seal to Masters on Apr. 6, 2006.) Specifically, we told you that the documents you identified are Japanese-language organizational charts that identify each individual by last name only. In

**HOWREY**

addition, the documents reveal that certain individuals have held different employee numbers at different times, and that still others have held multiple employee numbers concurrently. Only Bridgestone is capable of fully answering this interrogatory.

We informed you that Acushnet requires this information in order to prepare for depositions, and asked that you provide a full response to this interrogatory immediately. (*Id.*) However, we have not received a response from you.

### B.     Identification of All Bridgestone Golf Balls Practicing the Patents-in-suit

On November 2, 2005, the Court ordered Bridgestone to answer Acushnet's Interrogatory No. 9 to the extent that Bridgestone was not required to identify all third party golf balls practiced the claims of the patents-in-suit. Bridgestone, in responding incorporated its list from Interrogatory No. 12, which requested Bridgestone to identify all products that Bridgestone has marked with one or more of the patents-in-suit.

Bridgestone's response to this interrogatory still remains incomplete and stands in violation of the Court's November 2, 2005 order. Specifically, Bridgestone has not identified any of the golf balls sold anywhere other than the United States, though this interrogatory is clearly not limited by geography. Bridgestone's sales for each golf ball that practices any claim is relevant to the lack of commercial success of the alleged inventions and is relevant for at least that purpose. Moreover, Acushnet's Interrogatory also pertains to any NIKE golf balls, whether or not Bridgestone contends that it owes an obligation to mark those products.

### C.     Licenses to Any of the Patents-In-Suit

Acushnet's Interrogatory No. 11 asks that Bridgestone "has communicated with any person or entity regarding a potential license of one or more of the Bridgestone patents, including offers to license, demands that the person or entity license, and any agreements concerning any of the Bridgestone patents." (Acushnet Interrog. No. 11.) Bridgestone answered that it was public knowledge that it had licensed the '125, '852 and '707 patents to Callaway. However, Bridgestone has not informed Acushnet of any other offers to license or demand to license any of the patents-in-suit.

Please supplement your response to this interrogatory either to indicate that Bridgestone has never been approached for a license or has never offered a license to any of the Bridgestone patents-in-suit.

### D.     Identification of Documents Relating to Organosulfur compounds in Golf Balls

Acushnet Interrogatory No. 25 requested that Bridgestone

**HOWREY**LLP

> "Identify each document produced by Bridgestone in response to any request in Defendant's First Set of Requests for the Production of Documents and Things (served on June 10, 2005) and Defendant's Second set of Requests for the Production of Documents and Things (served on August 2, 2005) related to the use of organosulfur compounds in golf balls in any amount, including but not limited to the following sulfur-containing compounds: pentachlorothiophenol, 4-t-tubyl-o-thiocresol, 4-t-butyl-p-thiocresol, 2-benzamidothiophenol, thiobenzoic acid, and zinc salts thereof."

(Acushnet Interrog. 25.)

There are three patents in the current litigation that pertain, at least in part, to the use of organosulfur compounds in golf balls, including the aforementioned organosulfur compounds. Rather than provide Acushnet with a response to this interrogatory, Bridgestone refused to answer because "Acushnet did not propound a specific Document Request for the information requested in this interrogatory." (Bridgestone's Objections and Responses to Pls. Second Set of Interrog. at 2.) Bridgestone's objection is baseless for at least two reasons. First, the interrogatory does not request any documents, and therefore, "the information requested in this interrogatory" is an identification of documents in Bridgestone's document production. Secondly, Acushnet requested documents related to *inter alia* the conception and reduction to practice of the subject matter of any one of Bridgestone's patents-in-suit. (*See, e.g.*, Acushnet's RFP Nos. 4 and 5.) Therefore, assuming that Bridgestone has produced documents responsive to this request, as it was ordered by the court to do on January 13, 2006, it should be able to identify responsive documents in its production.

As a second basis for refusing to answer this interrogatory, Bridgestone has asserted that "Acushnet can ascertain an answer *as readily as Bridgestone*." This simply is not true for a number of reasons. First, Bridgestone has designated its documents "highly confidential" under the Court's protective order. Assuming *arguendo* that Acushnet's employees could read Bridgestone's documents, Acushnet cannot assist its outside counsel in interpreting these documents per the Court's Protective Order. Secondly, Bridgestone produced these documents and presumably is in a better position to locate and identify documents responsive to this interrogatory. Finally, to the extent that Bridgestone does not readily know where responsive documents are, Bridgestone is a Japanese company, where a majority, if not all of its technical personnel can read and review the documents in Bridgestone's document production. Bridgestone should know where documents related to organosulfur compounds would have come from and accordingly is in a better position to identify these documents.

