

**Potter Anderson & Corroon LLP**

1313 North Market Street
P.O. Box 951
Wilmington, DE 19899-0951
302 984-6000

www.potteranderson.com

Richard L. Horwitz
Partner
Attorney at Law
rhorwitz@potteranderson.com
302 984-6027 Direct Phone
302 658-1192 Fax

July 25, 2006

**VIA ELECTRONIC FILING
AND HAND DELIVERY**

The Honorable Joseph J. Farnan, Jr.
U.S. District Court
District of Delaware
J. Caleb Boggs Federal Building
844 N. King Street, Room 4124, Lockbox 27
Wilmington, DE 19801

      Re: **Bridgestone Sports Co. v. Acushnet Company
           C. A. No. 05-132 (JJF)**

Dear Judge Farnan:

      I write on behalf of Defendant and Counterclaim Plaintiff Acushnet Company ("Acushnet") in advance of the hearing scheduled for 9:30 a.m. on Thursday, July 27, 2006 and pursuant to this Court's order of July 13, 2006. (*See* D.I. 132.) The Court has pending before it a number of motions brought by Acushnet.

      The parties have met and conferred on several occasions to resolve the issues discussed herein. However, the parties have not been able to reach an agreement on the following issues.

      I.    **ACUSHNET'S PENDING RULE 37 MOTIONS**

      On June 16, 2006 Acushnet filed four motions to compel discovery from Bridgestone (D.I. 114, 115, 116, 117). On June 23, 2006, Bridgestone agreed to provide the discovery requested in one of Acushnet's motions and opposed the remaining three motions. Those motions have been fully briefed by the parties.

      A.    **Acushnet's Motions to Compel Responses to Interrogatories
           Nos. 25 and 28-37**

      Interrogatory No. 25 requests Bridgestone to identify documents within its production that relate to the use of organosulfur compounds in golf balls. Interrogatory Nos. 28-37 request that Bridgestone identify documents related to *inter alia* the development of the inventions disclosed in the patents-in-suit. As discussed in further detail in Acushnet's Motions to compel on these issues, each of these interrogatories relate to issues that are central to this litigation. (*See* D.I. 114; D.I. 115.) For example, organosulfur compounds are claimed in no less than three of the nine Bridgestone patents-in-suit. (*See* '961 patent, col. 13, l.3; '652 patent, col. 5, ll.14-18; '791 patent, col. 9, ll.26-31.) Moreover, Bridgestone has identified numerous golf balls that

practice the claims of one of the patents-in-suit that includes claims directed to specific organosulfur compounds:

| Bridgestone Patent | Article Marked | First Compliance and First Offer for Sale |
|---|---|---|
| '652 | Precept MC Spin; | on or about March 20, 1998 |
| | Precept MC Senior; | on or about September 1, 1998 |
| | Precept MC Lady; | on or about September 1, 1998 |
| | Precept Extra Spin; | on or about August 15, 2000 |
| | Precept Extra Distance; | on or about August 15, 2000 |
| | EV Classic Distance; | on or about August 15, 2000 |
| | Precept Laddie | on or about January 1, 2002 |
| | Precept U-Tri Extra Spin | on or about September 1, 2002 |
| | Precept U-Tri Extra Distance | on or about September 1, 2002 |
| | Precept Lady | on or about January 31, 2003 |
| | Precept U-Tri Tour | on or about May 20, 2003 |
| | Precept DA Force | on or about July 18, 2003 |
| | Precept DA Feel | on or about July 18, 2003 |
| | Bridgestone Golf Tour B330 | on or about December 1, 2004 |
| | Precept PWR Drive | on or about April 8, 2004 |

(Bridgestone Supp. Resp. to Acushnet Interrog. 12.) Bridgestone's position that organosulfur compounds are of minimal relevance to this litigation is contradicted by the record.

Acushnet Interrogatories Nos. 28-37 call for Bridgestone to identify documents in its production related to its development efforts for each of the patents-in-suit. Bridgestone's Oppositions to Acushnet's Motions suggest that these documents are not relevant to this litigation. Bridgestone is wrong. These documents are relevant to issues such as the applicability of doctrine of equivalents, the level of ordinary skill in the art at the time of invention, and other defenses such as failure to disclose the best mode.

On January 13, 2006, this Court ordered Bridgestone to produce documents related to the development of the technology embodied in the patents-in-suit. (Jan. 13, 2006 Hearing Tr. at 10-11 (Ex. A hereto).) In response to that Order, Bridgestone produced 95,000 pages of documents, virtually all of which are in Japanese.

