# EXHIBIT A

*Bridgestone Sports Co., LTD, et al.   v.*
*Acushnet Company*

*Hearing*
*January 13, 2006*

*Hawkins Reporting Service*
*715 N King Street*
*Suite 3*
*Wilmington, DE   United States of America   19801*
*(302) 658-6697*

Original File 011306-1 TXT, 41 Pages
Min-U-Script® File ID. 1283608519

**Word Index included with this Min-U-Script®**

Page 1

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE
BRIDGESTONE SPORTS CO.,  )
LTD and BRIDGESTONE GOLF, )
INC                       )
        Plaintiffs,       )
                          ) C A No 05-132 JJF
v                         )
ACUSHNET COMPANY,         )
        Defendant.        )

Friday, January 13, 2006
3:37 p m
Courtroom 4B
844 King Street
Wilmington, Delaware

BEFORE: THE HONORABLE JOSEPH J FARNAN JR
United States District Court Judge

APPEARANCES:
    MORRIS NICHOLS, ARSHT & TUNNELL
    BY: JACK BLUMENFELD, ESQ
        -and-
    SUGHRUE MION, PLLC
    BY: ROBERT M MASTERS, ESQ
    BY: STEVEN M GRUSKIN, ESQ
    BY: RAJA M SALIBA, ESQ
        Counsel for the Plaintiffs

Page 2

APPEARANCES CONTINUED:
    POTTER, ANDERSON & CORROON, LLP
    BY: DAVID E MOORE, ESQ
        -and-
    HOWREY, LLP
    BY: MATTHEW MOORE, ESQ
    BY: BRIAN S. SEAL, ESQ
        Counsel for Defendant

Page 3

[1] THE CLERK: All rise.

[2] THE COURT: All right. Good [3] afternoon. Be seated, please.

[4] (Everyone said Good afternoon, Your [5] Honor.)

[6] THE COURT: All right. This is [7] going to be kind of like one of those, what do [8] they call them, presidential news conferences.

[9] I'm going to make a brief statement [10] and then I'll entertain a few questions, and then [11] I'm going back to the gold room or something. So [12] my plan is to give you — I've read your papers [13] and have a sense about where each side is.

[14] So I'm going to make my rulings. [15] I'm going to allow each side to take up after it [16] today one of the rulings on a motion to [17] reconsider. So if I have hurt you terribly and [18] prejudiced you unduly, you'll have the [19] opportunity to file against one of the issues.

[20] You can pick any one you don't like [21] the ruling on, and put it out there more fully to [22] me to explain why I'm such a fool. And then I'm [23] going to have you back in short order, because I [24] can just tell that you're not getting along well

Page 4

[1] enough to move the discovery forward

[2] So I'm going to probably have to get [3] you back maybe the first week of February after I [4] give you a little time, and we'll pick that date [5] today so you know when you're coming back.

[6] And let me start by these rulings on [7] some motions. Defendant's motion to bifurcate [8] liability from damages and willfulness, DI44 is [9] denied.

[10] Defendant's motion for [11] representative claims and to require detailed [12] infringement contentions, DI47 is denied with [13] leave to renew.

[14] Now, when can that be renewed? That [15] can be renewed sometime around May 1 of 2006.

[16] That's a little bit of time before [17] the July 24, 2006 Markman. So somebody in one of [18] the papers said when? That's when, around May 1.

[19] Next, plaintiff — excuse me [20] Plaintiff's motion to strike defendant's reply [21] brief, DI627. That's going to be granted

[22] And in my view, the document was, [23] you know, labeled for Rule 4087 with discussions. [24] I've classified this, and I've read where it was

Page 5

[1] obtained independently. And I read the [2] paragraph, and I went all through that.

[3] But that wasn't persuasive enough [4] for me. I'm going to call this the fruit of the [5] poisonous plant, you see, because it grew out of [6] that.

[7] You just can't have it. So you lose [8] it So that motion is granted.

[9] Now, next I'm going to turn to [10] Bridgestone's letter, and I guess the best way [11] — I'm not going to jump around. Let's just take [12] what's numbered Number 1, and then go to Page 4.

