IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| BRIDGESTONE SPORTS CO., LTD., and BRIDGESTONE GOLF, INC., | ) ) ) | C.A. No. 05-132 (JJF) |
| Plaintiffs, | ) ) | **REDACTED VERSION** |
| v. | ) ) ) | |
| ACUSHNET COMPANY, | ) ) | |
| Defendant. | ) | |

**LETTER TO THE HONORABLE JOSEPH J. FARNAN, JR.
FROM LESLIE A. POLIZOTI RE:
DISCOVERY CONFERENCE ON JULY 27, 2006 AT 9:30 a.m.**

MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Jack B. Blumenfeld (#1014)
Maryellen Noreika (#3208)
Leslie A. Polizoti (#4299)
1201 N. Market Street
P.O. Box 1347
Wilmington, DE 19801
(302) 658-9200
lpolizoti@mnat.com
*Attorneys for Plaintiffs*

OF COUNSEL:

Robert M. Masters
John T. Callahan
Raja Saliba
PAUL HASTINGS
875 15TH Street, N.W.
Washington, DC 20005
(202) 551-1700

July 25, 2006

Original Filing Date: July 25, 2006
Redacted Filing Date: July 27, 2006

# Morris, Nichols, Arsht & Tunnell llp

1201 North Market Street
P.O. Box 1347
Wilmington, Delaware 19899-1347

302 658 9200
302 658 3989 Fax

Leslie A. Polizoti
302 351 9415
302 425 3084 Fax
lpolizoti@mnat.com

July 25, 2006

**VIA ELECTRONIC FILING**
The Honorable Joseph J. Farnan, Jr.
U.S. District Court for the District of Delaware
844 N. King Street
Wilmington, DE 19801

**REDACTED VERSION**
**FILED 07/27/2006**

Re:    *Bridgestone v. Acushnet*, C.A. No. 05-132 (JJF)

Dear Judge Farnan:

We are writing on behalf of Plaintiffs Bridgestone Sports Co., Ltd. and Bridgestone Golf, Inc. (collectively "Bridgestone") in advance of the discovery conference scheduled for July 27, 2006 at 9:30 a.m.

## 1. Acushnet's Invalidity Contentions are Improper

Acushnet's "final" invalidity contentions are improper because (a) they fail to specifically set forth each basis of invalidity for each of the Bridgestone patents-in-suit, and (b) on the last day for serving invalidity contentions, Acushnet added 243 new alleged prior art references and golf balls.[1]

Acushnet bears the burden of proving its claims of invalidity, including coming forth with the specific combinations of references, and the motivation for making such combinations, to support any claim of obviousness under Section 103. Acushnet has not done so with respect to dozens of obviousness allegations against the Bridgestone patents. If Acushnet does not know how or why its 243 new alleged prior art references are to be combined, it has no basis to assert them, and they must be withdrawn. If Acushnet has specific combinations that it believes meet the requirements of obviousness, it must immediately provide them. Under no circumstances should Bridgestone be required to guess the combinations to prepare its defense. Bridgestone requests that the Court order Acushnet to set forth its dozens of obviousness combinations with specificity, including an identification of the specific combination of references and the motivation to combine the references, and to reduce the number of references on which it is relying.

---

[1] "243" does not mean that there are 243 separate prior art references. Some references and/or golf balls are repeated for more than one patent. The breakdown is as follows: '961 patent – 49 newly asserted references; '834 patent – 54 newly asserted references; '924 - 40 newly asserted references; '791 – 38 newly asserted references; '707 patent – 23 newly asserted references; '125 patent – 10 newly asserted references; '817 patent – 11 newly asserted references; '852 patent – 4 newly asserted references; '652 patent – 9 newly asserted references; '413 patent – 5 newly asserted references. *See* Ex. 2.

