# EXHIBIT 1
# CONFIDENTIAL EXHIBIT

# EXHIBIT 2
# CONFIDENTIAL EXHIBIT

# EXHIBIT 3

## Wikberg, Terry J.

**From:** Grimaldi, Alan [GrimaldiA@howrey.com]
**Sent:** Wednesday, May 10, 2006 6:00 PM
**To:** Masters, Robert M.
**Subject:** Now that we got everything off our chests lets discuss a date/time for the meet and confer- set aside couple of hours

Also would like to discuss if you will agree to some finite number of representative claims to be identified in early June- We proposed 10 and 4 respectively- I am open to suggestions. Can you get back to me tomorrow on this as well.

Thanks
Alan

Alan M. Grimaldi
Howrey LLP
1299 Pennsylvania Avenue, N.W.
Washington, D.C. 20004
Tel: 202-383-6989
Fax: 202-383-6610
grimaldia@howrey.com

---

This email and any attachments contain information from the law firm of Howrey LLP, which may be cc
The information is intended to be for the use of the individual or entity named on this email.
If you are not the intended recipient, be aware that any disclosure, copying, distribution or use of the con
If you receive this email in error, please notify us by reply email immediately so that we can arrange for

EXHIBIT 4

## Wikberg, Terry J.

| | |
|---|---|
| **From:** | Grimaldi, Alan [GrimaldiA@howrey.com] |
| **Sent:** | Monday, June 19, 2006 6:41 PM |
| **To:** | Masters, Robert M. |
| **Cc:** | Seal, Brian; Sommer, Andrew |
| **Subject:** | Housekeeping items-Bridgestone/Acushnet |

Representative claims-we are willing to limit contentions based prior art references -- 3 102 and 5 103 -but we need to insure that you are standing on the filing dates of your patents and will not go behind them- if this is the case we can get you a list in a few days. This is based on good faith response from you e.g. if you think you are going to have 30 representative claims the deal is off- that order of magnitude is too great for this compromise.

Can we meet and confer on Thursday with respect to a joint testing protocol ( Brian Seal will do it- I am out)
On the '125, are you continuing to assert this patent, if so can you provide the two witnesses we noticed a while ago for deposition by the end of the month,. We are gong to start noticing depositions in the next week or so.

Special Master for attorney/client, work product issues- we gave you our updated list- time is ripe for appointment of a Master. I will check with local counsel but I think we should jointly submit letter or pleading to court to speed up this process. If you have any thoughts let me know. Thanks

Alan


Alan M. Grimaldi
Howrey LLP
1299 Pennsylvania Avenue, N.W.
Washington, D.C. 20004
Tel: 202-383-6989
Fax: 202-383-6610
grimaldia@howrey.com


--------------------------------------------------------------------------------------------
This email and any attachments contain information from the law firm of Howrey LLP, which may be co
The information is intended to be for the use of the individual or entity named on this email.
If you are not the intended recipient, be aware that any disclosure, copying, distribution or use of the con
If you receive this email in error, please notify us by reply email immediately so that we can arrange for

# EXHIBIT 5

**Paul Hastings**
ATTORNEYS

Paul, Hastings, Janofsky & Walker LLP
875 15th Street, N.W. • Washington, DC 20005
telephone 202 551 1700 • facsimile 202 551 1705 • www.paulhastings.com

Atlanta
Beijing
Brussels
Hong Kong
London
Los Angeles
Milan
New York
Orange County
Palo Alto
Paris
San Diego
San Francisco
Shanghai
Stamford
Tokyo
Washington, DC

202-551-1837
johngirgenti@paulhastings.com

March 10, 2006

70416.00002

VIA FACSIMILE 202-383-6610

Mr. Brian S. Seal
Howrey LLP
1299 Pennsylvania Ave., N.W.
Washington, DC 20004

Re:    Bridgestone Sports Co., Ltd. et al. v. Acushnet Co.
       Civil Action No. 05-132 (JJF)

Dear Brian:

As per your agreement with Rob Masters, I am enclosing a bates range report showing where each document produced to Acushnet thus far has come from.

If you have any further questions, please do not hesitate to contact us.

Sincerely,

John J. Girgenti
for PAUL, HASTINGS, JANOFSKY & WALKER LLP

Enclosure

**Bates Range Report**
**BSP Production**

| BEGIN BATES RANGE | END BATES RANGE | PHYSICAL LOCATION | CUSTODIAN/KEEPER |
|---|---|---|---|
| BSP000001 | BSP001968 | Omori, IP Department | Ichinose, Jun |
| BSP001969 | BSP003335 | Kojima Patent Office | Kojima, Takashi |
| BSP003250 | BSP003271 | Chichibu common (central) cabinet | Egashira, Yoshinori |
| BSP003336 | BSP003410 | Omori, IP Department | Ichinose, Jun |
| BSP003411 | BSP003438 | Kojima Patent Office | Kojima, Takashi |
| BSP003439 | BSP004007 | Chichibu common (central) cabinet | Egashira, Yoshinori |
| BSP004008 | BSP008964 | Omori, Database | Minegishi, Kazuhide |
| BSP008965 | BSP009964 | Bridgestone Golf, Inc. | Murphy, Dan |
| BSP009965 | BSP012950 | Bridgestone Golf, Inc. | Sowell, Brandon |
| BSP012951 | BSP012958 | Bridgestone Golf, Inc. | DeFoor, John |
| BSP012959 | BSP013390 | Bridgestone Golf, Inc. | Sowell, Brandon |
| BSP013391 | BSP014063 | Omori, Administrative Department | Tanaka, Shinichi |
| BSP014064 | BSP017176 | Bridgestone Golf, Inc. | Sowell, Brandon |
| BSP017177 | BSP024921 | Bridgestone Golf, Inc. | DeFoor, John |
| BSP024922 | BSP026206 | Omori, Administrative Department | Tanaka, Shinichi |
| BSP026207 | BSP029076 | Bridgestone Golf, Inc. | DeFoor, John |
| BSP029077 | BSP031990 | Bridgestone Golf, Inc. | Sowell, Brandon |
| BSP031991 | BSP034052 | Bridgestone Golf, Inc. | DeFoor, John |
| BSP034053 | BSP035050 | Chichibu, central cabinet | Miyagawa, Naoyuki |
| BSP035051 | BSP035800.381 | Chichibu, R&D | Maehara, Kazuto |
| BSP035801 | BSP036206 | Seki Manufacturing Dept | Takahashi, Kazuyuki |
| BSP036207 | BSP036214 | Omori, IP Department | Ichinose, Jun |
| BSP036215 | BSP036229 | Chichibu | Tomita, Seisuke |
| BSP036230 | BSP039747 | Bridgestone Golf, Inc. | DeFoor, John |
| BSP039748 | BSP040069 | Omori, Administrative Department | Tanaka, Shinichi |
| BSP040070 | BSP041751 | Bridgestone Golf, Inc. | Sowell, Brandon |
| BSP041752 | BSP044571 | Bridgestone Golf, Inc. | Defoor, John |
| BSP044572 | BSP045490 | Chichibu R&D and Chichibu, development dept. | Shimosaka, Hirotaka |
| BSP045491 | BSP045507 | Chichibu R&D | Shimosaka, Hirotaka |
| BSP045508 | BSP045544 | Chichibu R&D and Chichibu, development dept. | Shimosaka, Hirotaka |
| BSP045545 | BSP045595 | Chichibu R&D | Shimosaka, Hirotaka |
| BSP045596 | BSP045677 | Chichibu manufacturing department | Kakiuchi, Shinichi |
| BSP045793 | BSP045793 | Chichibu, development dept. | Takesue, Rinya |
| BSP045837 | BSP046240 | Chichibu manufacturing department | Kakiuchi, Shinichi |
| BSP046241 | BSP049033 | Bridgestone Golf, Inc. | DeFoor, John |
| BSP049034 | BSP049164 | Bridgestone Golf, Inc. | Murphy, Dan |
| BSP049165 | BSP050202 | Omori, Administrative Department | Tanaka, Shinichi |
| BSP050203 | BSP050298 | Omori, Manufacturing management division | Yokoyama, Tohru |
| BSP050299 | BSP050312 | Bridgestone Golf, Inc. | Tayama, Shunsuke |
| BSP050313 | BSP050345 | Omori, Golf ball sales & planning division | Matsumoto, Masakazu |
| BSP050346 | BSP050433 | Omori, Golf ball sales & planning division | Moteki, Yasuhiko |
| BSP050434 | BSP050483 | Omori, IP Department | Ichinose, Jun |
| BSP050484 | BSP050489 | Chichibu | Egashira, Yoshinori |
| BSP050490 | BSP050495 | Sughrue Prosecution Files | Rosenberg, Jody |
| BSP050496 | BSP050536 | Omori, Administrative Department | Watanabe, Toshitaka |
| BSP050537 | BSP050553 | Bridgestone Golf, Inc. | Murphy, Dan |
| BSP050554 | BSP052160 | Seki manufacturing dept | Takahashi, Kazuyuki |
| BSP052161 | BSP052833 | Omori, Administrative Department | Tanaka, Shinichi |
| BSP052834 | BSP054675 | Sughrue Prosecution Files | Rosenberg, Jody |
| BSP054676 | BSP058351 | Bridgestone Golf, Inc. | DeFoor, John |
| BSP058358 | BSP058792 | Omori, IP Department and Marketing Division | Ichinose, Jun & Takaoka, Tetsuya |
| BSP058793 | BSP058908 | Omori, IP Department | Ichinose, Jun |
| BSP058983 | BSP059030 | Chichibu | Tomita, Seisuke |
| BSP059031 | BSP059062 | Chichibu Manufacturing Department | Kakiuchi, Shinichi |
| BSP059063 | BSP059549 | Chichibu R&D | Maehara, Kazuto |

**Bates Range Report**
**BSP Production**

| BEGIN BATES RANGE | END BATES RANGE | PHYSICAL LOCATION | CUSTODIAN/KEEPER |
|---|---|---|---|
| BSP059550 | BSP059785 | Chichibu R&D and Chichibu, development dept. | Shimosaka, Hirotaka |
| BSP059786 | BSP059902 | Chichibu, development dept. | Maehara, Kazuto |
| BSP059903 | BSP059954 | Chichibu R&D | Shimosaka, Hirotaka |
| BSP059955 | BSP060068 | Chichibu, development dept. | Higuchi, Hiroshi and Watanabe, Hideo |
| BSP060069 | BSP060092 | Chichibu | Shindo, Jun |
| BSP060093 | BSP063212 | Bridgestone Golf, Inc. | Defoor, John |
| BSP063213 | BSP066198 | Bridgestone Golf, Inc. | Sowell, Brandon |
| BSP066199 | BSP066910 | Omori, Administrative Department | Tanaka, Shinichi |
| BSP066911 | BSP078319 | Bridgestone Golf, Inc. | DeFoor, John |
| BSP078320 | BSP079412 | Bridgestone Golf, Inc. | Sowell, Brandon |
| BSP079413 | BSP081124 | Bridgestone Golf, Inc. | DeFoor, John |
| BSP081125 | BSP082032 | Bridgestone Golf, Inc. | Moxie, Mike; Ohno, Takahisa and Satomi, Takato |
| BSP082033 | BSP083173 | Chichibu, central cabinet | Miyagawa, Naoyuki |
| BSP083174 | BSP084572 | Seki manufacturing dept | Takahashi, Kazuyuki |
| BSP084573 | BSP084592 | Omori, Administrative Department | Tanaka, Shinichi |
| BSP084593 | BSP084926 | Bridgestone Golf, Inc. | Murphy, Dan |
| BSP084927 | BSP085218 | Omori, IP Department | Ichinose, Jun |
| BSP085219 | BSP085609 | Seki manufacturing dept | Takahashi, Kazuyuki |
| BSP085610 | BSP085735 | Chichibu common (central) cabinet | Egashira, Yoshinori |
| BSP085736 | BSP085939 | Seki manufacturing dept | Takahashi, Kazuyuki |
| BSP085940 | BSP087985 | Omori, IP Department | Ichinose, Jun |
| BSP087986 | BSP088007 | Omori, Golf ball sales & planninng department | Moteki, Yasuhiko |
| BSP088009 | BSP088106 | Chichibu, central cabinet | Egashira, Yoshinori |
| BSP088107 | BSP088842 | Omori, Administrative Department | Tanaka, Shinichi |
| BSP088887 | BSP088893 | Omori, IP Department | Ichinose, Jun |
| BSP088894 | BSP088916 | Omori, Administrative Department | Tanaka, Shinichi |
| BSP088917 | BSP088930.2 | Omori, IP Department | Kodama, Mihoko |
| BSP088931 | BSP089005 | Omori, Administrative Department | Watanabe, Toshitaka |
| BSP089006 | BSP089012 | Omori, Public relations department | Shimazaki, Hirato |
| BSP089013 | BSP089290 | Omori, IP Department | Ichinose, Jun |
| BSP089291 | BSP089584 | Chichibu R&D | Shimosaka, Hirotaka |
| BSP089585 | BSP089962 | Chichibu R&D and Chichibu, development dept. | Shimosaka, Hirotaka |
| BSP089963 | BSP091746 | Chichibu common (central) cabinet | Egashira, Yoshinori |
| BSP091747 | BSP091769 | Omori, Administrative Department | Tanka, Shinichi |
| BSP091770 | BSP091776 | Omori, IP Department | Ichinose, Jun |
| BSP091777 | BSP091917 | Chichibu | Shimosaka, Hirotaka |
| BSP091918 | BSP093244 | Bridgestone Golf, Inc. | DeFoor, John |
| BSP093245 | BSP094342 | Bridgestone Golf, Inc. | Sowell, Brandon |
| BSP094343 | BSP094583 | Bridgestone Golf, Inc. | DeFoor, John |
| BSP094584 | BSP094600 | Omori, Golf ball sales & planninng department | Moteki, Yasuhiko |
| BSP094601 | BSP098279 | Sughrue Mion Files | Rosenberg, Jody |
| BSP099230 | BSP099839 | Sughrue Mion Files | Rosenberg, Jody |
| BSP099840 | BSP099923 | Omori, IP Department | Kojima, Minoru |
| BSP099924 | BSP100133 | Omori, Golf ball sales and planning department | Moteki, Yasuhiko |
| BSP100134 | BSP100648 | Omori | Matsumoto, Masakazu |
| BSP100649 | BSP100945 | Chichibu | Sasaki, Hiroto |
| BSP100946 | BSP101034 | Chichibu | Kasashima, Atsuki |
| BSP101035 | BSP101046 | Chichibu | Egashira, Yoshinori |
| BSP101047 | BSP101227 | Chichibu | Tomita, Seisuke |
| BSP101228 | BSP101388 | Chichibu | Watanabe, Hideo |
| BSP101389 | BSP106793 | Chichibu | Shimosaka, Hirotaka |
| BSP106794 | BSP106828 | Chichibu | Takesue, Rinya |
| BSP106829 | BSP106890 | Chichibu | Nagasawa, Hiroyuki |
| BSP106891 | BSP106938 | Chichibu | Kasashima, Atsuki |

