# Morris, Nichols, Arsht & Tunnell LLP

1201 North Market Street
P.O. Box 1347
Wilmington, Delaware 19899-1347

302 658 9200
302 658 3989 Fax

Jack B. Blumenfeld
302 351 9291
302 425 3012 Fax
jblumenfeld@mnat.com

July 31, 2006

**REDACTED PUBLIC VERSION**

**BY ELECTRONIC FILING**

The Honorable Joseph J. Farnan, Jr.
United States District Court
844 King Street
Wilmington, DE 19801

Re:     Bridgestone Sports Co., Ltd. et al. v. Acushnet Company, C.A. No. 05-132 (JJF)

Dear Judge Farnan:

In a purported effort to "clarify numerous issues" in its July 26 letter, Acushnet has misstated the posture of this case and the status of discovery. Rather than addressing its numerous discovery defaults, Acushnet lashes out at Bridgestone, repeatedly making accusations of "false" statements and "outright fabrications." It also argues over and over – a year and a half into the case with only two months left in fact discovery, with a conference now set to resolve discovery issues – that the disputes Bridgestone has been raising for months are somehow "not ripe." Such incorrect accusations and statements do not justify Acushnet's failures to provide discovery. In addition, Acushnet's July 25 letter overstates the complexity of the infringement issues in this case. We briefly address both of those letters.

### Acushnet's July 25, 2006 Letter

### Acushnet's Pending Rule 37 Motions:

Acushnet merges two of its motions in a confusing way in an attempt to bolster the relevance of the information sought. Bridgestone stands on its Oppositions to each of these separate motions. (See D.I. 119 and 121.)

As to Acushnet's Motion to Compel Responses to Interrogatory No. 25, Bridgestone has never said that organosulfur compounds are "of minimal relevance[.]" In fact, they are central to Acushnet's infringement of three of Bridgestone's patents in suit. But that

does not mean that Bridgestone should have to review over 200,000 pages of documents to look for each and every use of the word "organosulfur." Acushnet can do that itself.

As to Acushnet's Motion to Compel Response to Interrogatory Nos. 28-37, even considering Acushnet's attempt to narrow its broad request (see fn. 2), Acushnet still does not articulate any reason why this information is relevant when Bridgestone has already agreed to stand on its priority date.

As to Acushnet's Motion to Compel Document Request Nos. 4, 5 and Interrogatory No. 9, Acushnet does not limit its requests enough. Although Bridgestone continues to believe this request is directed to irrelevant information, it is agreeable to producing sales information for each of the golf balls.

### Representative Claims:

Bridgestone has repeatedly stated that it is not opposed to limiting the number of claims in this case. In the face of the huge number of invalidity variations set forth by Acushnet on the last day for contentions, however, Bridgestone should not be forced to make a "blind" election. Bridgestone believes that the reduction of claims must coincide with Acushnet's concurrent agreement on the reduction of its voluminous invalidity contentions.

Bridgestone is prepared to limit the number of asserted claims to about 40 to 45 for its nine asserted patents, provided that Acushnet limits and clarifies its invalidity contentions. Bridgestone will be prepared to reduce the number of asserted claims after Acushnet pares its invalidity contentions to no more than three positions per patent. As Acushnet correctly states, discovery has progressed significantly such that the parties can adequately assess the case and its risks to determine which claims to proceed with – the same holds true for invalidity contentions.

Moreover, Acushnet disputes more than 40 claim terms in 14 claims of Bridgestone's nine patents. Thus, even if Bridgestone reduced the number of asserted claims, Acushnet would still be asking the Court to construe a very large number of claim terms. In contrast, Bridgestone seeks to construe only five terms from Acushnet's four patents. Further, in a July 26 conference, Bridgestone agreed to the definitions of eight terms proposed by Acushnet and the parties agreed on the definitions of two additional terms in Acushnet's patents-in-suit. Further, with regard to Bridgestone's patents, the parties were "close" to agreeing on about 13 definitions, with further discussion to take place in an effort to remove them from dispute.

