# EXHIBIT 1



2100 Pennsylvania Avenue, NW
Washington, DC 20037-3213
T 202.293.7060
F 202.293.7860

www.sughrue.com

**SUGHRUE MION, PLLC**

September 30, 2005

*Via Facsimile*

Matthew J. Moore
Howrey LLP
1299 Pennsylvania Avenue, NW
Washington, DC 20004

      Re:    *Bridgestone Sports Co., Ltd. v. Acushnet Co.*, C.A. No. 05-132 (JJF) (D.Del.)

Dear Matt:

      Based on our initial review of Acushnet's production, we have noticed the following deficiencies, which we would like to discuss with you prior to the October 5, 2005 hearing:

      1.    It does not appear that Acushnet produced any information regarding the export of golf balls manufactured in the United States. Such documents are responsive to at least Document Requests 87, 93 and 95.

      2.    It also does not appear that Acushnet produced manufacturing reports sufficient to identify the number and type of golf balls manufactured at its U.S. manufacturing facilities. Such documents are responsive to at least Document Requests 13 and 94.

      3.    Acushnet appears to have produced very limited financial information. The documents produced thus far appear to be bi-annual reports that include the number of units of accused balls produced, the dollar value of these sales, the costs and the margin without providing any further breakdown or detail to which Bridgestone is entitled. Such documents are responsive to at least Document Requests 87-89, 109, 110 and 112.

      4.    It does not appear that Acushnet produced documents responsive to at least Document Requests 16-17 and 91 requesting documents relating to USGA certification and compliance.

      5.    It does not appear that Acushnet produced documents responsive to at least Document Requests 64 and 65, relating to Acushnet's patent marking policies and procedures.

      6.    It appears that Acushnet produced only a select few documents relating to PGA/LPGA player testing, endorsement contracts, licenses, etc. We believe there is likely to be many more responsive documents. See at least Document Request 92.

      7.    Acushnet's production does not appear to be complete at least with respect to documents relating to the development of the Pinnacle Exception and Titleist DT So/Lo, as requested by at least Document Requests 8-12. For example, the small volume of documents for



Matthew J. Moore
Howrey LLP
September 30, 2005
Page 2

these golf balls relative to those produced for the ProV1 and ProV1x golf balls leads us to believe that responsive documents are being withheld.

8.    It does not appear that Acushnet produced documents responsive to at least Document Requests 24-25 and 78-79 requesting organizational, corporate management charts, and employee rosters, and the roles and responsibilities of the inventors of the Acushnet patents-in-suit.

9.    It also does not appear that Acushnet produced documents responsive to at least Document Request 84, which requests licensing of the patents-in-suit.

10.    Acushnet does not appear to have produced documents responsive to at least Document Requests 19-22, 39-43, 56 and 60 requesting documents relating to any testing or analysis of golf balls Acushnet asserts as prior art against one or more of the Bridgestone patents-in-suit.

11.    Acushnet does not appear to have produced documents from the personal files from all of the individuals involved in the development of the Acushnet products and the inventors of the Acushnet patents-in-suit as requested by at least Document Request 102

12.    It does not appear that Acushnet produced documents responsive to at least Document Requests 100 and 135-143, requesting documents relating to BR-11, BR-18 and BR-19.

13.    Acushnet has not produced any sales and marketing literature, displays, advertisements, etc. as requested by at least Document Request 85.

14.    Acushnet has not produced all file histories of the parent applications and pending applications that relate to the Acushnet patents-in-suit, as defined in at least Document Requests 51-52. In particular, we did not find file histories for at least U.S. Application Nos.: 09/989,191; 09/404,164; 08/922,633; 09/721,740; 09/461,736; 09/311,591; 09/274,015; 60/113,949; 05/236,318; 05/363,353; 05/716,100; 05/816,882; 05/920,396; and 06/091,087.

15.    Acushnet does not appear to have produced documents responsive to at least Document Request 53, requesting the foreign counterpart applications and prosecution histories corresponding to the Acushnet patents-in-suit.

