EXHIBIT 9

**Paul Hastings**
ATTORNEYS

Paul, Hastings, Janofsky & Walker LLP
875 15th Street, N.W. · Washington, DC 20005
telephone 202 551 1700 · facsimile 202 551 1705 · www.paulhastings.com

Atlanta
Beijing
Brussels
Hong Kong
London
Los Angeles
Milan
New York
Orange County
Palo Alto
Paris
San Diego
San Francisco
Shanghai
Stamford
Tokyo
Washington, DC

(202) 551-1754
brandonwhite@paulhastings.com

March 30, 2006                                                    70416.00002

Brian S. Seal
Howrey LLP
1299 Pennsylvania Ave., N.W.
Washington, DC 20004

Re:    *Bridgestone v. Acushnet – March 28, 2006 Meet and Confer*

Dear Brian:

This letter is to memorialize our discussions on Tuesday, March 28 during the meet and confer held to discuss the topics raised in my March 6, 2006 letter to Mr. Moore and Eric Bensen's February 28, 2006 letter.

As an initial matter, we reiterated our request that Acushnet provide available dates for the 30(b)(6) deposition, noticed by us for today (March 30), regarding Acushnet's production. In an e-mail exchange last week, you stated that Acushnet would provide available dates no later than Friday, March 24. On Tuesday, you stated that you were not yet able to identify available dates, but would undertake to do so immediately. We are now past the originally-noticed date and time and still have not received available dates from Acushnet. Please provide available dates immediately.

We also asked you to provide available dates for the 30(b)(6) deposition, which we requested go forward on April 5, 2006, regarding the '976 patent. Please also provide available dates for this deposition to go forward.

After these preliminary matters, we discussed the topics itemized in my March 6, 2006 letter. For ease of reference, I will reproduce those topics here, along with a summary of our discussions.

1.    *USGA correspondence*: In your January 4, 2006 letter, you state that you have produced all USGA submissions and related correspondence. We have seen no correspondence with the USGA regarding these submissions. We understand that such correspondence is routinely generated during the USGA approval process and we would expect that Acushnet would keep such correspondence. The absence of such correspondence from Acushnet's production is quite surprising. We ask that you again confer with your client to confirm that this is the case.

You stated that after again checking with your client, no additional USGA documentation exists, even with respect to the highly-publicized Pro V1 symmetry issues.

LEGAL_US_E # 70680973.2

**Paul**Hastings
ATTORNEYS

Brian S. Seal
March 30, 2006
Page 2

2.    *Sales, Marketing, Export and Corporate Financial information:*  We are still awaiting production of sales, marketing, export, and other corporate financial information, including manufacturing reports, as ordered by the Court.  See Eric Bensen's letter of February 28, 2006.

You stated that Acushnet will comply with the Court's Order by producing financial and sales documents by April 3.  You stated that this would not be a rolling production and that you intended to produce already-existing summary type data, not transactional-level documents.

3.    *Pro V1\* documents:*  We are still awaiting production of the Pro V1\* documents you previously agreed to produce.  In your telephone conversation with Rob Masters on February 17, 2006, you represented that Acushnet would be producing documents and information regarding the Pro V1\* within two weeks, which would be March 3, 2006.  Please advise if this is not the case.  Please produce these documents as soon as possible.

You stated that the Pro V1\* documents would be produced early next week.

4.    *HP Eclipse and Tour Distance documents:*  As set forth at paragraph 5 of Raja Saliba's letter of January 4, 2006, we are still awaiting production of documents relating to the HP Eclipse and Tour Distance golf balls.

You stated that Acushnet has produced all HP Eclipse and Tour Distance documents in its possession, custody or control.  We undertook to review your production again and advise you after that review if we still believe that Acushnet's production is deficient in this regard.

5.    *Joint Testing / Limited Balls:*  There remains the outstanding issue of your proposal for joint testing of the properties and characteristics of accused and prior art golf balls.  We continue to believe that joint testing is a not an acceptable option at this time.  While this is your suggestion, we have yet to see any concrete proposals.  If you provide a specific proposal, we would consider it at that time.

A related issue is the "limited" numbers of samples of accused and prior art balls.  We suggest discussing this issue during a meet and confer.

Nonetheless, until this matter is resolved, we will continue to abide by our agreement to do no destructive testing on those golf balls which are of limited supply.  We trust that you will do the same.

With respect to the joint testing issue raised in paragraph 5, we have asked you put your proposal in writing for us to consider.  You stated that a primary reason for Acushnet's insistence on joint testing is that, according to Acushnet, ball properties necessarily change after 48 hours' exposure to atmospheric conditions.  You stated, as an illustration, that if a

**Paul**Hastings
ATTORNEYS

Brian S. Seal
March 30, 2006
Page 3

core is cut in half, after 48 hours of exposure to the atmosphere, the properties of the exposed portion of the core will begin to change.

While we did not reject your suggestion for joint testing outright, we stated that your suggestion is, at this point, a high-level concept with no real detail as to how the testing would be conducted. As one relatively simple example, we asked how balls would be chosen for joint testing. Would Acushnet hand select balls to be tested or would some other, more appropriate protocol would be used?

It remains our position that joint testing is not preferable and will not reduce disputes at trial. Instead, joint testing will add an unnecessary layer of potential disputes during fact discovery. We stated that because joint testing is Acushnet's proposal, Acushnet must develop a written, concrete proposal, not just ask for our agreement to a general concept of joint testing. While maintaining our objection to joint testing, we agreed to consider any comprehensive proposals you put in writing and provide to us.

6. *Plaques, Finished Ball Components and Rejected Balls:* The Court ordered production of plaques, finished ball components and rejected balls as requested in Document Request Nos. 116-117 and 119. Jan. 13, 2006 Hearing at p. 7. Please produce these plaques, finished ball components and rejected balls as soon as possible.

With respect to plaques, finished ball components and rejected balls, despite the Court's ruling in the January 13, 2006 hearing, you advised that Acushnet maintains its position that it will not provide any of these items unless Bridgestone agrees (i) to return these items within 2 days and (ii) to identify what tests were performed on them. We believe this position is entirely inconsistent with the Court's ruling. These items are responsive to Bridgestone's Document Requests and should have been produced long ago, without the conditions that Acushnet is attempting to attach to production.

7. *Callaway Documents:* We have yet to receive the Callaway license agreements and other Callaway documents you agreed to produce in your November 28, 2005 letter. Please produce this license and any related documents as soon as possible.

In addition, please confirm that you have, as you previously represented, contacted Callaway seeking their permission to produce these documents.

LEGAL_US_E # 70680973.2

**Paul**Hastings
ATTORNEYS

Brian S. Seal
March 30, 2006
Page 4

8.    *Licensing:* As stated in Steve Gruskin's letter of January 5, 2006, we still await a substantive response to Interrogatory No. 20 (licensing of Acushnet patents-in-suit). A substantive response to this interrogatory is long past due. Please identify a date certain when your collection of information will be complete and we will receive a substantive response to this interrogatory.

With respect to paragraphs 7 and 8, you stated that you have obtained permission to produce the Callaway license agreement and related documents and that these documents would be produced early next week. In addition, you stated that you would supplement Acushnet's response to Interrogatory No. 20 in the near future.

9.    *Gaps in Meeting Minutes:* In reviewing Acushnet's production, we have found large gaps in Acushnet's platform meeting minutes. In response to our repeated requests that all such documents be produced, you stated that all such meeting minutes have been produced. We ask that you again confirm with your client that all such documents have been produced.

These meeting minutes reflect the record for the development of Acushnet's golf balls. The meeting minutes produced to date also indicates that Acushnet regularly holds these meetings. The selective production of these meeting minutes denies Bridgestone the ability to fully understand the development of the Accused Acushnet golf balls and to identify those involved in that development.

You stated that after several searches conducted by Acushnet employees, it is Acushnet's position that all relevant meeting minutes have been produced.

10.    *Illegible Documents and Missing Attachments:* You have previously agreed to produce replacements for documents in your original production that were illegible. You also agreed to produce attachments to emails. We are still waiting for this production. Please produce these documents as soon as possible.

You stated that you believed, but were uncertain, that replacements for illegible documents and missing attachments were produced in February. You agreed to investigate whether such production occurred. Please note that we do not have a record of any such production. Please produce these documents immediately.

11.    *Original Locations for Redacted Documents:* We have not yet received your identification of where in the production the redacted documents were pulled from. You previously agreed to do this. Please identify the location where redacted documents were pulled from as soon as possible.

You stated that the original location of the redacted documents pulled and relocated to the end of Acushnet's original production last August could be found in the source log you recently provided to us.

