IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| BRIDGESTONE SPORTS CO., LTD., and BRIDGESTONE GOLF, INC.,<br><br>   *Plaintiffs*,<br><br>   *v.*<br><br>ACUSHNET COMPANY,<br><br>   *Defendant.* | C. A. No. 05-132 (JJF) |

### BRIDGESTONE'S MOTION FOR A PROTECTIVE ORDER REGARDING DR. ROBERT J. STATZ AND TO DISQUALIFY HIM AS AN OUTSIDE EXPERT OR CONSULTANT

Pursuant to ¶¶ 16 and 19 of the Stipulated Protective Order Regarding Confidentiality of Discovery Material ("Protective Order") (D.I. 22) and F.R.C.P. 26(c), Plaintiffs Bridgestone Sports Co. Ltd. and Bridgestone Golf, Inc. (collectively "Bridgestone") request that the Court issue an order prohibiting disclosure of any documents produced to Acushnet Company ("Acushnet") by Bridgestone which are designated as CONFIDENTIAL or HIGHLY CONFIDENTIAL to Dr. Robert J. Statz ("Dr. Statz"), who is actively engaged in the development of golf balls for Acushnet, and disqualifying him as an outside expert or consultant under ¶¶ 13(d) and 14(c) of the Protective Order.

### BACKGROUND

On June 28, 2006, Acushnet disclosed Dr. Statz as an outside consultant under the Protective Order. Ex. 1. Acushnet identified Dr. Statz as a consultant to "Titleist-Footjoy Industries" without stating that this work was "involved or related to golf balls or the manufacture of golf balls," as required by the Protective Order. Further, Acushnet's counsel failed to identify Acushnet as the entity for which Dr. Statz was consulting.

Bridgestone requested additional information regarding Dr. Statz's consulting work over the past four years. Acushnet responded on July 5, 2006 stating that the only golf ball-related consulting work done by Dr. Statz during that time "was for Acushnet…" and "consisted of work on ionomers, ionomer blends, polymer blends, and core formulations." Ex. 2. In response to yet another letter from Bridgestone attempting to clarify Dr. Statz's work history with Acushnet, Acushnet stated that "Dr. Statz's agreement with Acushnet began in 2002 and has been ongoing since." Ex. 3. After a telephone discussion, Bridgestone objected to Acushnet's retention of Dr. Statz on July 14, 2006. The parties have met and conferred and have been unable to resolve the issue. Under the terms of the Protective Order, Bridgestone is obligated to file this motion

## ARGUMENT

Disclosure of Bridgestone's CONFIDENTIAL and HIGHLY CONFIDENTIAL information to Dr. Statz, a consultant with an active and ongoing relationship with Acushnet in the field of "ionomers, ionomer blends, polymer blends, and core formulations" for use in golf balls, would be highly prejudicial to Bridgestone. The subject matter of Dr. Statz's work for Acushnet is identical to the subject matter of Bridgestone's CONFIDENTIAL and HIGHLY CONFIDENTIAL documents to which he would have access if approved as an outside expert or consultant under ¶ 13(d) and ¶ 14(c) of the Protective Order. It is likely that Dr. Statz's continued work for Acushnet will be related to the CONFIDENTIAL and HIGHLY CONFIDENTIAL information contained in Bridgestone's documents. It would be impossible for Dr. Statz to keep separate the information learned from his own experience and that learned from Bridgestone's CONFIDENTIAL and HIGHLY CONFIDENTIAL information. The use of Bridgestone's CONFIDENTIAL and HIGHLY CONFIDENTIAL information in the design of

- 3 -

the golf balls of the company already possessing a substantial share of the golf ball market is highly prejudicial and unnecessarily damaging to Bridgestone.

"Courts dress technical information with a heavy cloak of judicial protection because of the threat of serious economic injury to the disclosure of scientific information." <u>Safe Flight Inst. Corp. v. Sundstrand Data Control Inc.</u>, 682 F. Supp. 20, 22-23 (D. Del. 1988) (citing numerous cases). In <u>Safe Flight</u>, Judge Roth recognized that, even "accepting [a consultant-employee] as a man of great moral fiber, we nonetheless question his human ability during future years of research to separate the applications he has extrapolated from [a disclosing party's] documents from those he develops from his own ideas." Id. at 22. The <u>Safe Flight</u> decision recognizes the inability of a consultant-employee such as Dr. Statz to "forget" information gleaned from Bridgestone's documents in his ongoing consulting at Acushnet.

Absent an agreement on the part of Acushnet and Dr. Statz to curtail his future research in the golf ball field, his review of Bridgestone's CONFIDENTIAL and HIGHLY CONFIDENTIAL information represents a serious threat to Bridgestone's competitive position with respect to one of its largest direct competitors. Thus, good cause exists to order that Dr. Statz be disqualified as an outside expert or consultant within the meaning of ¶13(d) and ¶14(c) of the Protective Order. <u>See</u> <u>United States v. Dentsply Int'l, Inc.</u>, 187 F.R.D. 152, 158 (D. Del. 1999) ("Good cause exists when disclosure will result in a clearly defined and serious injury to the party seeking the protective order").

Other courts have established a five-factor test to determine whether to approve experts to receive CONFIDENTIAL and HIGHLY CONFIDENTIAL information produced by an opposing party:

> (1) the expert's position within the receiving party's business as an officer, shareholder or employee; (2) the extent of the expert's regular employment or association with the receiving party; (3) the expert's "present involvement in the receiving party's competitive decisions, including participation in or advice related to research;" (4) "the potential for future involvement of the expert in the receiving party's competitive decisions;" and (5) if the expert is not deemed independent, whether the expert is willing to "forego future involvement with the receiving party."

