**Potter**
**Anderson**
**Corroon** LLP

1313 North Market Street
P.O. Box 951
Wilmington, DE 19899-0951
302 984-6000

www.potteranderson.com

**Richard L. Horwitz**
Partner
Attorney at Law
rhorwitz@potteranderson.com
302 984-6027 Direct Phone
302 658-1192 Fax

July 26, 2006

**VIA ELECTRONIC FILING**
**AND HAND DELIVERY**

The Honorable Joseph J. Farnan, Jr.
U.S. District Court
District of Delaware
J. Caleb Boggs Federal Building
844 N. King Street, Room 4124, Lockbox 27
Wilmington, DE 19801

**PUBLIC VERSION**
Public Version Dated: August 10, 2006

Re: **Bridgestone Sports Co. v. Acushnet Company**
    **C. A. No. 05-132 (JJF)**

Dear Judge Farnan:

I am compelled to write on behalf of Acushnet to clarify numerous issues raised by Bridgestone in its letter submitted to the Court yesterday. Certain statements made by Bridgestone in its motion to Your Honor ▋▋▋▋▋▋▋▋▋▋▋. Moreover a vast number of the issues presented to the Court by Bridgestone are premature. Clearly, the parties could have benefited, and should benefit, from a meet-and-confer on these issues. Hence, the record before the Court is unclear and I hope that this letter can add some clarity.

1. **Acushnet's Invalidity Contentions**

▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋ In its final contentions, Acushnet provided its contention that *inter alia,* each of the references identified, including the specific portions of those references identified by Acushnet provide motivation to combine references. For example, Acushnet's contention on motivation to combine for claim 1 of Bridgestone's '652 patent is attached as Ex. B showing that Acushnet has provided Bridgestone with its contentions regarding motivation and providing specific citations—by column and line number—to each prior art reference it is relying on.

---

[1] Acushnet still, to this day, does not know what Bridgestone believes are "specific invalidity contentions." In responding to Bridgestone's complaint on May 16, 2006, Acushnet asked for clarification of just what Bridgestone meant by "specific combinations," particularly in light of the great detailed provided in Acushnet's contentions. (*See* Ex. A, Grimaldi Ltr. to Masters, May 16, 2006 at 8-9.) Bridgestone never responded to this letter, but instead rushed off to the Court demanding "specific combinations" of prior art, yet providing no guidance to the Court or Acushnet on what this means.

The Honorable Joseph J. Farnan, Jr.
July 26, 2006 - Public Version Dated: August 10, 2006
Page 2

Moreover, Acushnet has, in good faith, attempted to limit its invalidity defenses as part of an agreement with Bridgestone to reduce the number of patent claims at issue. ▮▮▮▮▮ Acushnet has repeatedly offered—including in papers filed with the Court—to limit the number of claims it is asserting proportionally to the reduction in the claims Bridgestone is asserting. (*See, e.g.*, D.I. 47 at 2 (proposing Bridgestone select 10 claims and Acushnet select 5; Ex. C (Grimaldi e-mail to Masters and Blumenfeld, June 28, 2006 (proposing Bridgestone limited to "around 20 claims" and Acushnet be limited to 8 claims; Moore e-mail to Judge Farnan, June 28, 2006 ("Therefore, Acushnet respectfully proposes that the case be narrowed to 20 claims from the 10 Bridgestone patents and 8 claims from the 4 Acushnet patents.")

2. **Acushnet's Document Production**

A. **Acushnet's Source Log**

Acushnet believes that this issue is not ripe for consideration by the Court, as the parties have not met and conferred as required by Del. L.R. 7.1.1. Bridgestone's mischaracterizations, however, compel Acushnet to respond in advance of the July 27 hearing.

In particular, Bridgestone's letter fails to point out that the parties' agreement to exchange source logs[2] occurred months after their August 31, 2005 initial document productions—when the vast majority of Acushnet's document production was made. Still later, after the parties' exchange of source logs, we learned that the source information we had was incomplete because certain individuals were identified as the source for not only their own documents, but also documents they had collected from others. As a result, portions of Acushnet's source log are incomplete in that they do not identify the <u>initial</u> custodian of certain documents. While Bridgestone concludes that Acushnet's source log is incorrect for over 98% of Acushnet's document production, that figure assumes that none of the information on Acushnet's log is accurate. ▮▮▮

In any event, Acushnet offered to work with Bridgestone to identify the initial source for any specific documents about which Bridgestone has any concerns. (*See* Ex. D, Seal Ltr. to Wikberg, July 25, 2006, at 1.) Instead, Bridgestone insists on source information for all of the documents that have been produced in response to the broad discovery requests, which suggests that Bridgestone is more interested in creating work for Acushnet than in determining the source of specific documents of interest. Acushnet has been, and remains willing to work with Bridgestone to identify the source of specific documents where the source is in question.

