IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| BRIDGESTONE SPORTS CO., LTD., and BRIDGESTONE GOLF, INC., | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | |
| ACUSHNET COMPANY, | ) ) | C. A. No. 05-132 (JJF) |
| Defendant. | ) ) ) | |
| ACUSHNET COMPANY, | ) ) | **PUBLIC VERSION –** |
| Counterclaim Plaintiff, | ) ) ) | **SEPTEMBER 26, 2006** |
| v. | ) ) ) | |
| BRIDGESTONE SPORTS CO., LTD. and BRIDGESTONE GOLD, INC. | ) ) ) | |
| Counterclaim Defendant. | ) | |

**LETTER TO THE HONORABLE JOSEPH J. FARNAN, JR.
DATED SEPTEMBER 21, 2006**

cc: Clerk of the Court

Jack B. Blumenfeld
Morris Nichols Arsht & Tunnell

Robert M. Masters
Paul, Hastings, Janofsky & Walker LLP

Richard L. Horwitz (#2246)
David E. Moore (#3983)
POTTER ANDERSON & CORROON LLP
Hercules Plaza, 6th Floor
1313 North Market Street
P. O. Box 951
Wilmington, DE  19899-0951
(302) 984-6000
rhorwitz@potteranderson.com
dmoore@potteranderson.com

*Attorneys for Defendant
Acushnet Company*



**Potter Anderson & Corroon LLP**

1313 North Market Street
P.O. Box 951
Wilmington, DE 19899-0951
302 984-6000

www.potteranderson.com

**Richard L. Horwitz**
Partner
Attorney at Law
rhorwitz@potteranderson.com
302 984-6027 Direct Phone
302 658-1192 Fax

September 21, 2006

<u>**VIA ELECTRONIC FILING**</u>

The Honorable Joseph J. Farnan, Jr.
United States District Court
844 King Street
Wilmington, Delaware 19801

**PUBLIC VERSION -
SEPTEMBER 26, 2006**

Re:   *Bridgestone Sports Co. v. Acushnet Co.,*
<u>**Civil Action No. 05-132 (JJF)**</u>

Dear Judge Farnan:

I write on behalf of Defendant and Counterclaim Plaintiff Acushnet Company ("Acushnet") in opposition to Bridgestone's motion to compel Acushnet to reduce its contentions yet again and to provide further specificity with respect to the remaining contentions. In attempting to work with Bridgestone, Acushnet has twice reduced the volume of prior art references that are at issue in this litigation since the August 2nd hearing.

Acushnet complied with the Court's instructions—which did not require Acushnet to reduce its contentions by any set amount. The references included in Acushnet's current invalidity contentions are those on which it currently intends to rely at trial, with the understanding that Acushnet may further reduce the number of references during expert discovery and/or following the Court's ruling on claim construction.

Moreover, Bridgestone asks the Court for what it has **not** given to Acushnet in response to an essentially **<u>identical interrogatory</u>**. (*See* Ex. A (comparing Acushnet's Interrog. 18 with Bridgestone's Interrog. 35.))  Bridgestone has told Acushnet only that "to the extent [claims 2 and 4-7 of the '705 patent] are not anticipated, [they are] **<u>rendered obvious under 35 U.S.C. § 103(a) in combination with secondary references.</u>**" (Ex. B (Bridgestone's Resp. to Acushnet Interrog. 18) at 9 (emphasis added).)  Bridgestone has merely contended an unspecified number of unidentified "secondary references" may be used in combination with the primary references it has identified in its claim charts. This is far less specificity than that provided by Acushnet. Acushnet therefore opposes Bridgestone's motion.

   I.   **Background of Bridgestone's Motion**

The present case currently involves 7 Bridgestone patents dealing with various aspects of golf ball design ranging from the chemical composition of the golf ball core, the construction of the golf ball (i.e., the number and properties of the various layers in a golf ball), to dimple characteristics.

