# EXHIBIT A

# Exhibit A

## Acushnet's Interrogatory No. 18:

### INTERROGATORY NO. 18.

Identify on a claim-by-claim basis for each one of the Acushnet Patents that Bridgestone contends is invalid and provide a chart identifying specifically under which section(s) of the Patent Code that Bridgestone contends each identified claim is invalid and how Bridgestone contends that each identified claim fails to satisfy such section(s), including where, specifically, in the prior art Bridgestone contends a teaching or suggestion of or motivation to combine each element of each identified claim is found.

## Bridgestone's Interrogatory No. 35:

35.    Identify on a claim-by-claim basis for each one of the Bridgestone patents-in-suit that Acushnet contends is invalid and provide a chart identifying specifically under which section(s) of the Patent Code that Acushnet contends each identified claim is invalid and how Acushnet contends that each identified claim fails to satisfy such section(s), including where, specifically, in the prior art Acushnet contends a teaching or suggestion of or motivation to combine each element of each identified claim is found.

# EXHIBIT B

**Harris, KiAn J.**

| | |
|---|---|
| **From:** | ded_nefreply@ded uscourts gov |
| **Sent:** | Tuesday, May 09, 2006 5:27 PM |
| **To:** | ded_ecf@ded uscourts gov |
| **Subject:** | Activity in Case 1:05-cv-00132-JJF Bridgestone Sports Co Ltd et al v Acushnet Company "Notice of Service" |

***NOTE TO PUBLIC ACCESS USERS*** You may view the filed documents once without charge. To avoid later charges, download a copy of each document during this first viewing.

**U.S. District Court**

**District of Delaware**

Notice of Electronic Filing

The following transaction was received from Polizoti, Leslie entered on 5/9/2006 at 5:27 PM EDT and filed on 5/9/2006

| | |
|---|---|
| **Case Name:** | Bridgestone Sports Co Ltd. et al v. Acushnet Company |
| **Case Number:** | 1:05-cv-132 |
| **Filer:** | Bridgestone Sports Co Ltd. |

**Document Number:** 100

**Docket Text:**
NOTICE OF SERVICE of Plaintiffs' Sixth Supplemental Responses to Defendant's First Set of Interrogatories by Bridgestone Sports Co Ltd. (Polizoti, Leslie)

The following document(s) are associated with this transaction:

**Document description:** Main Document
**Original filename:** n/a
**Electronic document Stamp:**
[STAMP dcecfStamp_ID=1079733196 [Date=5/9/2006] [FileNumber=211312-0] [d737c8d21d1a2c0dd6b6b4f5d3221debd6ba8d2a0f0d4819badd6fe022136fd047923 1a572730006e6adfc2ed6b49a4a5821d8cbf43ada44f71d5055cb6bba50]]

**1:05-cv-132 Notice will be electronically mailed to:**

Jack B. Blumenfeld    jbbefiling@mnat.com

Richard L. Horwitz    rhorwitz@potteranderson.com, dmoore@potteranderson.com; nmcmenamin@potteranderson.com; achin@potteranderson.com; mbaker@potteranderson.com; ebroyles@potteranderson.com; ntarantino@potteranderson.com; iplitigation@potteranderson.com

David Ellis Moore    dmoore@potteranderson.com, ntarantino@potteranderson.com

Leslie A. Polizoti    lpolizoti@mnat.com, lpolizoti@mnat.com

**1:05-cv-132 Notice will be delivered by other means to:**

*f*

## IN UNITED STATES DISTRICT COURT
### DISTRICT OF DELAWARE

BRIDGESTONE SPORTS CO., LTD.,
AND BRIDGESTONE GOLF, INC.,

*Plaintiffs,*

C.A. No. 05-132(JJF)

*v.*

ACUSHNET COMPANY,

*Defendant.*

## PLAINTIFFS' SIXTH SUPPLEMENTAL RESPONSES TO DEFENDANT'S FIRST SET OF INTERROGATORIES

Pursuant to Rule 33 of the Federal Rules of Civil Procedure, Plaintiffs Bridgestone Sports Co., Ltd., and Bridgestone Golf, Inc., (individually or collectively "Bridgestone") hereby supplements its responses to Defendant's First Set of Interrogatories to Plaintiff.

## GENERAL OBJECTIONS

The General and Specific Objections set forth in Plaintiffs' First Responses to Defendant's First Set of Interrogatories, Plaintiff's First Supplemental Responses to Defendant's First Set of Interrogatories, Plaintiff's Second Supplemental Responses to Defendant's First Set of Interrogatories, Plaintiff's Third Supplemental Responses to Defendant's First Set of Interrogatories, Plaintiff's Fourth Supplemental Responses to Defendant's First Set of Interrogatories, and Plaintiff's Fifth Supplemental Responses to Defendant's First Set of Interrogatories are incorporated herein by reference.

The following responses are based upon Acushnet's production of documents and things to date. Acushnet has failed to produce all relevant and responsive information, documents and things in response to Bridgestone's Requests for the Production of Documents and Things and Bridgestone's Interrogatories to Acushnet. Accordingly, Bridgestone reserves the right to later

amend or supplement its contentions and responses after further production of such information, documents and things by Acushnet.

Bridgestone reserves the right to later amend or supplement its contentions after further investigation and discovery and after the Court construes the claims.

Subject to, and without waiving, any of the General and Specific Objections, Bridgestone hereby supplements its responses to Interrogatory No. 18.

## OBJECTIONS AND RESPONSES

### INTERROGATORY NO. 18

Identify on a claim-by-claim basis for each one of the Acushnet Patents that Bridgestone contends is invalid and provide a chart identifying specifically under which section(s) of the Patent Code that Bridgestone contends each identified claim is invalid and how Bridgestone contends that each identified claim fails to satisfy such section(s), including where, specifically, in the prior art Bridgestone contends a teaching or suggestion of or motivation to combine each element of each identified claim is found.

### RESPONSE TO INTERROGATORY NO. 18

In addition to the General Objections, Bridgestone objects to the interrogatory as being a multiple and compound request constituting more than one interrogatory. Bridgestone also objects to the interrogatory as premature at this early stage of discovery because the interrogatory calls for expert opinion and expert discovery. In addition, the claims of the Acushnet Patents have not been construed by a Court.

Subject to and without waiving the general and specific objections, Bridgestone responds that all of the claims of the Acushnet Patents are invalid under 35 U.S.C. §112, at least the '976 and '705 patents are invalid under 35 U.S.C. §§102 and 103. Additionally, at least the '861 patent has already expired and is no longer enforceable.

U.S. Patent No. 6,729,976:

2.

In view of Acushnet's contention of infringement by Bridgestone of claim 1 of the '976 patent and Acushnet's apparent construction of claim 1, claim 1 of the '976 patent is anticipated, and to the extent not anticipated, rendered obvious, by each of the Callaway® Rule 35 Red; Callaway® Rule 35 Blue; Titleist® HP Eclipse and Titleist® Tour Distance golf balls, as follows:

| USP 6,729,976 | PRIOR ART |
|---|---|
| **Claim 1** | |
| A golf ball with a plurality of dimples having an aerodynamic coefficient magnitude defined by $C_{mag} = \sqrt{(C_L{}^2 + C_D{}^2)}$ and an aerodynamic force angle defined by Angle = $\tan^{-1} (C_L/C_D)$, wherein $C_L$ is a lift coefficient and $C_D$ is a drag coefficient, wherein the golf ball comprises: | Each of the Callaway® Rule 35 Red; Callaway® Rule 35 Blue; Titleist® HP Eclipse and Titleist® Tour Distance golf balls has a plurality of dimples. |
| a first aerodynamic coefficient magnitude from about 0.24 to about 0.27 and a first aerodynamic force angle of about 31 degrees to about 35 degrees at a Reynolds Number of about 230000 and a spin ratio of about 0.085; and | On information and belief each of the Callaway® Rule 35 Red; Callaway® Rule 35 Blue; Titleist® HP Eclipse and Titleist® Tour Distance golf balls has a first aerodynamic coefficient magnitude from about 0.24 to about 0.27 and a first aerodynamic force angle of about 31 degrees to about 35 degrees at a Reynolds Number of about 230000 and a spin ratio of about 0.085. |
| a second aerodynamic coefficient magnitude from about 0.25 to about 0.28 and a second aerodynamic force angle of about 34 degrees to about 38 degrees at a Reynolds Number of about 207000 and a spin ratio of about 0.095. | On information and belief each of the Callaway® Rule 35 Red; Callaway® Rule 35 Blue; Titleist® HP Eclipse and Titleist® Tour Distance golf balls has a second aerodynamic coefficient magnitude from about 0.25 to about 0.28 and a second aerodynamic force angle of about 34 degrees to about 38 degrees at a Reynolds Number of about 207000 and a spin ratio of about 0.095. |

