# Exhibit G

# HOWREY LLP

1299 Pennsylvania Avenue, NW
Washington, DC 20004.2402
wwww.howrey.com

Alan M. Grimaldi
Partner
202.383.6989
202.383.6610
grimaldia@howrey.com

File 00634.0002

August 11, 2006

BY FACSIMILE

Brandon M. White, Esq.
Paul, Hastings, Janofsky & Walker LLP
875 15th Street, N.W.
Washington, D.C. 20005

Re:  ***Bridgestone Sports Co. v. Acushnet Co.,***
     **C.A. No. 05-132 (JJF) (D. Del.)**

Dear Brandon:

In accordance with the Court's Order requiring Acushnet to provide Bridgestone with "any invalidity defense with respect to the selected claims and the references relied upon," by todays date (Order, Aug. 3, 2006), Acushnet hereby incorporates all the claim charts and supporting documents that Acushnet served on you in response to Bridgestone's Interrogatory No. 5. These documents provide Acushnet's positions on invalidity of the remaining claims of the patents-in-suit.

While the Court did not require that Acushnet reduce or modify its invalidity contentions, in the spirit of cooperation, we further identify the following references as being withdrawn for the purposes of Acushnet's invalidity contentions. Acushnet, however, reserves the right to use any of the withdrawn references to provide evidence of the knowledge held by those of ordinary skill in the art at a particular time, or as rebuttal evidence to any statements made by any expert relied upon by Bridgestone.

- **The '652 Patent**

  - United States Patent No. 2,467,789

- **The '852 Patent**

  - United States Patent No. 6,503,156

  - United States Patent No. 6,506,130

  - United States Patent No. 6,595,873

  - United States Patent No. 6,213,894

AMSTERDAM  BRUSSELS  CHICAGO  EAST PALO ALTO  HOUSTON  IRVINE  LONDON
LOS ANGELES  NORTHERN VIRGINIA  PARIS  SALT LAKE CITY  SAN FRANCISCO  TAIPEI  WASHINGTON, DC

DM_US\8376134.v1

# HOWREY LLP.

Brandon M. White
August 11, 2006
Page 2

- **The '817 Patent**
  - United States Patent No. 5,586,950
  - Great Britain Publication No. 2 276 093
  - United States Patent No. 5,098,105

- **The '834 Patent**
  - United States Patent No. 5,098,105
  - Great Britain Publication No. 2 264 302
  - United States Patent No. 4,674,751
  - United States Patent No. 4,858,924
  - Japanese Kokai Publication No. 02-228978

- **The '707 Patent**
  - United States Patent No. 5,730,663
  - United States Patent No. 5,002,281
  - United States Patent No. 5,830,087
  - United States Patent No. 5,743,817
  - United States Patent No. 5,024,444
  - United States Patent No. 4,840,381

- **The '961 Patent**
  - United States Patent No. 6,520,871
  - United States Patent No. 6,325,730
  - United States Patent No. 6,739,985
  - United States Patent Application Publication No. 2002/0193182
  - United States Patent No. 6,315,684
  - United States Patent No. 6,503,156

# HOWREY LLP

Brandon M. White
August 11, 2006
Page 3

- United States Patent No. 6,506,130

- United States Patent No. 6,595,873

- United States Patent No. 6,213,894

- United States Patent No. 5,586,950

- Great Britain Publication No. 2 278 609

- United States Patent No. 6,394,915

- United States Patent No. 6,413,172

- United States Patent No. 6,379,269

- United States Patent No. 6,432,000

- United States Patent No. 6,224,498

- United States Patent No. 6,667,001

- Australia Publication 703884

- Japanese Patent No. 2669051

- Japanese Patent No. 2778229

- United States Patent No. 5,697,856

- **The '791 Patent**

  - United States Patent No. 6,379,269

  - United States Patent No. 6,435,983

  - United States Patent No. 6,409,614

  - United States Patent No. 6,045,460

  - United States Patent No. 5,776,012

  - United States Patent No. 5,730,663

DM_US\8376134.v1

# HOWREY LLP

Brandon M. White
August 11, 2006
Page 4

We are available to discuss ways to streamline the remainder of this litigation.

Very truly yours,

Alan M. Grimaldi

# Exhibit H

# THIS EXHIBIT HAS BEEN REDACTED IN ITS ENTIRETY

# Exhibit I

# THIS EXHIBIT HAS BEEN REDACTED IN ITS ENTIRETY

# Exhibit J

**From:** White, Brandon M. [brandonwhite@paulhastings.com]
**Sent:** Tuesday, October 24, 2006 3:11 PM
**To:** Seal, Brian
**Subject:** RE: Today's telephone discussion

Yes.

---

**From:** Seal, Brian [mailto:SealB@howrey.com]
**Sent:** Tuesday, October 24, 2006 3:10 PM
**To:** White, Brandon M.
**Subject:** RE: Today's telephone discussion

Thanks.  Does that include final contention supplementation?

---

**From:** White, Brandon M. [mailto:brandonwhite@paulhastings.com]
**Sent:** Tuesday, October 24, 2006 2:58 PM
**To:** Seal, Brian
**Subject:** RE: Today's telephone discussion

Yes, that is correct.  Once we get all the outstanding depos on the calendar, we can finalize the day in November when everything is due.

Regards,

Brandon

---

**From:** Seal, Brian [mailto:SealB@howrey.com]
**Sent:** Tuesday, October 24, 2006 2:30 PM
**To:** White, Brandon M.
**Subject:** Today's telephone discussion

Brandon -

I am confirming our phone conversation of a few moments ago in which we agreed to the following:

(1) You have no objection to our treating Bridgestone's recent motion to compel as falling under paragraph 8 of the scheduling order and not paragraph 4; and

(2) We are mutually moving the deadline for all RFA and interrogatory responses, including supplemental interrogatory responses, to the third week of November.

Please confirm receipt and let me know if you have any disagreement.

Regards,

Brian

Brian S. Seal
Howrey LLP
1299 Pennsylvania Avenue, N.W.
Washington, D.C. 20004
Tel: 202.383.6904
Fax: 202.383.6610
mailto:sealb@howrey.com

CONFIDENTIALITY NOTICE:  This e-mail may have information that is
CONFIDENTIAL or legally privileged as ATTORNEY-CLIENT COMMUNICATION or
ATTORNEY WORK-PRODUCT.  If you are not the intended recipient, delete
this e-mail without disclosing, copying or using any of the information
in it, and inform me of the error by reply e-mail at sealb@howrey.com or
by telephone at (202) 383-6904.  Thank you.

-----------------------------------------------------------------------------------

This email and any attachments contain information from the law firm of Howrey LLP, whi
The information is intended to be for the use of the individual or entity named on this email.
If you are not the intended recipient, be aware that any disclosure, copying, distribution or u
If you receive this email in error, please notify us by reply email immediately so that we can

************************************************************
IRS Circular 230 Disclosure:    As required by U.S. Treasury Regulations govern
************************************************************

This message is sent by a law firm and may contain information that is privileg

For additional information, please visit our website at www.paulhastings.com.

************************************************************
IRS Circular 230 Disclosure:    As required by U.S. Treasury Regulations governing t
************************************************************

This message is sent by a law firm and may contain information that is privileged or

For additional information, please visit our website at www.paulhastings.com.

**From:**    White, Brandon M. [brandonwhite@paulhastings.com]
**Sent:**    Thursday, November 30, 2006 4:57 PM
**To:**    Seal, Brian
**Subject:** RE: Extension of due date for discovery responses

Agreed.

Thanks. Brandon

**From:** Seal, Brian [mailto:SealB@howrey.com]
**Sent:** Thursday, November 30, 2006 4:56 PM
**To:** White, Brandon M.
**Subject:** Extension of due date for discovery responses

Brandon -

I am confirming our agreement to extend the due date for all pending discovery responses, including RFA responses and supplemental contentions, to Thursday, December 14.

As before, please confirm receipt of this e-mail and our agreement to extend the exchange date.

Regards,

Brian

Brian S. Seal
Howrey LLP
1299 Pennsylvania Avenue, N.W.
Washington, D.C. 20004
Tel: 202.383.6904
Fax: 202.383.6610
mailto:sealb@howrey.com

CONFIDENTIALITY NOTICE: This e-mail may have information that is CONFIDENTIAL or legally privileged as ATTORNEY-CLIENT COMMUNICATION or ATTORNEY WORK-PRODUCT. If you are not the intended recipient, delete this e-mail without disclosing, copying or using any of the information in it, and inform me of the error by reply e-mail at sealb@howrey.com or by telephone at (202) 383-6904. Thank you.

---------------------------------------------------------------------------

This email and any attachments contain information from the law firm of Howrey LLP, which may
The information is intended to be for the use of the individual or entity named on this email.
If you are not the intended recipient, be aware that any disclosure, copying, distribution or use of t

If you receive this email in error, please notify us by reply email immediately so that we can arran;

```
************************************************************
IRS Circular 230 Disclosure:    As required by U.S. Treasury Regulations governing t
************************************************************
```

This message is sent by a law firm and may contain information that is privileged or

For additional information, please visit our website at www.paulhastings.com.

**From:**   White, Brandon M. [brandonwhite@paulhastings.com]
**Sent:**   Thursday, December 14, 2006 1:31 PM
**To:**     Seal, Brian
**Subject:** RE: Supplemental Discovery Responses

That works.

Are you still expecting to produce the rest of Acushnet's document production tomorrow?

---

**From:** Seal, Brian [mailto:SealB@howrey.com]
**Sent:** Thursday, December 14, 2006 1:30 PM
**To:** White, Brandon M.
**Subject:** RE: Supplemental Discovery Responses

I will be out tomorrow for another case - how about Monday?

---

**From:** White, Brandon M. [mailto:brandonwhite@paulhastings.com]
**Sent:** Thursday, December 14, 2006 12:44 PM
**To:** Seal, Brian
**Subject:** RE: Supplemental Discovery Responses

Brian — can we exchange tomorrow?  Something has come up unexpectedly this week and I don't think I
can finish proof reading our responses today.  We intend to provide our answer to all the interrogatories.

Thanks.

---

**From:** Seal, Brian [mailto:SealB@howrey.com]
**Sent:** Thursday, December 14, 2006 10:50 AM
**To:** White, Brandon M.
**Subject:** Supplemental Discovery Responses

Brandon -

I am confirming that we are going to exchange our supplemental discovery responses today.  Do
you also intend to provide us with a response to the interrogatory requesting the bases for denying
any RFA?  We had discussed a separate due date for those responses, but I don't know if that's still
your intention now that we've moved the due date a few times for the other responses.

Brian

```
Brian S. Seal
Howrey LLP
1299 Pennsylvania Avenue, N.W.
Washington, D.C. 20004
Tel: 202.383.6904
Fax: 202.383.6610
mailto:sealb@howrey.com
```

CONFIDENTIALITY NOTICE:  This e-mail may have information that is
CONFIDENTIAL or legally privileged as ATTORNEY-CLIENT COMMUNICATION or
ATTORNEY WORK-PRODUCT.  If you are not the intended recipient, delete
this e-mail without disclosing, copying or using any of the information
in it, and inform me of the error by reply e-mail at sealb@howrey.com or
by telephone at (202) 383-6904.  Thank you.




----------------------------------------------------------------------------------------
This email and any attachments contain information from the law firm of Howrey LLP, whi
The information is intended to be for the use of the individual or entity named on this email.
If you are not the intended recipient, be aware that any disclosure, copying, distribution or u
If you receive this email in error, please notify us by reply email immediately so that we can


----------------------------------------------------------------------
*********************************************************
IRS Circular 230 Disclosure:    As required by U.S. Treasury Regulations govern
*********************************************************

This message is sent by a law firm and may contain information that is privileg

For additional information, please visit our website at www.paulhastings.com.


----------------------------------------------------------------------
*********************************************************
IRS Circular 230 Disclosure:    As required by U.S. Treasury Regulations governing t
*********************************************************

This message is sent by a law firm and may contain information that is privileged or

For additional information, please visit our website at www.paulhastings.com.

1/3/2007

# Exhibit K

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

BRIDGESTONE SPORTS CO., LTD.,
and BRIDGESTONE GOLF, INC.,

           Plaintiffs,

    v.

ACUSHNET COMPANY,

           Defendant.

C. A. No. 05-132 (JJF)

## BRIDGESTONE'S FIRST SET OF INTERROGATORIES (INTERROGATORY NOS. 1-24)

Pursuant to Fed. R. Civ. P. 33, Plaintiffs Bridgestone Sports Co. Ltd. and Bridgestone Golf, Inc., by their undersigned attorneys, propound these Interrogatories, to which Defendant Acushnet Company shall respond separately and fully, in writing and under oath, within the time prescribed by the Federal Rules of Civil Procedure, in accordance with the Definitions and Instructions set forth hereinafter.

