# Exhibit A

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

BRIDGESTONE SPORTS CO., LTD.,
and BRIDGESTONE GOLF, INC.,

                Plaintiffs,

    v.

ACUSHNET COMPANY,

                Defendant.

C. A. No.  05-132 (JJF)

## BRIDGESTONE'S FIRST SET OF INTERROGATORIES
## (INTERROGATORY NOS. 1-24)

Pursuant to Fed. R. Civ. P. 33, Plaintiffs Bridgestone Sports Co. Ltd. and Bridgestone Golf, Inc., by their undersigned attorneys, propound these Interrogatories, to which Defendant Acushnet Company shall respond separately and fully, in writing and under oath, within the time prescribed by the Federal Rules of Civil Procedure, in accordance with the Definitions and Instructions set forth hereinafter.

### DEFINITIONS

Notwithstanding any definition set forth below, each word, term, or phrase used in this Request is intended to have the broadest meaning permitted under the Federal Rules of Civil Procedure.  As used in this set of interrogatories, the following terms are to be interpreted in accordance with these definitions:

1)     The term "Bridgestone," "Plaintiff," and/or "Plaintiffs" means Bridgestone Sports Company, Ltd. and/or Bridgestone Golf, Inc., the plaintiffs in this action, and all predecessors, successors, subsidiaries, divisions, parents and/or affiliates thereof, past or present, and all past

## INTERROGATORIES

1.      Identify by model, type, version or similar designation each and every Acushnet product that Acushnet has made, used, sold and/or offered for sale in, exported out of, or imported into, the United States since March 7, 1998 to the present.

2.      Separately, for each product, the identification of which is requested by Interrogatory No. 1, state the date each such product was first made, used, sold, and/or offered for sale in, exported out of, or imported into, the United States.

3.      Separately, for each product, the identification of which is requested by Interrogatory No. 1, state the names and addresses of the individuals (at least three) most knowledgeable about each of the conception, design, development, testing, manufacturing, and selling thereof.

4.      State each fact on which Acushnet bases its Third Defense (Invalidity under 35 U.S.C. § 101, 102, 103 and 112) set forth in the Answer, and with respect to each such fact, identify each person with knowledge of that fact and each document concerning that fact.

5.      Separately, for each claim of the Bridgestone patents-in-suit that Acushnet contends is invalid, identify all Prior Art and/or Prior Art Golf Balls that Acushnet contends affects or relates to the validity of the Bridgestone patents-in-suit.

6.      Separately, for each of the Asserted Claims of the Bridgestone patents-in-suit, state each fact that supports, or concerns Acushnet's denial that the Accused Acushnet products infringe that claim, including an identification of every element of each claim which Acushnet contends is not found in the Acushnet products, and for each such element, describe in detail Acushnet's contention as to the lack of an equivalent for such element.

9

20.    State whether any of the Acushnet patents-in-suit have been licensed, and if so, state the name of the licensee(s), the date of the license(s), the parties to the license(s), and the terms of the license(s), including but not limited to, the royalty rate.

21.    Describe the damage theories on which Acushnet is seeking recovery for alleged patent infringement, state all facts supporting that claim for damages, including the period for which Acushnet seeks such recovery, and in the case of a reasonable royalty, the royalty base and rate or, in the case of lost profits, the specific lost sales and the relevant accounting data to ascertain all costs and the profit margins by product.

22.    For each of the Acushnet patents-in-suit, identify all Acushnet products which have practiced or practice any of the claims.

23.    For each product, the identification of which his requested by Interrogatory No. 24, state whether Acushnet, or its licensees, have marked that product with the number of any patent pursuant to 35 U.S.C. § 287, identify the patent numbers with which each product has been marked, and provide the dates during which the product was marked.

24.    Provide the names and addresses of the persons most knowledgeable about the testing of and analysis of each of the Accused Bridgestone products.

