IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| BRIDGESTONE SPORTS CO., LTD., and BRIDGESTONE GOLF, INC., <br><br>Plaintiffs,<br><br>v.<br><br>ACUSHNET COMPANY,<br><br>Defendant.<br><br>ACUSHNET COMPANY,<br><br>Counterclaim Plaintiff,<br><br>v.<br><br>BRIDGESTONE SPORTS CO., LTD. and BRIDGESTONE GOLD, INC.<br><br>Counterclaim Defendant. | C. A. No. 05-132 (JJF)<br><br><br><br>**PUBLIC VERSION** |

### ACUSHNET'S MEMORANDUM IN OPPOSITION TO BRIDGESTONE'S MOTION TO PRECLUDE ACUSHNET'S USE OF PRIOR ART REFERENCES

OF COUNSEL:

Alan M. Grimaldi
Joseph P. Lavelle
Kenneth W. Donnelly
Brian S. Seal
HOWREY LLP
1299 Pennsylvania Avenue, N.W.
Washington, DC 20004
Tel: (202) 783-0800

Dated: January 18, 2007
Public Version Dated: January 19, 2007

Richard L. Horwitz (#2246)
David E. Moore (#3983)
POTTER ANDERSON & CORROON LLP
Hercules Plaza, 6th Floor
1313 North Market Street
P. O. Box 951
Wilmington, DE 19899-0951
Tel: (302) 984-6000
rhorwitz@potteranderson.com
dmoore@potteranderson.com

*Attorneys for Defendant*
*Acushnet Company*

## TABLE OF CONTENTS

I. ACUSHNET'S DISCLOSURE OF THE REFERENCES WAS TIMELY ............. 3

    A. The Parties Expressly Agreed to Supplement Contentions by December 18, 2006 .................................................................................. 3

    B. The Court's August 3 Order Was Not Preclusive ........................................ 4

II. EVEN IF ACUSHNET'S DISCLOSURE WAS NOT TIMELY, THE COURT SHOULD ALLOW ACUSHNET TO RELY ON THE NEWLY-IDENTIFIED REFERENCES ........................................................................ 5

    A. Bridgestone Will Not Be Prejudiced By Allowance of the Newly-Identified Prior Art .......................................................................................... 6

    B. The Newly-Identified Prior Art Will Not Disrupt the Trial Schedule ........................................................................................................ 6

    C. Acushnet Did Not Act In Bad Faith ............................................................ 7

    D. The Newly-Identified Prior Art Is Important Evidence .............................. 9

III. CONCLUSION .................................................................................................. 10

# TABLE OF AUTHORITIES

*Alstrin v. St. Paul Mercury Insurance Co.,*
   179 F. Supp. 2d 376 (D. Del. 2002) ................................................................................ 7

*Alt v. Medtronic, Inc.,*
   Case No. 2:04-CV-370, 2006 U.S. Dist. LEXIS 4435 (E.D. Tex. Feb. 1, 2006) .......... 9

*Daiichi Pharm. Co., Ltd v. Apotex, Inc.,*
   Civ. No. 03-937, 2005 U.S. Dist. LEXIS 26059
   (D.N.J., Nov. 1, 2005) ...................................................................................................... 7

*Georgia-Pacific Corp. v. U.S. Gypsum Co.,*
   C.A. No. 94-489-RRM, 1996 U.S. Dist. LEXIS 22616
   (D. Del., Dec. 27, 1996) .................................................................................................. 4

*IXYS Corp. v. Advanced Power Tech., Inc.,* No. C 02-03942 MHP,
   2004 U.S. Dist. LEXIS 10934 (N.D. Cal. June 16, 2004) ............................................ 7

*Inline Connection Corp. v. AOL Time Warner, Inc.,*
   C.A. No. 02-272-MPT, C.A. No. 02-477-HPT,
   2007 U.S. Dist. LEXIS 756 (D. Del. Jan. 8, 2007) .................................................. 2, 5

*Meyers v. Pennypack Woods Home Ownership Association,*
   559 F.2d 894 (3d Cir. 1977) ............................................................................. 2, 3, 5, 10

*In re Paoli R.R. Yard PCB Litigation,*
   35 F.3d 717 (3d Cir. 1994) ............................................................................................. 2

