IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| BRIDGESTONE SPORTS CO., LTD., and BRIDGESTONE GOLF, INC., <br><br> Plaintiffs, <br><br> v. <br><br> ACUSHNET COMPANY, <br><br> Defendant. | ) ) ) ) ) ) ) ) ) ) ) ) ) C. A. No. 05-132 (JJF) ) ) ) |
| ACUSHNET COMPANY, <br><br> Counterclaim Plaintiff, <br><br> v. <br><br> BRIDGESTONE SPORTS CO., LTD. and BRIDGESTONE GOLF, INC. <br><br> Counterclaim Defendant. | ) ) ) **DEMAND FOR JURY TRIAL** ) ) **PUBLIC VERSION** ) ) ) ) ) ) ) ) |

## ACUSHNET'S OPPOSITION TO BRIDGESTONE'S MOTION TO COMPEL

OF COUNSEL:

Alan M. Grimaldi
Joseph P. Lavelle
Kenneth W. Donnelly
Brian S. Seal
Howrey LLP
1299 Pennsylvania Avenue, N.W.
Washington, DC 20004
Tel: (202) 783-0800

Richard L. Horwitz (#2246)
David E. Moore (#3983)
Potter Anderson & Corroon LLP
Hercules Plaza, 6th Floor
1313 North Market Street
P. O. Box 951
Wilmington, DE 19899-0951
Tel: (302) 984-6000
rhorwitz@potteranderson.com
dmoore@potteranderson.com

*Attorneys for Defendant Acushnet Company*

Dated: January 23, 2007
Public Version Dated: January 30, 2007
775252/28946

## **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................ ii

I.  ARGUMENT ............................................................................................................. 1

    A.  Bridgestone Is Not Entitled to Responses to Its Requests for Admission In Excess of the Court's Limit of 150 ........................................ 1

    B.  Bridgestone Is Not Entitled to Re-depose Acushnet On Topics for Which Acushnet Has Already Provided Substantial Testimony ................. 3

        1.  Bridgestone's Tenth Notice ........................................................... 3

        2.  Topics 5-6 of Bridgestone's Fifth through Eighth Deposition Notices ...................................................................... 5

II.  CONCLUSION .......................................................................................................... 7

# TABLE OF AUTHORITIES

## CASES

*Ameristar Jet Charter, Inc. v. Signal Composites, Inc.*,
  244 F.3d 189 (1st Cir. 2001) ............................................................................. 4

*Christy v. Pennsylvania Turnpike Commission*,
  160 F.R.D. 51 (E.D. Pa. 1995) ........................................................................... 5

*Collaboration Properties v. Polycom, Inc.*,
  224 F.R.D. 473 (D. Cal. 2004) ........................................................................... 2

*Tulip Computers International B.V. v. Dell Computer Corp.*,
  210 F.R.D. 100 (D. Del. 2002) ........................................................................... 2

*United Coal Cos. v. Powell Construction Co.*,
  839 F.2d 958 (3d Cir. 1988) ............................................................................... 2

## STATUTES

Fed. R. Civ. P. 30(a)(2)(B) ........................................................................... 1, 4, 7

Fed. R. Civ. P. 36(a) ............................................................................................ 2

Bridgestone Sports Co., Ltd.'s and Bridgestone Golf, Inc.'s (collectively, "Bridgestone") motion to compel Acushnet Company ("Acushnet") should be denied.

## I.     ARGUMENT

Bridgestone's motion requests the Court to compel Acushnet's response to requests for admission, hundreds in number beyond the 150 such requests permitted by the Court's June 29, 2005 Scheduling Order. (D.I. 18 at 1). In addition, Bridgestone seeks to re-depose Acushnet corporate witnesses without leave of Court in violation of Fed. R. Civ. P. 30(a)(2)(B).

### A.     Bridgestone Is Not Entitled to Responses to Its Requests for Admission In Excess of the Court's Limit of 150

Bridgestone is not entitled to additional responses to its requests for admission, because the requests Acushnet declined to answer exceed the limit set by the Court.

