# EXHIBIT A

*f*

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

BRIDGESTONE SPORTS CO., LTD.,  )
and BRIDGESTONE GOLF, INC.,    )
                               )
            Plaintiffs,        )
                               )
      v.                       )    C.A. No. 05-132 (JJF)
                               )
ACUSHNET COMPANY,              )
                               )
            Defendant.         )

## BRIDGESTONE'S REQUESTS FOR ADMISSION TO ACUSHNET

Pursuant to Fed. R. Civ. P. 36, Plaintiffs Bridgestone Sports Co., Ltd. and Bridgestone Golf, Inc. (collectively, "Bridgestone") hereby request that Acushnet Co. ("Acushnet") admit the truth of the matters set forth below in writing and under oath, by serving written responses on the offices of Paul, Hastings, Janofsky & Walker LLP, 875 15th Street, NW, Washington, DC 20005, within thirty (30) days from the date of service. Responses must satisfy the requirements of Fed. R. Civ. P. 36(a).

## DEFINITIONS

The Definitions contained in Bridgestone's First Set of Interrogatories to Acushnet are incorporated by reference and shall apply to each one of these Requests for Admission. In addition, the following definitions apply to these Requests for Admission:

40.     The term "Pro V1 Family" means each make, model and revision of the Pro V1 golf ball made, used, offered for sale, or sold since at least 2000, including, but not limited to, golf balls having the following sidestamps: Pro V1 392, Pro V1 392 (stretched), ◀Pro

V1•392►, ◄•Pro V1 392•► and ◄Pro V1-392►, and any other golf ball made, used or sold by Acushnet having a construction substantially the same as these golf balls.

41.    The term "Pro V1x Family" means each make, model and revision of the Pro V1x golf ball made, used, offered for sale, or sold since at least 2002, including, but not limited to, golf balls having the following sidestamps: ◄•Pro V1x 332•► and ◄Pro V1x-332►, and any other golf ball made, used or sold by Acushnet having a construction substantially the same as these golf balls.

42.    The term "Pro V1* Family" means each make, model and revision of the Pro V1* golf ball made, used, offered for sale, or sold since at least 2001, including, but not limited to, golf balls having the following sidestamp: ◄Pro V1* 392►, and any other golf ball made, used or sold by Acushnet having a construction substantially the same as these golf balls.

43.    The term "NXT Family" means each make, model and revision of the NXT golf ball made, used, offered for sale, or sold since at least 2002, including, but not limited to, golf balls having the following sidestamps: ◄NXT►, ◄N-X-T► and ◄-NXT-►, and any other golf ball made, used or sold by Acushnet having a construction substantially the same as these golf balls.

44.    The term "NXT Tour Family" means each make, model and revision of the NXT Tour golf ball made, used, offered for sale, or sold since at least 2001, including, but not limited to, golf balls having the following sidestamps: ◄NXT Tour►, ◄N-X-T Tour► and ◄NXT-Tour►, and any other golf ball made, used or sold by Acushnet having a construction substantially the same as these golf balls.

45.    The term "DT Solo Family" means each make, model and revision of the DT SoLo golf ball and PTS SoLo golf ball made, used, offered for sale, or sold since at least 2002,

including, but not limited to, golf balls having the following sidestamps: ◄PTS So/Lo► (PTS / in red) (◄► So Lo in blue); ◄PTS-So/Lo► (PTS / in red) (◄► So Lo in blue); ◄DT So/Lo► (DT / in red) (◄► So Lo in blue); and ◄DT-So/Lo► (DT / in red) (◄► So Lo in blue); DT So/Lo (DT / in red) (So Lo in blue), and any other golf ball made, used or sold by Acushnet having a construction substantially the same as these golf balls.

46.    The term "Exception Family" means each make, model and revision of the Pinnacle Exception golf ball made, used, offered for sale, or sold since at least 2002, including, but not limited, to golf balls having the following sidestamps: Pinnacle Exception with airfoil logo in blue/black, and any other golf ball made, used or sold by Acushnet having a construction substantially the same as these golf balls.

47.    The terms "core," "inner core," "outer core," "inner cover," and "cover" have the meanings attributed to them by Acushnet's Manufacturing Guidelines (see, *e.g.*, AB 0015274-0015290; AB 0015304-0015320; AB 0015338-0015355; AB 0015374-0015390; AB 0015471-0015497; AB 0015563-0015617 and AB 0086603-0086638).

## REQUESTS FOR ADMISSIONS

1.    Admit that golf balls in the NXT Family, the Exception Family, and the DT SoLo Family have a core having a surface hardness as measured by a JIS-C scale hardness meter of 85 degrees or less.

2.    Admit that golf balls in the NXT Family, the Exception Family and the DT SoLo Family have a solid core having a center hardness as measured by a JIS-C scale hardness meter that is lower than the surface hardness of the solid core by between 8 degrees and 20 degrees.

3.    Admit that golf balls in the NXT Family, the Exception Family, and the DT SoLo Family have a core and a cover, where the cover has a hardness as measured by a JIS-C scale hardness meter which is higher than the surface hardness of the core by between 1 and 15 degrees.

4.    Admit that golf balls in the NXT Family, the Exception Family, and the DT SoLo Family have a cover that has a thickness of between 1.5 mm and 1.95 mm.

5.    Admit that golf balls in the NXT Family, the Exception Family and the DT SoLo Family have a solid core having a distortion of 2.8 to 4.0 mm under a load of 100 kg.

6.    Admit that golf balls in the NXT Family, the Exception Family and the DT SoLo Family have a cover having between 360 and 450 dimples thereon.

7.    Admit that golf balls in the NXT Family, the NXT Tour Family, the DT SoLo Family, and the Pinnacle Exception Family have a core having a distortion of 2.9 to 4.0 mm under a load of 100 kg.

8.    Admit that golf balls in the NXT Family, the NXT Tour Family, the DT SoLo Family, and the Pinnacle Exception Family have a core having a distortion of 2.9 to 4.0 mm under a load of 100 kg.

9.    Admit that golf balls in the NXT Family, the NXT Tour Family, the DT SoLo Family, and the Pinnacle Exception Family, have a ratio of core distortion under a load of 100 kg divided by ball distortion under a load of 100 kg in the range of 1.0 to 1.3.

