IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| BRIDGESTONE SPORTS CO., LTD., and BRIDGESTONE GOLF, INC., ) ) ) | |
| Plaintiffs, ) ) | |
| v. ) | |
| ACUSHNET COMPANY, ) ) | C. A. No. 05-132 (JJF) |
| Defendant. ) ) | |
| ACUSHNET COMPANY, ) ) | |
| Counterclaim Plaintiff, ) ) | **PUBLIC VERSION** |
| v. ) ) | |
| BRIDGESTONE SPORTS CO., LTD. and BRIDGESTONE GOLF, INC. ) ) ) | |
| Counterclaim Defendant. ) | |

**ACUSHNET'S REPLY BRIEF IN SUPPORT OF ITS MOTION
FOR LEAVE TO SUPPLEMENT INVALIDITY CONTENTIONS**

OF COUNSEL:

Alan M. Grimaldi
Joseph P. Lavelle
Kenneth W. Donnelly
Brian S. Seal
HOWREY LLP
1299 Pennsylvania Avenue, N.W.
Washington, DC 20004
Tel: (202) 783-0800

Dated: January 25, 2007
Public Version Dated: February 1, 2007
775801 / 28946

Richard L. Horwitz (#2246)
David E. Moore (#3983)
POTTER ANDERSON & CORROON LLP
Hercules Plaza, 6th Floor
1313 North Market Street
P. O. Box 951
Wilmington, DE 19899-0951
Tel: (302) 984-6000
rhorwitz@potteranderson.com
dmoore@potteranderson.com

*Attorneys for Defendant
Acushnet Company*

## TABLE OF CONTENTS

I. ACUSHNET'S DISCLOSURE WAS TIMELY ...................................................... 1

    A. The Parties Expressly Agreed to Supplement Contentions by December 18, 2006 ......................................................................................... 1

    B. The Court's August 3 Order Was Not Preclusive ..................................... 3

    C. Acushnet Was Diligent In Asserting The Newly-Identified Prior Art ........................................................................................................... 4

II. EVEN IF ACUSHNET'S DISCLOSURE WAS NOT TIMELY, THE COURT SHOULD ALLOW ACUSHNET TO RELY ON THE NEWLY-IDENTIFIED REFERENCES .................................................... 6

    A. Bridgestone Will Not Be Prejudiced By Allowance of the Newly-Identified Prior Art ................................................................................. 6

    B. The Newly-Identified Prior Art Will Not Disrupt the Trial Schedule ......................................................................................................... 8

    C. Acushnet Did Not Disclose the Newly-Identified References In Bad Faith ........................................................................................................... 8

    D. The Newly-Identified Prior Art Is Critical to Acushnet ........................... 8

III. CONCLUSION .......................................................................................................... 9

# TABLE OF AUTHORITIES

## CASES

*Alt v. Medtronic, Inc.,*
  2006 U.S. Dist. LEXIS 4435 (E.D. Tex. Feb. 1, 2006) ................................................5

*Meyers v. Pennypack Woods Home Ownership Association,*
  559 F.2d 894 (3d Cir. 1977) ................................................................................6, 10

*PIC Inc. v. Prescon Corp.,*
  485 F. Supp. 1299 (D. Del. 1980) ..........................................................................2

*In re TMI Litigation,*
  193 F.3d 613 (3d Cir. 1999) ...................................................................................6

## STATUTES

35 U.S.C. § 101 ................................................................................................................3

35 U.S.C. § 102 .............................................................................................................3, 5

35 U.S.C. § 102(a) ............................................................................................................9

35 U.S.C. § 103 .............................................................................................................3, 9

35 U.S.C. § 112 ................................................................................................................3

Acushnet's identification of prior art references was timely under the parties' express agreement to supplement contention discovery by December 18, 2006. Regardless, because the balance of prejudice to the two parties strongly favors allowance of the references, Acushnet should be granted leave to supplement its contentions.[1]

## I.    ACUSHNET'S DISCLOSURE WAS TIMELY

### A.    The Parties Expressly Agreed to Supplement Contentions by December 18, 2006

There is no legitimate dispute that Acushnet disclosed the newly-identified prior art within the parties' agreed-upon December 18, 2006 deadline for the supplementation of contention discovery. Bridgestone admits that "the parties did agree to extend parts of fact discovery until December 18, 2006 for limited purposes of completing a few depositions and supplementing interrogatory responses." (D.I. 270 at 8). Bridgestone, however, omits the fact that, as part of that agreement, the parties expressly agreed to supplement their responses to contention interrogatories. (*See* D.I. 272 at Ex. A). In fact, the agreement could not have been clearer. During the parties' discussion of the extension, counsel for Acushnet asked specifically if the extension would "include final contention supplementation." (*Id.*). Counsel for Bridgestone responded "Yes." (*Id.*). Acushnet agrees with Bridgestone that "contentions must be disclosed by a certain date." (D.I. 270 at 10). Here, that date was December 18, 2006, under the parties' agreement.

