# EXHIBIT A

# THIS EXHIBIT HAS BEEN REDACTED IN ITS ENTIRETY

# EXHIBIT B

# THIS EXHIBIT HAS BEEN REDACTED IN ITS ENTIRETY

# EXHIBIT C

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

BRIDGESTONE SPORTS CO., LTD.,   )
And BRIDGESTONE GOLF, INC.,     )
                                )
                                )       C. A. No. 05-132 (JJF)
         Plaintiffs,            )
                                )
    v.                          )       DEMAND FOR JURY TRIAL
                                )
ACUSHNET COMPANY,               )
                                )
         Defendant.             )

## ACUSHNET'S ANSWER AND COUNTERCLAIM

Defendant Acushnet Company ("Acushnet") hereby answers plaintiffs

Bridgestone Sports Co., Ltd. and Bridgestone Golf, Inc. (collectively "Bridgestone")

Complaint For Patent Infringement And Declaratory Judgment ("Complaint") as follows:

### PARTIES

1.    Acushnet admits the allegations of paragraph 1.

2.    Acushnet lacks knowledge or information sufficient to form a belief as to

the truth of the allegations of paragraph 2 of the Complaint and therefore denies the same.

3.    Acushnet admits the allegations of paragraph 3.

### JURISDICTION AND VENUE

4.    Acushnet admits that this action arises under the patent laws of the United

States. Acushnet admits that this court has jurisdiction over the subject matter of

Bridgestone's infringement counts pursuant to 28 U.S.C. §§ 1331 and 1338(a) and

Bridgestone's declaratory judgment counts (i.e., counts XI, XII, XIII, and XIV) pursuant

to 28 U.S.C. §§ 2201 and 2202.

5.    Acushnet admits that it resides in this district and is selling and offering to

sell its products, including certain golf balls that Bridgestone accuses of infringement of

## FIRST DEFENSE

### (Non-infringement)

130.    Acushnet does not infringe, has not infringed, and does not and has not induced infringement or contributed to infringement of any of the Bridgestone patents-in-suit.

## SECOND DEFENSE

### (Prosecution History Estoppel)

131.    Bridgestone is estopped from maintaining that any claim of the Bridgestone patents-in-suit covers any of the golf balls made, used, sold or offered for sale by Acushnet.

## THIRD DEFENSE

### (Invalidity under 35 U.S.C. §§ 101, 102, 103 and 112)

132.    Each claim of the Bridgestone patents-in-suit is invalid for failure to comply with one or more provisions of 35 U.S.C. §§ 101, 102, 103 and 112.

## FOURTH DEFENSE

### (Inequitable Conduct)

**The '125 Patent is Unenforceable.**

133.    The '125 patent is unenforceable because the inventors and prosecuting attorneys failed to disclose material prior art discovered during the prosecution of the Japanese equivalent to the '125 patent, JP9-228902. This Japanese application was filed on August 11, 1997. During the prosecution of this application, the Japanese Patent Office received a third party submission identifying at least one material piece of prior art, JP 09-56848. Based on this prior art, the Japanese Patent Office issued a Rejection Notice on December 26, 2000 and a Final Rejection on April 17, 2001. Although Bridgestone appealed the Final Rejection, this application was ultimately abandoned on March 10, 2003.

# EXHIBIT D

# THIS EXHIBIT HAS BEEN REDACTED IN ITS ENTIRETY

# EXHIBIT E

# THIS EXHIBIT HAS BEEN REDACTED IN ITS ENTIRETY

# EXHIBIT F

## IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF DELAWARE

| | |
|---|---|
| BRIDGESTONE SPORTS CO., LTD., AND BRIDGESTONE GOLF, INC., )<br><br>Plaintiff, )<br><br>v. )<br><br>ACUSHNET COMPANY, )<br><br>Defendant. ) | C.A. No. 05-132(JJF) |

### DEFENDANT'S FIRST SET OF INTERROGATORIES TO PLAINTIFF

Pursuant to Rule 33 of the Federal Rules of Civil Procedure, defendant Acushnet Company ("Acushnet") hereby requests that plaintiff Bridgestone Sports Co., Ltd. and Bridgestone Golf, Inc. (collectively "Bridgestone") answer the following interrogatories in the time required by law at the offices of Howrey LLP, 1299 Pennsylvania Avenue, NW, Washington DC 20004.

