IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| BRIDGESTONE SPORTS CO., LTD., and BRIDGESTONE GOLF, INC., | |
| Plaintiffs, | C.A. No. 05-132 (JJF) |
| v. | **REDACTED VERSION** |
| ACUSHNET COMPANY, | |
| Defendant. | |

## BRIDGESTONE'S REPLY BRIEF IN SUPPORT OF ITS MOTION TO PRECLUDE ACUSHNET FROM RELYING ON UNTIMELY DISCLOSED PRIOR ART REFERENCES

MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Jack B. Blumenfeld (#1014)
Maryellen Noreika (#3208)
Leslie A. Polizoti (#4299)
1201 N. Market St.
P.O. Box 1347
Wilmington, DE 19801
(302) 658-9200
    *Attorneys for Bridgestone Sports Co., Ltd.*
    *and Bridgestone Golf, Inc.*

OF COUNSEL:

Robert M. Masters
Scott M. Flicker
Terrance J. Wikberg
Brandon M. White
PAUL, HASTINGS, JANOFSKY & WALKER LLP
875 15th St., N.W.
Washington, DC 20005
(202) 551-1700

Original Filed: January 25, 2007
Redacted Version Filed: February 1, 2007

i.

TABLE OF CONTENTS

|  | Page |
|---|---|
| TABLE OF AUTHORITIES | ii |
| STATEMENT OF FACTS | 1 |
| ARGUMENT | 3 |
| A. There Is No Good Reason Why Acushnet Didn't Timely Assert These References | 3 |
| B. Any Prejudice That Acushnet Will Suffer Is From Its Own Doing | 4 |
| C. Bridgestone Will Be Prejudiced Because Of Acushnet's Conduct | 5 |
| D. The Court Should Not Let Acushnet Violate Its Case Management Orders For No Reason | 6 |
| CONCLUSION | 8 |

ii.

## TABLE OF AUTHORITIES

CASES

*Astrazeneca AB v. Mutual Pharm. Co.,*
   278 F. Supp. 2d 491 (E.D. Pa. 2003) ..............................................................................2, 6, 7

*Philips Elecs. N. Am. Corp. v. Contec Corp.,*
   C.A. No. 02-123 (KAJ)..............................................................................................................4

*Praxair, Inc. v. ATMI, Inc.,*
   C.A. No. 03-1158-SLR, 2005 WL 3159054 (D. Del., Nov. 28, 2005).......................................7


RULES

Federal Rule of Civil Procedure 37 ........................................................................................3, 4

1.

## STATEMENT OF FACTS

Acushnet continues to assert two of the five "newly-identified" patents (the '563 and the '247 patents) against Bridgestone's '791 patent and the Altus Newing Massy ball against the '707 patent.  It asks the Court to excuse its untimely disclosure of its intent to rely on these references because it supposedly "became aware" of them and their "substantial relevance" only in November 2006 (D.I. 272, Acushnet Ans. Br. at 8) or maybe even December (D.I. 262, Acushnet Op. Br. at 4), depending on which brief you read.  Either date, however, is incorrect and wholly unsupported by the facts.  Acushnet knew about these patents and ball years ago before this litigation, and throughout it.  Acushnet withheld asserting them against the '791 and '707 patents until December 2006, when it would be too late for Bridgestone to be able to respond to its new invalidity contentions.

Acushnet has known about the '563 and '247 patents since at least 2002, when it repeatedly cited both of them during the prosecution of its own patent applications (*see* D.I. 271, Declaration of Brandon White, Ex. 1).  It cited the '563 patent 17 times, and the '247 patent 15 times (*id*.).

Although Acushnet asserts that it did not know about the '563 patent until November 2006, it produced five copies of that patent in this litigation in 2005 (D.I. 270, Bridgestone Ans. Br. at Ex. B).  In fact, Acushnet cited the '563 patent as prior art against other Bridgestone patents no longer in suit in its July 7, 2005 interrogatory responses (Ex. A at 25-26,

2.

