IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

BRIDGESTONE SPORTS CO., LTD., and
BRIDGESTONE GOLF, INC.,

                Plaintiffs,

        v.

ACUSHNET COMPANY,

                Defendant.

C.A. No. 05-132 (JJF)

**REDACTED –
PUBLIC VERSION**

## BRIDGESTONE'S REPLY BRIEF IN SUPPORT OF ITS
## MOTION TO COMPEL

MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Jack B. Blumenfeld (#1014)
Maryellen Noreika (#3208)
Leslie A. Polizoti (#4299)
1201 N. Market St.
P.O. Box 1347
Wilmington, DE 19801
(302) 658-9200
  *Attorneys for Bridgestone Sports Co., Ltd.
  and Bridgestone Golf, Inc.*

OF COUNSEL:

Robert M. Masters
Scott M. Flicker
Terrance J. Wikberg
Brandon M. White
PAUL, HASTINGS, JANOFSKY & WALKER LLP
875 15th St., N.W.
Washington, DC 20005
(202) 551-1700

Original Filing Date: January 30, 2007
Redacted Filing Date: February 13, 2007

# TABLE OF CONTENTS

| | | Page |
|---|---|---|
| TABLE OF CITATIONS | | ii |
| INTRODUCTION | | 1 |
| ARGUMENT | | 1 |
| A. | Bridgestone's Requests for Admission | 1 |
| B. | Bridgestone's Tenth 30(b)(6) Notice | 3 |
| C. | Bridgestone's Fifth, Sixth, Seventh and Eighth 30(b)(6) Notices | 5 |
| CONCLUSION | | 6 |

# TABLE OF AUTHORITIES

**CASES**

*Bayer AG v. Sony Elecs., Inc.,*
   C.A. No. 95-8 (JJF)................................................................................................6

*Kanaji v. Philadelphia Child Guidance Center of Children's Hosp.,*
   2001 WL 708898 (E.D. Pa. 2001) ........................................................................6

*Union Coal Cos. v. Powell Construction Co.,*
   839 F.2d 958 (3d Cir. 1988).................................................................................2

*United States v. Taylor,*
   166 F.R.D. 356 (M.D.N.C. 1996) ........................................................................6

**STATUTES, RULES & REGULATIONS**

Fed. R. Civ. P. 30(b)(6)................................................................................................6

Fed. R. Civ. P. 36........................................................................................................2

## INTRODUCTION

Acushnet does not argue that the subject matter of the discovery that Bridgestone seeks here is improper or irrelevant – in fact, it goes to the heart of proving infringement, evidence about the materials used to manufacture the accused Acushnet golf balls. Bridgestone has tried to get this information in many ways over the last year. It requested, for example, final manufacturing guidelines, process flows and specifications, core recipes, raw material sheets, and quality assurance specifications. It questioned witnesses during 30(b)(6) and individual depositions. It agreed to accept a written summary from Acushnet in lieu of deposition testimony. It also asked requests for admission.

But Acushnet produced many of the documents described above months after the September 1, 2006 document production cutoff. It did not provide 30(b)(6) witnesses who were properly prepared, and the witness who its 30(b)(6) designee identified could not answer questions either. Acushnet did not draft the summary it said it would. After procuring an extension of more than two months to do so, it also refused to answer most of Bridgestone's requests for admission.

## ARGUMENT

### A.    Bridgestone's Requests for Admission

The Scheduling Order (D.I. 18) authorized 150 requests for admission. On September 8, 2006, Bridgestone served 149 requests (D.I. 267, Bridgestone Op. Br. at Ex. A). Acushnet obtained an extension of more than two months to respond "so that we may answer as many as we can" (*id*. at Ex. B). In its December 18 responses, however, Acushnet refused to answer requests 68-149 on the basis that they exceeded 150.

2.

To facilitate discovery and trial, Bridgestone grouped the accused balls to create seven golf ball families.  Many of Bridgestone's requests for admission are directed to particular features of one or more of these families.  Although Acushnet argues that this violated Rule 36's requirement that requests for admission be "separately" set forth (D.I. 275 at 2), it does not challenge that Bridgestone properly grouped together the accused balls (after all, Acushnet acknowledges that it did that in requests for admission too (*id.*)).  Instead, Acushnet argues that a single request directed to, say, 3 golf ball families should be counted as 3 (or more) requests, because Rule 36 states that "requests for admission should be phrased so that they can be admitted or denied with minimal explanation" (*id.*).  As the Third Circuit has explained (in a case cited by Acushnet), this means that a request "should be such that it could be answered yes, no, the answerer does not know, or a very simple direct explanation given as to why he cannot answer."  *Union Coal Cos. v. Powell Construction Co.*, 839 F.2d 958, 968 (3d Cir. 1988).

