IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

BRIDGESTONE SPORTS CO. LTD.,    :
                                :
          Plaintiff,            :
                                :
     v.                         :     Civil Action No. 05-132-JJF
                                :
ACUSHNET COMPANY,               :
                                :
          Defendant.            :

---

Robert M. Masters, Esquire; Scott M. Flicker, Esquire; Terrance
J. Wikberg, Esquire and Brandon M. White, Esquire of PAUL,
HASTINGS, JANOFSKY & WALKER LLP, Washington, D.C.
Jack B. Blumenfeld, Esquire; Maryellen Noreika, Esquire and
Leslie A. Polizoti, Esquire of MORRIS, NICHOLS, ARSHT & TUNNELL
LLP, Wilmington, Delaware.

Attorneys for Plaintiffs, Bridgestone Sports Co., Ltd. and
Bridgestone Golf, Inc.

Alan M. Grimaldi, Esquire; Joseph P. Lavelle, Esquire; Kenneth W.
Donnelly, Esquire and Brian S. Seal, Esquire of HOWREY LLP,
Washington, D.C.
Richard L. Horwitz, Esquire and David E. Moore, Esquire of POTTER
ANDERSON & CORROON LLP.

Attorneys for Defendant, Acushnet Company.

---

**MEMORANDUM OPINION**

February 15, 2007
Wilmington, Delaware

Farnan, District Judge.

Pending before the Court is the Motion To Preclude Acushnet's Use Of Untimely Disclosed Prior Art References (D.I. 260) filed by Plaintiff, Bridgestone Sports Co., Ltd and Bridgestone Golf, Inc. (collectively "Bridgestone"). At the Motion Hearing held on February 2, 2007, the Court granted Bridgestone's Motion, outlined its rationale for the decision on the record, and indicated that a more detailed written analysis would follow. This Memorandum Opinion provides the more detailed analysis referred to by the Court at the Hearing.

## I.   BACKGROUND

### A.   The Parties

Plaintiff, Bridgestone Sports Co., Ltd. ("Bridgestone Sports") is a Japanese corporation organized and existing under the laws of Japan, with its principal place of business in Tokyo, Japan. (D.I. 2 at ¶ 1.) Plaintiff, Bridgestone Golf, Inc. ("Bridgestone Golf"), f/k/a Bridgestone Sports (U.S.A.), Inc., is a subsidiary of Bridgestone Sports Co., Ltd. with its principal place of business in Covington, Georgia. (Id. at ¶ 2.) Bridgestone was founded in 1931 and began producing golf balls in 1935. (D.I. 232 at 2.) Today, Bridgestone is engaged in the manufacture, marketing and sale of golf balls and golf ball products to all categories of golfers, including professionals and amateurs, males and females, and golfers with high and low handicaps. (Id.; D.I. 2 at ¶ 2.) As a result of their extensive

1

role in the golfing industry, Bridgestone has garnered a
substantial market share of the Japanese golf ball market and a
growing share of the golf ball market in this country.  (D.I. 232
at 2.)  Bridgestone's technology has been recognized throughout
the world, and Bridgestone is the owner of hundreds of U.S.
patents related to golf-ball technology.  (Id.)

Defendant Acushnet Company ("Acushnet") is a corporation
organized and existing under the laws of the State of Delaware,
with its principal place of business located in Fairhaven,
Massachusetts.  (D.I. 37 at ¶ 141.)  Acushnet manufactures and
sells a variety of golf balls and golf-related products in the
United States under the name brands Titleist®, Pinnacle®, Cobra®
and Footjoy®.  http://www.acushnetcompany.com (accessed on Feb.
14, 2007).  Acushnet is an operating company of Fortune Brands,
Inc., which touts its golf line as "the biggest player in the
golf industry" generating over $1 billion in annual sales.
http://www.fortunebrands.com/brands/golf.cfm. (accessed on Feb.
14, 2007).

B.   The Litigation

On March 7, 2005, Bridgestone filed this action against
Acushnet seeking monetary damages and injunctive relief based on
Acushnet's alleged infringement of ten patents held by
Bridgestone related to the technology contained in golf balls.
(D.I. 2.)  Specifically, Bridgestone asserts the following
patents:  United States Patent No. 5,252,652 (the "'652 patent");
United States Patent No. 5,553,852 (the "'852 patent"); United

States Patent No. 5,695,413 (the "'413 patent"); United States
Patent No. 5,743,817 (the "'817 patent"); United States Patent
No. 5,782,707 (the "'707 patent"); United States Patent No.
5,803,834 (the "'834 patent"); United States Patent No. 5,813,924
(the "'924 patent"); United States Patent No. 6,634,961 (the
"'961 patent"); United States Patent No. 6,679,791 (the "'791
patent"); and United States Patent No. 6,780,125 (the "'125
patent").  Bridgestone also seeks a declaratory judgment that
four patents allegedly owned by Acushnet are not infringed by
Bridgestone and are invalid.  These four Acushnet patents are
identified as United States Patent No. 4,729,861 (the "'861
patent"); United States Patent No. 4,936,587 (the "'587 patent");
United States Patent No. 5,080,367 (the "'367 patent"); and
United States Patent No. 6,729,976 (the "'976 patent").

