IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

BRIDGESTONE SPORTS CO., LTD., and
BRIDGESTONE GOLF, INC.,

                Plaintiffs,

      v.

ACUSHNET COMPANY,

                Defendant.

C.A. No. 05-132 (JJF)

**REDACTED –
PUBLIC VERSION**

## BRIDGESTONE'S OPPOSITION TO
## ACUSHNET'S MOTION FOR PARTIAL RECONSIDERATION

MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Jack B. Blumenfeld (#1014)
Maryellen Noreika (#3208)
Leslie A. Polizoti (#4299)
1201 N. Market St.
P.O. Box 1347
Wilmington, DE 19801
(302) 658-9200
   *Attorneys for Bridgestone Sports Co., Ltd.
   and Bridgestone Golf, Inc.*

OF COUNSEL:
Robert M. Masters
Scott M. Flicker
Terrance J. Wikberg
Brandon M. White
PAUL, HASTINGS, JANOFSKY & WALKER LLP
875 15th St., N.W.
Washington, DC 20005
(202) 551-1700

Originally filed: February 21, 2007
Redacted version filed: February 28, 2007

## TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES                                                      ii

NATURE AND STAGE OF THE PROCEEDING                                        1

SUMMARY OF ARGUMENT                                                       1

STATEMENT OF FACTS                                                        2

    A.   Acushnet Knew About The Excluded References For Years, But Now Blames Bridgestone Because It Did Not Realize Their Alleged Significance Until It Was Too Late                2

    B.   Acushnet Had Other Invalidity Contentions For The '791 Patent And Chose Not To Use Them                5

ARGUMENT                                                                  7

I.   ACUSHNET'S MOTION FOR PARTIAL RECONSIDERATION            7

    A.   Legal Standard                                       7

    B.   The Court Properly Excluded The '563 and '247 Patents   7

II.   ACUSHNET'S REQUEST FOR LEAVE TO FILE A SUPPLEMENTAL FELKER REPORT         11

CONCLUSION                                                                13

# TABLE OF AUTHORITIES

CASES

*AstraZeneca AB v. Mutual Pharm. Co.*,
  278 F. Supp. 2d 491 (E.D. Pa. 2003) ................................................................. 9-10

*In re Teligent, Inc.*,
  325 B.R. 134 (S.D.N.Y. 2005)..........................................................................7

*Karr v. Castle*,
  768 F. Supp. 1087 (D. Del. 1991)....................................................................7

*Minebea Co. v. Papst*,
  231 F.R.D. 3 (D.D.C. 2005)............................................................................12

*Mosaid Techs. Inc. v. Samsung Elecs. Co.*,
  362 F. Supp. 2d 526 (D.N.J. 2005) .................................................................12

*Pirelli Cable Corp. v. Ciena Corp.*,
  988 F. Supp. 424 (D. Del. 1998)......................................................................7

*Tristrata Tech., Inc. v. ICN Pharms., Inc.*,
  313 F. Supp. 2d 405 (D. Del. 2004)..................................................................7

RULES

Fed. R. Civ. P. 37(c)(1)..................................................................................7

## NATURE AND STAGE OF THE PROCEEDING

This is a patent infringement action brought by Plaintiffs Bridgestone Sports Co., Ltd., and Bridgestone Golf, Inc. ("Bridgestone") against Defendant Acushnet Company ("Acushnet") in March 2005. Opening expert reports were exchanged on January 16, 2007 and rebuttal expert reports were exchanged on February 20. The pretrial conference is scheduled for May 25, and trial begins on June 18.

On January 3, 2007, Bridgestone filed a Motion to Preclude Acushnet's Use Of Untimely Disclosed Prior Art References (D.I. 261). The Court granted Bridgestone's motion during the February 2, 2007 hearing, characterized it as a "serious matter" (Ex. A, Tr. at 4), and issued a Memorandum Opinion on February 16 (D.I. 288). On February 6, Acushnet moved for partial reconsideration, challenging only the Court's exclusion of the '563 and '247 patents (D.I. 283). In the alternative, Acushnet requested leave to supplement its invalidity expert's report (*id.*). This is Bridgestone's opposition to Acushnet's motion.

## SUMMARY OF ARGUMENT

1.    The Court's ruling is fully supported, factually and legally. Acushnet has acknowledged that the Court had the law "exactly correct" and has not presented any evidence that it did not already address in its earlier briefs. It is just asking for a "do over."

2.    The Court should not permit Acushnet to supplement the report of its invalidity expert, Dr. Felker. Acushnet – fully aware of Bridgestone's motion to preclude (and its own motion for leave) – chose not to include most of the references cited in its invalidity contentions in Dr. Felker's report in the first place, and it is too late now to add them.

