# EXHIBIT GG

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| BRIDGESTONE SPORTS CO., LTD., and BRIDGESTONE GOLF, INC., <br><br> Plaintiffs, <br><br> v. <br><br> ACUSHNET COMPANY, <br><br> Defendant. | ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> )    C. A. No. 05-132 (JJF) |
| ACUSHNET COMPANY, <br><br> Counterclaim Plaintiff, <br><br> v. <br><br> BRIDGESTONE SPORTS CO., LTD. and BRIDGESTONE GOLD, INC. <br><br> Counterclaim Defendant. | )    **DEMAND FOR JURY TRIAL** <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) |

## DEFENDANT'S FOURTH SET OF INTERROGATORIES
## DIRECTED TO PLAINTIFFS (NOS. 45-53)

Pursuant to Rule 33 of the Federal Rules of Civil Procedure, defendant and counterclaim plaintiff Acushnet Company ("Acushnet") hereby requests that plaintiffs and counterclaim defendants Bridgestone Sports Co., Ltd. and Bridgestone Golf, Inc. (collectively, "Bridgestone") answer the following interrogatories, to which Bridgestone shall respond separately and fully, in writing and under oath, within the time prescribed by the Federal Rules of Civil Procedure, in accordance with the Definitions and Instructions set forth hereafter.

## DEFINITIONS

Acushnet incorporates by reference the DEFINITIONS set forth in DEFENDANT'S FIRST SET OF INTERROGATORIES TO PLAINTIFF and DEFENDANT'S SECOND SET OF INTERROGATORIES TO PLAINTIFF as though

fully set forth herein. In addition to the aforementioned definitions, the following definitions apply to these requests:

The term "Sold in the United States" shall mean either sold by Bridgestone or its agents in the United States, or sold to consumers or distributors by Bridgestone, Nike, their agents or other third parties in the United States.

The term "Practices" means utilizing or incorporating a technology or feature covered by a patent.

## INSTRUCTIONS

Acushnet incorporates by reference the INSTRUCTIONS set forth in DEFENDANT'S FIRST SET OF INTERROGATORIES TO PLAINTIFF as though fully set forth herein.

## INTERROGATORIES

45. Identify and describe in detail all existing licenses between Bridgestone and third parties for patents related to golf ball technology, any correspondence between Bridgestone and any past, present, or prospective licensors or licensees, the Internal Revenue Service (pertaining to I.R.C. § 482 and § 6662), investors, or the media regarding actual or potential licenses for patents on golf ball technology, and any other licenses in Bridgestone's possession or documents regarding the licensing of golf ball technology, including industry standard or published royalty rates.

46. Identify and describe in detail the sales revenues and unit sales, cost of sales, and operating costs for each Bridgestone and Nike golf ball Sold in the United States on a monthly, quarterly, and annual basis, including profit and loss.

47. Identify and describe in detail the sales revenues and unit sales, cost of sales, and operating costs for accessories, clubs, apparel, and other products sold in conjunction with all Bridgestone and Nike golf balls Sold in the United States which Practice a Bridgestone Patent on a monthly, quarterly, and annual basis, including profit and loss.

48. Identify the pricing data for all Bridgestone and Nike golf balls which Practice a Bridgestone Patent, including price lists, discounting and pricing policies.

49. Identify and describe the market share (i.e., market penetration) for each Bridgestone and Nike product Sold in the United States, including for any period before and after said product incorporated or adopted a feature patented in the Bridgestone Patents.

50. For each Bridgestone or Nike product Sold in the United States which Practices the Bridgestone Patents, identify and describe the distribution network, sales force, and sales made by type of distribution used, including any summaries of sales call reports or other competitive information recorded by the sales force.

51. Identify and describe the factual basis for any assertion or contention that customers of the Acushnet golf balls would switch to a Bridgestone product if the Acushnet product was no longer sold.

52. Identify and describe the factual basis for any assertion or contention that current or potential customers of each Bridgestone or Nike ball Sold in the United States value the patented feature of the ball, as covered by a Bridgestone Patent.

53. Identify Bridgestone's capacity to manufacture the golf balls which Practice a Bridgestone Patent, its current utilization of its assets required to manufacture said products, any additional manufacturing capacity which it could convert to produce said products, and any supply shortages, quality problems, retooling and switching costs, or other limitations which would impede its ability to manufacture a greater quantity of said products, and any studies of additional levels of capital equipment required for any forecasted change in production levels.

3

POTTER ANDERSON & CORROON LLP

OF COUNSEL:

Alan M. Grimaldi
Joseph P. Lavelle
Brian S. Seal
Andrew R. Sommer
HOWREY LLP
1299 Pennsylvania Avenue, N.W.
Washington, DC 20004
Telephone (202) 783-0800

Dated: August 9, 2006
745425/28946

By:  /s/ David E. Moore
    Richard L. Horwitz (#2246)
    David E. Moore (#3983)
    Hercules Plaza, 6th Floor
    1313 North Market Street
    P. O. Box 951
    Wilmington, DE 19899-0951
    (302) 984-6000
    rhorwitz@potteranderson.com
    dmoore@potteranderson.com

*Attorneys for Defendant/Counterclaim
Plaintiff Acushnet Company*

## CERTIFICATE OF SERVICE

I, David E. Moore, hereby certify that on August 9, 2006, a true and correct copy of the within document was caused to be served on the attorney of record at the following addresses as indicated:

## VIA HAND DELIVERY

Jack B. Blumenfeld
Maryellen Noreika
Leslie A. Polizoti
Morris, Nichols, Arsht & Tunnell
1201 N. Market Street
Wilmington, DE  19801

## VIA ELECTRONIC MAIL

Robert M. Masters
Paul, Hastings, Janofsky & Walker LLP
875 15th Street, N.W.
Washington, D.C.  20005
RobMasters@paulhastings.com

*/s/ David E. Moore*
David E. Moore

680013

# EXHIBIT HH

# THIS EXHIBIT HAS BEEN REDACTED IN ITS ENTIRETY

# EXHIBIT II

# THIS EXHIBIT HAS BEEN REDACTED IN ITS ENTIRETY

# EXHIBIT JJ

# THIS EXHIBIT HAS BEEN REDACTED IN ITS ENTIRETY

# EXHIBIT KK

# THIS EXHIBIT HAS BEEN REDACTED IN ITS ENTIRETY

# EXHIBIT LL



1299 Pennsylvania Avenue, NW
Washington, DC 20004-2402
T 202.783.0800
F 202.383.6610
www.howrey.com

May 19, 2006

<u>BY COURIER</u>

Robert M. Masters, Esq.
Paul, Hastings, Janofsky & Walker LLP
875 15th Street, N.W.
Washington, D.C. 20005

Re:     **Bridgestone Sports Co., Ltd. et.al.   v. Acushnet Co. Civil
        Action No. 05-132**

Dear Mr. Masters:

Enclosed please find produced documents bearing bates numbers AB 0087859 – AB 0087865.

Sincerely,

David D. Chase
Litigation Case Manager

Enclosures

AMSTERDAM  BRUSSELS  CHICAGO  EAST PALO ALTO  HOUSTON  IRVINE  LONDON
LOS ANGELES  NORTHERN VIRGINIA  PARIS  SAN FRANCISCO  TAIPEI  WASHINGTON, DC

# EXHIBIT MM





2005 AUG 19 PM 5: 45

2100 Pennsylvania Avenue, NW
Washington, DC 20037-3213
T 202.293.7060
F 202.293.7860

www.sughrue.com

# FAX

| | |
|---|---|
| Date | August 19, 2005 |
| To | Alan Grimaldi |
| Of | Howrey LLP |
| Fax | 202-383-6610 |
| From | John Girgenti |
| Subject | Bridgestone v. Acushnet |
| Our Ref | L10518    Your Ref |
| Pages (including cover sheet) | 34 |

Please call attention to problems with this transmission by return fax or telephone. Thank you.

THE INFORMATION CONTAINED IN THIS COMMUNICATION IS CONFIDENTIAL, MAY BE ATTORNEY-CLIENT PRIVILEGED, AND IS INTENDED ONLY FOR THE USE OF THE ADDRESSEE. UNAUTHORIZED USE, DISCLOSURE OR COPYING IS STRICTLY PROHIBITED AND MAY BE UNLAWFUL. IF YOU HAVE RECEIVED THIS COMMUNICATION IN ERROR, PLEASE IMMEDIATELY NOTIFY US.





SUGHRUE MION, PLLC

2100 Pennsylvania Avenue, NW
Washington, DC 20037-3213
T 202.293.7060
F 202.293.7860

www.sughrue.com

Raja N. Saliba
T (202) 663-7468
rsaliba@sughrue.com

August 19, 2005

*VIA FACSIMILE*

Alan Grimaldi
HOWREY LLP
1299 Pennsylvania Ave., NW
Washington, DC 20004

Re:   *Bridgestone Sports Co., Ltd. et al. v. Acushnet Co.*
      **Civil Action No. 05-132 (JJF)**

Dear Alan:

Pursuant to the *Stipulated Protective Order Regarding the Confidentiality of Discovery Material* entered in the above-captioned case, enclosed are the signed written commitments (Attachment A to the Protective Order) and biographical sketches for the following outside consultants who have been retained to assist Bridgestone in this case:

Larry (Lauro) C. Cadorniga

John C. Jarosz

Douglas C. Winfield

Very truly yours,

Raja Saliba

Attachments

## ATTACHMENT A

### IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF DELAWARE

BRIDGESTONE SPORTS CO.,LTD.,        )
And BRIDGESTONE GOLF, INC.,         )
                                    )
    Plaintiffs,                 )
                                    )        C.A.No. 05-132 (JJF)
vs.                                 )
                                    )
ACUSHNET COMPANY,                   )
                                    )
    Defendant.                  )

I, *LAURO C. CADORNIGA*, declare and say that:

1.    I live at *4 MILL CREEK RD. PIEDMONT SC 29673*. I am employed as *CONSULTANT – SELF-EMPLOYED by DBA LCC CONSULTING* with business address at *4 MILL CREEK RD, PIEDMONT, SC 29763*.

