IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| BRIDGESTONE SPORTS CO., LTD., and BRIDGESTONE GOLF, INC., | ) ) ) C. A. No. 05-132 (JJF) |
| Plaintiffs, | ) ) **JURY TRIAL DEMANDED** |
| v. | ) ) **PUBLIC VERSION** |
| ACUSHNET COMPANY, | ) ) |
| Defendant. | ) |

**ACUSHNET'S OPENING BRIEF IN SUPPORT OF ITS
MOTION TO WITHDRAW ITS ADMISSIONS TO
BRIDGESTONE'S REQUESTS FOR ADMISSION NOS. 7-8**

OF COUNSEL:

Alan M. Grimaldi
Joseph P. Lavelle
Kenneth W. Donnelly
Brian S. Seal
HOWREY LLP
1299 Pennsylvania Avenue, N.W.
Washington, DC 20004
Tel: (202) 783-0800

Dated: March 21, 2007
Public Version Date: March 28, 2007

Richard L. Horwitz (#2246)
David E. Moore (#3983)
POTTER ANDERSON & CORROON LLP
Hercules Plaza, 6th Floor
1313 North Market Street
P. O. Box 951
Wilmington, DE 19899-0951
Tel: (302) 984-6000
rhorwitz@potteranderson.com
dmoore@potteranderson.com

*Attorneys for Defendant
Acushnet Company*

**TABLE OF CONTENTS**

I. INTRODUCTION ...................................................................................................1

II. NATURE AND STAGE OF THE PROCEEDINGS ............................................1

III. STATEMENT OF FACTS ....................................................................................1

IV. ARGUMENT..........................................................................................................4

    A. The merits of the case will be served by a withdrawal. ...............................5

    B. Because Bridgestone never relied on Acushnet's admissions, it cannot be prejudiced by a withdrawal. ......................................................6

V. CONCLUSION.......................................................................................................7

# TABLE OF AUTHORITIES

## CASES

*Coca-Cola Bottling Co. v. Coca-Cola Co.*,
    123 F.R.D. 97 (D. Del. 1988) ............................................................................. 4, 5, 6

*Gutting v. Falstaff*,
    710 F.2d 1309 (8th Cir. 1983) ..................................................................................... 6

*Howard v. Sterchi*,
    725 F. Supp. 1572 (N.D. Ga. 1989) ............................................................................ 6

*Revlon Consumer Prods. Corp. v. L'Oreal S.A.*,
    170 F.R.D. 391 (D. Del. 1997) .................................................................................... 5

## RULES

Fed. R. Civ. P. 36(b) ............................................................................................................ 4

## I. INTRODUCTION

Although Acushnet previously admitted that its Titleist NXT Tour golf balls have a core distortion within the range claimed by Bridgestone's '817 patent, test data reported by Bridgestone's expert witnesses shows that they do not. Because Bridgestone has not relied on Acushnet's admission and can show no prejudice it would suffer as a result of withdrawal, and because the merits of the case would be best be served by a withdrawal, Acushnet should be permitted to withdraw its admissions.

## II. NATURE AND STAGE OF THE PROCEEDINGS

This is a patent infringement suit brought by Plaintiffs Bridgestone Sports Co., Ltd. and Bridgestone Golf, Inc. (collectively, "Bridgestone") against Defendant Acushnet Company ("Acushnet") in March 2005. Under the Court's Scheduling Orders, fact discovery closed on October 10, 2006. The parties, however, agreed to extend fact discovery until December 18, 2006. The parties are presently engaged in expert discovery, which closes this week. Summary judgment is ordered to be briefed by April 13. And trial is scheduled to begin on June 18, 2007.

## III. STATEMENT OF FACTS

Bridgestone has accused Acushnet of infringing U.S. Patent No. 5,743,817 ("the '817 patent"), which claims, *inter alia*, a golf ball whose "core has a distortion of 2.9 to 4.0 mm under a load of 100 kg." (Ex. A – '817 Patent, Col. 6, ll. 50-51). "Distortion" as claimed in the '817 patent is a measure of compression. As explained by Bridgestone's expert witness, Larry Cadorniga,

> Compression is a basic design parameter well known in the golf ball industry. Many different compression measurements methods are used in the industry. Among these various compression measurement methods are Atti or PGA compression, Riehle compression and load/deflection measurements, *e.g.*, distortion under a 100 kg load. The distortion measurement of a finished golf ball and a golf ball core under a load of

100 kg represents one of a number of well-known compression measurements.

(Ex. B – Cadorniga 1/16/07 Report at D-5) (citation omitted).

