IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

BRIDGESTONE SPORTS CO., LTD.,   )
and BRIDGESTONE GOLF, INC.,    )
          )
      Plaintiffs,    )   C.A. No. 05-132 (JJF)
          )
   v.       )   **REDACTED –**
          )   **PUBLIC VERSION**
ACUSHNET COMPANY,    )
          )
      Defendant.    )

## BRIDGESTONE'S APPENDIX IN SUPPORT ITS
## MOTION FOR SANCTIONS

### (VOLUME 1)

MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Jack B. Blumenfeld (#1014)
Maryellen Noreika (#3208)
Leslie A. Polizoti (#4299)
1201 N. Market St.
P.O. Box 1347
Wilmington, DE 19801
(302) 658-9200
*Attorneys for Bridgestone Sports Co., Ltd.*
*and Bridgestone Golf, Inc.*

OF COUNSEL:

Robert M. Masters
Scott M. Flicker
Terrance J. Wikberg
Brandon M. White
PAUL, HASTINGS, JANOFSKY & WALKER LLP
875 15th St., N.W.
Washington, DC 20005
(202) 551-1700

Original Filing Date:  March 20, 2007
Redacted Filing Date:  April 10, 2007

## TABLE OF CONTENTS

| Description | Exhibit |
|---|---|
| Invalidity Expert Report of Dr. David Felker, dated January 16, 2007 | 1 |
| February 13, 2007 Letter from R. Stasio to B. White | 2 |
| March 2, 2007 Letter from M. Biswas to R. Masters | 3 |
| March 7, 2007 Email from T. Jenkins to T. Wikberg et al. | 4 |
| Excerpts from the Rough Draft Deposition of Dr. David Felker | 5 |
| March 19, 2007 Letter from B. White to R. Stasio | 6 |
| January 30, 2007 Letter from B. Seal to B. White | 7 |
| Excerpts from Bridgestone's First Set of Interrogatories, dated June 7, 2005 and Excerpts from Bridgestone's First Set of Requests for Production of Documents and Things, dated June 7, 2005 | 8 |
| October 2000 Opinion of Counsel (AB 0118404-431) | 9 |
| Excerpts from the Rough Draft Deposition of Jeffrey Dalton, dated March 2, 2007 | 10 |
| Exhibit 48 to the Invalidity Expert Report of Dr. David Felker | 11 |
| Excerpts from Bridgestone's First Set of Requests for Production of Documents and Things, dated June 7, 2005 and Excerpts from Bridgestone's Second Set of Requests for Production of Documents and Things, dated July 29, 2005 | 12 |
| February 9, 2007 Letter from B. Seal to B. White | 13 |
| November 28, 2005 Letter from B. Seal to R. Saliba | 14 |
| January 3, 2006 Letter from M. Moore to S. Gruskin | 15 |
| 1993 Competitive Log | 16 |
| Excerpts from Bridgestone's First Set of Requests for Production of Documents and Things, dated June 7, 2005 | 17 |
| Excerpts from the Rough Draft Deposition of John Calabria, dated March 15, 2007 | 18 |

| Description | Exhibit |
|---|---|
| Excerpts from the Deposition of Rastko Gajic, dated March 1, 2007 | 19 |
| Excerpts from Acushnet's Objections and Response to Bridgestone's Second Set of Requests for the Production of Documents and Things Directed to Acushnet, dated August 29, 2005 | 20 |
| November 15, 2005 Letter from R. Saliba to M. Moore and May 10, 2006 Letter from R. Masters to A. Grimaldi | 21 |
| Acushnet's Supplemental Objections and Responses to Bridgestone's Fifth Set Of Interrogatories Direct to Acushnet, dated December 18, 2006 | 22 |
| Non-Infringement Expert Report of Dr. David Felker, dated February 20, 2007 | 23 |
| August 10, 2006 Letter from B. White to B. Seal | 24 |
| August 24, 2006 Letter from B. Seal to B. White | 25 |
| September 6, 2006 Letter from B. Seal to B. White and Excerpts from Acushnet's Objections and Responses to Bridgestone's Sixth Set of Interrogatories, dated December 18, 2006 | 26 |
| September 11, 2006 Letter from B. White to B. Seal | 27 |
| September 27, October 17 and October 26, 2006 Letters from B. White to B. Seal | 28 |
| November 3, 2006 Letter from B. Seal to B. White | 29 |
| February 16, 2007 Letter from B. Seal to B. White | 30 |
| February 28, 2007 Letter from R. Stasio to B. White | 31 |
| Excerpts from Bridgestone's First Set of Requests for Production of Documents and Things, dated June 7, 2005 | 32 |
| Excerpts from Dr. Felker's Non-infringement Report | 33 |
| Exhibit 12 to the Non-Infringement Expert Report of Dr. David Felker | 34 |
| Excerpts from Acushet's Objections and Responses to Bridgestone's First Set of Requests for the Production of Documents and Things Directed to Acushnet, dated July 7, 2005 | 35 |
| Exhibit 19 to the Non-Infringement Expert Report of Dr. David Felker | 36 |

Exhibit 6 to the March 1, 2007 Deposition of Rastko Gajic    37

Description    Exhibit

Bridgestone's Third Set of Interrogatories, dated December 9, 2005    38

Excerpts from Pro V1-392 Manufacturing Guidelines    39

March 2, 2007 Hearing Transcript from *Prism Technologies, LLC v. Verisign*, C.A. No. 05-214-JJF    40

February 2, 2007 Hearing Transcript from *Ansell Healthcare Products, LLC v. Tillotson Corp.*, C.A. 06-527-JJF    41

Excerpts from the Rough Draft Deposition Patrick Elliot, dated March 17, 2007    42

# EXHIBIT 1

REDACTED

# EXHIBIT 2

REDACTED

EXHIBIT 3

REDACTED

# EXHIBIT 4

REDACTED

# EXHIBIT 5

REDACTED

# EXHIBIT 6

REDACTED

# EXHIBIT 7

# HOWREY LLP

1299 Pennsylvania Avenue, NW
Washington, DC 20004-2402
T 202.783.0800
F 202.383.6610
www.howrey.com

Direct Dial 202.383.6904
File 00634.0002

January 30, 2007

BY FACSIMILE

Brandon M. White, Esq.
Paul, Hastings, Janofsky & Walker LLP
875 15th Street, N.W.
Washington, D.C. 20005

> **Re:**    ***Bridgestone Sports Co. v. Acushnet Co.,***
> **C.A. No. 05-132 (JJF) (D. Del.)**
> **Response to Your Letter of January 24**

Dear Brandon:

We have received your letter of January 24 in which you request the production of certain information. We respond to your requests herein.

## A.    Dr. Felker's Report

### 1.    Manufacturing Instruction and Testing Protocols

You request that Acushnet produce "any manufacturing instructions, testing protocols or other documents however captioned that reflect Dr. Felker's instructions as to how to test any golf ball or component thereof and/or how to manufacture any golf ball or component thereof." Dr. Felker orally provided manufacturing instructions and testing protocols to Acushnet employees. Dr. Felker personally observed the testing procedures of the Acushnet employees to ensure that the tests were done properly and on appropriate equipment.

In addition, you request that Acushnet produce "all documents regarding the cores manufactured by Dr. Felker or at his request or instruction, including the recipes, listing of materials used and amounts, the manufacturer of the materials, certificates of analysis for the materials, procedures used for the manufacturing process, all raw testing data, and any documents created by Dr. Felker or on which he relied or considered in forming his opinions." Acushnet will provide, to the extent not already provided and to the extent that they exist, documents regarding the cores that Dr. Felker had manufactured and any documents on which Dr. Felker relied or considered in forming his opinions.

AMSTERDAM  BRUSSELS  CHICAGO  EAST PALO ALTO  HOUSTON  IRVINE  LONDON
LOS ANGELES  NEW YORK  NORTHERN VIRGINIA  PARIS  SALT LAKE CITY  SAN FRANCISCO  TAIPEI  WASHINGTON, DC

# HOWREY LLP

Brandon M. White, Esq.
January 30, 2007
Page 2

Further, you request that Acushnet "produce all documents reflecting the two weeks of 'process development' referred to in Acushnet's *Motion for Leave to Supplement Its Invalidity Contentions*." As those documents were generated at the request of counsel and not provided by Dr. Felker, they are protected from discovery by the attorney-client privilege and the work product doctrine.

Still further, you request that Acushnet "produce all documents referenced by Dr. Felker in his report which documents were not produced by the parties during the course of this litigation." Acushnet has provided all documents referenced by Dr. Felker in his report which documents were not produced by the parties during the course of this litigation.

## 2.    Raw Data

You request that Acushnet produce "all raw data and documents recording the raw data from any testing performed by Dr. Felker or at his instruction, including the results of any tests he performed or were performed at his direction but not relied upon or not included in his report," including "all raw data for the golf balls or cores, or other components of the same that were made for Dr. Felker." Acushnet will provide, to the extent not already provided and to the extent that they exist, documents regarding the raw data from any testing performed at Dr. Felker's instruction and on which Dr. Felker relied or considered in forming his opinions. Acushnet will not produce any raw data that Dr. Felker did not rely upon or consider in forming his opinions as this data is protected from discovery by the work product doctrine.

Further, you request that Acushnet produce "all raw data concerning any testing during the two weeks of 'process development' referred to in Acushnet's *Motion for Leave to Supplement Its Invalidity Contentions*." As that data was generated at the request of counsel and not provided by Dr. Felker, it is protected from discovery by the attorney-client privilege and the work product doctrine.

## 3.    "Altus Newing Massy"

You request that Acushnet produce "the testing data for the 'Altus Newing Massy' golf ball 3 that Dr. Felker excluded in footnote 9 on page 45 of his report." Further, you request that Acushnet produce "all final data, raw data and documents recording the raw data from any testing of the 'Altus Newing Massy' ball performed by Dr. Felker or at his instruction and any other documents upon which Dr. Felker relied or considered." Acushnet has provided the testing data for the Altus Newing Massy golf ball 3 and all other data and documents from the testing of the Altus Newing Massy ball performed at Dr. Felker's instruction and on which Dr. Felker relied or considered in forming his opinions.



