IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

BRIDGESTONE SPORTS CO., LTD.,  )
and BRIDGESTONE GOLF, INC.,    )
                               )
              Plaintiffs,      )    C.A. No. 05-132 (JJF)
                               )
       v.                      )    **REDACTED –**
                               )    **PUBLIC VERSION**
ACUSHNET COMPANY,              )
                               )
              Defendant.       )

**BRIDGESTONE'S APPENDIX IN SUPPORT ITS**
**<u>MOTION FOR SANCTIONS</u>**

**(VOLUME 2)**

MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Jack B. Blumenfeld (#1014)
Maryellen Noreika (#3208)
Leslie A. Polizoti (#4299)
1201 N. Market St.
P.O. Box 1347
Wilmington, DE 19801
(302) 658-9200
*Attorneys for Bridgestone Sports Co., Ltd.*
*and Bridgestone Golf, Inc.*

OF COUNSEL:

Robert M. Masters
Scott M. Flicker
Terrance J. Wikberg
Brandon M. White
PAUL, HASTINGS, JANOFSKY & WALKER LLP
875 15th St., N.W.
Washington, DC 20005
(202) 551-1700

Original Filing Date:  March 20, 2007
Redacted Filing Date:  April 10, 2007

# TABLE OF CONTENTS

Description      Exhibit

Invalidity Expert Report of Dr. David Felker, dated January 16, 2007    1

February 13, 2007 Letter from R. Stasio to B. White    2

March 2, 2007 Letter from M. Biswas to R. Masters    3

March 7, 2007 Email from T. Jenkins to T. Wikberg et al.    4

Excerpts from the Rough Draft Deposition of Dr. David Felker    5

March 19, 2007 Letter from B. White to R. Stasio    6

January 30, 2007 Letter from B. Seal to B. White    7

Excerpts from Bridgestone's First Set of Interrogatories, dated June 7, 2005 and Excerpts from Bridgestone's First Set of Requests for Production of Documents and Things, dated June 7, 2005    8

October 2000 Opinion of Counsel (AB 0118404-431)    9

Excerpts from the Rough Draft Deposition of Jeffrey Dalton, dated March 2, 2007    10

Exhibit 48 to the Invalidity Expert Report of Dr. David Felker    11

Excerpts from Bridgestone's First Set of Requests for Production of Documents and Things, dated June 7, 2005 and Excerpts from Bridgestone's Second Set of Requests for Production of Documents and Things, dated July 29, 2005    12

February 9, 2007 Letter from B. Seal to B. White    13

November 28, 2005 Letter from B. Seal to R. Saliba    14

January 3, 2006 Letter from M. Moore to S. Gruskin    15

1993 Competitive Log    16

Excerpts from Bridgestone's First Set of Requests for Production of Documents and Things, dated June 7, 2005    17

Excerpts from the Rough Draft Deposition of John Calabria, dated March 15, 2007    18

| Description | Exhibit |
|---|---|
| Excerpts from the Deposition of Rastko Gajic, dated March 1, 2007 | 19 |
| Excerpts from Acushnet's Objections and Response to Bridgestone's Second Set of Requests for the Production of Documents and Things Directed to Acushnet, dated August 29, 2005 | 20 |
| November 15, 2005 Letter from R. Saliba to M. Moore and May 10, 2006 Letter from R. Masters to A. Grimaldi | 21 |
| Acushnet's Supplemental Objections and Responses to Bridgestone's Fifth Set Of Interrogatories Direct to Acushnet, dated December 18, 2006 | 22 |
| Non-Infringement Expert Report of Dr. David Felker, dated February 20, 2007 | 23 |
| August 10, 2006 Letter from B. White to B. Seal | 24 |
| August 24, 2006 Letter from B. Seal to B. White | 25 |
| September 6, 2006 Letter from B. Seal to B. White and Excerpts from Acushnet's Objections and Responses to Bridgestone's Sixth Set of Interrogatories, dated December 18, 2006 | 26 |
| September 11, 2006 Letter from B. White to B. Seal | 27 |
| September 27, October 17 and October 26, 2006 Letters from B. White to B. Seal | 28 |
| November 3, 2006 Letter from B. Seal to B. White | 29 |
| February 16, 2007 Letter from B. Seal to B. White | 30 |
| February 28, 2007 Letter from R. Stasio to B. White | 31 |
| Excerpts from Bridgestone's First Set of Requests for Production of Documents and Things, dated June 7, 2005 | 32 |
| Excerpts from Dr. Felker's Non-infringement Report | 33 |
| Exhibit 12 to the Non-Infringement Expert Report of Dr. David Felker | 34 |
| Excerpts from Acushet's Objections and Responses to Bridgestone's First Set of Requests for the Production of Documents and Things Directed to Acushnet, dated July 7, 2005 | 35 |
| Exhibit 19 to the Non-Infringement Expert Report of Dr. David Felker | 36 |

Exhibit 6 to the March 1, 2007 Deposition of Rastko Gajic     37

Description     <u>Exhibit</u>

Bridgestone's Third Set of Interrogatories, dated December 9, 2005     38

Excerpts from Pro V1-392 Manufacturing Guidelines     39

March 2, 2007 Hearing Transcript from *Prism Technologies, LLC v. Verisign*, C.A. No. 05-214-JJF     40

February 2, 2007 Hearing Transcript from *Ansell Healthcare Products, LLC v. Tillotson Corp.*, C.A. 06-527-JJF     41

Excerpts from the Rough Draft Deposition Patrick Elliot, dated March 17, 2007     42

# EXHIBIT 23

REDACTED

EXHIBIT 24

REDACTED

# EXHIBIT 25

REDACTED

# EXHIBIT 26

REDACTED

# EXHIBIT 27

REDACTED

# EXHIBIT 28

REDACTED

EXHIBIT 29

REDACTED

# EXHIBIT 30

# HOWREY LLP

1299 Pennsylvania Avenue, NW
Washington, DC 20004-2402
T 202.783.0800
F 202.383.6610
www.howrey.com

February 16, 2007

File 00634.0002

<u>BY FACSIMILE</u>

Brandon M. White, Esq.
Paul, Hastings, Janofsky & Walker LLP
875 15th Street, N.W.
Washington, D.C. 20005

  Re: ***Bridgestone Sports Co. v. Acushnet Co.,***
     **C.A. No. 05-132 (JJF) (D. Del.)**
     <u>**Acushnet's Core Recipe Data**</u>

Dear Brandon:

  In the course of preparing Acushnet's witness for Bridgestone's Tenth 30(b)(6) Notice on the cores of the accused Acushnet products, we realized that our production of change notices from Ball Plant II was last produced only through August 2005. Accordingly, we are providing you with copies of the change notices that have been entered since August 2005. In addition, for this deposition we are providing a paper set of recipe change notices from Ball Plant III largely duplicative of the information provided in November in the form of Lotus Notes. Finally, given the topics on which the Court has ordered Acushnet to prepare and provide a witness for this deposition, we are planning to have available at the deposition for review by the witness and Bridgestone Acushnet's Mesabi Mix Vision software in its native electronic format.

  With regard to Bridgestone's Fifth through Eighth 30(b)(6) Notices, topics 5 and 6, we repeat our offer to make the entire QAS system available to you for your inspection. We are in the process of finding out whether we can make the database available for review in Washington – whether at a deposition or otherwise – and will let you know shortly.

  Please let me know if you have any questions.

       Regards,

       Brian S. Seal

Enclosure

AMSTERDAM  BRUSSELS  CHICAGO  EAST PALO ALTO  HOUSTON  IRVINE  LONDON  LOS ANGELES
MUNICH  NEW YORK  NORTHERN VIRGINIA  PARIS  SALT LAKE CITY  SAN FRANCISCO  TAIPEI  WASHINGTON, DC

# EXHIBIT 31

# HOWREY LLP

1299 Pennsylvania Avenue, NW
Washington, DC 20004-2402
T 202.783.0800
F 202.383.6610
www.howrey.com

February 28, 2007

File 00634.0002.000000

**VIA FACSIMILE 202.551.1705**

Brandon M. White, Esq.
Paul, Hastings, Janofsky & Walker LLP
875 15th Street, N.W.
Washington, DC 20005

Dear Brandon:

This letter is in response to your letter from earlier this evening.

In connection with Mr. Mr. Rastko Gajic's deposition, I did not state in my letter to you that I had emailed you regarding producing Mr. Gajic for his deposition tomorrow in his individual capacity. Nevertheless, the testimony that he will provide as Acushnet's Rule 30(b)(6) designee on the topics ordered by the Court coincides with his testimony as a witness pursuant to Rule 26(a)(2)(A).

Specifically, Mr. Gajic is Acushnet's corporate designee on Acushnet's core formulations. Similarly, Mr. Gajic provided his technical expertise to assist Mr. Dalton in the collection, organization and analysis of the core formulation recipes included in Mr. Dalton's attachments to his recent declaration.

There is no reason that you would not be prepared to depose Mr. Gajic both in his capacity as a 30(b)(6) witness and a 26(a)(2)(A) witness. Therefore, we intend to provide Mr. Gajic for only one day.

In connection with the Mix Vision database, Acushnet twice offered to make the database available to Bridgestone for inspection in its native electronic format – once on November 6, 2006, during a meet-and-confer with you, Rob Masters, Alan Grimaldi and Brian Seal and again, on January 3, 2007, during a meet-and-confer with you, Ken Donnelly and Mr. Seal.

Bridgestone refused both offers and cannot now, at this late date, complain that it is "improper" for Acushnet to rely on the Mix Vision database. Indeed, Acushnet's reliance is proper. Bridgestone cannot correct its own tactical errors by pointing an accusatory finger at Acushnet.

As stated in Mr. Seal's February 16 letter and my letter today, Mr. Gajic will be able to access the database during his deposition - once again, providing Bridgestone with the

AMSTERDAM  BRUSSELS  CHICAGO  EAST PALO ALTO  HOUSTON  IRVINE  LONDON
LOS ANGELES  NEW YORK  NORTHERN VIRGINIA  PARIS  SALT LAKE CITY  SAN FRANCISCO  TAIPEI  WASHINGTON, DC

# HOWREY LLP

Brandon M. White, Esq.
February 28, 2007
Page 2

opportunity to inspect it.  If you refuse once again, any resulting prejudice Bridgestone alleges it has suffered by Acushnet's reliance on the database will be caused by its own actions.

