IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

BRIDGESTONE SPORTS CO., LTD., and
BRIDGESTONE GOLF, INC.,

              Plaintiffs,

      v.

ACUSHNET COMPANY,

              Defendant.

C.A. No. 05-132 (JJF)

**REDCTED –
PUBLIC VERSION**

## DECLARATION OF ROBERT M. MASTERS

MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Jack B. Blumenfeld (#1014)
Maryellen Noreika (#3208)
Leslie A. Polizoti (#4299)
1201 N. Market St.
P.O. Box 1347
Wilmington, DE 19801
(302) 658-9200
   *Attorneys for Bridgestone Sports Co., Ltd.
   and Bridgestone Golf, Inc.*

OF COUNSEL:
Robert M. Masters
Scott M. Flicker
Terrance J. Wikberg
Brandon M. White
PAUL, HASTINGS, JANOFSKY & WALKER LLP
875 15th St., N.W.
Washington, DC 20005
(202) 551-1700

Original Filing Date:  March 20, 2007

Redacted Filing Date:  April 10, 2007

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

BRIDGESTONE SPORTS CO., LTD.,
and BRIDGESTONE GOLF, INC.,

        Plaintiffs,

    v.

ACUSHNET COMPANY,

        Defendant.

)
)
)
)
)
)
)
)
)
)
)
)

C.A. No. 05-132 (JJF)

REDACTED -
PUBLIC VERSION

## DECLARATION OF ROBERT M. MASTERS

I, Robert M. Masters, declare:

1.      I am a partner at the law firm of Paul, Hastings, Janofsky & Walker LLP ("Paul Hastings"), and I make this declaration in support of Bridgestone's Motion For Sanctions.

2.      Paul Hastings represents plaintiffs Bridgestone Sports Co., Ltd. and Bridgestone Golf, Inc. ("Bridgestone") in this case. I am lead trial counsel for Bridgestone. In addition, pursuant to paragraph 4 of the Court's Order of August 3, 2006 (D.I. 154), I and my associate, Brandon White, have been designated as responsible to the Court for discovery matters and for compliance with the Court's discovery Orders (D.I. 156).

        A.    Bridgestone Could Have Accused Additional Balls If
              Acushnet Had Timely Produced Its Mesabi Data

3.      One of the patents Bridgestone asserts against Acushnet is U.S. Patent No. 6,634,961 ("the '961 patent"). Bridgestone alleges that Acushnet's Pro V1 made and sold from November 2004 to the present infringes claim 2 of the '961 patent.

4.      Claim 2, which depends from independent Claim 1, requires, *inter alia*, (1) that the core contain a rubber composition having 100 parts by weight of a base rubber composed of

20 to 100 weight % of a polybutadiene rubber synthesized using a rare earth catalyst in combination with 0 to 80 weight % of another rubber, and (2) 0.1 to 5 parts by weight of an organosulfur compound. Examples of the rubbers are CB 23 and BR-1220, and examples of the organosulfur compound are pentachlorothiophenol ("PCTP") or zinc salts of PCTP ("ZnPCTP").



7.

Based on this information, Bridgestone would have accused the Pro V1 ball of infringing beginning October 21, 2003, when the '961 patent issued.

8.

Bridgestone would have accused the Pro V1x ball of infringing beginning October

2

[REDACTED]

9.    The Pro V1 and Pro V1x balls are Acushnet's two highest-selling balls. Had Acushnet timely produced the information pertaining to the core recipes, Bridgestone would have been in a position to accuse additional Pro V1 golf balls (from October 2003 to December 2004) and accused Pro V1x golf balls (from October 2003 to the present). [REDACTED]

[REDACTED]

B.    The New Data Helps Prove Infringement Under Bridgestone's Claim Construction

10.    Bridgestone accuses Acushnet of infringing claims 1, 5 and 9 of U.S. Patent No. 5,252,652. These claims include a limitation that the rubber contains "about 0.05 to about 2 parts by weight" of an organosulfur compound including PCTP or ZnPCTP.

11.    Acushnet produced documents (i.e., manufacturing guidelines) during fact discovery that show the amount of ZnPCTP to be used in the core formulations. [REDACTED]

[REDACTED]

12.    [REDACTED]

[REDACTED]

13.



### C.    Acushnet's QAS Data Supports Bridgestone's Infringement Contentions

14.    Bridgestone accuses Acushnet of infringing claims 1, 6 and 7 of U.S. Patent No. 5,553,852. These claims include a limitation that the accused balls have an "intermediate layer" that is at least 1 mm thick and a cover layer having a thickness of 1 mm to 3 mm.

15.    Bridgestone expended significant resources in obtaining and testing Acushnet's golf balls that could have been avoided had Acushnet produced its QAS data. Dr. Caulfield performed tests using digital imaging to determine the thickness of the intermediate layer and cover layer for the accused Pro V1 and Pro V1x golf balls and to determine the thickness of the cover layer for the remaining accused golf balls.

16.

4



17.    If Bridgestone had the same QAS information that Dr. Felker had, Bridgestone would have used it.

Bridgestone, therefore, could have avoided the expense of performing its own independent testing.

18.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge.

Dated: March 20, 2007

Robert M. Masters

5

## CERTIFICATE OF SERVICE

I certify that on April 10, 2007, I electronically filed the foregoing with the Clerk

of the Court using CM/ECF, which will send notification of such filing(s) to Richard L. Horwitz.

I further certify that I caused copies to be served upon the following on April 10,

2007 in the manner indicated:

### BY HAND & E-MAIL

Richard L. Horwitz, Esquire
POTTER ANDERSON & CORROON LLP
1313 N. Market Street
Wilmington, DE  19801


### BY E-MAIL and FEDERAL EXPRESS

Joseph P. Lavelle, Esquire
HOWREY LLP
1299 Pennsylvania Avenue, NW
Washington, DC  20004


/s/ Leslie A. Polizoti
Leslie A. Polizoti (#4299)
MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Wilmington, DE  19801
(302) 658-9200
lpolizoti@mnat.com