IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

BRIDGESTONE SPORTS CO., LTD., and
BRIDGESTONE GOLF, INC.,

          Plaintiffs,

      v.

ACUSHNET COMPANY,

          Defendant.

C.A. No. 05-132 (JJF)

**REDACTED –
PUBLIC VERSION**

## BRIDGESTONE'S ANSWERING BRIEF IN OPPOSITION TO ACUSHNET'S MOTIONS TO PRECLUDE AND TO WITHDRAW ADMISSIONS

MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Jack B. Blumenfeld (#1014)
Maryellen Noreika (#3208)
Leslie A. Polizoti (#4299)
1201 N. Market St.
P.O. Box 1347
Wilmington, DE 19801
(302) 658-9200
   *Attorneys for Bridgestone Sports Co., Ltd.
   and Bridgestone Golf, Inc.*

OF COUNSEL:
Robert M. Masters
Scott M. Flicker
Terrance J. Wikberg
Brandon M. White
PAUL, HASTINGS, JANOFSKY & WALKER LLP
875 15th St., N.W.
Washington, DC 20005
(202) 551-1700

Original Filing Date:  April 3, 2007

Redacted Filing Date:  April 10, 2007

i.

TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ..................................................................................... iii

NATURE AND STAGE OF THE PROCEEDING.................................................1

PRELIMINARY STATEMENT .............................................................................1

SUMMARY OF ARGUMENT ...............................................................................2

STATEMENT OF FACTS .......................................................................................3

A.   The Court Has Ruled That Experts' Test Results Performed For
     The Litigation Would Be Properly Disclosed During Expert
     Discovery ......................................................................................................4

     1.   In January 2006, The Court Told Acushnet That It Could Not
          Accelerate Expert Discovery ........................................................4

     2.   Bridgestone Gave Acushnet Proper Responses To Its
          Infringement Contention Interrogatory.......................................6

     3.   Acushnet Wanted Test Results From Bridgestone's Experts ...................9

     4.   Acushnet's Responses To A Mirror Image Interrogatory
          Provided A Similar Level Of Detail ...........................................11

B.   Neither Party Identified In Interrogatory Responses All Documents
     That Its Experts Relied On – And There Is No Requirement To Do
     So ................................................................................................................12

C.   The Parties Proceeded On The Basis That Damages Information
     Would Come Out In Expert Discovery – Not In Initial Disclosures,
     And Not In Contention Responses.......................................................15

D.   The Parties Agreed That Experts Could Rely On Documents That
     Were Located By The Experts In Preparation Of Their Reports..........................18

E.   Bridgestone's Reliance On Commercial Success Was Properly
     Disclosed During Fact Discovery .......................................................19

ARGUMENT ........................................................................................................20

I.      BRIDGESTONE'S DISCLOSURES WERE APPROPRIATE ..........................21

        A.      Bridgestone Properly Disclosed Its Infringement Contentions
                During Fact Discovery, And Properly Disclosed Its Expert Testing
                During Expert Discovery .........................................................................21

        B.      Bridgestone Properly Disclosed The Factual Bases For Its
                Infringement Contentions, Even Though Acushnet's Interrogatory
                Did Not Ask For Them .............................................................................24

        C.      Bridgestone Properly Identified The Documents On Which Its
                Experts Will Rely During Expert Discovery ...........................................26

        D.      Bridgestone And Acushnet Provided The Same Level Of Detail
                During Fact Discovery For Their Damages Contentions .........................28

        E.      Acushnet's Other Allegations ..................................................................29

II.     ACUSHNET'S EXAMPLES OF "PREJUDICE" ARE REALLY A
        DISAGREEMENT     WITH     BRIDGESTONE'S     EXPERTS'
        CONCLUSIONS ...................................................................................................29

        A.      Acushnet's Claims Of Prejudice Are Belied By The Timing Of Its
                Complaints ................................................................................................30

        B.      Acushnet's Examples of Supposed Prejudice ..........................................31

III.    ACUSHNET SHOULD NOT BE PERMITTED TO WITHDRAW
        ADMISSIONS .......................................................................................................34

CONCLUSION ...................................................................................................................35

iii.


# TABLE OF AUTHORITES


<div align="right">Page</div>



Cases

*Auto Meter Prods., Inc. v. Maxima Techs. & Sys., LLC,*
    C.A. No. 05-4587, 2006 WL 3253636 (N.D. Ill. Nov. 6, 2006) — 22

*B.C.F. Oil Refining, Inc. v. Consolidated Edison Co.,*
    168 F.R.D. 161 (S.D.N.Y. 1996) — 22, 26

*BB&T Corp. v. U.S.,*
    233 F.R.D. 447 (M.D.N.C. 2006) — 26, 28

*Edward Lowe Indus., Inc. v. Oil-Dri Corp. of America,*
    C.A. No. 94-7568, 1995 WL 399712 (N.D. Ill. 1995) — 23

*Finch v. Hercules Inc.,*
    941 F. Supp. 1395 (D. Del. 1996) — 25

*Lawrence E. Jaffe Pension Plan v. Household Int'l, Inc.,*
    C.A. No. 02-5893, 2004 WL 2108410 (N.D. Ill. Sept. 21, 2004) — 28

*Mosaid Techs. Inc. v. Samsung Elecs. Co., Ltd.,*
    362 F. Supp. 2d 526 (D.N.J. 2005) — 30

*Review Directories Inc. v. McLeod USA Publishing Co.,*
    C.A. No. 99-958, 2001 WL 34054519 (W.D. Mich. July 23, 2001) — 30

*Stroman Realty, Inc. v. Antt,*
    20 F. Supp. 2d 1050 (S.D. Tex. 1998) — 26

*Wesley-Jessen Corp. v. Pilkington Visioncare, Inc.,*
    844 F. Supp. 987 (D. Del. 1994) — 25, 31

Statutes

6 MOORE'S FEDERAL PRACTICE § 26.123 — 22

Fed. R. Civ. P. 36(b) — 34

1.

## NATURE AND STAGE OF THE PROCEEDING

This is a patent infringement case brought by Plaintiffs Bridgestone Sports Co.,
Ltd. and Bridgestone Golf, Inc. (collectively, "Bridgestone") against Defendant Acushnet
Company ("Acushnet") in March 2005. The scheduling orders in this case have always provided
for separate fact and expert discovery, with expert disclosures under Rule 26(a)(2) due after the
close of fact discovery (D.I. 18, 95, 219). The parties have now completed discovery.

On March 20, Bridgestone filed a Motion for Sanctions (D.I. 304). On the same
day, anticipating Bridgestone's motion, Acushnet filed this Motion to Preclude (D.I. 294).
Acushnet's motion is based on issues that it first raised only after the Court precluded it from
relying on certain prior art references and only after Bridgestone began raising the issues that are
in its sanctions motion.

This is Bridgestone's answering brief in opposition to Acushnet's Motion to
Preclude and its Motion to Withdraw Admissions (D.I. 310).

## PRELIMINARY STATEMENT

There is no comparison between the issues raised by Bridgestone's motion for
sanctions and Acushnet's motion to preclude. Bridgestone asks the Court to sanction Acushnet
for destroying unfavorable test results; for relying on Acushnet documents during expert
discovery that it had withheld as privileged during fact discovery; and for relying on Acushnet
documents during expert discovery that it had refused to produce during fact discovery – telling
Bridgestone that they were "cumulative" and too burdensome to produce.

Acushnet, in contrast, asks the Court to preclude Bridgestone from relying on
documents that were produced during fact discovery (on the basis that only most – but not all –
of them were identified in interrogatory responses) and to preclude Bridgestone from relying on
testing that its retained experts performed specifically for this litigation and that were fully

2.

disclosed in their expert reports (on the basis that the test results had not been disclosed during fact discovery). There is no basis for Acushnet's motion. Nothing requires the disclosure of expert testing or the bases for expert opinions during fact discovery. In fact, doing so would be contrary to the structure set by Federal Rule of Civil Procedure 26(a) and this Court's scheduling orders. Bridgestone fully complied with its discovery obligations.

Moreover, Acushnet did not raise most of these issues until the middle of expert discovery. In fact, it raised them only after the Court precluded it from relying on certain prior art references and after Bridgestone began to raise the issues included in its motion for sanctions, presumably to have something to put on the other side of the table.

To top it off, for almost every issue that Acushnet raises about Bridgestone's responses, Acushnet did the same thing in its responses to Bridgestone's interrogatories that were almost identical to Acushnet's own interrogatories – demonstrating that Bridgestone was playing according to the discovery rules. Acushnet's motivation for seeking to have the Court preclude Bridgestone even though both sides followed the same rules is transparent: Acushnet is ██████████████████████████████████████████████████ ███████ Under these circumstances, Acushnet would be very happy to have the Court gut both sides' cases. There is no basis to do so, however. Acushnet's motion to preclude should be denied in its entirety.

## SUMMARY OF ARGUMENT

1.    Bridgestone's discovery responses were fully disclosed at the appropriate time and with the appropriate level of detail (at a minimum, with the same level of detail, or more, as Acushnet did in its responses to identical interrogatories). Bridgestone fully disclosed its experts' opinions, including their test results, in their reports, as required by Rule 26(a) and

3.

the scheduling order. Bridgestone also fully disclosed its contentions and the factual bases for them, and gave the same or more level of detail as Acushnet provided in its own responses to identical interrogatories. If any of Bridgestone's discovery responses were inadequate (and they were not), they were substantially justified – because Bridgestone followed the Court's instructions and orders, and provided the same level of detail as Acushnet did in its responses.

      2.    The prejudice that Acushnet cites – that it disagrees with the testing protocols Bridgestone's experts used and the results obtained – is not a basis for preclusion, but for cross-examination of Bridgestone's experts. Even if Bridgestone's responses were inadequate (and they were not), any failure to disclose is harmless.

      3.    Acushnet should not be permitted to withdraw admissions that it made because it realized too late that another test produced a more favorable result – especially after Bridgestone's expert relied on Acushnet's admissions.

<div align="center">STATEMENT OF FACTS</div>

      According to Acushnet, Bridgestone should be precluded from relying on much of the test data that was created for this litigation and disclosed in the reports of its experts that were retained specifically for this case because:

- Bridgestone did not produce its experts' test results during fact discovery (even though Bridgestone produced them during expert discovery, pursuant to the scheduling order) (*see* Section A);

- Bridgestone did not identify in interrogatory responses every single document that its experts relied on months later (even though those documents were produced before the September 1, 2006 document production cutoff and some of Acushnet's interrogatories did not even ask for an identification of documents) (*see* Section B);

- Bridgestone did not give Acushnet its calculation of damages before expert discovery (even though Bridgestone's expert did not finalize his calculation until after fact discovery and damages calculations are properly left to expert discovery anyway) (*see* Section C);

4.

- Bridgestone's damages expert relied on data that was not produced during fact discovery because it was not in Bridgestone's possession, custody or control, but was located by that expert in a publicly-available database in the course of preparing his report (even though Acushnet argued that it was proper for its own experts to do the same thing) (*see* Section D);

- Bridgestone did not provide adequate responses to a commercial success interrogatory (even though the reports about which Acushnet complains don't go to commercial success) (*see* Section E).

There is no basis for any of Acushnet's arguments.

A.  The Court Has Ruled That Experts' Test Results Performed For The Litigation Would Be Properly Disclosed During Expert Discovery

Acushnet asks the Court to preclude Bridgestone's experts from relying on tests they performed for this litigation because Bridgestone disclosed them "only in its expert reports" (D.I. 295 at 6).  Acushnet also argues that Bridgestone "continually refused to provide the facts it clearly now intends to use at trial to prove infringement" (*id.* at 2), because Bridgestone did not disclose in its interrogatory responses its "measurements or testing data [generated by Bridgestone's retained experts] to support those claims" (*id.* at 6).

1.  In January 2006, The Court Told Acushnet That It Could Not Accelerate Expert Discovery

Despite the scheduling order's separate fact and expert discovery deadlines, Acushnet has tried to accelerate expert discovery (for Bridgestone, anyway) for this entire case. At the January 2006 hearing, Acushnet asked the Court point-blank: "Can we get in our detailed infringement contentions also not just the data, the actual measurements, but how the tests are performed...?" (D.I. 73, Tr. at 29).  The answer was no:

MR. MASTERS: The actual test result?

THE COURT: No. No.  Because you haven't had your experts.

5.

Bridgestone did exactly what the Court said should be done – it provided Acushnet with contentions and facts during fact discovery, and expert-generated test results during expert discovery (*id*. at 32-33):

> MR. MOORE: If the range is 10 to 20, do they measure at 11? Did they measure at 19?
>
> THE COURT: Okay.  I think I have to back you up a little bit. The key word here is contention. … Now, contend means at this point, this is what we believe.  Now, they're not going to be able to sucker you and come in with a whole new body of factual support down the road, because the reason why we set a contention date is so that sets the parameters of your ongoing discovery. …
>
> So if [the diameter of a golf ball] is important to the infringement contention, they will tell you that your ball is within the range of 1.4 to 1.8…inches. … Now, when you actually get to when you're beyond contentions, in other words, you actually developed your record of proof, then they'll tell you that your ball infringes because it's 1.62 inches.

The Court told Acushnet to "come back after the final contention date if you haven't gotten adequate contentions" and "we'll talk about how adequate or inadequate their contentions are" (D.I. 73, Tr. at 36).  When that date, May 1, 2006, came, Bridgestone supplemented its infringement contentions and added supporting facts and documents.  After that supplementation, Acushnet did not say a word about the sufficiency of those contentions during the three other times the parties appeared before the Court in 2006 (although it did file motions to compel on four other issues it does not raise now (D.I. 114-17)).  It also said nothing in December 2006, when the parties served their last round of discovery supplementations, or in January 2007, after Bridgestone served its opening expert reports.  Instead, Acushnet waited until February 22, 2007 to raise these issues with Bridgestone – after the Court had precluded Acushnet from relying on certain prior art references (D.I. 288) and after Bridgestone had begun to raise some of the issues about Acushnet's discovery that are the basis for Bridgestone's

6.

sanctions motion (Ex. 1).

