## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| BRIDGESTONE SPORTS CO., LTD., and BRIDGESTONE GOLF, INC., | ) ) ) | |
| | ) | C. A. No. 05-132 (JJF) |
| Plaintiffs, | ) ) | |
| v. | ) ) | **JURY TRIAL DEMANDED** |
| ACUSHNET COMPANY, | ) ) | **PUBLIC VERSION** |
| Defendant. | ) ) | |

## ACUSHNET'S REPLY BRIEF IN SUPPORT OF
## ITS MOTION TO PRECLUDE

Richard L. Horwitz (#2246)
David E. Moore (#3983)
POTTER ANDERSON & CORROON LLP
Hercules Plaza, 6th Floor
1313 North Market Street
P. O. Box 951
Wilmington, DE 19899-0951
Tel: (302) 984-6000
rhorwitz@potteranderson.com
dmoore@potteranderson.com

*Attorneys for Defendant*
*Acushnet Company*

OF COUNSEL:

Alan M. Grimaldi
Joseph P. Lavelle
Kenneth W. Donnelly
Brian S. Seal
HOWREY LLP
1299 Pennsylvania Avenue, N.W.
Washington, DC 20004
Tel: (202) 783-0800

Dated: April 9, 2007
Public Version Dated: April 16, 2007
789601 / 28946

## TABLE OF CONTENTS

I.     INTRODUCTION ................................................................................1

II.    ARGUMENT.......................................................................................3

    A.    Acushnet Was Entitled to Learn – In Fact Discovery – the
          Facts Supporting Bridgestone's Contentions...............................3

        1.    The Court Ordered Bridgestone to Disclose "Some
             Facts." ...............................................................................5

        2.    Bridgestone's Failure to Disclose the Facts
             Supporting Its Contentions Has Prejudiced
             Acushnet. ............................................................................9

    B.    Bridgestone's Explanations for Failure to Disclose Facts
          During Fact Discovery Are Meritless. ......................................12

        1.    Bridgestone Ignores the Court's Order and Its Own
             Agreement to Provide "Some Facts."...............................12

        2.    Bridgestone Had No Justification for Its Failure to
             Disclose the Facts on Which It Was Relying.................12

             a.    Bridgestone Was Not Entitled to Withhold
                  All of Its Evidence Until Expert Discovery.......................13

             b.    Acushnet's Actions Do Not Justify
                  Bridgestone's Failure to Comply With the
                  Court's Order. .................................................................17

    C.    Given Bridgestone's Violation of Court Order, Preclusion is
          the Appropriate Remedy. .........................................................19

III.    CONCLUSION.................................................................................20

# TABLE OF AUTHORITIES

## CASES

*Alldread v. City of Grenada,*
    988 F.2d 1425 (5th Cir. 1993) ............................................................................. 18

*Am. Realty Trust, Inc. v. Matisse Partners, L.L.C.,*
    No. 00-CV-1801-G, 2002 U.S. Dist. LEXIS 12560
    (N.D.Tex. July 10, 2002) ...................................................................................... 3

*Arthur v. Atkinson Freight Lines Corp.,*
    164 F.R.D. 19 (S.D.N.Y. 1995) ........................................................................... 18

*Auto Meter Prods. v. Maxima Techs. & Sys., LLC,*
    No. 05 C 4587, 2006 U.S. Dist. LEXIS 81687
    (N.D. Ill. Nov. 6, 2006)........................................................................... 15, 19, 20

*B.C.F. Oil Ref. v. Consolidated Edison Co.,*
    168 F.R.D. 161 (S.D.N.Y. 1996) ................................................................. 14, 15

*Dependahl v. Falstaff Brewing Corp.,*
    84 F.R.D. 416 (E.D. Mo. 1979) ..................................................................... 5, 19

*Design Strategy, Inc. v. Davis,*
    469 F.3d 284 (2d Cir. 2006)................................................................................ 13

*Edward Lowe Indus. v. Oil-Dri of Am.,*
    No. 94 C 7568, 1995 WL 399712
    (N.D. Ill. July 7, 1995).................................................................................. 15, 16

*King v. E.F. Hutton & Co.,*
    117 F.R.D. 2 (D.D.C. 1987)................................................................... 3, 6, 9, 19

*Koninklijke Philips Elecs. N.V. v. KXD Tech., Inc.,*
    No. 05-CV-01532, No. 06-CV-00101,
    2007 U.S. Dist. LEXIS 13956 (D. Nev. Feb. 21, 2007) ........................................ 17

*Ramada Franchise Sys. Inc. v. Patel,*
    No. 03-3494, 2004 U.S. App. LEXIS 11300
    (3d Cir. 2004)..................................................................................................... 17

*Thomas & Betts Corp. v. Panduit Corp.,*
    No. 93 C 4017, 1996 U.S. Dist. LEXIS 4494
    (N.D. Ill. Apr. 9, 1996) ...................................................................................... 15

*Wesley-Jessen Corp. v. Pilkington Visioncare*,
    844 F. Supp. 987 (D. Del. 1994)................................................................ 2, 5, 9, 19

## OTHER AUTHORITIES

6 MOORE'S FEDERAL PRACTICE 3D § 26:131[3] ......................................................... 14, 18

## RULES

Fed. R. Civ. P. 11(b)(3).......................................................................................... 4

Fed. R. Civ. P. 26(a)(1)................................................................................... *passim*

Fed. R. Civ. P. 26(a)(1)(B) ................................................................................. 13, 14

Fed. R. Civ. P. 26(a)(2)(C) ..................................................................................... 13

Fed. R. Civ. P. 26(b)(1)........................................................................................... 3

Fed. R. Civ. P. 26(e) ........................................................................................ 14, 18, 19

Fed. R. Civ. P. 37(b)(2)............................................................................................ 19

Fed. R. Evid. 702 .................................................................................................... 14

## I.    INTRODUCTION

Nowhere in Bridgestone's brief does it address the Court's January 13, 2006 Order that Bridgestone provide "some facts" in response to Acushnet's contention interrogatories by the supplementation deadline. At the hearing, counsel for Bridgestone responded by stating that "We will." (D.I. 73 at 35). *See also* D.I. 73 at 31-32.

