IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| BRIDGESTONE SPORTS CO., LTD., and BRIDGESTONE GOLF, INC., | C.A. No. 05-132 (JJF) |
| *Plaintiffs,* | **REDACTED – PUBLIC VERSION** |
| *v.* | |
| ACUSHNET COMPANY, | |
| *Defendant.* | |

## BRIDGESTONE'S OPENING BRIEF IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT OF INFRINGEMENT OF U.S. PATENT NO. 6,634,961

MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Jack B. Blumenfeld (#1014)
Leslie A. Polizoti (#4299)
1201 N. Market St.
P.O. Box 1347
Wilmington, DE 19801
(302) 658-9200
*Attorneys for Bridgestone Sports Co., Ltd.*
*and Bridgestone Golf, Inc.*

OF COUNSEL:

Robert M. Masters
Scott M. Flicker
Terrance J. Wikberg
Brandon M. White
PAUL, HASTINGS, JANOFSKY & WALKER LLP
875 15th St., N.W.
Washington, DC 20005
(202) 551-1700

Original Filing Date: April 13, 2007
Redacted Filing Date: April 17, 2007

i.

TABLE OF CONTENTS

Page

NATURE AND STAGE OF THE PROCEEDINGS ....... 1

SUMMARY OF ARGUMENT ....... 1

STATEMENT OF FACTS ....... 2

      A.    '961 Patent ....... 2

      B.    The Accused Acushnet Pro V1 Golf Ball ....... 3

ARGUMENT ....... 5

  I.    LEGAL PRINCIPLES ....... 5

  II.    ACUSHNET HAS ADMITTED THAT THE PRO V1 BALL SATISFIES FIVE OF THE NINE CLAIM LIMITATIONS ....... 6

  III.    THE PRO V1 BALL MEETS THE REMAINING FOUR LIMITATIONS AS A MATTER OF LAW ....... 7

CONCLUSION ....... 12

## TABLE OF AUTHORITIES

Cases

*Abbott Labs. v. Geneva Pharms., Inc.*,
    182 F.3d 1315 (Fed. Cir. 1999)                  5

*E.C. McAfee A/C/ Bristol Metal Indus. v. United States*,
    832 F.2d 152 (Fed. Cir. 1987)                  6

*Keller v. United States*,
    58 F.3d 1194 (7th Cir. 1995)                  6

Statutes

FED. R. CIV. P. 36(b)                  5

Other Authorities

JOHN W. STRONG, MCCORMICK ON EVIDENCE § 254 (5th ed. 2003)         5-6

## NATURE AND STAGE OF THE PROCEEDINGS

This is a patent infringement action brought by Plaintiffs Bridgestone Sports Co., Ltd. and Bridgestone Golf, Inc. (collectively "Bridgestone") against Defendant Acushnet Company ("Acushnet") in March 2005. Bridgestone asserts that Acushnet infringes seven patents, including U.S. Patent No. 6,634,961 ("the '961 patent") (Ex. A), which is titled "Multi-Piece Solid Golf Ball," by the sale of its Pro V1 golf ball bearing sidestamp ◀Pro V1-392▶.[1]

Fact discovery closed on October 10, 2006. A *Markman* hearing was held on November 29, 2006, with the *Markman* rulings still pending. Expert discovery closed on March 30, 2007. Trial is scheduled to begin on June 18.

## SUMMARY OF ARGUMENT

1.    Acushnet admitted, in response to Bridgestone's first set of requests for admission, that its Pro V1 ball satisfies five of the nine claim limitations of the '961 patent.

2.    There is no genuine issue of material fact that the Pro V1 ball satisfies the remaining four limitations of the '961 patent – Acushnet's expert does not contest that.

---

[1]    Recently, Bridgestone learned from Jeffrey Dalton's February 20, 2007 Declaration that additional golf balls could have been accused of infringement based on late-produced documents. In Bridgestone's Motion for Sanctions and Opening Brief in Support (D.I. 304-305), Bridgestone requested that any verdict or judgment against the accused Pro V1 golf ball also be applied against the Pro V1 and Pro V1x golf balls bearing sidestamps ◀•Pro V1 392•▶ , ◀•Pro V1x 332•▶ and ◀Pro V1x-332▶.

## STATEMENT OF FACTS

A.     '961 Patent

Bridgestone asserts claim 2 of the '961 patent, which depends from independent claim 1. These claims generally cover a solid golf ball with a solid core that contains a particular rubber composition having the following nine (9) elements:

### Claim 1:

1. "A multi-piece solid golf ball comprising a solid core, an inner cover layer and an outer cover layer, wherein the solid core is molded from a rubber composition comprising"

2. "100 parts by weight of a base rubber composed of (a) 20 to 100 wt % of a polybutadiene having a cis-1,4 content of at least 60% and a 1,2 vinyl content of at most 2%, having a viscosity $\eta$ at 25°C. as a 5 wt % solution in toluene of up to 600 mPa•s, being synthesized using a rare-earth catalyst and satisfying the relationship: $10B+5 \leq A \leq 10B+60$, wherein A is the Mooney viscosity (ML1+4 (100°C)) of the polybutadiene and B is the ratio Mw/Mn between the weight-average molecular weight Mw and the number-average molecular weight Mn of the polybutadiene,"

