# EXHIBIT 1

REDACTED

# EXHIBIT 2

REDACTED

EXHIBIT 3

REDACTED

# EXHIBIT 4

REDACTED

# EXHIBIT 5

# HOWREY LLP

1299 Pennsylvania Avenue, NW
Washington, DC 20004-2402
www.howrey.com

Renée L. Stasio
Of Counsel
T 202.383.7176
F 202.383.6610
stasior@howrey.com

TK# 9496: File 00634.0002.000000

February 7, 2007

<u>**VIA FACSIMILE 202.551.1705**</u>

Brandon M. White, Esq.
Paul, Hastings, Janofsky & Walker LLP
875 15th Street, N.W.
Washington, DC 20005

Dear Brandon:

  I am writing in response to your February 6 e-mail to Brian Seal and to confirm our agreement regarding the reciprocal testing of physical samples that the parties' independent experts used to support their opinions in the expert reports served on January 16, 2007.

  First, in connection with your e-mail to Mr. Seal, you wrote, "We [Bridgestone] requested a sample of the blend of BR 730 with Zn PCTP that was actually tested by Dr. Koenig (and separate samples of each of BR 730 and Zn PCTP) and samples of Neocis BR 60, Neocis BR 40, and Cariflex 1220x." Acushnet is unaware of a time when Bridgestone previously requested a sample of any of these rubbers. In fact, it was Bridgestone that provided Acushnet with our sample of BR 730. We strive to be diligent in responding to discovery requests, and do not believe such a request was ever made. Nevertheless, we have no objection to providing Bridgestone with the samples that you requested today, with the exception of the blend of BR 730 and Zn PCTP, which we no longer have.

  In connection with the reciprocal testing, it is my understanding that we agreed to the following:

  1.  Neither party will perform any destructive testing on any sample;

  2.  Acushnet will supply Bridgestone with all the samples identified in Acushnet's experts' reports upon which Bridgestone can perform non-destructive testing, *excluding* the samples related to the '791 patent and the Altus Newing Massey golf ball[1]; however, Acushnet agrees that if the prior art related to the '791 patent and the Altus Newing Massey are readmitted as evidence into this case, the parties will agree on an alternative time to test the samples;

---

[1] See p. 3 for a list of all the samples that Acushnet identified in Acushnet's experts' reports upon which Bridgestone can perform non-destructive testing.

AMSTERDAM  BRUSSELS  CHICAGO  EAST PALO ALTO  HOUSTON  IRVINE  LONDON
LOS ANGELES  NEW YORK  NORTHERN VIRGINIA  PARIS  SALT LAKE CITY  SAN FRANCISCO  TAIPEI  WASHINGTON, DC

Brandon M. White, Esq.
February 7, 2007
Page 2

3.     Acushnet will have the samples identified in No.2 at Packard for inspection and/or testing at 9:00 am on Thursday, February 8, 2007;

4.     After Bridgestone completes its testing, Acushnet will have the opportunity to inspect all the samples identified in Bridgestone's experts' reports. The parties understand that this may happen on Friday, February 9, 2007. Based on that inspection, Acushnet will identify which samples Bridgestone must send to Acushnet for testing[2]; and

5.     Bridgestone will have the samples identified in No.4 at Acushnet for testing at 9:00 am on Monday, February 12, 2007. (*See* n.2, supra).

Based on our telephone conversation this morning, I also understand that Bridgestone will perform tests on the BR-40, BR-60, Cariflex 1220x and BR 730 at a lab other than Packer and at a different.

Finally, I want to confirm that Acushnet is prepared to deliver to Bridgestone on Thursday four (4) Wilson Ultra Competition 90 golf balls and six (6) Wilson Ultra Tour Balata 90 golf balls for Bridgestone's use and testing.

Please let me know if any statements in this letter do not correspond with your understanding of the parties' agreement.

Sincerely,

Renée L. Stasio

---

[2] *Note*: In our telephone conversation this morning, I requested the possibility of Acushnet performing its testing at Packer. You advised me that you would check with Packer. If packer refuses the request, then we will follow the original plan unless Acushnet hires an outside lab at which to perform the testing.

