IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| BRIDGESTONE SPORTS CO., LTD., and BRIDGESTONE GOLF, INC., <br><br> Plaintiffs, <br><br> v. <br><br> ACUSHNET COMPANY, <br><br> Defendant. | ) ) ) ) ) ) ) ) ) ) ) ) ) <br><br> C.A. No. 05-132 (JJF) <br><br> **REDACTED – PUBLIC VERSION** |

**BRIDGESTONE'S OPENING BRIEF IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT OF NO INVALIDITY OF U.S. PATENT NO. 5,782,707**

MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Jack B. Blumenfeld (#1014)
Leslie A. Polizoti (#4299)
1201 N. Market St.
P.O. Box 1347
Wilmington, DE 19801
(302) 658-9200

*Attorneys for Bridgestone Sports Co., Ltd.
and Bridgestone Golf, Inc.*

OF COUNSEL:

Robert M. Masters
Scott M. Flicker
PAUL, HASTINGS, JANOFSKY & WALKER LLP
875 15th St., N.W.
Washington, DC 20005
(202) 551-1700

Original Filing Date: April 13, 2007
Redacted Filing Date: April 17, 2007

TABLE OF CONTENTS

|   |   | Page |
|---|---|---|
| TABLE OF AUTHORITIES | | ii |
| NATURE AND STAGE OF THE PROCEEDINGS | | 1 |
| SUMMARY OF ARGUMENT | | 1 |
| STATEMENT OF FACTS | | 2 |
| A. | The '707 Patent | 2 |
| B. | Assertions Of Invalidity Of The '707 Patent | 3 |
| C. | The "Core" Made By "The Engineers" | 5 |
| D. | Dr. Felker's Supplemental Report | 5 |
| ARGUMENT | | 6 |
| A. | General Legal Principles | 6 |
| B. | Dr. Felker's Expert Report Fails To Support His Assertion Of An Inherent Disclosure Of Core Hardness Difference In EP '043 | 8 |
| C. | The 2000 Opinion Of Counsel Fails To Support Dr. Felker's Assertion Of An Inherent Disclosure Of Core Hardness Difference In EP '043 | 8 |
| D. | The 2007 Supplemental Report Fails To Support Dr. Felker's Allegation Of An Inherent Disclosure Of Core Hardness Difference In EP '043 | 10 |
| E. | Dr. Felker's Bare Obviousness Assertion In View Of EP '043 Cannot Provide The Missing Disclosure | 13 |
| CONCLUSION | | 13 |

# TABLE OF AUTHORITIES

Page

## Cases

*Abbott Labs. v. Geneva Pharms., Inc.*,
    182 F.3d 1315 .................................................................................................. 6

*AK Steel Corp. v. Sollac & Ugine*,
    344 F.3d 1234 (Fed. Cir. 2003)......................................................................... 6

*Atlas Powder Co. v. IRECO Inc.*,
    190 F.3d 1342 (Fed. Cir. 1999)......................................................................... 7

*Continental Can Co. v. Monsanto Co.*,
    948 F.2d 1264 (Fed. Cir. 1991).......................................................................... 7

*In re Dembiczak*,
    175 F.3d 994 (Fed. Cir. 1999)..................................................................... 7, 13

*In re Robertson*,
    169 F.3d 743 (Fed. Cir. 1999).......................................................................... 7

*In re Kotzab*,
    217 F.3d 1365 (Fed. Cir. 2000)......................................................................... 7

*Thomson, S.A. v. Quixote Corp.*,
    166 F.3d 1172 (Fed. Cir. 1999)......................................................................... 6

*Trintec Indus., Inc. v. Top-U.S.A. Corp.*,
    295 F.3d 1292 (Fed. Cir. 2002)...................................................................... 7, 8

## Other Authorities

35 U.S.C. § 102................................................................................................... 6

35 U.S.C. § 103................................................................................................... 7

NATURE AND STAGE OF THE PROCEEDINGS

This is a patent infringement action brought by Plaintiffs Bridgestone Sports Co., Ltd. and Bridgestone Golf, Inc. ("Bridgestone") against Defendant Acushnet Company ("Acushnet") in March 2005. Bridgestone is currently asserting claims from seven U.S. Patents against various Acushnet products. Among these seven patents is U.S. Patent No. 5,782,707 ("the '707 Patent"), which is directed to structural features of a golf ball.

Fact discovery closed on October 10, 2006. A *Markman* hearing was held on November 29. Expert discovery closed on March 30, 2007. Trial is scheduled to begin on June 18.

