IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

BRIDGESTONE SPORTS CO., LTD.,
and BRIDGESTONE GOLF, INC.,

    *Plaintiffs,*

    *v.*

ACUSHNET COMPANY,

    *Defendant.*

C.A. No. 05-132 (JJF)

**REDACTED –
PUBLIC VERSION**

## BRIDGESTONE'S OPENING BRIEF IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT OF NON-INFRINGEMENT OF U.S. PATENT NO. 6,818,705

MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Jack B. Blumenfeld (#1014)
Leslie A. Polizoti (#4299)
1201 N. Market St.
P.O. Box 1347
Wilmington, DE 19801
(302) 658-9200
    *Attorneys for Bridgestone Sports Co., Ltd.
    and Bridgestone Golf, Inc.*

OF COUNSEL:

Robert M. Masters
Scott M. Flicker
Terrance J. Wikberg
Brandon M. White
PAUL, HASTINGS, JANOFSKY & WALKER LLP
875 15th St., N.W.
Washington, DC 20005
(202) 551-1700

Original Filing Date:  April 13, 2007
Redacted Filing Date:  April 17, 2007

i.

TABLE OF CONTENTS

Page

NATURE AND STAGE OF THE PROCEEDINGS ................................................................ 1

SUMMARY OF ARGUMENT ............................................................................................... 1

STATEMENT OF FACTS ...................................................................................................... 1

      A.    Acushnet's '705 Patent ................................................................................ 1

      B.    Background Of The Accused Bridgestone Golf Balls ............................... 2

      C.    Acushnet Did Not Test Anything That Is Relevant ................................. 3

ARGUMENT ........................................................................................................................... 7

   I.      LEGAL PRINCIPLES ................................................................................. 7

      A.    Summary Judgment ................................................................................... 7

      B.    Literal Infringement ................................................................................. 8

   II.     ACUSHNET CANNOT PROVE INFRINGEMENT BECAUSE IT
          NEVER TESTED THE ACCUSED PRODUCTS ................................. 8

CONCLUSION ...................................................................................................................... 11

ii.

## TABLE OF AUTHORITIES

<u>Cases</u>

*Abbott Laboratories v. Geneva Pharms., Inc.*,
    182 F.3d 1315 (Fed. Cir. 1999)..................................................................................7

*Markman v. Westview Instruments, Inc.*,
    52 F.3d 967 (Fed. Cir. 1995)......................................................................................7

*Panduit Corp. v. Dennison Manufacturing, Co.*,
    836 F.2d 1329 (Fed. Cir. 1987)..................................................................................8

*SmithKline Diagnostics Inc. v. Helena Laboratories Corp.*,
    859 F.2d 878 (Fed. Cir. 1988)....................................................................................8

<u>Rules</u>

Fed. R. Civ. P. 56(c)............................................................................................................7

NATURE AND STAGE OF THE PROCEEDINGS

This is a patent infringement action brought by Plaintiffs Bridgestone Sports Co., Ltd. and Bridgestone Golf, Inc. (collectively "Bridgestone") against Defendant Acushnet Company ("Acushnet") in March 2005. Bridgestone accuses various Acushnet golf balls of infringing claims from seven U.S. patents. Acushnet counterclaimed, and asserts four patents against various Bridgestone products. One of Acushnet's patents is U.S. Patent No. 6,818,705 ("the '705 Patent"), which is titled "Thin-Layer-Covered Golf Ball With Improved Velocity" (Ex. A, '705 Patent). Acushnet's damages expert calculated that Acushnet's damages for the alleged infringement of this patent ████████████████████████

Fact discovery closed on October 10, 2006. A *Markman* hearing was held on November 29, 2006, with the *Markman* rulings still pending. Expert discovery closed on March 30, 2007. Trial is scheduled to begin on June 18.

SUMMARY OF ARGUMENT

Acushnet has failed as a matter of law to show that any of the accused Bridgestone golf balls infringe claim 4 of the '705 Patent. Acushnet has no evidence that the accused products have a "resilience index of at least about 40" – regardless of the claim construction – because it never tested them.

