IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| BRIDGESTONE SPORTS CO., LTD., and BRIDGESTONE GOLF, INC., <br><br> Plaintiffs, <br><br> v. <br><br> ACUSHNET COMPANY, <br><br> Defendant. | ) ) ) ) ) ) C. A. No. 05-132 (JJF) ) ) ) **PUBLIC VERSION** ) ) ) ) |

## ACUSHNET'S MEMORANDUM IN SUPPORT OF ITS MOTION FOR PARTIAL SUMMARY JUDGMENT OF NON-INFRINGEMENT OF U.S. PATENT NO. 6,634,961

OF COUNSEL:

Alan M. Grimaldi
Joseph P. Lavelle
Kenneth W. Donnelly
Brian S. Seal
HOWREY LLP
1299 Pennsylvania Avenue, N.W.
Washington, DC 20004
Tel: (202) 783-0800

Dated: April 13, 2007
Public Version Dated: April 20, 2007
790592 / 28946

Richard L. Horwitz (#2246)
David E. Moore (#3983)
POTTER ANDERSON & CORROON LLP
Hercules Plaza, 6th Floor
1313 North Market Street
P. O. Box 951
Wilmington, DE 19899-0951
Tel: (302) 984-6000
rhorwitz@potteranderson.com
dmoore@potteranderson.com

*Attorneys for Defendant*
*Acushnet Company*

# TABLE OF CONTENTS

I. INTRODUCTION ..........................................................................................................1

II. NATURE AND STAGE OF PROCEEDINGS ...........................................................1

III. SUMMARY OF ARGUMENT ....................................................................................1

IV. STATEMENT OF FACTS ...........................................................................................2

V. THE APPLICABLE LEGAL STANDARDS ............................................................3

VI. ACUSHNET'S CURRENT PRO V1 MODEL GOLF BALL DOES NOT INFRINGE THE '961 PATENT ..................................................................................4

VII. FOR SUBSTANTIAL PERIODS OF THE ASSERTED INFRINGEMENT PERIOD, THE PRO V1 GOLF BALL DID NOT INFRINGE THE '961 PATENT. ........................................................................................................................6

    A. Dr. Coughlin Relies Exclusively on Manufacturing Guidelines Based on an Inaccurate Interpretation of Acushnet Deposition Testimony. ...................................................................................................6

    B. Accurate Historical Core Formulations Can Be Determined From Recipe Change Notices and the Mesabi Control System ...........................9

VIII. CONCLUSION ............................................................................................................10

# TABLE OF AUTHORITIES

## CASES

*Anderson v. Liberty Lobby, Inc.*,
   477 U.S. 242 (1986) ............................................................................................. 3

*In re Baby Foods Antitrust Litigation*,
   166 F.3d 112 (3rd Cir. 1999) ................................................................................. 8

*Brooke Group, Ltd. V. Brown & Williamson Tobacco Corp.*,
   509 U.S. 209 (1993) ............................................................................................. 7

*Celotex Corp. v. Catrett*,
   477 U.S. 317 (1986) .......................................................................................... 3, 4

*Daubert v. Merrell Dow Pharmaceuticals, Inc.*,
   509 U.S. 579 (1993) ............................................................................................. 7

*Exigent Technology, Inc. v. Atrana Solutions, Inc.*,
   442 F.3d 1301 (Fed. Cir. 2006) ............................................................................ 4

*Gumbs v. International Harvester, Inc.*,
   718 F.2d 88 (3rd Cir. 1983) ................................................................................. 8

*Loctite v. Ultraseal*,
   781 F.2d 861 (Fed. Cir. 1985) .............................................................................. 3

*Markman v. Westview Instruments, Inc.*,
   52 F.3d 967 (Fed. Cir. 1995), *aff'd.*, 517 U.S. 370 (1996) ................................... 3

*Mas-Hamilton Group v. LaGard, Inc.*,
   156 F.3d 1206 (Fed. Cir. 1998) ............................................................................ 4

*McGill, Inc. v. John Zink Co.*,
   736 F.2d 666 (Fed. Cir. 1984) .............................................................................. 4

*Nike Inc. v. Wolverine World Wide, Inc.*,
   43 F.3d 644 (Fed. Cir. 1994) ................................................................................ 3

*Out-A-Sight Pet Containment, Inc. v. Radio Systems Corp.*,
   2004 WL 1562556 (E.D. Pa. Jul. 9, 2004) ........................................................... 8

