**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

|  |  |  |
|---|---|---|
| BRIDGESTONE SPORTS CO., LTD., and BRIDGESTONE GOLF, INC., | ) ) ) | |
| Plaintiffs, | ) ) | C. A. No. 05-132 (JJF) |
| v. | ) ) | **PUBLIC VERSION** |
| ACUSHNET COMPANY, | ) ) | |
| Defendant. | ) ) | |

**ACUSHNET'S MEMORANDUM IN SUPPORT OF ITS MOTION
FOR SUMMARY JUDGMENT OF NON-INFRINGEMENT
OF U.S. PATENT NO. 5,553,852**

Richard L. Horwitz (#2246)
David E. Moore (#3983)
POTTER ANDERSON & CORROON LLP
Hercules Plaza, 6th Floor
1313 North Market Street
P. O. Box 951
Wilmington, DE 19899-0951
Tel: (302) 984-6000
rhorwitz@potteranderson.com
dmoore@potteranderson.com

OF COUNSEL:

Alan M. Grimaldi
Joseph P. Lavelle
Kenneth W. Donnelly
Brian S. Seal
HOWREY LLP
1299 Pennsylvania Avenue, N.W.
Washington, DC 20004
Tel: (202) 783-0800

*Attorneys for Defendant
Acushnet Company*

Dated: April 13, 2007
Public Version Dated: April 20, 2007
790598 / 28946

# TABLE OF CONTENTS

I.      INTRODUCTION ...................................................................................1

II.     NATURE AND STAGE OF PROCEEDINGS .....................................1

III.    SUMMARY OF ARGUMENT ...........................................................1

IV.     THE APPLICABLE LEGAL STANDARDS .......................................3

        A.      Summary Judgment Standards....................................................3

        B.      Literal Infringement Standards ................................................3

        C.      Doctrine of Equivalence Standards...........................................4

V.      NO LITERAL INFRINGEMENT .......................................................5

        1.      Intermediate Layer Limitation ......................................6

                a.      "intermediate layer having a thickness of at least
                        1mm".................................................................6

                b.      ████████████████████████████████
                        ████████████████ ..............................8

        2.      Outer Cover Limitation.................................................8

                a.      "cover layer having a thickness of 1-3 mm".....................8

                b.      ████████████████████████████████
                        ████████ .............................................10

        3.      Core Diameter Limitation..............................................11

                a.      "center core having a diameter of at least 29mm".............11

        4.      "Three-Piece" Golf Ball Limitation...............................13

VI.     NO INFRINGEMENT UNDER THE DOCTRINE OF EQUIVALENTS ..........13

        A.      ████████████████████████████████
                ████████ ....................................................14

        B.      Bridgestone's Failure to Disclose Infringement Contentions
                Precludes Them From Relying on the Doctrine of Equivalents ................16

VII.    CONCLUSION .......................................................................................................17

# TABLE OF AUTHORITIES

## CASES

*Anderson v. Liberty Lobby, Inc.*,
 477 U.S. 242 (1986)...................................................................................3

*Asyst Technologies, Inc. v. Emtrak, Inc.*,
 402 F.3d 1188 (2005)..................................................................................3

*Athletic Alternatives, Inc v. Prince Manufacturing, Inc.*,
 73 F.3d 1573 (Fed. Cir. 1996)...........................................................3, 14, 15

*Automobile Meter Products v. Maxima Techs. & System, LLC*,
 2006 U.S. Dist. LEXIS 81687 (N.D. Ill. Nov. 6, 2006)...............................17

*CAE Screenplates, Inc. v. Heinrich Fiedler GmbH & Co. KG*,
 224 F.3d 1308 (Fed. Cir. 2000).....................................................................5

*Celotex Corp. v. Catrett*,
 477 U.S. 317 (1986)...............................................................................3, 4

*Dependahl v. Falstaff Brewing Corp.*,
 84 F.R.D. 416 (E.D. Mo. 1979) ..................................................................17

*Dolly, Inc. v. Spalding & Evenflo Cos.*,
 16 F.3d 394 (Fed. Cir. 1994).......................................................................14

*Eastman Kodak Co. v. Goodyear Tire & Rubber Co.*,
 114 F.3d 1547 (Fed. Cir. 1997).....................................................................15

*Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co.*,
 535 U.S. 722 (2002)................................................................................4, 5

