IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

BRIDGESTONE SPORTS CO., LTD., )
and BRIDGESTONE GOLF, INC., )
 )
    Plaintiffs, ) C. A. No. 05-132 (JJF)
 )
v. )
 ) **PUBLIC VERSION**
ACUSHNET COMPANY, )
 )
    Defendant. )

**ACUSHNET'S MEMORANDUM IN SUPPORT OF ITS
MOTION FOR SUMMARY JUDGMENT OF INVALIDITY
OF U.S. PATENT NO. 6,679,791**

OF COUNSEL:

Alan M. Grimaldi
Joseph P. Lavelle
Kenneth W. Donnelly
Brian S. Seal
HOWREY LLP
1299 Pennsylvania Avenue, N.W.
Washington, DC 20004
Tel: (202) 783-0800

Dated: April 13, 2007
Public Version Dated: April 20, 2007
790683 / 28946

Richard L. Horwitz (#2246)
David E. Moore (#3983)
POTTER ANDERSON & CORROON LLP
Hercules Plaza, 6th Floor
1313 North Market Street
P. O. Box 951
Wilmington, DE 19899-0951
Tel: (302) 984-6000
rhorwitz@potteranderson.com
dmoore@potteranderson.com

*Attorneys for Defendant
Acushnet Company*

## TABLE OF CONTENTS

I. INTRODUCTION .................................................................................................................1

II. NATURE AND STAGE OF PROCEEDINGS .....................................................................1

III. SUMMARY OF ARGUMENT ..............................................................................................1

IV. STATEMENT OF FACTS .....................................................................................................2

    A. The Asserted Claims of the '791 Patent ......................................................................2

    B. The Prosecution History of the '791 Patent ................................................................3

    C. The Specification of the '791 Patent ............................................................................4

    D. Bridgestone's Experts' Opinions on Core Properties ..................................................5

V. APPLICABLE LAW ..............................................................................................................8

    A. Summary Judgment ......................................................................................................8

    B. Lack of Enablement .....................................................................................................8

VI. ARGUMENT ..........................................................................................................................9

    A. The '791 Patent Is Invalid Because It Fails to Fulfill the Enablement Requirement of 35 U.S.C. §112, ¶1 .........................................................9

    B. Claims 13, 16, and 26 are Invalid for Lack of Enablement ......................................14

VII. CONCLUSION .....................................................................................................................16

# TABLE OF AUTHORITIES

## CASES

*AK Steel Corp. v. Sollac & Ugine*,
   344 F.3d 1234 (Fed. Cir. 2003)..................................................................9, 12

*Amgen, Inc. v. Chugai Pharmaceutical Co., Ltd.*,
   927 F.2d 1200 (Fed. Cir. 1991)..........................................................................9

*Anderson v. Liberty Lobby, Inc.*,
   477 U.S. 242 (1986)............................................................................................8

*Celotex Corp. v. Catrett*,
   477 U.S. 317 (1986)............................................................................................8

*Liebel-Flarsheim Co. v. Medrad.*,
   No. 06-1156 2007 U.S. App. LEXIS 6607
   (Fed. Cir. March 22, 2007) ....................................................................... *passim*

*Lizardtech, Inc. v. Earth Resource Mapping, Inc.*,
   424 F.3d 1336 (Fed. Cir. 2005)........................................................8, 9, 10, 15

*Merrill v. Yeomans*,
   94 U.S. 568 (1876)..............................................................................................9

*Nike Inc. v. Wolverine World Wide, Inc.*,
   43 F.3d 644 (Fed. Cir. 1994)..............................................................................8

*Phillips v. AWH Corp*,
   415 F.3d 1303 (Fed. Cir. 2005)..........................................................................9

*Tronzo v. Biomet, Inc.*,
   156 F.3d 1154 (Fed. Cir. 1998)........................................................8, 10, 12, 14

## STATUTES

35 U.S.C. §112.................................................................................................. *passim*

Fed. R. Civ. P. 56(c) ...................................................................................................8

Defendant Acushnet Company ("Acushnet") files this Memorandum in Support of Its Motion for Summary Judgment of Invalidity of U.S. Patent No. 6,679,791 ("the '791 patent") (Ex. 1).