# HOWREY LLP

     **E.**      **Identification Of Documents Relating to Each Bridgestone patent-in-suit**

Acushnet's Interrogatories Nos. 29-38 request that, for each of the Bridgestone patents in suit, Bridgestone identify in its production documents related to each of the patents-in-suit. Interrogatory No. 29 is exemplary:

> 29.     Identify each and every document produced by Bridgestone in response to any request in Defendant's First Set of Requests for the Production of Documents and Things (served on June 10, 2005) and Defendant's Second set of Requests for the Production of Documents and Things (served on August 2, 2005) or that is identified on any privilege log that is related in any way to the conception, reduction to practice (either actual or conceptual), diligence toward reduction to practice, or lack of abandonment, suppression, or concealment of the alleged invention claimed in the '791 patent.

(Acushnet Interrog. 29.) Bridgestone has refused to answer this interrogatory for similar reasons as it refused to answer Acushnet's Rog. 25. However, as set forth above, Bridgestone is clearly in a better position to determine the answer to this interrogatory than Acushnet.

Bridgestone also objected to this interrogatory as premature as "it calls for a legal conclusion." This is no basis for refusing to answer this interrogatory, as interrogatories, by their very nature call for legal conclusions (for example, invalidity and non-infringement contentions.)

Bridgestone's third reason for not responding to this interrogatory is that "to the extent priority for any of the Bridgestone patents is not claimed prior to January 1, 1996, the interrogatory is not relevant to any issue in the case." Bridgestone's refusal to respond to this interrogatory is once again unfounded. How inventors conceived of their inventions is relevant to the issue of, for example, what the term "about 0.05 to about 2 parts" in the '652 patent means, as development documents may indicate what those skilled in the art, including the inventors perceived the term "about" to mean. Therefore, an identification of the technical documents associated with each patent is relevant to issues in this litigation regardless to the date of creation of such a document.

Finally, Bridgestone is under a Court Order to produce all of its development documents for the patents-in-suit on or before January 30, 2006. Bridgestone produced over 95,000 pages of documents pursuant to that Order. Bridgestone should be able to provide Acushnet with an identification of documents related to each of its patents-in-suit based on its search for the documents responsive to Acushnet's requests and produced in response to the Court's Order.

# HOWREY.

Robert M. Masters
May 5, 2006
Page 14

Therefore, if Bridgestone plans to continue to stand on its objections, we would like to raise this issue with the Court immediately because a response to Acushnet's interrogatory is important for Acushnet to prepare for depositions.

**F.    Identification of Individuals Named on Bridgestone's Privilege Log**

On April 18, 2006, Acushnet informed Bridgestone that it needed to supplement its response to Acushnet's Interrogatory No. 39. This interrogatory asked Bridgestone to, among other things identify each individual on Bridgestone's privilege log by full name and state whether or not each person was an attorney. Acushnet has specifically identified individuals that were not included in Bridgestone's response but appeared on Bridgestone's privilege log.

Moreover, upon a review of your responses to this interrogatory, we note that you have not provided the requested information, including an identification of all bars to which the individuals named on your privilege log are admitted to. This information is relevant to which privilege law will govern certain communications and is necessary for Acushnet to evaluate Bridgestone's voluminous privilege log including claims to privilege for over 17,000 pages of documents.

**G.    Bridgestone's Response to Acushnet Interrog. 6 is Deficient**

Acushnet Interrogatory No. 6 requests that Bridgestone identify "any alleged dates of conception; any alleged subsequent diligence until reduction to practice, and alleged dates of actual reduction to practice of the claimed invention ...." (Acushnet Interrog. 6.) To date, Bridgestone has only informed Acushnet of the filing dates of its Japanese applications. Please supplement your response to this interrogatory.

**H.    Identification of the Individuals Most Knowledgeable About Bridgestone's Testing of Acushnet's Products**

Acushnet Interrogatory No. 14 requests that Bridgestone provide Acushnet with the name of the "individuals most knowledgeable of ... testing, analysis, and/or evaluation" of Acushnet's products. Bridgestone has not provided Acushnet with an answer to this Interrogatory, but rather claimed that the information is privileged. The identification of an individual involved with Bridgestone's testing of Acushnet's products is not privileged information and must be provided to Acushnet.