As merely exemplary of this issue, Acushnet has only been able to identify two pages of documents in Bridgestone's extensive Japanese-language production that appear even remotely relevant to the development of the '791 patent.[1] This is a problem that Acushnet faces with respect to each Bridgestone's patents-in-suit. Being able to locate and review the inventor's work related to the development of the claimed invention is essential in Acushnet's preparation for the deposition of those inventors.

Bridgestone's initial document production of tens of thousands of documents further exacerbates this problem. Bridgestone's initial production had no breaks between individual documents, making it even more difficult to determine where one Japanese-language document ends and the next Japanese-language document begins. Bridgestone is the expert on its own documents and is in the best position to identify these documents. Moreover, Bridgestone has

---

[1] Bridgestone's arguments with respect to the GATT Agreement are not relevant to the '791 patent because it was filed in Japan on June 26, 2000.

repeatedly taken the position that it has produced "all" of the development documents related to these patents. (*See* D.I. 121 at 1-2.) If Bridgestone knows that it has produced all of the documents related to "conception" and "reduction to practice," then identifying them should not be as burdensome as Bridgestone now claims.

Acushnet's eleven interrogatories directly address issues in this litigation. Therefore, Acushnet requests that Bridgestone identify documents—prior to the filing date of each respective patent-in-suit—relating to the each of the patents-in-suit.[2]

Therefore, Acushnet requests that this Court order Bridgestone to provide Acushnet with responses to its interrogatories as narrowed above.

    **B.**    **Acushnet's Motion to Compel Responses from Bridgestone to Acushnet Document Request Nos. 4 and 5 and Interrogatory No. 9.**

As discussed in greater detail in Acushnet's Rule 37 Motion on this issue, Acushnet contends that each of the asserted claims is obvious—an hence invalid—under 35 U.S.C. § 103. (D.I. 116 at 2.) In determining the issue of obviousness, a patentee may present evidence of "secondary considerations," including evidence of commercial success. *See Graham v. John Deere Co.*, 383 U.S. 1, 17-18 (1974). The only secondary consideration relied on by Bridgestone is the commercial success of Acushnet's products. (D.I. 116 at Ex. C (Bridgestone's Resp. to Acushnet Interrog. 10.) Acushnet has requested discovery on numerous golf balls that, according to Bridgestone, practice the claims of the patents-in-suit. Each of these golf balls is also relevant to whether the claimed invention is the cause for the alleged commercial success or if that success was caused by some other factor, such as branding or advertising. (D.I. 116 at 2.)

Bridgestone has opposed this discovery. Quoting a case from the Northern District of Illinois, Bridgestone contends that the absence of commercial success is irrelevant to the issue of obviousness. (D.I. 118 at 2 (quoting *Edward Lowe Indus. v. Oil-Dri Corp.*, 1995 U.S. Dist. LEXIS 9347, *5 (N.D. Ill. Jul. 3, 1995).) That case is distinguishable from the present case. In concluding that the "absence of commercial success is neutral," the court in the *Edward Lowe* case noted that the patentee "disclaimed any intention to rely on commercial success to demonstrate nonobviousness." *Edward Lowe Indus.*, 1995 U.S. Dist. LEXIS 9347, *5 (Ex. B hereto); *see also Miles Lab., Inc. v. Shandon, Inc.*, 997 F.2d 878 (Fed. Cir. 1993) (concluding that <u>lack of evidence</u> of secondary considerations, including commercial success, is neutral in the issue of obviousness (emphasis added).)[3]

---

[2] Acushnet is unilaterally agreeing to narrow its requests. After Acushnet files its rule 37 Motions, Bridgestone provided Acushnet with a much-belated response to Acushnet Interrogatory No. 6. Because of this response, Acushnet no longer needs Bridgestone to identify documents related to "abandonment," "suppression," "concealment" or "diligence toward reduction to practice."