[13] And I was particularly struck by the [14] final paragraph, regardless of whether Acushnet [15] thinks the Pro 6 — what's that, Pro V1?

[16] No, Pro V1.

[17] MR. MOORE: Pro, V1 star. That's [18] supposed to be a star, but...

[19] THE COURT: Are they the ones that [20] cost $60 a box?

[21] MR. MOORE: No. They were just [22] introduced in 2002 and discontinued in 2002.

[23] And it has not — it's a completely [24] different ball than the Pro V1 or the Pro V1*.

Page 6

[1] completely different instructions, completely [2] different properties Not part of the same [3] development project, not part of the same —

[4] THE COURT: You're not allowed to [5] argue. You're not allowed to argue. I just [6] asked you how to say that ball's name.

[7] All documents relating to golf balls [8] are clearly relevant and responsive because they [9] form part of the development history of the [10] entire family of golf balls. Solely on this [11] basis, Bridgestone is entitled to complete [12] discovery

[13] On this, I think you've got [14] discovery and I'm going to deny the request. Of [15] course, if you want to take that one and do it in [16] more detail and show me how it's relevant, and I [17] really prejudiced you by that ruling, I'll take [18] it up.

[19] Number two, Bridgestone's entitled [20] to full and complete responses to its [21] damages-related discovery. Absolutely

[22] You got my ruling on bifurcation. [23] So, you know, you've got to get it done.

[24] And I was asked for a date certain.

Page 7

[1] I'll just say March 1, 2006.

[2] And if you can agree on some other [3] date, I'll be willing to accept that. But if you [4] can't, it's March 1, 2006.

[5] Number 3, Bridgestone's entitled to [6] samples of golf balls components and component [7] materials requested in Document Request 116, 117, [8] and 119.

[9] I'm told Acushnet's counsel now [10] takes the position that it will not produce the [11] samples unless the parties agree to conduct joint [12] testing or alternatively return new tested [13] samples promptly after testing is complete.

[14] According to Acushnet's counsel, I [15] went back and I read Exhibit H. Any component or [16] ball subject to such testing must be returned to [17] us within two days.

[18] But I think the letter said you need [19] it back in a week as certain properties of that [20] component may change shortly after the [21] destructive testing. Candidly, I don't get it, [22] because I guess there can be some variance [23] between golf balls.

[24] I mean, they're the same make golf

Page 8

[1] ball. And I guess one side could test it, and [2] then when it tests the same ball that was tested, [3] or have it independently tested.

[4] But I don't understand why you just [5] can't take two golf balls in my, you know, [6] uninformed way, out of a sleeve and each side [7] test it the same way. If you get different [8] results, then we've got some fun.

[9] MR. MOORE: That's exactly what we [10] want, because undoubtedly when you test the ball, [11] you expose the core. It may change because of [12] atmospheric conditions like moisture in the air

[13] So, and we just want to be able to

retest exactly what they test. And this is [15] actually part of the larger issue that we would [16] like to propose, an independent testing lab.

[17] THE COURT: Well, I'm not going to [18] go there. But I've given my explanation I [19] think that's what ought to occur.

[20] I don't understand the problem, I [21] guess, if that's not a solution

[22] Number 4, Bridgestone's entitled to [23] a complete response to its Interrogatory Number [24] 8 Bridgestone requests the Court to order — in

*Page 9*

[1] the end of the paragraph — Acushnet to identify [2] what patents, the opinions relate or patents [3] relate to, and whether the opinion is oral or [4] written

[5] And that very simple application [6] will be granted. This is the last one.

[7] Now, we're going to go to Acushnet's [8] letter. The first issue identified is [9] identification of facts regarding alleged failure [10] to mark.

[11] Again, I don't think we're at the [12] point where I would entertain any motions to [13] strike affirmative defenses, but I'll grant the [14] application as structured.

[15] The next issue is identification of [16] facts regarding objective evidence of [17] non-obviousness of the Bridgestone's patents. [18] Acushnet had not contended a Bridgestone patent [19] was invalid for obviousness, and you know, it [20] goes on to tell me all about that.