Case 1:05-cv-00132-JJF   Document 148   Filed 07/27/2006   Page 3 of 8

The Honorable Joseph J. Farnan, Jr.
Page 2

As just one example, Acushnet previously stated that the '961 patent was invalid in view of three references. *See* Ex. 1 at 32. On the last day to serve contentions, Acushnet asserted that the '961 patent is invalid over various combinations of 55 references. *See* Ex. 2 at A465-70 & A587-610.[2] Acushnet identifies no specific combination of references nor any motivation to combine these 55 references.

Acushnet's "final" invalidity contentions are similarly complicated for the remaining patents. Acushnet now alleges that seven of the ten Bridgestone patents are invalid over combinations of between 12 and 55 references.

At the same time that Acushnet has inserted large amounts of new art into the litigation and created thousands of obviousness combinations, it has continued to press Bridgestone to reduce the number of claims it will assert, initially suggesting one claim per asserted patent. Ex. 3. Acushnet recently suggested that it be entitled to assert anticipation based on 3 distinct references and obviousness based on 5 separate combinations for each patent. Ex. 4. Acushnet stated that "[t]his is based on good faith response from you e.g. if you think you are going to have 30 representative claims the deal is off- that order of magnitude is too great for this compromise."[3] Ex. 4.

Bridgestone responded by suggesting that it would cut the number of asserted claims in half -- to about 40 to 45. Ex. 7. Then, if Acushnet reduced its invalidity contentions to 3 per patent, Bridgestone would reduce the total number of asserted claims to 30. Bridgestone believes that its proposal is both reasonable and fair, and would limit the prejudice to Bridgestone due to Acushnet's improper last minute invalidity contentions. Acushnet did not agree, stating that "[t]hree invalidity positions is not sufficient- we have 102, 103, 112- and we need discovery to find out if there are others and we can't be limited to three." Ex. 16. Even at this late stage (after the deadline for contentions has past), Acushnet plans to continue to add defenses.

Bridgestone requests that the Court order Acushnet to limit its invalidity contentions and to state them with specificity.

## 2. Acushnet's Document Production

Acushnet has failed to provide a source log which accurately identifies the source/author of documents it produced, failed to produce all responsive, non-privileged documents, and has made extensive improper redactions.

### A. Source Log:

Rule 34(b) requires that "a party who produces documents for inspection shall produce them as they are kept in the usual course of business or shall organize and label them to

---

[2]     For the purposes of this letter, Ex. 2 has been significantly abbreviated. Only a sampling of the voluminous "Exhibit A" has been attached for the Court's reference. The entire Exhibit A contains 1,080 pages.

[3]     Although Acushnet is asserting 49 claims from 4 patents (3 of which are related), it has not agreed to reduce the number of claims it plans to assert.

The Honorable Joseph J. Farnan, Jr.
Page 3

correspond with the categories in the request." Acushnet's production of documents is not "as they are kept in the usual course of business."

Further, the parties agreed to exchange logs identifying the source and location of documents. Bridgestone provided Acushnet a complete source log describing the physical location and custodian/keeper of documents produced by Bridgestone. Ex. 5. Acushnet, on the other hand, produced an admittedly inaccurate source log (Ex. 6), and now says it is unable to provide an accurate source log for over 98% of its document production.

Bridgestone took a 30(b)(6) deposition regarding Acushnet's document collection efforts. Troy Lester, Acushnet's in-house patent counsel, was designated for all of the topics. Mr. Lester testified that Acushnet's source log is inaccurate and fails to correctly identify the custodian or source of the documents in Acushnet's production or the location from which the document was culled. For example, Mr. Lester testified that a number of Acushnet employees provided him with documents from their own files, but that those names do not appear on Acushnet's source log. Ex. 8, at 109:9-21. He also testified that certain documents identified on Acushnet's source log as coming from his own files were not actually his files. Ex. 8 at 26:1-6. Steve Aoyama, Acushnet's database witness, testified that documents were produced from at least 22 discrete databases. Ex. 9, at 274:13-280:2. None of these databases is identified on Acushnet's source log. *See* Ex. 6.