**Bates Range Report**
**BSP Production**

| BEGIN BATES RANGE | END BATES RANGE | PHYSICAL LOCATION | CUSTODIAN/KEEPER |
|---|---|---|---|
| BSP106939 | BSP106983 | Chichibu | Takesue, Rinya |
| BSP106984 | BSP107361 | Chichibu | Umezawa, Jyunji |
| BSP107362 | BSP112471 | Chichibu | Nanba, Atsushi |
| BSP112472 | BSP131259 | Chichibu, R&D | Maehara, Kazuto |
| BSP131260 | BSP141083 | Chichibu, R&D | Kasashima, Atsuki |
| BSP141084 | BSP143181 | Chichibu | Higuchi, Hiroshi |
| BSP143182 | BSP145268 | Chichibu | Kasashima, Atsuki |
| BSP145269 | BSP145524 | Chichibu | Higuchi, Hiroshi |
| BSP145524 | BSP145551 | Chichibu | Kasashima, Atsuki |
| BSP145552 | BSP145564 | Chichibu | Nanba, Atsushi |
| BSP145564 | BSP145772 | Chichibu | Shimosaka, Hirotaka |
| BSP145772 | BSP145793 | Chichibu | Takesue, Rinya |
| BSP145793 | BSP145942 | Chichibu | Umezawa, Jyunji |
| BSP145942 | BSP146117 | Chichibu | Higuchi, Hiroshi |
| BSP146118 | BSP146241 | Chichibu | Kasashima, Atsuki |
| BSP146242 | BSP147908 | Chichibu | Shimosaka, Hirotaka |
| BSP147909 | BSP147978 | Chichibu | Shindo, Jun |
| BSP147979 | BSP148143 | Chichibu | Takesue, Rinya |
| BSP148144 | BSP148508 | Chichibu | Umezawa, Jyunji |
| BSP148509 | BSP148823 | Chichibu | Watanabe, Hideo |
| BSP148824 | BSP148878 | Chichibu | Higuchi, Hiroshi |
| BSP148879 | BSP150425 | Chichibu | Kasashima, Atsuki |
| BSP150426 | BSP150470 | Chichibu | Kimura, Akira |
| BSP150471 | BSP154183 | Chichibu | Sato, Katsunori |
| BSP154184 | BSP154927 | Chichibu | Shimosaka, Hirotaka |
| BSP154928 | BSP154939 | Chichibu | Shindo, Jun |
| BSP154940 | BSP154943 | Chichibu | Takesue, Rinya |
| BSP154944 | BSP155217 | Chichibu | Umezawa, Jyunji |
| BSP155218 | BSP156869 | Chichibu | Higuchi, Hiroshi |
| BSP156870 | BSP157462 | Chichibu | Kasashima, Atsuki |
| BSP157463 | BSP157496 | Chichibu | Nanba, Atsushi |
| BSP157497 | BSP158742 | Chichibu | Shimosaka, Hirotaka |
| BSP158743 | BSP159764 | Chichibu | Umezawa, Jyunji |
| BSP159765 | BSP160211 | Chichibu | Higuchi, Hiroshi |
| BSP160212 | BSP160674 | Chichibu | Kasashima, Atsuki |
| BSP160675 | BSP160752 | Chichibu | Sato, Katsunori |
| BSP160753 | BSP166492 | Chichibu | Shimosaka, Hirotaka |
| BSP166493 | BSP166981 | Chichibu | Shindo, Jun |
| BSP166982 | BSP167277 | Chichibu | Takesue, Rinya |
| BSP167278 | BSP169341 | Chichibu | Umezawa, Jyunji |
| BSP169342 | BSP169933 | Chichibu | Watanabe, Hideo |
| BSP169934 | BSP170144 | Chichibu | Higuchi, Hiroshi |
| BSP170145 | BSP170695 | Chichibu | Kasashima, Atsuki |
| BSP170696 | BSP170806 | Chichibu | Kimura, Akira |
| BSP170807 | BSP171030 | Chichibu | Sato, Katsunori |
| BSP171031 | BSP175973 | Chichibu | Shimosaka, Hirotaka |
| BSP175974 | BSP176467 | Chichibu | Shindo, Jun |
| BSP176468 | BSP177749 | Chichibu | Umezawa, Jyunji |
| BSP177750 | BSP194661 | Chichibu | Maehara, Kazuto |
| BSP194662 | BSP197146 | Chichibu | Hayashi, Junji |
| BSP197147 | BSP201792 | Documents Removed from Privilege Log | |

```
************************
***   TX REPORT   ***
************************


TRANSMISSION OK

TX/RX NO              2376
RECIPIENT ADDRESS     ##163805#p3836610#
DESTINATION ID
ST. TIME              03/10 15:17
TIME USE              03'08
PAGES SENT            5
RESULT               OK
```



# Paul Hastings
ATTORNEYS

Paul, Hastings, Janofsky & Walker LLP
875 15th Street, N.W. • Washington, DC 20005
telephone 202 551 1700 • facsimile 202 551 1705 • www.paulhastings.com

## FACSIMILE TRANSMISSION

| to: | company/office: | facsimile: | telephone: |
|-----|-----------------|------------|------------|
| Mr. Brian S. Seal | Howrey LLP | 202-383-6610 | 202-783-0800 |

| from: | facsimile: | telephone: | initials: |
|-------|------------|------------|-----------|
| John J. Girgenti | 202-551-0237 | 202-551-1837 | JJG3 |

| client name: | Bridgestone Sports., Ltd. et al. v. Acushnet Co. | client matter number: | 70416-00002 |
|--------------|---------------------------------------------------|------------------------|-------------|
| date: | March 10, 2006 | pages (with cover): | 5 |

comments:



Paul, Hastings, Janofsky & Walker LLP
875 15th Street, N.W. • Washington, DC 20005
telephone 202 551 1700 • facsimile 202 551 1705 • www.paulhastings.com

## FACSIMILE TRANSMISSION

| to: | company/office: | facsimile: | telephone: |
|---|---|---|---|
| Mr. Brian S. Seal | Howrey LLP | 202-383-6610 | 202-783-0800 |

| from: | facsimile: | telephone: | initials: |
|---|---|---|---|
| John J. Girgenti | 202-551-0237 | 202-551-1837 | JJG3 |

| client name: | Bridgestone Sports., Ltd. et al. v. Acushnet Co. | client matter number: | 70416-00002 |
|---|---|---|---|
| date: | March 10, 2006 | pages (with cover): | 5 |

comments:

**If you do not receive all pages, please call immediately Facsimile Center: (202) 551-1275**

*This message is intended only for the use of the individual or entity to which it is addressed, and may contain information that is privileged, confidential and exempt from disclosure under applicable law. If the reader of this message is not the intended recipient, or the employee or agent responsible for delivering the message to the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited. If you have received this communication in error, please notify us immediately by telephone, and return the original message to us at the above address via the U.S. Postal Service. Thank you.*

# EXHIBIT 6

# HOWREY LLP

1299 PENNSYLVANIA AVENUE, N.W.
WASHINGTON, DC 20004-2402
PHONE: 202.783.0800 ● FAX: 202.383.6610

## FACSIMILE COVER SHEET

**DATE:** March 10, 2006

**TO:**

| | |
|---|---|
| *NAME:* | Rob Masters |
| *COMPANY:* | Paul Hastings |
| *FAX NUMBER* | 202-551-1705 |
| *CITY:* | |

*PHONE NUMBER:* 202-551-1763

**FROM:**

| | |
|---|---|
| *NAME:* | Monica Biswas |
| *DIRECT DIAL NUMBER:* | 202-383-6817 |

*USER ID:*

*NUMBER OF PAGES, INCLUDING COVER:* 9

*CHARGE NUMBER:* 00634.0002

☐ *ORIGINAL WILL FOLLOW VIA:*

   ☐ *REGULAR MAIL*    ☐ *OVERNIGHT DELIVERY*    ☐ *HAND DELIVERY*    ☐ *OTHER:*

☒ *ORIGINAL WILL NOT FOLLOW*

*SUPPLEMENTAL MESSAGE:*

Pursuant to your agreement with Brian Seal, I have enclosed a chart identifying the source for each document produced by Acushnet. Thank you.

*THE INFORMATION CONTAINED IN THIS TRANSMISSION IS PRIVILEGED AND CONFIDENTIAL. IT IS INTENDED ONLY FOR THE USE OF THE INDIVIDUAL OR ENTITY NAMED ABOVE. IF THE READER OF THIS MESSAGE IS NOT THE INTENDED RECIPIENT, YOU ARE HEREBY NOTIFIED THAT ANY DISSEMINATION, DISTRIBUTION OR COPYING OF THIS COMMUNICATION IS STRICTLY PROHIBITED. IF YOU HAVE RECEIVED THIS COMMUNICATION IN ERROR, PLEASE NOTIFY US IMMEDIATELY BY TELEPHONE AND RETURN THE ORIGINAL MESSAGE TO US AT THE ABOVE ADDRESS VIA THE U.S. POSTAL SERVICE. THANK YOU.*

*IF THERE ARE ANY QUESTIONS OR PROBLEMS WITH THE TRANSMISSION OF THIS FACSIMILE, PLEASE CALL 202.383.7137.*

ACUSHNET DOCUMENT REVIEW CONTROL LOG

| BOX NUMBER | DESCRIPTION | BATES RANGES |
|---|---|---|
| 1 | Troy Lester Files (Binders) | Privileged |
| 2 | | AB 0000001-0000874 |
| 3 | Kevin Harris/Marketing/Herb Boehm Files | AB 0051476-0051527 |
| 4 | Troy Lester Files/Opinions of Counsel Letters | Privileged |
| | | AB 0000875-0002281 |
| 5 | Steve Aoyama/Larry Bissonnette Files | AB 0051151-0051189 |
| | | AB 0051413-0051475 |
| 6 | Troy Lester Files (Legal) | AB 0002282-0004458 |
| | | AB 0004459-0004840 |
| | | AB 0048826-0050756 |
| | | AB 0050764-0051150 |
| 7 | Jeff Dalton Files | AB 0051393-0051393 |
| | Finance Department Files | AB 0048224-0048825 |
| 8 | Quality Control Files (Box 1) | AB 0004841-0005456 |
| 9 | Quality Control Files (Box 2) | AB 0005457-0007201 |
| 10 | Quality Control Files (Box 3) | AB 0007207-0011056 |
| | | AB 0052322-0053190 |
| 11 | Paul Puniello Files | AB 0011057-0013144 |
| | | AB 0013145-0016036 |
| | | AB 0050757-0050763 |
| 12 | Changes Notices & Formula Changes | AB 0016037-0016779 |
| 13 | R&D Materials | AB 0016780-0017999 |
| 14 | Troy Lester & Bill Morgan Materials | AB 0051394-0051412 |
| 15 | Patent Prosecution Files (w/foreign) | AB 0018000-0020204 |
| 16 | Patent Prosecution Files (w/foreign) | AB 0020205-0022936 |
| 17 | Quality Testing Manual CD1 (Box1) | AB 0022937-0023118 |
| 18 | Supplier COA's Color Concent. Supplier COA's Core Compone. Supplier COA's Paint 4A CD 2 (Box 1) | AB 0023119-0023888 |
| 19 | Supplier COA's Color Concent. Supplier COA's Core Compone. Supplier COA's Paint 4A CD 2 (Box 2) | AB 0023889-0026257 |

Page 1 of 3

**ACUSHNET DOCUMENT REVIEW CONTROL LOG**

| 20 | Supplier COA's Thermoplastics Supplier COA's | AB 0026258-0027523 |
|---|---|---|
| 20 | Urethane Com. 4B CD 3 (Box 1) | AB 0027524-0029405 |
| 21 | PMS Queries ( Purchased Material Specifications) CD 4 (Box 1) | AB 0055899-0057733 |
| 22 | Test Procedures CD 5 (Box 1) | AB 0029406-0029536 |
| 23 | Materials Test Data 2 CD 6 (Box 1) | AB 0029537-0030330 |
| 24 | BP III Golf Ball Core Recipes Pro VI Pro VIX CD 7 (Box 1) | AB 0030331-0030443 |
| 25 | 5 CD 8 (box 1) | AB 0030444-0030725 AB 0051351-0051392 |
| 26 | Patent Prosecution Files | AB 0307726-0032548 |
| 27 | Patent Prosecution Files | AB 0032549-0034380 |
| 28 | Patents in Suit | AB 0034381-0034582 |
| 29 | Chris Cavallaro R&D Development Docs. | AB 0034583-0035634 AB 0046866-0047076 |
| 30 | Bill Morgan - VP R&D George Sine - VP Marketing Michael Jordan R&D Development Michael Jordan R&D Development Docs. | AB 0035635-0037027 AB 0047077-0047239 AB 0047653-0047775 AB 0051528-0052263 AB 0048116-0048223 AB 0037028-0038811 |
| 31 | Chris Cavallaro R&D Development Docs. | AB 0046521-0046701 |
| 32 | CDs (from box 30) Sine Powerpoint Docs. | AB 0038812-0039294 |
| 33 | CDs (from box 30) 8.21.05 | AB 0046702-0046865 AB 0039295-0039364 |
| 34 | CDs (from box 30) Word & Excel Docs. 8.21.05 | AB 0047567-0047652 AB 0039365-0039374 |
| 35 | CDs (from box 30) Binder Sections 8.24.03 | AB 0047240-0047566 AB 0039375-0039382 |
| 36 | Bridgestone Package | AB 0039383-0040694 |
| 37 | Cited References (Prior Art) | AB 0040695-0043266 |
| 38 | Prosecution History Files (foreign) | AB 0043267-0044265 |
| 39 | Prosecution History Files | AB 0044266-0044738 |
| 40 | Documents Received from Troy Pre - Litigation | AB 0046167-0046298 |
| 41 | R&D Files (Voorheis & Shenshen) | AB 0044739-0045387 AB 0051190-0051350 |