If the goal is to reduce the number of issues for claim construction, Bridgestone believes that the proper mechanism is to limit the number of claim terms to be defined by both parties, not to limit the number of claims. Bridgestone will agree to limit the number of terms in dispute to whatever number the Court believes is reasonable.

It has always been, and still is, Bridgestone's intention to assert representative claims in this case. Further, it has always been Bridgestone's intention not to waste the Court's or the parties' time and effort construing terms in claims which will likely not be asserted at trial.

The Honorable Joseph J. Farnan, Jr.
July 31, 2006
Page 3

However, Bridgestone is not in a position to agree on representative claims until Acushnet agrees on providing a limited number of invalidity contentions.

### Acushnet's July 26, 2006 Letter

### Acushnet's Invalidity Contentions:

Acushnet's invalidity contentions are not clear. For example, Acushnet does not set forth the combination of prior art references that make up its assertions of invalidity under §103. Instead, Acushnet cites to numerous references and contends that some unstated combinations of several references render the asserted claims invalid. Acushnet should be required to set forth its contentions so that Bridgestone knows what combination of prior art is being relied upon.

### Source Log and Document Production:

The burden and "work" Acushnet complains of are of its own creation. Acushnet's initial document collection was unorganized and done with little regard for completeness, accuracy or organization. The document collection efforts were not supervised by attorneys; engineers, executives and sales personnel were left on their own, without attorney supervision or even the actual document requests. Therefore, Acushnet cannot complain now about the burden that it has brought upon itself.

Bridgestone's concerns regarding Acushnet's production efforts go back to last September, when Bridgestone first questioned Acushnet's document production and the number of documents produced. Ex. 1, at page 3, Ex. 2 and Ex. 3. It took Acushnet more than two months to respond to Bridgestone's questions. With regard to Bridgestone's initial "source" questions, Acushnet agreed to "provide [Bridgestone] the information necessary for [Bridgestone] to determine the set of documents from which each document redacted by Acushnet was pulled." Ex. 4 at 3. No such information was ever provided, and now apparently cannot be.[1]

Acushnet is unable to tell Bridgestone what percentage of the source log is correct, let alone which descriptions are correct. Stating that some of the source log may be correct (so that Bridgestone's calculation of 98% may be incorrect) does not solve the problem. Moreover, because many documents do not have authors identified, have many recipients (any one of which could have produced the document) and have handwritten notes with no clear indication whose handwriting it is, Acushnet understates the importance of the "initial custodian." For example, Jeffrey Dalton was the "author" of an e-mail (Ex. 5) but was unable to testify as to whose handwritten notes were on the document. *See* Ex. 6 at 157.

---

[1] Even as recently at May 16 Acushnet agreed to supplement its source log and complained of no burden. See Ex. 13 at 3. Further, the source log was discussed at meet and confer conferences held on July 14 and 24 and no agreement was reached.

The Honorable Joseph J. Farnan, Jr.
July 31, 2006
Page 4

Throughout discovery, Bridgestone has raised with Acushnet the deficiencies and problems with its production, and the identification of what appeared to be missing documents. *See* Ex. 7, 8 and 9. In the face of these repeated requests, and after Acushnet's production of some additional documents to address some of Bridgestone's concerns, Acushnet told Bridgestone on April 3, 2006 that its document production was "complete." *See* Ex. 10 at 1. It is difficult to understand how this was not an "end" to the meet and confer process.

After a small volume of additional document production <u>after</u> April 3, 2006, Bridgestone continued to suspect that additional documents existed. Based on Acushnet's representation, however, Bridgestone was at a dead end. Then, on April 26, Bridgestone deposed Troy Lester. During this deposition, Bridgestone's suspicions were confirmed, thus prompting Bridgestone to re-open discussions regarding documents. *See* Ex. 12. These suspicions were again confirmed when Bridgestone deposed Michael Jordan, a former Acushnet employee, who identified numerous types of documents which Bridgestone has never seen.[2] However, in the face of this deposition testimony, on May 16, 2006, Acushnet again stated that "Acushnet is not withholding non-privileged documents related to specific requests." Ex. 13 at 1.