16.    Acushnet has not produced dimple data, including dimple geometry, and aerodynamic characteristics for the HP Eclipse and Tour Distance golf balls, as requested in at least Document Request 132.



Sughrue
SUGHRUE MION, PLLC

Matthew J. Moore
Howrey LLP
September 30, 2005
Page 3

17.    Acushnet has not produced documents relating to the acquisition, custody or storage of any ball that Acushnet has analyzed and maintains anticipates or render obvious one or more claims any patent-in-suit, as requested in at least Document Request 133.

18.    Acushnet has not produced samples as requested in at least Document Requests 114 and 115. There are other document requests relating to samples that we discussed in our meet and confer of September 28, which we do not mention herein.

In addition, we have noticed the following procedural problems in Acushnet's production. The following (as well as the foregoing) is not intended to be an exhaustive list, but merely an exemplary showing of problems encountered to date. Moreover, the specific examples identified should not be assumed to represent each occurrence of the problem, but merely to illustrate one example of the problem.

1.    We found that there were no redactions in the first twenty-two (22) boxes produced, whereas nearly every document in the last four (4) boxes produced contained redactions. It seems that these redacted documents were pulled from where they originally appeared and hence the documents produced to us are not in an order as kept in the ordinary course of business. In other words, you removed certain documents (those found in the last four (4) boxes) from the earlier production so they could be redacted, in which case we have no way of knowing where those redacted documents were removed from the first twenty-two (22) boxes. Please provide us with the necessary information to let us determine the set of documents from which these redacted documents were pulled from.

2.    You have indicated that blue sheets in Acushnet's production represent document breaks which accurately reflect breaks in the documents as kept by Acushnet. This representation, however, does not appear accurate. For example, there is a blue break sheet between AB-43026, page 7 of JP 11-319148, and AB-43027, page 8 of JP 11-319148, another blue break sheet between AB-43201, page 13 of an Amendment, and AB-43202, page 14 of the same Amendment, and yet another blue break sheet between AB-44982, page 7 of a bound inventor notebook, and AB-44983, page 8 of the same bound inventor notebook. In addition, there are no break sheets between the discrete documents at AB-38561-62 and no break sheets between the several discrete e-mails at AB-38317-38340. These are just a few examples of the placement of blue sheets that gives us doubt about your representation.

3.    Certain documents were missing from the production, including at least documents AB-6094-6095, 22411, 33547-34044. Please immediately produce these missing documents or explain why they are missing.


**Sughrue**
SUGHRUE MION, PLLC

Matthew J. Moore
Howrey LLP
September 30, 2005
Page 4

    4.     Numerous e-mail documents were produced without the accompanying attachments. (*See, e.g.,* AB975-1046 and 2233). Please immediately produce the attachments or explain why they are missing.

    5.     Certain Excel files were printed so as to be unreadable. (*See, e.g.,* AB-29537-AB 30726.) Many of these documents appear to have been printed specifically for this production as they indicate a date in the footer of "8/25/2005." Please provide the electronic version of these documents immediately.

    6.     Many documents have been inappropriately marked as highly confidential (e.g., an entire box of patents and BSP's own press releases). Box 11 (AB-18000 to AB- 20204) contains only patent literature, yet each page in this box is labeled as "highly confidential." Please confirm that you will withdraw this improper assertion of confidentiality.

    7.     There are several documents that appear to have been inserted into the production by your vendor or during your review process, including AB-3124 ("LOOSE DOCS HERE"), AB-11777 ("Color Document Here"), and AB-11777 ("Document Break"). Please identify whether these documents are part of Acushnet's production.

    8.     Acushnet produced four (4) video tapes (each with a 2-4 hour video capacity). We viewed these video tapes, and two of the video tapes (AB 46299 and AB46300) appear to be completely blank. One of the video tapes (AB46301) has a short (approximately one minute long) video clip and is otherwise blank, and the other video tape (AB46302 - labeled as confidential) has a short (a few minutes long) video clip and is otherwise blank. Please check your original video tapes and let us know whether the video tapes you produced are complete, particularly since the first two video tapes mentioned above are completely blank.