LEGAL_US_E # 70680973.2

Paul*Hastings*
ATTORNEYS

Brian S. Seal
March 30, 2006
Page 5

12.    *Quality Control/Testing documents:*  We have yet to see any documents
relating to quality control/testing standards for Acushnet's production of the
accused golf balls.  It would be expected that Acushnet would have some type of
formalized protocol to determine what is an unacceptable deviation from a ball's
manufacturing guideline and how to test for such a deviation.  Please produce
these documents as soon as possible.

You stated that after several searches by Acushnet employees, it is Acushnet's position
that no additional testing manuals or quality control documents exist.

13.    *Dimple Geometry and Properties:*  Acushnet's production remains deficient
with respect to the dimple geometry and properties (*e.g.*, dimple diameters, depths,
and placement, hob drawings, etc.).  This information is not included in
manufacturing guidelines, construction charts, or anywhere else in your
production.  Please produce this information as soon as possible.

You stated that after several searches by Acushnet employees, it is Acushnet's position
that no additional documents exist relating to dimple geometry and properties.

14.    *Personal Files:*  Please confirm that personal files for those involved with the
development, production and marketing of the accused products have been
searched and responsive documents produced therefrom.  Acushnet's production
appears to be missing personal files for several important persons, *e.g.*, Bill
Morgan, Larry Bissonette and Mike Sullivan.

15.    *"Double-Checking":*  As set forth in Raja Saliba's letter of January 4, 2006, we
still await you confirmation that all "double-checking" referred to in paragraph 1 of
your letter of November 28, 2005 is now complete.

You stated that "everybody" at Acushnet searched their own files and that Acushnet
would not be searching additional personal files or producing additional documents.  We
identified several individuals on Acushnet's organizational chart for which no documents
have been produced according to Acushnet's source log.  You maintained Acushnet's
position that all personal files have been searched and that no additional searching or
production would take place.  You also stated that all "double-checking" is now complete
and that, to the extent any documents were identified, they have already been produced or
will be among the materials that will be produced early next week.

We believe these comments above accurately reflect the substance of our call.  However,
if anything above is, in your view, incorrect or incomplete, please advise us in writing as
soon as possible.

LEGAL_US_E # 70680973.2

Paul*Hastings*
ATTORNEYS

Brian S. Seal
March 30, 2006
Page 6

We believe Acushnet's production remains deficient in many respects. This letter should not be construed as waiving any rights to seek the Court's assistance in compelling further production.

Sincerely,

Brandon M. White
for PAUL, HASTINGS, JANOFSKY & WALKER LLP

EXHIBIT 10


**ATTORNEYS**

Paul, Hastings, Janofsky & Walker LLP
875 15th Street, N.W. • Washington, DC 20005
telephone 202 551 1700 • facsimile 202 551 1705 • www.paulhastings.com

Atlanta
Beijing
Brussels
Hong Kong
London
Los Angeles
Milan
New York
Orange County
Palo Alto
Paris
San Diego
San Francisco
Shanghai
Stamford
Tokyo
Washington, DC

(202) 551-1754
brandonwhite@paulhastings.com

April 6, 2006

70416.00002

**VIA FACSIMILE TO (202) 383-6610**

Brian S. Seal
Howrey LLP
1299 Pennsylvania Ave., N.W.
Washington, DC 20004

*Re:*     *Bridgestone v. Acushnet -- Acushnet's April 3, 2005 Production*

Dear Brian:

We are writing regarding Acushnet's production on April 3, 2006.

During our telephone conversation on Monday, April 3, you indicated that your April 3, 2006 production completed Acushnet's production.[1]  However, after reviewing your production, it is clear that Acushnet remains deficient in its production in several areas.  In particular, Acushnet's production of Pro V1* documents, which you agreed to produce, and Acushnet's production of financial information, as ordered by the Court, is entirely deficient.[2]

With respect to the Pro V1* documents, you have not produced, *inter alia*, manufacturing guidelines,[3] retail testing summaries,[4] ball construction summary sheets,[5] developmental meeting minutes and testing reports.  You have also failed to produce unredacted copies of the many documents in your prior productions where Pro V1* was redacted.

It appears from Acushnet's production that each commercialized Acushnet golf ball has a corresponding set of manufacturing guidelines.  Indeed, the Pro V1* manufacturing guidelines are shown as an attachment in the e-mail at AB-0004833.  Yet, you chose not to produce these guidelines.

---

[1] Two file histories relating to the Acushnet patents-in-suit were produced on Tuesday, April 4.
[2] We continue to believe that Acushnet remains deficient in its production of many other categories of documents as outlined repeatedly in our letters to you.  We expect these deficiencies to be highlighted in the unnecessarily-delayed 30(b)(6) deposition finally scheduled for April 26.
[3] Our usage of the term "manufacturing guidelines" is a reference to documents such as AB 0015588 *et seq* (Pro V1x manufacturing guidelines).
[4] Our usage of the term "retail testing summaries" is a reference to documents such as AB 0004699 *et seq* (test results for Pro V1x balls purchased at Golfer's Warehouse).
[5] Our usage of the term "ball construction summary sheets" is a reference to documents such as AB 0050822 *et seq* (redacted ball construction summary sheet for Pro V1x).
LEGAL_US_E # 70706737.1

Paul Hastings

Brian S. Seal
April 6, 2006
Page 2

Similarly, it appears from Acushnet's production that Acushnet tests physical and chemical properties of its golf balls purchased from retail stores. These types of documents were previously produced for each of the accused Acushnet golf balls. However, in your latest production, no such documents were produced for the Pro V1*.

Acushnet also previously produced construction sheets summarizing the physical and chemical properties of the accused Acushnet golf balls. Once again, however, no such documents were produced for the Pro V1*.

During Acushnet's prior rounds of production, it appears that an effort was made to redact the Pro V1* golf ball from the produced documents, despite the unmistakable relevance of the Pro V1* golf ball. However, you have yet to produce unredacted copies of these documents. For example, document AB 50822, is a construction sheet for 4-piece golf balls in the Pro V1 family manufactured between 1999 and 2003. It would certainly seem that the redacted columns represent the Pro V1*. In any event, whatever balls are identified under these redactions are relevant and responsive as they are in the Pro V1 family.

With respect to your production of financial documents, 98%[6] of the first box comprised third-party sales compilations purchased from NGF and Golf Datatech. The second box is hardly an improvement.

Among other things, this latest round of Court-ordered production is missing periodic reports, be they weekly, monthly, quarterly, or annual, prepared for internal use and prepared to report to Acushnet's parent, Fortune Brands, Inc. You have not produced executive summaries of the financial success or failure of Acushnet's golf ball lines. You have not produced quarterly presentations given to employees on the sales of Acushnet's golf balls. It strains credibility to argue that executives, accountants and marketing personnel at Acushnet and Fortune Brands operate with only the Product Analysis reports, such as that shown in AB 0084987. Every large entity produces some level of executive-style summaries of their sales. Certainly, Acushnet, maker of the self-proclaimed "No. 1 Ball in Golf" routinely analyzes its sales, market share, profitability and competitive position.

Acushnet has not produced documents on the wholesale price of golf balls sold to its subsidiaries and distributors around the world.[7] While we may now finally know the number of golf balls Acushnet Japan sold in a given month, we do not know the price Acushnet Japan paid for these balls, nor do we have any accounting for the profits made by Acushnet Japan for sales of infringing balls outside of the U.S. The same holds true for the remainder of Acushnet's subsidiaries and distributors.

---

[6] 1588 pages out of 1621 total pages (AB 0082102 to AB 0083722).
[7] According to Fortune Brands's latest 10-K, about 30% of Acushnet's sales are to international markets. December 2005 10-K at p. 8.
LEGAL_US_E # 70706737.1

**Paul**Hastings
ATTORNEYS

Brian S. Seal
April 6, 2006
Page 3

You have not produced documents relating to Acushnet's division of costs among different divisions (i.e., golf ball, golf club, accessories) and product families (i.e., Pro V1, DT So/Lo, NXT, NXT Tour).

The categories of documents outlined above, among many others, are relevant to the issues in this case, are responsive to Bridgestone's requests and should have been produced long ago. These examples represent only the glaring deficiencies obvious from our initial review of your production. We do not endeavor here to, once again, outline the documents we need and are entitled to – this exercise has been done repeatedly in the past to no avail.

It is our fervent belief that Acushnet has failed to comply with the Court's Order regarding the production of financial documents and your agreement with respect to the production of Pro V1* documents, despite nearly three months to compile and produce these documents. More than six months after the August 31, 2005 document production date, Acushnet still has not fully complied with its obligations under the Federal Rules.

We request a prompt response as to each of the issues raised herein.