<u>Ares-Serono Inc. v. Organon Int'l, B.V.</u>,153 F.R.D. 4, 6-7 (D.Mass. 1993); <u>see also</u> <u>Digital Equip. Corp. v. Micro Tech., Inc.</u>, 142 F.R.D. 488, 491 (D.Col. 1992) ("Ultimately, the focus of the court's decision should rest on considerations of the individual's relationship to or status within the receiving party's business, the likelihood of that relationship continuing, and the feasibility of separating either the knowledge gained or the individual from future competitive endeavors). Each of these factors, to the extent relevant, weighs in Bridgestone's favor.

First, Dr. Statz has had an active and continuous consulting relationship with Acushnet related to the design of golf balls stretching back over a period of at least four years. Further, that working relationship goes back to at least 1995. *See* U.S. Patent No. 5,631,324 (naming Dr. Statz as an inventor along with other Acushnet employees). Acushnet has not indicated that Dr. Statz would not be involved in the design and development of golf balls and components thereof if permitted to have access to Bridgestone's CONFIDENTIAL and HIGHLY CONFIDENTIAL information.

Second, as discussed above, Dr. Statz's relationship is active and ongoing, and has been for years. Dr. Statz can certainly be classified as a being in "regular employment or association" with Acushnet.

Third, Acushnet's counsel describes Dr. Statz's work at the Acushnet company as being related to "ionomers, ionomer blends, polymer blends, and core formulations" related to the design and manufacture of golf balls. These are critical components in the design of golf balls.

- 4 -

- 5 -

Dr. Statz's work in this area certainly constitutes his "present involvement in the [Acushnet's] competitive decisions, including participation in or advice related to research."

Fourth, there is a strong "potential for future involvement of [Dr. Statz] in [Acushnet's] competitive decisions." Dr. Statz's work with Acushnet is "ongoing." Thus, it is a certainty that Dr. Statz will be involved in future Acushnet competitive decisions relating to the design and development of golf balls.

Finally, Acushnet has never indicated that Dr. Statz would be willing to "forego future involvement" with Acushnet.

Each of these factors supports an order prohibiting Dr. Statz from reviewing Bridgestone's CONFIDENTIAL and HIGHLY CONFIDENTIAL information. Dr. Statz is not an independent expert, but is instead an employee-consultant involved in the design and development of Acushnet products directly competitive with Bridgestone's products, and thus should be barred under the Protective Order. See Digital Equip., 142 F.R.D. at 491 (disclosure of confidential information limited to "independent experts, consultants, or translators"); Spartanics, Ltd. v. Dynetics Eng'g Corp., 54 F.R.D. 524 (N.D. Ill. 1972) (limiting disclosure to independent consultants not regularly employed or associated with the party); Tosa Chrysler-Plymouth, Inc. v. Chrysler Motors Corp., 55 F.R.D. 41, 43 (E.D. Wis. 1972) (restricting disclosure of information to "those persons, not competitors of the defendant, whose aid is necessary in the preparation of the plaintiff's case").

Another factor is whether there are other qualified experts available to assist in the litigation. Safe Flight, 682 F. Supp. at 23 (pointing out the failure to investigate availability of qualified outside experts). There are many experts in the field of ionomers from which Acushnet can choose.

- 6 -

## CONCLUSION

Bridgestone respectfully requests that the court issue an order prohibiting disclosure of any documents designated as CONFIDENTIAL or HIGHLY CONFIDENTIAL by Bridgestone to Dr. Statz, and disqualifying him as an "outside expert or consultant" under the terms of the Protective Order.

        MORRIS, NICHOLS, ARSHT & TUNNELL LLP

        */s/ Maryellen Noreika (#3208*

        Jack B. Blumenfeld (#1014)
        Maryellen Noreika (#3208)
        Leslie A. Polizoti (#4299)
        1201 N. Market St.
        P.O. Box 1347
        Wilmington, DE 19801
        Telephone: (302) 658-9200
        *Attorneys for Bridgestone Sports Co., Ltd.*
        *and Bridgestone Golf, Inc.*

OF COUNSEL:

Robert M. Masters
Scott M. Flicker
Terrance J. Wikberg
Brandon M. White
PAUL, HASTINGS, JANOFSKY & WALKER LLP
875 15th St., N.W.
Washington, DC 20005
(202) 551-7100

August 1, 2006

**CERTIFICATE OF SERVICE**

I, Maryellen Noreika, hereby certify that on August 1, 2006 I electronically filed the foregoing with the Clerk of the Court using CM/ECF, which will send notification of such filing(s) to the following:

> Richard L. Horowitz, Esquire
> POTTER ANDERSON & CORROON LLP

and that on August 1, 2006 I caused copies to be served upon the following in the manner indicated:

**BY HAND**

Richard L. Horwitz, Esquire
Potter Anderson & Corroon LLP
1313 N. Market Street
Wilmington, DE  19801

**BY FEDERAL EXPRESS**

Alan M. Grimaldi, Esquire
Howrey LLP
1299 Pennsylvania Avenue, NW
Washington, DC  20004

> */s/ Maryellen Noreika*
> Maryellen Noreika (#3208)
> MORRIS, NICHOLS, ARSHT & TUNNELL LLP
> Wilmington, DE  19801
> (302) 658-9200
> mnoreika@mnat.com