---

[2] Source logs are unrelated to the production of documents "as they are kept in the usual course of business."

### B.     Acushnet's Document Collection

Here again, Acushnet believes that these issues are not ripe for consideration by the Court, as the parties have not met and conferred on them as required by Del. L.R. 7.1.1. In fact, Acushnet sent a letter on July 25 addressing the majority of the issues raised by Bridgestone in this section. (*See* Ex. D, Seal Ltr. to Wikberg, July 25, 2006.) Nevertheless, Bridgestone's letter includes an outright fabrication that compels Acushnet to respond.



Acushnet produced over 1,500 pages of these monthly sales reports to Bridgestone on April 3, 2006, prompting Bridgestone's counsel to complain that "With respect to your production of financial documents, 98% of the first box comprised third-party sales compilations purchased from NGF and Golf Datatech. The second box is hardly an improvement." (Ex. E, White Ltr. to Seal, Apr. 6, 2006 at 2 (internal footnote omitted).) Acushnet is at a loss to understand how Bridgestone can, on one hand, complain to us that we have produced too many third party monthly sales reports and, on the other hand, complain to the Court that we have not produce any.

Additionally, because Bridgestone failed to discuss this matter with Acushnet before bringing it to the Court, Acushnet was unable to contact Mr. DeMello, the author of the e-mails in Bridgestone's Ex. 11 and determine whether these e-mails are in his possession before discussing this matter with Bridgestone. Acushnet has contacted Mr. DeMello and can confirm that these documents are no longer with Mr. DeMello, but is willing to investigate the matter further, to the extent necessary.

Prior Art Golf Balls

Bridgestone states that Acushnet has failed to produce documents related to the golf balls it claims are prior art. This is yet another issue that Bridgestone has not met and conferred with Acushnet on prior to raising it with the Court. Moreover, Bridgestone's statements contradict an agreement between Bridgestone and Acushnet that Acushnet would rely on a large number of prior art golf balls only for showing the dimple counts in Bridgestone's patents were widely adopted at the time of the alleged invention. (*See* Ex. F, Seal Ltr. to Masters, June 15, 2006 (confirming agreement between the parties made during meet-and-confer on May 22, 2006).)

This is the first time since that letter Bridgestone has suggested that it believes Acushnet still owes it documents. This is curious given that Acushnet has identified documents to Bridgestone to substantiate its final contentions with respect to the dimple counts on certain prior art golf balls. To the extent that Bridgestone is looking for any additional information, Acushnet

---

[3] The accused Acushnet products were not released for commercial sale until late 2000—thus market data prior to this time is completely irrelevant to this litigation.

has not been informed of Bridgestone's issues with Acushnet's production with respect to these golf balls.[4] Thus Acushnet believes that the record is not ripe for a decision on this issue.

Document production from electronic databases:

At no time has Acushnet contended that it would not produce the documents being requested. ███████████████████████████████████████████████████████████████. Acushnet will produce these documents by July 28, 2006. ███████████████████████████████████. Those documents will be produced by August 1, 2006.

Therefore, if Bridgestone had merely asked Acushnet for a date for production or conducted a meet-and-confer with Acushnet, it would have realized that these were not issues that needed to be raised with the Court. Bridgestone has rushed this issue to the Court rather than discussing them with Acushnet.

Acushnet's Agreements with On-Course and Off-Course Retailers:

███████████████████████████████████████████████████████████████████████████████████████████████████████████. Acushnet expects that this production will be complete by August 1, 2006. Once again, Acushnet has not indicated that it intends to withhold samples of its agreements.

"S" – Value Golf Balls:

Bridgestone suggests to the Court that Acushnet's K-2 golf balls "have not yet been made available." Acushnet will make these golf balls available for inspection by August 7, 2006 and invites Bridgestone to contact Acushnet with a time that Bridgestone would like to inspect these golf balls.

The K-2 golf balls were made by Acushnet approximately <u>three decades</u> ago. Acushnet has located a very limited number of documents related to these "K-2" golf balls and will produce them to Bridgestone.