The Honorable Joseph J. Farnan, Jr.
September 21, 2006
Page 2

The golf ball art is very crowded.[1] Mr. Masters, Bridgestone's lead counsel, acknowledged this fact during the August 2, 2006 hearing. (*See* 8/2/2006 Hearing Tr. at 37:10-19 (agreeing that the golf ball art "can be" crowded (attached as Ex. C).) During that hearing, the Court indicated that it would require Acushnet to "specifically set out its invalidity defenses to ... [the] representative claims being asserted by Bridgestone." (*Id.* at 8:22-9:4.) Acushnet believes it has complied with the Court's instructions.

### A. Bridgestone's Contention Interrogatories

Bridgestone has asked two separate invalidity contention interrogatories. (*See* Exs. D and E (Interrog. 5 and 35).) Interrogatory No. 5 requests nothing more than an identification of the references on which Acushnet will rely for invalidity. (Ex. D.) Acushnet has provided Bridgestone with tables identifying each reference in detail and identifying the relevant statutory sections that those references qualify under. (Ex. F (tables identifying the prior art for each of the patents-in-suit).)

Interrogatory No. 35 requests that Acushnet provide a chart "identifying specifically which sections of the Patent Code that Acushnet contends each identified claim is invalid and how Acushnet contends that each identified claim fails to satisfy each such section." This interrogatory also asks for "where, specifically, in the prior art Acushnet contends a teaching or suggestion of or motivation to combine each element of each identified claim is found." (Ex. E.)[2]

### B. Acushnet's Final Invalidity Contentions

Acushnet provided the requested information to Bridgestone in support of its contentions. Acushnet's response to Interrogatory No. 5 was incorporated into Interrogatory No. 35. (Ex. G (Acushnet's Response to Pls' Interrog. No. 35).) For the Court's convenience, Acushnet has attached its response to Interrogatories Nos. 5 and 35 for the '817 patent, including annotations where each of the items of discovery requested by Bridgestone can be found. (Ex. H.)

As can be seen from Exhibit H, for each § 102 reference that Acushnet contends anticipates at least one claim, Acushnet has provided how each of those references apply against each element of the asserted claims providing a claim chart including column and line number

---

[1] Based on a search for the term "golf ball" in the United States Patent Office databases conducted on Monday, September 18, 2006, there have been 9,430 patents issued since 1976 that include the term "golf ball." There have also been 4,221 United States Patent Application Publications since 2001 that include the term "golf ball."

[2] Bridgestone does not identify the Interrogatory to which it believes Acushnet has not adequately responded. Acushnet assumes Bridgestone's complaint is directed toward its Interrogatory No. 35. In addition to failing to specify any secondary references, Bridgestone's response to Acushnet's identical interrogatory is completely silent with respect to motivation to combine references. (Ex. B.) Once again, Bridgestone has failed to provide Acushnet the very same information that Acushnet has provided to Bridgestone in response to the identical interrogatory.

The Honorable Joseph J. Farnan, Jr.
September 21, 2006
Page 3

citations. (Ex. H.) In addition, for each secondary reference that is being combined with another reference, Acushnet has provided the column and line number of the relevant section of *each* secondary reference as it is applied against the claims to the extent the reference was not already discussed in the table. Moreover, Acushnet has provided its contention with respect to why one of ordinary skill in the art would be led to combine the references. (Ex. H at A-155.) Bridgestone believes these combinations to be "unspecified," when in fact Bridgestone appears to have understood Acushnet's final contentions to include permutations of references. (D.I. 195 at 2.) As can be seen from Exhibit H, Acushnet has given Bridgestone everything that it requested in its contention interrogatories.

It appears that Bridgestone's complaint is that Acushnet should be required to provide even more information than Bridgestone has requested—and more than Bridgestone has provided to Acushnet in response to Acushnet's identical interrogatory. Moreover, Bridgestone asks for Acushnet to further reduce the references on which Acushnet relies while at the same time providing Acushnet with no indication as to which secondary references it may rely on.