U.S. Patent No. 6,818,705:

In view of Acushnet's contention of infringement by Bridgestone of claim 1 of the '705 patent and Acushnet's apparent construction of claim 1, claim 1 is anticipated, and to the extent

3.

not anticipated, rendered obvious, by each of U.S. Patent No. 5,980,396 and U.S. Patent No.

5,929,171, as follows:

| USP 6,818,705 | USP 5,980,396 | USP 5,929,171 |
|---|---|---|
| **Claim 1**<br>A golf ball comprising: | The '396 Patent is directed to a golf ball (Abstract). | The '171 Patent is directed to a golf ball (Abstract). |
| a center comprising a material farmed [*sic*] from the conversion reaction of at least a cis-to-trans catalyst and a polybutadiene, wherein the material has a molecular weight of greater than about 200,000 and a resilience index of at least about 40; | BR-11 is a cis-polybutadiene rubber that has a molecular weight of greater than about 200,000 and, on information and belief, a resilience index of at least about 40. | BR-11 is a cis-polybutadiene rubber that has a molecular weight of greater than about 200,000 and, on information and belief, a resilience index of at least about 40. |
| an inner cover layer; and | The disclosed ball includes an inner cover layer. See, at least Fig. 1 and col. 2, lines 8-28. | The disclosed ball includes an inner cover layer. See, at least col. 5, 15-20. |
| an outer cover layer disposed about the inner cover layer comprising a polyurethane composition. | The disclosed ball includes an outer cover layer disposed about the inner cover layer and includes a polyurethane composition. See, at least Fig. 1 and col. 2, lines 8-28. | The disclosed ball includes an outer cover layer disposed about the inner cover layer and includes a polyurethane composition. See, at least col. 5, lines 15-35. |

In addition, only as to the claim that Acushnet alleges is infringed, Bridgestone

supplements its previous response to provide the following invalidity claim chart regarding the

'705 patent. In view of Acushnet's contention of infringement by Bridgestone of claim 1 of the

'705 Patent and Acushnet's apparent construction of claim 1, claim 1 of the '705 patent is

anticipated, and to the extent not anticipated, rendered obvious, by U.S. Patent No. 6,336,872 as

4.

follows.

| USP 6,818,705 | USP 6,336,872 |
|---|---|
| **Claim 1** | |
| A golf ball comprising: | The '872 Patent is directed to a multi-piece golf ball (Abstract). |
| a center comprising a material farmed [sic] from the conversion reaction of at least a cis-to-trans catalyst and a polybutadiene, wherein the material has a molecular weight of greater than about 200,000 and a resilience index of at least about 40; | In view of Acushnet's allegation of infringement and apparent construction of this claim, BR-18 is a polybutadiene that has a molecular weight of greater than about 200,000 and, on information and belief, the polybutadiene BR-18 has a resilience index of at least about 40 (col. 2, lines 26-30 and Table 1 at col. 6). |
| an inner cover layer; and | The golf ball of the '872 Patent has an inner cover layer (Abstract and Figure 1). |
| an outer cover layer disposed about the inner cover layer comprising a polyurethane composition. | The golf ball of the '872 Patent has an outer cover layer disposed on the inner cover layer comprising a polyurethane composition (Abstract, col. 3, lines 50-52 and col. 5, lines 1-4). |

In addition, based on Acushnet's allegation of infringement and apparent construction of this claim, claim 1 of the '705 patent is anticipated or obvious over U.S. Patent No. 5,935,022, U.S. Patent No. 5,948,862, U.S. Patent No. 6,121,357, U.S. Patent No. 6,319,154, U.S. Patent No. 6,386,993 and/or U.S. Patent No. 5,253,871, as follows:

| USP 6,818,705 | USP 5,935,022 |
|---|---|
| **Claim 1** | |
| A golf ball comprising: | The '022 Patent is directed to a multi-piece golf ball (Abstract). |
| a center comprising a material farmed [sic] from the conversion reaction of at least a cis-to-trans | In view of Acushnet's allegation of infringement and apparent construction of this claim, BR-18 is a polybutadiene that |

| | |
|---|---|
| catalyst and a polybutadiene, wherein the material has a molecular weight of greater than about 200,000 and a resilience index of at least about 40; | has a molecular weight of greater than about 200,000 and, on information and belief, the polybutadiene BR-18 has a resilience index of at least about 40 (col. 2, lines 56-57 and Tables 1 at col. 6). |
| an inner cover layer; and | The golf ball of the '022 Patent has an inner cover layer (Abstract and Figure 1). |
| an outer cover layer disposed about the inner cover layer comprising a polyurethane composition. | The golf ball of the '022 Patent has an outer cover layer disposed on the inner cover layer comprising an ionomer resin. (col. 5, lines 28-30). The golf ball of the '871 patent has a polyurethane cover (col. 4, lines 1-3 and 20). |

| USP 6,818,705 | USP 5,948,862 |
|---|---|
| **Claim 1** | |
| A golf ball comprising: | The '862 Patent is directed to a multi-piece golf ball (Abstract). |
| a center comprising a material farmed [sic] from the conversion reaction of at least a cis-to-trans catalyst and a polybutadiene, wherein the material has a molecular weight of greater than about 200,000 and a resilience index of at least about 40; | In view of Acushnet's allegation of infringement and apparent construction of this claim, BR-18 is a polybutadiene that has a molecular weight of greater than about 200,000 and, on information and belief, the polybutadiene BR-18 has a resilience index of at least about 40 (Table 1 at col. 6). |
| an inner cover layer; and | The golf ball of the '862 Patent has an inner cover layer (Abstract and Figure 1). |
| an outer cover layer disposed about the inner cover layer comprising a polyurethane composition. | The golf ball of the '862 Patent has an outer cover layer disposed on the inner cover layer comprising an ionomer resin. (col. 5, lines 40-43). The golf ball of the '871 patent has a polyurethane cover (col. 4, lines 1-3 and 20). |

| USP 6,818,705 | USP 6,121,357 |
|---|---|
| **Claim 1** | |
| A golf ball comprising: | The '357 Patent is directed to a golf ball (Abstract). |
| a center comprising a material farmed [sic] from the conversion reaction of at least a cis-to-trans catalyst and a polybutadiene, wherein the material has a molecular weight of greater than about 200,000 and a resilience index of at least about 40; | In view of Acushnet's allegation of infringement and apparent construction of this claim, BR-18 is a polybutadiene that has a molecular weight of greater than about 200,000 and, on information and belief, the polybutadiene BR-18 has a resilience index of at least about 40 (col. 2, lines 42-44 and Table 1 at col. 6). |
| an inner cover layer; and | an inner cover layer (col. 47-48). |
| an outer cover layer disposed about the inner cover layer comprising a polyurethane composition. | The golf ball of the '357 Patent has an outer cover layer disposed on an inner cover layer comprising a thermoplastic resin, particularly an ionomer resin (col. 4, lines 48-52). The golf ball of the '871 patent has a polyurethane cover (col. 4, lines 1-3 and 20). |