### DEFINITIONS

Notwithstanding any definition set forth below, each word, term, or phrase used in this Request is intended to have the broadest meaning permitted under the Federal Rules of Civil Procedure. As used in this set of interrogatories, the following terms are to be interpreted in accordance with these definitions:

1)     The term "Bridgestone," "Plaintiff," and/or "Plaintiffs" means Bridgestone Sports Company, Ltd. and/or Bridgestone Golf, Inc., the plaintiffs in this action, and all predecessors, successors, subsidiaries, divisions, parents and/or affiliates thereof, past or present, and all past

or present officers, directors, agents, employees, consultants, accountants, attorneys, representatives, and any other person or entity acting on behalf of any of the foregoing.

2)     The terms "Acushnet," "Defendant," "you" and/or "your" means Acushnet Company, the defendant in this action, and all predecessors, successors, subsidiaries, divisions, parents and/or affiliates thereof, past or present, and all past or present officers, directors, agents, employees, consultants, accountants, attorneys, representatives, and any other person or entity acting on behalf of any of the foregoing.

3)     The term "person" or "persons" means and includes any natural person, corporation, company, proprietorship, partnership, joint venture, association, firm, government entity or any other entity recognized in law, and shall include the owners, officers, directors, agents, trustees, parents, subsidiaries, affiliates, assignees, predecessors, and successors of each such "person."

4)     The phrase "Third Party" means and includes any Person or Persons other than Bridgestone and Acushnet.

5)     The term "Communication(s)" means the transmittal of information by any means, and includes any transfer of information, ideas, opinions, or thoughts by any means, written, oral, or otherwise, at any time or place under any circumstances. The definition is not limited to transfers between persons but also includes other transfers, such as records and memoranda to file; any written letter, memorandum, or other document which was sent by one or more individuals to another or others; any telephone call between one or more individual and another or others, whether such call was by chance or prearranged, formal or informal; and any conversation or meeting between one or more individuals and another, whether such contact was by chance or prearranged, formal or informal.

6)     "Document" and "Documents" shall have the broadest meaning ascribed to it by Rule 34(a) of the Federal Rules of Civil Procedure and mean any writing of any kind, including originals and all non-identical copies (whether different from the original by reason of any notation made on such copies or otherwise). The terms "Document" and "Document(s)" shall

2

include, without limitation, the following items, whether printed or reproduced by any process, or written or produced by hand or stored in computer memory, magnetic or hard disk or other data storage medium, and whether or not claimed to be privileged, confidential or otherwise excludable from discovery, namely, notes, letters, correspondence, communications, e-mails, telegrams, memoranda, summaries or records of telephone conversations, summaries or records of personal conversations or meetings, diaries, reports, laboratory and research reports and notebooks, recorded experiments, charts, plans, drawings, diagrams, schematic diagrams, HDL, verilog, or other computer code, illustrations, product descriptions, product analyses, requests for proposals, documents related to proposed or actual product improvements or changes, users manuals or guides, installation guides or manuals, technical descriptions or specifications, product repair manuals or guides, photographs, video image, software flow charts or descriptions or specifications, product functional descriptions or specifications, minutes or records of meetings, summaries of interviews, reports, or investigations, opinions or reports of consultants, reports of patent searches, patent appraisals, opinions of counsel, agreements, reports or summaries of negotiations, brochures, pamphlets, advertisements, circulars, trade letters, press releases, drafts of documents, and all other material fixed in a tangible medium of whatever kind known to you or in your possession, custody, or control.

     7)    The term "concerning" means relating to, referring to, describing, evidencing, constituting, identifying, mentioning, discussing or analyzing.

     8)    The terms "Thing" and "Things" mean and include any tangible item other than a Document.

     9)    The term "PTO" means the United States Patent and Trademark Office.

     10)    The term "Complaint" as used herein means the Complaint for Patent Infringement and Declaratory Judgment and Demand for Jury Trial filed by Bridgestone on March 7, 2005.

     11)    The term "Answer" as used herein means the Answer And Counterclaim filed by Acushnet on April 28, 2005.

3

12)     The term "the '652 patent" means U.S. Patent No. 5,252,652, entitled "Solid Golf Ball" and issued on October 12, 1993.

13)     The term "the '852 patent" means U.S. Patent No. 5,553,852, entitled "Three-Piece Solid Golf Ball" and issued on September 10, 1996.

14)     The term "the '413 patent" means U.S. Patent No. 5,695,413, entitled "Solid Golf Ball" and issued on December 9, 1997.

15)     The term "the '817 patent" means U.S. Patent No. 5,743,817, entitled "Golf Ball" and issued on April 28, 1998.

16)     The term "the '707 patent" means U.S. Patent No. 5,782,707, entitled "Three-Piece Solid Golf Ball" and issued on July 21,1998.

17)     The term "the '834 patent" means U.S. Patent No. 5,803,834, entitled "Two-Piece Solid Golf Ball" and issued on September 8, 1998.

18)     The term "the '924 patent" means U.S. Patent No. 5,813,924, entitled "Golf Ball" and issued on September 29, 1998.

19)     The term "the '961 patent" means U.S. Patent No. 6,634,961, entitled "Multi-Piece Solid Golf Ball" and issued on October 21, 2003.

20)     The term "the '791 patent" means U.S. Patent No. 6,679,791, entitled "Golf Ball" and issued on January 20, 2004.

21)     The term "the '125 patent" means U.S. Patent No. 6,780,125, entitled "Multi-Piece Solid Golf Ball" and issued on August 24, 2004.

22)     The term "Bridgestone patents-in-suit", as used herein, means and includes one or more of the '652 patent, the '852 patent, the '413 patent, the '817 patent, the '707 patent, the '834 patent, the '924 patent, the '961 patent, the '791 patent and the '125 patent.

23)     The phrase "Asserted Claims of the Bridgestone patents-in-suit" means includes:

     a)     with respect to the '652 patent, claims 1, 3, 5-9 and 11-13;

     b)     with respect to the '852 patent, claims 1-4 and 6-8;

     c)     with respect to the '413 patent, claims 1-4 and 9-11;

4

d)   with respect to the '817 patent, claims 1 and 2;

e)   with respect to the '707 patent, claims 1-5, 9-14, 16 and 17;

f)   with respect to the '834 patent, claims 1, 2, and 4;

g)   with respect to the '924 patent, claim 1;

h)   with respect to the '961 patent, claims 1 and 3-8;

i)   with respect to the '791 patent, claims 1-6, 8-17, 19 and 21-23; and

j)   with respect to the '125 patent, claims 2, 3 and 5-14.

Bridgestone expressly reserves the right to assert additional claims as discovery and investigation in this case continues.

24)   The term "the '861 patent" means U.S. Patent No. 4,729,861, entitled "Method of Making Golf Balls" and issued on March 8, 1988.

25)   The term "the '587 patent" means U.S. Patent No. 4,936,587, entitled "Golf Ball" and issued on June 26, 1990.

26)   The term "the '367 patent" means U.S. Patent No. 5,080,367, entitled "Golf Ball" and issued on January 14, 1992.

27)   The term "the '976 patent" means U.S. Patent No. 6,729,976, entitled "Golf Ball With Improved Flight Performance" and issued on May 4, 2004.

28)   The term "the '705 patent" means and includes U.S. Patent No. 6,818,705, entitled "Thin-Layer-Covered Golf Ball With Improved Velocity" and issued on November 16, 2004.

29)   The term "Acushnet patents-in-suit", as used herein, means and includes one or more of the '861 patent, the '587 patent, the '367 patent, the '976 patent, and the '705 patent.

30)   The phrase "Prior Art" means and includes, by way of example, the subject matter encompassed by one or more subsections of 35 U.S.C. § 102, and includes, without limitation, any information, Document, product and/or Thing.

31)    The phrase "Prior Art Golf Ball" or "Prior Art Golf Balls" means and includes, by way of example, any golf ball that is encompassed by one or more subsections of 35 U.S.C. § 102, with respect to one of the Acushnet patents-in-suit or Bridgestone Patents-in-suit.

32)    The phrase "Acushnet products" means and includes each and every model, type, version and revision of golf balls made, used, sold, and/or offered for sale in the United States, exported from the United States, and/or imported into the United States from 1998 to the present, and including by way of example, the golf balls sold under the brands of at least: Titleist® Pro V1™, Titleist® Pro V1x™, Titleist® NXT™, Titleist® NXT Tour, Titleist® DT SoLo, and Pinnacle® Exception™.

33)    The phrase "Accused Acushnet products" means and includes all models, types, versions and revisions of at least the Titleist® Pro V1™, the Titleist® Pro V1x™, the Titleist® NXT™, Titleist® NXT Tour, the Titleist® DT SoLo, and the Pinnacle® Exception™ golf balls.

34)    The phrase "Accused Bridgestone products" means and includes the Bridgestone golf balls that Acushnet alleges infringe one or more of the Acushnet patents-in-suit.

35)    The phrase "Bridgestone products" means and includes each and every model, type, version and revision of golf balls made, used, sold, and/or offered for sale in the United States, exported from the United States, and/or imported into the United States by Bridgestone.

36)    The phrase "Acushnet patent inventor" means and includes each and every inventor named on any of the Acushnet patents-in-suit and any person who contributed in whole or in part to any claim or claims of any of the Acushnet patents-in-suit.

37)    The phrase "Acushnet patented product" means any product manufactured, distributed, exported, used, offered for sale or sold at any time, by, on behalf of, or under license from Acushnet that Acushnet contends embodies the subject matter of any claim of any of the Acushnet patents-in-suit.

38)    The term "USGA" means and includes the United States Golf Association.

39)    The present tense includes the past and future tenses.  The singular includes the plural, and the plural includes the singular.  "All" means "any and all," "any" means "any and

6

all." "Including" means "including but not limited to." "And" and "or" encompass both "and" and "or." Words in the masculine, feminine or neutral form shall include each of the other genders.

## INSTRUCTIONS

1.    These instructions and definitions should be construed to require answers based upon the knowledge of, and information available to, the responding party as well as its agents, representatives, and, unless privileged, attorneys.

2.    These Interrogatories are continuing in character, so as to require that supplemental answers be filed seasonally if further or different information is obtained with respect to any interrogatory.

3.    No part of an interrogatory should be left unanswered merely because an objection is interposed to another part of the interrogatory. If a partial or incomplete answer is provided, the responding party shall state that the answer is partial or incomplete.

4.    If, in responding to these interrogatories, Acushnet encounters any ambiguities when construing an interrogatory or definition, the response shall set forth the matter deemed ambiguous and the construction used in responding.

5.    In accordance with Fed. R. Civ. P. 26(b)(5), where a claim of privilege is asserted in objecting to any interrogatory or part thereof, and information is not provided on the basis of such assertion:

    A.    In asserting the privilege, Acushnet shall, in the objection to the interrogatory, or part thereof, identify with specificity the nature of the privilege (including work product) that is being claimed;

    B.    The following information should be provided in the objection, if known or reasonably available, unless divulging such information would cause disclosure of the allegedly privileged information,

7

(1) For oral communications:

    a.    the name of the person making the communication and the names of persons present while the communication was made, and, where not apparent, the relationship of the persons present to the person making the communication;

    b.    the date and place of the communication; and

    c.    the general subject matter of the communication.

(2) For documents:

    a.    the type of document,

    b.    the general subject matter of the document,

    c.    the date of the document, and

    d.    such other information as is sufficient to identify the document, including, where appropriate, the author, addressee, custodian, and any other recipient of the document, and where not apparent, the relationship of the author, addressee, custodian, and any other recipient to each other.

5.    If Acushnet elects to specify and produce business records in answer to any interrogatory, the specification shall be in sufficient detail to permit Bridgestone to locate and identify, as readily as Acushnet can, the business records from which the answer may be ascertained.

6.    If, in answering these interrogatories, Acushnet encounters any ambiguities when construing a question, instruction, or definition, Acushnet's answer shall set forth the matter deemed ambiguous and the construction used in answering.

8

## INTERROGATORIES

1.     Identify by model, type, version or similar designation each and every Acushnet product that Acushnet has made, used, sold and/or offered for sale in, exported out of, or imported into, the United States since March 7, 1998 to the present.

2.     Separately, for each product, the identification of which is requested by Interrogatory No. 1, state the date each such product was first made, used, sold, and/or offered for sale in, exported out of, or imported into, the United States.

3.     Separately, for each product, the identification of which is requested by Interrogatory No. 1, state the names and addresses of the individuals (at least three) most knowledgeable about each of the conception, design, development, testing, manufacturing, and selling thereof.

4.     State each fact on which Acushnet bases its Third Defense (Invalidity under 35 U.S.C. § 101, 102, 103 and 112) set forth in the Answer, and with respect to each such fact, identify each person with knowledge of that fact and each document concerning that fact.