MORRIS, NICHOLS, ARSHT & TUNNELL

Jack B. Blumenfeld (#1014)
Maryellen Noreika (#3208)
Leslie A. Polizoti (#4299)
1201 N. Market Street
P.O. Box 1347
Wilmington, DE 19801
(302) 658-9200
*Attorneys for Bridgestone Sports Co., Ltd.
and Bridgestone Golf, Inc.*

12

OF COUNSEL:

Robert M. Masters
John T. Callahan
Raja Saliba
SUGHRUE MION, PLLC
2100 Pennsylvania Avenue, N.W.
Washington, D.C.  20037
(202) 293-7060

June 7, 2005

### CERTIFICATE OF SERVICE

I, Jack B. Blumenfeld, hereby certify that copies of the foregoing were caused to be served this 7th day of June, 2005 upon the following in the manner indicated:

### BY HAND

Richard L. Horwitz
Potter Anderson & Corroon LLP
1313 N. Market Street
Wilmington, DE  19801

### BY FEDERAL EXPRESS

Alan M. Grimaldi
Howrey LLP
1299 Pennsylvania Avenue, N.W.
Washington, DC  20004

Jack B. Blumenfeld

14

# Exhibit B

# HOWREY LLP

1299 Pennsylvania Avenue, NW
Washington, DC 20004.2402
www.howrey.com

Alan M. Grimaldi
Partner
202.383.6989
202.383.6610
grimaldia@howrey.com

File 00634.0002

August 11, 2006

BY FACSIMILE

Brandon M. White, Esq.
Paul, Hastings, Janofsky & Walker LLP
875 15th Street, N.W.
Washington, D.C. 20005

> Re:  *Bridgestone Sports Co. v. Acushnet Co.,*
> C.A. No. 05-132 (JJF) (D. Del.)

Dear Brandon:

In accordance with the Court's Order requiring Acushnet to provide Bridgestone with "any invalidity defense with respect to the selected claims and the references relied upon," by todays date (Order, Aug. 3, 2006), Acushnet hereby incorporates all the claim charts and supporting documents that Acushnet served on you in response to Bridgestone's Interrogatory No. 5. These documents provide Acushnet's positions on invalidity of the remaining claims of the patents-in-suit.

While the Court did not require that Acushnet reduce or modify its invalidity contentions, in the spirit of cooperation, we further identify the following references as being withdrawn for the purposes of Acushnet's invalidity contentions. Acushnet, however, reserves the right to use any of the withdrawn references to provide evidence of the knowledge held by those of ordinary skill in the art at a particular time, or as rebuttal evidence to any statements made by any expert relied upon by Bridgestone.

- **The '652 Patent**

  - United States Patent No. 2,467,789

- **The '852 Patent**

  - United States Patent No. 6,503,156

  - United States Patent No. 6,506,130

  - United States Patent No. 6,595,873

  - United States Patent No. 6,213,894

AMSTERDAM  BRUSSELS  CHICAGO  EAST PALO ALTO  HOUSTON  IRVINE  LONDON
LOS ANGELES  NORTHERN VIRGINIA  PARIS  SALT LAKE CITY  SAN FRANCISCO  TAIPEI  WASHINGTON, DC