*Praxair, Inc. v. ATMI, Inc.,*
   C.A. No. 03-1158-SLR, 2005 WL 3159054 (D. Del., Nov. 28, 2005) ......................... 3

*Primos, Inc. v. Hunter's Specialties, Inc.,*
   451 F.3d 851 (Fed. Cir. 2006) ........................................................................................ 5

*The Liposome Company v. Vestar, Inc.,*
   C.A. No. 92-332-RRM (D. Del., Nov. 24, 1993) ......................................................... 4

*In re TMI Litigation,*
   193 F.3d 613 (3d Cir. 1999) ........................................................................................... 5

## FEDERAL STATUTES

35 U.S.C. 102(f) ..................................................................................................................... 7, 9

35 U.S.C. 103 ............................................................................................................................. 9

Bridgestone Sports Co., Ltd.'s and Bridgestone Golf, Inc.'s (collectively, "Bridgestone") motion to preclude Acushnet Company's ("Acushnet") use of certain prior art references disclosed in Acushnet's December 18 supplemental contentions should be denied.

Bridgestone's motion contests Acushnet's inclusion of the following references in its contentions: Bridgestone's U.S. Patent Nos. 5,779,563, 5,967,908, 5,872,185, 6,267,694, and 6,174,247, as well as Bridgestone's own Altus Newing Massy golf ball, all of which are the subject of Acushnet's pending Motion for Leave to Supplement Its Invalidity Contentions (D.I. 262).

However, the parties' disagreement concerning three of these references (the '908, '185 and '694) has been rendered moot by the passage of time. Acushnet has this week provided invalidity expert reports to Bridgestone and has dramatically scaled back the number of references it will rely upon as invalidating references to the Bridgestone patents-in-suit. All told, the number of references is about twenty, and not the hundreds that Bridgestone feared. Concerning the '791 and '707 patents, in particular, Acushnet relies substantially on only five references total: three as to the '791 patent (the '563, '247 and '935 patents), two of which Bridgestone now challenges, and two as to the '707 patent (the Altus Newing Massy ball and EP 0 633 043), one of which is challenged. Acushnet expert's report on the invalidity of the '791 and '707 patent is attached in relevant part as Exhibit A hereto. (*See* Ex. A, Excerpts of January 16, 2007 Expert Report of Dr. David Felker.) As the Court can see by this report, the actual burden on Bridgestone to respond to Acushnet's invalidity positions has been substantially reduced.

Bridgestone claims that Acushnet somehow failed to comply with the Court's August 11 deadline for disclosing the invalidity contentions on which it was then relying, even though Acushnet only learned of those references as invalidity art in November, three months later. Bridgestone suggests that Acushnet should somehow have known that the Bridgestone prior art references invalidated the '791 and '707 patents and

disclosed them by August 11, even though Bridgestone itself failed to disclose them at all as relevant during discovery. Certainly, Bridgestone was in a much better position to do so, considering all the references identified in supplementation are Bridgestone's own patents, which is a fact omitted in Bridgestone's brief.

Bridgestone also relies on unsupported assertions of prejudice if Acushnet is allowed to rely on the references at issue. Specifically, it claims that it "has had inadequate time to study and assess these new invalidity defenses and can no longer pursue fact discovery to assist in rebutting them." (D.I. 261 at 7). On the contrary, since all of the references are Bridgestone's, it is unlikely that it would take Bridgestone very long to "study and assess" them, as Bridgestone is presumably knowledgeable about its own patents. In any event, Acushnet has offered to allow Bridgestone additional focused fact discovery on those references. Bridgestone may also take the deposition of Acushnet's expert opining that these references invalidate the '791 and '707 patents, in the normal course of expert depositions still to take place in this case.