On June 29, 2005, the Court issued a Scheduling Order limiting each party to 150 requests for admission. (D.I. 18 at 1). On September 8, 2006, Bridgestone served its Requests for Admission to Acushnet. While that document lists 149 numbered requests, even a casual inspection of those requests reveals the requests are highly compound. For example, Bridgestone's Request for Admission No. 19 asks Acushnet to

> Admit that golf balls in the Pro V1 Family, the Pro V1x Family, the Pro V1* Family, the NXT Family, the NXT Tour Family, the Exception Family and the DT SoLo Family have a core made of a base rubber selected from the group consisting of polybutadiene rubber, natural rubber, polyisoprene rubber and styrene-butadiene rubber.

(Ex. A – Bridgestone's Requests for Admission at 4). As defined by Bridgestone, the "Pro V1 Family" includes at least 5 models of golf balls, the "Pro V1x Family" includes at least 2 golf balls, the "Pro V1* Family" includes at least 1 model of golf ball, the "NXT Family" includes at least 3 models of golf balls, the "NXT Tour Family" includes at least 3 models of golf balls, the "Exception Family" includes at least one model of golf ball and the "DT SoLo Family" includes at least 5 models of golf balls. Thus, fairly

interpreted, that request covers 20 different Acushnet products, each of which has its own set of manufacturing guidelines and core recipes. Taken together, all of Bridgestone's requests constitute over 1,600 separate requests for admission.

Acushnet, however, did not apply such an interpretation. Instead, Acushnet gave Bridgestone's request substantial leeway and counted Request No. 19, for example, as only seven separate requests – one for each family identified by Bridgestone. Acushnet used the same approach in the Requests for Admission it served on Bridgestone. But even applying that more conservative analysis, Bridgestone reached 150 separate requests in its Request No. 68. *See Collaboration Props. v. Polycom, Inc.*, 224 F.R.D. 473, 475 (D. Cal. 2004) (counting interrogatories directed to multiple products as having subparts in excess of the amount allowed).

Acushnet's analysis was appropriate. First, in compounding its requests for admissions as it did in order to try to avoid the Court's limitation of 150, Bridgestone violated Rule 36's requirement that "[e]ach matter of which an admission is requested shall be *separately* set forth." Fed. R. Civ. P. 36(a) (emphasis added). Second, Bridgestone also violated the requirements of Rule 36 that "[r]equests for admission should be phrased so that they can be admitted or denied with minimal explanation." *Tulip Computers Int'l B.V. v. Dell Computer Corp.*, 210 F.R.D. 100, 108 (D. Del. 2002) (citing *United Coal Cos. v. Powell Constr. Co.*, 839 F.2d 958, 967 (3d Cir. 1988)). *See United Coal Cos.*, 839 F.2d at 958-59 ("Regardless of the subject matter of the Rule 36 request, the statement of the fact itself should be in simple and concise terms in order that it can be denied or admitted with an absolute minimum of explanation or qualification."). Because each family of products as defined by Bridgestone – and each model and version of the accused Acushnet products within each family – has its own set of manufacturing guidelines and recipes, Bridgestone's requests could not be admitted or denied with minimal explanation. Rather, Acushnet would have to undertake the significant burden of evaluating each and every set of manufacturing guidelines and recipes to respond to

2

Bridgestone's excessive requests. For both of these reasons, Acushnet's objections to the admission requests should be sustained, and Bridgestone's motion to compel additional answers to its requests for admissions should be denied.

**B.  Bridgestone Is Not Entitled to Re-depose Acushnet On Topics for Which Acushnet Has Already Provided Substantial Testimony**

Bridgestone seeks to re-depose Acushnet on topics for which it has already deposed Acushnet witnesses.

**1.  Bridgestone's Tenth Notice**

Bridgestone's Tenth Deposition Notice is duplicative of its Fifth through Eighth Deposition Notices. For example, topic 4 from Bridgestone's Tenth Notice calls for:

> Acushnet's manufacturing guidelines for cores, including and without limitation manuals, schematics, specifications, quality controls and changes thereto related to each of the accused Acushnet Golf Balls.