10.    Admit that golf balls in the NXT Family, the NXT Tour Family, the DT SoLo Family, and the Pinnacle Exception Family have a cover made with an ionomer resin.

11.    Admit that golf balls in the NXT Tour Family have a cover having a Shore D hardness less than 60.

12.    Admit that golf balls in the NXT Family, the DT SoLo Family, and the Pinnacle Exception Family have a cover having a thickness of 1.3 to 1.8 mm.

13.    Admit that Acushnet cannot show the exact date that any of the "Wilson Ultra Competition 90" golf balls currently in Acushnet's possession were first obtained by Acushnet.

14.    Admit that all "Wilson Ultra Competition 90" golf balls currently in Acushnet's possession have had a compression measurement performed thereon.

15.    Admit that Acushnet cannot show the exact date that any of the "Wilson Ultra Competition 100" golf balls currently in Acushnet's possession were first obtained by Acushnet.

16.    Admit that all "Wilson Ultra Competition 100" golf balls currently in Acushnet's possession have had a compression measurement performed thereon.

17.    Admit that Acushnet cannot show the exact date that any of the "Precept EV Extra Spin" golf balls currently in Acushnet's possession were first obtained by Acushnet.

18.    Admit that all "Precept EV Extra Spin" golf balls currently in Acushnet's possession have had a compression measurement performed thereon.

19.    Admit that golf balls in the Pro V1 Family, the Pro V1x Family, the Pro V1* Family, the NXT Family, the NXT Tour Family, the Exception Family and the DT SoLo Family have a core made of a base rubber selected from the group consisting of polybutadiene rubber, natural rubber, polyisoprene rubber and styrene-butadiene rubber.

20.    Admit that Pro V1 golf balls having the sidestamp ◀•Pro V1 392•▶, have a core made of a rubber composition containing: (1) 100 parts by weight of a base rubber made of polybutadiene rubber; and (2) 25 to 40 parts by weight of a zinc salt of an unsaturated fatty acid having 3 to 8 carbon atoms.

21.    Admit that golf balls in the Pro V1x Family and the Pro V1* Family, and NXT Tour golf balls having the sidestamp ◀NXT-Tour▶, have an inner core, an outer core or both made of a rubber composition containing: (1) 100 parts by weight of a base rubber made of

polybutadiene rubber; and (2) 25 to 40 parts by weight of a zinc salt of an unsaturated fatty acid having 3 to 8 carbon atoms.

22.    Admit golf balls in the NXT Family and golf balls in the Exception Family, have a core made of a rubber composition containing: (1) 100 parts by weight of a base rubber made of polybutadiene rubber; and (2) 24.5 to 40 parts by weight of a zinc salt of an unsaturated fatty acid having 3 to 8 carbon atoms.

23.    Admit that golf balls in the Pro V1* Family have an inner core, an outer core or both made of a rubber composition containing: (1) 100 parts by weight of a base rubber made of polybutadiene rubber; and (2) 0.05 to 2 parts by weight of a sulfur compound made of pentachlorothiophenol.

24.    Admit that NXT Tour golf balls having the sidestamp ◀NXT-Tour▶ have an inner core, an outer core or both made of a rubber composition containing: (1) 100 parts by weight of a base rubber made of polybutadiene rubber; and (2) 0.05 to 2 parts by weight of a sulfur compound made of zinc salt of pentachlorothiophenol.

25.    Admit that golf balls in the DT SoLo Family have a core made of a rubber composition containing: (1) 100 parts by weight of a base rubber made of polybutadiene rubber; and (2) 0.05 to 2 parts by weight of a sulfur compound made of zinc salt of pentachlorothiophenol.

26.    Admit that golf balls in the Exception Family have a core made of a rubber composition containing: (1) 100 parts by weight of a base rubber made of polybutadiene rubber; and (2) 0.05 to 2 parts by weight of a sulfur compound made of zinc salt of pentachlorothiophenol.

27.    Admit that golf balls in the Pro V1 Family, the NXT Family, the DT SoLo Family, and the Exception Family, have a core made of a rubber composition containing: (1) 100 parts by weight of a base rubber made of polybutadiene rubber; and (2) 0.05 to 2.4 parts by weight of a sulfur compound made of zinc salt of pentachlorothiophenol.

28.    Admit that golf balls in the Pro V1x Family and NXT Tour Family have an inner core, an outer core or both made of a rubber composition containing: (1) 100 parts by weight of a base rubber made of polybutadiene rubber; and (2) 0.05 to 2.4 parts by weight of a sulfur compound made of zinc salt of pentachlorothiophenol.

29.    Admit that golf balls in the Pro V1 Family, the Pro V1x Family, the NXT Family, the NXT Tour Family, the Exception Family and the DT SoLo Family have a core, or an inner core, an outer core or both, made of a rubber composition containing: (1) 100 parts by weight of a base rubber made of polybutadiene rubber; and (2) 0.5 to 2.45 parts by weight of a sulfur compound made of zinc salt of pentachlorothiophenol.

30.    Admit that golf balls in the Pro V1 Family, the Pro V1x Family, the NXT Family, the NXT Tour Family, the Exception Family and the DT SoLo Family have a core, or an inner core, an outer core or both, made of a rubber composition containing: (1) 100 parts by weight of a base rubber made of polybutadiene rubber; and (2) 0.5 to 2.4 parts by weight of a sulfur compound made of zinc salt of pentachlorothiophenol.

31.    Admit that golf balls in the Pro V1 Family, the Pro V1x Family, the NXT Family, the NXT Tour Family, the Exception Family and the DT SoLo Family have a core, or an inner

- 5 -

core, an outer core or both, made of a rubber composition containing: (1) 100 parts by weight of a base rubber made of polybutadiene rubber; and (2) 0.5 to 2.35 parts by weight of a sulfur compound made of zinc salt of pentachlorothiophenol.