---

[1] In response to Acushnet's request that the Court strike Bridgestone's Motion to Preclude for failure to comply with the meet-and-confer obligation of D. Del. L.R. 7.1.1, Bridgestone claims that "[t]he parties had discussed this issue previously ...." (D.I. 270 at 1, n. 1). On the contrary, the parties had exchanged correspondence on the issue, but never met-and-conferred. Counsel for Acushnet believed the parties had scheduled a meet and confer for January 4, 2007, when it accepted Bridgestone's January 3 request to do so. (*See* D.I. 262 at Ex. N). Bridgestone, however, then filed its motion on January 3 without providing any notice to Acushnet, prompting Acushnet to file its own motion. Acushnet thus maintains its request that the Court strike Bridgestone's motion for failure to comply with L.R. 7.1.1.

Recognizing that Acushnet's disclosure was timely under the parties' agreement, Bridgestone resorts to mischaracterizing the agreement, stating that "[a]ny supplementation to contention responses was intended to update discovery that was already provided – not to add new contentions." (D.I. 270 at 8). Not only does Bridgestone fail to support its interpretation of the parties' intent by reference to any communications between the parties, that interpretation is contradicted by Bridgestone's own discovery responses. Bridgestone acknowledges in its brief that it "supplemented its infringement contentions on December 18." (D.I. 270 at 8, n. 4). Bridgestone fails to mention, however, that it also supplemented its responses to Acushnet's interrogatories by adding four newly-identified noninfringement contentions. (*Compare* Ex. A (Pls.' Ninth Supplemental Responses to Def.'s First Set of Interrogs. at 16-19) with Ex. B (Pls.' Fifth Supplemental Responses to Def.'s First Set of Interrogatories at 8-9)). Thus, as of December 18, both parties understood their agreement to allow supplemental contentions. It is only now, after seeing Acushnet's supplementation, that Bridgestone raises its hollow protests regarding the supposed "finality" of earlier responses. (*See* D.I. 270 at 8).

Nor does the case cited by Bridgestone – *PIC Inc.* – support its interpretation. There the court precluded the defendant from supplementing its discovery responses almost three years after the defendant's previous responses. *See PIC Inc. v. Prescon Corp.*, 485 F. Supp. 1299, 1300-01 (D. Del. 1980). The court, however, noted that

> Rule 26(e) does not support Prescon's attempt to supplement its answers to Interrogatory No. 10, as it is attempting to bring "new contentions" to PIC's attention, not "new facts." In effect, by amending its answer, Prescon is seeking to deny infringement of an element of claim 1 of the Lang patent. This is a legal contention **which remains for resolution at trial**.

*Id.* at 1301 (emphasis added). Thus, the Court allowed the defendant to maintain its noninfringement contentions at trial. While the different burdens of proof regarding noninfringement versus invalidity render this case somewhat inapposite, the case

2

certainly does not support the exclusion of invalidity contentions made before the close of discovery and six months before trial.

Further, Acushnet's ***contentions*** have not changed. Acushnet contends, as it has since it filed its Answer on April 28, 2005, that Bridgestone's '791 and '707 patents are invalid. (*See* Ex. C (Acushnet's Answer at 13)). That contention has not changed. Acushnet merely identified the new references in response to Bridgestone's Interrogatory No. 4, which asked Acushnet to "[s]tate each fact on which Acushnet bases its Third Defense (Invalidity under 35 U.S.C. § 101, 102, 103 and 112) set forth in the Answer" and Interrogatory No. 5, which asked Acushnet to "identify all Prior Art and/or Prior Art Golf Balls that Acushnet contends affects or relates to the validity of the Bridgestone patents-in-suit." (Ex. D (Pls.' First Set of Interrogs. to Def. at 9)). The newly-identified prior art patents and Altus Newing Massy golf ball are facts that support that contention, along with the prior art previously raised.