### DEFINITIONS

The following definitions apply to these requests:

1.    The term "Bridgestone" or "you" or "your" shall mean Bridgestone Sports Co., Ltd., Bridgestone Golf, Inc., and any parent, subsidiary, partner (including general and limited partners), member and/or affiliated entities, past or present, of Bridgestone, and any person or entity, past or present, acting on behalf of Bridgestone, including each of its present and former officers, executives, general partners, limited partners, directors, employees, attorneys, agents and/or representatives.

2.    The term "Acushnet" as used herein each shall refer to the named defendant, Acushnet Company and its present and/or former officers, directors, employees, agents, attorneys, and/or representatives.

3.     "Complaint" means Bridgestone's Complaint For Patent Infringement in the above captioned action.

4.     "Bridgestone Patents" means the patents that Bridgestone alleges Acushnet is infringing in its Complaint, namely:

U.S. Patent No. 5,252,652 ("the '652 patent");

U.S. Patent No. 5,553,852 ("the '852 patent");

U.S. Patent No. 5,695,413 ("the '413 patent");

U.S. Patent No. 5,743,817 ("the '817 patent");

U.S. Patent No. 5,782,707 ("the '707 patent");

U.S. Patent No. 5,803,834 ("the '834 patent");

U.S. Patent No. 5,813,924 ("the '924 patent");

U.S. Patent No. 6,634,961 ("the '961 patent");

U.S. Patent No. 6,679,791 ("the '791 patent"); and

U.S. Patent No. 6,780,125 ("the '125 patent").

5.     "Bridgestone Related Patents" means patents or patent applications related to any of the Bridgestone Patents, including all parents, continuations, continuations-in-parts, divisions, reissues, reexaminations, and foreign counterparts.

6.     "Acushnet Patents" means patents that Acushnet has asserted that Bridgestone is infringing in its Answer and Counterclaim, namely:

U.S. Patent No. 4,729,861 ("the '861 patent");

U.S. Patent No. 4,936,587 ("the '587 patent");

U.S. Patent No. 5,080,367 ("the '367 patent");

U.S. Patent No. 6,729,976 ("the '976 patent"); and

U.S. Patent No. 6,818,705 ("the '705 patent").

7.     "Acushnet Related Patents" means patents or patent applications related to any of the Acushnet Patents, including all parents, continuations, continuations-in-parts, divisions, reissues, reexaminations, and foreign counterparts.

2

8.    "Accused Products" means the products, services, actions, or activities of Acushnet that Bridgestone contends infringe, directly or indirectly, any of the claims of Bridgestone's Patents, including but not limited to the Titleist Pro V1®, Pro V1x™, NXT® Tour, NXT®, and DT SoLo, and the Pinnacle® Exception™ golf balls.

9.    "Documents" shall be defined as synonymous in meaning and equal in scope to the use of that term in Fed. R. Civ. P. 34(a) and applicable case law, and shall include "things," electronic mail, drawings and information in computer-readable format, invention disclosure documents, sketches, drawings, schematics, memoranda, drafts, reports, correspondence, records of tests, records of meetings, comments, edits, marginalia, notebook entries, and notes of any kind, and any other "writings" and "recordings" as defined in Fed. R. Evid. 1001.

10.    "Thing" shall be defined as synonymous in meaning and equal in scope to the use of that term in Fed. R. Civ. P. 34(a), and includes any tangible object, other than a document.

11.    "Communications" or "Communicated" means all conveyances of information between any person or entity by or through any mode or medium including the spoken word, written or electronic correspondence, face-to-face meetings, and/or conveying information through third persons.

12.    "Referring or relating to" means making reference to, pertaining to, mentioning, discussing, representing, embodying, illustrating, describing, reflecting, supporting, negating, rebutting, contradicting, evidencing, and/or constituting.

13.    "Person" means: (a) any natural person or individual; or (b) any entity, whether business, legal, governmental, or other, regardless of whether or not for profit, including any corporation, partnership, sole proprietorship, organization, club, committee, joint venture, foreign corporation or foreign entity, or any associate, general partner, limited partner, employee, subsidiary, parent, or other affiliate of any such entity.