37-42), and in its May 1, 2006 "final" invalidity contentions

        Acushnet knew about the Altus Newing Massy ball for years too.  Its invalidity

expert, Dr. Felker, explained that

        During this litigation, Acushnet asserted the Massy ball as prior art against

Bridgestone patents that are no longer in suit in interrogatory responses served on July 7, 2005

(*see* Ex. A at 37-42), and again on May 1, 2006

        Then, in September 2006, when objecting to some of Acushnet's 30(b)(6) topics,

Bridgestone brought to Acushnet's attention that it had not asserted the Massy ball against claim

1 of the '707 patent (Ex. D).  Acushnet protested Bridgestone's objection – not because it

claimed that the ball was relevant to the '707 patent – but because "we believe that the Altus

Newing Massy golf ball may be relevant to issues relating to the '817 patent" (Ex. E).[2]

---

[1]    Acushnet accuses Bridgestone of failing to disclose the '563 patent (D.I. 272, Acushnet Ans. Br. at 2).  In fact, Bridgestone produced three copies of it in this litigation, in August 2005 (Ex. C).

[2]

3.

In other words, Acushnet believed that the Massy ball invalidated Bridgestone's '707 patent no later than October 2006. Acushnet, however, did not amend its invalidity contentions until December 18 – months too late.

ARGUMENT

Federal Rule of Civil Procedure 37(c)(1) states that "[a] party that without substantial justification fails to disclose information required by Rule 26(a) or 26(e)(1) to amend a prior response to discovery as required by Rule 26(e)(2), is not, unless such failure is harmless, permitted to use as evidence at a trial...any...information not so disclosed." The *Pennypack* factors that Acushnet cites go to harmlessness.

When these factors are applied in patent cases instead of civil rights cases like *Pennypack*, courts need not be so "indulgent," especially when the case "involve[es] two large business entities, with expertise in their respective fields, and with highly competent counsel representing them." *Astrazeneca AB v. Mutual Pharm. Co.*, 278 F. Supp. 2d 491, 508-09 (E.D. Pa. 2003).

A.    There Is No Good Reason Why Acushnet Didn't Timely
       Assert These References

Acushnet knew about these references years before this litigation, but did not disclose to Bridgestone that it would rely on them until December 18, 2006. Acushnet tries to justify its failure by arguing that the references were "newly-identified" some time in November or December 2006. That is incorrect. It knew about them before, and earlier in, this litigation.

4.

Acushnet has not provided any good reason for why it took so long to assert these references. This is fatal under Rule 37:

> CMT's suggestion that it is permitted to supplement its discovery responses up to the day of trial…does not address the pertinent point: is there any reasonable excuse for its delay in bringing forward the material it wants to rely upon now? I have not heard it, if there is.

*Philips Elecs. N. Am. Corp. v. Contec Corp.*, C.A. No. 02-123 (KAJ), Memorandum Order at 3 (D. Del., Apr. 5, 2004) (D.I. 261, Bridgestone Op. Br. at Ex. G).

B.  Any Prejudice That Acushnet May Suffer Is From Its Own Doing

Acushnet argues under the *Pennypack* factors that it will be prejudiced if the Court does not allow it to rely on its belatedly disclosed references at trial because they "play a central role" in its case (D.I. 272, Acushnet Ans. Br. at 2). If that is true, however, it is only because of Acushnet's decision not to assert the patents and ball against Bridgestone's '791 and '707 patents during discovery.

5.

Bridgestone should not have to pay for it.