REDACTED

That explanation has nothing to do with the requirement that requests should be phrased so they can be answered with minimal explanation.

REDACTED

**REDACTED**

**B.**    **Bridgestone's Tenth 30(b)(6) Notice**

Bridgestone's Tenth Notice relates to infringement, and generally to the core compositions of the accused balls.  Documents that are relevant to this topic include Acushnet's manufacturing guidelines, core recipes, and change notices.  Acushnet does not dispute that the subject matter of Bridgestone's Tenth Notice is relevant or that those are the relevant documents. It argues that Bridgestone already elicited testimony about these topics in an earlier Rule 30(b)(6) deposition:

**REDACTED**

Acushnet, however, produced a substantial amount of documents relating to core formulations, including entire databases of recipe changes and raw material data sheets, after Mr.

---

[1]                                    **REDACTED**

4.

Dalton and another witness identified additional similar types of documents during their depositions, and/or after the September 1, 2006 document production cutoff. These late documents matter – **REDACTED**

After Bridgestone tried, unsuccessfully, to elicit information about these documents and the topics in its Tenth Notice from other witnesses, it told Acushnet that it needed a witness on the Tenth Notice (*id.* at Exs. G, H). Acushnet refused.


**REDACTED**


The bottom line is that Acushnet produced relevant documents after the 30(b)(6) depositions and after the fact discovery cutoff, for which Bridgestone has not had the opportunity to elicit testimony.[2] The production of new documents is a legitimate reason for Acushnet to produce a witness – whether it thinks of the deposition as a "new" one pursuant to the Tenth Notice or a re-opening of a closed one pursuant to earlier notices.

Acushnet requests in a footnote that, if the Court orders another deposition, it "be narrowly restricted to those [late-produced] documents" (D.I. 275 at 5 n.2). Although Bridgestone maintains its request for a deposition on the topics in its Tenth Notice, it certainly agrees that it will not revisit testimony already provided.

---

[2]     In contrast, Bridgestone agreed to produce one of its employees for deposition, even though Acushnet's deposition notice was not timely served, because Acushnet alleged the deposition was necessary based on documents that Bridgestone produced at the end of the fact discovery period (*see* D.I. 267 at Ex. L, ¶ 3).

5.

### C.     Bridgestone's Fifth, Sixth, Seventh and Eighth 30(b)(6) Notices

**REDACTED**

Also belying its argument that these topics do not include its QAS/SPC system, Acushnet agreed at least twice to provide a written summary of its QAS/SPC data (*see* D.I. 267 at Exs. Q & K). After saying as recently as December 15, 2006 that it was "working today" to get the summary (id. at Ex. K), Acushnet did not provide it. Acushnet says that it "repeatedly" offered to make the entire QAS/SPC system available to Bridgestone "so that Bridgestone may review the fields with individual users" (D.I. 275 at 6). "Repeatedly" means on December 18

---

<sup>3</sup>

**REDACTED**

6.

and during the parties' meet and confer on January 8, 2007 (Ex. B) –

**REDACTED**

Acushnet has an obligation to produce a Rule 30(b)(6) witness with complete corporate knowledge. Fed. R. Civ. P. 30(b)(6) ("The persons so designated shall testify as to matters known or reasonably available to the organization."); *Kanaji v. Philadelphia Child Guidance Center of Children's Hosp.*, 2001 WL 708898, *2 n.4 (E.D. Pa. 2001) ("As noted, a corporation cannot avoid designating a Rule 30(b)(6) deponent by claiming that no individual employee possesses specific knowledge of plaintiff's claims."); *Bayer AG v. Sony Elecs., Inc.*, C.A. No. 95-8 (JJF), Order at 5 (Thynge, Oct. 23, 1998) ("An affirmative obligation exists when a Rule 30(b)(6) notice is served…for the noticed party to provide a witness or witnesses with the requisite knowledge and to prepare them to provide complete, knowledgeable and binding responses on behalf of the corporation") (Ex. D); *United States v. Taylor*, 166 F.R.D. 356, 361 (M.D.N.C. 1996) (same).