Acushnet responded to Bridgestone's Complaint, denying
infringement, asserting a variety of defenses and raising fifteen
counterclaims against Bridgestone seeking (1) a declaratory
judgment of non-infringement and invalidity of the ten patents
asserted by Bridgestone, and (2) alleging infringement against
Bridgestone of the four Acushnet patents identified by
Bridgestone in its Complaint and an additional patent owned by
Acushnet, United States Patent No. 6,818,705 (the "'705 patent").
(D.I. 37.)  The parties have since reduced the number of patents-
in-suit to seven Bridgestone patents and four Acushnet patents.

3

On July 25, 2005, the parties entered into a Stipulated
Protective Order Regarding Confidentiality of Discovery Material.
Since that time, the parties have filed at least ten motions
concerning disputes that have arisen during the discovery phase
of this litigation.  In addition to the Motion Hearing held in
connection with the instant Motion and not including the initial
Rule 16 Scheduling Conference, the Court has conducted four
discovery conferences and/or teleconferences with the parties to
resolve the numerous disputes that have arisen.  At times, the
tone of the parties' submissions to the Court has been quite
contentious, with the Court scheduling a Show Cause Hearing with
respect to allegations by one of the parties that the other party
made "demonstrably false" statements.  (D.I. 157.)   The Show
Cause Hearing was ultimately cancelled following a letter of
apology to the Court by the parties which acknowledged the
Court's "concerns about the tenor of the pretrial practice, and
in particular the discovery letters, in this litigation" and
"recognize[d] that [the parties] have submitted accusatory
letters to the Court which should have been worded less
severely."  (D.I. 155.).

In connection with the parties' motions, the Court has made
a variety of discovery and other rulings, including orders
denying Acushnet's motion for bifurcation of these proceedings
(D.I. 72), requiring the parties to designate one lawyer per side
responsible for all discovery matters (D.I. 154 at ¶ 4),

4

requiring the parties to limit the claims asserted in this litigation (id. at ¶ 1), requiring Plaintiffs to designate the accused products by August 11, 2006 (id. at ¶ 2), and requiring Defendant to provide its invalidity defense with respect to the asserted claims by August 11, 2006 (id. at ¶ 3).  Pursuant to the Amended Scheduling Order, fact discovery closed on October 10, 2006.  A Markman hearing was held on November 29, 2006.  Expert discovery is scheduled to close on March 16, 2007, and case dispositive motions are due by April 13, 2007.  Trial is scheduled to commence on June 18, 2007.

  C. The Attorneys

  The parties to this action are represented by experienced counsel.  Bridgestone is represented by the Washington, D.C. office of Paul, Hastings, Janofsky and Walker LLP and the Delaware law firm of Morris, Nichols, Arsht & Tunnell LLP. Acushnet is represented by the Washington, D.C. office of Howrey LLP and the Delaware law firm of Potter Anderson & Corroon LLP.

  Each of the law firms representing the parties in this case have received national and/or state wide acclaim for their handling of complex patent litigation, being cited in numerous legal publications.  The attorneys all boast impressive credentials, including service as judicial law clerks, guest lecturers on intellectual property, professorships at distinguished universities, and authorship of articles and treatises on the law in their practice areas.

## II.   THE PARTIES' CONTENTIONS

By its Motion, Bridgestone contends that Acushnet violated
the Court's August 3, 2006 Discovery Order by adding six more
prior art references to its voluminous invalidity contentions on
December 14, 2006, approximately four months after the August 11
deadline set by the Court's Order.  Five of the references cited
by Acushnet are patents issued between July 1998 and July 2001,
which Acushnet now contends are prior art to Bridgestone's 791
patent.  The sixth reference added by Acushnet is the Altus
Newing Massy golf ball, which Acushnet asserts as prior art to
Bridgestone's '707 patent.  Bridgestone contends that Acushnet
was well-aware of these references prior to the Court's August
11, 2006 deadline, yet Acushnet never linked these five patents
to the '791 patent in its 187 pages of invalidity contentions
related to that patent, and never linked the Altus Newing Massy
golf ball to the '707 patents in the 198 pages of invalidity
contentions relevant to that patent.  Bridgestone contends that
Acushnet has not offered any reason for its delay in identifying
these known references and further contends that it will be
prejudiced if these references are allowed.  Specifically,
Bridgestone contends that it selected the claims it wishes to
assert in this litigation based on the references in Acushnet's
contentions, and "[i]t is too late for Bridgestone to re-think
its asserted claims in light of Acushnet's attempt to change its
invalidity contentions."  (D.I. 277 at 5.)