<u>STATEMENT OF FACTS</u>

A.    Acushnet Knew About The Excluded References For Years, But Now Blames Bridgestone Because It Did Not Realize Their Alleged Significance Until It Was Too Late

Acushnet no longer contends that the '563 or '247 patents are "newly-discovered," or ████████████████████████████████████████████

████████████████████████████████████████. It had to change position – those statements are incorrect. Take, for example, the '563 patent. Bridgestone produced it early on in this case (D.I. 277 at n.1 & Ex. C). So did Acushnet (D.I. 270 at 3 & Ex. B). Bridgestone cited it in interrogatory responses (██████████████████████████████) (D.I. 278 at Exs. G, H (████████████████████████████ ██████). So did Acushnet (D.I. 277 at 1-2 & Ex. A). ████████████████████ ████████████████████████████████████████████ That unasserted patent, in fact, lists the '563 patent as a reference on its face (Ex. B). Despite all of that, Acushnet argues that it ████████████████████████████████████ ████████████████████████ Why?

Acushnet says that it wanted discovery about the hardness gradients that it believed were "inherently present" in Bridgestone's golf ball cores in connection with its prior art invalidity defense (D.I. 262 at 3-4), and that it ██████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

That testimony was before the close of fact discovery in August and October, but Acushnet did

not ████████████████████████████████ – much later and after the close of fact discovery.  Acushnet cannot excuse its own failure to understand two specific references – that were not even discussed at these depositions – by somehow trying to shift the blame to Bridgestone.

Moreover, given Acushnet's contention that core gradients are inherent in the manufacturing of golf ball cores (D.I. 283 at 3), Acushnet did not need any help from Bridgestone witnesses.  The '791 patent, according to Acushnet, ████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
██████████████████

That statement is flatly contradicted by Acushnet's own expert.  Dr. Felker explained in his report that ████████████████████████████████
████████████████████████████████████████████████████
████████

████████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████

████████████████████████████████████████████████████
████████████████████████████████████████████████████
██████████████████████████████████████

4.

    Although Bridgestone disagrees with him, according to Dr. Felker, it would be clear to one of skill in the art that ███████████████████████████████ ███████████████████████████████████████████████████ ███████████████████████████████████████████████████ ████████████████████████████████ Why was Acushnet able to assert the '935 patent, but not the '563 or '247, back then?

    In addition, Acushnet knew at least since 2000 that it should look to Bridgestone's patents for prior art concerning core gradients.  Just last week, on February 13, 2007, Acushnet informed Bridgestone that ██████████████████████████████████████ ███████████████████████████████████████████████████ ███████████████████████████████████████████████████ ████████████████████████████████.[1]  This demonstrates that Acushnet knew, years ago, that it should look to Bridgestone's patents for what it believed was potentially invalidating art.

---

[1] 

5.

B.    Acushnet Had Other Invalidity Contentions For The '791
      Patent And Chose Not To Use Them

In July 2005, Acushnet listed nine references in its invalidity contentions for the '791 patent, including ███████████████████████ In May 2006, Acushnet piled on more references, asserting that the '791 patent was obvious based on various, unspecified combinations of up to 49 references, and that four references were anticipatory (████████ ███████████████████████) (Ex. C).  Acushnet also contended that the '791 patent was invalid for indefiniteness, non-enablement and lack of written description (*id.*).

Acushnet then "supplemented" its contentions on December 18, 2006 to try to add the references at issue.[2]  It listed nine references as anticipatory, four of which were the same ones cited in May 2006 (Ex. F).  It also asserted that the '791 was obvious over various combinations of up to 48 references.  That was a full month before opening expert reports were due.  Even without the late-disclosed references, Acushnet had 48 references to use, four of which it had claimed were anticipatory since July 2005.

---

[2]    Acushnet argues in a footnote that its addition of new references was pursuant to the parties' agreement.  It is difficult to believe that Acushnet interpreted an agreement to supplement as an agreement to add more references, particularly after the Court's August 3, 2006 Order and Bridgestone's numerous earlier requests that Acushnet narrow its invalidity contentions.