2.    I have been given a copy of the Stipulated Protective Order entered in BRIDGESTONE SPORTS CO., LTD. and BRIDGESTONE GOLF, INC., v. ACUSHNETCOMPANY, Civil Action No. 05-132-JJF, and I have read the Stipulated Protective Order.

3.    I agree to be bound by the terms of the Stipulated Protective Order, and agree that any CONFIDENTIAL or HIGHLY CONFIDENTIAL material within the meaning of the Stipulated Protective Order will be used only by me to assist counsel in connection with the above-captioned action, and for no purpose, as set forth in the Stipulated Protective Order.

4.    I agree that I will not disclose or discuss such CONFIDENTIAL or HIGHLY CONFIDENTIAL material with anyone other than the persons described in Paragraphs 13, 14 and 15 of the Stipulated Protective Order.

5.    I understand that any disclosure or use of CONFIDENTIAL or HIGHLY CONFIDENTIAL material in any manner contrary to the provisions of the Stipulated Protective Order will subject me to sanctions for contempt of the Court's Order.

6.    I agree to be subject in personam to the jurisdiction of this court in connection with any proceeding related to the enforcement of the Stipulated Protective Order.

I declare under penalty of perjury that the foregoing is true and correct, and that this Declaration was executed this *19th day of August, 2005 at Manila, Philippines (Consultant is on Business Trip)*.

# LARRY C. CADORNIGA

*4 Mill Creek Road*                                        *Tel/Fax: 864/277 7820*
*Piedmont, SC 29673*                                       *Email: cadorniga@aol.com*

(C/V: Larry C. Cadorniga/August 19, 2005)

## ACCOMPLISHMENTS AND WORK BACKGROUND:

### DBA / LCC CONSULTING:

*May 2002 to Present*

*Expert golf ball consultant to Radar Golf, Inc., subsequently, retained as Chief Technology Officer. Develop, design and introduce the RF technology into the golf ball for "findability" in conjunction with a hand-held device*

*Oct. 2003 to Aug. 2004*

*Expert Golf Ball Consultant to Gibson, Dunn &Crutcher, LLP.*
*Reviewed and advised the law firm on golf ball technology litigation.*

*Dec. 2002 to May 31, 2005*

*Expert Golf Ball Consultant to the United States Golf Association.*
*Assist the USGA in the golf ball studies of the effects of the different constructions and physical properties to the performances of golf balls.*

*June, 2002 to Jan. 2003*

*Expert Golf Ball Consultant to Knobbe, Martens & Associates, Irvine, CA*
*Reviewed and advised the law firm on golf ball patent litigation. Contact is Atty. Paul Tripodi III.*

*Feb. 2001 to June, 2002 (Re-hired March, 2004 to Present)*

*Expert Golf Ball Consultant to Sughrue, Mion & Associates, Wash. D. C.*
Review and advise the law firm on golf ball patent litigation, process, Quality control and product testing procedures.

**August 1999 to present**

**Consultant to Fantom Golf Limited, Korea/China**
Consult and assist the product development team.

**LARRY C. CADORNIGA**

**July 1995**  **Gen. Manager/Consultant to Golf Tech Systems, Ltd., ROC**
**to June 2002**  Total project responsibility in starting a new facility to manufacture golf balls.
Planned and scheduled equipment design/purchase, general floor layout, product
process flow, installations, debug, maintenance, operating procedure, etc., while
providing all the product design technology involving chemical compositions and
aerodynamic design for optimum performances.

*Successfully developed and introduced the following golf ball products:*

| | |
|---|---|
| Exacta Tour Evolution | Exacta Extra Spin |
| Exacta 432 Professional | Exacta 432 Control |
| Exacta 432 Performance | Exacta Distance |
| Bald Eagle Tour/Spin | LCC Tour Hi Performance |
| LCC Tour Control | Top Ace |
| Triton Tour/Performance | Triton TLB |
| Intech / Titech Titanium | Arnold Palmer (Europe) |

(all are USGA approved conforming golf balls)

**April 1996**  **R & D Consultant to Bobby Grace Golf Designs by Cobra**
**to July 1998**  **Golf, Calsbad, Ca.**
Developed/designed elastomeric rubber compositions for golf putter face inserts
to improve the general performances on feel and sound especially when a player is
using a two piece construction golf ball.

*Awarded one patent: (a second patent pending)*
U S Patent no. 5,924,939 – "Golf Club Head with a Strike Face
Having a First Insert With In a Second Insert"
Successfully developed and introduced several models of Bobby Grace putters
with inserts with overwhelming acceptance. The insert is known as "HSM":

| | |
|---|---|
| Bobby Grace AN7 HSM | Bobby Grace Little Man HSM |
| Bobby Grace the 2200 HSM | Bobby Grace Pip Squeek HSM |
| Bobby Grace KBI HSM | Bobby Grace by Cobra Payday HSM |
| Bobby Grace Low Pro HSM | Bobby Grace by Cobra Soft Lady |

**March 1989**  **DUNLOP SLAZENGER CORP. – Maxfli Golf**, GREENVILLE SC
**to July, 1995**  *Positions Held: Director, Research and Development*
*Manager, Product Development*
I managed the Research and Development Department, consisting of professionals
and non-exempt associates, totaling 14 people, in supporting the company
strategies. Participated as Company Board Member to plan, control, and guide the
company in ultimately achieving its goals.

LARRY C. CADORNIGA

*Awarded Ten US Patents and Designs assigned to DSC:*
Patent no. 5338083 Golf Ball Design    Patent no. D355943 Dimple Design
Patent no. 5321089 Golf Ball Cover     Patent no. 550795 Foamed Club
Patent no. 5415937 Golf Ball Cover     Patent no. 5580350 Core Cpd.
Patent no. 5470076 Dimple Pattern      Patent no. 5538794 Golf Ball Cover
Patent no. 5465969 Rubber Cpd.         Patent no. 5497996 Golf Balls

*Successfully developed, introduced, manufactured following golf equipment:*
Maxfli CD golf ball            Maxfli MD Golf balls
Maxfli MD(variable speed)      Maxfli HT Tour Balata golf ball
Maxfli HT Hi-Spin golf ball    Maxfli VHL Golf club set
Dunlop DDHIII golf ball        Dunlop DDH IV golf ball
Dunlop DDH Distance            Dunlop DDH Accuracy golf ball

**Nov. 1986**    **Acushnet Company / Titleist Golf Div., Fairhaven, MA**
**to Mar. 1989**  *Position Held: Manager of Product Engineering*
I managed the Product Engineering Team consisting of professionals and non-exempt employees, totaling 8 people, in supporting company goals in new product development.

*Awarded two US Patents assigned to Acushnet Co.*
Patent no. 5020803 Golf Ball     Patent no. 4995613 Rubber Composition

*Successfully developed, introduced, and manufactured the following golf balls:*
Titleist Tour Balata        Pinnacle Gold

**May 1980**     **MacGregor Golf Company, Albany Georgia**
**to Nov. 1986**  *Positions Held: Director, Golf Ball Operations*
                          *Manager, Golf Ball Operations*
                          *Senior Chemist, R &D*
I managed Golf Ball Operations, consisting of 60 personnel, producing about 500,000 dozen golf balls annually, while directing R&D efforts, as well.

*Awarded two US Patents assigned to MacGregor*
Patent no. 4836552 Short (Cayman) Golf Ball
Patent no. 4830116 Method of Making the Cayman Golf Ball

*Successfully developed, introduced , and manufactured the following golf ball products:*
MacGregor Tourney   MacGregor MT     Nicklaus De+D
Nicklaus DC         Muirfield Balata  Cayman Golf

08/19/2005 17:30 FAX 2022937860

☑ 007/034

LARRY C. CADORNIGA

| | |
|---|---|
| Aug. 1976 to May 1980 | **Wilson Sporting Goods, River Grove, Illinois** *Positions Held: Manufacturing Manager* |
| | *Manufacturing Supervisor* |
| | *Rubber Technologist - R&D* |

I was instrumental in starting a tennis and racquetball manufacturing plant, along with four other key personnel. The factory successfully produced excellent products accepted for US Open play and replaced all other tennis ball sourced by Wilson. I developed rubber core compositions for golf balls and rubber compounds for tennis and racquetballs.

| | |
|---|---|
| Feb. 1968 to Aug. 1976 | **B. F. Goodrich Tire and Rubber Co., Manila, Philippines, Bearcat Tire Company and Salisbury Rubber Co., Chicago, Ill.** *Positions Held: Rubber Chemist*, Laboratory Assistant, Laboratory Technician. |

I developed rubber compositions, performed raw material chemical tests and analysis, including product/process quality control.

Educational Background: Chemical Engineering Studies at the University of Santo Tomas, Manila, Philippines. Took several management courses and seminars in the USA. Completed the Quality Improvement Process Management and the Quality Education System course studies at the Philip Crosby Quality College in Atlanta, GA. Completed World Class Manufacturing Concepts and World class Statistical Thinking for Industry at the Tri-county State College, Anderson, SC.

## ATTACHMENT A

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| BRIDGESTONE SPORTS CO., LTD., And BRIDGESTONE GOLF, INC., | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | C.A. No. 05-132 (JJF) |
| ACUSHNET COMPANY, | ) ) | |
| Defendant. | ) ) ) | |

I, Douglas Winfield declare and say that:

1.      I live at 203 Commander Way, Knoxville, TN   I am employed as Consultant [position] by myself [name and address of employer].

2.      I have been given a copy of the Stipulated Protective Order entered in BRIDGESTONE SPORTS CO., LTD. and BRIDGESTONE GOLF, INC., v. ACUSHNET COMPANY, Civil Action No. 05-132-JJF, and I have read the Stipulated Protective Order.

3.      I agree to be bound by the terms of the Stipulated Protective Order, and agree that any CONFIDENTIAL or HIGHLY CONFIDENTIAL material within the meaning of the Stipulated Protective Order will be used only by me only to assist counsel in connection with the above-captioned action, and for no other purpose, as set forth in the Stipulated Protective Order.