On September 8, 2006, Bridgestone served its Requests for Admission on Acushnet. Requests Nos. 7 and 8, which are identical, ask Acushnet to

> Admit that golf balls in the NXT Family, the NXT Tour Family, the DT SoLo Family, and the Pinnacle Exception Family have a core having a distortion of 2.9 to 4.0 mm under a load of 100 kg.

(D.I. 190B at 4). As acknowledged by Mr. Cadorniga, however, ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ (Ex. B – Cadorniga 1/16/07 Report at D-5) (citation omitted). ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇.[1] (*Id.* at D-8).

Thus, in order to respond to Bridgestone's requests, Acushnet ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇, relying on a conversion formula published by Jeffrey Dalton, Acushnet's current Vice President of Intellectual Property. Mr. Dalton published the formula in an article titled "Compression By Any Other Name," which appeared in the peer-reviewed journal SCIENCE AND GOLF IV (Thain, ed., 2002). As shown by Mr. Cadorniga, ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇. (*Id.* at D-8 to D-9). Accordingly, Acushnet ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇. (*See* D.I. 257 at 16-19).

Bridgestone never relied on Acushnet's admission during fact discovery. In fact, by agreement of the parties, both parties' responses to the last round of discovery requests, including Acushnet's responses to Bridgestone's Requests for Admission and

---

[1] "Atti compression" – also referred to as "PGA compression" – is named after the company that manufactures the device on which Atti compression is measured and is the measurement commonly used by the PGA.

2

Bridgestone's responses to Acushnet's Second Set of Requests for Admissions, were due on December 18, 2006, after the Court's scheduled October 10, 2006 close of fact discovery. Thus, by the time Acushnet made its admission, fact discovery, including Bridgestone's depositions of Acushnet's 30(b)(6) witnesses on the properties of the accused golf balls, had already concluded.

Nor did Bridgestone rely on Acushnet's admission during expert discovery. On January 16, 2007, Bridgestone served its opening expert reports, including reports on infringement from Mr. Calabria and Dr. Edward Caulfield. In those reports, Dr. Caulfield reported, and Mr. Cadorniga relied, on 100 kg distortion measurements taken by Dr. Caulfield for the NXT Tour golf balls. (*See* Ex. B – Cadorniga 1/16/07 Report at D-6 to D-7).

Upon reviewing those reports, Acushnet learned for the first time that Bridgestone [REDACTED]. According to Dr. Caulfield's measurements, on which Mr. Cadorniga relied, [REDACTED] (*See id*). Further, [REDACTED]. (*See id*. at D-7)[2]. It is worth noting that Bridgestone had that information by November 14, 2006, well before Acushnet admitted Requests Nos. 7 and 8. (*See* Ex. C – Caulfield's "NT2 – Compression.xls" spreadsheet). Had Bridgestone disclosed the facts on which it was relying to support its claim of

---

[2] [REDACTED]. (*See* Ex. B – Cadorniga 1/16/07 Report at D-9 to D-10). [REDACTED]. (*Id.*).

3

infringement during fact discovery, it would have shown  and Acushnet would not have admitted the requests.

Subsequently, after demanding and receiving Dr. Caulfield's raw testing data, Acushnet learned that ███████████████. (*See* Ex. D – Felker 2/20/07 Report at 70-74).

Because Bridgestone did not rely on Acushnet's admission and can show no prejudice it would suffer as a result of withdrawal, and because the merits of the case would be best be served by a withdrawal, Acushnet now moves for permission to withdraw its admissions to Bridgestone's Requests Nos. 7 and 8 regarding the NXT Tour golf balls.

### IV.     ARGUMENT

Rule 36(b) of the Federal Rules of Civil Procedure "specifies the effect of a party's admission and when a court may permit withdrawal or amendment of a response to a request for an admission." *Coca-Cola Bottling Co. v. Coca-Cola Co.*, 123 F.R.D. 97, 102 (D. Del. 1988).  Rule 36(b) states that

> Any matter admitted under this rule is conclusively established unless the court on motion permits withdrawal or amendment of the admission. Subject to the provisions of Rule 16 governing amendment of a pre-trial order, ***the court may permit withdrawal or amendment when the presentation of the merits of the action will be subserved thereby and the party who obtained the admission fails to satisfy the court that withdrawal or amendment will prejudice him in maintaining his action or defense on the merits***.

Fed. R. Civ. P. 36(b) (emphasis added).  Thus, Rule 36(b)

> places a burden on both the party who makes the admission and the party who obtains the admission. The party making the admission must show that the presentation of the merits will be subserved. The party obtaining the admission must satisfy the court that the withdrawal or amendment of the admission will prejudice him.