**HOWREY** LLP

### 4. "Wilson Ultra Tour Balata 100"

You request that Acushnet produce "all final data, raw data and documents recording the raw data from any testing of the 'Wilson Ultra Tour Balata 100' ball performed by Dr. Felker or at his instruction and any other documents upon which Dr. Felker relied or considered." Acushnet, however, has already provided all final data, raw data and documents recording the raw data from the testing of the "Wilson Ultra Tour Balata 100" ball upon which Dr. Felker relied or considered in coming to his conclusion that the Wilson Ultra Tour Balata ball obviates claim 1 of the '852 patent.

### 5. Dr. Felker's Calculations

You request that Acushnet produce "any documents reflecting the calculations underlying Dr. Felker's analysis, for example, the calculation of specific gravity of the layers of the '193 patent." Acushnet will provide, to the extent not already provided and to the extent they exist, any documents reflecting the calculations underlying Dr. Felker's opinion that the Nesbitt '193 patent anticipates the '852 patent.

Further, you request that Acushnet produce "any documents reflecting Dr. Felker's calculation of the 'stoichiometric equivalent' of the formulation allegedly taught by JP '673 as referenced on page 29 of Dr. Felker's report." To the extent such documents exist and have not been produced, Acushnet will produce them.

### 6. Calibration/Verification Records

You request that Acushnet produce "all calibration/verification records from all equipment used to test and manufacture golf balls and golf ball components on which Dr. Felker relied." Acushnet will provide, to the extent not already provided and to the extent that they exist, documents regarding calibration/verification records from equipment used to test and manufacture golf balls and golf ball components on which Dr. Felker relied.

### 7. Tests Requested by Troy Lester With Respect to the '791 Patent

You request that Acushnet produce "results of any other prior art testing for the '791 patent requested by Troy Lester" and "the results of any such testing and the instructions to perform such testing." Acushnet will provide, to the extent not already provided and to the extent that they exist and are not protected by the attorney/client privilege or work product doctrine, results of prior art testing of the '791 patent requested by Troy Lester.

# HOWREY LLP

### 8. Plaque Hardnesses

You request that Acushnet produce the "results and any protocols, procedures, etc. used to perform the tests and prepare the plaques." To the extent such documents exist and have not been produced, Acushnet will produce them.

### 9. Inspection and Testing

You request that Acushnet "provide a date when [you] may inspect and test the golf ball components manufactured by Acushnet employees for purposes of Dr. Felker's report and the golf balls tested by Acushnet employees for purposes of Dr. Felker's report." Acushnet suggests that the parties have a meet and confer to determine the details of Bridgestone's request.

### 10. Translations

You request that Acushnet produce "full English language translations of" the documents attached as Tabs 20 and 25 to Dr. Felker's report. As explained to you in my e-mail of January 22, however, Dr. Felker did not rely on translations of either document. Nor has Acushnet prepared translations of either document (both of which are documents produced by Bridgestone). Thus, contrary to your understanding, Acushnet is not refusing to produce them; it does not have them. Nor does Acushnet believe it is required to undertake the expense of translating Bridgestone's own documents for you.

### 11. Depositions, Declarations, Expert Reports and Courtroom Testimony

You request that Acushnet produce "copies of [Dr. Felker's] deposition transcripts, declaration and expert reports" and his "courtroom testimony in the *Callaway Golf Company v. Dunlop Slazenger Group Americas, Inc.* case." Neither Dr. Felker nor Acushnet has any of these documents in their possession, custody or control.

### B. Dr. Lynch's Report

You request that Acushnet "provide an electronic copy of the spreadsheets used to generate Exhibit L of Dr. Lynch's report." Acushnet will produce an electronic copy of the spreadsheets.

### C. Dr. Koenig's Invalidity Report

#### 1. Polymer Solutions, Inc.

You request that Acushnet produce "any correspondence between Dr. Koening and Polymer Solutions, Inc. with regard to the testing of NeoCis BR 40 and NeoCis BR 60" and "all

**HOWREY**

Brandon M. White, Esq.
January 30, 2007
Page 5

correspondence between Acushnet and Polymer Solutions, Inc. that Dr. Koenig refers to." No correspondence between Dr. Koenig and Polymer Solutions or Acushnet and Polymer Solutions exists which has not already been produced. Dr. Koenig personally met with and observed the testing by Polymer Solutions, Inc.

Further, you request that Acushnet produce "all documents on which Dr. Koenig relies to support his opinions in paragraphs 93, 134 and 152." Acushnet has produced all such documents.

### 2.    Testing Protocols

You request that Acushnet produce "any testing protocols or other documents however captioned that reflect Dr. Koenig's instructions as to how to test any golf ball or component thereof." Dr. Koenig directed the testing of certain physical characteristics of polybutadiene rubber samples. As explained in his expert report, Dr. Koenig instructed that the protocols described in the '961 patent, including the referenced Japanese Industrial Standards, were followed. For the tests for which the patent does not provide a testing protocol (1,2 vinyl content and polydispersity index), Dr. Koenig instructed Polymer Solutions to perform the testing based on commonly accepted and routine laboratory procedures. Dr. Koenig personally observed the testing procedures of Polymer Solutions to ensure that the tests were done properly.

### D.    Dr. Koenig's Infringement Report

### 1.    Testing Protocols

You request that Acushnet produce "any manufacturing instructions, testing protocols or other documents however captioned that reflect Dr. Koenig's instructions as to how to test any golf ball or component or material thereof and/or how to manufacture any golf ball or component mixture or material thereof." As explained in his expert report, Dr. Koenig instructed that molecular weight and resilience index be tested in accordance with the teachings of the '705 patent.

You further request that Acushnet produce "all documents regarding the testing of core materials and/or mixtures at Dr. Koenig's request or instruction, including the recipes, listing of materials used and amounts, certificates of analysis for the materials, procedures used for the manufacturing process and all raw testing data, etc." To the extent any such documents exist and have not been produced, Acushnet will produce them.

### 2.    Raw Data

You request that Acushnet produce "all raw data and documents recording the raw data from any testing performed at Dr. Koenig [sic] or at his instruction, including the results of any tests performed by him or at his direction but not relied upon or not included in his report." To

# HOWREY LLP

Brandon M. White, Esq.
January 30, 2007
Page 6

the extent any such data and/or documents exist and have not been produced, Acushnet will produce them.

### 3.    Inspection and Testing

You ask that Acushnet "provide a date when [Bridgestone] may inspect and test the Bridgestone golf balls and components/materials thereof tested by Dr. Koenig or at his direction." As above, Acushnet suggests that the parties have a meet and confer to determine the details of Bridgestone's request.

For the documents we have agreed to provide above, and the documents and other information you agree to provide in response to my letters of January 23 and January 30, we propose an exchange date of Monday, February 5, 2007. We also propose to hold a meet-and-confer on that date to discuss your inspection request, as well as any documents or other information you refuse to provide.

Regards,

Brian S. Seal

# HOWREY LLP

1299 PENNSYLVANIA AVENUE, N.W.
WASHINGTON, DC 20004-2402
PHONE: 202.783.0800 • FAX: 202.383.6610

## FACSIMILE COVER SHEET

**DATE:** January 30, 2007

**TO:**
**NAME:** Brandon M. White
**COMPANY:** Paul Hastings
**FAX NUMBER:** 202.551.1705   **PHONE NUMBER:** 202.551.1700
**CITY:** Washington, DC

**FROM:**
**NAME:** Brian S. Seal
**DIRECT DIAL NUMBER:** 202.383.6904   **USER ID:** 2233

**NUMBER OF PAGES, INCLUDING COVER:** 7   **CHARGE NUMBER:** 00634.0002

☐ **ORIGINAL WILL FOLLOW VIA:**

☐ REGULAR MAIL   ☐ OVERNIGHT DELIVERY   ☐ HAND DELIVERY   ☐ OTHER: _____

☒ **ORIGINAL WILL NOT FOLLOW**

**SUPPLEMENTAL MESSAGE:**

THE INFORMATION CONTAINED IN THIS TRANSMISSION IS PRIVILEGED AND CONFIDENTIAL. IT IS INTENDED ONLY FOR THE USE OF THE INDIVIDUAL OR ENTITY NAMED ABOVE. IF THE READER OF THIS MESSAGE IS NOT THE INTENDED RECIPIENT, YOU ARE HEREBY NOTIFIED THAT ANY DISSEMINATION, DISTRIBUTION OR COPYING OF THIS COMMUNICATION IS STRICTLY PROHIBITED. IF YOU HAVE RECEIVED THIS COMMUNICATION IN ERROR, PLEASE NOTIFY US IMMEDIATELY BY TELEPHONE AND RETURN THE ORIGINAL MESSAGE TO US AT THE ABOVE ADDRESS VIA THE U.S. POSTAL SERVICE. THANK YOU.

IF THERE ARE ANY QUESTIONS OR PROBLEMS WITH THE TRANSMISSION OF THIS FACSIMILE, PLEASE CALL 202.383.6437.

# EXHIBIT 8

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

BRIDGESTONE SPORTS CO., LTD.,
and BRIDGESTONE GOLF, INC.,

              Plaintiffs,

      v.

ACUSHNET COMPANY,

              Defendant.

C. A. No. 05-132 (JJF)

## BRIDGESTONE'S FIRST SET OF INTERROGATORIES (INTERROGATORY NOS. 1-24)

Pursuant to Fed. R. Civ. P. 33, Plaintiffs Bridgestone Sports Co. Ltd. and Bridgestone Golf, Inc., by their undersigned attorneys, propound these Interrogatories, to which Defendant Acushnet Company shall respond separately and fully, in writing and under oath, within the time prescribed by the Federal Rules of Civil Procedure, in accordance with the Definitions and Instructions set forth hereinafter.

## DEFINITIONS

Notwithstanding any definition set forth below, each word, term, or phrase used in this Request is intended to have the broadest meaning permitted under the Federal Rules of Civil Procedure. As used in this set of interrogatories, the following terms are to be interpreted in accordance with these definitions:

1)    The term "Bridgestone," "Plaintiff," and/or "Plaintiffs" means Bridgestone Sports Company, Ltd. and/or Bridgestone Golf, Inc., the plaintiffs in this action, and all predecessors, successors, subsidiaries, divisions, parents and/or affiliates thereof, past or present, and all past

## INTERROGATORIES

1.      Identify by model, type, version or similar designation each and every Acushnet product that Acushnet has made, used, sold and/or offered for sale in, exported out of, or imported into, the United States since March 7, 1998 to the present.