Sincerely,

Renée L. Stasio

# HOWREY LLP

1299 PENNSYLVANIA AVENUE, N.W.
WASHINGTON, DC 20004-2402
PHONE: 202.783.0800 • FAX: 202.383.6610

## FACSIMILE COVER SHEET

*DATE:*  February 28, 2007

*TO:*   *NAME:*  Brandon M. White, Esq.

     *COMPANY:*  Paul Hastings

     *FAX NUMBER*  202-551-1705      *PHONE NUMBER:*  202-551-1754

     *CITY:*  Washington, DC

*FROM:*  *NAME:*  Renée L. Stasio, Esq.

     *DIRECT DIAL NUMBER:*  202-383-7176      *USER ID:*  9496

*NUMBER OF PAGES, INCLUDING COVER:*  3      *CHARGE NUMBER:*  00634.0002.000000

☐ *ORIGINAL WILL FOLLOW VIA:*

 ☐ *REGULAR MAIL*   ☐ *OVERNIGHT DELIVERY*   ☐ *HAND DELIVERY*   ☐ *OTHER:*

☒ *ORIGINAL WILL NOT FOLLOW*

*SUPPLEMENTAL MESSAGE:*

*THE INFORMATION CONTAINED IN THIS TRANSMISSION IS PRIVILEGED AND CONFIDENTIAL. IT IS INTENDED ONLY FOR THE USE OF THE INDIVIDUAL OR ENTITY NAMED ABOVE. IF THE READER OF THIS MESSAGE IS NOT THE INTENDED RECIPIENT, YOU ARE HEREBY NOTIFIED THAT ANY DISSEMINATION, DISTRIBUTION OR COPYING OF THIS COMMUNICATION IS STRICTLY PROHIBITED. IF YOU HAVE RECEIVED THIS COMMUNICATION IN ERROR, PLEASE NOTIFY US IMMEDIATELY BY TELEPHONE AND RETURN THE ORIGINAL MESSAGE TO US AT THE ABOVE ADDRESS VIA THE U.S. POSTAL SERVICE. THANK YOU.*

*IF THERE ARE ANY QUESTIONS OR PROBLEMS WITH THE TRANSMISSION OF THIS FACSIMILE, PLEASE CALL 202.383.7157.*

# EXHIBIT 32

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| BRIDGESTONE SPORTS CO., LTD.,<br>and BRIDGESTONE GOLF, INC., | |
| Plaintiffs, | C. A. No. 05-132 (JJF) |
| v. | |
| ACUSHNET COMPANY,<br>a Delaware Corporation, | |
| Defendant. | |

## BRIDGESTONE'S FIRST SET OF REQUESTS FOR PRODUCTION
## DOCUMENTS AND THINGS (REQUEST NOS. 1-100)

Pursuant to Rules 26 and 34 of the Federal Rules of Civil Procedure, plaintiffs Bridgestone Sports Co., Ltd. and Bridgestone Golf, Inc. hereby request that defendant Acushnet Company produce and permit inspection and copying, the documents and things described herein. Production should be made at the offices of plaintiffs' attorneys, Sughrue Mion, PLLC, 2100 Pennsylvania Avenue, NW, Washington. DC 20037 within thirty (30) days of these requests.

## DEFINITIONS

Notwithstanding any definition set forth below, each word, term, or phrase used in this Request is intended to have the broadest meaning permitted under the Federal Rules of Civil Procedure. As used in this Request, the following terms are to be interpreted in accordance with these definitions:

1.      The term "Bridgestone," "Plaintiff," and/or "Plaintiffs" means Bridgestone Sports Company, Ltd. and/or Bridgestone Golf, Inc., the plaintiffs in this action, and all predecessors, successors, subsidiaries, divisions, parents and/or affiliates thereof, past or present, and all past

11.    All Documents and Things concerning the dimple patterns of the Acushnet products, including by way of example, all dimple design studies and results, all detailed design specifications and dimple pattern specifications showing orientation, depth, shape, contour, and size of the dimples and dimple patterns of the Acushnet products.

12.    All Documents and Things concerning the method or process of manufacturing the Acushnet products including each component of the Acushnet products such as the core, intermediate or mantle layer or layers, and cover layer or layer(s), from raw materials to final product, and including without limitation all recipes, process flows, machine settings, raw materials, specifications for raw materials, process specifications, and quality assurance specifications for the Acushnet products and each component of the Acushnet products such as the core, intermediate or mantle layer or layers, and cover layer or layer(s).

13.    All Documents and Things concerning production reports for the Acushnet products including without limitation production reports for the Acushnet products by: (a) product (b) product components, and (c) date.

14.    All Documents and Things constituting, or referring or relating to, communications with any Third Party concerning specifications of raw materials and/or components purchased by Acushnet for use in the manufacture of Acushnet products, including without limitation certificates of analysis, and vendor analyses.

15.    All Documents and Things sufficient to show each supplier or manufacturer of any material or component purchased by Acushnet for use in the manufacture of any of the Acushnet products.

16.    All Documents and Things concerning conformance or non-conformance of Acushnet products with the USGA rules of golf, and including all testing and test results.

10

MORRIS, NICHOLS, ARSHT & TUNNELL

Jack B. Blumenfeld (#1014)
Maryellen Noreika (#3208)
Leslie A. Polizoti (#4299)
1201 N. Market Street
P.O. Box 1347
Wilmington, DE 19801
(302) 658-9200
  *Attorneys for Bridgestone Sports Co., Ltd.*
  *and Bridgestone Golf, Inc.*

OF COUNSEL:

Robert M. Masters
John T. Callahan
Raja Saliba
SUGHRUE MION, PLLC
2100 Pennsylvania Avenue, N.W.
Washington, D.C. 20037
(202) 293-7060

June 7, 2005

## CERTIFICATE OF SERVICE

I, Jack B. Blumenfeld, hereby certify that copies of the foregoing were caused to be served this 7th day of June, 2005 upon the following in the manner indicated:

### BY HAND

Richard L. Horwitz
Potter Anderson & Corroon LLP
1313 N. Market Street
Wilmington, DE 19801

### BY FEDERAL EXPRESS

Alan M. Grimaldi
Howrey LLP
1299 Pennsylvania Avenue, N.W.
Washington, DC 20004

Jack B. Blumenfeld

EXHIBIT 33

REDACTED

# EXHIBIT 34

REDACTED

# EXHIBIT 35

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

BRIDGESTONE SPORTS CO., LTD.,    )
and BRIDGESTONE GOLF, INC.,    )
    )
    Plaintiffs,    )
    )
    v.    )
    )
ACUSHNET COMPANY,    )    C. A. No. 05-132 (JJF)
    )
    Defendant.    )
    )    **DEMAND FOR JURY TRIAL**
ACUSHNET COMPANY,    )
    )
    Counterclaim Plaintiff,    )
    )
    v.    )
    )
BRIDGESTONE SPORTS CO., LTD.,    )
and BRIDGESTONE GOLF, INC.,    )
    )
    Counterclaim Defendant.    )

## ACUSHNET'S OBJECTIONS AND RESPONSES TO BRIDGESTONE'S FIRST SET OF REQUESTS FOR THE PRODUCTION OF DOCUMENTS AND THINGS DIRECTED TO ACUSHNET (NOS. 1-100)

Pursuant to Rule 34 of the Federal Rules of Civil Procedure, defendant and counterclaim plaintiff Acushnet Company ("Defendant" or "Acushnet") hereby responds to the *First Set of Requests for Production Documents and Things (Requests Nos. 1-100)* ("First Set of Requests") of plaintiffs and counterclaim defendants Bridgestone Sports Co., Ltd. ("Bridgestone Sports") and Bridgestone Golf, Inc. ("Bridgestone Golf") (collectively, "Plaintiffs" or "Bridgestone").

## GENERAL STATEMENT

In responding to Bridgestone's First Set of Requests, Acushnet does not waive any objection that may be applicable to: (a) the use, for any purpose, of any information or documents given in response to Bridgestone's First Set of Requests; or (b) the admissibility, relevancy, or materiality of any information or documents to any issue in this case.

10. Acushnet objects to Bridgestone's First Set of Requests as overly broad and unduly burdensome to the extent it seeks detailed financial pricing, costs and sales documentation information relating to unspecified products as this information is of marginal, if any, relevance to the issue of damages in this litigation. Disclosure of such information is premature given the vast amount of information sought, the lack of specificity concerning the products at issue and the sensitive nature of the information sought.

11. Acushnet objects to Bridgestone's First Set of Requests as overly broad and unduly burdensome to the extent that it seeks information concerning the construction, fabrication, manufacture and production testing of Acushnet's products, which constitute highly proprietary information that is neither relevant to the subject matter of this litigation nor likely to lead to the discovery of admissible evidence.

12. Acushnet objects to Bridgestone's First Set of Requests to the extent the request are vague, ambiguous, and unintelligible or to the extent they require a legal conclusion to determine whether there exist responsive, non-privileged documents.

13. Acushnet objects to Bridgestone's First Set of Requests as overly broad and unduly burdensome to the extent it seeks the production of documents relating to any products currently being designed, under development or yet to be commercialized by Acushnet, as such documents contain highly proprietary, sensitive and confidential business information and are neither relevant to the subject matter of this litigation nor likely to lead to the discovery of admissible evidence.

14. Acushnet objects to producing documents responsive to Bridgestone's First Set of Requests with regard to such documents that first existed only after the March 7, 2005 filing date of the Complaint in the instant litigation, with the exception of documents specially pertaining to damages issues (e.g., sales information). The production of documents after the filing date, particularly with regard to identifying documents entitled to attorney work product and/or attorney client communication privilege, would be unduly burdensome.