2.    Bridgestone Gave Acushnet Proper Responses To
      Its Infringement Contention Interrogatory

Acushnet argues that it "repeatedly requested the disclosure" of the factual bases

for Bridgestone's contentions, and was "refused at every turn" (D.I. 295 at 26).  Seeing as

Acushnet said nothing to Bridgestone during fact discovery about any of the issues in this motion

except infringement contentions, those must be what Acushnet is referencing.  Acushnet asserts

that Bridgestone's "refusal" to provide its "factual evidence" for its infringement contentions is

"exemplified" by its claim chart for a particular limitation in claim 1 of the '852 patent, "said

cover [of a golf ball] having a thickness of 1 to 3 mm" (*id*. at 3).

Bridgestone's first claim chart entry for this limitation was: "The Pro V1 has a

cover with a thickness within the scope of the claim range" (D.I. 296, Vol. 1, Ex. C at B-1).  But

Bridgestone supplemented its response nearly a year ago, on May 1, 2006.  Acushnet says that

Bridgestone's amended response "provided no more detail than its first response," because it

stated only that (D.I. 295 at 4):

> The thickness of the cover of the Pro V1 & Pro V1 392 (stretched)
> is within the scope of the range of 1 to 3 mm.

Acushnet, however, quoted only the first sentence of Bridgestone's interrogatory

response.  The entirety of Bridgestone's May 1 claim chart entry for this limitation is set forth

below:

7.

| | |
|---|---|
| said cover having a thickness of 1 to 3 mm and being softer than said intermediate layer. | The thickness of the cover of the Pro V1 392 & Pro V1 392 (stretched) is within the scope of the range of 1 to 3 mm. *See e.g.* AB 38279 – AB 38299; AB 4631 – AB 4633; AB 4634 – AB 4636; AB 4637 – AB 4639; AB 4640 – AB4642; AB 48178; AB 50821; AB 51522; AB 52046; AB 52047; AB 52049; AB 11057–AB 11178; AB 11179 – AB 11379; AB 11380 – AB 11515; AB 11516 – AB 11616; AB 12450 – AB 13011; AB 13012 – AB 13144; AB 16037 – AB 16198; AB 16199 – AB 16219; AB 35196 – AB 35496; AB 38212 – AB 38232; AB 15498 – AB 15518; AB 38793 – AB 38811; AB 15450 – AB 15470; AB 52057– AB 52059; AB 86634; AB 15498 – AB 15518; AB 875 - AB 1046; AB 4712 - AB 04714; AB 4761 - AB 4764; AB 11621 – AB 11647; AB 12271 - AB 12379; AB 17253 - AB 17275; AB 17299 - AB 17300; AB 17575 - AB 17629; AB 17642 - AB 17676; AB 17687 - AB 17688; AB 34683 - AB 34690; AB 34698 - AB 34703; AB 34709; AB 34756 - AB 34765; AB 35813; AB 38318 - AB 38323; AB 38328 - AB 38339; AB 38362 - AB 38367; AB 38393-96; AB 38393 - AB 45377; AB 45381; AB 46692 - AB 46701; AB 46930 - AB 46932; AB 46943 - AB 46948; AB 50840 – AB 50843; AB 51405 - AB 51406; AB 58729 - AB 58730; AB 50764 – AB 50768; AB 0034813 – AB 34814; AB 36266 – AB 36269; AB 36301 – AB 36306; AB 36431 – AB 36433; AB 36447 – AB 36449; AB 36460 – AB 36462; AB 38393 – AB 38396; AB 38425 – AB 38428; AB 38462 – AB |

| | |
|---|---|
| | AB 38464; AB 38471 – AB 38473; AB 38478 – AB 38480; AB 38490 – AB 38492; AB 38501 – AB 38502; AB 38503 – AB 38504; AB 34588; AB 50769 - AB 50771; AB 50902 - AB 50914; AB 51055 - AB 51090; AB 51093 - AB 51150; AB 51323 - AB 51326; AB 51328 - AB 51332; AB 51335 - AB 51341; AB 51344 - AB 51347; AB 60894 - AB 60896 and AB 35497 – AB 35658.<br><br>The cover of the Pro V1 392 & Pro V1 392 (stretched) is softer than the intermediate layer. *See e.g. Id.*<br><br>Therefore, the Pro V1 392 & Pro V1 392 (stretched) satisfies this limitation literally and/or under the Doctrine of Equivalents. |

Bridgestone's responses plainly include citations to numerous documents, largely from Acushnet's files. Acushnet's assertion that Bridgestone told the Court that it would provide more detailed infringement contentions, but "did not do so" is simply incorrect (*id.*). This claim chart entry is representative of the other entries that Bridgestone provided on May 1, 2006 (D.I. 296-97, Vols. 1-2, appendices to Ex. F). It is not surprising that Acushnet did not raise this issue after receiving that supplementation. There was nothing to complain about.

Acushnet then says that Bridgestone's December 18, 2006 supplemental response was "again conclusory" because it stated that (D.I. 295 at 4):

> The accused Pro V1 golf balls have a cover with a thickness within the scope of the claimed range.

Again, Acushnet leaves out the rest of Bridgestone's lengthy response. Bridgestone's claim chart entry for that limitation is reproduced below (and it is representative of the charts that Bridgestone provided for the other limitations at issue on December 18, 2006, *see* D.I. 297, Vol. 2, appendices to Ex. G):

| The '852 Patent | Pro VI golf balls, including golf balls having the sidestamps Pro VI 392, Pro VI 392 (stretched), ◄Pro VI 392►, ◄·Pro VI 392·►, and ◄Pro VI 392► |
|---|---|
| said cover having a thickness of 1 to 3 mm and being softer than said intermediate layer. | The accused Pro VI golf balls have a cover with a thickness within the scope of the claim range. See, e.g., AB 38212-232; AB 15498-5518; AB 38793-8811; AB 15450-470; AB 0038793-8811; AB 38279-299; AB 15542-562; AB 15420-449; AB 15430-449; AB 38340-3861; AB 38532-550; AB 15519-541; AB 86277-86304; ; AB 4631-4633; AB 4634-36; AB 4637-4639; AB 4640-42; AB 4683-85; AB 4686-88; AB 4689-91; AB 4692-4694; AB 4619-4621; AB 4665-4667; ; AB 48178; AB 50821; AB 51522; AB 52047; AB 52049; AB 52057-59; AB 86634; AB 38761-62; AB 50821; AB 50829-832; AB 51522; AB 52046; AB 86634; AB 50821; AB 50826; AB 50827-8; AB 51522; AB 86634; AB 50821; AB 51522; AB 86634; AB 4839-40; AB 4839-40; AB 4839-40; AB 4839-40; AB 11057-1178; AB 11179-1379; AB 11380-1515; AB 11516-1616; AB 12450-13011; AB 13012-3144; AB 16037-6198; AB 37028-37256; AB 37257 - 37523; AB 37707 - 37935; AB 37936 - 38022; AB 16159-6219; AB 38556-3469; AB 35497-35658; AB 27930-28304; AB 28305-29083; AB 29084-9405; AB 27524-7929; AB53357-3411; AB 875 - AB 1046; AB 4712 - AB 04714; AB 4761 - AB 4764; AB 11621 - AB 11647; AB 11789 - AB 11790; AB 12271 - AB 12379; AB 17253 - AB 17275; AB 17299 - AB 17300; AB 17575 - AB 17629; AB 17639 - AB 17641; AB 17642 - AB 17676; AB 17687 - AB 17688; AB 34683 - AB 34690; AB 34698 - AB 34703; AB 34709; AB 34756 - AB 34765; AB 35813; AB 38318 - AB 38323; AB 38328 - AB 38339; AB 38362 - AB 38367; AB 38393-96; AB 38430 - AB 38433; AB 45375 - AB 45377; AB 45381; AB 46692 - AB 46701; AB 46930 - AB 46932; AB 46943 - AB 46948; AB 50840 - AB 50843; AB 51405 - AB 51406; AB 58729 - AB 58730; AB 50764-68; AB 0034813-14; AB 0036266-69; AB 0036301-306; AB 0036431-33; AB 0036447-49; AB 0036460-62; AB 0038393-96; AB 0038425-28; AB 0038462-64;AB 0038471-73; AB 0038478-480;AB 0038490-92;AB 0038501-02;AB 0038503-04; AB 34588; AB 50769 - AB 50771; AB 50902 - AB 50914; AB 51055 - AB 51090; AB 51093 - AB 51323 - AB 51326; AB 51328 - AB 51332; AB 51335 - AB 51341; AB 51344 - AB 51347; AB 60894 - AB 60896; AB 15145-AB 15262; AB 15272-273; AB 15636-AB 16036; AB 35709-712; AB 15856-16036; AB 0110474-0111866; AB 0091268-92335; AB 38639-642; AB 112036-039; AB 113322-24; AB 116295; AB-0090094-0553; AB 0027524-29405; AB38276-277; The Rule 30(b)(6) deposition testimony of Acushnet and any exhibits used in these depositions; the personal depositions of Steven Aoyama, Herb Boehm, Ken Welchman, Chris Cavallaro, Eric Bartsch, Bill Morgan, Jeff Dalton, Michael Jordan, Ed Hebert, Shenshen Wu, Doug Jones, and Laurent Bissonnette, and any exhibits used in |

| The '852 Patent | Pro VI golf balls, including golf balls having the sidestamps Pro VI 392, Pro VI 392 (stretched), ◄Pro VI 392►, ◄·Pro VI 392·►, and ◄Pro VI 392► |
|---|---|
| | these depositions. |
| | Therefore, under the proper construction of this claim limitation and of the disputed language, the accused Pro VI golf balls satisfy this limitation literally. To the extent there are any differences between the claim as construed by the Court and the accused Pro VI golf balls, Bridgestone contends that such differences are insubstantial and hence infringement is under the Doctrine of Equivalents. That is, the difference, if any, between the cover required by the claim as construed by the Court and that found in the accused Pro VI golf balls is insubstantial. |

Acushnet's statement that "it learned no more about Bridgestone's factual contentions for infringement over approximately two years of litigation than it learned when Bridgestone filed its Complaint on March 7, 2005" (D.I. 295 at 3) has no basis whatsoever.

Acushnet also argues that Bridgestone's infringement contentions "asserted literal infringement for each limitation" (D.I. 295 at 6). That is only partially correct – since May 1, 2006, Bridgestone's discovery responses have asserted infringement literally and under the doctrine of equivalents (D.I. 296, Vol. 1, Ex. F at 6 ("Infringement is literal and under the doctrine of equivalents."); D.I. 297, Vol. 2, Ex. G at 5 (noting that the Court's claim construction and expert discovery could influence whether infringement is literal or by equivalents and so Bridgestone "maintains" that the accused products infringe literally and by equivalents)). So do

Acushnet's (White Decl. at ¶8).

        3.      **Acushnet Wanted Test Results From Bridgestone's Experts**

Acushnet says that Bridgestone "provided no measurements or testing data" to support its infringement contentions (D.I. 295 at 6).  It says that it would have liked to have had Bridgestone's experts' test results during fact discovery because it believes the data shows "that the accused Acushnet golf balls did *not* literally meet certain limitations" (*id.*).  Acushnet, however, could have performed (and did perform, in some instances) the same tests that Bridgestone did.  Acushnet certainly had access to the accused golf balls – it has made millions of them.  That Acushnet chose not to run those tests does not mean that it was entitled to Bridgestone's experts' tests earlier than expert discovery or that it can preclude Bridgestone from relying on its experts' data.  It only means that Acushnet can cross-examine Bridgestone's experts and argue its substantive positions to the jury.

Acushnet asks the Court to evaluate Bridgestone's experts' test results to determine whether they factually support Bridgestone's infringement contentions.  That comparison has no legal significance on a motion to preclude.  In any event, Acushnet does not even get the facts in its examples straight.  For example, Acushnet points out that Bridgestone's experts measured two golf balls that had hardness gradients of 20.4 and 20.8, which it argues are outside of the 8 to 20 range in the claim limitation (Bridgestone obviously disagrees) (D.I. 295 at 11-12).  It is surprising that Acushnet takes this position, ████████████████████████

████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████

10.

Moreover, Acushnet uses this hardness gradient example to assert that "these are factual issues that Acushnet should have been able to investigate during fact discovery by, for example, questioning the Bridgestone inventors on the…purported equivalency of Bridgestone's measurements" (D.I. 295 at 12).  It did.  Bridgestone produced testing protocols and its competitive data, and Acushnet spent numerous hours deposing Bridgestone's inventors and engineers about them (in fact, Acushnet did not even seek to depose Katsunori Sato and Hiroyuki Nagasawa, individuals with knowledge of Bridgestone's testing that Bridgestone specifically identified in interrogatory responses) (Ex. 2, Bridgestone's June 28, 2006 7th Supp. Resp. to Acushnet's First Set of Interrogs. at 2).

In any event, Acushnet could not have taken fact discovery about these hardness gradient tests, because they were performed in mid-December, well after the October 10, 2006 close of fact discovery (as Acushnet acknowledges on page 11).  In fact, as shown by Acushnet's Exhibit S (D.I. 298, Vol. 3 of Acushnet's Appendix in Support of Its Motion to Preclude), the vast majority of Bridgestone's testing was completed after October 10, 2006.

In another example, Acushnet says that "none of the core distortion values reported by [Bridgestone's expert Dr.] Caulfield for any of the accused Acushnet golf balls are supported by his raw data" (D.I. 295 at 11).  Acushnet's assertions are based on what appears to be a misunderstanding of that data.  When Acushnet took the depositions of Dr. Caulfield and Kevin Jones (the project manager who performed the tests under Dr. Caulfield's supervision) on March 29 and 30, 2007, however, Acushnet did not attempt to understand this raw data or to ask the witnesses basic questions to learn how to interpret it.

11.

4.    Acushnet's  Responses  To  A  Mirror  Image
Interrogatory Provided A Similar Level Of Detail

Acushnet did not itself do what it now says Bridgestone should have done.  For

example, Acushnet's infringement contentions for its '705 patent have far less detail than

Bridgestone's. ████████████████████████████████

████████████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████████
██████████████████████████████████Acushnet nevertheless complains that "Bridgestone

██████████████████████████simply repeated the language of the limitation" (D.I. 295 at 5).