Bridgestone does discuss an earlier portion of the January 13 hearing transcript, however, for the premise that it was not required to disclose its experts' test results in response to Acushnet's interrogatories. (D.I. 312 at 4-5). Bridgestone did not provide the complete discussion, which supports Acushnet's position:

> MR. MOORE: We want the facts. And the fact is it's a fact what the hardness, what they measure the ball is. We want the facts that support it.
>
> THE COURT: Right. [Then turning to Mr. Masters] You're going to have what it is you contend makes up the factual support for your allegation of infringement.
>
> MR. MASTERS: That's correct, Your Honor.

(D.I. 73 at 31-32). Thus, immediately following the quote relied upon by Bridgestone, the Court told Bridgestone – and Bridgestone agreed – that, by the deadline for contention supplementation, it needed to provide "what you contend makes up the factual support for your allegation of infringement." (*Id.*). Bridgestone, however, did not. Instead, it provided only bare assertions (regurgitating almost word-for-word the elements of every claim of each of the patents-in-suit), along with repeated cutting-and-pasting of citations to hundreds of the same pages of mostly off-topic Acushnet documents and whole deposition transcripts, none of which constitute "facts."

Bridgestone claims that "[t]here is no comparison between the issues raised by Bridgestone's motion for sanctions and Acushnet's motion to preclude." (D.I. 321 at 1). While Acushnet disagrees, there is certainly ample comparison between Acushnet's instant motion to preclude and Bridgestone's motion to preclude (D.I. 260), which the Court granted on February 2, 2007. There, Bridgestone accused Acushnet of "essentially

ignoring its 1000+ pages of invalidity contentions and, a month before expert reports, choosing to rely on prior art references it never told Bridgestone it would, in violation of the Court's order and after Bridgestone raised that issue repeatedly during fact discovery." (D.I. 321 at 28).

Here, the similarities are striking. For example, Bridgestone produced a total of 756 pages of responses to Acushnet's Interrogatory No. 2 regarding Bridgestone's infringement contentions. (D.I. 295 at Exs. C, F, and G). On every one of the patents-in-suit, and for every element of each of those patents, Bridgestone repeatedly cited, with limited exception, the same set of documents. On the Pro V1 ball, for example, this was a set of six boxes of documents, cited over and over by Bridgestone (with the order of citation sometimes jumbled), as allegedly establishing that the product met every one of the elements of each of the patents-in-suit. On January 16, however, Bridgestone served its opening expert reports, relying almost exclusively on different documents and facts – eight boxes worth of specific and relevant never-before-seen testing data – that were not disclosed in any of its responses, nor in the documents or transcripts it cited in those responses, nor in any supplement to its disclosures. Bridgestone had these facts in some cases as early as September, but never supplemented its mandatory disclosures and continued to answer Acushnet's interrogatories (Nos. 2 and 14) and document requests (Nos. 14, 15 and 21) disclosing none of these facts. (*See* D.I. 295 at 8). Similarly, in response to Acushnet's damages interrogatory, Bridgestone cited no facts, and refused to give any of the information the rules required. (*Id.* at 16-19).

Acushnet was entitled to those facts in order to conduct factual discovery. That is how contention interrogatories work. *See Wesley-Jessen Corp. v. Pilkington Visioncare*, 844 F. Supp. 987, 990 (D. Del. 1994) (contention interrogatories provide "an adequate opportunity to obtain discovery on the factual basis for [the plaintiff's] contentions"). As a sophisticated business entity "represented by counsel well-versed in complex patent litigation," Bridgestone surely knew this, yet chose to withhold the factual bases

2

supporting its contentions until after the close of fact discovery. *See, e.g., Am. Realty Trust, Inc. v. Matisse Partners, L.L.C.*, No. 00-CV-1801-G, 2002 U.S. Dist. LEXIS 12560, at *16 and 18 (N.D. Tex. July 10, 2002) (Ex. A). By denying those facts to Acushnet, Bridgestone prejudiced Acushnet by preventing it from conducting the fact discovery to which it was entitled.

## II.    ARGUMENT

### A.    Acushnet Was Entitled to Learn – In Fact Discovery – the Facts Supporting Bridgestone's Contentions.

Acushnet timely served several contention interrogatories on Bridgestone, seeking the factual bases underlying Bridgestone's contentions.[1] Having done so, Acushnet was entitled to answers. *See* Fed. R. Civ. P. 26(b)(1) ("Parties may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party"). *See also King v. E.F. Hutton & Co.*, 117 F.R.D. 2, 7 (D.D.C. 1987) ("The plaintiffs brought this lawsuit and can not properly complain of the burden which would be imposed upon them to give as detailed and as complete answers as now possible."). Bridgestone claims it was not withholding the facts underlying its contentions as work product. (D.I. 321 at 24, n.9). If true, then there was no basis at all for Bridgestone to withhold its responses to Acushnet's contention interrogatories or document requests.