3. "in combination with (b) 0 to 80 wt % of a diene rubber other than component (a),"

4. "(c) 10 to 60 parts by weight of an unsaturated carboxylic acid or a metal salt thereof or both,"

5. "(d) 0.1 to 5 parts by weight of an organosulfur compound,"

6. "(e) 5 to 80 parts by weight of an inorganic filler,"

7. "(f) 0.1 to 5 parts by weight of an organic peroxide;"

8. "the inner cover layer has a Shore D hardness of 50 to 80; the outer cover layer has a Shore D hardness of 35 to 60; and the outer cover layer has a lower Shore D hardness than the inner cover layer."

### Claim 2:

9. "The golf ball of claim 1, wherein the diene rubber (b) includes 30 to 100 wt % of a second polybutadiene which has a cis-1,4 content of at least 60% and a 1,2 vinyl content of at most 5%, has a Mooney viscosity (ML1+4 (100° C.)) of not more

than 55, and satisfies the relationship: η≤20A-550, wherein A is the Mooney viscosity (ML1+4 (100° C.)) of the second polybutadiene and η is the viscosity of the second polybutadiene, in mPa•s, at 25°C as a 5 wt % solution in toluene."

B.    The Accused Acushnet Pro V1 Golf Ball

A proper infringement analysis requires an understanding of the core formulation of the accused Pro V1 ball.  The materials and quantities used in the core formulation of the Pro V1 golf ball are shown in Acushnet's Manufacturing Guideline (Ex. B).



Although there are recipe change notices generated during the manufacturing process for the Pro V1 golf ball, the Manufacturing Guidelines are a reliable source to determine Acushnet's core formulation for the accused Pro V1 golf ball (identified by sidestamp ◀Pro V1-392▶).  The recipe change notices generated during the manufacturing process reflected



███████████████████████████████████████████████████████████

        Thus, ██████████████████████████████████ its November 2004

Manufacturing Guideline for the Pro V1 provides the golf ball's design, its dimensions, and the

recipe for the core formulation where each ingredient has a functional role, including the

materials and quantities used.

███████████████████████████████████████████████████████████

---

[2]      Although Bridgestone received some recipe change notices relating to the Pro V1 golf
        ball, Bridgestone filed a Motion for Sanctions requesting, among other things, exclusion
        of all late-produced Acushnet documents, including Mesabi Mix Vision printouts and
        Chronos Richardson weigh-feed system printouts that reflect batch core recipes.

The claims of the '961 patent discuss particular parts of the base rubber having specific qualities, such as polybutadiene (a) and diene rubber (b). There is no dispute that polybutadiene (a) includes a commercial brand of polybutadiene rubber called CB23 ██████

██████████████████████████████████████████████ There is also

no dispute that diene rubber (b) includes a commercial brand called Shell 1220 █████████

████████████████████████████████████████████████████████

Claim construction is not material to this motion because, under either Bridgestone's proposed claim constructions or under Acushnet's proposed claim constructions, Acushnet's Pro V1 golf ball infringes claim 2 of the '961 patent as a matter of law.

## ARGUMENT

### I.   LEGAL PRINCIPLES

"Summary judgment is proper when there is no genuine issue of material fact and the moving party is entitled to a judgment as a matter of law." *Abbott Labs. v. Geneva Pharms., Inc.*, 182 F.3d 1315, 1317 (Fed. Cir. 1999) (affirming summary judgment of invalidity). In this instance, Bridgestone bears the burden of proving infringement of claim 2 of the '961 Patent by a preponderance of the evidence.

"Any matter admitted under [Rule 36] is conclusively established." FED. R. CIV. P. 36(b). An admission by a party means that no proof is necessary and the fact is deemed established. *Id.*; 1970 Adv. Committee Notes ("In form and substance a Rule 36 admission is comparable to an admission in pleadings...rather than to an evidentiary admission of a party."). A judicial admission "is conclusive in the case," and has "the effect of withdrawing a fact from issue and dispensing wholly with the need for proof of the fact." JOHN W. STRONG, MCCORMICK

ON EVIDENCE § 254 (5th ed. 2003).  Judicial admissions "may not be controverted at trial or on appeal."  *Keller v. United States*, 58 F.3d 1194, 1198 n.8 (7th Cir. 1995); *E.C. McAfee A/C/ Bristol Metal Indus. v. United States*, 832 F.2d 152, 154 n.* (Fed. Cir. 1987) ("pleadings are judicial admissions and a party may invoke the language of the opponent's pleading to render the facts contained therein indisputable.").