Brandon M. White, Esq.
February 7, 2007
Page 3

## ACUSHNET SAMPLES

For the '817 Patent:

    24 balls constructed from the JP '673 reference


For the '834 Patent

    Pieces of 6 Wilson Ultra Competition 90 Log # 93049 Cores
    Pieces of 6 Precept EV Extra Spin Log # 96001 Cores

For '961 and/or '652 Patent

    Samples of BR-40, BR-60 and Cariflex 1220x


For the '852 Patent

    Pieces of 12 Ultra Tour Balata 90 Balls Log #93007


For the '705 Patent

    Sample of BR 730

Paul *Hastings*

Paul, Hastings, Janofsky & Walker LLP
875 15th Street, N.W. • Washington, DC 20005
telephone 202 551 1700 • facsimile 202 551 1705 • www.paulhastings.com

Atlanta
Beijing
Brussels
Chicago
Hong Kong
London
Los Angeles
Milan
New York
Orange County
Palo Alto
Paris
San Diego
San Francisco
Shanghai
Stamford
Tokyo
Washington, DC

(202) 551-1754
brandonwhite@paulhastings.com

February 9, 2007

70416.000002

VIA FACSIMILE

Brian S. Seal
Howrey LLP
1299 Pennsylvania Avenue
Washington, DC 2

Re:    *Bridgestone Sports v. Acushnet*

Dear Brian:

I am sending this letter to your attention as Ms. Stasio is likely to be traveling. We understand from Ms. Stasio that Acushnet has determined that it need not inspect any of the golf ball samples at its facility on Monday, February 12, 2007 as referenced in paragraph 5 of Ms. Stasio's February 7, 2007 letter in view of the two days of inspection of golf balls and components thereof by Ms. Stasio, Dr. Felker and Mr. Bulpett at Packer Engineering's facilities. Accordingly, we will not be sending the golf ball samples to Massachusetts on Monday. Please let us know immediately if my understanding is not correct.

I also understand that it was represented to Mr. Wikberg by Ms. Stasio that other than the golf balls and/or components thereof that Acushnet made available for inspection at Packer Engineer's facilities today and yesterday, there are no other golf balls, golf ball components or other tangible things that Acushnet or any of its experts intend to rely upon in this case. Please let us know if this understanding is not correct.

Enjoy the weekend.

Sincerely,

Brandon M. White
for PAUL, HASTINGS, JANOFSKY & WALKER LLP

LEGAL_US_E # 74204637.2

# Paul*Hastings*

Paul, Hastings, Janofsky & Walker LLP
875 15th Street, N.W. • Washington, DC 20005
telephone 202 551 1700 • facsimile 202 551 1705 • www.paulhastings.com

## *FACSIMILE TRANSMISSION*

| to: | company/office: | facsimile: | telephone: |
|---|---|---|---|
| Brian S. Seal | Howrey | (202) 383-6610 | (202) 383-6904 |

| from: | facsimile: | telephone: | initials: |
|---|---|---|---|
| Brandon M. White | | (202) 551-1754 | BMW2 |

| client name: | Bridgestone Sports | client matter number: | 70416.00002 |
|---|---|---|---|
| date: | February 9, 2007 | pages (with cover): | 2 |

comments:

*If you do not receive all pages, please call immediately Facsimile Center: (202) 551-1275*

*This message is intended only for the use of the individual or entity to which it is addressed, and may contain information that is privileged, confidential and exempt from disclosure under applicable law. If the reader of this message is not the intended recipient, or the employee or agent responsible for delivering the message to the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited. If you have received this communication in error, please notify us immediately by telephone, and return the original message to us at the above address via the U.S. Postal Service. Thank you.*

```
        ***********************
        ***   TX REPORT   ***
        ***********************

    TRANSMISSION OK

    TX/RX NO             0939
    CONNECTION TEL       ##260456#pppp3836610#
    CONNECTION ID
    ST. TIME             02/09 18:29
    USAGE T              00'43
    PGS. SENT            2
    RESULT               OK
```



# Paul Hastings

Paul, Hastings, Janofsky & Walker LLP
875 15th Street, N.W. • Washington, DC 20005
Telephone 202 551 1700 • facsimile 202 551 1705 • www.paulhastings.com

## FACSIMILE TRANSMISSION

| | | | |
|---|---|---|---|
| **to:** | **company/office:** | **facsimile:** | **telephone:** |
| Brian S. Seal | Howrey | (202) 383-6610 | (202) 383-6904 |
| **from:** | **facsimile:** | **telephone:** | **initials:** |
| Brandon M. White | | (202) 551-1754 | BMW2 |
| **client name:** | Bridgestone Sports | **client matter number:** | 70416.00002 |
| **date:** | February 9, 2007 | **pages (with cover):** | 2 |

**comments:**

# HOWREY LLP

1299 Pennsylvania Avenue, NW
Washington, DC 20004-2402
www.howrey.com

**Renée L. Stasio**
Of Counsel
T 202.383.7176
F 202.383.6610
stasior@howrey.com

February 13, 2007

TK# 9496: File 00634.0002.000000

**VIA FACSIMILE 202.551.1705**

Brandon M. White, Esq.
Paul, Hastings, Janofsky & Walker LLP
875 15th Street, N.W.
Washington, DC 20005

Dear Brandon:

I am writing in response to your February 9, 2007, letter to Brian Seal regarding the golf balls that Acushnet intends to rely on in this case.