Acushnet's purported invalidity expert, Dr. David Felker, originally asserted two invalidity defenses with respect to the '707 Patent. The Court precluded Acushnet from relying on one of these defenses – anticipation under 35 U.S.C. § 102 in view of the "Altus Newing Massy" golf ball. Accordingly, only one of Dr. Felker's invalidity contentions against the '707 Patent remains – obviousness under 35 U.S.C. § 103 in view of EP 0 633 043 in combination with the knowledge of dimple coverage percentages available to one of ordinary skill. Bridgestone requests summary judgment that the '707 Patent is valid over this remaining contention.

SUMMARY OF ARGUMENT

Claim 1 of the '707 Patent requires, *inter alia*, a core where "the core surface hardness is higher than the core center hardness by 8 to 20 degrees." Dr. Felker alleges that example 2 of European Publication EP 0 633 043 ("EP '043") inherently discloses this feature. To support this inherency argument, Dr. Felker relies on: [REDACTED] This "evidence" is the subject of a separate Bridgestone *Motion for*

1

*Sanctions* (D.I. 304).

Even if this "evidence" is not excluded, it does not support Dr. Felker's invalidity contention. ███████████████

███████████████████████████████████████████
███████████████████████████████████████████
███████████████████████████████████████████

Accordingly, Dr. Felker's position that EP 043 inherently discloses a core where "the core surface hardness is higher than the core center hardness by 8 to 20 degrees" is unsupported.

## STATEMENT OF FACTS

A.  The '707 Patent

The '707 Patent (Ex. 1) is directed to a golf ball, such as is shown in exemplary form in FIG. 1 to the right. The example shown in FIG. 1 includes a solid core (2), an intermediate layer (3), and a cover (4), each having specific properties. The core (2) has a JIS-C



FIG.1

2

center hardness up to 75, a JIS-C surface hardness of up to 85, and a difference between the center and surface hardnesses of 8-20. The intermediate layer (3) has a JIS-C hardness that is at least 5 higher than the core surface. The cover (4) has a JIS-C hardness that is at least 5 lower than the intermediate layer. Ex. 1, Cols. 3-5. The '707 Patent indicates that, "[b]y virtue of the synergistic effect of these factors, the resulting golf ball travels an increased flight distance on full shots with a driver and is well controllable on approach shots with No. 5 iron or sand wedge." Ex. 1, Cols. 1:67-2:4.

Bridgestone is currently asserting that various Acushnet products infringe claim 1 of the '707 Patent, which reads:

> 1. A three-piece solid golf ball of the three-layer structure comprising a solid core, an intermediate layer, and a cover, having a plurality of dimples in the ball surface wherein
>
> the solid core, intermediate layer, and cover each have a hardness as measured by a JIS-C scale hardness meter wherein the core center hardness is up to 75 degrees, the core surface hardness is up to 85 degrees, the core surface hardness is higher than the core center hardness by 8 to 20 degrees, the intermediate layer hardness is higher than the core surface hardness by at least 5 degrees, and the cover hardness is lower than the intermediate layer hardness by at least 5 degrees, and
>
> the dimples occupy at least 62% of the ball surface.

The parties have agreed that "core center hardness" should be defined as "hardness measured at the center of the core." No other terms are in dispute.

B.   Assertions Of Invalidity Of The '707 Patent

Acushnet's December 18, 2006 final interrogatory responses contend that claim 1 of the '707 Patent is obvious in view of eleven different references. Ex. 2, p. A-91-98. One of those is EP '043. Regarding the claimed core hardness difference, Acushnet contends that EP ████████████████████████████████████████████ Ex. 2, p. A-87,88. Acushnet says

3

nothing else regarding EP '043's disclosure of this feature in these responses.

In his Expert Report (Ex. 3, p. 48), Dr. Felker asserts that the '707 Patent is invalid as obvious "in light of the combination of [EP '043 (Ex. 4)], which discloses the claimed intermediate layer and core, and the knowledge of one skilled in the art," which supplies the dimple percentages used on competitive balls of the time (*see* Ex. 3, p. 50).



---

[1]     In its Opposition to Bridgestone's Motion for Sanctions, Acushnet tries to portray this as an obviousness argument, *i.e.*, that the particular core center hardness was known by those of skill in the art. No objective evidence, however, supports this interpretation. Dr. Felker does not provide an obviousness analysis with respect to this feature, and cites no secondary reference to provide the missing disclosure. Thus, Dr. Felker is clearly alleging that Example 2 of EP '043 inherently discloses a core center hardness, and that one of skill is capable of measuring it on a core made according to its disclosure.

C. The "Core" Made By "The Engineers"

After submission of opening expert reports, Acushnet attorneys advised Bridgestone that:



D. Dr. Felker's Supplemental Report

On the night before Dr. Felker's deposition, Acushnet produced a document purporting to be "results from additional testing by Acushnet regarding the EP '043 reference, completed and provided to Dr. Felker as of this date" (Ex. 7). This document says that Acushnet had created four more batches of cores according to example 2 of EP '043.