STATEMENT OF FACTS

A.    Acushnet's '705 Patent

Acushnet asserts that claim 4 of the '705 Patent is infringed by Bridgestone's Golf Tour B330, Precept U-Tri Extra Spin, and Precept U-Tri Extra Distance golf balls, and by four balls that Bridgestone manufactures for Nike: Nike One Gold, Nike One TW, Nike One Platinum, and Nike One Black golf balls.

Claim 4 of the '705 patent depends from independent claim 1. The claim language relevant to this motion is in claim 1, and is emphasized below:

A golf ball comprising:

a center comprising a ***material farmed*** [*sic*] ***from the conversion reaction of at least a cis-to-trans catalyst and a polybutadiene***, wherein the ***material has*** a molecular weight of greater than about 200,000 and ***a resilience index of at least about 40***;

an inner cover layer; and

an outer cover layer disposed about the inner cover layer comprising a polyurethane composition.

Resolution of this motion does not depend on claim construction. Regardless of what the term "material" means – the golf ball's cured core, the ball's uncured core, or even some of the materials in the ball's uncured core – Acushnet did not test it, and thus has no proof of its resilience index.[1]

B.    Background Of The Accused Bridgestone Golf Balls

Each of the accused Bridgestone golf balls has a cured, hardened core at its center.

---

[1]    Acushnet's resilience index is a coined term, and defined in the '705 patent as being the difference in loss tangent measured at 10 cpm and 1000 cpm divided by 990 (the frequency span) multiplied by 100,000 (for normalization and unit convenience) (Ex. A, '705 Patent, at 11:13-16). The term loss tangent is related to the physical attributes of a polymer such as structural linearity, level of structural branching, or extent of entanglements, and defines the ability of a rubber to dissipate energy (Ex. B, Dr. Isayev's Declaration and Expert Report, at pp. 9-10).

Each of the accused Bridgestone golf balls has its own core formulation (*i.e.*, recipe), and the recipe for each golf ball depends on that ball's particular performance objectives (Ex. C, Mr. Jun Shindo's Declaration, at ¶6). For example, claim 1 requires a polybutadiene rubber, like BR730. █████████████████████████████████████

██████████████████████████████████████████████████████████

The source of the materials may be important depending, for example, on purity levels of certain ingredients. ███████████████████████████████████

██████████████████████████████████████████████████████████

C.    Acushnet Did Not Test Anything That Is Relevant

Acushnet has to show that the accused balls have a center with a material that has "a resilience index of at least about 40." The tests that Acushnet employees purportedly conducted, and that Acushnet's expert, Dr. Koenig, relied on, were not performed on actual samples of the finished accused golf balls, all of the blended materials used to form the accused balls, or even some of the materials used to form them.

**Acushnet did not test actual samples of the finished balls**. This is not in dispute. Acushnet's expert failed to test any cured cores of the accused Bridgestone golf balls, and provided no opinion or analysis from testing data on what the resilience index would be for any of the accused Bridgestone golf balls if "material" is necessarily a cured product as it exists in a finished golf ball (as Bridgestone submits the term should be defined).

_____

██████████████████████████████████████████████████████████
██████████████████████████████████████████████████████████
██████████████████████████████████████████████████████████
██████████████████████████████████████████████████████████

The only evidence of testing on cured cores is from Bridgestone's expert, Dr. Isayev.



**Acushnet did not test all materials that are blended in the uncured core**. This is also not in dispute. Acushnet did not test a blend of all of the materials that are put into an uncured core. As is typical in the industry, Bridgestone's manufacturing process blends together all of the core ingredients.



Dr. Isayev tested an uncured blend that contained all of the core materials of the Bridgestone Tour B330 golf ball, taken directly from Bridgestone's manufacturing line.

[REDACTED]

**Acushnet did not test even some of the materials used in the uncured core**. Acushnet's employees tested a mixture of BR730 and zinc PCTP – but these are not the materials that are used in the accused Bridgestone balls. [REDACTED]

[REDACTED]

Acushnet's employees also did not use the same zinc PCTP that Bridgestone uses, even though different properties and compositions of zinc PCTP can affect the resilience index. There is no evidence of the source or type of Acushnet's zinc PCTP; there is nothing in Dr. Koenig's report about it, nor is there any deposition testimony about it (*see* Exs. F and G).