*Pharmastem Therapeutics, Inc. v. ViaCell Inc.*,
   2004 U.S. Dist. LEXIS 18638 (D. Del. Sept. 15, 2004) ...................................... 8

*Robinson v. G.D. Searle & Company,*
    286 F. Supp. 2d 1216 (N.D.Ca. 2003) ...................................................................8

*S. Bravo System v. Containment Techs. Corp.,*
    96 F.3d 1372 (Fed. Cir. 1996)...............................................................................4

*Under Sea Industrial, Inc. v. Dacor Corp.,*
    833 F.2d 1551 (Fed. Cir. 1987).............................................................................4

## STATUTES

Fed. R. Civ. P. 56(c) ...................................................................................................3

## I. INTRODUCTION

Defendant Acushnet Company ("Acushnet") files this Memorandum in Support of Its Motion for Partial Summary Judgment of Non-Infringement of U.S. Patent No. 6,634,961 ("the '961 patent") (Ex. 1). Acushnet has been accused by Plaintiffs Bridgestone Sports Co. Ltd. and Bridgestone Golf, Inc. ("Bridgestone") of infringing the '961 patent. Specifically, Bridgestone asserts that Acushnet's Pro V1 golf ball infringes claim 2 of the '961 patent. This motion will show that Acushnet's Pro V1 golf ball does not currently infringe the '961 patent, and that it did not infringe for substantial portions of the asserted infringement period, ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉.

## II. NATURE AND STAGE OF PROCEEDINGS

This suit involving eleven patents and is scheduled for trial, starting June 18, 2007. Bridgestone alleges that Acushnet infringes seven patents-in-suit. Acushnet alleges that Bridgestone infringes four patents-in-suit. Fact and expert discovery is finished and a pre-trial conference will be held on May 25, 2007. The Court has not yet issued a *Markman* decision construing the claims of the asserted patents, but did hold a *Markman* hearing on November 29, 2006. Under the Scheduling Order, as amended, case dispositive motions are now due, and the court has ordered briefing of these motions "pursuant to D. Del. LR 7.1.2." (D.I. 219 at 1).

## III. SUMMARY OF ARGUMENT

Acushnet seeks partial summary judgment of non-infringement of the '961 patent for the time periods during which its accused product, the Pro V1-392 golf ball, ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉

### IV. STATEMENT OF FACTS

Bridgestone is accusing only the Pro V1-392 model golf ball of infringing the '961 patent. Further, Bridgestone is asserting only claim 2, which depends from claim 1.

Claims 1 and 2 of the '961 patent are long and somewhat complex. Claim 1 of the '961 patent reads:

> A multi-piece solid golf ball comprising a solid core, an inner cover layer and an outer cover layer, wherein *__the solid core is molded from a rubber composition comprising 100 parts by weight of a base rubber composed of (a) 20 to 100 wt % of a polybutadiene having__* a cis-1, 4 content of at least 60% and 1,2 vinyl content of at most 2%, having a viscosity $\eta$ at 25° C. as a 5 wt % solution in toluene of up to 600 mPa·s, *__being synthesized using a rare-earth catalyst__* and satisfying the relationship: $10B+5 \leq A \leq 10B+60$, wherein A is the Mooney viscosity ($ML_{1+4}(100°\text{ C.})$) of the polybutadiene and B is the ratio Mw/Mn between the weight-average molecular weight Mw and the number-average molecular weight Mn of the polybutadiene, in combination with (b) 0 to 80 wt % of a diene rubber other than component (a), (c) 10 to 60 parts by weight of an unsaturated carboxylic acid or a metal salt thereof or both, (d) 0.1 to 5 parts by weight of an organosulfur compound, (e) 5 to 80 parts by weight of an inorganic filler, (f) 0.1 to 5 parts by weight of an organic peroxide; the inner cover layer has a Shore D hardness of 50 to 80; the outer cover layer has a Shore D hardness of 35 to 60; and the outer cover layer has a lower Shore D hardness than the inner cover layer.

Claim 2 of the '961 patent reads:

> The golf ball of claim 1, wherein the diene rubber (b) includes 30 to 100 wt % of a second polybutadiene which has a cis-1, 4 content of at least 60% and a 1,2 vinyl content of at most 5%, has a Mooney viscosity ($ML_{1+4}(100°C.)$) of not more than 55, and satisfies the relationship:
>
> $\eta \leq 20A-550$, wherein A is the Mooney viscosity ($ML_{1+4}(100°C.)$) of the second polybutadiene and $\eta$ is the viscosity of the second polybutadiene, in mPa·s, at 25° C. as a 5 wt % solution in toluene.