*Graver Tank & Manuf. Co. v. Linde Air Products Co.*,
 339 U.S. 605 (1950)....................................................................................4

*Hilton Davis Chemical Co. v. Warner-Jenkinson Co.*,
 62 F.3d 1512 (Fed. Cir. 1995), *rev'd on other grounds,* 520 U.S. 17 (1997) ...............5

*Jeneric/Pentron, Inc. v. Dillon Company*,
 205 F.3d 1377 (Fed. Cir. 2000)...................................................................10

*King v. E.F. Hutton & Co.*,
 117 F.R.D. 2 (D.D.C. 1987).........................................................................17

*Loctite v. Ultraseal,*
    781 F.2d 861 (Fed. Cir. 1985)........................................................................................4

*Markman v. Westview Instruments, Inc.,*
    52 F.3d 967 (Fed. Cir. 1995), *aff'd*, 517 U.S. 370 (1996)..............................................3

*Mas-Hamilton Group v. LaGard, Inc.,*
    156 F.3d 1206 (Fed. Cir. 1998).....................................................................................4

*McGill, Inc. v. John Zink Co.,*
    736 F.2d 666 (Fed. Cir. 1984)........................................................................................4

*Moore U.S.A., Inc. v. Standard Register Co.,*
    229 F.3d 1091 (Fed. Cir. 2000).................................................................................7, 15

*Nike Inc. v. Wolverine World Wide, Inc.,*
    43 F.3d 644 (Fed. Cir. 1994)..........................................................................................3

*Pall Corp. v. Micron Separations, Inc.,*
    66 F.3d 1211 (Fed. Cir. 1995)......................................................................................10

*Perkin-Elmer Corp. v. Westinghouse Electric Corp.,*
    822 F.2d 1528 (Fed. Cir. 1987)......................................................................................5

*Quantum Corp. v. Rodine, Plc.,*
    65 F.3d 1577 (Fed. Cir. 1995)........................................................................................7

*S. Bravo System v. Containment Techs. Corp.,*
    96 F.3d 1372 (Fed. Cir. 1996)........................................................................................4

*Sage Products, Inc. v. Devon Industries, Inc.,*
    126 F.3d 1420 (Fed. Cir. 1997)....................................................................................15

*Sci Medical Life System, Inc. v. Advanced Cardiovascular System,*
    242 F.3d 1337 (Fed. Cir. 2001).........................................................................3, 14, 15

*Texas Instruments, Inc. v. U.S. International Trade Commission,*
    805 F.2d 1558 (Fed. Cir. 1986)......................................................................................5

*Under Sea Industrial, Inc. v. Dacor Corp.,*
    833 F.2d 1551 (Fed. Cir. 1987)......................................................................................4

*Warner-Jenkinson Co., Inc. v. Hilton Davis Chemical Co.,*
    520 U.S. 17 (1997).........................................................................................................4

*Wesley-Jessen Corp. v. Pilkington Visioncare,*
   844 F. Supp. 987 (D. Del. 1994)..............................................................................16

## STATUTES

Fed. R. Civ. P. 37(b)(2)....................................................................................................16

Fed.R.Civ.P. 56(c) ..........................................................................................................3

Defendant Acushnet Company ("Acushnet") files this Memorandum in Support of Its Motion for Summary Judgment of Non-Infringement of U.S. Patent No. 5,553,852 ("the '852 patent") (Ex. 1).

## I.    INTRODUCTION

Acushnet has been accused by Plaintiffs Bridgestone Sports Co. Ltd. and Bridgestone Golf, Inc. ("Bridgestone") of infringing claims 1, 6 and 7 of the '852 patent on three different Acushnet model golf balls: the Pro V1x; Pro V1* and the Pro V1. Claim 1 is the only independent claim in the '852 patent, and none of the accused products read on claim 1. Hence, as this motion will show, Acushnet is entitled to summary judgment in its favor on the '852 patent for each of the accused products.

## II.    NATURE AND STAGE OF PROCEEDINGS

This suit involves eleven patents and is scheduled for trial, starting June 18, 2007. Bridgestone alleges that Acushnet infringes seven patents-in-suit. Acushnet alleges that Bridgestone infringes four patents-in-suit. Fact and expert discovery is finished and a pre-trial conference will be held on May 25, 2007. The Court has not yet issued a *Markman* decision as a step in construing the claims of the asserted patents, but held a *Markman* hearing on November 29, 2006. Under the Scheduling Order, as amended, case dispositive motions are now due, and briefing of dispositive motions must follow and be made "pursuant to D. Del. LR 7.1.2." (D.I. 219 at 1).