## I.    INTRODUCTION

Bridgestone Sports Co. Ltd. and Bridgestone Golf, Inc. ("Bridgestone") accuse Acushnet model golf balls bearing the side stamps ◄•Pro V1 392•►, ◄Pro V1-392►, ◄•Pro V1x 332•►, and ◄Pro V1x-332► (collectively, the "accused balls") of infringing claims 11, 13, 16 and 26 of the '791 patent. Acushnet will demonstrate that the '791 patent, or at least asserted claims 13, 16 and 26 are invalid for lack of enablement.

## II.    NATURE AND STAGE OF PROCEEDINGS

This is a patent infringement suit involving eleven patents and scheduled for trial, starting June 18, 2007. Bridgestone alleges that Acushnet infringes seven patents-in-suit. Acushnet alleges that Bridgestone infringes four patents-in-suit. Fact and expert discovery is finished and a pre-trial conference will be held on May 25, 2007.

This Court has not yet issued a *Markman* decision construing the asserted claims. However, the present motion is timely because the Court has required the parties to file summary judgment motions by this date, and under any construction of the patent, including that offered by Bridgestone, these claims are invalid. As no genuine issues of fact exist with regard to the material facts argued in support of this motion, Acushnet requests that the Court grant this motion for summary judgment of invalidity.

## III.    SUMMARY OF ARGUMENT

Acushnet is entitled to summary judgment of invalidity because the '791 patent fails to fulfill the enablement requirement of 35 U.S.C. §112, paragraph one. The specification of the '791 patent does not teach one of ordinary skill in the art how to (a) manufacture a gradually increasing core gradient at any hardness greater than 22; (b)

regularly or consistently manufacture a core with a hardness gradient of greater than 22; or (c) manufacture cores with any core gradients other than the fairly narrow range of 23-24 shown in the sparse examples of the patent. Bridgestone's own experts establish that the formation of core gradients is unpredictable, and that without detailed knowledge of the conditions in which the core is made, one of ordinary skill in the art cannot predict the properties of the core.

Even if the court finds that the '791 patent is not invalid for the reasons stated above, at least asserted claims 13, 16 and 26 are invalid as not enabled if they are construed not to include the limitation "said elastic core has a hardness which gradually increases radially outward." As described in detail below, every piece of intrinsic evidence leads to the unambiguous conclusion that a "gradually increasing" core profile is what the inventors claimed to have invented – a claim without that limitation is not enabled.

Either way, it is apparent that Bridgestone is attempting to claim much more than the inventors claimed, including golf ball manufacturing techniques in the prior art, in direct violation of Section 112 and Supreme Court precedent.

Because there is no genuine issue as to any material fact needed to establish the invalidity of the '791 patent, Acushnet is entitled to judgment as a matter of law.

### IV.    STATEMENT OF FACTS

#### A.    The Asserted Claims of the '791 Patent

Bridgestone is asserting claims 11, 13, 16 and 26 of the '791 patent against Acushnet's accused '791 golf balls. Claim 11 depends upon claim 1. Claim 16 depends upon claim 13. Claim 26 depends upon claim 24.

Independent claim 1, 13 and 24 each claim a core with a specific hardness distribution. Claim 1 is the only independent claim that has a limitation that expressly requires an elastic core having:

2

> a hardness which *gradually increases radially outward* from the center to the surface thereof, and a difference in JIS-C hardness of at least 22 between the center and the surface.

Claims 13 and 24 do not expressly require a gradually increasing hardness, but do require an elastic core having:

> a hardness at the center and *a hardness at the surface thereof which is greater than the hardness at the center* thereof, and a difference in JIS-C hardness of at least 22 between the center and the surface.