**I.    Bridgestone's Interrogatory Response With Respect to Damages**

Acushnet Interrogatory No. 15 requires Bridgestone to identify all items of damages that it will be seeking. In "Bridgestone's Answering Brief In Opposition to Acushnet's Motion to

# HOWREY LLP

Bifurcate Liability from Damages and Willfulness," Bridgestone stated that "Bridgestone is seeking a reasonable royalty, not lost profits…." (Bridgestone's Answering Br. In Opp. to Acushnet's Mot. to Bifurcate Liability from Damages and Willfulness at 8.) Therefore, please confirm that Bridgestone will only be seeking lost profits.

### J. Bridgestone's Contentions with Respect to Doctrine of Equivalents and Prosecution History Estoppel are Deficient

Acushnet Interrogatory No. 21 asks:

> On a claim-by-claim basis, for *each claim* of the Acushnet Patents that Bridgestone contend is not infringed by Bridgestone for reasons of the proceedings in the U.S. Patent and Trademark Office during prosecution of the Acushnet Patents, *identify each term in each such claim* and state all factual bases for your contention, including the page and line number of any portion of the prosecution history relied upon.

(Acushnet Interrog. 21 (emphasis added).) Bridgestone's response to this interrogatory merely cites to each document contained in the respective file histories. Bridgestone's response does not identify any claim terms that it contends are not infringed under the doctrine of equivalents because of the doctrine of prosecution history estoppel. Acushnet provided Bridgestone with an identification of such claim terms in response to its corresponding Interrog. 39. As Bridgestone is aware, this is a contention interrogatory and a complete response was due, on April 28, 2006 by court order, which was extended to May 1 by agreement of the parties. Therefore, you must supplement your response to this interrogatory immediately identifying which claim terms you contend are limited by proceedings in the PTO.

### K. Bridgestone's Response to Acushnet's Interrogatory With Respect to Sales of NIKE Golf Balls

Acushnet Interrogatory No. 27 requests that Bridgestone "identify the place, (by city, state and country) manner (e.g., F.O.B., F.A.S., C.F.R.) … and purchaser for any sale by Bridgestone to any third party …" for each NIKE product Acushnet has accused of infringing its patents. To date, Bridgestone has informed us that "the place of sale is Port of Yokohama" or "Narita International Airport" and that all sales are to NIKE, Inc.

This response does not seem complete in light of documents produced by Bridgestone showing that at least some NIKE golf balls are imported or shipped by Bridgestone into the United States. *See, e.g.*, BSP147238-39; BSP170134-38; BSP166483-87; BSP154614; BSP154125-29; BSP147858-61.

# HOWREY.

Robert M. Masters
May 5, 2006
Page 16

**III.      BRIDGESTONE'S ANSWERS TO ACUSHNET'S RFA'S ARE DEFICIENT**

Bridgestone's responses to Acushnet's Requests for Admission Nos. 12-20 are insufficient. Each request asks you to admit or deny whether a specific document is prior art to a Bridgestone patent-in-suit. Your response to each that each document is not "prior art, as defined by Acushnet" is insufficient because it does not indicate which part of Acushnet's definition you contend does not apply to each document. In addition, your denials of those interrogatories are contradicted by Bridgestone's response to Acushnet Interrogatory No. 8. In response to that interrogatory, which requested you to identify "all known prior art to the Bridgestone Patents," and using the same definition of "prior art" as the requests for admission, you identified "the art that Acushnet has identified to Bridgestone with respect to one or more of the Bridgestone Patents." (Pls.' Second Supp. Resp. to Def.'s Interrog. 8). The art that Acushnet has identified includes each document identified in Acushnet's Requests for Admission Nos. 12-20. Accordingly, please clarify your response to those requests. Therefore, please answer these requests immediately.

Your response to these issues is needed immediately to ensure that Acushnet's final contentions were complete and accurate and to permit Acushnet to prepare for disposition, among other things. Please confirm that we can meet and confer on these issues next Wednesday or Thursday afternoon.