[3] If Bridgestone were to agree not to rely on evidence of commercial success, Acushnet would agree that it would not seek this discovery. However, showing that the claimed features do not contribute to commercial success is critical to Acushnet's ability to negate Bridgestone's

Bridgestone also opposes fully responding to Acushnet's interrogatory No. 9, which requests that Bridgestone identify each golf ball that practices the patents-in-suit regardless of where they are sold. Commercial success is relevant without regard to whether the sale is foreign or domestic. *Lindemann Maschinefabrik GMBH v. Am. Hoist & Derrick Co.*, 730 F.2d 1452, 1461 (Fed. Cir. 1984). Much of the alleged burden Bridgestone complains about requires Bridgestone merely to consult a three page "product specification" that it keeps for each golf ball it manufactures and determine whether or not each golf ball falls within the claims of each patent. Acushnet cannot perform this analysis itself because Bridgestone has opposed its request for such documents, as discussed above.

To address Bridgestone's concerns that Acushnet's requests are too broad, Acushnet is willing to narrow its requests for documents to (1) sales, inventory, marketing, unit cost and similar documents and (2) recipes, product specifications and material specifications for each golf ball that practices the patents-in-suit.

In light of the relevance that this evidence has at least to showing a lack of nexus between the claims and Acushnet's products, Acushnet requests that this Court grant its request for this discovery.

## II. ACUSHNET'S RENEWED MOTIONS FOR REPRESENTATIVE CLAIMS

On June 28, 2006, in light of the upcoming deadlines marking the beginning of the Markman process, Acushnet renewed its motion for representative claims. During the hearing on January 13, 2006, this Court indicated that it would require the parties to select representative claims on May 1, 2006. (Jan. 13, 2006 Hearing Tr. at 4, 12 (Ex. A).) Subsequently the schedule was pushed back for two months. Thus, the appropriate date for the selection of representative claims would have been July 1, 2006 in light of the revised case schedule.

Currently, this patent litigation involves 13 patents, with a total of 121 asserted claims (Bridgestone with 72 and Acushnet with 49). Currently, the parties dispute the meaning of over 70 claim terms from those 121 asserted claims. Both parties are in a position to select representative claims because discovery has progressed significantly. In fact—discovery closes in a little over two months. Both Bridgestone and Acushnet can adequately assess the case and its risks to determine which claims to proceed with.

Acushnet and Bridgestone are poised to expend substantial resources addressing claim limitations that, after the selection of representative claims, may not even be involved in this litigation. Under the Court's schedule Markman Opening Briefs are due on August 21, 2006. Acushnet suggests that both parties be select representative claims, with Bridgestone selecting 20 claims from the 9 remaining patents-in-suit and Acushnet selecting 8 claims from its four remaining patents-in-suit.

---

attempts to show a "nexus" between the claimed invention and the commercial success made by Bridgestone.

Therefore, Acushnet requests that this Court enter an appropriate Order requiring the selection of representative claims as outline above on or before August 1, 2006.

### III. STATUS OF PRIVILEGE ISSUES

Bridgestone has promised Acushnet a revised privilege log today in an effort to reduce the issues for the Court. Due to the anticipated size of Bridgestone's privilege log (over 160 pages), it will take Acushnet about a week until it is prepared to identify the documents it would like the Court to review *in camera*.

Acushnet requests that the Court set a date certain for the parties to identify the disputed documents to the Court and then set a date—approximately 10 business days later for the parties to submit their documents, letter briefs and any supporting declarations to the Court for *in camera* inspection.

### IV. CONCLUSION

In view of the foregoing, Acushnet requests that this Court issue an order compelling:

(1) Bridgestone to produce documents to Acushnet, as limited above, in response to Acushnet Requests for Production nos. 4 and 5 and answer Acushnet Interrogatory No. 9 by identifying each product that it makes that practices at least one claim of any of the patents-in-suit;

(2) Bridgestone to identify all documents in its production that pertain to the use of organosulfur compounds in golf balls as claimed in at least three of the Bridgestone patents-in-suit;

(3) Bridgestone to identify documents, created prior to the filing date of the respective Japanese parent applications or any other application that Bridgestone claims it is entitled to claim priority from, related to each of the patents-in-suit on a patent-by-patent basis;

(4) the identification of allegedly privileged documents for this Court's *in camera* inspection on a date certain and the submission of those documents, letter briefs and any supporting declarations necessary to assess the claim of privilege on a date that is 10 business days after the identification of the documents for *in camera* review; and

(5) the selection of 8 representative claims by Acushnet and 20 representative claims by Bridgestone on August 1, 2006.

Respectfully,

/s/ *Richard L. Horwitz*

Richard L. Horwitz

msb/742682

cc:  Jack B. Blumenfeld, Esquire (by hand delivery)
   Robert M. Masters, Esquire (by electronic mail)