[21] And then in the next paragraph I [22] read that Bridgestone states that Acushnet's [23] interrogatory responses are deficient because [24] they do not set forth Acushnet's contention as to

*Page 10*

[1] the specific combination of prior art, and why it [2] would have been obvious to make such [3] combinations.

[4] That's Number 1. And that cites the [5] Gruskin letter.

[6] There are a number of responsive [7] facts. And then the key word when a judge reads [8] these kind of letters, however. See, that's a [9] bad thing to do, because it sets me up to go back [10] and look at the first request, the prior art [11] combinations

[12] However, which Bridgestone must [13] produce including facts supporting any claim or [14] commercial success, long-felt need, et cetera. [15] Acushnet is entitled to the production of [16] documents I agree, and the application will be [17] granted.

[18] The next issue, production of [19] development data. That's going to be granted.

[20] The production of development data [21] for Bridgestone's patents and the accused [22] Bridgestone golf balls including e-mail and [23] documents from the personal files of the named [24] inventors.

*Page 11*

[1] Now, that was ordered before. And, [2] I guess, after the 30(b)6, there's some question [3] that it wasn't — the information wasn't properly [4] polled or something.

[5] So I'm going to grant that request [6] and order it be produced in ten days. If there's [7] no production or if there's a belief that the [8] production is inadequate, I'll entertain a search [9] proposal by an independent contractor, and it can [10] include interviewing of personnel

[11] I'll entertain any idea that you [12] think will expose the failure to comply with my [13] order If there's one document after that search [14] proposal is ordered that's found, I'll entertain [15] a second application for serious sanctions

[16] So next is production of data on the [17] Titleist HP Eclipse and Tour Distance golf balls [18] That's granted and should be produced within 20 [19] days.

[20] As to the last request, detailed [21] infringement contentions, infringement in the [22] request itself, it cites the February date. So [23] I'm not going to entertain any application on [24] that, because I'm going to — I've concluded that

*Page 12*

[1] that's premature

[2] But certainly it's not an [3] unreasonable request. I guess you're just going [4] to have to wait

[5] You're getting pushed up against [6] dates, which seems to be part of your [7] interaction Okay.

[8] That resolves the two letters and [9] the motions that were filed. And I'll now [10] entertain questions.

[11] MR. MOORE: Your Honor, one question [12] about the representative claims motion that was [13] denied. You said that we could file again on [14] May 1st, or —

[15] THE COURT: Yes.

[16] MR. MOORE: — do you want the [17] briefing done by May 1st for representative [18] claims by around May 1st?

[19] THE COURT: Here's what I want you [20] to do.

[21] MR. MOORE: Okay.

[22] THE COURT: I want you — because [23] we're going to get ready for the Markman hearing.

[24] MR. MOORE: Yes.

*Page 13*

[1] THE COURT: So if the Markman [2] hearing is going to be about claim construction, [3] we ought to know what claims are in the case, the [4] representative claims So I have to know what [5] the representative claims are by May 1, so that [6] you can prepare for the July Markman.

[7] MR. MOORE: Okay. So we agree [8] representative claims will be picked by May 1?

[9] THE COURT: Yes.

[10] MR. MOORE: Okay. Thank you.

[11] THE COURT: Is that helpful?

[12] MR. MOORE: Will that is the date to [13] bring the motion, or we could bring it earlier or [14] before representative claims on that date Do [15] you have an idea of what number of claims you're [16] thinking about?

[17] THE COURT: Two.

[18] MR. MOORE: Perfect.

[19] THE COURT: But you can expand on [20] that if you want. Now, I have no idea.

[21] I've read what you said and I mean, [22] I understand there's a little different view [23] about whether the case is complex or how many [24] claims you should have in.

*Page 14*

[1] I can tell you that I've listened to [2] a couple of Federal Circuit judges who agree that [3] district judges have the authority to do that. [4] And they've talked about, like, taking hundreds [5] of claims and reducing them to, like, 15 to 20.

[6] And then they've debated. I've [7] heard them go back and forth.

[8] I think you have to make a proposal [9] and then I have to — I can order a proposal be [10] submitted. Then I can listen to each side, and [11] then I'll decide what I think will work in this [12] case.