Based on at least this testimony, Bridgestone has repeatedly requested an accurate log. Acushnet first stated that it would attempt to provide a corrected log, but was unsure whether such a log could be prepared. According to Acushnet's counsel, "individuals identified [in Acushnet's source log] not only collected their own documents, but also forwarded documents collected by other individuals who do not appear on the source log." Ex. 10 at 3.

However, on July 14, Acushnet admitted that it would be unable to prepare an accurate source log for all document production occurring before April 12, 2006 -- over 98% of Acushnet's document production.[4] Acushnet then offered to "try" and provide a source for any documents that Bridgestone identifies. However, Bridgestone needs source identification for all of Acushnet's document production.

Acushnet's collection of documents was largely unsupervised by counsel, but instead left to individuals to collect. In so doing, no one kept track of the source of these documents. This was further compounded by Acushnet's method of production, where documents to be redacted were removed from their original location and produced at a later time out of order, requiring Bridgestone to "guess" where in the original production the redacted documents are to be placed.

Bridgestone is prejudiced by Acushnet's jumbled and unorganized document production, and Acushnet's inability to identify the source of over 98% of the documents it produced. This prejudice has most recently come to light during a 30(b)(6) deposition where Acushnet's counsel objected to lines of questioning related to documents produced during the litigation on the basis of foundation. Ex. 14 at 91:7-96:4.

---

[4]    Prior to April 12, 2006, Acushnet produced approximately 86,148 pages of documents, and since April 12, 2006, Acushnet has produced approximately 1,300 pages of documents.

The Honorable Joseph J. Farnan, Jr.
Page 4

Bridgestone should not be required to notice depositions for the purpose of identifying authors or sources of Acushnet documents as a result of Acushnet's careless and unorganized document production.

Bridgestone requests the Court order Acushnet to produce an accurate and complete source log, identifying the source of all documents it has produced.

## B.    Acushnet's Document Collection and Withheld Documents:

Recent depositions have confirmed that Acushnet's document production was inadequate and that numerous relevant documents have been withheld.

Topics 1-6 of Bridgestone's March 15, 2006 30(b)(6) Notice related, in general terms, to Acushnet's document collection efforts. Mr. Lester (Acushnet's in-house IP counsel) was entirely unprepared[5] to testify on these topics. To the extent he was able to provide relevant testimony, it established that Acushnet's document collection efforts were inadequate:

- He could not state whether the files of certain key individuals were searched or whether these key individuals, including many of the inventors on Acushnet's asserted '705 patent, provided him with any documents. Ex. 8 at 34:21-35:6; 38:4-39:3 (Eric Bartsch)[6]; 36:11-13; 38:4-39:3 (Doug Jones); 52:14-53:15 (Mark Wrigley – '705 patent inventor); 53:16-54:1 (David Bulpett – '705 patent inventor).

- With the exception of one employee (Chris Cavallaro, *see* Ex. 8 at 44:2-45:3), Mr. Lester could not identify how any employees searched their files or what files they searched. Ex. 8 at 43:11-45:3. He testified that he *never* asked the individual employees who were responsible for searching their files how they conducted the searches. Ex. 8 at 89:17-90:3.

- Mr. Lester testified that employees, who were responsible for searching their own files, were never provided copies of the document requests and were not supervised by attorneys. Ex. 8 at 104:16-18.

- Mr. Lester did not follow up with individuals expected to have relevant documents if they did not provide documents to him. For example, although Mr. Lester testified that he expected that Dan Gendreau, Ed Isaac, and Hank Conaty would have documents responsive to Bridgestone's document requests (indeed, he hand-picked these individuals as recipients of a litigation hold e-mail) (Ex. 8 at 106:21-107:16), Mr. Lester could not testify whether any documents were produced by them or whether they actually searched their files. Ex. 8 at 109:22-110:18. Mr. Lester never followed up with these employees to ensure that they searched their files and produced any responsive documents.

- Mr. Lester was unaware of which members of the Pro V1, NXT and DT SoLo platform

---

[5]    Mr. Lester identified his only preparation for this deposition was a 2-hour meeting with Acushnet's outside counsel one day before the deposition.