Page 2 of 3

**ACUSHNET DOCUMENT REVIEW CONTROL LOG**

| | | CD Peter Voorheiss files (Box 41) | AB 0045388 -0045970 |
|---|---|---|---|
| 42 | | | AB 0046299-0046302 |
| 43 | | CD Shenshen Wu Files (Box 41) | AB 0045971-0046095 |
| 44 | | Photos | AB 0046096-0046166 |
| 45 - 46 | | Electronic files from Marketing (Emails) | Not used |
| 47 | | Documents Received from Troy | AB 0065676 - 0068659 |
| 48-55 | | Electronic files from Marketing (Emails) | AB 0056201- 0061362 |
| | | | AB 0069547 - 0080140 |
| 56-57 | | Prior Art Searches | AB 0061363 - 0065675 |
| | | | AB 0068660 - 0069546 |
| 58 | | ITR Calibration Data CD ITR Notebook player | AB 0052321 - 0053401 |
| 59 | | test data DCTP In Plant Data CD(Manual) | AB 0053412-0056200 |
|  |  |  | AB 0054412-0056200 |

Page 3 of 3

PAGE 4/9 * RCVD AT 3/10/2006 5:47:30 PM [Eastern Standard Time] * SVR:WDCRF1/2 * DNIS:9998 * CSID: * DURATION (mm-ss):02:48

## BATES RANGES            SOURCE

| BATES RANGES | SOURCE |
|---|---|
| AB 0000001-0000153 | Kevin Harris |
| AB 0000154-0000231 | George Sine |
| AB 0000232-0000686 | Herb Boehm |
| AB 0000687-0000709 | George Sine |
| AB 0000710-0000737 | Herb Boehm |
| AB 0000738-0000771 | George Sine |
| AB 0000772-0000874 | Herb Boehm |
| AB 0000875-0001691 | Steve Aoyama |
| AB 0001692-0002055 | Larry Bissonnette |
| AB 0002056 | Troy Lester |
| AB 0002057-0002281 | Larry Bissonnette |
| AB 0002282-0004458 | Troy Lester |
| AB 0004459-0004840 | Jeff Dalton |
| AB 0004841-0011056 | Quality Control |
| AB 0011057-0013144 | Paul Puniello |
| AB 0013145-0016036 | Pat Elliott |
| AB 0016037-0016806 | Peter Voorheis |
| AB 0016780-0017999 | Bill Morgan |
| AB 0018000-0022936 | Howrey |
| AB 0022937-0030330 | Quality Control |
| AB 0030331-0030725 | Ball Plant III |
| AB 0030726-0034582 | Howrey |
| AB 0034583-0035634 | Chris Cavallaro |
| AB 0035635-0035658 | Bill Morgan |
| AB 0035659-0036537 | Michael Jordan |
| AB 0036538-0036807 | Bill Morgan |
| AB 0036808-0037027 | Mike Jordan |
| AB 0037028-0038811 | Chris Cavallaro |
| AB 0038812-0039374 | George Sine |
| AB 0039375-0039382 | Troy Lester |
| AB 0039383-0044265 | Howrey |
| AB 0044266-0044738 | Troy Lester |
| AB 0044739-0045302 | Derek Ladd |
| AB 0045303-0045343 | Murali Rajagopalan |
| AB 0045344-0043587 | Chris Cavallaro |
| AB 0045388-0045970 | Peter Voorheis |
| AB 0045971-0046095 | Shenshen Wu |
| AB 0046096-0046298 | Troy Lester |
| AB 0046299-0046302 | Peter Voorheis |
| AB 0046303-0046520 | Howrey |
| AB 0046521-0046701 | Chris Cavallaro |
| AB 0046702-0046865 | George Sine |
| AB 0046866-0047076 | Chris Cavallaro |
| AB 0047077-0048116 | George Sine |
| AB 0048116-0048223 | Michael Jordan |

| AB 0048224-0048825 | Finance Department |
| AB 0048826-0050756 | Jeff Dalton |
| AB 0050757-0050763 | Paul Puniello |
| AB 0050764-0051150 | Jeff Dalton |
| AB 0051151-0051189 | Larry Bissonnette |
| AB 0051190-0051392 | Peter Voorheis |
| AB 0051393-0051393 | Jeff Dalton |
| AB 0051394-0051412 | Bill Morgan |
| AB 0051413-0051418 | Steve Aoyama |
| AB 0051419-0051475 | Bill Morgan |
| AB 0051476-0051521 | George Sine |
| AB 0051522-0051526 | Bill Morgan |
| AB 0051527 | Herb Boehm |
| AB 0051528-0051981 | George Sine |
| AB 0051982-0052059 | Bill Morgan |
| AB 0052060-0052100 | George Sine |
| AB 0052101-0052197 | Bill Morgan |
| AB 0052198-0052260 | Michael Jordan |
| AB 0052261-0052288 | Bill Morgan |
| AB 0052289-0052310 | Herb Boehm |
| AB 0052311-0052319 | Bill Morgan |
| AB 0052320-0052376 | George Sine |
| AB 0052377-0052380 | Steve Aoyama |
| AB 0052381-0052389 | George Sine |
| AB 0052390-0053411 | Troy Lester |
| AB 0053412-0056200 | Quality Control |
| AB 0056201-0056363 | Bill Morgan |
| AB 0056364-0061362 | Marketing Department |
| AB 0061363-0065675 | Howrey |
| AB 0065676-0068659 | Troy Lester |
| AB 0068660-0069546 | Howrey |
| AB 0069547-0080140 | Marketing Department |
| AB 0080141-0080228 | Howrey |
| AB 0080229-0080358 | Bill Morgan |
| AB 0080359-0080402 | Finance Department |
| AB 0080403-0080415 | Troy Lester |
| AB 0080416-0080436 | Troy Lester |
| AB 0080437-0080756 | Ed Hebert |
| AB 0080757-0081064 | Peter Voorheis |
| AB 0081065-0081103 | Cezar Bettencourt |
| AB 0081104-0081111 | Ed Hebert |
| AB 0081112-0081441 | Richard Fletcher |
| AB 0081442-0081603 | Brian Fletcher |
| AB 0081604-0081631 | Cezar Bettencourt |
| AB 0081632-0081710 | Brian Fletcher |
| AB 0081711-0081745 | Peter Voorheis |
| AB 0081746-0081773 | Brian Fletcher |
| AB 0081774-0082101 | Peter Voorheis |

## PHYSICAL
## LOCATION

Acushnet Co.
Acushnet Co.
Acushnet Co.
Acushnet Co.
Acushnet Co.
Acushnet Co.
Acushnet Co.
Acushnet Co.
Acushnet Co.
Acushnet Co.
Acushnet Co.
Acushnet Co.
Acushnet Co.
Acushnet Co.
Acushnet Co.
Acushnet Co.
Acushnet Co.
Howrey LLP
Acushnet Co.
Acushnet Co.
Howrey LLP
Acushnet Co.
Acushnet Co.
Acushnet Co.
Acushnet Co.
Acushnet Co.
Acushnet Co.
Acushnet Co.
Howrey LLP
Acushnet Co.
Acushnet Co.
Acushnet Co.
Acushnet Co.
Acushnet Co.
Acushnet Co.
Acushnet Co.
Acushnet Co.
Howrey LLP
Acushnet Co.
Acushnet Co.
Acushnet Co.
Acushnet Co.
Acushnet Co.

Acushnet Co.
Acushnet Co.
Acushnet Co.
Acushnet Co.
Acushnet Co.
Acushnet Co.
Acushnet Co.
Acushnet Co.
Acushnet Co.
Acushnet Co.
Acushnet Co.
Acushnet Co.
Acushnet Co.
Acushnet Co.
Acushnet Co.
Acushnet Co.
Acushnet Co.
Acushnet Co.
Acushnet Co.
Acushnet Co.
Acushnet Co.
Acushnet Co.
Acushnet Co.
Acushnet Co.
Acushnet Co.
Acushnet Co.
Acushnet Co.
Acushnet Co.
Howrey LLP
Acushnet Co.
Howrey LLP
Acushnet Co.
Howrey LLP
Acushnet Co.
Acushnet Co.
Acushnet Co.
Acushnet Co.
Acushnet Co.
Acushnet Co.
Acushnet Co.
Acushnet Co.
Acushnet Co.
Acushnet Co.
Acushnet Co.
Acushnet Co.
Acushnet Co.
Acushnet Co.
Acushnet Co.

**AB**       **Howrey**
**0046303-**
**0046520**

EXHIBIT 7

## Wikberg, Terry J.

| | |
|---|---|
| **From:** | Grimaldi, Alan [GrimaldiA@howrey.com] |
| **Sent:** | Tuesday, June 27, 2006 4:42 PM |
| **To:** | Masters, Robert M. |
| **Cc:** | Sommer, Andrew |
| **Subject:** | RE: Housekeeping items-Bridgestone/Acushnet |

I will call you soon- I have been tied up on a meet and confer in another case- when you say three invalidity positions -we mean three references- it does not limit us from asserting prior art golf balls as well.

Also where are you on the '125patent - we have been asking for depositions for weeks and get no response- either tell us dates or drop the patent.

---

**From:** Masters, Robert M. [mailto:robmasters@paulhastings.com]
**Sent:** Tuesday, June 27, 2006 4:20 PM
**To:** Grimaldi, Alan
**Cc:** Seal, Brian; Sommer, Andrew; .MRCK - jblumenfeld; White, Brandon M.; Wikberg, Terry J.
**Subject:** RE: Housekeeping items-Bridgestone/Acushnet

Alan,

Here is our proposal responding to limiting claims.

Bridgestone will reduce the number of claims being asserted at this time to 40 to 45 total. This represents a reduction by about one half of the number of claims now asserted. Once Acushnet reduces its invalidity contentions down to 3 invalidity positions per patent, Bridgestone will then be reduce its total claims to 30. We are not in a position to reduce the number of claims to 30 now because of Acushnet's expansion of its invalidity contentions on the last day, and because of its failure to set forth the combinations making up its §103 invalidity positions. The game is not, as you phrased it, for us to figure out where in the large mountain of prior art is the reference or references you plan to rely on at trial. If that is what you insist upon, then the Court will need to sort this out.

Our proposal is consistent with the Court's previous ruling and will get to a point where the Court will only need to decide claim construction issues in claims that Bridgestone is going forward on for trial. We can also proceed with the Court's current Markman schedule, requiring a joint submission by July 19.

At the present time, Acushnet has asserted about 50 claims from 4 patents, where 3 of the 4 are nearly identical. Acushnet should also limit its asserted claims from 50 to a maximum of 15.

Please consider this proposal and let us know if you are agreeable. I am in the office, but was on a conference call when you called me earlier today. We can discuss this proposal to move things along.

Rob

---

Robert M. Masters | Paul, Hastings, Janofsky & Walker LLP | 875 15th Street, N.W., Washington, D.C. 20005 | direct:

7/25/2006

202 551-1763 | main: 202 551-1700 | direct fax: 202 551-0173 | RobMasters@paulhastings.com | www.paulhastings.com

-----Original Message-----
**From:** Grimaldi, Alan [mailto:GrimaldiA@howrey.com]
**Sent:** Monday, June 19, 2006 6:41 PM
**To:** Masters, Robert M.
**Cc:** Seal, Brian; Sommer, Andrew
**Subject:** Housekeeping items-Bridgestone/Acushnet

Representative claims-we are willing to limit contentions based prior art references -- 3 102 and 5 103 -but we need to insure that you are standing on the filing dates of your patents and will not go behind them- if this is the case we can get you a list in a few days. This is based on good faith response from you e.g. if you think you are going to have 30 representative claims the deal is off- that order of magnitude is too great for this compromise.

Can we meet and confer on Thursday with respect to a joint testing protocol ( Brian Seal will do it- I am out)
On the '125, are you continuing to assert this patent, if so can you provide the two witnesses we noticed a while ago for deposition by the end of the month,. We are gong to start noticing depositions in the next week or so.

Special Master for attorney/client, work product issues- we gave you our updated list- time is ripe for appointment of a Master. I will check with local counsel but I think we should jointly submit letter or pleading to court to speed up this process. If you have any thoughts let me know. Thanks

Alan


Alan M. Grimaldi
Howrey LLP
1299 Pennsylvania Avenue, N.W.
Washington, D.C. 20004
Tel: 202-383-6989
Fax: 202-383-6610
grimaldia@howrey.com



----------------------------------------------------------------------------------------
This email and any attachments contain information from the law firm of Howrey LLP, which ma
The information is intended to be for the use of the individual or entity named on this email.
If you are not the intended recipient, be aware that any disclosure, copying, distribution or use of t
If you receive this email in error, please notify us by reply email immediately so that we can arran

```
************************************************************
IRS Circular 230 Disclosure:    As required by U.S. Treasury Regulations governing t
************************************************************
```

This message is sent by a law firm and may contain information that is privileged or

For additional information, please visit our website at www.paulhastings.com.

7/25/2006

EXHIBIT 8

CONFIDENTIAL EXHIBIT

# EXHIBIT 9

# CONFIDENTIAL EXHIBIT

# EXHIBIT 10



# HOWREY

1299 PENNSYLVANIA AVENUE, N.W.
WASHINGTON, DC 20004-2402
PHONE: 202.783.0800 • FAX: 202.383.6610

## FACSIMILE COVER SHEET

| | | | | |
|---|---|---|---|---|
| DATE: | May 16, 2006 | | | |
| TO: | NAME | Robert M. Masters, Esq. | | |
| | COMPANY | Paul Hastings | | |
| | FAX NUMBER | 202.551.1705 | PHONE NUMBER: | 202.551.1700 |
| | CITY | Washington, DC | | |
| FROM: | NAME: | Alan M. Grimaldi | | |
| | DIRECT DIAL NUMBER: | 202.383.6989 | USER ID: | 2233 |
| NUMBER OF PAGES, INCLUDING COVER: | | 12 | CHARGE NUMBER: | 00634.0002 |

☐ ORIGINAL WILL FOLLOW VIA

☐ REGULAR MAIL    ☐ OVERNIGHT DELIVERY    ☐ HAND DELIVERY    ☐ OTHER _____

☒ ORIGINAL WILL NOT FOLLOW

SUPPLEMENTAL MESSAGE:

THE INFORMATION CONTAINED IN THIS TRANSMISSION IS PRIVILEGED AND CONFIDENTIAL. IT IS INTENDED ONLY FOR THE USE OF THE INDIVIDUAL OR ENTITY NAMED ABOVE. IF THE READER OF THIS MESSAGE IS NOT THE INTENDED RECIPIENT, YOU ARE HEREBY NOTIFIED THAT ANY DISSEMINATION, DISTRIBUTION OR COPYING OF THIS COMMUNICATION IS STRICTLY PROHIBITED. IF YOU HAVE RECEIVED THIS COMMUNICATION IN ERROR, PLEASE NOTIFY US IMMEDIATELY BY TELEPHONE AND RETURN THE ORIGINAL MESSAGE TO US AT THE ABOVE ADDRESS VIA THE U.S. POSTAL SERVICE. THANK YOU

IF THERE ARE ANY QUESTIONS OR PROBLEMS WITH THE TRANSMISSION OF THIS FACSIMILE, PLEASE CALL 202.383.7157.