Then beginning on July 20, Bridgestone began deposing Jeffrey Dalton, an Acushnet 30(b)(6) witness. Mr. Dalton also identified numerous types of documents which Bridgestone has not seen. Two examples (although there are many more) are documents from the Recipe Change database and an e-mail with attachments that were not produced.[3]

Only now, when Bridgestone has identified scores of additional relevant documents, and has requested assistance from the Court, has Acushnet agreed to produce additional documents that should have been produced last summer. *See* Ex. D to Acushnet's July 26 letter to the Court. This is not an instance where a set of documents may have been overlooked initially. Instead, it is one where Acushnet's unsupervised document collection is the cause for substantial documents being withheld. Indeed, Acushnet now acknowledges the existence of additional documents, after telling Bridgestone <u>twice</u> that Acushnet's production was "complete" and that no responsive documents were being withheld. It is difficult to

---

[2] As an example, Mr. Jordan testified to the existence of: "drafts or revisions" of manufacturing guidelines, the fact that final manufacturing guidelines typically were not indicated as "Preliminary" or have track changes on them (some of the guidelines produced to Bridgestone either are identified as "preliminary", have track changes on them, or handwritten notes which change some of the parameters for manufacture), the "weight feed manufacturing system"; and presentation materials by various individuals to R & D engineers. Ex. 14 at 26:21 to 42:15; 295:20 to 299:19.

[3] See Ex. 15 at 49:6 to 53:1 and 81:18 to 83:11 (testifying the existence of a significant number of Recipe Change notices not produced); and See Ex. 6 at 98:13 to 100:1 (testifying that the attachments with the e-mail were printed and provided to Acushnet's attorneys for production).

understand how Acushnet can argue that the issues are "not ripe." As demonstrated by Exhibits 1, 2, 4, 7, 8, 9, 10, and 12, Acushnet's statement that these issues have been raised for the first time by Bridgestone is incorrect.

It appears that Acushnet has either (1) failed to do a thorough document collection and production, or (2) simply withheld relevant non-privileged documents. Either way, this cannot continue. In either case, Acushnet should be ordered to produce all relevant documents, as well as the source of the documents produced. Bridgestone should not be prejudiced because of Acushnet's unorganized, unsupervised and dilatory document production.

### Redactions

The redaction issues were discussed with Acushnet on both July 14 and July 24, with no resolution. Because of the imminent close of fact discovery, Bridgestone believes that the Court's assistance is required at this time.

### Acushnet's 30(b)(6) Witness on Document Retention Policy

Exhibit H to Acushnet's July 26 letter states that "Bridgestone is not entitled to any additional testimony on that topic." Ex. H at page 4. Bridgestone understood that the meet and confer process was over on that issue.

### Deposition Scheduling

Acushnet has consistently delayed providing deposition dates to Bridgestone. Ex. 16. In fact, at almost every meet and confer, Bridgestone has requested dates for outstanding depositions. Each of Bridgestone's requests to expedite obtaining deposition dates has been ignored. This issue too is plainly ripe.

Acushnet noticed Mr. Watanabe's deposition on January 19, 2006, but then said it wanted to put off his deposition. As a result, Bridgestone wrote to Acushnet, saying that he (and two others) would not be produced until requested. Ex. 11 at 1. Acushnet did not request Mr. Watanabe until July 24, 2006. Mr. Watanabe will be produced shortly. Ex. 17.

Respectfully,

*/s/ Jack B. Blumenfeld (#1014)*

Jack B. Blumenfeld

JBB/bls

cc:   Peter T. Dalleo, Clerk (By Hand)
      Richard L. Horwitz, Esquire (By Hand)
      Alan M. Grimaldi, Esquire (By Fax)
      Robert M. Masters, Esquire (By Fax)