Matthew J. Moore
Howrey LLP
September 30, 2005
Page 5


As we indicated above, the items listed above are not intended to be an exhaustive list, but rather just a listing of issues we have identified thus far in our review of Acushnet's production. We would like to continue the meet and confer process to try to resolve these issues. Please let us know of your availability prior to next Wednesday's hearing.


Very truly yours,

Robert M. Masters
Steven M. Gruskin

EXHIBIT 2



2100 Pennsylvania Avenue, NW
Washington, DC 20037-3213
T 202.293.7060
F 202.293.7860

www.sughrue.com

October 12, 2005

***Via Facsimile***

Matthew J. Moore
Howrey LLP
1299 Pennsylvania Avenue, NW
Washington, DC 20004

   Re: *Bridgestone Sports Co., Ltd. v. Acushnet Co.*, C.A. No. 05-132 (JJF) (D.Del.)

Dear Matt:

   Further to our letter of September 30, 2005, in which we identified extensive deficiencies in Acushnet's production, and my conversation with Brian Seal last Friday about this matter, I am writing to confirm Mr. Seal's agreement that you will let us know this week whether you believe Acushnet has completed its production for *each* deficiency identified in our September 30 letter.

   I also would like to confirm Mr. Seal's agreement that, for each deficiency that you believe Acushnet has *already* satisfied its obligation, you will specify by Bates range those documents demonstrating this to be the case. Mr. Seal stated that such information would be forthcoming within the next couple of weeks, once your firm has completed coding Acushnet's production. Please confirm a date certain by when you intend to provide this information.

   Given the extent of the deficiencies identified thus far, I am concerned that Acushnet was either not adequately instructed as to the scope of Bridgestone's discovery requests or that Acushnet failed to properly follow these instructions. It is, therefore, critical that we resolve this issue without further delay, as we are already six weeks past the Court's deadline for producing documents.

        Very truly yours,

        Raja Saliba

cc: Jack B. Blumenfeld

# EXHIBIT 3



2100 Pennsylvania Avenue, NW
Washington, DC 20037-3213
T 202.293.7060
F 202.293.7860

www.sughrue.com

November 9, 2005

***Via Facsimile***

Matthew J. Moore
Howrey LLP
1299 Pennsylvania Avenue, NW
Washington, DC 20004

      Re:    *Bridgestone Sports Co., Ltd. v. Acushnet Co.*, C.A. No. 05-132 (JJF) (D.Del.)

Dear Matt:

      It has been nearly <u>two months</u> since our September 30 letter to you in which we identified numerous and significant deficiencies in Acushnet's production and nearly one month since our follow-up letter of October 12 confirming Mr. Seal's promise to me that a written response would be forthcoming within a couple of weeks (*i.e.*, by October 21). We have yet to receive any written response from you on this matter.

      When we last spoke on October 26, I expressed my concern over your failure to provide us with Acushnet's position as to each deficiency identified in our September 30 letter. Again, I was promised that a written response would be sent soon. However, two weeks have past and still no word from you.

      Your delay has considerably hindered our efforts to prepare for the deposition phase of discovery and is inexcusable, especially given the extent of the omissions in Acushnet's production. One notable example is Acushnet's failure to produce the file histories of the parent applications and pending applications that relate to the Acushnet patents-in-suit, as well as the file histories for the foreign counterparts to the Acushnet patents-in-suit. These and other documents identified in our September 30 letter should have been produced, and we request that they be sent to our offices immediately. For those deficiencies that you believe Acushnet has already satisfied its obligation, you agreed to identify the documents by Bates range and we expect to receive this information without further delay. Accordingly, please provide me with a date certain by when we will receive your response.

      Very truly yours,

Raja Saliba



SUGHRUE MION, PLLC

Matthew J. Moore
Howrey LLP
November 9, 2005
Page 2


cc:     Jack B. Blumenfeld

EXHIBIT 4

# HOWREY.LLP

1299 Pennsylvania Avenue, NW
Washington, DC 20004-2402
www.howrey.com

**Matthew J. Moore**
Partner
T 202.383.7275
F 202.383.6610
moorem@howrey.com

November 10, 2005

Raja N. Saliba, Esq.
Sughrue Mion, PLLC
2100 Pennsylvania Avenue, N.W.
Washington, D.C. 20037-3213

Re:    *Bridgestone Sports Co. v. Acushnet Co.*
       Civil Action No. 05-132 (JJF) (D. Del.)