Sincerely,

Brandon M. White
for PAUL, HASTINGS, JANOFSKY & WALKER LLP

EXHIBIT 11

**Paul**Hastings
ATTORNEYS

Paul, Hastings, Janofsky & Walker LLP
875 15th Street, N.W. • Washington, DC 20005
telephone 202 551 1700 • facsimile 202 551 1705 • www.paulhastings.com

Atlanta
Beijing
Brussels
Hong Kong
London
Los Angeles
Milan
New York
Orange County
Palo Alto
Paris
San Diego
San Francisco
Shanghai
Stamford
Tokyo
Washington, DC

(202) 551-1754
brandonwhite@paulhastings.com

70416.00002

April 4, 2006

**VIA FACSIMILE TO (202) 383-6610**

Mr. Brian S. Seal
Howrey LLP
1299 Pennsylvania Ave., N.W.
Washington, DC  20004

Re:   *Bridgestone v. Acushnet -- Depositions*

Dear Brian:

This letter is to confirm your conversation with Rob Masters yesterday.

While we were somewhat surprised that the 30(b)(6) deposition on Acushnet's production could not proceed prior to April 26, we did agree to proceed with the deposition on that day. We asked that you attempt to contact Mr. Lester, whom you stated would be the witness for that deposition, to see if he had an earlier availability. You agreed to do this. However, in no event should the deposition be moved to a later date. Please confirm that Mr. Lester will be made available at our offices in Washington, DC for the deposition.

You also stated that you expected to be able to identify a witness and a date for the '976 patent 30(b)(6) deposition this week. You stated that you expected this deposition to proceed sometime during the week of April 10 or April 17. Please let us know when this deposition can proceed as soon as possible.

With respect to the continuation of Mr. Ichinose's 30(b)(6) deposition, we originally offered to make Mr. Ichinose available on April 12, 13 or 14. You stated that that you would not be able to proceed on those days. We will identify additional dates for concluding this deposition when Mr. Ichinose plans his next trip to the U.S.

With respect to any other outstanding deposition notices you have served on Bridgestone, we will schedule dates when you let us know that you are ready to proceed with these depositions.

Finally, we ask that you identify when we will be able to proceed with the 30(b)(6) deposition noticed in Bridgestone's Second Notice of Deposition Pursuant to Rule

LEGAL_US_E # 70701416.1

**Paul**Hastings

Brian S. Seal
April 4, 2006
Page 2

30(b)(6) (relating to the '367, '587, '861 patents).  Please identify a date sometime during
the week of April 17 or April 24.

If anything above is incorrect or incomplete, please let us know in writing immediately.

Sincerely,

*Brandon White*

Brandon M. White
for PAUL, HASTINGS, JANOFSKY & WALKER LLP

EXHIBIT 12

# Paul Hastings
ATTORNEYS

Paul, Hastings, Janofsky & Walker LLP
875 15th Street, N.W. • Washington, DC 20005
telephone 202 551 1700 • facsimile 202 551 1705 • www.paulhastings.com

Atlanta
Beijing
Brussels
Hong Kong
London
Los Angeles
Milan
New York
Orange County
Palo Alto
Paris
San Diego
San Francisco
Shanghai
Stamford
Tokyo
Washington, DC

(202) 551-1763
robmasters@paulhastings.com

May 10, 2006                                        70416.00002

**VIA FACSIMILE (202) 383-6610**

Mr. Alan M. Grimaldi
Howrey LLP
1299 Pennsylvania Ave., N.W.
Washington, DC 20004

*Re:    Bridgestone v. Acushnet – Deficiencies in Acushnet's Production*

Dear Alan:

Itemized below are numerous outstanding deficiencies in Acushnet's document
production and interrogatory responses. We have continuously asserted that Acushnet's
document production and certain of its interrogatory responses were inadequate. We
have offered to compromise, met and conferred, and even obtained the Court's
intervention, all to no apparent effect. We have attempted to obtain Acushnet's testimony
on its discovery efforts and production through a Rule 30(b)(6) deposition. Acushnet,
however, chose to designate and present a witness, Troy Lester, who came to the
deposition entirely unprepared, making the deposition, for the most part, a wasted effort.

We firmly believe that Acushnet is using dilatory discovery tactics to interpose delay.
After more than eight months of fact discovery, Acushnet's tactics now require us to seek
the Court's intervention to ensure that Acushnet complies with its discovery obligations.
While we intend to meet and confer on the issues raised below,[1] it is also our intention to
seek a discovery conference with the Court. To the extent we can agree on any issues, the
Court can memorialize any such agreement in an Order. To the extent we cannot agree
on any issues, the Court can resolve the dispute. We believe this is necessary to ensure
Bridgestone obtains the discovery it has long been entitled to.

I.      **Acushnet's Document Collection Effort**

Although Mr. Lester was unable to provide much testimony during his Rule 30(b)(6)
deposition,[2] he was able to provide a limited description of Acushnet's document

---

[1] Acushnet's failure to produce its financial documents is in direct violation of the Court's Order of January
13, 2006 and no additional meet and confer is necessary.
[2] Acushnet has not disputed that Mr. Lester was entirely unprepared for his deposition. His lack of
preparation was manifest, was known or should have been known by you in advance of the deposition, and
resulted in a substantial waste of time, effort and money.
LEGAL_US_E # 70857395.2

Paul*Hastings*
ATTORNEYS

Alan M. Grimaldi
May 10, 2006
Page 2

collection effort. His testimony reveals that Acushnet's document collection effort was entirely deficient.

As Acushnet's corporate representative, Mr. Lester testified that individual employees were ordered to search their own files. These employees were not provided any written instruction and were not provided copies of Bridgestone's document requests. Mr. Lester was unaware of whether a separate search was conducted in response to Bridgestone's second set of document requests. Mr. Lester could not identify whose files were searched and whose were not. Mr. Lester could not identify whether the files of key personnel, e.g., Mr. Uihlein, Mr. Kramer, Mr. Cebula, and Mr. Bartsch, were searched and he had no explanation as to why these their names did not appear on Acushnet's source chart. Mr. Lester was unaware of important teams, e.g., the Pro V1 Platform Team. Mr. Lester could not identify any database maintained by Acushnet with the exception of the irrelevant Foot Joy prosecution database.

Mr. Lester's testimony clearly establishes that the procedure followed by Acushnet in searching for and collecting documents responsive to Bridgestone's document request was fundamentally flawed and entirely inadequate. The shortcomings in Acushnet's collection efforts go a long way in explaining many of the issues below and the overwhelming discrepancy in document production to date.[3] The only conclusion that can be reached from Mr. Lester's deposition is that many, many relevant documents have yet to be produced. Accordingly, we request that Acushnet immediately conduct another search for documents responsive to Bridgestone's document requests and produce a Rule 30(b)(6) witness who can provide testimony regarding this search. In the alternative, we are left with no choice but to ask the Court to sanction Acushnet.

II.    **Acushnet's Document Retention Policy**

Many months ago, Bridgestone requested Acushnet to produced its document retention policy. For months, nothing was produced, even prior to Mr. Lester's deposition, despite the fact that Topic 4 related to Acushnet's document retention policies. Yet, after being shown an e-mail document specifically identifying Acushnet's Records Retention Policy (AB 873, e-mail from Mr. Lester), counsel was able to place a call to Acushnet and obtain a copy within an hour.

Rather than simply producing the policy at that time, Mr. Lavelle stated that the Records Retention Policy might be privileged.[4] Mr. Lavelle agreed to either produce this document at a later time or provide a revised privilege log with a newly-added claim for the Records

---

[3] Acushnet has produced fewer than 90,000 pages of documents to date. Much of this production is comprised certificates of analysis, patents and files histories. Bridgestone, on the other hand, has produced more than 200,000 pages.
[4] Although it was asserted that this Policy might somehow be privileged, the document was faxed to Brandon White, an attorney for Bridgestone.
LEGAL_US_E # 70857395.2

**Paul***Hastings*
ATTORNEYS

Alan M. Grimaldi
May 10, 2006
Page 3

Retention Policy. Yet, nearly two weeks after that deposition, the document has not been produced, nor has a revised privilege log been provided.

III.    **Acushnet's Source Log**

During Troy Lester's deposition, Mr. Lester identified several apparent inaccuracies in Acushnet's source log. Despite our requests, Acushnet has not provided an updated source log based on its recent production and the discrepancies identified by Mr. Lester.

Further, with respect to the agreement memorialized in our April 28, 2006 letter, Acushnet has agreed to provide a list of persons whose files were searched, but where no responsive documents were found. This list has not been produced.