### C.  **Acushnet's Redactions**

This is another example of an issue that is premature because the parties have not met and conferred on it. Indeed, at this time, Acushnet is not even aware of the basis on which Bridgestone premises its claim that Acushnet's redactions are improper. Bridgestone raised that claim for the first time on July 24. Indeed, though Bridgestone's letter identifies ████████ ███████████████████████, only one – ████████████ – was identified on July 24, to which

---

[4]  As discussed above, Acushnet has informed Bridgestone that it is not withholding documents related to ██████████████████, an issue that Bridgestone raised with Acushnet in Mr. Wikberg's letter that was received less than 24 hours before Bridgestone's letter was filed with the Court. (*See* Ex. G, Wikberg Ltr. to Seal, July 24, 2006; Ex. D, Seal Ltr. to Wikberg July 25, 2006.)

Acushnet responded on July 25 and believes that the redaction is proper. (*See* Ex. D, Seal Ltr. to Wikberg, July 25, 2006 at 4.)

### 3. Acushnet's 30(b)(6) Witness on Its Document Retention Policy

As with many of the issues discussed above, Acushnet believes this issue raised by Bridgestone is not ripe as the parties have not met and conferred as required by Del. L.R. 7.1.1.

Contrary to Bridgestone's assertion, Acushnet <u>never</u> "refuse[d] to provide a properly prepared witness to testify as to [Acushnet's document retention policy]." In fact, the last word the parties exchanged on this issue was on May 16, in which Acushnet, in response to Bridgestone's concerns, stated that **"we have produced a copy of the document retention policy (AB 087740-AB 0087772) and are willing to discuss with you what additional testimony you feel might be necessary."** (Ex. H, Seal Ltr. to White, May 16, 2006 at 4 (emphasis added).) Bridgestone has yet to respond.

Further, Bridgestone's letter to the Court ██████████████████████████ Acushnet should not be finding out about Bridgestone's complaint for the first time in its submission to the Court. We are uncertain whether any such policy even exists, but we are investigating the matter. Again, as with many of the issues raised by Bridgestone, this is an issue that could have been addressed in a meet and confer.

### 4. Deposition Scheduling

Again, Acushnet believes this issue is not ripe for consideration by the Court as the parties have not met and conferred as required by Del. L.R. 7.1.1. Nevertheless, Acushnet informed Bridgestone weeks ago that it tentatively agrees in principle that the parties should, within one week of receiving a deposition notice, provide dates for the deposition. Acushnet has, again for weeks, asked for dates for the deposition of Hideo Watanabe, one of the Bridgestone inventors. This deposition was noticed on January 19, 2006. Over seven months later, no date has been tendered. Bridgestone, by contrast, has noticed ten 30(b)(6) depositions and has completed six, with an additional two scheduled to take place during the next few days.

### 5. Acushnet's Issues With Bridgestone's Production

Acushnet has raised numerous issues with Bridgestone's document production in correspondence and has further raised them in meetings between the parties. Some exemplary issues include: (1) Bridgestone Sports' continuing failure to search for responsive documents at its parent corporation, Bridgestone Corporation;[5] (2) Bridgestone's failure to produce agreements between ████████████████████████; and (3) Bridgestone's failure to produce

---

[5] Mr. Ichinose had testified at his deposition that he "most likely didn't" collect documents from Bridgestone Corporation. (Ex. I at 25:2-29:22.) At another 30(b)(6) deposition, Mr. Otsuka testified that ████████████████████████████████████████████ ████████████████. (Ex. J at 86:14-88:14.) Bridgestone has agreed to look for such documents, but Acushnet has yet to receive any.

manufacturing documents related to the accused Bridgestone golf balls. However, because Bridgestone has agreed to look into these (and other) matters and produce any documents located, these issues were not—and still are not—ripe for the Court's intervention.

Again, we apologize for the necessity of filing this letter, but hope that it helps to clarify some of the issues raised by Bridgestone. We firmly believe that the majority of the issues raised by Bridgestone are not ripe due to the lack of a meet and confer to discuss them as required under the Local Rules.

> Respectfully,
>
> /s/ *Richard L. Horwitz*
>
> Richard L. Horwitz

msb/742826/745614

cc: Jack B. Blumenfeld, Esquire (by hand delivery)
    Robert M. Masters, Esquire (by electronic mail)