Even though Acushnet had already identified (1) the particular references on which it relies, (2) the claims against which those references are being applied, (3) whether the references are being used under § 102 or § 103 and (3) citations to column and line number of the references on which it relies, Acushnet withdrew **46 references** from its final contentions on August 11, 2006. (*See* D.I. 195, Ex. A (Grimaldi Ltr. to White, Aug. 11, 2006).) After further discussions on the matter, Acushnet again reduced the prior art relied upon to invalidate claim 2 of the '961 patent by withdrawing yet another anticipatory reference and four other prior art patents from certain § 103 combinations. (*See* Ex. I (Seal Ltr. to Masters, Sep. 1, 2006 at 1).)

The August 3, 2006 Order did not require Acushnet to reduce its invalidity contentions by a specific number. At the August 2, 2006 hearing, the Court specifically rejected Bridgestone's proposal to so limit the number of invalidity references. (Ex. C at 37:10-18 (stating that a specific number was not set "because this is a very crowded art field apparently.") Rather, Your Honor permitted Acushnet to continue to work with Bridgestone in determining what was "reasonable," giving Acushnet "a little bit of an open end" as to the number of references on which it could rely.[3] (Ex. C at 37:23-38:2, 8-9.) Acushnet believes, given the crowded nature of the golf ball art, it has been reasonable.

---

[3] Bridgestone points to an alleged inconsistency based on "Acushnet's previous willingness to reduce its contentions." (D.I. 195 at 2.) Acushnet has significantly reduced it invalidity contentions. Acushnet had offered a number of different proposals regarding the selection of representative claims as a *quid pro quo* for a reduction in prior art that were each rejected out of hand by Bridgestone. The appropriate time for any further reduction in prior art—to the extent necessary—is after the Markman ruling and during expert discovery.

The Honorable Joseph J. Farnan, Jr.
September 21, 2006
Page 4

### II. Acushnet's Invalidity Contentions are Specific and Provide Bridgestone with the Information Upon Which Acushnet's Experts May Rely

Bridgestone's position appears to be that Acushnet's invalidity contentions include too many references and combinations of references, and therefore, Acushnet should be required to further reduce the number of references. Bridgestone cites no legal authority in support of its position regarding "representative prior art."

Acushnet may rely on any number of references to argue obviousness, as there are no legal restrictions regarding how many references may be combined to argue obviousness. The Federal Circuit and its predecessor court have, on multiple occasions, permitted the combination of numerous references to establish obviousness. *See, e.g.*, *In re Gorman*, 933 F.2d 982, 986 (Fed. Cir. 1991) (concluding 13 references in combination established obviousness); *In re Miller*, 159 F.2d 756, 758-59 (C.C.P.A. 1947) (allowing the use of eight references in establishing obviousness).

More importantly for this analysis, however, is that when a number of different references set forth the same teachings, the number of references strengthens the case for obviousness. *See Kansas Jack, Inc. v. Kuhn*, 719 F.2d 1144, 1150 (Fed. Cir. 1983) ("That the teachings relied upon were repeated in a number of references further strengthens the conclusion of obviousness.") Acushnet should not be prevented from showing that, for example, the number of dimples on a golf ball or the use of organosulfur compounds in a golf ball core were so well known in the art as to be included in 10 or 20 different prior art references prior to the time of any alleged invention by Bridgestone. Doing so would be prejudicial to Acushnet.

### III. Bridgestone's Motion is Premature

While Acushnet has been reasonable in attempting to reduce the number of prior art references at issue in this litigation, any further reduction should wait until Acushnet provides its expert reports. Acushnet—not Bridgestone—bears the burden of proving invalidity of the patents-in-suit. 35 U.S.C. § 282. Acushnet may even elect to drop other references or combinations of references during the course of expert discovery. Moreover, the Court's Markman ruling may also result in a further narrowing of the prior art in this case.

Because both expert discovery and the Court's order on claim construction may impact the applicability of references on which Acushnet presently relies to the claims of the Bridgestone patents-in-suit, Bridgestone's request to the Court for Acushnet to identify only those references that it will rely on at trial prior to both claim construction and expert discovery (D.I 195 at 1) should be denied.

Respectfully submitted,

/s/ *Richard L. Horwitz*

Richard L. Horwitz

751675/Enclosures
cc:   Jack B. Blumenfeld, Esquire (by hand delivery)
      Robert M. Masters, Esquire (by electronic mail)