| USP 6,818,705 | USP 6,319,154 |
|---|---|
| **Claim 1** | |
| A golf ball comprising: | The '154 Patent is directed to a multi-piece golf ball (Abstract). |
| a center comprising a material farmed [sic] from the conversion reaction of at least a cis-to-trans catalyst and a polybutadiene, wherein the material has a molecular weight of greater than about 200,000 and a resilience index of at least about 40; | In view of Acushnet's allegation of infringement and apparent construction of this claim, BR-18 is a polybutadiene that has a molecular weight of greater than about 200,000 and, on information and belief, the polybutadiene BR-18 has a resilience index of at least about 40 (col. 3, lines 58-60 and col. 10, lines 52-53). |

| | |
|---|---|
| an inner cover layer; and | The '154 Patent discloses an intervening layer between the core and outer cover layer (col. 9, lines 23-26). |
| an outer cover layer disposed about the inner cover layer comprising a polyurethane composition. | The '154 Patent discloses an outer cover layer disposed on an inner cover layer that can be a polyurethane composition (col. 6, lines 26-29). |

| USP 6,818,705 | USP 6,386,993 |
|---|---|
| **Claim 1** | |
| A golf ball comprising: | The '993 Patent is directed to a two-piece golf ball (Abstract). |
| a center comprising a material farmed [sic] from the conversion reaction of at least a cis-to-trans catalyst and a polybutadiene, wherein the material has a molecular weight of greater than about 200,000 and a resilience index of at least about 40; | In view of Acushnet's allegation of infringement and apparent construction of this claim, BR-18 is a polybutadiene that has a molecular weight of greater than about 200,000 and, on information and belief, the polybutadiene BR-18 has a resilience index of at least about 40 (col. 2, lines 48-50 and Table 1 at col. 5). |
| an inner cover layer; and | The golf ball of the '022 Patent has an inner cover layer (Abstract and Figure 1). The golf ball of the '862 Patent has an inner cover layer (Abstract and Figure 1). The golf ball of the '357 Patent has an inner cover layer (col. 47-48). The '154 Patent discloses an intervening layer between the core and outer cover layer (col. 9, lines 23-26). The golf ball of the '872 Patent has an inner cover layer (Abstract and Figure 1). The golf ball of the '871 Patent has an intermediate layer (Abstract and Figure 1). |
| an outer cover layer disposed about the inner cover layer comprising a polyurethane | The golf ball of the '993 Patent has an outer cover layer disposed on the inner cover layer comprising a polyurethane |

8.

| composition. | composition (Abstract and col. 4, lines 35-40). |

In addition, claim 1 of the '705 patent is invalid under 35 U.S.C. § 112, first and/or second paragraph because the claim limitation "a center comprising a material farmed [sic] from the conversion reaction of at least a cis-to-trans catalyst and a polybutadiene, wherein the material has a molecular weight of greater than about 200,000 and a resilience index of at least about 40" lacks written description and is not enabled, and/or is indefinite.

Bridgestone's investigation is ongoing. Bridgestone reserves the right to amend or supplement its contentions after further investigation, and after the Court construes the claims of the Acushnet patents.

Bridgestone further supplements its responses as to the '705 Patent as follows:

## SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 18

As to the '976 Patent, Acushnet has withdrawn its allegation of infringement.

As to the additional Claims 2 and 4-7 that Acushnet alleges are infringed in Acushnet's Supplemental Responses to Bridgestone's First Set of Interrogatories Directed to Acushnet (Nos. 1-24) dated February 8, 2006, Bridgestone supplements its previous responses to provide the following invalidity claim charts regarding the '705 Patent. In view of Acushnet's contention of infringement by Bridgestone of Claims 2 and 4-7 of the '705 Patent and Acushnet's apparent construction of Claims 2 and 4-7, Claims 2 and 4-7 of the '705 Patent are anticipated under at least 35 U.S.C. §102(a) and/or §102(e), and to the extent not anticipated, rendered obvious under 35 U.S.C. §103(a) in combination with secondary references, by U.S. Patent Nos. 5,980,396; 5,929,171; 6,336,872; 5,948,862; 5,935,022; 6,121,357; and 6,319,154 as follows.

9.

| USP 6,818,705 | USP 5,980,396 |
|---|---|
| **Claim 2** | |
| The golf ball of claim 1, wherein the inner cover layer comprises at least one of an ionomer resin, a polyurethane, a polyetherester, a polyetheramide, a polyester, a dynamically vulcanized elastomer, a functionalized styrenebutadiene elastomer, a metallocene polymer nylon, acrylonitrile butadiene-styrene copolymer, or blends thereof. | The inner intermediate layer of the golf ball of the '396 Patent is selected from thermoplastic resin (e.g., ionomer resin); vulcanized rubber; thermoplastic elastomer or a mixture of thermoplastic elastomer and thermoplastic resin. And the outer intermediate layer can be selected from vulcanized rubber; thermoplastic elastomer or a mixture of thermoplastic elastomer and thermoplastic resin (e.g., ionomer resin). See, at least col. 2, lines 30-55. |
| **Claim 4** | |
| The golf ball of claim 1, wherein the cis-to-trans catalyst comprises at least one of an organosulfur compound, an inorganic sulfur compound, an aromatic organometallic compound, a metal-organosulfur compound, tellurium, selenium, elemental sulfur, a polymeric sulfur, or an aromatic organic compound. | In the '396 Patent, Examples 1-6 in Table 1, Examples 7-12 in Table 3, and Examples 13-17 in Table 5 show center compositions including an organosulfur cis-to-trans catalyst. See, at least col. 9, lines 25-60; col. 11, lines 4-50; col. 12, line 57 to col. 13, line 45. |
| **Claim 5** | |
| The golf ball of claim 1, wherein the polyurethane composition comprises at least one isocyanate, at least one polyol, and at least one curing agent. | The polyurethane composition of the '396 Patent inherently includes at least one isocyanate, at least one polyol, and at least one curing agent. See, at least col.4, lines 35-48.

Alternatively, it would have been obvious to one skilled in the art at the time of the invention to incorporate the cover of the golf ball of USP 5,334,673 which includes a polyurethane which is the product of a reaction between a polyurethane prepolymer and a |

10.

|  | curing agent, where the polyurethane prepolymer is a product formed by a reaction between a polyol and a diisocyanate, in order to provide for a golf ball cover having good shear resistance, cut resistance, durability and resiliency. See, at least abstract; col. 1, lines 47-53; col. 2, lines 24-44. |
|---|---|
| **Claim 6**<br>The golf ball of claim 1, wherein the outer cover layer has a thickness of about 0.02 inches to about 0.04 inches. | The outer cover layer of the golf ball of the '396 Patent has a thickness of about 0.02 inches to about 0.04 inches. See, at least col. 6, lines 31-36. |
| **Claim 7**<br>The golf ball of claim 1, wherein the inner cover layer has an outer diameter of about 1.55 inches or greater. | The inner cover layer of the golf ball of the '396 Patent has an outer diameter of about 1.55 inches or greater. See, at least col. 5, lines 14-25. |

| USP 6,818,705 | USP 5,929,171 |
|---|---|
| **Claim 2**<br>The golf ball of claim 1, wherein the inner cover layer comprises at least one of an ionomer resin, a polyurethane, a polyetherester, a polyetheramide, a polyester, a dynamically vulcanized elastomer, a functionalized styrenebutadiene elastomer, a metallocene polymer nylon, acrylonitrile butadiene-styrene copolymer, or blends thereof. | The inner cover layer of the golf ball of the '171 Patent includes a thermoplastic resin, particularly ionomer resin, polyester, nylon or a mixture thereof. See, at least col. 5, lines 15-20 and col. 5, lines 31-35. |
| **Claim 4**<br>The golf ball of claim 1, wherein the | In the '171 Patent, Examples 1-6 |