5.     Separately, for each claim of the Bridgestone patents-in-suit that Acushnet contends is invalid, identify all Prior Art and/or Prior Art Golf Balls that Acushnet contends affects or relates to the validity of the Bridgestone patents-in-suit.

6.     Separately, for each of the Asserted Claims of the Bridgestone patents-in-suit, state each fact that supports, or concerns Acushnet's denial that the Accused Acushnet products infringe that claim, including an identification of every element of each claim which Acushnet contends is not found in the Acushnet products, and for each such element, describe in detail Acushnet's contention as to the lack of an equivalent for such element.

9

7.    Separately, for each of the Bridgestone patents-in-suit, provide the first date that Acushnet became aware of the patent, state how Acushnet became aware of that patent and describe the circumstances under which Acushnet became aware of that patent.

8.    Separately, for each of the Bridgestone patents-in-suit, state whether an opinion of counsel was prepared by or on behalf of Acushnet, and if so, when it was prepared, by whom it was prepared, to whom it was addressed, whether the opinion is in written form or oral, and whether Acushnet plans to rely on such opinion(s) to defend against a charge of willful patent infringement.

9.    Separately, for each of the Acushnet patents-in-suit, identify each claim that you contend is infringed by Bridgestone, the Bridgestone product that you contend has infringed or infringes each such claim, whether infringement is literal or under the doctrine of equivalents, and in the form of a claim chart, set forth in detail on a limitation-by-limitation basis, the factual basis for your assertion that Bridgestone products have infringed or infringe, and identify each Document that supports or refutes your contention of infringement.

10.    State the date on which Acushnet contends that Bridgestone received notice of each of the Acushnet patents-in-suit and the first date Acushnet claims it is entitled to damages for each of the Acushnet patents-in-suit.

11.    State each fact on which Acushnet bases its Fourth Defense that the '125 patent is unenforceable and identify each person with knowledge of that fact and each document concerning that fact.

12.    State each fact on which Acushnet bases its Fourth Defense that the '924 patent is unenforceable and identify each person with knowledge of that fact and each document concerning that fact.

10

13.    State each fact on which Acushnet bases its Fourth Defense that the '817 patent is unenforceable and identify each person with knowledge of that fact and each document concerning that fact.

14.    State each fact on which Acushnet bases its Fourth Defense that the '707 patent is unenforceable and identify each person with knowledge of that fact and each document concerning that fact.

15.    State each fact on which Acushnet bases its Fifth Defense (Unclean Hands) set forth in the Answer and identify each person with knowledge of that fact and each document concerning that fact.

16.    State each fact on which Acushnet bases its Sixth Defense (Waiver/Estoppel/Laches) set forth in the Answer and identify each person with knowledge of that fact and each document concerning that fact.

17.    State each fact on which Acushnet bases its Seventh Defense (Failure to State a Claim) set forth in the Answer and identify each person with knowledge of that fact and each document concerning that fact.

18.    State the sales, by year, of each of the Accused Acushnet products, from their introduction to the present.

19.    Separately, for each product, the identification of which is requested by Interrogatory No. 1, state separately for U.S. and foreign sales, on a monthly, quarterly and annual basis, beginning March 7, 1998, and that product's unit sales, dollar sales, average wholesale selling price, cost of goods sold, average unit cost of goods sold, gross profit margin, average gross profit margin per unit, net profit margin, and average net profit margin per unit.

20.    State whether any of the Acushnet patents-in-suit have been licensed, and if so, state the name of the licensee(s), the date of the license(s), the parties to the license(s), and the terms of the license(s), including but not limited to, the royalty rate.

21.    Describe the damage theories on which Acushnet is seeking recovery for alleged patent infringement, state all facts supporting that claim for damages, including the period for which Acushnet seeks such recovery, and in the case of a reasonable royalty, the royalty base and rate or, in the case of lost profits, the specific lost sales and the relevant accounting data to ascertain all costs and the profit margins by product.

22.    For each of the Acushnet patents-in-suit, identify all Acushnet products which have practiced or practice any of the claims.

23.    For each product, the identification of which his requested by Interrogatory No. 24, state whether Acushnet, or its licensees, have marked that product with the number of any patent pursuant to 35 U.S.C. § 287, identify the patent numbers with which each product has been marked, and provide the dates during which the product was marked.

24.    Provide the names and addresses of the persons most knowledgeable about the testing of and analysis of each of the Accused Bridgestone products.

MORRIS, NICHOLS, ARSHT & TUNNELL

Jack B. Blumenfeld (#1014)
Maryellen Noreika (#3208)
Leslie A. Polizoti (#4299)
1201 N. Market Street
P.O. Box 1347
Wilmington, DE 19801
(302) 658-9200
    *Attorneys for Bridgestone Sports Co., Ltd.*
    *and Bridgestone Golf, Inc.*

12

OF COUNSEL:

Robert M. Masters
John T. Callahan
Raja Saliba
SUGHRUE MION, PLLC
2100 Pennsylvania Avenue, N.W.
Washington, D.C.  20037
(202) 293-7060

June 7, 2005

## CERTIFICATE OF SERVICE

I, Jack B. Blumenfeld, hereby certify that copies of the foregoing were caused to be served this 7th day of June, 2005 upon the following in the manner indicated:

### BY HAND

Richard L. Horwitz
Potter Anderson & Corroon LLP
1313 N. Market Street
Wilmington, DE 19801

### BY FEDERAL EXPRESS

Alan M. Grimaldi
Howrey LLP
1299 Pennsylvania Avenue, N.W.
Washington, DC 20004

Jack B. Blumenfeld

14

# Exhibit L

# Paul Hastings

Paul, Hastings, Janofsky & Walker LLP
875 15th Street, N.W. • Washington, DC 20005
telephone 202 551 1700 • facsimile 202 551 1705 • www.paulhastings.com

Atlanta
Beijing
Brussels
Chicago
Hong Kong
London
Los Angeles
Milan
New York
Orange County
Palo Alto
Paris
San Diego
San Francisco
Shanghai
Stamford
Tokyo
Washington, DC

(202) 551-1754
brandonwhite@paulhastings.com

December 23, 2006

70416.00002

**VIA FACSIMILE (202) 383-6610**

Brian S. Seal, Esq.
Howrey LLP
1299 Pennsylvania Ave., N.W.
Washington, DC 20004

Re:    **Bridgestone Sports v. Acushnet**

Dear Brian,

I write in regard to several issues raised by Acushnet's recent supplementation of its discovery responses.

1.    <u>Translations of Prior Art</u>

Acushnet's invalidity contentions refer to translations of Japanese patent documents. (*See, e.g.*, Tab A2 ('652 patent) to *Acushnet's Sixth Supplemental Responses to Bridgestone's First Set of Interrogatories Directed To Acushnet* at Japanese Kokai Publication No. 02-092378). Please produce all English-language translations of foreign-language documents cited in Acushnet's invalidity contentions immediately.

2.    <u>Acushnet's Refusal To Answer Bridgestone's Requests for Admissions</u>

Starting with Bridgestone's Request for Admission No. 68, Acushnet has failed to answer based on the assertion that Bridgestone's 149 Requests exceed the number of requests for admissions authorized in the Rule 16 Scheduling Order (D.I. 18). We disagree with Acushnet's position.

The Rule 16 Scheduling Order authorized 150 requests for admission. Bridgestone's has propounded only 150 requests. Further, requests for admissions are designed to simplify the issues for trial by eliminating non-controversial issues from dispute. (*See* Advisory Committee Notes to Rule 36). Bridgestone's admissions are narrowly tailored to the issues in dispute in this case and designed to simplify the issues for trial. Acushnet's failure to answer more than half of Bridgestone's Request is improper and serves only to unnecessarily complicate this case.

Brian Seal
December 23, 2006
Page 2

Please let us know by December 29, 2006 if Acushnet intends to stand on its objections.

### 3.    Acushnet's Identification of Newly-Asserted Prior Art

Acushnet's supplement response to Bridgestone Interrogatory No. 4 identifies several new references not previously identified.   For example, with respect to the '707 patent, Acushnet now identifies the Altus Newing Massy golf balls as alleged prior art.  With respect to the '791 patent, Acushnet added five patents as allegedly anticipatory references, more than doubling the number of allegedly anticipatory references it intends to assert.  This is improper on several grounds.

First, as set forth in our previously-filed Motion to Compel (D.I. 22), Acushnet has failed to narrow its infringement contentions as ordered by the Court.  Adding new references at this stage of the case only compounds this problem.

Second, the Court ordered all invalidity contentions to be disclosed by August 11, 2006. (D.I. 154 at ¶3).  Adding new prior art after August 11, 2006 is foreclosed by the Court's Order.

Accordingly, please let us know by December 29, 2006 if Acushnet intends to proceed with the infringement positions set forth in *Acushnet's Sixth Supplemental Responses To Bridgestone's First Set of Interrogatories Directed to Acushnet*.

We continue to review Acushnet's discovery responses, and reserve the right to later identify other issues that may arise.

Sincerely,

Brandon M. White
for PAUL, HASTINGS, JANOFSKY & WALKER LLP

LEGAL_US_E # 73790790.1

# Exhibit M

# HOWREY LLP

1299 Pennsylvania Avenue, NW
Washington, DC 20004-2402
T 202.783.0800
F 202.383.6610
www.howrey.com

Direct Dial 202.383.6904
File 00634.0002

September 1, 2006

<u>BY FACSIMILE</u>

Robert M. Masters, Esq.
Paul, Hastings, Janofsky & Walker LLP
875 15th Street, N.W.
Washington, D.C. 20005

    Re:    *Bridgestone Sports Co. v. Acushnet Co.,*
            **C.A. No. 05-132 (JJF) (D. Del.)**
            <u>**Acushnet's Invalidity Contentions**</u>

Dear Rob:

    We have received your letter of August 31, in which you set a unilateral deadline of noon today for Acushnet to further revise its invalidity contentions. As you are aware, Acushnet narrowed its invalidity contentions on August 11, despite our belief that the Court's August 3 Order imposed no such requirement.

    When we met-and-conferred on this matter on August 18, we agreed to further revise our invalidity contentions for the '961 patent, which we did on August 28. Although your letter characterizes those revised contentions as "slightly revised" and states that our second revision only "dropped one reference as an anticipatory reference and one reference from [our] obviousness combinations," (Masters Ltr. to Grimaldi, Aug. 31, 2006 at 1), our August 28 revision in fact removed four Spalding prior art patents from a number of combinations. We previously eliminated 21 prior art references for the '961 patent.

    In return, we requested on August 18 that Bridgestone narrow its infringement contentions "to identify at least the contentions Bridgestone is asserting solely under the doctrine of equivalents." (Seal Ltr. to Masters, Aug. 18, 2006, at 2.) While we have yet to receive any revised contentions from Bridgestone, we appreciate Mr. White's letter of August 31 in which he agrees to provide updated contentions next week. (*See* White Ltr. to Seal, Aug. 31, 2006.)

    As the only party to provide revised contentions after the August 18 meet-and-confer, we are disappointed in the tone of your letter. We are particularly disappointed by your statement that, if you "do not receive proper invalidity contentions by noon on Friday, September 1, 2006, [you] will bring this issue to the Court to resolve." (Masters Ltr. to Grimaldi, Aug. 31, 2006, at 1.) Having received your letter two minutes before noon on Thursday, August 31, we respectfully suggest that your unilateral 24-hour deadline was both arbitrary and unrealistic, especially in light of the facts that today the parties had (1) two depositions, (2) a document

DM_US\8383872.v1

# HOWREY LLP

Robert M. Masters, Esq.
September 1, 2006
Page 2

production deadline, and (3) a deadline in which to resolve privilege log issues.[1] In addition, we have yet to receive any substantive response to the revised contentions we served earlier this week, nor have we received the revised contentions which Mr. White has requested.

We remain willing to discuss this matter further with you, but believe that discussion would be most productive after we have received (1) a substantive response to the contentions we served this week and (2) Bridgestone's revised contentions. That way, any remaining issues on both sides may be raised with the Court simultaneously, if necessary.

Regards,

Brian S. Seal

---

[1] Your 24-hour deadline was further compressed by the fact that you sent your letter to Alan Grimaldi, who, as you acknowledge in your letter, is currently on vacation.

DM_US\8383872.v1

# Exhibit N

RE:

**From:** Seal, Brian [SealB@howrey.com]
**Sent:** Wednesday, January 03, 2007 3:54 PM
**To:** White, Brandon M.
**Subject:** RE:

Brandon -

We can, but in light of your objections to our supplemental contentions, we intend to file a motion for leave to supplement. We still disagree with your interpretation of the order, but think a motion is appropriate in an abundance of caution. If you are willing to drop your objection, of course we will not need to file. Let me know as soon as you can.