DM_US\8376134.v1

# HOWREY LLP

Brandon M. White
August 11, 2006
Page 2

- **The '817 Patent**

    - United States Patent No. 5,586,950

    - Great Britain Publication No. 2 276 093

    - United States Patent No. 5,098,105

- **The '834 Patent**

    - United States Patent No. 5,098,105

    - Great Britain Publication No. 2 264 302

    - United States Patent No. 4,674,751

    - United States Patent No. 4,858,924

    - Japanese Kokai Publication No. 02-228978

- **The '707 Patent**

    - United States Patent No. 5,730,663

    - United States Patent No. 5,002,281

    - United States Patent No. 5,830,087

    - United States Patent No. 5,743,817

    - United States Patent No. 5,024,444

    - United States Patent No. 4,840,381

- **The '961 Patent**

    - United States Patent No. 6,520,871

    - United States Patent No. 6,325,730

    - United States Patent No. 6,739,985

    - United States Patent Application Publication No. 2002/0193182

    - United States Patent No. 6,315,684

    - United States Patent No. 6,503,156

DM_US\8376134.v1

**HOWREY**LLP

Brandon M. White
August 11, 2006
Page 3

- United States Patent No. 6,506,130

- United States Patent No. 6,595,873

- United States Patent No. 6,213,894

- United States Patent No. 5,586,950

- Great Britain Publication No. 2 278 609

- United States Patent No. 6,394,915

- United States Patent No. 6,413,172

- United States Patent No. 6,379,269

- United States Patent No. 6,432,000

- United States Patent No. 6,224,498

- United States Patent No. 6,667,001

- Australia Publication 703884

- Japanese Patent No. 2669051

- Japanese Patent No. 2778229

- United States Patent No. 5,697,856

- **The '791 Patent**

  - United States Patent No. 6,379,269

  - United States Patent No. 6,435,983

  - United States Patent No. 6,409,614

  - United States Patent No. 6,045,460

  - United States Patent No. 5,776,012

  - United States Patent No. 5,730,663

DM_US\8376134.v1

**HOWREY** LLP

Brandon M. White
August 11, 2006
Page 4

We are available to discuss ways to streamline the remainder of this litigation.

Very truly yours,

Alan M. Grimaldi

# EXHIBIT C

## FULLY REDACTED

# EXHIBIT D

## FULLY REDACTED

# EXHIBIT E

## FULLY REDACTED

# Exhibit F

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

FILED

NOV 2 9 1993

TIME _____
CLERK, U.S. DISTRICT COURT
DISTRICT OF DELAWARE

THE LIPOSOME COMPANY, INC.,    )
                               )
            Plaintiff,         )
                               )
    v.                         )    Civil Action No. 92-332-RRM
                               )
VESTAR, INC.,                  )
                               )
            Defendant.         )

## ORDER RESOLVING VESTAR'S MOTIONS FOR RECONSIDERATION

Vestar has moved for reconsideration of two decisions made by the Court during the November 12, 1993 Pretrial Conference. First, it has moved for reconsideration of the Court's decision to preclude it from calling Thomas D. Kiley as an expert witness. Second, it has moved for reconsideration of the Court's decision that plaintiff could assert the doctrine of equivalents as a basis for infringement. The Court having reviewed the additional papers submitted by the parties on these motions,

IT IS ORDERED AS FOLLOWS:

1. Vestar's Motion for Reconsideration as to Plaintiff's Motion In Limine to Preclude Defendant's Rebuttal Expert from Testifying (Docket Item 131)   Vestar's Motion for reconsideration of the Court's decision to preclude it from calling Thomas D. Kiley to testify as an expert is denied.   Vestar failed to identify Mr. Kiley as an expert within the time period provided by the Court in the Scheduling Order in this matter. The deadlines in that Order are consistent with the Court's interest in setting the time for completion of discovery

and ensuring compliance with appropriate requested discovery in a timely fashion.  See 28

U.S.C. § 473(a)(2)(C).

2. Vestar's Motion to Exclude from this Case Plaintiff's Claim of Infringement Under the Doctrine of Equivalents (Docket Item 130)  Vestar's Motion to preclude Liposome from relying on the doctrine of equivalents is granted.  In its Motion, Vestar has shown that during the period for discovery it served an interrogatory on Liposome asking it to state whether it alleged claims were infringed under the doctrine of equivalents.  In responding, Liposome did not report that it intended to allege infringement under the doctrine of equivalents.  Liposome did not disclose it intended to rely on the doctrine of equivalents until November 7, 1993, after the date for completion of discovery.  As Liposome failed to identify this contention in response to Vestar's discovery request, the Court will preclude it from relying on it at trial.

                                     _____
                                     United States District Judge

Dated:  November 24, 1993

Exhibit G

IN THE UNITED STATED DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

FILED
CLERK U.S. DISTRICT COURT
DISTRICT OF DELAWARE

2004 APR -5  AM 9: 25

PHILIPS ELECTRONICS NORTH )
AMERICA CORPORATION and )
U.S. PHILIPS CORPORATION, )
                                                        )
                    Plaintiffs, )
                                                        )
          v. )      Civil Action No. 02-123-KAJ
                                                        )
CONTEC CORPORATION, COMPO )
MICRO TECH, INC., SEOBY )
ELECTRONICS CO., LTD., REMOTE )
SOLUTION CO., LTD., F/K/A HANGO )
ELECTRONICS CO., LTD., HANGO )
REMOTE SOLUTION, INC., )
                                                        )
                    Defendants. )

## MEMORANDUM ORDER

On March 29, 2004, I held a pretrial conference with the parties in anticipation of

the trial in this matter scheduled to commence on April 12, 2004.  At that time, I was

able to address several of the motions in limine filed with the pretrial order.[1]  Following

are my rulings on the remaining motions in limine.[2]