Finally, Bridgestone overlooks binding Third Circuit precedent that the exclusion of important evidence for the violation of a discovery order – even assuming the violation to exist – is extreme, and a sanction that should not normally be imposed "absent a showing of willful deception or 'flagrant disregard.'" *Inline Connection Corp. v. AOL Time Warner, Inc.*, C.A. No. 02-272-MPT, C.A. No. 02-477-MPT, 2007 U.S. Dist. LEXIS 756 (D. Del. Jan. 8, 2007) (Ex. B hereto) (quoting *In re Paoli R.R. Yard PCB Litig.*, 35 F.3d 717, 791-92 (3d Cir. 1994) (quoting *Meyers v. Pennypack Woods Home Ownership Ass'n*, 559 F.2d 894, 905 (3d Cir. 1977))). Bridgestone's motion, which makes no meaningful attempt to show that Acushnet willfully deceived or flagrantly disregarded the Court's order, is ultimately unconvincing for this reason too.

As the Court can see from the excerpts of Acushnet's invalidity expert's report (Ex. A), the references in dispute constitute important evidence and play a central role in establishing the invalidity of Bridgestone's '791 and '707 patents.

2

I.  **ACUSHNET'S DISCLOSURE OF THE REFERENCES WAS TIMELY**

A.  **The Parties Expressly Agreed to Supplement Contentions by December 18, 2006**

Bridgestone relies heavily on the passing of the fact discovery deadline for its argument that Acushnet's newly-identified references should be precluded. Its ten-page brief contains no fewer than four references to the "October 10 close of fact discovery." (D.I. 261 at 3-4, 7.) Yet, while Bridgestone repeatedly invokes this argument, it glaringly omits to disclose the fact that the parties agreed to extend the due date for written discovery responses to December 18, 2006. In fact, the parties expressly agreed to supplement their responses to contention interrogatories on December 18. (*See* D.I. 262, Ex. A, Emails between Messrs. Seal and White, dated Oct. 24, 2006 (confirming discussions to exchange supplemental answers in November, including "final contention supplementation"), Nov. 30, 2006 (confirming agreement to extend the date for interrogatory answers and "supplemental contentions" until Dec. 14), and Dec. 14, 2006 (agreeing to delay the exchange of supplemental contentions until Dec. 18)).[1]

This agreement could not have been clearer. During the parties' discussion of this extension, counsel for Acushnet asked specifically if the extension would "include final contention supplementation." (*Id.*) Bridgestone's counsel responded "Yes." (*Id.*)

Thus, there should be no question that Acushnet's supplementation of its invalidity contentions on December 18 to disclose the newly-identified, highly-material references was timely by the parties' express agreement.

Bridgestone offers no support for the preclusion of references that are timely disclosed. Rather, the cases cited by Bridgestone concern disclosures made after the discovery deadline. *See Praxair, Inc. v. ATMI, Inc.*, C.A. No. 03-1158-SLR, 2005 WL

---

[1] *See also* D.I. 262, Ex. B, Bridgestone's First Set of Interrogatories (requesting invalidity contentions).

3

3159054 at *4 (D. Del., Nov. 28, 2005) (Ex. C hereto) (precluding references that "were not disclosed to plaintiffs by defendants until after the close of fact discovery"); *Georgia-Pacific Corp. v. U.S. Gypsum Co.*, C.A. No. 94-489-RRM, 1996 U.S. Dist. LEXIS 22616, *33-36 (D. Del., Dec. 27, 1996) (Ex. D hereto) (precluding contentions that were not disclosed in response to discovery requests); *The Liposome Company v. Vestar, Inc.*, C.A. No. 92-332-RRM (D. Del., Nov. 24, 1993) (Ex. E hereto) (precluding contention that was not identified in response to discovery requests). Here, however, Acushnet timely disclosed the newly-identified and relied upon references by the agreed-upon deadline of December 18, 2006.

### B. The Court's August 3 Order Was Not Preclusive

Acushnet complied with the Court's Order when, on August 11, 2006, it disclosed and narrowed the invalidity contentions on which it was then relying. Nothing in that Order precluded supplementation of those responses at a later date. Indeed, it would be surprising if it did, since, as discussed above, fact discovery in this case was not concluded until several months later. The Court's Order merely required Acushnet to disclose the invalidity contentions and prior art references upon which it relied as of August 11, 2006. Acushnet complied with that Order. The purpose of the Court's Order, as understood by Acushnet, was to eliminate any references on which Acushnet did not actually intend to rely, not to preclude Acushnet from pursuing additional fact discovery on its defenses. On August 11, both sides were still engaged in extensive fact discovery, with claim construction positions remaining open until November 1 between the parties as well. It is therefore implausible to suggest, as Bridgestone does, that the Court's August 3 Order was intended to forever foreclose Acushnet from supplementing its invalidity defenses based upon information gathered during ongoing discovery.