Compare that language to topics 4 and 5 for Bridgestone's Fifth through Eighth Notices[1], which call for:

> Acushnet's <u>manufacturing guidelines, including and without limitation</u> the construction, material, chemical and physical characteristics and requirements of all models and versions of the Products, and reasons therefore, and <u>all manuals, schematics, specifications, and subsequent, interim and/or final changes thereto</u>

(Topic 4) (emphases added).

and

> The <u>quality control and compliance employed by Acushnet in the</u> design and <u>manufacture of each and every model and version of the Products</u>

(Topic 5) (emphases added) (*See* Ex. B – Bridgestone's Fifth Notice of 30(b)(6) Deposition). Thus, every aspect of topic 4 from Bridgestone's Tenth Notice was covered in topics 4 and 5 from Bridgestone's previous notices. There is similar duplication for

---

[1] The numbered topics from Bridgestone's Fifth through Eighth Notices are repeated verbatim in each notice, though the notices themselves are divided among the accused Acushnet products.

the remaining topics contained in Bridgestone's Tenth Notice. (*Compare* Ex. C (Bridgestone's Tenth Notice of 30(b)(6) Deposition) with Ex. B (Bridgestone's Fifth Notice of 30(b)(6) Deposition)).

In fact, the only apparent distinction between Bridgestone's Tenth Notice and the previous notices is that the Tenth Notice is directed specifically to the cores of the accused Acushnet golf balls, while the previous notices were directed to the accused Acushnet golf balls as a whole, including the cores and cover layers. (*See* Exs. B and C). Mr. Dalton devoted substantial portions of his four days of testimony to the cores and core compositions of Acushnet's products. Specifically, Mr. Dalton testified with regard to the manufacturing guidelines for every model and version of the accused products, as well as numerous recipe changes and change notices. (*See*, for example, Ex. D (Dalton 7/25/06 Dep. at 329:20-339:14); Ex. E. (Dalton 7/27/06 Dep. at 521:19-538:13)). As a result, on July 18, approximately two weeks after Bridgestone served its Tenth Notice, Acushnet informed Bridgestone that the notice was duplicative of Bridgestone's Fifth through Eighth Notices and that Acushnet would not produce a witness yet again.

Because Bridgestone's Tenth Notice substantially duplicates the topics covered by Acushnet witnesses in response to Bridgestone's Fifth through Eighth Notices, Bridgestone's Tenth Notice is invalid as a matter of law. The Federal Rules of Civil Procedure state that leave of court is required to depose a witness who has "already been deposed in the case." Fed. R. Civ. P. 30(a)(2)(B). *See Ameristar Jet Charter, Inc. v. Signal Composites, Inc.*, 244 F.3d 189, 192 (1st Cir. 2001) (without leave of court, defendant was not entitled to take additional Rule 30(b)(6) depositions of nonparty corporation after plaintiff had earlier deposed representatives of that same corporation under Rule 30(b)(6)). Thus Bridgestone's Tenth Notice was invalid when Bridgestone served it and Bridgestone cannot remedy that failure now that fact discovery has closed.

Nor does Bridgestone's reliance on documents produced after Mr. Dalton's depositions justify its attempt to re-depose Acushnet specifically on its cores any more

4

than Bridgestone has already deposed Acushnet. The documents identified by Bridgestone in its brief – the change notices, recipe changes, and manufacturing guidelines – are all types of documents on which Bridgestone has already received extensive testimony. As shown by the excerpts attached as Exhibits D and E, Bridgestone's previous questions on those types of documents were superficial and cursory, thus belying their instant motion as an attempt to obtain further in-depth discovery to support their infringement contentions. Bridgestone's motion to re-depose Acushnet specifically on its cores should therefore be denied.[2]

### 2. Topics 5-6 of Bridgestone's Fifth through Eighth Deposition Notices

Topics 5-6 of Bridgestone's Fifth through Eighth Deposition Notices relate to "The quality control and compliance employed by Acushnet in the design and manufacture of each and every model and version of the Products" (Topic 5) and "The testing of the Products, and all preliminary, intermediary and end product components, including and without limitation cores, cover layers and intermediate layers by or for Acushnet in developing and manufacturing of the Products" (Topic 6).[3] (*See* Ex. B). Mr. Dalton testified extensively on Acushnet's quality control procedures and testing in both the development and manufacturing of the accused Acushnet golf balls.

Bridgestone has not challenged the sufficiency of Mr. Dalton's testimony on those topics other than to claim he was not specifically knowledgeable with regard to the

---

[2] However, should the Court determine that the documents justify a second deposition, Acushnet requests that the deposition be narrowly restricted to those documents only so as not to retread ground covered in Mr. Dalton's previous four days on testimony on Bridgestone's Fifth through Eighth Notices. *See Christy v. Pennsylvania Turnpike Comm'n*, 160 F.R.D. 51, 53 (E.D. Pa. 1995) (limiting second deposition of plaintiff to matters not covered in the first deposition).