32.    Admit that golf balls in the Pro V1 Family, the Pro V1x Family, the NXT Family, the NXT Tour Family, the Exception Family and the DT SoLo Family have a core, or an inner core, an outer core or both, made of a rubber composition containing: (1) 100 parts by weight of a base rubber made of polybutadiene rubber; and (2) 0.5 to 2.3 parts by weight of a sulfur compound made of zinc salt of pentachlorothiophenol.

33.    Admit that golf balls in the Pro V1 Family, the Pro V1x Family, the NXT Family, the NXT Tour Family, the Exception Family and the DT SoLo Family have a core, or an inner core, an outer core or both, made of a rubber composition containing: (1) 100 parts by weight of a base rubber made of polybutadiene rubber; and (2) 0.5 to 3 parts by weight of an organic peroxide.

34.    Admit that golf balls in the NXT Family, the NXT Tour Family, the Exception Family and the DT SoLo Family have a cover enclosing a core or at least one of an inner core, outer core or combined dual core.

35.    Admit that golf balls in the Pro V1 Family, the Pro V1x Family, and the Pro V1* Family have a cover, and an inner cover between a core, or an inner core, an outer core or both, and the cover.

36.    Admit that a base rubber used in a core or an inner core, an outer core or both of golf balls in the Pro V1 Family, the Pro V1x Family, the Pro V1* Family, the NXT Family, the NXT Tour Family, the Exception Family and the DT SoLo Family is a poly(1,4-butadiene) rubber containing at least 40 mol % of cis-1,4 bond.

37.    Admit that a base rubber used in the core or an inner core, an outer core or both of golf balls in the Pro V1 Family, the Pro V1x Family, the Pro V1* Family, the NXT Family, the NXT Tour Family, the Exception Family and the DT SoLo Family contains at least 80% by weight of poly(1,4-butadiene) rubber.

38.    Admit that none of US Patent 4,556,220, US Patent 4,683,257, US Patent 4,683,257, Japanese Kokai Publication No. 02-92378, the article "Mastication of Rubber" by H. Fries et al., US Patent 4,722,977, GB 2 161 710, US Patent 2,467,789, US Patent 4,955,613, US Patent 4,431,193, US Patent 4,674,751, US Patent 4,848,770, when read singly, explicitly discloses a golf ball made of a rubber composition containing: (1) 100 parts by weight of a base rubber; and (2) about 0.05 to about 2 parts by weight of a sulfur compound of pentachlorothiophenol, 4-t-butyl-o-thiocresol, 4-t-butyl-p-thiocresol, 2-benzamidothiophenol, thiobenzoic acid, or zinc salts thereof.

39.    Admit that Pro V1 golf balls having the sidestamp ◄Pro V1-392► are a multi-piece solid golf ball having a solid core, an inner cover and a cover.

40.    Admit that Pro V1 golf balls having the sidestamp ◄Pro V1-392► have a solid core molded from a rubber composition containing 100 parts by weight of a base rubber that is 20 to 100 wt % of a polybutadiene having a cis-1,4 content of at least 60% and a 1,2 vinyl content of at most 2%.

- 6 -

41.    Admit that Pro V1 golf balls having the sidestamp ◀Pro V1-392▶ have a solid core molded from a rubber composition containing 100 parts by weight of a base rubber that is 20 to 100 wt % of a polybutadiene having a viscosity η at 25° C. as a 5 wt % solution in toluene of up to 600 mPa·s.

42.    Admit that Pro V1 golf balls having the sidestamp ◀Pro V1-392▶ have a solid core molded from a rubber composition containing 100 parts by weight of a base rubber that is 20 to 100 wt % of a polybutadiene which is synthesized using a rare-earth catalyst.

43.    Admit that Pro V1 golf balls having the sidestamp ◀Pro V1-392▶ have a solid core molded from a rubber composition containing 100 parts by weight of a base rubber that is 20 to 100 wt % of a polybutadiene, where the polybutadiene satisfies the relationship: $10B+5 \leq A \leq 10B+60$, wherein A is the Mooney viscosity ($ML_{1+4}$ (100° C.)) of the polybutadiene and B is the ratio Mw/Mn between the weight-average molecular weight Mw and the number-average molecular weight Mn of the polybutadiene.

44.    Admit that Pro V1 golf balls having the sidestamp ◀Pro V1-392▶ have a solid core which is molded from a rubber composition containing 100 parts by weight of a base rubber that is: (a) 20 to 100 wt % of a polybutadiene having a cis-1,4 content of at least 60% and a 1,2 vinyl content of at most 2%; and (b) 0 to 80 wt % of a diene rubber other than component (a).

45.    Admit that Pro V1 golf balls having the sidestamp ◀Pro V1-392▶ have a solid core which is molded from a rubber composition containing 100 parts by weight of a base rubber and 10 to 60 parts by weight of an unsaturated carboxylic acid or a metal salt thereof or both.

46.    Admit that Pro V1 golf balls having the sidestamp ◀Pro V1-392▶ have a solid core which is molded from a rubber composition containing 100 parts by weight of a base rubber and 0.1 to 5 parts by weight of an organosulfur compound.

47.    Admit that Pro V1 golf balls having the sidestamp ◀Pro V1-392▶ have a solid core which is molded from a rubber composition containing 100 parts by weight of a base rubber and 5 to 80 parts by weight of an inorganic filler.

48.    Admit that Pro V1 golf balls having the sidestamp ◀Pro V1-392▶ have a solid core which is molded from a rubber composition containing 100 parts by weight of a base rubber and 0.1 to 5 parts by weight of an organic peroxide.

49.    Admit that Pro V1 golf balls having the sidestamp ◀Pro V1-392▶ have an inner cover having a Shore D hardness of 50 to 80.

50.    Admit that Pro V1 golf balls having the sidestamp ◀Pro V1-392▶ have a cover having a Shore D hardness of 35 to 60.

51.    Admit that Pro V1 golf balls having the sidestamp ◀Pro V1-392▶ have a cover which has a lower Shore D hardness than the inner cover.

52.    Admit that Pro V1 golf balls having the sidestamp ◀Pro V1-392▶ have a solid core which is molded from a rubber composition containing 100 parts by weight of a base rubber that is: (a) 20 to 100 wt % of a polybutadiene having a cis-1,4 content of at least 60% and a 1,2 vinyl content of at most 2%; and (b) 0 to 80 wt % of a diene rubber other than component (a) which includes 30 to 100 wt % of a second polybutadiene which has a cis-1,4 content of at least 60% and a 1,2 vinyl content of at most 5%.