### B.   The Court's August 3 Order Was Not Preclusive

Acushnet complied with the Court's Order when, on August 11, 2006, it disclosed and narrowed the invalidity contentions on which it was then relying. Nothing in that Order precluded supplementation of those responses at a later date. Rather, the purpose of the Order, as understood by Acushnet, was to eliminate any references on which Acushnet did not actually intend to rely, not to preclude Acushnet from pursuing additional investigation and discovery on its defenses. On August 11, both sides were still engaged in extensive fact discovery; and claim construction positions remained opened until November 1. It is thus implausible to suggest, as Bridgestone does, that the Court's August 3 Order was intended to forever foreclose Acushnet from supplementing its invalidity defenses based upon information gathered during ongoing discovery.[2]

---

[2] Bridgestone admits that the Court's August 3 Order did not apply to prior art golf balls. (*See* D.I. 270 at 2, n.2). Thus, even if Bridgestone were correct that the Order was

3

### C.     Acushnet Was Diligent In Asserting The Newly-Identified Prior Art

As already fully briefed, Acushnet diligently and timely disclosed the newly-identified prior art after it became aware of their relevance to invalidity of Bridgestone's '791 and '707 patents. (*See* D.I. 262 at 3-5, Ex. A; D.I. 272 at 7-8). Acushnet's previous knowledge of the existence of the prior art does not demonstrate a lack of diligence, as Bridgestone contends. Rather, while Acushnet has known of Bridgestone's Altus Newing Massy golf ball and Bridgestone's U.S. Patent No. 5,779,563 ("the '563 patent") for some time, there was no reason for Acushnet to suspect that either of those references disclosed core hardness gradients that would invalidate the '707 and '791 patents.

As the Court may recall, Bridgestone's '707 and '791 patents claims a core hardness gradient, which is the difference in hardness of the core between certain points ranging from the surface of the core to its center. Acushnet's earlier competitive testing of the Altus Newing Massy golf ball, however, measured the hardness at the core surface, but not at any other point, which would have been required to establish a gradient. (*See* D.I. 270 at Exs. C and D). Similarly, the '563 patent does not explicitly mention the hardness gradient of its cores. (*See* D.I. 270 at Ex. B)[3]. Thus, while Acushnet was aware of those references, it had not identified them as potentially anticipating the '707 and '791 patents until mid-November 2006, when tests were conducted and results obtained.

Nor does Acushnet's general practice of reviewing patents suggest any lack of diligence. While it is true that Jeffrey Dalton, Acushnet's Vice President of Intellectual Property, typically reviews competitors' patents, his review is designed to identify any *infringement* issues for Acushnet's products. (Ex. E (Dalton 8/23/06 Dep. at 13:16-27:1)). There is no suggestion that Mr. Dalton's review is or was ever intended to

---

preclusive, it does not preclude Acushnet from relying on Bridgestone's Altus Newing Massy golf ball as prior art.

[3] In fact, none of the newly-identified prior art explicitly refers to a hardness gradient.

4

identify *invalidity* positions based on one competitive patent against another competitive patent, much less that he specifically did so with the prior art in question.

Thus, Bridgestone's argument appears to be that Acushnet somehow should have known that the prior art disclosed the hardness gradient based on simple knowledge of the prior art itself. The absurdity of that position is underscored by the fact that Bridgestone – who was in a much better position to know the relevance of its own prior art against its '707 and '791 patents – failed to disclose it in response to Acushnet's interrogatories. Acushnet's Interrogatory No. 8 asked Bridgestone to "[i]dentify all known prior art to the Bridgestone Patents ...." (Ex. F (Def.'s First Set of Interrogs. to Pls. at 7)). Acushnet's interrogatories defined "prior art" as "all ... patents [and] physical specimens ... relating to the subject matter of the Bridgestone Patents ... and existing or occurring at any time before the filing of the Bridgestone Patents such as to be potentially relevant under any subsection of 35 U.S.C. §§ 102 OR 103." (*Id.* at 4). Bridgestone, however, never identified the subject prior art in any of its responses to that interrogatory. (*See* Ex. G (Pls.' Responses to Def.'s First Set of Interrogs. at 13); Ex. H (Pls.' Second Supplemental Responses to Def.'s First Set of Interrogs. at 5)). As one court has noted, "[a] party that fails to disclose information in a discovery response has little room to complain of the requesting party's timeliness when the requesting party later discovers the same information through the requesting party's own research." *Alt v. Medtronic, Inc.*, 2006 U.S. Dist. LEXIS 4435, at *11-16 (E.D. Tex. Feb. 1, 2006) (Ex. I) (D.I. 262 at Ex. Q).