14.    "Prior Litigation" refers to any lawsuit, interference, arbitration, mediation, opposition proceeding, or any other dispute or adversarial proceeding involving either

3

Bridgestone or any other Assignors of Bridgestone, and any of the Bridgestone Patents or any Bridgestone Related Patents.

15.    "Prior Art" means all publications (including notes and slides from oral presentations, meeting abstracts, and/or posters), patents, physical specimens, uses, sales, offers for sales or other activities relating to the subject matter of any Bridgestone Patents (including activities relating to conception, reduction-to-practice, and/or derivation of any of the Claimed Subject Matter) and existing or occurring at any time before the filing of the Bridgestone Patents such as to be potentially relevant under any subsection of 35 U.S.C. §§ 102 or 103.

16.    "Commercial success," "long-felt need," "failure of others," "commercial acquiescence," "unexpected result," "improved result," and "new result" shall refer to the well-established secondary considerations used to respond to a 35 U.S.C. §103 argument of invalidity due to obviousness.

17.    "Asserted Claim" means any claim of the Bridgestone Patents that Bridgestone contends is infringed by Acushnet either directly, indirectly, literally, under the doctrine of equivalents, and/or in any other manner.

18.    "And" and "or" shall be construed either disjunctively or conjunctively, as necessary, to bring within the scope of the discovery request all responses that might otherwise be construed to be outside of such scope.

19.    "Each" shall include the word "every" and "every" shall include the word "each." "Any" shall include the word "all" and "all" shall include the word "any."

20.    "Includes," "including," or "such as" shall be used nonexclusively (i.e. to mean "including without limitation…" or "including, but not limited to,…").

21.    The use of the singular form of any word includes the plural and vice versa.

## INSTRUCTIONS

1.    These interrogatories shall be deemed to seek answers as of the date hereof and to the full extent of the Federal Rules of Civil Procedure. Furthermore, these interrogatories are

4

**INTERROGATORY NO. 6.**

Identify on a claim-by-claim basis, for each claim of the Bridgestone Patents identified in your responses to Interrogatory No. 1 above, any alleged dates of conception; any alleged subsequent diligence until reduction to practice; any alleged dates of actual reduction to practice of the claimed invention; any written descriptions or drawings of the claimed invention prepared prior to the filing date; the date of the first constructive reduction to practice of the subject matter defined by the claim; the names, titles, and place of work (at the time of their involvement and current) of all persons who were involved in connection with such conception, diligence, or reduction to practice; and the earliest effective filing date Bridgestone will assert for each such claim. State in detail all factual bases supporting Bridgestone's identification of each such date, and identify all persons, documents, and tangible things corroborating each such date.

**INTERROGATORY NO. 7.**

Describe in detail on a claim-by-claim basis, for each claim of the Bridgestone Patents identified in your responses to Interrogatory No. 1, the first public use, the first offer for sale, and the first sale which you are aware in the United States and in any foreign country of any product embodying the alleged claimed invention.

**INTERROGATORY NO. 8.**

Identify all known prior art to the Bridgestone Patents, and separately state as to each item of Prior Art the date that Bridgestone became aware thereof, all persons that were aware of each item of Prior Art, the circumstances under which Bridgestone became aware of each item of Prior Art, and whether and/or when and in what manner each item of Prior Art was disclosed to the PTO during the prosecution of the Bridgestone Patents.

**INTERROGATORY NO. 9.**

Identify and describe in detail all Bridgestone and/or all third-party products that have ever been sold commercially or used in the public that embody any of the claims of the

# EXHIBIT G

# THIS EXHIBIT HAS BEEN REDACTED IN ITS ENTIRETY

# EXHIBIT H

# THIS EXHIBIT HAS BEEN REDACTED IN ITS ENTIRETY

# EXHIBIT I

LEXSEE 2006 US DIST LEXIS 4435


ECKHARD U. ALT, MD Plaintiff vs. MEDTRONIC, INC., a Minnesota Corp., Defendant

CASE NO. 2:04-CV-370

UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF TEXAS, MARSHALL DIVISION

*2006 U.S. Dist. LEXIS 4435*

**February 1, 2006, Decided**

**COUNSEL:** [*1] For MD Eckhard U Alt, MD, Plaintiff: David J Healey, Ana Elena Kadala, Weil Gotshal & Manges -- Houston, Houston, TX; Franklin Jones, Jr, Jones & Jones -- Marshall Marshall, TX; Otis W Carroll, Jr, Ireland Carroll & Kelley, PC, Tyler, TX; Robert Christopher Bunt, Parker & Bunt, P.C., Tyler, TX; Sidney Calvin Capshaw, III, Brown McCarroll -- Longview, Longview, TX; Thomas John Ward, Jr, Law Office of T John Ward Jr PC, Longview, TX.