Moreover, it is difficult to see how Acushnet will be prejudiced if these patents and the Massy ball are excluded. Acushnet contends that "hardness gradients in golf ball cores were well known in the art" (D.I. 272, Acushnet Ans. Br. at 9). If that is the case, why the "bait and switch" to rely on these untimely disclosed references, instead of the scores of references it earlier identified? In addition, Acushnet's brief explains that the Massy ball is the embodiment of a counterpart of EP 0 633 043, which Acushnet asserted as prior art against the '707 patent (D.I. 272, Acushnet Ans. Br. at 8-9 n.2),

C.     Bridgestone Will Be Prejudiced Because Of Acushnet's Conduct

At the August 2, 2006 discovery conference, the Court ordered Bridgestone to narrow its asserted claims from eighty-seven to fourteen (Tr. at 7-8). It also ordered Acushnet to pare down its May 1 invalidity contentions (*see id.* at 37-38). Bridgestone chose its fourteen claims in reliance on the fact that the references in Acushnet's contentions were the universe of references that Acushnet could assert. It is now too late for Bridgestone to re-think its asserted claims in light of Acushnet's attempt to change its invalidity contentions.

Acushnet argues that it is unlikely that it will take Bridgestone long to "study and assess" these references, because they are Bridgestone's, and that Bridgestone will not be prejudiced because it will depose Dr. Felker (D.I. 272, Acushnet Ans. Br. at 2). Bridgestone, however, does not have sufficient time to re-create the experiments that Acushnet performed before it disclosed its reliance on the references, or to do tests of its own, before having to submit a rebuttal expert report on February 16, 2007.

6.

Acushnet's May 1, 2006 voluminous invalidity contentions focused Bridgestone on the references Acushnet cited in them – not on the references that Acushnet has now decided are the ones it will use at trial. Bridgestone did not "have any reason to include the topic of [these references] in its discovery strategy, or to include any questions about [them] in taking depositions, or in gathering its own evidence, or including [these references] among the topics that Plaintiff discussed with its experts." *Astrazeneca*, 278 F. Supp. at 501, 507; (*see* D.I. 73, Jan. 13, 2006 Hearing Tr. at 33) ("Now, they're not going to be able to sucker you and come in with a whole new body of factual support down the road, because the reason why we set a contention date is so that sets the parameters of your ongoing discovery.").

Acushnet argues that "the actual burden on Bridgestone to respond to Acushnet's invalidity positions has been substantially reduced" (D.I. 272, Acushnet Ans. Br. at 1). That makes no sense. Acushnet took a strategic risk early on to deluge Bridgestone with prior art, and waited to narrow its final invalidity contentions only during expert discovery. That risk caused Bridgestone to request relief concerning Acushnet's invalidity contentions three times, and caused Bridgestone to have to defend against a volume of contentions that Acushnet now concedes were not "final" even though they were supposed to be.

Bridgestone has been prejudiced because it selected claims to assert based on Acushnet's "final" invalidity contentions. That is uncurable. Attempting to cure the other prejudice only rewards Acushnet for its conduct.

D.  The Court Should Not Let Acushnet Violate Its Case Management Orders For No Reason

Acushnet argues that the "newly-identified" references will not disrupt the trial schedule, and cites cases that it says support the proposition that "[c]ourts have allowed patent infringement defendants to supplement their invalidity contentions in cases that have progressed

7.

significantly further than the present litigation" (D.I. 272, Acushnet Ans. Br. at 6-7).    As

explained in Bridgestone's Answering Brief, those cases do not stand for that proposition (*see*

D.I. 270 at 6-7).

       The Court should give no weight to this *Pennypack* factor.  As the Eastern District

of Pennsylvania stated, when deciding whether a late invalidity contention will be permitted, the

relevant issue is less the trial schedule and more whether the Court will excuse violations of its

orders (emphasis added):

> Although permitting evidence of the German 106 patent would not
> disrupt the orderly and efficient trial of this case, because no trial
> date has been set, this factor is not really at issue here.  The issue is
> not whether a witness can be called at trial, but rather whether a
> specific contention not asserted during discovery, or in expert
> reports, or in opening summary judgment briefs, should be
> considered if subsequently raised in the summary judgment
> process, and supported by expert 'Declarations' filed six months
> late.  To permit Defendant to introduce such a contention, when
> Defendant has offered no bona fide excuse for its dilatory conduct,
> would be simply to ignore the pre-trial scheduling orders….