**REDACTED**

## CONCLUSION

For the foregoing reasons, Bridgestone requests an Order that: (1) Bridgestone's Requests for Admission Nos. 68-149 be deemed admitted, or, in the alternative, that Acushnet be ordered to answer all of them promptly and (2) Acushnet be compelled to provide witnesses with

respect to Bridgestone's Tenth Notice of Deposition and Fifth, Sixth, Seventh and Eighth Notices of Deposition.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Leslie A. Polizoti*

Jack B. Blumenfeld (#1014)
Maryellen Noreika (#3208)
Leslie A. Polizoti (#4299)
1201 N. Market St.
P.O. Box 1347
Wilmington, DE  19801
(302) 658-9200
*Attorneys for Bridgestone Sports Co., Ltd.*
*and Bridgestone Golf, Inc.*

OF COUNSEL:

Robert M. Masters
Scott M. Flicker
Terrance J. Wikberg
Brandon M. White
PAUL, HASTINGS, JANOFSKY & WALKER LLP
875 15th St., N.W.
Washington, DC  20005
(202) 551-1700

January 30, 2007
707667.3

**EXHIBIT A**

**SEALED**

EXHIBIT B

## Polizoti, Leslie

| | |
|---|---|
| **From:** | Seal, Brian [SealB@howrey.com] |
| **Sent:** | Monday, January 08, 2007 6:28 PM |
| **To:** | brandonwhite@paulhastings.com |
| **Cc:** | Donnelly, Ken; Polizoti, Leslie |

**Subject:** Re: Meet and Confer

Brandon -

With regard to the QAS issue, we informed you on December 18 that we could not identify the fields in the document you created. We further informed you, however, that you could send someone to Acushnet to familiarize yourself with the QAS system used by Acushnet. We heard no response from you until today. As Ken and I indicated, that offer remains open should you choose to accept it.

Regards,

Brian

Brian S. Seal
HOWREY LLP
1299 Pennsylvania Avenue, NW
Washington, DC   20004
T 202-383-6904
F 202-383-6610


-----Original Message-----
From: White, Brandon M. <brandonwhite@paulhastings.com>
To: Seal, Brian
CC: Donnelly, Ken; lpolizoti@mnat.com <lpolizoti@mnat.com>
Sent: Mon Jan 08 18:19:11 2007
Subject: Meet and Confer

Brian,

This is to memorialize the telephonic meet and confer we had this afternoon. Please let me know if anything below is incomplete or inaccurate.

   Tenth Notice: You continued to refuse to provide a witness for Bridgestone's Tenth Notice. We will file a motion to compel on this issue.

   Request For Admissions: You continue to refuse to answer all of Bridgestone's Requests for Admissions. We will file a motion to compel on this issue.

   Translations: You agreed to produce any translations of prior art documents relied upon by your expert with the exchange of expert reports.

   Samples / Eleventh Notice: You agreed to provide a response within 3-4 days of any questions we provided to you in writing regarding the samples produced by Acushnet. In view of you agreement to do this, we will not file the motion with respect to this issue. However, we reserve the right to file a motion should any response you provide continue to be deficient. Further, we reserve the right to supplement our expert reports to the extent your response on this necessitates if this cannot be completed prior to the exchange of opening expert reports.

   QAS/SPC: You stated that no one at Acushnet could identify the contents of the QAS/SPC Acushnet provided to us. You

1/30/2007

have agreed to provide this document for months, but only now, on the eve of the exchange of expert reports, state that you cannot provide the information. If this is accurate, then why was this issue not identified earlier? Mr. Donnelly suggested that I could have obtained the information we seek if I had "only asked the right questions." This seems to be at odds with the position that no one could possibly identify the data contained in the documents produced by Acushnet. Accordingly, we will file our motion to compel on this issue.