6

In response, Acushnet contends that three of the references originally cited by Acushnet, United States Patent No. 5,967,908 (the "'908 patent"); United States Patent No. 5,872,185 (the "'185 patent") and United States Patent No. 56,267,694 (the "'694 patent") have been rendered moot by the passage of time.  With respect to the remaining three references, Acushnet points out that two of these references are patents issued to Bridgestone, and the third is a golf ball made by Bridgestone.  Acushnet contends that Bridgestone failed to disclose these references during discovery and that Bridgestone will not be prejudiced by the addition of these references, because Bridgestone is presumably knowledgeable about its own patents and products.  Acushnet also contends that it only learned that these references were invalidating in November 2006, and the parties agreed to supplement their responses to contention interrogatories by December 18, 2006.  Therefore, Acushnet contends its disclosure of these references was not untimely.

## III. DISCUSSION

Bridgestone's motion raises discovery issues that are not unique to patent law in particular, and therefore, the Court must turn to the principles outlined by the Court of Appeals for the Third Circuit in adjudicating Bridgestone's Motion.  Micro Chem., Inc. v. Lextron, Inc., 317 F.3d 1387, 1390-91 (Fed. Cir. 2003). In the Third Circuit, the exclusion of critical evidence is considered an "'extreme' sanction, not normally to be imposed

absent a showing of willful deception or 'flagrant disregard' of
a court order by the proponent of the evidence." In re Paoli
R.R. Yard PCB Litig., 35 F.3d 717, 749 (3d Cir. 1994).  Thus,
evidence should be excluded sparingly and only in circumstances
involving litigation conduct that is clearly unprofessional or
inappropriate, and in circumstances creating prejudice to the
party against whom the evidence is offered.  Of course, these
circumstances should be weighed in the context of the particular
case before the Court, the specific conduct complained of, and
the nature of the evidence sought to be excluded.

In the context of considering the exclusion of testimony
under Rule 37, the Third Circuit has identified these factors and
circumstances more specifically as:  (1) the prejudice or
surprise to a party against whom the evidence is offered; (2) the
ability of the injured party to cure the prejudice; (3) the
likelihood of disruption to the trial schedule; (4) bad faith or
willfulness involved in not complying with the disclosure rules;
and (5) the importance of the evidence to the party offering it.
Meyers v. Pennypack Woods Home Ownership Ass'n, 559 F.2d 894, 905
(3d Cir. 1977).  The decision to exclude evidence lies within the
discretion of the Court.

Courts applying the Pennypack factors in the case of
sophisticated, complex litigation involving parties represented
by competent counsel have been less indulgent in their
application and more willing to exclude evidence without a strict

showing that each of the <u>Pennypack</u> factors has been satisfied. <u>Astrazeneca AB v. Mutual Pharm. Co.</u>, 278 F. Supp. 2d 491 (E.D. Pa. 2003).  As the Court has discussed, the parties to this litigation are sophisticated business entities, leaders in their field, who are represented by counsel well-versed in complex patent litigation.  Numerous and contentious discovery disputes have been brought to the Court by both parties, many of which the Court finds to have been more "strategic" in nature than substantive.  Considering these circumstances, as well as the nature of the evidence sought to be precluded, the Court has concluded that Acushnet should be precluded from relying on its untimely disclosed prior art references.

Acushnet contends that these references should be allowed because they are "critical" to its invalidity defenses.  However, in light of Acushnet's previous disclosures in this case, the Court finds Acushnet has similar invalidity evidence available to it such that the exclusion of this evidence will not cripple Acushnet's invalidity case.  Further, the Court finds that the references identified by Acushnet as supporting its invalidity contentions were available to Acushnet before the close of fact discovery and well-before the August 11 deadline set by the Court for Acushnet to provide Bridgestone "with any invalidity defenses with respect to the selected claims and the references relied upon . . ."  (D.I. 154 at ¶ 3.)  For example, Acushnet's own documents demonstrate that it was aware of the Altus Newing Massy