Acushnet also argues that Bridgestone added new non-infringement contentions (D.I. 283 at 7 n.1).  Bridgestone, however, supplemented its non-infringement contentions to a claim that was already asserted by Acushnet, and its expert did not rely on any arguably new contentions in event.  In contrast, Acushnet added completely new prior art.  Furthermore, it is non-sensical that any prejudice Acushnet will suffer concerning its *invalidity* defense to *Bridgestone's* patents is "compounded" (*id.*) because Acushnet decided not to challenge Bridgestone's *non-infringement* defense to *Acushnet's* patents.  Acushnet made a strategic (and cost-effective) choice not to raise this issue – ████ ███████████████████████████████████████████████████████ ██████████████████████████████

On December 23, 2006, more than three weeks before opening expert reports were due, Bridgestone raised with Acushnet the issue of the improperly-added art (Ex. G). Then, two weeks before expert reports were due, Bridgestone filed its motion to preclude (D.I. 261). Acushnet filed a motion on the same day, asking the Court to allow it to rely on these references. In its January 3 motion, Acushnet told the Court that, without them, its "ability to mount a defense to these patents will be impaired" (D.I. 262 at 8).

Two weeks later, on January 16, 2007, Acushnet served Dr. Felker's report.  He relied on ███████████████████ to support his opinion that the '791 patent is invalid, and also opined that the '791 was not enabled and violated the written description requirement (D.I. 283, Ex. C. at 56-74).  As Acushnet emphasizes, ███████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████
██████████████████

Rebuttal expert reports were served on February 20, 2007.  The parties have agreed on, and completed, reciprocal testing of some of the physical samples relied on by the experts.  Because the Court granted the motion to preclude, neither the rebuttal reports nor the testing included anything relating to the '563 or '247 patents.  There is about one month left in expert discovery for depositions of almost a dozen experts.  After expert discovery closes on March 23, the parties have three weeks to prepare opening summary judgment briefs for April 13.  The pretrial order is due on May 22, a little over a month after that.  Trial begins on June 18.

ARGUMENT

I.     ACUSHNET'S MOTION FOR PARTIAL RECONSIDERATION

      A.     Legal Standard

"As a general rule, motions for reconsideration should be granted 'sparingly.'" *Tristrata Tech., Inc. v. ICN Pharms., Inc.*, 313 F. Supp. 2d 405, 407 (D. Del. 2004) (quoting *Stafford v. Noramco of Delaware, Inc.*, 2001 WL 65738 at *1 (D. Del. 2001)). The purpose of granting a motion for reconsideration is to "correct manifest errors of law or fact or to present newly discovered evidence." *Id.* Even if the court has committed one of these errors, however, there is no need to grant the motion if it would not alter the court's initial decision. *Pirelli Cable Corp. v. Ciena Corp.*, 988 F. Supp. 424, 455 (D. Del. 1998).

     A motion for reconsideration is not an opportunity to "accomplish [the] repetition of arguments that were or should have been presented to the court previously." *Karr v. Castle*, 768 F. Supp. 1087, 1093 (D. Del. 1991). These motions are not "do overs." *See In re Teligent, Inc.*, 325 B.R. 134, 136 (S.D.N.Y. 2005). The fact that Acushnet was not "as articulate as [it] could have been to explain the importance of this" is not a reason to grant reconsideration (Ex. A, Tr. at 11).

      B.     The Court Properly Excluded The '563 and '247 Patents

Federal Rule of Civil Procedure 37(c)(1) states that "[a] party that without substantial justification fails to disclose information required by Rule 26(a) or 26(e)(1) to amend a prior response to discovery as required by Rule 26(e)(2), is not, unless such failure is harmless, permitted to use as evidence at a trial…any…information not so disclosed." The *Pennypack* factors concerning harmlessness are just that – factors. No single one is dispositive.

The Court properly recognized that preclusion is a "strong" sanction, one that is applied "sparingly and only in circumstances involving litigation conduct that is clearly unprofessional or inappropriate" (D.I. 288 at 8; Ex. A, Tr. at 4).

Acushnet does not disagree with the Court's recitation of the law; it acknowledged at the February 2, 2007 hearing that the Court has the law "exactly correct" (Ex. A, Tr. at 11).

The Court's findings are fully supported by the record.

### 1.     This Evidence Was Available To Acushnet At Least Earlier In This Litigation

The Court found that the excluded references "were available to Acushnet before the close of fact discovery and well-before the August 11 deadline set by the Court" for invalidity contentions (D.I. 288 at 9). It also found that "it is difficult for the Court to credit Acushnet's assertion that it only discovered that these references were invalidating in November 2006" (*id.* at 10). Acushnet no longer disputes that it knew about these references, but argues instead that it did not realize what it had. It tries to shift its burden to build an invalidity case to Bridgestone, by arguing that █████████████████████████████████████ ███████████████████████████████████████████████████████████████████████ ████████████████████████████████████████. That contradicts its own expert, ███████████ ███████████████████████████████████████████████████████████████████████ ████████████████