4.      I agree that I will not disclose or discuss such CONFIDENTIAL or HIGHLY CONFIDENTIAL material with anyone other than the persons described in Paragraphs 13, 14 and 15 of the Stipulated Protective Order.

5.    I understand that any disclosure or use of CONFIDENTIAL or HIGHLY CONFIDENTIAL material in any manner contrary to the provisions of the Stipulated Protective Order will subject me to sanctions for contempt of the Court's Order.

6.    I agree to be subject in personam to the jurisdiction of this Court in connection with any proceeding related to the enforcement of the Stipulated Protective Order.

I declare under penalty of perjury that the foregoing is true and correct, and that this Declaration was executed this 17 day of Aug , 2005 at Knoxville TN .

Douglas C. Winfield
208 Commander Way
Knoxville, TN 37934
(864) 723-5324 cell
email: douglaswinfield@tds.net

## PROFESSIONAL EXPERIENCE:

8/04 – present   Adjunct Professor: University of Tennessee, Knoxville, TN

- ME 363:  System Dynamics – currently teaching this course.

- Supervised graduate research for analyzing the vibration characteristics of hip joint replacements.

- ME 505:  Mechatronics – taught this graduate-level course Spring-05.

1/03 – present   Sole Proprietor: Consultant

    1/03 – 4/05          Dunlop Sports
                   100 Dunlop Dr
                   Westminster, SC 29693

- Designed several new golf ball dimple patterns.  Some designs resulted in improved performance of trajectory shape and distance.

- Developed and implemented various test methods for golf balls in the manufacturing process to determine the quality of the balls being produced.

- Refined robot/player golf ball testing methods for more effective evaluations of golf ball performance.  Developed software in Visual Basic to facilitate the data collection and analysis software.

    3/03 – present       AccuSport Inc
                   4310 Enterprise Drive, Suite C
                   Winston-Salem, NC 27106

- Developed C++ software for processing images of the golf ball, for finding the diameter of the ball in the image, and for recognizing patterns of marks on the golf ball.

- Developed trajectory models for the flight of golf balls as well as a virtual reality graphical mapping of the trajectory.

- Developed a single camera perspective model of a golf ball in images as well as a method to calculate spin from various ball marking schemes.  Also, developed a golf club impact model in order to calculate the pre-impact swing parameters of the clubhead from the launch conditions of the ball.

- Evaluated the accuracy and precision of the golf ball launch monitor by performing an analytical uncertainty analysis of each variable in the system.  This resulted in process improvements targeted to minimize the effect that the most sensitive variables have on the accuracy of the system.

1

4/04 – 5/04          Wilson Sporting Goods Co.
                     2330 East End Dr
                     Humboldt, TN 38343

- Developed a model for Wilson Sporting Good on the flight of a softball including lift/drag. This work was done in conjunction with the baseball/slow pitch division DeMarini.

1/03 – 8/03          Max Out Golf Labs
                     14548 Ventura Blvd.
                     Sherman Oaks, CA 91403

- Developed C++ software for a comprehensive golf club fitting system including the use of golf ball launch conditions, golf ball trajectory data, golf shaft deflection measurements during the downswing, and video camera images of the golf swing.

- Evaluated the feasibility for independent golf teaching and golf club fitting centers as well as evaluated intellectual property.

10/04 – present     Golf Scientific Consultants
                    1216 Arborbrooke Dr
                    Knoxville, TN 37922

- Contracted by Golf Scientific Consultants to perform vibration/damping analysis on Femco golf shafts.

- Developed Visual Basic software relating the effect that various shaft trimming scenarios have on the resulting impact and flight conditions of the golf ball.

8/04 – present      Rubin/Anders Scientific
                    5 Harvard Ave, Suite 4
                    Brookline, MA 02446

- Contracted by Rubin/Anders Scientific to work as an expert in the lawsuit involving Triple Tee Golf vs. Nike Inc. in the United States District Court for the Northern District of Texas Case No. 4:04-CV302-A.

- Worked with the law firms Silverman and Santucci of Ft. Lauderdale, FL and Friedman, Suder and Cooke of Ft Worth, TX to produce an expert report and disclosure to the court for the plaintiff.

1/01 – 12/02   **Dunlop Slazenger Group**, Westminster, SC

Director of Product Performance

- Designed and implemented process improvements, new tooling, and new quality control testing which resulted in increased efficiency and quality of the manufacturing of urethane golf balls.

- Designed several new golf ball dimple patterns. Some designs resulted in improved performance of trajectory shape and distance.

2

- Finished development of a golf swing motion analysis system. Performed several studies on the kinetics and kinematics of the golf swing in order to develop a more comprehensive golf club fitting method.

- Developed a mathematical model of the flight of golf balls that are inertially and geometrically unsymmetrical. This model was validated by test data and resulted in an increased understanding of the adverse effects that unsymmetrical balls have on performance.

- Managed the intellectual property of golf balls and golf clubs. Developed and implemented a patent database which included summaries and keywords of all pertinent patents.

6/97 – 12/00    **Acushnet Company: Titleist FootJoy Worldwide, Fairhaven, MA**

Director of Product Research

- Led a team of people with skills in finite element modeling, aerodynamics, material science, electronics, machine shop, computer programming, ball physical property testing, player testing, and machine testing and aided them technically in the research and development of new products and testing methods. Also, was actively involved in the creation of intellectual property and in golf ball product development.

- Led the effort to develop and implement a vision system for measuring the golf ball launch conditions, the impact location of the ball on the clubface, and the pre-impact conditions of the clubhead. This involved research and development in the areas of photogrammetrics, image processing, and kinematics.

- Designed, implemented, developed software, and maintained 30 golf ball launch monitors used in the field to fit players to golf balls and golf clubs. Also, developed and maintained a database to store the results.

- Developed a golf ball testing methodology with the robots to include the use of a database to request tests and store results, as well as the use of launch monitors and weather stations to collect data.

- Developed computer aided golf ball dimple pattern design software that resulted in new and innovative dimple patterns.

3/95 – 5/97    **United States Golf Association, Research and Test Center, Far Hills, NJ**

Manager of Applied Research and Testing

- Developed a comprehensive system parameter optimization and data collection program for measuring aerodynamic properties of golf balls. Tasks included system engineering, software generation, and functional testing.

- Extensively evaluated golf balls for impact and aerodynamic properties. Developed models of golf ball/club impact, trajectory of the ball in flight, and bounce/roll on the ground.

- Performed research in dynamic modeling of shafts, kinematics and kinetics of the golf swing, impact mechanics, vibration analysis, and aerodynamics.

3

☑013/034

8/91 – 1/95    True Temper Sports, Olive Branch, MS

Research Engineer

- Led design and manufacturing teams in introduction of new products in the manufacturing process and in the marketplace.

- Developed and implemented a computer aided design optimization program using the finite element method for improved design and manufacture of composite products.

- Developed methods and computer software allowing the customer to more effectively choose and implement the use of products.

- Led the effort to facilitate technical integration and communication with Research and Development groups of several customers. This effort led to expanded business with key customers.

EDUCATION:  Doctor of Philosophy, Mechanical Engineering, University of Memphis, 1995
GPA: 3.83/4.00,
Dissertation: "Static and Dynamic Analyses of Thick Composite Conical Tubes with Varying Thickness"

Master of Science, Mechanical Engineering, Memphis State University, 1991
GPA: 3.89/4.00
Thesis: "Analytical Determination of the Optimum Lateral Curvature of a Golf Clubhead"

Bachelor of Science, Mechanical Engineering, Christian Brothers College, Memphis, TN, 1990. GPA: 3.54/4.00

OTHER TEACHING EXPERIENCE:

1/93 – 12/94    University of Memphis, Memphis, TN:  Guest Lecturer – substitute teaching

1/96 – 5/96    Lafayette University, Easton, PA:  Introduction to Dynamics

1/03 – 12/04    Clemson University, Clemson, SC:  Guest Lecturer – substitute teaching

INVITED SEMINARS AND LECTURES:

5/96    Lehigh University: ASME, Bethlehem, PA:  "Engineers in the Business World"

2/97    Lehigh Valley Joint Engineering Council: Keynote Speaker, Bethlehem, PA: "Engineering and Golf "

4/97    Lehigh University:  Graduate Seminar, Bethlehem, PA:  "Dynamic Analysis of Composites Structures"

4

08/19/2005 17:31 FAX 2022937860    ☑014/034

5/02    Rocky Mountain Musculoskeletal Research Lab: Keynote Speaker at Intelligent
        Biomedical Devices and Musculoskeletal Systems (funded by the NSF), Denver, Co: "How
        Technology has Influenced Golf"

4/04    American Society of Golf Course Architects: "Golf Equipment Technology vs. Golf Course
        Design"

8/04    Golf Course Builders Association of America: "Golf Equipment Technology vs. Golf Course
        Design"

10/04   University of Tennessee Graduate Seminar: "3 Interesting Dynamics Problems Associated
        with the Vector Launch Monitor"


OTHER EXPERIANCE:

1/1999 – present: Project Starshine

        Designed the mirror layouts for Project Starshine and worked as a design consultant. During the
        past six years, three small, optically reflective spherical satellites have been designed by the U.S.
        Naval Research Laboratory and built by an informal, volunteer coalition of organizations and
        individuals in the USA and Canada. NASA has deployed the coalition's satellites into highly
        inclined low earth orbits from two Space Shuttles and an Athena expendable launch vehicle.
        Each of the satellites is covered by approximately 1000 small, front-surface aluminum mirrors.


PUBLICATIONS AND PATENTS:

    Journal Articles

        Winfield, D. C. and Tan, T., "Optimization of Clubhead Loft and Swing Elevation Angles
        for Maximum Distance of a Golf Drive", *Computers and Structures*, 1994, Vol. 53, No.
        1, pp 19-25.

        Lu, Chu-Ho, Mao, R., and Winfield, D. C., "Stress Analysis of Thick Laminated Conical
        Tubes with Variable Thickness", *Composites Engineering*, 1995, Vol. 5, No. 5, pp 471-
        484.