4

*Coca-Cola Bottling Co.*, 123 F.R.D. at 102. Here, the merits of the case will be served by a withdrawal. Further, because Bridgestone never relied on Acushnet's admission, it can show no prejudice that would result from a withdrawal.

### A.  The merits of the case will be served by a withdrawal.

Because the questions created by Bridgestone's test data go directly to the merits of the case, withdrawal should be allowed. "Because the policy of the rule is aimed at resolving cases on their merits, courts usually grant amendments if previously existing admissions are contrary to the record." *Revlon Consumer Prods. Corp. v. L'Oreal S.A.*, 170 F.R.D. 391, 402 (D. Del. 1997); *see also Coca-Cola Bottling Co.*, 123 F.R.D. at 103 ("In considering whether the presentation of the merits will be improved by permitting an admission to be revised, courts have generally sought to determine whether the admission is contrary to the record of the case."). ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓. Thus, Acushnet's prior admission is contrary to that evidence.

▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

### B. Because Bridgestone never relied on Acushnet's admissions, it cannot be prejudiced by a withdrawal.

Nor can Bridgestone show any prejudice that would result from a withdrawal. "Generally, courts have defined the prejudice as relating 'to the difficulty a party may face in proving its case because of the sudden need to obtain evidence required to prove the matter that had been admitted.'" *Coca-Cola Bottling Co.*, 123 F.R.D. at 106 (quoting *Gutting v. Falstaff*, 710 F.2d 1309, 1314 (8th Cir. 1983)); *see also Howard v. Sterchi*, 725 F. Supp. 1572, 1576 (N.D. Ga. 1989) ("Prejudice under the rule ''relates to the difficulty a party may face in proving its case, *e.g.*, caused by the unavailability of key witnesses, because of the sudden need to obtain evidence with respect to the questions previously answered by the admissions.''").

In *Coca-Cola*, the court considered whether the plaintiffs relied on the admission during fact discovery and whether the reliance impacted the course of discovery taken, such as where the defendant precluded the plaintiff from obtaining discovery on the matter admitted. *See Coca-Cola Bottling Co.*, 123 F.R.D. at 106-07. Here, however, Acushnet's admission was made after the close of fact discovery pursuant to the parties' agreement. As a result, Bridgestone sought all of its infringement evidence without any reliance on the admissions, which cannot have affected their efforts during fact discovery. Nor, as discussed above, did Bridgestone rely on Acushnet's admissions during expert discovery. As a result, Bridgestone cannot show any prejudice that it would suffer as a result of a withdrawal.

6

## V. CONCLUSION

Based on the foregoing, Acushnet respectfully requests that the Court permit Acushnet to withdraw its admissions to Bridgestone's Requests for Admission Nos. 7 and 8 regarding the NXT Tour golf balls.

Respectfully submitted,

POTTER ANDERSON & CORROON LLP

OF COUNSEL:

Alan M. Grimaldi
Joseph P. Lavelle
Kenneth W. Donnelly
Brian S. Seal
HOWREY LLP
1299 Pennsylvania Avenue, N.W.
Washington, DC 20004
Tel: (202) 783-0800

Dated: March 21, 2007
Public Version Dated: March 28, 2007

786127 / 28946

By: /s/ David E. Moore
Richard L. Horwitz (#2246)
David E. Moore (#3983)
Hercules Plaza, 6th Floor
1313 North Market Street
P. O. Box 951
Wilmington, DE 19899-0951
Tel: (302) 984-6000
rhorwitz@potteranderson.com
dmoore@potteranderson.com

*Attorneys for Defendant*
*Acushnet Company*

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

**CERTIFICATE OF SERVICE**

I, David E. Moore, hereby certify that on March 28, 2007, the attached document was hand delivered to the following persons and was electronically filed with the Clerk of the Court using CM/ECF which will send notification to the registered attorney(s) of record that the document has been filed and is available for viewing and downloading:

Jack B. Blumenfeld
Maryellen Noreika
Leslie A. Polizoti
Morris, Nichols, Arsht & Tunnell
1201 N. Market Street
Wilmington, DE  19801

I hereby certify that on March 28, 2007, I have Electronically Mailed the documents to the following:

Robert M. Masters
Paul, Hastings, Janofsky & Walker LLP
875 15th Street, N.W.
Washington, D.C.  20005
RobMasters@paulhastings.com

/s/ David E. Moore
Richard L. Horwitz
David E. Moore
Potter Anderson & Corroon LLP
Hercules Plaza – Sixth Floor
1313 North Market Street
P.O. Box 951
Wilmington, DE  19899-0951
(302) 984-6000
rhorwitz@potteranderson.com
dmoore@potteranderson.com

680012 / 28946