2.      Separately, for each product, the identification of which is requested by Interrogatory No. 1, state the date each such product was first made, used, sold, and/or offered for sale in, exported out of, or imported into, the United States.

3.      Separately, for each product, the identification of which is requested by Interrogatory No. 1, state the names and addresses of the individuals (at least three) most knowledgeable about each of the conception, design, development, testing, manufacturing, and selling thereof.

4.      State each fact on which Acushnet bases its Third Defense (Invalidity under 35 U.S.C. § 101, 102, 103 and 112) set forth in the Answer, and with respect to each such fact, identify each person with knowledge of that fact and each document concerning that fact.

5.      Separately, for each claim of the Bridgestone patents-in-suit that Acushnet contends is invalid, identify all Prior Art and/or Prior Art Golf Balls that Acushnet contends affects or relates to the validity of the Bridgestone patents-in-suit.

6.      Separately, for each of the Asserted Claims of the Bridgestone patents-in-suit, state each fact that supports, or concerns Acushnet's denial that the Accused Acushnet products infringe that claim, including an identification of every element of each claim which Acushnet contends is not found in the Acushnet products, and for each such element, describe in detail Acushnet's contention as to the lack of an equivalent for such element.

9

20.    State whether any of the Acushnet patents-in-suit have been licensed, and if so, state the name of the licensee(s), the date of the license(s), the parties to the license(s), and the terms of the license(s), including but not limited to, the royalty rate.

21.    Describe the damage theories on which Acushnet is seeking recovery for alleged patent infringement, state all facts supporting that claim for damages, including the period for which Acushnet seeks such recovery, and in the case of a reasonable royalty, the royalty base and rate or, in the case of lost profits, the specific lost sales and the relevant accounting data to ascertain all costs and the profit margins by product.

22.    For each of the Acushnet patents-in-suit, identify all Acushnet products which have practiced or practice any of the claims.

23.    For each product, the identification of which his requested by Interrogatory No. 24, state whether Acushnet, or its licensees, have marked that product with the number of any patent pursuant to 35 U.S.C. § 287, identify the patent numbers with which each product has been marked, and provide the dates during which the product was marked.

24.    Provide the names and addresses of the persons most knowledgeable about the testing of and analysis of each of the Accused Bridgestone products.

MORRIS, NICHOLS, ARSHT & TUNNELL

Jack B. Blumenfeld (#1014)
Maryellen Noreika (#3208)
Leslie A. Polizoti (#4299)
1201 N. Market Street
P.O. Box 1347
Wilmington, DE 19801
(302) 658-9200
*Attorneys for Bridgestone Sports Co., Ltd.
and Bridgestone Golf, Inc.*

12

OF COUNSEL:

Robert M. Masters
John T. Callahan
Raja Saliba
SUGHRUE MION, PLLC
2100 Pennsylvania Avenue, N.W.
Washington, D.C.  20037
(202) 293-7060

June 7, 2005

## CERTIFICATE OF SERVICE

I, Jack B. Blumenfeld, hereby certify that copies of the foregoing were caused to

be served this 7th day of June, 2005 upon the following in the manner indicated:

### BY HAND

Richard L. Horwitz
Potter Anderson & Corroon LLP
1313 N. Market Street
Wilmington, DE 19801

### BY FEDERAL EXPRESS

Alan M. Grimaldi
Howrey LLP
1299 Pennsylvania Avenue, N.W.
Washington, DC 20004

Jack B. Blumenfeld

14

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

BRIDGESTONE SPORTS CO., LTD.,
and BRIDGESTONE GOLF, INC.,

              Plaintiffs,

       v.

ACUSHNET COMPANY,
      a Delaware Corporation,

              Defendant.

C. A. No. 05-132 (JJF)

## BRIDGESTONE'S FIRST SET OF REQUESTS FOR PRODUCTION DOCUMENTS AND THINGS (REQUEST NOS. 1-100)

Pursuant to Rules 26 and 34 of the Federal Rules of Civil Procedure, plaintiffs Bridgestone Sports Co., Ltd. and Bridgestone Golf, Inc. hereby request that defendant Acushnet Company produce and permit inspection and copying, the documents and things described herein. Production should be made at the offices of plaintiffs' attorneys, Sughrue Mion, PLLC, 2100 Pennsylvania Avenue, NW, Washington. DC 20037 within thirty (30) days of these requests.

### DEFINITIONS

Notwithstanding any definition set forth below, each word, term, or phrase used in this Request is intended to have the broadest meaning permitted under the Federal Rules of Civil Procedure. As used in this Request, the following terms are to be interpreted in accordance with these definitions:

1.     The term "Bridgestone," "Plaintiff," and/or "Plaintiffs" means Bridgestone Sports Company, Ltd. and/or Bridgestone Golf, Inc., the plaintiffs in this action, and all predecessors, successors, subsidiaries, divisions, parents and/or affiliates thereof, past or present, and all past

counsel, all memoranda, comments, summaries, claim charts, presentation materials, correspondence, notes, reports, clearance searches, clearance studies, opinions, or "design around" documents.

33.    All Documents and Things concerning the alleged infringement or non-infringement of any of the claims of the Bridgestone patents-in-suit.

34.    All Documents and Things concerning your allegations and denials in the Answer that Acushnet does not, and/or that Acushnet products do not, infringe the Bridgestone patents-in-suit.

35.    All Documents and Things concerning any of the claims or claim elements of the Bridgestone patents-in-suit and/or the scope or interpretation of any of the claims or claim elements of the Bridgestone patents-in-suit, including all Documents and Things concerning the definition or meaning of any claim term, phrase or element in any of the Bridgestone patents-in-suit.

36.    All Documents and Things concerning the allegations in your Answer that one or more of the Bridgestone patents-in-suit is invalid or unenforceable.

37.    All Documents and Things concerning the validity or invalidity of the Bridgestone patents-in-suit, including without limitation, all Documents and Things concerning any studies or analyses regarding validity, invalidity or claim scope, by or on behalf of Acushnet with respect to the Bridgestone patents-in-suit, including but not limited to, all Documents and Things provided to and received from counsel, all memoranda, comments, summaries, presentation materials, test results and measurements, correspondence, notes, reports, or opinions.

38.    All Documents and Things concerning prior art (including Prior Art Golf Ball and any other Things) to the Bridgestone patents-in-suit, including without limitation all Documents

and Things Acushnet relies upon to support the allegations in the Answer that any of the Bridgestone patents-in-suit is invalid, and including without limitation all prior art that Acushnet contends or plans to rely upon to support an allegation that the Bridgestone patents-in-suit are invalid.

39.    All Documents and Things concerning any analysis, test reports, or inspections of any information or golf ball or component or layer of a golf ball considered by Acushnet to be prior art to the Bridgestone patents-in-suit.

40.    All Documents and Things concerning any prior art searches conducted by or on behalf of Acushnet relating to the Bridgestone patents-in-suit.

41.    All Documents and Things concerning when and how Acushnet became aware of all purported prior art upon which Acushnet relies to allege that one or more claims of the Bridgestone patents-in-suit is invalid, including without limitation all Documents and Things that tend to show or establish the date any such purported prior art was first obtained by Acushnet.

42.    All Documents and Things concerning the results of any testing and/or analysis conducted or used by Acushnet of any of the Prior Art Golf Balls, including, but not limited to, the Prior Art Golf Balls' characteristics, performance, physical attributes, composition and make-up, and further including without limitation size, layer thickness, weight, compression, Shore D hardness, Shore C hardness, JIS-C hardness, velocity, spin, distance (carry and roll), Reynolds number, aerodynamic coefficient, aerodynamic force angle, and trajectory thereof.

43.    All Documents and Things concerning the results of any testing and/or analysis conducted or used by Acushnet of any Prior Art Golf Ball  asserted to be prior art to any of the Bridgestone patents-in-suit, including, but not limited to the product characteristics, performance, physical attributes, composition and make-up, and further including without limitation size, layer

15

MORRIS, NICHOLS, ARSHT & TUNNELL

Jack B. Blumenfeld (#1014)
Maryellen Noreika (#3208)
Leslie A. Polizoti (#4299)
1201 N. Market Street
P.O. Box 1347
Wilmington, DE 19801
(302) 658-9200
*Attorneys for Bridgestone Sports Co., Ltd.
and Bridgestone Golf, Inc.*

OF COUNSEL:

Robert M. Masters
John T. Callahan
Raja Saliba
SUGHRUE MION, PLLC
2100 Pennsylvania Avenue, N.W.
Washington, D.C. 20037
(202) 293-7060

June 7, 2005

25

## CERTIFICATE OF SERVICE

I, Jack B. Blumenfeld, hereby certify that copies of the foregoing were caused to be served this 7th day of June, 2005 upon the following in the manner indicated:

### BY HAND

Richard L. Horwitz
Potter Anderson & Corroon LLP
1313 N. Market Street
Wilmington, DE  19801

### BY FEDERAL EXPRESS

Alan M. Grimaldi
Howrey LLP
1299 Pennsylvania Avenue, N.W.
Washington, DC  20004


Jack B. Blumenfeld

# EXHIBIT 9

REDACTED

# EXHIBIT 10

REDACTED

EXHIBIT 11

REDACTED

# EXHIBIT 12

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

BRIDGESTONE SPORTS CO., LTD.,
and BRIDGESTONE GOLF, INC.,

　　　　　　　Plaintiffs,

　　　　v.

ACUSHNET COMPANY,
　　　a Delaware Corporation,

　　　　　　　Defendant.

C. A. No.  05-132 (JJF)

## BRIDGESTONE'S FIRST SET OF REQUESTS FOR PRODUCTION DOCUMENTS AND THINGS (REQUEST NOS. 1-100)

Pursuant to Rules 26 and 34 of the Federal Rules of Civil Procedure, plaintiffs Bridgestone Sports Co., Ltd. and Bridgestone Golf, Inc. hereby request that defendant Acushnet Company produce and permit inspection and copying, the documents and things described herein.  Production should be made at the offices of plaintiffs' attorneys, Sughrue Mion, PLLC, 2100 Pennsylvania Avenue, NW, Washington. DC 20037 within thirty (30) days of these requests.