4

OF COUNSEL:

Alan M. Grimaldi
Joseph P. Lavelle
Matthew J. Moore
Vivian S. Kuo
HOWREY LLP
1299 Pennsylvania Avenue, N.W.
Washington, DC 20004
Telephone (202) 783-0800

Dated: July 7, 2005

689611

POTTER ANDERSON & CORROON LLP

By: _____

Richard L. Horwitz (#2246)
David E. Moore (#3983)
Hercules Plaza, 6th Floor
1313 North Market Street
P. O. Box 951
Wilmington, DE 19899-0951
(302) 984-6000
rhorwitz@potteranderson.com
dmoore@potteranderson.com

*Attorneys for Defendant Acushnet Company*

## CERTIFICATE OF SERVICE

I, David E. Moore, hereby certify that on July 7, 2005, a true and correct copy of

the within document was caused to be served on the attorney of record at the following addresses

as indicated:

### VIA HAND DELIVERY

Jack B. Blumenfeld
Maryellen Noreika
Leslie A. Polizoti
Morris, Nichols, Arsht & Tunnell
1201 N. Market Street
Wilmington, DE 19801

### VIA FEDERAL EXPRESS

Robert M. Masters
John T. Callahan
Raja Saliba
Sughrue Mion, PLLC
2100 Pennsylvania Avenue, NW
Washington, DC 20037

David E. Moore

680013

EXHIBIT 36

REDACTED

# EXHIBIT 37

REDACTED

# EXHIBIT 38

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF DELAWARE**

BRIDGESTONE SPORTS CO., LTD.,
and BRIDGESTONE GOLF, INC.,

            Plaintiffs,

      v.

ACUSHNET COMPANY,

            Defendant.

C. A. No. 05-132 (JJF)

**BRIDGESTONE'S THIRD SET OF INTERROGATORIES
(INTERROGATORY NOS. 40-42)**

Pursuant to Fed. R. Civ. P. 33, Plaintiff Bridgestone Sports Co. Ltd., by their undersigned attorneys, propound these Interrogatories, to which Defendant Acushnet Company shall respond separately and fully, in writing and under oath, within the time prescribed by the Federal Rules of Civil Procedure, in accordance with the Definitions and Instructions set forth hereinafter.

## DEFINITIONS

Bridgestone incorporates by reference the DEFINITIONS set forth in BRIDGESTONE'S FIRST SET OF INTERROGATORIES (INTERROGATORY NOS. 1-24) as though fully set forth herein.

## INSTRUCTIONS

Bridgestone incorporates by reference the INSTRUCTIONS set forth in BRIDGESTONE'S FIRST SET OF INTERROGATORIES (INTERROGATORY NOS. 1-24) as though fully set forth herein.

## INTERROGATORIES

40.    Identify each golf ball made, used, sold or offered for sale by Acushnet that contains or is manufactured using a compound that contains sulfur in any amount, including but not limited to the following sulfur-containing compounds:  pentachlorothiophenol, 4-t-butyl-o-thiocresol,  4-t-butyl-p-thiocresol, 2-benzamidothiophenol, thiobenzoic acid and zinc salts of pentachlorothiophenol, 4-t-butyl-o-thiocresol,  4-t-butyl-p-thiocresol, 2-benzamidothiophenol, thiobenzoic acid, and identify all Documents (by production number) that shows the composition containing such sulfur or sulfur-containing compounds for each such golf ball.

41.    Describe in detail for each golf ball identified in your response to Interrogatory No. 40 of Bridgestone's Third Set of Interrogatories, the first public use, the first offer for sale, and the first sale which you are aware in the United States and in any foreign country for each such golf ball.

42.    For each Document produced by Acushnet in response to any request in Bridgestone's First Set of Requests For Production Of Documents and Things (served on June 7, 2005) and Second Set of Requests For Production Of Documents and Things (served on July 29, 2005), identify the source of the files for each such Document by identifying the name of the person from whose files such Document was located and the physical location from which such Document was located.

2

MORRIS, NICHOLS, ARSHT & TUNNELL

_(signature)_

Jack B. Blumenfeld (#1014)
Maryellen Noreika (#3208)
Leslie A. Polizoti (#4299)
1201 N. Market Street
P.O. Box 1347
Wilmington, DE  19801
(302) 658-9200
  *Attorneys for Bridgestone Sports Co., Ltd.*
  *and Bridgestone Golf, Inc.*

OF COUNSEL:

Robert M. Masters
John T. Callahan
Raja Saliba
SUGHRUE MION, PLLC
2100 Pennsylvania Avenue, N.W.
Washington, DC  20037
(202) 293-7060

December 9, 2005

## CERTIFICATE OF SERVICE

I, Jack B. Blumenfeld, hereby certify copies of the foregoing were caused to be served this 9th day of December, 2005 upon the following in the manner indicated:

### BY HAND

David E. Moore
Potter Anderson & Corroon LLP
1313 N. Market Street
Wilmington, DE  19801

### BY FAX

Alan M. Grimaldi
Howrey LLP
1299 Pennsylvania Avenue, NW
Washington, DC  20004

_____
Jack B. Blumenfeld

# EXHIBIT 39

REDACTED

EXHIBIT 40

1

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

PRISM TECHNOLOGIES, LLC.,    )
                             )
             Plaintiff,      )
                             )  C.A.  No. 05-214
v.                           )
                             )
VERISIGN,                    )
                             )
             Defendant.      )


                Friday, March 2, 2007
                11:10 a.m.
                Courtroom 4B


                844 King Street
                Wilmington, Delaware

BEFORE:   THE HONORABLE JOSEPH J. FARNAN, JR.
          United States District Court Judge




APPEARANCES:


          THE BAYARD FIRM
          RICHARD KIRK, ESQ.

             -and-

          ROBINS, KAPLAN, MILLER & CRESI
          BY:  AZIZ BURGY, ESQ.
          BY:  A.J. BAHOU, ESQ.

                     Counsel for Plaintiff

2

1   APPEARANCES CONTINUED:

2

3        CONNOLLY, BOVE, LODGE & HUTZ
         BY:  PATRICIA S. ROGOWSKI, ESQ.
4
                    -and-
5
         AKIN GUMP
6        BY:  JASON SNYDERMAN, ESQ.
         BY:  FRANK CIMINO, ESQ.
7
                    Counsel for Defendant
8

9

10       RICHARDS, LAYTON & FINGER
         BY:  FREDERICK L. COTTRELL, III, ESQ.
11
                    Counsel for RSA
12

13

14

15

16

17

18

19

20

21

22

23

24

1        THE COURT:  Okay.  We'll hear from

2   Prism versus Verisign 05-214, all about source

3   codes.

4        MR. KIRK:  Good morning, Your Honor.

5   Richard Kirk from The Bayard Firm for the

6   plaintiff, Prism Technologies, LLC.  My

7   colleagues from Robins, Kaplan, Miller & Cresi in

8   Washington are A.J. Bahou and Aziz Burgy.

9        Mr. Bahou will address any questions

10  or make the argument.

11       THE COURT:  All right.  Thank you.

12       Ms. Rogowski.

13       MS. ROGOWSKI:  Good morning, Your

14  Honor.  Pat Rogowski from Connolly Bove in

15  Wilmington.

16       With me today is Jason Snyderman and

17  Frank Cimino from Akin Gump.  Jason will be

18  speaking with Your Honor.

19       THE COURT:  Good morning.  All

20  right.

21       Thank you.  Good morning.

22       All right.  Let me ask you, in going

23  through the papers, and I wasn't very artful in

24  selecting it, but I got it out.  I almost lost

4

```
 1    the part I wanted to ask you about, but I think
 2    I'm okay here.
 3              This is an October 23rd, 2006
 4    letter.  And I'm not going to get into the whole
 5    dispute of whether the request was covered.  I'm
 6    going to assume that it was by the early
 7    production request.
 8              And so we have this letter, and it
 9    says that -- I'm trying to get to it.  We are
10    considering your request, but are unable to
11    locate any of your correspondence, the specific
12    reasons why Prism needs the source code other
13    than your unspecific assertion that it's relevant
14    to your infringement allegations.
15              And it goes on to say, As we
16    repeatedly point out, Prism already has all the
17    software and hardware we sell to our customers,
18    including executable files and tens of thousands
19    of pages of technical documents that explain the
20    operation of our products.
21              We do not see what Prism stands to
22    gain or learn from the source code that it
23    doesn't already have.  What is it about the
24    source code that fills some hole of proof that
```

1  you have in the case?

2           MR. BAHOU:  Yes, Your Honor.  The

3  source code fills the holes of proof in the case

4  because Verisign cites or does not cite any

5  documents in the production for its

6  noninfringement contentions.  Your Honor, we need

7  the source code to rebut their noninfringement

8  contentions, because as Verisign --

9           THE COURT:  Well, what if, like you

10  said, and not you personally, but in some letters

11  that, if they don't get to use it, that was kind

12  of one of the places you were.

13           If you're not going to give it to

14  us, then we're going to ask the judge to make

15  sure you can't use it.  And why isn't that a good

16  solution, given the lateness of the case's

17  posture?

18           MR. BAHOU:  Your Honor, that is not

19  a good solution, because just Wednesday of this

20  week Verisign wrote an email.  And I can pass

21  this up if the Court would like.

22           THE COURT:  Sure.

23           MR. BAHOU:  Your Honor, it -- I'll

24  give you a moment to read it.

1           THE COURT:  Okay.

2           MR. BAHOU:  Directing your attention

3  to the last sentence of the first paragraph,

4  Verisign is not in a position to make a final

5  determination as to whether it will need to use

6  the source code as rebuttal evidence until it

7  sees Prism's expert report.

8           THE COURT:  Well, let's assume you

9  walked away today losing your motion, and I tell

10  them they can't use it even for rebuttal, because

11  they won't give it up.  And they're not going to

12  be able to play that game of dropping it on you

13  in rebuttal.

14           And they say that in the earlier

15  part of the letter without providing that source

16  code, Prism's reply states this is not true.

17  They do not intend to rely on the code.

18           Then they talk about the rebuttal.

19  I'm going to stop them from doing that, if they

20  are not going to give you the code.