Acushnet also says that Bridgestone "failed to produce thousands of pages of test

results and data" during fact discovery – all of which were results and data that Bridgestone's

retained experts generated for their reports – in response to its interrogatory 14.[2]  Acushnet,

however, objected to Bridgestone's mirror image interrogatory ██████████████████

──────────────

[1]    For Acushnet's three "dimple patents" (the ones that have already expired or will this
summer), ████████████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████████

[2]    As noted in Bridgestone's sanctions motion, it would not necessarily have conducted
some of that testing had Acushnet produced responsive, non-privileged documents that
were in its files and were kept in the ordinary course of business (D.I. 305 at 33).

12.

████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████

In short, even though Acushnet argues that Bridgestone should have disclosed its expert testing results on a rolling basis, Acushnet itself didn't do that – even though much of the testing referenced in its expert reports had been completed during fact discovery, ███████ ████████████ (of course, as explained in Bridgestone's motion for sanctions, Acushnet also continued to do expert testing after it submitted its reports) (██████████████████ ██████████████████). It is remarkable that, having held its test results until expert discovery, Acushnet argues that it was wrong for Bridgestone to do so.

      B.     Neither Party Identified In Interrogatory Responses All Documents That Its Experts Relied On – And There Is No Requirement To Do So

Fact and expert discovery periods in this case were separate. Thus, it was perfectly appropriate for the parties not to include (and not even be capable of including) in interrogatory responses a list of every single document that its experts decided to rely on months later. In fact, in most of its examples, Acushnet complains that Bridgestone did not identify which of *Acushnet's own documents* or depositions of *Acushnet's own witnesses* it would rely on. The only issue here is about identification of documents in response to interrogatories – not the production of documents by the document production cutoff (which Bridgestone did, but Acushnet didn't).

**Patentability, Infringement and Testing Interrogatories**. Acushnet complains that two of Bridgestone's experts rely on documents and deposition testimony not identified by Bridgestone in response to Acushnet's interrogatory numbers 2 (which only requests an

infringement claim chart) and 14 (which concerns testing of the accused products). For one of the experts, Acushnet directs the Court's attention to the fact that Bridgestone's expert cited three single-page documents and excerpts from two deposition transcripts that were not listed in its interrogatory responses (D.I. 295 at 13). (Acushnet mis-identified the bates numbers for the two of the three documents, *see* Ex. 12, excerpt from Coughlin Report at 22 (citing AB 30829 and AB 87052, not LAN 30829 or LAN 87052)). Acushnet's interrogatory number 2 requested only a claim chart, and did not request an identification of facts or documents. Nevertheless, Bridgestone provided the factual basis for its infringement contentions – which included identifying most of the documents on which its experts actually relied, as shown, for example, by the excerpts in section A.2 (White Decl. ¶¶4-5).

        In contrast, when Acushnet responded to mirror images of those interrogatories (Bridgestone's interrogatory numbers 9 and 32), ████████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████

        That is also the case with respect to Acushnet's complaint that Bridgestone's expert relied on more documents than Bridgestone had identified in response to an interrogatory requesting all documents "relevant to the patentability of the Acushnet Patents" (D.I. 295 at 13). Bridgestone did, in fact, identify most of the documents on which its experts relied – even Acushnet acknowledges that Bridgestone listed "a number of prior art patents," "the prior art of record," and "documents bearing the Bates Nos. BSP096001-98279" (*id.*).

        On the other hand, when Acushnet responded to Bridgestone's mirror image interrogatory no. 36, ████████████████████████████████████████

████████████████████████████████████████████████████████████████████

14.

███████████████████████████████████████████████████████████████

Acushnet's position would lead to more anomalous results. Acushnet included Exhibit Q in its Appendix (D.I. 298, Vol. 3), which is a chart comparing Bridgestone's interrogatory responses and expert reports. On page 4, Acushnet says that Bridgestone's expert Mr. Cadorniga ██████████████████████████████████████████████████

███████████████████████████████████████████████████████████████

██████████████████████ Thus, Acushnet wants Bridgestone to be precluded from relying on deposition testimony for this particular point because Bridgestone didn't list that deposition in an interrogatory response – even as it criticizes Bridgestone's experts for getting that point wrong (according to Acushnet) because Bridgestone did not rely on a document that Acushnet withheld.

**Damages Interrogatories**. Acushnet also argues that Bridgestone "refused" to provide "the identification of any documents that might support Bridgestone's damages" (D.I. 295 at 16), and that Bridgestone's expert relied on documents that had not been identified (although, with the exception of the RoyaltySource license data discussed below, they had all been produced during fact discovery).

The parties asked mirror image damages interrogatories, and answered them in exactly the same way – by leaving the damages calculations to the experts, as is typical in patent infringement cases. Indeed, Acushnet's final supplementation ███████████████████████

15.

[REDACTED]

Neither party identified documents in response to these interrogatories, until, on December 18, 2006, Acushnet identified [REDACTED]

[REDACTED]

Acushnet says that "[d]espite repeated requests," Bridgestone withheld its damages contentions. In fact, Acushnet cites no such instance where this occurred and Bridgestone is not aware of Acushnet complaining about Bridgestone's damages responses during fact discovery. Acushnet, in fact, waited until more than a month after receiving Bridgestone expert's report before complaining. And even now, Acushnet does not complain that Bridgestone did not produce all of the documents, that Bridgestone has not now given it all the damages information it wants, or that Bridgestone's damages report is deficient in any way.

C.    The Parties Proceeded On The Basis That Damages Information Would Come Out In Expert Discovery – Not In Initial Disclosures, And Not In Contention Responses

Acushnet argues that Bridgestone "refused" to provide "any computation or even an estimate of damages," a "basis" for its damages claim, or "a list of individuals with knowledge relevant to Bridgestone's damages" (D.I. 295 at 16). Neither did Acushnet. Acushnet also glosses over the fact that Bridgestone did state that it was seeking damages based on a reasonable royalty, and not lost profits, and the fact that Bridgestone objected to its

16.

interrogatory as premature "because it calls for expert opinion and expert discovery" (D.I. 297,

Vol. 2 of Acushnet's Appendix, at 15).

Patent damages are typically left for the experts. Acushnet acknowledges that as

well, ████████████████████████████████████████████████████████

Bridgestone learned for the first time only in Acushnet's damages expert report that Acushnet

███████████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████████

In fact, both parties provided the same level of detail on damages in their initial

disclosures and discovery responses. Even though Acushnet now says that Bridgestone should

have provided a damages calculation in its initial disclosures, the parties' supplemental initial

disclosures, which were served in September 2006 (Ex. 6, Bridgestone) and October 2006 (Ex. 7,

Acushnet) show that neither party believed that damages had to be disclosed there.[4]   For

example, ████████████████████████████████████████████████████████

███████████████████████████████████████████

Similarly, both parties' responses to essentially the same damages interrogatories

had the same level of detail – ████████████████████████████████████████

---

3   ██████████████████████████████████████████████████████
    ██████████████████████████████████████████████████████
    ██████████████████████████████████████████████████████
    ██████████████████████████████████████████████████████
    ██████████████████████████████████████████████████████

4   Indeed, the 1993 Advisory Committee Notes to Rule 26 make clear that "a party would
    not be expected to provide a calculation of damages [in initial disclosures] which, as in
    many patent infringement actions, depends on information in the possession of another
    party or person."

17.

███████████████████████████████████████████

██████████ (D.I. 297, Vol. 2 of Acushnet's Appendix, at 15 (Bridgestone's Resp. to Acushnet Interrog. 15); Ex. 3 at 77 (Acushnet's Resp. to Bridgestone's Interrog. 21); Ex. 4 at 12-13 (Acushnet's Resp. to Bridgestone's Interrog. 33)).

Acushnet says that "Bridgestone's only damages-related disclosure in the entire period of fact discovery" was its December 18 responses (D.I. 295 at 16). That is incorrect. During fact discovery, Bridgestone produced the damages-related information it had in its possession, custody and control. Nevertheless, Acushnet argues that Bridgestone "intentionally" did not disclose damages facts to "avoid complying with both Acushnet's Interrogatory No. 15 and the requirements of Rule 26(a)(1)(C)." It "substantiates" that claim by stating that Acushnet had produced most of its own damages information before Bridgestone supplemented its initial disclosures in September 2006, and noting that Mr. Jarosz, Bridgestone's damages expert, testified that he "began preparing" Bridgestone's damages claims in 2005 (D.I. 295 at 18-19). Of course, in the same sentence, Acushnet notes that Mr. Jarosz "completed a close approximation of his final report in the fourth quarter of 2006" (*id*. at 19) – so it is difficult to see how Bridgestone could have provided Acushnet with its final calculations before then.[5]

The fact is that Acushnet did not complain about Bridgestone's damages responses before – not during fact discovery, and even not in a timely way after receiving Bridgestone's damages report. It first complained well after both parties submitted their

---

[5]    Acushnet's response to this is that "[e]ven if certain evidence was [sic] not available to Bridgestone before the close of fact discovery, it would have been but for Bridgestone's lack of diligence in pursuing the evidence" (D.I. 295 at 27). Acushnet has no factual basis for that statement, particularly where experts were working towards completion of their testing and reports for the Court-ordered January 2007 expert report deadline.

18.

damages reports and only after Bridgestone told Acushnet that it was going to raise issues about information not disclosed by Acushnet.

<div align="right" style="margin-left:2em">

D.     The Parties Agreed That Experts Could Rely On Documents That Were Located By The Experts In Preparation Of Their Reports

</div>

Acushnet notes that "[s]ome of the documents relied upon, including licensing transactions Bridgestone's expert points to as 'actual transfers of comparable technology,' have never been part of the discovery record or produced at all in the case" (D.I. 295 at 19), and that Bridgestone should be precluded from relying on them. Acushnet is complaining that Bridgestone's damages expert relied on licenses that he found on his own by searching a publicly-available database while preparing his report. These licenses were not in Bridgestone's possession, custody or control (*see* D.I. 302, Vol. 7 of Acushnet's Appendix, Ex. JJ at 26).

This allegation is surprising because this was one thing that the parties were able to agree on during their meet and confer (Ex. 8 [3/19/07 White Ltr to Stasio]). When the shoe was on the other foot, Acushnet asked Bridgestone if it was really going to seek to preclude Acushnet's expert Dr. Felker from relying on publicly-available articles that Acushnet had not produced during fact discovery. After Acushnet's counsel represented that the articles were not from Acushnet's files, but that Dr. Felker located them himself in preparation of his expert report, Bridgestone agreed that it would not do so (*id.*; D.I. 305 at n.5).[6]

---

[6]     Acushnet says that it would have "serv[ed] third party subpoenas for documents and depositions of the parties to those licenses" (for all 34 of them, apparently) (D.I. 295 at 25). But Acushnet had its damages expert log on to RoyaltySource, review the licenses, and explain why he believes that they are not comparable (Ex. 9, excerpts from Kaplan Rebuttal Report at 44-46). Acushnet waited until February 22 – over a month after Mr. Jarosz' report was served, and even after Acushnet's report was served – to raise this issue.

19.

E.   Bridgestone's Reliance On Commercial Success Was
     Properly Disclosed During Fact Discovery

Acushnet asked Bridgestone to "[i]dentify on a claim-by-claim basis all facts that you contend support or evidence such alleged objective evidence of nonobviousness or secondary considerations…that should be considered in determining whether the claim is invalid for obviousness." Bridgestone responded by identifying documents that it would rely on to show commercial success – for example, "the deposition testimony (and related exhibits) of a number of Acushnet and Bridgestone witnesses" (D.I. 295 at 14) and "what it claimed were the Bridgestone golf balls demonstrating the non-obviousness of its technology" (*id.*).

Acushnet now complains that Bridgestone submitted opening reports from Mr. Calabria and Dr. Blair, its "'experts' on the commercial success and nonobviousness of Bridgestone's patents" (D.I. 295 at 14). ███████████████████████████████

███████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████

████████.[7] It is otherwise apparent that these reports are not primarily directed to obviousness – they are opening reports, and Bridgestone does not have the burden of proof on invalidity. Bridgestone's validity experts have separate sections in their rebuttal reports on commercial success (*see, e.g.*, Ex. 10, excerpts from Cadorniga and Calabria rebuttal reports).

---

[7]   Acushnet also says that "notably," Bridgestone's experts rely on the "Altus Newing" golf ball to argue commercial success, when that "is the ball that Court precluded Acushnet's expert to rely upon as invalidating one of Bridgestone's patents-in-suit" (D.I. 295 at 15). That is incorrect. The Court precluded Acushnet from relying on the Altus Newing Massy ball, which is different from the Altus Newing ball.

Similarly, Bridgestone did not submit the opening reports of Messrs. Calabria, Price and Dr. Blair to show that "current or potential customers of each Bridgestone or Nike ball Sold in the United States value the patented feature of the ball, as covered by a Bridgestone patent," as requested by Acushnet's interrogatory 52. Those reports give a technological background of golf ball technology and discuss Bridgestone's innovations.

In any event, even if some of these reports are used as evidence of nonobviousness, Bridgestone's commercial success claim is based on the success of Acushnet's own golf balls – which plainly was disclosed in its interrogatory response (D.I. 297, Vol. 2 of Acushnet's Appendix, Ex. G at 12):

> Bridgestone intends to rely upon the manufacture and sale of Acushnet's infringing golf balls…as evidence of commercial success of the invention claimed in each of the Bridgestone patents.

Acushnet has not even alleged that it has been prejudiced; it provided three declarations – from Messrs. Morgan, Bellis and Love – to rebut Bridgestone's reports.

## ARGUMENT

Acushnet argues that, under Rule 37, a party may not rely on evidence that was not timely disclosed unless the failure to disclose was substantially justified or harmless. That legal framework is simply inapplicable here, because Bridgestone complied fully with its discovery obligations. If, however, the Court were to find any failure to disclose, it was substantially justified and harmless.