As it turns out, the facts eventually disclosed by Bridgestone after the close of fact discovery show that it had no support for many of its contentions. (D.I. 295 at Ex. A). It is not surprising that Bridgestone largely ignores that point, claiming only that "that

---

[1] Ignoring Acushnet's Interrogatory No. 14 and its relevant documents requests (*see* D.I. 295 at 8, n.3), Bridgestone focuses on Acushnet's Interrogatory No. 2 and claims, for the first time, that Interrogatory No. 2 did not request the identification of "facts." (D.I. 321 at 24-25). The interrogatory however, asks Bridgestone to disclose ***how*** it contended Acushnet infringed each asserted claim. (D.I. 295 at Ex. A). Regardless, the Federal Rules obligated Bridgestone to disclose the factual evidence on which it might rely to support its claims at trial, even absent a discovery request. *See* Fed. R. Civ. P. 26(a)(1).

comparison has no legal significance on a motion to preclude." (D.I. 321 at 9). On the contrary, the disconnection between Bridgestone's fact-devoid contention responses and the facts on which it is now relying demonstrates the extent to which Bridgestone hid the true nature of its contentions during fact discovery, to the prejudice of Acushnet.

For example, Bridgestone asserted literal infringement of every limitation despite, in many cases, having no support to do so. (*See, e.g.*, D.I. 295 at 6-8). Even now, Bridgestone claims that "it does not have to choose one theory of infringement over another, particularly when the Court's claim construction has not issued." (D.I. 321 at 25). On the contrary, Bridgestone must have a factual basis to assert literal infringement. *See* Fed. R. Civ. P. 11(b)(3) (requiring that "the allegations and other factual contentions have evidentiary support"). And in fact, many of the limitations for which Bridgestone had no factual support to assert literal infringement were not argued during the Markman proceedings and thus are not subject to the Court's claim construction ruling.[2] (*See* D.I. 295 at Ex. Q). Yet Bridgestone's discovery responses never disclosed that it was relying solely on the doctrine of equivalents for any limitation.

Bridgestone continues to hide the ball even now. ███████████████████
████████████████████████████████████████████
███████████████████████████████ (D.I. 295 at 9-11), Bridgestone says only that "Acushnet's assertions are based on what appears to be a misunderstanding of the data." (D.I. 321 at 10). As explained in Acushnet's opening brief, however, Acushnet simply converted the inch and pound values in Bridgestone's raw data to millimeters and kilograms using standard conversion constants. (D.I. 295 at

---

[2] For example, as late as December 18, Bridgestone asserted that Acushnet's NXT Tour golf balls literally infringed the core distortion limitation from claim 1 of the '817 patent. (*See* D.I. 295 at Ex. G, p. C-8). Neither party has identified any disputed claim construction issues for that limitation. ████████████████████████████
██████████████████████████████████████
███████████████████ . (*See* D.I. 295 at Ex. N).

10-11). That method of conversion was confirmed by Kevin Jones, who actually performed those conversions for Bridgestone's expert reports. (Ex. B – Jones Dep. at 193-96). Thus, it is unclear what the possible "misunderstanding" could be, as Bridgestone, once again declined to offer any factual support for *that* contention, either.

### 1. The Court Ordered Bridgestone to Disclose "Some Facts."

Not once in its brief does Bridgestone address the Court's instruction on January 13 that it should provide "some facts" to Acushnet by the deadline for contention supplementation, or its representation to the Court that it would. (*See* D.I. 73 at 35 ("We will") and 32 ("That's correct, Your Honor")). Instead, Bridgestone claims its disclosures were sufficient, when those disclosures provided no more facts than Bridgestone had provided *before* the Court instructed it to disclose facts. (Compare, *e.g.*, D.I. 295 at Ex. C with D.I. 295 at Ex. G).

Bridgestone chose repeatedly to disclose only bare contentions, with later citations to documents and deposition transcripts. Bare contentions, however, do not equal facts. Bridgestone's later rote citations to documents and depositions do not equal "facts," either, as is demonstrated by a review of them.[3] Yet because that is all Bridgestone eventually disclosed to Acushnet during fact discovery to support its contentions, that is all Bridgestone should be entitled to rely on now. *See Wesley-Jessen Corp.*, 844 F. Supp. at 990 ("the Court will not allow it to offer into evidence in its case in chief documents or testimony supporting that contention that are not disclosed in its response"); *Dependahl v. Falstaff Brewing Corp.*, 84 F.R.D. 416, 420 (E.D. Mo. 1979) (striking affirmative defense and counterclaim for failure to answer contention

---

[3] Bridgestone incorrectly states that Acushnet's opening brief ignored the documents and deposition transcripts cited in Bridgestone's interrogatory responses. To the contrary, Acushnet specifically referenced them in its brief. (D.I. 295 at 12). Further, as discussed below, Bridgestone's document citations were largely meaningless cut-and-paste jobs.

interrogatory); *King*, 117 F.R.D. at 7 n.6 (plaintiffs "will be precluded from testifying at trial to any facts in support of the losses not mentioned in their respective depositions or answers to interrogatories").