II.     ACUSHNET  HAS  ADMITTED  THAT  THE  PRO  V1  BALL
        SATISFIES FIVE OF THE NINE CLAIM LIMITATIONS

       Of the nine limitations in claims 1 and 2 of the '961 patent, as set out in the Statement of Facts, Acushnet has admitted at least five of them



III.    THE PRO V1 BALL MEETS THE REMAINING FOUR
        LIMITATIONS AS A MATTER OF LAW

       There is no genuine issue of material fact that, according to the core formulation given in the Manufacturing Guideline, the accused Pro V1 golf ball meets the remaining limitations of claims 1 and 2 – Acushnet's expert, Dr. Felker, does not dispute any of that (*see* Ex. G, Dr. Bryan Coughlin's Declaration and Expert Report dated January 10, 2007; and Ex. H, Dr. David Felker's Report, dated February 20, 2007, pp. 1-12).

2.  (claim 1) "100 parts by weight of a base rubber composed of (a) 20 to 100 wt % of a polybutadiene having a cis-1,4 content of at least 60% and a 1,2 vinyl content of at most 2%, having a viscosity $\eta$ at 25°C. as a 5 wt % solution in toluene of up to 600 mPa•s, being synthesized using a rare-earth catalyst and satisfying the relationship: $10B+5 \leq A \leq 10B+60$, wherein A is the Mooney viscosity ($ML_{1+4}$ (100°C)) of the polybutadiene and B is the ratio Mw/Mn between the weight-average molecular weight Mw and the number-average molecular weight Mn of the polybutadiene"



Each of these is a commercial brand of polybutadiene having its own specific physical and chemical characteristics.

---

[3]   Shell 1220 is a brand of polybutadiene manufactured by Shell until it sold this brand to Dow Chemical Company, which continues to manufacture this brand in the same manner under the name Dow 1220.  Shell 1220 is used in this case to refer to both products. Shell 1220 has physical and chemical characteristics as described in the following exemplary documents:  Ex I, AB 27774, AB 28907.

[4]   CB23 or Buna CB23 is a brand of polybutadiene manufactured by Bayer AG which renamed their rubber division to Lanxess,

CB23 rubber satisfies each of the elements required by claim 1 of the '961 Patent for the polybutadiene (a).

Further, the physical properties of CB23 are not in dispute.

**3.  (claim 1) "in combination with (b) 0 to 80 wt % of a diene rubber other than component (a)"**

Shell 1220 polybutadiene rubber is a diene rubber other than CB23 polybutadiene rubber, in accordance with claim 1 of the '961 Patent for the diene (b).

10.



**5.  (claim 1) "(d) 0.1 to 5 parts by weight of an organosulfur compound"**



**9. (claim 2)** "The golf ball of claim 1, wherein the diene rubber (b) includes 30 to 100 wt % of a second polybutadiene which has a cis-1,4 content of at least 60% and a 1,2 vinyl content of at most 5%, has a Mooney viscosity ($ML_{1+4}$ (100° C.)) of not more than 55, and satisfies the relationship: $\eta \leq 20A-550$, wherein A is the Mooney viscosity ($ML_{1+4}$ (100° C.)) of the second polybutadiene and $\eta$ is the viscosity of the second polybutadiene, in mPa•s, at 25°C as a 5 wt % solution in toluene."

Shell 1220 rubber is part of the blended base rubber as shown in the Manufacturing Guideline, and Shell 1220 satisfies each of the elements required by claims 1 and 2 for the diene rubber (b).



<u>CONCLUSION</u>

Bridgestone requests that this Court grant summary judgment that Acushnet's products infringe Bridgestone's claim 2 of the '961 Patent by Acushnet's sales of the accused Pro V1 golf ball bearing sidestamp ◀Pro V1-392▶.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Leslie A. Polizoti*

Jack B. Blumenfeld (#1014)
Leslie A. Polizoti (#4299)
1201 N. Market St.
P.O. Box 1347
Wilmington, DE 19801
(302) 658-9200
*Attorneys for Bridgestone Sports Co., Ltd.*
*and Bridgestone Golf, Inc.*

OF COUNSEL:

Robert M. Masters
Scott M. Flicker
Terrance J. Wikberg
Brandon M. White
PAUL, HASTINGS, JANOFSKY & WALKER LLP
875 15th St., N.W.
Washington, DC 20005
(202) 551-7100

April 13, 2007
799610

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on April 17, 2007 I electronically filed the foregoing with the Clerk of the Court using CM/ECF, which will send notification of such filing(s) to the following:

> Richard L. Horwitz, Esquire
> POTTER ANDERSON & CORROON LLP
> Hercules Plaza, 6th Floor
> 1313 North Market Street
> Wilmington, DE  19801

I further certify that I caused copies to be served upon the following on April 17, 2007 in the manner indicated:

### BY HAND & E-MAIL

> Richard L. Horwitz, Esquire
> POTTER ANDERSON & CORROON LLP
> 1313 N. Market Street
> Wilmington, DE  19801

### BY E-MAIL and FEDERAL EXPRESS

> Joseph P. Lavelle, Esquire
> HOWREY LLP
> 1299 Pennsylvania Avenue, NW
> Washington, DC  20004

> */s/ Leslie A. Polizoti*
> Leslie A. Polizoti (#4299)
> MORRIS, NICHOLS, ARSHT & TUNNELL LLP
> Wilmington, DE  19801
> (302) 658-9200
> lpolizoti@mnat.com