In your letter, you state that I represented to Mr. Wikberg last Friday that "other than the golf balls and/or components thereof that Acushnet made available for inspection at Packer Engineer's facilities today and yesterday, there are no other golf balls, golf ball components or other tangible things that Acushnet or any of its experts intend to rely upon in this case."

I did not make this representation to Mr. Wikberg. The representation I did make to Mr. Wikberg was that there were no other golf balls, golf ball components or other tangible things, other than the '707 core manufactured pursuant to the EP '043 patent specification, that Mr. Felker relied on *in connection with Mr. Felker's [January 16, 2007] invalidity report* other than what Acushnet made available at Packer Engineering.

Of course, my statement did not include the physical samples of the testing Acushnet performed on the Altus Newing Massey or on the cores Acushnet manufactured pursuant to the specifications of the '563 and '247 patents. You and I agreed prior to the inspection at Packer Engineering that Bridgestone would not inspect those samples unless the Court granted Acushnet's motion for reconsideration and allowed Acushnet to rely on those pieces of prior art as evidence of invalidity. (*See* February 7 letter from Stasio to White).

Sincerely,

Renée L. Stasio

AMSTERDAM   BRUSSELS   CHICAGO   EAST PALO ALTO   HOUSTON   IRVINE   LONDON
LOS ANGELES   NEW YORK   NORTHERN VIRGINIA   PARIS   SALT LAKE CITY   SAN FRANCISCO   TAIPEI   WASHINGTON, DC

DM_US\8433996.v1

# EXHIBIT 6

REDACTED

# EXHIBIT 7

REDACTED

# EXHIBIT 8

REDACTED

# EXHIBIT 9

# HOWREY LLP

1299 Pennsylvania Avenue, NW
Washington, DC 20004-2402
www.howrey.com

Renée L. Stasio
Of Counsel
T 202.383.7176
F 202.383.6610
stasior@howrey.com

TK# 9496: File 00634.0002.000000

February 13, 2007

**VIA FACSIMILE 202.551.1705**

Brandon M. White, Esq.
Paul, Hastings, Janofsky & Walker LLP
875 15th Street, N.W.
Washington, DC 20005

Dear Brandon:

I am writing in response to your February 1, 2007, letter to Brian Seal regarding Acushnet's testing of Altus Newing Massey and Wilson Ultra Competition 90 golf balls.

Acushnet refuses Bridgestone's request to withdraw either the Altus Newing Massey or the Wilson Ultra Competition 90 as evidence in this case.[1]

First, Mr. Seal's November 28, 2005 letter to Raja Saliba was not an intentional misrepresentation of the facts. At that time, based on Acushnet's good faith belief, it had zero Altus Newing Massey and 2 Wilson Ultra Competition 90 balls in its possession. It was simply a mistake on the part of Acushnet in reviewing its inventory.

Second, Acushnet's mistake is not prejudicial to Bridgestone. The Altus Newing Massey is Bridgestone's product, and certainly Bridgestone has unlimited access to these golf balls if it desires to perform testing on them. With respect to the Wilson Ultra Competition 90, Acushnet provided Bridgestone with four of these golf balls on February 8, 2007 - more than one week prior to the deadline for the rebuttal export reports. Bridgestone has more than enough time to perform testing on these balls; indeed Mr. Wikberg represented to me on February 9, 2007, that Bridgestone did not need an extension of time to prepare its reports.

Finally, there was never any formal agreement not to perform destructive testing. Rather, in the January 3, 2006, letter from Mr. Moore to Mr. Gruskin to which you refer, we confirmed that until the parties agreed to a joint testing procedure, we would not perform any destructive testing on any golf ball, component or material, and asked that Bridgestone agree to the same.

---

[1] Although the Court granted Bridgestone's motion to preclude Acushnet from using the Altus Newing Massing as prior art, Acushnet has filed a motion for reconsideration. If the Court grants Acushnet's motion, Acushnet will not withdraw the Altus Newing Massey from evidence based on Bridgestone's request.

AMSTERDAM   BRUSSELS   CHICAGO   EAST PALO ALTO   HOUSTON   IRVINE   LONDON
LOS ANGELES   NEW YORK   NORTHERN VIRGINIA   PARIS   SALT LAKE CITY   SAN FRANCISCO   TAIPEI   WASHINGTON, DC

# HOWREY LLP

Brandon M. White, Esq.
February 13, 2007
Page 2

The parties, however, never agreed on a joint testing procedure, and both parties then proceeded to perform destructive testing on golf balls without any formal agreement.

As far as Acushnet is concerned, and unless we hear otherwise, your request to withdraw these prior art golf balls is moot.

Sincerely,

Renée L. Stasio