5



## ARGUMENT

A. <u>General Legal Principles</u>

"Summary judgment is proper when there is no genuine issue of material fact and the moving party is entitled to a judgment as a matter of law." *Abbott Labs. v. Geneva Pharms., Inc.*, 182 F.3d 1315, 1317 (Fed. Cir. 1999) (affirming summary judgment of invalidity).

A patent is presumed valid. Thus, the evidentiary burden to show facts supporting a conclusion of invalidity is one of clear and convincing evidence. *AK Steel Corp. v. Sollac & Ugine*, 344 F.3d 1234, 1238-39 (Fed. Cir. 2003). In this instance, Acushnet is alleging that the '707 Patent is invalid, and thus bears this high burden.

A patent claim is invalid for lack of novelty if it was anticipated by a reference that is a part of the prior art. 35 U.S.C. § 102; *see, e.g., Thomson, S.A. v. Quixote Corp.*, 166 F.3d 1172, 1175 (Fed. Cir. 1999). A prior art reference anticipates a patent claim if each and

every limitation of the claim is found, either expressly or under the principles of inherency, in the prior art reference. *Atlas Powder Co. v. IRECO Inc.*, 190 F.3d 1342, 1346 (Fed. Cir. 1999).

To show an inherent disclosure, the extrinsic evidence "must make clear that the missing descriptive matter is necessarily present in the thing described in the reference, and that it would be so recognized by persons of ordinary skill." *Continental Can Co. v. Monsanto Co.*, 948 F.2d 1264, 1268 (Fed. Cir. 1991). Inherency "requires that the missing descriptive material is 'necessarily present,' not merely probably or possibly present." *Trintec Indus., Inc. v. Top-U.S.A. Corp.*, 295 F.3d 1292, 1295 (Fed. Cir. 2002) (citations omitted). The mere fact that "a certain thing may result from a given set of circumstances is not sufficient" to show inherency. *In re Robertson*, 169 F.3d 743, 745 (Fed. Cir. 1999) (citations omitted).

A claim may also be found to be "obvious" under 35 U.S.C. § 103, and therefore invalid, when the differences between the claim and the "prior art" reference or references would have been obvious at the time the invention was made to a person having ordinary skill in the art to which the patent pertains. Obviousness is a question of law based upon underlying factual questions, which are "(1) the scope and content of the prior art; (2) the level of ordinary skill in the prior art; (3) the differences between the claimed invention and the prior art; and (4) objective evidence of nonobviousness." *In re Dembiczak*, 175 F.3d 994, 998 (Fed. Cir. 1999). Further, "to establish obviousness based on a combination of the elements disclosed in the prior art, there must be some motivation, suggestion or teaching of the desirability of making the specific combination that was made by the applicant." *In re Kotzab*, 217 F.3d 1365, 1370 (Fed. Cir. 2000) (citations omitted).

B.  Dr. Felker's Expert Report Fails To Support His Assertion Of An Inherent Disclosure Of Core Hardness Difference In EP '043

Because Dr. Felker asserts that example 2 of EP '043 inherently discloses the claimed core features, he must show that "the missing descriptive material is 'necessarily present,' not merely probably or possibly present." *Trintec*, 295 F.3d at 1295 (citations omitted).

Dr. Felker's expert report lacks any information that supports an inherency argument regarding the core center hardness – and core hardness difference – of example 2 of EP '043. ███████████████████████████████████████████████ Such an allegation cannot, by itself, show that "the missing descriptive material is 'necessarily present,'" *Trintec*, 295 F.3d at 1295, because it is impossible to determine whether the "core" that was made, and the "core" disclosed in example 2 of EP '043 have the same composition and were made the same way.

Thus, it is impossible to relate any testing data performed on the "core" to example 2 of EP '043 based only upon the information in Dr. Felker's invalidity expert report. Therefore, Acushnet cannot meet its burden to show that example 2 of EP '043 inherently discloses the claimed hardness gradient by relying only on Dr. Felker's report.

C.  The 2000 Opinion Of Counsel Fails To Support Dr. Felker's Assertion Of An Inherent Disclosure Of Core Hardness Difference In EP '043

Acushnet showed the October 2000 opinion to Dr. Felker, and advised Bridgestone that ███████████████████

8

that opinion.[2]

[redacted]

Dr. [redacted]

---

[2] This opinion was withheld as privileged throughout this litigation. Thus, it is improper for Acushnet to now rely on it.

Felker in his expert report, 

The 2000 opinion also fails to support for Dr. Felker's inherency argument.



Thus, it is deficient for the same reason as Dr. Felker's expert report, *i.e.*, there is no way to tie the "core" properties to those of example 2 of EP '043. Further, the opinion indicates that

Thus, Acushnet cannot meet its burden to show that example 2 of EP '043 inherently discloses the claimed hardness gradient by relying on either Dr. Felker's invalidity expert report, or the 2000 opinion of counsel, alone or in combination.