In addition, Acushnet did not even use the same amounts of zinc PCTP as Bridgestone. [REDACTED]

[REDACTED]

6.



\*       \*       \*

Not only did Acushnet not test anything that would show infringement, 

███████████████████████████████

## ARGUMENT

I.    LEGAL PRINCIPLES

    A.    Summary Judgment

        A court shall grant summary judgment only if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). "Summary judgment is proper when there is no genuine issue of material fact and the moving party is entitled to a judgment as a matter of law." *Abbott Labs. v. Geneva Pharms., Inc.*, 182 F.3d 1315, 1317 (Fed. Cir. 1999) (affirming summary judgment of invalidity).

    B.    Literal Infringement

        Courts employ a two-step analysis in making an infringement determination. *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 976 (Fed. Cir. 1995). First, the court must construe the asserted claims to ascertain their meaning and scope. *Id.* The trier of fact must then compare the properly construed claims with the accused infringing product. *Id.* Literal

───────────────────

███████████████████████████████

infringement occurs where each limitation of at least one claim of the patent is found exactly in the alleged infringer's product. *Panduit Corp. v. Dennison Mfg, Co.*, 836 F.2d 1329, 1330 n.1 (Fed. Cir. 1987). The patent owner has the burden of proving infringement and must do so by a preponderance of the evidence. *SmithKline Diagnostics Inc. v. Helena Lab. Corp.*, 859 F.2d 878, 889 (Fed. Cir. 1988) (citations omitted). Therefore, on this motion for summary judgment of no infringement, Bridgestone must show that no reasonable jury could find that Acushnet could carry its burden to prove infringement.

II.    ACUSHNET CANNOT PROVE INFRINGEMENT BECAUSE
       IT   NEVER   TESTED   THE   ACCUSED   PRODUCTS

       The Court has not yet provided a claim construction for certain disputed terms, including "material" and "resilience index." Regardless of the construction of these terms, Acushnet has failed as a matter of law to present a *prima facie* case of infringement.



- Acushnet never tested the final cured core of the Bridgestone golf balls.

- Acushnet never tested the pre-cured core formulation of the accused Bridgestone golf balls.

Acushnet's evidence fails to show infringement because 



11.

## CONCLUSION

Bridgestone requests that this Court grant summary judgment that Bridgestone does not infringe Acushnet's claim 4 of the '705 Patent by Bridgestone's sales of the accused golf balls.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Leslie A. Polizoti*

Jack B. Blumenfeld (#1014)
Leslie A. Polizoti (#4299)
1201 N. Market St.
P.O. Box 1347
Wilmington, DE 19801
(302) 658-9200
   *Attorneys for Bridgestone Sports Co., Ltd.*
   *and Bridgestone Golf, Inc.*

OF COUNSEL:

Robert M. Masters
Scott M. Flicker
Terrance J. Wikberg
Brandon M. White
PAUL, HASTINGS, JANOFSKY & WALKER LLP
875 15th St., N.W.
Washington, DC 20005
(202) 551-1700

April 13, 2007
799027

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that on April 17, 2007 I electronically filed the foregoing with the Clerk of the Court using CM/ECF, which will send notification of such filing(s) to the following:

Richard L. Horwitz, Esquire
POTTER ANDERSON & CORROON LLP
Hercules Plaza, 6th Floor
1313 North Market Street
Wilmington, DE 19801

I further certify that I caused copies to be served upon the following on April 17, 2007 in the manner indicated:

### <u>BY HAND & E-MAIL</u>

Richard L. Horwitz, Esquire
POTTER ANDERSON & CORROON LLP
1313 N. Market Street
Wilmington, DE 19801

### <u>BY E-MAIL and FEDERAL EXPRESS</u>

Joseph P. Lavelle, Esquire
HOWREY LLP
1299 Pennsylvania Avenue, NW
Washington, DC 20004

/s/ Leslie A. Polizoti
Leslie A. Polizoti (#4299)
MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Wilmington, DE 19801
(302) 658-9200
lpolizoti@mnat.com