2



## V. THE APPLICABLE LEGAL STANDARDS

Summary judgment should be granted when no "reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); Fed. R. Civ. P. 56(c). The use of summary judgment is particularly appropriate in complex patent infringement actions because it is a useful tool to secure a just and speedy determination of the action and to simplify and pare down the issues in such complex cases. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986); *Nike Inc. v. Wolverine World Wide, Inc.*, 43 F.3d 644, 646 (Fed. Cir. 1994) ("Summary judgment is appropriate in a patent case, as in other cases, when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.")

Literal infringement is determined in a two-step analysis. The first step is determining the meaning and scope of the patent claims asserted to be infringed. The second step is comparing the properly construed claims to the device accused of infringing. *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 976 (Fed. Cir. 1995) (en banc), aff'd., 517 U.S. 370 (1996).

Interpretation of the asserted claims is a question of law, and the court must determine the scope and meaning of the claims. *Id.* Claims are construed with reference to the claim language, the patent specification and the prosecution history, which together constitute the "intrinsic" evidence. *Loctite v. Ultraseal*, 781 F.2d 861, 867 (Fed. Cir.

1985). When determining the scope and meaning of the patent claims, the language of the claims in light of the specification is considered first. *McGill, Inc. v. John Zink Co.*, 736 F.2d 666, 672 (Fed. Cir. 1984).

In a patent case, the patentee bears the burden of proving infringement. *See Under Sea Indus., Inc. v. Dacor Corp.*, 833 F.2d 1551, 1557 (Fed. Cir. 1987). To establish infringement, in the second step, the patentee must demonstrate that the accused products contain each and every limitation of the asserted claim, either literally or by equivalence. *See S. Bravo Sys. v. Containment Techs. Corp.*, 96 F.3d 1372, 1376 (Fed. Cir. 1996). "If even one limitation is missing, there is no literal infringement." *Mas-Hamilton Group v. LaGard, Inc.*, 156 F.3d 1206, 1211 (Fed. Cir. 1998).

Where, as here, the nonmoving party has the burden of proof at trial, the moving party need only point to a lack of evidence and has no burden to disprove the nonmoving party's claim. *See Celotex*, 477 U.S. at 325; *Exigent Technology, Inc. v. Atrana Solutions, Inc.*, 442 F.3d 1301, 1307 (Fed. Cir. 2006). The non-moving party must then come forward with evidence demonstrating a genuine issue as to a material fact, and such evidence must consist not merely of denials or assertions that a fact is challenged. *See Celotex*, 477 U.S. at 324. If the non-moving party fails to make a sufficient factual showing as to any element of its case on which it bears the burden of proof at trial, the "plain language of Rule 56(c) mandates the entry of summary judgment." *Id.* at 322.

### VI. ACUSHNET'S CURRENT PRO V1 MODEL GOLF BALL DOES NOT INFRINGE THE '961 PATENT

Claim 1 of the '961 patent requires that the base rubber be composed of at least 20 weight percent of polybutadiene rubber synthesized using a rare earth catalyst. ▮

▮

4

Acushnet manufactures the core of the accused Pro V1 golf ball at two locations: Ball Plant II and Ball Plant III. (Ex. 3 – 4/13/07 Dalton Decl., ¶ 7). The current formulation at Ball Plant II for Acushnet's accused Pro V1 model golf ball is:



(Ex. 3 – 4/13/07 Dalton Decl., ¶ 7). The current formulation at Ball Plant III for Acushnet's Pro V1 golf ball model is:



(Ex. 3 – 4/13/07 Dalton Decl., ¶ 8).

Therefore, there is no dispute that Acushnet does not currently infringe claim 1 or 2 of the '961 patent.

### VII. FOR SUBSTANTIAL PERIODS OF THE ASSERTED INFRINGEMENT PERIOD, THE PRO V1 GOLF BALL DID NOT INFRINGE THE '961 PATENT.

#### A. Dr. Coughlin Relies Exclusively on Manufacturing Guidelines Based on an Inaccurate Interpretation of Acushnet Deposition Testimony.

[redacted]

Based solely on his calculation from the manufacturing guidelines manual, Dr. Coughlin opines that the Pro V1 golf ball infringes the '961 patent. Dr. Coughlin, therefore, assumes that the core formulation described in the manufacturing guidelines remained constant over the entire alleged infringement period. As Bridgestone is fully aware, Dr. Coughlin's assumption was incorrect.