## III.    SUMMARY OF ARGUMENT

Acushnet does not literally infringe claim 1 of the '852 patent

Bridgestone is also unable to prove infringement by the doctrine of equivalents. Bridgestone's infringement expert, Mr. Cadorniga admitted during his deposition that he did not even conduct a doctrine of equivalence analysis. He admitted this despite the fact that his expert report contained several pages dedicated to the doctrine of equivalents:

Q:    Have you done an analysis under the doctrine of equivalence with respect to this claim?

A:    Okay, the answer is no, I have not done an analysis.

***

Q:    Have you done an analysis with respect to doctrine of equivalents with respect to the outer cover?

A:    No, I have not, but I think that, you know, is the claim itself one, two, three, could be as low as .75 and as high as 3.5.

Q:    Okay. So under the doctrine of equivalents ... it couldn't go any lower than .75?

A:    For a doctrine of equivalents it would be lower than .75. We're talking about literal at .75 to three.

Q:    But, you haven't done any analysis with respect to doctrine of equivalents, right?

A:    No, because again, the manufacturability of that ball becomes a big problem, that's part of deliberation. Even the inventors did not consider, you know, looking at thinner than one or something to – because of the time of manufacturability or technique they had, they did not believe they could make a ball that has the same or that low, thin, cover material.

(Ex. 2 – 3/12/07 Cadorniga Tr. 166:22-167:3, 182:19-183:10)

Bridgestone also cannot establish infringement under the doctrine of equivalents because it specifically and intentionally excluded structures with cover layers less than 1mm thick from the claims. The Federal Circuit has recognized that "the concept of equivalency cannot embrace a structure that is specifically excluded from the scope of the

claims." *Athletic Alternatives*, 73 F.3d at 1582. *See also Asyst Technologies, Inc. v. Emtrak, Inc.*, 402 F.3d 1188, 1195 (2005) (discussing this "specific exclusion principle"); *Sci Med Life Sys., Inc. v. Advanced Cardiovascular Sys.*, 242 F.3d 1337, 1346 (Fed. Cir. 2001).

Finally, Bridgestone should not be allowed to rely on the doctrine of equivalents in any case because it avoided disclosing to Acushnet the basis of its infringement contentions as they relate to the doctrine of equivalents during fact discovery.

## IV.    THE APPLICABLE LEGAL STANDARDS

### A.    Summary Judgment Standards

Summary judgment should be granted when no "reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); Fed. R. Civ.P. 56(c). The use of summary judgment is particularly appropriate in complex patent infringement actions because it is a useful tool to secure a just and speedy determination of the action and to simplify and pare down the issues in such complex cases. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986); *Nike Inc. v. Wolverine World Wide, Inc.*, 43 F.3d 644, 646 (Fed. Cir. 1994) ("Summary judgment is appropriate in a patent case, as in other cases, when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.")

### B.    Literal Infringement Standards

Literal infringement is determined in a two-step analysis. The first step is determining the meaning and scope of the patent claims asserted to be infringed. The second step is comparing the properly construed claims to the device accused of infringing. *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 976 (Fed. Cir. 1995) (en banc), *aff'd*, 517 U.S. 370 (1996).

Interpretation of the asserted claims is a question of law, and the court must determine the scope and meaning of the claims. *Id.* Claims are construed with reference

3

to the claim language, the patent specification and the prosecution history which together constitute the "intrinsic" evidence. *Loctite v. Ultraseal*, 781 F.2d 861, 867 (Fed. Cir. 1985). When determining the scope and meaning of the patent claims, the language of the claims in light of the specification is considered first. *McGill, Inc. v. John Zink Co.*, 736 F.2d 666, 672 (Fed. Cir. 1984).

In a patent case, the patentee bears the burden of proving infringement. *See Under Sea Indus., Inc. v. Dacor Corp.*, 833 F.2d 1551, 1557 (Fed. Cir. 1987). To meet this burden, the patentee must prove that the accused products contain each and every limitation of the asserted claim, either literally or by equivalence. *See S. Bravo Sys. v. Containment Techs. Corp.*, 96 F.3d 1372, 1376 (Fed. Cir. 1996). "If even one limitation is missing, there is no literal infringement." *Mas-Hamilton Group v. LaGard, Inc.*, 156 F.3d 1206, 1211 (Fed. Cir. 1998).