### B. The Prosecution History of the '791 Patent

The application for the '791 patent originally contained one independent claim. It read:

> said elastic core has a hardness which *gradually increases radially outward from the center to the surface thereof,* and a difference in JIS-C hardness of at least 18 between the center and the surface. (Ex. 2 - June 15, 2001 Application at 15 (emphasis added))

In a rejection of all the claims, the Examiner stated that comparative example 2 in the Moriyama reference showed a difference between the core center and surface hardness as high as fifteen and "therefore, it would have been obvious to one of ordinary skill in the art at the time the invention was made to have the surface higher than the center by any value, such as at least 18, in order to obtain the desired rebounding and feel characteristic for the golf ball through routine optimization." (*See* Ex. 3 - May 17, 2002 Office Action at 2).

In response to this Office Action, Bridgestone added new claims without the "gradually increasing" limitation that only required a hardness difference of at least 18 between the center and the surface of the core. (*See* Ex. 4 - August 15, 2002 Amendment at 1-4). Bridgestone argued that Moriyama taught away from a hardness difference of at least 18 because he stated that the hardness difference must not be more than 10. (*Id.* at 6).

3

The Examiner again rejected all the independent claims this time as obvious in light of the combination of Moriyama and Nakamura. Not only did the Examiner stand by his earlier rejection of the hardness difference of 18, but he found that Nakamura disclosed a golf ball in which improved feeling is provided by a core with a hardness distribution that gradually increases from the core's surface to the core's center. (*See* Ex. 5 - October 29, 2002 Office Action at p. 3).

In its response, Bridgestone explicitly distinguished Nakamura on the basis that is did not have a gradually increasing hardness, but actually decreased:

> Applicant submits that the combination of these references fails to teach a core which "gradually increases radially outward from the center to the surface thereof." The Examiner acknowledges on page 3 of the office action that Moriyama fails to teach this feature, but then contends that Nakamura teaches this gradually increasing hardness of the core. ***However, Nakamura teaches that from 4 mm from the core's surface to 2 mm from the core's surface, the hardness actually <u>decreases</u>.*** Nakamura col. 2:54-64; Abstract. Therefore, the core of Nakamura fails to <u>gradually increase</u> from the core center to the core surface. Accordingly, the cited references fail to teach or suggest this limitation. (*See*, Ex. 6- January 29, 2003 Amendment at p. 7 (emphasis added)).

After further wrangling with the Examiner that included an interview, the Examiner allowed claim 1 to include the "gradually increasing" hardness limitation, but Bridgestone failed to amend the other independent claims to include that limitation. Instead, Bridgestone only amended all the independent claims to include the hardness at the surface greater than the hardness at the center, said difference being at least 22.

### C. The Specification of the '791 Patent

Although Bridgestone never amended independent claims 13 and 24 to include the "gradually increasing" hardness limitation, the '791 patent repeatedly states the need for a gradually increasing hardness profile. In fact, the '791 patent's specification goes so far as to state:

> ***It is critical for the core to have an optimized hardness profile in which the hardness gradually increases radially outward from the center***

4

***toward the outside edge or surface of the core.*** (Ex. 1 at Col. 3, ll. 26 – 30 (emphasis added)).

In addition, the Abstract describes the invention with a core having "a hardness which gradually increases radially." The summary of the invention describes the invention as having a core that has a "hardness which gradually increases radially." (Ex. 1 at Col. 1, ll. 41-43). The detailed description of the invention describes the only illustrated embodiment as having a core "which gradually increases radially outward from the center C to the surface S." (*Id.* at Col. 2, ll. 6-9). Moreover, the improved flight distance of the stated invention is attributed in part to the gradually increasing hardness of the core from the center to the surface. (*Id.* at Col. 4, ll. 1-10).

During prosecution, Bridgestone distinguished prior art that had a decreasing hardness profile. (*See* Ex. 6 at p. 7).