Very truly yours,

Alan M. Grimaldi

# EXHIBIT F


**ATTORNEYS**

Paul, Hastings, Janofsky & Walker LLP
875 15th Street, N.W. • Washington, DC 20005
telephone 202 551 1700 • facsimile 202 551 1705 • www.paulhastings.com

Atlanta
Beijing
Brussels
Hong Kong
London
Los Angeles
Milan
New York
Orange County
Palo Alto
Paris
San Diego
San Francisco
Shanghai
Stamford
Tokyo
Washington, DC

(202) 551-1763
robmasters@paulhastings.com

May 17, 2006                                                          70416.00002

**BY HAND DELIVERY**

Alan M. Grimaldi
Howrey LLP
1299 Pennsylvania Ave., N.W.
Washington, DC  20004

*Re:    **Bridgestone v. Acushnet***

Dear Alan:

This letter responds to your May 5, 2006 letter laying out alleged deficiencies in
Bridgestone's discovery responses.

## I.    ALLEGED DEFICIENCIES IN BRIDGESTONE'S DOCUMENT PRODUCTION

### A.    Development Documents for Golf Balls Practicing the Bridgestone Patents

Bridgestone has produced all documents relevant to Acushnet's Requests for Production
Nos. 4 and 5 and believes that it has fully complied with these requests. Bridgestone
asserts that any documents related to the commercial embodiments of its patents after the
date of issue are irrelevant and non-responsive. As such, Bridgestone will not supplement
its production at this time.   To the extent Acushnet disagrees, please explain the relevance
of this information. Furthermore, please explain why Acushnet has not produced the
same kind of information.

As for Interrogatory No. 12,  Bridgestone is satisfied with the completeness of its
response on this matter and believes it has fully responded to this Interrogatory.  As such,
Bridgestone will not supplement its response to this interrogatory at this time.   To the
extent Acushnet maintains that golf balls made and sold only in countries outside of the
U.S. should be identified in response to Interrogatory No. 12, which pertains solely to
U.S. patents, explain your reasoning and support for such a position. Also, explain the
relevance of such information to the issues in this case.

Paul*Hastings*
ATTORNEYS

Alan M. Grimaldi
May 17, 2006
Page 4

### L.    Bridgestone Prior Art and Acushnet's Invalidity Contentions

It is Bridgestone's belief that the documents requested in Acushnet's April 21, 2006 letter
are both irrelevant and non-responsive. Furthermore, as all of the patents you referenced
have issued from the U.S. Patent Office, you are able to obtain copies of the file histories.
As such, Bridgestone will not be supplementing its production.

Bridgestone is not withholding documents related to the development of the patents in
suit. The fact that Bridgestone filed other patents related to golf balls or that the
inventors of the patents in suit are named inventors on other patents does not mean that
other responsive, relevant documents exist. Acushnet is simply looking for an excuse to
stall this case out as long as possible by raising alleged deficiencies in Bridgestone's
production.

### M.    Documents Related to the "New" Nike Golf Balls

We certainly look forward to discussing the "new" Nike golf balls with you at our meet
and confer next week. However, we believe that Acushnet needs to explain the basis for
its new allegations of infringement before we consider the request.

### N.    Missing Pages in Documents

Documents BSP088712-785 and BSP088811-25 were produced in the manner in which
they were kept. Bridgestone produced all pages of these documents that were in their
files. Document BSP109522 appears to have 18 pages, but this is simply due to a
formatting issue. When printed out, the last 2 pages are blank, and thus were not
produced. As for the remainder of its production, Bridgestone is satisfied with its
completeness.

## II.    ALLEGED DEFICIENCIES IN BRIDGESTONE'S INTERROGATORY RESPONSES

### A.    Employee Numbers for Bridgestone Employees

Bridgestone responded to your April 6, 2006 letter on this issue on April 19, 2006. (See
enclosed Letter from White to Seal re Alleged Deficiencies in Bridgestone's Discovery
Response, April 19, 2006). Bridgestone stands by its assertions in that correspondence.

### B.    Bridgestone Golf Balls Practicing the Patents-in-suit

Bridgestone contends that it has fully complied with the Court's November 2, 2005 order
in regard to Interrogatory No. 9 by incorporating the response of Interrogatory No. 12
identifying the Bridgestone golf balls and Callaway golf balls. Furthermore, the
interrogatory is limited by geography because it refers to only to U.S. patents. As to

Paul Hastings
ATTORNEYS

Alan M. Grimaldi
May 17, 2006
Page 5

the Nike golf balls, Bridgestone does not in the course of its business make a determination as to which balls, if any, are covered by any Bridgestone patents and the Court was clear that Bridgestone did not have to conduct such an analysis. As such, there is no need for Bridgestone to supplement its response to this interrogatory.