[13] And then I think it's an abuse of [14] discretion standard. So I'm — what I'm trying [15] to tell you is I'm open.

[16] MR. MOORE: Okay Great. [17] Thank you.

[18] THE COURT: Does that help?

[19] MR. MOORE: Yes.

[20] MR. BLUMENFELD: Your Honor, we [21] had one question. On the Bridgestone letter, [22] the third item, the golf ball components, we [23] just weren't exactly clear as to what you ordered [24] Acushnet to do

*Page 15*

[1] THE COURT: Okay Let's go back to [2] the Bridgestone letter And that's — [3] we're talking about testing.

# EXHIBIT B

Case 1:05-cv-00132-JJF    Document 143-2    Filed 07/25/2006    Page 5 of 10

LEXSEE

EDWARD LOWE INDUSTRIES, INC., Plaintiff, v. OIL-DRI CORPORATION OF AMERICA and MARCAL PAPER MILLS, INC., Defendants.

No. 94 C 7568

UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

1995 U.S. Dist. LEXIS 9347

July 3, 1995, Decided
July 7, 1995, DOCKETED

**CASE SUMMARY:**

**PROCEDURAL POSTURE:** Defendants, two companies, filed a motion to compel discovery against plaintiff patent holder in the patent holder's action that claimed infringement of two patents.

**OVERVIEW:** A patent holder filed an action that claimed that two of its patents for the methods used in making agglomerated cellulosic particles using a horizontal rotating drum were being infringed by two companies. The companies filed motions to produce documents and interrogatories and the patent holder objected to the discovery and claimed that the requested information was irrelevant. The companies filed a motion to compel discovery and the court granted the motion in part and denied it in part. Information requested by the companies concerning the commercial process was found not discoverable because it would not clarify the scope of the patents' claims. Further, the commercial success of the patents was not discoverable because the patent holder had disclaimed any intention to rely on the commercial success of the patents to demonstrate the nonobviousness of the patents. The development history of a patent was discoverable because it could prove an obviousness defense, disclosure of non testifying experts was not required, and information regarding evidence that supported the patent holder's contentions was discoverable because it could meaningfully contribute to clarifying the issues.

**OUTCOME:** The court granted in part and denied in part the motion to compel discovery filed by the two companies because evidence of the development history of the commercial process described in the patents was discoverable because it would clarify the scope of the claims described in the patents. Further, answers to contention interrogatories were discoverable because it would clarify the issues of the case.

**CORE TERMS:** patent, interrogatory, discovery, obviousness, invalidity, process described, non-testifying, clarifying, patent infringement, measurements, granules, exceptional circumstances, information requested, motion to compel, patented process, reports prepared, nonobviousness, meaningfully, addressing, testifying, nonobvious, embodiment, apparatus, disclose, marking, solve, obtain discovery, subject matter, cellulosic, manufacturing

**LexisNexis(R) Headnotes**

*Civil Procedure > Discovery > Methods > General Overview*
*Civil Procedure > Discovery > Privileged Matters > General Overview*
*Civil Procedure > Discovery > Relevance*
[HN1] Fed. R. Civ. P. 26(b)(1) provides: Parties may obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action. The information sought need not be admissible at the trial if the information sought appears reasonably calculated to lead to the discovery of admissible evidence.

*Civil Procedure > Discovery > Relevance*
[HN2] Relevancy for the purposes of Rule 26 is broadly construed. Discovery is considered relevant where there is any possibility that the information sought may be relevant to the subject matter of the action.

*Patent Law > Inequitable Conduct > Effect, Materiality & Scienter > General Overview*
*Patent Law > Infringement Actions > Claim Interpretation > Aids*
*Patent Law > Infringement Actions > Claim Interpretation > Scope*
[HN3] A party may obtain discovery in patent infringement proceedings to determine exactly what the patent's claims are. In clarifying the meaning of disputed claim terms, reference is made to the patent's specifications, prosecution history, and prior art, not to the patent's commercial embodiment.