[6]    Acushnet has recently identified Mr. Bartsch as most knowledgeable on the manufacturing of the accused Acushnet golf balls in its supplemental response to Bridgestone's Interrogatory No. 3.

The Honorable Joseph J. Farnan, Jr.
Page 5

> teams (all accused golf balls) had their files searched, and was unaware of the existence
> of any such platform teams. Ex. 8 at 37:11 to 39:6.

The shortcomings in Acushnet's document collection efforts are reinforced by Acushnet's failure
to produce recent emails, agreements with on-course and off-course retailers (see below), and by
review of the recent production from Acushnet's long-time advertising firm, Arnold Worldwide.
Arnold's production included several documents that should have been, but were not, in
Acushnet's production. These include monthly sales summaries of the golf ball industry,
including the performance of Acushnet and Bridgestone. Ex. 11. It appears that Acushnet
maintains an archive of sales information on a monthly basis going back to at least 1997. Ex. 12.
When requested by Arnold Worldwide, Acushnet was able to produce monthly sales reports
from 1997 in electronic form. However, despite relevant document requests, they never
provided such documents to Bridgestone.

Acushnet's inadequate document production efforts have been further evidenced
in recent deposition testimony, where a significant number of unproduced documents have been
identified. Examples include: testing data and results on comparisons of the accused products; e-
mail attachments; attachments to **REDACTED** all complete and final versions of
manufacturing guidelines, including revisions and versions thereof; all of the product catalogs
containing the accused golf balls; all presentations prepared and/or presented by Bill Morgan; all
documents from the **REDACTED** from every Ball Plant used to make any of the
accused products (and any components thereof), including but not limited to Pro V1 (star) and
Pro V1x; all presentation materials presented to the Board of Directors of Fortune Brands; all
documents from **REDACTED** all documents and reports generated and
stored in the **REDACTED** all **REDACTED** charts,
including but not limited to those charts containing the newer versions of the accused Acushnet
golf balls, and any other responsive documents from the all
responsive documents from the **REDACTED** all **REDACTED** agreements; all
material specification and data sheets and all of the development documents for the Pro V1,
**REDACTED**

Bridgestone requests the Court order Acushnet to produce all responsive
documents and to provide an accurate source log for all such production.

In addition to these documents, Bridgestone further identifies the following
specific categories of documents for which Bridgestone has repeatedly requested documents.
Bridgestone requests that Acushnet be ordered to produce these documents promptly.

Alleged Prior Art Golf Balls:

Acushnet has failed to produce documents related to golf balls it is asserting as
prior art to the Bridgestone patents in suit. Acushnet identified several new balls in its May 1
supplementation. These include Acushnet's own **REDACTED** [7] and the Titleist HP2
Distance golf balls, the Rextar SC 432, the Precept Extra Distance, the Maxfli XS, the Maxfli
New Breed, and the Sumitomo Tour Ltd. HT, among others. Acushnet has not produced
documents related to these golf balls, as requested by Bridgestone's Document Request Nos. 26,

---

[7]     During a recent 30(b)(6) deposition, the **REDACTED** veneer was identified as a prototype in the chain of
development of the Pro V1, which is an accused golf ball in this case.

The Honorable Joseph J. Farnan, Jr.
Page 6

38-43. Ex. 13.

Document production from electronic databases:

Acushnet acknowledged that it has not produced documents from at least the **REDACTED**
**REDACTED**               Ex. 9 at 280:3-12. Even though testimony indicated that this database
was searched on May 18 (the day before the deposition) and Acushnet's counsel indicated
documents would be forthcoming, no such documents have been produced. Id.

Acushnet has also failed to produce documents from its **REDACTED**[8]    Mr.
Aoyama stated that he was not asked to search the hob database and was unsure whether it had
been searched. Ex. 9 at 284:11-285:2. He said that Mr. Lester would be the person to identify
who, if anyone, searched that database. But Mr. Lester testified that he instructed Mr. Aoyama
to search the hob database.[9]  Ex. 8 at 65:13 to 66:14.