# HOWREY LLP

1299 Pennsylvania Avenue, NW
Washington, DC 20004-2402
www howrey com

Alan M. Grimaldi
Partner
202.383.6989
202 383 6610
grimaldia@howrey.com

File 00634 0002

May 16, 2006

<u>BY FACSIMILE</u>

Robert M. Masters, Esq.
Paul, Hastings, Janofsky & Walker LLP
875 15th Street, N.W.
Washington, D.C. 20005

>    **Re:**   ***Bridgestone Sports Co. v. Acushnet Co.,***
>            **C.A. No. 05-132 (JJF) (D. Del.)**
>            <u>Response to Your Letter of May 10</u>

Dear Rob:

    We received your letter of May 10 regarding alleged deficiencies in Acushnet's discovery responses. As an initial matter, I note that we have addressed several of the matters discussed in your letter in separate correspondence and on multiple occasions confirmed that Acushnet is not withholding non-privileged documents related to specific requests. Nonetheless, we again address these matters herein.

## I.     ACUSHNET'S DOCUMENT COLLECTION EFFORT

    We object to your characterization of Mr. Lester's preparation for his deposition, which we address by separate letter. With regard to your specific complaints about Acushnet's collection of documents, however, we note Mr. Lester's testimony that he met with Acushnet personnel and attorneys with Howrey upon receipt of Bridgestone's document requests. At that meeting Acushnet personnel received instructions on searching for documents. (*See, e.g.,* Lester Dep. at 9:5–10:9; 39:7-18; 89:3-16). He testified that the individuals were instructed specifically to search for documents related to the accused Acushnet balls (including developmental files), the accused Bridgestone balls and prior art golf balls. (*See, e.g.,* Lester Dep. at 40:19-42:2; 103:5-104:13.)

    Mr. Lester identified a number of individuals present at that meeting and testified that each individual was responsible for searching their own files, including electronic files, e-mail, and databases. (*See, e.g.,* Lester Dep. at 38:8-40:9; 45:4-6; 86:19-87:2.) He further testified that certain individuals were tasked with searching for documents in specific archives and databases, including databases for research and development, manufacturing, golf ball testing, and quality control, and that those individuals produced documents to him from those databases. (*See, e.g.,* Lester Dep. at 60:16-62:6; 74:5-75:21; 113:19-114:15; 117:18-121:11.) He also testified that his document collection efforts covered files contained in offsite storage. (*See, e.g.,* Lester Dep. at 88:9-22; 93:22-95:4.)

AMSTERDAM  BRUSSELS  CHICAGO  EAST PALO ALTO  HOUSTON  IRVINE  LONDON
LOS ANGELES  NORTHERN VIRGINIA  PARIS  SALT LAKE CITY  SAN FRANCISCO  TAIPEI  WASHINGTON, DC
DM_US\8345274.v2

Robert M. Masters
May 16, 2006
Page 2

Mr. Lester's testimony, therefore, shows that Acushnet's document collection efforts were exhaustive, both in terms of subject matter and physical locations searched. Each time Bridgestone has identified a perceived deficiency, Acushnet has responded by producing additional information where possible or by confirming that Acushnet is not withholding responsive documents. Bridgestone's complaint appears to be that Mr. Lester did not personally search every file or interview every individual who searched for responsive documents – a requirement for which there is no basis and which is manifestly unreasonable.

Nevertheless, we have agreed to research further answers to certain questions, just as we asked you to research further answers to questions Bridgestone's 30(b)(6) witness on document collection could not answer. (*See* Masters Ltr. to Seal, Feb. 2, 2006 at 1.) In addition, we agreed to provide additional deponents on specific document collection topics, including Acushnet's searches of certain databases and the collection of financial documents.

Further, the facts refute your claim that the volume of each party's production evidences "an overwhelming discrepancy in document production to date." While you state that Acushnet has produced fewer than 90,000 pages of hardcopy documents, you ignore Acushnet's production of a CD of data that, by your own admission, would comprise about 90 boxes of information if printed in hardcopy. (*See* Masters and Gruskin Ltr. to Moore, Sep. 12, 2005 at 4.) In addition, your claim that Bridgestone "has produced more than 200,000 pages" fails to account for the fact that for almost half of those documents – 95,000 pages, belatedly produced on January 30 – you refused to admit that the documents were either (1) responsive to any of Acushnet's document requests, (2) relevant to any issues in this case, or (3) non-duplicative of documents already produced. (*See* Masters Ltr. Seal, Jan. 30, 2006.)

## II.   ACUSHNET'S DOCUMENT RETENTION POLICY

Acushnet has not been intentionally withholding its document retention policy, much less for "many months" as your letter suggests.[1] The first time Bridgestone even suggested that Acushnet had not produced a complete copy of its document retention policy was during Mr. Lester's deposition on April 26, 2006. In any event, we produced that document on May 12 in response to your request. (*See* AB 087740-AB 0087772.)

## III.   ACUSHNET'S SOURCE LOG

In your letter, you conclude that Acushnet's document production is deficient based on the omission of "key personnel" such as Wally Uihlein, Bill Burke, Jerry Bellis, Eric Bartsch, Ray Cebula and Michael Kramer from Acushnet's source log. We are in the process of speaking

---

[1] Bridgestone took longer than two weeks to get a complete copy of Bridgestone's document retention policy to Acushnet after Acushnet identified its absence in Bridgestone's document production.

DM_US\8345274.v2

Robert M. Masters
May 16, 2006
Page 3

with each of them and will confirm whether they have searched their files and turned over any responsive documents.

Our research into the preparation of Acushnet's source log suggests that the individuals identified therein not only collected their own documents, but also forwarded documents collected by other individuals who do not appear on the source log. We are researching this matter further and will supplement the source log to the extent possible.

## IV.    ORGANIZATION CHARTS

Contrary to your assertion, Acushnet is not withholding any previous organization charts. The chart produced as AB 0052390-AB 0052419 is the only responsive chart in Acushnet's possession, custody or control.

## V.    ACUSHNET'S PRIVILEGE LOG

You previously raised a number of perceived issues with regard to Acushnet's privilege log. (See Bensen Ltr. to Seal, Mar. 14, 2006.) With regard to a small number of issues, we are addressing your concerns by providing more detail with regard to certain entries in the privilege log, which we will provide to you in advance of the meet and confer on Monday.

A number of your complaints, however, are unfounded. For example, your complaint that certain entries "appear to concern business matters rather than legal advice" is belied by the entries themselves, which clearly state that privileged documents concern legal advice. See, e.g., Acushnet's Privilege Log, entries 82 ("Email to counsel providing confidential information to counsel for the purpose of rendering legal advice regarding corporate planning issues"), 84 ("Email reflecting legal advice of counsel regarding product promotion issues"), and 261-262 ("Email to counsel seeking legal advice of counsel re marketing issues"). Similarly, there is no basis for Bridgestone's contention that the distribution of certain privileged documents "went well beyond that necessary to convey or consider the legal advice, if any, rendered." (Bensen Ltr. to Seal, Mar. 14, 2006 at 2.)

## VI.    FINANCIAL DOCUMENTATION

Your letter makes some allegations regarding the volume of Acushnet's financial document production. You indicate that it constitutes a "small number of documents" and that in view of Mr. Moore's comments in court related to the "massive" volume transactional-level documents (e.g., invoices and orders) our production should include additional documents.[2] The

---

[2] During a hearing before the Court, you stated that you were not seeking production of this "massive volume" of transactional-level documents. (Tr. Jan. 13, 2006 at 24, line 8-24 (Mr. Masters informing Judge Farnan that "we're not asking for the gigantic database that the corporation has and has to have just to conduct its everyday business.").)

DM_US\8345274 v2

PAGE 4/12 ' RCVD AT 5/16/2006 7:11:14 PM [Eastern Daylight Time] ' SVR:WDCRF1/2 ' DNIS:9998 ' CSID:+ ' DURATION (mm-ss):05-26

Robert M. Masters
May 16, 2006
Page 4

<u>volume</u> of Acushnet's damages production is irrelevant. What is relevant is that Acushnet has given you responsive financial reports to the extent that the information is available to satisfy each of your requests.

Despite your allegations that Acushnet's damages document production was "wholly insufficient," Acushnet has provided you responsive documents as outlined in your February 28, 2006 letter to us. We understand that the documents you were seeking under the Court's January 13th Order were outlined in that letter. Your most recent letter, however, raises additional categories of documents not outlined in that letter. To the extent that you have new, last-minute requests, our investigation is ongoing as noted below.

The following categories of documents were identified in Bridgestone's February 28th letter:

*"Monthly and annual sales data (dollar and units) by accused ball and/or corresponding side stamp for 2000-2006."* Acushnet has produced financial reports to you in response to this request and confirms that it is not withholding any responsive documents. (*See, e.g.*, AB 0048224-AB 0048825; AB 0084256-AB 0085137; AB 0085432-AB 0085499; AB 0085928-AB 0086231; AB 0086717-AB 0086871.)[3] Further, to the extent that you may have not been provided with monthly data, no responsive documents exist.

*Monthly and annual manufacturing costs, COGS and standard cost data (dollar and units) by accused ball and/or corresponding side stamp for 2000-2006.* Acushnet produced documents responsive to your request. (*See, e.g.*, AB 0080359-AB 0080402.) Acushnet is not withholding any responsive documents. Further, to the extent that you may have not been provided with monthly data, no responsive documents exist.

*"Quarterly and annual Acushnet Company income statements and P & Ls for the period 2000-2006."* We have produced documents showing Acushnet's income from the accused products. (*See, e.g.*, AB 47975-AB 47977; AB 70606-AB 70610; AB 71264-AB 71268; AB 73503-AB 73507; AB 74165-74169; AB 84267-84369.) Your May 10, 2006 accuses Acushnet of withholding "quarterly income statements or P&L's <u>including on a divisional or operating group level.</u>" Your February 28th letter never requested any documents on a division or operating group level. Regardless, we are looking into whether Acushnet has any such documents.

*"Profit projections for each accused ball and/or corresponding side stamp at the time of its introduction."* In response to your requests, we produced documents related to Acushnet's

---

Thus, you provided us with a letter outlining the types of documents you were seeking (*See* Bensen Ltr. to Moore, Feb. 28, 2006.) Acushnet produced responsive financial documents on April 3, 2006 pursuant to the Court's order

[3] These bates ranges, as well as the others listed herein, are provided pursuant to the parties' agreement to identify bates numbers in response to perceived deficiencies in the document production. The documents identified by these ranges are exemplary and are not intended to be exhaustive.

DM_US\8345274 v2

Robert M. Masters
May 16, 2006
Page 5

"Golf Ball Demand Team" that include demand projection information. (*See, e.g.*, AB 0085500-
AB 0086247.) Acushnet is not withholding any documents related to such projections.

"*Golf Ball Product Plans.*" In response to your letter, we are confirming whether we
have any additional golf ball product plans such as the one produced as AB 0047574-0047578.
If we have any such documents for the accused Acushnet golf balls, we will produce them.

"*Representative samples of brochures and advertisements for 2000-2005.*" In addition
to documents we produced to you prior to April 3, 2006, we produced more samples of
Acushnet's advertising and brochures to you. (*See* AB 0085217-AB 0085418.)

"*Monthly and annual market share data by accused ball and/or corresponding side
stamp for 2000-2006*" and "*Surveys and Third Party Reports*" including "*Golf Datatech*" and
"*NGF Reports and data from 2000-2006.*"[4] Acushnet obtains its market share information
based on third party information. Responsive Golf Datatech and NGF reports were produced to
you. (*See, e.g.*, AB 0082102-AB 0083689.)

"*Licenses and or Agreements relating to Acushnet patents-in-countersuit and other
patents relating in any way to golf balls or materials used in golf balls, or other Acushnet golf
ball technology*" and "*licenses relating to third party patents used in Acushnet golf ball
products.*" We have produced responsive documents to you. (*See, e.g.*, AB 0085422-AB
0085429; AB 0086248-AB 0086276; AB 0087773-0087795.)[5] We are not withholding any
additional responsive documents.

Finally, your letter states that "Acushnet has not produced any documents reporting to
Fortune Brands, Acushnet's parent company, nor has Acushnet produced executive summaries."
Neither of these issues were raised in your February 28th letter, despite the parties stipulation that
you would supply us with a list of the documents that you needed to make your damages case.
We are currently investigating whether responsive reports to Fortune Brands or "executive
summaries" exist. If any such documents are located, we will produce them to Bridgestone.

---

[4] In recent letters, you complain about the volume of these documents produced by Acushnet, despite your requests
for such information. (*See, e.g.*, White Ltr to Seal, Apr 6, 2006 at 6 ("98% of the first box comprised third party
sales compilations purchased from NGF and Golf Datatech.").) Given your request for such data, that complaint is
unfounded.

[5] We note that the document at AB 0085422-AB 0085429 is a license agreement between Bridgestone and
Acushnet. While Acushnet has produced this document to you, Bridgestone has not produced its copy of the
agreement. This further reinforces our belief that Bridgestone's document production remains substantially
deficient. We reiterate our request that you produce all responsive licenses relating to golf balls or golf ball
technology immediately.

DM_US\345274 v2

PAGE 6/12 ᵃ RCVD AT 5/16/2006 7:11:14 PM [Eastern Daylight Time] ᵃ SVR:WDCRF1/2 ᵃ DNIS:9998 ᵃ CSID:+ ᵃ DURATION (mm-ss):05-26

Robert M. Masters
May 16, 2006
Page 6

**VII.    MANUFACTURING GUIDELINES**

In your letter, you conclude that "Its [sic] seems unlikely that Acushnet would not finalize these document prior to a manufacturing run." You request that Acushnet produce *final* manufacturing guidelines immediately.

This is not the first time that you have raised this issue with us. (*See* Wikberg Ltr. to Seal, Apr. 20, 2006; Wikberg Ltr. to Seal, May 4, 2006.) The answer to your demand is still the same: Acushnet is not withholding any responsive manufacturing guidelines in its possession, custody or control. (*See* Seal Ltr. to Wikberg, Apr. 21, 2006; Seal Ltr. to Wikberg, May 12, 2006.)