Dear Raja:

I write in response to your September 30, 2005 letter in which you identify certain alleged deficiencies in Acushnet's document production. The numbered paragraphs below correspond to the paragraph numbers in your letter. Where we identify produced documents in response to your letter, we do so by identifying specific bates numbers subject to our verbal agreement that you will similarly identify bates numbers in response to deficiencies we identify in Bridgestone's production.

1.    You believe that Acushnet has not produced "any information regarding the export of golf balls manufactured in the United States," which you believe is responsive to Bridgestone document request nos. 87, 93 and 95. We have, however, provided export data to you. *See* AB 48243-48244, 48248, 48262-48265, 48286-48289, 48314-48317, 48343-48347, 48363-48368, and 48391-48396.

2.    You request "manufacturing reports sufficient to identify the number and type of golf balls manufactured at [Acushnet's] manufacturing facilities," which you believe are responsive to Bridgestone Document Request Nos. 13 and 94. We have, however, provided several inventory reports to you. *See* AB 48413-48825. We are investigating whether we have any additional data responsive to those requests.

3.    You requested that Acushnet produce financial reports with some level of "further breakdown or detail" than the documents Acushnet has already produced. *See* AB48227-406. The reports produced by Acushnet, however, are the most detailed documents in our possession, custody or control responsive to your request.

4.    In response to your paragraph no. 4 regarding documents relating to USGA certification and testing, we enclose documents labeled AB 53357-411.

**HOWREY**LLP

Raja N. Saliba, Esq.
November 10, 2005
Page 2

5. In response to your paragraph no. 5 regarding Acushnet's patent marking policies and procedures, Acushnet does not have any responsive documents in its custody, possession or control.

6. In response to your paragraph no. 6 regarding PGA/LPGA player testing, see the documents produced previously by Acushnet as AB 57394 and 57400. We are investigating whether we have any additional documents responsive to your Request No. 92 "concerning the use and/or testing of any model, version, type or revision" of the accused products by any member of the PGA or LPGA.

7. In response to your paragraph no. 7 regarding documents relating to the development of the Pinnacle Exception and DT SoLo, Acushnet states that it is not withholding any documents.

8. In response to your paragraph no. 8 regarding documents relating to organizational and corporate management charts, etc., we enclose documents labeled AB 52390-52411.

9. In response to your paragraph no. 9 regarding Acushnet's licensing of the patents-in-suit, we will produce the requested documents.

10. In response to your paragraph no. 10 regarding Acushnet's "testing or analysis of golf balls Acushnet asserts as prior art against one or more of the Bridgestone patents-in-suit," please see documents produced previously as AB 4459-4707.

11. In response to your paragraph no. 11 regarding "documents from the personal files from all of the individuals involved in the development of the Acushnet products and the inventors of the Acushnet patents-in-suit," please see the documents produced previously as AB 4710-4840, 16037-16779, 36538-37027, 44739-45387, 51190-51350, and 50764-51150. We are investigating whether we have any additional documents responsive to your request.

12. In response to your paragraph no. 12 regarding "documents relating to BR-11, BR-18 and BR-19," Acushnet states that it has no responsive documents in its possession, custody or control.

13. In response to your paragraph no. 13 regarding "sales and marketing literature, displays, advertisements, etc.," we enclose documents labeled AB 52382-52389 and 52321-52376.

14. In response to your paragraph no. 14 regarding "file histories of the patent applications and pending applications that relate to the Acushnet patents-in-suit," we enclose documents labeled AB 52412-52641 and 52824-53356.

**HOWREY** LLP

15. In response to your paragraph no. 15 regarding "foreign counterpart applications and prosecution histories corresponding to the Acushnet patents-in-suit," we enclose documents labeled AB 52642-52823.