When viewed together, the Acushnet organization chart and the source log demonstrates substantial and glaring holes in Acushnet's document collection. Most of the people identified on Acushnet's organization chart are not identified on the source log. Although we might understand if certain relatively minor players did not show up on Acushnet's source log, it is simply impossible to believe that key personnel such as Wally Uihlein, Bill Burke, Jerry Bellis, Eric Bartsch, Ray Cebula and Michael Kramer, among others, do not appear on the source log. As discussed above, this only bolsters our view that Acushnet's production is deficient.

Interestingly, in its May 1 supplementation, Acushnet identified Eric Bartsch as the individual at Acushnet most knowledge about the manufacturing of Acushnet balls and Bill Burke as the person at Acushnet most knowledgeable about the selling of the accused Acushnet balls. *See* Supplemental Response to Interrogatory No. 3. These individuals, however, do not appear on Acushnet's source log. These knowledgeable individuals must have discoverable documents, but no documents from their files, offices or computers have been produced.

IV.    **Organization Charts**

Acushnet has only produced one organization chart (AB 52390-524119), apparently a relatively current chart. Acushnet has not produced any previous organization charts. Mr. Lester was unaware of whether older organization charts are maintained or who would maintain them if they were still in existence. Accordingly, please produce any such charts immediately, or, if Acushnet maintains that none exist, so state.

V.    **Acushnet's Privilege Log**

In March, we wrote to you regarding deficiencies in Acushnet's privilege log. In early April, Mr. Seal wrote to us to say that a revised privilege log would be produced within a week. We wrote to you again last week. Still, no revised privilege log has been produced.

LEGAL_US_E # 70857395.2

Paul*Hastings*
ATTORNEYS

Alan M. Grimaldi
May 10, 2006
Page 4

VI.    **Financial Documentation**

Insofar as it concerned damages related documents, Acushnet's April 3 document production was wholly insufficient. Bridgestone originally served its document requests concerning damages related documents on June 7, 2005. Acushnet produced only a small number of documents responsive to those requests. After unsuccessful efforts to resolve the matter amicably, Bridgestone brought the matter to the attention of the Court. The Court's January 18, 2006 Order was unequivocal: Acushnet was obligated to produce the requested documents.

At Acushnet's request, Bridgestone agreed to accept summary type documents in response to the requests. On February 28, 2006, we identified with specificity the summary documents that Bridgestone required. Such documents were not forthcoming and we sent a follow-up letter again addressing the damages-related document requests. The April 3 production followed.

That production, however, fell far short of meeting Acushnet's obligations under either the Court's Order or the parties' subsequent agreement concerning summary documents. Specifically, Acushnet failed to produce for the period 2000 to date monthly sales data, manufacturing costs, costs of goods sold and standard costs by accused ball and/or corresponding side stamp, quarterly income statements or P&Ls including on a divisional or operating group level, monthly or quarterly market share data by accused ball and/or corresponding side stamp, "Golf Ball Product Plans," representative brochures and advertisements or surveys and third party reports. Further, Acushnet has not produced any documents reporting to Fortune Brands, Acushnet's parent company, nor has Acushnet produced executive summaries.

We simply cannot believe that Acushnet's financial production to date is even close to complete. At the January 13 hearing, Mr. Moore stated that Acushnet had "massive" amounts of financial documents. The box and half of production (much of which was Golf Datatech information) hardly constitutes "massive" amounts of documents.

VII.    **Manufacturing Guidelines**

Acushnet has produced many manufacturing guidelines with tracked changes still present and with errors, such as instructions to print an HVC sidestamp on a NXT Tour ball. It is our understanding that these are important documents in Acushnet's ball manufacturing business. Its seems unlikely that Acushnet would not finalize these documents prior to a manufacturing run. Please produce all *final* manufacturing guidelines immediately.

In addition, Acushnet has not produced manufacturing guidelines for each of the Acushnet balls identified in the May 1 supplementation. Acushnet's continued delay in producing these highly responsive documents again appears to be a deliberate tactic designed to defer the resolution of this case on the merits.

LEGAL_US_E # 70857395.2

**Paul**Hastings
ATTORNEYS

Alan M. Grimaldi
May 10, 2006
Page 5

VIII.    **On Course / Off Course Retailer Agreements, Distributor Sales Agreements & Subsidiary Sales Agreements**

Mr. Lester testified that Acushnet has entered into agreements with on-course retailers, off-course retailers, Acushnet's foreign subsidiaries, and Acushnet's foreign distributors. Mr. Lester testified that these documents were collected and produced. However, to date, no such production has occurred.

All agreements with on-course retailers, off-course retailers, Acushnet's foreign subsidiaries, and Acushnet's foreign distributors are highly-relevant and should have long ago been produced.

IX.    **Emails & Attachments**

Despite the issue having been raised repeatedly, Acushnet has refused to produce copies of attachments whose icons appear on the hard copies of documents produced by Acushnet. To the extent such documents are reasonably accessible to Acushnet, they should be produced. In Mr. Lester's deposition, we attempted to explore the degree to which documents, such as meeting minutes or "platform team" reports, were maintained and circulated electronically, exist on databases or are stored in archives. Acushnet's failure to prepare Mr. Lester for his deposition has hindered our investigation of this issue.

X.    **Meeting Minutes**

Large gaps exist in meeting minutes for key teams, such as the Pro V1 Platform Team and NXT Platform Team. While Mr. Lester was unable to provide testimony as to where such e-mailed meeting minutes might be stored, it is difficult to imagine that they are not stored somewhere. Apparently, Acushnet maintains numerous databases where documents such as e-mailed meeting minutes could be stored. Once again, Mr. Lester's failure to prepare for his deposition has hindered our investigation of this issue.

XI.    **Quality Control Manuals**

Acushnet has produced no quality control and inspection documents, e.g., guidelines, manuals and instructions for employees whose responsibilities include quality control. We believe Acushnet's production of these documents is grossly deficient. Our belief is bolstered by the fact that Ed Isaac, Acushnet's Senior Direct of Quality Assurance (AB 52398), Rastko Gajic, Acushnet's Manager of Process Quality (AB 52403), Stan Brown and Judy Concepcion, Acushnet's Senior QA Engineers, do not appear on Acushnet's source chart.

XII.    **Databases**

Numerous databases are referenced in Acushnet's documents. It has been established through Mr. Lester that these databases are located on shared drives. No databases are

**Paul**Hastings
ATTORNEYS

Alan M. Grimaldi
May 10, 2006
Page 6

listed on the Acushnet source log. We believe Acushnet has failed to adequately search its
databases.

XIII.    <u>Samples, Components & Balls</u>

Despite the Court's instructions, Acushnet has not produced golf balls and components.
Acushnet has maintained its position that any samples be returned within two days and
that Bridgestone identify any testing performed on the sample. This is unacceptable. The
Court imposed no such obligations.

Such samples, components and balls should have long ago been produced without
restriction. The Court sided with us in January, yet no samples or components have been
produced.

XIV.    <u>Improper Invalidity Contentions</u>

On March 21, 2006 we wrote to you regarding deficiencies in Acushnet's responses to
Bridgestone's Interrogatories Nos. 4 and 35. We stated that Acushnet's responses to
these Interrogatories must state the specific combinations of prior art references Acushnet
relies on to support its contention that one or more of the claims are invalid under 35
U.S.C. § 103. Acushnet's May 1 supplementation fails to cure the deficiencies identified in
our March 21 letter. For example, with respect to claim 1 of the '652 patent, for its
obviousness contentions, Acushnet simply "cycles" through each possible iteration of
several references. This is not an adequate response.

XV.    <u>Response to Interrogatory No. 1</u>

Acushnet's present response to Bridgestone's Interrogatory No. 1 is misleading,
incomplete, and inaccurate. The response stands alone and makes no reference to any
order. No order authorizes Acushnet to provide misleading, incomplete, and inaccurate
responses to any discovery request.

XVI.    <u>Newly Asserted Prior Art</u>

Final supplementation of interrogatories was not meant to be an opportunity to insert into
the litigation scores of additional prior art references. The date provided by the court for
final contentions did not purport to supercede Rule 26(e)(2), which requires seasonable
supplementation of discovery responses. Acushnet's final supplementation, which
identified at least 46 prior art balls, along with scores of patents and publications, the vast
majority of which were nor previously identified, was hardly seasonable.

Furthermore, Acushnet has not provided *any* discovery on much of the alleged prior art it
now relies upon, even though many of the balls are Acushnet's own. This highly-relevant
discovery must be produced immediately.

LEGAL_US_E # 70857395.2

Paul*Hastings*
ATTORNEYS

Alan M. Grimaldi
May 10, 2006
Page 7

You have also requested that Bridgestone agree to narrow its asserted claims. Until Acushnet's satisfies its outstanding discovery obligations, Bridgestone cannot even begin to discuss selection of representative claims. We cannot responsibly come to any agreement on the issue of representative claims until Acushnet's complies with its discovery obligations and we have a full and fair opportunity to assess Acushnet's newly-raised invalidity contentions.