| | |
|---|---|
| cis-to-trans catalyst comprises at least one of an organosulfur compound, an inorganic sulfur compound, an aromatic organometallic compound, a metal-organosulfur compound, tellurium, selenium, elemental sulfur, a polymeric sulfur, or an aromatic organic compound. | in Table 1, Examples 8-14 in Table 2, and Examples 15-17 in Table 3 show center compositions including an organosulfur cis-to-trans catalyst. See, at least col. 6, line 57 to col. 7, line 45.<br><br>Comparative Examples 3 and 7 in Table 4 show center compositions including organosulfurs such as diphenyl disulfide and pentachlorothiophenol, respectively. See, at least col. 7, lines 45-67. |
| **Claim 5** | |
| The golf ball of claim 1, wherein the polyurethane composition comprises at least one isocyanate, at least one polyol, and at least one curing agent. | The polyurethane composition of the '171 Patent inherently includes at least one isocyanate, at least one polyol, and at least one curing agent. See, at least col. 5, lines 15-35.<br><br>Alternatively, it would have been obvious to one skilled in the art at the time of the invention to incorporate the cover of the golf ball of USP 5,334,673 which includes a polyurethane which is the product of a reaction between a polyurethane prepolymer and a curing agent, where the polyurethane prepolymer is a product formed by a reaction between a polyol and a diisocyanate, in order to provide for a golf ball cover having good shear resistance, cut resistance, durability and resiliency. See, at least abstract; col. 1, lines 47-53; col. 2, lines 24-44. |
| **Claim 6** | |
| The golf ball of claim 1, wherein the outer cover layer has a thickness of about 0.02 inches to about 0.04 | The outer cover layer of the golf ball of the '396 Patent has a thickness of about 0.02 inches to |

| inches. | about 0.04 inches. See, at least col. 5, lines 15-18; col. 5, lines 54-55. |
|---|---|
| **Claim 7**<br>The golf ball of claim 1, wherein the inner cover layer has an outer diameter of about 1.55 inches or greater. | The inner cover layer of the golf ball of the '171 Patent has an outer diameter of about 1.55 inches or greater. See, at least col. 5, lines 1-2; col. 5, lines 15-18; col. 5, lines 54-55. |

| USP 6,818,705 | USP 6,336,872 |
|---|---|
| **Claim 2**<br>The golf ball of claim 1, wherein the inner cover layer comprises at least one of an ionomer resin, a polyurethane, a polyetherester, a polyetheramide, a polyester, a dynamically vulcanized elastomer, a functionalized styrenebutadiene elastomer, a metallocene polymer nylon, acrylonitrile butadiene-styrene copolymer, or blends thereof. | The intermediate layer of the golf ball of the '872 Patent is selected from ionomer resin, polystyrene thermoplastic elastomer, polyurethane thermoplastic elastomer, polyamide thermoplastic elastomer, polyester thermoplastic elastomer, an SBS (styrene-butadiene-styrene) block copolymer having polybutadiene portion with epoxy groups or SIS (styrene-isoprene-styrene) block copolymer having polyisoprene portion with epoxy groups, thermoplastic elastomer having terminal OH groups, or combinations thereof. See, at least col. 3, lines 50-59; col. 4, lines 7-17. |
| **Claim 4**<br>The golf ball of claim 1, wherein the cis-to-trans catalyst comprises at least one of an organosulfur compound, an inorganic sulfur compound, an aromatic organometallic compound, a metal-organosulfur compound, tellurium, selenium, elemental sulfur, a | In the '872 Patent, Examples 1-8 in Table 1, and Comparative Examples 1-7 in Table 2 show center compositions including an organosulfur cis-to-trans catalyst. See, at least col. 6, lines 5-55. |

| polymeric sulfur, or an aromatic organic compound. | |
|---|---|
| **Claim 5** <br> The golf ball of claim 1, wherein the polyurethane composition comprises at least one isocyanate, at least one polyol, and at least one curing agent. | The polyurethane composition of the '872 Patent inherently includes at least one isocyanate, at least one polyol, and at least one curing agent. See, at least Abstract; col. 3, lines 50-52; col. 5, lines 1-4. <br><br> Alternatively, it would have been obvious to one skilled in the art at the time of the invention to incorporate the cover of the golf ball of USP 5,334,673 which includes a polyurethane which is the product of a reaction between a polyurethane prepolymer and a curing agent, where the polyurethane prepolymer is a product formed by a reaction between a polyol and a diisocyanate, in order to provide for a golf ball cover having good shear resistance, cut resistance, durability and resiliency. See, at least abstract; col. 1, lines 47-53; col. 2, lines 24-44. |
| **Claim 7** <br> The golf ball of claim 1, wherein the inner cover layer has an outer diameter of about 1.55 inches or greater. | The inner cover layer of the golf ball of the '872 Patent has an outer diameter of about 1.55 inches or greater. See, at least col. 3, lines 39-41; col. 4, lines 56-58. |

| USP 6,818,705 | USP 5,948,862 |
|---|---|
| **Claim 2** <br> The golf ball of claim 1, wherein the inner cover layer comprises at least one of an ionomer resin, a | The intermediate cover layer of the '862 Patent is mainly composed of a heated mixture of at least two |

14.

| | |
|---|---|
| polyurethane, a polyetherester, a polyetheramide, a polyester, a dynamically vulcanized elastomer, a functionalized styrenebutadiene elastomer, a metallocene polymer nylon, acrylonitrile butadiene-styrene copolymer, or blends thereof. | materials selected from the group consisting of (A)ionomer resin, (B)thermoplastic elastomer having terminal OH groups, and (C)either epoxy-group containing styrene-butadiene-styrene block copolymer or epoxy-group containing styrene-isoprene-styrene block copolymer. See, at least col. 2, line 52 to col. 3, line 25. |
| **Claim 4** | |
| The golf ball of claim 1, wherein the cis-to-trans catalyst comprises at least one of an organosulfur compound, an inorganic sulfur compound, an aromatic organometallic compound, a metal-organosulfur compound, tellurium, selenium, elemental sulfur, a polymeric sulfur, or an aromatic organic compound. | In the '862 Patent, Examples A and B in Table 1 show core compositions including an organosulfur cis-to-trans catalyst. See, at least col. 6, lines 39-59. |
| **Claim 5** | |
| The golf ball of claim 1, wherein the polyurethane composition comprises at least one isocyanate, at least one polyol, and at least one curing agent. | It would have been obvious to one skilled in the art at the time of the invention to incorporate the cover of the golf ball of USP 5,334,673 which includes a polyurethane which is the product of a reaction between a polyurethane prepolymer and a curing agent, where the polyurethane prepolymer is a product formed by a reaction between a polyol and a diisocyanate, in order to provide for a golf ball cover having good shear resistance, cut resistance, durability and resiliency. See, at least abstract; col. 1, lines 47-53; col. 2, lines 24-44. |
| **Claim 7** | |
| The golf ball of claim 1, wherein the inner cover layer has an outer | The inner cover layer of the golf ball of the '862 Patent has an outer |

15.