Thanks,

Brian

-----Original Message-----
From: White, Brandon M. [mailto:brandonwhite@paulhastings.com]
Sent: Wednesday, January 03, 2007 3:51 PM
To: Seal, Brian
Subject:

Brian,

I am on the road today. Can we talk tomorrow morning?

Brandon


-----------------------
Brandon M. White
Paul, Hastings, Janofsky & Walker LLP
(202) 551-1754
Sent from BlackBerry Wireless Handheld

*********************************************************
IRS Circular 230 Disclosure:   As required by U.S. Treasury Regulations governing tax practice, you are hereby advised that any written tax advice contained herein was not written or intended to be used (and cannot be used) by any taxpayer for the purpose of avoiding penalties that may be imposed under the U.S. Internal Revenue Code.
*********************************************************

This message is sent by a law firm and may contain information that is privileged or confidential. If you received this transmission in error, please notify the sender by reply e-mail and delete the message and any attachments.

For additional information, please visit our website at www.paulhastings.com.

# Exhibit O

LEXSEE



Caution
As of: Jan 04, 2007

**IXYS CORPORATION, Plaintiff, v. ADVANCED POWER TECHNOLOGY, INC.,
Defendant. AND RELATED COUNTERCLAIMS.**

**No. C 02-03942 MHP**

**UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF
CALIFORNIA**

**2004 U.S. Dist. LEXIS 10934**

**June 15, 2004, Decided
June 16, 2004, Filed**

**SUBSEQUENT HISTORY:** Partial summary judgment denied by Ixys Corp. v. Advanced Power Tech., Inc., 321 F. Supp. 2d 1156, 2004 U.S. Dist. LEXIS 10945 (N.D. Cal., June 15, 2004)

**PRIOR HISTORY:** IXYS Corp. v. Advanced Power Tech., Inc., 2004 U.S. Dist. LEXIS 4200 (N.D. Cal., Mar. 18, 2004)

**DISPOSITION:** Defendant's motion to amend granted in part and denied in part. Plaintiff's motion to preclude granted.

**CASE SUMMARY:**

**PROCEDURAL POSTURE:** Defendant corporation filed a motion to amend its final invalidity contentions in connection with plaintiff patentee's action for infringement of patents on an improved design for power MOSFET devices. The patentee filed a motion to preclude the corporation from introducing or employing untimely produced documents.

**OVERVIEW:** The corporation sought to add materials produced by its expert and corresponding claim charts. The court denied the corporation's motion to amend its final invalidity contentions as to 90 pages that the patentee received only six days before its expert's rebuttal report was due. The corporation did not provide any mask layer data as accompaniment to its final invalidity contentions and stated that it had produced all technical information on which its contentions of non-infringement were based. Later that day, the corporation filed a motion for summary judgment of non-infringement, and the next day it provided mask layer data for a large number of the corporation's devices. The court held that U.S. Dist. Ct., N.D. Cal., Patent R. 3-4(b) required the corporation to produce more than the "identity" of the prior art upon which it sought to rely, and if the corporation believed that a mask layer photograph was relevant, then Rule 3-4(b) required the corporation to provide that document. The corporation's decision to deliver the documents upon which its motion for summary judgment relied to the patentee only after it had already filed that motion was unconscionable.

**OUTCOME:** The court denied the corporation's motion to amend it final invalidity contention with respect to 90 pages produced six days before an expert rebuttal was due, but granted the motion in all other respects. The court precluded the corporation from introducing into evidence any documents that referenced any of the corporation's products that the patentee had already accused of infringing its patents.

2004 U.S. Dist. LEXIS 10934, *

**CORE TERMS:** chart, layer, mask, compact, patent, invalidity, non-infringement, infringement, referenced, documents produced, summary judgment, rebuttal, introducing, Local Rules, ninety, motion to amend, production of documents, corresponding, correction, forwarded, bates

**LexisNexis(R) Headnotes**

*Civil Procedure > Pleading & Practice > Pleadings > Amended Pleadings > Leave of Court*
[HN1] Prejudice is the touchstone of the inquiry when considering a motion for leave to amend a complaint.

*Patent Law > Anticipation & Novelty > Elements*
*Patent Law > Infringement Actions > Defenses > Patent Invalidity > General Overview*
[HN2] U.S. Dist. Ct., N.D. Cal., Patent R. 3-3(a) states that a party's preliminary invalidity contentions (and, by extension, its final invalidity contentions) must reveal the identity of each item of prior art that allegedly anticipates each asserted claim.

*Patent Law > Infringement Actions > Defenses > Patent Invalidity > General Overview*
[HN3] The preliminary invalidity contentions must contain a chart identifying where specifically in each alleged item of prior art each element of each asserted claim is found. U.S. Dist. Ct., N.D. Cal., Patent R. 3-3(c).

*Patent Law > Inequitable Conduct > General Overview*
*Patent Law > Infringement Actions > Defenses > Patent Invalidity > General Overview*
[HN4] U.S. Dist. Ct., N.D. Cal., Patent R. 3-4(b) requires the party asserting invalidity to produce a copy of each item of prior art identified pursuant to U.S. Dist. Ct., N.D. Cal., Patent R. 3-3(a) which does not appear in the file history of the patent(s) at issue.

**COUNSEL:** [*1] For IXYS Corporation, Plaintiff: Robert Paul Feldman, Wilson Sonsini Goodrich & Rosati, Palo Alto, CA. Christopher D. Catalano, Wilson Sonsini Goodrich & Rosati, Palo Alto, CA. Michael Barclay, Wilson Sonsini Goodrich & Rosati, Palo Alto, CA.

For Advanced Power Technology, Inc., Defendant: Vickie L. Feeman, Orrick Herrington & Sutcliffe LLP, Menlo Park, CA. Alexander Charles Johnson, Marger Johnson & McCollom, P.C., Portland, OR. James Edward Harris, Marger Johnson & McCollom, P.C., Portland, OR. William Sloan Coats, III, Orrick Herrington & Sutcliffe, Menlo Park, CA. Bas de Blank, Orrick, Herrington & Sutcliffe LLP, Menlo Park, CA. Robert Paul Feldman, Wilson Sonsini Goodrick & Rosati, Palo Alto, CA. Tarek J. Helou, Orrick Herrington & Sutcliffe LLP, Menlo Park, CA.

**JUDGES:** MARILYN HALL PATEL, Chief Judge, United States District Judge.

**OPINION BY:** MARILYN HALL PATEL

**OPINION:**

**MEMORANDUM AND ORDER RE: DEFENDANT'S MOTION TO AMEND FINAL INVALIDITY CONTENTIONS AND PLAINTIFF'S MOTION TO PRECLUDE UNTIMELY PRODUCED EVIDENCE**

Plaintiff IXYS Corporation ("IXYS") filed this action against defendant Advanced Power Technology, Inc. ("APT"), alleging infringement of two U.S. patents, numbered 5,486,715 [*2] (the "'715 patent") and 5,801,419 (the "'419 patent"), that it holds on an improved design for power MOSFET devices. Now before the court are APT's motion to amend its final invalidity contentions and IXYS's motion to preclude APT from introducing or employing untimely produced documents. After having considered the parties' arguments and submissions, and for the reasons set forth below, the court rules as follows.

I. APT's Motion to Amend Final Invalidity Contentions

APT has come before this court seeking leave to amend its final invalidity contentions to add materials produced by its expert, John Neilson (the "GE/Harris documents") and corresponding claim charts, as well as claim charts organizing the technical references relied upon by APT's expert, Dr. Shenai, in his opening report. The court construed disputed claim terms in this case on January 22, 2004, and the deadline in this case for the filing of Final Invalidity Contentions was March 1, 2004. However, on March 8, 2004, at oral argument, the court notified the parties of a typographical error in the original

Page 2

2004 U.S. Dist. LEXIS 10934, *2

claim construction order and announced that a correction would be forthcoming; the court's written order [*3] of March 18, 2004, contained this correction.

According to APT, sometime after the March 8, 2004, hearing Mr. Neilson became aware of the court's modification of its claim construction order and realized that certain documents in his possession had become relevant. On March 15, 2004, Mr. Neilson faxed nineteen pages of GE/Harris documents to APT's counsel; the documents were promptly forwarded to IXYS by facsimile the following day. Johnson Dec. P9. At some subsequent point Mr. Neilson forwarded another 90 pages of documents to APT's counsel. Id. P10. APT's attorney photocopied these documents and delivered copies of them to IXYS on March 31, 2004. Rebuttal expert reports in this case were due on April 6, 2004.

Under Patent Local Rule 3-6(b), APT has the right to amend its final invalidity contentions in light of the adjustment made to this court's claim construction. However, as in all cases of amendment, that right is subject to the court's (and APT's) countervailing duty to avoid prejudicing IXYS through eleventh-hour alterations. Cf. Eminence Capital, LLC v. Aspeon, Inc., 316 F.3d 1048, 1052 (9th Cir. 2003) [HN1] ("Prejudice is the touchstone of the inquiry" when [*4] considering a motion for leave to amend a complaint.) IXYS's expert was able to incorporate the first nineteen pages of GE/Harris material (delivered March 16, 2004) into his rebuttal report. See Barclay Dec., Exh. 7, PP10-11. The same cannot be said for the remaining ninety pages, which IXYS received only six days before Dr. Blanchard's rebuttal report was due. See id. P5g. The court is further puzzled as to why APT only delivered to IXYS the claim charts accompanying Dr. Shenai's report on March 26, 2004, when that report was due on March 1, 2004. Nevertheless, there seems little to be gained from striking these claim charts while the underlying technical references remain part of the case.

Accordingly, APT's motion is DENIED with respect to the ninety pages of GE/Harris documents provided to IXYS on March 31, 2004, and GRANTED in all other respects.

II. IXYS's Motion to Preclude

On March 31, 2003, APT served its Preliminary Invalidity Contentions ("PIC") on IXYS as required under the set schedule. APT's PIC specifically referenced several of APT's devices, including the 208, 208x, and 526 as prior art devices, and APT delivered mask layers corresponding to those [*5] devices to IXYS on April 17, 2003. See Barclay Dec., Exh. 3. The PICs also mentioned APT's 108 device as relevant prior art, and a paper by Douglas Pike--presumably the inventor of the 108--was attached as a reference to the PIC. See id. at 1, 4 ("If the 208x is found to not be a 'high frequency' device, claim 23 would be obvious based on APT's high-frequency 108 product... The 108 product of Reference 9 actually uses an Al-on-polysilicon gate to operate at 10 MHz."). n1 APT did not produce any mask layer documents for the 108, or for its 206 and 207 devices, at this point.

> n1 However, IXYS points out that this document almost surely does not refer to the 108, since APT claims to have invented that device only in 1991. Regardless, the resolution of this question is not necessary for the purposes of IXYS's motion, given the court's holding.

On March 1, 2004, pursuant to the schedule set several months earlier, APT served its Final Invalidity Contentions ("FIC") upon IXYS. This document again referred [*6] to the APT 108, as well as the APT 206 and 207, and provided the same Pike paper as a reference. De Blank Dec., Exh. L. Again, APT did not provide any mask layer data to IXYS as accompaniment to its FIC.

On March 29, 2004, APT's counsel stated in a letter to IXYS's attorney that "APT has already produced all of the technical information on which its contentions of non-infringement are based." n2 Barclay Dec., Exh. 15. Later that day, however, APT filed a motion for summary judgment of non-infringement that referenced the APT 108 via declarations by several of APT's experts and officers. See Def. Mot., at 20-22. The next day, APT provided to IXYS a compact disc Bates-numbered APT 024649 that contained mask layer data for a large number of APT devices, including the APT 108. On April 16, 2004, APT filed the aforementioned motion to amend its FIC. The amended documents made no further reference to the 108, 206 or 207 devices.

> n2 APT's letter also stated that APT was in the process of "analyzing IXYS's infringement allegations" and planned to supplement its

Page 3

response to IXYS's interrogatory regarding APT's non-infringement contentions only after APT's expert reports were complete. Notwithstanding this guarantee, APT filed its motion for summary judgment of non-infringement the same day as it delivered this letter to IXYS. The court is simply stunned by the disingenuousness of APT's March 29, 2004, letter.

[*7]

Patent Local Rule 3-3(a) [HN2] states that a party's PIC (and, by extension, its FIC) must reveal "the identity of each item of prior art that allegedly anticipates each asserted claim." In addition, [HN3] the PIC must contain "[a] chart identifying where specifically in each alleged item of prior art each element of each asserted claim is found...." Patent L.R. 3-3(c). Finally, Patent Local Rule 3-4(b) [HN4] requires the party asserting invalidity to produce "[a] copy of each item of prior art identified pursuant to Patent L.R. 3-3(a) which does not appear in the file history of the patent(s) at issue." APT alleges that Rules 3-3(a)and 3-4(b) require only what they literally describe--disclosures of the "identity" and a "copy" of the prior art--not other "ancillary" documents such as the mask layer data provided on the 024649 compact disc. APT also alleges that it provided "representational" claim charts for the 108, 206, and 207 devices along with its FIC, while IXYS argues that the only claim charts provided for devices APT alleges as prior art are the 208 and 208x. See De Blank Dec., Exh. L.