Philips' motion to exclude from the jury evidence of proceedings in foreign patent

offices (see Pretrial Order, Docket Item ["D.I."] 361, at 56) is hereby GRANTED,

---

[1]I granted Philips' motion to exclude from the jury evidence relevant solely to
CMT's equitable defenses (Transcript at 29); I granted Philips' motion to exclude
opinion of counsel letters that were prepared for a company that is no longer a party to
this litigation and which were never seen by any CMT employee (Transcript at 48); and I
granted CMT's motion to exclude the testimony of Philips' proposed legal expert
(Transcript at 56-57).

[2]In light of the rulings contained herein and decisions issued on the parties'
dispositive motions, the parties should confer and contact the court for a teleconference
to further discuss the trial in this case.

although it is perhaps better viewed simply as moot. CMT has effectively conceded that the contested evidence is relevant solely to its equitable defenses. (*See id.* at 58.) I have already ruled that I will hear evidence on those defenses separately from the evidence presented to the jury. Accordingly, the relief that Philips seeks is unnecessary. It should be plain to the parties that evidence regarding proceedings in foreign patent offices is to be presented solely before me, in connection with the parties' positions on CMT's inequitable conduct defense.

Philips' motion to exclude untimely produced evidence (*id.* at 61) is hereby GRANTED. Following the September 2003 discovery cutoff in this case, a cutoff that was twice extended, CMT came forward with additional documents which it has failed to persuade me could not have been produced during the extended discovery period. For example, during the deposition of its president or chairman, a Mr. Park, CMT disclosed the existence of relevant information in Mr. Park's appointment books but refused to schedule a continuation of the deposition to permit Philips to question Mr. Park following the production of that information. Remarkably, CMT asserts that it should be able to rely on those documents now because Philips didn't seek to compel the extension of the deposition before. That approach, of course, would put the onus for late production on the wronged party and ignores the import of Federal Rule of Civil Procedure 37(c)(1), which provides that "[a] party that without justification fails to disclose information required [by the rules of discovery] is not, unless such failure is harmless, permitted to use as evidence at trial ... information not so disclosed."

That provision was added to the Rules to serve as an "automatic sanction" intended to provide "a strong inducement for disclosure of material that the disclosing

2

party would expect to use as evidence[.]" Advisory Committee Note to 1993 Amendments to Fed.R.Civ.P. 37. CMT's suggestion that it is permitted to supplement its discovery responses up to the day of trial (*see* D.I. 373 at 3) does not address the pertinent point: is there any reasonable excuse for its delay in bringing forward the material it wants to rely upon now? I have not heard it, if there is. What I have heard is the claim that delivering documents after the close of discovery, including the close of expert discovery, should be permitted because "CMT has consistently made its best efforts to comply with its discovery obligations." (*Id.* at 4.) That assertion, of course, is hotly contested by Philips, which claims it has faced repeated difficulty in obtaining CMT's compliance with the rules of discovery. Regardless of who is right on that score, however, an "A" for effort does not excuse CMT's failure to abide by its disclosure obligations. "In every trial there comes a time when discovery must be closed for issues to be resolved through summary judgment and/or trial." *Stambler v. RSA Sec., Inc.*, 21 F.R.D. 470 , 472 (D. Del. 2003). Since CMT has not shown that its failure to properly and timely produce the evidence in question is harmless, the evidence will not be permitted at trial.

CMT's motion to exclude evidence regarding the doctrine of equivalents (D.I. 361 at 64) is mooted by my summary judgment ruling in CMT's favor on the '562 patent.

CMT seeks the exclusion of four proposed witnesses for Philips: Messrs. Bovial, Parham, Ingersoll, and Orlando. (*Id.* at 71.) Its motion is DENIED in part and GRANTED in part, with leave for Philips to provide further evidence from the discovery record to support its contention that information regarding Mr. Parham was adequately

3

disclosed. CMT's contention is that, although the identity of these individuals may have

surfaced in pretrial discovery, CMT has been unfairly surprised to find them listed as

witnesses. As to Messrs. Ingersoll and Orlando, that contention simply does not bear

serious scrutiny. CMT itself identified those two gentlemen as having knowledge

related to CMT's laches and estoppel defenses. (D.I. 381 at 2.) Philips has argued,

without a direct rebuttal from CMT, that the testimony of these men is only relevant

because CMT wants to introduce testimony of what they allegedly communicated to

CMT's Mr. Park. (Tr. at 36.) It is untenable for CMT to argue that it is surprised to learn

that the very individuals it has identified as disclosing relevant information to Mr. Park

may have something relevant to say about what they told Mr. Park. CMT's motion to

exclude Messrs. Ingersoll and Orlando as witnesses is therefore DENIED.