Further, although Bridgestone asks the Court to preclude Acushnet's reliance on Bridgestone's Altus Newing Massy golf ball, Bridgestone fails to mention that the

Court's August 3 Order did not apply to prior art golf balls. At the August 2 hearing that resulted in the Order, the Court discussed the limitation of references and expressly stated that "when I say references, after reading your papers, I'm excluding golf balls." (D.I. 158, 8/2/06 Hearing Tr. at 11:9-11.) Also, Bridgestone admits that the Altus Newing Massy golf ball *was disclosed* as invaliding prior art to the '707 patent. (D.I. 262 at 5.) Bridgestone's apparent complaint therefore is one of specificity as to claim 1 of the '707 in particular, not disclosure in general. Thus, even if Bridgestone were correct that the Order was preclusive, it does not preclude Acushnet from relying on Bridgestone's Altus Newing Massy golf ball as prior art.

## II. EVEN IF ACUSHNET'S DISCLOSURE WAS NOT TIMELY, THE COURT SHOULD ALLOW ACUSHNET TO RELY ON THE NEWLY-IDENTIFIED REFERENCES

Even assuming, for the sake of argument, that Acushnet's disclosure was untimely under the Court's August 3 Order, the Court should allow Acushnet to rely on the newly-identified references. The Third Circuit Court of Appeals held that "the exclusion of evidence for violation of a discovery order is an extreme sanction." *In re TMI Litig.*, 193 F.3d. 613, 721 (3d Cir. 1999) (citations omitted). Because a motion to exclude evidence is not an issue unique to patent law, the law of the regional circuit applies. *See Primos, Inc. v. Hunter's Specialties, Inc.*, 451 F.3d 851, 847 (Fed. Cir. 2006) (applying the law of the Eighth Circuit to review the district court's exclusion of a prior art reference). In deciding whether to preclude evidence under Rule 37, the Third Circuit Court of Appeals has identified five factors to consider: (1) the prejudice or surprise to a party against whom the evidence is offered; (2) ability of the injured party to cure the prejudice; (3) likelihood of disruption of trial; (4) bad faith or willfulness involved in not complying with the disclosure rules; and (5) importance of the evidence to the proffering party. *See Meyers v. Pennypack Woods Home Ownership Ass'n*, 559 F.2d 894, 905 (3d Cir. 1977); *Inline Connection Corp.*, 2007 U.S. Dist. LEXIS 756 (Ex. B) (observing

5

Third Circuit precedent that "the exclusion of critical evidence is an 'extreme sanction,' not normally to be imposed absent a showing of willful deception or 'flagrant disregard' of a court order" and identifying these five factors) (quoting *In re Paoli R.R. Yard PCB Litig.*, 35 F.3d 717, 791-92 (3d Cir. 1994)).

### A.  Bridgestone Will Not Be Prejudiced By Allowance of the Newly-Identified Prior Art

Here, the prejudice element of the first and second factors favors allowance of the references because Bridgestone offers only token arguments of prejudice that are nonetheless easily cured. Bridgestone's sole claim of prejudice in its brief is that it "has had inadequate time to study and assess these new invalidity defenses and can no longer pursue fact discovery to assist in rebutting them." (D.I. 261 at 7). As its example, Bridgestone states that "had Bridgestone been made aware of Acushnet's defenses during fact discovery, it could have questioned the various technical fact witnesses about the prior art or related technologies or practices relevant to these new references." (D.I. 261 at 7). Bridgestone's efforts to "study and assess" the references should not be difficult, however, as the references themselves – and thus the technical fact witnesses and any related "technologies or practices" – are Bridgestone's. In any event, Acushnet has offered to let Bridgestone conduct any additional focused fact discovery Bridgestone reasonably believes is necessary to evaluate the references.