[3] In its Brief, Bridgestone mistakenly identifies those topics as "Topics 5-6 of Bridgestone's *Sixth, Seventh, Eighth, and Ninth Notices of Deposition Pursuant to Rule (30)(b)(6)*" (emphasis in original). In actuality, they are Topics 5 and 6 of Bridgestone's Fifth through Eighth Notices.

specific contents of Acushnet's QAS system, a quality control database used during the manufacturing process. Thus, in attempt to justify its request for additional testimony, Bridgestone mischaracterizes the broad topics 5 and 6 as narrow requests seeking "testimony about Acushnet's QAS/SPC systems." (D.I. 267 at 5). Bridgestone states that, "In particular, Bridgestone wanted to question a witness about a database with thousands of entries that related to the core compositions of the accused Acushnet golf balls that Acushnet had produced, in hardcopy, in August 2005." (D.I. 267 at 5).[4] As shown above, however, Bridgestone's topics did not specifically identify the QAS system or the database entries in which Bridgestone claims it was particularly interested. On the contrary, the topics are much broader than Bridgestone suggests. Had Bridgestone truly been particularly interested in the QAS data, it could have narrowly tailored a request seeking precisely that information. Bridgestone is not entitled to remedy that failing now.

Nevertheless, in order to satisfy Bridgestone's questions about the QAS data, Acushnet offered to make the entire QAS system available to Bridgestone for inspection. Acushnet initially offered to attempt to identify the data fields in the electronically-produced data. ███████████████████████████████████████████. Thus, as an alternative, Acushnet offered repeatedly to make the entire QAS system available to Bridgestone for inspection, so that Bridgestone may review the fields with individual users and see the data in the format it is used by Acushnet. Bridgestone has declined. At this point in the proceedings, Bridgestone's motion on this front should simply be denied.

---

[4] Bridgestone also states incorrectly that Acushnet produced the database contents "in hardcopy." (D.I. 267 at 5). On the contrary, Acushnet produced the database on a CD in an electronic format.

6

## II. CONCLUSION

Because Bridgestone's motion requests the Court to compel Acushnet's response to requests for admission, hundreds in number beyond the 150 such requests permitted by the Court's June 29, 2005 Scheduling Order and because Bridgestone seeks to re-depose Acushnet corporate witnesses without leave of Court in violation of Fed. R. Civ. P. 30(a)(2)(B), Bridgestone's motion to compel should be denied.

Respectfully submitted,

POTTER ANDERSON & CORROON LLP

OF COUNSEL:

Alan M. Grimaldi
Joseph P. Lavelle
Kenneth W. Donnelly
Brian S. Seal
HOWREY LLP
1299 Pennsylvania Avenue, N.W.
Washington, DC 20004
Tel: (202) 783-0800

Dated: January 23, 2007
Public Version Dated: January 30, 2007
775252/28946

By: /s/ Richard L. Horwitz
Richard L. Horwitz (#2246)
David E. Moore (#3983)
Hercules Plaza, 6th Floor
1313 North Market Street
P. O. Box 951
Wilmington, DE 19899-0951
Tel: (302) 984-6000
rhorwitz@potteranderson.com
dmoore@potteranderson.com

*Attorneys for Defendant Acushnet Company*

7

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

**CERTIFICATE OF SERVICE**

I, Richard L. Horwitz, hereby certify that on January 30, 2007, the attached document was hand delivered to the following persons and was electronically filed with the Clerk of the Court using CM/ECF which will send notification to the registered attorney(s) of record that the document has been filed and is available for viewing and downloading:

Jack B. Blumenfeld
Maryellen Noreika
Leslie A. Polizoti
Morris, Nichols, Arsht & Tunnell
1201 N. Market Street
Wilmington, DE 19801

I hereby certify that on January 30, 2007, I have Electronically Mailed the documents to the following:

Robert M. Masters
Paul, Hastings, Janofsky & Walker LLP
875 15th Street, N.W.
Washington, D.C. 20005
RobMasters@paulhastings.com

/s/ Richard L. Horwitz
Richard L. Horwitz
David E. Moore
Potter Anderson & Corroon LLP
Hercules Plaza – Sixth Floor
1313 North Market Street
P.O. Box 951
Wilmington, DE 19899-0951
(302) 984-6000
rhorwitz@potteranderson.com
dmoore@potteranderson.com

680012 / 28946