- 7 -

53.     Admit that Pro V1 golf balls having the sidestamp ◄Pro V1-392► have a solid core which is molded from a rubber composition containing 100 parts by weight of a base rubber that is: (a) 20 to 100 wt % of a polybutadiene having a cis-1,4 content of at least 60% and a 1,2 vinyl content of at most 2%; and (b) 0 to 80 wt % of a diene rubber other than component (a) which includes 30 to 100 wt % of a second polybutadiene which has a Mooney viscosity ($ML_{1+4}$ (100° C.)) of not more than 55.

54.     Admit that Pro V1 golf balls having the sidestamp ◄Pro V1-392► have a solid core which is molded from a rubber composition containing 100 parts by weight of a base rubber that is: (a) 20 to 100 wt % of a polybutadiene having a cis-1,4 content of at least 60% and a 1,2 vinyl content of at most 2%; and (b) 0 to 80 wt % of a diene rubber other than component (a) which includes 30 to 100 wt % of a second polybutadiene which satisfies the relationship: $\eta \leq$ 20A-550, where A is the Mooney viscosity ($ML_{1+4}$ (100° C.)) of the second polybutadiene and $\eta$ is the viscosity of the second polybutadiene, in mPa·s, at 25° C. as a 5 wt % solution in toluene.

55.     Admit that Shell 1220 is a polybutadiene rubber which has a cis-1,4 content of at least 60% and a 1,2 vinyl content of at most 5%.

56.     Admit that Shell 1220 is a polybutadiene rubber which has a Mooney viscosity ($ML_{1+4}$ (100° C.)) of not more than 55.

57.     Admit that Shell 1220 is a polybutadiene rubber which satisfies the relationship: $\eta \leq$ 20A-550, where A is the Mooney viscosity ($ML_{1+4}$ (100° C.)) of Shell 1220 and $\eta$ is the viscosity of Shell 1220, in mPa·s, at 25° C. as a 5 wt % solution in toluene.

58.     Admit that CB 23 is a polybutadiene rubber which has a cis-1,4 content of at least 60% and a 1,2 vinyl content of at most 2%.

59.     Admit that CB 23 is a polybutadiene rubber which has a viscosity $\eta$ at 25° C. as a 5 wt % solution in toluene of up to 600 mPa·s.

60.     Admit that CB 23 is a polybutadiene rubber which is synthesized using a rare-earth catalyst.

61.     Admit that CB 23 is a polybutadiene rubber which satisfies the relationship: 10B+5 $\leq$ A $\leq$ 10B+60, wherein A is the Mooney viscosity ($ML_{1+4}$ (100° C.)) of CB 23 and B is the ratio Mw/Mn between the weight-average molecular weight Mw and the number-average molecular weight Mn of CB 23.

62.     Admit that none of US Patent 6,486,261, US Publication 2003/0171166, US Patent 6,875,131, US Patent 6,162,135, US Patent 6,612,940, US Patent 6,325,730, US Patent 6,739,985, US Patent 6,315,684, US Patent 6,435,983, US Patent 6,921,345, US Patent 6,422,953, and US 6,419,594 singly explicitly disclose a multi-piece solid golf ball, where the solid core is molded from a rubber composition including a base rubber composed of (a) a polybutadiene having a viscosity $\eta$ at 25° C. as a 5 wt % solution in toluene of up to 600 mPa·s, and satisfying the relationship: 10B+5 $\leq$ A $\leq$ 10B+60, wherein A is the Mooney viscosity ($ML_{1+4}$ (100° C.)) of the polybutadiene and B is the ratio Mw/Mn of the polybutadiene, in combination with (b) a diene rubber other than component (a) where the diene rubber (b) satisfies the relationship: $\eta \leq$ 20A-550, where A is the Mooney viscosity and $\eta$ is the viscosity of the second polybutadiene.

- 8 -

63. Admit that the golf balls in the Pro V1 Family have a core with a diameter greater than 29 mm.

64. Admit that the golf balls in the Pro V1x Family and Pro V1* Family have an outer core with a diameter greater than 29 mm.

65. Admit that golf balls in the Pro V1 Family have a core with a specific gravity less than 1.4.

66. Admit that golf balls in the Pro V1x Family and Pro V1* Family have an inner core, an outer core or both with a specific gravity less than 1.4.

67. Admit that Pro V1 golf balls bearing the side stamp ◄Pro V1-392► have an inner cover having a thickness greater than 1 mm.

68. Admit that golf balls in the Pro V1 Family, Pro V1* Family, and Pro V1x Family have an inner cover having a thickness of at least 0.85 mm.

69. Admit that golf balls in the Pro V1 Family, Pro V1* Family, and Pro V1x Family have a cover having a thickness of at least 0.8 mm.

70. Admit that golf balls in the Pro V1 Family, Pro V1* Family, and Pro V1x Family have a cover having a thickness of at least 0.85 mm.

71. Admit that golf balls in the Pro V1 Family, Pro V1* Family, and Pro V1x Family have a cover having a thickness of at least 0.9 mm.

72. Admit that golf balls in the Pro V1 Family, Pro V1* Family, and Pro V1x Family have a cover having a thickness of at least 0.95 mm.

73. Admit that golf balls in the Pro V1 Family, Pro V1* Family, and Pro V1x Family have a cover having a thickness of at least 1 mm.

74. Admit that Acushnet has tested the cover thickness of golf balls in any one of the Pro V1 Family, Pro V1* Family, and Pro V1x Family to be greater than 0.8 mm.

75. Admit that Acushnet has tested the cover thickness of golf balls in any one of the Pro V1 Family, Pro V1* Family, and Pro V1x Family to be greater than 0.85 mm.

76. Admit that Acushnet has tested the cover thickness of golf balls in any one of the Pro V1 Family, Pro V1* Family, and Pro V1x Family to be greater than 0.9 mm.

77. Admit that Acushnet has tested the cover thickness of golf balls in any one of the Pro V1 Family, Pro V1* Family, and Pro V1x Family to be greater than 0.95 mm.