Had Acushnet not uncovered Bridgestone's own anticipatory prior art, that highly material art would have remained undisclosed. Bridgestone now seeks to undo those efforts by precluding Acushnet's reliance on art that Bridgestone itself should have disclosed. While that would achieve the result Bridgestone intended with its silence on this prior art during discovery, that silence should not be rewarded.

5

## II. EVEN IF ACUSHNET'S DISCLOSURE WAS NOT TIMELY, THE COURT SHOULD ALLOW ACUSHNET TO RELY ON THE NEWLY-IDENTIFIED REFERENCES

Even assuming, for the sake of argument, that Acushnet's disclosure was untimely under the Court's August 3 Order, the Court should allow Acushnet to rely on the three newly-identified references. The Third Circuit Court of Appeals held that "the exclusion of evidence for violation of a discovery order is an extreme sanction." *In re TMI Litig.*, 193 F.3d. 613, 721 (3d Cir. 1999) (citations omitted). In deciding whether to preclude evidence under Rule 37, the Third Circuit has identified five factors to consider: (1) the prejudice or surprise to a party against whom the evidence is offered; (2) ability of the injured party to cure the prejudice; (3) likelihood of disruption of trial; (4) bad faith or willfulness involved in not complying with the disclosure rules; and (5) importance of the evidence to the proffering party. *See Meyers v. Pennypack Woods Home Ownership Ass'n*, 559 F.2d 894, 905 (3d Cir. 1977).

### A. Bridgestone Will Not Be Prejudiced By Allowance of the Newly-Identified Prior Art

Here, the prejudice element of the first and second factors favor allowance of the references. When Acushnet filed its opening brief in support of the instant motion, it was seeking to rely on five prior art Bridgestone patents and Bridgestone's prior art Altus Newing Massy golf ball. Last week, however, Acushnet provided invalidity expert reports to Bridgestone and has dramatically scaled back the number of references on which it is relying. Concerning the '791 and '707 patents, in particular, Acushnet relies substantially on only five references total: three against the '791 patent (the '563, '247 and '935 patents), two of which are subject to the instant motion, and two against the '707 patent (the Altus Newing Massy ball and EP 0 633 043), one of which is subject to the instant motion. Thus, the actual burden on Bridgestone to respond to Acushnet's invalidity positions has been substantially reduced.

6

Bridgestone offers only token arguments of prejudice that are nonetheless easily cured. Bridgestone's claims that it "has had inadequate time to study and assess these new invalidity defenses and can no longer pursue fact discovery to assist in rebutting them." (D.I. 261 at 7). As its example, Bridgestone states that "had Bridgestone been made aware of Acushnet's defenses during fact discovery, it could have questioned the various technical fact witnesses about the prior art or related technologies or practices relevant to these new references." (D.I. 261 at 7). Bridgestone's efforts to "study and assess" the references should not be difficult, however, as the references themselves – and thus the technical fact witnesses and any related "technologies or practices" – are Bridgestone's. In any event, Acushnet has offered to let Bridgestone conduct any focused fact discovery Bridgestone reasonably believes is necessary to evaluate the references.

Bridgestone's additional claims of prejudice are hypocritical. Bridgestone first asserts that "there is no time for Bridgestone to conduct additional discovery for its experts to analyze and consider prior to submitting their rebuttal reports" that "because of Acushnet's late disclosure of the prior art, Bridgestone's experts cannot conduct testing to respond to the tests set forth in Acushnet's expert reports." (D.I. 270 at 10). Acushnet, however, disclosed the newly-identified prior art on December 18 – the same date on which Bridgestone disclosed its new noninfringement contentions. Thus both parties have approximately two months before rebuttal reports are due and approximately three months before the close of expert discovery in which to evaluate each other's disclosures. In addition, Bridgestone recently filed a now-pending motion to compel additional discovery from Acushnet, including a request for additional deposition testimony. (*See* D.I. 266). Thus, there is apparently "time for Bridgestone to conduct additional discovery" when it believes the results may be favorable, but "no time" when it believes the results may favor Acushnet.