For Medtronic Inc, a Minnesota Corporation, Defendant: Samuel Franklin Baxter, Attorney at Law, Marshall, TX.

For MD Eckhard U Alt, MD, Counter Defendant: David J Healey, Weil Gotshal & Manges -- Houston, Houston, TX.

**JUDGES:** LEONARD DAVIS, Judge.

**OPINION BY:** LEONARD DAVIS

**OPINION:**

### MEMORANDUM OPINION AND ORDER

Defendant, Medtronic, Inc. ("Medtronic"), has filed a Motion for Leave to Amend its Preliminary Invalidity Contentions (Docket No. 94). For the reasons set forth below, the Court **GRANTS** Medtronic's motion.

### BACKGROUND

Dr. Eckhard Alt ("Alt") filed suit against Medtronic on October 15, 2004 alleging infringement of four patents, *U.S. Patent Nos. 5,014,700* ("the 4,700 patent"), 5,031,615 ("the 615 patent"), 6,076,014 ("the 014 patent"), [*2] and 6,249,700 ("the 9,700 patent"). Pursuant to the Court's Docket Control Order, Alt timely filed his Preliminary Infringement Contentions on February 28, 2005. Similarly, Medtronic timely filed its Preliminary

Invalidity Contentions on March 30, 2005 identifying roughly thirty prior art references. On September 23, 2005, Medtronic's counsel sent a letter to Alt's counsel notifying Alt of six additional prior art references discovered by Medtronic relating to the 014 and 9,700 patents:

. U.S. Patent Number *5,193,550*: "Method and apparatus for discriminating among normal and pathological tachyarrhythmias." Filed: November 30, 1990; Issued: March 16, 1993;

. Yee, R., et al.; "Initial Clinical Experience with the Pacemaker-Cardioverter-Defibrillator," THE CANADIAN JOURNAL OF CARDIOLOGY, Vol. 6, No. 4, May 1990;

. Bonnet, C.A., et al., "Long-Term Efficacy of Antitachycardia Pacemaker and Implantable Defibrillator Combination," PACE, Vol. 14, No. 5, Pt. I, May 1991;

. Saksena, S., "The Implantable Cardioverter-Defibrillator: Future Directions," Chapter 48 in IMPLANTABLE CARDIOVERTER-DEFIBRILLATORS: A COMPREHENSIVE TEXTBOOK, (N.A. Mark Estes III, ed., 1994);

. [*3] Saksena, S., "New Generations of Implantable Pacemaker Defibrillators for Ventricular and Atrial Tachyarrhythmias," ARCHIVES DES MALADIES DU

COEUR ET DES VAISSEAUX, Vol. 89, February 1996; and

. June 30, 1997, Business Wire Press Release, "Guidant announces first implants of VENTAK AV II DR defibrillation system in Europe."

Medtronic's letter stated: "In light of the upcoming deadline for the parties to serve their P.R. 3-6 final contentions, we believe there is no need to amend and/or supplement Medtronic's P.R. 3-3 Preliminary Infringement Contentions with the foregoing information. If you disagree with this approach, please let us know in writing within five (5)·days hereof." Additionally, on October 12, 2005, Medtronic's counsel sent Alt's counsel a letter supplementing the September 23, 2005 letter and identifying two additional prior art references:

. U.S. Patent Number *5,792,183*: "Combination Pacemaker and Defibrillator Having Dynamic Ventricular Refractory Period." Filed January 27, 1997; Issued: August 11, 1998; and

. U.S. Patent Number *6,128,529*: "Device and Method Providing Pacing and Anti-Tachyarrhythmia Therapies." Filed January 29, 1997; Issued: [*4] October 3, 2000.