*Astrazeneca*, 278 F. Supp. 2d at 508.  As explained in Bridgestone's Opening Brief, the judges in

this district regularly preclude parties from relying on contentions that were not disclosed during

discovery (*see* D.I. 261 at 5-6); *e.g.*, *Praxair, Inc. v. ATMI, Inc.*, C.A. No. 03-1158-SLR, 2005

WL 3159054 (D. Del., Nov. 28, 2005) ("Prior art references must be disclosed during fact

discovery and the parties must disclose their intent to rely thereon, regardless of whether or not

the opposing party is aware of the reference.").

       The original scheduling order required contention discovery to be completed

months before the end of fact discovery.  The Court then ordered Acushnet to provide final

invalidity contentions in August 2006.  Nevertheless, Acushnet did not assert these references –

which it knew about – until December 18, 2006, and still has not provided any good reason why.

8.

CONCLUSION

Bridgestone requests that the Court preclude Acushnet from relying on untimely

disclosed prior art references.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Leslie A. Polizoti (#4299)*

Jack B. Blumenfeld (#1014)
Maryellen Noreika (#3208)
Leslie A. Polizoti (#4299)
1201 N. Market St.
P.O. Box 1347
Wilmington, DE  19801
(302) 658-9200
*Attorneys for Bridgestone Sports Co., Ltd.*
*and Bridgestone Golf, Inc.*

OF COUNSEL:

Robert M. Masters
Scott M. Flicker
Terrance J. Wikberg
Brandon M. White
PAUL, HASTINGS, JANOFSKY & WALKER LLP
875 15th St., N.W.
Washington, DC  20005
(202) 551-1700

January 25, 2007
697867.3

## CERTIFICATE OF SERVICE

I certify that on January 25, 2007 I electronically filed the foregoing with the Clerk of the Court using CM/ECF, which will send notification of such filing(s) to the following:

Richard L. Horwitz, Esquire
POTTER ANDERSON & CORROON LLP
Hercules Plaza, 6th floor
1313 N. Market Street
Wilmington, DE 19899.

I further certify that I caused copies to be served upon the following on January 25, 2007 in the manner indicated:

### BY HAND AND E-MAIL

Richard L. Horwitz, Esquire
POTTER ANDERSON & CORROON LLP
1313 N. Market Street
Wilmington, DE 19801

### BY FEDERAL EXPRESS AND E-MAIL

Joseph P. Lavelle, Esquire
HOWREY LLP
1299 Pennsylvania Avenue, NW
Washington, DC 20004

*/s/ Leslie A. Polizoti (#4299)*
Leslie A. Polizoti (#4299)

## CERTIFICATE OF SERVICE

I certify that on February 1, 2007 I electronically filed the foregoing with the

Clerk of the Court using CM/ECF, which will send notification of such filing(s) to the following:

> Richard L. Horwitz, Esquire
> POTTER ANDERSON & CORROON LLP
> Hercules Plaza, 6th floor
> 1313 N. Market Street
> Wilmington, DE  19899.

I further certify that I caused copies to be served upon the following on February

1, 2007 in the manner indicated:

### BY HAND AND E-MAIL

> Richard L. Horwitz, Esquire
> POTTER ANDERSON & CORROON LLP
> 1313 N. Market Street
> Wilmington, DE  19801

### BY FEDERAL EXPRESS AND E-MAIL

> Joseph P. Lavelle, Esquire
> HOWREY LLP
> 1299 Pennsylvania Avenue, NW
> Washington, DC  20004

> /s/ Leslie A. Polizoti (#4299)
> Leslie A. Polizoti (#4299)