Regards,

Brandon



---

Brandon M. White, Esq. | Paul, Hastings, Janofsky & Walker LLP | 875 15th Street, N.W., Washington, D.C. 20005 | direct: 202 551 1754 | main: 202 551 1700 | direct fax: 202 551 0154 | brandonwhite@paulhastings.com | www.paulhastings.com <http://www.paulhastings.com/>


---

*********************************************************
IRS Circular 230 Disclosure:    As required by U.S. Treasury Regulations governing tax practice, you are hereby advised that any written tax advice contained herein was not written or intended to be used (and cannot be used) by any taxpayer for the purpose of avoiding penalties that may  be imposed under the U.S. Internal Revenue Code.
*********************************************************

This message is sent by a law firm and may contain information that is privileged or confidential. If you received this transmission in error, please notify the sender by reply e-mail and delete the message and any attachments.

For additional information, please visit our website at www.paulhastings.com.



-----------------------------------------------------------------------------------------
This email and any attachments contain information from the law firm of Howrey LLP, which may be co
The information is intended to be for the use of the individual or entity named on this email.
If you are not the intended recipient, be aware that any disclosure, copying, distribution or use of the con
If you receive this email in error, please notify us by reply email immediately so that we can arrange for

1/30/2007

**EXHIBIT C**

**SEALED**

# EXHIBIT D

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

BAYER AG,                          :
                                   :
              Plaintiff,           :
                                   :
       v.                          :    Civil Action No. 95-8-JJF
                                   :
SONY ELECTRONICS, INC.,            :
                                   :
              Defendant.           :

## ORDER

At Wilmington this **23rd** day of **October, 1998.**

### Background

This is a patent infringement case in which Bayer AG (Bayer) alleges that Sony

Electronics, Inc. (SEL) has infringed United States Patent No. 4,290,799 ('799 patent).

D.I. 1. Previously, this Court has addressed a number of discovery disputes that have

arisen between the parties despite their efforts to reach an accommodation. See D.I.

143, June 3, 1997 Order; D.I.162, August 25, 1997 Order. The Court has also held

periodic scheduling conferences with counsel, specifically two in February 1997 and

one in August 1997. See D.I. 129, transcript of February 13, 1997 conference, D.I. 131,

transcript of February 21, 1997 conference; D.I. 154, transcript of August 12, 1997

conference. The present discovery dispute involves Bayer's designation of a 30(b)(6)

witness.

### Bayer's Designation of a Rule 30(b)(6) Witness on Laches, D.I. 160, 161, 171, 172.

SEL moved on August 19, 1997 for sanctions against Bayer for Bayer's alleged

failure to produce Rule 30(b)(6) witness(es) competent to testify on 17 topics pursuant to the Federal Rules of Civil Procedure. D.I. 161, Ex. A at 157-162. The 30(b)(6) notice was dated January 10, 1997. Id. During the February 13, 1997, status conference, the Court addressed the concerns raised by both sides regarding the depositions of Bayer witnesses. The Court indicated the general standards it would be applying regarding depositions of important versus less significant witnesses, and specifically noted that more consideration in relation to the time needed would be given for the depositions of witnesses characterized as "important", including Rule 30(b)(6) witnesses. Counsel was encouraged to resolve the deposition issue among themselves by indicating those witnesses each party desired to depose and estimating the length of time needed for each deponent. D.I. 129 at 76-78. The subsequent status conference held on February 21, 1997, produced lengthy discussions regarding SEL's wish list for depositions. D.I. 131. The Court placed time limits upon the proposed depositions taking into account the potential overlap that might exist between an individual's deposition and a 30(b)(6) witness' testimony relating to laches. Id. at 55-64. Seven months later Bayer produced Dr. Lutz Leitner in Germany and designated him as its 30(b)(6) witness on the noticed topics. D.I. 171 at 1; D.I. 161, Ex. B. However, at his four day deposition held July 8, 1997 through July 11, 1997 he was unable to testify on 13 of the 17 topics contained in the deposition notice. D.I. 161, Ex. A at 157-162; D.I. 172, Ex. 9 at 162. SEL claims that Bayer's failure to either prepare Dr. Leitner, or present someone competent to testify on the remaining topics constituted a constructive failure to appear at the deposition. Further, SEL claims that counsel

2

spent considerable time preparing for the depositions and therefore is entitled to some kind of remuneration.