ball since 1994, and Acushnet kept a patent library of all patents issued to its competitors.  In light of this evidence, it is difficult for the Court to credit Acushnet's assertion that it only discovered that these references were invalidating in November 2006.  However, even if Acushnet's representations were accepted, the Court concludes that any lack of diligence by Acushnet is insufficient to excuse its delay.  See Primos, Inc. v. Hunter's Specialties, Inc., 451 F.3d 841, 851 (Fed. Cir. 2006) ("The district court prevented Hunter's Specialties from introducing the Aluminum Flap Call into evidence because it 'did not demonstrate diligence in attempting to locate the call during discovery' and because during discovery Hunter's Specialties did not assert that it was claiming the Aluminum Flap Call as invalidating prior art.  That determination was not an abuse of discretion.").

Further, the Court concludes that any prejudice suffered by Acushnet from its reliance on these references in the report of its expert witness, Dr. Felker, is prejudice that was caused by Acushnet's own actions.  Acushnet knew, prior to submitting Dr. Felker's report, that Bridgestone had filed this Motion seeking to preclude Acushnet from relying on these references.  Indeed, Acushnet also filed a Motion For Leave To Supplement Its Invalidity Contentions (D.I. 262) seeking to assert the same references that are at issue in this Motion.  Thus, Acushnet was aware that its ability to use these references was in dispute,

yet it chose to allow Dr. Felker to continue to utilize these
references in his expert report.

Moreover, the Court concludes that the prejudice to Acushnet
is outweighed by the prejudice that Bridgestone will suffer if
the references are allowed.  Acushnet contends that Bridgestone
will not be prejudiced, because the references it seeks to add
are Bridgestone's references.  However, Bridgestone's prior
knowledge of these references does not excuse Acushnet's failure
to timely disclose them.  See e.g., Praxair, Inc. v. ATMI, Inc.,
2005 WL 3159054, *4 (D. Del. Nov. 28, 2005) (acknowledging that
"[p]rior art references must be disclosed during fact discovery
and the parties must disclose their intent to rely thereon,
regardless of whether or not the opposing party is aware of the
reference").

The Court also agrees with Bridgestone that if Acushnet is
permitted to rely on these untimely identified references,
Bridgestone would be required to conduct additional fact and
expert discovery in order to formulate a proper response.  As
Bridgestone noted in its Reply Brief, it focused its attention
during discovery on the numerous references identified by
Acushnet in its validity contentions and not on these undisclosed
references.  As a result, any additional discovery that would be
required to afford Bridgestone a fair opportunity to respond
would necessarily require extensions of the deadlines set by the
Court in its Scheduling Orders.  While one could fairly

11

characterize the extensions that would be required as "moderate" in nature, the Court concludes that the additional time and expense that would follow are consequences which could have been avoided.  Accordingly, the Court finds no basis upon which to allow Acushnet to rely on these untimely disclosed references[1], and therefore, in the circumstances of this case, the Court will grant Bridgestone's Motion.

## IV.  CONCLUSION

For the reasons discussed in this Memorandum Opinion and the reasons set forth on the record by the Court at the February 2, 2007 Motion Hearing, the Court has granted Bridgestone's Motion To Preclude Acushnet's Use Of Prior Art References.

An appropriate Oral Order has been entered.

---

[1]   See e.g., AMEX, LLC v. Mopex, Inc., 215 F.R.D. 87 (S.D.N.Y. 2002) (granting motion to preclude plaintiff from supplementing its interrogatory answers to allege infringement of an additional patent claim after the close of fact discovery and just before exchange of expert reports where there was no justification for the delay and defendant was prejudiced because additional fact discovery would be required that would necessitate delays); Philips Elecs. N. Am. Corp. v. Contec Corp., C.A. No. 02-123 (KAJ), Mem. Ord. at 3 (D. Del. Apr. 5, 2004) (precluding party from using untimely produced documents at trial where there was no reasonable excuse for the delay and acknowledging that "an 'A' for effort [in complying with Rule 37] does not excuse [a party's] failure to abide by its disclosure obligations"); Astrazeneca AB v. Mutual Pharm. Co., 278 F. Supp. 2d 491, 508 (E.D. Pa. 2003) (excluding defendant's reliance on prior art patent where ensuing delay would not disrupt the trial date and no bad faith was shown, but defendant offered no excuse sufficient to ignore the Court's scheduling deadlines); Georgia-Pacific Corp. v. U.S. Gypsum Co., 1996 U.S. Dist. LEXIS 22616, *33-35 (D. Del. Dec. 27, 1996) (precluding defendants from advancing certain invalidity defenses because they failed to comply with discovery deadlines).