### 2.     Any Prejudice That Acushnet Will Suffer Is The Result Of Its Own Strategic Risk

The Court found that the evidence at issue is "relevant to defendants' invalidity defenses, but not critical" (Ex. A, Tr. at 5). The Court also found that there have been numerous

disputes between the parties, many of which were "'strategic' in nature" (D.I. 288 at 9; Ex. A,

Tr. at 5), and that "the parties to this litigation are sophisticated business entities, leaders in their

field, who are represented by counsel well-versed in complex patent litigation" (D.I. 288 at 9;

Ex. A, Tr. at 4; D.I. 288 at 8-9 (citing *AstraZeneca AB v. Mutual Pharm. Co.*, 278 F. Supp. 2d

491, 508-09 (E.D. Pa. 2003)).  Acushnet disputes only the first finding.

Acushnet argues that preclusion ███████████████████████████████████

█████████████████████████████████████████████████████████ As the Court

found, however, "Acushnet knew, prior to submitting Dr. Felker's report, that Bridgestone had

filed this Motion seeking to preclude Acushnet from relying on these references" (D.I. 288 at

10).  "Thus, Acushnet was aware that its ability to use these references was in dispute, yet it

chose to allow Dr. Felker to continue to utilize these references in his expert report" (*id.* at 10-

11).  Acushnet chose not to ██████████████████████████████████████████████

██████████████ submitted his report knowing that it might not get to rely on the references at

issue.  Acushnet has other invalidity defenses – two of them – based on section 112.  It is not

guaranteed a prior art invalidity defense.

The only thing new about prejudice in Acushnet's brief is that it characterizes the

references as "critical" and "essential" a lot more.  The Court had all of the relevant information,

including the Felker Report, in front of it when it made its decision.  Even if the Court

misapprehended the prejudice to Acushnet, there is no reason to change its ruling.  Prejudice is

only one *Pennypack* factor, and the rest amply support the Court's decision.  The reason why the

focus is on prejudice is because Acushnet took a risk, knowing full well what it was doing.  The

Court was properly "less indulgent" and "more willing to exclude" this evidence (D.I. 288 at 8).

3.    The Prejudice To Bridgestone Only Increases With Time

The Court found that Bridgestone "focused its attention during discovery on the numerous references identified by Acushnet in its validity contentions and not on these undisclosed references" (D.I. 288 at 11). The Court also found that, if it did not exclude these references, Bridgestone would be required to conduct additional fact and expert discovery, which would entail a "moderate" extension of deadlines that "could have been avoided" (*id.* at 11-12; Ex. A, Tr. at 5-6). That was correct on February 2. As time passes, the prejudice to Bridgestone just increases.

Since the Court's February 2 decision, rebuttal expert reports have been served. There is about a month in expert discovery left, for depositions of almost a dozen experts. The rest of the major deadlines in this litigation all occur at roughly monthly intervals from here on out: close of expert discovery (March 23), opening summary judgment briefs (April 13), pretrial conference (May 25), and trial (June 18). If the Court were to reconsider, Bridgestone would need to conduct additional fact discovery, perform additional testing, file a rebuttal expert report, and have its expert re-deposed – all of which would interfere with its trial preparation. There's no time for that.

4.    The Court Should Not Let Acushnet Violate Its Case
      Management Orders For No Reason

The other *Pennypack* factor supports the Court's decision too. When deciding whether a late invalidity contention will be permitted, the issue is whether the Court will excuse violations of its orders. *AstraZeneca*, 278 F. Supp. 2d at 508.

- The Court ordered Acushnet to pare down and provide final invalidity contentions in August 2006 (D.I. 288 at 9). It did not.

- This Court's practice is that all invalidity contentions must, at the latest, be disclosed by the end of fact discovery. Acushnet did not comply with that either.

- Acushnet even asked permission to add these references to its contentions, and then went ahead and did it anyway without waiting for the Court's answer.

Thus, Acushnet's argument that it has not "flagrantly disregard[ed]" any Court Order is incorrect (D.I. 283 at 7).

Acushnet, in fact, continues to produce documents that Bridgestone requested long ago, and now attempts to rely on them in rebuttal expert reports. The motion to compel briefing discussed the relevance of change notices and recipe change notice to infringement (D.I. 266, 267, 275, 280), and how Acushnet had produced additional such documents in November 2006, well after the document production cut off. After requesting a short extension to serve rebuttal reports, on Friday, February 16, 2007, Acushnet produced (among other documents) additional "change notices that have been entered since August 2005" (Ex. I) – notwithstanding that, as recently as November 3, 2006, it told Bridgestone that it had already produced "the relevant documents" from its "change notice database" and "recipe change databases" (Ex. J). On the next business day, February 20, Acushnet then had its Vice President of Intellectual Property (Jeff Dalton) ███████████████████████████

████████████████████████████████████████████████

███████████████     Unless Acushnet agrees not to rely on these documents, Bridgestone also intends to raise this with the Court on the next available date for filing non-dispositive motions.