        Winfield, D. C. and Tan, T., "Optimization of the Clubface Shape of a Golf Driver to
        Minimize Dispersion of Off Center Shots", *Computers and Structures*, 1996, Vol. 58,
        No. 6, pp 1217-1224.

        Lu, Chu-Ho, Mao, R., and Winfield, D. C., "Free Vibration of Thick Laminated Conical
        Tubes", *Computers and Structures*, 1996, Vol. 59, No. 3, pp 397-405.

        Winfield, D. C. and Soriano, B. C., "Planar Motion of a Flexible Beam With a Tip Mass
        Driven by Two Kinematic Rotational Degrees of Freedom", *ASME J of Vib and Accoust*,
        1998, Vol. 120, pp 206-213.

        Winfield, D. C., Lu, Chu-Ho, and Mao, R., "Beam-Type Modeling for the Free Vibration
        of a Long Thick Laminated Conical Tube", *Composites Part B*, Vol 28B, 1997, pp 555-
        563.

### Conferences Proceedings

Butler, J. H, and Winfield, D. C., "The Dynamic Performance of a Golf Shaft During the Downswing", *Science and Golf II*, E&F Spon, London, 1994, pp 259-264.

Winfield, D. C. and Butler, J. H., "Optimizing Post-Impact Conditions: Minimizing Dispersion of a Golf Drive", *Ninth International Conference of Computer and Mathematical Modeling*, Berkeley, California, 1993.

Winfield, D. C., Butler, J. H., and Twigg, M., "A Simple Way to Find the Direction of the Maximum Principal Moment of Inertia of Any Object", *Computational Methods and Experimental Methods VII*, Computational Mechanics Inc. Billerica, MA, 1995, pp 585-592.

Winfield, D. C., "Golf Club and Ball Fitting Using Launch Condition Measurements", *Science and Golf III*, E&F Spon, London, 1999, pp 548-553.

Rankin, D. B. and Winfield, D. C., "Performance Indices in the Sport of Golf", *The Engineering of Sport 5*, International Sports Engineering Association, Shefield, UK, 2004.

## PATENTS:

| | |
|---|---|
| 6,781,621: | Launch monitor system with a calibration fixture and a method for use thereof, 2004 |
| 6,764,412: | Method and apparatus to determine golf ball trajectory and flight, 2004 |
| 6,758,759: | Launch monitor system and a method for use thereof, 2004 |
| 6,682,442: | Dimple patterns on golf balls, 2004 |
| 6,682,441: | Phyllotaxis-based dimple patterns, 2004 |
| 6,616,543: | Apparatus to determine golf ball trajectory and flight, 2003 |
| 6,609,983: | Dimple pattern on golf balls, 2003 |
| 6,571,600: | Apparatus and method for measurement of coefficient of restitution and contact time, 2003 |
| 6,533,684: | Phyllotaxis-based dimple patterns, 2003 |
| 6,527,653: | Pentagonal hexecontahedron dimple pattern on golf balls, 2003 |
| 6,500,073: | Method and apparatus to determine golf ball trajectory and flight, 2002 |
| 6,488,591: | Method and apparatus to determine golf ball trajectory and flight, 2002 |
| 6,390,934: | Method of image processing of paint dots on golf balls, 2002 |
| 6,338,684: | Phyllotaxis-based dimple patterns, 2003 |

6

6,285,445:    Method for determining aerodynamic characteristics of a golf ball, 2001

6,241,622:    Method and apparatus to determine golf ball trajectory and flight, 2001

6,186,002:    Method for determining coefficients of lift and drag of a golf ball, 2001

5,607,364:    Polymer damped tubular shafts, 1997

7

**ATTACHMENT A**

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| BRIDGESTONE SPORTS CO., LTD., And BRIDGESTONE GOLF, INC., | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | C.A. No. 05-132 (JJF) |
| ACUSHNET COMPANY, | ) ) ) | |
| Defendant. | ) ) ) | |

I, John C. Jarosz, declare and say that:

1.    I live at 703 Ninovan Rd. Vienna VA 22180. I am employed as Managing Principal [position] by Analysis Group 1899 Pennsylvania Ave, NW [name and address of employer]. Washington DC 20006

2.    I have been given a copy of the Stipulated Protective Order entered in BRIDGESTONE SPORTS CO., LTD. and BRIDGESTONE GOLF, INC., v. ACUSHNET COMPANY, Civil Action No. 05-132-JJF, and I have read the Stipulated Protective Order.

3.    I agree to be bound by the terms of the Stipulated Protective Order, and agree that any CONFIDENTIAL or HIGHLY CONFIDENTIAL material within the meaning of the Stipulated Protective Order will be used only by me only to assist counsel in connection with the above-captioned action, and for no other purpose, as set forth in the Stipulated Protective Order.

4.    I agree that I will not disclose or discuss such CONFIDENTIAL or HIGHLY CONFIDENTIAL material with anyone other than the persons described in Paragraphs 13, 14 and 15 of the Stipulated Protective Order.

5.    I understand that any disclosure or use of CONFIDENTIAL or HIGHLY CONFIDENTIAL material in any manner contrary to the provisions of the Stipulated Protective Order will subject me to sanctions for contempt of the Court's Order.

6.    I agree to be subject in personam to the jurisdiction of this Court in connection with any proceeding related to the enforcement of the Stipulated Protective Order.


I declare under penalty of perjury that the foregoing is true and correct, and that this Declaration was executed this _16th_ day of _August_, 20_05_, at _8:00 est_ _____

_____

**JOHN C. JAROSZ**
**Managing Principal**

Phone: (202) 530-3980
Fax: (202) 530-0436
jjarosz@analysisgroup.com

Analysis Group, Inc.
1899 Pennsylvania Avenue, NW
Suite 200
Washington, DC 20006

John Jarosz, a Managing Principal of Analysis Group, Inc., specializes in applied microeconomics and industrial organization. He has performed research, given economic testimony and provided strategy consultation in intellectual property, licensing, commercial damages and antitrust matters, including:

- Evaluation of damages in patent, copyright, trade secret, trademark and unfair competition cases. The types of damages have included lost profits, reasonable royalties, price erosion, unjust enrichment, accelerated market entry and prejudgment interest.

- Strategy consultation regarding the nature and value of technology, methods to share technology and reasonable compensation terms.

- Analysis and testimony regarding patent misuse and copyright misuse defenses, particularly concerning market definition and market power.

- General commercial damages testimony in a variety of cases and across numerous industries.

Mr. Jarosz received a J.D. from the University of Wisconsin. Mr. Jarosz holds an M.A. in Economics from Washington University in St. Louis, where he was a Ph.D. candidate and completed most of the program requirements. He also holds a B.A. in Economics and Organizational Communication from Creighton University in Omaha, Nebraska.

Prior to joining Analysis Group, Mr. Jarosz was a Director with Putnam, Hayes & Bartlett, Inc. Before that, he was a Senior Analyst with Richard J. Barber Associates, a Section Supervisor with Mutual of Omaha Insurance and a Research Analyst with the Center for the Study of American Business.

## EDUCATION

| | |
|---|---|
| J.D. | University of Wisconsin |
| M.A. & Ph.D. candidate | Economics, Washington University, St. Louis |
| B.A. | Economics and Organizational Communication, Creighton University |

*John C. Jarosz, page 2*

## PROFESSIONAL ASSOCIATIONS/MEMBERSHIPS

- American Economic Association
- American Law and Economics Association
- American Bar Association (Sections: Intellectual Property, Antitrust and Litigation)
- State Bar of Wisconsin (Section: Intellectual Property)
- American Intellectual Property Law Association (Sections: Federal Litigation, Licensing, Trade Secrets and Antitrust)
- Licensing Executives Society
- Advisory Board - *The IP Litigator*
- Former Columnist (Damage Awards) - *The IP Litigator*
- Omicron Delta Epsilon (International Honor Society in Economics)
- Association of University Technology Managers

## TESTIMONIAL EXPERIENCE

- **Khyber Technologies Corporation v. Casio, Inc, Everex Systems, Inc., Hewlett-Packard Company, and Hewlett-Packard Singapore PTE. LTD.**
  *United States District Court, District of Massachusetts (Case No. 99-CV-12468-GAO)*
  Deposition testimony and expert report: reasonable royalty and prejudgment interest involving a patent directed to audio playback for portable electronic devices.

- **Air Liquide America, L.P. v P.H. Glatfelter Company**
  *United States District Court, Middle District of Pennsylvania (Case No. 1:CV-04-0646)*
  Deposition testimony and expert report: reasonable royalty and prejudgment interest involving patents directed to the use of ozone bleaching of pulp.

- **Gary J. Colassi v. Cybex International, Inc.**
  *United States District Court, District of Massachusetts (Case No. 02-668-JEL/JGL)*
  Deposition testimony and expert report: reasonable royalty and prejudgment interest involving a patent directed to treadmill support decks.

- **Medinol Ltd. v. Guidant Corporation and Advanced Cardiovascular Systems, Inc.**
  *United States District Court, Southern District of New York (Case No. 03 C iv.2604 (SAS))*
  Deposition testimony and expert report: reasonable royalty analysis and prejudgment interest involving patents directed to connectors for coronary and peripheral stents.

- **Donner, Inc. v. American Honda Motor Co., McDavid Plano-Acura, L.P. and The Beaumont Co.**
  *United States District Court, Eastern District of Texas, Texarkana Division (Case No.F:03-CV-253)*
  Deposition testimony and expert report: reasonable royalty and prejudgment interest involving a patent directed to automobile entertainment systems.

*John C. Jarosz, page 3*

- **Fuel TV, Inc. v. Fuel Clothing Company, Inc.**
  *United States District Court, Central District of California, Western Division (Case No.CV03-8248-ABC-VBKx)*
  Deposition testimony and expert report:  economic harm involving infringement of trademark used in extreme sports applications.

- **Metrologic Instruments, Inc. v. PSC, Inc.**
  *United States District Court, District of New Jersey (Case No. 99-CV-04876)*
  Deposition testimony and expert report: reasonable royalty and prejudgment interest involving patents covering bar code scanning equipment.