## DEFINITIONS

Notwithstanding any definition set forth below, each word, term, or phrase used in this Request is intended to have the broadest meaning permitted under the Federal Rules of Civil Procedure.  As used in this Request, the following terms are to be interpreted in accordance with these definitions:

1.　　The term "Bridgestone," "Plaintiff," and/or "Plaintiffs" means Bridgestone Sports Company, Ltd. and/or Bridgestone Golf, Inc., the plaintiffs in this action, and all predecessors, successors, subsidiaries, divisions, parents and/or affiliates thereof, past or present, and all past

58.    All Documents and Things concerning the Acushnet patents-in-suit, including, but not limited to the validity, invalidity, enforceability or unenforceability of the claims.

59.    All Documents and Things constituting, or referring or relating to, any comparison of the Acushnet patents-in-suit and any Bridgestone product, and/or a determination by Acushnet to assert each of the Acushnet patents-in-suit against Bridgestone.

60.    All Documents and Things constituting, or referring or relating to, any competitive analysis of any golf ball, including without limitation, any tests, inspections, investigations, comparisons or examinations of the design, composition, features, functionality and/or performance of such golf ball products.

61.    All Documents and Things concerning prior litigation involving any of the Acushnet patents-in-suit, including without limitation pleadings, motions, declarations, orders, discovery requests, discovery responses, documents produced in response to requests for production of documents or subpoenas, deposition exhibits, deposition transcripts, trial exhibits, trial transcripts, witness statements, expert reports and communications.

62.    All Documents and Things constituting, or referring to, or relating to, any comparison of any Acushnet product with any of the Acushnet patents-in-suit.

63.    All Documents and Things concerning the date each Acushnet product was first sold, offered for sale, or used publicly.

64.    All Documents and Things concerning the marking of any Acushnet products with patent number(s) including the number of the Acushnet patents-in-suit.

65.    All Documents and Things concerning the decision or consideration to not mark any of the Acushnet products with the patent number of any of the Acushnet patents-in-suit.

18

MORRIS, NICHOLS, ARSHT & TUNNELL

Jack B. Blumenfeld (#1014)
Maryellen Noreika (#3208)
Leslie A. Polizoti (#4299)
1201 N. Market Street
P.O. Box 1347
Wilmington, DE 19801
(302) 658-9200
   *Attorneys for Bridgestone Sports Co., Ltd.*
   *and Bridgestone Golf, Inc.*

OF COUNSEL:

Robert M. Masters
John T. Callahan
Raja Saliba
SUGHRUE MION, PLLC
2100 Pennsylvania Avenue, N.W.
Washington, D.C. 20037
(202) 293-7060

June 7, 2005

## CERTIFICATE OF SERVICE

I, Jack B. Blumenfeld, hereby certify that copies of the foregoing were caused to be served this 7th day of June, 2005 upon the following in the manner indicated:

### BY HAND

Richard L. Horwitz
Potter Anderson & Corroon LLP
1313 N. Market Street
Wilmington, DE  19801

### BY FEDERAL EXPRESS

Alan M. Grimaldi
Howrey LLP
1299 Pennsylvania Avenue, N.W.
Washington, DC  20004


Jack B. Blumenfeld

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

BRIDGESTONE SPORTS CO., LTD.,
and BRIDGESTONE GOLF, INC.,

               Plaintiffs,

       v.

ACUSHNET COMPANY,

               Defendant.

C. A. No.  05-132 (JJF)

## BRIDGESTONE'S SECOND SET OF REQUESTS FOR PRODUCTION DOCUMENTS AND THINGS (REQUEST NOS. 101-155)

Pursuant to Rules 26 and 34 of the Federal Rules of Civil Procedure, plaintiffs Bridgestone Sports Co., Ltd. and Bridgestone Golf, Inc. hereby request that defendant Acushnet Company produce and permit inspection and copying, the documents and things described herein.  Production should be made at the offices of plaintiffs' attorneys, Sughrue Mion, PLLC, 2100 Pennsylvania Avenue, NW, Washington. DC 20037 within thirty (30) days of these requests.

## DEFINITIONS

Bridgestone incorporates by reference the DEFINITIONS set forth in BRIDGESTONE'S FIRST SET OF REQUESTS FOR PRODUCTION DOCUMENTS AND THINGS (REQUEST NOS. 1-100) as though fully set forth herein.

Additionally, the following terms in this Request are to be interpreted in accordance with these definitions:

1.      The term "on-course retailer" means a retailer of golf equipment, including golf balls, located on a golf course facility.

128.    Six Bridgestone Precept Dynawing Double Cover S+ balls that Acushnet has analyzed and alleges anticipates or renders obvious one or more claims of the patents-in-suit.

129.    Six Bridgestone Altus Newing Massy golf balls that Acushnet has analyzed and alleges anticipates or renders obvious one or more claims of the patents-in-suit.

130.    Six Precept EV Extra Spin golf balls that Acushnet has analyzed and alleges anticipates or renders obvious one or more claims of the patents-in-suit.

131.    Six of each model and revision of the Titleist HP Eclipse and Titleist Tour Distance golf balls.

132.    All Documents and Things concerning dimple data, including without limitation dimple geometry, dimple dimensions, dimple placement, dimple spacing, and aerodynamic and trajectory performance, for each model and revision of the Titleist HP Eclipse and Titleist Tour Distance golf balls.

133.    All Documents and Things concerning the acquisition, custody, and storage of any ball that Acushnet has analyzed and alleges anticipates or renders obvious one or more claims of the Bridgestone patents-in-suit.

134.    All Documents and Things concerning the testing methods, procedures and protocols used by Acushnet to determine the physical and performance properties of any golf ball, including without limitation, the Acushnet products, Bridgestone products, Prior Art Golf Balls, and any golf ball manufactured or sold by a Third Party, for those physical and performance properties called for in any claim of the Acushnet or Bridgestone patents-in-suit.

9

154.   All Documents and Things concerning any differences between types of retailers, including without limitation on-course retailers, off-course retailers, sporting goods retailers, and all other retailers, and including without limitation differences in prices, profit margins, and separate tracking by Acushnet and industry of distribution of golf balls through each type of retailer.

155.   All Documents and Things concerning Acushnet's market share by type of retailer, including without limitation on-course retailers, off-course retailers, sporting goods retailers, and all other retailers.

Date:  July 29, 2005

MORRIS, NICHOLS, ARSHT & TUNNELL
JACK B. BLUMENFIELD (#1014)
MARYELLEN NOREIKA (#3208)
LESLIE A. POLIZOTI (#4299)
1201 N. Market St.
P.O. Box 1347
Wilmington, DE 19801
Telephone:  (302) 658-9200

OF COUNSEL:

SUGHRUE MION, PLLC
ROBERT M. MASTERS
JOHN T. CALLAHAN
RAJA SALIBA
2100 Pennsylvania Ave., N.W.
Washington, D.C. 20037
Telephone:  (202) 293-7060

Attorneys for Plaintiffs

13

## CERTIFICATE OF SERVICE

I, Mary Krizan, hereby certify that copies of the foregoing BRIDGESTONE'S SECOND SET OF REQUESTS FOR PRODUCTION DOCUMENTS AND THINGS (REQUEST NOS. 101-155) were caused to be served this 29th day of July, 2005, upon the following in the manner indicated:

**BY HAND**
Alan M. Grimaldi, Esq.
Howrey LLP
1299 Pennsylvania Avenue, NW
Washington, DC  20004

**BY FEDERAL EXPRESS**
Richard L. Horwitz
Potter Anderson & Corroon LLP
Hercules Plaza, 6th Floor
1313 N. Market Street
Wilmington, DE  19801

Mary Krizan

# Exhibit 13

# HOWREY LLP

1299 Pennsylvania Avenue, NW
Washington, DC 20004-2402
T 202.783.0800
F 202.383.6610
www.howrey.com

Direct Dial 202.383.6904
File 00634.0002

February 9, 2007

BY FACSIMILE

Brandon M. White, Esq.
Paul, Hastings, Janofsky & Walker LLP
875 15th Street, N.W.
Washington, D.C. 20005

> **Re:**   *Bridgestone Sports Co. v. Acushnet Co.,*
> **Case No. 05-132 (JJF) (D. Del.)**
> **Golf Balls Relied Upon By Dr. Felker**

Dear Brandon:

     We have received your letter of February 7 in which you ask us to limit the bases for Dr. Felker's opinion on percentage of dimple coverage to four golf balls – the Project X2 Veneer, the Wilson Ultra Tour Balata 100, the Precept EV Extra Spin, and the Rextar SC 432 – on the grounds that those are the only four golf balls Acushnet identified in its interrogatory responses.[1]

     Acushnet is not relying on the golf balls identified in Exhibit 48 of Dr. Felker's report as prior art. Instead, Dr. Felker relies on them to inform his understanding of one of ordinary skill in the golf ball art as to what the standard percentage of golf ball dimple coverage was in 1996. Accordingly, we do not intend to limit Dr. Felker's opinion to the four golf balls identified in your February 7 letter.

     Please let me know if you have any questions.

Regards,

Brian S. Seal

---

[1] You identify two additional golf balls – the Rextar Pro Model 100 and Altus Newing – as golf balls on which Acushnet has agreed to rely only for dimple count.