21           Doesn't that solve the problem?

22           MR. BAHOU:  No, Your Honor, this

23  does not.  Verisign did not provide a copy of the

24  software.  Although Verisign, from day one,

1    September 20, 2005, could have pulled the

2    software, the publicly available software off the

3    shelf and given that and produced it to Prism, it

4    did not do so.  It waited until the last week of

5    discovery, which closed on August 11, 2006.

6             They produced this disk on August

7    the 4th of 2006, and said here's the software

8    which we've been holding now for almost a year.

9    But they did not produce it in an operable

10   format.  They gave us this disk without giving us

11   installation codes.

12            We cannot use the software.  That is

13   why it would be unfair to allow Verisign to have

14   access to the software and access to the source

15   code without producing it.

16            This software that they have

17   produced in response to our document request,

18   number one, is useless unless they provide the

19   source code -- the installation codes to allow us

20   to install it, and test it, and evaluate it.

21   That is another reason that we cannot rely on or

22   cannot now accept the offer to not use the source

23   code they've given us.

24            Nothing that we can use as far as

1    software and source code, even though we

2    requested it, Your Honor, on September 29th,

3    2005.

4              Verisign also does not cite to any

5    documents.  It counts producing $1.6 million of

6    documents, Your Honor, but it does not cite to

7    any document in the noninfringement contentions.

8              Where are they getting the

9    noninfringement contentions, Your Honor?  If they

10   are relying on the source code, we're entitled to

11   it.  The claims of the patent say, for example,

12   that the elements or the functions of the accused

13   software need to forward identity data.

14              Just for an example, we need the

15   source code to be able to evaluate that.  If we

16   can't install the software and test it, then we

17   need the source code which was contemplated and

18   requested in the very first document request by

19   Prism in September 2005.

20              The source code is relevant.  It is

21   the accused product, Your Honor.

22              And as proof of its relevance, the

23   email that I just submitted, Verisign might

24   eventually rely on it.

1          Second, Verisign led Prism to

2   believe that it would produce the source code.

3   In the letter when we challenged them on their

4   first production, April the 24th, 2006, Your

5   Honor, we wrote them and said, Your production is

6   deficient.

7          And they responded May the 11th,

8   2006, Prism Exhibit Number 3, Your Honor, to

9   document request one through five and I quote,

10  "As provided, Verisign intends to supplement its

11  production to include any information on the

12  accused products that has not been previously

13  produced."

14          Prism reasonably relied on that

15  statement to understand that Verisign would

16  produce the source code.  It did not do that.

17          THE COURT:  How did you get all the

18  way through discovery without it?

19          MR. BAHOU:  Through the written

20  discovery?

21          THE COURT:  I mean, as critical as

22  you say it is in your papers now, and you started

23  saying it was critical in September 2006, became

24  real serious to you apparently, even though you

1    had this little bit of a flop about, well, if

2    you're not going to use it, maybe we can work

3    this out, how did you get through discovery

4    without it?  I mean, why weren't you here back

5    then yelling and screaming?

6            MR. BAHOU:  That's exactly the

7    point, Your Honor.  They led us to believe that

8    they were going to produce it.  That letter said,

9    Oh, they're going to produce it.  And we were

10   under the impression they were.

11           It wasn't until August the 11th that

12   we realized, Hey, why didn't you guys produce it?

13   And they said -- they waited.  We wrote the

14   letter in August, August 31st, 2006.

15           They responded in September, almost

16   a full month later, saying, Hey, we've decided

17   we're not going to produce it.  That is the first

18   time.

19           Your Honor, if we had known that, if

20   we had known that on April the 24th when I had

21   written the first letter to Verisign, I would

22   have moved to compel at that time.  They led us

23   to believe --

24           THE COURT:  Then the next time

1    you're up against them, you won't trust them as

2    much.

3                MR. BAHOU:  Unfortunately, Your

4    Honor, we believed that to be the case.

5                THE COURT:  It's that thing called

6    experience.

7                Thank you very much.  I have to hear

8    from them.

9                MR. BAHOU:  May I reserve any time

10   for rebuttal, Your Honor?

11               THE COURT:  If there's any time

12   left, but this is a fast moving process.  There's

13   a lot of other folks that want to get airplanes

14   or something.

15               MR. BAHOU:  Thank you.

16               THE COURT:  Or at least cars home.

17               So, listen, if you don't want to

18   give it to them, it isn't in this case for any

19   purposes on your side of the case.  In other

20   words, if I agree with you that they're too much,

21   too late, --

22               MR. SNYDERMAN:  Right.

23               THE COURT:  -- you know, no matter

24   how egregious the prejudice might be to you,

1    you're not going to get to use this source code

2    for anything, even a hint of it in the trial.

3            MR. SNYDERMAN:  And we understand

4    that, Your Honor.  That's why precisely we sent

5    the very email that he just put before you.  We

6    specifically said in your briefing now that we've

7    seen, your brief and your reply brief, you're

8    complaining that we won't have an opportunity to

9    respond should Verisign use source code to its

10   advantage.

11           So we said, Okay.  We don't know

12   that we plan to use source code at all.  But to

13   the extent we do, we'll make it available to you,

14   so that you can respond to it.  Precisely the

15   issue that you're talking about.

16           So we were somewhat surprised that

17   they didn't accept that offer since it seemed to

18   obviate --

19           THE COURT:  Well, here's the thing:

20   What I just heard you say and make sure that I

21   didn't misunderstand you, if we used it in

22   rebuttal, we would give it to them so they could

23   use it.

24           Is that what you are saying?

1          MR. SNYDERMAN:  If we need to rebut

2    something in an expert report on infringement and

3    in that rebuttal we rely on source codes, we'll

4    make available the source codes that we're

5    relying upon --

6          THE COURT:  See, I'm not a good

7    communicator or I'm inartful.  You're never going

8    to get to use that source code unless you give it

9    to them now, ever, in rebuttal.

10          I don't know.  I don't know what

11    else to give you.

12          Whatever there could be, it's like

13    it doesn't exist.  It's over.

14          You either give it to them now in

15    response to their motion or you never ever get --

16    am I being clear -- ever get to use it --

17          MR. SNYDERMAN:  Yes.  I understand.

18          THE COURT:  -- ever for anything.

19    And any prejudice you've incurred by your actions

20    in response to the motion, any prejudice to you

21    is incurred by your own decision making and

22    strategizing in the case.

23          Because I don't want to get blamed

24    on appeal.

1          MR. SNYDERMAN:  Right.

2          THE COURT:  So...

3          MR. SNYDERMAN:  The problem is --

4          THE COURT:  I'm blaming you right

5     now.  So then give it over to them if you think

6     there's a spot chance that you might use it,

7     because at some point, it sounds like there may

8     be a chance, and you're going to give it to them

9     any way.

10         You know, we don't have time for

11    that.  So if you walk out of here today

12    prevailing on this motion, it's like that source

13    code doesn't exist.  And if you try even a hint

14    of it, it will be banned.

15         MR. SNYDERMAN:  Understood.

16         THE COURT:  So where do you want to

17    be?  You want to give them the code or you want

18    to be banned?

19         MR. SNYDERMAN:  Of course, the

20    problem is I can't know now.  So in light of that

21    fact, I'd ask the Court to give us some time to

22    consider what you just said.

23         THE COURT:  No.  No.  No. I'm not as

24    trusting as he is.  I can't do that.

15

```
 1              You know what I'm going to do, I'm
 2    going to grant the motion, because I think
 3    somewhere in the recesses of your trial
 4    strategy -- and it's okay, I like that -- but
 5    I've got to help you.
 6              I can't trust them.  So I'm going to
 7    grant the motion.
 8              MR. SNYDERMAN:  Very well, Your
 9    Honor.
10              THE COURT:  Okay.  Thank you.
11              You won.
12              MR. BAHOU:  I've got --
13              THE COURT:  What else could you say?
14              MR. BAHOU:  -- one request, Your
15    Honor, that we put a date certain in the Court
16    order.  In fact, we were in front of the Court
17    last month for another defendant in this case,
18    and the Court granted our motion to compel.
19              The defendant has not yet complied
20    with that.  So we ask for a date certain included
21    in the order.  That's all, Your Honor.
22              THE COURT:  All right.  When are you
23    going to get it to them?
24              MR. SNYDERMAN:  I have no idea on
```

1   that point.

2          THE COURT:  So we'll give you ten

3   days.  You can file an extension.

4          So today's the --

5          MR. SNYDERMAN:  But on that point --

6          THE COURT:  -- 2nd.

7          MR. SNYDERMAN:  2nd.

8          THE COURT:  So two and seven is

9   nine, ten, 11, 12.  March 14th.

10         MR. SNYDERMAN:  Your Honor, the

11   manner in which I understand very clearly what

12   you're telling us to do, and I certainly accept

13   that, but the manner in which the source code

14   would be made available is an issue as well.

15         Back originally in September, they

16   said -- they offered to a stipulation that no one

17   gets to use it.  Then they said inspection would

18   be sufficient.

19         Now they say to give --

20         THE COURT:  No.  In their papers,

21   they say inspection would not be sufficient.

22         MR. SNYDERMAN:  In their letters

23   originally they say it would be.  Now they say

24   no.  I'm asking if inspection would be

1    something --

2              THE COURT:  No, inspection is not

3    sufficient.  I can't trust you.

4              I mean, you all know how to do this.

5    I have a myriad of ways that I've allowed source

6    code to be transferred, and I'm not good at it,

7    because everything I decide is arbitrary about

8    that.

9              So I'm going to give you until March

10   14th -- inspection is not satisfactory -- and

11   work it out.  If you really can't work it out and

12   you come to a discrete issue, I'll help you,

13   choosing from your options to the best I can.

14             But I'm just not good at that.

15             MR. SNYDERMAN:  Very well.

16             THE COURT:  So work it out.

17             MR. BAHOU:  Your Honor, I'll give

18   you a suggestion for the order to include -- we

19   want the words human readable electronic format,

20   as our expert stated he cannot evaluate this

21   source code in paper format at a late date.

22   We're requesting it in human readable electronic

23   format.

24             THE COURT:  Well, why don't you talk

1    with your friends here and see what you can work

2    out.