Bridgestone does not disagree with the few cases that Acushnet cites in its brief. For example, Bridgestone agrees with Acushnet's citation that "[m]utual knowledge of all relevant facts gathered by both parties is essential to proper litigation" and that "fundamental fairness dictates, at a minimum, that [a party] be required to flesh out the contentions associated

with [an] affirmative defense in sufficient detail to allow [its adversary] to conduct meaningfully discovery concerning it" (D.I. 295 at 20). Bridgestone did exactly what those cases say to do. The real problem is raised by Bridgestone's motion for sanctions – Acushnet did not follow the rules set forth in those cases (or others).

I.    BRIDGESTONE'S DISCLOSURES WERE APPROPRIATE

Acushnet asks the Court to "preclude Bridgestone from relying on any fact evidence in support of its contentions at trial, including hundreds of facts and documents relating to Bridgestone's testing of Acushnet's products, that was in Bridgestone's possession but never disclosed by Bridgestone" during fact discovery (D.I. 295 at 1-2). It seeks to preclude Bridgestone from putting on proof of infringement or damages, even though Bridgestone properly disclosed its infringement and damages contentions during fact and expert discovery.

A.    Bridgestone Properly Disclosed Its Infringement Contentions During Fact Discovery, And Properly Disclosed Its Expert Testing During Expert Discovery

Acushnet has wanted to accelerate expert discovery since the beginning of this case. According to Acushnet, the factual bases for infringement that it wanted during fact discovery were the testing that Bridgestone's experts performed for this litigation. Just as it did in January 2006, Acushnet continues to confuse contentions and factual bases for them, on the one hand, and expert opinion and test results to support those contentions, on the other. There was no requirement for Bridgestone to disclose the testing performed by the experts that it retained for this case during fact discovery, in advance of the expert discovery schedule – and Acushnet has pointed to none. To the contrary, the Court has already told Acushnet that Bridgestone would disclose the test results that its experts performed for this litigation during expert discovery (D.I. 73, Tr. at 29, 36).

The content of expert disclosures is governed by Rule 26(a)(2)(B):

> [T]his disclosure shall, with respect to a witness who is retained or specially employed to provide expert testimony…be accompanied by a written report prepared and signed by the witness. The report shall contain a complete statement of all opinions to be expressed and the basis and reasons therefore; the data or other information considered by the witness in forming the opinions; any exhibits to be used as a summary of or support for the opinions….

The timing of those expert disclosures is governed by Rule 26(a)(2)(C), which provides that "[t]hese disclosures shall be made at the times and in the sequence directed by the court."

Read together, "all opinions to be expressed and the basis and reasons therefore" and "the data or other information considered" are properly disclosed during expert discovery, and not before. *B.C.F. Oil Refining, Inc. v. Consolidated Edison Co.*, 168 F.R.D. 161 (S.D.N.Y. 1996) ("The court's June [Scheduling] Order established both the 'time' and 'sequence' of the disclosure of the expert reports pursuant to Rule 26(a)(2)(C) and Con Edison's attempt[, by requesting the names of plaintiff's expert witnesses and the scope of their testimony,] to circumvent both this Order as well as the time frame established in the Federal Rules for rebuttal disclosures cannot be condoned."); 6 MOORE'S FEDERAL PRACTICE § 26.123 ("To the extent that a party attempts to anticipate mandatory disclosures by serving discovery demands seeking the same information prior to the time that the disclosures are due – e.g., seeking to compel expert information prior to the time that the Rule 26(a)(2) report is due – the discovery demands may be stricken as untimely."); *Auto Meter Prods., Inc. v. Maxima Techs. & Sys., LLC*, C.A. No. 05-4587, 2006 WL 3253636, *5 (N.D. Ill. Nov. 6, 2006) (interrogatories directed to "expert opinions" "are properly addressed pursuant to the expert discovery schedule set by this court").

The Court told Acushnet in January 2006 that testing performed by an expert retained for the litigation is properly disclosed during expert discovery (D.I. 73, Tr. at 29) (agreeing with Bridgestone that actual test results need not be disclosed in response to contention

23.

interrogatories "because you haven't had your experts"). *See also Edward Lowe Indus., Inc. v. Oil-Dri Corp. of America*, C.A. No. 94-7568, 1995 WL 399712 (N.D. Ill. 1995) (denying motion to compel expert testing data before expert disclosures were due, and upholding response to an infringement contention interrogatory that tests were performed and revealed that the accused products "fell within the scope of the '011 patent's claims").

Bridgestone made its expert disclosures in accordance with the scheduling order – on January 16 and February 20, 2007, respectively. The fact that Bridgestone's experts had done some of their testing during the period for fact discovery is irrelevant – and certainly does not show, as Acushnet would have it, any intent by Bridgestone to improperly withhold evidence.[8] The timing of Bridgestone's disclosures was in accord with the rules.

Likewise, Acushnet disclosed the details of some of its test results during expert discovery. Acushnet has the additional problem that its experts relied on testing that Acushnet's employees performed, both for this litigation and unrelated to it. Acushnet improperly disclosed only some of this testing, and withheld the rest.

\*        \*        \*

The Court should also understand that the testing issues raised by Acushnet's motion are very different than the ones raised by Bridgestone's sanctions motion. First, Acushnet withheld competitive testing it performed years ago in the ordinary course of business

---

[8]    Acushnet is absolutely correct that Bridgestone "refused at every turn" to disclose its experts' test results before expert discovery – because that is what the Federal Rules say Bridgestone is supposed to do, and what this Court stated. Bridgestone confirmed that with the Court during the October 2005 and January 2006 discovery conferences, when Acushnet was seeking expert testing information (D.I. 39 at 38-39, D.I. 73 at 29). There is no basis for Acushnet's assertions that Bridgestone willfully "fail[ed] to disclose the factual bases for its contentions" (D.I. 295 at 26).

(*e.g.*, exhibit 48, the dimple characteristics), on which it then sought to rely during expert discovery.  In contrast, Bridgestone produced its competitive testing (and Acushnet does not contend otherwise).   Second, Acushnet withheld its October 2000 opinion of counsel as privileged during fact discovery, and then produced and relied on it during expert discovery. Bridgestone did not.[9] ████████████████████████████████

████████████████████████████████████████████████████████

████████████████ Bridgestone did not rely on any testing conducted by its employees or during the ordinary course of business; it relied on independent experts (including some that have been qualified as experts before this Court).  And Bridgestone did not destroy any test results.

B.    Bridgestone Properly Disclosed The Factual Bases For Its Infringement Contentions, Even Though Acushnet's Interrogatory Did Not Ask For Them

Acushnet complains that Bridgestone provided "no facts" in its infringement contentions (D.I. 295 at 26) because it did not provide its experts' testing.  For the reasons set forth above, there was no need to provide (or even the possibility of providing) expert testing during fact discovery.  In any event, Bridgestone fully disclosed its infringement contentions and the factual basis for them during fact discovery – even though Acushnet's interrogatory did not ask for them.  Acushnet's interrogatory no. 2 asked only:

---

[9]    Although Acushnet says that Bridgestone relied on "claims of work product protection during fact discovery" (D.I. 295 at 1), Acushnet's brief provides no support for that statement.  As Bridgestone explained during the October 2005 hearing, the only testing that it withheld as work product was its own testing that was conducted at the request of counsel in anticipation of this litigation, and on which Bridgestone does not rely (D.I. 39, Tr. at 38-39).

> Describe in detail on an element-by-element basis how you contend each product identified infringes each claim, specifying whether such infringement is alleged to be literal or under the doctrine of equivalents.

This interrogatory simply did not ask for the identification of facts or documents. There is no basis to seek to preclude Bridgestone from relying on documents that were produced during fact discovery, mainly from Acushnet's production, on the basis that they were not identified in response to an interrogatory that did not ask for them to be identified. Acushnet, therefore, cannot rely on *Wesley-Jessen Corp. v. Pilkington Visioncare*, 844 F. Supp. 987 (D. Del. 1994). Unlike Acushnet, the defendant there propounded an infringement contention interrogatory that requested documents and facts. *Id.* at 988.

Moreover, as set forth above, Bridgestone did identify documents supporting its infringement contentions in response to Acushnet's interrogatory. In its brief, Acushnet chose to quote only the first sentence of Bridgestone's response, and ignored Bridgestone's list of documents that followed. Bridgestone's infringement contentions have not changed – its retained experts have conducted tests for this litigation that support the same infringement contentions that Bridgestone told Acushnet back in May 1, 2006.

Acushnet also complains that Bridgestone did not identify "which limitations [it] was asserting literally or under the doctrine of equivalents," which made "Acushnet guess as to what Bridgestone's infringement case will be" (D.I. 295 at 6). That is just wrong. Bridgestone can assert infringement literally, by equivalents, or both. It does not have to choose one theory of infringement over another, particularly when the Court's claim construction has not yet issued. Throughout discovery, Bridgestone contended that Acushnet infringed both literally and by equivalents. This is exactly what Acushnet did too. *See, e.g., Finch v. Hercules Inc.*, 941 F. Supp. 1395, 1425-26 (D. Del. 1996) (in evaluating an award of attorneys fees, stating that "[i]t is

not unreasonable that the number of attorneys used by the defendant at trial should serve as a gauge of the appropriateness of the plaintiff's use of multiple attorneys" because "what is sauce for the goose is sauce for the gander"); *see also Stroman Realty, Inc. v. Antt*, 20 F. Supp. 2d 1050, 1054 (S.D. Tex. 1998) (quoting Justice Holmes: "What's good for the goose is good for the gander…[t]hese aphorisms about double standards and reciprocity are not often jurisprudential, but they articulate an aspect of fair play and substantial justice."); Form Scheduling Order of Chief Judge Robinson ("The adequacy of all [contention] interrogatory answers shall be judged by the level of detail each party provides; i.e., the more detail a party provides, the more detail a party shall receive.") (Ex. 11).

> C.     Bridgestone Properly Identified The Documents On Which
>        Its Experts Will Rely During Expert Discovery

Rule 26(a)(2)(B) and (C) provide that the appropriate time to list "any exhibits to be used as…support for the opinions" is when expert disclosures are due. *E.g.*, *B.C.F. Oil Refining*, 168 F.R.D. 161; *see also BB&T Corp. v. U.S.*, 233 F.R.D. 447 (M.D.N.C. 2006) ("The Court agrees with defendant that when there is an expert report which will touch on the very contentions at issue, the Court should normally delay contention discovery until after the expert reports have been served, which may then render moot any further contention discovery.").

Here, opening expert reports were due on January 16, 2007, and the extended date for rebuttal reports was February 20.  When the parties supplemented their interrogatory responses during fact discovery and again on December 18, 2006, neither of them had to divine every single document on which its experts would rely and list them in response to interrogatories.  Bridgestone actually did a pretty good job predicting – one of Acushnet's complaints is that Bridgestone didn't identify just three documents and two deposition transcripts relied on by its expert.

Acushnet did this too. It responded to mirror image interrogatories by incorporating the expert reports that it would submit during expert discovery – and, not surprisingly, its expert reports included documents that it had not listed in interrogatory responses.

Nevertheless, Acushnet asks that Bridgestone be precluded from relying on documents that it did not list in interrogatory responses because "in many instances, Bridgestone does have timely-disclosed evidence on which it can rely" (D.I. 295 at 28). Bridgestone does have timely-disclosed evidence – the documents that Acushnet complains about were either produced during fact discovery or were located or generated by Bridgestone's experts, who then timely disclosed them during expert discovery. Here, Acushnet's only complaint is that Bridgestone's responses to interrogatories – some of which did not even request documents – did not match up 100% with expert reports that were submitted a month later.

*       *       *

Again, the issue Acushnet raises regarding identification of documents is fundamentally different from the issues Bridgestone raised in its sanctions motion. Bridgestone's motion seeks to preclude Acushnet from using documents (like the dimple exhibit 48, the October 2000 core, the October 2000 opinion of counsel, QAS data, Mesabi data) that Acushnet affirmatively refused to produce during fact discovery (not that it just did not identify in its interrogatory responses). In contrast, Bridgestone's experts relied on documents produced by either party during fact discovery (although they could not consider the untimely documents produced by Acushnet). As explained above, in accordance with the Federal Rules and the scheduling order, only Bridgestone's experts' test results were produced during expert discovery.

28.

This issue is also different than Bridgestone's earlier motion to preclude. Bridgestone successfully moved to preclude Acushnet from essentially ignoring its 1000+ pages of invalidity contentions and, a month before expert reports, choosing to rely on prior art references that it never told Bridgestone it would, in violation of the Court's order and after Bridgestone raised that issue repeatedly during fact discovery.   In contrast, Bridgestone's infringement contentions have stayed the same throughout this case.   It supported those contentions during fact discovery by citing to relevant documents, and offered additional proof of its contentions during expert discovery, when it disclosed its experts' opinions and test results.

<p style="text-align:center;">

D.    Bridgestone And Acushnet Provided The Same Level Of Detail During Fact Discovery For Their Damages Contentions
</p>

Damages contentions are properly reserved for expert discovery. *See, e.g.,* *Lawrence E. Jaffe Pension Plan v. Household Int'l, Inc.*, C.A. No. 02-5893, 2004 WL 2108410, *1 (N.D. Ill. Sept. 21, 2004) (in securities fraud case, denying motion to compel plaintiff to provide amount of damages, computation of damages, and all evidence on which their damages claim is based until expert discovery, when plaintiff said that its damages were "the difference between the price of the stock and its value on the date of the transaction if the full truth were known" and produced documents); *BB&T Corp.*, 233 F.R.D. at 447 ("The Court agrees with defendant that when there is an expert report which will touch on the very contentions at issue, the Court should normally delay contention discovery until after the expert reports have been served, which may then render moot any further contention discovery.").

That's exactly what both parties did here.   Bridgestone responded that it was relying on a reasonable royalty; ███████████████████████████████

████████████████████████████████████████████████████

29.

### E.    Acushnet's Other Allegations

Acushnet makes two other allegations.  The parties agreed when meeting and conferring about this motion and Bridgestone's sanctions motion that experts could rely on documents that were not in the party's possession, custody or control, but that the experts located in preparing their reports.  Having made that agreement for its own expert's reliance on certain articles, Acushnet cannot now challenge Bridgestone's expert's reliance on licensing data from RoyaltySource (particularly when Acushnet submitted a rebuttal report using that same data).