Bridgestone relies heavily on the laundry list of Acushnet documents listed in its discovery responses as the "facts" it was required to disclose. (*See, e.g.*, D.I. 321 at 7-8). A close examination, reveals that, even if cites to documents could equal "facts," the documents cited by Bridgestone in many cases do not support their contentions. Instead, Bridgestone simply dumped a laundry list of documents consisting of virtually every Acushnet development and manufacturing document for each of the accused golf balls. In fact, with few exceptions, Bridgestone recites the exact same set of documents for each limitation at issue, even when the limitations are completely unrelated.

For example, compare the documents identified by Bridgestone in its response on the cover thickness limitation of claim 1 from the '852 patent with the documents it identified in its response on the core gradient limitation of claim 1 of the '791 patent:



(D.I. 295 at Ex. G, pp. B-6 to B-7).



| The '791 Patent | Pro V1 golf balls, including golf balls having sidestamps ◄Pro V1-392► and ◄ ◄Pro V1x 332► |
|---|---|
| CLAIM 1 | |

(D.I. 295 at Ex. G, pp. G-1 to G-4).  Despite the vast difference between the two

limitations, Bridgestone lists the exact same set of documents and deposition transcripts

for each one.  That list comprises six boxes of documents.

Even then, most of the documents identified by Bridgestone are not relied upon for its infringement case. For example, with regard to the "improved rebound" property claimed by the '652 patent, Bridgestone's interrogatory response identifies again the same laundry list of Acushnet documents:



(D.I. 295 at Ex. G, pp. A-1 to A-2). But now, Bridgestone relies on hardly any of those documents or depositions. Instead, it relies almost exclusively on its testing of Acushnet's golf balls. (D.I 295 at Ex. H, pp. B-9 to B-10).[4] It is thus apparent that

_____

[4] In boilerplate, Mr. Cadorniga asserts that his opinion is based on review of "at least the testing data contained in Dr. Caulfield's report, the accused Acushnet golf balls, documents produced by Acushnet, the deposition testimony of Acushnet" and his own knowledge and experience. (D.I. 295 at Ex. H, p. B-9). While repeating this phrase almost verbatim throughout the various sections of his reports, his actual opinions most frequently rely almost exclusively on Dr. Caulfield's testing. (Ex. C – Cadorniga 1/16/07 Report at C-13, E-9 to E-10, F-9 to F-10, G-11 to G-16).

Bridgestone's rote listing of documents and deposition transcripts are not "facts" in support of its contentions and were never intended to be.

From the beginning of this case, Acushnet simply wanted the facts on which Bridgestone was basing its contentions. It was entitled to something meaningful in order to conduct fact discovery directed to Bridgestone's contentions. *See Wesley-Jessen*, 844 F. Supp. at 988-89 (finding that the defendant was entitled to "an adequate opportunity to obtain discovery on the factual basis for [the plaintiff's] contentions"). The Court itself agreed that Acushnet was entitled to some specific facts and Bridgestone agreed to provide them. (D.I. 73 at 35, 32). By failing to disclose *any* facts, Bridgestone waived its right to rely on any undisclosed facts at trial.

### 2. Bridgestone's Failure to Disclose the Facts Supporting Its Contentions Has Prejudiced Acushnet.

Contention interrogatories served early in the litigation, such as Acushnet's, help the party in the discovery process. By learning the plaintiff's theory, a defendant will be better able to narrow the scope of discovery and seek information relevant to the claim, thereby saving valuable time and resources. *See King*, 117 F.R.D. at 7 n.5 ("Obtaining answers to contention interrogatories early on during the pretrial stage can expose a substantial basis for a motion under Rule 11 or Rule 56, and thus lead to an expeditious and inexpensive determination of a lawsuit") (citation omitted).

Bridgestone's failure to disclose the factual bases for its contentions prejudiced Acushnet by preventing Acushnet from obtaining *any* fact discovery related to Bridgestone's contentions. For example, Bridgestone now relies on equivalency for several infringement claims. (*See* D.I. 295 at Ex. Q). Acushnet was entitled to conduct fact discovery on any purported equivalency by, *inter alia*, questioning Bridgestone's inventors and searching for prior art that would negate Bridgestone's equivalency

arguments. Acushnet was prevented from any of this because Bridgestone never disclosed any equivalency on which it intended to rely.



In another example, related to how Bridgestone refused to produce any information about its damages claims in fact discovery, Bridgestone's damages expert relies on a number of allegedly "comparable" licensing agreements to set Bridgestone's desired royalty rate. (D.I. 295 at Ex. NN, pp. 20, 26-27 and Tab 34). Acushnet should have had an opportunity to conduct fact discovery on those damages-related agreements to determine whether the factors surrounding them render them comparable or not. Bridgestone dismisses this point by incorrectly stating that Acushnet's damages expert "submitted a rebuttal report using that same data." (D.I. 321 at 29). On the contrary, Acushnet's expert determined that these agreements were *not* comparable, at least based on what he could learn of the circumstances of the transactions through publicly-available sources. He was handicapped, however, to strengthen that opinion by the fact that there was no discovery taken on any of those agreements.