        D.      The 2007 Supplemental Report Fails To Support Dr. Felker's Allegation Of An Inherent Disclosure Of Core Hardness Difference In EP '043

Acushnet attempted to supplement Dr. Felker's report with further testing performed in 2007 – long after the submission of Dr. Felker's invalidity expert report and

Bridgestone's experts' rebuttal reports.[3] This testing is memorialized in an unsigned document showing that Acushnet had created four more batches of cores according to example 2 of EP '043 to support Dr. Felker's opinion.



Thus, Acushnet created batches according to only two different recipes. Both

---

[3] As such, this testing was produced in violation of a Court order and not in a timely fashion. Thus, it is improper for Acushnet to now rely on it.

11

recipes appear to be consistent with the generic recipe disclosed in example 2 of Table 1 of EP '043 – they just have different species of antioxidant. One of these recipes clearly provides a core that falls outside of the claimed range of a "core hardness difference of 8-20," which Acushnet and its expert concede. Dr. Felker confirmed this position during his deposition:

[redacted] Acushnet, however, contends that the other recipe produces cores that fall within the claimed range.

Accordingly, the 2007 testing finally provided an appropriate level of detail with respect to the core ingredients and molding methods used to make the cores therein – almost two months after the submission of expert reports. The four-batch test results, however, provide an even bigger problem for Acushnet's inherency contentions regarding the core center hardness and core hardness difference of example 2 of EP '043 – because the test results show that cores can be made according to the generic recipe of EP '043 that fall both inside and outside of the claimed range of the '707 Patent. Even Acushnet admits this to be the case.

Such an admission is fatal to an inherency argument. To be inherent, a feature must necessarily be present, not probably or possibly present. Even according to Acushnet, the claimed feature of a hardness difference of 8 to 20 may or may not be present in cores made according to example 2 of EP '043, depending upon which specific ingredients one uses in view of the disclosed generic recipe.

Thus, not even Acushnet's 2007 supplemental testing can support Dr. Felker's assertion that a core hardness gradient is inherently disclosed in example 2 of EP '043. In fact, the testing proves that the hardness difference is not *necessarily* between 8 and 20. Acushnet

12

cannot meet its burden to show that example 2 of EP '043 inherently discloses the claimed hardness.

### E. Dr. Felker's Bare Obviousness Assertion In View Of EP '043 Cannot Provide The Missing Disclosure

To show obviousness, one must analyze (1) the scope and content of the prior art; (2) the level of ordinary skill in the prior art; (3) the differences between the claimed invention and the prior art; and (4) objective evidence of nonobviousness." *In re Dembiczak*, 175 F.3d at 998. This Dr. Felker has utterly failed to do with respect to the core hardness gradient of example 2 of EP '043. Thus, Acushnet's obviousness position is unsupported.

### CONCLUSION

Bridgestone requests summary judgment that claim 1 of the '707 Patent is not invalid in light of EP '043.

                                 MORRIS, NICHOLS, ARSHT & TUNNELL LLP

                                 */s/ Leslie A. Polizoti*

                                 Jack B. Blumenfeld (#1014)
                                 Leslie A. Polizoti (#4299)
                                 1201 N. Market St.
                                 P.O. Box 1347
                                 Wilmington, DE 19801
                                 (302) 658-9200
                                 *Attorneys for Bridgestone Sports Co., Ltd.*
                                 *and Bridgestone Golf, Inc.*

OF COUNSEL:

Robert M. Masters
Scott M. Flicker
PAUL, HASTINGS, JANOFSKY & WALKER LLP
875 15th St., N.W.
Washington, DC 20005
(202) 551-1700

April 13, 2007
799931

13

## CERTIFICATE OF SERVICE

I certify that on April 17, 2007 I electronically filed the foregoing with the Clerk of the Court using CM/ECF, which will send notification of such filing(s) to the following:

>Richard L. Horwitz, Esquire
>POTTER ANDERSON & CORROON LLP
>Hercules Plaza, 6th Floor
>1313 North Market Street
>Wilmington, DE 19801

I further certify that I caused copies to be served upon the following on April 17, 2007 in the manner indicated:

### BY HAND & E-MAIL

>Richard L. Horwitz, Esquire
>POTTER ANDERSON & CORROON LLP
>1313 N. Market Street
>Wilmington, DE 19801

### BY E-MAIL and FEDERAL EXPRESS

>Joseph P. Lavelle, Esquire
>HOWREY LLP
>1299 Pennsylvania Avenue, NW
>Washington, DC 20004

>/s/ Leslie A. Polizoti
>Leslie A. Polizoti (#4299)
>MORRIS, NICHOLS, ARSHT & TUNNELL LLP
>Wilmington, DE 19801
>(302) 658-9200
>lpolizoti@mnat.com