Bridgestone acknowledges that it was fully aware that to determine core formulations the manufacturing guidelines needed to be reviewed in light of recipe change notices. (D.I. 305 at 12). In fact, numerous Acushnet witnesses testified that the guidelines should *not* be relied upon exclusively, and that the recipe change notices should be consulted. (*See, e.g.*, Ex. 4 – Dalton 7/27/06 Dep. at 617:12-618:5; Ex. 5 – Bartsch 9/21/06 Dep. at 18:22-19:1; 24:22-25:8).

Yet, despite this awareness on Bridgestone's part, Dr. Coughlin (and Bridgestone's other expert) stated that there was no need to consider any recipe change notices:

> Acushnet represented that any manufacturing deviation from the core recipes listed in the Manufacturing Guidelines would have only been minor, insubstantial changes related to manufacturability. Thus, although I have reviewed Acushnet's change notices generated during the manufacturing process for the Pro V1 golf ball, in my professional opinion it is appropriate and reliable to look to the Manufacturing Guidelines in order to determine Acushnet's core formulation

(Ex. 2 – Coughlin 1/16/2007 Report at 9).

6

Dr. Coughlin tried to justify his reliance exclusively on the manufacturing guidelines by seizing upon on an out-of-context and incomplete snapshot of the testimony of a single Acushnet witness, Jeffrey Dalton, for the opinion that it was "appropriate, proper and reliable" to rely exclusively on manufacturing guidelines. (*See* Ex. 2 – Coughlin 1/16/2007 Report at 9.)[1] Mr. Dalton said no such thing, however, and in other parts of his deposition made clear that "*as always, there were changes that were documented by change notices or recipe changes.*" (Ex. 4 – Dalton Dep. Tr. 7/27/06, pg. 617, line 12 – pg. 618, line 5) (emphasis added).

Even Bridgestone admits that Mr. Dalton stated that the recipe change notices needed to be considered to determine core formulations: "Mr. Dalton testified (as a 30(b)(6) designee) in July 2006 that, to determine core formulations, the 'manufacturing guidelines manual must be reviewed in light of change notices, including recipe changes." (D.I. 305 at 12). Still, Dr. Coughlin made the decision, based solely on their interpretation of only portions of Mr. Dalton's deposition testimony, to disregard all recipe change information and to rely exclusively on the guidelines. Dr. Coughlin failed to provide any other basis in his report for not considering recipe change notices.

Dr. Coughlin's assumption that the core formulations described in the manufacturing guidelines remained constant over time was so contrary to the record, the record that Dr. Coughlin claims to have studied for purposes of his report, that his opinion cannot be credited, leaving Bridgestone with no evidence of infringement for any particular time period. *See Brooke Group, Ltd. v. Brown & Williamson Tobacco Corp.*, 509 U.S. 209 (1993) ("When an expert opinion is not supported by sufficient facts to validate it in the eyes of the law, or when indisputable record facts contradict or otherwise render the opinion unreasonable, it cannot support a jury's verdict."); *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993) (discussing the importance of

---

[1] Coughlin did not provide any other basis for not considering recipe change notices.

7

"fit" between the totality of facts and the argument being proffered. Specifically, the court stated that the testimony must be "sufficiently tied to the facts of the case."); *Robinson v. G.D. Searle & Company*, 286 F. Supp. 2d 1216 (N.D.Ca. 2003) (Granting motion for summary judgment against plaintiff where plaintiff's expert did not rely on a sufficient basis of facts. Court noted that there were indisputable facts that went ignored that directly refuted the expert's opinion.); *Pharmastem Therapeutics, Inc. v. ViaCell Inc.*, 2004 U.S. Dist. LEXIS 18638 (D. Del. Sept. 15, 2004) (granting new trial because exploring only some of the defendants product was not enough to rule that 100% of defendants stem cell products infringe.) (Ex. 6); *Gumbs v. International Harvester, Inc.*, 718 F.2d 88 (3rd Cir. 1983) (sustaining objection to expert testimony for not being based on a "sufficient factual foundation," where expert offered an opinion that was inconsistent with the facts); *Out-A-Sight Pet Containment, Inc. v. Radio Systems Corp.*, 2004 WL 1562556 (E.D. Pa. Jul. 9, 2004) (excluding expert due to his failure to consider entire factual record) (Ex. 7); *In re Baby Foods Antitrust Litigation*, 166 F.3d 112 (3rd Cir. 1999) ("An expert opinion based on the meager superficial information ... is highly speculative, unreliable and of dubious admissibility before a jury.").