Where, as here, the nonmoving party has the burden at trial, the moving party need only point to a lack of evidence and has no burden to disprove the nonmoving party's claim. *See Celotex*, 477 U.S. at 325. The non-moving party must then come forward with evidence demonstrating a genuine issue as to a material fact, and such evidence must consist not merely of denials or assertions that a fact is challenged. *See id.* at 324. If the non-moving party fails to make a sufficient factual showing as to any element of its case on which it bears the burden of proof at trial, the "plain language of Rule 56(c) mandates the entry of summary judgment." *Id.* at 322.

### C.    Doctrine of Equivalence Standards

If a product does not literally infringe the claims of an asserted patent, the product may still be found to infringe the patent under the doctrine of equivalents if there is "equivalence" between the accused product and each element of the patent's claims. *Graver Tank & Mfg. Co. v. Linde Air Prods. Co.*, 339 U.S. 605, 608 (1950); *Warner-Jenkinson Co., Inc. v. Hilton Davis Chem. Co.*, 520 U.S. 17, 28 (1997); *Festo Corp. v.*

*Shoketsu Kinzoku Kogyo Kabushiki Co.*, 535 U.S. 722, 740 (2002) ("*Festo VIII*"). A claim limitation is equivalently present in an accused device if there are only "insubstantial differences" between the claim limitation and the corresponding aspect of the accused device. *CAE Screenplates, Inc. v. Heinrich Fiedler GmbH & Co. KG*, 224 F.3d 1308, 1317 (Fed. Cir. 2000). Thus, the doctrine of equivalents allows the patentee to claim those "*unimportant* and *insubstantial* changes and substitutions in the patent which, though adding nothing, would be enough to take the copied matter outside the claim." *Festo VIII,* 535 U.S. at 733 (emphasis added).

The doctrine of equivalents does not permit wholesale redrafting of a claim in order to capture an accused product; the deviation from the literal scope of the claim must be *insubstantial, Perkin-Elmer Corp. v. Westinghouse Elec. Corp.*, 822 F.2d 1528, 1532 (Fed. Cir. 1987). The test for determining whether differences are "insubstantial" is objective: whether a person with ordinary skill in the relevant art would find the differences to be "insubstantial." *Hilton Davis Chem. Co. v. Warner-Jenkinson Co.,* 62 F.3d 1512, 1519 (Fed. Cir. 1995), *rev'd on other grounds,* 520 U.S. 17 (1997).

Where the patent describes a narrow mechanical improvement in a crowded field, the scope of potential equivalents is narrow. *Texas Instruments, Inc. v. U.S. Int'l Trade Comm'n,* 805 F.2d 1558, 1563 (Fed. Cir. 1986).

## V.    NO LITERAL INFRINGEMENT

Some of the terms in the asserted claims of the '852 patent are at issue in *Markman* proceedings before the Court. Specifically, the parties dispute the meaning of (a) "intermediate layer having a thickness of at least 1mm;" (b) "cover having a thickness of 1 to 3 mm;" and (c) "center core having a diameter of at least 29mm."

1.    **Intermediate Layer Limitation**

a.    **"intermediate layer having a thickness of at least 1mm"**

Acushnet's proposed construction for this claim phrase is that the intermediate layer must be at a minimum 1.0 mm thick. This is the only logical interpretation for a claim that explicitly requires the intermediate layer to be *at least* 1mm thick. This interpretation is supported by the '852 patent's specification, which states that the thickness of the intermediate layer is "at least 1mm, preferably 1.5 to 3.5 mm," indicating that diameters much larger than 1mm were desired, rather than diameters at or near 1mm. (Ex. 1 – '852 patent, col. 3, lines 28-30). Furthermore, the '852 patent's specification specifically criticizes golf balls with intermediate layers less than 1mm thick: "With a thickness of less than 1mm, repulsion is lowered to reduce flying distance." The patent describes this as a "detrimental effect." (Ex. 1 – '852 patent, col. 3, lines 33-39). Bridgestone's expert, Mr. Cadorniga agreed:

> Q:    The patent teaches, though, you will admit, that intermediate layers of less than one are disfavored; correct?
>
> A:    Yes, correct.

(Ex. 2 – 3/12/07 Cadorniga Tr. 161:4-7).