The specification also discusses the hardness difference between the core center and the core surface. Specifically, the summary of the invention states that there should be a hardness difference of at least 18 degrees JIS-C between the center and surface of the core. (Ex. 1 at Col. 1. ll. 43-45). The detailed description of the invention states that this hardness gradient is preferably 22, and most preferably 25, again using the JIS-C scale. (*Id.* at Col. 3, ll. 32-35). The patent adds that the hardness difference should be "at most 30," and preferably less than 27 or most preferably less than 25, although it does not explain why this is preferred. (*Id.* at ll. 43-45).

### D.  Bridgestone's Experts' Opinions on Core Properties

John Calabria, Bridgestone's rebuttal expert regarding invalidity, opined that the properties of core gradients cannot be ascertained simply by knowing the base rubber material and the time and temperature at which the core was made. Mr. Calabria succinctly states:

> [S]ome cores will have a uniform cure from center to surface, a hardness profile which peaks or dips along radial directions of the core, some will exhibit a higher cure in the center than the surface, others will show an

5

increased gradient from center to surface, or other combinations. ***This will be dependent on the chemistry employed in preparing the rubber, the time and temperature parameters during molding as well as the size of the cavities and pressure used to form the cores.***

(Ex. 7- 2/20/07 Calabria Report at 12 (emphasis added); *see also id.*, App C., ¶19 ("just by making minor variations in the level of the generically indicated [chemical]" will have a large effect on core gradient; "[c]hanges in name brands of materials can also have such a significant difference;" "even different lots of the same name brand of material can have significant lot-to-lot variability resulting variation of the core properties."); *see also* Ex. 8- 2/20/07 Cadorniga Report at ¶166 (golf balls cured with peroxide can be harder at the center than the outside of the core).

In his deposition, Mr. Calabria further explained the specificity required to be able to predict or understand the properties of a golf ball core. Calabria explained that other factors relevant to the formation of a core gradient include the core size, how the materials are mixed prior to molding, including sequencing of materials and time parameters and temperature profiles, and information regarding the press, including the geometry of the mold, and the number, shape, and layout of mold cavities (*See* Ex. 7- 2/20/2007 Calabria Report at App. C, ¶¶ 24-27; Ex. 9 - 3/15/07 Calabria Tr. at 69:4 - 69:9; 71:12 - 73:7; 264:2 - 271:6). Without a detailed understanding of a particular core's manufacturing process, one cannot assume what the hardness is at an internal point of that core relative to its surface without testing that particular point. (*See* Ex. 10 - 3/12/07 Cadorniga Tr. 235:3 - 235:6). Specifically, Mr. Calabria testified:

> **Q:** What information, in addition to what's described in EP 043, would one skilled in the art need to know, in your opinion, in order to predict what the hardness profile of the core is going to look like?
>
> **A:** I think one skilled in the art would know -- want to know, need to know the things I explained to you.
>
> **Q:** Okay. So that would be the pressure that we talked about already?
>
> **A:** Correct.

**Q:** The molding geometry, including cavity sizes, number of cavities, how the heat is applied and other aspects of the geometry of the situation?

**A:** Correct.

**Q:** The details of how the core was mixed, including when different ingredients were added and how they were mixed and how the mixer was operated?

**A:** Correct.

**Q:** And is it also your testimony that you would need to know the brand name of the ingredients that were used in the preparation of the core?

**A:** Yes, that would be very helpful.

**Q:** Would one skilled in the art need to know that information in order to predict the hardness profile of the core?

**A:** My opinion is yes.

**Q:** So it's your opinion that if I read a patent and it says to use cis-1,4-polybutadiene but it doesn't specify the brand, I don't have enough information to predict what the hardness profile of the core is going to look like?

**A:** Correct.

******************

**Q:** Do you need to know the fillers and inert ingredients that are in the core in order to predict what the hardness profile is going to be?

**A:** I think they would have an impact on it, yes.

**Q:** So do you need to know -- does one skilled in the art need to know those details in order to understand what the hardness profile is going to be?

**A:** I'll say yes

**Q:** Okay. And you need to know the brand name of the inert ingredients?

**A:** Yes.

(Ex. 9 - 3/15/07 Calabria Tr. at 96-101).