### C.    Licenses to the Patents-in-suit

Bridgestone's response to Interrogatory No. 11 is complete.

### D.    Documents Relating to Organosulfur Compounds in Golf Balls

Bridgestone's response to Interrogatory No. 25 is complete and Bridgestone stands on its objections.

### E.    Documents Relating to the Bridgestone Patents-in-suit

Bridgestone's responses to Interrogatories Nos. 29-38 is complete, and Bridgestone stands on its objections. As such, Bridgestone will not supplement its response to these interrogatories at this time.

### F.    Individuals Named on Bridgestone's Privilege Log

Each of the names listed by you in your April 18, 2006 letter identified as not being listed in Bridgestone's response to Acushnet's Interrogatory No. 39 is the result of a typographical error in the privilege log, and thus a supplementation of Interrogatory No. 39 will not be necessary.

1.    Shinodo – Should be Shindo, J.

2.    Ishikawa, Y. – Should be Ishikawa, T.

3.    Sato – Should be Sano, M.

4.    Ichinose, T. – Should be Ichinose, J.

5.    Kitama, K. – Should be Kitamura, K.

6.    Na – Should be Nanba, A.

7.    Surdiffe, N. – Should be Sutcliff, N.

Paul*Hastings*
ATTORNEYS

Alan M. Grimaldi
May 17, 2006
Page 6

### G.    Bridgestone's Response to Acushnet's Interrogatory No. 6

Bridgestone has provided a complete response to this interrogatory. Acushnet is seeking information that is neither relevant to this case nor reasonably calculated to lead to the discovery of admissible evidence with this interrogatory. Please explain the basis for believe that the date of conception, if earlier than the filing date of the Japanese applications and/or is not being relied upon by Bridgestone, is relevant. As such, Bridgestone will not supplement its response to this interrogatory at this time.

### H.    Individuals Most Knowledgeable About Testing Acushnet Products

Bridgestone will supplement its response to Interrogatory 14 to identify persons knowledgeable about testing.

### I.    Bridgestone's Response to Acushnet's Interrogatory No. 15

Bridgestone confirms it is seeking a reasonable royalty and not lost profits.

### J.    Doctrine of Equivalents and Prosecution History Estoppel

Any discussion regarding the interpretation of claim terms is premature at this point in the proceedings. Bridgestone will follow the Court's schedule in preparation for the *Markman* hearing.

### K.    Bridgestone's Response to Acushnet's Interrogatory No. 27

Bridgestone is satisfied with the completeness of its response to this interrogatory and believes it has fully complied with this request. As such, Bridgestone does not believe it needs to supplement this response to this interrogatory but we will review the documents you have identified to confirm.

PaulHastings
ATTORNEYS

Alan M. Grimaldi
May 17, 2006
Page 7

### III.   ALLEGED DEFICIENCIES IN BRIDGESTONE'S ANSWERS TO ACUSHNET'S REQUESTS FOR ADMISSIONS

Bridgestone is satisfied with the completeness of its responses to Acushnet's Requests for Admission Nos. 12-20 and stands by its objections. As such, Bridgestone will not supplement its responses to these Requests for Admission at this time.

We look forward to discussing these issues with you during the meet and confer scheduled for May 22.

Sincerely,

Robert M. Masters
of PAUL, HASTINGS, JANOFSKY & WALKER LLP

LEGAL_US_E # 70859872.3

# EXHIBIT G

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

BRIDGESTONE SPORTS CO., LTD., )
and BRIDGESTONE GOLF, INC., )
)
      Plaintiffs, )
)
      v. )      C. A. No. 05-132 (JJF)
)
ACUSHNET COMPANY, )
)
      Defendant. )
)
_____ )
ACUSHNET COMPANY, )
)
      Counterclaim Plaintiff, )
)
      v. )
)
BRIDGESTONE SPORTS CO., LTD. )
and BRIDGESTONE GOLD, INC. )
)
      Counterclaim Defendant. )

## STIPULATED REVISED RULE 16 SCHEDULING ORDER

Whereas, Bridgestone has recently produced over 95,000 pages of documents in response to the Court's January 13, 2006 Order, the majority of which are in Japanese, and additional time is required to translate and review those documents before the deadline for final contentions;

Whereas, Acushnet will be producing additional documents and information relating to its products in response to Bridgestone's Motion for Reconsideration (D.I. 84) and is required to produce damage-related documents by March 1, 2006 in response to the Court's January 13, 2006 Order, and additional time is required to review those documents before the deadline for final contentions; and

Whereas, the parties, through their respective counsel, have met and conferred and have stipulated that, due to the recent production by Bridgestone and the impending

production by Acushnet, all case deadlines should be extended as set forth below, subject to the approval of the Court:

        1.     **Discovery.**

        (a)     Acushnet's production of financial data in response to Bridgestone's January 11, 2006 letter brief shall be completed by April 3, 2006.