*Civil Procedure > Discovery > Relevance*
*Patent Law > Nonobviousness > Elements & Tests > Secondary Considerations*
[HN4] The commercial success of a patented process is generally relevant in determining whether the process is nonobvious. The absence of commercial success is neutral; commercial failure does not weigh in favor of obviousness.

*Patent Law > Nonobviousness > Elements & Tests > General Overview*
[HN5] Evidence of independent development of a patented device is indicative of obviousness when the circumstances of the development are shown to be similar to the state of the art when the patent was filed.

*Civil Procedure > Discovery > Disclosures > Mandatory Disclosures*
*Civil Procedure > Discovery > Methods > Expert Witness Discovery*
*Evidence > Testimony > General Overview*
[HN6] The reports of non testifying experts are not generally discoverable. Fed. R. Civ. P. 26(b)(4)(B) provides that a party is entitled to discovery of the facts or opinions known by a non testifying expert only upon a showing of exceptional circumstances under which it is impracticable for the party seeking discovery to obtain facts or opinions on the same subject by other means. In contrast, an expert whom a party intends to call as a witness must be disclosed prior to trial and may be deposed by an opposing party. Fed. R. Civ. P. 26(a)(2)(B), Fed. R. Civ. P. 26(a)(4)(A).

*Civil Procedure > Discovery > Methods > Interrogatories > General Overview*
*Civil Procedure > Discovery > Relevance*
[HN7] Considerations of judicial economy and party convenience frequently dictate that answers to contention interrogatories be delayed until the end of discovery. However, contention interrogatories may be proper even early in discovery when there is good reason to believe that answers will contribute meaningfully to clarifying issues in the case, narrowing the scope of the dispute, or setting up early settlement discussion.

**COUNSEL:** [*1]

For EDWARD LOWE INDUSTRIES, INC., plaintiff: Brian Edward Martin, John William Rotunno, Bell, Boyd & Lloyd, Chicago, IL. Barry Warren Sufrin, John T. Gabrielides, Laff, Whitesel, Conte & Saret, Chicago, IL.

For OIL-DRI CORPORATION OF AMERICA, defendant: Talivaldis Cepuritis, Kathryn Elizabeth Garipay, Arne M. Olson, Olson & Hierl, Chicago, IL. For MARCAL PAPER MILLS, INC., defendant: Craig M. White, Wildman, Harrold, Allen & Dixon, Chicago, IL. Robert S Swecker, William C Rowland, Burns, Doane, Swecker & Mathis, Alexandria, VA.

For MARCAL PAPER MILLS, INC., counter-claimant: Craig M. White, Wildman, Harrold, Allen & Dixon, Chicago, Il. Robert S Swecker, William C Rowland, Burns, Doane, Swecker & Mathis, Alexandria, VA. For OIL-DRI CORPORATION OF AMERICA, counter-claimant: Talivaldis Cepuritis, Kathryn Elizabeth Garipay, Arne M. Olson, Olson & Hierl, Chicago, IL.

For EDWARD LOWE INDUSTRIES, INC., counter-defendant: Brian Edward Martin, John William Rotunno, Bell, Boyd & Lloyd, Chicago, IL. Barry Warren Sufrin, John T. Gabrielides, Laff, Whitesel, Conte & Saret, Chicago, IL. For EDWARD LOWE INDUSTRIES, INC., counter-defendant: Brian Edward Martin, John William Rotunno, Bell, Boyd & Lloyd, Chicago, IL. Barry Warren Sufrin, John T. Gabrielides, Laff, Whitesel, Conte & Saret, Chicago, IL.

**JUDGES:** Suzanne B. Conlon, United States District Judge

**OPINIONBY:** Suzanne B. Conlon

**OPINION:**

### MEMORANDUM OPINION AND ORDER

Edward Lowe Industries, Inc. ("ELI") sues Oil-Dri Corporation of America ("Oil-Dri") and Marcal Paper Mills, Inc. ("Marcal") (collectively "defendants") for patent infringement. Marcal moves to compel ELI to produce documents and to answer interrogatories.