Acushnet's Agreements        **REDACTED**

Mr. Lester testified that Acushnet enters into agreements        **REDACTED**
            that such agreements should have been produced to Bridgestone. Ex. 8 at
128:3-19. These agreements are responsive to at least Bridgestone Document Request Nos. 82,
84 and 87. Ex. 13. However, Acushnet has not produced these documents.

Acushnet has stated that such agreements have been produced, citing 566 pages of
documents. Ex. 10 at 6 (citing AB 0083690-84255). However, 383 of the 566 pages were
redacted *in their entirety*. The remaining 183 relate to a few foreign distributors, and most are
only cover letters, where the actual agreements have been redacted.        **REDACTED**
        **REDACTED**

"S" – Value Golf Balls:

During a 30(b)(6) deposition, testimony was given regarding a number of golf
balls related to the subject matter and prosecution of three Acushnet patents-in-suit: Titleist K-2
(see Ex 9 at 208:4-9); New 1973 Golf Balls (see Ex. 9 at 196:18-197:16); and Spalding Golf
balls (see Ex. 9 at 188:16-189:3). Acushnet has offered to allow Bridgestone to "inspect" the
actual Titleist K-2 golf balls (which have not yet been made available), but has failed to produce
any documents regarding any of these golf balls, which would be responsive to at least
Document Request Nos. 48 and 66. Ex. 13.

## C.    Improper Redactions:

Acushnet has also improperly redacted numerous documents. Examples include
Exhibits 6, 8, 30, 35, and 37 marked during the recent deposition of Mr. Jeff Dalton (Ex. 15).

Bridgestone requests the Court order Acushnet to produce unredacted versions of

---

[8]     A 'REDACTED' is an important component in the manufacturing of the accused golf balls.

[9]     However, before providing this testimony, Mr. Lester testified that he was unaware of a hob database. Ex.
8 at 64:10-12.

The Honorable Joseph J. Farnan, Jr.
Page 7

all documents, with the exception of redactions made based upon privilege.

### 3. Acushnet's 30(b)(6) Witness regarding Acushnet's Document Retention

Mr. Lester was entirely unprepared to testify with respect to Topic 4 of Bridgestone's Notice (relating to Acushnet's Document Retention Policy).[10]   During his deposition, he admitted that he did not know Acushnet's policies and had not reviewed them prior to the deposition. Ex. 8 at 68:16 to 69:6.

Acushnet now refuses to provide a properly prepared witness to testify as to this topic, even though a copy of the document retention policy was faxed to the witness during the deposition, and the witness never corrected his original testimony either on or off the record. Moreover, Acushnet's counsel refused to produce Acushnet's Record Retention Policy at the deposition, asserting that it might somehow be privileged.

Bridgestone requests the Court to order Acushnet to provide a properly prepared witness for this Topic.

### 4.   Deposition Scheduling

Fact discovery closes on October 10, 2006.  Acushnet has been dilatory in providing dates for the depositions noticed by Bridgestone.

The parties have tentatively agreed that counsel will provide dates for depositions within one week of a notice of deposition. However, to ensure that depositions proceed at a reasonable pace, Bridgestone requests the Court to order all parties to provide dates for depositions within one week of the notice. Absent good cause, witnesses should be made available within two weeks of the date of the notice of deposition. Without such an order, Bridgestone's believes that its discovery efforts will continue to be delayed.

Respectfully,

/s/ Leslie A. Polizoti

Leslie A. Polizoti (#4299)

cc:     Dr. Peter T. Dalleo, Clerk (by hand)
        Richard L. Horwitz, Esquire (by hand)
        Alan M. Grimaldi, Esquire (by federal express)
        Robert M. Masters, Esquire (by federal express)

---

[10]     Bridgestone Document Request No. 97 calls for production of Acushnet's Record Retention Policy. Acushnet chose not to produce this policy until several weeks after Mr. Lester's deposition. Acushnet has still not produced the Electronic Records Retention Policy referenced on AB 0087746.