Additionally, in your letters to us, you note that Acushnet "has not produced manufacturing guidelines for each for each of the Acushnet golf balls identified in the May 1 supplementation." We assume that you are referring to Acushnet's supplemental response to Bridgestone Interrogatory No. 4 and the 10 Acushnet golf balls identified as including "390 to 450 dimples," as required by, for example, Bridgestone's '924 patent. Acushnet relied on those prior art golf balls solely for the purpose of establishing that a vast majority of publicly-available golf balls had dimple counts within the claimed range, which is shown by documents already produced by Acushnet. (*See, e.g.,* AB 0044436-AB 0044709.) Bridgestone has not shown that any other feature of those 10 golf balls is relevant to any claim or defense in this case.

Additionally, Acushnet is investigating whether it has any of these golf balls in its possession, custody or control. If Acushnet has any such golf balls, it is willing to make these golf balls available for Bridgestone's inspection so that Bridgestone can verify the number of dimples on these golf balls. Because Acushnet is relying on certain golf balls cited in Appendix A of its response to Interrogatory No. 4 solely to establish that the claimed number of dimples were prevalent in the art, complete manufacturing guidelines are irrelevant and cumulative of documents produced by Acushnet in August 2005.

**VIII.    ON COURSE/OFF COURSE RETAILER AGREEMENTS, DISTRIBUTOR SALES AGREEMENTS & SUBSIDIARY SALES AGREEMENTS**

Your letter indicates that Mr. Lester testified to the effect that Acushnet had entered into agreements with foreign subsidiaries, foreign distributors and on-course and off-course retailers and that such documents were produced.

You then state that "to date, no such production has occurred." Acushnet, however, has produced its agreements with its foreign subsidiaries and its foreign distributors. (*See, e.g.,* AB 0083690-AB 0084255.) We are investigating whether we have any on-course or off-course retailer agreements that have not already been produced.

DM_US\x345274 v2

PAGE 7/12 * RCVD AT 5/16/2006 7:11:14 PM [Eastern Daylight Time] * SVR:WDCRF1/2 * DNIS:9998 * CSID:+ * DURATION (mm-ss):05-26

Robert M. Masters
May 16, 2006
Page 7

### IX.     EMAILS AND ATTACHMENTS

Contrary to your letter, Acushnet has not "refused to produce copies of attachments whose icons appear on the hard copies of documents produced by Acushnet." Bridgestone raised this issue previously. Now, as before, we confirm that we are not withholding any e-mail attachments.

Further, while you suggest that such attachments may be found in Acushnet's "numerous databases," Mr. Lester testified that electronic files, e-mail, and databases were searched for responsive documents. (*See, e.g.,* Lester Dep. at 38:8-40:9; 45:4-6.) He further testified that certain individuals were tasked with searching for documents in specific databases, including databases for research and development, manufacturing, golf ball testing, and quality control, and that those individuals produced documents to him from those databases. (*See, e.g.,* Lester Dep. at 60:16-62:6; 74:5-16.)

Thus, Acushnet confirms once again that it is not withholding any responsive e-mail attachments in its possession, custody or control.

### X.     MEETING MINUTES

You again raise the complaint about alleged gaps in Acushnet's production of meeting minutes, a complaint Bridgestone first raised on November 17, 2005. (*See* Saliba Ltr. to Moore, Nov. 17, 2005 at 1.) Now, as then, our response is that we are not withholding any such meeting minutes in our possession, custody or control. (*See* Seal Ltr. to Saliba, Nov. 28, 2005 at 2.)

As with your complaint above regarding e-mail attachments, you suggest that "Acushnet maintains numerous databases where documents such as e-mailed meeting minutes might be stored ...." I refer you to our response above in paragraph IX.

### XI.     QUALITY CONTROL MANUALS

Your letter complains that "Acushnet has produced no quality control and inspection documents." That statement is not true. In fact, in a letter dated September 12, 2005, you complained that that Acushnet had produced a CD of such information that, if printed in hardcopy, would comprise over 90 boxes of information. (*See* Masters and Gruskin Ltr. to Moore, Sep. 12, 2005 at 4.) As we have previously informed you, this CD constitutes Acushnet's QAS database, and includes Acushnet's responsive "inspection documents." Likewise, your belief that Acushnet's production of its quality control manuals is "grossly deficient" is once again misplaced. In August of 2005, Acushnet also produced its responsive quality control testing manuals. (*See, e.g.,* AB 0022937-AB 0023118.)

We are in the process of confirming that each of the individuals identified in your letter have produced all their responsive documents. To the extent that any additional responsive documents are located, we will produce them to Bridgestone.

DM_US\8345274 v2

**HOWREY**

Robert M. Masters
May 16, 2006
Page 8

## XII.    DATABASES

Your complaint that Acushnet has not adequately searched its "databases" is unfounded. As stated above, Mr. Lester testified that certain individuals were tasked with searching for documents in specific databases, including databases for research and development, manufacturing, golf ball testing, and quality control, and that those individuals produced documents to him from those databases. (*See, e.g.*, Lester Dep. at 60:16-62:6; 74:5-16.) Nonetheless, upon receipt of your letter, we are investigating whether any relevant database has yet to be searched. We expect to conclude this investigation in advance of the 30(b)(6) deposition on that topic scheduled for May 19.

## XIII.    SAMPLES, COMPONENTS & BALLS

Your letter grossly misstates the Court's instructions to the parties at the January 13th hearing. The Court indicated to the parties that how the parties agreed to test the golf balls requested by Bridgestone was up to them and that the parties may agreed to perform testing under a "compressed time table." (1/13/06 Hearing Tr. at 15, ll. 16-24.) But that was up to the parties. (*Id.*) Moreover, the Court indicated that "If you can't agree ... then you'll have to submit a specific proposal, and I'll choose." (1/13/06 Hearing Tr. at 15, ll. 21-23.) The Court never indicated that Bridgestone was entitled to samples "without restriction."

Pursuant to our most recent meet-and-confer on this issue, we are preparing a proposal for joint testing, whereby we would attempt to agree on a time period for exchange and testing of certain golf balls of which there is a limited number. Hopefully, we can resolve some issues such as handling requirements, time periods for return of golf balls and numbers of prior art golf balls to be exchanged. Because the number of certain balls is limited, however, Acushnet has consistently maintained it is hesitant to turn over its best evidence of invalidity of some of Bridgestone's patents-in-suit "without restriction," as you demand.

Finally, we will agree to produce "components, as well as golf ball rejects," as requested by Bridgestone within the next 10 business days. We will be producing some materials in sealed packages. You will be taking possession of such materials at your own risk and you assume all potential liability from any improper use or handling of any such materials.

## XIV.    ACUSHNET'S INVALIDITY CONTENTIONS

Your complaints regarding the sufficiency of Acushnet's Invalidity Contentions are unfounded. You state that Acushnet's response to Bridgestone's interrogatories 4 and 35 must "state specific combinations of prior art references Acushnet relies on to support its contention that one or more of the claims are invalid under 35 U.S.C. § 103." Acushnet's invalidity contentions do just this. Acushnet maintains that each of the primary references cited may be used to invalidate each applicable claim as asserted in Acushnet's invalidity contentions.

Moreover, as we have already noted to you, Bridgestone has not even identified which claim elements it contends render the claims of Acushnet's Lynch patents invalid. Accordingly,

DM_US\8345274 v2

PAGE 9/12 * RCVD AT 5/16/2006 7:11:14 PM [Eastern Daylight Time] * SVR:WDCRF1/2 * DNIS:9998 * CSID:+ * DURATION (mm-ss):05-26


Robert M. Masters
May 16, 2006
Page 9

Bridgestone is in no position to complain about the sufficiency of Acushnet's invalidity contentions. Bridgestone's final invalidity contentions with respect to three of Acushnet's patents <u>provide no more detail than Bridgestone's original complaint for declaratory judgment.</u> (*Compare* Bridgestone's Complaint for Declaratory Judgment *with* Pls.'s Fifth Supp. Responses to Def.'s First Set of Interrogs. (Bridgestone's "final invalidity contentions" with respect to the Acushnet patents-in-suit.).)

Bridgestone is the party that brought this matter before the Court and sought a declaratory judgment that Acushnet's patents were invalid. As set forth in previous correspondence, based on Bridgestone's failure to provide <u>any</u> invalidity contentions for the Lynch patents or claims 2 and 4-7 of the '705 patent under § 102 or any specific invalidity contentions under § 112 by the deadline for any such contentions, Bridgestone is precluded from raising any such contentions now that the deadline has passed. (*See* Seal Ltr. to Masters, May 4, 2006 at 2.)

If you maintain that Acushnet's invalidity contentions fail to express the specific combinations of references that Acushnet relies upon to support its contention that each asserted claim of each of the Bridgestone patents-in-suit is invalid, please describe in detail how Acushnet's contentions fail to set forth the specific combination of references so that we may be in a position to consider your complaint. At present, however, we believe that your complaints have been addressed and we stand on our invalidity contentions.

## XV.    ACUSHNET'S RESPONSE TO INTERROGATORY NO. 1

The product list provided by Acushnet in response to Bridgestone Interrogatory No. 1 was submitted in response to – and fully complies with – the Court's November 2, 2005 Order. As you may recall, Bridgestone sought a motion to compel a further response from Acushnet to Interrogatory No. 1. The Court granted that motion, but limited Acushnet's response to the provision of "a product list of every Acushnet golf ball sold or offered for sale anywhere in the world for the past four years." (*See* Order dated November 2, 2005.) The list provided by Acushnet complies with that Order.

While the basis for your statement that Acushnet's response is "misleading, incomplete, and inaccurate" is unclear, I understand it to refer to the issues raised by Mr. Wikberg of your office in separate correspondence. (*See* Wikberg Ltr. to Seal, Apr. 20, 2005; Wikberg Ltr. to Seal, May 4, 2006.) Mr. Wikberg complained that the list is organized by year, but does not accurately reflect the <u>sales</u> of each identified product <u>by year</u>.

As we responded to Mr. Wikberg, however, that was not the purpose of the list. (*See* Seal Ltr. to Wikberg, Apr. 21, 2006; Seal Ltr. to Wikberg, May 12, 2006.) Instead, as stated by you at the October 5, 2005 hearing, the purpose was to inform Bridgestone of every model and version of the golf balls sold by Acushnet for the past four years so that Bridgestone could identify and investigate all allegedly infringing products. (*See* 10/5/05 Hearing Tr. at 6-12.) The list provided by Acushnet provides just such a list for the past <u>five</u> years, organized by the year in which each product appears in Acushnet's product catalogs. That list, therefore, more than

DM_US\8345274 v2


Robert M. Masters
May 16, 2006
Page 10

complies with the Court's November 2, 2005 Order and is thus a full and complete response to
Interrogatory No. 1.

## XVI.    NEWLY ASSERTED PRIOR ART

Your letter asserts that Acushnet "inserted into the litigation scores of additional prior art
references" and that Acushnet should have informed you earlier of the additional prior art. Your
allegations are baseless and assume that Acushnet and its attorneys had prepared these positions
long ago and merely rested on them for an unreasonable period of time. You express no basis
for making such allegations. Remember, Bridgestone has asserted 83 claims from 10 patents
against different models and/or versions of seven Acushnet golf balls. Addressing each of those
claims has been a substantial and time-consuming undertaking for Acushnet.

In any event, Acushnet produced all but a few prior art documents relied upon in its
invalidity contentions to Bridgestone long ago. Since the production of those documents to
Bridgestone, Acushnet had to obtain translations of non-English-language prior art references,
analyze the prior art documents and prepare its invalidity contentions. All of this had to be done
in the period between September 28, 2005, when Acushnet served Bridgestone with nearly 200
pages of invalidity contentions and the May 1 deadline for supplementing invalidity
contentions.[6] As you noted, Acushnet identified numerous prior art references that render the
claims of the Bridgestone patents-in-suit invalid—preparation of Acushnet's final invalidity
contentions was a very time-consuming endeavor.

Your assertion that Bridgestone cannot evaluate the patentability of its claims until
"Acushnet satisfies its discovery obligations" is unfounded. Acushnet has given you *detailed*
final invalidity contentions. You are in a position to evaluate Acushnet's defenses and chose
representative claims.

As for Acushnet's position that its Project X2 Veneer Ball invalidates a number of claims
of the Bridgestone patents-in-suit, Acushnet has provided Bridgestone with documents in its
possession sufficient to show its prior public uses of the Pro V1 as well as documents related to
its conception, design and construction. (*See, e.g.*, AB 0080233; AB 0080234-AB 0080238;
AB 0080245-0080245; AB 0080247-AB 0080358; AB 0080416-AB 0080425; AB 0080426-AB
0080436; AB0080437-AB 0080743; AB 0081065-AB0081745; AB 0086403-AB 0086457.)
When the existence of this ball came to Acushnet's attention, it promptly supplemented its
production as its investigation continued. Acushnet believes that it has produced all documents
relevant to its defenses regarding the Project X2 Veneer golf ball as well as the early stages of

---

[6] Acushnet's efforts were further impeded by Bridgestone's January 30, 2006 production of over 95,000 pages of
Japanese-language documents that you indicated were not even necessarily responsive or relevant to any Acushnet
document request or even non-duplicative of documents previously produced by Bridgestone. (*See* Masters Ltr to
Seal, Jan. 30, 2006.) Hundreds of e-mail documents to and from the inventors of the patents-in-suit were contained
in that production despite Mr. Saliba's prior representations to us that Bridgestone simply did not use e-mail.
Acushnet's review of that production took, and continues to take significant resources.

DM_US\8345274 v2

Robert M. Masters
May 16, 2006
Page 11

development of the Titleist® Pro V1™ golf ball. To the extent that Acushnet locates additional non-privileged documents related to the Project X2 Veneer golf ball or the Pro V1™, it will produce them immediately and has never indicated otherwise.

Additionally, Acushnet has located at least one Project X2 Veneer golf ball. Once we reach an agreement on the exchange and testing of golf balls of which there are limited numbers, we will produce it. In the meantime, we will make it available for inspection. Acushnet's investigation into this defense and it will continue to provide Bridgestone with additional information in a reasonable and timely manner.

Finally, in your letter you reserve the right to seek sanctions for what you allege is Acushnet's failure to seasonably supplement its interrogatories. While you allege that Acushnet's conduct is sanctionable, you ignore the fact that Bridgestone's recent conduct in failing to notify Acushnet of Bridgestone's newly asserted claims is far worse.