16. In response to your paragraph no. 16 regarding "dimple data, including dimple geometry, and aerodynamic characteristics for the HP Eclipse and Tour Distance golf balls," Acushnet notes that, while you have informed us that Bridgestone intends to supplement its responses to Acushnet's contention interrogatories to identify the HP Eclipse and Tour Distance golf balls as prior art to one or more claims of the Acushnet patents-in-suit, you have not yet supplemented those responses. Unless and until you do, Acushnet stands on its objection that those two non-accused golf balls are irrelevant to this case.

17. In response to your paragraph no. 17 regarding "documents relating to the acquisition, custody or storage of any ball that Acushnet has analyzed and maintains anticipates or render [sic] obvious one or more of claims any [sic] patent-in-suit," please see the documents produced previously as AB 4459-4709. Other than the acquisition and custody information included at the top of those documents, Acushnet has no responsive documents in its custody, possession or control.

18. In response to your paragraph no. 18 regarding samples of "retail packaging for each of the Accused Products," (Bridgestone Req. No. 115), we will produce the requested documents. Regarding the production of samples of "each model, type, version and revision of the Acushnet products" (Bridgestone Req. No. 114), we note that we have a limited number of samples of golf balls that are no longer on the market. For example, we have only one dozen samples of the ProV1x bearing the <·ProV1x 332·> sidestamp. While we are willing to produce some of those golf balls to Bridgestone, we cannot produce all of the extant samples, as we need samples of those golf balls for ourselves on which to conduct tests similar to any test performed by Bridgestone. In addition, we need to preserve samples of each ball for use in any future litigation. We thus propose making three samples of each golf ball available for testing by an independent third-party testing agent whose results would be relied upon by both parties, which would minimize the number of samples subjected to destructive testing. We note further that our samples of non-Acushnet prior art golf balls are even more limited. In some cases, we have only two intact samples. For those balls, we are willing to discuss a similar third-party testing procedure as suggested above.

We have the following responses to the additional comments raised in your September 30 letter:

1. We will provide you the information necessary for you to determine the set of documents from which each document redacted by Acushnet was pulled.

# HOWREY LLP

2.  We have checked the placement of blue sheets in our document production and have determined that, with a very limited number of exceptions, they reflect the divisions of documents as the documents were produced to us.  Exceptions include the break sheet you identified as falling between AB 44982 and AB 44983, which was placed there in error.  The remaining examples identified in your September 30 letter, however, reflect document breaks as those documents were produced to us.

3.  Documents AB 6094-95, 22411, and 33547-34044 were inadvertently omitted from Acushnet's production.  We will produce those documents.

4.  Regarding the e-mail documents identified in your letter as having been produced without accompanying attachments, we produced those documents as they were provided to us.  We are looking into the question of the missing attachments and will produce them as soon as possible.

5.  Regarding the Excel files identified in your e-mail as being unreadable, we will produce electronic versions as soon as possible.

6.  Acushnet withdraws its confidentiality designation for AB 17693-17728, 17731, 17833-17866, 17888-17923, 17977-17980, 18000-19414, and 19420-20204.

7.  The documents identified in paragraph 7 from page 4 of your September 30 letter are not part of Acushnet's document production.

8.  We have enclosed copies of the four videotapes bearing bates labels AB 46299-46302.  We have reviewed the new copies, which contain all of the footage present on our original tapes.

Very truly yours,

Matthew J. Moore

Enclosures

# EXHIBIT 5

REDACTED

# EXHIBIT 6

REDACTED

EXHIBIT 7



2100 Pennsylvania Avenue, NW
Washington, DC 20037-3213
T 202.293.7060
F 202.293.7860

www.sughrue.com

November 17, 2005

<u>*Via Facsimile: (202) 383-6610*</u>

Mr. Matthew J. Moore
HOWREY LLP
1299 Pennsylvania Ave., N.W.
Washington, DC 20004

Re:    <u>**Additional Deficiencies in Acushnet's Document Production**</u>
       ***Bridgestone Sports Co., Ltd. et al. v. Acushnet Co.***
       **Civil Action No. 05-132 (JJF)**

Dear Mr. Moore:

Further to our letter of September 30, 2005 regarding certain deficiencies in Acushnet's production,[1] our continued review of Acushnet's production has identified the following additional deficiencies:

1.    Acushnet has produced select BPII (Ball Plant II) Platform Team Meeting Minutes (e.g., AB 52250-52; AB 52253-55): These appear to be regularly scheduled meetings, yet Acushnet has produced only a sampling of documents. Please verify that all BPII Platform Team Meeting Minutes have been produced. In addition, please confirm that any meeting minutes for any other Ball Plant Platform Teams have been produced.