Furthermore, once we are in a position to discuss representative claims, Acushnet must be prepared to agree to drastically reduce the volume of prior art asserted. Bridgestone will not agree to any representative claim arrangement where Acushnet is not similarly constricted in its invalidity contentions.

Still further, Acushnet relies on the "Project X2 Veneer Ball," which Acushnet states is entitled to a prior art date sometime in 1996. As Mr. Lester testified, the Pro V1 was known as the veneer ball during development. Thus, all documents and things relating to the "Project X2 Veneer Ball" and balls related thereto should have been produced more than eight months ago. Produce the Project X documents and any other "veneer" related documents immediately.

Finally, Bridgestone reserves its right to seek sanctions for Acushnet's failure to seasonably supplement its previous discovery responses. There is no reason why these references were not disclosed until the last possible moment. This case was filed almost 14 months prior to Acushnet's May 1 supplementation, and years of negotiations preceded the filing of the Complaint. Many of the balls cited by Acushnet were Acushnet's own balls. Acushnet was certainly aware of the properties of these balls the entire time. Such dilatory conduct appears designed to force Bridgestone into requesting the Court to extend the schedule.

We look forward to discussing these issues with you next Monday, May 15 at 10:00 a.m.

Sincerely,

Robert M Masters | RMW

Robert M. Masters
of PAUL, HASTINGS, JANOFSKY & WALKER LLP

EXHIBIT 13

# HOWREY LLP

1299 Pennsylvania Avenue, NW
Washington, DC 20004-2402
www.howrey.com

Alan M. Grimaldi
Partner
202.383.6989
202.383.6610
grimaldia@howrey.com

File 00634 0002

May 16, 2006

BY FACSIMILE

Robert M. Masters, Esq.
Paul, Hastings, Janofsky & Walker LLP
875 15th Street, N.W.
Washington, D.C. 20005

> **Re:** ***Bridgestone Sports Co. v. Acushnet Co.,***
> **C.A. No. 05-132 (JJF) (D. Del.)**
> **Response to Your Letter of May 10**

Dear Rob:

We received your letter of May 10 regarding alleged deficiencies in Acushnet's discovery responses. As an initial matter, I note that we have addressed several of the matters discussed in your letter in separate correspondence and on multiple occasions confirmed that Acushnet is not withholding non-privileged documents related to specific requests. Nonetheless, we again address these matters herein.

## I.    ACUSHNET'S DOCUMENT COLLECTION EFFORT

We object to your characterization of Mr. Lester's preparation for his deposition, which we address by separate letter. With regard to your specific complaints about Acushnet's collection of documents, however, we note Mr. Lester's testimony that he met with Acushnet personnel and attorneys with Howrey upon receipt of Bridgestone's document requests. At that meeting Acushnet personnel received instructions on searching for documents. (*See, e.g.*, Lester Dep. at 9:5-10:9; 39:7-18; 89:3-16). He testified that the individuals were instructed specifically to search for documents related to the accused Acushnet balls (including developmental files), the accused Bridgestone balls and prior art golf balls. (*See, e.g.*, Lester Dep. at 40:19-42:2; 103:5-104:13.)

Mr. Lester identified a number of individuals present at that meeting and testified that each individual was responsible for searching their own files, including electronic files, e-mail, and databases. (*See, e.g.*, Lester Dep. at 38:8-40:9; 45:4-6; 86:19-87:2.) He further testified that certain individuals were tasked with searching for documents in specific archives and databases, including databases for research and development, manufacturing, golf ball testing, and quality control, and that those individuals produced documents to him from those databases. (*See, e.g.*, Lester Dep. at 60:16-62:6; 74:5-75:21; 113:19-114:15; 117:18-121:11.) He also testified that his document collection efforts covered files contained in offsite storage. (*See, e.g.*, Lester Dep. at 88:9-22; 93:22-95:4.)

AMSTERDAM  BRUSSELS  CHICAGO  EAST PALO ALTO  HOUSTON  IRVINE  LONDON
LOS ANGELES  NORTHERN VIRGINIA  PARIS  SALT LAKE CITY  SAN FRANCISCO  TAIPEI  WASHINGTON, DC
DM_US\8345274.v2

# HOWREY

Mr. Lester's testimony, therefore, shows that Acushnet's document collection efforts were exhaustive, both in terms of subject matter and physical locations searched. Each time Bridgestone has identified a perceived deficiency, Acushnet has responded by producing additional information where possible or by confirming that Acushnet is not withholding responsive documents. Bridgestone's complaint appears to be that Mr. Lester did not personally search every file or interview every individual who searched for responsive documents – a requirement for which there is no basis and which is manifestly unreasonable.

Nevertheless, we have agreed to research further answers to certain questions, just as we asked you to research further answers to questions Bridgestone's 30(b)(6) witness on document collection could not answer. (*See* Masters Ltr. to Seal, Feb. 2, 2006 at 1.) In addition, we agreed to provide additional deponents on specific document collection topics, including Acushnet's searches of certain databases and the collection of financial documents.

Further, the facts refute your claim that the volume of each party's production evidences "an overwhelming discrepancy in document production to date." While you state that Acushnet has produced fewer than 90,000 pages of hardcopy documents, you ignore Acushnet's production of a CD of data that, by your own admission, would comprise about <u>90 boxes</u> of information if printed in hardcopy. (*See* Masters and Gruskin Ltr. to Moore, Sep. 12, 2005 at 4.) In addition, your claim that Bridgestone "has produced more than 200,000 pages" fails to account for the fact that for almost half of those documents – 95,000 pages, belatedly produced on January 30 – you refused to admit that the documents were either (1) responsive to any of Acushnet's document requests, (2) relevant to any issues in this case, or (3) non-duplicative of documents already produced. (*See* Masters Ltr. Seal, Jan. 30, 2006.)

## II.    ACUSHNET'S DOCUMENT RETENTION POLICY

Acushnet has not been intentionally withholding its document retention policy, much less for "many months" as your letter suggests.[1] The first time Bridgestone even suggested that Acushnet had not produced a complete copy of its document retention policy was during Mr. Lester's deposition on April 26, 2006. In any event, we produced that document on May 12 in response to your request. (*See* AB 087740-AB 0087772.)

## III.    ACUSHNET'S SOURCE LOG

In your letter, you conclude that Acushnet's document production is deficient based on the omission of "key personnel" such as Wally Uihlein, Bill Burke, Jerry Bellis, Eric Bartsch, Ray Cebula and Michael Kramer from Acushnet's source log. We are in the process of speaking

---

[1] Bridgestone took longer than two weeks to get a <u>complete</u> copy of Bridgestone's document retention policy to Acushnet after Acushnet identified its absence in Bridgestone's document production.

DM_US\8345274.v2

**HOWREY.**

with each of them and will confirm whether they have searched their files and turned over any responsive documents.

Our research into the preparation of Acushnet's source log suggests that the individuals identified therein not only collected their own documents, but also forwarded documents collected by other individuals who do not appear on the source log. We are researching this matter further and will supplement the source log to the extent possible.

## IV.    ORGANIZATION CHARTS

Contrary to your assertion, Acushnet is not withholding any previous organization charts. The chart produced as AB 0052390-AB 0052419 is the only responsive chart in Acushnet's possession, custody or control.

## V.    ACUSHNET'S PRIVILEGE LOG

You previously raised a number of perceived issues with regard to Acushnet's privilege log. (See Bensen Ltr. to Seal, Mar. 14, 2006.) With regard to a small number of issues, we are addressing your concerns by providing more detail with regard to certain entries in the privilege log, which we will provide to you in advance of the meet and confer on Monday.

A number of your complaints, however, are unfounded. For example, your complaint that certain entries "appear to concern business matters rather than legal advice" is belied by the entries themselves, which clearly state that privileged documents concern legal advice. See, e.g., Acushnet's Privilege Log, entries 82 ("Email to counsel providing confidential information to counsel for the purpose of rendering legal advice regarding corporate planning issues"), 84 ("Email reflecting legal advice of counsel regarding product promotion issues"), and 261-262 ("Email to counsel seeking legal advice of counsel re marketing issues"). Similarly, there is no basis for Bridgestone's contention that the distribution of certain privileged documents "went well beyond that necessary to convey or consider the legal advice, if any, rendered." (Bensen Ltr. to Seal, Mar. 14, 2006 at 2.)