| | |
|---|---|
| diameter of about 1.55 inches or greater. | diameter of about 1.55 inches or greater. See, at least col. 5, lines 28-29; col. 4, lines 64-65. |

| USP 6,818,705 | USP 5,935,022 |
|---|---|
| **Claim 2** | |
| The golf ball of claim 1, wherein the inner cover layer comprises at least one of an ionomer resin, a polyurethane, a polyetherester, a polyetheramide, a polyester, a dynamically vulcanized elastomer, a functionalized styrenebutadiene elastomer, a metallocene polymer nylon, acrylonitrile butadiene-styrene copolymer, or blends thereof. | The intermediate layer of the golf ball of the '022 Patent includes a base rubber including natural rubber and/or synthetic rubber mixed with natural rubber, polyisoprene rubber, styrene-butadiene rubber, ethylene-propylenediene rubber (EPDM), and the like. See, at least col. 2, lines 45-61. |
| **Claim 5** | |
| The golf ball of claim 1, wherein the polyurethane composition comprises at least one isocyanate, at least one polyol, and at least one curing agent. | It would have been obvious to one skilled in the art at the time of the invention to incorporate the cover of the golf ball of USP 5,334,673 which includes a polyurethane which is the product of a reaction between a polyurethane prepolymer and a curing agent, where the polyurethane prepolymer is a product formed by a reaction between a polyol and a diisocyanate, in order to provide for a golf ball cover having good shear resistance, cut resistance, durability and resiliency. See, at least abstract; col. 1, lines 47-53; col. 2, lines 24-44. |
| **Claim 6** | |
| The golf ball of claim 1, wherein the outer cover layer has a thickness of about 0.02 inches to about 0.04 inches. | It would have been obvious to one skilled in the art at the time of the invention to incorporate a golf ball outer cover layer having a thickness of about 0.02 inches to |

|  |  |
|---|---|
|  | about 0.04 inches based on the teachings of USP 6,117,024 in order to provide for a very thin cover layer which has improved Bayshore rebound, improved tensile strength, and improved tear resistance and elongation. See, at least col. 7, lines 1-55; col. 7, lines 60-63. |
| **Claim 7** |  |
| The golf ball of claim 1, wherein the inner cover layer has an outer diameter of about 1.55 inches or greater. | The inner cover layer of the golf ball of the '022 Patent has an outer diameter of about 1.55 inches or greater. See, at least col. 4, lines 31-35. |

| USP 6,818,705 | USP 6,121,357 |
|---|---|
| **Claim 2** |  |
| The golf ball of claim 1, wherein the inner cover layer comprises at least one of an ionomer resin, a polyurethane, a polyetherester, a polyetheramide, a polyester, a dynamically vulcanized elastomer, a functionalized styrenebutadiene elastomer, a metallocene polymer nylon, acrylonitrile butadiene-styrene copolymer, or blends thereof. | The inner cover layer of the '357 Patent includes thermoplastic resins which have been conventionally used for forming the cover of solid golf balls, such as ionomer resin, polyester, nylon, a mixture thereof and the like. See, at least col. 4, lines 46-52. |
| **Claim 4** |  |
| The golf ball of claim 1, wherein the cis-to-trans catalyst comprises at least one of an organosulfur compound, an inorganic sulfur compound, an aromatic organometallic compound, a metal-organosulfur compound, tellurium, selenium, elemental sulfur, a polymeric sulfur, or an aromatic organic compound. | In the '357 Patent, Examples I to VII in Table 1 show core compositions including an organosulfur cis-to-trans catalyst. See, at least col. 6, lines 11-37; col. 3, line 58 to col. 4, line 10. |

17.

| Claim 5 | |
|---|---|
| The golf ball of claim 1, wherein the polyurethane composition comprises at least one isocyanate, at least one polyol, and at least one curing agent. | It would have been obvious to one skilled in the art at the time of the invention to incorporate the cover of the golf ball of USP 5,334,673 which includes a polyurethane which is the product of a reaction between a polyurethane prepolymer and a curing agent, where the polyurethane prepolymer is a product formed by a reaction between a polyol and a diisocyanate, in order to provide for a golf ball cover having good shear resistance, cut resistance, durability and resiliency. See, at least abstract; col. 1, lines 47-53; col. 2, lines 24-44. |
| **Claim 6** | |
| The golf ball of claim 1, wherein the outer cover layer has a thickness of about 0.02 inches to about 0.04 inches. | It would have been obvious to one skilled in the art at the time of the invention to incorporate a golf ball outer cover layer having a thickness of about 0.02 inches to about 0.04 inches based on the teachings of USP 6,117,024 in order to provide for a very thin cover layer which has improved Bayshore rebound, improved tensile strength, and improved tear resistance and elongation. See, at least col. 7, lines 1-55; col. 7, lines 60-63. |
| **Claim 7** | |
| The golf ball of claim 1, wherein the inner cover layer has an outer diameter of about 1.55 inches or greater. | The inner cover layer of the golf ball of the '357 Patent has an outer diameter of about 1.55 inches or greater. See, at least col. 10, lines 18-20. |

18.

| USP 6,818,705 | USP 6,319,154 |
|---|---|
| **Claim 2** | |
| The golf ball of claim 1, wherein the inner cover layer comprises at least one of an ionomer resin, a polyurethane, a polyetherester, a polyetheramide, a polyester, a dynamically vulcanized elastomer, a functionalized styrenebutadiene elastomer, a metallocene polymer nylon, acrylonitrile butadiene-styrene copolymer, or blends thereof. | The intermediate layer of the golf ball of the '154 Patent may include ionomer resins, elastomer resins and block copolymers. See, at least col. 11, line 20 to col. 12, line 40. |
| **Claim 4** | |
| The golf ball of claim 1, wherein the cis-to-trans catalyst comprises at least one of an organosulfur compound, an inorganic sulfur compound, an aromatic organometallic compound, a metal-organosulfur compound, tellurium, selenium, elemental sulfur, a polymeric sulfur, or an aromatic organic compound. | In the '154 Patent, Examples A to E in Table 1 show core compositions including an organosulfur cis-to-trans catalyst. See, at least col. 11, lines 1-18. |
| **Claim 5** | |
| The golf ball of claim 1, wherein the polyurethane composition comprises at least one isocyanate, at least one polyol, and at least one curing agent. | The polyurethane composition of the '154 Patent inherently includes at least one isocyanate, at least one polyol, and at least one curing agent. See, at least col. 6, lines 26-29.<br><br>Alternatively, it would have been obvious to one skilled in the art at the time of the invention to incorporate the cover of the golf ball of USP 5,334,673 which includes a polyurethane which is the product of a reaction between a polyurethane prepolymer and a curing agent, where the polyurethane prepolymer is a product formed by a reaction between a polyol and a |

19.

| | diisocyanate, in order to provide for a golf ball cover having good shear resistance, cut resistance, durability and resiliency. See, at least abstract; col. 1, lines 47-53; col. 2, lines 24-44. |
|---|---|
| **Claim 6**<br><br>The golf ball of claim 1, wherein the outer cover layer has a thickness of about 0.02 inches to about 0.04 inches. | The outer layer of the golf ball of the '154 Patent has a thickness of about 0.02 inches to about 0.04 inches. See, at least col. 9, lines 35-36.<br><br>Alternatively, it would have been obvious to one skilled in the art at the time of the invention to incorporate a golf ball outer cover layer having a thickness of about 0.02 inches to about 0.04 inches based on the teachings of USP 6,117,024 in order to provide for a very thin cover layer which has improved Bayshore rebound, improved tensile strength, and improved tear resistance and elongation. See, at least col. 7, lines 1-55; col. 7, lines 60-63. |

Bridgestone's investigation is ongoing. Bridgestone reserves the right to amend or supplement its contentions after further investigation, and based on positions taken by, or contentions of, Acushnet, and after the Court construes the claims of the Acushnet patents.

20.

As to objections:

MORRIS, NICHOLS, ARSHT & TUNNELL

DATED:     May 9, 2006

Jack B. Blumenfeld (#1014)
Maryellen Noreika (#3208)
Leslie A. Polizoti (#4299)
1201 N. Market Street
P.O. Box 1347
Wilington, DE 19801
(302) 658-9200
*Attorneys for Bridgestone Sports Co., Ltd. and Bridgestone Golf, Inc.*

OF COUNSEL:

Robert M. Masters
Scott M. Flicker
Terrance J. Wikberg
Brandon M. White
PAUL, HASTINGS, JANOFSKY & WALKER LLP
875 15th St., N.W.
Washington, D.C. 20005
(202) 551-7100

21.