APT's reading of the Patent Local Rules is untenable at best, and insultingly tendentious at worst. [*8] The Local Rules exist to further the goal of full, timely discovery and provide all parties with adequate notice and information with which to litigate their cases, not to create supposed loopholes through which parties may practice litigation by ambush. Rule 3-4(b) quite obviously requires APT to produce more than the "identity" of the prior art which it seeks to rely--if APT believes that a mask layer photograph or drawing is relevant to this action, then Rule 3-4(b) requires APT to serve upon IXYS a copy of that same document. n3

n3 Indeed, if APT's reading of the Local Rules were correct, its production of mask layers for the 208 devices would have been utterly unnecessary.

Moreover, IXYS's requests for production of documents targeted precisely these types of prior art documents. See Barclay Dec., Exh. 1, at 9-11. APT's decision to deliver the documents upon which its motion for summary judgment relies to IXYS only *after* it has already filed that motion is simply unconscionable; unlike the materials [*9] that APT received from Dr. Neilson (referenced above) there is every indication that APT has held these documents in its possession, ready for use, since the beginning of this litigation. Their deployment against APT at this late stage in the proceedings will obviously cause IXYS a great deal of needless prejudice. APT is hereby precluded from introducing into evidence any prior art documents produced on the compact disc bates numbered APT 024649, and the court strikes all references to those documents in APT's motion papers.

The documents produced on this compact disc that do not constitute prior art are a different matter. Patent Local Rule 3-4(a) requires that APT turn over to IXYS any and all documents describing the operation or structures of APT's accused devices, but does not mention other devices that have not been accused. Similarly, IXYS's requests for production of documents specifically referenced the accused devices, not APT's complete line of products. See Barclay Dec., Exh. 1, at 5-6. IXYS has accused the following APT devices of infringement: "(a) any and all Power MOS 7(R) products or Power MOS V(R) (Generation 5) products with dual-layer metallization manufactured, [*10] used, sold, or offered for sale by APT on or after August 15, 1996, and (b) any and all products manufactured, used, sold, or offered for sale by APT on or after August 15, 1996 that are designed in substantially the same way, or function in substantially the same way, as APT 5018BLL [a Power MOS 7 TM MOSFET]." Pl. Disclosure of Asserted Claims and Preliminary Infringement Contentions. By consequence, it is documents describing *those* devices that APT was obligated to produce; APT's failure to produce documents relating to products that IXYS has never accused is not in error. Accordingly, APT is hereby precluded from introducing into evidence any documents produced on the compact disc bates numbered APT 024649 that reference or describe any of the products IXYS has *already* accused of infringing its patents. APT's 546, 846, and 1046 devices are deemed representative of all APT devices that IXYS has heretofore accused of infringement.

2004 U.S. Dist. LEXIS 10934, *10

IT IS SO ORDERED.

Dated: June 15, 2004

    MARILYN HALL PATEL

Chief Judge

United States District Court

Northern District of California

# Exhibit P

LEXSEE



Analysis
As of: Jan 04, 2007

**DAIICHI PHARMACEUTICAL CO., LTD. and DAIICHI PHARMACEUTICAL CORPORATION, Plaintiffs, v. APOTEX, INC. and APOTEX CORP., Defendants.**

Civ. No. 03-937 (WGB)

UNITED STATES DISTRICT COURT FOR THE DISTRICT OF NEW JERSEY

2005 U.S. Dist. LEXIS 26059

**November 1, 2005, Decided**
**November 1, 2005, Filed**

**SUBSEQUENT HISTORY:** Motion denied by Daiichi Pharm. Co. v. Apotex, Inc., 2005 U.S. Dist. LEXIS 26062 (D.N.J., Nov. 1, 2005)

**PRIOR HISTORY:** Daiichi Pharm. Co. v. Apotex, Inc., 380 F. Supp. 2d 478, 2005 U.S. Dist. LEXIS 16174 (D.N.J., 2005)

**CASE SUMMARY:**

**PROCEDURAL POSTURE:** Plaintiff patent holders filed a patent infringement suit against defendants, two related companies, alleging that the companies had infringed seven claims of their patent, which pertained to a topical otopathy preparation. The holders filed a motion in limine seeking to preclude the companies from asserting an affirmative defense, pursuant to 35 U.S.C.S. § 102(f), that they had failed to name the proper inventors of their patent.

**OVERVIEW:** The holders asserted that the companies had waived their § 102(f) defense because they had not put the holders sufficiently on notice that they intended to raise it. They also asserted that allowing the companies to present evidence as to the defense would unduly prejudice them and would thwart the purpose of contention interrogatories. The companies argued that their § 102(f) claim did not have to be specifically pleaded because it was not listed as an affirmative defense in Fed. R. Civ. P. 8(c), that they had raised the issue in their amended answer, and that the holders were put on notice during discovery. The court found that the companies had waived the defense by failing to specifically raise it in a timely manner. Rule 8(c) did not contain a comprehensive listing of affirmative defenses; the 35 U.S.C.S. § 102(f) claim was the type of defensive allegation that was encompassed by Fed. R. Civ. P. 8(c). The companies had not sufficiently raised the claim in their answer. The holders were not put on notice as to the defense based on discovery, depositions, and the holders' own documents. The companies had repeatedly failed to raise the defense in their interrogatory answers.

**OUTCOME:** The court granted the holders' motion in limine. It ordered that the companies were precluded from asserting an affirmative defense of alleged improper inventorship in the patent infringement suit.

**CORE TERMS:** affirmative defense, discovery, notice, interrogatory, inventorship, inventor, deposition, fair notice, patent, reasonable notice, avoidance, asserting, motion in limine, prejudiced, raising, waived, failure to disclose, sufficient time, subject matter, pragmatically, constituting, collectively, practicable, preemption, defensive, explored, pleaded, invalid

Page 1

2005 U.S. Dist. LEXIS 26059, *

**LexisNexis(R) Headnotes**

*Patent Law > Infringement Actions > Defenses > Patent Invalidity > Grounds*
*Patent Law > Originality > Joinder of Inventors*
[HN1] See 35 U.S.C.S. § 102(f).

*Civil Procedure > Pleading & Practice > Defenses, Demurrers, & Objections > Affirmative Defenses*
[HN2] See Fed. R. Civ. P. 8(c).

*Civil Procedure > Pleading & Practice > Defenses, Demurrers, & Objections > Affirmative Defenses*
*Patent Law > Infringement Actions > Defenses > Patent Invalidity > Grounds*
*Patent Law > Originality > Joinder of Inventors*
[HN3] Fed. R. Civ. P. 8(c) itself does not list every affirmative defense. The fact that a defense under 35 U.S.C.S. § 102(f) is not provided for under Fed. R. Civ. P. 8(c) does not mean that it falls outside the category of affirmative defenses; this is evident from the plain language of R. 8(c).

*Civil Procedure > Pleading & Practice > Defenses, Demurrers, & Objections > Affirmative Defenses*
*Patent Law > Infringement Actions > Defenses > Patent Invalidity > Grounds*
*Patent Law > Originality > Joinder of Inventors*
[HN4] Generally speaking, Fed. R. Civ. P. 8(c)'s reference to an avoidance or affirmative defense encompasses two types of defensive allegations: those that admit the allegations of the complaint but suggest some other reason why there is no right to recovery; and those that concern allegations outside of the plaintiff's prima facie case that the defendant cannot raise by a simple denial in the answer. The argument underlying 35 U.S.C.S. § 102(f), that a plaintiff is not entitled to recover because he is not the true inventor of the subject of a patent, falls well within the category of affirmative defenses considered by other courts, as well as the first type of defensive allegations encompassed by Fed. R. Civ. P. 8(c).

*Civil Procedure > Pleading & Practice > Defenses, Demurrers, & Objections > Affirmative Defenses*

[HN5] Parties are generally required to assert affirmative defenses early in litigation, so they may be ruled upon, prejudice may be avoided, and judicial resources may be conserved. Fed. R. Civ. P. 8(c) technically requires that such a defense be pleaded in the answer. The purpose behind R. 8(c) is to put the plaintiff on notice well in advance of trial that the defendant intends to present a defense in the nature of an avoidance. A defendant should not be permitted to lie behind a log and ambush a plaintiff with an unexpected defense.

*Civil Procedure > Pleading & Practice > Defenses, Demurrers, & Objections > Affirmative Defenses*
[HN6] In order to assert an affirmative defense under Fed. R. Civ. P. 8(c) the pleading party must at least put the plaintiff on reasonable notice of that defense. While some courts have considered harmless a technical failure to comply with R. 8(c), others have taken into account the stage of the proceeding in deciding whether fair notice was satisfied. The United States Court of Appeals for the Seventh Circuit has held that defendants' statute of limitations defense, which was submitted after an exhaustive discovery process and a trial scheduled a month away, deprives the plaintiff of fair notice and a reasonable opportunity to respond.

*Civil Procedure > Pleading & Practice > Defenses, Demurrers, & Objections > Affirmative Defenses*
*Patent Law > Infringement Actions > Defenses > Patent Invalidity > Notice*
*Patent Law > Originality > Joinder of Inventors*
[HN7] A broad listing, in a patent infringement defendant's answer, of 35 U.S.C.S. § 102 among other statutes as an additional defense is insufficient to apprise the plaintiff that the defendant is raising an inventorship defense. Since 35 U.S.C.S. §§ 101, 102, 103, 112, provide numerous grounds for finding a patent invalid, the defendant must provide a more specific statement of the basis for the defense in order to give the plaintiff fair notice of the claims being asserted.

*Civil Procedure > Pleading & Practice > Defenses, Demurrers, & Objections > Affirmative Defenses*
*Patent Law > Infringement Actions > Defenses > Patent Invalidity > Notice*
*Patent Law > Originality > Joinder of Inventors*
[HN8] The purpose of raising an affirmative defense early on in litigation is to put the plaintiff on reasonably

2005 U.S. Dist. LEXIS 26059, *

fair notice of that defense. While the general pleading standards of Fed. R. Civ. P. 8(b) and (e) should be "consulted" when considering an affirmative defense, it cannot be said that a defendant's perfunctory listing of 35 U.S.C.S. § 102 as an additional defense provides the reasonably fair notice necessary under Fed. R. Civ. P. 8(c).

*Civil Procedure > Pleading & Practice > Defenses, Demurrers, & Objections > Affirmative Defenses*
*Civil Procedure > Discovery*
*Patent Law > Infringement Actions > Defenses > Patent Invalidity > Notice*
*Patent Law > Originality > Joinder of Inventors*
[HN9] No authority is cited for the contention that a plaintiff may be sufficiently put on notice of an affirmative defense by the implications underlying discovery requests. This diverges from the purpose of providing notice of an affirmative defense, and it makes no sense. If a plaintiff in a patent infringement suit was considered on reasonable notice of a defendant's 35 U.S.C.S. § 102 claim based on the defendants' trial tactics, it would undermine the purpose of early notification of affirmative defenses; a plaintiff would have to guess whether the affirmative defense will be raised, along with any other defenses, at trial based on the materials sought in discovery or the line of questions asked during depositions.

*Civil Procedure > Pleading & Practice > Defenses, Demurrers, & Objections > Affirmative Defenses*
*Civil Procedure > Discovery*
[HN10] The United States District Court for the Middle District of Minnesota has held that following the line of thinking, that a plaintiff is put on notice as to an affirmative defense by way of discovery requests, would condone "hide the ball" discovery practices and subvert the purposes of Fed. R. Civ. P. 26(e) by permitting contention discovery to be an elusive guessing exercise.

*Civil Procedure > Pleading & Practice > Defenses, Demurrers, & Objections > Affirmative Defenses*
*Civil Procedure > Discovery*
*Patent Law > Infringement Actions > Defenses > Patent Invalidity > Notice*
*Patent Law > Originality > Joinder of Inventors*
[HN11] The fact that a plaintiff in a patent infringement suit is in possession of documents relating to inventorship

does not mean it is on notice of an affirmative defense under 35 U.S.C.S. § 102(f). Only the defendants' discovery responses can properly provide the plaintiff with notice of the defendants' § 102(f) claim before the expiration of the discovery period.

*Civil Procedure > Pleading & Practice > Defenses, Demurrers, & Objections > Affirmative Defenses*
[HN12] The purpose of an affirmative defense is to hedge against the complete litigation of a full defense.