As to Messrs. Bovial and Parham, however, CMT"s protestations are more

credible. it appears that CMT did ask interrogatories that should have elicited their

names and that Philips did not identify them in response to those interrogatories. The

interrogatories require the identification of individuals with knowledge of facts

supporting Philips' contention that the Philips' patents in suit are valid and that CMT has

infringed them. Philips does not argue, apparently because it cannot, that it ever

supplemented its interrogatory responses by naming Messrs. Bovial and Parham.

Philips contends that it could not have read the interrogatories as requiring it to identify

those men. On that score it is mistaken. While broadly worded, the interrogatories in

question do require the identification of individuals with knowledge of the facts

underlying Philips' validity and infringement assertions. (See D.I. 381 at Ex. A,

Interrogatories No. 2 and No. 3.)

4

What Philips does say, however, at least as to Mr. Bovial, is persuasive.  Philips asserts that CMT learned long ago that Mr. Bovial had relevant knowledge, that he was discussed at length in several depositions, a claim that CMT does not deny, and that certain deponents gave very specific testimony about the central role that Mr. Bovial, a former Philips employee, played in providing information given by a current Philips employee at a 30(b)(6) deposition.  (D.I. 361 at 76.)  Accordingly, CMT was fairly on notice of Mr. Bovial's identity and the type and importance of the information he possesses.  CMT's motion to exclude Mr. Bovial as a witness is therefore DENIED.

Philips has not made a similar case with respect to Mr. Parham.  Other than its flat assertion that Mr. Parham's name has come up, Philips has given no indication that Mr. Parham was someone that CMT could have and should have focused on in the course of discovery. CMT's motion to exclude his testimony is therefore GRANTED; however, given the potential impact of excluding a witness at this late date, I will provide one final opportunity for Philips to disclose exactly what it proposes to have Mr. Parham testify to and the evidence in the discovery record that should have put CMT on notice that he was a candidate to provide such testimony at trial.  Philips submission in this regard should be delivered to the Court and served on opposing counsel no later than the close of business on Tuesday, April 6, 2004.  Any response that CMT may wish to make should be delivered by the close of business on Thursday, April 8, 2004.

UNITED STATES DISTRICT JUDGE

April 5, 2004
Wilmington, Delaware

# Exhibit H

# HOWREY LLP

1299 Pennsylvania Avenue, NW
Washington, DC 20004-2402
T 202.783.0800
F 202.383.6610
www.howrey.com

December 29, 2006

BY FACSIMILE

Brandon M. White, Esq.
Paul, Hastings, Janofsky & Walker, LLP
675 15TH Street, NW
Washington, D.C. 20005

Re:    **Bridgestone Sports Co. v. Acushnet Co., Case No. CA 05-132 (JJF) (D. Del.)**

Dear Brandon:

Thank you for your letter of December 23 regarding Acushnet's supplemental discovery responses. We do not agree with your interpretation of the Court's Order.

In particular, we do not understand the Order to preclude the supplementation of our contentions for newly-discovered prior art, which is what that art identified in your letter is. That art came to our attention only recently as pertaining to the '791 patent.

Nor do we see any prejudice to Bridgestone from our recent identification of that art, as you will have ample time to depose our experts on it.

I am out of the office until Tuesday, January 2, but will be happy to discuss this with you in more detail at that time.

Regards,

Brian S. Seal

AMSTERDAM  BRUSSELS  CHICAGO  EAST PALO ALTO  HOUSTON  IRVINE  LONDON
LOS ANGELES  NEW YORK  NORTHERN VIRGINIA  PARIS  SALT LAKE CITY  SAN FRANCISCO  TAIPEI  WASHINGTON, DC

# EXHIBIT I

## FULLY REDACTED

# EXHIBIT J

## FULLY REDACTED