### B.  The Newly-Identified Prior Art Will Not Disrupt the Trial Schedule

Further, the newly-identified references will cause no disruption to the trial schedule. Trial is still about six months away. The Court has yet to issue a decision on claim construction, and expert discovery, which is ongoing, does not close until March 16. In addition, Acushnet's expert reports on invalidity, which were served on January 16 and substantially relied on three of the newly-identified references, have further – indeed dramatically – reduced the number of prior art references on which Acushnet will

6

rely at trial. These expert reports have focused the case on a tight, core group of patents and other prior art – about twenty references – on which Acushnet will rely to invalidate Bridgestone's patents, which greatly reduces any claimed burden on Bridgestone. Again, Bridgestone will not be prejudiced if leave to supplement is granted.

Courts have allowed patent infringement defendants to supplement their invalidity contentions in cases that have progressed significantly further than the present litigation. *See IXYS Corp. v. Advanced Power Tech., Inc.,* No. C 02-03942 MHP, 2004 U.S. Dist. LEXIS 10934, at *2-*4 (N.D. Cal. June 16, 2004) (Ex. F hereto) (allowing defendant to supplement its invalidity contentions to incorporate material disclosed to opposing counsel three weeks before rebuttal expert reports were due). *See also Alstrin v. St. Paul Mercury Ins. Co.,* 179 F. Supp. 2d 376, 395 (D. Del. 2002) (refusing to deprive defendant of "potentially meritous" defenses merely because defendant had not identified them before it served its responses to plaintiff's contention interrogatories). Courts typically foreclose additional contentions only when cases have advanced well beyond the present stage of litigation. *See, e.g., Daiichi Pharm. Co., Ltd v. Apotex, Inc.,* Civ. No. 03-937, 2005 U.S. Dist. LEXIS 26059, at *15-*16 (D.N.J., Nov. 1, 2005) (Ex. G hereto) (granting plaintiff's motion in limine to exclude a defense based on 35 U.S.C. 102(f) where no notice of an improper inventorship defense had previously been given to plaintiff). Such an extreme situation is not present here, and Bridgestone will not be prejudiced by the addition of a handful of references and a golf ball to Acushnet's invalidity contentions with trial still six months away, a *Markman* decision still to come, and expert discovery ongoing for two months.

### C. Acushnet Did Not Act In Bad Faith

As the Court will recall from the *Markman* hearing, golf ball cores made from polybutadiene have a hardness profile or gradient that is the natural result of the

manufacturing process. As already discussed, several Bridgestone patents-in-suit relate to this core gradient, including the '707 and '791 patents.

Thus, during discovery, Acushnet sought from Bridgestone evidence regarding the hardness gradients inherently present in its golf ball cores. Acushnet sought facts as to which variables in the core manufacturing process have an effect on these core gradients. Acushnet wanted this information in connection with its defense that prior art would inherently disclose core gradients within the ranges claimed by Bridgestone's patents-in-suit, particularly the '791 patent, the '707 patent, and the '834 patent. *See* D.I. 262.

In the same effort, in mid-November 2006, Acushnet engineers then conducted prior art searches for Bridgestone patents and other prior art that disclosed the same basic core properties as the patents-in-suit. (*See* D.I. 262, Ex. B, Lavelle Dec. at ¶ 4.) This search was successful, as approximately two weeks later the prior-art patents which had not previously been identified were located. (*See id.*) After approximately two-weeks of process development, Acushnet was able to construct golf ball cores according to the teachings of these references. But before the core gradients could be measured accurately the ball cores had to be stored for two weeks to ensure that the curing process was complete. Once the gradients of these cores were measured, Acushnet learned of the high materiality of these references to the '791 patent. (*See id.* at ¶ 5.)

Thus, Acushnet became aware of the prior art and its substantial relevance only by November, but promptly disclosed the art on December 18, the agreed supplemental contention date. Acushnet had also determined from recent testing that Bridgestone's Altus Newing Massy golf ball possessed a core gradient that invalidates the '707 patent, and that was disclosed as well on December 18.[2] In short, there was no bad faith or willfulness involved in not complying with the disclosure rules or any Court order.