78. Admit that Acushnet has tested the cover thickness of golf balls in any one of the Pro V1 Family, Pro V1* Family, and Pro V1x Family to be greater than 1 mm.

79. Admit that golf balls in the Pro V1 Family, Pro V1x Family, and Pro V1* Family have an inner cover with a specific gravity less than 1.2.

80. Admit that golf balls in the Pro V1 Family, Pro V1x Family, and Pro V1* Family have an inner cover layer with a hardness of at least 85 on the JIS C scale.

81. Admit that golf balls in the Pro V1 Family have an inner cover and a core and that the specific gravity of the inner cover is less than the specific gravity of the core.

- 9 -

82. Admit that golf balls in the Pro V1x Family and Pro V1* Family have an inner cover and an inner core and outer core, and that the specific gravity of the inner cover is less than the specific gravity of the inner core and outer core.

83. Admit that golf balls in the Pro V1 Family, the Pro V1x Family and Pro V1* Family have a cover and an inner cover and the cover is softer than the inner cover when measured using the Shore D scale.

84. Admit that golf balls in the Pro V1 Family, the Pro V1x Family and Pro V1* Family have a cover and an inner cover and the cover is softer than the inner cover when measured using the JIS C scale.

85. Admit that golf balls in the Pro V1 Family have an inner cover and a core, and that the difference in specific gravity between the core and inner cover is between 0.1 to 0.5.

86. Admit that golf balls in the Pro V1x and Pro V1* Family have an inner cover, an inner core and an outer core, and that the difference in specific gravity between the inner core and the inner cover, and the outer core and the inner cover is between 0.1 to 0.5.

87. Admit that golf balls in the Pro V1 Family, the Pro V1x Family and the Pro V1* Family have an inner cover with a specific gravity between 0.9 and 1.0.

88. Admit that US Patent 4,431,193 fails to explicitly disclose any specific gravity of core 12 disclosed therein.

89. Admit that US Patent 4,431,193 fails to explicitly disclose any specific gravity of any golf ball core, including core 12, disclosed therein.

90. Admit that US Patent 4,431,193 fails to explicitly disclose any specific gravity of inner layer 14 disclosed therein.

91. Admit that US Patent 4,431,193 fails to explicitly disclose any specific gravity of any intermediate layer or inner cover, including inner layer 14, disclosed therein.

92. Admit that US Patent 5,314,187 fails to explicitly disclose any specific gravity of solid core 12 disclosed therein.

93. Admit that US Patent 5,314,187 fails to explicitly disclose any specific gravity of any core, including solid core 12, disclosed therein.

94. Admit that US Patent 5,314,187 fails to explicitly disclose any specific gravity of inner layer 13 disclosed therein.

95. Admit that US Patent 5,314,187 fails to explicitly disclose any specific gravity of any intermediate layer or inner cover, including inner layer 13, disclosed therein.

96. Admit that Acushnet has measured exemplary golf balls of the type identified as the "Wilson Ultra Tour Balata 90 golf ball" and "Wilson Ultra Tour Balata 90 golf ball" in Acushnet's May 31, 2006 responses to Bridgestone's Interrogatories 4 and 5, as having inner covers less than .035" thick.

97. Admit that Acushnet cannot show the exact date that any of the "Wilson Ultra Tour Balata 90" golf balls currently in Acushnet's possession were first obtained by Acushnet.

98. Admit that all "Wilson Ultra Tour Balata 90" golf balls currently in Acushnet's possession have had a compression measurement performed thereon.

- 10 -

99.    Admit that Acushnet cannot show the exact date that any of the "Wilson Ultra Tour Balata 100" golf balls currently in Acushnet's possession were first obtained by Acushnet.

100.    Admit that all "Wilson Ultra Tour Balata 100" golf balls currently in Acushnet's possession have had a compression measurement performed thereon.

101.    Admit that US Patent 4,848,770 fails to disclose any cover, including cover 3, that has a Shore C hardness less than any intermediate layer or inner cover, including intermediate layer 2.

102.    Admit that US Patent 5,002,281 fails to disclose any cover, including cover 3, that has a Shore C hardness less than any intermediate layer or inner cover, including outer shell 2.

103.    Admit that US Patent 5,002,281 fails to disclose any core, including inner core 1, that has a specific gravity greater than any intermediate layer or inner cover, including outer shell 2.

104.    Admit that US Application 08/070,510 fails to explicitly disclose any specific gravity of any core, including core 10, therein.

105.    Admit that US Application 08/070,510 fails to explicitly disclose any specific gravity of any intermediate layer or inner cover, including inner layer 14, therein.

106.    Admit that golf balls in the Pro V1 Family bearing the side stamps Pro V1 392, Pro V1 392 (stretched), and ◄Pro V1•392► have a solid core and the hardness of the solid core at the center of the solid core is 75 or less on the JIS C scale.

107.    Admit that golf balls in the Pro V1 Family bearing the side stamps Pro V1 392, Pro V1 392 (stretched), and ◄Pro V1•392► have a solid core and the hardness of the solid core at the outer surface of the solid core is 85 or less on the JIS C scale.

108.    Admit that golf balls in the Pro V1 Family bearing the side stamps Pro V1 392, Pro V1 392 (stretched), and ◄Pro V1•392► have a solid core and the hardness difference between the hardness of the solid core at the outer surface of the solid core and the hardness at the center of the solid core is in the range of 8 to 20 degrees, on the JIS C scale.

109.    Admit that golf balls in the Pro V1 Family bearing the side stamps Pro V1 392, Pro V1 392 (stretched), and ◄Pro V1•392► have an inner cover and a solid core, and that the hardness of the inner cover is 5 degrees or higher than the hardness of the solid core at the outer surface of the solid core, on the JIS C scale.

110.    Admit that golf balls in the Pro V1 Family bearing the side stamps Pro V1 392, Pro V1 392 (stretched), and ◄Pro V1•392► have an inner cover and a cover, and that the hardness of the inner cover is 5 degrees or higher than the hardness of the cover, on the JIS C scale.