### B. The Newly-Identified Prior Art Will Not Disrupt the Trial Schedule

Further, the newly-identified prior art will cause no disruption to the trial schedule. Trial is still about six months away. The Court has yet to issue a decision on claim construction, which may further change the invalidity landscape, and expert discovery, which is ongoing, does not close until March 16. In addition, Acushnet's expert reports on invalidity, which were served on January 16 and included some of the newly-identified references, have substantially reduced the number of prior art references on which it will rely at trial. Indeed, these expert reports have focused the case on the core group of patents and other prior art on which Acushnet will rely at trial and greatly reduced any claimed burden on Bridgestone.

Bridgestone's attempts to factually distinguish the cases cited by Acushnet miss the point, which is that courts have the authority to allow additional contentions at any point in the case when the prejudice to the non-moving party is minimal or non-existent. (*See* D.I. 262 at 7-8; D.I. 273 at 7). Here, Bridgestone will not be prejudiced by the addition of a few new prior art references and a golf ball to Acushnet's invalidity contentions with trial still over six months away, a *Markman* decision still to come, and expert discovery ongoing for another two months.

### C. Acushnet Did Not Disclose the Newly-Identified References In Bad Faith

As noted above, Acushnet became aware of the newly-identified prior art's relevance to the '707 and '791 patents only in November and promptly disclosed the art to Bridgestone on December 18. There is no suggestion that Acushnet delayed in its disclosure or intentionally withheld the prior art. (*See also* D.I. 272 at 7-8).

### D. The Newly-Identified Prior Art Is Critical to Acushnet

Finally, as already fully argued as well, and demonstrated by Dr. Felker's report, the prior art at issue is material to Acushnet's invalidity defenses against the '791 and

'707 patents (*see* D.I. 262 at Ex. B; D.I. 270 at Ex. A), for each of these references either anticipates relevant claims under 35 U.S.C. § 102(a), or would have rendered them obvious to persons of ordinary skill in the golf ball art under 35 U.S.C. § 103. (*Id.*)

Because of the prejudice Acushnet would suffer if not given the opportunity to present this invalidating prior art at trial, the Court should grant Acushnet leave to amend its invalidity contentions to add the newly-identified references.

### III.   CONCLUSION

For the foregoing reasons, the Court should determine that Acushnet timely disclosed the newly-identified prior art under the parties' agreement and that its August 3 Order does not preclude Acushnet from adding new invalidity contentions in light of Acushnet's newly-identified and highly-material prior art references. In any event, because the *Pennypack* factors favor Acushnet, Acushnet requests that the Court grant Acushnet leave to rely on the newly-identified references in its invalidity contentions.

Respectfully submitted,

POTTER ANDERSON & CORROON LLP

OF COUNSEL:

Alan M. Grimaldi
Joseph P. Lavelle
Kenneth W. Donnelly
Brian S. Seal
HOWREY LLP
1299 Pennsylvania Avenue, N.W.
Washington, DC  20004
Tel:  (202) 783-0800

Dated:  January 25, 2007
Public Version Dated:  February 1, 2007
775801 / 28946

By:  /s/ David E. Moore
Richard L. Horwitz (#2246)
David E. Moore (#3983)
Hercules Plaza, 6th Floor
1313 North Market Street
P. O. Box 951
Wilmington, DE  19899-0951
Tel:  (302) 984-6000
rhorwitz@potteranderson.com
dmoore@potteranderson.com

*Attorneys for Defendant Acushnet Company*

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

**CERTIFICATE OF SERVICE**

I, David E. Moore, hereby certify that on February 1, 2007, the attached document was hand delivered to the following persons and was electronically filed with the Clerk of the Court using CM/ECF which will send notification to the registered attorney(s) of record that the document has been filed and is available for viewing and downloading:

Jack B. Blumenfeld
Maryellen Noreika
Leslie A. Polizoti
Morris, Nichols, Arsht & Tunnell
1201 N. Market Street
Wilmington, DE 19801

I hereby certify that on February 1, 2007, I have Electronically Mailed the documents to the following:

Robert M. Masters
Paul, Hastings, Janofsky & Walker LLP
875 15th Street, N.W.
Washington, D.C. 20005
RobMasters@paulhastings.com

/s/ David E. Moore
Richard L. Horwitz
David E. Moore
Potter Anderson & Corroon LLP
Hercules Plaza – Sixth Floor
1313 North Market Street
P.O. Box 951
Wilmington, DE 19899-0951
(302) 984-6000
rhorwitz@potteranderson.com
dmoore@potteranderson.com

680012 / 28946