The October 12th letter also indicated that Medtronic did not intend on providing the additional prior art before serving its Final Invalidity Contentions. Alt did not respond in writing to either of Medtronic's letters. On October 21, 2005, Alt's counsel informed Medtronic's counsel that it would object to Medtronic adding the new prior art references in its Final Invalidity Contentions and that Alt would oppose a motion for leave to amend Medtronic's Preliminary Invalidity Contentions. Medtronic filed its motion on November 11, 2005 requesting leave to amend its Preliminary Invalidity Contentions pursuant to Patent Rule 3-7 to add the eight additional prior art references mentioned above. Alt claims that Medtronic has not shown the requisite good cause necessary to amend its Preliminary Invalidity Contentions.

**APPLICABLE LAW**

*Federal Rule of Civil Procedure 16(b)* requires a showing of good cause to modify dates set forth in the Court's scheduling order. *Fed. R. Civ. P. 16(b)* (providing in part, "a schedule [scheduling order] shall not be

modified except upon a showing [*5] of good cause and by leave of the district court . . . ."). Patent Rules are considered part of the Court's scheduling order; therefore, a party seeking relief must obtain "the Court's leave on a good cause showing to modify the Patent Rule's deadlines." *STMicroelectronics, Inc. v. Motorola, Inc., 307 F. Supp. 2d 845, 849 (E.D. Tex. 2004)*. "Patent Rule 3-7 incorporates *Rule 16(b)*'s good cause standard by stating amendment or modification of the Preliminary or Final Infringement Contentions or the Preliminary or Final Invalidity Contentions . . . may be made only by order of the Court, which shall be entered only upon a showing of good cause.'" *Id.* (quoting P.R. 3-7). "The good cause standard requires the party seeking relief to show that the deadlines cannot reasonably be met despite the diligence of the party needing the extension.'" *Id. at 850* (quoting *S & W Enters., L.L.C. v. Southtrust Bank of Ala., NA, 315 F.3d 533, 535 (5th Cir. 2003))*. A trial court has broad discretion in allowing scheduling order modifications. *Id.* The Court should consider four factors when determining whether to allow a scheduling order modification: [*6] (1) the explanation for the failure to meet the deadline; (2) the importance of the thing that would be excluded; (3) potential prejudice in allowing the thing that would be excluded; and (4) the availability of a continuance to cure such prejudice. *Id.* (citing *S & W Enter., L.L.C., 315 F.3d at 535-36*).

**ANALYSIS**

Medtronic's Explanation for Its Failure to Meet the Deadline

Medtronic argues that its inability to identify the additional prior art references before filing its Preliminary Invalidity Contentions was not unreasonable. Medtronic claims that it only had five months from the date the suit was filed and one month from the date Alt filed its Preliminary Infringement Contentions to identify prior art to include in its Preliminary Invalidity Contentions. Medtronic argues that Alt's infringement claims were very broad and unclear during the first four months of the lawsuit and that it was not until Medtronic received Alt's Amended Preliminary Infringement Contentions, *Markman* briefing, and Technology Tutorials in June through August of 2005 that Medtronic could confidently focus its prior art searches to only those devices using accelerometer-based [*7] activity sensors. Alt argues that the accelerometer has clearly been at issue from the beginning of the case in that claim two of the 4,700 patent indicates that the detecting means includes an "accelerometer." Alt also contends that accelerometer-based products have clearly been at issue throughout Alt's history of trying "to get paid" for his inventions. Medtronic responds that Alt's interpretation of accelerometer was much broader early in the case and included devices that

Case 1:05-cv-00132-JJF    Document 281-2    Filed 02/01/2007    Page 25 of 26

Page 3
2006 U.S. Dist. LEXIS 4435, *

measured vibrations. Medtronic's piezoelectric crystal activity sensor measures vibrations and is found in many of its devices. Consequently, more of Medtronic's pacemaker and defibrillator products were at issue in the case. Medtronic claims that it was not until June 12, 2005 that Alt eliminated Medtronic's devices with piezoelectric crystal activity sensors from the accused products in the case. Furthermore, Medtronic argues that Alt initially identified the corresponding structure of "means for detecting movements" as "activity sensor 3 or its equivalent" before narrowing its focus to "accelerometer" in its Opening *Markman* Brief filed on July 29, 2005.