Bayer claims that SEL had received all of its corporate knowledge regarding the laches categories (the noticed topics) "through receipt of all relevant, non-privileged documents, responses to interrogatories and the deposition of the individuals directly and personally involved in the events." D.I. 171 at 1. In addition, Bayer offered to respond to any additional SEL requests and to convert individual depositions into Rule 30(b)(6) testimony. Id. Bayer argues that based upon prior discovery, SEL knew in advance which deponents personally participated in, and had knowledge of, the relevant events and information sought in the deposition notice. For instance, Bayer stated that interrogatory answers were drafted only after knowledgeable witnesses provided testimony which included references to other people and exhibits containing information on the noticed topics. Id. at 2. Further, a significant portion of Bayer's written response, as well as its oral argument, was devoted to laboriously outlining the other depositions during which the noticed topics were or could have been addressed. Id. at 6-7. Dr. Leitner, according to Bayer, was able to testify and spent considerable time on the subjects contained in some of the categories in the notice. All the remaining areas, according to Bayer, were covered by other earlier depositions, documents, or discovery techniques. Id. at 2, 4, 6-7. Finally, Bayer stated they did not learn that Dr. Leitner's knowledge of many of the topics was deficient until just a few days before his deposition was to begin. Id. at 4. Bayer, however, failed to inform SEL counsel until the final day of Leitner's deposition, and only after SEL decided to ask

3

questions addressed to the specifically noticed topics.

Allowable discovery under procedural rules includes document production, interrogatories, requests for admissions and depositions. None of the rules operate to the exclusion of the others. The fact that information has been obtained via interrogatories and/or requests for production does not mean depositions are either unnecessary or prohibited. Although the 1993 amendments to the discovery rules were intended to reduce the quantity of discovery to be taken in various forms, neither the amended rules nor the Advisory Committee Notes imply that using one form was intended to eliminate the others. In fact, Rule 30(b)(6) was not modified in 1993 when a number of sweeping changes occurred throughout the discovery rules. Further, the 1970 Advisory Committee Notes state that the then new Rule 30(b)(6) "should be viewed as an added facility for discovery, one which may be advantageous to both sides as well as an improvement in the *deposition process*." (emphasis added). Rule 30(b)(6) streamlines the discovery process by placing the burden of identifying *responsive* witnesses on the corporation to be deposed because it is clearly in the best position to identify the individual who would be most knowledgeable on specified topics. By such a designation, the corporation appears vicariously through its designee. Resolution Trust Corp. v. Southern Union Company, Inc., 985 F.2d 196, 197 (5th Cir. 1993). "If that agent is not knowledgeable about relevant facts, and the principal has failed to designate an available, knowledgeable, and readily identifiable witness, then the appearance is, for all practical purposes, no appearance at all." Id. Further, designating a witness having selected knowledge or in limited areas is not sufficient.

4

Buycks-Roberson v. Citibank Fed. Sav. Bank, 162 F.R.D. 338, 343 (N.D. Ill. 1995).  Nor does offering a sampling of documents and interrogatory answers by selecting what the noticed corporation considers to be the relevant material meet the requirements of the Rule. Id. An affirmative obligation exists when a Rule 30(b)(6) notice is served, in the absence of requesting a timely protective order, for the noticed party to provide a witness or witnesses with the requisite knowledge and to prepare them to provide complete, knowledgeable and binding responses on behalf of the corporation.  Id.; Marker v. Union Fidelity Life Ins. Co., 125 F.R.D. 121, 126 (M.D.N.C. 1989).  Bayer's attempt to "fix" its failure to anoint proper 30(b)(6) witnesses amounts to "self-selecting" discovery whereby the party being "discovered" gets to choose the method of discovery.  Neither the Federal Rules nor this Court countenance self-selecting discovery.

It is the finding of this Court that Bayer's "no harm, no foul" argument fails to address its obligations under Rule 30 (b)(6).  Its offer to transform individual depositions into 30(b)(6) discovery after the fact does not recognize the potential differences between the preparation for, and the taking of, "typical" depositions and those intended to be binding on the corporation. During other nondesignated, but possibly knowledgeable witnesses' depositions, SEL would not have been required to be primarily focused on those issues in its Rule 30(b)(6) notice, especially after having been assured by Bayer that another deponent specifically selected would address those topics.