## II.     ACUSHNET'S REQUEST FOR LEAVE TO FILE A SUPPLEMENTAL FELKER REPORT

Acushnet states that it "must" be allowed to supplement Dr. Felker's report "[i]n order to maintain an invalidity defense" (D.I. 283 at 8). That is incorrect – Acushnet has other

invalidity defenses remaining for the '791 patent. Moreover, it is no reason to allow Acushnet to supplement. "Rule 26(e) does not permit parties to file supplemental reports whenever they believe such reports would be 'desirable' or 'necessary' to their case." *Minebea Co. v. Papst*, 231 F.R.D. 3, 6 (D.D.C. 2005).

Since January 3, Acushnet knew that it might be precluded from relying on these references. It believed that it would be prejudiced if that happened – and told the Court that in its opening brief (D.I. 262 at 8) – but still did not include in Dr. Felker's report the other references it had available. "In doing so, it took a risk that the Court would not allow any further supplementation based on the [scheduling order]. That risk has become a reality, and as before, [plaintiff's] attempt to interject an expert's opinion after the time allowed is denied." *Mosaid Techs. Inc. v. Samsung Elecs. Co.*, 362 F. Supp. 2d 526, 559 (D.N.J. 2005).

This is the third brief on this issue that Acushnet has filed since it served Dr. Felker's report, but it is the first time that it requested permission to supplement that report if the Court excluded these references. It's just too late to do a round of supplemental reports and depositions.

CONCLUSION

Bridgestone requests that the Court deny Acushnet's motion for partial reconsideration and its motion in the alternative to supplement the Felker Report.


MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Leslie A. Polizoti*

Jack B. Blumenfeld (#1014)
Maryellen Noreika (#3208)
Leslie A. Polizoti (#4299)
1201 N. Market St.
P.O. Box 1347
Wilmington, DE 19801
(302) 658-9200
*Attorneys for Bridgestone Sports Co., Ltd.*
*and Bridgestone Golf, Inc.*

OF COUNSEL:
Robert M. Masters
Scott M. Flicker
Terrance J. Wikberg
Brandon M. White
PAUL, HASTINGS, JANOFSKY & WALKER LLP
875 15th St., N.W.
Washington, DC 20005
(202) 551-1700

February 21, 2007

753907.1

<u>CERTIFICATE OF SERVICE</u>

I certify that on February 21, 2007 I electronically filed the foregoing with the

Clerk of the Court using CM/ECF, which will send notification of such filing(s) to the following:

> Richard L. Horwitz, Esquire
> POTTER ANDERSON & CORROON LLP
> Hercules Plaza, 6th floor
> 1313 N. Market Street
> Wilmington, DE  19899.

I further certify that I caused copies to be served upon the following on February

21, 2007 in the manner indicated:

> **BY HAND AND E-MAIL**
>
> Richard L. Horwitz, Esquire
> POTTER ANDERSON & CORROON LLP
> 1313 N. Market Street
> Wilmington, DE  19801
>
> **BY FEDERAL EXPRESS AND E-MAIL**
>
> Joseph P. Lavelle, Esquire
> HOWREY LLP
> 1299 Pennsylvania Avenue, NW
> Washington, DC  20004

> */s/ Leslie A. Polizoti (#4299)*
> Leslie A. Polizoti (#4299)

<u>CERTIFICATE OF SERVICE</u>

I certify that on February 28, 2007 I electronically filed the foregoing with the

Clerk of the Court using CM/ECF, which will send notification of such filing(s) to the following:

Richard L. Horwitz, Esquire
POTTER ANDERSON & CORROON LLP
Hercules Plaza, 6th floor
1313 N. Market Street
Wilmington, DE 19899.

I further certify that I caused copies to be served upon the following on February

28, 2007 in the manner indicated:

**BY HAND AND E-MAIL**

Richard L. Horwitz, Esquire
POTTER ANDERSON & CORROON LLP
1313 N. Market Street
Wilmington, DE 19801

**BY E-MAIL**

Joseph P. Lavelle, Esquire
HOWREY LLP
1299 Pennsylvania Avenue, NW
Washington, DC 20004

*/s/ Leslie A. Polizoti (#4299)*
Leslie A. Polizoti (#4299)