- **ETEX Corporation v. Medtronic, Inc., Medtronic International Limited, and Medtronic Sofamor Danek, Inc.**
  *CPR Institute for Dispute Resolution*
  Arbitration and deposition testimony and expert report: lost revenues and profits associated with alleged contractual breaches and anti trust violations involving spinal implant materials.

- **Audiotext International, Ltd. and New Media Group, Inc. v. Sprint Communications Company L.P.**
  *United States District Court, Eastern District of Pennsylvania (Case No.03-CV-2110)*
  Deposition testimony and expert report: non-delivery damages involving contracts covering resale of telecommunications services.

- **Nonin Medical, Inc. v. BCI, Inc.**
  *United States District Court, Fourth Division of Minnesota (Case No.02-668-JEL/JGL)*
  Deposition testimony and expert report: reasonable royalty, lost profits and prejudgment interest involving patents directed to finger clip pulse oximeters.

- **Medtronic Sofamor Danek, Inc. v. Gary K. Michelson, M.D., and Karlin Technology, Inc.**
  *United States District Court, Western District of Tennessee (Case No. 01-2373 GV)*
  Trial and deposition testimony and expert report: damages and profits associated with alleged contractual breaches, tortious interference and intentional negligent representations involving spinal implants.

- **Stryker Trauma S.A. and Howmedica Osteonics Corp. v. Synthes (USA)**
  *United States District Court, District of New Jersey (Case No.01-CV 3879 (DMC))*
  Deposition testimony and expert report: lost profits, reasonable royalty and prejudgment interest involving a patent directed to snap-fit external fixation systems.

- **Michael Foods, Inc. and North Carolina State University v. Rose Acre Farms, Inc.**
  *United States District Court, Eastern District of North Carolina Western Division (Case No.5:02-CV-477-H(3))*
  Deposition testimony and expert report: lost profits, reasonable royalty and prejudgment interest involving patents directed to extended shelf life eggs.

*John C. Jarosz, page 4*

- Honeywell International, Inc. and GEM Microelectronic Materials LLC v. Air Products and Chemicals, Inc and Ashland, Inc.
  *Delaware Chancery Court, County of New Castle (Case No.20434-NC)*
  Trial and deposition testimony and expert report: lost profits associated with alleged contractual breach and tortious interference as well as irreparable harm inquiry involving a strategic alliance to provide electronic chemicals, gases and services to the semiconductor industry.

- Waters Technologies Corporation, Waters Investments, Ltd., Micromass UK Ltd., and Micromass, Inc. v. Applera Corporation
  *United States District Court, District of Delaware (Case No.02-1285-GMS)*
  Deposition testimony and expert report: lost profits, price erosion, reasonable royalty and prejudgment interest involving a patent directed to mass spectrometer ionization sources.

- Ortho-McNeil Pharmaceutical, Inc., et al. v. Mylan Laboratories
  *United States District Court, Northern District of West Virginia (Case No. 1:02CV32)*
  Trial and deposition testimony and expert report: commercial success covering a patent directed to the active ingredient of an anti-infective drug (levofloxacin).

- Riverwood International Corporation v. MeadWestvaco Corporation
  *United States District Court, Northern District of Georgia (Case No.1:03-CV-1672 (TWT))*
  Deposition testimony and expert report: irreparable harm involving a patent directed to 2x6 beverage cartons.

- Matsushita Electric Industrial Co. Ltd. v. Cinram International, Inc.
  *United States District Court, District of Delaware (Case No.01-882-SLR)*
  Deposition testimony and expert report: reasonable royalty and prejudgment interest covering patents directed to aspects of bonding substrates together to form optical discs, such as DVDs.

- Christopher Karol and Karol Designs, LLC v. Burton Corporation
  *United States District Court, District of Vermont (Case No. 1:01-CV-178))*
  Deposition testimony and expert report: reasonable royalty and disgorgement of profits involving trade secrets and an NDA directed to snowboard boot and binding technology.

- Boehringer Ingelheim Vetmedica, Inc. v. Schering-Plough Corporation and Schering Corporation
  *United States District Court, District of New Jersey (Case No. 96-CV-04047)*
  Trial and deposition testimony and expert report: lost profits, reasonable royalty, price erosion and prejudgment interest involving a patent directed to porcine vaccine (PRRS) products.

- Interactive Return Service, Inc. v. Virginia Polytechnic Institute and State University, et al.
  *Circuit Court for the City of Richmond (Case No.LM-870-3)*
  Deposition testimony: lost profits and lost licensing fees involving contracts to develop interactive/return path communications.

- Genzyme Corporation v. Atrium Medical Corporation
  *United States District Court, District of Delaware (Case No.00-958-RRM)*
  Trial testimony and expert report: lost profits and price/margin erosion involving patents covering chest drainage systems.

- **Arris International and Randall A. Holliday v. John Mezzalingua and Associates, Inc. d/b/a PPC**
  *United States District Court, District of Colorado (Case No. 01-WM-2061)*
  Deposition testimony and expert report: reasonable royalty and prejudgment interest involving patents directed to coaxial cable connectors.

- **Dictaphone Corporation v. Nice Systems, Ltd.**
  *United States District Court, District of Connecticut (Case No. 3:00-CV-1143)*
  Deposition testimony and expert report: lost profits, price/margin erosion, reasonable royalty and prejudgment interest involving patents covering digital logger systems.

- **Promega Corporation v. Applera Corporation, and Lifecodes Corporation, and its Subsidiaries Cellmark Diagnostics, Inc. and Genomics International Corporation**
  *United States District Court, Western District of Wisconsin (Case No. 01-C-0244-C)*
  Deposition testimony and expert report: lost profit rate, reasonable royalty and prejudgment interest involving a patent directed to DNA sequencing technology.

- **Greene, Tweed of Delaware, Inc. v. Dupont Dow Elastomers, LLC**
  *United States District Court, Eastern District of Pennsylvania (Case No. 00-CV-3058)*
  Trial and deposition testimony and expert report: lost profits, reasonable royalty and prejudgment interest involving a patent covering perfluorelastomeric seals used in semiconductor fabrication applications.

- **Takata Corporation v. AlliedSignal, Inc. and Breed Technologies, Inc.**
  *United States District Court, District of Delaware (Case No. 98-94-MMS)*
  Deposition testimony and expert report: reasonable royalty and prejudgment interest covering patents and trade secrets directed to seatbelt retractors.

- **Alcon Laboratories, Inc. and Alcon Manufacturing, Ltd. v. Pharmacia Corporation, Pharmacia & Upjohn Company, and The Trustees of Columbia University in the City of New York**
  *United States District Court, Southern District of New York (Case No. 01-Civ.2989 (WHP))*
  Deposition testimony and expert report: lost profits, reasonable royalty and prejudgment interest involving a patent directed to compositions for treatment of glaucoma.

- **Pharmacia Corporation, Pharmacia AB, Pharmacia Enterprises S.A. and Pharmacia & Upjohn Company v. Alcon Laboratories, Inc.**
  *United States District Court, Southern District of New York (Case No. 01-070-SLR)*
  Deposition testimony and expert report: lost profits, reasonable royalty and prejudgment interest involving a patent directed to compositions for treatment of glaucoma.

- **Chiron Corporation v. Genentech, Inc.**
  *United States District Court, Eastern District of California (Case No. S-00-1252 WBS GGH)*
  Deposition testimony and expert report: reasonable royalty and prejudgment interest covering a patent directed to the active ingredient in Herceptin (an anti-cancer drug).

▪ Norian Corporation v. Stryker Corporation
*United States District Court, Northern District of California (Case No. C-01-0016 (WHA))*
Trial and deposition testimony and expert report: reasonable royalty and prejudgment interest involving a patent covering bone cement.

▪ Streck Laboratories v. Beckman Coulter, Inc.
*United States District Court, District of Nebraska (Case No. 8:99CV473)*
Deposition testimony and expert report: reasonable royalty and prejudgment interest involving patents covering hematology testing equipment.

▪ Adobe Systems Inc. v. Macromedia, Inc.
*United States District Court, District of Delaware (Case No. 00-743-JJF)*
Trial and deposition testimony and expert report: reasonable royalty involving patents covering computer video and audio software.

▪ City of Hope National Medical Center v. Genentech, Inc.
*Superior Court, State of California, County of Los Angeles  (Case No. BC215152)*
Deposition testimony and expert report: damages associated with alleged breach of contract involving license fees for use of recombinant DNA technology.

▪ John Mezzalingua Associates, Inc., d/b/a PPC v. Antec Corp.
*United States District Court, Middle District of Florida (Case No. 3:01-CV-482-J-25 HTS)*
Deposition testimony and expert report: disgorgement of profits involving a design patent covering a coaxial cable connection.

▪ Rockwell Automation Technologies, LLC v. Spectra-Physics Lasers, Inc., and Opto Power Corporation
*United States District Court, District of Delaware (Case No. 00-589-GMS)*
Deposition testimony and expert report: reasonable royalty involving a patent covering a process for producing semiconductor epitaxial films.

▪ Tanashin Denki Co., Ltd. v. Thomson Consumer Electronics, Inc.
*United States District Court, Southern Division of Indiana (Case No. IP 99-836-C Y/G)*
Trial and deposition testimony and expert report: lost profits, reasonable royalty and prejudgment interest involving patents covering cassette tape drives.

▪ Igen International, Inc. v. Roche Diagnostics GmbH
*United States District Court, Southern Division of Maryland (Case No. PJM 97-3461)*
Trial and deposition testimony and expert report: damages and profits associated with an alleged breach of contract involving electrochemiluminescent detection technology used in DNA probe and immunoassay kits.

▪ Heimann Systems GmbH v. American Science and Engineering, Inc.
*United States District Court, District of Connecticut (Case No. 00 CV 10276 (WGY))*
Deposition testimony and expert report: reasonable royalty and prejudgment interest involving a patent directed to mobile X-ray examining apparatus.