AMSTERDAM  BRUSSELS  CHICAGO  EAST PALO ALTO  HOUSTON  IRVINE  LONDON
LOS ANGELES  NEW YORK  NORTHERN VIRGINIA  PARIS  SALT LAKE CITY  SAN FRANCISCO  TAIPEI  WASHINGTON, DC

DM_US\8433438.v1

PAGE 2/2 * RCVD AT 2/9/2007 4:28:02 PM [Eastern Standard Time] * SVR:WDCRF1/2 * DNIS:9998 * CSID:202 383 6610 * DURATION (mm-ss):00-56

# HOWREY LLP

1299 PENNSYLVANIA AVENUE, N.W.
WASHINGTON, DC 20004-2402
PHONE: 202.783.0800 • FAX: 202.383.6610

## FACSIMILE COVER SHEET

**DATE:** February 9, 2007

**TO:**
**NAME:** Brandon M. White
**COMPANY:** Paul Hastings
**FAX NUMBER** 202.551.1705     **PHONE NUMBER:** 202.551.1700
**CITY:** Washington, DC

**FROM:**
**NAME:** Brian S. Seal
**DIRECT DIAL NUMBER:** 202.383.6904     **USER ID:** 2233
**NUMBER OF PAGES, INCLUDING COVER:** 2     **CHARGE NUMBER:** 00634.0002

☐ ORIGINAL WILL FOLLOW VIA:

☐ REGULAR MAIL   ☐ OVERNIGHT DELIVERY   ☐ HAND DELIVERY   ☐ OTHER: _____

☒ ORIGINAL WILL NOT FOLLOW

**SUPPLEMENTAL MESSAGE:**

THE INFORMATION CONTAINED IN THIS TRANSMISSION IS PRIVILEGED AND CONFIDENTIAL. IT IS INTENDED ONLY FOR THE USE OF THE INDIVIDUAL OR ENTITY NAMED ABOVE. IF THE READER OF THIS MESSAGE IS NOT THE INTENDED RECIPIENT, YOU ARE HEREBY NOTIFIED THAT ANY DISSEMINATION, DISTRIBUTION OR COPYING OF THIS COMMUNICATION IS STRICTLY PROHIBITED. IF YOU HAVE RECEIVED THIS COMMUNICATION IN ERROR, PLEASE NOTIFY US IMMEDIATELY BY TELEPHONE AND RETURN THE ORIGINAL MESSAGE TO US AT THE ABOVE ADDRESS VIA THE U.S. POSTAL SERVICE. THANK YOU.

IF THERE ARE ANY QUESTIONS OR PROBLEMS WITH THE TRANSMISSION OF THIS FACSIMILE, PLEASE CALL 202.383.7137.

EXHIBIT 14

REDACTED

# EXHIBIT 15

# HOWREY LLP

1299 Pennsylvania Avenue, NW
Washington, DC 20004-2402
www.howrey.com

**Matthew J. Moore**
Partner
T 202.383.7275
F 202.383.6610
moorem@howrey.com

January 3, 2006

BY FACSIMILE

Steven M. Gruskin, Esq.
Raja N. Saliba, Esq.
Sughrue Mion, PLLC
2100 Pennsylvania Avenue, N.W.
Washington, D.C. 20037-3213

> Re: **Testing Procedures**
> *Bridgestone Sports Co. v. Acushnet Co.*
> Civil Action No. 05-132 (JJF) (D. Del.)

Dear Steve and Raja:

We have received your letter of December 22 regarding our proposal for joint testing by an independent third party.

While we agree that the question of testing is important with regard to the Wilson Ultra Competition ball, due to the extremely limited number of those balls in Acushnet's possession, the question applies with equal importance to a number of other prior art golf balls. For example, Acushnet has only two dozen or fewer samples of most of the prior art golf balls in its possession. Bridgestone, however, has requested six samples of each golf ball. Depending upon the number of tests you intend to perform under your testing protocols, which we would then need to duplicate and vice versa, the testing requirements could exhaust or even outstrip the number of available balls. That is the reason we proposed testing by an independent third party, which should, at a minimum, eliminate the need for each party to duplicate the testing performed by the other party.

With regard to the plaques, finished balls and ball components, due to manufacturing variances, each plaque, ball and component is separate and distinct from the others and thus may have different properties. Therefore, so that both parties have access to the same data, we need to come to an agreement regarding the prompt return of any plaque, ball, or ball component tested.

# HOWREY LLP

Steven M. Gruskin, Esq.
Raja N. Saliba, Esq.
January 3, 2006
Page 2

We confirm that we will not conduct any destructive testing on any golf ball, component or material until we have resolved this matter. In return, we ask that you also confirm that Bridgestone will not conduct any destructive testing on any golf ball, component or material in its possession until we have agreed on a procedure.

Very truly yours,

Matthew J. Moore

# EXHIBIT 16

REDACTED

EXHIBIT 17

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

BRIDGESTONE SPORTS CO., LTD.,
and BRIDGESTONE GOLF, INC.,

Plaintiffs,

v.

ACUSHNET COMPANY,
a Delaware Corporation,

Defendant.

C. A. No.  05-132 (JJF)

## BRIDGESTONE'S FIRST SET OF REQUESTS FOR PRODUCTION DOCUMENTS AND THINGS (REQUEST NOS. 1-100)

Pursuant to Rules 26 and 34 of the Federal Rules of Civil Procedure, plaintiffs Bridgestone Sports Co., Ltd. and Bridgestone Golf, Inc. hereby request that defendant Acushnet Company produce and permit inspection and copying, the documents and things described herein. Production should be made at the offices of plaintiffs' attorneys, Sughrue Mion, PLLC, 2100 Pennsylvania Avenue, NW, Washington. DC 20037 within thirty (30) days of these requests.

### DEFINITIONS

Notwithstanding any definition set forth below, each word, term, or phrase used in this Request is intended to have the broadest meaning permitted under the Federal Rules of Civil Procedure.  As used in this Request, the following terms are to be interpreted in accordance with these definitions:

1.    The term "Bridgestone," "Plaintiff," and/or "Plaintiffs" means Bridgestone Sports Company, Ltd. and/or Bridgestone Golf, Inc., the plaintiffs in this action, and all predecessors, successors, subsidiaries, divisions, parents and/or affiliates thereof, past or present, and all past

counsel, all memoranda, comments, summaries, claim charts, presentation materials, correspondence, notes, reports, clearance searches, clearance studies, opinions, or "design around" documents.

33.    All Documents and Things concerning the alleged infringement or non-infringement of any of the claims of the Bridgestone patents-in-suit.

34.    All Documents and Things concerning your allegations and denials in the Answer that Acushnet does not, and/or that Acushnet products do not, infringe the Bridgestone patents-in-suit.

35.    All Documents and Things concerning any of the claims or claim elements of the Bridgestone patents-in-suit and/or the scope or interpretation of any of the claims or claim elements of the Bridgestone patents-in-suit, including all Documents and Things concerning the definition or meaning of any claim term, phrase or element in any of the Bridgestone patents-in-suit.

36.    All Documents and Things concerning the allegations in your Answer that one or more of the Bridgestone patents-in-suit is invalid or unenforceable.

37.    All Documents and Things concerning the validity or invalidity of the Bridgestone patents-in-suit, including without limitation, all Documents and Things concerning any studies or analyses regarding validity, invalidity or claim scope, by or on behalf of Acushnet with respect to the Bridgestone patents-in-suit, including but not limited to, all Documents and Things provided to and received from counsel, all memoranda, comments, summaries, presentation materials, test results and measurements, correspondence, notes, reports, or opinions.

38.    All Documents and Things concerning prior art (including Prior Art Golf Ball and any other Things) to the Bridgestone patents-in-suit, including without limitation all Documents

14

MORRIS, NICHOLS, ARSHT & TUNNELL

Jack B. Blumenfeld (#1014)
Maryellen Noreika (#3208)
Leslie A. Polizoti (#4299)
1201 N. Market Street
P.O. Box 1347
Wilmington, DE 19801
(302) 658-9200
   *Attorneys for Bridgestone Sports Co., Ltd.*
   *and Bridgestone Golf, Inc.*

OF COUNSEL:

Robert M. Masters
John T. Callahan
Raja Saliba
SUGHRUE MION, PLLC
2100 Pennsylvania Avenue, N.W.
Washington, D.C. 20037
(202) 293-7060

June 7, 2005

25

## CERTIFICATE OF SERVICE

I, Jack B. Blumenfeld, hereby certify that copies of the foregoing were caused to be served this 7th day of June, 2005 upon the following in the manner indicated:

### BY HAND

Richard L. Horwitz
Potter Anderson & Corroon LLP
1313 N. Market Street
Wilmington, DE  19801

### BY FEDERAL EXPRESS

Alan M. Grimaldi
Howrey LLP
1299 Pennsylvania Avenue, N.W.
Washington, DC  20004


Jack B. Blumenfeld

# EXHIBIT 18

REDACTED

EXHIBIT 19

REDACTED

# EXHIBIT 20

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

BRIDGESTONE SPORTS CO., LTD, )
and BRIDGESTONE GOLF, INC. )
)
)
Plaintiff, )
)
v. )
)
ACUSHNET COMPANY, )
)
)
Defendant. )
)                                    C. A. No. 05-132 (JJF)
_____ )
)
ACUSHNET COMPANY, )                  DEMAND FOR JURY TRIAL
)
Counterclaim Plaintiff, )
)
v. )
)
BRIDGESTONE SPORTS CO., LTD, )
and BRIDGESTONE GOLF, INC. )
)
Counterclaim Defendant. )
_____ )

## ACUSHNET'S OBJECTIONS AND RESPONSES TO BRIDGESTONE'S SECOND SET OF REQUESTS FOR THE PRODUCTION OF DOCUMENTS AND THINGS DIRECTED TO ACUSHNET (NOS. 101-155)

Pursuant to Rule 34 of the Federal Rules of Civil Procedure, defendant and counterclaim plaintiff Acushnet Company ("Defendant" or "Acushnet") hereby responds to the *Second Set of Requests for Production Documents and Things (Requests Nos. 101-155)* ("Second Set of Requests") of plaintiffs and counterclaim defendants Bridgestone Sports Co., Ltd. ("Bridgestone Sports") and Bridgestone Golf, Inc. ("Bridgestone Golf") (collectively, "Plaintiffs" or "Bridgestone").

being unintelligible to the extent that this request incorporates Request No. 120. Additionally, to the extent that this request can be construed to incorporate Request No. 120, Acushnet also specifically objects to this request because: (1) it is overly broad as compositions that are "similar in composition and structure" to any components of the Acushnet products are not relevant to the subject matter of the present litigation nor likely to lead to the discovery of admissible evidence; and (2) the request is vague and ambiguous with respect to what "substantially similar in composition or structure" means; (3) the request is vague and ambiguous as to what an "intermediate layer" is; (4) it is vague and ambiguous as to what the term "core" means; and (5) to the extent that Bridgestone intends the terms "intermediate layer" and "core" to be commensurate with the import of the term as used in the claims of the Bridgestone patents-in-suit is premature as the term "intermediate layer" and "core" have yet to be construed by the Court. Acushnet also specifically objects to this request as calling for the production of documents or things that are covered by the attorney-client privilege and/or attorney work-product immunity.