3                  MR. BAHOU:  Can I trust him, Your

4    Honor?

5                  THE COURT:  No.  I mean, when you're

6    talking to him on the street, no.  You can't

7    trust him at all.

8                  But he doesn't trust you already,

9    either, so it's going to be a nice conversation.

10   You're on equal footing.

11                 MR. SNYDERMAN:  I think --

12                 THE COURT:  I think in all joking,

13   you can trust each other.  But work it out

14   between yourselves.

15                 And if you have a discreet problem,

16   I'll resolve it.  You can write me a follow-up

17   letter.  I'm not good at it.  But if you want me

18   to, I'll resolve it for you.

19                 MR. SNYDERMAN:  Very well.

20                 THE COURT:  I'd rather have you talk

21   it over.  I'm essentially agreeing with you.  So

22   if that helps the conversation along, that's

23   good.

24                 MR. BAHOU:  Thank you, Your Honor.

1          MS. ROGOWSKI:  Thank you.

2          THE COURT:  Thank you.

3          (Hearing before Judge Farnan was

4     concluded at 10:29 a.m.)

1   State of Delaware     )
                          )
2   New Castle County     )

3

4

5                CERTIFICATE OF REPORTER

6

7         I, Heather M. Triozzi, Registered

8   Professional Reporter, Certified Shorthand

9   Reporter, and Notary Public, do hereby certify

10  that the foregoing record, Pages 1 to 20

11  inclusive, is a true and accurate transcript of

12  my stenographic notes taken on March 2, 2007, in

13  the above-captioned matter.

14

15        IN WITNESS WHEREOF, I have hereunto

16  set my hand and seal this 5th day of March, 2007,

17  at Wilmington.

18

19

20

21                Heather M. Triozzi , RPR, CSR

22

23

24

# EXHIBIT 41

*Ansell Healthcare Prods, LLC   v.*
*Tillotson Corp.*

---

*Hearing*
*February 2, 2007*

---

*Hawkins Reporting Service*
*715 N King Street*
*Suite 3*
*Wilmington, DE  19801*
*(302) 658-6697*

*Original File 020207~1.TXT, 24 Pages*
*Min-U-Script® File ID: 2487630286*

**Word Index included with this Min-U-Script®**

1
IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE
ANSELL HEALTHCARE PRODS, )
LLC,                      )
         Plaintiff,       )
                          ) C.A. No. 06-527
v.                        )
TILLOTSON CORP.,          )
         Defendant.       )
         Friday, February 2, 2007
         Courtroom 4B
         844 King Street
         Wilmington, Delaware
BEFORE: THE HONORABLE JOSEPH J. FARNAN, JR.
         United States District Court Judge
APPEARANCES:
     MORRIS, NICHOLS, ARSHT & TUNNELL
     BY: JACK BLUMENFELD, ESQ.
         -and-
     MORGAN LEWIS
     BY: THOMAS B. KENWORTHY, ESQ.
         Counsel for the Plaintiff

Page 2

APPEARANCES CONTINUED:
     POTTER, ANDERSON & CORROON
     BY: RICHARD HORWITZ, ESQ.
         -and-
     KING & SPALDING
     BY: STEPHEN M. SCHAETZEL, ESQ.
     BY: JASON M. PASS, ESQ.
         Counsel for the Defendant

Page 3

[1] **THE COURT:** The next folks are [2] Ansell.

[3] **MR. BLUMENFELD:** Your Honor, we [4] thank you for putting these in this [5] order so [5] Mr. Horwitz and I could stay up here in this [6] order.

[7] **THE COURT:** That's why I studied it [8] overnight. This is the purpose.

[9] Isn't that coincidental?

[10] **MR. BLUMENFELD:** Your Honor, I'm [11] here with Tom Kenworthy from Morgan Lewis for [12] Ansell.

[13] **MR. KENWORTHY:** Good morning.

[14] **THE COURT:** Good morning, [15] Mr. Horwitz.

[16] **MR. HORWITZ:** Your Honor, for [17] Tillotson today, Rich Horwitz from Potter, [18] Anderson. And with me today from King & Spalding [19] in Atlanta is Steve Schaetzel and Jason Pass.

[20] **THE COURT:** Good morning. Welcome.

[21] **MR. SCHAETZEL:** Thank you.

[22] **THE COURT:** All right. I've taken a [23] look at your papers, and I think I have a [24] decision for you. But I have a few questions I

Page 4

[1] just want to clear up in my mind.

[2] And I'll ask first of the defendant, [3] Tillotson. The Georgia litigation, there's a —[4] you know, you wrote about it, and I am correct to [5] understand that you have a judge, a second judge [6] assigned, and the judge has all the cases that [7] were initiated in Georgia assigned to that Court?

[8] **MR. SCHAETZEL:** That's correct, Your [9] Honor.

[10] **THE COURT:** And the concern that you [11] have or your client has is claim construction, [12] that we would have different claim construction [13] in the two cases. One of the concerns.

[14] **MR. SCHAETZEL:** That would be a [15] concern. Yes, Your Honor.

[16] **THE COURT:** Yes. And what is the [17] status of the claim construction in that case?

[18] **MR. SCHAETZEL:** Off the top of my [19] head, subject to a chance to look at the file.

[20] **THE COURT:** Yeah. I am not going to [21] hold you.

[22] **MR. SCHAETZEL:** I do not believe, [23] other than exchanging initial claim constructions [24] and discovery moving forward, that's where the

Page 5

[1] case stands.

[2] **THE COURT:** Is that correct?

[3] **MR. PASS:** Yes, claim construction, [4] Your Honor, is to get underway in the next couple [5] of months in the Georgia action.

[6] **THE COURT:** And in this case do you [7] have a trial date?

[8] **MR. PASS:** Yes, I believe it's [9] sometime in February of next year, Your Honor.

[10] **THE COURT:** That would be February [11] of 2008?

[12] **MR. SCHAETZEL:** Eight.

[13] **THE COURT:** That's right?

[14] **MR. PASS:** That's my recollection, [15] Your Honor.

[16] **THE COURT:** Okay. Again, there's no [17] perjury involved here —

[18] **MR. SCHAETZEL:** Thank you.

[19] **THE COURT:** — and no [20] misrepresentations or candor to the Court [21] problems. I'm just trying to get a [22] familiarization.

[23] I think I got it from the papers, [24] but it was — it's a little easier just to ask

Page 6

[1] you these questions.

[2] **MR. SCHAETZEL:** Sure.

[3] **THE COURT:** Is there a magistrate [4] judge assigned to that case?

[5] **MR. SCHAETZEL:** No, we don't have [6] assigned magistrate judges in the Northern [7] District of Georgia. The Court has the option of [8] doing so as matters come up, but often times the [9] Article III judge will make the decisions on [10] matters that, in other circuits, would be, if you [11] will, farmed out to a magistrate.

[12] **THE COURT:** Now, Ansell's customers, [13] one of which I guess is out of the case [14] already — is the other still in the case?

[15] **MR. SCHAETZEL:** I think we're —

[16] **MR. KENWORTHY:** Yes, Darby is still [17] in the case, Your Honor. The case against Ansell [18] in Georgia has been stayed in its entirety.

[19] **THE COURT:** Okay.

[20] **MR. KENWORTHY:** If I could address [21] the claim construction, too.

[22] **THE COURT:** Yes.

[23] **MR. KENWORTHY:** I think it's useful. [24] There is one case where there's been briefing in

Page 7

[1] Georgia, not involving Ansell, in which claim [2] construction has been briefed, but Tillotson has [3] taken the position that every claim is just given [4] its ordinary meaning. They've given their [5] interrogatory answers in this case about claim [6] construction, and they say it should be their [7] ordinary meaning, and we've agreed.

[8] So there really isn't a big debate [9] about where claim construction has gone, because [10] their position and our position is the same. And [11] there isn't and doesn't need to be a need for [12] claims to be construed.

[13] **THE COURT:** Okay. And one last [14] question: In the Georgia actions, the testing [15] that Ansell's seeking from you in this case, did [16] you claim privilege to that in response to any [17] discovery request in Georgia?

[18] **MR. SCHAETZEL:** My recollection is [19] that we did, but Jason will know better.

[20] **MR. PASS:** I don't recall that that [21] was asked in an interrogatory, Your Honor, but it [22] was, I recall, asked in a document request [23] answer. And we did object on the basis of work [24] product is my recollection.

Page 8

[1] **THE COURT:** All right. Now, can you [2] produce for me the assertion of the work-product [3] doctrine against that request from the Georgia [4] litigation?

[5] **MR. PASS:** I think I could, sir.

[6] **THE COURT:** Because they say you [7] waived it here.

[8] **MR. PASS:** When we served our [9] responses to Ansell's Request for Production of [10] Documents, they had a document request, also, [11] Your Honor, asking for our testing or the results [12] in that document request that we served — the [13] same day, we served responses to their [14] interrogatories.

[15] We objected based on work product.

Case 1:05-cv-00132-JJF    Document 330-4    Filed 04/10/2007    Page 74 of 84

Hearing                                              Ansell Healthcare Prods, LLC    v.
February 2, 2007                                                      Tillotson Corp.

[16] That's in the Delaware action.

[17] THE COURT: Right. And so what I'm [18] looking for is consistency in, you know, if you [19] did it in Georgia, that goes a long way to [20] demonstrate that the assertion is valid and [21] there's no waiver.

[22] So it would be helpful if you could [23] provide that. I didn't see that in the papers.

[24] Of course, why would you argue by

---

Page 9

[1] analogy any way. It didn't make sense maybe to [2] you, but I would like to see that document.

[3] MR. SCHAETZEL: We will be glad to [4] go back and look at that record. And assuming [5] our recollection is right, and it's there, we'll [6] let you know either way.

[7] THE COURT: Okay. Thank you.

[8] MR. SCHAETZEL: Yes, sir.

[9] THE COURT: Mr. Kenworthy.

[10] MR. KENWORTHY: Yes, Your Honor. I [11] don't know what all Your Honor —

[12] THE COURT: I have a question of [13] you.