Second, Acushnet's allegation that Bridgestone did not answer its commercial success interrogatory is misplaced – the reports it cites simply were not provided for the purpose of demonstrating that Bridgestone's patents are valid, but to explain the history and technology of golf balls, and how Acushnet copied Bridgestone's technology.  The expert testimony and opinions that Bridgestone will use to support its commercial success claims are found in, for example, Messrs. Cadorniga's and Calabria's rebuttal reports.

### II.    ACUSHNET'S EXAMPLES OF "PREJUDICE" ARE REALLY A DISAGREEMENT WITH BRIDGESTONE'S EXPERTS' CONCLUSIONS

As demonstrated above, Bridgestone complied fully with its discovery obligations.  Even if the Court were to find that it did not, any failure was substantially justified given the Court's comments at the October 2005 and January 2006 hearings and Acushnet's own discovery conduct.  Acushnet, however, devotes a large portion of its brief explaining how Bridgestone "has prejudiced Acushnet and has unnecessarily complicated the issues for trial" (D.I. 295 at 22).  First, Acushnet did nothing between May 2006 and February 22, 2007 to raise

30.

these issues, demonstrating that it was not, in fact, prejudiced. Second, the prejudice that Acushnet alleges is a series of disagreements with Bridgestone's experts' testing protocols, its experts' results, or both. That is fodder for cross-examination at trial – but is not a basis to preclude Bridgestone from relying on its experts' test results.

> A.    Acushnet's Claims Of Prejudice Are Belied By The Timing
> Of Its Complaints

Acushnet waited until the middle of expert discovery to raise issues about what it thought Bridgestone should have done during fact discovery. It did so even though the Court invited it to come back if it were not satisfied, and even though the parties were before the Court on July 10, August 2 and November 29, 2006. That delay belies its assertion that it is prejudiced. *See Mosaid Techs. Inc. v. Samsung Elecs. Co., Ltd.*, 362 F. Supp. 2d 526, 559 (D.N.J. 2005) (denying Mosaid's motion to strike expert report that contained non-infringement contentions not disclosed during discovery in part because "Mosaid did not complain at [the status conference setting expert discovery] that Infineon had not provided a response to a contention interrogatory."); *Review Directories Inc. v. McLeod USA Publishing Co.*, C.A. No. 99-958, 2001 WL 34054519, *4 (W.D. Mich. July 23, 2001) (similar). Acushnet waited even after Bridgestone flagged these issues in its discovery responses, by telling Acushnet that it was planning to provide some of the information Acushnet was seeking during expert discovery.

Of the issues raised in its brief, the only ones that Acushnet raised during fact discovery related to the adequacy of Bridgestone's infringement contentions. The Court told Acushnet – twice – that its complaints were too early, and directed it to come back after the final

contention date, May 1, 2006.[10]  Acushnet knew that it could come back, because it filed four

Rule 37 motions in June 2006 (D.I. 114-17).  Those motions, however, related to completely

different issues than the ones it raises in this motion.  Instead, Acushnet waited until February

22, 2007 to raise these issues with Bridgestone, after it had been precluded from relying on

certain prior art references and after Bridgestone began raising the issues in its sanctions motion.

That Acushnet did not raise this issue after receiving that Bridgestone's infringement contentions

is not surprising – there was nothing to complain about.

        B.      Acushnet's Examples of Supposed Prejudice

        Acushnet says that it "is not able to solicit fact discovery on the evidence relied

upon by Bridgestone" in its expert reports (D.I. 295 at 22).  The examples that it gives, however,

reflect only Acushnet's disagreement with Bridgestone's test results.  Acushnet has not been

prejudiced.  Expert discovery frequently involves disagreements about the other side's testing

and conclusions, attempt to rebut them with rebuttal reports, and attempts to discredit them

during expert depositions and at trial.

        **100 kg Testing**.  Acushnet first says that its expert used a different rate than

Bridgestone's expert in performing a test that measures the distortion of a golf ball core when a

100 kg load is applied (D.I. 295 at 23).  Acushnet now says that it is prejudiced somehow by the

fact that the parties' experts used two different rates.  Bridgestone's experts did its tests the way

---

[10]     For this reason, Acushnet's citation to *Wesley-Jessen Corp. v. Pilkington Visioncare,*
*Inc.*, 844 F. Supp. 987 (D. Del. 1994), is distinguishable.  There, the defendant came to
the court at the appropriate time and asked for relief.  The court noted that defendant
"raise[d] the question of what relief, if any, the Court can grant to ensure that Visioncare
has an adequate opportunity to obtain discovery on the factual basis for Wesley-Jessen's
contentions."  *Id.* at 990.  "In this context," the court said, it exercised its authority and
allowed Wesley-Jessen to supplement and limited its contentions.

32.

they did for its own reasons – and Acushnet was free to, and did, explore them during expert

discovery (and Acushnet also explored Bridgestone's own internal test protocols during

depositions of Bridgestone's employees during fact discovery).  The jury can hear both experts

and decide which test should be applied.  The fact that Acushnet disagrees with Bridgestone's

methodology is no reason to strike it!

There is another issue with the 100 kg testing.  In its Motion to Withdraw

Admissions, Acushnet says that trial on the merits would not be served if it is not permitted to

withdraw an admission based on this 100 kg distortion limitation.  On September 8, 2006,

Bridgestone asked Acushnet to admit that the NXT Tour balls "have a core having a distortion of

2.9 to 4.0 mm under a load of 100 kg" (D.I. 295 at 2).  After Acushnet asked for an extension

until December 2006 to respond, Bridgestone performed its own testing.  Bridgestone's expert,

11

**5 mm Tests**.  Acushnet also argues that it is prejudiced because the method that Bridgestone's experts used to measure hardness at 5 millimeters from a golf ball core's surface is one "that Bridgestone's experts came up with on their own" (D.I. 295 at 24).  So?

Acushnet then states that, "[a]fter reviewing Bridgestone's report, Acushnet performed tests for hardness at 5mm from the core surface using a technique [allegedly] conventionally employed in the golf ball industry" (*id.*).  That is exactly what is supposed to happen during expert discovery – as the Court noted in January 2006, "if you get different [test] results, then we've got some fun" (D.I. 73 at 8).  That Acushnet believes that Bridgestone's tests do not support its contentions is not a basis for preclusion.  That is another issue for cross examination at trial.

**No Joint Testing**.  Acushnet asserts that, "[r]ather than trying to focus the issues for trial, however, Bridgestone chose to reject joint testing, hid the results of its own testing until after the close of fact discovery, and has now created a situation where it is too late for Acushnet" to get certain fact discovery (D.I. 295 at 24).  Acushnet cannot be prejudiced because it did not test some of the millions of golf balls that it manufactures each year.  When Acushnet raised this issue in January 2006, the Court told it that "I'm not going to dictate a specific method to accomplish the testing" (D.I. 73, Tr. at 15); and, when Acushnet kept arguing for joint testing, said "[a]nd what I said is you don't have to do that" (*id.* at 17).  Moreover, Acushnet initially proposed joint tests of prior art golf balls of which there were a limited quantity.

Bridgestone did not reject joint testing of such balls, but asked Acushnet to propose a protocol for the joint testing. It never did.[12]

        **The RoyaltySource Licenses.** Finally, Acushnet asserts that it needs fact discovery about the thirty-four licenses from RoyaltySource, which "would entail serving third-party subpoenas for documents and depositions" (D.I. 295 at 25). Acushnet concludes that "[t]his Court has already found that 'any additional discovery that would be required to afford [Acushnet] a fair opportunity to respond would necessarily require extensions of the deadlines set by the Court in its Scheduling Orders'" (D.I. 288 at 11). The Court's quote, of course, actually referred to Bridgestone, not Acushnet, when the Court precluded Acushnet from relying on certain undisclosed prior art references. In any event, there is no prejudice, as Acushnet's damages expert has already logged on to RoyaltySource and opined that he believes the licenses on which Bridgestone's expert relied are inapplicable (Ex. 9).

III.     ACUSHNET SHOULD NOT BE PERMITTED TO WITHDRAW ADMISSIONS

        The parties agree that, pursuant to Federal Rule of Civil Procedure 36, the Court may permit withdrawal of an admission "when the presentation of the merits of the action will be subserved thereby and the party who obtained the admission fails to satisfy the court that withdrawal or amendment will prejudice him in maintaining his action on the merits." Fed. R. Civ. P. 36(b); (D.I. 311 at 4).

---

[12]    This relates to the issue on page 9 of Bridgestone's brief in support of its motion for sanctions (D.I. 305), where Acushnet reneged on its agreement not to destructively test these limited numbers of golf balls.

35.

Here, Acushnet wants to withdraw an admission it made in December 2006



Bridgestone did rely on Acushnet admissions to support its own testing generally, and specifically for one version of the NXT Tour ball that was unavailable for testing.    Bridgestone would be prejudiced if Acushnet were allowed to withdraw its admissions.

<div align="center">CONCLUSION</div>

Bridgestone requests that the Court deny Acushnet's Motions to Preclude and to Withdraw Its Admissions.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Leslie A. Polizoti*

Jack B. Blumenfeld (#1014)
Maryellen Noreika (#3208)
Leslie A. Polizoti (#4299)
1201 N. Market Street, P.O. Box 1347
Wilmington, DE 19801
(302) 658-9200
*Attorneys for Bridgestone Sports Co., Ltd.*
*and Bridgestone Golf, Inc.*

36.

OF COUNSEL:

Robert M. Masters
Scott M. Flicker
Terrance J. Wikberg
Brandon M. White
PAUL, HASTINGS, JANOFSKY & WALKER LLP
875 15th St., N.W.
Washington, DC 20005
(202) 551-1700

April 3, 2007

## CERTIFICATE OF SERVICE

I certify that on April 10, 2007 I electronically filed the foregoing with the Clerk

of the Court using CM/ECF, which will send notification of such filing(s) to the following:

Richard L. Horwitz, Esquire
POTTER ANDERSON & CORROON LLP
Hercules Plaza, 6th Floor
1313 North Market Street
Wilmington, DE  19801

I further certify that I caused copies to be served upon the following on April 10,

2007 in the manner indicated:

### BY HAND & E-MAIL

Richard L. Horwitz, Esquire
POTTER ANDERSON & CORROON LLP
1313 N. Market Street
Wilmington, DE  19801

### BY EMAIL and FEDERAL EXPRESS

Joseph P. Lavelle, Esquire
HOWREY LLP
1299 Pennsylvania Avenue, NW
Washington, DC  20004

_/s/ Leslie A. Polizoti_____
Leslie A. Polizoti (#4299)
MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Wilmington, DE  19801
(302) 658-9200
lpolizoti@mnat.com

# EXHIBIT 1

REDACTED

# EXHIBIT 2

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

BRIDGESTONE SPORTS CO., LTD.,　　)
and BRIDGESTONE GOLF, INC.,　　　)
　　　　　　　　　　　　　　　　)
　　　　　　　　　Plaintiffs,　　　)　　　C.A. No. 05-132 (JJF)
　　　　　　　　　　　　　　　　)
　　　v.　　　　　　　　　　　　)
　　　　　　　　　　　　　　　　)
ACUSHNET COMPANY,　　　　　　　)
　　　　　　　　　　　　　　　　)
　　　　　　　　　Defendant.　　　)

## PLAINTIFFS' SEVENTH SUPPLEMENTAL RESPONSE
## TO DEFENDANT'S FIRST SET OF INTERROGATORIES

Pursuant to Rule 33 of the Federal Rules of Civil Procedure, Plaintiffs Bridgestone Sports Co., Ltd., and Bridgestone Golf, Inc. (individually or collectively "Bridgestone") hereby supplements its responses to Defendant's First Set of Interrogatories to Plaintiff.

## GENERAL OBJECTIONS

The General and Specific Objections set forth in Plaintiffs' First Responses to Defendant's First Set of Interrogatories, Plaintiff's First Supplemental Responses to Defendant's First Set of Interrogatories, Plaintiff's Second Supplemental Responses to Defendant's First Set of Interrogatories, Plaintiff's Third Supplemental Responses to Defendant's First Set of Interrogatories, Plaintiff's Fourth Supplemental Responses to Defendant's First Set of Interrogatories, Plaintiff's Fifth Supplemental Responses to Defendant's First Set of Interrogatories, and Plaintiff's Sixth Supplemental Responses to Defendant's First Set of Interrogatories are incorporated herein by reference.

Subject to, and without waiving, any of the General and Specific Objections, Bridgestone hereby supplements its response to Interrogatory No. 14 as follows:

## INTERROGATORIES

### INTERROGATORY NO. 14.

Separately for each claim and each product identified in RESPONSE TO INTERROGATORY NO. 1, describe all testing, analysis and/or evaluation by you or on your behalf of such products, including the type of test(s) performed, the testing equipment, test parameters and conditions, and all facts, opinions or results obtained, and identify all documents referring or relating to such testing, analysis and/or evaluation and the persons who are most knowledgeable of such testing, analysis, and/or evaluation.

### RESPONSE TO INTERROGATORY NO. 14

In addition to the General Objections, Bridgestone objects to the interrogatory as being a multiple and compound request constituting more than one interrogatory. Further, Bridgestone objects to the interrogatory as being overly broad, unduly burdensome and oppressive. Bridgestone also objects to the interrogatory as premature, since it calls for expert opinion and expert discovery. Subject to and without waiving the general and specific objections, see Bridgestone's response to Interrogatory No. 13.

Bridgestone reserves the right to later amend or supplement its disclosures after further investigation, discovery and based on positions taken by, or contentions of, Acushnet.

### SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 14

Subject to and without waiving the general and specific objections in Bridgestone's previous response to Interrogatory No. 14, Bridgestone supplements its previous response as follows:

| INDIVIDUAL MOST KNOWLEDGEABLE | TEST TYPE |
|---|---|
| Atsuki Kasashima | Dimples and Aerodynamic Properties |
| Katsunori Sato | Dimples and Aerodynamic properties |
| Hideo Watanabe | Physical Properties |
| Hiroyuki Nagasawa | Materials; Covers |

Bridgestone reserves the right to later amend or supplement its responses after further investigation, discovery and review of positions taken by, or contentions of, Acushnet.