Bridgestone also claims that Acushnet was not prejudiced because Bridgestone "produced testing protocols and its competitive data, and Acushnet spent numerous hours deposing Bridgestone's inventors and engineers about them." (D.I. 321 at 10). In fact, Acushnet deposed several inventors and also deposed a 30(b)(6) witness on Bridgestone's test protocols and testing of Acushnet's products, including "any third-party testing ... done on behalf of Bridgestone". (D.I. 144 at A-1 to A-2) (topic 7). None of those witnesses, however, disclosed the factual bases for Bridgestone's contentions. For example, none of them disclosed the alleged "equivalents" on which Bridgestone is now relying to assert infringement of claim 1 of the '817 patent. Further, Bridgestone is now relying on test protocols different than those ordinarily used by either party or which were disclosed during the depositions of Bridgestone witnesses. (*See* D.I. 295 at 22-24).[5]

Bridgestone further claims that "Acushnet could not have taken fact discovery" because "the vast majority of Bridgestone's testing was completed after October 10, 2006." (D.I. 321 at 10). That is misleading. The "vast majority" of Bridgestone's tests were completed before the parties' agreed-upon fact discovery deadline of December 18, 2006. (D.I. 295 at Ex. S). And Bridgestone itself continued to take fact depositions of Acushnet's witnesses as late as December 12, 2006. (Ex. E – Olson Dep. at 1).

---

[5] Bridgestone notes that "Acushnet did not even seek to depose Katsunori Sato and Hiroyuki Nagasawa, individuals with knowledge of Bridgestone's testing that Bridgestone specifically identified in interrogatory responses." (D.I. 321 at 10). Bridgestone's criticism is curious. As noted above, "Bridgestone's testing" was covered by a specific Rule 30(b)(6) deposition topic for a witness Acushnet deposed on August 31-September 1, 2006. Thus, any knowledge those individuals had related to "Bridgestone's testing" should have been uncovered in that deposition, rendering their individual depositions unnecessary, unless Bridgestone now believes that those witnesses would have disclosed information not disclosed by its designated 30(b)(6) witness.

**B.     Bridgestone's Explanations for Failure to Disclose Facts During Fact Discovery Are Meritless.**

**1.     Bridgestone Ignores the Court's Order and Its Own Agreement to Provide "Some Facts."**

Bridgestone argues that it was not required to disclose any facts in response to Acushnet's contention interrogatories. That argument is without merit, too. Even if Bridgestone was ignorant of its obligations to respond fully to Acushnet's contention interrogatories, Bridgestone knew what it was required to disclose – the Court expressly instructed Bridgestone that it should provide "some facts" to Acushnet by the close of contention supplementation and Bridgestone's counsel *twice* agreed to that requirement. (D.I. 73 at 32, 35). Bridgestone chose to disregard that Order, to the prejudice of Acushnet, and now must accept the consequences of that decision.

**2.     Bridgestone Had No Justification for Its Failure to Disclose the Facts on Which It Was Relying.**

Nor was there any substantial justification for Bridgestone's failure to disclose the facts underlying its contentions. The Court gave Bridgestone an express instruction to provide facts by the deadline for supplementation of contentions. At the time the Court issued its instruction and Bridgestone agreed to comply with it, the deadline was February 28. Under the Court's revised scheduling order, the deadline moved to April 28, then to May 1 by agreement of the parties. Bridgestone's May 1 discovery responses, however, provided no "facts" – Bridgestone just reiterated its bare contentions, followed by an oft-repeated and mostly irrelevant list of Acushnet documents. (*See* D.I. 295 at Ex. F). The parties further agreed to extend the fact discovery deadline – expressly including supplementation of contentions – to December 18, 2006. Bridgestone's later responses, however, again provided no more "facts" than its previous responses, though Bridgestone possessed the facts on which it intended to rely. (*See id.* at Ex. G).

Bridgestone likewise ignored the Court's Scheduling Order, which required that it provide all of "the information required by Fed. R. Civ. P. 26(a)(1)." (D.I. 18 at 1). This

required Bridgestone to disclose timely all of the facts, documents and data it "may use" to support its infringement claims. *See* Fed. R. Civ. P. 26(a)(1)(B). It also required Bridgestone to disclose something meaningful and informative about its damages claims for the case, including to identify "the documents or other evidentiary material" on which its claim would be based. Bridgestone failed on these obligations, even though, in addition to the Court's mandates, Acushnet had served interrogatories requesting the information. *See, e.g., Design Strategy, Inc. v. Davis*, 469 F.3d 284, 295 (2d Cir. 2006) (affirming exclusion of damages evidence, finding plaintiff's failure to comply with Rule 26 "especially troubling because … [d]efendants specifically requested a calculation of damages" in later interrogatories).

> **a.    Bridgestone Was Not Entitled to Withhold All of Its Evidence Until Expert Discovery.**

Nor is there any support for Bridgestone's assertion that it could withhold all the factual support for its contentions until expert opinions were due. The Federal Rules required Bridgestone to disclose early in the case, and as pertinent information became known to it (even absent Acushnet's discovery requests), all of the facts Bridgestone might use to support its claims at trial. These rules impose such "a duty on parties to disclose" "without awaiting formal discovery requests," so that "certain basic information that is needed in most cases to prepare for trial" can be known to the other party and so that both parties can, *inter alia*, allocate resources efficiently for discovery as well as "make an informed decision about settlement." Fed. R. Civ. P. 26(a)(1) (comments).