By relying only on manufacturing guidelines, and ignoring the complete record, Dr. Coughlin's expert report lacks "sufficient factual foundation" and is not "sufficiently tied to the facts of the case." As shown below, the recipe change information from both the recipe change notice database and the Mesabi control system, show that for substantial periods of time, Acushnet's accused product did not infringe the '961 patent. Therefore, by ignoring such information, Dr. Coughlin proffered an opinion that is inconsistent with the facts and should be excluded.

### B. Accurate Historical Core Formulations Can Be Determined From Recipe Change Notices and the Mesabi Control System

Recipe changes to the core formulation of the Pro V1 golf ball are properly determined by reviewing the recipe change notices and/or the data contained within the Mesabi Control System. (Ex. 8– 4/3/07 Bartch Decl. ¶19; Ex. 9 – 3/20/07 Gajik Tr. 92:20-97:2; 98:1-100:6; Ex. 10 – 3/17/07 Elliott Tr. 89:17-93:5; 168:2-169:11). Dr. Coughlin admitted that he reviewed recipe change information, but chose not to rely on it based on his clearly erroneous representation of Acushnet's deposition testimony. (Ex. 2 – Coughlin 1/16/2007 Report at 9).

An analysis of the recipe change notice database in combination with the Mesabi information, however, shows the precise amounts of ingredients in the cores of the Pro V1 golf ball as they were manufactured over time. (Ex. 8 – 4/3/07 Bartsch Decl., ¶19; Ex. 11 – 2/20/07 Dalton Decl., ¶ 9, 17-30 and Exhibit E).



---

[2] *See* Ex. 12 – Summary Charts attached to 2/20/07 Dalton Decl. at Exhibit E.

9



Therefore, Acushnet respectfully requests this Court to grant its Motion for Partial Summary Judgment of Non-Infringement of the '961 Patent during these time periods.

Bridgestone's expert, Dr. Coughlin did not provide any analysis of infringement under the doctrine of equivalents. Therefore, Bridgestone has no evidence to support any claim under the doctrine of equivalents, and Acushnet need not address it.

### VIII. CONCLUSION

For all of the foregoing reasons, Acushnet respectfully requests the Court to grant its Motion for Partial Summary Judgment of Non-Infringement.

POTTER ANDERSON & CORROON LLP

OF COUNSEL:

Alan M. Grimaldi
Joseph P. Lavelle
Kenneth W. Donnelly
Brian S. Seal
HOWREY LLP
1299 Pennsylvania Avenue, N.W.
Washington, DC  20004
Tel:  (202) 783-0800

Dated:  April 13, 2007
Public Version Dated:  April 20, 2007
790592 / 28946

By:  /s/ David E. Moore
Richard L. Horwitz (#2246)
David E. Moore (#3983)
Hercules Plaza, 6th Floor
1313 North Market Street
P. O. Box 951
Wilmington, DE  19899-0951
Tel:  (302) 984-6000
rhorwitz@potteranderson.com
dmoore@potteranderson.com

*Attorneys for Defendant*
*Acushnet Company*

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

**CERTIFICATE OF SERVICE**

I, David E. Moore, hereby certify that on April 20, 2007, the attached document was hand delivered to the following persons and was electronically filed with the Clerk of the Court using CM/ECF which will send notification to the registered attorney(s) of record that the document has been filed and is available for viewing and downloading:

Jack B. Blumenfeld
Maryellen Noreika
Leslie A. Polizoti
Morris, Nichols, Arsht & Tunnell
1201 N. Market Street
Wilmington, DE 19801

I hereby certify that on April 20, 2007, I have Electronically Mailed the documents to the following:

Robert M. Masters
Paul, Hastings, Janofsky & Walker LLP
875 15th Street, N.W.
Washington, D.C. 20005
RobMasters@paulhastings.com

/s/ David E. Moore
Richard L. Horwitz
David E. Moore
Potter Anderson & Corroon LLP
Hercules Plaza – Sixth Floor
1313 North Market Street
P.O. Box 951
Wilmington, DE 19899-0951
(302) 984-6000
rhorwitz@potteranderson.com
dmoore@potteranderson.com

680012 / 28946