The examples provided in the patent show intermediate layers with thickness ranging from 1.6mm to 3.4mm. There are no examples in which the intermediate layer thickness is below 1.0mm (or even near 1.0mm). (Ex. 1 – '852 patent, Table 2).

Bridgestone and Mr. Cadorniga (in his expert report) failed to offer a precise numerical range as to what "at least 1mm" means, instead they stated that this term should be afforded its plain and ordinary meaning, which under their interpretation encompasses values less than 1mm thick. When asked during his deposition, Bridgestone's expert, Mr. Cadorniga, asserted that the literal meaning of "at least 1 mm" can include measurements as thin as 0.7mm:

6

Q:      How low can you go and still be literally at least one millimeter?

A:      This is the same question you asked me earlier, in the other patent, and this one I'm going to give up less than point seven to be, you know, literally outside.

                                    ***

Q:      Okay.   I believe your opinion is, with respect to literal infringement, that the claim language of an IML layer of at least one millimeter means to you an IML layer of 0.70 millimeters and higher; is that correct?

A:      That's true.

(Ex. 2 – 3/12/07 Cadorniga Tr. 161:22-162:5, 166:5-10).

Bridgestone's proposed claim construction that "at least 1mm" can include values less than 1mm thick defies logic and Federal Circuit decisions.  Regarding the limitation "at least," the Federal Circuit has repeatedly held that it means "as the minimum." *Quantum Corp. v. Rodine, Plc.*, 65 F.3d 1577 (Fed. Cir. 1995) ("Regarding the limitation 'at least 600 tpi,' the term 'at least' means '*as the minimum*,' Webster's Third New International Dictionary 1287 (1986), and therefore when coupled with a specific number sets forth an absolute lower limit of a range, i.e., 600 on up.); *Lantech, Inc. v. Keip Mach. Co.*, 32 F.3d 542, 546 (Fed. Cir. 1994) ("[T]he term 'at least two' sets forth *the minimum number* of a particular element required."); *Moore U.S.A., Inc. v. Standard Register Co.*, 229 F.3d 1091, 1106 (Fed. Cir. 2000) (construing "majority" to require 50.0%) ("It would defy logic to conclude that a minority – the very antitheses of a majority – could be unsubstantially different from a limitation requiring a majority, and no reasonable juror could find otherwise."). (emphasis added throughout).

In light of the clear claim language, the specification criticizing thicknesses less than 1mm, and the Federal Circuit precedent, there is no doubt that the correct interpretation of an intermediate layer that is "at least 1mm" is that the intermediate layer must be 1.0mm thick, at a minimum.



2.     **Outer Cover Limitation**

a.     **"cover layer having a thickness of 1-3 mm"**

Acushnet's proposed construction for this claim phrase is that the outer cover layer must be a minimum of 1.0 mm thick and a maximum of 3.0 mm thick. This is the only logical interpretation for a claim that explicitly requires the outer cover to be 1-3 mm thick. This interpretation is supported by the '852 patent's specification, which states that the thickness of the cover is "1 to 3 mm, preferably 1.5 to 2.5mm," indicating that diameters well-between and not outside or near the claimed ranges were desired. (Ex. 1 – '852 patent, col. 3, lines 60-61). Furthermore, the '852 patent's specification specifically criticizes golf balls with cover thicknesses less than 1mm or greater than 3mm: "A cover more than 3 mm thick is low in repulsion whereas a cover less than 1mm thick is low in durability such as cut resistance." (Ex. 1 – '852 patent, col. 3, lines 61-

63). The examples provided in the patent show covers with thicknesses ranging from 1.5mm to 2.2mm. There are no examples in which the cover thickness is below 1.0mm (or even near 1.0mm). (Ex. 1 – '852 patent, Table 2).

Again, Bridgestone and Cadorniga (in his expert report) failed to offer a precise numerical range as to what "a cover having a thickness of 1 to 3 mm" means. Instead, Bridgestone stated that this term should be afforded its plain and ordinary meaning, which under their interpretation encompasses values less than 1mm thick. When asked at his deposition, Bridgestone's expert, Mr. Cadorniga, asserted that the literal meaning of "a cover having a thickness of 1 to 3 mm" can include measurements as thin as 0.75mm:

> Q:    Okay. So if I understood, right, you said that in your construction of what an outer cover between one to three millimeter in thickness means to you is an outer cover having .75 millimeters; is that correct?
>
> A:    That is correct.
>
> Q:    An what about on the upper range, what's the thickest outer cover thickness you could have and still literally be within the claim, according to your construction?
>
> A:    It's probably in the range of 3.5.