7

V.   **APPLICABLE LAW**

A.   **Summary Judgment**

Summary judgment should be granted when no "reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); Fed. R. Civ. P. 56(c). The use of summary judgment is particularly appropriate in complex patent infringement actions because it is a useful tool to secure a just and speedy determination of the action and to simplify and pare down the issues in such complex cases. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986); *Nike Inc. v. Wolverine World Wide, Inc.*, 43 F.3d 644, 646 (Fed. Cir. 1994) ("Summary judgment is appropriate in a patent case, as in other cases, when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.").

B.   **Lack of Enablement**

A patent is invalid if it does not "describe the manner and process of making and using the invention so as to enable a person of skill in the art to make and use the full scope of the invention without undue experimentation." 35 U.S.C. §112, ¶1; *see also, Lizardtech, Inc. v. Earth Resource Mapping, Inc.*, 424 F.3d 1336, 1344 (Fed. Cir. 2005).

"A patentee cannot always satisfy the enablement requirement, in supporting expansive claim language, merely by clearly describing one embodiment of the thing claimed." *Lizardtech*, 424 F.3d at 1346. Although every embodiment of a claim does not need to be disclosed in a specification, there must be guidance or a suggestion to enable the full scope of the invention. (Ex. 11 - *Liebel-Flarsheim Co. v. Medrad.*, No. 06-1156, 2007 U.S. App. LEXIS 6607 at *19 (Fed. Cir. March 22, 2007).

Section 112 serves the important public purpose of insuring that inventors do not claim more than they actually invented. *See Tronzo v. Biomet, Inc.*, 156 F.3d 1154 (Fed. Cir. 1998). And it enforces the Supreme Court's directive that "nothing can be more just and fair, both to the patentee and the public, than that the former should understand, and

correctly describe, just what he has invented, and for what he claims a patent." *Merrill v. Yeomans*, 94 U.S. 568, 573-74 (1876); *see also Phillips v. AWH Corp*, 415 F.3d 1303, 1321 (Fed. Cir. 2005) ("The patent system is based on the proposition that the claims cover only the invented subject matter."); *AK Steel Corp. v. Sollac & Ugine*, 344 F.3d 1234, 1244 (Fed. Cir. 2003) ("as part of the quid pro quo of the patent bargain, the applicant's specification must enable one of ordinary skill in the art to practice the full scope of the claimed invention").

Whether a claimed invention is enabled is a question of law. *Amgen, Inc. v. Chugai Pharmaceutical Co., Ltd.*, 927 F.2d 1200, 1212 (Fed. Cir. 1991); *see also Liebel-Flarsheim*, 2007 U.S. App. LEXIS at *33 (affirming summary judgment of invalidity for lack of enablement); *Lizardtech*, 424 F.3d at 1427 (affirming summary judgment of invalidity for lack of enablement).

VI.   **ARGUMENT**

A.   **The '791 Patent Is Invalid Because It Fails to Fulfill the Enablement Requirement of 35 U.S.C. §112, ¶1**

In view of the unpredictable nature of the art, it is very clear that the disclosure of the '791 patent does not enable the manufacture of a gradually increasing core gradient at any hardness greater than 22; does not enable all cores with a core gradient of greater than 22; and does not teach one of ordinary skill in the art to make cores with any core gradients other than the fairly narrow range of 23-24 shown in the sparse examples of the patent.

Initially, the court will note that neither the summary of the invention nor the detailed description of the '791 patent contain a single sentence explaining what core gradients are, how they form, how they are created, or any other similar teaching regarding core gradients. The '791 patent does not disclose how to form a core gradient in general, what chemicals are important, or even how the cores of the present patent

9

differ from cores of the prior art. Golf balls with core gradients of more than 22 were known in the art before the 791 patent. (Ex. 12 - 1/16/07 Felker Report at 42 and patents cited there). Yet, the '791 patent contains no explanation whatsoever of how the cores made in the present invention are different in any way from prior art patents. There is simply nothing in the patent that explains how to form a core gradient, how to insure that the surface hardness is higher than the center, or how to insure that the hardness gradient is greater than 22 degrees. It seems apparent that Bridgestone did not possess (or at least did not disclose) a broad general understanding of the phenomenon of core gradients. Nor did they disclose the kind of detailed understanding or teaching to allow one to make golf balls with a broad range of core gradients in this highly unpredictable art.