        (b)     Each party may supplement its responses to contention interrogatories by April 28, 2006;

        (c)     All fact discovery, including depositions, shall be completed by October 10, 2006;

        (d)     Opening expert reports under Rule 26(a)(2) that relate to issues on which a party has the burden of proof are due on November 21, 2006. Rebuttal expert reports under Rule 26(a)(2) that relate to issues on which a party does not have the burden of proof are due on December 20, 2006. Expert discovery will close on February 5, 2007.

        (e)     Any party desiring to depose an expert witness shall provide notice no later December 27, 2006, and complete said deposition no later than February 5, 2007, unless otherwise agreed in writing by the parties or ordered by the Court.

        2.     **Case Dispositive Motions.** Any case dispositive motions, pursuant to the Federal Rules of Civil Procedure, shall be served and filed with an opening brief on or before March 19, 2007. Briefing shall be pursuant to D. Del. LR 7.1.2. No case dispositive motion may be filed more than ten (10) days from the above date without leave of the Court. The Court will issue a separate Order regarding procedures for filing summary judgment motions.

        3.     **Markman.** A Markman hearing will be held on September 25, 2006. Briefing on the claim construction issues shall be completed at least ten (10)

business days prior to the hearing and according to the following schedule. The Court will set the limitation on the number of claim terms to be submitted for construction

        (a)    Parties agree on disputed claim terms by July 5, 2006.

        (b)    Parties file a joint claim construction statement by July 19, 2006. The statement shall include the construction of those claim terms on which the parties agree and each party's proposed construction for each disputed claim term, together with an identification of all the intrinsic evidence known to the party on which it intends to rely.

        (c)    Markman opening briefs due by August 21, 2006.

        (d)    Markman answering briefs due by September 11, 2006.

        4.    **Pretrial Conference and Trial.** The final Pretrial Conference will be held on May 8, 2007 at 11:00 a.m. A jury trial will be held commencing on June 18, 2007 at 9:30 a.m. in Courtroom 4B of the United States Courthouse in Wilmington, Delaware.

        5.    Each party shall elect whether it intends to rely on advice of counsel and shall produce the opinions upon which it relies and any other documents falling within the scope of the waiver by August 1, 2006.

        6.    All other deadlines remain unchanged from the June 29, 2005 Rule 16 Scheduling Order.

3

BRIDGESTONE SPORTS CO., LTD. and
BRIDGESTONE GOLF, INC.,
By its attorneys,


_/s/ Leslie A. Polizoti_
MORRIS, NICHOLS, ARSHT
& TUNNELL LLP

Jack B. Blumenfeld (#1014)
Maryellen Noreika (#3208)
Leslie A. Polizoti (#4299)
1201 N. Market Street
Wilmington, DE 19801
(302) 658-9200

_Attorneys for Bridgestone Sports Co. Ltd_
_and Bridgestone Golf, Inc._

OF COUNSEL:

Robert M. Masters
PAUL, HASTINGS, JANOFSKY &
WALKER, LLP
875 15th Street, N.W.
Washington, D.C. 20005
(202) 551-1700

ACUSHNET COMPANY
By its attorneys,


_/s/ Richard L. Horwitz_
POTTER ANDERSON & CORROON LLP

Richard L. Horwitz (#2246)
David E. Moore (#3983)
1313 N. Market Street
Wilmington, DE 19801
(302) 984-6000

_Attorneys for Acushnet Company_

OF COUNSEL:

Alan Grimaldi
Matthew J. Moore
Brian S. Seal
HOWREY LLP
1299 Pennsylvania Ave., NW
Washington, DC 20004
(202) 783-0800


SO ORDERED this _2_ day of _March_, 2006.

_Joseph J. Farnan_
Hon. Joseph J. Farnan, Jr.


721296