**BACKGROUND**

This is an action for infringement of two patents: United States Patent No. 4,560,527 ("the '527 patent"), entitled "Method of Making Agglomerated Cellulosic Particles Using a Substantially Horizontal Rotating Drum," and United States Patent No. 4,621,011 ("the '011 patent"), entitled "Agglomerated Cellulosic Particles" (collectively "the ELI patents"). Complaint, PP 4, 5. Both patents were issued to the Kimberly-Clark Corporation ("Kimberly-Clark"); Kimberly-Clark assigned its rights to ELI. Id. PP 4-5, Exs. A-B. ELI's suit asserts that defendants infringed and continue to infringe the ELI patents by manufacturing and selling cellulosic granules. Id. P 7.

## DISCUSSION

### I. ELI's Commercial Process

Marcal interrogatory no. 10 and Marcal document requests nos. 2, 5, [*2] 15-18, 21, 22, and 38-43 request information regarding the process and apparatus employed by ELI in manufacturing cellulosic particles. Marcal Ex. D. ELI objects to these discovery requests as irrelevant.

[HN1] Fed. R. Civ. P. 26(b)(1) provides, in relevant part:

> Parties may obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action . . . . The information sought need not be admissible at the trial if the information sought appears reasonably calculated to lead to the discovery of admissible evidence.

[HN2] Relevancy for the purposes of Rule 26 is broadly construed. Katz v. Batavia Marine & Sporting Supplies, Inc., 984 F.2d 422, 424 (Fed. Cir. 1993); AM International, Inc. v. Eastman Kodak Co., 100 F.R.D. 255, 257 (N.D. Ill. 1981). Discovery is considered relevant where there is any possibility that the information sought may be relevant to the subject matter of the action. In re Folding Carton Antitrust Litigation, 76 F.R.D. 420, 431 (N.D. Ill. 1977).

ELI contends that discovery regarding its commercial process is irrelevant because its process is not at issue. ELI notes that patent infringement is [*3] determined by comparing the accused product or process to the patent's claims, not to the patentee's commercial embodiment of the patented product or process. Zenith Laboratories, Inc. v. Bristol-Myers Squibb Co., 19 F.3d 1418, 1423 (Fed. Cir. 1994); Martin v. Barber, 755 F.2d 1564, 1567 (Fed. Cir. 1985).

Marcal offers several arguments in support of discovery. First, Marcal asserts that information concerning ELI's commercial process will aid in interpreting the scope of the '527 patent's claims. n1 [HN3] A party may obtain discovery in patent infringement proceedings to determine exactly what the patent's claims are. See Babcock & Wilcox Co. v. Foster Wheeler Corp., 54 F.R.D. 474, 479 (D.N.J. 1971). However, it is unclear how discovery of ELI's commercial process will illuminate the scope of the '527 patent's claims. In clarifying the meaning of disputed claim terms, reference is made to the patent's specifications, prosecution history, and prior art, not to the patent's commercial embodiment. See Minnesota Mining & Mfg. Co. v. Johnson & Johnson Orthopaedics, Inc., 976 F.2d 1559, 1576 (Fed. Cir. 1992); Jonsson v. Stanley Works, 903 F.2d 812, 819 (Fed. Cir. 1990). n2 [*4]

---

n1 In support of its contention that clarification of the '527 patent's claims is necessary, Marcal asserts that ELI has taken inconsistent positions on whether its commercial process is covered by the '527 patent. However, the only evidence of this confusion is a letter from Marcal purporting to summarize a telephone conversation with ELI. Marcal Ex. F. ELI responded by stating that Marcal's understanding of its position was incorrect. Marcal Ex. G.

n2 Marcal further contends that any difference between the ELI process and the process described in the '527 patent would be relevant to a false marking claim against ELI under 35 U.S.C. § 292. However, Marcal has not asserted a false marking claim against ELI.