Acushnet's efforts associated with compiling and analyzing the prior art to address each of the 83 claims Bridgestone asserted in its Responses to Acushnet's first set of interrogatories in July 2005 were significant. On May 1, 2006, over 13 months into this case, Bridgestone appears to have dropped four of its claims and has added five new claims to this case. Not only did Acushnet waste efforts addressing claims that Bridgestone dropped at the last minute, but now needs to go back through the huge volume of prior art produced in this litigation and consider whether or not to have additional searches of the prior art performed. Bridgestone's failure to inform Acushnet earlier of these additional claims and that Bridgestone was no longer going to pursue certain claims it had previously raised led to a significant waste of resources.[7] As you know, Acushnet withdrew one of its asserted patents three weeks before final contentions so that you would not have go through the wasteful exercise of preparing final contentions on it. We did not receive the same courtesy from Bridgestone.

We are prepared to discuss these matters with you, as well as the matters raised in my letter of May 5, during the meet and confer on Monday, May 22. We will call you that morning at 10:00 a.m. In the meantime, we await your response to my deficiencies letter of May 5 so that we may advance those issues in preparation for Monday's discussion.

Sincerely,

*Alan M Grimaldi* (signature)

Alan M. Grimaldi

---

[7] As we requested, please confirm that Bridgestone is no longer pursuing U.S. Patent No. 5,252,652, claim 11; U.S. Patent No. 5,782,707, claim 3, and U.S. Patent No. 6,679,791, claims 12 and 23. (*See* Seal Ltr to Masters, May 4, 2006 at 2).

DM_US\8345274.v2

# EXHIBIT 11
# CONFIDENTIAL EXHIBIT

# EXHIBIT 12

# CONFIDENTIAL EXHIBIT

# EXHIBIT 13

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

BRIDGESTONE SPORTS CO., LTD.,
and BRIDGESTONE GOLF, INC.,

        Plaintiffs,

    v.

ACUSHNET COMPANY,
    a Delaware Corporation,

        Defendant.

C. A. No. 05-132 (JJF)

## BRIDGESTONE'S FIRST SET OF REQUESTS FOR PRODUCTION DOCUMENTS AND THINGS (REQUEST NOS. 1-100)

Pursuant to Rules 26 and 34 of the Federal Rules of Civil Procedure, plaintiffs Bridgestone Sports Co., Ltd. and Bridgestone Golf, Inc. hereby request that defendant Acushnet Company produce and permit inspection and copying, the documents and things described herein. Production should be made at the offices of plaintiffs' attorneys, Sughrue Mion, PLLC, 2100 Pennsylvania Avenue, NW, Washington. DC 20037 within thirty (30) days of these requests.

## DEFINITIONS

Notwithstanding any definition set forth below, each word, term, or phrase used in this Request is intended to have the broadest meaning permitted under the Federal Rules of Civil Procedure. As used in this Request, the following terms are to be interpreted in accordance with these definitions:

1.    The term "Bridgestone," "Plaintiff," and/or "Plaintiffs" means Bridgestone Sports Company, Ltd. and/or Bridgestone Golf, Inc., the plaintiffs in this action, and all predecessors, successors, subsidiaries, divisions, parents and/or affiliates thereof, past or present, and all past

or present officers, directors, agents, employees, consultants, accountants, attorneys, representatives, and any other person or entity acting on behalf of any of the foregoing.

2.     The terms "Acushnet," "Defendant," "you" and/or "your" means Acushnet Company, the defendant in this action, and all predecessors, successors, subsidiaries, divisions, parents and/or affiliates thereof, past or present, and all past or present officers, directors, agents, employees, consultants, accountants, attorneys, representatives, and any other person or entity acting on behalf of any of the foregoing.

3.     The term "person" or "persons" means and includes any natural person, corporation, company, proprietorship, partnership, joint venture, association, firm, government entity or any other entity recognized in law, and shall include the owners, officers, directors, agents, trustees, parents, subsidiaries, affiliates, assignees, predecessors, and successors of each such "person."

4.     The phrase "Third Party" means and includes any Person or Persons other than Bridgestone and Acushnet.

5.     The term "Communication(s)" means the transmittal of information by any means, and includes any transfer of information, ideas, opinions, or thoughts by any means, written, oral, or otherwise, at any time or place under any circumstances. The definition is not limited to transfers between persons but also includes other transfers, such as records and memoranda to file; any written letter, memorandum, e-mail or other document which was sent by one or more individuals to another or others; any telephone call between one or more individual and another or others, whether such call was by chance or prearranged, formal or informal; and any conversation or meeting between one or more individuals and another, whether such contact was by chance or prearranged, formal or informal.

6.     "Document" and "Documents" shall have the broadest meaning ascribed to it by Rule 34(a) of the Federal Rules of Civil Procedure and mean any writing of any kind, including originals and all non-identical copies (whether different from the original by reason of any notation made on such copies or otherwise). The terms "Document" and "Document(s)" shall

2

include, without limitation, the following items, whether printed or reproduced by any process, or written or produced by hand or stored in computer memory, magnetic or hard disk or other data storage medium, and whether or not claimed to be privileged, confidential or otherwise excludable from discovery, namely, notes, letters, correspondence, communications, e-mails, telegrams, memoranda, summaries or records of telephone conversations, summaries or records of personal conversations or meetings, diaries, reports, laboratory and research reports and notebooks, recorded experiments, charts, plans, drawings, diagrams, schematic diagrams, HDL, verilog, or other computer code, illustrations, product descriptions, product analyses, requests for proposals, documents related to proposed or actual product improvements or changes, users manuals or guides, installation guides or manuals, technical descriptions or specifications, product repair manuals or guides, photographs, video image, software flow charts or descriptions or specifications, product functional descriptions or specifications, minutes or records of meetings, summaries of interviews, reports, or investigations, opinions or reports of consultants, reports of patent searches, patent appraisals, opinions of counsel, agreements, reports or summaries of negotiations, brochures, pamphlets, advertisements, circulars, trade letters, press releases, drafts of documents, and all other material fixed in a tangible medium of whatever kind known to you or in your possession, custody, or control.

7.    The term "concerning" means relating to, referring to, describing, evidencing, constituting, identifying, mentioning, discussing or analyzing.

8.    The terms "Thing" and "Things" mean and include any tangible item other than a Document.

9.    The term "PTO" means the United States Patent and Trademark Office.

10.    The term "Complaint" as used herein means the Complaint for Patent Infringement and Declaratory Judgment and Demand for Jury Trial filed by Bridgestone on March 7, 2005.

11.    The term "Answer" as used herein means the Answer And Counterclaim filed by Acushnet on April 28, 2005.

3

12.    The term "the '652 patent" means U.S. Patent No. 5,252,652, entitled "Solid Golf Ball" and issued on October 12, 1993.

13.    The term "the '852 patent" means U.S. Patent No. 5,553,852, entitled "Three-Piece Solid Golf Ball" and issued on September 10, 1996.

14.    The term "the '413 patent" means U.S. Patent No. 5,695,413, entitled "Solid Golf Ball" and issued on December 9, 1997.

15.    The term "the '817 patent" means U.S. Patent No. 5,743,817, entitled "Golf Ball" and issued on April 28, 1998.

16.    The term "the '707 patent" means U.S. Patent No. 5,782,707, entitled "Three-Piece Solid Golf Ball" and issued on July 21,1998.

17.    The term "the '834 patent" means U.S. Patent No. 5,803,834, entitled "Two-Piece Solid Golf Ball" and issued on September 8, 1998.

18.    The term "the '924 patent" means U.S. Patent No. 5,813,924, entitled "Golf Ball" and issued on September 29, 1998.

19.    The term "the '961 patent" means U.S. Patent No. 6,634,961, entitled "Multi-Piece Solid Golf Ball" and issued on October 21, 2003.

20.    The term "the '791 patent" means U.S. Patent No. 6,679,791, entitled "Golf Ball" and issued on January 20, 2004.

21.    The term "the '125 patent" means U.S. Patent No. 6,780,125, entitled "Multi-Piece Solid Golf Ball" and issued on August 24, 2004.

22.    The term "Bridgestone patents-in-suit", as used herein, means and includes one or more of the '652 patent, the '852 patent, the '413 patent, the '817 patent, the '707 patent, the '834 patent, the '924 patent, the '961 patent, the '791 patent and the '125 patent.

23.    The term "the '861 patent" means U.S. Patent No. 4,729,861, entitled "Method of Making Golf Balls" and issued on March 8, 1988.

24.    The term "the '587 patent" means U.S. Patent No. 4,936,587, entitled "Golf Ball" and issued on June 26, 1990.

4

25.    The term "the '367 patent" means U.S. Patent No. 5,080,367, entitled "Golf Ball" and issued on January 14, 1992.

26.    The term "the '976 patent" means U.S. Patent No. 6,729,976, entitled "Golf Ball With Improved Flight Performance" and issued on May 4, 2004.

27.    The term "the '705 patent" means and includes U.S. Patent No. 6,818,705, entitled "Thin-Layer-Covered Golf Ball With Improved Velocity" and issued on November 16, 2004.

28.    The term "Acushnet patents-in-suit", as used herein, means and includes one or more of the '861 patent, the '587 patent, the '367 patent, the '976 patent, and the '705 patent.

29.    The phrase "Prior Art" means and includes, by way of example, the subject matter encompassed by one or more subsections of 35 U.S.C. § 102, and includes, without limitation, any information, Document, product and/or Thing.

30.    The phrase "Prior Art Golf Ball" or "Prior Art Golf Balls" means and includes, by way of example, any golf ball that is encompassed by one or more subsection of 35 U.S.C. § 102, with respect to one of the Acushnet patents-in-suit or Bridgestone Patents-in-suit.

31.    The phrase "Acushnet products" means and includes each and every model, type, version and revision of golf balls made, used, sold, and/or offered for sale in the United States, exported from the United States, and/or imported into the United States from 1998 to the present, and including by way of example, the golf balls sold under the brands of at least: Titleist® Pro V1™, Titleist® Pro V1x™, Titleist® NXT™, Titleist® NXT Tour, Titleist® DT SoLo, and Pinnacle® Exception™.

32.    The phrase "accused Bridgestone products" means and includes the Bridgestone golf balls that Acushnet alleges infringe one or more of the Acushnet patents-in-suit.

33.    The phrase "Bridgestone products" means and includes each and every model, type, version and revision of golf balls made, used, sold, and/or offered for sale in the United States, exported from the United States, and/or imported into the United States by Bridgestone.

34.    The phrase "Acushnet patent inventor" means and includes each and every inventor named on any of the Acushnet patents-in-suit and any person who contributed in whole or in part to any claim or claims of any of the Acushnet patents-in-suit.

35.    The phrase "Acushnet patented product" means any product manufactured, distributed, exported, used, offered for sale or sold at any time, by, on behalf of, or under license from Acushnet that Acushnet contends embodies the subject matter of any claim of any of the Acushnet patents-in-suit.

36.    The term "USGA" means and includes the United States Golf Association.

37.    The present tense includes the past and future tenses. The singular includes the plural, and the plural includes the singular. "All" means "any and all," "any" means "any and all." "Including" means "including but not limited to." "And" and "or" encompass both "and" and "or." Words in the masculine, feminine or neutral form shall include each of the other genders.

## INSTRUCTIONS

1.    If, in responding to this Request, Acushnet encounters any ambiguities when construing a request or definition, the response shall set forth the matter deemed ambiguous and the construction used in responding.

2.    Whenever, in this Request, Acushnet is asked to identify or produce a Document which is deemed by Acushnet to be properly withheld from production for inspection or copying:

A.    If Acushnet is withholding a Document under claim of privilege (including, but not limited to, the work product doctrine), please provide the information set forth in Fed. R. Civ. P. 26(b)(5), including the type of Document, the general subject matter of the Document, the date of the Document, and such other information as is sufficient to identify the Document, including, where appropriate, the author, addressee, custodian, and any other recipient of the document, and where not apparent, the relationship of the author, addressee, custodian, and any other recipient to each other, in a manner that, without revealing the

6

information claimed to be protected, will enable Bridgestone to assess the applicability of the privilege or protection claimed by Acushnet;

B.    If Acushnet is withholding the Document for any reason other than an objection that it is beyond the scope of discovery or that a request is unduly burdensome, identify as to each Document and, in addition to the information requested in ¶2.A, above, state the reason for withholding the Document.

3.    When a Document contains both privileged and non-privileged material, the non-privileged material must be disclosed to the fullest extent possible without thereby disclosing the privileged material.  If a privilege is asserted with regard to part of the material contained in a Document, the party claiming the privilege must clearly indicate the portions as to which the privilege is claimed.  When a Document has been redacted or altered in any fashion, identify as to each Document the reason for the redaction or alteration, the date of the redaction or alteration, and the person performing the redaction or alteration.  Any redaction must be clearly visible on the redacted Document.

4.    If production of any requested document(s) or thing(s) is objected to on the grounds that production is unduly burdensome, describe the burden or expense of the proposed discovery.

5.    Each Request seeks production of a Document or Thing in its entirety, without abbreviation or expurgation, including all attachments, or other matters affixed thereto.

6.    All Documents and Things produced by Acushnet in response to this Request shall include a production number.

7.    Pursuant to Rule 34(b) of the Federal Rules of Civil Procedure, Acushnet is obligated to produce or make available for inspection all documents responsive to this Request, as those Documents are kept in the usual course of business or shall organize and label those Documents to correspond with the categories in this Request.

8.    Pursuant to Rule 26(e)(2) of the Federal Rules of Civil Procedure, this Request shall be deemed continuing so as to require further and supplemental responses and prompt

7

supplemental production if Acushnet obtains or discovers additional information between the time of initial responses and the time of hearing or trial.

9.      This Request applies to all Documents and Things in the possession, custody or control of Acushnet, or otherwise known or available to Acushnet, regardless of their location and regardless of whether such Documents are held, known by or available to any of Acushnet's agents, employees, representatives, attorneys, or any other person.

10.      In producing Documents, all Documents which are physically attached to each other in any of Acushnet's files shall be left so attached.  Documents which are segregated or separated from other Documents whether by inclusion in binders, files, sub-files, or by use of dividers, tabs, or any other method, shall be left so segregated or separated.  Documents shall be retained in the order in which they were maintained, in the file where found.

11.      If the requested Documents are maintained in a file, the file folder shall be included in the response to these requests for production of those documents.

## DOCUMENT REQUESTS

1.      All Documents and Things concerning, or upon which you relied to assert, the allegations contained in the Answer.

2.      All Documents and Things that Acushnet has been requested to identify, or that Acushnet has identified, described, referred to, considered or reviewed in its response to, or in preparing its response to, Bridgestone's First Set of Interrogatories.