2.    Acushnet has produced only select minutes from Sales and Marketing meetings, *see, e.g.,* AB 52050-52054. To the extent minutes from other Sales and Marketing meetings exist and are responsive to Bridgestone's request, they must be produced. Accordingly, please identify whether all Sales and Marketing meeting minutes have been produced.

3.    AB 52050 discusses a Lotus Notes database that includes "[a]ll new packaging tops, bottoms and sleeves." The contents of this database would appear responsive to Bridgestone's document requests, yet we can not locate these documents in Acushnet's production. Please identify whether the contents of this database have been produced to the extent they are responsive to Bridgestone's Document Requests.

---

[1] We are in receipt of your letter of November 10, 2005 responding to our September 30, 2005 letter, and we will separately respond to this letter.



Mr. Matthew J. Moore
HOWREY LLP
Page 2

Further, to the extent any other databases exist whose content is responsive to Bridgestone's document requests, the contents of these databases must be produced. For example, any data bases on materials research, competitive ball analysis and testing, product development, performance analysis and testing, including flight performance, and USGA submissions must be produced. Accordingly, please identify whether any other databases exist and whether their contents have been produced.

4.  AB 50849-53 is Pinnacle Platform Team Meeting Minutes. Again, it appears that Acushnet has only selectively produced these documents. Please identify whether Acushnet is withholding such documents. Similarly, AB 45381, DT SoLo Platform Team Meeting Minutes also appear to have been selectively produced, and we ask that you identify whether any such meeting minutes are being withheld.

5.  AB 52064 is a meeting announcement for the November 6, 2001 Golf Ball Board of Director's Meeting. Acushnet has appeared to produced only a handful of these announcements and no minutes from these meetings. To the extent other announcements or minutes exists, they must be produced to the extent they are responsive.

6.  AB 51027 references a "Products Construction" worksheet for new Pinnacle products. Such worksheets do not appear to have been produced. Please identify whether Acushnet is withholding these worksheets.

7.  AB 35853, entitled New Product Implementation, relates only to the NXT Tour. Acushnet, however, has not produced a similar document for each version of each of the accused Acushnet balls. To the extent Acushnet has such documents in its possession, custody or control, these documents are responsive to several of Bridgestone's Document Requests and should be produced immediately. Accordingly, please identify whether Acushnet is withholding any "New Product Implementation" documents.

8.  AB 35635, entitled "Pro V1 Inventory Analysis" contains relevant sales information for the Pro V1 ball. Acushnet, however, has not produced a similar document for each version of each of the accused Acushnet balls and for all relevant time periods. To the extent Acushnet has such documents in its possession, custody or control, these documents are responsive to several of Bridgestone's Document Requests and should be produced immediately. Accordingly, please identify whether Acushnet is withholding any "Inventory


**Sughrue**
SUGHRUE MION, PLLC

Mr. Matthew J. Moore
HOWREY LLP
Page 3

Analysis" documents or other similar documents relating to inventory levels, demand for the accused Acushnet balls, demand and inventory forecast, etc.

9.     AB 48122, entitled "Product Flow Chart," although barely legible, appears to be a flow chart of the manufacturing process for the NXT, NXT Tour, DT Solo, and Pinnacle Exception balls as of June 15, 2005. Acushnet, however, has not produced a similar document for each version of each of the accused Acushnet balls and for all relevant time periods. To the extent Acushnet has such documents in its possession, custody or control, these documents are responsive to several of Bridgestone's Document Requests and should be produced immediately. Accordingly, please identify whether Acushnet is withholding any "Product Flow Chart" documents or other similar documents relating to the manufacturing processes involved in production of the accused Acushnet balls.