## VI.    FINANCIAL DOCUMENTATION

Your letter makes some allegations regarding the volume of Acushnet's financial document production. You indicate that it constitutes a "small number of documents" and that in view of Mr. Moore's comments in court related to the "massive" volume transactional-level documents (e.g., invoices and orders) our production should include additional documents.[2] The

---

[2] During a hearing before the Court, you stated that you were not seeking production of this "massive volume" of transactional-level documents. (Tr. Jan. 13, 2006 at 24, line 8-24 (Mr. Masters informing Judge Farnan that "we're not asking for the gigantic database that the corporation has and has to have just to conduct its everyday business.").)

DM_US\8345274 v2

May-16-06  06:09pm   From-HOWREY SIMON                                    T-570  P:05/12  F-642

# HOWREY

Robert M. Masters
May 16, 2006
Page 4

volume of Acushnet's damages production is irrelevant. What is relevant is that Acushnet has given you responsive financial reports to the extent that the information is available to satisfy each of your requests.

Despite your allegations that Acushnet's damages document production was "wholly insufficient," Acushnet has provided you responsive documents as outlined in your February 28, 2006 letter to us. We understand that the documents you were seeking under the Court's January 13th Order were outlined in that letter. Your most recent letter, however, raises additional categories of documents not outlined in that letter. To the extent that you have new, last-minute requests, our investigation is ongoing as noted below.

The following categories of documents were identified in Bridgestone's February 28th letter:

*"Monthly and annual sales data (dollar and units) by accused ball and/or corresponding side stamp for 2000-2006."* Acushnet has produced financial reports to you in response to this request and confirms that it is not withholding any responsive documents. (*See, e.g.,* AB 0048224-AB 0048825; AB 0084256-AB 0085137; AB 0085432-AB 0085499; AB 0085928-AB 0086231; AB 0086717-AB 0086871.)[3] Further, to the extent that you may have not been provided with monthly data, no responsive documents exist.

*Monthly and annual manufacturing costs, COGS and standard cost data (dollar and units) by accused ball and/or corresponding side stamp for 2000-2006.* Acushnet produced documents responsive to your request. (*See, e.g.,* AB 0080359-AB 0080402.) Acushnet is not withholding any responsive documents. Further, to the extent that you may have not been provided with monthly data, no responsive documents exist.

*"Quarterly and annual Acushnet Company income statements and P & Ls for the period 2000-2006."* We have produced documents showing Acushnet's income from the accused products. (*See, e.g.,* AB 47975-AB 47977; AB 70606-AB 70610; AB 71264-AB 71268; AB 73503-AB 73507; AB 74165-74169; AB 84267-84369.) Your May 10, 2006 accuses Acushnet of withholding "quarterly income statements or P&L's including on a divisional or operating group level." Your February 28th letter never requested any documents on a division or operating group level. Regardless, we are looking into whether Acushnet has any such documents.

*"Profit projections for each accused ball and/or corresponding side stamp at the time of its introduction."* In response to your requests, we produced documents related to Acushnet's

---

Thus, you provided us with a letter outlining the types of documents you were seeking. (*See* Bensen Ltr. to Moore, Feb. 28, 2006.) Acushnet produced responsive financial documents on April 3, 2006 pursuant to the Court's order

[3] These bates ranges, as well as the others listed herein, are provided pursuant to the parties' agreement to identify bates numbers in response to perceived deficiencies in the document production. The documents identified by these ranges are exemplary and are not intended to be exhaustive.

DM_US\8345274 v2

May-16-06  06:09pm    From-HOWREY SIMON                                    T-570   P.0014/042   F-642

# HOWREY

Robert M. Masters
May 16, 2006
Page 5

"Golf Ball Demand Team" that include demand projection information. (*See, e.g.,* AB 0085500-AB 0086247.) Acushnet is not withholding any documents related to such projections.

*"Golf Ball Product Plans."* In response to your letter, we are confirming whether we have any additional golf ball product plans such as the one produced as AB 0047574-0047578. If we have any such documents for the accused Acushnet golf balls, we will produce them.

*"Representative samples of brochures and advertisements for 2000-2005."* In addition to documents we produced to you prior to April 3, 2006, we produced more samples of Acushnet's advertising and brochures to you. (*See* AB 0085217-AB 0085418.)

*"Monthly and annual market share data by accused ball and/or corresponding side stamp for 2000-2006" and "Surveys and Third Party Reports" including "Golf Datatech" and "NGF Reports and data from 2000-2006."*[4] Acushnet obtains its market share information based on third party information. Responsive Golf Datatech and NGF reports were produced to you. (*See, e.g.,* AB 0082102-AB 0083689.)

*"Licenses and or Agreements relating to Acushnet patents-in-countersuit and other patents relating in any way to golf balls or materials used in golf balls, or other Acushnet golf ball technology" and "licenses relating to third party patents used in Acushnet golf ball products."* We have produced responsive documents to you. (*See, e.g.,* AB 0085422-AB 0085429; AB 0086248-AB 0086276; AB 0087773-0087795.)[5] We are not withholding any additional responsive documents.

Finally, your letter states that "Acushnet has not produced any documents reporting to Fortune Brands, Acushnet's parent company, nor has Acushnet produced executive summaries." Neither of these issues were raised in your February 28th letter, despite the parties stipulation that you would supply us with a list of the documents that you needed to make your damages case. We are currently investigating whether responsive reports to Fortune Brands or "executive summaries" exist. If any such documents are located, we will produce them to Bridgestone.

---

[4] In recent letters, you complain about the volume of these documents produced by Acushnet, despite your requests for such information. (*See, e.g.,* White Ltr to Seal, Apr 6, 2006 at 6 ("98% of the first box comprised third party sales compilations purchased from NGF and Golf Datatech.").) Given your request for such data, that complaint is unfounded.

[5] We note that the document at AB 0085422-AB 0085429 is a license agreement between Bridgestone and Acushnet. While Acushnet has produced this document to you, Bridgestone has not produced its copy of the agreement. This further reinforces our belief that Bridgestone's document production remains substantially deficient. We reiterate our request that you produce all responsive licenses relating to golf balls or golf ball technology immediately.

DM_US\8345274 v2

# HOWREY

## VII.     MANUFACTURING GUIDELINES

In your letter, you conclude that "Its [sic] seems unlikely that Acushnet would not finalize these document prior to a manufacturing run." You request that Acushnet produce *final* manufacturing guidelines immediately.

This is not the first time that you have raised this issue with us. (*See* Wikberg Ltr. to Seal, Apr. 20, 2006; Wikberg Ltr. to Seal, May 4, 2006.) The answer to your demand is still the same: Acushnet is not withholding any responsive manufacturing guidelines in its possession, custody or control. (*See* Seal Ltr. to Wikberg, Apr. 21, 2006; Seal Ltr. to Wikberg, May 12, 2006.)

Additionally, in your letters to us, you note that Acushnet "has not produced manufacturing guidelines for each for each of the Acushnet golf balls identified in the May 1 supplementation." We assume that you are referring to Acushnet's supplemental response to Bridgestone Interrogatory No. 4 and the 10 Acushnet golf balls identified as including "390 to 450 dimples," as required by, for example, Bridgestone's '924 patent. Acushnet relied on these prior art golf balls solely for the purpose of establishing that a vast majority of publicly-available golf balls had dimple counts within the claimed range, which is shown by documents already produced by Acushnet. (*See, e.g.,* AB 0044436-AB 0044709.) Bridgestone has not shown that any other feature of those 10 golf balls is relevant to any claim or defense in this case.

Additionally, Acushnet is investigating whether it has any of these golf balls in its possession, custody or control. If Acushnet has any such golf balls, it is willing to make these golf balls available for Bridgestone's inspection so that Bridgestone can verify the number of dimples on these golf balls. Because Acushnet is relying on certain golf balls cited in Appendix A of its response to Interrogatory No. 4 solely to establish that the claimed number of dimples were prevalent in the art, complete manufacturing guidelines are irrelevant and cumulative of documents produced by Acushnet in August 2005.

## VIII.     ON COURSE/OFF COURSE RETAILER AGREEMENTS, DISTRIBUTOR SALES AGREEMENTS & SUBSIDIARY SALES AGREEMENTS

Your letter indicates that Mr. Lester testified to the effect that Acushnet had entered into agreements with foreign subsidiaries, foreign distributors and on-course and off-course retailers and that such documents were produced.

You then state that "to date, no such production has occurred." Acushnet, however, has produced its agreements with its foreign subsidiaries and its foreign distributors. (*See, e.g.,* AB 0083690-AB 0084255.) We are investigating whether we have any on-course or off-course retailer agreements that have not already been produced.