CERTIFICATE OF SERVICE

I hereby certify copies of the foregoing were caused to be served this 9th day of May, 2006 upon the following in the manner indicated:

**BY HAND**

Richard L. Horwitz
Potter Anderson & Corroon LLP
1313 N. Market Street
Wilmington, DE 19801

Brian S. Seal
Howrey LLP
1299 Pennsylvania Avenue, NW
Washington, DC 20004

Leslie A. Polizoti

# EXHIBIT C

1

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

BRIDGESTONE SPORTS CO., )
LTD., )
)
          Plaintiff, )
) C.A. No. 05-143-JJF
v. )
)
ACUSHNET COMPANY, )
)
          Defendant. )

August 2, 2006
10:07 a.m.
Courtroom 4B

844 King Street
Wilmington, Delaware

BEFORE:  THE HONORABLE JOSEPH J. FARNAN, JR.
United States District Court Judge

APPEARANCES:

MORRIS, NICHOLS, ARSHT & TUNNELL
BY:  JACK B. BLUMENFELD, ESQ.

-and-

PAUL HASTINGS
BY:  ROBERT M. MASTERS, ESQ.
BY:  TERRENCE J. WIKBERG, ESQ.

Counsel for Plaintiff

2

APPEARANCES CONTINUED:

      POTTER, ANDERSON & CORROON, LLP
      BY:  DAVID E. MOORE, ESQ.

             -and-

      HOWREY, LLP
      BY:  ALAN M. GRIMALDI, ESQ.
      BY:  ANDREW R. SOMMER, ESQ.

            Counsel for the Defendant

8

1  representative claims, by close of business this

2  Friday.  If you can agree on something different,

3  then you can modify my order.  If you can't

4  agree, then that will be the order, and they will

5  be the claims.

6           Now, with regard to those claims,

7  I'm going to set up a schedule, because discovery

8  is going to close here in October.  And there's

9  already been a two-month extension earlier on in

10 this case.

11          And you can sit down for now,

12 Mr. Grimaldi.  I'm sorry.  You don't have to stay

13 at the podium.

14          MR. GRIMALDI:  Thank you, Your

15 Honor.

16          THE COURT:  And the way this is

17 going to work is that once you assert your

18 claims, your representative claims, you will

19 designate, based on the information that you have

20 to date, on each side's representative products

21 that you're accusing.

22          With regard to defenses,

23 particularly the Acushnet invalidity defenses,

24 I'm going to put a date in place which will be

9

```
 1    about 14 to 16 working days where Acushnet will

 2    specifically set out its invalidity defenses to

 3    claims, representative claims being asserted by

 4    Bridgestone under each of those defenses.

 5              As I understand it presently, it

 6    essentially boils down to obviousness and

 7    anticipation, the references that are relied on

 8    for those defenses.

 9              Now, when I say the references,

10    after reading your papers, I'm excluding golf

11    balls.  I mean, a hundred golf balls, 150 golf

12    balls.  That's not what -- and how many dimples

13    are on each golf ball.  That may be of interest

14    to you, but it's not the kind of information that

15    you need now to be able to conduct discovery both

16    further fact discovery and expert discovery on

17    the infringement and invalidity claims.

18              So when I talk about references, I'm

19    excluding golf balls for the present time.  And

20    at some point, probably if you can't agree on

21    that, I'll take care of that in September for

22    you.

23              As I understand it, I think there's,

24    at least Acushnet claims 112 golf balls that they
```

1  original document production request, although

2  the issues haven't changed, there may be some

3  reduced expectation that is appropriate, because

4  now production will be against what it is that

5  are representative claims and defenses.

6          Anything else?

7          MR. GRIMALDI:  No, Your Honor.

8          THE COURT:  On behalf of

9  Bridgestone?

10         MR. MASTERS:  Yes, Your Honor.

11  Earlier you referred to Acushnet having to limit

12  their invalidity contentions by limiting the

13  number of references, but you did not place a

14  number on the references or the number of

15  positions.

16         THE COURT:  Well, I didn't place

17  that specifically, because this is a very crowded

18  art field apparently.

19         MR. MASTERS:  It can be.

20         THE COURT:  Yeah, from what I read.

21  I mean, I think you set out just what they've

22  talked about, 50 something here.

23         So let's see how reasonable they

24  want to be with you, and if it's truly supportive

1    of a contention of invalidity.  If it's not, then

2    I'll pare it down.

3              But let's see what they produce,

4    because it has to be, and they understand it,

5    Acushnet understands that it has to be specific

6    to the defense and something that will be relied

7    on at trial.

8              So I'll give them a little bit of an

9    open end there.

10             MR. MASTERS:  Okay.  And then the

11   next issue is the claim construction hearing

12   that's scheduled for September 25th.

13             I believe briefing is due August

14   21st.

15             THE COURT:  That's going to be put

16   off.

17             MR. MASTERS:  Okay.  And just one

18   more follow-up on that question.

19             When we had a teleconference, I

20   think two weeks ago, there was a July 19th joint

21   submission that was -- we were going to discuss

22   it today as to when that's due.  We had both

23   identified terms of all of the claims, and now

24   that the claims have been limited, it should make

# EXHIBIT D

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

BRIDGESTONE SPORTS CO., LTD.,
and BRIDGESTONE GOLF, INC.,

              Plaintiffs,

    v.

ACUSHNET COMPANY,

              Defendant.

C. A. No.  05-132 (JJF)

### BRIDGESTONE'S FIRST SET OF INTERROGATORIES
### (INTERROGATORY NOS. 1-24)

      Pursuant to Fed. R. Civ. P. 33, Plaintiffs Bridgestone Sports Co. Ltd. and Bridgestone Golf, Inc., by their undersigned attorneys, propound these Interrogatories, to which Defendant Acushnet Company shall respond separately and fully, in writing and under oath, within the time prescribed by the Federal Rules of Civil Procedure, in accordance with the Definitions and Instructions set forth hereinafter.

### DEFINITIONS

      Notwithstanding any definition set forth below, each word, term, or phrase used in this Request is intended to have the broadest meaning permitted under the Federal Rules of Civil Procedure.  As used in this set of interrogatories, the following terms are to be interpreted in accordance with these definitions:

      1)    The term "Bridgestone," "Plaintiff," and/or "Plaintiffs" means Bridgestone Sports Company, Ltd. and/or Bridgestone Golf, Inc., the plaintiffs in this action, and all predecessors, successors, subsidiaries, divisions, parents and/or affiliates thereof, past or present, and all past

## INTERROGATORIES

1.    Identify by model, type, version or similar designation each and every Acushnet product that Acushnet has made, used, sold and/or offered for sale in, exported out of, or imported into, the United States since March 7, 1998 to the present.

2.    Separately, for each product, the identification of which is requested by Interrogatory No. 1, state the date each such product was first made, used, sold, and/or offered for sale in, exported out of, or imported into, the United States.

3.    Separately, for each product, the identification of which is requested by Interrogatory No. 1, state the names and addresses of the individuals (at least three) most knowledgeable about each of the conception, design, development, testing, manufacturing, and selling thereof.

4.    State each fact on which Acushnet bases its Third Defense (Invalidity under 35 U.S.C. § 101, 102, 103 and 112) set forth in the Answer, and with respect to each such fact, identify each person with knowledge of that fact and each document concerning that fact.

5.    Separately, for each claim of the Bridgestone patents-in-suit that Acushnet contends is invalid, identify all Prior Art and/or Prior Art Golf Balls that Acushnet contends affects or relates to the validity of the Bridgestone patents-in-suit.

6.    Separately, for each of the Asserted Claims of the Bridgestone patents-in-suit, state each fact that supports, or concerns Acushnet's denial that the Accused Acushnet products infringe that claim, including an identification of every element of each claim which Acushnet contends is not found in the Acushnet products, and for each such element, describe in detail Acushnet's contention as to the lack of an equivalent for such element.