*Patent Law > Infringement Actions > Defenses > Patent Invalidity > Grounds*
*Patent Law > Originality > Joinder of Inventors*
[HN13] A 35 U.S.C.S. § 102(f) claim is not a run-of-the-mill defense. Misjoinder or nonjoinder of inventors must be proven by facts supported by clear and convincing evidence. Multiple inventors may be involved without equal rights to the patent. Inventorship is determined on a claim-by-claim basis, and involves a complex analysis of the contributions of each individual to the subject matter at issue. This is the type of complicated information that is best considered as early in the litigation as possible so as to clearly define the issues for trial.

*Civil Procedure > Pleading & Practice > Defenses, Demurrers, & Objections > Waiver & Preservation*
*Civil Procedure > Discovery > Methods > Interrogatories > General Overview*
*Civil Procedure > Discovery > Misconduct*
[HN14] The purpose of contention interrogatories is to narrow and define issues for trial beyond what may be ascertained from the parties' pleadings. The court will prevent a party from raising a claim or defense at trial that was not adequately described in a response to a contention interrogatory. Complete and accurate responses to discovery are imperative to the functioning of the modern trial process. The modern instruments of discovery are thus a principal means by which trials are rendered less a game of blind man's bluff and more a fair contest with the basic issues and facts disclosed to the fullest practicable extent. A failure to disclose may be grounds for automatic exclusion of the evidence under Fed. R. Civ. P. 37(c)(1). Four factors are considered in assessing the substantiality of any proffered justification for a failure to disclose, as well as the harmlessness of that failure.

Page 3

2005 U.S. Dist. LEXIS 26059, *

*Civil Procedure > Pleading & Practice > Defenses, Demurrers, & Objections > Affirmative Defenses*
*Civil Procedure > Discovery > Methods > Interrogatories > General Overview*
[HN15] An assumption that another party has raised an affirmative defense does not excuse a defendant's failure to sufficiently address the affirmative defense in its answer or responses to interrogatories.

*Civil Procedure > Pleading & Practice > Defenses, Demurrers, & Objections > Affirmative Defenses*
*Civil Procedure > Pleading & Practice > Defenses, Demurrers, & Objections > Waiver & Preservation*
[HN16] A party who fails to raise an affirmative defense in a timely fashion is deemed to have waived the defense. The United States Court of Appeals for the Third Circuit has held that a defendant does not waive an affirmative defense if he raised the issue at a pragmatically sufficient time, and the plaintiff was not prejudiced in its ability to respond.

*Patent Law > Infringement Actions > Defenses > Patent Invalidity > Notice*
*Patent Law > Originality > Joinder of Inventors*
[HN17] The issue of true inventorship is complex and is determined on a case-by-case basis. It involves comparing the contributions of each asserted co-inventor to each claim of the patent. The contributors must prove their contribution with corroborating evidence; that is, more than their own testimony. Because of the intricacy of a 35 U.S.C.S. § 102(f) claim, it demands adequate notice so that a plaintiff might properly counter the argument.

*Civil Procedure > Pleading & Practice > Defenses, Demurrers, & Objections > Affirmative Defenses*
[HN18] Affirmative defenses need to be asserted early in litigation to avoid surprise and undue prejudice. If there is good cause for not raising an affirmative defense in the answer, it must be raised as early as practicable thereafter.

*Civil Procedure > Pleading & Practice > Defenses, Demurrers, & Objections > Affirmative Defenses*
*Civil Procedure > Pleading & Practice > Defenses, Demurrers, & Objections > Waiver & Preservation*
*Patent Law > Infringement Actions > Defenses > Patent*

*Invalidity > Notice*
*Patent Law > Originality > Joinder of Inventors*
[HN19] Where a defendant has missed several opportunities throughout discovery to raise a 35 U.S.C.S. § 102(f) defense, to fully flesh out the basis behind the claim, and to give the plaintiff in a patent infringement suit ample notice and time to demonstrate why the affirmative defense should not succeed, the defendant waives its § 102(f) affirmative defense.

COUNSEL: [*1] James P. Flynn, Esp., EPSTEIN, BECKER & GREEN, P.C., Newark, New Jersey; Brian P. Murphy, Esq., David Leichtman, Esq., MORGAN LEWIS & BOCKIUS LLP, New York, New York, for Plaintiffs.

Steven Gerber, Esq., ADORNO & YOSS, LLP, Wayne, New Jersey; Robert B. Breisblatt, Esq., Julie A. Katz, Esq., WELSH & KATZ, LTD., Chicago, Illinois, for Defendants.

JUDGES: BASSLER, SENIOR DISTRICT JUDGE.

OPINION BY: WILLIAM G. BASSLER

OPINION:

**MEMORANDUM OPINION**

**BASSLER, SENIOR DISTRICT JUDGE:**

Plaintiffs Daiichi Pharmaceutical Co. Ltd., and Daiichi Pharmaceutical Corporation (collectively as "Daiichi" or "Plaintiffs") filed a motion *in limine* to preclude defendants Apotex, Inc. and Apotex Corp. (collectively as "Apotex" or "Defendants") from asserting an affirmative defense of failing to name the proper inventors of Daiichi's patent pursuant to 35 U.S.C. § 102(f).

For the reasons set forth below, Daiichi's motion is **granted.**

**I. BACKGROUND**

Daiichi brought suit against Apotex alleging patent infringement of all seven claims of Daiichi's U.S. Patent No. 5,401,741 ("the '741 patent"), entitled a "Topical Preparation for Treating Otopathy." Daiichi now [*2] argues that Apotex did not sufficiently put Daiichi on notice of the defense that it is not entitled to the '741

Page 4

2005 U.S. Dist. LEXIS 26059, *2

patent for failure to name the proper inventors pursuant to 35 U.S.C. § 102(f). [HN1] Section 102 states: "A person shall be entitled to a patent unless... (f) he did not himself invent the subject matter sought to be patented...."

Daiichi argues that section 102 provides an affirmative defense that. must be pled in a way that sufficiently gives a plaintiff notice of the defense, and by failing to do so Apotex waived such defense. Furthermore, Daiichi contends that allowing Apotex to present evidence to that end not only unduly prejudices Daiichi but also thwarts the purpose of contention interrogatories.

Apotex asserts that it raised the section 102(f) issue in its Amended Answer. Apotex also argues that Fed. R. Civ. P. 8(c) does not list 102(f) as an affirmative defense and, therefore, it need not be specifically pleaded. In addition, Apotex makes argues that Daiichi will not be prejudiced and was aware of the likelihood of the defense because of questioning during depositions. Moreover, Appotex argues Daiichi was [*3] in possession of documents that suggested the defense would be raised. n1

n1 The Court will not address Apotex's Fed. R. Civ. P. 15(b) argument because it does not apply. "Although Rule 15(b) does allow a court, under certain circumstances, to amend pleadings to conform to evidence even when the opposing party objected to that evidence, application of any portion of Rule 15(b) is appropriate only when an issue 'not raised by the pleadings' has, in fact, been presented." Koch v. Koch Indus., 203 F.3d 1202, 1218 (10th Cir. 2000); see also Deakyne v. Commissioners of Lewes, 416 F.2d 290 (3d Cir. 1969).

## II. DISCUSSION

### A. Affirmative Defenses Under Rule 8(c)

Rule 8(c) of the Federal Rules of Civil Procedure requires that [HN2] "In a pleading to a preceding pleading, a party shall set forth affirmatively... any [] matter constituting an avoidance or affirmative defense...." (Emphasis added.) [HN3] The Rule itself does not list every [*4] affirmative defense. The fact that

the defense under 35 U.S.C. § 102(f) is not provided for under Rule 8(c) does not mean that it falls outside the category of affirmative defenses; this is evident from the plain language of Rule 8(c). See e.g. Williams v. Ashland Engineering Co., Inc., 45 F.3d 588, 593 (1st Cir. 1995) (discussing preemption as an affirmative defense); Cornwall v. U.S. Constr. Mfg., Inc., 800 F.2d 250, 252 (Fed. Cir. 1986) (discussing invalidity as an affirmative defense); Freedman Seating Co. v. American Seating Co., 420 F.3d 1350, 1363 n.6 (Fed. Cir. 2005) (discussing enforceability as an affirmative defense); Ray v. Kertes, 285 F.3d 287, 291-92 (3d Cir. 2002) (discussing exhaustion as an affirmative defense); Kennan v. Dow Chemical Co., 717 F.Supp. 799, 808-09 (M.D.Fla. 1989) (discussing preemption as an affirmative defense).

The issue for the Court is whether section 102(f) falls within the category of a matter constituting [*5] avoidance or an affirmative defense. [HN4] "Generally speaking, the rule's reference to 'an avoidance or affirmative defense' encompasses two types of defensive allegations: those, that admit the allegations of the complaint but suggest some other reason why there is no right to recovery, and those that concern allegations outside of the plaintiff's prima facie case that the defendant therefore cannot raise by a simple denial in the answer." 5 CHARLES A. WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1271 (3d ed. 2004). The argument underlying section 102(f), that a plaintiff is not entitled to recover because he is not the true inventor, falls well within the category of affirmative defenses considered by other courts as well as the first type of defensive allegations listed by Wright and Miller.

### B. Pleading Affirmative Defenses

[HN5] "Parties are generally required to assert affirmative defenses early in litigation, so they may be ruled upon, prejudice may be avoided, and judicial resources may be conserved." Robinson v. Johnson, 313 F.3d 128, 134 (3d. Cir. 2002). The Rule technically requires that such a defense be pleaded in the answer. Id. at 135. [*6] The purpose behind Rule 8(c) is to put "plaintiff on notice well in advance of trial that defendant intends to present a defense in the nature of an avoidance." Marino v. Otis Engineering Corp., 839 F.2d

1404, 1408 (10th Cir. 1988) (internal citations omitted). "A defendant should not be permitted to 'lie behind a log' and ambush a plaintiff with an unexpected defense." Perez v. United States, 830 F.2d 54, 57 (5th Cir. 1987) (internal citations omitted).

[HN6] In order to assert an affirmative defense under Rule 8(c) the pleading party must at least put plaintiff on reasonable notice of that defense. While some courts have considered harmless a technical failure to comply with Rule 8(c), others have taken into account the stage of the proceeding in deciding whether fair notice was satisfied. See Venters v. City of Delphi, 123 F.3d 956, 968-69 (7th Cir. 1997) (holding that defendants' statute of limitations defense, submitted after an exhaustive discovery process and a trial scheduled a month away, deprived the plaintiff of fair notice and a reasonable opportunity to respond) (cited in Robinson, 313 F.3d at 136).

The Court [*7] must therefore determine whether Apotex put Daiichi on reasonable notice of its intent to argue section 102(f). Apotex argues that Daiichi was fully aware that the issue of the proper inventor was on the table: (1) section 102(f) was raised in its Answer, (2) the issue was explored throughout discovery and depositions, and (3) Daiichi's internal documents flagged the issue.

C. Whether Sufficient Notice Was Provided

While Apotex's Answer and Additional Defenses, at paragraph 20, [HN7] broadly lists 35 U.S.C. § 102 among other statutes as an Additional Defense, this is insufficient to apprise Daiichi that it is raising the inventorship defense. As the Court in Advanced Cardiovascular Systems, Inc. v. Medtronic, Inc. 41 U.S.P.Q.2d 1770, 1773 (N.D.Cal. 1996), noted, "since [35 U.S.C.] sections 101, 102, 103, and 112 provide numerous grounds for finding a patent invalid, defendant must provide a more specific statement of the basis for this defense in order to give [plaintiff] fair notice of the claims being asserted."

[HN8] The purpose of raising an affirmative defense early on in litigation is to put the plaintiff on reasonably fair notice of that [*8] defense. In light of the contention interrogatories and extensive discovery between the parties, broadly citing the statute does not provide sufficient notice. While the general pleading standards of Rules 8(b) and (e) should be "consulted" when considering an affirmative defense, it cannot be said that Apotex's perfunctory listing provides the reasonably fair notice necessary under Rule 8(c). WRIGHT & MILLER at § 1274; see also Cornwall v. U.S. Const. Mfg. Inc., 800 F.2d 250 (Fed. Cir. 1986); Shechter v. Comptroller of City of New York, 79 F.3d 265, 270 (2d Cir. 1996).

Apotex also claims that Daiichi was on notice of its section 102(f) claims because the issue was explored throughout discovery and depositions. Defendants, however, [HN9] cite no authority for the contention that a plaintiff may be sufficiently put on notice of an affirmative defense by the implications underlying discovery requests. This diverges from the purpose of providing notice of an affirmative defense and it makes no sense. In essence, Apotex argues Daiichi should be considered on reasonable notice of the section 102(f) claim based on Defendants' trial tactics. If this were true, [*9] it would undermine the purpose of early notification of affirmative defenses; a plaintiff would have to guess whether the affirmative defense will be raised, along with any other defenses, at trial based on the materials sought in discovery or the line of questions asked during depositions.