---

[2] Facts uncovered during depositions brought the substantial relevancy of the Altus Newing Massy to Acushnet's attention. For example, the October 6, 2006 deposition of

### D. The Newly-Identified Prior Art Is Important Evidence

As established by Dr. Felker's report itself, all of the prior art references now at issue are important and material to Acushnet's invalidity defenses for the '791 patent, and the prior art ball is material to Acushnet's defense for the '707 patent. (Ex. A, Excerpts of January 16, 2007 Expert Report of Dr. David Felker.) Each of the contested references either anticipates relevant claims under 35 U.S.C. § 102(a), or would have rendered them obvious to persons of ordinary skill in the relevant art under 35 U.S.C. 103. (*Id.*) Without these references, Acushnet's ability to mount a defense to these patents will be impaired. As Dr. Felker explains, hardness gradients in golf ball cores were well known in the art and pre-date the earliest priority date of the patents-in-suits. These gradients are the natural consequence of the solid golf ball manufacturing process that has been in use even before the Bridgestone '707 and '791 patents. (*See* Ex. A at 40-43.) Bridgestone's own prior art patent references and prior art balls prove this fact. (*Id.*)[3]

In similar circumstances, courts have given defendants leave to amend their invalidity contentions. *See, e.g., Alt v. Medtronic, Inc.,* Case No. 2:04-CV-370, 2006 U.S. Dist. LEXIS 4435, *12-*14 (E.D. Tex. Feb. 1, 2006) (Ex. H hereto) (finding that defendant would suffer significant prejudice if not allowed to amend its invalidity contentions to add newly discovered references that were "very important" to its invalidity arguments).

For this reason too, the Court should deny Bridgestone's motion to preclude.

---

Bridgestone engineer Hiroshi Higuchi confirmed that the Altus Newing Massy ball embodied Bridgestone's '852 patent, the American counterpart of EP 0 633 043, which Acushnet had already asserted was prior art against the '707 patent.

[3] And again, Bridgestone is not prejudiced. Given that the prior art is Bridgestone's own art, it should come as no surprise to Bridgestone that its art inherently possess the gradients Bridgestone says that it uncovered for the first time in the '707 and '791 patents.

9

### III. CONCLUSION

For the foregoing reasons, the Court should determine that Acushnet timely disclosed the newly-identified prior art under the parties' agreement and that its August 3 Order does not preclude Acushnet from adding new invalidity contentions in light of Acushnet's newly-identified and highly-material prior art references. In any event, because the *Pennypack* factors favor Acushnet, Acushnet requests that the Court grant Acushnet leave to rely on the newly-identified references in its invalidity contentions.

Respectfully submitted,

POTTER ANDERSON & CORROON LLP

OF COUNSEL:

Alan M. Grimaldi
Joseph P. Lavelle
Kenneth W. Donnelly
Brian S. Seal
HOWREY LLP
1299 Pennsylvania Avenue, N.W.
Washington, DC 20004
Tel: (202) 783-0800

Dated: January 18, 2007
Public Version Dated: January 19, 2007

773266 / 28946

By: */s/ David E. Moore*
    Richard L. Horwitz (#2246)
    David E. Moore (#3983)
    Hercules Plaza, 6th Floor
    1313 North Market Street
    P. O. Box 951
    Wilmington, DE 19899-0951
    Tel: (302) 984-6000
    rhorwitz@potteranderson.com
    dmoore@potteranderson.com

*Attorneys for Defendant
Acushnet Company*

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

### CERTIFICATE OF SERVICE

I, David E. Moore, hereby certify that on January 19, 2007, the attached document was hand delivered to the following persons and was electronically filed with the Clerk of the Court using CM/ECF which will send notification to the registered attorney(s) of record that the document has been filed and is available for viewing and downloading:

Jack B. Blumenfeld
Maryellen Noreika
Leslie A. Polizoti
Morris, Nichols, Arsht & Tunnell
1201 N. Market Street
Wilmington, DE  19801

I hereby certify that on January 19, 2007, I have Electronically Mailed the documents to the following:

Robert M. Masters
Paul, Hastings, Janofsky & Walker LLP
875 15th Street, N.W.
Washington, D.C.  20005
RobMasters@paulhastings.com

/s/ David E. Moore
Richard L. Horwitz
David E. Moore
Potter Anderson & Corroon LLP
Hercules Plaza – Sixth Floor
1313 North Market Street
P.O. Box 951
Wilmington, DE  19899-0951
(302) 984-6000
rhorwitz@potteranderson.com
dmoore@potteranderson.com

680012