111.    Admit that golf balls in the Pro V1 Family bearing the side stamps Pro V1 392, Pro V1 392 (stretched), and ◄Pro V1•392► have a cover with dimples, where the dimples occupy at least 62% of the golf ball surface.

112.    Admit that EP 0 633 043 fails to explicitly disclose any hardness values for any core, including center core 1, therein.

- 11 -

113.    Admit that Acushnet has measured exemplary golf balls of the type identified as the "Wilson Ultra Tour Balata 100 golf ball," in Acushnet's May 31, 2006 responses to Bridgestone's Interrogatories 4 and 5, as having a difference between inner cover hardness and hardness at the outer surface of the core of less than 5 JIS C.

114.    Admit that Acushnet has measured exemplary golf balls of the type identified as the "Wilson Ultra Tour Balata 100 golf ball," as having a difference between inner cover hardness and cover hardness of less than 5 JIS C.

115.    Admit that golf balls of the Pro V1 Family bearing the side stamps ◄•Pro V1 392•► and ◄Pro V1-392► have an inner cover and a cover, and the inner cover is harder than the cover when measured on a JIS C scale.

116.    Admit that golf balls of the Pro V1x Family have an inner cover and a cover, and the inner cover is harder than the cover when measured on a JIS C scale.

117.    Admit that golf balls of the Pro V1 Family bearing the side stamps ◄•Pro V1 392•► and ◄Pro V1-392► have an inner cover and a core, and the inner cover is harder than the outer surface of the core when measured on a JIS C scale.

118.    Admit that golf balls of the Pro V1x Family have an inner cover and an outer core, and the inner cover is harder than the outer surface of the outer core when measured on a JIS C scale.

119.    Admit that golf balls of the Pro V1 Family bearing the side stamps ◄•Pro V1 392•► and ◄Pro V1-392► have a core, and the hardness of the core at the center of the core is less than the hardness of the outer surface of the core when measured on a JIS C scale.

120.    Admit that golf balls of the Pro V1 Family bearing the side stamps ◄•Pro V1 392•► and ◄Pro V1-392► have a core, and the hardness of the core increases gradually from the center of the core to the outer surface of the core when measured on a JIS C scale.

121.    Admit that golf balls in the Pro V1x Family have an inner core and an outer core, and the hardness of the inner core at the center of the inner core is less than the hardness of the outer surface of the outer core when measured on a JIS C scale.

122.    Admit that golf balls in the Pro V1x Family have an inner core and an outer core, and the hardness increases gradually from the center of the inner core to outer surface of the outer core when measured on a JIS C scale.

123.    Admit that golf balls of the Pro V1 Family bearing the side stamps ◄•Pro V1 392•► and ◄Pro V1-392► have a core, and the difference of hardness between the center of the core and the outer surface of the core, when measured on a JIS C scale, is at least 22.

124.    Admit that golf balls in the Pro V1x Family have an inner core and an outer core, and the difference of hardness between the center of the inner core and the outer surface of the outer core, when measured on a JIS C scale, is at least 22.

125.    Admit that golf balls of the Pro V1 Family bearing the side stamps ◄•Pro V1 392•► and ◄Pro V1-392► have a core which is partly formed of a zinc salt of pentachlorothiophenol.

126.    Admit that golf balls in the Pro V1x Family have an inner core and an outer core, and that each of the inner core and outer core are partly formed of a zinc salt of pentachlorothiophenol.

127.    Admit that golf balls of the Pro V1 Family bearing the side stamps ◄•Pro V1 392•► and ◄Pro V1-392► have an inner cover which has a Shore D hardness between 50 and 67.

128.    Admit that golf balls of the Pro V1x Family have an inner cover which has a Shore D hardness between 50 and 67.

129.    Admit that golf balls of the Pro V1 Family bearing the side stamps ◄•Pro V1 392•► and ◄Pro V1-392► have a cover which has a Shore D hardness of 45 to 58.

130.    Admit that golf balls of the Pro V1x Family have a cover which has a Shore D hardness of 45 to 58.

131.    Admit that US Patent 6,390,935 fails to disclose that outer shell 2 is formed of a resin.

132.    Admit that US Patent 6,390,935 fails to disclose any hardness values of outer shell 2.

133.    Admit that US Patent 6,390,935 fails to disclose any use of pentachlorothiophenol, pentafluorothiophenol, pentabromothiophenol, p-chlorothiophenol, or the zinc salt of pentachlorothiophenol, in any core or layer disclosed therein.

134.    Admit that, in the example 4 ball construction of US Patent 6,465,578, shown in columns 27 and 28, the "mantle" is not formed of resin.

135.    Admit that, in the example 5 ball construction of US Patent 6,465,578, shown in columns 27 and 28, the "inner cover" is softer than the "cover" on the Shore D scale.

136.    Admit that, in the example 5 ball construction of US Patent 6,465,578, shown in columns 27 and 28, the "inner cover" has a hardness of less than 50 Shore D.

137.    Admit that US Patent 6,465,578 fails to disclose any hardnesses of "inner cover" or "mantle layers" outside of examples 4 and 5 in columns 27 and 28.

138.    Admit that US Patent 6,465,578 fails to disclose any use of pentachlorothiophenol, pentafluorothiophenol, pentabromothiophenol, p-chlorothiophenol, or the zinc salt of pentachlorothiophenol, in any core or layer disclosed therein.

139.    Admit that Acushnet has measured exemplary golf balls of the type identified as the "Top Flite System C" golf ball, in Acushnet's May 31, 2006 responses to Bridgestone's Interrogatories 4 and 5, as having a hardness difference of less than 22 between the center and surface of its core, when measured using the JIS C scale.

140.    Admit that Acushnet has not found any exemplary balls of the type identified as the "Top Flite System C" that contain pentachlorothiophenol, pentafluorothiophenol, pentabromothiophenol, p-chlorothiophenol, or the zinc salt of pentachlorothiophenol, in any core or layer therein.

141.    Admit that Acushnet cannot show the exact date that any of the "Top-Flite System C" golf balls currently in Acushnet's possession were first obtained by Acushnet.

142.  Admit that all "Top-Flite System C" golf balls currently in Acushnet's possession have had a compression measurement performed thereon.