Furthermore, Medtronic claims it did not learn [*8] that Alt intended to rely on a conception date that predated the effective filing dates for all of the patents-in-suit until April 6, 2005. Medtronic contends that this change required it to expand its prior art searches by nearly four years in the case of the 014 patent, whose filing date is August 1, 1997 and claimed invention date is October 7, 1993. Medtronic claims learning of the 1993 conception date required it to broaden its research to find prior art references that predated the 1993 conception date as opposed to a 1997 conception date. Alt claims that even if Medtronic was unaware of the 1993 conception date during its early searching, it had no effect on the range of years Medtronic searched. Alt also argues that Medtronic was not disadvantaged by not knowing Alt's alleged conception date in searching for prior art because "the earlier, the better" as far as prior art is concerned. Medtronic argues that prior art closely related in time to the conception date is usually the most similar and, therefore, the most relevant as it applies to invalidity.

Medtronic claims to have diligently collected and read books and articles on cardiac pacing and arrhythmia treatment and [*9] detection before turning certain articles over to its invalidity experts in August and September of 2005. The four articles referenced in the September 23, 2005 letter above are the product of this process. Alt argues that Medtronic was not diligent in researching articles and had previous insight into Alt's infringement claims. Alt basis this conclusion on the fact that Medtronic admits that its own in-house counsel investigated the asserted patent claims in 1999 and 2003 and in some cases as far back as 1990. Medtronic points out that the in-house analysis Alt refers to related to infringement and did not concentrate on invalidity issues related to Alt's patents. Medtronic claims it did not have a reason to research prior art until the present suit was filed.

Medtronic also claims it continued to interview current and former Medtronic employees with possible knowledge of facts relevant to the lawsuit after filing its Preliminary Invalidity Contentions. In September 2005,

while interviewing Ed Duffin, a Medtronic Employee, Medtronic learned that Cardiac Pacemakers, Inc. ("CPI") had released a rate responsive implantable cardioverter defibrillator ("ICD") called the Ventak AV II DR. [*10] Upon further research, Medtronic's counsel discovered a press release indicating that the Ventak device used an accelerometer as its activity sensor. Consequently, Medtronic discovered two Ventak-related patents, U.S. Patent Nos. *5,792,183* and *6,128,529*. Medtronic then concluded that the Ventak patents and device were potential prior art to both the 014 and 9,700 patents-in-suit. Additionally, Medtronic's interviews with Mr. Duffin led it to conclude that *U.S. Patent No. 5,193,550* ("the *550* patent"), a Medtronic patent, was also potential prior art to 014 and *9,700 patents*-in-suit.

Alt claims that Medtronic's was not diligent in asking for information from its own employees once the suit was filed, evidenced by the fact that Medtronic waited until September to interview "Medtronic technical people." Alt claims that the Ventak product should not have been a "new discovery" to Medtronic because the product was made by one of Medtronic's direct competitors and was first used in Europe in 1997. Medtronic responds that its delay in discovering the Ventak product and patents was due to Alt's failure to identify the Ventak products in answers to interrogatories requesting information [*11] on all licensees using Alt's patents and prior infringement assertions relating to the patents-in-suit.

Medtronic has shown that it was diligent in its attempts to discover relevant prior art before and after the filing of its Preliminary Invalidity Contentions. Alt apparently had a broader definition of activity sensor at the beginning of the case, which directed Medtronic's research to a larger spectrum of devices than are presently at issue in the case. Medtronic's discovery of more relevant prior art after narrowing a key issue in this complex and document intensive case is not surprising. Alt's argument that Medtronic's prior art search related to the 014 patent was not effected by its delayed knowledge of the 1993 conception date is not persuasive. Upon learning of Alt's 1993 conception date, Medtronic needed to find prior art predating the 1993 conception date. The closer in time prior art is to the conception date the more relevant the prior art is likely to be in terms of invalidity. In complex litigation such as the present case, each party relies heavily on the discovery responses of the opposing party to help guide future research. A party that fails to disclose information [*12] in a discovery response has little room to complain of the requesting party's timeliness when the requesting party later discovers the same information through the requesting party's own research. Thus, it appears Alt hindered Medtronic's ability to meet the March 30 deadline. Furthermore, the fact that Ventak

2006 U.S. Dist. LEXIS 4435, *

was made by a competitor of Medtronic does not ensure that Medtronic actually had knowledge of the product prior to this lawsuit. In the context of the circumstances described above, it is not unreasonable that Medtronic could not meet the March 30, 2005 Preliminary Invalidity Contentions deadline with regards to the additional prior art references.