It is the finding of this Court that Bayer failed to meet its obligation under Rule 30(b)(6).  Fed.R.Civ.P. 37(d) allows that "the court shall require the party failing to act or

5

the attorney advising that party or both to pay the reasonable expenses, including attorney's fees, caused by the failure unless... the failure was substantially justified or... other circumstances make an award of expenses unjust." Since no sufficient justification for failing to meet its obligations under Rule 30(b)(6) has been proffered by Bayer, awarding sanctions is appropriate because Bayer constructively failed to appear for a 30(b)(6) deposition. Such sanctions shall include *reasonable* attorney's fees and expenses caused by Bayer's failure. The more drastic measures permitted under Fed.R.Civ.P. 37 shall not be recommended because Bayer's actions did not rise to a level of culpability where such sanctions would be appropriate.

Recently, Judge Joseph J. Farnan, Jr. issued an order requiring Bayer to pay SEL's costs associated with various depositions taken in Germany. Dr. Leitner's deposition occurred during this trip. D.I. 238  Since SEL has already been reimbursed for all expenses associated with Dr. Leitner's deposition, the only additional entitlement which would enter in the sanctions calculation is *reasonable* attorney's fees. In order to determine the appropriate attorney's fees in this case, this Court must review the attorneys' contemporaneous time records associated with the deposition. *See* Wine Markets International, Inc. v. Bass, 977 F.Supp. 601, 606 (E.D.N.Y. 1997). Therefore, **IT IS ORDERED** that:

1. SEL shall provide the Court and opposing counsel the following information in the form of a sworn affidavit on or before Friday, November 6, 1998. The original affidavit containing the following information should be filed with the Clerk's office with a copy to the Magistrate Judge and opposing counsel:

6

a. Contemporaneously recorded attorney time records for preparation and execution of Dr. Leitner's deposition.

b. The hourly charge of each attorney that worked on the preparation and execution of Dr. Leitner's deposition, and a description of the purpose for each attorney's involvement.

c. A final total of the reasonable attorney's fees requested.

2. On or before Monday, November 16, 1998 Bayer shall:

a. Provide its response to SEL's affidavit regarding reasonable attorney's fees. Bayer's response shall be limited to four pages double space. The original of said response shall be filed with the Clerk's office with a copy to the Magistrate Judge.

b. Bayer shall designate another 30(b)(6) witness(es) prepared to testify regarding those topics which Dr. Leitner could not or was unable to address. Further, the location of the deposition(s) shall be in this forum, unless otherwise agreed to by the parties. However, if the parties agree to the depositions outside this forum, Bayer will be responsible for the SEL's reasonable expenses incurred for the deposition. The total time spent deposing the 30(b)(6) witness or witnesses shall not exceed 10 hours, unless otherwise agreed upon by the parties or pursuant to Court order. The deposition(s) shall not be taken any later than December 15, 1998 unless otherwise agreed to by the parties or pursuant

7

to Court order.[1]

_____
UNITED STATES MAGISTRATE-JUDGE

---

[1]It is hoped that the parties will recognize that the expenses associated with a "slash and burn, take no prisoners approach" to discovery pursued so far in this matter are unnecessary and unwarranted. In the future the parties are warned to avoid the nebulous line between proper and improper discovery disputes and techniques. Dancing on that line is likely to lead to costly results for very little return.

8

## CERTIFICATE OF SERVICE

I certify that on February 13, 2007 I electronically filed the foregoing with the Clerk of

the Court using CM/ECF, which will send notification of such filing(s) to the following:

> Richard L. Horwitz, Esquire
> POTTER ANDERSON & CORROON LLP
> Hercules Plaza, 6th floor
> 1313 N. Market Street
> Wilmington, DE 19899.

I further certify that I caused copies to be served upon the following on February 13,

2007 in the manner indicated:

### BY HAND & BY E-MAIL

> Richard L. Horwitz, Esquire
> Potter Anderson & Corroon LLP
> 1313 N. Market Street
> Wilmington, DE 19801

### BY FEDERAL EXPRESS & BY E-MAIL

> Joseph P. Lavelle, Esquire
> Howrey LLP
> 1299 Pennsylvania Avenue, NW
> Washington, DC 20004

> */s/ Leslie A. Polizoti*
> Leslie A. Polizoti (#4299)
> MORRIS, NICHOLS, ARSHT & TUNNELL LLP
> Wilmington, DE 19801
> (302) 658-9200
> lpolizoti@mnat.com