*John C. Jarosz, page 7*

■ **Omega Engineering, Inc. v. Cole-Parmer Instrument Company/ Davis Instrument Manufacturing Company, Inc./ Dwyer Instruments, Inc and Raytek Corporation**
*United States District Court, District of Connecticut (Case Nos. 3:98 CV 00733 (JCH), 3:98 CV 02052 (JCH) and 3:98 CV 02276 (JCH))*
Trial and deposition testimony and expert report: lost profits, reasonable royalty and prejudgment interest involving patents and alleged unfair competitive practices directed to portable infrared thermometers.

■ **Particle Measuring Systems, Inc. v. Rion Co., Ltd.**
*United States District Court, District of Colorado (Case File No. 99-WM-1433)*
Deposition testimony and expert report: lost profits, reasonable royalty and prejudgment interest involving a patent directed to a device and method for optically detecting particles in fluid.

■ **Trimless-Flashless Design, Inc. v. Augat, Inc./Thomas & Betts Corporation/Tyco International, Ltd.**
*United States District Court, Eastern District of Virginia (Case No. CA00-245-A)*
Trial and deposition testimony and expert report: damages and profits associated with alleged breach of contract and misappropriation of trade secrets involving metallized particle interconnects used to connect microprocessors with mother boards.

■ **The University of Colorado Foundation Inc., et al. v. American Cyanamid Company**
*United States District Court, District of Colorado (Case File No. 93-K-1657)*
Trial and deposition testimony and expert report: measure and amount of prejudgment interest in a patent infringement, fraud and unjust enrichment case covering prenatal vitamin formulations.

■ **Gleason Works v. Oerlikon Geartec AG and Liebherr-America, Inc.**
*United States District Court, Western District of New York (Case File No. 98-CV-6275 L)*
Deposition testimony and expert report: lost profits, reasonable royalty and prejudgment interest involving a patent directed to bevel gear-cutting machines.

■ **Amersham Pharmacia v. PE Corporation**
*United States District Court, Northern District of California (Case No. C 97-04203-TEH)*
Deposition testimony and expert report: lost profits, reasonable royalty and prejudgment interest involving a patent directed to a method of using energy transfer reagents in a DNA sequencing system.

■ **Ziarno v. The American Red Cross, et al.**
*United States District Court, Northern District of Illinois (Case No. 99 CIV 3430)*
Deposition testimony and expert report: reasonable royalty and prejudgment interest involving a patent directed to online/internet fundraising.

■ **Bristol-Myers Squibb Company v. Rhone-Poulenc Rorer Inc. and Centre National De La Recherche Scientifique**
*United States District Court, Southern District of New York (Case No. 95 Civ. 8833)*
Deposition testimony and expert report: reasonable royalty covering a patent directed to semi-synthetic processes for manufacturing Taxol (an anti-cancer drug).

*John C. Jarosz, page 8*

◻   **Pactiv Corp. v. S.C. Johnson & Son, Inc.**
*United States District Court, Northern District of Illinois (Case No. 98 C 2679)*
Deposition testimony and expert report: lost profits, reasonable royalty and prejudgment interest
involving a patent directed to zipper closure mechanisms for home storage bags.

◻   **Molten Metal Equipment Innovation, Inc. v. Metaullics**
*United States District Court, Northern District of Ohio (Case No. 1:97-CV2244)*
Trial testimony and expert report: lost profits, reasonable royalty and prejudgment interest covering
a patent directed to submersible molten metal pumps.

◻   **Applied Medical Resources Corporation v. Core Dynamics, Inc.**
*United States District Court, Central District of California (Case No. SACV 99-748-DOC (ANx))*
Trial and deposition testimony and expert report: reasonable royalty and prejudgment interest
involving patents directed to surgical trocars.

◻   **Leslie Atkins v. Benson J. Fischer, et al.**
*United States District Court, District of Columbia (Case No. 1:98CV00800)*
Deposition testimony and expert report: damages and profits associated with copyright infringement
covering beer label and packaging designs.

◻   **New Industries Co. (Sudan) Ltd. v. PepsiCo, Inc.**
*American Arbitration Association (Case No. 50 T 114 00001 95)*
Arbitration hearing and expert report: damages and profits associated with breaches of PepsiCo
franchise agreement.

◻   **Bell Communications Research, Inc. v. Fore Systems, Inc.**
*United States District Court, District of Delaware (Case No. 98-586 JJF)*
Deposition testimony and expert report: reasonable royalty and prejudgment interest covering
patents directed to telecommunications technology (ATM over SONET networks).

◻   **Newell Operating Company (EZ Paintr Company) v. Linzer Products Corporation
Corporation**
*United States District Court, Eastern District of Wisconsin (Case No. 98-C-0864)*
Deposition testimony and expert report: reasonable royalty and prejudgment interest covering a
patent directed to a method for manufacturing polypropylene paint roller covers.

◻   **Neogen Corporation v. Vicam, L.P., et al.**
*United States District Court, Middle District of Florida (Case No. 97-405-CIV-T-23B)*
Deposition testimony and expert report: lost profits, reasonable royalty and prejudgment interest
covering a patent and a variety of tort claims directed to aflatoxin testing equipment.

◻   **First National Bank of Omaha v. Three Dimensions Systems Products, Inc.**
*United States District Court, District of Nebraska (Case No. 8:98CV569)*
Trial and deposition testimony and expert report: damages and profits associated with an alleged
contract breach and copyright infringement involving financial services software.

*John C. Jarosz, page 9*

- **Dr. Harry Gans v. Conair Corporation**
  *United States District Court, Southern District of New York (Case No. 94-5693 (KTD) (FM))*
  Trial and deposition testimony and expert report: reasonable royalty and prejudgment interest covering a patent directed to hazard prevention devices used with electrical hair dryers.

- **Dow Chemical Company v. Sumitomo Chemical Company, Ltd., Sumitomo Chemical America, Inc.**
  *United States District Court, Eastern District of Michigan (Case No. 96-10330-BC)*
  Deposition testimony and expert report: reasonable royalty and prejudgment interest covering a patent directed to a method for manufacturing cresol epoxy novalac resins used in integrated circuit encapsulation.

- **Elan Corporation, PLC v. Andrx Pharmaceuticals, Inc.**
  *United States District Court, Southern District of Florida (Case No. 98-7164)*
  Trial and deposition testimony and expert report: commercial success covering a patent directed to controlled release dosing of naproxen (nonsteroid anti-inflammatory drug) products.

- **Insight Development Corporation v. Hewlett-Packard Company**
  *United States District Court, Northern District of California (Case No. C 98 3349 CW)*
  Deposition testimony and expert report: damages and profits associated with alleged contract breaches, patent, copyright and trade secret misappropriation/infringement and unfair competition involving digital image processing and transmission, including that over the internet.

- **Sofamor Danek Holdings, Inc., et al v. United States Surgical Corp., et al.**
  *United States District Court, Western District of Tennessee (Case No. 98-2369 GA)*
  Trial and deposition testimony and expert report: lost profits, reasonable royalty and prejudgment interest involving a patent covering the method of inserting a spinal inter-body fusion device.

- **Anodyne Corp. v. Klaas, Law, O'Meara & Malkin**
  *State of Colorado, District Court, City and County of Denver (Case No. 97-CV-7129)*
  Trial testimony and expert report: lost licensing income and prejudgment interest associated with a law firm's negligence in filing a patent application directed to wrappable flashlights.

- **Surety v. Entrust**
  *United States District Court, Eastern District of Virginia  (Case No. 99-203-A)*
  Deposition testimony and expert report: lost profits, reasonable royalty and prejudgment interest covering a patent directed to digital time stamping.

- **Hunter Group, Incorporated v. Susan Smith, et al.**
  *United States District Court, District of Maryland (Case No. 97-2218)*
  Trial and deposition testimony and expert report: lost enterprise value and lost profits associated with improper solicitation of enterprise resource planning software trainers.

- **AcroMed Corporation v. Sofamor Danek Group, Inc.**
  *United States District Court, Northern District of Ohio (Case No. 1:93-CV01184)*
  Trial and deposition testimony and expert report: lost profits and prejudgment interest involving patents directed to spinal implant devices.

*John C. Jarosz, page 10*

- **BIC Corporation v. Thai Merry Co., Ltd.**
  *United States District Court, Central District of California  (Case No. 98 CIV. 2113 (DLC))*
  Deposition testimony and expert report: lost profits, reasonable royalty and prejudgment interest involving a patent directed to disposable cigarette lighters.

- **Computer Aid v. Hewlett-Packard**
  *United States District Court, Eastern District of Pennsylvania (Case No. C-96-3085  (MHP))*
  Deposition testimony and expert report: appropriate discount rate and prejudgment interest rate involving a failed software development contract.

- **Wrench LLC v. Taco Bell Corporation**
  *United States District Court, Southern District of Michigan (Case No. 1:98-CV-45)*
  Trial and deposition testimony and expert report: unjust enrichment and actual damages involving chihuahua promotional campaign.

- **Syncsort Inc. v. Michael Wagner, Cambridge Algorithm, ICF Kaiser Intl. Inc., et al.**
  *United States District Court, Northern District of Georgia (Case No. 1:93-CV-2247-JEC)*
  Deposition testimony and expert report:  reasonable royalty and prejudgment interest involving a patent directed to data sorting software.

- **Shell Oil Co. v. ICI Americas, Inc. and P.E.T Processors, LLC**
  *United States District Court, Eastern District of Louisiana  (Case No. 97-3526 Section "K")*
  Deposition testimony and expert report:  lost profits and reasonable royalty involving a patent directed to a process to manufacture solid stated polyethylene naphthalene.

- **Pall Corporation v. Hemasure Inc. and Lydall, Inc.**
  *United States District Court, Eastern District of New York (Case No. CV-96-436 (TCP/ETB)), Case No. 96-5620 (LDW/VVP)*
  Deposition testimony and expert report: lost profits, reasonable royalty and prejudgment interest involving patents directed to prestorage leukodepletion devices.

- **Mentor H/S, Inc. v. Medical Device Alliance, Inc., Lysonix, Inc. and Misonix, Inc.**
  *United States District Court, Central District of California (Case No. CV97-2431 WDK (BQRx))*
  Trial and deposition testimony and expert report:  lost profits, reasonable royalty and prejudgment interest involving a patent directed to ultrasonic liposuction.