**Request for Production No. 122:**

All Documents and Things concerning the composition, recipe, and manufacture, including without limitation all manufacturing specifications, of the components of the Acushnet products, including the cores, intermediate layers and covers.

**Response to Request No. 122:**

Acushnet incorporates all of its General Objections and Objections to Definitions and Instructions as though fully set forth herein and further specifically objects to this request as being duplicative of Requests Nos. 12, 14, 15, 93, 94, 114, 116-121, 123 and 124. Acushnet also specifically objects to this request on the grounds that it (1) is vague and ambiguous as to what an "intermediate layer" is; (2) is vague and ambiguous as to what the term "core" means; and (4) to the extent that Bridgestone intends the terms "intermediate layer" and "core" to be commensurate with the import of the term as used in the claims of the Bridgestone patents-in-suit is premature as the term "intermediate layer" and "core" have yet

19

to be construed by the Court. Acushnet also specifically objects to this request as calling for the production of documents or things subject to the attorney-client privilege and/or attorney work-product immunity.

Subject to and without waiving these objections, Acushnet will produce non-privileged documents located after a reasonable search at a mutually agreeable time and place.

**Request for Production No. 123:**

One (1) kg of each type of Fusablend® material used in the Acushnet products, with and identification of which Acushnet product(s) uses or has the specific type of Fusablend® material.

**Response to Request No. 123:**

Acushnet incorporates all of its General Objections and Objections to Definitions and Instructions as though fully set forth herein and further specifically objects to this request as being duplicative of Requests Nos. 12, 14, 15, 93, 94, 114 and 116-122 and 124. Acushnet also specifically objects to this request as overly broad and unduly burdensome to the extent that it calls for Acushnet to manufacture or create one kilogram of cover material for Bridgestone. Moreover, Acushnet specifically objects to this request to the extent that it seeks the production of materials that are publicly available from other sources. Moreover, Acushnet specifically objects to this document request to the extent that it requires Acushnet to identify which Acushnet products include a Fusablend™ cover material, which is more appropriate in an interrogatory rather than a request for production of documents or things.

**Request for Production No. 124:**

All Documents and Things concerning the composition, recipe, and manufacture, including without limitation all manufacturing specifications, of Fusablend® material.

**Response to Request No. 124:**

Acushnet incorporates all of its General Objections and Objections to Definitions and Instructions as though fully set forth herein and further specifically objects to this request as being duplicative of Requests Nos. 12, 14, 15, 93, 94, 114 and 116-123. Acushnet also

20

POTTER ANDERSON & CORROON LLP

_____
Richard L. Horwitz (#2246)
David E. Moore (#3983)
Hercules Plaza, 6th Floor
1313 N. Market Street
Wilmington, DE 19801
Telephone: (302) 984-6000
rhorwitz@potteranderson.com
dmoore@potteranderson.com

Of Counsel:

Alan M. Grimaldi
Joseph P. Lavelle
Matthew J. Moore
Vivian S. Kuo
HOWREY LLP
1299 Pennsylvania Ave., N.W.
Washington, D.C. 20004
Telephone: (202) 783-0800

Attorneys for Defendant
Acushnet Company

Dated: August 29, 2005
69684

38

## CERTIFICATE OF SERVICE

I, David E. Moore, hereby certify that on August 29, 2005, a true and correct copy of the within document was caused to be served on the attorney of record at the following addresses as indicated:

### VIA HAND DELIVERY

Jack B. Blumenfeld
Maryellen Noreika
Leslie A. Polizoti
Morris, Nichols, Arsht & Tunnell
1201 N. Market Street
Wilmington, DE 19801

### VIA FEDERAL EXPRESS

Robert M. Masters
John T. Callahan
Raja Saliba
Sughrue Mion, PLLC
2100 Pennsylvania Avenue, NW
Washington, DC 20037

David E. Moore

680013

EXHIBIT 21



SUGHRUE MION, PLLC

2100 Pennsylvania Avenue, NW
Washington, DC 20037-3213
T 202.293.7060
F 202.293.7860

www.sughrue.com

November 17, 2005

*Via Facsimile: (202) 383-6610*

Mr. Matthew J. Moore
HOWREY LLP
1299 Pennsylvania Ave., N.W.
Washington, DC 20004

Re:    **Additional Deficiencies in Acushnet's Document Production**
       ***Bridgestone Sports Co., Ltd. et al. v. Acushnet Co.***
       **Civil Action No. 05-132 (JJF)**

Dear Mr. Moore:

Further to our letter of September 30, 2005 regarding certain deficiencies in Acushnet's production,[1] our continued review of Acushnet's production has identified the following additional deficiencies:

1.     Acushnet has produced select BPII (Ball Plant II) Platform Team Meeting Minutes (e.g., AB 52250-52; AB 52253-55): These appear to be regularly scheduled meetings, yet Acushnet has produced only a sampling of documents. Please verify that all BPII Platform Team Meeting Minutes have been produced. In addition, please confirm that any meeting minutes for any other Ball Plant Platform Teams have been produced.

2.     Acushnet has produced only select minutes from Sales and Marketing meetings, *see, e.g.*, AB 52050-52054. To the extent minutes from other Sales and Marketing meetings exist and are responsive to Bridgestone's request, they must be produced. Accordingly, please identify whether all Sales and Marketing meeting minutes have been produced.

3.     AB 52050 discusses a Lotus Notes database that includes "[a]ll new packaging tops, bottoms and sleeves." The contents of this database would appear responsive to Bridgestone's document requests, yet we can not locate these documents in Acushnet's production. Please identify whether the contents of this database have been produced to the extent they are responsive to Bridgestone's Document Requests.

---

[1] We are in receipt of your letter of November 10, 2005 responding to our September 30, 2005 letter, and we will separately respond to this letter.



Mr. Matthew J. Moore
HOWREY LLP
Page 2

Further, to the extent any other databases exist whose content is responsive to Bridgestone's document requests, the contents of these databases must be produced. For example, any data bases on materials research, competitive ball analysis and testing, product development, performance analysis and testing, including flight performance, and USGA submissions must be produced. Accordingly, please identify whether any other databases exist and whether their contents have been produced.

4.    AB 50849-53 is Pinnacle Platform Team Meeting Minutes. Again, it appears that Acushnet has only selectively produced these documents. Please identify whether Acushnet is withholding such documents. Similarly, AB 45381, DT SoLo Platform Team Meeting Minutes also appear to have been selectively produced, and we ask that you identify whether any such meeting minutes are being withheld.

5.    AB 52064 is a meeting announcement for the November 6, 2001 Golf Ball Board of Director's Meeting. Acushnet has appeared to produced only a handful of these announcements and no minutes from these meetings. To the extent other announcements or minutes exists, they must be produced to the extent they are responsive.

6.    AB 51027 references a "Products Construction" worksheet for new Pinnacle products. Such worksheets do not appear to have been produced. Please identify whether Acushnet is withholding these worksheets.

7.    AB 35853, entitled New Product Implementation, relates only to the NXT Tour. Acushnet, however, has not produced a similar document for each version of each of the accused Acushnet balls. To the extent Acushnet has such documents in its possession, custody or control, these documents are responsive to several of Bridgestone's Document Requests and should be produced immediately. Accordingly, please identify whether Acushnet is withholding any "New Product Implementation" documents.

8.    AB 35635, entitled "Pro V1 Inventory Analysis" contains relevant sales information for the Pro V1 ball. Acushnet, however, has not produced a similar document for each version of each of the accused Acushnet balls and for all relevant time periods. To the extent Acushnet has such documents in its possession, custody or control, these documents are responsive to several of Bridgestone's Document Requests and should be produced immediately. Accordingly, please identify whether Acushnet is withholding any "Inventory



Sughrue
SUGHRUE MION, PLLC

Mr. Matthew J. Moore
HOWREY LLP
Page 3

Analysis" documents or other similar documents relating to inventory levels,
demand for the accused Acushnet balls, demand and inventory forecast, etc.

9.      AB 48122, entitled "Product Flow Chart," although barely legible, appears to be a
        flow chart of the manufacturing process for the NXT, NXT Tour, DT Solo, and
        Pinnacle Exception balls as of June 15, 2005. Acushnet, however, has not
        produced a similar document for each version of each of the accused Acushnet
        balls and for all relevant time periods. To the extent Acushnet has such
        documents in its possession, custody or control, these documents are responsive
        to several of Bridgestone's Document Requests and should be produced
        immediately. Accordingly, please identify whether Acushnet is withholding any
        "Product Flow Chart" documents or other similar documents relating to the
        manufacturing processes involved in production of the accused Acushnet balls.

10.     Acushnet has not produced all of its testing procedure protocols and/or calculators.
        For example, Acushnet has not produced documents showing how dimples are
        measured, for example, as shown in AB 1346. To the extent such protocols exist
        and to the extent Acushnet has any calculators (*e.g.*, Excel spreadsheets) in its
        possession, custody or control, these documents are responsive to several of
        Bridgestone's Document Requests and should be produced immediately.

11.     Boxes 2 (AB 2282-4458) and 11 (AB 18000-20204) contain primarily U.S. and
        foreign patents, applications and file histories. Acushnet, however, has
        designated these documents as "HIGHLY CONFIDENTIAL" or
        "CONFIDENTIAL." We believe, however, that such a designation is improper,
        and ask that Acushnet withdraw this designation.

12.     Acushnet has produced selected copies of invention disclosures. *See* AB 51351 *et
        seq*. These copies, which appear to be printouts from an electronic archive, are
        not signed or dated. Please identify whether signed and dated copies of these
        invention disclosures exist and, if so, produce them immediately.

        Further, the invention disclosures thus far produced are directed to golf ball
        chemistry, and there are no disclosures for ball design as might possibly have
        been submitted for the alleged invention contained in the '976, '861, '587, and
        '367 patents. Please identify whether Acushnet has in its possession, custody or
        control invention disclosures relating to ball design.