[14] MR. KENWORTHY: Well, I'm ready to [15] go.

[16] THE COURT: Okay. So you're stayed [17] in Georgia?

[18] MR. KENWORTHY: Yes.

[19] THE COURT: On what grounds for the [20] record?

[21] MR. KENWORTHY: We had filed a [22] motion for summary judgment and the judge [23] suaspontaed already. He had already severed all [24] of the indemnity claims, and then he suaspontaed

---

Page 10

[1] last week, issued an order staying all of those [2] claims, so that there is no claims against Ansell [3] pending.

[4] And there was never any discovery [5] between Ansell and Tillotson in Georgia.

[6] MR. HORWITZ: Your Honor, just to [7] clarify, I think all of that relates to the [8] indemnity claims between the customer and Ansell. [9] It does not relate to the infringement claims [10] against the customer, which is the basis of the [11] kind of mirror image.

[12] THE COURT: Well, you said in your [13] papers you don't have mirror claims against [14] Ansell in Georgia.

[15] MR. HORWITZ: It's against the [16] customer.

[17] THE COURT: That's why they said [18] they should get out from under the first rule as [19] I recall from the papers.

[20] MR. KENWORTHY: You shouldn't be [21] suing customers, and that's all it is. It's

---

a [22] customer's sued right, Your Honor.

[23] THE COURT: Do I have the [24] understanding correct?

---

Page 11

[1] MR. HORWITZ: Yes. Yes.

[2] THE COURT: So you have no [3] independent claims against them in Georgia; you [4] didn't bring any?

[5] And it's those indemnity claims that [6] the judge down in Georgia stayed?

[7] MR. HORWITZ: That's right. The [8] claims that are pending in Georgia are against [9] their customers and others relating to the same [10] kind of glove. So it's kind of — it's a [11] comprehensive glove litigation that's going on.

[12] THE COURT: But they got nervous [13] because they saw you sue their customer, so they [14] came here for declaratory judgment?

[15] MR. HORWITZ: Rather than just [16] stepping in and defending their customer in [17] Georgia. Absolutely.

[18] MR. KENWORTHY: That's correct.

[19] THE COURT: I don't know what your [20] reason was, but that's what you did.

[21] MR. KENWORTHY: We always enjoy [22] coming here, but one of the reasons for sure is [23] that that litigation generally down there, [24] including these cases that still is a year away,

---

Page 12

[1] have taken years and years to get anywhere. So [2] we wanted —

[3] THE COURT: We could do that here.

[4] MR. KENWORTHY: I understand. We [5] don't want that issue to be hanging over —

[6] THE COURT: I was trying to be [7] helpful.

[8] MR. KENWORTHY: — our head, and [9] therefore, we came here, and we right away served [10] discovery.

[11] THE COURT: Okay. Your explanation [12] has been helpful. What is going to happen, I am [13] going to deny the motion to transfer, and I'll [14] put that in place immediately.

[15] I'm going to deny the motion to [16] compel with leave to renew it if a satisfactory [17] document isn't produced that they took a [18] consistent position in the Georgia litigation [19] with regard to that testing, meaning that they [20] asserted work product in a demonstrative way.

[21] MR. KENWORTHY: Your Honor, could I [22] just address one other piece, and that really [23] goes to the fact that the answer they've given —

[24] THE COURT: I know.

---

Page 13

[1] MR. KENWORTHY: — is, in our view, [2] how you can hide behind work product when you've [3] actually affirmatively said, Here's our answer.

[4] For instance, if I were to give an [5] example that we have a container that has a [6] trapezoidal side panel, and in the top — and the [7] top is twice — the bottom is twice as large or [8] the top is greater than 50 percent smaller than [9] the bottom. And it's just a measurement.

[10] And we ask them the facts upon which [11] they base our package, and they said, Your top is [12] over 50 percent less than your bottom. That was [13] their answer. Now, to give that answer, they [14] have to make those measurements.

[15] You have to measure to ever give the [16] answer that it's twice, or excuse me, that it's [17] over 50 percent less. You had to have made the [18] measurement.

[19] And they've given that answer.

[20] THE COURT: Well, the better point [21] is you have to have some evidence of that [22] assertion, —

[23] MR. KENWORTHY: Exactly.

[24] THE COURT: — whether it's a

---

Page 14

[1] witness, a test, an expert witness; right?

[2] MR. KENWORTHY: You have to have a [3] basis to make the allegation. And two, when you [4] answer a interrogatory with conclusory — you've [5] already disclosed the result of your test. You [6] just haven't given what it is, so we can test it.

[7] THE COURT: Here's the good news for [8] you, because your concern is that they're going [9] to take this evidence and drop it on you later

[10] on —

[11] MR. KENWORTHY: No.

[12] THE COURT: — by a witness or some [13] other form.

[14] MR. KENWORTHY: Our real concern, [15] Your Honor, is we really don't see how we should [16] even be here. And if they actually gave us the [17] facts, we don't think they could be here.

[18] THE COURT: Well —

[19] MR. KENWORTHY: That's our problem.

[20] THE COURT: That's that whole [21] summary judgment. I can't get confused with that [22] now with the context of a discovery dispute.

[23] What I'm looking at is if they have [24] asserted the privilege, they can't use any of

---

Page 15

[1] that information or anything stemming from that [2] information, because

---

Page 9 - Page 15  (4)                    Min-U-Script®

you're going to be vigilant [3] for this now, because they've been successful [4] here.

[5] And so I've got to assume — why do [6] people — I mean, I don't know. What I'm told is [7] that you patent lawyers assert the privilege [8] because there's probably something not so good [9] about the test. I mean, if it was a slam dunk [10] test, they'd give it over to you in a heartbeat.

[11] So I'm assuming there's something a [12] little negative in that test, so they're [13] asserting the work-product privilege. They [14] tested it. It didn't come out so good, you know.

[15] So that's okay. Let them assert it. [16] I'd let you assert it, because [17] that's fair. Now, but if there's something real [18] good in that test for them, and they — or [19] something drawn from that test is real good for [20] them, and they come back and try to hammer you [21] with it, they're not getting it in.

[22] MR. KENWORTHY: I understand, Your [23] Honor.

[24] THE COURT: So that's the fair way

Page 16

[1] to do it, because you would want me to give you [2] the same respect to assert a not so good test.

[3] MR. KENWORTHY: I certainly would, [4] but what I wouldn't have done —

[5] THE COURT: I understand that.

[6] MR. KENWORTHY: — is not have [7] asserted and then give an answer in general [8] terms.

[9] THE COURT: They might just be [10] playing with you to sort of set you up for an [11] issue on summary judgment. But they're going to [12] have more than what I saw in the papers to defeat [13] your motion for summary judgment.

[14] And I'm sure, knowing you well, [15] Mr. Kenworthy and having been here, you're going [16] to be all over that in a summary judgment brief. [17] So you understand where you are?

[18] MR. SCHAETZEL: I think I do, Your [19] Honor.

[20] THE COURT: So I'm hoping that test [21] has nothing you're thinking about that is going [22] to in any way help you in this case.

[23] MR. SCHAETZEL: Your Honor, we [24] haven't decided if that test was something we

Page 17

[1] would decide to rely on in the future or not. if [2] we do so, he will get it through expert [3] discovery.

[4] THE COURT: Well, that's not good.

[5] MR. SCHAETZEL: That's what the law [6] provides.

[7] THE COURT: No, it doesn't. You see [8] that's — I don't know what they do in Georgia. [9] We're a little sharper up here in Delaware.

[10] You can't do that. See now you've [11] given me a little bit of pause.

[12] MR. SCHAETZEL: On what basis?

[13] THE COURT: On the basis that you [14] can't play games with discovery. He's asked for [15] the test.

[16] If you intend to use it, you've got [17] to do it now. You can't say, I'm going to wait [18] and see how things go.

[19] Because what that's telling me, and [20] when I see that test, which I will some day if [21] you try to use it, it's going to be real [22] favorable to you. And he had an entitlement to [23] it early on in discovery, because you've used it [24] a little bit against him in responding to his

Page 18

[1] request to information.

[2] MR. SCHAETZEL: No, Your Honor. [3] What I've done is identified the product that I [4] tested, so that he can go out and do the same [5] thing.

[6] THE COURT: I don't know what rules [7] you're reading.

[8] MR. SCHAETZEL: I'm relying [9] principally on the Phillips case, and the — I [10] can't pronounce this name, Sicurelli, [11] S-I-C-U-R-E-L-L-I.

[12] THE COURT: Well, let me make it [13] clear to you.

[14] MR. SCHAETZEL: Okay, please.

[15] THE COURT: You know what that test [16] says. I don't know.

[17] Mr. Kenworthy thinks he knows what [18] it says. If that test is something you even have [19] an inkling you're going to use against his client [20] in this district, you better give it to him now [21] and give up the privilege.

[22] If you're sure that you don't want [23] to use it, it's fine. Assert your privilege and [24] you are going to be okay. I'm going to protect

Page 19

[1] it for you.

[2] MR. SCHAETZEL: Okay.

[3] THE COURT: So you've got the [4] decision.

[5] MR. SCHAETZEL: How much time?

[6] THE COURT: Because we're going to [7] move pretty quickly here. This case — somebody [8] alluded to this.

[9] I mean, you're going to be — we [10] don't have time to have too much strategizing in [11] the discovery period. So this case is going to [12] go quickly, and he wants me to give him the [13] ability to file a motion for summary judgment, [14] I'm sure.

[15] MR. SCHAETZEL: Which is fine. [16] We're more than pleased, because I do know what's [17] in the test. So I'm more than ready to contest [18] the motion for summary judgment.

[19] THE COURT: What I'm going to do, [20] I'm going to deny his motion to compel. I'm [21] going to take away the condition I imposed.

[22] But I'll give you ten days to make a [23] decision. You can start, consult with your [24] client whether you want to give up the results of

Page 20

[1] that test.

[2] And Mr. Kenworthy, if ten days comes [3] and goes, you'll remind us, I'm sure.

[4] MR. KENWORTHY: I will.

[5] THE COURT: Okay.

[6] MR. SCHAETZEL: We understand.