As to objections:

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

_____
Jack B. Blumenfeld (#1014)
Maryellen Noreika (#3208)
Leslie A. Polizoti (#4299)
1201 N. Market Street
P.O. Box 1347
Wilmington, DE  19801
(302) 658-9200
    *Attorneys for Plaintiffs*

OF COUNSEL:

Robert M. Masters
Scott M. Flicker
Terrance J. Wikberg
Brandon M. White
PAUL, HASTINGS,
    JANOFSKY & WALKER LLP
825 15th Street, N.W.
Washington, DC  20005
(202) 551-1700

June 28, 2006

## **VERIFICATION**

I hereby declare under penalty of perjury under the laws of the United States that the facts set forth in the foregoing **PLAINTIFF'S SEVENTH SUPPLEMENTAL RESPONSE TO DEFENDANT'S FIRST SET OF INTERROGATORIES (NO. 14)** are true and correct to the best of my present knowledge and beliefs, although the truth of the entirety of each said response may not be known to me personally because said responses are based in part upon information received from others, and that I am authorized to execute this Verification on behalf of Plaintiff Bridgestone Sports Co., Ltd and Bridgestone Golf, Inc.

Dated: June ___, 2006            _____
                                          Jun Ichinose

<u>CERTIFICATE OF SERVICE</u>

I, Maryellen Noreika, hereby certify copies of the foregoing were caused to be served this 28th day of June, 2006 upon the following in the manner indicated:

**<u>BY HAND</u>**

Richard L. Horwitz
Potter Anderson & Corroon LLP
1313 N. Market Street
Wilmington, DE 19801

**<u>BY FEDERAL EXPRESS</u>**

Brian S. Seal
Howrey LLP
1299 Pennsylvania Avenue, NW
Washington, DC 20004

Maryellen Noreika

# EXHIBIT 3

REDACTED

# EXHIBIT 4

REDACTED

# EXHIBIT 5

REDACTED

# EXHIBIT 6

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| BRIDGESTONE SPORTS CO., LTD.,<br>and BRIDGESTONE GOLF, INC., | ) | |
| | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | C.A. No. 05-132 (JJF) |
| | ) | |
| ACUSHNET COMPANY, | ) | |
| | ) | |
| Defendant. | ) | |

## AMENDED INITIAL DISCLOSURES OF
## PLAINTIFFS PURSUANT TO FED. R. CIV. P. 26(a)

Pursuant to Fed. R. Civ. P. 26(a), Plaintiffs Bridgestone Sports Co., Ltd. and Bridgestone

Golf, Inc. ("Bridgestone"), through their attorneys, make the following Amended Initial

Disclosures:

The disclosures are based on information presently known to and/or reasonably available

to Bridgestone as of this date.  Continuing investigation and discovery may alter these

disclosures.  Moreover, the disclosures herein are based on Bridgestone's present understanding

of defendant Acushnet Company's (hereinafter "Acushnet") claims and defenses.  Factual and

legal investigations are continuing, and Bridgestone reserves its right to supplement.

By making these disclosures and identifying certain individuals, document categories and

locations thereof, Bridgestone does not represent that it is identifying every document, tangible

thing or witness which may be relevant to the issues in this lawsuit, or on which Bridgestone

may rely in support of its claims or defenses.  Nor does Bridgestone waive its rights to object to

the disclosure of any person, document or thing on the basis of any applicable privilege, the work

product doctrine, relevancy, competency, materiality, undue burden, hearsay, or any other

objection in response to any discovery request or proceeding in this case.  Rather, Bridgestone's

disclosures represent a good faith effort to identify information it reasonably believes are discoverable and relevant to the factual disputes alleged in the pleadings as required by Fed. R. Cir. P. 26(a)(1).

All of the disclosures set forth below are made subject to the above objections and qualifications.

**A.      The name, and if known, the address, and telephone number of each individual likely to have discoverable information that Bridgestone may use to support its claims or defenses, with identification of the subjects of the information.**

Bridgestone identifies at least the following individuals, presently known by Bridgestone, who may have discoverable information to support Bridgestone's claims and defenses.

1.      **Yoshinori Egashira**, inventor of U.S. Patent Nos. 5,252,652 ("the '652 Patent"), 5,553,852 ("the '852 Patent"), and 5,743,817 ("the '817 Patent").

Address and Telephone:

> Bridgestone Sports Co., Ltd.
> Omori Bellport E Bldg. 6-22-7
> Minami-oi, Shinagawa-ku
> Tokyo, 140 Japan

Knowledge and facts relevant to the '652, '852, and '817 Patents, and to the development of the subject matter of those patents; information relating to the design, development, structure and performance of one or more of the accused Bridgestone products.

2.      **Kazuyuki Takahashi**, inventor of the '652 Patent.

Address and Telephone:

> Bridgestone Sports Co., Ltd.
> Omori Bellport E Bldg. 6-22-7
> Minami-oi, Shinagawa-ku
> Tokyo, 140 Japan

Knowledge and facts relevant to the '652 Patent, and to the development of the subject matter of that patent.

3.    **Seisuke Tomita**, inventor of the '652 Patent.

Address and Telephone:

      Bridgestone Sports Co., Ltd.
      Omori Bellport E Bldg. 6-22-7
      Minami-oi, Shinagawa-ku
      Tokyo, 140 Japan

Knowledge and facts relevant to the '652 Patent, and to the development of the subject matter of that patent; information relating to the general business of Bridgestone and the accused Bridgestone products.

4.    **Hiroshi Higuchi**, inventor of U.S. Patent Nos. 5,782,707 ("the '707 Patent"), 6,634,961 ("the '961 Patent"), and the '852 Patent.

Address and Telephone:

      Bridgestone Sports Co., Ltd.
      Omori Bellport E Bldg. 6-22-7
      Minami-oi, Shinagawa-ku
      Tokyo, 140 Japan

Knowledge and facts relevant to the '707, '961 and '852 Patents, and to the development of the subject matter of those patents.

5.    **Hisashi Yamagishi**, named inventor of U.S. Patent No. 5,803,834 ("the '834 Patent"), the '852 Patent, the '817 Patent, and the '707 Patent.

Address and Telephone:

      Bridgestone Sports Co., Ltd.
      Omori Bellport E Bldg. 6-22-7
      Minami-oi, Shinagawa-ku
      Tokyo, 140 Japan

-3-

Knowledge and facts relevant to the '834, '852, '817, and '707 Patents, and to the development of the subject matter of those patents.

6.   **Tadatoshi Yamada**, named inventor of the '852 Patent.

Address and Telephone:

    Bridgestone Sports Co., Ltd.
    Omori Bellport E Bldg. 6-22-7
    Minami-oi, Shinagawa-ku
    Tokyo, 140 Japan

Knowledge and facts relevant to the '852 Patent, and to the development of the subject matter of that patent.

7.   **Hideo Watanabe**, named inventor of U.S. Patent No. 6,679,791 ("the '791 Patent"), and the '817 Patent.

Address and Telephone:

    Bridgestone Sports Co., Ltd.
    Omori Bellport E Bldg. 6-22-7
    Minami-oi, Shinagawa-ku
    Tokyo, 140 Japan

Knowledge and facts relevant to the '791 and '817 Patents, and to the development of the subject matter of those patents.

8.   **Jun Shindo**, inventor of the '834 Patent.

Address and Telephone:

    Bridgestone Sports Co., Ltd.
    Omori Bellport E Bldg. 6-22-7
    Minami-oi, Shinagawa-ku
    Tokyo, 140 Japan

Knowledge and facts relevant to the '834 Patent, and to the development of the subject matter of that patent.

-4-

9.     **Atsushi Nanba**, inventor of the '961 Patent.

Address and Telephone:

> Bridgestone Sports Co., Ltd.
> Omori Bellport E Bldg. 6-22-7
> Minami-oi, Shinagawa-ku
> Tokyo, 140 Japan

Knowledge and facts relevant to the '961 Patent, and to the development of the subject

matter of that patent.

10.     **Neil Siegel**.

Address and Telephone:

> Sughrue Mion, PLLC
> 2100 Pennsylvania Ave., NW
> Washington, DC 20037
> (202) 293-7060

General knowledge relevant to the prosecution of the Bridgestone patents in suit, and

knowledge pertaining to the prosecution of the '852, '707 and '834 Patents.

11.     **Dan Murphy**.

Address and Telephone:

> Bridgestone Golf, Inc.
> 14320 Lochridge Blvd.
> Covington, GA 30014

Information relating to Bridgestone's marketing, strategy, and business development

relating to one or more of the accused Bridgestone products.

12.     **Shigeru Nakayama**.

Address and Telephone:

> Bridgestone Golf, Inc.
> 14320 Lochridge Blvd.
> Covington, GA 30014

Information relating to marketing and sales of Bridgestone products in the United States, and information relating to marketing, strategy and business development relating to one or more of the accused Bridgestone products.

All correspondence and contact with any of the above-named witnesses should be made in care of Bridgestone's attorneys at:

> Robert M. Masters
> Paul, Hastings Janofsky & Walker, LLC
> 875 15th Street, N.W.
> Washington, DC 20005
> (202) 551-7100

13.     **Francis deS. Lynch,** named inventor of U.S. Patent Nos. 4,729,861 ("the '861 Patent"), 4,936,587 ("the '587 Patent") and 5,080,367 ("the '367 Patent").

Address and Telephone:

> Mattapoisett, Massachusetts

Knowledge and facts relevant to the '861, '587 and '367 Patents, and to the development of the subject matter of those patents.

14.     **Jeffrey L. Dalton.**

Address and Telephone:

> Acushnet Co.
> 333 Bridge St.
> Fairhaven, MA 02719
> (508) 979-3534

Knowledge and facts related to the development, manufacture, testing, properties, marketing and/or sales of one or more of the accused Acushnet golf balls.

15.    **Shenshen Wu**, named inventor of the '705 Patent.

Address and Telephone:

North Dartmouth, Massachusetts

The Hanson Group, LLC.
340 Hurstbourne Lane
Suite 210
Duluth, GA 30097
(770) 495-9554

Knowledge and facts relevant to the '705 Patent, and to the development of the subject matter of that patent. Knowledge and facts related to the development, manufacture, testing, properties, marketing and/or sales of one or more of the accused Acushnet golf balls.

16.    **David A. Bulpett**, named inventor of the '705 patent.

Address and Telephone:

Acushnet Co.
333 Bridge St.
Fairhaven, MA 02719
(508) 979-3534

Knowledge and facts relevant to the '705 Patent, and to the development of the subject matter of that patent. Knowledge and facts related to the development, manufacture, testing, properties, marketing and/or sales of one or more of the accused Acushnet golf balls.

17.    **Herbert Boehm.**

Address and Telephone:

Acushnet Co.
333 Bridge St.
Fairhaven, MA 02719
(508) 979-3534

Knowledge and facts related to the development, manufacture, testing, properties, marketing and/or sales of one or more of the accused Acushnet golf balls.

18.   **Bill Burke.**

Address and Telephone:

>   Acushnet Co.
>   333 Bridge St.
>   Fairhaven, MA 02719
>   (508) 979-3534

Knowledge and facts related to the development, manufacture, testing, properties, marketing and/or sales of one or more of the accused Acushnet golf balls.

19.   **Bill Morgan.**

Address and Telephone:

>   Acushnet Co.
>   333 Bridge St.
>   Fairhaven, MA 02719
>   (508) 979-3534

Knowledge and facts related to the development, manufacture, testing, properties, marketing and/or sales of one or more of the accused Acushnet golf balls.

20.   **Eric Bartsch.**

Address and Telephone:

>   Acushnet Co.
>   333 Bridge St.
>   Fairhaven, MA 02719
>   (508) 979-3534

Knowledge and facts related to the development, manufacture, testing, properties, marketing and/or sales of one or more of the accused Acushnet golf balls.

21. **Chris Cavallaro.**

Address and Telephone:

> Acushnet Co.
> 333 Bridge St.
> Fairhaven, MA 02719
> (508) 979-3534

Knowledge and facts related to the development, manufacture, testing, properties, marketing and/or sales of one or more of the accused Acushnet golf balls.

22. **Derek Ladd.**

Address and Telephone:

> Acushnet Co.
> 333 Bridge St.
> Fairhaven, MA 02719
> (508) 979-3534

Knowledge and facts related to the development, manufacture, testing, properties, marketing and/or sales of one or more of the accused Acushnet golf balls.

23. **Ken Welchman.**

Address and Telephone:

> Acushnet Co.
> 333 Bridge St.
> Fairhaven, MA 02719
> (508) 979-3534

Knowledge and facts related to the development, manufacture, testing, properties, marketing and/or sales of one or more of the accused Acushnet golf balls.

24.   **Peter Voorheis**, named inventor of the '705 patent.

Address and Telephone:
> c/o Howrey LLP
> 1299 Pennsylvania Ave., N.W.
> Washington, DC 20004

Knowledge and facts relevant to the '705 Patent, and to the development of the subject matter of that patent.  Knowledge and facts related to the development, manufacture, testing, properties, marketing and/or sales of one or more of the accused Acushnet golf balls.

25.   **Stan Grissinger**, NIKE, Inc.

> Nike World Headquarters
> One Bowerman Drive
> Beaverton, OR 97005-6453

Information relating to golf balls and, in particular, the accused Nike golf balls.

26.   **John Mulgrew**.

Address and Telephone:
> Microsoft Corporation
> One Microsoft Way
> Redmond, Washington 98052
> (425) 882-89080

Knowledge pertaining to the '705 Patent, and the preparation, filing and prosecution of the applications for that patent.

27.   **Fumio Tsutsumi**, JSR Corporation, General Manager, Technology Planner, Elastomers & Emulsions

Address and Telephone:
> JSR Corporation
> Hamarikyu Park Side Place 5-6-10
> Tsukiji, Chuo-ku
> Tokyo 104-8410 Japan

-10-

Information relating to BR11, BR18 and other rubber materials used in the manufacture of golf balls.