The rules governing expert discovery provide for the disclosure of the expert's reports after the close of fact discovery. Fed. R. Civ. P. 26(a)(2)(C). But the fact that expert opinions would eventually be offered in this case did not excuse Bridgestone from withholding during fact discovery the facts on which those expert's opinions would be based, especially when those facts (and contentions) were specifically sought by

13

Acushnet's discovery requests. This is a point self-evident from the promulgation of
Rule 26(a)(1)(B) itself. The rules also make clear that Bridgestone had a continuing duty
to supplement its discovery responses as factual information it might use in the case
became available. *See* 6 MOORE'S FEDERAL PRACTICE 3D § 26:131[3] ("[t]he duty to
supplement responses is continuing"); Fed. R. Civ. P. 26(e).

By rule, expert witnesses are to provide "scientific, technical, or other specialized
knowledge [to] assist the trier of fact ***to understand the evidence*** or ***to determine a fact*** at
issue ...." Fed. R. Evid. 702. Bridgestone, however, has used its experts to ***disclose*** the
evidence and facts on which it relies. It effectively disregarded Acushnet's contention
interrogatories, and the requirements of Rule 26(a)(1), and end-loaded all of its factual
support, both as to infringement and damages, onto its experts, thus depriving Acushnet
of the opportunity to conduct fact discovery on the factual bases for its contentions.

In the circumstances of this case, it is especially difficult to credit any weight to
Bridgestone's "expert disclosure" argument. Bridgestone tried to avoid disclosing its
infringement-related evidence *even when its expert reports were due.* It forgets
apparently that Acushnet had to demand the production of Bridgestone's actual test data
***after*** the expert disclosure date, when it became clear that the data supposedly supporting
Bridgestone's experts' opinions was not included in those reports. (D.I. 295 at Ex. X).

Nor do the cases cited by Bridgestone support such a proposition. The first two
cases relied upon by Bridgestone address the disclosure of expert opinion, not facts. *See
B.C.F. Oil Ref. v. Consolidated Edison Co.*, 168 F.R.D. 161, 166 (S.D.N.Y. 1996)
(holding only interrogatories directed to the names and scope of testimony of the
plaintiff's expert witnesses were attempts to circumvent the court's scheduling order
regarding disclosure of expert reports)[6]; *Auto Meter Prods. v. Maxima Techs. & Sys.,*

---

[6] This very case on which Bridgestone relies states that "the attorney-client privilege
simply does not extend to facts known to a party that are central to that party's claims,
even is such facts came to be known through communications with counsel who had
obtained knowledge of those facts through an investigation into the underlying dispute."

*LLC*, No. 05 C 4587, 2006 U.S. Dist. LEXIS 81687, at *13-14 (N.D. Ill. Nov. 6, 2006) (Ex. F) (interrogatories directed to "expert opinions" "are properly addressed pursuant to the expert discovery schedule set by this court"). Acushnet, however, did not seek the disclosure of expert opinion during fact discovery. Instead, Acushnet sought only the factual bases in support of Bridgestone's contentions.

In fact, those cases support *Acushnet's* position that it was entitled to discovery of the factual bases underlying Bridgestone's contentions. In *Auto-Meter*, the court noted that "contention interrogatories 'require the answering party to commit to a position ***and give factual specifics supporting its claims.***'" *Auto Meter Prods.*, 2006 U.S. Dist. LEXIS 81687 at *9-10 (emphasis added), quoting *Thomas & Betts Corp. v. Panduit Corp.*, No. 93 C 4017, 1996 U.S. Dist. LEXIS 4494 at *7 (N.D. Ill. Apr. 9, 1996) (Ex. G). The court then ordered the defendant to disclose the specific documents and facts supporting its defense in response to the plaintiff's interrogatories, stating that "[a]ny facts or documents not so disclosed cannot be relied upon in this case." *Id.* at *10.

The third case relied upon by Bridgestone warrants closer scrutiny. Bridgestone relies on *Edward Lowe Indus. v. Oil-Dri of Am.*, No. 94 C 7568, 1995 WL 399712 (N.D. Ill. July 7, 1995) (Ex. H), and describes it as "denying motion to compel expert testing data before expert disclosures were due, and upholding a response to an infringement contention interrogatory that tests were performed and revealed that the accused products 'fell within the scope of the '011 patent's claims.'" (D.I. 321 at 23). That description is wanting. In fact, the court held that certain test data was not discoverable because it was acquired by an expert whom the plaintiff had not yet decided to call at trial, acknowledging that "a party is entitled to discovery of the facts or opinions known by a non-testifying expert only 'upon a showing of exceptional circumstances under which it

---

*B.C.F.*, 168 F.R.D. at 165. That further supports Acushnet's position that the facts supporting Bridgestone's contentions were properly discoverable.

is impracticable for the party seeking discovery to obtain facts or opinions on the same subject by other means.'" *Edward Lowe Indus.*, 1995 WL 399712 at *2-3. The defendant had not shown that such exceptional circumstances existed. *Id.* at *3. Acushnet has not sought discovery from Bridgestone's non-testifying experts.

The court, however, ordered the plaintiff to respond to the defendant's contention interrogatories, which sought the "evidence supporting [the plaintiff's] contentions." *Id.* It found that answers to the defendant's contention interrogatories would "contribute meaningfully to clarifying issues in the case, narrowing the scope of the dispute, or setting up early settlement discussion" and would "contribute meaningfully to clarifying issues in the case." *Id.* Thus, the court ordered the plaintiff to respond, even though the close of fact discovery was over a month away. *Id.* For the same reasons, Acushnet was entitled to learn the factual bases for Bridgestone's contentions during fact discovery.