(Ex. 2 – 3/12/07 Cadorniga Tr. 179:14-180:2).

***

> Q:    So, looking back at table C-13, you've stated that for literal infringement you would consider anything at .75 millimeters or higher to be between one and three millimeters; is that correct?
>
> A:    That is correct.

(Ex. 2 – 3/12/07 Cadorniga Tr. 182:1-5).

Bridgestone's proposed claim construction that a cover having at thickness of "1 to 3 mm" can literally include values less than 1mm thick is contrary to its plain and ordinary meaning. Especially, in light of the fact that the specification criticizes the use

of a cover that is less than 1mm thick as resulting in a golf ball being "low in durability such as cut resistance." (Ex. 1 – '852 patent, col. 3, lines 61-63).

Further, the fact that the claim does not use any broadening or qualifying language further indicates that limitation to the precise ranges is proper. Without broadening words that ordinarily receive some leeway, the precise ranges of a claim do not avoid a strict numerical boundary to the specified parameter. *See Pall Corp. v. Micron Separations, Inc.*, 66 F.3d 1211, 1217 (Fed. Cir. 1995); *Jeneric/Pentron, Inc. v. Dillon Company*, 205 F.3d 1377, 1381 (Fed. Cir. 2000). Mr. Cadorniga testified that when such broadening words are not used it indicates an intended higher level of precision. (Ex. 2 – 3/12/07 Cadorniga Tr. 94:1-4).

In light of the clear claim language, the specification criticizing thicknesses less than 1mm and more than 3mm, and the Federal Circuit precedent, there is no doubt that the correct interpretation of an outer cover layer that is "1 to 3 mm" is that the cover is at a minimum 1.0 mm thick, and at a maximum 3.0 mm thick.





### 3.    Core Diameter Limitation

       a.    **"center core having a diameter of at least 29mm"**



As is known to those of ordinary



skill in the art, the term "center core" has a specific meaning. It is meant to describe the inner or center core of a dual core ball. (Ex. 3 – 2/20/07 Felker Report, pg. 53).

Bridgestone, itself, uses the term "center core" in just such a manner. In fact, in describing a golf ball with a dual core in other inventions, Bridgestone specifically defines the "center core" as the inner core. In its U.S. Patent No. 4,919,434 (Ex. 4), Bridgestone distinguishes between the center core and the outer core, as shown below:

## FIG.2





It is also clear from the '852 patent specification that the claimed "center core" is composed of a singular formulation, and does not capture a multi-piece core, made up of two or more separate and distinct rubber formulations. For example, the patent

specification states: *"The center core was prepared by kneading the respective components in a roll mill and pressure molding at 155° C for 15 minutes."* (Ex. 1 – '852 Patent at col. 4, lines 22-24). This, of course, refers to a one step, single rubber formulation process. Tables 1 and 2 also show a single formula and make no indication that the claimed "center core" consists of more than one piece.



### 4.     "Three-Piece" Golf Ball Limitation

Claim 1 of the '852 patent claims only "[a] three-piece solid golf ball." (Ex. 1 – '852 Patent, col. 6).

Therefore, the Pro V1x and Pro V1* golf balls do not infringe claim 1 or any other asserted claim of the '852 patent for this reason as well.

## VI.     NO INFRINGEMENT UNDER THE DOCTRINE OF EQUIVALENTS

Bridgestone's expert, Mr. Cadorniga, admitted during deposition that he did not conduct any analysis under the doctrine of equivalents with respect to the cover thickness limitations of the '852 patent:

Intermediate Layer Thickness Limitation

Q:     Have you done an analysis under the doctrine of equivalence with respect to this claim?

A:     Okay, the answer is no, I have not done an analysis.

***

Outer Cover Thickness Limitation

Q:     Have you done an analysis with respect to doctrine of equivalents
       with respect to the outer cover?

A:     No, I have not, but I think that, you know, is the claim itself one,
       two, three, could be as low as .75 and as high as 3.5.

(Ex. 2 – 3/12/07 Cadorniga Tr. 166:22-167:3, 182:6-13; *see also* 182:19-183:10).