Significantly, the specification of the '791 patent states that a gradually increasing hardness profile is "critical" for the invention. (Ex. 1 at Col. 3, ll. 26-30). Yet there is not a word, anywhere in the patent, as to how to form a core with a "gradually increasing" hardness profile. The patent wholly fails to teach this "critical" step in the carrying out of the invention. As the performance of this step is neither routine nor predictable, this failing alone is adequate to invalidate the patent. *See* Ex. 11 - *Liebel-Flarsheim*, 2007 U.S. App. LEXIS at *19, 20; *Lizardtech*, 424 F.3d at 1346-47; *Tronzo*, 156 F.3d at 1159.

Rather, instead of teaching one of ordinary skill in the art how to make the invention, the detailed description of the invention describes the process for making cores only in the broadest, most general terms. The '791 patent states that the core is made from 1,4 polybutadiene (or other rubbers) mixed with carboxylic acids and peroxides. (Ex. 1 at Col. 2, lines 27-32). However, it does not describe the brand, lot or grade of the rubber or any details of the core mixing process, all of which plaintiffs' experts concede are critical and necessary to determine the core gradient. (Ex. 9 - 3/15/07 Calabria Tr. at 69:4 - 69:9; 71:12 - 73:7; 264:2 - 271:6).

The detailed description of the specification states that any number of peroxides can be used as the catalyst. (Ex. 1 at Col. 2, ll. 42-49). However, the detailed description does not state the brands of the peroxides, or the grades that work and do not work, or specify how much to use to generate a particular core gradient, except to say that one should use between 0.1 and 5 parts by weight, preferably 2 parts by weight, of the peroxide. Once again, this is little more than an invitation to experiment, not an enablement of a specific invention relating to core gradients.

Similar short comings can be found in the listing of other ingredients in the core (*See e.g.*, *id.* at Col. 2, ll. 50-67). With respect to molding times and temperatures, the "detailed" description of the invention says the mold temperature can be between 150 and 190 degrees and the mold time can be between 12 and 20 minutes. (*Id.* at Col. 2, ll. 1-15). These are very broad, general ranges that would be typical of many prior art balls. (*See e.g.*, Ex. 13 - U.S. Patent No. 5,782,707, Col. 4, l. 13 (160 degrees for 20 minutes); Ex. 14 - U.S. Patent No. 5,743,817, Col. 4, l. 5 (130 to 170 degrees); and Ex. 15 - U.S. Patent No. 5,553,852, Col. 4, ll. 23-24 (155 degrees for 15 minutes)).

Further still, the '791 patent contains no disclosure whatsoever of many parameters that Bridgestone's experts admit are needed to determine the properties of the core gradient. For example, the '791 patent does not disclose the mold size, mold geometry, mold pressure, heat application technique, or mixing parameters. Bridgestone's experts admit that one skilled in the art needs to know all of these parameters to determine the core gradient. (Ex. 9 - 3/15/07 Calabria Tr. at 96-100). Mr. Calabria admitted that it was just as important to know these parameters in assessing the patents in suit as it is in evaluating the prior art:

> **Q:** I take it that your testimony about one skilled in the art and what they would need to know to understand the hardness profile, that the same factors that one skilled in the art would need to know to understand EP 043 would be true of any other patent that one skilled in the art reviewed?

11

> **A:** I think that's a fair statement.
>
> **Q:** Right. I mean, you're not keeping two sets of books for Bridgestone patents and for prior art patents, are you?
>
> **A:** No.
>
> *****************
>
> **Q:** [Y]our testimony about one skilled in the art would need to know to understand the [prior art] applies equally to the patents in suit in this case?
>
> **A:** Yes.