---

Marcal also contends that the commercial success of ELI's process is relevant to a patent invalidity defense. [HN4] The commercial success of a patented process is generally relevant in determining whether the process is nonobvious. See, e.g., Truswal Systems Corp. v. Hydro-Air Engineering, Inc., 813 [*5] F.2d 1207, 1212 (Fed. Cir. 1987); Pentec Inc. v. Graphic Controls Corp., 776 F.2d 309, 315 (Fed. Cir. 1985). However, ELI has disclaimed any intention to rely on commercial success to demonstrate the nonobviousness of the process described in the '527 patent. Marcal Ex. G. at 2. Marcal cannot use evidence of a lack of commercial success to demonstrate that the patented process is obvious. The absence of commercial success is neutral; commercial failure does not weigh in favor of obviousness. Miles Laboratories,

Inc. v. Shandon, Inc., 997 F.2d 870, 878 (Fed. Cir. 1993), cert. denied, 127 L. Ed. 2d 232, 114 S. Ct. 943 (1994); Custom Accessories, Inc. v. Jeffrey-Allan Industries, 807 F.2d 955, 960 (Fed. Cir. 1986).

Finally, Marcal asserts that the development history of the ELI process may prove relevant to an obviousness defense. [HN5] Evidence of independent development of a patented device is indicative of obviousness when the circumstances of the development are shown to be similar to the state of the art when the patent was filed. Pratt & Whitney Canada v. United States, 17 Cl. Ct. 777, 12 U.S.P.Q.2D (BNA) 1497, 1504 (1989). The '527 patent was filed by Kimberly-Clark on [*6] April 24, 1984. Complaint, Ex. A. Evidence that ELI independently developed its commercial process on or before April 24, 1984 would therefore be relevant to a claim of obviousness. Accordingly, ELI is properly required to produce any documents addressing the development history of its commercial process prior to April 24, 1984. Marcal's motion to compel responses to Marcal interrogatory no. 10 and Marcal document requests nos. 5, 15-18, 21, 22, and 38-43 is denied in all other respects.

## II. Marcal Interrogatories 1 and 2

Marcal interrogatories nos. 1 and 2 request ELI to identify all facts upon which ELI bases its allegation that defendants infringed the ELI patents, including "the identification of all documents, all statements of employees of ELI, all statements of persons not employed by ELI, and descriptions of all apparatus or process steps used by Marcal to make Marcal's absorbent product." Marcal Ex. I. ELI responded to these interrogatories by stating, subject to claims of privilege, that its suit was based on tests and measurements performed on products made by Marcal and sold by Oil-Dri. Id. ELI's response includes a comparison of Oil-Dri's product on [*7] a claim-by-claim basis with the '011 patent. Id. ELI did not produce any documents concerning the tests and measurements it performed.

Marcal asserts that ELI's failure to produce records of the tests and measurements it performed in response to interrogatories 1 and 2 was improper. n3 Marcal's argument is without merit. Although ELI admits that it received an expert analysis of the Marcal/Oil-Dri product, ELI states that it has not yet decided whether the expert preparing the report will be called to testify at trial. [HN6] The reports of non-testifying experts are not generally discoverable; Fed. R. Civ. P. 26(b)(4)(B) provides that a party is entitled to discovery of the facts or opinions known by a non-testifying expert only "upon a showing of exceptional circumstances under which it is impracticable for the party seeking discovery to obtain facts or opinions on the same subject by other means." See Grindell v. American Motors Corp., 108 F.R.D. 94, 95 (W.D.N.Y. 1985). In contrast, an expert whom a party intends to call as a witness must be disclosed prior to trial and may be deposed by an opposing party. Fed. R. Civ. P. 26(a)(2)(B); Fed. R. Civ. P. 26(a)(4)(A).

n3 Marcal contends that any report should have been produced in response to Marcal document request no. 5, which requests "all documents and things that record, describe, illustrate, or make reference to the development or testing of granules, or processes for producing granules of the type described in the patents-in-suit."

[*8]

Marcal fails to show the exceptional circumstances requiring the disclosure of reports prepared by a non-testifying expert. Marcal notes that it is ELI's duty to identify the basis for its suit. Loctite Corp. v. Fel-Pro, Inc., 667 F.2d 577, 582 (7th Cir. 1981). However, Marcal may establish a basis for suit by relying on a testifying expert. Furthermore, ELI's response provides Marcal with a summary of the facts underlying its claims -- the response explains that tests were performed on products produced by Marcal and that the tests revealed that Marcal's products fell within the scope of the '011 patent's claims.