3.      All Documents and Things concerning any communication between Acushnet and any Third Party concerning Bridgestone.

4.      All Documents and Things concerning any communication between Acushnet and any Third Party concerning the accused Bridgestone products.

8

5.    All Documents and Things concerning any communication between Acushnet and any Third Party concerning this action between Bridgestone and Acushnet.

6.    All Documents and Things concerning any communication between Acushnet and Bridgestone.

7.    All Documents and Things concerning one or more of the Bridgestone patents-in-suit and/or Acushnet patents-in-suit.

8.    All Documents and Things sufficient to identify each model, type, and version of the Acushnet products.

9.    All Documents and Things concerning the conception, development, design and performance of each model, type, version and revision of each of the Acushnet products and prototypes for the Acushnet products, including, but not limited to, design specifications, performance specifications, engineering notebooks, laboratory notebooks, testing results, composition specifications, design meeting notes and minutes, or other forms of descriptions, explanations or manuals.

10.    All Documents and Things concerning any changes, alterations, revisions or modifications made in the design, make-up, composition, physical attributes, physical characteristics, and performance of any of the model, version, type or revision of the Acushnet products, including, but not limited to, all Documents concerning (a) types of changes, alterations, revisions or modifications made, (b) rational and reasoning for the changes, alterations, revisions or modifications made, (c) effect of the changes, alterations, revisions or modifications made, and (d) when the changes, alterations, revisions or modifications were made.

9

11.    All Documents and Things concerning the dimple patterns of the Acushnet products, including by way of example, all dimple design studies and results, all detailed design specifications and dimple pattern specifications showing orientation, depth, shape, contour, and size of the dimples and dimple patterns of the Acushnet products.

12.    All Documents and Things concerning the method or process of manufacturing the Acushnet products including each component of the Acushnet products such as the core, intermediate or mantle layer or layers, and cover layer or layer(s), from raw materials to final product, and including without limitation all recipes, process flows, machine settings, raw materials, specifications for raw materials, process specifications, and quality assurance specifications for the Acushnet products and each component of the Acushnet products such as the core, intermediate or mantle layer or layers, and cover layer or layer(s).

13.    All Documents and Things concerning production reports for the Acushnet products including without limitation production reports for the Acushnet products by: (a) product (b) product components, and (c) date.

14.    All Documents and Things constituting, or referring or relating to, communications with any Third Party concerning specifications of raw materials and/or components purchased by Acushnet for use in the manufacture of Acushnet products, including without limitation certificates of analysis, and vendor analyses.

15.    All Documents and Things sufficient to show each supplier or manufacturer of any material or component purchased by Acushnet for use in the manufacture of any of the Acushnet products.

16.    All Documents and Things concerning conformance or non-conformance of Acushnet products with the USGA rules of golf, and including all testing and test results.

10

17.    All Documents and Things constituting, or referring or relating to, communications with the USGA concerning conformance with the USGA rules of golf of the Acushnet products.

18.    All Documents and Things concerning United States patents and pending patent applications owned (in whole or in party) by Acushnet which contain descriptions of technology that is used in any of the Acushnet products or contain claims that cover the Acushnet products.

19.    All Documents and Things concerning the testing methods, procedures and protocols used by Acushnet to determine the characteristics, performance, physical attributes, composition and make-up of any golf ball, including without limitation, the Acushnet products, Bridgestone products, Prior Art Golf Balls, and any golf ball manufactured or sold by a Third Party, and including without limitation size, layer thickness, weight, compression, distortion, Shore D hardness, Shore C hardness, JIS-C hardness, velocity, spin, distance (carry and roll), Reynolds number, aerodynamic coefficient, aerodynamic force angle, and trajectory of any of the foregoing golf balls.

20.    All Documents and Things concerning any changes, revisions and updates made to any golf ball testing methods, procedures and protocols used by Acushnet from 1990 to the present.

21.    All Documents and Things concerning testing devices, testing equipment and/or testing facilities used to test and/or determine golf ball characteristics, performance, physical attributes, compositions and make-up, from 1990 to the present, including without limitation size, layer thickness, weight, compression, Shore D hardness, Shore C hardness, JIS-C hardness, velocity, spin, distance (carry and roll), Reynolds number, aerodynamic coefficient, aerodynamic force angle, and trajectory.

11

22.    All Documents and Things concerning any changes, revisions and updates made to any golf ball testing devices, testing equipment and/or testing facilities used by Acushnet from 1990 to the present.

23.    All Documents and Things concerning the results of any testing and/or analysis conducted or used by Acushnet of any of the Acushnet products, including, but not limited to, the product characteristics, performance, physical attributes, composition and make-up, and further including without limitation size, layer thickness, weight, compression, Shore D hardness, Shore C hardness, JIS-C hardness, velocity, spin, distance (carry and roll), Reynolds number, aerodynamic coefficient, aerodynamic force angle, and trajectory thereof.

24.    All Documents and Things from 1990 to the present sufficient to identify Acushnet's corporate management and personnel responsible for management, research and development, engineering, design, production, manufacturing, testing, patenting or any patent-related activities, licensing, sales and marketing, technical services, and distribution of the Acushnet products, including but not limited to specific organizations of each such department and parent-subsidiary-division and joint venture relationships, including names and titles of all professional and managerial employees.

25.    All Documents and Things concerning organization charts and employee rosters that show the job assignment and/or identification of personnel involved in the conception, research, development, design, specification, testing, production, manufacture, assembly, marketing, advertising, promotion, sales and/or distribution of each model, type, version and revision of the Acushnet products.

12

26.    All Documents and Things concerning any of the Bridgestone patents-in-suit, the file histories for each of the Bridgestone patents-in-suit, and prior art to each of the Bridgestone patents-in-suit.

27.    All Documents and Things concerning any foreign counterpart of the Bridgestone patents-in-suit.

28.    All Documents and Things concerning the definition or meaning of any claim term, phrase or element in any of the Bridgestone patents-in-suit.

29.    All Documents and Things constituting, or referring or relating to, any communication between Acushnet and any Third Party concerning the Bridgestone patents-in-suit and/or any foreign counterparts of the Bridgestone patents-in-suit.

30.    All Documents and Things constituting, or referring or relating to, any communication between Acushnet and any Third Party concerning any of Bridgestone's U.S. or foreign patents or published patent applications.

31.    All Documents and Things constituting, or referring or relating to, opinions of counsel concerning the Bridgestone patents-in-suit, including without limitation, formal and informal opinions of counsel, written opinions of counsel, and any Document concerning oral opinions of counsel.

32.    All Documents and Things concerning the infringement or non-infringement by any Acushnet product of the Bridgestone patents-in-suit, including without limitation, all Documents concerning any infringement study or analysis, claim scope study or analysis, and test results or analysis used to determine whether a claim element or term is met by an Acushnet product, and any other consideration by or on behalf of Acushnet with respect to the Bridgestone patents-in-suit, and including, but not limited to, all Documents provided to and received from

13

counsel, all memoranda, comments, summaries, claim charts, presentation materials, correspondence, notes, reports, clearance searches, clearance studies, opinions, or "design around" documents.

33.    All Documents and Things concerning the alleged infringement or non-infringement of any of the claims of the Bridgestone patents-in-suit.

34.    All Documents and Things concerning your allegations and denials in the Answer that Acushnet does not, and/or that Acushnet products do not, infringe the Bridgestone patents-in-suit.

35.    All Documents and Things concerning any of the claims or claim elements of the Bridgestone patents-in-suit and/or the scope or interpretation of any of the claims or claim elements of the Bridgestone patents-in-suit, including all Documents and Things concerning the definition or meaning of any claim term, phrase or element in any of the Bridgestone patents-in-suit.

36.    All Documents and Things concerning the allegations in your Answer that one or more of the Bridgestone patents-in-suit is invalid or unenforceable.

37.    All Documents and Things concerning the validity or invalidity of the Bridgestone patents-in-suit, including without limitation, all Documents and Things concerning any studies or analyses regarding validity, invalidity or claim scope, by or on behalf of Acushnet with respect to the Bridgestone patents-in-suit, including but not limited to, all Documents and Things provided to and received from counsel, all memoranda, comments, summaries, presentation materials, test results and measurements, correspondence, notes, reports, or opinions.

38.    All Documents and Things concerning prior art (including Prior Art Golf Ball and any other Things) to the Bridgestone patents-in-suit, including without limitation all Documents

14

and Things Acushnet relies upon to support the allegations in the Answer that any of the Bridgestone patents-in-suit is invalid, and including without limitation all prior art that Acushnet contends or plans to rely upon to support an allegation that the Bridgestone patents-in-suit are invalid.

39.    All Documents and Things concerning any analysis, test reports, or inspections of any information or golf ball or component or layer of a golf ball considered by Acushnet to be prior art to the Bridgestone patents-in-suit.

40.    All Documents and Things concerning any prior art searches conducted by or on behalf of Acushnet relating to the Bridgestone patents-in-suit.

41.    All Documents and Things concerning when and how Acushnet became aware of all purported prior art upon which Acushnet relies to allege that one or more claims of the Bridgestone patents-in-suit is invalid, including without limitation all Documents and Things that tend to show or establish the date any such purported prior art was first obtained by Acushnet.

42.    All Documents and Things concerning the results of any testing and/or analysis conducted or used by Acushnet of any of the Prior Art Golf Balls, including, but not limited to, the Prior Art Golf Balls' characteristics, performance, physical attributes, composition and make-up, and further including without limitation size, layer thickness, weight, compression, Shore D hardness, Shore C hardness, JIS-C hardness, velocity, spin, distance (carry and roll), Reynolds number, aerodynamic coefficient, aerodynamic force angle, and trajectory thereof.

43.    All Documents and Things concerning the results of any testing and/or analysis conducted or used by Acushnet of any Prior Art Golf Ball  asserted to be prior art to any of the Bridgestone patents-in-suit, including, but not limited to the product characteristics, performance, physical attributes, composition and make-up, and further including without limitation size, layer

15

thickness, weight, compression, Shore D hardness, Shore C hardness, JIS-C hardness, velocity, spin, distance (carry and roll), Reynolds number, aerodynamic coefficient, aerodynamic force angle, and trajectory thereof.

44.    All Documents and Things concerning any alleged sale and/or public use (as defined by 35 U.S.C. § 102) of the subject matter defined by any of the claims of the Bridgestone patents-in-suit.

45.    All Documents and Things constituting, or referring or relating to, any comparison between any prior art and any claim of any of the Bridgestone patents-in-suit.

46.    All Documents and Things concerning Acushnet's first awareness of any of the Bridgestone patents-in-suit.

47.    All Documents and Things concerning notice to Acushnet from Bridgestone of an allegation of infringement by any Acushnet product of the Bridgestone patents-in-suit.

48.    All Documents and Things concerning any of the Acushnet patents-in-suit, the file histories of each of the Acushnet patents-in-suit, and prior art to the Acushnet patents-in-suit.

49.    All Documents and Things concerning the definition or meaning of any claim term, phrase or element in any of the Acushnet patents-in-suit.

50.    All Documents and Things constituting, or referring or relating to, any communication between Acushnet and any Third Party concerning the Acushnet patents-in-suit and/or any foreign counterparts of the Acushnet patents-in-suit.

51.    All Documents and Things concerning any parent applications, continuation applications, continuation-in-part applications and/or divisional applications of the Acushnet

16

patents-in-suit, and any other patent application that incorporates by reference or consists of a substantial portion of the subject matter from any of the Acushnet patents-in-suit.

52.    All Documents and Things concerning the preparation and filing or prosecution of each of the Acushnet patents-in-suit in, including all applications from which the Acushnet patents-in-suit claim priority and all applications which claim priority from any of the Acushnet patents-in-suit.

53.    All Documents and Things concerning any foreign counterpart of the Acushnet patents-in-suit, including the prosecution of any such foreign counterparts.

54.    All Documents and Things concerning Acushnet's allegation that Bridgestone's products infringe any of the Acushnet patents-in-suit.

55.    All Documents and Things concerning Acushnet's position that any golf ball product made and/or sold by a Third Party infringes or does not infringe any of the Acushnet patents-in-suit.

56.    All Documents and Things concerning any testing, inspection, investigation and/or any other analysis conducted by or on behalf of Acushnet which concerns any of the Bridgestone products, including, but not limited to, product characteristics, performance, physical attributes, composition and make-up and further including without limitation size, layer thickness, weight, compression, Shore D hardness, Shore C hardness, JIS-C hardness, velocity, spin, distance (carry and roll), Reynolds number, aerodynamic coefficient, aerodynamic force angle, and trajectory of any of the foregoing golf balls.

57.    All Documents and Things concerning any decision to sue or not to sue Bridgestone or any other entity for infringement of any of the Acushnet patents-in-suit.

17

58.    All Documents and Things concerning the Acushnet patents-in-suit, including, but not limited to the validity, invalidity, enforceability or unenforceability of the claims.

59.    All Documents and Things constituting, or referring or relating to, any comparison of the Acushnet patents-in-suit and any Bridgestone product, and/or a determination by Acushnet to assert each of the Acushnet patents-in-suit against Bridgestone.

60.    All Documents and Things constituting, or referring or relating to, any competitive analysis of any golf ball, including without limitation, any tests, inspections, investigations, comparisons or examinations of the design, composition, features, functionality and/or performance of such golf ball products.

61.    All Documents and Things concerning prior litigation involving any of the Acushnet patents-in-suit, including without limitation pleadings, motions, declarations, orders, discovery requests, discovery responses, documents produced in response to requests for production of documents or subpoenas, deposition exhibits, deposition transcripts, trial exhibits, trial transcripts, witness statements, expert reports and communications.

62.    All Documents and Things constituting, or referring to, or relating to, any comparison of any Acushnet product with any of the Acushnet patents-in-suit.

63.    All Documents and Things concerning the date each Acushnet product was first sold, offered for sale, or used publicly.

64.    All Documents and Things concerning the marking of any Acushnet products with patent number(s) including the number of the Acushnet patents-in-suit.

65.    All Documents and Things concerning the decision or consideration to not mark any of the Acushnet products with the patent number of any of the Acushnet patents-in-suit.

18

66.    All Documents and Things concerning prior art (including Prior Art Golf Ball and any other Things) to the Acushnet patents-in-suit.

67.    All Documents and Things concerning any prior art searches relating to the Acushnet patents-in-suit.

68.    All Documents and Things concerning any alleged sale and/or public use of the subject matter defined by any of the claims of the Acushnet patents-in-suit.

69.    All Documents and Things concerning the validity, invalidity, enforceability, or unenforceability of any claim of the Acushnet patents-in-suit.