10.     Acushnet has not produced all of its testing procedure protocols and/or calculators. For example, Acushnet has not produced documents showing how dimples are measured, for example, as shown in AB 1346. To the extent such protocols exist and to the extent Acushnet has any calculators (*e.g.*, Excel spreadsheets) in its possession, custody or control, these documents are responsive to several of Bridgestone's Document Requests and should be produced immediately.

11.     Boxes 2 (AB 2282-4458) and 11 (AB 18000-20204) contain primarily U.S. and foreign patents, applications and file histories. Acushnet, however, has designated these documents as "HIGHLY CONFIDENTIAL" or "CONFIDENTIAL." We believe, however, that such a designation is improper, and ask that Acushnet withdraw this designation.

12.     Acushnet has produced selected copies of invention disclosures. *See* AB 51351 *et seq*. These copies, which appear to be printouts from an electronic archive, are not signed or dated. Please identify whether signed and dated copies of these invention disclosures exist and, if so, produce them immediately.

    Further, the invention disclosures thus far produced are directed to golf ball chemistry, and there are no disclosures for ball design as might possibly have been submitted for the alleged invention contained in the '976, '861, '587, and '367 patents. Please identify whether Acushnet has in its possession, custody or control invention disclosures relating to ball design.

13.     Pages AB 6064-95, AB 22411, AB 33547-34044, AB 39349, AB 39354, AB 39371-72, AB 40338 and AB 40842 are missing from Acushnet's production. Please provide a copy of these pages immediately.



Sughrue
SUGHRUE MION, PLLC

Mr. Matthew J. Moore
HOWREY LLP
Page 4

      Please let us know a convenient time for you to discuss these issues.  We would, of
course, like to discuss these issues in advance of the December 1, 2005 hearing.

                              Very truly yours,

                              Raja Saliba

RNS/BMW.

EXHIBIT 8

**Paul**Hastings
ATTORNEYS

Paul, Hastings, Janofsky & Walker LLP
875 15th Street, N.W. • Washington, DC 20005
telephone 202 551 1700 • facsimile 202 551 1705 • www.paulhastings.com

Atlanta
Beijing
Brussels
Hong Kong
London
Los Angeles
Milan
New York
Orange County
Palo Alto
Paris
San Diego
San Francisco
Shanghai
Stamford
Tokyo
Washington, DC

(202) 551-1754
brandonwhite@paulhastings.com

March 6, 2006

**VIA FACSIMILE TO 202 383 6610**

Matthew J. Moore
HOWREY LLP
1299 Pennsylvania Ave., N.W.
Washington, DC 20004

Re:    Bridgestone Sports v. Acushnet
        Deficiencies in Acushnet's Production

Dear Matt:

I am writing to follow up on the outstanding discovery issues as outlined below:

1. *USGA correspondence*: In your January 4, 2006 letter, you state that you have produced all USGA submissions and related correspondence. We have seen no correspondence with the USGA regarding these submissions. We understand that such correspondence is routinely generated during the USGA approval process and we would expect that Acushnet would keep such correspondence. The absence of such correspondence from Acushnet's production is quite surprising. We ask that you again confer with your client to confirm that this is the case.

2. *Sales, Marketing, Export and Corporate Financial information:* We are still awaiting production of sales, marketing, export, and other corporate financial information, including manufacturing reports, as ordered by the Court. See Eric Bensen's letter of February 28, 2006.

3. *Pro V1\* documents:* We are still awaiting production of the Pro V1\* documents you previously agreed to produce. In your telephone conversation with Rob Masters on February 17, 2006, you represented that Acushnet would be producing documents and information regarding the Pro V1\* within two weeks, which would be March 3, 2006. Please advise if this is not the case. Please produce these documents as soon as possible.

4. *HP Eclipse and Tour Distance documents*: As set forth at paragraph 5 of Raja Saliba's letter of January 4, 2006, we are still awaiting production of documents relating to the HP Eclipse and Tour Distance golf balls.