DM_US\6345274 v2

# HOWREY

## IX.    EMAILS AND ATTACHMENTS

Contrary to your letter, Acushnet has not "refused to produce copies of attachments whose icons appear on the hard copies of documents produced by Acushnet." Bridgestone raised this issue previously. Now, as before, we confirm that we are not withholding any e-mail attachments.

Further, while you suggest that such attachments may be found in Acushnet's "numerous databases," Mr. Lester testified that electronic files, e-mail, and databases were searched for responsive documents. (*See, e.g.*, Lester Dep. at 38:8-40:9; 45:4-6.) He further testified that certain individuals were tasked with searching for documents in specific databases, including databases for research and development, manufacturing, golf ball testing, and quality control, and that those individuals produced documents to him from those databases. (*See, e.g.*, Lester Dep. at 60:16-62:6; 74:5-16.)

Thus, Acushnet confirms once again that it is not withholding any responsive e-mail attachments in its possession, custody or control.

## X.    MEETING MINUTES

You again raise the complaint about alleged gaps in Acushnet's production of meeting minutes, a complaint Bridgestone first raised on November 17, 2005. (*See* Saliba Ltr. to Moore, Nov. 17, 2005 at 1.) Now, as then, our response is that we are not withholding any such meeting minutes in our possession, custody or control. (*See* Seal Ltr. to Saliba, Nov. 28, 2005 at 2.)

As with your complaint above regarding e-mail attachments, you suggest that "Acushnet maintains numerous databases where documents such as e-mailed meeting minutes might be stored ...." I refer you to our response above in paragraph IX.

## XI.    QUALITY CONTROL MANUALS

Your letter complains that "Acushnet has produced no quality control and inspection documents." That statement is not true. In fact, in a letter dated September 12, 2005, you complained that that Acushnet had produced a CD of such information that, if printed in hardcopy, would comprise over 90 boxes of information. (*See* Masters and Gruskin Ltr. to Moore, Sep. 12, 2005 at 4.) As we have previously informed you, this CD constitutes Acushnet's QAS database, and includes Acushnet's responsive "inspection documents." Likewise, your belief that Acushnet's production of its quality control manuals is "grossly deficient" is once again misplaced. In August of 2005, Acushnet also produced its responsive quality control testing manuals. (*See, e.g.*, AB 0022937-AB 0023118.)

We are in the process of confirming that each of the individuals identified in your letter have produced all their responsive documents. To the extent that any additional responsive documents are located, we will produce them to Bridgestone.

DM_US\8345274.v2



### XII.    DATABASES

Your complaint that Acushnet has not adequately searched its "databases" is unfounded. As stated above, Mr. Lester testified that certain individuals were tasked with searching for documents in specific databases, including databases for research and development, manufacturing, golf ball testing, and quality control, and that those individuals produced documents to him from those databases. (*See, e.g.,* Lester Dep. at 60:16-62:6; 74:5-16.) Nonetheless, upon receipt of your letter, we are investigating whether any relevant database has yet to be searched. We expect to conclude this investigation in advance of the 30(b)(6) deposition on that topic scheduled for May 19.

### XIII.    SAMPLES, COMPONENTS & BALLS

Your letter grossly misstates the Court's instructions to the parties at the January 13th hearing. The Court indicated to the parties that how the parties agreed to test the golf balls requested by Bridgestone was up to them and that the parties may agreed to perform testing under a "compressed time table." (1/13/06 Hearing Tr. at 15, ll. 16-24.) But that was up to the parties. (*Id.*) Moreover, the Court indicated that "If you can't agree … then you'll have to submit a specific proposal, and I'll choose." (1/13/06 Hearing Tr. at 15, ll. 21-23.) The Court never indicated that Bridgestone was entitled to samples "without restriction."

Pursuant to our most recent meet-and-confer on this issue, we are preparing a proposal for joint testing, whereby we would attempt to agree on a time period for exchange and testing of certain golf balls of which there is a limited number. Hopefully, we can resolve some issues such as handling requirements, time periods for return of golf balls and numbers of prior art golf balls to be exchanged. Because the number of certain balls is limited, however, Acushnet has consistently maintained it is hesitant to turn over its best evidence of invalidity of some of Bridgestone's patents-in-suit "without restriction," as you demand.

Finally, we will agree to produce "components, as well as golf ball rejects," as requested by Bridgestone within the next 10 business days. We will be producing some materials in sealed packages. You will be taking possession of such materials at your own risk and you assume all potential liability from any improper use or handling of any such materials.

### XIV.    ACUSHNET'S INVALIDITY CONTENTIONS

Your complaints regarding the sufficiency of Acushnet's Invalidity Contentions are unfounded. You state that Acushnet's response to Bridgestone's interrogatories 4 and 35 must "state specific combinations of prior art references Acushnet relies on to support its contention that one or more of the claims are invalid under 35 U.S.C. § 103." Acushnet's invalidity contentions do just this. Acushnet maintains that each of the primary references cited may be used to invalidate each applicable claim as asserted in Acushnet's invalidity contentions.

Moreover, as we have already noted to you, Bridgestone has not even identified which claim elements it contends render the claims of Acushnet's Lynch patents invalid. Accordingly,

Case 1:05-cv-00132-JJF   Document 150-3   Filed 07/31/2006   Page 32 of 42
May-16-06 06:11pm   From-HOWREY SIMON   T-570   P.032/042   F-642

# HOWREY

Robert M. Masters
May 16, 2006
Page 9

Bridgestone is in no position to complain about the sufficiency of Acushnet's invalidity contentions. Bridgestone's final invalidity contentions with respect to three of Acushnet's patents provide no more detail than Bridgestone's original complaint for declaratory judgment. (*Compare* Bridgestone's Complaint for Declaratory Judgment *with* Pls.'s Fifth Supp. Responses to Def.'s First Set of Interrogs. (Bridgestone's "final invalidity contentions" with respect to the Acushnet patents-in-suit.).)

Bridgestone is the party that brought this matter before the Court and sought a declaratory judgment that Acushnet's patents were invalid. As set forth in previous correspondence, based on Bridgestone's failure to provide any invalidity contentions for the Lynch patents or claims 2 and 4-7 of the '705 patent under § 102 or any specific invalidity contentions under § 112 by the deadline for any such contentions, Bridgestone is precluded from raising any such contentions now that the deadline has passed. (*See* Seal Ltr. to Masters, May 4, 2006 at 2.)

If you maintain that Acushnet's invalidity contentions fail to express the specific combinations of references that Acushnet relies upon to support its contention that each asserted claim of each of the Bridgestone patents-in-suit is invalid, please describe in detail how Acushnet's contentions fail to set forth the specific combination of references so that we may be in a position to consider your complaint. At present, however, we believe that your complaints have been addressed and we stand on our invalidity contentions.

## XV.   ACUSHNET'S RESPONSE TO INTERROGATORY NO. 1

The product list provided by Acushnet in response to Bridgestone Interrogatory No. 1 was submitted in response to – and fully complies with – the Court's November 2, 2005 Order. As you may recall, Bridgestone sought a motion to compel a further response from Acushnet to Interrogatory No. 1. The Court granted that motion, but limited Acushnet's response to the provision of "a product list of every Acushnet golf ball sold or offered for sale anywhere in the world for the past four years." (*See* Order dated November 2, 2005 ) The list provided by Acushnet complies with that Order.

While the basis for your statement that Acushnet's response is "misleading, incomplete, and inaccurate" is unclear, I understand it to refer to the issues raised by Mr. Wikberg of your office in separate correspondence. (*See* Wikberg Ltr. to Seal, Apr. 20, 2005; Wikberg Ltr. to Seal, May 4, 2006.) Mr. Wikberg complained that the list is organized by year, but does not accurately reflect the sales of each identified product by year.

As we responded to Mr. Wikberg, however, that was not the purpose of the list. (*See* Seal Ltr. to Wikberg, Apr. 21, 2006; Seal Ltr. to Wikberg, May 12, 2006.) Instead, as stated by you at the October 5, 2005 hearing, the purpose was to inform Bridgestone of every model and version of the golf balls sold by Acushnet for the past four years so that Bridgestone could identify and investigate all allegedly infringing products. (*See* 10/5/05 Hearing Tr. at 6-12.) The list provided by Acushnet provides just such a list for the past five years, organized by the year in which each product appears in Acushnet's product catalogs. That list, therefore, more than

DM_US\8343274 v2

**HOWREY**

Robert M. Masters
May 16, 2006
Page 10

complies with the Court's November 2, 2005 Order and is thus a full and complete response to
Interrogatory No. 1.