9

# EXHIBIT E

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF DELAWARE

BRIDGESTONE SPORTS CO., LTD.,
and BRIDGESTONE GOLF, INC.,

          Plaintiffs,

    v.

ACUSHNET COMPANY,

          Defendant.

C. A. No.  05-132 (JJF)

## BRIDGESTONE'S SECOND SET OF INTERROGATORIES
## (INTERROGATORY NOS. 25-39)

      Pursuant to Fed. R. Civ. P. 33, Plaintiff Bridgestone Sports Co. Ltd., by their undersigned attorneys, propound these Interrogatories, to which Defendant Acushnet Company shall respond separately and fully, in writing and under oath, within the time prescribed by the Federal Rules of Civil Procedure, in accordance with the Definitions and Instructions set forth hereinafter.

35.    Identify on a claim-by-claim basis for each one of the Bridgestone patents-in-suit that Acushnet contends is invalid and provide a chart identifying specifically under which section(s) of the Patent Code that Acushnet contends each identified claim is invalid and how Acushnet contends that each identified claim fails to satisfy such section(s), including where, specifically, in the prior art Acushnet contends a teaching or suggestion of or motivation to combine each element of each identified claim is found.

36.    Identify all publications and other materials alleged by Acushnet to be relevant to the patentability of the Bridgestone patents-in-suit, including each document, thing, or other evidence supporting the chart requested in Interrogatory No. 35.

37.    Identify each term in the claims of the Acushnet patents-in-suit and Bridgestone patents-in-suit that you contend should be given a meaning other than the plain and ordinary meaning for that term as understood by one of ordinary skill in the art in light of the patent disclosure, and for each such identified term, state the meaning you contend it should be given and the factual basis for your contention.

38.    Identify all evidence (intrinsic and extrinsic) you contend is relevant to or you intend to rely upon in construing each term in the claims of the Acushnet patents-in-suit and Bridgestone patents-in-suit, and for each such item of evidence, identify how such item of evidence is relevant to each term in the claims of the Acushnet patents-in-suit and Bridgestone patents-in-suit, and state your contention as to how each such item of evidence affects the construction of each term in the claims of the Acushnet patents-in-suit and Bridgestone patents-in-suit.

# EXHIBIT F

# THIS EXHIBIT HAS BEEN REDACTED IN ITS ENTIRETY

# EXHIBIT G

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

BRIDGESTONE SPORTS CO., LTD,
and BRIDGESTONE GOLF, INC.

    Plaintiff,

    v.

ACUSHNET COMPANY,

    Defendant.

)
)
)
)
)
)
)
)
)
)
)
)
)    C. A. No. 05-132 (JJF)

ACUSHNET COMPANY,

    Counterclaim Plaintiff,

    v.

BRIDGESTONE SPORTS CO., LTD,
and BRIDGESTONE GOLF, INC.

    Counterclaim Defendant.

)
)
)
)
)
)
)
)
)
)
)
)

## ACUSHNET'S SECOND SUPPLEMENT TO OBJECTIONS AND RESPONSES TO BRIDGESTONE'S SECOND SET OF INTERROGATORIES DIRECTED TO ACUSHNET (NOS. 25-39)

Pursuant to Rule 33 of the Federal Rules of Civil Procedure, defendant and counterclaim plaintiff Acushnet Company ("Acushnet") hereby supplements its responses to *the Second Set of Interrogatories Directed to Acushnet (Nos. 25-39)* ("Second Set of Interrogatories") of plaintiffs

| Beginning Bates No. | Ending Bates No. | Beginning Bates No. | Ending Bates No. |
|---|---|---|---|
| AB0000894 | | AB0016586 | AB0016779 |
| AB0000898 | | AB0016780 | AB0016806 |
| AB0000899 | | AB0016971 | AB0016996 |
| AB0000900 | AB0000902 | AB0017199 | AB0017233 |
| AB0001692 | AB0001752 | AB0017244 | AB0017245 |
| AB0001756 | AB0001764 | AB0017247 | AB0017250 |
| AB0001765 | | AB0017413 | AB0017673 |
| AB0001767 | AB0001770 | AB0017677 | AB0017679 |
| AB0001773 | AB0001789 | AB0017687 | AB0017999 |
| AB0001792 | AB0001794 | AB0027609 | AB0029925 |
| AB0001795 | AB0001803 | AB0030115 | AB0030125 |
| AB0001804 | AB0001813 | AB0034583 | AB0035634 |
| AB0001814 | AB0001817 | AB0037038 | AB0037086 |
| AB0002260 | AB0002261 | AB0037091 | AB0037162 |
| AB0002264 | AB0002281 | AB0037186 | AB0037211 |
| AB0004459 | AB0004491 | AB0037222 | AB0038811 |
| AB0004580 | AB0004618 | AB0044739 | AB0045339 |
| AB0004710 | AB0004737 | AB0045388 | AB0046095 |
| AB0011621 | AB0011611 | AB0046167 | AB0046298 |
| AB0011271 | AB0012346 | AB0046866 | AB0047076 |
| AB0016037 | AB0016198 | AB0046521 | AB0046701 |

Acushnet hereby reserves the right to supplement its response to this request in light of ongoing

discovery.

## Interrogatory No. 35:

Identify on a claim-by-claim basis for each one of the Bridgestone patents-in-suit that Acushnet contends is invalid and provide a chart identifying specifically under which section(s) of the Patent Code that Acushnet contends each identified claim is invalid and how Acushnet contends that each identified claim fails to satisfy such section(s), including where, specifically, in the prior art Acushnet contends a teaching or suggestion of or motivation to combine each element of each identified claim is found.

## Response to Interrogatory No. 35:

Acushnet incorporates all of its General Objections and Objections to Definitions as

though fully set forth herein and further specifically objects to this interrogatory as overly broad

to the extent it seeks information protected by attorney-client privilege and/or work-product

immunity and duplicative of Bridgestone's Interrogatory Nos. 4 and 5. Acushnet also

13

specifically objects to this request as premature in light of ongoing discovery. Subject to and without waiving those objections, Acushnet incorporates its responses to Bridgestone's Interrogatory Nos. 4 and 5 as if fully restated herein. Acushnet further reserves the right to supplement this response as new facts and evidence become available, including the submission of expert reports re invalidity of the Bridgestone patents-in-suit.

**Interrogatory No. 36:**

Identify all publications and other materials alleged by Acushnet to be relevant to the patentability of the Bridgestone patents-in-suit, including each document, thing, or other evidence supporting the chart requested in Interrogatory No. 35.

**Response to Interrogatory No. 36:**

Acushnet incorporates all of its General Objections and Objections to Definitions as though fully set forth herein and further specifically objects to this interrogatory as overly broad to the extent it seeks information protected by attorney-client privilege and/or work-product immunity and duplicative of Bridgestone's Interrogatory Nos. 4, 5, and 35. Acushnet also specifically objects to this request as premature in light of ongoing discovery. Subject to and without waiving those objections, Acushnet incorporates its responses to Bridgestone's Interrogatory Nos. 4, 5, and 35 as if fully restated herein. Acushnet further reserves the right to supplement this response as new facts and evidence become available, including the submission of expert reports re invalidity and/or unenforceability of the Bridgestone patents-in-suit.

**Supplemental Response to Interrogatory No. 36:**

Subject to and without waiving its General or Specific Objections, Acushnet supplements its response by incorporating the prior art referenced in its responses to Bridgestone's Interrogatories Nos. 11-14.