In Transclean Corp. v. Bridgewood Services, Inc., the court dealt with a similar issue and reached a similar result. Transclean Corp. v. Bridgewood Services, Inc., 77 F.Supp.2d 1045, 1062 (M.D.Minn. 1999) rev'd on other grounds, 290 F.3d 1364 (Fed. Cir. 2002). The defendant argued that plaintiffs were put on notice of its contentions by way of discovery requests. [HN10] The court held that following this line of thinking would "condone 'hide the ball' discovery practices, and subvert the purposes of Rule 26(e), by permitting contention discovery to be an elusive guessing exercise." Id.

Daiichi was not implicitly put on notice by its discovery requests and its questions during depositions.

The same can be said for Apotex's argument that Daiichi's own documents put Daiichi on notice of the issue of inventorship. [HN11] The fact that Daiichi is in possession of documents [*10] relating to inventorship does not mean it is on notice of an affirmative defense under section 102(f). How would the Plaintiffs know which of its documents or evidence the Defendants plan to introduce to prove the section 102(f) defense? Only Apotex's discovery responses could properly provide Daiichi with notice of their 102(f) claim before the expiration of the discovery period. See Transclean Corp.,

77 F.Supp.2d at 1062. [HN12] The purpose of an affirmative defense is to hedge against the complete litigation of a full defense. The Court rejects Apotex's arguments that Daiichi was on reasonable notice to the section 102(f) defense based on discovery, depositions, and Daiichi's own documents.

This conclusion is further supported by Apotex's failure to raise the defense of 102(f) in its answers to Daiichi's contention interrogatories. In their third set of interrogatories to Defendants, interrogatory number 32, Plaintiffs make the following request:

> Explain the factual and legal bases for any and all allegations by Apotext that any of claims 1-7 of Daiichi's patent-in-suit is invalid or otherwise unenforceable due to alleged patent misuse and identify all knowledgeable [*11] individuals and the documents and deposition testimony reviewed, considered and/or relied on in support thereof.

In its response, Apotex provides no specific justifications for its belief that Daiichi is not entitled to the '741 patent based on section 102(f). Rather, Apotex blandly states that it "adopts and incorporates by reference all prior art reference and factual and legal bases... pursuant to 35 U.S.C. § 102...." The Court emphasizes the fact that [HN13] a section 102(f) claim is not a run-of-the-mill defense. "Misjoinder or nonjoinder of inventors must be proven by facts supported by clear and convincing evidence." Trovan, Ltd. v. Sokymat SA, Irori, 299 F.3d 1292, 1301 (Fed. Cir. 2002). Multiple inventors may be involved without equal rights to the patent. Id. at 1302. Inventorship is determined on a claim-by-claim basis, and involves a complex analysis of the contributions of each individual to the subject matter at issue. Id. This is the type of complicated information that is best considered as early in the litigation as possible so as to clearly define the issues for trial.

[HN14] The purpose of contention interrogatories [*12] is to narrow and define issues for trial beyond what may be ascertained from the parties' pleadings. Transclean Corp., 77 F.Supp.2d at 1062; Thorn EMI N. Am. v. Intel Corp., 936 F.Supp. 1186, 1191 (D.Del. 1996) ("The court will prevent a party from raising a claim or defense at trial that was not adequately described in a response to a contention interrogatory."); Sperling v.

Hoffman-La Roche, Inc., 924 F.Supp. 1396, 1411-12 (D.N.J. 1996). "It is well-recognized that complete and accurate responses to discovery are imperative to the functioning of the modern trial process... The 'modern instruments of discovery' are thus a principal means by which trials are rendered 'less a game of blindman's bluff and more a fair contest with the basic issues and facts disclosed to the fullest practicable extent.'" Averbach v. Rival Mfg. Co., 879 F.2d 1196, 1201 (3d. Cir. 1989) citing United States v. Procter & Gamble Co., 356 U.S. 677, 682, 78 S. Ct. 983, 2 L. Ed. 2d 1077 (1958). A failure to disclose may be grounds for automatic exclusion of the evidence under Fed. R. Civ. P. 37(c)(1). See Transclean Corp., 77 F.Supp.2d at 1063 [*13] (considering four factors in "assessing the substantiality of any proffered justification for the failure to disclose, as well as the harmlessness of that failure.")

Apotex does not dispute the fact that an affirmative defense as to the proper inventor was not fully laid out in its responses to Daiichi's interrogatories, rather it argues that it "assumed that the inventorship issue had been raised by Bausch & Lomb...." Apotex's Opp. Br. at 16 (emphasis added). Such [HN15] an assumption does not excuse Apotex's failure to sufficiently address the affirmative defense in its answer or responses to interrogatories.

[HN16] "A party who fails to raise an affirmative defense in a timely fashion is deemed to have waived the defense." McCoy v. Bd. of Trs. of the Laborers' Int'l Union Local #222 Pension Plan, 188 F.Supp.2d 461, 468 (D.N.J. 2002) aff'd, 60 Fed. Appx. 396, 2003 U.S. App. LEXIS 5756 (3d Cir. 2003); see also WRIGHT & MILLER at § 1278 ("It is a frequently stated proposition of virtually universal acceptance by the federal courts that a failure to plead an affirmative defense as required by Federal Rule 8(c) results in the waiver of that defense and its exclusion from [*14] the case..."). The Third Circuit has held that a defendant does not waive an affirmative defense if he raised the issue at a pragmatically sufficient time, and the plaintiff was not prejudiced in its ability to respond. Eddy v. V.I. Water & Power Auth., 256 F.3d 204, 209 (3d. Cir. 2001). The Court, however, finds that the issue of proper inventorship was not raised at "a pragmatically sufficient time" and Daiichi will be prejudiced by Apotex's eleventh-hour defense.

Daiichi served three separate interrogatories on Apotex. Apotex did not respond with a clear statement on

the grounds for its section 102(f) defense. Only after the close of extensive discovery and at the hearing to set the trial date did Apotex place Plaintiffs on notice. See 07-21-2005 Transcript of Hearing Before Magistrate Judge Arlea at 50-51. The Court, therefore, finds this affirmative defense has been untimely raised and is deemed waived.

Daiichi is now without opportunity to take discovery on the section 102(f) defense or retain an expert on the issue. [HN17] The issue of true inventorship is complex and is determined on a case-by-case basis. Trovan, 299 F.3d at 1302. It involves [*15] comparing the contributions of each asserted co-inventor to each claim of the patent. Id. The contributors must prove their contribution with corroborating evidence; that is, more than their own testimony. Id. Because of the intricacy of a 102(f) claim it demands adequate notice so that a plaintiff might properly counter the argument.

The Court agrees with Daiichi's argument that Apotex has frustrated the purpose of contention interrogatories. [HN18] Affirmative defenses need to be asserted early in litigation to avoid this type of surprise and undue prejudice. See Long v. Wilson, 393 F.3d 390, 397 (3d Cir. 2004). If there is good cause for not raising an affirmative defense in the answer, "it must be raised as early as practicable thereafter." Id. at 398 (internal citations omitted). The Court finds that [HN19] Apotex missed several opportunities throughout discovery to raise the section 102(f) defense, to fully flesh out the basis behind the claim, and to give Daiichi ample notice and time to demonstrate why the affirmative defense should not succeed. The Court, therefore, holds Apotex has waived its section 102(f) affirmative defense.

## III. CONCLUSION [*16]

For the foregoing reasons, Daiichi's motion *in limine* is **granted.** Apotex is precluded from asserting an affirmative defense of alleged improper inventorship pursuant to 35 U.S.C. § 102(f).

An appropriate Order follows.

/s/ William G. Bassler

William G. Bassler, U.S.S.D.J.

Dated: November 1, 2005

**ORDER**  This matter having come before the Court on Plaintiffs' motion *in limine* to preclude Defendants from asserting an affirmative defense of alleged improper inventorship pursuant to 35 U.S.C. § 102(f); and

The Court having considered the submissions of counsel and having held oral argument; and

For the reasons set forth in the Court's Memorandum Opinion issued this day; and

For good cause shown;

IT IS on this 1st day of November, 2005, hereby ORDERED that Plaintiffs' motion to preclude Defendants from asserting an affirmative defense of alleged improper inventorship is **granted.**

/s/ William G. Bassler

WILLIAM G. BASSLER U.S.S.D.J.

# Exhibit Q

LEXSEE

ECKHARD U. ALT, MD Plaintiff vs. MEDTRONIC, INC., a Minnesota Corp., Defendant

CASE NO. 2:04-CV-370

UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF TEXAS, MARSHALL DIVISION

2006 U.S. Dist. LEXIS 4435

February 1, 2006, Decided

**CORE TERMS:** patent, deadline, good cause, infringement, invalidity, accelerometer, discovery, sensor, continuance, scheduling, amend, invention, potential prejudice, defibrillator, requesting, briefing, modification, interview, motion to amend, accelerometer-based, diligent, lawsuit, timely filed, in-suit, modify, cure, press release, Patent Rule, technology, patents-in-suit

**COUNSEL:** [*1] For MD Eckhard U Alt, MD, Plaintiff: David J Healey, Ana Elena Kadala, Weil Gotshal & Manges -- Houston, Houston, TX; Franklin Jones, Jr, Jones & Jones -- Marshall Marshall, TX; Otis W Carroll, Jr, Ireland Carroll & Kelley, PC, Tyler, TX; Robert Christopher Bunt, Parker & Bunt, P.C., Tyler, TX; Sidney Calvin Capshaw, III, Brown McCarroll -- Longview, Longview, TX; Thomas John Ward, Jr, Law Office of T John Ward Jr PC, Longview, TX.

For Medtronic Inc, a Minnesota Corporation, Defendant: Samuel Franklin Baxter, Attorney at Law, Marshall, TX.

For MD Eckhard U Alt, MD, Counter Defendant: David J Healey, Weil Gotshal & Manges -- Houston, Houston, TX.

**JUDGES:** LEONARD DAVIS, Judge.

**OPINION BY:** LEONARD DAVIS

**OPINION:**

**MEMORANDUM OPINION AND ORDER**

Defendant, Medtronic, Inc. ("Medtronic"), has filed a Motion for Leave to Amend its Preliminary Invalidity Contentions (Docket No. 94). For the reasons set forth below, the Court **GRANTS** Medtronic's motion.

**BACKGROUND**

Dr. Eckhard Alt ("Alt") filed suit against Medtronic on October 15, 2004 alleging infringement of four patents, U.S. Patent Nos. 5,014,700 ("the 4,700 patent"), 5,031,615 ("the 615 patent"), 6,076,014 ("the 014 patent"), [*2] and 6,249,700 ("the 9,700 patent"). Pursuant to the Court's Docket Control Order, Alt timely filed his Preliminary Infringement Contentions on February 28, 2005. Similarly, Medtronic timely filed its Preliminary Invalidity Contentions on March 30, 2005 identifying roughly thirty prior art references. On September 23, 2005, Medtronic's counsel sent a letter to Alt's counsel notifying Alt of six additional prior art references discovered by Medtronic relating to the 014 and 9,700 patents:

. U.S. Patent Number 5,193,550: "Method and apparatus for discriminating among normal and pathological tachyarrhythmias." Filed: November 30, 1990: Issued: March 16, 1993;

. Yee, R., et al.; "Initial Clinical Experience with the Pacemaker-Cardioverter-Defibrillator," THE CANADIAN JOURNAL OF CARDIOLOGY, Vol. 6, No. 4, May 1990;

2006 U.S. Dist. LEXIS 4435, *2

. Bonnet, C.A., et al., "Long-Term Efficacy of Antitachycardia Pacemaker and Implantable Defibrillator Combination," PACE, Vol. 14, No. 5, Pt. I, May 1991;

. Saksena, S., "The Implantable Cardioverter-Defibrillator: Future Directions," Chapter 48 in IMPLANTABLE CARDIOVERTER-DEFIBRILLATORS: A COMPREHENSIVE TEXTBOOK, (N.A. Mark Estes III, ed., 1994);

. [*3] Saksena, S., "New Generations of Implantable Pacemaker Defibrillators for Ventricular and Atrial Tachyarrhythmias," ARCHIVES DES MALADIES DU COEUR ET DES VAISSEAUX, Vol. 89, February 1996; and

. June 30, 1997, Business Wire Press Release, "Guidant announces first implants of VENTAK AV II DR defibrillation system in Europe."