143.  Admit that Acushnet has measured exemplary golf balls of the type identified as the "Tour Stage U-Spin" golf ball, in Acushnet's May 31, 2006 responses to Bridgestone's Interrogatories 4 and 5, as having a hardness difference of less than 22 between the center and surface of its core, when measured using the JIS C scale.

144.  Admit that Acushnet has not found any exemplary balls of the type identified as the "Tour Stage U-Spin" golf ball, that contain any pentachlorothiophenol, pentafluorothiophenol, pentabromothiophenol, p-chlorothiophenol, or the zinc salt of pentachlorothiophenol, in any core or layer therein.

145.  Admit that Acushnet cannot show the exact date that any of the "Tour Stage U-Spin" golf balls currently in Acushnet's possession were first obtained by Acushnet.

146.  Admit that all "Tour Stage U-Spin" golf balls currently in Acushnet's possession have had a compression measurement performed thereon.

147.  Admit that all documents bearing Bates Nos. AB 0000001 to AB 0112437 are true and authentic copies of documents within Acushnet's custody, control or possession.

148.  The documents bearing Bates Nos. AB 0000001 to AB 0112437 are authentic, genuine and true and correct copies of business records of Acushnet.

149.  The documents bearing Bates Nos. AW 000001 to AW 004632 are authentic, genuine and true and correct copies of business records of Arnold Worldwide, Inc.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

Jack B. Blumenfeld (#1014)
Maryellen Noreika (#3208)
Leslie A. Polizoti (#4299)
1201 N. Market Street
P.O. Box 1347
Wilmington, DE  19801
(302) 658-9200
  *Attorneys for Bridgestone Sports Co., Ltd. and
  Bridgestone Golf, Inc.*

- 14 -

OF COUNSEL:

Robert M. Masters
Scott M. Flicker
Terrance J. Wikberg
Brandon M. White
PAUL, HASTINGS,
  JANOFSKY & WALKER LLP
825 15th Street, N.W.
Washington, DC  20005
(202) 551-1700

September 8, 2006

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that copies of the foregoing were caused to be served this 8th day of September, 2006 upon the following in the manner indicated:

### BY HAND

Richard L. Horwitz
Potter Anderson & Corroon LLP
1313 N. Market Street
Wilmington, DE  19801

### BY FEDERAL EXPRESS

Alan M. Grimaldi
Howrey LLP
1299 Pennsylvania Avenue, NW
Washington, DC  20004

_____
Jack B. Blumenfeld

# EXHIBIT B

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| BRIDGESTONE SPORTS CO., LTD.,<br>and BRIDGESTONE GOLF, INC., | ) | |
| | ) | |
| | ) | C.A. No. 05-132 (JJF) |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| ACUSHNET COMPANY, | ) | |
| | ) | |
| Defendant. | ) | |

### BRIDGESTONE'S FIFTH
### NOTICE OF DEPOSITION PURSUANT TO RULE 30(b)(6)

PLEASE TAKE NOTICE that, pursuant to Fed. R. Civ. P. 30(b)(6), Plaintiffs Bridgestone Sports Co., Ltd. and Bridgestone Golf, Inc. ("Bridgestone") shall take the deposition upon oral examination under oath of Defendant Acushnet Company ("Acushnet") beginning at 9:00 a.m., on the 22nd day of June, 2006, and continuing from day to day until completed, in the offices of Paul, Hastings, Janofsky & Walker LLP, 875 15th Street, NW, Washington, DC 20005, or at such other time and place as may be agreed upon by counsel. The deposition will be recorded by stenographic means and may be videotaped, and is being taken for the purposes of discovery, for use at trial, and for such other purposes as permitted under the Federal Rules of Civil Procedure.

In accordance with Rule 30(b)(6), Acushnet shall designate one or more officers, directors, managing agents, or other persons to testify on its behalf concerning the matters set forth in Attachment A hereto.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Leslie A. Polizoti*

Jack B. Blumenfeld (#1014)
Maryellen Noreika (#3208)
Leslie A. Polizoti (#4299)
1201 N. Market Street
P.O. Box 1347
Wilmington, DE 19801
(302) 658-9200
lpolizoti@mnat.com
  *Attorneys for Bridgestone Sports Co., Ltd.*
  *and Bridgestone Golf, Inc.*

OF COUNSEL:

Robert M. Masters
Scott M. Flicker
Terrance J. Wikberg
PAUL, HASTINGS, JANOFSKY
  & WALKER LLP
875 15th St., N.W.
Washington, DC 20005
(202) 551-7100

June 7, 2006
523765

## ATTACHMENT A

Notwithstanding any definition set forth below, each word, term, or phrase used in this Notice of Deposition is intended to have the broadest meaning permitted under the Federal Rules of Civil Procedure.

## DEFINITIONS

As used herein, the following terms are to be interpreted in accordance with the DEFINITIONS set forth in Bridgestone's First Set of Requests For Production of Documents and Things as though fully set forth herein.

In addition, the following phrase as used in this Notice is to be interpreted in accordance with the following definition:

37.     The phrase "related patents or applications" means any patents and/or patent applications, whether issued, pending, abandoned, or otherwise, related to a patent, including any parents, continuations, continuations-in-part, divisions, provisionals, reexaminations, reissues, and foreign counterparts.

## MATTERS ON WHICH EXAMINATION IS REQUESTED

With respect to Acushnet's Titleist® DT So/Lo (PTO So/Lo) and Pinnacle® Exception™ products (the "Products"):

1.     The conception, research, design, and development of each and every model and version of the Products.

2.     The reduction to practice of each and every model and version of the Products, including prototypes thereof.

1

3.    The specifications of each and every model and version of the Products, including and without limitation the construction, material, chemical, and physical specifications thereof, and the manner, method and criteria in selecting such specifications.

4.    Acushnet's manufacturing guidelines, including and without limitation the construction, material, chemical and physical characteristics and requirements of all models and versions of the Products, and reasons therefor, and all manuals, schematics, specifications, and subsequent, interim and/or final changes thereto.

5.    The quality control and compliance employed by Acushnet in the design and manufacture of each and every model and version of the Products.