The Importance of the Additional Prior Art References

Medtronic argues that the Ventak patents and press release are particularly important to this case in that they show a prior invention of an ICD using an accelerometer by someone other than the alleged inventor, as well as prior knowledge of such a product within the United States. Both of these determinations could potentially have a strong impact on Alt's claims related to accelerometer-based devices. Medtronic claims that the *550* patent is important in that it evidences [*13] Medtronic's independent and earlier invention of the technology that Alt claims in the 014 and 9,700 patents. Such evidence supports Medtronic's claim that it was not knowingly and willfully infringing by copying Alt's technology. Finally, Medtronic claims that the four articles demonstrate that rate-responsive capabilities in an ICD were known to the medical world before Alt's alleged invention. Medtronic contends that these prior art references are very important to its ability to mount a defense to Alt's infringement claims and that Medtronic would suffer significant prejudice in the event it was not allowed to present these references. The Court is persuaded by Medtronic's arguments.

The Potential Prejudice to Alt in Allowing the Additional Prior Art References

Medtronic claims that Alt would not suffer any potential prejudice by the addition of the eight prior art references. Medtronic argues that Alt had notice of Medtronic's intentions to claim invalidity of its patents and of the additional prior art references since September 23 and October 12, 2005. Alt argues that he will be prejudiced by not being able to account for these references in his claim construction [*14] briefing *and Markman* arguments. Alt relies on language from the Court's Order of October 28, 2005 denying Alt's motion to amend its infringement contentions that states, "Considering that the claim construction briefing and the *Markman* hearing have already concluded, a continuance is not likely to remedy any potential prejudice that [the party opposing the motion to amend] might suffer." The present situation is distinguishable from that addressed by the Court in Alt's motion to amend its Preliminary Infringement Contentions. In Alt's motion, he requested leave to

amend his Preliminary Infringement Contentions to add a new claim. The addition of prior art references post *Markman* do not have the same implications upon *Markman* briefing and arguments as the addition of a patent claim. Alt's position requires a *per se* rule that invalidity contentions cannot be amended after *Markman*. The Court is unwilling to adopt such a rule. Furthermore, Alt does not identify any particular arguments or additional claims that he would have asserted in response to the additional prior art references.

Alt also claims that he will be prejudiced because Medtronic has not yet disclosed [*15] its Rule 3-3 analysis of the prior art references and the initial expert report deadline was December 30, 2005 with a discovery deadline of February 10, 2006. Expert witness reports are now due on January 31, 2006 and the discovery deadline is now February 28, 2006. There is a potential that Alt could suffer prejudice in regards to these dates at this point in time. However, the fact that Alt has been aware of Medtronic's intent to add the additional prior art references since at least October 12 diminishes the likelihood that he would suffer prejudice. Alt had the opportunity to inform Medtronic that he objected to the addition of the prior art references in response to the letters sent by Medtronic in September and October of 2005. Alt did not take this opportunity. Alt chose to lay behind the log, and the Court does not consider Alt blameless for any prejudice he might suffer from the addition of the references. Additionally, any prejudice that Alt might suffer could be cured by a continuance, as discussed below.

Availability of a Continuance to Cure Such Prejudice

The Court is not convinced that Alt will suffer prejudice as a result of Medtronic's amending its Preliminary [*16] Invalidity Contentions. However, in the event that Alt does suffer any prejudice, it would likely arise in connection with the discovery deadline or Alt's ability to prepare expert witness reports. If the Court finds that Alt suffers such prejudice, it can easily be cured with an appropriate continuance of these deadlines.

## CONCLUSION

Medtronic has met the good cause standard required to amend its Preliminary Invalidity Contentions to add the eight additional prior art references listed above. Accordingly, the Court **GRANTS** Medtronic's Motion for Leave to Amend its Preliminary Invalidity Contentions.

February 1, 2006

LEONARD DAVIS