- **Hyundai Electronics Industries Co., LTD. v. NEC Corporation and NEC Electronics, Inc.**
  *United States District Court, Eastern District of Virginia  (Case No. 97-2030A, Case No. 97-2031A, Case No. 98-118-A)*
  Deposition testimony and expert report:  reasonable royalty and prejudgment interest involving patents directed to semiconductor technology.

- **William Aramony v. United Way of America et al.**
  *United States District Court, Southern District of New York (Case No. 96 Civ. 3962 (SAS))*
  Trial testimony and expert report: lost contributions and out-of-pocket losses surrounding the departure of United Way of America president.

*John C. Jarosz, page 11*

□ **Burke, Inc. v. Everest & Jennings, Inc. et al./Burke, Inc. v. Invacare Corp.**
*United States District Court, Central District of California (Case No. 89-2613 (KMW)/Case No. 90-787 (KMW))*
- Trial and deposition testimony and expert report: lost profits, reasonable royalty and prejudgment interest over a patent directed to three wheel motorized scooter technology.

□ **Hitachi, LTD. v. Samsung Display Devices Co., LTD., Samsung Display Devices, Inc., Samsung Electronics Co., LTD., Samsung Electronics America, Inc., and Office Depot, Inc.**
*United States District Court, Eastern District of Virginia (Case No. 97-1988-A)*
Deposition testimony and expert report: reasonable royalty and prejudgment interest involving patents directed to various aspects of cathode ray tubes.

□ **Stairmaster Sports/Medical Products, a Limited Partnership v. Groupe Procycle, Inc. and Procycle USA, Inc.**
*United States District Court, District of Delaware (Case No. 97-396 MMS)*
Deposition testimony and expert report: lost profits, reasonable royalty and prejudgment interest involving a patent directed to stair climbing fitness equipment.

□ **Angelo Mongiello's Children, LLC v. Pizza Hut, Inc.**
*United States District Court, Eastern District of New York (Case No. 95 CV 4601)*
Deposition testimony and expert report: reasonable royalty and prejudgment interest involving a patent directed to a method for forming pizza shells.

□ **AutoNation, Inc. v. Acme Commercial Corp., et al. (CarMax)**
*United States District Court, Southern District of Florida (Case No. 96-6141)*
Trial and deposition testimony and expert report: reasonable royalty associated with trademark infringement and unfair competition in the auto superstore business.

□ **BTG v. Magellan Corp./ BTG v. Trimble Navigation**
*United States District Court, Eastern District of Pennsylvania (Case No. 96-CV-7551/Case No. 96-CV-5084 (HB))*
- Deposition testimony and expert reports: reasonable royalty, prejudgment interest, value of inventory on hand, preparation and investments made and business commenced (as of patent reissuance) involving a patent directed to secret or secure communications technology employed in global positioning system products.

□ **Micro Chemical, Inc. v. Lextron, Inc.**
*United States District Court, District of Colorado (Case No. 88-Z-499)*
Trial and deposition testimony and expert report: lost profits, price erosion, reasonable royalty and prejudgment interest involving a patent directed to feed additive weigh/mix dispensing machines.

□ **Thai Merry Co., Ltd., Honson Marketing Group, Inc. and Calico Brands, Inc. v. BIC Corporation**
*United States District Court, Central District of California (Case No. 96-5256 WJR (BQRx))*
Deposition testimony and expert report: lost profits, reasonable royalty and prejudgment interest involving patents directed to child-resistant disposable cigarette lighters.

*John C. Jarosz, page 12*

- **Radco, Inc. v. Shell Oil Company, Foster Wheeler USA Corporation, Lyondell-Citgo Refining Company, LLC, Petro-Chem Development Company Inc. and Marathon Oil Company**
  *United States District Court, Northern District of Oklahoma (Case No. 93-C 1102)*
  Deposition testimony and expert report: reasonable royalty involving a patent directed to coker heater refinery equipment.

- **Beloit Corporation v. Valmet Corporation, et al.**
  *United States District Court, Western District of Wisconsin (Case No. 96-C-0087-C)*
  Trial testimony and expert report: lost profits, reasonable royalty and prejudgment interest involving patents directed to the dryer section of paper making machines.

- **Fox v. Fox**
  *State of Virginia, Circuit Court, Arlington County  (Chancery No. 96-80)*
  Trial testimony (proffered) and expert report: prospective valuation of a patent portfolio involving lasers used for lithotripsy and angioplasty.

- **Bauer Inc. v. Rollerblade, Inc.**
  *United States District Court, Eastern District of Virginia (Case No. 96-952-A)*
  Deposition testimony and expert report: lost profits, reasonable royalty and prejudgment interest involving a patent directed to a hybrid stitched and molded skate boot design.

- **Kabushiki Kaisha Izumi Seiko Seiskusho v. Windmere Corp. et al.**
  *United States District Court, Southern District of Florida (Case No, 94-0803-CIV-MOORE)*
  Deposition testimony and expert declaration: lost revenues and lost profits in a breach of contract, fraud and antitrust case involving rotary shavers.

- **Mettler - Toledo A.G.  v. Denver Instrument Co., et al.**
  *United States District Court, Eastern District of Virginia (Case No. 95-1055-A)*
  Deposition testimony and expert report: lost profits, reasonable royalty and prejudgment interest involving patents directed to analytical and precision balances.

- **Bristol-Myers Squibb Co. v. Abbott Laboratories**
  *United States District Court, Southern District of Indiana (Case No. EV 94-56-C)*
  Trial and deposition testimony and expert report: reasonable royalty involving a patent directed to a guiding device used in enteral delivery set assemblies.

- **Crown Equipment Corp. v. The Raymond Corporation**
  *United States District Court, Northern District of Ohio (Case No. 3:93CV7356)*
  Trial and deposition testimony and expert report: lost profits, reasonable royalty and prejudgment interest involving a patent directed to lift truck technology.

- **DSC Communications Corp. v. DGI Technologies, Inc.**
  *United States District Court, Northern District of Texas (Case No. 3:94-CV-1047)*
  Trial testimony and expert report: reasonable royalty involving copyrights, trade secrets and unfair competition over telecommunications switching equipment.

a    **Mitsubishi Kasei Corp. and Mitsubishi Kasei America, Inc. v. Virgle Hedgcoth and Mertec Licensing Technology**
*United States District Court, Northern District of California (Case No. 94-1971 SAW (JSB))*
Deposition testimony and expert report:  reasonable royalty involving a patent directed to sputtered rigid disks used in personal computers.

a    **Travelers Express Co. Inc. v. The Standard Register Co.**
*United States District Court, District of Minnesota (Case No. 4-93-436)*
Deposition testimony and expert report:  lost profits, reasonable royalty, patent misuse and prejudgment interest involving patents directed to money order dispensers.

a    **Wayne State University, Lumigen Inc. and A. Paul Schapp v. Irena Bronstein and Tropix Inc.**
*State of Michigan, Circuit Court, County of Wayne and Court of Claims (Case No. 88-804-627 CK/Case No. 88-11871CM)*
Deposition testimony and expert report:  unjust enrichment and lost profits involving trade secrets directed to chemiluminescence (medical detection) technology.

a    **Dow Chemical Co. v. The United States**
*Court of Federal Claims (Case No. 19-83C)*
Trial and deposition testimony:  measure and amount of delay compensation in an eminent domain case over the taking of a patent directed to the back - filling of abandoned coal mines.


**PUBLICATIONS**

a    "Book Review: THE LESI GUIDE TO LICENSING BEST PRACTICES: STRATEGIC ISSUES AND CONTEMPORARY REALITIES", 21 *Intellectual Property Law Newsletter* 18 (Winter 2003).

a    "Use of the 25 Per Cent Rule in Valuing IP," (with Robert Goldscheider and Carla S. Mulhern), 37 *les Nouvelles, Journal of The Licensing Executives Society* 123 (December 2002).  Also in G. Smith and R. Parr, INTELLECTUAL PROPERTY: VALUATION, EXPLOITATION AND INFRINGEMENT DAMAGES (2005).

a    "Intellectual Property Valuation and *Hughes Aircraft v. The United States*: A Giant Leap for Mankind or Lost in Space?" (with Brett L. Reed), R. Parr, INTELLECTUAL PROPERTY INFRINGEMENT DAMAGES:  A LITIGATION SUPPORT HANDBOOK, 1997 CUMULATIVE SUPPLEMENT (1997).

a    "Damages in Patent and Trademark Infringement," *The Journal of Business Valuation* (1995).

a    "The *Panduit* Lost Profits Test After *BIC Leisure v. Windsurfing*," 3 *The Federal Circuit Bar Journal* 311 (Fall 1993) (with Erin M. Page).  Also in 3 *Bright Ideas - The Newsletter of the Intellectual Property Law Section of the New York State Bar Association* 36 (Spring, 1994).

a    "The CAFC and its Patent Damages Awards," 1 *The University of Baltimore Intellectual Property Law Journal* 17 (1992).

*John C. Jarosz, page 14*

- "Pre-tax Versus After-tax Patent Damages: Do the Courts Have It Right?" 74 *Journal of the Patent and Trademark Office Society* 938 (December 1992). Also in 7 *Managing Intellectual Property* 17 (March, 1993).

- "Taxes and Lost Profits," 7 *Commercial Damages Reporter* 177 (Iss. 6, Sept. 1992).

- "Considering Taxes in the Computation of Lost Business Profits." 25 *Creighton L.R.* 41 (1991).

## SPEECHES/COURSES

- "Valuation and Taxation Roundtable Discussion – Hands on Application of Valuation Tools," Licensing Executives Society Winter Meeting, February 2005 (with Serge-Alain G. Wandji).

- "Valuation and Pricing of IP," Association of University Technology Managers Annual Meeting (Educational Track ED1), February 2005 (with Ashley Stevens, Jennifer Hartt and Andrew Maslow); Licensing Executives Society DC Chapter Meeting, February 2005.