13.     Pages AB 6064-95, AB 22411, AB 33547-34044, AB 39349, AB 39354, AB
        39371-72, AB 40338 and AB 40842 are missing from Acushnet's production.
        Please provide a copy of these pages immediately.



Mr. Matthew J. Moore
HOWREY LLP
Page 4

       Please let us know a convenient time for you to discuss these issues.  We would, of course, like to discuss these issues in advance of the December 1, 2005 hearing.

                                    Very truly yours,

                                    Raja Saliba

RNS/BMW.

**Paul**Hastings

ATTORNEYS

Paul, Hastings, Janofsky & Walker LLP
875 15th Street, N.W. • Washington, DC 20005
telephone 202 551 1700 • facsimile 202 551 1705 • www.paulhastings.com

Atlanta
Beijing
Brussels
Hong Kong
London
Los Angeles
Milan
New York
Orange County
Palo Alto
Paris
San Diego
San Francisco
Shanghai
Stamford
Tokyo
Washington, DC

(202) 551-1763
robmasters@paulhastings.com

May 10, 2006                                                            70416.00002

**VIA FACSIMILE (202) 383-6610**

Mr. Alan M. Grimaldi
Howrey LLP
1299 Pennsylvania Ave., N.W.
Washington, DC 20004

*Re:*   ***Bridgestone v. Acushnet – Deficiencies in Acushnet's Production***

Dear Alan:

Itemized below are numerous outstanding deficiencies in Acushnet's document
production and interrogatory responses. We have continuously asserted that Acushnet's
document production and certain of its interrogatory responses were inadequate. We
have offered to compromise, met and conferred, and even obtained the Court's
intervention, all to no apparent effect. We have attempted to obtain Acushnet's testimony
on its discovery efforts and production through a Rule 30(b)(6) deposition. Acushnet,
however, chose to designate and present a witness, Troy Lester, who came to the
deposition entirely unprepared, making the deposition, for the most part, a wasted effort.

We firmly believe that Acushnet is using dilatory discovery tactics to interpose delay.
After more than eight months of fact discovery, Acushnet's tactics now require us to seek
the Court's intervention to ensure that Acushnet complies with its discovery obligations.
While we intend to meet and confer on the issues raised below,[1] it is also our intention to
seek a discovery conference with the Court. To the extent we can agree on any issues, the
Court can memorialize any such agreement in an Order. To the extent we cannot agree
on any issues, the Court can resolve the dispute. We believe this is necessary to ensure
Bridgestone obtains the discovery it has long been entitled to.

I.   **Acushnet's Document Collection Effort**

Although Mr. Lester was unable to provide much testimony during his Rule 30(b)(6)
deposition,[2] he was able to provide a limited description of Acushnet's document

---

[1] Acushnet's failure to produce its financial documents is in direct violation of the Court's Order of January
13, 2006 and no additional meet and confer is necessary.
[2] Acushnet has not disputed that Mr. Lester was entirely unprepared for his deposition. His lack of
preparation was manifest, was known or should have been known by you in advance of the deposition, and
resulted in a substantial waste of time, effort and money.
LEGAL_US_E # 70857395.2

**Paul**Hastings
ATTORNEYS

Alan M. Grimaldi
May 10, 2006
Page 2

collection effort. His testimony reveals that Acushnet's document collection effort was entirely deficient.

As Acushnet's corporate representative, Mr. Lester testified that individual employees were ordered to search their own files. These employees were not provided any written instruction and were not provided copies of Bridgestone's document requests. Mr. Lester was unaware of whether a separate search was conducted in response to Bridgestone's second set of document requests. Mr. Lester could not identify whose files were searched and whose were not. Mr. Lester could not identify whether the files of key personnel, e.g., Mr. Uihlein, Mr. Kramer, Mr. Cebula, and Mr. Bartsch, were searched and he had no explanation as to why these their names did not appear on Acushnet's source chart. Mr. Lester was unaware of important teams, e.g., the Pro V1 Platform Team. Mr. Lester could not identify any database maintained by Acushnet with the exception of the irrelevant Foot Joy prosecution database.

Mr. Lester's testimony clearly establishes that the procedure followed by Acushnet in searching for and collecting documents responsive to Bridgestone's document request was fundamentally flawed and entirely inadequate. The shortcomings in Acushnet's collection efforts go a long way in explaining many of the issues below and the overwhelming discrepancy in document production to date.[3] The only conclusion that can be reached from Mr. Lester's deposition is that many, many relevant documents have yet to be produced. Accordingly, we request that Acushnet immediately conduct another search for documents responsive to Bridgestone's document requests and produce a Rule 30(b)(6) witness who can provide testimony regarding this search. In the alternative, we are left with no choice but to ask the Court to sanction Acushnet.

II.    **Acushnet's Document Retention Policy**

Many months ago, Bridgestone requested Acushnet to produced its document retention policy. For months, nothing was produced, even prior to Mr. Lester's deposition, despite the fact that Topic 4 related to Acushnet's document retention policies. Yet, after being shown an e-mail document specifically identifying Acushnet's Records Retention Policy (AB 873, e-mail from Mr. Lester), counsel was able to place a call to Acushnet and obtain a copy within an hour.

Rather than simply producing the policy at that time, Mr. Lavelle stated that the Records Retention Policy might be privileged.[4] Mr. Lavelle agreed to either produce this document at a later time or provide a revised privilege log with a newly-added claim for the Records

---

[3] Acushnet has produced fewer than 90,000 pages of documents to date. Much of this production is comprised certificates of analysis, patents and files histories. Bridgestone, on the other hand, has produced more than 200,000 pages.
[4] Although it was asserted that this Policy might somehow be privileged, the document was faxed to Brandon White, an attorney for Bridgestone.
LEGAL_US_E # 70857395.2

Paul*Hastings*
ATTORNEYS

Alan M. Grimaldi
May 10, 2006
Page 3

Retention Policy. Yet, nearly two weeks after that deposition, the document has not been
produced, nor has a revised privilege log been provided.

III.    **Acushnet's Source Log**

During Troy Lester's deposition, Mr. Lester identified several apparent inaccuracies in
Acushnet's source log. Despite our requests, Acushnet has not provided an updated
source log based on its recent production and the discrepancies identified by Mr. Lester.

Further, with respect to the agreement memorialized in our April 28, 2006 letter,
Acushnet has agreed to provide a list of persons whose files were searched, but where no
responsive documents were found. This list has not been produced.

When viewed together, the Acushnet organization chart and the source log demonstrates
substantial and glaring holes in Acushnet's document collection. Most of the people
identified on Acushnet's organization chart are not identified on the source log. Although
we might understand if certain relatively minor players did not show up on Acushnet's
source log, it is simply impossible to believe that key personnel such as Wally Uihlein, Bill
Burke, Jerry Bellis, Eric Bartsch, Ray Cebula and Michael Kramer, among others, do not
appear on the source log. As discussed above, this only bolsters our view that Acushnet's
production is deficient.

Interestingly, in its May 1 supplementation, Acushnet identified Eric Bartsch as the
individual at Acushnet most knowledge about the manufacturing of Acushnet balls and
Bill Burke as the person at Acushnet most knowledgeable about the selling of the accused
Acushnet balls. *See* Supplemental Response to Interrogatory No. 3. These individuals,
however, do not appear on Acushnet's source log. These knowledgeable individuals must
have discoverable documents, but no documents from their files, offices or computers
have been produced.

IV.    **Organization Charts**

Acushnet has only produced one organization chart (AB 52390-524119), apparently a
relatively current chart. Acushnet has not produced any previous organization charts. Mr.
Lester was unaware of whether older organization charts are maintained or who would
maintain them if they were still in existence. Accordingly, please produce any such charts
immediately, or, if Acushnet maintains that none exist, so state.

V.    **Acushnet's Privilege Log**

In March, we wrote to you regarding deficiencies in Acushnet's privilege log. In early
April, Mr. Seal wrote to us to say that a revised privilege log would be produced within a
week. We wrote to you again last week. Still, no revised privilege log has been produced.

LEGAL_US_E # 70857395.2

**Paul**Hastings
ATTORNEYS

Alan M. Grimaldi
May 10, 2006
Page 4


VI.    **Financial Documentation**

Insofar as it concerned damages related documents, Acushnet's April 3 document
production was wholly insufficient. Bridgestone originally served its document requests
concerning damages related documents on June 7, 2005. Acushnet produced only a small
number of documents responsive to those requests. After unsuccessful efforts to resolve
the matter amicably, Bridgestone brought the matter to the attention of the Court. The
Court's January 18, 2006 Order was unequivocal: Acushnet was obligated to produce the
requested documents.

At Acushnet's request, Bridgestone agreed to accept summary type documents in response
to the requests. On February 28, 2006, we identified with specificity the summary
documents that Bridgestone required. Such documents were not forthcoming and we
sent a follow-up letter again addressing the damages-related document requests. The
April 3 production followed.

That production, however, fell far short of meeting Acushnet's obligations under either
the Court's Order or the parties' subsequent agreement concerning summary documents.
Specifically, Acushnet failed to produce for the period 2000 to date monthly sales data,
manufacturing costs, costs of goods sold and standard costs by accused ball and/or
corresponding side stamp, quarterly income statements or P&Ls including on a divisional
or operating group level, monthly or quarterly market share data by accused ball and/or
corresponding side stamp, "Golf Ball Product Plans," representative brochures and
advertisements or surveys and third party reports. Further, Acushnet has not produced
any documents reporting to Fortune Brands, Acushnet's parent company, nor has
Acushnet produced executive summaries.

We simply cannot believe that Acushnet's financial production to date is even close to
complete. At the January 13 hearing, Mr. Moore stated that Acushnet had "massive"
amounts of financial documents. The box and half of production (much of which was
Golf Datatech information) hardly constitutes "massive" amounts of documents.

VII.    **Manufacturing Guidelines**

Acushnet has produced many manufacturing guidelines with tracked changes still present
and with errors, such as instructions to print an HVC sidestamp on a NXT Tour ball. It is
our understanding that these are important documents in Acushnet's ball manufacturing
business. Its seems unlikely that Acushnet would not finalize these documents prior to a
manufacturing run. Please produce all *final* manufacturing guidelines immediately.