[7] THE COURT: Okay. Thank you.

[8] MR. HORWITZ: Your Honor, if I could [9] speak with Mr. Schaetzel for just a moment.

[10] THE COURT: Sure.

[11] MR. SCHAETZEL: I presumed I knew [12] the answer to that.

[13] THE COURT: You can ask me.

[14] MR. SCHAETZEL: The situation that [15] Rich aptly proposes is when we go to our expert [16] and the expert does independent tests, and let's [17] say, for example, we do not give this test to the [18] expert, we presume that the expert is going to be [19] able to do that independent test. And then this [20] test would not come in through the expert, [21] because he would not have relied on it.

[22] THE COURT: Then you would say — [23] you would file a motion in limine and justify [24] that application. Mr. Kenworthy would argue

Page 21

[1] strongly he should be able to, you know, force [2] you to have it in the case, in the trial [3] evidence, and I'll make a decision.

[4] MR. SCHAETZEL: And the issue here, [5] Your Honor, is that there are multiple gloves out [6] there that need to be looked at and tested. And [7] the procedure that I thought was in place and a [8] principal reason for assertion of the [9] work-product exception is it makes sense to me to [10] get that all done at one time, get all the gloves [11] identified and move forward as opposed to doing [12] things ad hoc in a serial fashion, so that, as [13] Rich points out, an independent expert could take [14] a look at all the gloves once we get the [15] applicable gloves identified and tested, and we [16] go forward in that fashion.

[17] I would then urge the Court at our [18]

request not to take a negative inference simply [19] from moving forward on the work-product [20] exception.

[21] **THE COURT:** That gets you ready for [22] trial. We're in the uncovering evidence stage.

[23] And for instance, in this district, [24] I won't allow — suppose your expert takes

---

Page 22

[1] certain positions in the claim construction [2] process, the Markman process, I don't let the [3] other side cross-examine your witness about [4] positions taken before I've reached a decision.

[5] What I'm trying to say to you is I [6] understand exactly what you are saying. It comes [7] up in a different context.

[8] **MR. SCHAETZEL:** Okay.

[9] **THE COURT:** But for now you've got a [10] test you gave some inkling about, and you're [11] thinking you may rely on. So they have a right [12] to get it now and go do their work on it now and [13] find out if they think it's something they think [14] they can deal with in summary judgment.

[15] You, I understand, may come back and [16] say our expert has now done this work, and this [17] is highly prejudicial, because it will confuse [18] the jury ya di, ya di, ya, and then I'll make a [19] ruling.

[20] **MR. SCHAETZEL:** Thank you.

[21] **THE COURT:** You understand, [22] Mr. Kenworthy?

[23] **MR. KENWORTHY:** I understand.

[24] **THE COURT:** So the motion to

---

Page 23

[1] transfer is denied, and the motion to compel is [2] denied with leave for the defendant to provide [3] the test in ten days or understand then it's not [4] to be utilized at all in litigation.

[5] **THE COURT:** Okay.

[6] **MR. KENWORTHY:** Thank you, Your [7] Honor.

[8] **THE COURT:** Thank you very much.

[9] (Hearing was concluded at 11:09 [10] a.m.)

---

Page 24

State of Delaware           )
New Castle County            )
        CERTIFICATE OF REPORTER
    I, Heather M. Triozzi, Registered
Professional Reporter, Certified Shorthand
Reporter, and Notary Public, do hereby certify
that the foregoing record, Pages 1 to 21
inclusive, is a true and accurate transcript of
my stenographic notes taken on February 2, 2007,
in the above-captioned matter.
    IN WITNESS WHEREOF, I have hereunto
set my hand and seal this 5th day of February,
2007, at Wilmington.
        Heather M. Triozzi, RPR, CSR

**Lawyer's Notes**

## 1

11:09 23:9

## 2

2008 5:11

## 5

50 13:8, 12, 17

## A

a.m 23:10
ability 19:13
able 20:19; 21:1
Absolutely 11:17
action 5:5; 8:16
actions 7:14
actually 13:3; 14:16
ad 21:12
address 6:20; 12:22
affirmatively 13:3
Again 5:16
against 6:17; 8:3; 10:2,
10, 13, 15; 11:3; 8; 17:24;
18:19
agreed 7:7
allegation 14:3
allow 21:24
alluded 19:8
always 11:21
analogy 9:1
Anderson 3:18
Ansell 3:2, 12; 6:17; 7:1;
10:2, 5, 8, 14
Ansell's 6:12; 7:15; 8:9
applicable 21:15
application 20:24
aptly 20:15
argue 8:24; 20:24
Article 6:9
assert 15:7, 15, 16; 16:2;
18:23
asserted 12:20; 14:24;
16:7
asserting 15:13
assertion 8:2, 20; 13:22;
21:8
assigned 4:6, 7; 6:4, 6
assume 15:5
assuming 9:4; 15:11
Atlanta 3:19
away 11:24; 12:9; 19:21

## B

back 9:4; 15:20; 22:15

base 13:11
based 8:15
basis 7:23; 10:10; 14:3;
17:12, 13
behind 13:2
better 7:19; 13:20; 18:20
big 7:8
bit 17:11, 24
BLUMENFELD 3:3, 10
bottom 13:7, 9, 12
brief 16:16
briefed 7:2
briefing 6:24
bring 11:4

## C

came 11:14; 12:9
can 8:1; 13:2; 14:6; 18:4;
19:23; 20:13; 22:14
candor 5:20
case 4:17; 5:1, 6; 6:4, 13,
14, 17, 17, 24; 7:5, 15;
16:22; 18:9; 19:7, 11; 21:2
cases 4:6, 13; 11:24
certain 22:1
certainly 16:3
chance 4:19
circuits 6:10
claim 4:11, 12, 17, 23;
5:3; 6:21; 7:1, 3, 5, 9, 16;
22:1
claims 7:12; 9:24; 10:2, 2,
8, 9, 13; 11:3, 5, 8
clarify 10:7
clear 4:1; 18:13
client 4:11; 18:19; 19:24
coincidental 3:9
coming 11:22
compel 12:16; 19:20;
23:1
comprehensive 11:11
concern 4:10, 15; 14:8,
14
concerns 4:13
concluded 23:9
conclusory 14:4
condition 19:21
confuse 22:17
confused 14:21
consistency 8:18
consistent 12:18
construction 4:11, 12,
17; 5:3; 6:21; 7:2, 6, 9;
22:1
constructions 4:23
construed 7:12
consult 19:23
container 13:5
contest 19:17
context 14:22; 22:7
couple 5:4

course 8:24
COURT 3:1, 7, 14, 20, 22;
4:7, 10, 16, 20; 5:2, 6, 10,
13, 16, 19, 20; 6:3, 7, 12,
19, 22; 7:13; 8:1, 6, 17;
9:7, 9, 12, 16, 19; 10:12,
17, 23; 11:2, 12, 19; 12:3,
11, 24; 13:24; 14:7,
12, 18, 20; 15:24; 16:5, 9,
20; 17:4, 7, 13; 18:6, 12,
15; 19:3, 6, 19; 20:5, 7, 10,
13, 22; 21:17, 21; 22:9, 21,
24; 23:5, 8
cross-examine 22:3
customer 10:8, 10, 16;
11:13, 16
customer's 10:22
customers 6:12; 10:21;
11:9

## D

Darby 6:16
date 5:7
day 8:13; 17:20
days 19:22; 20:2; 23:3
deal 22:14
debate 7:8
decide 17:1
decided 16:24
decision 3:24; 19:4, 23;
21:3; 22:4
decisions 6:9
declaratory 11:14
defeat 16:12
defendant 4:2; 23:2
defending 11:16
Delaware 8:16; 17:9
demonstrate 8:20
demonstrative 12:20
denied 23:1, 2
deny 12:13, 15; 19:20
di 22:18, 18
different 4:12; 22:7
disclosed 14:5
discovery 4:24; 7:17;
10:4; 12:10; 14:22; 17:3,
14, 23; 19:11
dispute 14:22
District 6:7; 18:20; 21:23
doctrine 8:3
document 7:22; 8:10, 12;
9:2; 12:17
Documents 8:10
done 16:4; 18:3; 21:10;
22:16
down 11:6, 23
drawn 15:19
drop 14:9
dunk 15:9

## E

early 17:23
easier 5:24
Eight 5:12
either 9:6
enjoy 11:21
entirety 6:18
entitlement 17:22
even 14:16; 18:18
evidence 13:21; 14:9;
21:3, 22
Exactly 13:23; 22:6
example 13:5; 20:17
exception 21:9, 20
exchanging 4:23
excuse 13:16
expert 14:1; 17:2; 20:15,
16, 18, 18, 20; 21:13, 24;
22:16
explanation 12:11

## F

fact 12:23
facts 13:10; 14:17
fair 15:17, 24
familiarization 5:22
farmed 6:11
fashion 21:12, 16
favorable 17:22
February 5:9, 10
few 3:24
file 4:19; 19:13; 20:23
filed 9:21
find 22:13
fine 18:23; 19:15
first 4:2; 10:18
folks 3:1
force 21:1
form 14:13
forward 4:24; 21:11, 16,
19
future 17:1

## G

games 17:14
gave 14:16; 22:10
general 16:7
generally 11:23
Georgia 4:3, 7; 5:5; 6:7,
18; 7:1, 14, 17; 8:3, 19;
9:17; 10:5, 14; 11:3, 6, 8,
17; 12:18; 17:8
gets 21:21
given 7:3, 4; 12:23;
13:19; 14:6; 17:11
glad 9:13
glove 11:10, 11

gloves 21:5, 10, 14, 15
goes 8:19; 12:23; 20:3
Good 5:13, 14, 20; 14:7;
15:8, 14, 18, 19; 16:2; 17:4
greater 13:8
grounds 9:19
guess 6:13