28.    **Michael Jordan.**

Address and Telephone:

   TaylorMade-Adidas Golf
   5545 Fermi Court
   Carlsbad, CA 92008-7324

Knowledge and facts related to the development, manufacture, testing, properties, marketing and/or sales of one or more of the accused Acushnet golf balls.

**B.    A description by category and location of documents, data compilations, and tangible things in the possession, custody, or control of Bridgestone that they may use to support its claims or defenses.**

Bridgestone provides the following description by category and location of documents within its possession that it may use to support its claims and defenses:

1.    Patent-related documents, including each of the Bridgestone patents-in-suit, their prosecution histories, and related documents. These documents and things can be found at the following locations.

   A.    **Bridgestone Sports Co., Tokyo, Japan**

2.    Documents and things relating to the design, development, structure, testing and performance of the accused Bridgestone products. These documents can be found at the following locations.

   A.    **Bridgestone Sports Co., Ltd., Chichibu, Japan**

   B.    **Bridgestone Golf, Inc., Covington, GA, USA**

3.    Documents and things relating to the manufacture of the accused Bridgestone products. These documents and things can be found at the following locations.

-11-

     A.    **Bridgestone Sports Co., Ltd., Chichibu, Japan**

     B.    **Bridgestone Golf, Inc., Covington, GA, USA**

     C.    **Bridgestone Sports Co., Ltd., Seki, Japan**

4.    Documents and things relating to the sales of the accused Bridgestone products in the U.S. These documents and things can be found at the following locations.

     A.    **Bridgestone Sports Co., Ltd., Tokyo, Japan**

     B.    **Bridgestone Golf, Inc., Covington, GA, USA**

5.    Invalidity and unenforceability documents and things, including:

     i.    prior art to the '861, '587, '367 and '705 Patents, including documents and things showing prior art sales, offers for sale, public use, and public disclosure of those patents; and ii. documents and things showing that the '705 Patent is unenforceable. These documents can be found at

     A.    **Bridgestone Sports Co., Ltd., Tokyo, Japan**

     B.    **Acushnet Company**

6.    Documents relating to licensing negotiations between Bridgestone and Acushnet regarding the patents-in-suit. These documents and things can be found at

     A.    **Bridgestone Sports, Co., Ltd., Tokyo, Japan.**

To the extent that these documents are in Bridgestone's possession, custody or control, and not protected by the attorney-client privilege or the attorney work product doctrine, they will be made available for inspection.

Bridgestone expressly reserves the right to identify additional documents, data compilations and tangible things as Bridgestone learns of such documents, data compilations and tangible things during the course of discovery and further investigation in this case.

    **C.**     **A computation of any category of damages claimed by the disclosing party, making available for inspection and copying as under Rule 34 the documents or other evidentiary material, not privileged or protected from disclosure, on which such computation is based, including materials bearing on the nature and extent of injuries suffered.**

Bridgestone believes that the information that forms a basis for computation of damages for its claims against Acushnet is in the possession of Acushnet. Accordingly, Bridgestone cannot make a computation of damages at this time. However, Bridgestone seeks all damages permitted by the patent statutes, and including costs and expenses to Bridgestone for bringing suit and defending the counterclaims, including reasonable attorney's fees.

    **D.**     **Copies of pertinent insurance policies:**

Bridgestone is unaware of any pertinent insurance agreements at this time. However, Bridgestone reserves the right to supplement this response if any pertinent insurance agreements are later identified.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

_signature_

Jack B. Blumenfeld (#1014)
Maryellen Noreika (#3208)
Leslie A. Polizoti (#4299)
1201 N. Market Street
P.O. Box 1347
Wilmington, DE 19801
(302) 658-9200
jblumenfeld@mnat.com
    *Attorneys for Bridgestone Sports Co., Ltd. and*
    *Bridgestone Golf, Inc.*

-13-

OF COUNSEL:

Robert M. Masters
Scott M. Flicker
Terrance J. Wikberg
Brandon M. White
PAUL, HASTINGS,
   JANOFSKY & WALKER LLP
825 15th Street, N.W.
Washington, DC 20005
(202) 551-1700

September 12, 2006
536784

<u>**CERTIFICATE OF SERVICE**</u>

The undersigned hereby certifies that copies of the foregoing were caused to be served this 12th day of September, 2006 upon the following in the manner indicated:

<u>**BY HAND**</u>

Richard L. Horwitz
Potter Anderson & Corroon LLP
1313 N. Market Street
Wilmington, DE 19801

<u>**BY FEDERAL EXPRESS**</u>

Alan M. Grimaldi
Howrey LLP
1299 Pennsylvania Avenue, NW
Washington, DC 20004

Jack B. Blumenfeld

# EXHIBIT 7

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| BRIDGESTONE SPORTS CO., LTD., and BRIDGESTONE GOLF, INC., | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | |
| ACUSHNET COMPANY, | ) ) | C. A. No. 05-132 (JJF) |
| Defendant. | ) ) ) | |
| ACUSHNET COMPANY, | ) | **DEMAND FOR JURY TRIAL** |
| Counterclaim Plaintiff, | ) ) ) | |
| v. | ) ) | |
| BRIDGESTONE SPORTS CO., LTD. and BRIDGESTONE GOLD, INC. | ) ) ) | |
| Counterclaim Defendant. | ) ) | |

**SUPPLEMENTAL INITIAL DISCLOSURES OF
ACUSHNET COMPANY
PURSUANT TO RULE 26(a)(1), FED. R. CIV. P.**

Pursuant to Rule 26(a)(1) of the Federal Rules of Civil Procedure,

defendant/counterclaim plaintiff Acushnet Company ("Acushnet"), by and through its

undersigned attorneys, submits the following supplemental initial disclosures. Acushnet

reserves the right to supplement or amend these disclosures upon further discovery of this

case. Additionally, these initial disclosures do not waive Acushnet's right to object to the

disclosure of any information or documents on any of the grounds, including, but not

limited to, privilege, relevance, or proportionality, provided by the Federal Rules of Civil

Procedure or the Local Rules of Civil Practice and Procedures for the District Court of

Delaware.

**A.    Rule 26(a)(1)(A)    [T]he name and, if known, the address and telephone number of each individual likely to have discoverable information that the discovering party may use to support its claims or defenses, unless solely for impeachment, identifying the subjects of the information;**

Based on information presently available to Acushnet and subject to a fuller investigation of the case, Acushnet submits the following names as individuals not employed by Acushnet as likely to have discoverable information that Acushnet may be to support its claims or defenses, unless solely for impeachment, to the extent that Acushnet can ascertain such issues based on the pleadings.  Acushnet shall supplement this list to the extent that further individuals may be identified:

| Name | Subject(s) of Information |
|------|---------------------------|
| Francis deS. Lynch<br>c/o Howrey LLP<br>1299 Pennsylvania Avenue, NW<br>Washington, DC 20004<br>202-783-0800 | Information related to the invention, prosecution and scope of U.S. Patent No. 4,729,861, U.S. Patent No. 4,936,587, and U.S. Patent No. 5,080,367. |
| John W. Jepson<br>c/o Howrey LLP<br>1299 Pennsylvania Avenue, NW<br>Washington, DC 20004<br>202-783-0800 | Information related to the invention, prosecution and scope of U.S. Patent No. 4,729,861, U.S. Patent No. 4,936,587, and U.S. Patent No. 5,080,367. |
| Robert A. Brown<br>c/o Howrey LLP<br>1299 Pennsylvania Avenue, NW<br>Washington, DC 20004<br>202-783-0800 | Information related to the invention, prosecution and scope of U.S. Patent No. 4,729,861, U.S. Patent No. 4,936,587, and U.S. Patent No. 5,080,367. |
| Laurent C. Bissonnette<br>c/o Howrey LLP<br>1299 Pennsylvania Avenue, NW<br>Washington, DC 20004<br>202-783-0800 | Information related to the invention, prosecution and scope of U.S. Patent No. 6,818,705; research and development of Acushnet's golf ball products. |
| Jeffrey L. Dalton<br>c/o Howrey LLP<br>1299 Pennsylvania Avenue, NW<br>Washington, DC 20004<br>202-783-0800 | Information related to the research, development and manufacture of Acushnet's golf ball products; evaluation and testing of competitive golf ball products. |

| | |
|---|---|
| Steven Aoyama<br>c/o Howrey LLP<br>1299 Pennsylvania Avenue, NW<br>Washington, DC 20004<br>202-783-0800 | Information related to the invention, prosecution and scope of U.S. Patent No. 4,729,861, U.S. Patent No. 4,936,587, and U.S. Patent No. 5,080,367; research and development of aerodynamic properties for Acushnet's golf ball products. |
| Shenshen Wu<br>c/o Howrey LLP<br>1299 Pennsylvania Avenue, NW<br>Washington, DC 20004<br>202-783-0800 | Information related to the invention, prosecution and scope of U.S. Patent No. 6,818,705; research, development, and manufacture of polyurethane for Acushnet's golf ball products. |
| Edmund A. Hebert<br>c/o Howrey LLP<br>1299 Pennsylvania Avenue, NW<br>Washington, DC 20004<br>202-783-0800 | Information related to the invention, prosecution and scope of U.S. Patent No. 6,818,705; research and development of Acushnet's golf ball products. |
| Mark N. Wrigley<br>c/o Howrey LLP<br>1299 Pennsylvania Avenue, NW<br>Washington, DC 20004<br>202-783-0800 | Information related to the invention, prosecution and scope of U.S. Patent No. 6,818,705; research and development of Acushnet's golf ball products. |
| Peter Voorheis<br>c/o Howrey LLP<br>1299 Pennsylvania Avenue, NW<br>Washington, DC 20004<br>202-783-0800 | Information related to the invention, prosecution and scope of U.S. Patent No. 6,818,705; research and development of Acushnet's golf ball products. |
| Murali Rajagopalan<br>c/o Howrey LLP<br>1299 Pennsylvania Avenue, NW<br>Washington, DC 20004<br>202-783-0800 | Information related to the invention, prosecution and scope of U.S. Patent No. 6,818,705; research and development of Acushnet's golf ball products. |
| David A. Bulpett<br>c/o Howrey LLP<br>1299 Pennsylvania Avenue, NW<br>Washington, DC 20004<br>202-783-0800 | Information related to the invention, prosecution and scope of U.S. Patent No. 6,818,705; research and development of Acushnet's golf ball products; evaluation and testing of competitive golf ball products. |
| William Burke<br>c/o Howrey LLP<br>1299 Pennsylvania Avenue, NW<br>Washington, DC 20004<br>202-783-0800 | Information related to Acushnet's financial policies and procedures; sales of Acushnet's golf ball products. |

| | |
|---|---|
| Eric Bartsch<br>c/o Howrey LLP<br>1299 Pennsylvania Avenue, NW<br>Washington, DC 20004<br>202-783-0800 | Information related to manufacturing of Acushnet's golf ball products. |
| Gerald Bellis<br>c/o Howrey LLP<br>1299 Pennsylvania Avenue, NW<br>Washington, DC 20004<br>202-783-0800 | Information related to Acushnet's financial policies and procedures; sales of Acushnet's golf ball products. |
| Chris Cavallaro<br>c/o Howrey LLP<br>1299 Pennsylvania Avenue, NW<br>Washington, DC 20004<br>202-783-0800 | Information related to the research, development and manufacture of Acushnet's golf ball products. |
| Ken Welchman<br>c/o Howrey LLP<br>1299 Pennsylvania Avenue, NW<br>Washington, DC 20004<br>202-783-0800 | Information related to manufacturing of Acushnet's golf ball products. |
| Derek Ladd<br>c/o Howrey LLP<br>1299 Pennsylvania Avenue, NW<br>Washington, DC 20004<br>202-783-0800 | Information related to the research and development of Acushnet's golf ball products. |
| Herbert Boehm<br>c/o Howrey LLP<br>1299 Pennsylvania Avenue, NW<br>Washington, DC 20004<br>202-783-0800 | Information related to the research and development of Acushnet's golf ball products; licensing negotiations with Bridgestone Sports; information related to Acushnet's defenses against Bridgestone's allegations of willful infringement. |
| William Morgan<br>c/o Howrey LLP<br>1299 Pennsylvania Avenue, NW<br>Washington, DC 20004<br>202-783-0800 | Information related to the research and development of Acushnet's golf ball products; licensing negotiations with Bridgestone Sports; evaluation and testing of competitive golf balls; licensing negotiations with Bridgestone Sports; information related to Acushnet's defenses against Bridgestone's allegations of willful infringement. |
| Doug Jones<br>c/o Howrey LLP<br>1299 Pennsylvania Avenue, NW<br>Washington, DC 20004<br>202-783-0800 | Information related to the research, development and manufacture of Acushnet's golf ball products. |