In any event, this Court long ago rejected Bridgestone's position that it could withhold all facts in support of its contentions until expert discovery. As noted above, the Court expressly instructed Bridgestone that, by the deadline for contention supplementation, it needed to provide "what you contend makes up the factual support for your allegation of infringement." (D.I. 73 at 31-32). Bridgestone agreed. (*Id.*) ("That's correct, Your Honor."). Twice. (*Id.* at 35) ("We will.").

Indeed, at that hearing the Court said "Now, they're not going to be able to sucker you and come in with a whole new body of factual support down the road, because the reason we set a contention date is so *that sets the parameters of your ongoing discovery* ...." (D.I. 73 at 36) (emphasis added). Yet that is precisely what Bridgestone did – they disclosed no facts in response to Acushnet's contention interrogatories, then "c[a]me in with a whole new body of factual support" on January 16, 2007, more than three months after the Court's scheduled close of fact discovery.

Moreover, the Court was clear that the contention deadline was designed to "set[] the parameters of your ongoing discovery." (*Id.*) By the time Bridgestone disclosed a

16

single meaningful fact that it intended in earnest to rely upon to support its contentions, fact discovery was no longer "ongoing" – it had closed, thus depriving Acushnet of the "ongoing discovery" on Bridgestone's contentions envisioned by the Court.

**b.   Acushnet's Actions Do Not Justify Bridgestone's Failure to Comply With the Court's Order.**

While Bridgestone claims that its failure to comply with the Court's Order is somehow excused by Acushnet's responses in discovery, that claim is unsupported by the facts and recent case law. *See Ramada Franchise Sys. Inc. v. Patel*, No. 03-3494, 2004 U.S. App. LEXIS 11300, at *8-9 (3d Cir. 2004) (Ex. I). In *Ramada*, Ramada sought sanctions against the defendant for failing to comply with disclosure orders. *Id.* at *7-9. In response, the defendants asserted that any sanctions against them were improper as the plaintiff had not complied with its reciprocal obligations under Rule 26. *Id.* at *8. The Third Circuit flatly rejected that argument, citing "Rule 26's express mandate that 'a party ... is not excused from making its discovery disclosures ... because it challenges the sufficiency of another party's disclosures or because another party has not made its disclosures.'" *Id.* at *9 (quoting Fed. R. Civ. P. 26(a)(1)). *See also Koninklijke Philips Elecs. N.V. v. KXD Tech., Inc.*, No. 05-CV-01532, No. 06-CV-00101, 2007 U.S. Dist. LEXIS 13956, at *13-14 (D. Nev. Feb. 21, 2007) (Ex. J) ("failure of the moving party to comply ... in regard to its own discovery responses is not ... a defense for the non-moving party's failure to provide proper discovery responses.").

Bridgestone states repeatedly that Acushnet's contention interrogatory responses provide no more detail than Bridgestone's. (*See, e.g.*, D.I. 321 at 11-12). Once again, Bridgestone's argument rests on incorrect "facts." In truth, Acushnet provided precisely the kind of detail it sought (but never received) from Bridgestone. For example, Acushnet has accused Bridgestone's Precept Laddie and Precept U-Tri Tour golf balls of infringing claim 1 of U.S. Patent No. 5,080,367 ("the '367 patent"). Claim 1 includes the

limitation "the placement of the dimples being such that at least about 80% of the distances between the closest points of the edges of adjacent dimples is less than about 0.065 inches." (Ex. K – '367 patent at col. 9, ll. 61-64).

Thus, Bridgestone's "facts" are again incorrect. Based on the number of such inaccuracies in Bridgestone's papers, Acushnet asks the Court to make a close examination of all "facts" on which Bridgestone relies.

Further, Bridgestone claims that Acushnet somehow *delayed* in seeking relief for Bridgestone's insufficient discovery responses. (*See, e.g.*, D.I. 321 at 2). Apparently, Bridgestone has forgotten Acushnet's two previous motions to compel, both of which were filed early in the case. (D.I. 34 and D.I. 47). Rather than file a third motion, Acushnet gave Bridgestone the opportunity to make good on its representation to the Court that it would provide "some facts." After the May 1 deadline for contention supplementation came and went, however, with no facts from Bridgestone, the parties agreed again to extend the deadline for fact discovery – expressly including the supplementation of contention responses – until December 18, 2006. As with previous deadlines, however, December 18 came and went, with still no facts from Bridgestone.

In any event, Bridgestone's obligations were self-executing. The law is clear: "The duty to supplement and correct disclosures and responses is a continuing duty and no motion to compel further responses is required." 6 MOORE'S FEDERAL PRACTICE 3D § 26:131[3]; Fed. R. Civ. P. 26(a)(1) and 26(e). *See, e.g., Alldread v. City of Grenada*, 988 F.2d 1425, 1436 (5th Cir. 1993) (motion to compel need not precede court's imposition of sanction for failure to supplement expert interrogatory response); *Arthur v. Atkinson Freight Lines Corp.*, 164 F.R.D. 19, 20 (S.D.N.Y. 1995) ("party may not free itself of the burden to fully comply with the rules of discovery by attempting to place a heretofore

18

unrecognized duty of repeated requests for information on its adversary"). Thus, while Acushnet disagrees that it delayed in seeking relief, any such delay still would not excuse Bridgestone's failure to provide full and complete discovery responses.