Mr. Cadorniga made this admission despite his report containing several pages
directed to such an analysis. Therefore, Acushnet requests, based on his admissions, that
Mr. Cadorniga be precluded from offering any infringement opinion under the doctrine of
equivalents with respect to the thickness limitations.

**A.     Having Specifically Identified, Criticized and
         Disclaimed Covers Less Than 1mm, Bridgestone
         Cannot Recapture Such Covers Under the Doctrine of
         Equivalents**

In any case, none of the accused Acushnet products can be found to infringe
under the doctrine of equivalents. The '852 patent specifically identified golf ball covers
with a thickness less than 1mm, proceeded to criticize such covers as resulting in poor
performance characteristics, and then intentionally and specifically excluded such covers
from the claims. It is well established that in such circumstances, the doctrine of
equivalents cannot be used to recapture the criticized embodiment. *SciMed Life Systems,
Inc. v. Advanced Cardiovascular Systems, Inc.*, 242 F.3d 1337 (Fed. Cir. 2001); *Dolly,
Inc. v. Spalding & Evenflo Cos.*, 16 F.3d 394, 400 (Fed. Cir. 1994); *Athletic Alternatives,
Inc v. Prince Manufacturing, Inc.*, 73 F.3d 1573 (Fed. Cir. 1996).

This *SciMed* case is particularly instructive. In *SciMed*, the Federal Circuit held
that there could be no infringement under the doctrine of equivalents where the patentee
specifically identified, criticized, and then disclaimed the alleged equivalent. SciMed,
242 F.3d at 1345. *SciMed* dealt with three patents, with common specifications, each

14

claiming balloon catheters comprising a guide wire lumen and an inflation lumen. *Id.* at 1339, 1345-46. The patents' common specification disclosed a "coaxial lumen" configuration, i.e., one with the guide wire lumen inside the inflation lumen. *Id.* The accused devices used a side-by-side configuration, described as a "dual lumen" configuration. *Id.* The specification of the patent referred to dual lumen catheters and then proceeded to criticize them as suffering from the disadvantages of having "larger than necessary shaft sizes" and being "stiffer in their distal regions than would be desired." *Id.* at 1345. The specification made clear that the patentees regarded the "dual lumen" configuration inferior to the "coaxial lumen" configuration. *Id.* The claims of the patent then specifically claimed only "coaxial lumen" configurations. The Court considered this an explicit disclaimer of the dual lumen.[2] *Id.* at 1347.

"Where such an explicit disclaimer is present ... the patentee cannot be allowed to recapture under the doctrine of equivalents without undermining the notice function of the patent. [T]he patentee had an opportunity to draft the patent in a way that would make clear that dual lumens as well as coaxial lumens were within the scope of the invention, but the patentee did just the opposite, leaving competitors and the public to draw the reasonable conclusion that the patentee was not seeking patent protection of catheters that used a dual lumen configuration." *SciMed*, 242 F.3d at 1347.

Like the patentee in *SciMed*, Bridgestone specifically identified a structure (covers less than 1mm thick); specifically criticized that structure (stated that such covers result in disadvantageous performance characteristics); and then specifically excluded

_____

[2] A particular structure can be deemed outside the reach of the equivalents because that structure is clearly excluded from the claims whether the exclusion is express or implied. *See, e.g., Moore, U.S.A. v. Standard Register Co.*, 229 F.3d 1091 (Fed. Cir. 2000); *Eastman Kodak Co. v. Goodyear Tire & Rubber Co.*, 114 F.3d 1547 (Fed. Cir. 1997); *Sage Products, Inc. v. Devon Industries, Inc.*, 126 F.3d 1420 (Fed. Cir. 1997); *Athletic Alternatives, Inc. v. Prince Manufacturing , Inc.*, 73 F.3d 1573 (Fed. Cir. 1996).

such structure from its claims (claimed intermediate cover *at least 1 mm thick*; and outer cover having a thickness of *1 to 3 mm*).

Allowing Bridgestone to pursue infringement under the doctrine of equivalents would result in Bridgestone improperly recapturing intentionally excluded subject matter. For at least this reason, Bridgestone should be precluded from pursuing infringement under the doctrine of equivalents.

### B.    Bridgestone's Failure to Disclose Infringement Contentions Precludes Them From Relying on the Doctrine of Equivalents

To the extent Bridgestone is able to rely on the doctrine of equivalents argument contained in Mr. Cadorniga's report, despite the fact that he admitted he did not actually do any such analysis, Bridgestone should still be precluded from asserting infringement under the doctrine of equivalents. Bridgestone should be precluded because it failed to identify the factual bases in support of any such argument in response to Acushnet's contention interrogatories. (*See* D.I. 295 at 6-8 and Ex. Q).