(Ex. 9 - 3/15/07 Calabria Tr. at 101-04).

Thus, it is beyond dispute that critical parameters needed to predict the hardness profile of the '791 patent are not disclosed in that patent. Thus, it is invalid. *See* Ex. 11 - *Liebel-Flarsheim*, at *19, 20; *Tronzo*, 156 F.3d at 1159.

While the patent does contain a few "examples" of cores made under the '791 patent, the examples do more to obscure than to enable the core gradient issue. First of all, the examples state that they were made "[t]o ascertain the flight characteristics and feel of golf balls," not to explicate the mechanisms of core gradient formation and control. (Ex. 1 at Col. 5, ll. 52-53).

The patent contains three example of the invention (Examples 1-3) all of which have a hardness gradient of 23 or 24 degrees. (Ex. 1 at Col 7, Table 3). The patent does not state whether these examples have a "gradually increasing" hardness profile, and no example of the invention exists that discloses or teaches this supposedly "critical" feature of the invention. Moreover, while the art is not predictable, there is noting in the patent that explains how to make core gradients at any gradient other than 23-24. The patent examples plainly do not support the entire range of "greater than 22" hardness gradient. Ex. 11 - *Liebel-Flarsheim*, 2007 U.S. App. LEXIS at *23; *see also AK Steel*, 344 F.3d at 1244.

12

Nor do the examples disclose any of the above molding parameters that the experts admit are critical to the invention. The examples only disclose the time and temperature of the molding. (Ex. 1 at Col. 3, ll. 10-15 ). However, these parameters alone are not sufficient to determine the hardness profile, as plaintiff admits:

> **Q:** If you know the ingredients in the core, the time that those ingredients spend in the mold, and the temperature at which the mold is heated, and that's all you know, that information is not adequate, in your opinion, for one skilled in the art to predict what the hardness profile of the core is going to look like --
>
> **A:** Yes.
>
> **Q:** -- is that correct?
>
> [Objection omitted]
>
> **A:** I think they need more information.

(Ex. 9, 3/15/07 Calabria Tr. at 91-92).

The patent nowhere explains how or why these examples work, or why other examples fail. It does not teach what factors are important in deriving the core gradient, or provide any information or direction to allow one skilled in the art to create core gradients other than in the specific examples of the patent. In particular, the patent does not anywhere explain why Examples 1-3 have the requisite core gradient while comparative examples 1-2, which differ only slightly in the ingredients used (Ex. 1 at Col. 6, Table 3) have a "flat" or too small hardness profile.

Far from enabling the full scope of the claims, the examples show only that the inventors made a few specific examples with the requisite gradient, and are trying to improperly extrapolate from these few examples to sweep in coverage over a broad class of golf balls they did not invent, including almost any multi-layer golf ball with a hardness gradient greater than 22. *See* Ex. 11 - *Liebel-Flarsheim*, 2007 U.S. App. LEXIS at *23. In doing so, not only do the applicants violate Section 112 of the patent, they also broaden the claim so far that they sweep in prior art and balls that were already on the

13

market, including the Pro V1 at issue in this case, which was on sale in the U.S. for months before the '791 patent was filed in the United States.

The content of the '791 patent is not in dispute, and Bridgestone admits the unpredictable nature of the art. The 791 patent is invalid as it does not enable the full scope of the claims. Therefore, summary judgment should be granted.

### B. Claims 13, 16, and 26 are Invalid for Lack of Enablement

Even if the court finds that the '791 patent is not invalid for the reasons stated above, at least asserted claims 13, 16 and 26 are invalid for lack of enablement if they are construed not to include the limitation "said elastic core has a hardness which gradually increases radially outward."

Independent claims 13 and 24 (from which claim 26 depends) state that the hardness at the core surface must be at least 22 points harder than at the center of the core; however, the claims do not specifically require the gradient to be "gradually increasing." Yet, every piece of intrinsic evidence leads to the unambiguous conclusion that a "gradually increasing" core profile is what the inventors claimed to have invented.