Marcal is entitled to the discovery of any reports prepared by experts who will testify on ELI's behalf. Fed. R. Civ. P. 26(a)(2)(B). However, until ELI determines which of its experts will be called at trial, ELI need not disclose expert reports responsive to Marcal interrogatories 1 and 2. n4

n4 The parties' proposed discovery schedule, adopted by the court, makes no provision for compliance with Fed. R. Civ. P. 26(a)(2). See Order, No. 94 C 7568 (N.D. Ill. Feb. 9, 1995). The resultant uncertainty regarding when testifying experts must be disclosed appears to have fueled Marcal's motion to compel. Accordingly, the parties are directed to fully comply with Fed. R. Civ. P. 26(a)(2) by August 15, 1995.

[*9]

## III. Marcal Interrogatories 5-7

Marcal interrogatories 5-7 seek ELI's contentions regarding (1) the need in the industry for the process and product described by the ELI patents, (2) other attempts to solve any problem addressed by the ELI patents, and (3) the commercial success of the process and products

described in the ELI patents; the interrogatories also require ELI to identify evidence supporting its contentions. Marcal Ex. I. The information requested by interrogatories 5-7 is relevant in determining whether the product and process described in the ELI patents are nonobvious. See Graham v. John Deere Co., 383 U.S. 1, 17-18, 15 L. Ed. 2d 545, 86 S. Ct. 684 (1966). ELI refuses to disclose either its contentions or any evidence in support of its contentions. Marcal Ex. I.

ELI objects to interrogatories 5-7 on grounds that the requests are premature. ELI notes that Marcal has failed to identify the factual basis of its invalidity defense. ELI Ex. A. ELI notes that evidence of "secondary considerations" including need, commercial success, and other attempts to solve the problem addressed by the patent is relevant to the obviousness inquiry only after a prima [*10] facie showing of invalidity by the party challenging the patent. See Cable Elec. Prods. v. Genmark, Inc., 770 F.2d 1015, 1022 (Fed. Cir. 1985); Stratoflex, Inc. v. Aeroquip Corp., 713 F.2d 1530, 1534 (Fed. Cir. 1983).

ELI's argument is unpersuasive. As ELI correctly notes, [HN7] considerations of judicial economy and party convenience frequently dictate that answers to contention interrogatories be delayed until the end of discovery. Nestle Foods Corp. v. Aetna Cas. & Sur. Co., 135 F.R.D. 101, 111 (D.N.J. 1990). However, contention interrogatories may be proper even early in discovery when

> there is good reason to believe that answers . . . will contribute meaningfully to clarifying issues in the case, narrowing the scope of the dispute, or setting up early settlement discussion.

Fischer & Porter Co. v. Tolson, 143 F.R.D. 93, 96 (E.D. Pa. 1992) (citing In re Convergent Technologies Securities Litigation, 108 F.R.D. 328, 339 (N.D. Cal. 1985)). The information requested by interrogatories 5-7 will contribute meaningfully to clarifying issues in this case. Answers to interrogatories 5-7 will establish the importance and scope of secondary evidence of nonobviousness, [*11] and presumably will inform Marcal's decision to pursue or abandon an invalidity claim. The court also notes that it is hardly "early" in the discovery period. Written discovery closed on April 1, 1995; fact discovery will close on August 15, 1995, and expert discovery on October 1, 1995. See Order, No. 94 C 7568 (N.D. Ill. Feb. 9, 1995). Accordingly, ELI is directed to respond to Marcal interrogatories 5-7.

**CONCLUSION**

Defendant Marcal Paper Mills' first motion to compel is granted in part. Plaintiff Edward Lowe Industries is directed to produce by July 14, 1995 any documents addressing the development history of its commercial process prior to April 24, 1984 in response to Marcal Interrogatory No. 10 and Marcal document requests nos. 2, 5, 15-18, 21, 22, and 38-43. Plaintiff Edward Lowe Industries is also directed to answer Marcal interrogatories 5-7 by July 14, 1995. The parties are directed to fully comply with Fed. R. Civ. P. 26(a)(2) by August 15, 1995.

ENTER:

Suzanne B. Conlon

United States District Judge

July 3, 1995