70.    All Documents and Things concerning any comparison between any prior art and any claim of any of the Acushnet patents-in-suit.

71.    All Documents and Things concerning the conception, reduction to practice, diligence, testing, analysis, studies, and other development activities related to the alleged inventions disclosed or claimed in any of the Acushnet patents-in-suit, including without limitation all invention disclosures, inventor notebook entries, workbook entries, invention records, calendars, publications, inventor files and notes, prototypes, photographs, drawings, process descriptions and test reports.

72.    All Documents and Things concerning any industry analysis, commentary, or identification, or recognition of any particular deficiency or need to which the alleged invention in any of the Acushnet patents-in-suit is directed.

73.    All Documents and Things concerning reviews, studies, investigations, and identifications of the inventorship of any of the Acushnet patents-in-suit.

19

74. All Documents and Things, including without limitation any article, abstract, publication, patent, or piece of literature, authored or co-authored by any Acushnet patent inventor.

75. Documents and Things sufficient to show the employer, job title, description and/or responsibilities for all inventors of the '861 patent from 1972 to the present.

76. Documents and Things sufficient to show the employer, job title, description and/or responsibilities for all inventors of the '587 patent from 1972 to the present.

77. Documents and Things sufficient to show the employer, job title, description and/or responsibilities for all inventors of the '367 patent from 1972 to the present.

78. Documents sufficient to show the employer, job title, description and/or responsibilities for all inventors of the '976 patent from 1997 to the present.

79. Documents sufficient to show the employer, job title, description and/or responsibilities for all inventors of the '705 patent from 1997 to the present.

80. All Documents and Things concerning Acushnet's awareness that any accused Bridgestone product allegedly infringed any of the Acushnet patents-in-suit.

81. All Documents and Things constituting, or referring or relating to, notice to Bridgestone from Acushnet alleging infringement of any of the Acushnet patents-in-suit.

82. All Documents and Things concerning any consideration, negotiation, recommendation or proposal regarding obtaining a license or any form of an agreement from Bridgestone to use any of the Bridgestone patents-in-suit, or any other patent assigned to Bridgestone, involving technology related to any model, version, type or revision of any of the Acushnet products, or any other products manufactured, sold or distributed by Acushnet.

83.    All Documents and Things constituting, or referring or relating to, any communication between Acushnet and any Third Party concerning this lawsuit or any defense that Acushnet has asserted or may assert in this lawsuit.

84.    All Documents and Things concerning the licensing of each of the Acushnet patents-in-suit, including, but not limited to:

    (a)    any and all licenses agreements;
    (b)    any and all documents evidencing any payments made under any such licenses;
    (c)    any and all licensing policies;
    (d)    any and all expressions of interest in licensing any of the Acushnet patents-in-suit; and
    (e)    any and all rejections of an offer to take a license to any of the Acushnet patents-in-suit.

85.    All Documents and Things concerning sales and marketing literature and other sales tools developed that evidence, relate or refer to any of the Acushnet products, including, without limitation:

    (a)    business and/or marketing plans,
    (b)    product comparisons,
    (c)    product launch plans, and
    (d)    promotional and advertising materials

86.    All Documents and Things concerning any studies or evaluations of the market or business done by or for Acushnet, including without limitation:

    (a)    business marketing or strategic plans,
    (b)    product launch plans,
    (c)    lost order reports,
    (d)    sales call reports, and
    (e)    general market studies.

87.    All Documents and Things concerning Acushnet's annual revenues and annual revenues derived on a per customer basis from the license, sale, export or use of the Acushnet products since March 7, 1998.

88.    All Documents and Things concerning sales, pricing and profit margin information for each of the Acushnet products since March 7, 1998, including, without limitation, each product's:

    (a) total gross unit sales;
    (b) total net unit sales;
    (c) total gross dollar sales;
    (d) total net dollar sales;
    (e) average unit gross wholesale selling price;
    (f) average unit net wholesale selling price;
    (g) total cost of goods sold;
    (h) average unit cost of goods sold;
    (i) revenue and unit summaries by geography;
    (j) revenue and unit summaries by customer;
    (k) revenue and unit summaries by product;
    (l) revenue and unit summaries by month, quarter and/or year;
    (m) total gross profit margin;
    (n) average gross profit margin per unit;
    (o) total net profit margin;
    (p) average net profit margin per unit;
    (q) product line gross/standard margin reports;
    (r) electronic sales databases;
    (s) corporate profit and loss statements;
    (t) divisional profit and loss statements;
    (u) product line profit and loss statements;
    (v) price elasticity/sensitivity analyses;
    (w) product line contribution reports;
    (x) production summaries; and
    (y) cost allocation procedures.

89.    All Documents and Things concerning any estimates or projections Acushnet has made with respect to the sales, pricing and profit margin information for each of the Acushnet products since March 7, 1998, including, without limitation, each product's:

    (a) total gross unit sales;
    (b) total net unit sales;
    (c) total gross dollar sales;
    (d) total net dollar sales;
    (e) average unit gross wholesale selling price;
    (f) average unit net wholesale selling price;
    (g) total cost of goods sold;
    (h) average unit cost of goods sold;
    (i) revenue and unit summaries by geography;
    (j) revenue and unit summaries by customer;
    (k) revenue and unit summaries by product;
    (l) revenue and unit summaries by month, quarter and/or year;

(m) total gross profit margin;
(n) average gross profit margin per unit;
(o) total net profit margin;
(p) average net profit margin per unit;
(q) product line gross/standard margin reports;
(r) electronic sales databases;
(s) corporate profit and loss statements;
(t) divisional profit and loss statements;
(u) product line profit and loss statements;
(v) price elasticity/sensitivity analyses;
(w) product line contribution reports;
(x) production summaries; and
(y) cost allocation procedures

90.    All Documents and Things concerning actual or projected market share information for the Acushnet products since March 7, 1998.

91.    All Documents and Things concerning the submission of any model, version, type or revision of the Acushnet products to the USGA for listing on the List of Conforming Golf Balls since March 7, 1998, including, but not limited to, all USGA applications, USGA testing results, communications either to or from the USGA, and documents and things concerning or referencing such submissions or communications.

92.    All Documents and Things concerning the use and/or testing of any model, version, type or revision of the Acushnet products by any member of the Professional Golfers' Association of America ("PGA") or Ladies Professional Golf Association ("LPGA") from March 7, 1998 to the present, including, but not limited to, endorsement contracts, licenses, and the models, versions, types or revisions of the Acushnet products used and/or tested.

93.    All Documents and Things concerning the number, type, model and configuration of each of the Acushnet products sold, provided, exported or otherwise supplied by Acushnet to each of its customers since March 7, 1998.

94.    All Documents and Things concerning the number, type, model and configuration of each of the Acushnet products manufactured by Acushnet since March 7, 1998.

23

95.    All Documents and Things concerning the number, type, model and configuration of each of the Acushnet products exported by Acushnet since March 7, 1998.

96.    All Documents and Things concerning the sale or potential sale of Acushnet or the merger of Acushnet with another corporate entity, including, without limitation, any valuations of Acushnet.

97.    Documents and Things sufficient to describe Acushnet's document retention, management and/or destruction policies and practices, including policies and practices related to electronic mail from 1990 to the present.

98.    All Documents and Things concerning the allegations and denials set forth by Acushnet in the Answer, including, but not limited to, all Documents and Things which tend to contradict or draw into question any of the allegations and denials set forth in the Answer.

99.    All Documents and Things concerning resilience index, as that phrase is used in the '705 patent.

100.    All Documents and Things concerning CB23, CB22, BR-60, BR-40, Taktene 8855, CARIFLEX BR1220, BUDENE 1207G, and BR11, and the resilience index, lost tangent thereof, and the analysis, investigation, inspection, and use of any of the foregoing materials in golf balls.

24

MORRIS, NICHOLS, ARSHT & TUNNELL

Jack B. Blumenfeld (#1014)
Maryellen Noreika (#3208)
Leslie A. Polizoti (#4299)
1201 N. Market Street
P.O. Box 1347
Wilmington, DE 19801
(302) 658-9200
*Attorneys for Bridgestone Sports Co., Ltd.*
*and Bridgestone Golf, Inc.*

OF COUNSEL:

Robert M. Masters
John T. Callahan
Raja Saliba
SUGHRUE MION, PLLC
2100 Pennsylvania Avenue, N.W.
Washington, D.C.  20037
(202) 293-7060

June 7, 2005

# EXHIBIT 14
# CONFIDENTIAL EXHIBIT

# EXHIBIT 15
# CONFIDENTIAL EXHIBIT

# EXHIBIT 16

**Wikberg, Terry J.**

**From:**    Grimaldi, Alan [GrimaldiA@howrey.com]
**Sent:**    Tuesday, June 27, 2006 5:19 PM
**To:**      Masters, Robert M.
**Cc:**      Sommer, Andrew; Seal, Brian; rhorwitz@potteranderson.com
**Subject:** RE: Housekeeping items-Bridgestone/Acushnet

Three invalidity positions is not sufficient- we have 102, 103, 112- and we need discovery to find out if there are others and we can't be limited to three.
It is at least two weeks since I asked you about dropping '125 or producing witnesses- but I am not going to argue in emails. We will take up the issues with the Court. Next Thursday afternoon or Friday may be good dates for discovery conference with the Court if Judge Farnan is available. I need to see if Rich Horwitz is available as well.
Alan

---

**From:** Masters, Robert M. [mailto:robmasters@paulhastings.com]
**Sent:** Tuesday, June 27, 2006 4:48 PM
**To:** Grimaldi, Alan
**Subject:** RE: Housekeeping items-Bridgestone/Acushnet

On the invalidity positions, three references; reference being a published document (like a patent) or golf ball.

On '125 patent, you put off the depositions and we told you we would not provide dates until you asked. I am assuming from your email you want the deposition of the two inventors you noticed, so I will get dates for you. You have not been asking for weeks for depositions - that is what we have been doing and still do not have dates from you for the 30b6 depos on the balls or a witness to answer questions that Troy Lester could not do.

-----Original Message-----
**From:** Grimaldi, Alan [mailto:GrimaldiA@howrey.com]
**Sent:** Tuesday, June 27, 2006 4:42 PM
**To:** Masters, Robert M.
**Cc:** Sommer, Andrew
**Subject:** RE: Housekeeping items-Bridgestone/Acushnet

I will call you soon- I have been tied up on a meet and confer in another case- when you say three invalidity positions -we mean three references- it does not limit us from asserting  prior art golf balls as well.
Also where are you on the '125patent - we have been asking for depositions for weeks and get no response- either tell us dates or drop the patent.

---

**From:** Masters, Robert M. [mailto:robmasters@paulhastings.com]
**Sent:** Tuesday, June 27, 2006 4:20 PM
**To:** Grimaldi, Alan
**Cc:** Seal, Brian; Sommer, Andrew; .MRCK - jblumenfeld; White, Brandon M.; Wikberg, Terry J.
**Subject:** RE: Housekeeping items-Bridgestone/Acushnet

7/25/2006

Alan,

Here is our proposal responding to limiting claims.

Bridgestone will reduce the number of claims being asserted at this time to 40 to 45 total. This represents a reduction by about one half of the number of claims now asserted. Once Acushnet reduces its invalidity contentions down to 3 invalidity positions per patent, Bridgestone will then be reduce its total claims to 30. We are not in a position to reduce the number of claims to 30 now because of Acushnet's expansion of its invalidity contentions on the last day, and because of its failure to set forth the combinations making up its §103 invalidity positions. The game is not, as you phrased it, for us to figure out where in the large mountain of prior art is the reference or references you plan to rely on at trial. If that is what you insist upon, then the Court will need to sort this out.

Our proposal is consistent with the Court's previous ruling and will get to a point where the Court will only need to decide claim construction issues in claims that Bridgestone is going forward on for trial. We can also proceed with the Court's current Markman schedule, requiring a joint submission by July 19.

At the present time, Acushnet has asserted about 50 claims from 4 patents, where 3 of the 4 are nearly identical. Acushnet should also limit its asserted claims from 50 to a maximum of 15.

Please consider this proposal and let us know if you are agreeable. I am in the office, but was on a conference call when you called me earlier today. We can discuss this proposal to move things along.

Rob

---

Robert M. Masters | Paul, Hastings, Janofsky & Walker LLP | 875 15th Street, N.W., Washington, D.C. 20005 | direct: 202 551-1763 | main: 202 551-1700 | direct fax: 202 551-0173 | RobMasters@paulhastings.com | www.paulhastings.com

-----Original Message-----
**From:** Grimaldi, Alan [mailto:GrimaldiA@howrey.com]
**Sent:** Monday, June 19, 2006 6:41 PM
**To:** Masters, Robert M.
**Cc:** Seal, Brian; Sommer, Andrew
**Subject:** Housekeeping items-Bridgestone/Acushnet

Representative claims-we are willing to limit contentions based prior art references -- 3 102 and 5 103 -but we need to insure that you are standing on the filing dates of your patents and will not go behind them- if this is the case we can get you a list in a few days. This is based on good faith response from you e.g. if you think you are going to have 30 representative claims the deal is off- that order of magnitude is too great for this compromise.

Can we meet and confer on Thursday with respect to a joint testing protocol ( Brian Seal will do it- I am out)
On the '125, are you continuing to assert this patent, if so can you provide the two witnesses we noticed a while ago for deposition by the end of the month,. We are

7/25/2006

gong to start noticing depositions in the next week or so.

Special Master for attorney/client, work product issues- we gave you our
updated list- time is ripe for appointment of a Master. I will check with local
counsel but I think we should jointly submit letter or pleading to court to speed
up this process. If you have any thoughts let me know. Thanks

Alan


Alan M. Grimaldi
Howrey LLP
1299 Pennsylvania Avenue, N.W.
Washington, D.C. 20004
Tel: 202-383-6989
Fax: 202-383-6610
grimaldia@howrey.com




---------------------------------------------------------------------------------
This email and any attachments contain information from the law firm of Howrey LLP, whi
The information is intended to be for the use of the individual or entity named on this email.
If you are not the intended recipient, be aware that any disclosure, copying, distribution or u
If you receive this email in error, please notify us by reply email immediately so that we can


*********************************************************
IRS Circular 230 Disclosure:    As required by U.S. Treasury Regulations govern
*********************************************************

This message is sent by a law firm and may contain information that is privileg

For additional information, please visit our website at www.paulhastings.com.


*********************************************************
IRS Circular 230 Disclosure:    As required by U.S. Treasury Regulations governing t
*********************************************************

This message is sent by a law firm and may contain information that is privileged or

For additional information, please visit our website at www.paulhastings.com.




7/25/2006