LEGAL_US_E # 70581912.1

Paul*Hastings*
ATTORNEYS

Matthew J. Moore
March 6, 2006
Page 2

5. *Joint Testing / Limited Balls:* There remains the outstanding issue of your proposal for joint testing of the properties and characteristics of accused and prior art golf balls. We continue to believe that joint testing is a not an acceptable option at this time. While this is your suggestion, we have yet to see any concrete proposals. If you provide a specific proposal, we would consider it at that time.

A related issue is the "limited" numbers of samples of accused and prior art balls. We suggest discussing this issue during a meet and confer.

Nonetheless, until this matter is resolved, we will continue to abide by our agreement to do no destructive testing on those golf balls which are of limited supply. We trust that you will do the same.

6. *Plaques, Finished Ball Components and Rejected Balls:* The Court ordered production of plaques, finished ball components and rejected balls as requested in Document Request Nos. 116-117 and 119. Jan. 13, 2006 Hearing at p. 7. Please produce these plaques, finished ball components and rejected balls as soon as possible.

7. *Callaway Documents:* We have yet to receive the Callaway license agreements and other Callaway documents you agreed to produce in your November 28, 2005 letter. Please produce this license and any related documents as soon as possible.

In addition, please confirm that you have, as you previously represented, contacted Callaway seeking their permission to produce these documents.

8. *Licensing:* As stated in Steve Gruskin's letter of January 5, 2006, we still await a substantive response to Interrogatory No. 20 (licensing of Acushnet patents-in-suit). A substantive response to this interrogatory is long past due. Please identify a date certain when your collection of information will be complete and we will receive a substantive response to this interrogatory.

9. *Gaps in Meeting Minutes:* In reviewing Acushnet's production, we have found large gaps in Acushnet's platform meeting minutes. In response to our repeated requests that all such documents be produced, you stated that all such meeting minutes have been produced. We ask that you again confirm with your client that all such documents have been produced.

These meeting minutes reflect the record for the development of Acushnet's golf balls. The meeting minutes produced to date also indicates that Acushnet regularly holds these meetings. The selective production of these meeting minutes denies Bridgestone the ability to fully understand the development of the Accused Acushnet golf balls and to identify those involved in that development.

LEGAL_US_E # 70581912.1

**Paul**Hastings
ATTORNEYS

Matthew J. Moore
March 6, 2006
Page 3

10. *Illegible Documents and Missing Attachments:* You have previously agreed to produce replacements for documents in your original production that were illegible. You also agreed to produce attachments to emails. We are still waiting for this production. Please produce these documents as soon as possible.

11. *Original Locations for Redacted Documents:* We have not yet received your identification of where in the production the redacted documents were pulled from. You previously agreed to do this. Please identify the location where redacted documents were pulled from as soon as possible.

12. *Quality Control/Testing documents:* We have yet to see any documents relating to quality control/testing standards for Acushnet's production of the accused golf balls. It would be expected that Acushnet would have some type of formalized protocol to determine what is an unacceptable deviation from a ball's manufacturing guideline and how to test for such a deviation. Please produce these documents as soon as possible.

13. *Dimple Geometry and Properties:* Acushnet's production remains deficient with respect to the dimple geometry and properties (*e.g.,* dimple diameters, depths, and placement, hob drawings, etc.). This information is not included in manufacturing guidelines, construction charts, or anywhere else in your production. Please produce this information as soon as possible.

14. *Personal Files:* Please confirm that personal files for those involved with the development, production and marketing of the accused products have been searched and responsive documents produced therefrom. Acushnet's production appears to be missing personal files for several important persons, *e.g.,* Bill Morgan, Larry Bissonette and Mike Sullivan.

15. *"Double-Checking":* As set forth in Raja Saliba's letter of January 4, 2006, we still await you confirmation that all "double-checking" referred to in paragraph 1 of your letter of November 28, 2005 is now complete.

Please let us know a time when you would be available to meet and confer on the above matters.

Sincerely,

*[signature]*

Brandon M. White
for PAUL, HASTINGS, JANOFSKY & WALKER LLP