## XVI.    NEWLY ASSERTED PRIOR ART

Your letter asserts that Acushnet "inserted into the litigation scores of additional prior art
references" and that Acushnet should have informed you earlier of the additional prior art. Your
allegations are baseless and assume that Acushnet and its attorneys had prepared these positions
long ago and merely rested on them for an unreasonable period of time. You express no basis
for making such allegations. Remember, Bridgestone has asserted 83 claims from 10 patents
against different models and/or versions of seven Acushnet golf balls. Addressing each of those
claims has been a substantial and time-consuming undertaking for Acushnet.

In any event, Acushnet produced all but a few prior art documents relied upon in its
invalidity contentions to Bridgestone long ago. Since the production of those documents to
Bridgestone, Acushnet had to obtain translations of non-English-language prior art references,
analyze the prior art documents and prepare its invalidity contentions. All of this had to be done
in the period between September 28, 2005, when Acushnet served Bridgestone with nearly 200
pages of invalidity contentions and the May 1 deadline for supplementing invalidity
contentions.[6] As you noted, Acushnet identified numerous prior art references that render the
claims of the Bridgestone patents-in-suit invalid—preparation of Acushnet's final invalidity
contentions was a very time-consuming endeavor.

Your assertion that Bridgestone cannot evaluate the patentability of its claims until
"Acushnet satisfies its discovery obligations" is unfounded. Acushnet has given you *detailed*
final invalidity contentions. You are in a position to evaluate Acushnet's defenses and chose
representative claims.

As for Acushnet's position that its Project X2 Veneer Ball invalidates a number of claims
of the Bridgestone patents-in-suit, Acushnet has provided Bridgestone with documents in its
possession sufficient to show its prior public uses of the Pro V1 as well as documents related to
its conception, design and construction. (*See, e.g.,* AB 0080233; AB 0080234-AB 0080238; AB
0080245-0080245; AB 0080247-AB 0080358; AB 0080416-AB 0080425; AB 0080426-AB
0080436; AB0080437-AB 0080743; AB 0081065-AB0081745; AB 0086403-AB 0086457.)
When the existence of this ball came to Acushnet's attention, it promptly supplemented its
production as its investigation continued. Acushnet believes that it has produced all documents
relevant to its defenses regarding the Project X2 Veneer golf ball as well as the early stages of

---

[6] Acushnet's efforts were further impeded by Bridgestone's January 30, 2006 production of over 95,000 pages of
Japanese-language documents that you indicated were not even necessarily responsive or relevant to any Acushnet
document request or even non-duplicative of documents previously produced by Bridgestone. (*See Masters Ltr to
Seal, Jan. 30, 2006.*) Hundreds of e-mail documents to and from the inventors of the patents-in-suit were contained
in that production despite Mr. Saliba's prior representations to us that Bridgestone simply did not use e-mail.
Acushnet's review of that production took, and continues to take significant resources.

DM_US\8345274 v2

PAGE 11/12 * RCVD AT 5/16/2006 7:11:14 PM [Eastern Daylight Time] * SVR:WDCRF1/2 * DNIS:9998 * CSID:+ * DURATION (mm-ss):05-26

# HOWREY.

Robert M. Masters
May 16, 2006
Page 11

development of the Titleist® Pro V1™ golf ball. To the extent that Acushnet locates additional non-privileged documents related to the Project X2 Veneer golf ball or the Pro V1™, it will produce them immediately and has never indicated otherwise.

Additionally, Acushnet has located at least one Project X2 Veneer golf ball. Once we reach an agreement on the exchange and testing of golf balls of which there are limited numbers, we will produce it. In the meantime, we will make it available for inspection. Acushnet's investigation is continuing into this defense and it will continue to provide Bridgestone with additional information in a reasonable and timely manner.

Finally, in your letter you reserve the right to seek sanctions for what you allege is Acushnet's failure to seasonably supplement its interrogatories. While you allege that Acushnet's conduct is sanctionable, you ignore the fact that Bridgestone's recent conduct in failing to notify Acushnet of Bridgestone's newly asserted claims is far worse.

Acushnet's efforts associated with compiling and analyzing the prior art to address each of the 83 claims Bridgestone asserted in its Responses to Acushnet's first set of interrogatories in July 2005 were significant. On May 1, 2006, over 13 months into this case, Bridgestone appears to have dropped four of its claims and has added five new claims to this case. Not only did Acushnet waste efforts addressing claims that Bridgestone dropped at the last minute, but now needs to go back through the huge volume of prior art produced in this litigation and consider whether or not to have additional searches of the prior art performed. Bridgestone's failure to inform Acushnet earlier of these additional claims and that Bridgestone was no longer going to pursue certain claims it had previously raised led to a significant waste of resources.[7] As you know, Acushnet withdrew one if its asserted patents three weeks before final contentions so that you would not have go through the wasteful exercise of preparing final contentions on it. We did not receive the same courtesy from Bridgestone.

We are prepared to discuss these matters with you, as well as the matters raised in my letter of May 5, during the meet and confer on Monday, May 22. We will call you that morning at 10:00 a.m. In the meantime, we await your response to my deficiencies letter of May 5 so that we may advance those issues in preparation for Monday's discussion.

Sincerely,

Alan M. Grimaldi

[7] As we requested, please confirm that Bridgestone is no longer pursuing U.S. Patent No. 5,252,652, claim 11; U.S Patent No. 5,782,707, claim 3, and U.S Patent No. 6,679,791, claims 12 and 23. (See Seal Ltr to Masters, May 4, 2006 at 2).

DM_US\8345274.v2

EXHIBIT 14

REDACTED

EXHIBIT 15

# REDACTED

# EXHIBIT 16

# Paul Hastings

Paul, Hastings, Janofsky & Walker LLP
875 15th Street, N.W. • Washington, DC 20005
telephone 202 551 1700 • facsimile 202 551 1705 • www.paulhastings.com

Atlanta
Beijing
Brussels
Hong Kong
London
Los Angeles
Milan
New York
Orange County
Palo Alto
Paris
San Diego
San Francisco
Shanghai
Stamford
Tokyo
Washington, DC

202.551.1838
timothycremen@paulhastings.com

July 24, 2006

70416.00002

**VIA FACSIMILE TO (202) 383-6610**

Brian S. Seal, Esq.
Howrey LLP
1299 Pennsylvania Ave., N.W.
Washington, DC 20004

Re:    **Bridgestone v. Acushnet - Outstanding Deposition Notices**

Dear Brian:

Over six weeks ago, on June 8, 2006, Bridgestone served upon Acushnet *Bridgestone's Ninth Notice Of Deposition Pursuant To Rule 30(b)(6)* regarding Acushnet's competitive ball testing. The deposition noticed therein was originally scheduled to take place in June 27, 2006. However, as of today, Acushnet has still not identified either a deponent or an available date for conducting this deposition. Please do so immediately.

Additionally, on July 10, 2006, Bridgestone served upon Acushnet *Bridgestone's Tenth Notice Of Deposition Pursuant To Rule 30(b)(6)* regarding golf ball core composition. The deposition noticed therein is scheduled to take place next week, August 1, 2006. However, as of today, Acushnet has not identified the deponent, nor indicated that this date is acceptable for conducting this deposition. Please do so as soon as possible.

Best Regards,

Timothy P. Cremen
for PAUL, HASTINGS, JANOFSKY & WALKER LLP

EXHIBIT 17

# HOWREY LLP

1299 Pennsylvania Avenue, NW
Washington, DC 20004.2402
www.howrey.com

Alan M. Grimaldi
Partner
202.383.6989
202.383.6610
grimaldia@howrey.com

File 00534.0002

July 24, 2006

BY FACSIMILE

Robert M. Masters, Esq.
Paul, Hastings, Janofsky & Walker LLP
875 15th Street, N.W.
Washington, D.C. 20005

Re:  *Bridgestone Sports Co. v. Acushnet Co.,*
     *C.A. No. 05-132 (JJF) (D. Del.)*

Dear Rob:

In light of Bridgestone's agreement to drop United States Patent No. 6,780,125 from the case, Acushnet agrees that it no longer needs the personal depositions of Messrs. Hayashi and Kimura and therefore withdraws its requests for those depositions.

As I mentioned during our discussion, we are still awaiting a deposition date for Mr. Hideo Watanabe. That deposition was noticed on January 19, 2006. Please provide us with that date immediately. We expect that you will present Mr. Watanabe before August 11, 2006 for his deposition. I have attached the notice for your convenience.

Regards,

*fol :* Alan M. Grimaldi

AMSTERDAM  BRUSSELS  CHICAGO  EAST PALO ALTO  HOUSTON  IRVINE  LONDON
LOS ANGELES  NORTHERN VIRGINIA  PARIS  SALT LAKE CITY  SAN FRANCISCO  TAIPEI  WASHINGTON, DC
DM_US\8369183.v1