**Interrogatory No. 37:**

Identify each term in the claims of the Acushnet patents-in-suit and Bridgestone patents-in-suit that you contend should be given a meaning other than the plain and ordinary meaning for that term as understood by one of ordinary skill in the art in light of the patent disclosure, and for

14

# EXHIBIT H

# THIS EXHIBIT HAS BEEN REDACTED IN ITS ENTIRETY

# EXHIBIT I

# HOWREY LLP

1299 Pennsylvania Avenue, NW
Washington, DC 20004-2402
T 202.783.0800
F 202.383.6610
www.howrey.com

Direct Dial 202.383.6904
File D0634.0002

September 1, 2006

BY FACSIMILE

Robert M. Masters, Esq.
Paul, Hastings, Janofsky & Walker LLP
875 15th Street, N.W.
Washington, D.C. 20005

      Re:    *Bridgestone Sports Co. v. Acushnet Co.,*
             **C.A. No. 05-132 (JJF) (D. Del.)**
             <u>**Acushnet's Invalidity Contentions**</u>

Dear Rob:

      We have received your letter of August 31, in which you set a unilateral deadline of noon today for Acushnet to further revise its invalidity contentions. As you are aware, Acushnet narrowed its invalidity contentions on August 11, despite our belief that the Court's August 3 Order imposed no such requirement.

      When we met-and-conferred on this matter on August 18, we agreed to further revise our invalidity contentions for the '961 patent, which we did on August 28. Although your letter characterizes those revised contentions as "slightly revised" and states that our second revision only "dropped one reference as an anticipatory reference and one reference from [our] obviousness combinations," (Masters Ltr. to Grimaldi, Aug. 31, 2006 at 1), our August 28 revision in fact removed four Spalding prior art patents from a number of combinations. We previously eliminated 21 prior art references for the '961 patent.

      In return, we requested on August 18 that Bridgestone narrow its infringement contentions "to identify at least the contentions Bridgestone is asserting solely under the doctrine of equivalents." (Seal Ltr. to Masters, Aug. 18, 2006, at 2.) While we have yet to receive any revised contentions from Bridgestone, we appreciate Mr. White's letter of August 31 in which he agrees to provide updated contentions next week. (*See* White Ltr. to Seal, Aug. 31, 2006.)

      As the only party to provide revised contentions after the August 18 meet-and-confer, we are disappointed in the tone of your letter. We are particularly disappointed by your statement that, if you "do not receive proper invalidity contentions by noon on Friday, September 1, 2006, [you] will bring this issue to the Court to resolve." (Masters Ltr. to Grimaldi, Aug. 31, 2006, at 1.) Having received your letter two minutes before noon on Thursday, August 31, we respectfully suggest that your unilateral 24-hour deadline was both arbitrary and unrealistic, especially in light of the facts that today the parties had (1) two depositions, (2) a document

**HOWREY** LLP

Robert M. Masters, Esq.
September 1, 2006
Page 2

production deadline, and (3) a deadline in which to resolve privilege log issues.[1] In addition, we have yet to receive any substantive response to the revised contentions we served earlier this week, nor have we received the revised contentions which Mr. White has requested.

We remain willing to discuss this matter further with you, but believe that discussion would be most productive after we have received (1) a substantive response to the contentions we served this week and (2) Bridgestone's revised contentions. That way, any remaining issues on both sides may be raised with the Court simultaneously, if necessary.

Regards,

Brian S. Seal

---

[1] Your 24-hour deadline was further compressed by the fact that you sent your letter to Alan Grimaldi, who, as you acknowledge in your letter, is currently on vacation.

# HOWREY LLP

1299 PENNSYLVANIA AVENUE, N.W.
WASHINGTON, DC 20004-2402
PHONE: 202.783.0800 • FAX: 202.383.6610

## FACSIMILE COVER SHEET

**DATE:** September 1, 2006

**TO:**

| | |
|---|---|
| NAME: | Robert M. Masters |
| COMPANY: | Paul Hastings |
| FAX NUMBER | 202.551.1705 |
| CITY: | Washington, DC |

PHONE NUMBER: 202.551.1700

**FROM:**

| | |
|---|---|
| NAME: | Brian S. Seal |
| DIRECT DIAL NUMBER: | 202.383.6904 |

USER ID: 2233

NUMBER OF PAGES, _INCLUDING_ COVER: 3

CHARGE NUMBER: 00634.0002

☐ ORIGINAL WILL FOLLOW VIA:

☐ REGULAR MAIL     ☐ OVERNIGHT DELIVERY     ☐ HAND DELIVERY     ☐ OTHER: _____

☒ ORIGINAL WILL NOT FOLLOW

SUPPLEMENTAL MESSAGE:

THE INFORMATION CONTAINED IN THIS TRANSMISSION IS PRIVILEGED AND CONFIDENTIAL. IT IS INTENDED ONLY FOR THE USE OF THE INDIVIDUAL OR ENTITY NAMED ABOVE. IF THE READER OF THIS MESSAGE IS NOT THE INTENDED RECIPIENT, YOU ARE HEREBY NOTIFIED THAT ANY DISSEMINATION, DISTRIBUTION OR COPYING OF THIS COMMUNICATION IS STRICTLY PROHIBITED. IF YOU HAVE RECEIVED THIS COMMUNICATION IN ERROR, PLEASE NOTIFY US IMMEDIATELY BY TELEPHONE AND RETURN THE ORIGINAL MESSAGE TO US AT THE ABOVE ADDRESS VIA THE U.S. POSTAL SERVICE. THANK YOU.

IF THERE ARE ANY QUESTIONS OR PROBLEMS WITH THE TRANSMISSION OF THIS FACSIMILE, PLEASE CALL 202.383.7137.

Confirmation Report—Memory Send

```
                                    Time     : Sep-01-06  08:03pm
                                    Tel line 1 : +
                                    Tel line 2 : +
                                    Name      : HOWREY SIMON
```

Job number            :   237

Date                  :   Sep-01 08:02pm

To                    :   #09695511705

Document Pages        :   03

Start time            :   Sep-01 08:02pm

End time              :   Sep-01 08:03pm

Pages sent            :   03

Job number      : 237              *** SEND SUCCESSFUL ***

# HOWREY LLP

1299 PENNSYLVANIA AVENUE, N.W.
WASHINGTON, DC 20004-2402
PHONE: 202.783.0800 • FAX: 202.383.6610

**FACSIMILE COVER SHEET**

| | | | | |
|---|---|---|---|---|
| DATE: | September 1, 2006 | | | |
| TO: | NAME: | Robert M. Masters | | |
| | COMPANY | Paul Hastings | | |
| | FAX NUMBER | 202.551.1705 | PHONE NUMBER | 202.551.1700 |
| | CITY | Washington, DC | | |
| FROM | NAME: | Brian S. Seal | | |
| | DIRECT DIAL NUMBER: | 202.383.6904 | USER ID: | 2233 |

NUMBER OF PAGES, INCLUDING COVER:  3          CHARGE NUMBER:  00634.0002

☐ ORIGINAL WILL FOLLOW VIA:
☐ REGULAR MAIL    ☐ OVERNIGHT DELIVERY    ☐ HAND DELIVERY    ☐ OTHER:
☒ ORIGINAL WILL NOT FOLLOW
SUPPLEMENTAL MESSAGE:

THE INFORMATION CONTAINED IN THIS TRANSMISSION IS PRIVILEGED AND CONFIDENTIAL. IT IS INTENDED ONLY FOR THE USE OF THE INDIVIDUAL OR ENTITY NAMED ABOVE. IF THE READER OF THIS MESSAGE IS NOT THE INTENDED RECIPIENT, YOU ARE HEREBY NOTIFIED THAT ANY DISSEMINATION, DISTRIBUTION OR COPYING OF THIS COMMUNICATION IS STRICTLY PROHIBITED. IF YOU HAVE RECEIVED THIS COMMUNICATION IN ERROR, PLEASE NOTIFY US IMMEDIATELY BY TELEPHONE AND RETURN THE ORIGINAL MESSAGE TO US AT THE ABOVE ADDRESS VIA THE U.S. POSTAL SERVICE. THANK YOU

IF THERE ARE ANY QUESTIONS OR PROBLEMS WITH THE TRANSMISSION OF THIS FACSIMILE, PLEASE CALL 202.383.7337