Medtronic's letter stated: "In light of the upcoming deadline for the parties to serve their P.R. 3-6 final contentions, we believe there is no need to amend and/or supplement Medtronic's P.R. 3-3 Preliminary Infringement Contentions with the foregoing information. If you disagree with this approach, please let us know in writing within five (5) days hereof." Additionally, on October 12, 2005, Medtronic's counsel sent Alt's counsel a letter supplementing the September 23, 2005 letter and identifying two additional prior art references:

. U.S. Patent Number 5,792,183: "Combination Pacemaker and Defibrillator Having Dynamic Ventricular Refractory Period." Filed January 27, 1997; Issued: August 11, 1998; and

. U.S. Patent Number 6,128,529: "Device and Method Providing Pacing and Anti-Tachyarrhythmia Therapies." Filed January 29, 1997; Issued: [*4] October 3,

2000.

The October 12th letter also indicated that Medtronic did not intend on providing the additional prior art before serving its Final Invalidity Contentions. Alt did not respond in writing to either of Medtronic's letters. On October 21, 2005, Alt's counsel informed Medtronic's counsel that it would object to Medtronic adding the new prior art references in its Final Invalidity Contentions and that Alt would oppose a motion for leave to amend Medtronic's Preliminary Invalidity Contentions. Medtronic filed its motion on November 11, 2005 requesting leave to amend its Preliminary Invalidity Contentions pursuant to Patent Rule 3-7 to add the eight additional prior art references mentioned above. Alt claims that Medtronic has not shown the requisite good cause necessary to amend its Preliminary Invalidity Contentions.

### APPLICABLE LAW

Federal Rule of Civil Procedure 16(b) requires a showing of good cause to modify dates set forth in the Court's scheduling order. Fed. R. Civ. P. 16(b) (providing in part, "a schedule [scheduling order] shall not be modified except upon a showing [*5] of good cause and by leave of the district court . . . ."). Patent Rules are considered part of the Court's scheduling order; therefore, a party seeking relief must obtain "the Court's leave on a good cause showing to modify the Patent Rule's deadlines." *STMicroelectronics, Inc. v. Motorola, Inc.,* 307 F. Supp. 2d 845, 849 (E.D. Tex. 2004). "Patent Rule 3-7 incorporates Rule 16(b)'s good cause standard by stating amendment or modification of the Preliminary or Final Infringement Contentions or the Preliminary or Final Invalidity Contentions . . . may be made only by order of the Court, which shall be entered only upon a showing of good cause.'" *Id.* (quoting P.R. 3-7). "The good cause standard requires the party seeking relief to show that the deadlines cannot reasonably be met despite the diligence of the party needing the extension.'" *Id.* at 850 (quoting *S & W Enters., L.L.C. v. Southtrust Bank of Ala., NA,* 315 F.3d 533, 535 (5th Cir. 2003)). A trial court has broad discretion in allowing scheduling order modifications. *Id.* The Court should consider four factors when determining whether to allow a scheduling order modification: [*6] (1) the explanation for the failure to meet the deadline; (2) the importance of the thing that would be excluded; (3) potential prejudice in allowing the thing that would be excluded; and (4) the availability of a

continuance to cure such prejudice. *Id.* (citing *S & W Enter., L.L.C.*, 315 F.3d at 535-36).

## ANALYSIS

Medtronic's Explanation for Its Failure to Meet the Deadline

Medtronic argues that its inability to identify the additional prior art references before filing its Preliminary Invalidity Contentions was not unreasonable. Medtronic claims that it only had five months from the date the suit was filed and one month from the date Alt filed its Preliminary Infringement Contentions to identify prior art to include in its Preliminary Invalidity Contentions. Medtronic argues that Alt's infringement claims were very broad and unclear during the first four months of the lawsuit and that it was not until Medtronic received Alt's Amended Preliminary Infringement Contentions, *Markman* briefing, and Technology Tutorials in June through August of 2005 that Medtronic could confidently focus its prior art searches to only those devices using accelerometer-based [*7] activity sensors. Alt argues that the accelerometer has clearly been at issue from the beginning of the case in that claim two of the 4,700 patent indicates that the detecting means includes an "accelerometer." Alt also contends that accelerometer-based products have clearly been at issue throughout Alt's history of trying "to get paid" for his inventions. Medtronic responds that Alt's interpretation of accelerometer was much broader early in the case and included devices that measured vibrations. Medtronic's piezoelectric crystal activity sensor measures vibrations and is found in many of its devices. Consequently, more of Medtronic's pacemaker and defibrillator products were at issue in the case. Medtronic claims that it was not until June 12, 2005 that Alt eliminated Medtronic's devices with piezoelectric crystal activity sensors from the accused products in the case. Furthermore, Medtronic argues that Alt initially identified the corresponding structure of "means for detecting movements" as "activity sensor 3 or its equivalent" before narrowing its focus to "accelerometer" in its Opening *Markman* Brief filed on July 29, 2005.

Furthermore, Medtronic claims it did not learn [*8] that Alt intended to rely on a conception date that pre-dated the effective filing dates for all of the patents-in-suit until April 6, 2005. Medtronic contends that this change required it to expand its prior art searches

by nearly four years in the case of the 014 patent, whose filing date is August 1, 1997 and claimed invention date is October 7, 1993. Medtronic claims learning of the 1993 conception date required it to broaden its research to find prior art references that predated the 1993 conception date as opposed to a 1997 conception date. Alt claims that even if Medtronic was unaware of the 1993 conception date during its early searching, it had no effect on the range of years Medtronic searched. Alt also argues that Medtronic was not disadvantaged by not knowing Alt's alleged conception date in searching for prior art because "the earlier, the better" as far as prior art is concerned. Medtronic argues that prior art closely related in time to the conception date is usually the most similar and, therefore, the most relevant as it applies to invalidity.

Medtronic claims to have diligently collected and read books and articles on cardiac pacing and arrhythmia treatment and [*9] detection before turning certain articles over to its invalidity experts in August and September of 2005. The four articles referenced in the September 23, 2005 letter above are the product of this process. Alt argues that Medtronic was not diligent in researching articles and had previous insight into Alt's infringement claims. Alt basis this conclusion on the fact that Medtronic admits that its own in-house counsel investigated the asserted patent claims in 1999 and 2003 and in some cases as far back as 1990. Medtronic points out that the in-house analysis Alt refers to related to infringement and did not concentrate on invalidity issues related to Alt's patents. Medtronic claims it did not have a reason to research prior art until the present suit was filed.

Medtronic also claims it continued to interview current and former Medtronic employees with possible knowledge of facts relevant to the lawsuit after filing its Preliminary Invalidity Contentions. In September 2005, while interviewing Ed Duffin, a Medtronic Employee, Medtronic learned that Cardiac Pacemakers, Inc. ("CPI") had released a rate responsive implantable cardioverter defibrillator ("ICD") called the Ventak AV II DR. [*10] Upon further research, Medtronic's counsel discovered a press release indicating that the Ventak device used an accelerometer as its activity sensor. Consequently, Medtronic discovered two Ventak-related patents, U.S. Patent Nos. 5,792,183 and 6,128,529. Medtronic then concluded that the Ventak patents and device were potential prior art to both the 014 and 9,700

patents-in-suit. Additionally, Medtronic's interviews with Mr. Duffin led it to conclude that U.S. Patent No. 5,193,550 ("the 550 patent"), a Medtronic patent, was also potential prior art to 014 and 9,700 patents-in-suit.

Alt claims that Medtronic's was not diligent in asking for information from its own employees once the suit was filed, evidenced by the fact that Medtronic waited until September to interview "Medtronic technical people." Alt claims that the Ventak product should not have been a "new discovery" to Medtronic because the product was made by one of Medtronic's direct competitors and was first used in Europe in 1997. Medtronic responds that its delay in discovering the Ventak product and patents was due to Alt's failure to identify the Ventak products in answers to interrogatories requesting information [*11] on all licensees using Alt's patents and prior infringement assertions relating to the patents-in-suit.

Medtronic has shown that it was diligent in its attempts to discover relevant prior art before and after the filing of its Preliminary Invalidity Contentions. Alt apparently had a broader definition of activity sensor at the beginning of the case, which directed Medtronic's research to a larger spectrum of devices than are presently at issue in the case. Medtronic's discovery of more relevant prior art after narrowing a key issue in this complex and document intensive case is not surprising. Alt's argument that Medtronic's prior art search related to the 014 patent was not effected by its delayed knowledge of the 1993 conception date is not persuasive. Upon learning of Alt's 1993 conception date, Medtronic needed to find prior art predating the 1993 conception date. The closer in time prior art is to the conception date the more relevant the prior art is likely to be in terms of invalidity. In complex litigation such as the present case, each party relies heavily on the discovery responses of the opposing party to help guide future research. A party that fails to disclose information [*12] in a discovery response has little room to complain of the requesting party's timeliness when the requesting party later discovers the same information through the requesting party's own research. Thus, it appears Alt hindered Medtronic's ability to meet the March 30 deadline. Furthermore, the fact that Ventak was made by a competitor of Medtronic does not ensure that Medtronic actually had knowledge of the product prior to this lawsuit. In the context of the circumstances described above, it is not unreasonable that Medtronic could not meet the March 30, 2005 Preliminary Invalidity Contentions deadline with regards

to the additional prior art references.

The Importance of the Additional Prior Art References

Medtronic argues that the Ventak patents and press release are particularly important to this case in that they show a prior invention of an ICD using an accelerometer by someone other than the alleged inventor, as well as prior knowledge of such a product within the United States. Both of these determinations could potentially have a strong impact on Alt's claims related to accelerometer-based devices. Medtronic claims that the 550 patent is important in that it evidences [*13] Medtronic's independent and earlier invention of the technology that Alt claims in the 014 and 9,700 patents. Such evidence supports Medtronic's claim that it was not knowingly and willfully infringing by copying Alt's technology. Finally, Medtronic claims that the four articles demonstrate that rate-responsive capabilities in an ICD were known to the medical world before Alt's alleged invention. Medtronic contends that these prior art references are very important to its ability to mount a defense to Alt's infringement claims and that Medtronic would suffer significant prejudice in the event it was not allowed to present these references. The Court is persuaded by Medtronic's arguments.

The Potential Prejudice to Alt in Allowing the Additional Prior Art References

Medtronic claims that Alt would not suffer any potential prejudice by the addition of the eight prior art references. Medtronic argues that Alt had notice of Medtronic's intentions to claim invalidity of its patents and of the additional prior art references since September 23 and October 12, 2005. Alt argues that he will be prejudiced by not being able to account for these references in his claim construction [*14] briefing and *Markman* arguments. Alt relies on language from the Court's Order of October 28, 2005 denying Alt's motion to amend its infringement contentions that states, "Considering that the claim construction briefing and the *Markman* hearing have already concluded, a continuance is not likely to remedy any potential prejudice that [the party opposing the motion to amend] might suffer." The present situation is distinguishable from that addressed by the Court in Alt's motion to amend its Preliminary Infringement Contentions. In Alt's motion, he requested leave to amend his Preliminary Infringement Contentions to add a new claim. The addition of prior art references

post *Markman* do not have the same implications upon *Markman* briefing and arguments as the addition of a patent claim. Alt's position requires a *per se* rule that invalidity contentions cannot be amended after *Markman*. The Court is unwilling to adopt such a rule. Furthermore, Alt does not identify any particular arguments or additional claims that he would have asserted in response to the additional prior art references.

Alt also claims that he will be prejudiced because Medtronic has not yet disclosed [*15] its Rule 3-3 analysis of the prior art references and the initial expert report deadline was December 30, 2005 with a discovery deadline of February 10, 2006. Expert witness reports are now due on January 31, 2006 and the discovery deadline is now February 28, 2006. There is a potential that Alt could suffer prejudice in regards to these dates at this point in time. However, the fact that Alt has been aware of Medtronic's intent to add the additional prior art references since at least October 12 diminishes the likelihood that he would suffer prejudice. Alt had the opportunity to inform Medtronic that he objected to the addition of the prior art references in response to the letters sent by Medtronic in September and October of 2005. Alt did not take this opportunity. Alt chose to lay behind the log, and the Court does not consider Alt blameless for any prejudice he might suffer from the addition of the references. Additionally, any prejudice that Alt might suffer could be cured by a continuance, as discussed below.

Availability of a Continuance to Cure Such Prejudice

The Court is not convinced that Alt will suffer prejudice as a result of Medtronic's amending its Preliminary [*16] Invalidity Contentions. However, in the event that Alt does suffer any prejudice, it would likely arise in connection with the discovery deadline or Alt's ability to prepare expert witness reports. If the Court finds that Alt suffers such prejudice, it can easily be cured with an appropriate continuance of these deadlines.

**CONCLUSION**

Medtronic has met the good cause standard required to amend its Preliminary Invalidity Contentions to add the eight additional prior art references listed above. Accordingly, the Court **GRANTS** Medtronic's Motion for Leave to Amend its Preliminary Invalidity Contentions.

February 1, 2006

LEONARD DAVIS