6.    The testing of the Products, and all preliminary, intermediary and end product components, including and without limitation cores, cover layers and intermediate layers by or for Acushnet in developing and manufacturing of the Products.

7.    The identity of each person substantially involved in the conception, research, design, development, testing, quality control and compliance, and manufacture of each and every model and version of the Products.

## CERTIFICATE OF SERVICE

I hereby certify that on June 7, 2006, I electronically filed Bridgestone's Fifth

Notice of Deposition Pursuant to Rule 30(b)(6) with the Clerk of the Court using

CM/ECF, which will send notification of such filing(s) to:

Richard L. Horwitz
Potter Anderson & Corroon

I further certify on June 7, 2006, copies of the foregoing document were served

upon counsel of record in the manner indicated:

### BY HAND

Richard L. Horwitz
Potter Anderson & Corroon LLP
1313 N. Market Street
Wilmington, DE 19801

### BY FEDERAL EXPRESS

Alan M. Grimaldi
Howrey LLP
1299 Pennsylvania Avenue, NW
Washington, DC 20004

/s/ Leslie A. Polizoti
Leslie A. Polizoti (#4299)
1201 N. Market Street
Wilmington, DE 19899
(302) 658-9200
lpolizoti@mnat.com

# EXHIBIT C

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| BRIDGESTONE SPORTS CO., LTD., and BRIDGESTONE GOLF, INC., | ) ) ) | |
| Plaintiffs, | ) ) ) | C.A. No. 05-132 (JJF) |
| v. | ) ) | |
| ACUSHNET COMPANY, | ) ) | |
| Defendant. | ) ) | |

### BRIDGESTONE'S TENTH NOTICE OF DEPOSITION
### PURSUANT TO RULE 30(b)(6)

**PLEASE TAKE NOTICE** that, pursuant to Fed. R. Civ. P. 30(b)(6), Plaintiffs Bridgestone Sports Co., Ltd. and Bridgestone Golf, Inc. ("Bridgestone") shall take the deposition upon oral examination under oath of Defendant Acushnet Company ("Acushnet") beginning at 9:00 a.m., on the 1st day of August, 2006, and continuing from day to day until completed, in the offices of Paul, Hastings, Janofsky & Walker LLP, 875 15th Street, NW, Washington, DC 20005, or at such other time and place as may be agreed upon by counsel. The deposition will be recorded by stenographic means and may be videotaped, and is being taken for the purposes of discovery, for use at trial, and for such other purposes as permitted under the Federal Rules of Civil Procedure.

In accordance with Rule 30(b)(6), Acushnet shall designate one or more officers, directors, managing agents, or other persons to testify on its behalf concerning the matters set forth in Attachment A hereto.

MORRIS, NICHOLS, ARSHT & TUNNELL

*/s/ Maryellen Noreika*

Jack B. Blumenfeld (#1014)
Maryellen Noreika (#3208)
Leslie A. Polizoti (#4299)
1201 N. Market Street
P.O. Box 1347
Wilmington, DE  19899
(302) 658-9200
  *Attorneys for Bridgestone Sports Co., Ltd.*
  *and Bridgestone Golf, Inc.*

OF COUNSEL:

Robert M. Masters
Scott M. Flicker
Terrance J. Wikberg
Brandon M. White
PAUL, HASTINGS, JANOFSKY & WALKER LLP
875 15th St., N.W.
Washington, DC  20005
(202) 551-1700

July 10, 2006
528059

2

## ATTACHMENT A

Notwithstanding any definition set forth below, each word, term, or phrase used in this Notice of Deposition is intended to have the broadest meaning permitted under the Federal Rules of Civil Procedure.

## DEFINITIONS

As used herein, the following terms are to be interpreted in accordance with the DEFINITIONS set forth in Bridgestone's First Set of Requests For Production of Documents and Things (Request Nos. 1-100) as though fully set forth herein.

## MATTERS ON WHICH EXAMINATION IS REQUESTED

1.    Acushnet's research and development of cores, including and without limitation amounts of base rubbers, cross-linking agents, catalysts, organic peroxides, fillers and any other components therein, and the manner, method and criteria in selecting such components and amounts thereof related to each of the accused Acushnet Golf Balls.

2.    The chemical compositions, specifications, physical and material characteristics and method of manufacture of cores used in each of the accused Acushnet Golf Balls.

3.    Acushnet's manner of testing cores and test results obtained therefrom to determine at least the material, chemical, physical, mechanical and performance properties, including and without limitation rebound properties, velocities, compressions, coefficient of restitution measurements, loss tangents, dynamic stiffnesses, cis- and trans-contents, resilience indexes, viscosities, and molecular weights related to each of the accused Acushnet Golf Balls.

4.    Acushnet's manufacturing guidelines for cores, including and without limitation manuals, schematics, specifications, quality controls and changes thereto related to each of the accused Acushnet Golf Balls.

5.    The identity, role and contribution of each Acushnet employee or contractor substantially involved in the research, development, testing, and manufacture of cores and core compositions related to each of the accused Acushnet Golf Balls.

2

## CERTIFICATE OF SERVICE

I, Maryellen Noreika, hereby certify that on July 10, 2006 I electronically filed the foregoing with the Clerk of the Court using CM/ECF, which will send notification of such filing(s) to the following:

> Richard L. Horowitz, Esquire
> POTTER ANDERSON & CORROON LLP
> Hercules Plaza, 6th floor
> 1313 N. Market Street
> Wilmington, DE 19899

and that I caused copies to be served upon the following in the manner indicated:

### BY HAND

> Richard L. Horwitz, Esquire
> Potter Anderson & Corroon LLP
> 1313 N. Market Street
> Wilmington, DE 19801

### BY FACSIMILE

> Alan M. Grimaldi, Esquire
> Howrey LLP
> 1299 Pennsylvania Avenue, NW
> Washington, DC 20004


> /s/ Maryellen Noreika
> Maryellen Noreika (#3208)
> mnoreika@mnat.com

# EXHIBIT D

# THIS EXHIBIT HAS BEEN REDACTED IN ITS ENTIRETY

# EXHIBIT E

# THIS EXHIBIT HAS BEEN
# REDACTED IN ITS ENTIRETY