- "Ingredients of a Damages Study," Law Seminars International, Calculating and Proving Patent Damages, October 2004.

- "Current Topics in Technology Valuation," Association of University Technology Managers Annual Meeting (Educational Track ED1), March 2004.

- "Creative Thinking on Remedies," Law Seminars International, Trademarks Transactions and Litigation Workshop, July 2003.

- "Industry Royalty Rates and Profitability: An Empirical Test of the 25% Rule," Licensing Executives Society Annual Meeting (Workshop 3-L), October 2001 (with Carla S. Mulhern and Robert L. Vigil).

- "Patent vs. Trade Secret Protection after 18-Month Publication and Festo–Monetary Relief," Licensing Executives Society Annual Meeting (Workshop 2-M), October 2001 (with Griffith B. Price, Jr., John K. Williamson and Robert W. Payne).

- "The Design-Around Defense in Lost Profits Litigation," Patent Lawyers Club of Washington, May 2000.

- "Use of the 25% Rule in Valuing Intellectual Property," Center for Continuing Education, Santa Clara, California, December 1999.

- "Extracting Value from Intellectual Assets: Valuation," INTX Seminar – On the Frontier of Intellectual Asset Management: The Strategic Management of Intellectual Assets, November 1999.

- "Internet Patents – Monetary Remedies," American Intellectual Property Law Association Mid-winter Meeting – IP Law in Cyberspace, February 1999 (with R. Jeffrey Malinak).

- "Industry Royalty Rates and Profitability: An Empirical Test of the 25% Rule," Licensing Executives Society Annual Meeting (Workshop 3-11), October 1998 (with Carla S. Mulhern).

- "Royalty Rates and Awards with Patent Infringement Cases: 1916-1996," Licensing Executives Society Annual Meeting (Workshop G3), November 1997.

- "Valuation of Technology," Technology Transfer Society Annual Meeting, July 1997.

- "The Valuation and Licensing of Intellectual Property," Launchspace, December 1996 (with Robert Goldscheider).

- "Quantifying and Valuing Royalties for Intellectual Property," The 5th Intellectual Property Institute for Corporate Counsel, May 1996.

- "Taxes and Damages," CPA/Lawyer Relations Committee, DC Institute of CPAs -Legal and Financial Implications of Damages in Litigation, October 1995.

- "Estimating Lost Profits in Commercial Litigation," Maryland Association of Certified Public Accountants, Litigation Support Service Conferences, May 1995.

- "Damages in Patent and Trademark Infringement," Joint American Society of Appraisers and Canadian Institute of Chartered Business Valuators meeting, November 1994.

# EXHIBIT NN

# THIS EXHIBIT HAS BEEN REDACTED IN ITS ENTIRETY

# EXHIBIT OO

# THIS EXHIBIT HAS BEEN
# REDACTED IN ITS ENTIRETY

# EXHIBIT PP

# THIS EXHIBIT HAS BEEN REDACTED IN ITS ENTIRETY

# EXHIBIT QQ

# THIS EXHIBIT HAS BEEN
# REDACTED IN ITS ENTIRETY

# EXHIBIT RR

# THIS EXHIBIT HAS BEEN REDACTED IN ITS ENTIRETY

# EXHIBIT SS

# THIS EXHIBIT HAS BEEN REDACTED IN ITS ENTIRETY

# EXHIBIT TT

UNITED STATES DISTRICT COURT
DISTRICT OF DELAWARE

| | |
|---|---|
| BRIDGESTONE SPORTS CO., LTD., and BRIDGESTONE GOLF, INC., | Case No. 05-CA-132 (JJF) |
| Plaintiffs, | |
| v. | |
| ACUSHNET COMPANY, | **NON-INFRINGEMENT EXPERT REPORT OF DR. DAVID L. FELKER** |
| Defendant. | |
| ACUSHNET COMPANY, | |
| Counterclaimant, | |
| v. | **HIGHLY CONFIDENTIAL-SUBJECT TO STIPULATED PROTECTIVE ORDER** |
| BRIDGESTONE SPORTS CO., LTD., and BRIDGESTONE GOLF, INC., | |
| Counterdefendant. | |

396.    Cadorniga cannot assume that the hardness at all points less than 5mm from the core surface is within 8 degrees of the surface hardness. It is well known in the golf ball art that cores can have a hardness which decreases near the surface of the core. For example, United States Patent No. 5,803,833 shows three examples with a hardness which takes a dip near the surface:[22]



397.    Based upon my review of the claim construction agreed to by the parties, the '834 patent, and the testimony of its inventor, Jun Shindo, it is my opinion that Caulfield *must* show that more than one point within 5mm of the core surface is less than 8 degrees than the surface hardness in order to prove infringement, which he has failed to do.

398.    Therefore, in my opinion, Cadorniga cannot conclude that that any of the accused Acushnet balls infringe claim 1 of the '834 patent.

### 2.    Caulfield's 5 mm Preparation and Measurement Protocol Were Improper

399.    Based upon my review of the expert reports of Caulfield and Cadorniga and my inspection of the actual 5 mm samples machined and measured by Packer Engineering and my years of experience in the golf ball industry, it is my opinion that Caulfield's sample preparation

---

[22] This plot is based upon Table 1 of the '833 Patent. (*See* Ex. 30)

and measurement protocol were vastly different from those normally used in the golf ball industry.

400.    Specifically, in my opinion, Caulfield's protocol would have substantively skewed his testing results because it ensured that the one point he measured would have a low hardness value.

401.    For example, instead of cutting the ball in half and measuring a point within 5 mm of the surface, which is the procedure one of ordinary skill in the art would perform, Caulfield cut an 8mm piece of the core and then machined that piece down to 5 mm +/- .2 mm. Even Bridgestone's own engineers have testified that they would measure the 5 mm in the same manner as when the hardness of the core center is measured, which is by simply cutting the cores in half. (*See* Sept. 1, 2006 Higuchi Tr. 263:5-269:19; 276:2-279:9; Sept. 29 Shindo Tr. 96:3-22; 105:8-106:9)

402.    Then, Caulfield measured the 5mm hardness at both the point of intersection where lines had been drawn on the sample's surface and on the opposite side.

403.    During an inspection of Caulfield's testing samples, I photographed the following DT So/Lo 5 mm samples:



404.    As can be seen from the photographs, many of the samples had broken edges, which would make it difficult to locate and measure the 5mm center point.

405.    Although Caulfield measured the 5mm hardness at the point of intersection of the lines drawn on the sample's surface, as can be seen from the photos, the lines did not always intersect at the actual center of the sample, in which case the hardness was measured at a point located less than 5 mm from the surface.

406.    In addition, Caulfield's sample did not have two parallel surfaces, which is in direct violation of the ASTM standard and would have made it difficult to accurately measure the 5 mm surface hardness. (See Ex. 29 ASTM 2240 Standard, at ¶ 6.1.2)

407.    The sample is much smaller in all dimensions than the ASTM standard allows (at least 6mm thick, 12 mm wide and 12 mm long). (*See* Ex. 29 ASTM 2240 Standard, at ¶ 6.1; 6.1.2) If Caulfield had prepared the sample like one of ordinary skill in the golf ball art, the sample would have met the ASTM standard.

408.    Caulfield's method of sample preparation and hardness measurement, in my opinion, ensured that the single point that Caulfield measured would meet the limitation of claim 1 of the '834 patent. For example, the 5mm hardness measurement was measured in the direction of the exterior surface, resulting in the 5mm point being harder than if it had been measured in the direction of the core center.

409.    The thin sample would have tended to make both hardness measurement values higher and closer to the same value because the hardness of the surface underneath the sample would have affected the measurement.

410.    The combination of a thin sample with the off-center measurement would result in hardness differences that were lower than if the sample had been 5mm thick and were measured at the actual center point.

411.    Based upon my experience in the golf ball industry, it is my opinion that if Caulfield's preparation and measurement protocols conformed with the standard protocol in the golf ball art, the accused Acushnet balls would not infringe claim 1 of the '834 patent.

### 3.    Acushnet Obtained Results That Do Not Infringe

412.    In response to this report, I directed Acushnet engineers to design and execute a test protocol that one of ordinary skill in the art would use in the context of the '834 patent. Specifically, Acushnet engineers tested 12 samples of each of the accused Acushnet current balls by cutting the cores in half, and drawing a circle at 4.9 mm of the outside edge of the core and measuring the hardness at four points.

111

413.    All but two of the 36 balls the Acushnet engineers tested had a hardness within 5mm of the core surface that was 8 degrees higher than the surface hardness. (*See* Ex. 31, Hardness Testing Within 5mm of Core Surface). The inventor of the '834 patent stated in his deposition that if any point existed between the surface and 5 mm inside the surface was more than 8 degrees softer than the surface then the limitation of claim 1 was not met. Thus, Acushnet's test results demonstrate that Acushnet does not infringe Claim 1 of the '834 patent.

### 4.    Many of Caulfield's Protocols Were Improper

#### a.    Caulfield Used Significantly Different Balls in His Averages In Connection With Claim 1 of the '834 Patent

414.    During the testing in connection with the '707 patent, Caulfield stated that he observed two "significantly different" colors of cores in the groups of balls for the DT So/Lo (D2) and also for the Exception (E2) models. (*See* Caulfield Report, at pg. 10). He reported that the average surface hardness was significantly different for each color group within the same ball model. Caulfield reported that the average surface hardness for the darker colored D2 cores averaged 75.2 JIS C, compared to 82.1 JIS C for the average of the entire 60 ball D2 group. (Caulfield Report, at pg. 10). He also reported that the very lightly colored E2 cores in the E2 group had an average surface hardness of 73.9 JIS C compared to a value of 79.1 JIS C for the entire group of 36 cores.

415.    Cadorniga identified the large hardness differences related to the different colored cores but still included those balls in his average hardness gradient. Based upon my review of Dr. Sutton's report, I can say that, at a minimum, he should have identified whether or not the balls belonged to a unique subgroup of balls. Cadorniga's analysis is flawed because he failed to either (1) identify whether or not the FF and GG balls were properly included in the D2 and E2