In addition, Acushnet has not produced manufacturing guidelines for each of the
Acushnet balls identified in the May 1 supplementation. Acushnet's continued delay in
producing these highly responsive documents again appears to be a deliberate tactic
designed to defer the resolution of this case on the merits.

LEGAL_US_E # 70857395.2

**Paul**Hastings
ATTORNEYS

Alan M. Grimaldi
May 10, 2006
Page 5

VIII.    **On Course / Off Course Retailer Agreements, Distributor Sales Agreements & Subsidiary Sales Agreements**

Mr. Lester testified that Acushnet has entered into agreements with on-course retailers, off-course retailers, Acushnet's foreign subsidiaries, and Acushnet's foreign distributors. Mr. Lester testified that these documents were collected and produced. However, to date, no such production has occurred.

All agreements with on-course retailers, off-course retailers, Acushnet's foreign subsidiaries, and Acushnet's foreign distributors are highly-relevant and should have long ago been produced.

IX.    **Emails & Attachments**

Despite the issue having been raised repeatedly, Acushnet has refused to produce copies of attachments whose icons appear on the hard copies of documents produced by Acushnet. To the extent such documents are reasonably accessible to Acushnet, they should be produced. In Mr. Lester's deposition, we attempted to explore the degree to which documents, such as meeting minutes or "platform team" reports, were maintained and circulated electronically, exist on databases or are stored in archives. Acushnet's failure to prepare Mr. Lester for his deposition has hindered our investigation of this issue.

X.    **Meeting Minutes**

Large gaps exist in meeting minutes for key teams, such as the Pro V1 Platform Team and NXT Platform Team. While Mr. Lester was unable to provide testimony as to where such e-mailed meeting minutes might be stored, it is difficult to imagine that they are not stored somewhere. Apparently, Acushnet maintains numerous databases where documents such as e-mailed meeting minutes could be stored. Once again, Mr. Lester's failure to prepare for his deposition has hindered our investigation of this issue.

XI.    **Quality Control Manuals**

Acushnet has produced no quality control and inspection documents, e.g., guidelines, manuals and instructions for employees whose responsibilities include quality control. We believe Acushnet's production of these documents is grossly deficient. Our belief is bolstered by the fact that Ed Isaac, Acushnet's Senior Direct of Quality Assurance (AB 52398), Rastko Gajic, Acushnet's Manager of Process Quality (AB 52403), Stan Brown and Judy Concepcion, Acushnet's Senior QA Engineers, do not appear on Acushnet's source chart.

XII.    **Databases**

Numerous databases are referenced in Acushnet's documents. It has been established through Mr. Lester that these databases are located on shared drives. No databases are

LEGAL_US_E # 70857395.2

Paul*Hastings*
ATTORNEYS

Alan M. Grimaldi
May 10, 2006
Page 6

listed on the Acushnet source log. We believe Acushnet has failed to adequately search its databases.

## XIII.  Samples, Components & Balls

Despite the Court's instructions, Acushnet has not produced golf balls and components. Acushnet has maintained its position that any samples be returned within two days and that Bridgestone identify any testing performed on the sample. This is unacceptable. The Court imposed no such obligations.

Such samples, components and balls should have long ago been produced without restriction. The Court sided with us in January, yet no samples or components have been produced.

## XIV.  Improper Invalidity Contentions

On March 21, 2006 we wrote to you regarding deficiencies in Acushnet's responses to Bridgestone's Interrogatories Nos. 4 and 35. We stated that Acushnet's responses to these Interrogatories must state the specific combinations of prior art references Acushnet relies on to support its contention that one or more of the claims are invalid under 35 U.S.C. § 103. Acushnet's May 1 supplementation fails to cure the deficiencies identified in our March 21 letter. For example, with respect to claim 1 of the '652 patent, for its obviousness contentions, Acushnet simply "cycles" through each possible iteration of several references. This is not an adequate response.

## XV.  Response to Interrogatory No. 1

Acushnet's present response to Bridgestone's Interrogatory No. 1 is misleading, incomplete, and inaccurate. The response stands alone and makes no reference to any order. No order authorizes Acushnet to provide misleading, incomplete, and inaccurate responses to any discovery request.

## XVI.  Newly Asserted Prior Art

Final supplementation of interrogatories was not meant to be an opportunity to insert into the litigation scores of additional prior art references. The date provided by the court for final contentions did not purport to supercede Rule 26(e)(2), which requires seasonable supplementation of discovery responses. Acushnet's final supplementation, which identified at least 46 prior art balls, along with scores of patents and publications, the vast majority of which were nor previously identified, was hardly seasonable.

Furthermore, Acushnet has not provided *any* discovery on much of the alleged prior art it now relies upon, even though many of the balls are Acushnet's own. This highly-relevant discovery must be produced immediately.

LEGAL_US_E # 70857395.2

**Paul**Hastings
ATTORNEYS

Alan M. Grimaldi
May 10, 2006
Page 7

You have also requested that Bridgestone agree to narrow its asserted claims. Until Acushnet's satisfies its outstanding discovery obligations, Bridgestone cannot even begin to discuss selection of representative claims. We cannot responsibly come to any agreement on the issue of representative claims until Acushnet's complies with its discovery obligations and we have a full and fair opportunity to assess Acushnet's newly-raised invalidity contentions.

Furthermore, once we are in a position to discuss representative claims, Acushnet must be prepared to agree to drastically reduce the volume of prior art asserted. Bridgestone will not agree to any representative claim arrangement where Acushnet is not similarly constricted in its invalidity contentions.

Still further, Acushnet relies on the "Project X2 Veneer Ball," which Acushnet states is entitled to a prior art date sometime in 1996. As Mr. Lester testified, the Pro V1 was known as the veneer ball during development. Thus, all documents and things relating to the "Project X2 Veneer Ball" and balls related thereto should have been produced more than eight months ago. Produce the Project X documents and any other "veneer" related documents immediately.

Finally, Bridgestone reserves its right to seek sanctions for Acushnet's failure to seasonably supplement its previous discovery responses. There is no reason why these references were not disclosed until the last possible moment. This case was filed almost 14 months prior to Acushnet's May 1 supplementation, and years of negotiations preceded the filing of the Complaint. Many of the balls cited by Acushnet were Acushnet's own balls. Acushnet was certainly aware of the properties of these balls the entire time. Such dilatory conduct appears designed to force Bridgestone into requesting the Court to extend the schedule.

We look forward to discussing these issues with you next Monday, May 15 at 10:00 a.m.

Sincerely,

*Robert M Masters | BMW*

Robert M. Masters
of PAUL, HASTINGS, JANOFSKY & WALKER LLP

# Paul*Hastings*

ATTORNEYS

Paul, Hastings, Janofsky & Walker LLP
875 15th Street, N.W. • Washington, DC 20005
telephone 202 551 1700 • facsimile 202 551 1705 • www.paulhastings.com

## FACSIMILE TRANSMISSION

| to: | company/office: | facsimile: | telephone: |
|-----|-----------------|------------|------------|
| Alan M. Grimaldi | Howrey LLP | (202) 383-6610 | (202) 383-6989 |

| from: | facsimile: | telephone: | initials: |
|-------|------------|------------|-----------|
| Robert M. Masters | (202) 551-1705 | (202) 551-1763 | RMM3 |

| client name: | Bridgestone | client matter number: | 70416.00002 |
|--------------|-------------|-----------------------|-------------|
| date: | May 10, 2006 | pages (with cover): | 8 |

comments:

**If you do not receive all pages, please call immediately Facsimile Center: (202) 551-1275**

*This message is intended only for the use of the individual or entity to which it is addressed, and may contain information that is privileged, confidential and exempt from disclosure under applicable law. If the reader of this message is not the intended recipient, or the employee or agent responsible for delivering the message to the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited. If you have received this communication in error, please notify us immediately by telephone, and return the original message to us at the above address via the U.S. Postal Service. Thank you.*

```
                    *********************
                ***   TX REPORT   ***
                    *********************


        TRANSMISSION OK

        TX/RX NO                2719
        RECIPIENT ADDRESS       ##024860#p2023836610#
        DESTINATION ID
        ST. TIME                05/10 05:03
        TIME USE                04'44
        PAGES SENT              8
        RESULT                  OK
```

# Paul Hastings
**ATTORNEYS**



Paul, Hastings, Janofsky & Walker LLP
875 15th Street, N.W. • Washington, DC 20005
telephone 202 551 1700 • facsimile 202 551 1705 • www.paulhastings.com

## FACSIMILE TRANSMISSION

| to: | company/office: | facsimile: | telephone: |
|---|---|---|---|
| Alan M. Grimaldi | Howrey LLP | (202) 383-6610 | (202) 383-6989 |

| from: | facsimile: | telephone: | initials: |
|---|---|---|---|
| Robert M. Masters | (202) 551-1705 | (202) 551-1763 | RMM3 |

| client name: | Bridgestone | client matter number: | 70416.00002 |
|---|---|---|---|
| date: | May 10, 2006 | pages (with cover): | 8 |

comments:

# EXHIBIT 22

REDACTED

CERTIFICATE OF SERVICE

I, Leslie A. Polizoti, certify that on April 10, 2007 I electronically filed the
foregoing with the Clerk of the Court using CM/ECF, which will send notification of such filing
to:

> Richard L. Horwitz, Esquire
> David Moore, Esquire
> POTTER ANDERSON & CORROON LLP
> Hercules Plaza, 6th floor
> 1313 N. Market Street
> Wilmington, DE 19899

and that I caused copies to be served upon the following in the manner indicated:

### BY EMAIL & HAND

> Richard L. Horwitz, Esquire
> David Moore, Esquire
> Potter Anderson & Corroon LLP
> 1313 N. Market Street
> Wilmington, DE 19801

### BY EMAIL & FEDERAL EXPRESS

> Joseph P. Lavelle, Esquire
> Howrey LLP
> 1299 Pennsylvania Avenue, NW
> Washington, DC 20004

> */s/ Leslie A. Polizoti*
> Leslie A. Polizoti (#4299)
> lpolizoti@mnat.com