## H

hammer 15:20
hanging 12:5
happen 12:12
head 4:19; 12:8
Hearing 23:9
heartbeat 15:10
help 16:22
helpful 8:22; 12:7, 12
Here's 13:3; 14:7
hide 13:8
highly 22:17
hoc 21:12
hold 4:21
Honor 3:3, 10, 16; 4:9, 15;
5:4, 9, 15; 6:17; 7:21; 8:11;
9:10, 11; 10:6, 22; 12:21;
14:15; 15:23; 16:19, 23;
18:2; 20:8; 21:5; 23:7
hoping 16:20
Horwitz 3:5, 15, 16, 17;
10:6, 15; 11:1, 7, 15; 20:8

## I

identified 18:3; 21:11, 15
lll 6:9
image 10:11
immediately 12:14
imposed 19:21
including 11:24
indemnity 9:24; 10:8;
11:5
independent 11:3;
20:16, 19; 21:13
inference 21:18
information 15:1, 2; 18:1
infringement 10:9
initial 4:23
initiated 4:7
inkling 18:19; 22:10
instance 13:4; 21:23
intend 17:16
interrogatories 8:14
interrogatory 7:5, 21;
14:4
involved 5:17
involving 7:1
issue 12:5; 16:11; 21:4
issued 10:1

## J

Jason 3:19; 7:19
judge 4:5, 5, 6; 6:4, 9; 9:22; 11:6
judges 6:6
judgment 9:22; 11:14; 14:21; 16:11, 13, 16; 19:13, 18; 22:14
jury 22:18
justify 20:23

## K

Kenworthy 3:11, 13; 6:16, 20, 23; 9:9, 10, 14, 18, 21; 10:20; 11:18, 21; 12:4, 8, 21; 13:1, 23; 14:2, 11, 14, 19; 15:22; 16:3, 6, 15; 18:17; 20:2, 4, 24; 22:22, 23; 23:6
kind 10:11; 11:10, 10
King 3:18
knew 20:11
knowing 16:14
knows 18:17

## L

large 13:7
last 7:13; 10:1
later 14:9
law 17:5
lawyers 15:7
leave 12:16; 23:2
less 13:12, 17
Lewis 3:11
limine 10:23
litigation 4:3; 8:4; 11:11, 23; 12:18; 23:4
little 5:24; 15:12; 17:9, 11, 24
long 8:19
look 3:23; 4:19; 9:4; 21:14
looked 21:6
looking 8:18; 14:23

## M

magistrate 6:3, 6, 11
makes 21:9
Markman 22:2
matters 6:8, 10
may 22:11, 15
maybe 9:1
mean 15:6, 9; 19:9
meaning 7:4, 7; 12:19
measure 13:15
measurement 13:9, 18
measurements 13:14

might 16:9
mind 4:1
mirror 5:17
misrepresentations 5:20
moment 20:9
months 5:5
more 16:12; 19:16, 17
Morgan 3:11
morning 3:13, 14, 20
motion 9:22; 12:13, 15; 16:13; 19:13, 18, 20; 20:23; 22:24; 23:1
move 19:7; 21:11
moving 4:24; 21:19
much 19:5, 10; 23:8
multiple 21:5

## N

name 18:10
need 7:11, 11; 21:6
negative 15:12; 21:18
nervous 11:12
news 14:7
next 3:1; 5:4, 9
Northern 6:6

## O

object 7:23
objected 8:15
Off 4:18
often 6:8
once 21:14
One 4:13; 6:13, 24; 7:13; 11:22; 12:22; 21:10
opposed 21:11
option 6:7
order 3:4, 6; 10:1
ordinary 7:4, 7
others 11:9
out 6:11, 13; 10:18; 15:14; 18:4; 21:5, 13; 22:13
over 12:5; 13:12, 17; 15:10; 16:16
overnight 3:8

## P

package 13:11
panel 13:6
papers 3:23; 5:23; 8:23; 10:13, 19; 16:12
Pass 3:19; 5:3, 8, 14; 7:20; 8:5, 8
patent 15:7
pause 17:11
pending 10:3; 11:8
people 15:6

percent 13:8, 12, 17
period 19:11
perjury 5:17
Phillips 18:9
piece 12:22
place 12:14; 21:7
play 17:14
playing 16:10
please 18:14
pleased 19:16
point 13:20
points 21:13
position 7:3, 10, 10; 12:18
positions 22:1, 4
Potter 3:17
prejudicial 22:17
presume 20:18
presumed 20:11
pretty 19:7
principal 21:8
principally 18:9
privilege 7:16; 14:24; 15:7, 13; 18:21, 23
probably 15:8
problem 14:19
problems 5:21
procedure 21:7
process 22:2, 2
produce 8:2
produced 12:17
product 7:24; 8:15; 12:20; 13:2; 18:3
Production 8:9
pronounce 18:10
proposes 20:15
protect 18:24
provide 8:23; 23:2
provides 17:6
purpose 3:8
put 12:14
putting 3:4

## Q

quickly 19:7, 12

## R

Rather 11:15
reached 22:4
reading 18:7
ready 9:14; 19:17; 21:21
real 14:14; 15:17, 19; 17:21
really 7:8; 12:22; 14:15
reason 11:20; 21:8
reasons 11:22
recall 7:20, 22; 10:19
recollection 5:14; 7:18, 24; 9:5

record 9:4, 20
regard 12:19
relate 10:9
relates 10:7
relating 11:9
relied 20:21
rely 17:1; 22:11
relying 18:8
remind 20:3
renew 12:16
request 7:17, 22; 8:3, 9, 10, 12; 18:1; 21:18
respect 16:2
responding 17:24
response 7:16
responses 8:9, 13
result 14:5
results 8:11; 19:24
Rich 3:17; 20:15; 21:13
right 3:22; 5:13; 8:1, 17; 9:5; 10:22; 11:7; 12:9; 14:1; 22:11
rule 10:18
rules 18:6
ruling 22:19

## S

S-I-C-U-R-E-L-L-I 18:11
same 7:10; 8:13; 11:9; 16:2; 18:4
satisfactory 12:16
saw 11:13; 16:12
saying 22:6
Schaetzel 3:19, 21; 4:8, 14, 18, 22; 5:12, 18; 6:2, 5, 15; 7:18; 9:3, 8; 16:18, 23; 17:5, 12; 18:2, 8, 14; 19:2, 5, 15; 20:6, 9, 11, 14; 21:4; 22:8, 20
second 4:5
seeking 7:15
sense 9:1; 21:9
serial 21:12
served 8:8, 12, 13; 12:9
set 16:10
severed 9:23
sharper 17:9
Sicurelli 18:10
side 13:6; 22:3
simply 21:18
situation 20:14
slam 15:9
smaller 13:8
somebody 19:7
sometime 5:9
sort 16:10
Spalding 3:18
speak 20:9
stage 21:22
stands 5:1

start 19:23
status 4:17
stay 3:5
stayed 6:18; 9:16; 11:6
staying 10:1
stemming 15:1
stepping 11:16
Steve 3:19
still 6:14, 16; 11:24
strategizing 19:10
strongly 21:1
studied 3:7
suasponsaed 9:23, 24
subject 4:19
successful 15:3
sue 11:13
sued 10:22
suing 10:21
summary 9:22; 14:21; 16:11, 13, 16; 19:13, 18; 22:14
suppose 21:24
Sure 6:2; 11:22; 16:14; 18:22; 19:14; 20:3, 10

## T

telling 17:19
ten 19:22; 20:2; 23:3
terms 16:8
test 14:1, 5, 6; 15:9, 10, 12, 18, 19; 16:22, 24; 17:15, 20; 18:15, 18; 19:17; 20:1, 17, 19, 20; 22:10; 23:3
tested 15:14; 18:4; 21:6, 15
testing 7:14; 8:11; 12:19
tests 20:16
therefore 12:9
thinking 16:21; 22:11
thought 21:7
Tillotson 3:17; 4:3; 7:2; 10:5
times 6:8
today 3:17, 18
told 15:6
Tom 3:11
took 12:17
top 4:18; 13:6, 7, 8, 11
transfer 12:13; 23:1
trapezoidal 13:6
trial 5:7; 21:2, 22
try 15:20; 17:21
trying 5:21; 12:6; 22:5
twice 13:7, 7, 16
two 4:13; 14:3

## U

uncovering 21:22

**under** 10:18

**underway** 5:4

**up** 3:5; 4:1; 6:8; 16:10;
17:9; 18:21; 19:24; 22:7

**upon** 13:10

**urge** 21:17

**use** 14:24; 17:16, 21;
18:19, 23

**used** 17:23

**useful** 6:23

**utilized** 23:4

---

# V

---

**valid** 8:20

**view** 13:1

**vigilant** 15:2

---

# W

---

**wait** 17:17

**waived** 8:7

**waiver** 8:21

**wants** 19:12

**way** 8:19; 9:1, 6; 12:20;
15:24; 16:22

**week** 10:1

**Welcome** 3:20

**what's** 19:16

**whole** 14:20

**witness** 14:1, 1, 12; 22:3

**work** 7:23; 8:15; 12:20;
13:2; 22:12, 16

**work-product** 8:2;
15:13; 21:9, 19

**wrote** 4:4

---

# Y

---

**ya** 22:18, 18, 18

**year** 5:9; 11:24

**years** 12:1, 1

# EXHIBIT 42

REDACTED

<u>CERTIFICATE OF SERVICE</u>

I, Leslie A. Polizoti, certify that on April 10, 2007 I electronically filed the foregoing with the Clerk of the Court using CM/ECF, which will send notification of such filing to:

>Richard L. Horwitz, Esquire
>David Moore, Esquire
>POTTER ANDERSON & CORROON LLP
>Hercules Plaza, 6th floor
>1313 N. Market Street
>Wilmington, DE  19899

and that I caused copies to be served upon the following in the manner indicated:

**BY EMAIL & HAND**

>Richard L. Horwitz, Esquire
>David Moore, Esquire
>Potter Anderson & Corroon LLP
>1313 N. Market Street
>Wilmington, DE  19801

**BY EMAIL & FEDERAL EXPRESS**

>Joseph P. Lavelle, Esquire
>Howrey LLP
>1299 Pennsylvania Avenue, NW
>Washington, DC  20004

>*/s/ Leslie A. Polizoti*
>Leslie A. Polizoti (#4299)
>lpolizoti@mnat.com