4

| | |
|---|---|
| Michael Jordan<br>c/o Howrey LLP<br>1299 Pennsylvania Avenue, NW<br>Washington, DC 20004<br>202-783-0800 | Information related to the research, development and manufacture of Acushnet's golf ball products. |
| Joseph Nauman<br>c/o Howrey LLP<br>1299 Pennsylvania Avenue, NW<br>Washington, DC 20004<br>202-783-0800 | Information related to Acushnet's licensing policies and procedures; licenses entered into by Acushnet relating to golf balls; licensing negotiations with Bridgestone Sports; information related to Acushnet's defenses against Bridgestone's allegations of willful infringement. |
| Troy Lester<br>c/o Howrey LLP<br>1299 Pennsylvania Avenue, NW<br>Washington, DC 20004<br>202-783-0800 | Information relating to Acushnet's collection of documents; licensing negotiations with Bridgestone Sports; information related to Acushnet's defenses against Bridgestone's allegations of willful infringement. |
| Brad Faxon<br>c/o Howrey LLP<br>1299 Pennsylvania Avenue, NW<br>Washington, DC 20004<br>202-783-0800 | Information related to the research and development of Acushnet's golf ball products. |
| Atsuki Kasashima<br>c/o Paul, Hastings, Janofsky & Walker<br>875 15th Street, N.W.<br>Washington, DC 20005<br>202-551-1700 | Information related to the research, development and manufacture of Bridgestone's golf ball products. |
| Atsushi Nanba<br>c/o Paul, Hastings, Janofsky & Walker<br>875 15th Street, N.W.<br>Washington, DC 20005<br>202-551-1700 | Information related to the invention, prosecution and scope of U.S. Patent No. 6,634,961 and its foreign counterparts; research and development of Bridgestone's golf ball products. |
| Hideo Watanabe<br>c/o Paul, Hastings, Janofsky & Walker<br>875 15th Street, N.W.<br>Washington, DC 20005<br>202-551-1700 | Information related to the invention, prosecution and scope of U.S. Patent Nos. 6,679,791 and U.S. Patent No. 5,743,817 and their foreign counterparts; research and development of Bridgestone's golf ball products. |
| Hiroshi Higuchi<br>c/o Paul, Hastings, Janofsky & Walker<br>875 15th Street, N.W.<br>Washington, DC 20005<br>202-551-1700 | Information related to the invention, prosecution and scope of U.S. Patent Nos. 5,553,852; 5,782,707; 6,634,961 and their foreign counterparts; research and development of Bridgestone's golf ball products. |

| | |
|---|---|
| Hirotaka Shimosaka<br>c/o Paul, Hastings, Janofsky & Walker<br>875 15th Street, N.W.<br>Washington, DC 20005<br>202-551-1700 | Information related to the research, development and manufacture of Bridgestone's golf ball products. |
| Hitoshi Otsuka<br>c/o Paul, Hastings, Janofsky & Walker<br>875 15th Street, N.W.<br>Washington, DC 20005<br>202-551-1700 | Information relating to the relationship between Bridgestone and Nike |
| Jun Ichinose<br>c/o Paul, Hastings, Janofsky & Walker<br>875 15th Street, N.W.<br>Washington, DC 20005<br>202-551-1700 | Information relating to Bridgestone's document collection; licensing negotiations with Acushnet; information relating to Acushnet's claims of willful infringement. |
| Jun Shindo<br>c/o Paul, Hastings, Janofsky & Walker<br>875 15th Street, N.W.<br>Washington, DC 20005<br>202-551-1700 | Information related to the invention, prosecution and scope of U.S. Patent No. 5,803,834 and its foreign counterparts; research and development of Bridgestone's golf ball products. |
| Kazayuki Takahashi<br>c/o Paul, Hastings, Janofsky & Walker<br>875 15th Street, N.W.<br>Washington, DC 20005<br>202-551-1700 | Information related to the invention, prosecution and scope of U.S. Patent No. 5,252,652 and its foreign counterparts; research and development of Bridgestone's golf ball products. |
| Seisuke Tomita<br>c/o Paul, Hastings, Janofsky & Walker<br>875 15th Street, N.W.<br>Washington, DC 20005<br>202-551-1700 | Information related to the invention, prosecution and scope of U.S. Patent No. 5,252,652 and its foreign counterparts; research and development of Bridgestone's golf ball products; licensing negotiations with Acushnet. |
| Tadatoshi Yamada<br>c/o Paul, Hastings, Janofsky & Walker<br>875 15th Street, N.W.<br>Washington, DC 20005<br>202-551-1700 | Information related to the invention, prosecution and scope of U.S. Patent No. 5,553,852 and its foreign counterparts; research and development of Bridgestone's golf ball products. |
| Yoshinori Egashira<br>c/o Paul, Hastings, Janofsky & Walker<br>875 15th Street, N.W.<br>Washington, DC 20005<br>202-551-1700 | Information related to the invention, prosecution and scope of U.S. Patent No. 5,252,652; 5,553,852; 5,743,817 and their foreign counterparts; research and development of Bridgestone's golf ball products; licensing negotiations with Acushnet. |

| Hisashi Yamagishi<br>c/o Paul, Hastings, Janofsky & Walker<br>875 15th Street, N.W.<br>Washington, DC 20005<br>202-551-1700 | Information related to the invention, prosecution and scope of U.S. Patent No. 5,553,852; 5,782,707; 5,743,817; 5,803,834 and their foreign counterparts; research and development of Bridgestone's golf ball products; licensing negotiations with Acushnet. |
| --- | --- |

**B.    Rule 26(a)(1)(B)    [A] copy of, or a description of category and location of, all documents, data compilations, and tangible things in the possession, custody, or control of the party and that the disclosing party may use to support its claims or defenses, unless solely for impeachment;**

Documents and things that are currently in Acushnet's possession, custody or control which it may use to support its claims or defenses including correspondence, advertising, marketing, sales, historical information, technical specification, and product design and development documents that are located at 333 Bridge Street, P.O. Box 965, Fairhaven, MA.

Additionally, Acushnet identifies all documents it has produced to Bridgestone during the course of the instant litigation, as well as all documents produced by third parties in response to subpoenas issued by both parties.

**C.    Rule 26(a)(1)(C)    [A] computation of any category of damages claimed by the disclosing party, making available for inspection and copying as under Rule 34 the documents or other evidentiary material, not privileged or protected from disclosure, on which such computation is based, including materials bearing on the nature and extent or injuries suffered;**

Acushnet has asserted a claim for damages in connection with its counterclaims. A calculation of damages related to these claims has not been made. Acushnet will provide damages information related to these counterclaims in accordance with the Scheduling Order.

7

    **D.**    Rule 26(a)(1)(D)  [F]or inspection and copying as under Rule 34 any insurance agreement under which any person carrying on an insurance business may be liable to satisfy part or all of a judgment which may be entered in the action or to indemnify or reimburse for payments made to satisfy the judgment.

Acushnet is currently unaware of any insurance agreements relevant to this

litigation.

POTTER ANDERSON & CORROON LLP

By:   _/s/ David E. Moore_      
      Richard L. Horwitz (#2246)
      David E. Moore (#3983)
      Hercules Plaza, 6th Floor
      1313 North Market Street
      P. O. Box 951
      Wilmington, DE  19899-0951
      (302) 984-6000
      rhorwitz@potteranderson.com
      dmoore@potteranderson.com

OF COUNSEL:

Alan M. Grimaldi
Joseph P. Lavelle
Brian S. Seal
HOWREY LLP
1299 Pennsylvania Avenue, N.W.
Washington, DC  20004
Telephone (202) 783-0800

*Attorneys for Defendant/Counterclaim Plaintiff Acushnet Company*

Dated:  October 3, 2006
752818/28946

8

## CERTIFICATE OF SERVICE

I, David E. Moore, hereby certify that on October 3, 2006, a true and correct copy of the within document was caused to be served on the attorney of record at the following addresses as indicated:

### VIA HAND DELIVERY

Jack B. Blumenfeld
Maryellen Noreika
Leslie A. Polizoti
Morris, Nichols, Arsht & Tunnell
1201 N. Market Street
Wilmington, DE 19801


### VIA ELECTRONIC MAIL

Robert M. Masters
Paul, Hastings, Janofsky & Walker LLP
875 15th Street, N.W.
Washington, D.C. 20005
RobMasters@paulhastings.com


                                        /s/ David E. Moore
                                        David E. Moore

680013

# EXHIBIT 8

REDACTED

# EXHIBIT 9

REDACTED

# EXHIBIT 10

REDACTED

# EXHIBIT 11

O R D E R

At Wilmington this_____day of_____ 200_, the
parties having satisfied their obligations under Fed. R. Civ. P.
26(f), and the court having conducted a pretrial scheduling
conference pursuant to Fed. R. Civ. P. 16 and D. Del. LR 16.2(a)
and (b).

IT IS ORDERED that:

1.  **Pre-Discovery Disclosures**.  The parties [have exchanged]
[will exchange by _____(date)_____] the information required by
Fed. R. Civ. P. 26(a)(1) and D. Del. LR 16.2.

2.  **Discovery**.

(a)  Discovery will be needed on the following
subjects:  (brief description of subjects on which discovery
will be needed).

(b)  All fact discovery shall be commenced in time to
be completed by ____(date)____.

(1) Document production shall be completed on or
before_____.

(2)  Maximum of_____ interrogatories by each party
to any other party.

(3) In the absence of agreement among the parties,
contention interrogatories, if filed, shall first be addressed by
the party with the burden of proof no later than the date
established for the completion of document production, with the
responsive answers due within thirty (30) days thereof.  The
adequacy of all such interrogatory answers shall be judged by the

1

level of detail each party provides; i.e., the more detail a
party provides, the more detail a party shall receive.

(4)  Maximum of_____ requests for admission by
each party to any other party.

(5)  In the absence of agreement among the parties
or by order of the court, no deposition (other than those noticed
under Fed. R. Civ. P. 30(b)(6)) shall be scheduled prior to the
completion of document production.

(6)  Maximum of _____ fact depositions by plain-
tiff(s) and _____ by defendant(s).  Each fact deposition [other
than of _____] limited to a maximum of ____ hours unless
extended by agreement of parties.

[OR]

(7)  Maximum of _____ hours for fact
depositions.

(c)  Expert discovery shall be commenced in time to be
completed by_____.

(1) Expert reports on issues for which the parties
have the burden of proof due_____.  Rebuttal expert
reports due_____.

(2)  Expert depositions to be limited to a maximum
of_____ hours unless extended by agreement of the parties.

(3)  All Daubert motions shall be filed on or
before_____.

(d)  If willfulness has been asserted and absent
agreement among the parties, the [defendant] must inform
[plaintiff] as to whether it intends to rely on advice of counsel
by_____(date)_____.  If the decision is to rely on such
advice, the scope of discovery shall include the materials
provided by [defendant] to its counsel and whatever other
materials related to the issues in dispute that [defendant] had
in its possession at the time the advice was sought.

(e)  Supplementations under Rule 26(e) due __(time(s)
or interval(s))___.

2

    (f)   **Discovery Disputes.**

    (1)  The court shall conduct in-person discovery status conferences on _____ from_____m. to ____ m., and on_____ from_____m. to _____ m., the time to be allocated equally among the parties. **No motions to compel or motions for protective order shall be filed absent approval of the court.**

    (2)  The court shall remain available to resolve by telephone conference disputes that arise during the course of a deposition and disputes over the terms of a protective order.

    (3)  Absent express approval of the court following a discovery conference, no motions pursuant to Fed. R. Civ. P. 37 shall be filed.

    (g)  **Fact Witnesses to be Called at Trial.**  Within one (1) month following the close of expert discovery, each party shall serve on the other parties a list of each fact witness (including any expert witness who is also expected to give fact testimony), who has previously been disclosed during discovery and that it intends to call at trial.  Within one (1) month of receipt of such fact witness list, each party shall serve a list of each rebuttal fact witness that it intends to call at trial. The parties shall have the right to depose any such fact witnesses who have not previously been deposed in this case. Such deposition shall be held within one (1) month after service of the list of rebuttal fact witnesses and shall be limited to twenty (20) hours per side in the aggregate unless extended by agreement of the parties or upon order of the court upon good cause shown.

    3.  **Joinder of other Parties and Amendment of Pleadings.** All motions to join other parties and amend the pleadings shall be filed on or before_____.

    4.  **Settlement Conference.**  Pursuant to 28 U.S.C. § 636, this matter is referred to Magistrate Judge Thynge for the purposes of exploring ADR.

3

5. **Claim Construction Issue Identification.** If the court does not find that a limited earlier claim construction would be helpful in resolving the case, on _____, the parties shall exchange lists of those claim terms that they believe need construction and their proposed claim construction of those terms. This document will not be filed with the court. Subsequent to exchanging such lists, the parties will meet and confer to prepare a Joint Claim Construction Statement to be submitted pursuant to paragraph 7 below.

6. **Summary Judgment Motions.** All summary judgment motions shall be served and filed with an opening brief on or before _____ _____. Briefing shall be pursuant to D. Del. LR 7.1.2. No summary judgment motion may be filed more than **ten (10)** days from the above date without leave of the court.

7. **Claim Construction.** Lawyers must identify, during the claim construction phase of the case, any claim language that will have a meaning to a person of ordinary skill in the art that differs from the ordinary meaning. Any language not so identified will be construed according to its ordinary dictionary meaning.

The parties shall agree upon and file the Joint Claim Construction Statement on _____, with the claim chart separately docketed. The parties will file simultaneous opening claim construction briefs on _____. Simultaneous response briefs should be filed by _____. Issues of claim construction shall be considered by the court in conjunction with the summary judgment motion(s). The hearing on the claim construction and motion(s) for summary judgment will be heard on_____ at_____ .m.

8. **Applications by Motion.** Any application to the court shall be by written motion filed with the clerk. **The court will not consider applications and requests submitted by letter or in a form other than a motion**, absent express approval by the court.

    (a) **Any non-dispositive motion should contain the**

4

**statement required by D. Del. LR 7.1.1.**

      (b) No telephone calls shall be made to chambers.

      (c) Any party with an **emergency** matter requiring the assistance of the court shall e-mail chambers utilizing the "E-mail Request for Emergency Relief" and "Opposing Counsel's Response" forms posted on Chief Judge Robinson's website and e-mail the completed forms to slr_civil@ded.uscourts.gov.  The e-mail shall provide a short statement describing the emergency. NO ATTACHMENTS shall be submitted in connection with said emails.

    9.  **Motions in Limine**.  **No** motions in limine shall be filed; instead the parties shall be prepared to address their evidentiary issues at the pretrial conference and during trial (before and after the trial day).

    10.  **Pretrial Conference**.  A pretrial conference will be held on_____at_____ m. in courtroom 6B, sixth floor Federal Building, 844 King Street, Wilmington, Delaware. The Federal Rules of Civil Procedure and D. Del. LR 16.4 shall govern the pretrial conference.

    11.  **Trial**.  This matter is scheduled for a [day/week] bench/jury trial commencing on _____ in courtroom 6B, sixth floor Federal Building, 844 King Street, Wilmington, Delaware.  For purposes of completing pretrial preparations, the parties should plan on being allocated a total number of hours in which to present their respective cases.

 

                                          _____
                                          United States District Judge

# EXHIBIT 12

REDACTED