### C. Given Bridgestone's Violation of Court Order, Preclusion is the Appropriate Remedy.

Given Bridgestone's willful disregard of the Court's January 13 Order, the Scheduling Order, and its Rule 26(a)(1) and Rule 26(e) disclosure obligations, and the resultant prejudice to Acushnet and the trial schedule, preclusion is the appropriate remedy. Available sanctions range from preclusion to dismissal of the action, or even default. *See* Fed. R. Civ. P. 37(b)(2); *Wesley-Jessen Corp.*, 844 F. Supp. at 990 ("the Court will not allow it to offer into evidence in its case in chief documents or testimony supporting that contention that are not disclosed in its response"); *Dependahl*, 84 F.R.D. at 420 (striking defense and counterclaim for failure to answer contention interrogatory); *King*, 117 F.R.D. at 7 n.6 (plaintiffs "will be precluded from testifying at trial to any facts in support of the losses not mentioned in their respective depositions or answers to interrogatories"); *Auto Meter Prods.*, 2006 U.S. Dist. LEXIS 81687 at \*10 ("[a]ny facts or documents not so disclosed cannot be relied upon in this case"). Despite the availability of stronger remedies such as dismissal or default, Acushnet seeks only to bind Bridgestone to the content of its responses to Acushnet's discovery requests.

Here, the facts closely parallel those of *Wesley-Jessen* and *Auto Meter*, in which the courts found that preclusion was the appropriate relief. *See Wesley-Jessen*, 844 F. Supp. at 990; *Auto Meter Prods.*, 2006 U.S. Dist. LEXIS 81687 at \*10-11. In both cases, one party served contention interrogatories requesting the factual bases underlying the other party's claims, which the answering party refused to provide. *Id.* at 989-90; \*3-5. As here, the courts in both cases made the answering parties aware of their obligations to provide factual responses. *Id.* at 990; \*9. And both courts held that failure to meet those obligations would result in preclusion at trial of any facts or evidence not disclosed. *Id.*

19

at 990; *10-11. Here, Bridgestone was aware of its obligations to disclose the factual bases supporting its contentions, but chose to withhold them.

## III.    CONCLUSION

The discovery rules must be applied in an even-handed manner.  The Court previously precluded Acushnet from relying on prior art that it did not disclose by a Court-ordered deadline.  (D.I. 288 at 9).  The Court should preclude Bridgestone from relying on any fact or assertion at trial that it did not disclose in response to Acushnet's contention interrogatories by the Court's May 1, 2006 deadline for contention supplementation.  Likewise, Bridgestone should not be allowed to rely on documents or other evidence to support any fact it did properly contend prior to May 1 (if there be any), if it did not disclose such documents or evidence by September 1, 2006, the document cut-off date advanced by Bridgestone in its own preclusion motions.  Finally, any tests results that Bridgestone had obtained for the litigation to support a properly contended fact but which Bridgestone failed to disclose when Bridgestone purported to last fully supplement its interrogatory answers, on December 18, should also be precluded.  This would constitute an even-handed application of the discovery disclosure rules, which is all that any litigant can expect.

Acushnet believes that the parties, by agreement, extended the supplementation deadline to December 18, 2006.  But Bridgestone has not honored that agreement, and it convinced the Court to disregard that date as a deadline for final contentions in its prior ruling excluding Acushnet's contention evidence.  However, if the Court were to find December 18 cut-off more appropriate, we respectfully submit that the December 18 date should apply to both parties, including with respect to the previously disallowed prior art disclosed by Acushnet by that date.

For these reasons, Acushnet respectfully requests that the Court grant its motion.

20

Respectfully submitted,

POTTER ANDERSON & CORROON LLP

OF COUNSEL:

Alan M. Grimaldi
Joseph P. Lavelle
Kenneth W. Donnelly
Brian S. Seal
HOWREY LLP
1299 Pennsylvania Avenue, N.W.
Washington, DC 20004
Tel: (202) 783-0800

By:  /s/ David E. Moore
Richard L. Horwitz (#2246)
David E. Moore (#3983)
Hercules Plaza, 6th Floor
1313 North Market Street
P. O. Box 951
Wilmington, DE 19899-0951
Tel: (302) 984-6000
rhorwitz@potteranderson.com
dmoore@potteranderson.com

Dated: April 9, 2007
Public Version Dated: April 16, 2007
789601 / 28946

*Attorneys for Defendant*
*Acushnet Company*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

### CERTIFICATE OF SERVICE

I, David E. Moore, hereby certify that on April 16, 2007, the attached document was hand

delivered to the following persons and was electronically filed with the Clerk of the Court using

CM/ECF which will send notification to the registered attorney(s) of record that the document

has been filed and is available for viewing and downloading:

Jack B. Blumenfeld
Maryellen Noreika
Leslie A. Polizoti
Morris, Nichols, Arsht & Tunnell
1201 N. Market Street
Wilmington, DE 19801

I hereby certify that on April 16, 2007, I have Electronically Mailed the documents to the

following:

Robert M. Masters
Paul, Hastings, Janofsky & Walker LLP
875 15th Street, N.W.
Washington, D.C. 20005
RobMasters@paulhastings.com

/s/ David E. Moore
Richard L. Horwitz
David E. Moore
Potter Anderson & Corroon LLP
Hercules Plaza – Sixth Floor
1313 North Market Street
P.O. Box 951
Wilmington, DE 19899-0951
(302) 984-6000
rhorwitz@potteranderson.com
dmoore@potteranderson.com

680012 / 28946