Throughout fact discovery, Bridgestone stated verbatim in its contentions that "to the extent the claim is not literally infringed, it is infringed under the Doctrine of Equivalents, because any difference would be insubstantial." (D.I. 295 at Ex A). It offered no greater detail, pointed to no specific evidence in support of this contention, and certainly provided no notice for the assertion it makes for trial purposes, after the close of fact discovery, that having a thickness of "at least 1mm" can literally include covers as thin as 0.70mm, and that outer cover layers having a thickness of between "1 to 3 mm" can literally be as thin as 0.75mm and as thick as 3.5mm. Neither did Bridgestone provide any notice that it intended to rely on a theory of "later developed equivalents" to argue that the thin outer covers of the Acushnet products were not possible to be made at the time the '852 patent application was filed. In such a case, preclusion is the appropriate remedy. *See* Fed. R. Civ. P. 37(b)(2); *Wesley-Jessen Corp. v. Pilkington*

*Visioncare*, 844 F. Supp. 987, 990 (D. Del. 1994) ("the Court will not allow it to offer into evidence in its case in chief any documents or testimony supporting that contention that are not disclosed in its response"); *Dependahl v. Falstaff Brewing Corp.*, 84 F.R.D. 416, 420 (E.D. Mo. 1979) (striking defense and counterclaim for failure to answer contention interrogatory); *King v. E.F. Hutton & Co.*, 117 F.R.D. 2, 7 n.6 (D.D.C. 1987) (plaintiffs "will be precluded from testifying at trial to any facts in support of the losses not mentioned in their respective depositions or answers to interrogatories"); *Auto Meter Prods. v. Maxima Techs. & Sys., LLC*, 2006 U.S. Dist. LEXIS 81687, at *10 (N.D. Ill. Nov. 6, 2006) ("[a]ny facts or documents not so disclosed cannot be relied upon") (Ex. 8). Thus, in light of Bridgestone's failure to provide the factual bases for its contentions under the doctrine of equivalence, it should be precluded from asserting the doctrine now.

### VII.    CONCLUSION

For all of the foregoing reasons, Acushnet respectfully requests the Court to grant its Motion for Summary Judgment of Non-Infringement on the '852 Patent.

POTTER ANDERSON & CORROON LLP

OF COUNSEL:

Alan M. Grimaldi
Joseph P. Lavelle
Kenneth W. Donnelly
Brian S. Seal
HOWREY LLP
1299 Pennsylvania Avenue, N.W.
Washington, DC 20004
Tel: (202) 783-0800

By:    */s/ David E. Moore*
      Richard L. Horwitz (#2246)
      David E. Moore (#3983)
      Hercules Plaza, 6th Floor
      1313 North Market Street
      P. O. Box 951
      Wilmington, DE 19899-0951
      Tel: (302) 984-6000
      rhorwitz@potteranderson.com
      dmoore@potteranderson.com

*Attorneys for Defendant*
*Acushnet Company*

Dated: April 13, 2007
Public Version Dated: April 20, 2007
790598 / 28946

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

### CERTIFICATE OF SERVICE

I, David E. Moore, hereby certify that on April 20, 2007, the attached document was hand

delivered to the following persons and was electronically filed with the Clerk of the Court using

CM/ECF which will send notification to the registered attorney(s) of record that the document

has been filed and is available for viewing and downloading:

Jack B. Blumenfeld
Maryellen Noreika
Leslie A. Polizoti
Morris, Nichols, Arsht & Tunnell
1201 N. Market Street
Wilmington, DE 19801

I hereby certify that on April 20, 2007, I have Electronically Mailed the documents to the

following:

Robert M. Masters
Paul, Hastings, Janofsky & Walker LLP
875 15th Street, N.W.
Washington, D.C. 20005
RobMasters@paulhastings.com

/s/ David E. Moore
Richard L. Horwitz
David E. Moore
Potter Anderson & Corroon LLP
Hercules Plaza – Sixth Floor
1313 North Market Street
P.O. Box 951
Wilmington, DE 19899-0951
(302) 984-6000
rhorwitz@potteranderson.com
dmoore@potteranderson.com

680012 / 28946