The specification of the '791 patent clearly teaches away from a core gradient that is not gradually increasing to the extent it states it is *critical* to have a core center to surface hardness that is gradually increasing. (See Ex. 1 at Col 3, ll. 26-29). Indeed, the specification clearly states that the performance of the invention depends on that fact. (*Id.* at Col. 4, ll. 1-8). The only figure in the '791 patent depicts a core that is described with a gradually increasing hardness and all discussions of the invention refer to a core with a gradually increasing hardness. (*See* Ex. 1 at Col. 2, ll. 6-9) *See also* Ex. 11 - *Liebel-Flarsheim*, 2007 U.S. App. LEXIS at *20.

There is *nothing* in the specification of the '791 patent that guides or teaches one of ordinary skill in the art how to make a core with a hardness profile that gradually decreases or remains consistent. *See id*, at *19, 20; *Tronzo*, 156 F.3d at 1159. In fact,

14

during the prosecution of the '791 patent, Bridgestone actually distinguished the Nakamura reference which had a hardness profile that gradually decreased from the center to the surface. (Ex. 6 - January 29, 2003 Amendment at 7).

This evidence is undisputed. Since the '791 patent specification teaches away from a core that does not have a gradually increasing hardness profile, and the prosecution history indicates that such a core was not what the inventors intended to claim at the time of filing, unless claims 13, 16 and 24 are construed to include the limitation, they are invalid under Section 112 as broader than the disclosed invention. *See* Ex. 11 - *Liebel-Flarsheim*, 2007 U.S. App. LEXIS at *23; *Lizardtech*, 424 F.3d at 1346-47.

Therefore, Acushnet is entitled to summary judgment of invalidity for claims 13, 16, and 26 because those claims are not enabled.

## VII. CONCLUSION

Therefore, for all of the foregoing reasons, Acushnet requests that its motion for summary judgment that the '791 patent is invalid because it fails to fulfill the enablement requirement of 35 U.S.C. §112, ¶1 be granted; or in the alternative, that claims 13, 16 and 26 are invalid as not enabled if the claims are construe not to include the limitation "said elastic core has a hardness which gradually increases radially outward."

POTTER ANDERSON & CORROON LLP

OF COUNSEL:

Alan M. Grimaldi
Joseph P. Lavelle
Kenneth W. Donnelly
Brian S. Seal
HOWREY LLP
1299 Pennsylvania Avenue, N.W.
Washington, DC 20004
Tel: (202) 783-0800

Dated: April 13, 2007
Public Version Dated: April 20, 2007
790683 / 28946

By: /s/ David E. Moore
Richard L. Horwitz (#2246)
David E. Moore (#3983)
Hercules Plaza, 6th Floor
1313 North Market Street
P. O. Box 951
Wilmington, DE 19899-0951
Tel: (302) 984-6000
rhorwitz@potteranderson.com
dmoore@potteranderson.com

*Attorneys for Defendant*
*Acushnet Company*

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

**CERTIFICATE OF SERVICE**

I, David E. Moore, hereby certify that on April 20, 2007, the attached document was hand delivered to the following persons and was electronically filed with the Clerk of the Court using CM/ECF which will send notification to the registered attorney(s) of record that the document has been filed and is available for viewing and downloading:

Jack B. Blumenfeld
Maryellen Noreika
Leslie A. Polizoti
Morris, Nichols, Arsht & Tunnell
1201 N. Market Street
Wilmington, DE 19801

I hereby certify that on April 20, 2007, I have Electronically Mailed the documents to the following:

Robert M. Masters
Paul, Hastings, Janofsky & Walker LLP
875 15th Street, N.W.
Washington, D.C. 20005
RobMasters@paulhastings.com

/s/ David E. Moore
Richard L. Horwitz
David E. Moore
Potter Anderson & Corroon LLP
Hercules Plaza – Sixth Floor
1313 North Market Street
P.O. Box 951
Wilmington, DE 19899-0951
(302) 984-6000
rhorwitz@potteranderson.com
dmoore@potteranderson.com

680012 / 28946