AMENDMENT UNDER 37 C.F.R. §1.116
EXPEDITED PROCEDURE
GROUP ART UNIT 1511

PATENT APPLICATION

IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

In re the Application of:

EGASHIRA et al

Application No: 07/521,618          Group Art Unit: 1511

Filed: May 10, 1990                 Examiner: Lee, Y.

For: SOLID GOLF BALL

RECEIVED
APR 2 0 1992
GROUP 150

AMENDMENT UNDER 37 C.F.R. §1.116

ATTN: BOX AF
Honorable Commissioner of
  Patents and Trademarks
Washington, D.C.  20231

Sir:

    This Amendment is in response to the Office Action dated
December 11, 1991, and is accompanied by a one-month Petition for
Extension of Time.

    Please amend the application as follows:


IN THE CLAIMS

    Claims 11, 12, 14, 15 and 17-20, line 1, after "The" insert
--solid--.


REMARKS

    Review and reconsideration on the merits are respectfully
requested.

    On page 2 of the Office Action, claims 1, 3-12, 14-15 and
17-20 stand rejected under 35 U.S.C. §103 as being unpatentable
over Tominaga or Isaac or Kakiuchi in view of Verbanc et al

U.S. APPLICATION NO. 07/521,618
AMENDMENT UNDER 37 C.F.R. §1.116

(Verbanc). For convenience, the Examiner's reasoning is set forth below.

Each of the above primary references discloses a composition for golf balls comprised of polybutadiene, an unsaturated carboxylic acid metal salt and an organic peroxide. See Issac (column 2, lines 41-49); Kakiuchi (abstract and Examples); Tominaga (Tables 1-3). The composition of the above primary references differs from the instant invention in that it lacks a sulfur compound as recited in the instant claims. Verbanc et al (column 1, lines 31 through column 2, line 13 and claim 1), however, teach that the processability of elastomers (e.g., polybutadiene) is improved when a zinc salt of an aromatic mercaptan of the benzene and naphthalene series is incorporated into said elastomers. Thus, it would have been obvious to one of ordinary skill in the art to incorporate the zinc salt of an aromatic mercaptan of the benzene and naphthalene series of the secondary reference into the composition of the primary references for the purpose of obtaining the advantages as set forth in the secondary reference.

This rejection is respectfully traversed. Tominaga or Isaac or Kakiuchi, alone or in combination with Verbanc, do not disclose or suggest the present invention.

As presented in the previous response filed October 8, 1991, Tominaga, Isaac and Kakiuchi do not teach or suggest a golf ball as recited in Applicants' claim 1.

Issac discloses a composition for making golf ball products which contain polybutadiene cross-linked by zinc diacrylate and the use of a free radical initiator. However, Isaac fails to disclose or suggest a sulfur compound as recited in Applicants' claim 1 as admitted by the Examiner. Further, there is no suggestion or

- 2 -

U.S. APPLICATION NO. 07/521,618
AMENDMENT UNDER 37 C.F.R. §1.116

incentive for one skilled in the art to use the teachings of Isaac
to prepare a solid golf ball comprising a sulfur compound taught by
the present invention.

Kakiuchi discloses a solid golf ball comprising a
polybutadiene, a cross-linking agent such as acrylic and
methacrylic acid, an inorganic filler and an organic peroxide.
However, Kakiuchi also does not disclose or suggest a sulfur
compound as recited in Applicants' claim 1 as admitted by the
Examiner.

Tominaga teaches a solid golf ball comprising polybutadiene,
metal salt of unsaturated carboxylic acid (e.g., zinc sulfur
acrylate acid) and dicumyl peroxide, in addition to a polysulfide
compound. However, Tominaga discloses restricting its composition
to certain sulfur compounds because it was found that "one group of
sulfide compounds has a very superior performance as an agent for
regulating the molecular weight of the grafted chain" (column 1,
lines 36-40). The working examples of Tominaga also support the
restriction to only certain sulfur agents. The sulfur agents
disclosed in Tominaga for regulating molecular weight are selected
from the group consisting of 2-(4-morpholinyldithio)benzothiazole,
4,4'-dithio-bis-dimorpholine, dipentamethylenethiuram tetrasulfide
and derivatives thereof (Summary of the Invention, column 1,
lines 43-50), which are distinguishable from the recitation of

- 3 -

U.S. APPLICATION NO. 07/521,618
AMENDMENT UNDER 37 C.F.R. §1.116

thiophenols and metal salts thereof and thiocarboxylic acids and metal salts thereof in Applicants' claim 1. Thus, Tominaga does not disclose or suggest a solid golf ball with the components as recited in Applicants' claim 1.

As previously presented, an essential aspect of the present invention is the incorporation of a specific sulfur compound as recited in Applicants' claim 1. None of the primary references, alone or in combination, disclose, suggest or appreciate this feature. In particular, one object of the present invention is to provide a golf ball having a further improved flying performance. When a thiophenol, thiocarboxylic acid or a metal salt thereof, as recited in Applicants' claim 1, is added to the rubber composition, the rubber composition can be vulcanized into a rubbery elastomer having _improved rebound resilience_. If a one-piece golf ball or a multi-layered golf ball core is formed from this rubber composition, the resulting solid golf ball exhibits an increased initial velocity upon hitting and improved flying performance.

Thus, the essence of the present invention is the sulfur compound as recited in claim 1, which none of the primary references teach or suggest. Given this, a _fortiori_ none of these references could have appreciated that beneficial results would be obtained upon use of such a sulfur compound.

- 4 -

U.S. APPLICATION NO. 07/521,618
AMENDMENT UNDER 37 C.F.R. §1.116

In addition, the secondary reference, Verbanc, does not disclose or suggest the present invention or supply the deficiencies of the primary references.

Verbanc discloses zinc salts of aromatic mercaptans as processing agents for elastomeric materials, particularly those of butadiene-styrene and natural rubber. However, Verbanc does not teach or suggest the particular group of sulfur compounds recited in Applicants' claim 1.

Furthermore, Verbanc does not disclose, suggest or appreciate inclusion of an unsaturated carboxylic acid metal salt in its material in contrast to the present invention.

Moreover, a combination of the primary references with Verbanc is not proper. Verbanc does not teach, suggest or appreciate the art of golf balls and, therefore, there is no motivation or suggestion to one of ordinary skill in the art to effect a combination of Verbanc's disclosure with that of the primary references. In addition, Verbanc does not teach or suggest an unsaturated carboxylic acid metal salt which is a component in the golf balls disclosed by the primary references. This compositional difference provides further support that there is no motivation or suggestion to one of ordinary skill in the art to effect such a combination. Finally, it is apparent that the Examiner has

- 5 -

U.S. APPLICATION NO. 07/521,618
AMENDMENT UNDER 37 C.F.R. §1.116

improperly relied on hindsight to select aspects of each of the references in order to reconstruct the present invention.

For the reasons discussed above, a case of *prima facie* obviousness has not been set forth. However, even if a case of *prima facie* obviousness could be alleged, the comparative experimentation in the present specification (see Tables 1 and 2 on pages 7-8), the data in the Declaration filed on April 12, 1991 (both of which were discussed in the response filed on October 8, 1991), as well as the data in the supplemental Declaration, concurrently filed herewith, illustrate the unexpectedly superior results achieved by the present invention, in particular with respect to improved initial velocity, rebound property, deflection under load and hardness.

In the experimentation, a golf ball prepared in accordance with the present invention achieved superior golf ball properties in comparison to a golf ball (which is representative of Verbanc) which contained a zinc salt of pentachlorothiophenol as a sulfur compound, but which lacked a zinc acrylate as an unsaturated carboxylic acid metal salt component, particularly with respect to rebound property. In addition, a golf ball (which is representative of Tominaga) which used 2-(4-morpholinyldithio)benzothiazole as the sulfur compound did not give rise to improved rebound

- 6 -

U.S. APPLICATION NO. 07/521,618
AMENDMENT UNDER 37 C.F.R. §1.116

properties and resulted in reduced hardness as compared to an example representative of the present invention.

Accordingly, withdrawal of the outstanding rejection under §103 is respectfully requested.

Applicant hereby petitions for any extension of time which may be required to maintain the pendency of this case, and any required fee for such extension is to be charged to Deposit Account No. 19-4880.

Respectfully submitted,

Mark Boland
Registration No. 32,197

SUGHRUE, MION, ZINN,
  MACPEAK & SEAS
2100 Pennsylvania Avenue, N.W.
Washington, D.C. 20037
(202) 293-7060

Date:  April 13, 1992

- 7 -

**BOX AF**

PATENT APPLICATION
RECEIVED

IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

APR 2 0 1992

In re the Application of:

EGASHIRA et al

GROUP 150

Application No: 07/521,618

Group Art Unit: 1511

Filed: May 10, 1990

Examiner: Lee, Y.

For: SOLID GOLF BALL

NOTICE OF APPEAL

Honorable Commissioner of
    Patents and Trademarks
Washington, D.C. 20231

Sir:

Applicants hereby appeal to the Board of Patent Appeals and Interferences from the final Office Action dated December 11, 1991, finally rejecting claims 1, 3-12, 14, 15 and 17-20.

A check for the statutory fee of $260.00 is attached. Please charge or credit any difference or overpayment to Deposit Account No. 19-4880. A duplicate copy of this sheet is enclosed.

Respectfully submitted,

Mark Boland
Registration No. 32,197

SUGHRUE, MION, ZINN,
    MACPEAK & SEAS
2100 Pennsylvania Avenue, N.W.
Washington, D.C. 20037-3202
(202) 293-7060

Date: April 13, 1992

060 MC 04/16/92 07521618          1 119      260.00 CK



**UNITED STATES DEPARTMENT OF COMMERCE**
**Patent and Trademark Office**
Address : COMMISSIONER OF PATENTS AND TRADEMARKS
Washington, D.C. 20231

| SERIAL NUMBER | FILING DATE | FIRST NAMED INVENTOR | | ATTORNEY DOCKET NO. |
|---|---|---|---|---|
| 07/521,618 | 05/10/90 | EGASHIRA | Y | Q23105 |

EXAMINER

MORGAN,K

SUGHRUE, MION, ZINN, MACPEAK & SEAS
2100 PENNSYLVANIA AVE., N. W.
WASHINGTON, DC 20037

| ART UNIT | PAPER NUMBER |
|---|---|
| 1511 | 14 |

DATE MAILED: 05/05/92

This is a communication from the examiner in charge of your application.
COMMISSIONER OF PATENTS AND TRADEMARKS

☒ This application has been examined    ☐ Responsive to communication filed on _____    ☐ This action is made final.

A shortened statutory period for response to this action is set to expire _____ 3 _____ month(s), _____ days from the date of this letter.
Failure to respond within the period for response will cause the application to become abandoned. 35 U.S.C. 133

**Part I** THE FOLLOWING ATTACHMENT(S) ARE PART OF THIS ACTION:

1. ☐ Notice of References Cited by Examiner, PTO-892.    2. ☐ Notice re Patent Drawing, PTO-948.
3. ☐ Notice of Art Cited by Applicant, PTO-1449.    4. ☐ Notice of Informal Patent Application, Form PTO-152.
5. ☐ Information on How to Effect Drawing Changes, PTO-1474.    6. ☐ _____

**Part II** SUMMARY OF ACTION

1. ☒ Claims _____ 1 and 3 - 12, 19 15 +17-20 _____ are pending in the application.

   Of the above, claims _____ are withdrawn from consideration.

2. ☒ Claims _____ 2 + 13 + 6 _____ have been cancelled.

3. ☐ Claims _____ are allowed.

4. ☒ Claims _____ 1, 3-12, 19, 15 + 17-20 _____ are rejected.

5. ☐ Claims _____ are objected to.

6. ☐ Claims _____ are subject to restriction or election requirement.

7. ☐ This application has been filed with informal drawings under 37 C.F.R. 1.85 which are acceptable for examination purposes.

8. ☐ Formal drawings are required in response to this Office action.

9. ☐ The corrected or substitute drawings have been received on _____. Under 37 C.F.R. 1.84 these drawings
   are ☐ acceptable.☐ not acceptable (see explanation or Notice re Patent Drawing, PTO-948).

10. ☐ The proposed additional or substitute sheet(s) of drawings, filed on _____ has (have) been ☐ approved by the
    examiner. ☐ disapproved by the examiner (see explanation).

11. ☐ The proposed drawing correction, filed on _____ has been ☐ approved. ☐ disapproved (see explanation).

12. ☐ Acknowledgment is made of the claim for priority under U.S.C. 119. The certified copy has ☐ been received ☐ not been received
    ☐ been filed in parent application, serial no. _____ ; filed on _____

13. ☐ Since this application appears to be in condition for allowance except for formal matters, prosecution as to the merits is closed in
    accordance with the practice under Ex parte Quayle, 1935 C.D. 11; 453 O.G. 213.

14. ☐ Other

**EXAMINER'S ACTION**

Serial No. 07/521,618                    -2-

Art Unit   1511


    The amendment filed 4/13/92 has been entered.

    The finality of the previous office action is withdrawn.


    The following is a quotation of 35 U.S.C. § 103 which forms the basis for all obviousness rejections set forth in this Office action:

> A patent may not be obtained though the invention is not identically disclosed or described as set forth in section 102 of this title, if the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains. Patentability shall not be negatived by the manner in which the invention was made.
>
> Subject matter developed by another person, which qualifies as prior art only under subsection (f) or (g) of section 102 of this title, shall not preclude patentability under this section where the subject matter and the claimed invention were, at the time the invention was made, owned by the same person or subject to an obligation of assignment to the same person.


    Claims 1, 3-12, 14-15 and 17-20 are rejected under 35 U.S.C. § 103 as being unpatentable over Tominaga, Issaac or Kakiuchi in view of Kaplan et al..

    Each of the above primary references discloses a composition for golf balls comprised of polybutadiene, an unsaturated carboxylic acid metal salt and an organic peroxide. See Isaac (column 2, lines 41-49); Kakiuchi (abstract and Examples); Tominaga (Tables 1-3). The composition of the above primary references

Serial No. 07/521,618                          -3-

Art Unit   1511


differs from the instant invention in that it lacks a sulfur
compound as recited in the instant claims.  Kaplan et al. (column
1, lines 14 through column 1, line 62 and claim 1), however, teach
that the processability of elastomers (e.g., polybutadiene) is
improved when a iron-free peptizer such as pentachlorothiophenol is
incorporated into said elastomers.  Thus, it would have been
obvious to one of ordinary skill in the art to incorporate the
iron-free peptizer of the secondary reference into the composition
of the primary references for the purpose of obtaining the
advantages as set forth in the secondary reference.


     The prior art made of record and not relied upon is considered
pertinent to applicant's disclosure.


KRIELLION S MORGAN
PRIMARY EXAMINER
ART UNIT 159B

KMorgan/mer
April 30, 1992
(703)308-2351

TO SEPARATE, HOLD TOP AND BOTTOM EDGES, SNAP--APART AND DISCARD CARBON

| FORM PTO-892 (REV. 3-78) | U.S. DEPARTMENT OF COMMERCE PATENT AND TRADEMARK OFFICE | SERIAL NO. 521618 | GROUP ART UNIT 1511 | ATTACHMENT TO PAPER NUMBER 14 |
|---|---|---|---|---|

NOTICE OF REFERENCES CITED

APPLICANT(S) *Egashira et al*

## U.S. PATENT DOCUMENTS

| * | | DOCUMENT NO. | DATE | NAME | CLASS | SUB-CLASS | FILING DATE IF APPROPRIATE |
|---|---|---|---|---|---|---|---|
| | A | 2378519 | 6/95 | Vincent | 529 | 392 | |
| | B | 2543895 | 3/51 | Fryling | 529 | 392 | |
| | C | 3175992 | 3/65 | Anderson, Jr | 524 | 392 | |
| | D | 3923719 | 12/75 | Gattuso | 529 | 392 | |
| | E | 4129538 | 12/78 | Kaplan et al | 529 | 392 | |
| | F | 4595721 | 6/86 | Devaux et al | 529 | 392 | |
| | G | 4775980 | 9/88 | Sturm et al | 529 | 392 | |
| | H | | | | | | |
| | I | | | | | | |
| | J | | | | | | |
| | K | | | | | | |

## FOREIGN PATENT DOCUMENTS

| * | | DOCUMENT NO. | DATE | COUNTRY | NAME | CLASS | SUB-CLASS | PERTINENT SHTS. DWG | PP. SPEC. |
|---|---|---|---|---|---|---|---|---|---|
| | L | | | | | | | | |
| | M | | | | | | | | |
| | N | | | | | | | | |
| | O | | | | | | | | |
| | P | | | | | | | | |
| | Q | | | | | | | | |

## OTHER REFERENCES (Including Author, Title, Date, Pertinent Pages, Etc.)

| | | |
|---|---|---|
| R | | |
| S | | |
| T | | |
| U | | |

| EXAMINER *Knellins S. Moya* | DATE 9/92 | |
|---|---|---|

* A copy of this reference is not being furnished with this office action.
(See Manual of Patent Examining Procedure, section 707.05 (a).)

IN THE U.S. PATENT AND TRADEMARK OFFICE

APPLICANT :        Yoshinori EGASHIRA et al          #15/gsm
                                                      109.22.92
SERIAL NO.:        07/521,618

FILED:             May 10, 1990

FOR:               SOLID GOLF BALL

GROUP:             1511                      RECEIVED GROUP 150

EXAMINER:          KRIELLIONS MORGAN         AUG 0 6 1992


D E C L A R A T I O N


Honorable Commissioner of Patents and Trademarks

Washington, D.C. 20231


Sir,

        I, Yoshinori EGASHIRA, a citizen of Japan

and a resident of No. 6 — 6, Musashidai 7 — chome,

Hidaka — machi, Iruma — gun, Saitama — ken, Japan

do hereby declare that:

        1.  I was graduated from Kurume College of

Technology, Japan in Marcdh, 1975.  Since April

1975, I have been employed by Bridegestone

Corporation, the assignee of the above —

identified application.  I have been engaged in

research and development in the field of golf

balls.


— 1 —

2.  I am one of the named inventors of the above-identified application and hence, am familiar with the subject matter disclosed in said application.

3.  In order to show the feature of the present invention, I conducted the following experiments.

[Experiment]

Rubber compositions were prepared by blending the ingredients shown in Table 1. Two-piece golf ball solid core having a diameter of 38.4 mm were prepared by molding the composition in a mold and vulcanizing at 155℃ for 20 minutes.

The balls were measured for hardness and rebound resilience.  The hardness of the balls was measured as deflection (in mm) under a load of 100 kg.  The initial velocity (in m/sec.) of the balls was measured by a hitting test according to the USGA standard in which the balls were hit at a head speed of 38 m/sec. using a hitting machine of the fly wheel type. The rebound property of the balls was measured as a distance of rebound by dropping the balls from a height of 120 cm.

The results are shown in Table 1.

— 2 —

Table 1

| Core composition | No. 1 | No. 2 | No. 3 |
|---|---|---|---|
| IR | 10 | 10 | 10 |
| BR | 90 | 90 | 90 |
| Zinc acrylate | 32 | 32 | — |
| Zinc oxide | 21 | 21 | 21 |
| Antioxidant | 0.2 | 0.2 | 0.2 |
| Dicumyl peroxide | 1.0 | — | 1.0 |
| Zinc salt of pentachlorothiophenol | 0.2 | 0.2 | 0.2 |
| Ball properties | | | |
| Hardness (JIS — C) | 76 | — | 12 |
| Deflection under a load of 100 kg (mm) | 3.05 | — | — |
| Rebound property | 101.7 | — | 86.5 |
| Initial velocity (m/sec) | 72.96 | — | — |

As is apparent from the results of Table 1, the core compositions containing no dicumyl peroxide or no zinc acrylate gives inferior ball properties. It should be noted that since the core composition No. 2 containing no dicumyl peroxide hardly cured, the ball properties could not be measured.

— 3 —

I hereby declare that all statements made herein of my own knowledge are true and that all statements made on information and belief are believed to be true; and further that these statements were made with the knowledge that willful false statements and the like so made are punishable by fine or imprisonment, or both, under Section 1001 of Title 18 of the United States Code and that such willful false statements may jeopardize the validity of the application or any patent issued thereon.

Dated this 24th day of July, 1992

*Yoshinori Egashira*

Yoshinori EGASHIRA

- 4 -



PATENT APPLICATION

IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

In re Application of:

EGASHIRA et al.

Application No.: 07/521,618          Group Art Unit: 1511

Filed: May 10, 1990                 Examiner: Morgan, K.

For: SOLID GOLF BALL

RECEIVED GROUP 150
AUG 0 6 1992

<u>RESPONSE</u>

Honorable Commissioner of
    Patents & Trademarks
Washington, DC 20231

    Sir:

        The following is responsive to the Office Action dated May 5,

1992, in the above-identified application.


<u>REMARKS</u>

    Review and reconsideration on the merits are respectfully

requested.

        On page 2 of the Office Action, 1, 3-12, 14, 15 and 17-20

stand rejected under 35 U.S.C. §103 as being unpatentable over

Tominaga, Isaac or Kakiuchi in view of Kaplan et al. (Kaplan).  For

convenience, the Examiner's reasoning is set forth below:

> Each of the above primary references discloses a
> composition for golf balls comprised of polybutadiene, an
> unsaturated carboxylic acid metal salt and an organic
> peroxide.  See Isaac (column 2, lines 41-49); Kakiuchi
> (Abstract and examples); Tominaga (Tables 1-3).  The
> composition of the above primary references differs from
> the instant invention in that it lacks a sulfur compound
> as recited in the instant claims.  Kaplan (column 1,
> lines 14 through column 1, line 62 and claim 1), however,
> teaches that the processability of elastomers (e.g.,
> polybutadiene) is improved when an iron-free peptizer

U.S. APPLICATION NO. 07/521,618
RESPONSE

such as pentachlorothiophenol is incorporated into said
elastomers.  Thus, it would have been obvious to one of
ordinary skill in the art to incorporate the iron-free
peptizer of the secondary reference into the composition
of the primary references for the purpose of obtaining
the advantages as set forth in the secondary reference.

This rejection is respectfully traversed.

An essential aspect of the golf ball of the present invention
is the incorporation of a specific sulfur compound as recited in
Applicants' claim 1.  In particular, one object of the present
invention is to provide a golf ball having a further improved
flying performance.  When a thiophenol, thiocarboxylic acid or a
metal salt thereof, as recited in Applicants' claim 1, is added to
the rubber composition, the rubber composition can be vulcanized
into a rubbery elastomer having improved rebound resilience.  If a
one-piece golf ball or a multi-layered golf ball core is formed
from this rubber composition, the resulting solid golf ball
exhibits an increased initial velocity upon hitting and improved
flying performance.

As previously presented and, as admitted by the Examiner, the
primary references fail to teach a golf ball composition comprising
a sulfur compound as recited in Applicants' claim 1.

Thus, the Examiner relies on Kaplan to supply the deficiencies
in the primary references.  Specifically, the Examiner refers to
column  1,   lines 14-62,   and  claim  1  for  a  teaching  of

- 2 -

U.S. APPLICATION NO. 07/521,618
RESPONSE

pentachlorothiophenol incorporated into an elastomer such as polybutadiene.

Kaplan discloses a peptizing composition, which effectively peptizes both natural rubber and synthetic butadiene-styrene rubber, comprising (1) a blend of a mixture of an iron-free peptizer and a zinc salt of mixed fatty acids, and (2) an iron phthalocyanine. Kaplan discloses that useful examples of the iron-free peptizer include pentachlorothiophenol and zinc pentachlorothiophenol.

However, Kaplan is not property combinable with the primary references. Kaplan does not teach, suggest or appreciate the art of golf balls. Thus, the skilled artisan would not look to Kaplan to improve or modify a golf ball composition.

In addition, Kaplan does not teach, suggest or appreciate the use of an organic peroxide in his composition. Because there are differences in the compositions of the primary references and the composition of Kaplan, there is no motivation or suggestion to one of ordinary skill in the art to effect such a combination.

Even if, arguendo, a combination of the references would be proper, Kaplan does not teach or suggest the present invention or supply the deficiencies in the disclosure of Tominaga, Isaac or Kakiuchi.

- 3 -

U.S. APPLICATION NO. 07/521,618
RESPONSE

Kaplan fails to disclose or suggest the art or technique of manufacturing golf balls. In this regard, the sulfur compound used in golf balls of the present invention serves to improve rebound resistance, to increase initial velocity upon hitting, and to improve flying performance for golf balls, but is not used for processability. Thus, Kaplan's disclosure which is unrelated to the art of golf balls does not teach or suggest a composition having the properties of the golf ball composition of the present invention or the advantages thereof. In particular, there is no suggestion to the skilled artisan to incorporate a sulfur compound into a golf ball composition to achieve the properties of the golf ball composition of the present invention because Kaplan only discloses an improvement in processability of elastomers by the use of an iron-free peptizer such as pentachlorothiophenol.

Furthermore, Kaplan's composition is distinguishable from the golf ball composition of the present invention. Among other distinctions, Kaplan does not teach or suggest an organic peroxide in his composition.

Also, Kaplan does not teach a composition having an unsaturated carboxylic acid metal component, much less a zinc or magnesium salt of an unsaturated fatty acid having 3 to 8 carbon atoms as recited in Applicants' claim 12, in a large amount, i.e. about 25 to about 40 parts by weight per 100 parts by weight of a

- 4 -

U.S. APPLICATION NO. 07/521,618
RESPONSE

base rubber as recited in Applicants' claim 1, or the advantages thereof.

In addition, Kaplan teaches a composition applied to natural rubber and butadiene-styrene rubber. However, Kaplan does not teach or suggest applying his composition to a rubber such as polybutadiene.

For the reasons discussed above, a case of *prima facie* obviousness has not been set forth. However, even if a case of *prima facie* obviousness could be alleged, the comparative experimentation in the present specification (see Tables 1 and 2 on pages 7-8), the data in the Declarations filed on April 12, 1991, and April 13, 1992, (each of which were discussed in the response filed on April 13, 1992), as well as the data in the supplemental Declaration, concurrently filed herewith, illustrate the unexpectedly superior results achieved by the present invention, in particular with respect to improved initial velocity, rebound property, deflection under load and hardness.

In the experimentation set forth in the supplemental Declaration concurrently filed, a golf ball was prepared in accordance with the present invention and compared to a golf ball prepared in accordance with Kaplan's composition. In preparing examples representative of Kaplan, iron phthalocyanine was sought

- 5 -

U.S. APPLICATION NO. 07/521,618
RESPONSE

to be included in the representative examples of Kaplan.  However,
the present inventors were not familiar with iron phthalocyanine
and only were aware of its existence because of the disclosure of
Kaplan, particularly because iron phthalocyanine has not been used
as a component of golf balls.  This material, however, was not
available and, thus, examples using iron phthalocyanine could not
be conducted as part of the experimentation.

The golf ball representative of the present invention (No. 1)
achieved superior golf ball properties such as hardness, deflection
under a load, rebound property and initial velocity in comparison
to the golf ball representative of Kaplan (No. 2) which lacked an
organic peroxide.  In fact, in the example representative of Kaplan
which lacked organic peroxide, the golf ball properties could not
be measured.

In addition, the golf ball composition (No. 3) which lacked
zinc acrylate gave rise to inferior golf ball properties in terms
of hardness and rebound property and deflection under load and
initial velocity could not be measured.  Thus, unexpectedly
superior results of the present invention have been demonstrated,
particularly in comparison to Kaplan's disclosure.

Accordingly, withdrawal of the outstanding rejection under
§103 is respectfully requested.

- 6 -

U.S. APPLICATION NO. 07/521,618
RESPONSE

All claims should now be in condition for allowance. Early indication of allowability is respectfully requested. Should any minor points remain prior to issuance of a Notice of Allowance, the Examiner is requested to telephone the undersigned at the below listed telephone number.

Respectfully submitted,

Doreen S. Lader
Registration No. 35,580

SUGHRUE, MION, ZINN,
  MACPEAK & SEAS
2100 Pennsylvania Ave., NW
Washington, DC 20037
(202) 293-7060

Dated:  August 5, 1992

- 7 -



**UNITED STATES DEPARTMENT OF COMMERCE**
**Patent and Trademark Office**
Address: COMMISSIONER OF PATENTS AND TRADEMARKS
Washington, D.C. 20231

| SERIAL NUMBER | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. |
|---|---|---|---|
| 07/521,618 | 05/10/90 | EGASHIRA | Y Q2310S |

*D.G.*

EXAMINER

MORGAN, K

| ART UNIT | PAPER NUMBER |
|---|---|
| 1511 | 17 |

SUGHRUE, MION, ZINN, MACPEAK & SEAS
2100 PENNSYLVANIA AVE., N. W.
WASHINGTON, DC 20037

DATE MAILED: 10/13/92

This is a communication from the examiner in charge of your application.
COMMISSIONER OF PATENTS AND TRADEMARKS

☒ This application has been examined   ☒ Responsive to communication filed on *8/5/92*   ☒ This action is made final.

A shortened statutory period for response to this action is set to expire *3* month(s), _____ days from the date of this letter.
Failure to respond within the period for response will cause the application to become abandoned. 35 U.S.C. 133

**Part I    THE FOLLOWING ATTACHMENT(S) ARE PART OF THIS ACTION:**

1. ☐ Notice of References Cited by Examiner, PTO-892.   2. ☐ Notice re Patent Drawing, PTO-948.
3. ☐ Notice of Art Cited by Applicant, PTO-1449.   4. ☐ Notice of Informal Patent Application, Form PTO-152.
5. ☐ Information on How to Effect Drawing Changes, PTO-1474.   6. ☐ _____

**Part II    SUMMARY OF ACTION**

1. ☒ Claims *1, 3-12, 14-15 and 17-20* are pending in the application.

Of the above, claims _____ are withdrawn from consideration.

2. ☐ Claims _____ have been cancelled.

3. ☐ Claims _____ are allowed.

4. ☒ Claims *1, 3-12, 14, 15 and 17-20* are rejected.

5. ☐ Claims _____ are objected to.

6. ☐ Claims _____ are subject to restriction or election requirement.

7. ☐ This application has been filed with informal drawings under 37 C.F.R. 1.85 which are acceptable for examination purposes.

8. ☐ Formal drawings are required in response to this Office action.

9. ☐ The corrected or substitute drawings have been received on _____. Under 37 C.F.R. 1.84 these drawings
are ☐ acceptable. ☐ not acceptable (see explanation or Notice re Patent Drawing, PTO-948).

10. ☐ The proposed additional or substitute sheet(s) of drawings, filed on _____ has (have) been ☐ approved by the
examiner. ☐ disapproved by the examiner (see explanation).

11. ☐ The proposed drawing correction, filed on _____ has been ☐ approved. ☐ disapproved (see explanation).

12. ☐ Acknowledgment is made of the claim for priority under U.S.C. 119. The certified copy has ☐ been received ☐ not been received
☐ been filed in parent application, serial no. _____; filed on _____.

13. ☐ Since this application appears to be in condition for allowance except for formal matters, prosecution as to the merits is closed in
accordance with the practice under Ex parte Quayle, 1935 C.D. 11; 453 O.G. 213.

14. ☐ Other

**EXAMINER'S ACTION**

Serial No. 521,618                        -2-

Art Unit   1511

    Claims 1, 3-12, 14-15 and 17-20 are rejected under 35 U.S.C.
§ 103 as being unpatentable over Tominaga, Issac or Kakiuchi in
view of Kaplan et al.

    Each of the above primary references discloses a composition
for golf balls comprised of polybutadiene, and unsaturated
carboxylic acid metal salt and an organic peroxide.  See Issac
(colum 2, lines 41-49); Kakiuchi (abstract and Examples); Tominaga
(Tables 1-3).  The composition of the above primary references
differs from the instant invention in that it lacks a sulfur
compound as recited in the instant claims.  Kaplan et al. (column
1, lines 14 through column 1, line 62 and claim 1), however, teach
that the processability of elastomers (e.g., polybutadiene) is
improved when a iron-free peptizer such as pentachlorothiophenol is
incorporated into said elastomers.  Thus, it would have been
obvious to one of ordinary skill in the art to incorporate the
iron-free peptizer of the secondary references into the composition
of the primary references for the purpose of obtaining the
advantages as set forth in the secondary reference.

    Applicant's arguments filed 8/5/92 have been fully considered
but they are not deemed to be persuasive.

    Given the benefit of all prior art relied upon, the ordinary
practitioner in the rubber art would have found clear incentive to
employ the pentachlorothiophenol peptizing agent of Kaplan et al.
into a styrene-butadiene rubber composition for the purpose of

Serial No. 521,618                                    -3-

Art Unit    1511

breaking down the rubber prior to its compounding or vulcanization.
The lowered resulting viscosity facilitates the compounding process
Hence the ordinary practitioner of this art would have found clear
incentive to subject the styrene/butadiene rubber to just such a
peptizing process prior to compounding with additional organic
peroxide and unsaturated carboxylic acid metal salt as taught by
the primary references.

Applicants comparative data as set forth at page 7 of the
specification has not been found to be persuasive in that it is not
representative of the closest prior art compositions as described
by the primary references of record. Patentees are specific to the
inclusion of sulfer-containing agents. Applicants comparative
examples omitt sulfer containing agents and are therefore not
representative of that which is considered conventional in the art.

THIS ACTION IS MADE FINAL.  Applicant is reminded of the
extension of time policy as set forth in 37 C.F.R. § 1.136(a).  The
practice of automatically extending the shortened statutory period
an additional month upon the filing of a timely first response to
a final rejection has been discontinued by the Office.  See 1021
TMOG 35.

A SHORTENED STATUTORY PERIOD FOR RESPONSE TO THIS FINAL ACTION
IS SET TO EXPIRE THREE MONTHS FROM THE DATE OF THIS ACTION.  IN THE
EVENT A FIRST RESPONSE IS FILED WITHIN TWO MONTHS OF THE MAILING
DATE OF THIS FINAL ACTION AND THE ADVISORY ACTION IS NOT MAILED
UNTIL AFTER THE END OF THE THREE-MONTH SHORTENED STATUTORY PERIOD,
THEN THE SHORTENED STATUTORY PERIOD WILL EXPIRE ON THE DATE THE
ADVISORY ACTION IS MAILED, AND ANY EXTENSION FEE PURSUANT TO 37
C.F.R. § 1.136(a) WILL BE CALCULATED FROM THE MAILING DATE OF THE

Serial No. 521,618                          -4-

Art Unit   1511


ADVISORY ACTION.  IN NO EVENT WILL THE STATUTORY PERIOD FOR
RESPONSE EXPIRE LATER THAN SIX MONTHS FROM THE DATE OF THIS FINAL
ACTION.


K. Morgan/jfb
October 8, 1992
703-308-4359

KRIELLION S MORGAN
PRIMARY EXAMINER
ART UNIT 159B



$360^{00} - 116$        GP/154

**PATENT APPLICATION**

IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

In re Application of:

EGASHIRA et al.                                                    #8/m
                                                                   4.2.93
Application No.: 07/521,618          Group Art Unit: 1511

Filed: May 10, 1990                  Examiner: Morgan, K.

For: SOLID GOLF BALL

PETITION FOR EXTENSION OF TIME
UNDER 37 C.F.R. §1.136 AND
<u>PAYMENT OF FEE UNDER 37 C.F.R. §1.17</u>   RECEIVED

Honorable Commissioner of                        MAR 3 0 1993
    Patents & Trademarks
Washington, DC 20031                             GROUP 150

Sir:

    Applicants hereby petition for an extension of time of two
months, extending the time to respond to the Office Action dated
October 13, 1992, to March 15, 1993 (March 13, 1993 being a
Saturday). A check for the appropriate fee of $360.00 is attached.

    Please charge any additional fees under 37 C.F.R. §1.16 or
§1.17 necessary to keep this application pending in the U.S.P.T.O.
or credit any overpayment to Deposit Account No. 19-4880. A
duplicate copy of this sheet is attached.

                              Respectfully submitted,

                              Doreen S. Lader
                              Registration No. 35,580

SUGHRUE, MION, ZINN,
    MACPEAK & SEAS
2100 Pennsylvania Ave., NW
Washington, DC 20037
(202) 293-7060                              .1 116     360.00 CK
          120 MP 03/29/93 07521618
Dated: March 12, 1993



AMENDMENT UNDER 37 C.F.R. §1.116
EXPEDITED PROCEDURES
EXAMINING GROUP ART UNIT 1511

PATENT APPLICATION

IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

In re Application of:

EGASHIRA et al.

Application No.: 07/521,618          Group Art Unit: 1511

Filed: May 10, 1990                   Examiner: Morgan, K.

For: SOLID GOLF BALL

AMENDMENT UNDER 37 C.F.R. §1.116    RECEIVED

                                    MAR 3 0 1993

ATTN: BOX AF                        GROUP 150
Honorable Commissioner of
   Patents & Trademarks
Washington, DC 20231

Sir:

   This Amendment is responsive to the Office Action dated
October 13, 1992. The period for response has been extended for
two months to March 15, 1993 (March 13, 1993 being a Saturday), by
a Petition for an Extension of Time Under 37 C.F.R. §1.136 and a
check for the appropriate fee under 37 C.F.R. §1.17 filed
concurrently herewith.

   Please amend the above-identified application as follows:

IN THE CLAIMS

   1.   (Thrice Amended)  A solid golf ball, having an improved
rebound property and initial velocity, comprising a rubber
composition containing 100 parts by weight of a base rubber
selected from the group consisting of polybutadiene rubber, natural



U.S. APPLICATION NO. 07/521,618
AMENDMENT UNDER 37 C.F.R. §1.116

rubber, polyisoprene rubber and styrene-butadiene rubber, about 25
to about 40 parts by weight of <u>a zinc or magnesium salt of</u> an
unsaturated [carboxylic] <u>fatty</u> acid <u>having 3 to 8 carbon atoms</u>
[metal salt], about 0.05 to about 2 parts by weight of a sulfur
compound    selected    from    the    group    consisting    of
<u>pentachlorothiophenol,    4-t-butyl-o-thiocresol,    4-t-butyl-p-</u>
<u>thiocresol, 2-benzamidothiophenol, thiobenzoic acid, and zinc</u>
[thiophenols and metal] salts thereof, [and thiocarboxylic acids
and metal salts thereof,] and about 0.5 to about 3 parts by weight
<u>of an organic peroxide.</u>

Please cancel claims 12, 14, 15 and 17, without prejudice or
disclaimer.

<u>REMARKS</u>

Review and reconsideration on the merits are respectfully
requested.

Claim 1 has been amended as shown to incorporate the subject
matter of claims 12, 14, 15 and 17, now cancelled, and,
specifically, the preamble has been amended as supported by the
disclosure in the specification, for example, at page 2,
lines 10-22.

No new matter has been added and the amendment clearly places
the claims in condition for allowance, or at a minimum, in better
condition for appeal by reducing the number of issues. Therefore,
entry is respectfully requested.

- 2 -

U.S. APPLICATION NO. 07/521,618
AMENDMENT UNDER 37 C.F.R. §1.116

On page 2 of the Office Action, claims 1, 3-12, 14, 15 and
17-20 stand rejected under 35 U.S.C. §103 as being unpatentable
over Tominaga et al. (Tominaga), Isaac or Kakiuchi et al.
(Kakiuchi) in view of Kaplan et al. (Kaplan).

Basically, the Examiner repeats her reasoning from the prior
Office Action dated May 5, 1992. In addition, the Examiner
provides specific comments addressing Applicants' arguments filed
August 5, 1992, which are discussed below.

This rejection is respectfully traversed.

As explained in previous responses, one essential aspect of
the golf ball of the present invention is the incorporation of a
specific sulfur compound in order to satisfy one of the objectives
of the present invention, namely, providing a golf ball having a
further improved flying performance. When a sulfur compound
selected from the group consisting of pentachlorothiophenol, 4-t-
butyl-o-thiocresol, 4-t-butyl-p-thiocresol, 2-benzamidothiophenol,
thiobenzoic acid and zinc salts thereof, as recited in Applicants'
claim 1 as amended, is added to the rubber composition, the rubber
composition can be vulcanized into a rubbery elastomer having
improved rebound resilience and a solid golf ball made therefrom
exhibits an increased initial velocity upon hitting and improved
flying performance.

- 3 -

U.S. APPLICATION NO. 07/521,618
AMENDMENT UNDER 37 C.F.R. §1.116

Applicants have previously made arguments distinguishing Tominaga, Isaac and Kakiuchi as primary references and rely on these arguments of record herein. In fact, the Examiner has repeatedly admitted that the primary references differ from the present invention because they fail to teach a golf ball composition comprising a sulfur compound as recited in Applicants' claim 1.

The Examiner then relies on Kaplan for a teaching of pentachlorothiophenol incorporated into an elastomer such as polybutadiene.

The Examiner asserts that, given the benefit of all prior art relied upon, the skilled artisan would have found clear incentive to employ the pentachlorothiophenol peptizing agent of Kaplan into a styrene-butadiene rubber composition for the purpose of breaking down the rubber prior to its compounding or vulcanization since the lowered resulting viscosity facilitates the compounding process. The Examiner further asserts that the skilled artisan would have found clear incentive to subject the styrene-butadiene rubber to just such a peptizing process prior to compounding with additional organic peroxide and unsaturated carboxylic acid metal salt, as taught by the primary references.

- 4 -

U.S. APPLICATION NO. 07/521,618
AMENDMENT UNDER 37 C.F.R. §1.116

However, Kaplan is not properly combinable with the primary references. Kaplan teaches an iron phthalocyanine compound in the peptizing composition along with zinc salts of mixtures of fatty acids having 14 to 20 carbon atoms in admixture with an iron-free peptizer, which can include pentachlorothiophenol. In addition, Kaplan does not teach, suggest or appreciate the use of an organic peroxide in his composition. On the other hand, the compositions of the primary references include organic peroxide and generally relate to fatty acid components having a low carbon number. Thus, the compositions of Kaplan is distinguishable from the respective compositions of the primary references, and the skilled artisan would not be motivated to look to Kaplan to improve or modify the primary references or vice versa.

Further, a combination of the primary references with Kaplan entails viewing Kaplan's teachings (as well as those of the primary references) as a whole, not just picking and choosing select disclosure. In fact, the selection of a sulfur compound/iron-free peptizer, much less a particular sulfur compound in accordance with the present invention, rather than an iron-free peptizer in combination with iron phthalocyanine, which is essentially the crux of Kaplan, for incorporation into the compositions of the primary references relies on hindsight and is improper.

- 5 -

U.S. APPLICATION NO. 07/521,618
AMENDMENT UNDER 37 C.F.R. §1.116

In addition, Kaplan fails to disclose or suggest the art or technique of manufacturing golf balls. In particular, Kaplan does not appreciate the use of a sulfur compound in golf balls to improve rebound resistance, to increase initial velocity upon hitting, and to improve flying performance for golf balls. Thus, there is no suggestion to the skilled artisan to incorporate a sulfur compound into a golf ball composition in general, much less a composition in accordance with the primary references, which either do not teach a sulfur component at all or, at the very least, a similar sulfur component, to achieve improved properties in a golf ball composition. Rather, Kaplan only discloses an improvement in processability of elastomers by the use of an iron-free peptizer such as pentachlorothiophenol.

Therefore, a combination of Kaplan with any or all of Isaac, Tominaga and Kakiuchi is improper.

Even if, *arguendo*, a combination of the references was proper, Kaplan does not teach or suggest the present invention or supply the deficiencies in the disclosure of Tominaga, Isaac or Kakiuchi.

Kaplan does not teach, suggest or appreciate the art of producing golf balls and, in particular, the role of sulfur in a golf ball composition to achieve the properties discussed above. Thus, Kaplan does not provide disclosure of a golf ball composition

- 6 -

U.S. APPLICATION NO. 07/521,618
AMENDMENT UNDER 37 C.F.R. §1.116

or a solid golf ball containing the same, in accordance with the present invention.

Further, Kaplan's composition is distinguishable from the golf ball composition of the present invention. Among other distinctions, Kaplan does not teach or suggest an organic peroxide in his composition.

Also, Kaplan does not teach a composition having a zinc or magnesium salt of an unsaturated fatty acid having 3 to 8 carbon atoms, much less the use of this component in a large amount, i.e. about 25 to about 40 parts by weight per 100 parts by weight of a base rubber as recited in Applicants' claim 1 as amended, or the advantages thereof. Rather, Kaplan teaches mixtures of unsaturated fatty acids having 14 to 20 carbon atoms.

In addition, Kaplan does not teach or suggest the use of a sulfur compound such as 4-t-butyl-o-thiocresol, 4-t-butyl-p-thiocresol, 2-benzamidothiophenol, thiobenzoic acid and zinc salts thereof.

Thus, a case of *prima facie* obviousness has not been established.

However, even if a case of *prima facie* obviousness could be alleged, the comparative experimentation of record, particularly the supplemental Declaration filed August 5, 1992, illustrates the

- 7 -

U.S. APPLICATION NO. 07/521,618
AMENDMENT UNDER 37 C.F.R. §1.116

unexpectedly superior properties of the solid golf ball of the present invention, in particular with respect to improved initial velocity, rebound property, deflection under load and hardness.

In the supplemental Declaration, the golf ball representative of the present invention (No. 1) achieved superior golf ball properties such as hardness, deflection under a load, rebound property and initial velocity in comparison to the golf ball representative of Kaplan (No. 2) which lacked an organic peroxide. In fact, in the example representative of Kaplan which lacked organic peroxide, the golf ball properties could not be measured.

In addition, the golf ball composition (No. 3) which lacked zinc acrylate gave rise to inferior golf ball properties in terms of hardness and rebound property and deflection under load and initial velocity could not be measured. Thus, the unexpectedly superior properties of solid golf ball of the present invention have been demonstrated, particularly in comparison to Kaplan's disclosure.

The Examiner asserts that Applicants' comparative data as set forth at page 7 of the specification has not been found to be persuasive and that it is not representative of the closest prior art composition as described by the primary references of record. The Examiner asserts that the prior art is specific as to the inclusion of sulfur-containing agents and that Applicants'

- 8 -

U.S. APPLICATION NO. 07/521,618
AMENDMENT UNDER 37 C.F.R. §1.116

comparative examples omit sulfur-containing agents and are, therefore, not representative of that which is considered conventional in the art.

Because it appears that the Examiner has only considered the comparative data as set forth in the specification, it is respectfully considered that the Examiner consider the most recent Declaration filed August 5, 1992, discussed above as well as in more detail in the Response also filed August 5, 1992, which provides comparative examples which include sulfur-containing agents.

Also, in view of the cumulative results of the previously submitted Declarations, Applicants have compared an example representative of Tominaga, having a sulfur-containing agent which is outside the scope of the present invention; examples representative of Isaac and Kakiuchi, which omit a sulfur-containing agent; and an example representative of Kaplan, which omits the use of an organic peroxide. Any assertion that a combination of the teachings of the references must be compared is incorrect and improper since only the closest prior art needs to be compared. To expect otherwise would be to expect a comparison of the present invention with the present invention.

- 9 -

U.S. APPLICATION NO. 07/521,618
AMENDMENT UNDER 37 C.F.R. §1.116

Therefore, assuming, *arguendo*, it was necessary to address a case of *prima facie* obviousness, the comparative experimentation, which is provided in the comparative examples of the present specification as well as the Declarations previously submitted, demonstrates a full comparison between the present invention and each of the references, both primary and secondary, cited by the Examiner and shows unexpectedly superior properties, in each instance, for the present invention.

Accordingly, withdrawal of the rejection under §103 is respectfully requested.

All claims should now be in condition for allowance. Early indication of allowability is respectfully requested. Should any minor points remain prior to issuance of a Notice of Allowance, the Examiner is requested to telephone the undersigned at the below listed telephone number.

Respectfully submitted,

Doreen S. Uader
Registration No. 35,580

SUGHRUE, MION, ZINN,
    MACPEAK & SEAS
2100 Pennsylvania Ave., NW
Washington, DC 20037
(202) 293-7060

Dated:  March 12, 1993

- 10 -

#270⁰⁰-119        GP| 1511

PATENT APPLICATION

IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

#20/100
4.2.93

In re Application of:

EGASHIRA et al.

Application No.: 07/521,618          Group Art Unit: 1511

Filed: May 10, 1990                  Examiner: Morgan, K.

For: SOLID GOLF BALL

<u>NOTICE OF APPEAL</u>

RECEIVED
MAR 3 0 1993
GROUP 150

Honorable Commissioner of
  Patents and Trademarks
Washington, D.C. 20231

Sir:

    Applicants hereby appeals to the Board of Patent Appeals and
Interferences from the final Office Action dated October 13, 1992,
finally rejecting claims 1, 3-12, 14, 15 and 17-20.

    A check for the statutory fee of $270.00 is attached.  Please
charge or credit any difference or overpayment to Deposit Account
No. 19-4880.  A duplicate copy of this sheet is enclosed.

                              Respectfully submitted,

                              Doreen S. Lader
                              Registration No. 35,580

SUGHRUE, MION, ZINN,
  MACPEAK & SEAS
2100 Pennsylvania Ave., NW
Washington, DC 20037
(202) 293-7060

Dated:  March 12, 1993

        120 WP 03/29/93 07521618          1 119    270.00 CK



UNITED STATES DEPARTMENT OF COMMERCE
Patent and Trademark Office
Address: COMMISSIONER OF PATENTS AND TRADEMARKS
Washington, D.C. 20231

| SERIAL NUMBER | FILING DATE | FIRST NAMED APPLICANT | ATTORNEY DOCKET NO. |
|---|---|---|---|
| 07/521,618 | 05/10/90 | EGASHIRA | Q23105 |

Y

EXAMINER

MORGAN,K

SUGHRUE, MION, ZINN, MACPEAK & SEAS 15M1
2100 PENNSYLVANIA AVE., N. W.
WASHINGTON, DC 20037

| ART UNIT | PAPER NUMBER |
|---|---|
| 1511 | #2) |

DATE MAILED:

04/09/93

## NOTICE OF ALLOWABILITY

PART I.
1. ☒ This communication is responsive to **applicant's communication filed 3/12/93**
2. ☒ All the claims being allowable, PROSECUTION ON THE MERITS IS (OR REMAINS) CLOSED in this application. If not included herewith (or previously mailed), a Notice Of Allowance And Issue Fee Due or other appropriate communication will be sent in due course.
3. ☒ The allowed claims are _1 and 3-20_
4. ☒ The drawings filed on _5/10/90_ _____ are acceptable.
5. ☒ Acknowledgment is made of the claim for priority under 35 U.S.C. 119. The certified copy has [☒] been received. [...] not been received. [...] been filed in patent application Serial No. _____, filed on _____
6. ☐ Note the attached Examiner's Amendment.
7. ☐ Note the attached Examiner Interview Summary Record, PTOL-413.
8. ☒ Note the attached Examiner's Statement of Reasons for Allowance.
9. ☐ Note the attached NOTICE OF REFERENCES CITED, PTO-892.
10. ☐ Note the attached INFORMATION DISCLOSURE CITATION, PTO-1449.

PART II.
A SHORTENED STATUTORY PERIOD FOR RESPONSE to comply with the requirements noted below is set to EXPIRE THREE MONTHS FROM THE "DATE MAILED" indicated on this form. Failure to timely comply will result in the ABANDONMENT of this application. Extensions of time may be obtained under the provisions of 37 CFR 1.136(a).

1. ☐ Note the attached EXAMINER'S AMENDMENT or NOTICE OF INFORMAL APPLICATION, PTO-152, which discloses that the oath or declaration is deficient. A SUBSTITUTE OATH OR DECLARATION IS REQUIRED.
2. ☐ APPLICANT MUST MAKE THE DRAWING CHANGES INDICATED BELOW IN THE MANNER SET FORTH ON THE REVERSE SIDE OF THIS PAPER.
   a. ☐ Drawing informalities are indicated on the NOTICE RE PATENT DRAWINGS, PTO-948, attached hereto or to Paper No. _____. CORRECTION IS REQUIRED.
   b. ☐ The proposed drawing correction filed on _____ has been approved by the examiner. CORRECTION IS REQUIRED.
   c. ☐ Approved drawing corrections are described by the examiner in the attached EXAMINER'S AMENDMENT. CORRECTION IS REQUIRED.
   d. ☐ Formal drawings are now REQUIRED.

Any response to this letter should include in the upper right hand corner, the following information from the NOTICE OF ALLOWANCE AND ISSUE FEE DUE: ISSUE BATCH NUMBER, DATE OF THE NOTICE OF ALLOWANCE, AND SERIAL NUMBER.

Attachments:
— Examiner's Amendment
— Examiner Interview Summary Record, PTOL-413
— Reasons for Allowance
— Notice of References Cited, PTO-892
— Information Disclosure Citation, PTO-1449

— Notice of Informal Application, PTO-152
— Notice re Patent Drawings, PTO-948
— Listing of Bonded Draftsmen
— Other

KRIELLION S MORGAN
PRIMARY EXAMINER
ART UNIT 159B

PTOL-37 (REV. 4-89) ✦                                                                 USCOMM-DC 89-3780

Serial Number: 07521618                              -2-
Art Unit: 1511

I.    The following is an Examiner's Statement of Reasons for
Allowance: Nothing in the prior art would suggest that
utilization of the sulfur-containing agents, such as the penta-
chlorothiophenol disclosed by Kaplan et al., in lieu of the
sulfur-containing molecular weight regulators of Tominaga et al.
would result in rubber golf balls having improved velocity upon
impact.

      Any comments considered necessary by applicant must be
submitted no later than the payment of the Issue Fee and, to
avoid processing delays, should preferably accompany the Issue
Fee.  Such submissions should be clearly labeled "Comments on
Statement of Reasons for Allowance."

                                    KRIELLION S MORGAN
                                    PRIMARY EXAMINER
                                    ART UNIT 159B



**UNITED STATES DEPARTMENT OF COMMERCE**
**Patent and Trademark Office**

Address: Box ISSUE FEE
COMMISSIONER OF PATENTS AND TRADEMARKS
Washington, D.C. 20231

SUGHRUE, MION, ZINN, MACPEAK & SEAS 15M1
2100 PENNSYLVANIA AVE., N. W.
WASHINGTON, DC 20037

**NOTICE OF ALLOWANCE**
**AND ISSUE FEE DUE**

☐ Note attached communication from the Examiner
☐ This notice is issued in view of applicant's communication filed _____

| SERIES CODE/SERIAL NO. | FILING DATE | TOTAL CLAIMS | EXAMINER AND GROUP ART UNIT | | DATE MAILED |
|---|---|---|---|---|---|
| 07/521,618 | 05/10/90 | 019 | MORGAN, K | 1511 | 04/09/93 |

| First Named Applicant | EGASHIRA, | | YOSHINORI | | |

TITLE OF
INVENTION SOLID GOLF BALL

| | ATTY'S DOCKET NO. | CLASS-SUBCLASS | BATCH NO. | APPLN. TYPE | SMALL ENTITY | FEE DUE | DATE DUE |
|---|---|---|---|---|---|---|---|
| 1 | Q23105 | 524-393.000 | M11 | UTILITY | NO | $1170.00 | 07/09/93 |

**THE FEE DUE IS THE AMOUNT IN EFFECT AT THIS TIME. IF THE AMOUNT OF THE ISSUE FEE INCREASES PRIOR TO PAYMENT, APPLICANT WILL BE NOTIFIED OF THE BALANCE OF ISSUE FEE DUE.**

**THE APPLICATION IDENTIFIED ABOVE HAS BEEN EXAMINED AND IS ALLOWED FOR ISSUANCE AS A PATENT.**

**PROSECUTION ON THE MERITS IS CLOSED.**

**THE ISSUE FEE MUST BE PAID WITHIN _THREE MONTHS_ FROM THE MAILING DATE OF THIS NOTICE OR THIS APPLICATION SHALL BE REGARDED AS ABANDONED. THIS STATUTORY PERIOD CANNOT BE EXTENDED.**

**HOW TO RESPOND TO THIS NOTICE:**
I.   Review the SMALL ENTITY Status shown above.
     If the SMALL ENTITY is shown as YES, verify your
     current SMALL ENTITY status:

     A. If the status is changed, pay twice the amount of the
        FEE DUE shown above and notify the Patent and
        Trademark Office of the change in status, or
     B. If the Status is the same, pay the FEE DUE shown
        above.

If the SMALL ENTITY is shown as NO:
A. Pay FEE DUE shown above, or
B. File verified statement of Small Entity Status before, or with,
   pay of 1/2 the FEE DUE shown above.

II.  Part B of this notice should be completed and returned to the Patent and Trademark Office (PTO) with your ISSUE FEE.
     Even if the ISSUE FEE has already been paid by charge to deposit account, Part B should be completed and returned.
     If you are charging the ISSUE FEE to your deposit account, Part C of this notice should also be completed and returned.

III. All communications regarding this application must give series code (or filing date) and serial number.
     Please direct all communications prior to issuance to Box ISSUE FEE unless advised to contrary.

*IMPORTANT REMINDER: Patents issuing on applications filed on or after Dec. 12, 1980 may require payment of maintenance fees. It is patentee's responsibility to ensure timely payment of maintenance fees when due.*

PTOL-85 (REV.7-92) (OMB Clearance is pending)     **PATENT AND TRADEMARK OFFICE COPY**





*PATENT APPLICATION*

IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

In re Application of:

EGASHIRA et. al.

Application No.: 07/521,618                   Allowed: April 9, 1993

Filed: May 10, 1990                            Batch No.: M11

For: SOLID GOLF BALL

AMENDMENT UNDER 37 C.F.R. §1.312

Honorable Commissioner of
 Patents & Trademarks
Washington, DC 20231

Sir:

    Pursuant to 37 C.F.R. §1.312, please amend the above-
identified application as follows:


IN THE CLAIMS

    2. (Amended)  The solid golf ball of claim 1, wherein said
solid golf ball [which] is a one-piece golf ball[, the ball being]
which is formed of said rubber composition.


    3. (Amended)  The solid golf ball of claim 1, wherein said
solid golf ball [which] is a multi-layered golf ball comprising a
core and a cover enclosing the core, and said core is [being]
formed of said rubber composition.


    4. (Amended)  The solid golf ball of claim 3, wherein said
solid golf ball [which] is a two-piece ball, and said [wherein the]
core is directly enclosed in the cover.

U.S. APPLICATION NO. 07/521,618
AMENDMENT UNDER 37 C.F.R. §1.312

5. (Amended) The solid golf ball of claim 3, wherein said solid golf ball [which] further comprises [includes] an intermediate layer [disposed] between the core and the cover.

### REMARKS

The amendments to claims 3-6 are editorial in nature and were made for clarification. No new matter has been added and the amendments do not raise new issues or require further search or consideration. Therefore, entry is respectfully requested.

In addition, Applicants note that the Notice of Allowance indicates a total of 19 claims are allowed, and the Notice of Allowability indicates that claims 1 and 3-20 are allowed. However, claims 2 and 12-17 were cancelled in previous Amendments. Accordingly, the Examiner is respectfully requested to correct the Notice of Allowance and Notice of Allowability to indicate that a total of 13 claims, i.e., claims 1, 3-11 and 18-20, are allowed.

Respectfully submitted,

Doreen S. Lader
Registration No. 35,580

SUGHRUE, MION, ZINN,
   MACPEAK & SEAS
2100 Pennsylvania Ave., NW
Washington, DC 20037
(202) 293-7060

Dated: April 13, 1993

- 2 -



**UNITED STATES DEPARTMENT OF COMMERCE**
**Patent and Trademark Office**
Address: COMMISSIONER OF PATENTS AND TRADEMARKS
Washington, D.C. 20231

| SERIAL NUMBER | FILING DATE | FIRST NAMED APPLICANT | ATTORNEY DOCKET NO. |
|---|---|---|---|
| 07/521,618 | 05/10/90 | EGASHIRA          Y | Q23105 |

MORGAN, K EXAMINER

SUGHRUE, MION, ZINN, MACPEAK & SEAS          15M1
2100 PENNSYLVANIA AVE., N. W.
WASHINGTON, DC 20037

| ART UNIT | PAPER NUMBER |
|---|---|
| 1511 | |

DATE MAILED:
05/21/93

A. ☐ The petition filed _____ under 37 CFR 1.312(b) is granted.
   The paper has been forwarded to the examiner for consideration on the merits.

B. ☒ The amendment filed ___4/13/93_____ under 37 CFR 1.312 has been considered, and has been:

   1. ☒ entered

   2. ☐ entered as directed to matters of form not affecting the scope of the invention (0.3311).

   3. ☐ disapproved. A report appears below.

   4. ☐ entered in part. A report appears below.

Report:

KRIELLION S MORGAN
PRIMARY EXAMINER
ART UNIT 159B



**UNITED STATES DEPARTMENT OF COMMERCE**
**Patent and Trademark Office**
Address: COMMISSIONER OF PATENTS AND TRADEMARKS
Washington, D.C. 20231

| SERIAL NUMBER | FILING DATE | FIRST NAMED APPLICANT | ATTORNEY DOCKET NO. |
|---|---|---|---|
| 07/521,618 | 05/10/90 | EGASHIRA | Y    Q23105 |

EXAMINER

MORGAN, K

| ART UNIT | PAPER NUMBER |
|---|---|
| 1511 | |

15M1

SUGHRUE, MION, ZINN, MACPEAK & SEAS
2100 PENNSYLVANIA AVE., N. W.
WASHINGTON, DC 20037

DATE MAILED:

05/21/93

*Supplemental*

## NOTICE OF ALLOWABILITY

**PART I.**

1. ☐ This communication is responsive to _____

2. ☒ All the claims being allowable, PROSECUTION ON THE MERITS IS (OR REMAINS) CLOSED in this application. If not included herewith (or previously mailed), a Notice Of Allowance And Issue Fee Due or other appropriate communication will be sent in due course.

3. ☒ The allowed claims are *1, 3-11 and 18-20*

4. ☒ The drawings filed on *5/10/90* are acceptable.

5. ☒ Acknowledgment is made of the claim for priority under 35 U.S.C. 119. The certified copy has ☒ been received. [...] not received. [...] been filed in parent application Serial No. _____, filed on _____.

6. ☐ Note the attached Examiner's Amendment.

7. ☐ Note the attached Examiner Interview Summary Record, PTOL-413.

8. ☐ Note the attached Examiner's Statement of Reasons for Allowance.

9. ☐ Note the attached NOTICE OF REFERENCES CITED, PTO-892.

10. ☐ Note the attached INFORMATION DISCLOSURE CITATION, PTO-1449.

**PART II.**

A SHORTENED STATUTORY PERIOD FOR RESPONSE to comply with the requirements noted below is set to EXPIRE THREE MONTHS FROM THE "DATE MAILED" indicated on this form. Failure to timely comply will result in the ABANDONMENT of this application. Extensions of time may be obtained under the provisions of 37 CFR 1.136(a).

1. ☐ Note the attached EXAMINER'S AMENDMENT or NOTICE OF INFORMAL APPLICATION, PTO-152, which discloses that the oath or declaration is deficient. A SUBSTITUTE OATH OR DECLARATION IS REQUIRED.

2. ☐ APPLICANT MUST MAKE THE DRAWING CHANGES INDICATED BELOW IN THE MANNER SET FORTH ON THE REVERSE SIDE OF THIS PAPER.

a. ☐ Drawing informalities are indicated on the NOTICE RE PATENT DRAWINGS, PTO-948, attached hereto or to Paper No. _____. CORRECTION IS REQUIRED.

b. ☐ The proposed drawing correction filed on _____ has been approved by the examiner. CORRECTION IS REQUIRED.

c. ☐ Approved drawing corrections are described by the examiner in the attached EXAMINER'S AMENDMENT. CORRECTION IS REQUIRED.

d. ☐ Formal drawings are now REQUIRED.

Any response to this letter should include in the upper right hand corner, the following information from the NOTICE OF ALLOWANCE AND ISSUE FEE DUE: ISSUE BATCH NUMBER, DATE OF THE NOTICE OF ALLOWANCE, AND SERIAL NUMBER.

**Attachments:**
— Examiner's Amendment
— Examiner Interview Summary Record, PTOL-413
— Reasons for Allowance
— Notice of References Cited, PTO-892
— Information Disclosure Citation, PTO-1449

— Notice of Informal Application, PTO-152
— Notice re Patent Drawings, PTO-948
— Listing of Bonded Draftsmen
— Other

KRIELLION S MORGAN
PRIMARY EXAMINER
ART UNIT 159B

PTOL-37 (REV. 4-89) *

USCOMM-DC 89-3789



**UNITED STATES DEPARTMENT OF COMMERCE**
Patent and Trademark Office

Address: Box ISSUE FEE
COMMISSIONER OF PATENTS AND TRADEMARKS
Washington, D.C. 20231

**\*\*CORRECTED COPY\*\***

```
                                    15M1
┌                                        ┐
  SUGHRUE, MION, ZINN, MACPEAK & SEAS
  2100 PENNSYLVANIA AVE., N. W.                    NOTICE OF ALLOWANCE
  WASHINGTON, DC 20037                              AND ISSUE FEE DUE
└                                        ┘
```

☐ Note attached communication from the Examiner
☐ This notice is issued in view of applicant's communication filed _____

| SERIES CODE/SERIAL NO. | FILING DATE | TOTAL CLAIMS | EXAMINER AND GROUP ART UNIT | | DATE MAILED |
|---|---|---|---|---|---|
| 07/521,618 | 05/10/90 | 013 | MORGAN, K | 1511 | 05/21/93 |

First Named Applicant **EGASHIRA,          YOSHINORI**

TITLE OF INVENTION **SOLID GOLF BALL**

| | ATTY'S DOCKET NO. | CLASS-SUBCLASS | BATCH NO. | APPLN. TYPE | SMALL ENTITY | FEE DUE | DATE DUE |
|---|---|---|---|---|---|---|---|
| 1 | Q23105 | 524-392.000 | M11 | UTILITY | NO | $1170.00 | 08/23/93 |

*THE FEE DUE IS THE AMOUNT IN EFFECT AT THIS TIME. IF THE AMOUNT OF THE ISSUE FEE INCREASES PRIOR TO PAYMENT, APPLICANT WILL BE NOTIFIED OF THE BALANCE OF ISSUE FEE DUE.*

**THE APPLICATION IDENTIFIED ABOVE HAS BEEN EXAMINED AND IS ALLOWED FOR ISSUANCE AS A PATENT.**

**PROSECUTION ON THE MERITS IS CLOSED.**

**THE ISSUE FEE MUST BE PAID WITHIN _THREE MONTHS_ FROM THE MAILING DATE OF THIS NOTICE OR THIS APPLICATION SHALL BE REGARDED AS ABANDONED. THIS STATUTORY PERIOD CANNOT BE EXTENDED.**

**HOW TO RESPOND TO THIS NOTICE:**

I. Review the SMALL ENTITY Status shown above.
   If the SMALL ENTITY is shown as YES, verify your current SMALL ENTITY status:

   A. If the status is changed, pay twice the amount of the FEE DUE shown above and notify the patent and Trademark Office of the change in status, or
   B. If the Status is the same, pay the FEE DUE shown above.

If the SMALL ENTITY is shown as NO:
   A. Pay FEE DUE shown above, or
   B. File verified statement of Small Entity Status before, or with, pay of 1/2 the FEE DUE shown above.

II. Part B of this notice should be completed and returned to the Patent and Trademark Office (PTO) with your ISSUE FEE.
    Even if the ISSUE FEE has already been paid by charge to deposit account, Part B should be completed and returned.
    If you are charging the ISSUE FEE to your deposit account, Part C of this notice should also be completed and returned.

III. All communications regarding this application must give series code (or filing date) and serial number.
    Please direct all communications prior to issuance to Box ISSUE FEE unless advised to contrary.

*IMPORTANT REMINDER: Patents issuing on applications filed on or after Dec. 12, 1980 may require payment of maintenance fees. It is patentee's responsibility to ensure timely payment of maintenance fees when due.*

PTOL-85 (REV.7-92) (OMB Clearance is pending)    PATENT AND TRADEMARK OFFICE COPY

717-0-142-B

## PART B—ISSUE FEE TRANSMITTAL

MAIL ROOM

**MAILING INSTRUCTIONS:** This form should be used for transmitting the ISSUE FEE. Blocks 1 through 6 should be completed where appropriate. All further correspondence including the Issue Fee Receipt, the Patent, advances orders and notification of maintenance fees will be mailed to addressee entered in Block 1 unless you direct otherwise, by: (a) specifying a new correspondence address in Block below; or (b) providing the PTO with a separate "FEE ADDRESS" for maintenance fee notifications with the payment of Issue Fee or thereafter. **See reverse for Certificate of Mailing.**

| 1. CORRESPONDENCE ADDRESS | 2. INVENTOR(S) ADDRESS CHANGE (Complete only if there is a change) |
|---|---|
| **CORRECTED COPY**  15M1 SUGHRUE, MION, ZINN, MACPEAK & SEAS 2100 PENNSYLVANIA AVE. N.W. WASHINGTON, DC 20037 | INVENTOR'S NAME Street Address City, State and ZIP Code CO-INVENTOR'S NAME Street Address City, State and ZIP Code ☐ Check if additional changes are on reverse side. |

| SERIES CODE/SERIAL NO. | FILING DATE | TOTAL CLAIMS | EXAMINER AND GROUP ART UNIT | | DATE MAILED |
|---|---|---|---|---|---|
| 07/521,618 | 05/10/90 | 013 | MORGAN, K | 1511 | 05/21/93 |

First Named Applicant   EGASHIRA                    YOSHINORI

TITLE OF INVENTION   SOLID GOLF BALL

| | ATTY'S DOCKET NO. | CLASS-SUBCLASS | BATCH NO. | APPLN. TYPE | SMALL ENTITY | FEE DUE | DATE DUE |
|---|---|---|---|---|---|---|---|
| 1 | 023105 | 524-392.000 | M11 | UTILITY | NO | $1170.00 | 08/23/93 |

| 3. Correspondence address change (Complete only if there is a change) | 4. For printing on the patent front page, list the names of not more than 3 registered patent attorneys or agents OR, alternatively, the name of a firm having as a member a registered attorney or agent. If no name is listed, none will be printed. | Sughrue, Mion, Zinn Macpeak & Seas 2. 3. |
|---|---|---|

**DO NOT USE THIS SPACE**

120 TL 07/15/93 07521618          142   1,170.00 CK

| 5. ASSIGNMENT DATA TO BE PRINTED ON THE PATENT (print or type) | A check for the Issue Fee payment is attached. Please charge any payment deficiency and credit any overpayment to PODA 19-4880. |
|---|---|
| (1) NAME OF ASSIGNEE:  Bridgestone Corporation (2) ADDRESS: (CITY & STATE OR COUNTRY) Tokyo, Japan (3) STATE OF INCORPORATION IF ASSIGNEE IS A CORPORATION: | (Minimum of 10) (Minimum of 10) |

A. ☐ This application is NOT assigned.
☐ Assignment is being previously submitted to the Patent and Trademark Office.
☐ Assignment is being submitted under separate cover. Assignments should be directed to Box ASSIGNMENTS.
**PLEASE NOTE:** Unless an assignee is identified in Block 5, no assignee data will appear on the patent. Inclusion of assignee data is only appropriate when an assignment has been previously submitted to the PTO or is being submitted under separate cover. Completion of this form is NOT a substitute for filing an assignment.

The COMMISSIONER OF PATENTS AND TRADEMARKS is requested to apply the Issue Fee to the application identified above.

(Signature) Mark Boland, Reg. No. 32,197   (Date) 7/9/93

NOTE: The Issue Fee will not be accepted from anyone other than the applicant; a registered attorney or agent; or the assignee or other party in interest as shown by the records of the Patent and Trademark Office.

**TRANSMIT THIS FORM WITH FEE—CERTIFICATE OF MAILING ON REVERSE**

PTOL-85B (REV.7-92) OMB Clearance is pending.



07/521618

PATENT APPLICATION SERIAL NO._____

U.S. DEPARTMENT OF COMMERCE
PATENT AND TRADEMARK OFFICE
FEE RECORD SHEET

P 30460  03/15/90  07521618        19-4880  030  101      370.00CH  0-23105

PTO-1556
(5/87)



FORM PTO-875
(REV 1-85)

U S DEPARTMENT OF COMMERCE
PATENT AND TRADEMARK OFFICE

**PATENT APPLICATION FEE DETERMINATION RECORD**

SERIAL NO. 521618

FILING DATE 5/10/90

APPLICANT (FIRST NAMED) EGASHIRA, Y, ETAL

## CLAIMS AS FILED · PART I

| FOR | NO FILED | NO EXTRA | SMALL ENTITY RATE | FEE | OR | OTHER THAN A SMALL ENTITY RATE | FEE |
|---|---|---|---|---|---|---|---|
| BASIC FEE | | | | $ 185 | OR | | $ 370 |
| TOTAL CLAIMS | 6 | -20- | x 6 | $ | OR | x 12 | $ |
| INDEP CLAIMS | 1 | 3- | x18 | $ | OR | x 36 | $ |
| MULTIPLE DEPENDENT CLAIM PRESENT | | | 60 | | OR | 120 | |
| | | | TOTAL | $ | OR | TOTAL | $ 376 |

* If the difference in col. 1 is less than zero, enter "0" in col 2

## CLAIMS AS AMENDED · PART II

| | | (1) CLAIMS REMAINING AFTER AMENDMENT | | (2) HIGHEST NO PREVIOUSLY PAID FOR | (3) PRESENT EXTRA | SMALL ENTITY RATE | ADDIT FEE | OR | OTHER THAN A SMALL ENTITY RATE | ADDIT FEE |
|---|---|---|---|---|---|---|---|---|---|---|
| **AMENDMENT A** | TOTAL | | | MINUS ** | | x 6 | $ | | x 12 | $ |
| | INDEP | | | MINUS *** | | x 18 | $ | | x 36 | $ |
| | FIRST PRESENTATION OF MULTIPLE DEP CLAIM | | | | | 60 | $ | | 120 | $ |
| | | | | | | TOTAL ADDIT. FEE | $ | OR | TOTAL | $ |

| | | CLAIMS REMAINING AFTER AMENDMENT | | HIGHEST NO PREVIOUSLY PAID FOR | PRESENT EXTRA | RATE | ADDIT FEE | OR | RATE | ADDIT FEE |
|---|---|---|---|---|---|---|---|---|---|---|
| **AMENDMENT B** | TOTAL | | | MINUS ** | | x 6 | $ | | x 12 | $ |
| | INDEP | | | MINUS *** | | x 18 | $ | | x 36 | $ |
| | FIRST PRESENTATION OF MULTIPLE DEP CLAIM | | | | | 60 | $ | | 120 | $ |
| | | | | | | TOTAL ADDIT. FEE | $ | OR | TOTAL | $ |

| | | CLAIMS REMAINING AFTER AMENDMENT | | HIGHEST NO PREVIOUSLY PAID FOR | PRESENT EXTRA | RATE | ADDIT FEE | OR | RATE | ADDIT FEE |
|---|---|---|---|---|---|---|---|---|---|---|
| **AMENDMENT C** | TOTAL | | | MINUS ** | | x 6 | $ | | x 12 | $ |
| | INDEP | | | MINUS *** | | x 18 | $ | | x 18 | $ |
| | FIRST PRESENTATION OF MULTIPLE DEP CLAIM | | | | | 60 | $ | | 60 | $ |
| | | | | | | TOTAL ADDIT. FEE | $ | OR | TOTAL | $ |

* If the entry in Col. 1 is less than the entry in Col 2, write "0" in Col 3
** If the ...

| PATENT APPLICATION FEE DETERMINATION RECORD | | | Application or Docket Number | |
|---|---|---|---|---|
| **For Fees Effective Nov. 5, 1990** | | | | |

| | CLAIMS AS FILED - PART I | | SMALL ENTITY | OR | OTHER THAN SMALL ENTITY |
|---|---|---|---|---|---|
| | (Column 1) | (Column 2) | | | |
| FOR | NUMBER FILED | NUMBER EXTRA | RATE | FEE | OR | RATE | FEE |

| FOR | NUMBER FILED | NUMBER EXTRA | RATE | FEE | | RATE | FEE |
|---|---|---|---|---|---|---|---|
| BASIC FEE | | | | $ 315.00 | OR | | $ 630.00 |
| TOTAL CLAIMS | minus 20 = | * | x $10= | | OR | x $20= | |
| INDEPENDENT CLAIMS | minus 3 = | * | x 30= | | OR | x 60= | |
| MULTIPLE DEPENDENT CLAIM PRESENT | | | + 100= | | OR | + 200= | |
| * If the difference in column 1 is less than zero, enter "0" in column 2 | | | TOTAL | | OR | TOTAL | |

| | | CLAIMS AS AMENDED - PART II | | | SMALL ENTITY | OR | OTHER THAN SMALL ENTITY |
|---|---|---|---|---|---|---|---|
| | | (Column 1) | (Column 2) | (Column 3) | | | |

**AMENDMENT A**

| | CLAIMS REMAINING AFTER AMENDMENT | | HIGHEST NUMBER PREVIOUSLY PAID FOR | PRESENT EXTRA | RATE | ADDITIONAL FEE | | RATE | ADDITIONAL FEE |
|---|---|---|---|---|---|---|---|---|---|
| Total | * 18 | Minus | ** 20 | = | x $10= | | OR | x $20= | |
| Independent | * 1 | Minus | *** 3 | = | x 30= | | OR | x 60= | |
| FIRST PRESENTATION OF MULTIPLE DEPENDENT CLAIM | | | | | + 100= | | OR | + 200= | |
| | | | | | TOTAL ADDIT. FEE | | OR | TOTAL ADDIT. FEE | |

**AMENDMENT B**

| | CLAIMS REMAINING AFTER AMENDMENT | | HIGHEST NUMBER PREVIOUSLY PAID FOR | PRESENT EXTRA | RATE | ADDITIONAL FEE | | RATE | ADDITIONAL FEE |
|---|---|---|---|---|---|---|---|---|---|
| Total | * | Minus | ** | = | x $10= | | OR | x $20= | |
| Independent | * | Minus | *** | = | x 30= | | OR | x 60= | |
| FIRST PRESENTATION OF MULTIPLE DEPENDENT CLAIM | | | | | + 100= | | OR | + 200= | |
| | | | | | TOTAL ADDIT. FEE | | OR | TOTAL ADDIT. FEE | |

**AMENDMENT C**

| | CLAIMS REMAINING AFTER AMENDMENT | | HIGHEST NUMBER PREVIOUSLY PAID FOR | PRESENT EXTRA | RATE | ADDITIONAL FEE | | RATE | ADDITIONAL FEE |
|---|---|---|---|---|---|---|---|---|---|
| Total | * | Minus | ** | = | x $10= | | OR | x $20= | |
| Independent | * | Minus | *** | = | x 30= | | OR | x 60= | |
| FIRST PRESENTATION OF MULTIPLE DEPENDENT CLAIM | | | | | + 100= | | OR | + 200= | |
| | | | | | TOTAL ADDIT. FEE | | OR | TOTAL ADDIT. FEE | |

* If the entry in column 1 is less than the entry in column 2, write "0" in column 3.
** If the "Highest Number Previously Paid For" IN THIS SPACE is less than 20, enter "20".
*** If the "Highest Number Previously Paid For" IN THIS SPACE is less than 3, enter "3".
The "Highest Number Previously Paid For" (Total or Independent) is the highest number found in the appropriate box in column 1.

PTO/SB/ 06  (11-90)    **For Fees Effective Nov. 5, 1990**    Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE

☆ U.S. GOVERNMENT PRINTING OFFICE 1990-278

**ORIGINAL CLASSIFICATION**

PATENT NUMBER

| CLASS | SUBCLASS |
|-------|----------|
| 527 | 392 |

APPLICATION SERIAL NUMBER
07/521,618

**CROSS REFERENCE(S)**

| CLASS | SUBCLASS (ONE SUBCLASS PER BLOCK) | | |
|-------|------|------|------|
| 527 | 284 | 382 | 908 |
| 273 | 218 | | |

APPLICANT'S NAME (PLEASE PRINT)

Egashira et al.

IF REISSUE, ORIGINAL PATENT NUMBER

**INTERNATIONAL CLASSIFICATION (INT. CL.)**

| | | |
|------|---|-----|
| C 08 K | 5 | 09 |
| C 08 K | 5 | 36 |
| A 63 B | 37 | 00 |

GROUP ART UNIT
1511

ASSISTANT EXAMINER (PLEASE STAMP OR PRINT FULL NAME)

PRIMARY EXAMINER (PLEASE STAMP OR PRINT FULL NAME)
Kriellion S. Morgan

U.S. DEPARTMENT OF COMMERCE
PATENT AND TRADEMARK OFFICE

**ISSUE CLASSIFICATION SLIP**

PTO-270
(10-94)

| Final | Original | Date | | | | | |
|-------|----------|------|---|---|---|---|---|
| | 1 | ✓ | = | | | | |
| 2 | 3 | ✓ | ✓ | = | | | |
| 3 | 4 | ✓ | = | | | | |
| 6 | 5 | ✓ | = | | | | |
| 6 | 6 | ✓ | = | | | | |
| 7 | 7 | ✓ | = | | | | |
| 8 | 8 | ✓ | = | | | | |
| 4 | 9 | ✓ | = | | | | |
| 9 | 10 | ✓ | = | | | | |
| | 11 | ✓ | = | | | | |
| | 12 | ✓ | | | | | |
| | 13 | ✓ | | | | | |
| | 14 | ✓ | | | | | |
| | 15 | ✓ | | | | | |
| | 16 | ✓ | | | | | |
| | 17 | ✓ | | | | | |
| | 18 | ✓ | = | | | | |
| | 19 | ✓ | = | | | | |
| | 20 | ✓ | = | | | | |
| | 21 | | | | | | |
| | 22 | | | | | | |
| | 23 | | | | | | |
| | 24 | | | | | | |
| | 25 | | | | | | |
| | 26 | | | | | | |
| | 27 | | | | | | |
| | 28 | | | | | | |
| | 29 | | | | | | |
| | 30 | | | | | | |
| | 31 | | | | | | |
| | 32 | | | | | | |
| | 33 | | | | | | |
| | 34 | | | | | | |
| | 35 | | | | | | |
| | 36 | | | | | | |
| | 37 | | | | | | |
| | 38 | | | | | | |
| | 39 | | | | | | |
| | 40 | | | | | | |
| | 41 | | | | | | |
| | 42 | | | | | | |
| | 43 | | | | | | |
| | 44 | | | | | | |
| | 45 | | | | | | |
| | 46 | | | | | | |
| | 47 | | | | | | |
| | 48 | | | | | | |
| | 49 | | | | | | |
| | 50 | | | | | | |

| Final | Original | Date | | | | | |
|-------|----------|------|---|---|---|---|---|
| | 51 | | | | | | |
| | 52 | | | | | | |
| | 53 | | | | | | |
| | 54 | | | | | | |
| | 55 | | | | | | |
| | 56 | | | | | | |
| | 57 | | | | | | |
| | 58 | | | | | | |
| | 59 | | | | | | |
| | 60 | | | | | | |
| | 61 | | | | | | |
| | 62 | | | | | | |
| | 63 | | | | | | |
| | 64 | | | | | | |
| | 65 | | | | | | |
| | 66 | | | | | | |
| | 67 | | | | | | |
| | 68 | | | | | | |
| | 69 | | | | | | |
| | 70 | | | | | | |
| | 71 | | | | | | |
| | 72 | | | | | | |
| | 73 | | | | | | |
| | 74 | | | | | | |
| | 75 | | | | | | |
| | 76 | | | | | | |
| | 77 | | | | | | |
| | 78 | | | | | | |
| | 79 | | | | | | |
| | 80 | | | | | | |
| | 81 | | | | | | |
| | 82 | | | | | | |
| | 83 | | | | | | |
| | 84 | | | | | | |
| | 85 | | | | | | |
| | 86 | | | | | | |
| | 87 | | | | | | |
| | 88 | | | | | | |
| | 89 | | | | | | |
| | 90 | | | | | | |
| | 91 | | | | | | |
| | 92 | | | | | | |
| | 93 | | | | | | |
| | 94 | | | | | | |
| | 95 | | | | | | |
| | 96 | | | | | | |
| | 97 | | | | | | |
| | 98 | | | | | | |
| | 99 | | | | | | |
| | 100 | | | | | | |

SYMBOLS
✓ ............... Rejected
– ............... Allowed
(Through numeral) Canceled
+ ............... Restricted
N ............... Non-elected
I ............... Interference
A ............... Appeal
O ............... Objected

## INDEX OF CLAIMS

| Claim Final | Original | Date | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| | 1 | √ | √ | = | | | | | |
| | 2 | | | | | | | | |
| | 3 | √ | √ | = | | | | | |
| | 4 | √ | √ | = | | | | | |
| | 5 | √ | √ | = | | | | | |
| | 6 | √ | √ | = | | | | | |
| | 7 | √ | | = | | | | | |
| | 8 | √ | | = | | | | | |
| | 9 | √ | | = | | | | | |
| | 10 | √ | | = | | | | | |
| | 11 | √ | | = | | | | | |
| | 12 | √ | | = | | | | | |
| | 13 | √ | | | | | | | |
| | 14 | √ | | | | | | | |
| | 15 | √ | | | | | | | |
| | 16 | | | | | | | | |
| | 17 | | | | | | | | |
| | 18 | √ | | = | | | | | |
| | 19 | √ | | = | | | | | |
| | 20 | √ | √ | = | | | | | |
| | 21 | | | | | | | | |
| | 22 | | | | | | | | |
| | 23 | | | | | | | | |
| | 24 | | | | | | | | |
| | 25 | | | | | | | | |
| | 26 | | | | | | | | |
| | 27 | | | | | | | | |
| | 28 | | | | | | | | |
| | 29 | | | | | | | | |
| | 30 | | | | | | | | |
| | 31 | | | | | | | | |
| | 32 | | | | | | | | |
| | 33 | | | | | | | | |
| | 34 | | | | | | | | |
| | 35 | | | | | | | | |
| | 36 | | | | | | | | |
| | 37 | | | | | | | | |
| | 38 | | | | | | | | |
| | 39 | | | | | | | | |
| | 40 | | | | | | | | |
| | 41 | | | | | | | | |
| | 42 | | | | | | | | |
| | 43 | | | | | | | | |
| | 44 | | | | | | | | |
| | 45 | | | | | | | | |
| | 46 | | | | | | | | |
| | 47 | | | | | | | | |
| | 48 | | | | | | | | |
| | 49 | | | | | | | | |
| | 50 | | | | | | | | |

| Claim Final | Original | Date | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| | 51 | | | | | | | | |
| | 52 | | | | | | | | |
| | 53 | | | | | | | | |
| | 54 | | | | | | | | |
| | 55 | | | | | | | | |
| | 56 | | | | | | | | |
| | 57 | | | | | | | | |
| | 58 | | | | | | | | |
| | 59 | | | | | | | | |
| | 60 | | | | | | | | |
| | 61 | | | | | | | | |
| | 62 | | | | | | | | |
| | 63 | | | | | | | | |
| | 64 | | | | | | | | |
| | 65 | | | | | | | | |
| | 66 | | | | | | | | |
| | 67 | | | | | | | | |
| | 68 | | | | | | | | |
| | 69 | | | | | | | | |
| | 70 | | | | | | | | |
| | 71 | | | | | | | | |
| | 72 | | | | | | | | |
| | 73 | | | | | | | | |
| | 74 | | | | | | | | |
| | 75 | | | | | | | | |
| | 76 | | | | | | | | |
| | 77 | | | | | | | | |
| | 78 | | | | | | | | |
| | 79 | | | | | | | | |
| | 80 | | | | | | | | |
| | 81 | | | | | | | | |
| | 82 | | | | | | | | |
| | 83 | | | | | | | | |
| | 84 | | | | | | | | |
| | 85 | | | | | | | | |
| | 86 | | | | | | | | |
| | 87 | | | | | | | | |
| | 88 | | | | | | | | |
| | 89 | | | | | | | | |
| | 90 | | | | | | | | |
| | 91 | | | | | | | | |
| | 92 | | | | | | | | |
| | 93 | | | | | | | | |
| | 94 | | | | | | | | |
| | 95 | | | | | | | | |
| | 96 | | | | | | | | |
| | 97 | | | | | | | | |
| | 98 | | | | | | | | |
| | 99 | | | | | | | | |
| | 100 | | | | | | | | |

SYMBOLS
√ ................Rejected
= ................Allowed
- (Through numeral) Cancelled
+ ................Restricted
N ................Non-elected
I ................Interference
A ................Appeal
O ................Objected

## SEARCHED

| Class | Sub. | Date | Exmr. |
|-------|------|------|-------|
| 524 | 908 | 6-17-91 | 4-leer |
| | 289 | 6-18-91 | 4-leer |
| | 382 | '' | '' |
| plus | | | |
| 521 | 392 | 9/92 | K.M |
| alone to Date | | 9/92 | K.M |

## SEARCH NOTES

| | Date | Exmr. |
|---|------|-------|
| None | | |

## INTERFERENCE SEARCHED

| Class | Sub. | Date | Exmr. |
|-------|------|------|-------|
| 524 | 289 382 392 908 | 9/93 | K.M. |

# EXHIBIT 17

LEXSEE 2006 U.S. DIST LEXIS 81687



Cited
As of: Apr 13, 2007

AUTO METER PRODUCTS, INC., Plaintiff, v. MAXIMA TECHNOLOGIES &
SYSTEMS, LLC, Defendant.

No. 05 C 4587

UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF
ILLINOIS, EASTERN DIVISION

*2006 U.S. Dist. LEXIS 81687*

**November 6, 2006, Decided**

**COUNSEL:** [*1]  For Auto Meter Products, Inc., an Illinois Corporation, Plaintiff: Philip T. Petti, Rudy I. Kratz, Fitch, Even, Tabin & Flannery, Chicago, IL.; Charles W. Saber, Dickstein Shapiro LLP, Washington, DC.; Merritt R. Blakeslee, deKieffer & Horgan, Washington, DC, US.; Steven M. War, Dickstein Shapiro L.L.P., Washington, DC, US.

For Maxima Technologies & Systems, LLC, a Delaware Limited Liability Company, Defendant: George C. Werner, Kendra D. McGuire, Barley Snyder LLC, Lancaster, PA, US.; Matthew Austin Griffin, Robert M. Newbury, Robert W. Sacoff, Sanjiv D. Sarwate, Pattishall, McAuliffe, Newbury, Hillard & Geraldson, Chicago, IL.; Salvatore Anastasi, Salvatore Anastasi, Attorney at Law, Berwyn, PA, US.

For Auto Meter Products, Inc., an Illinois Corporation, Counter Defendant: Charles W. Saber, Dickstein Shapiro LLP, Washington, DC.; Merritt R. Blakeslee, deKieffer & Horgan, Washington, DC, US.; Steven M. War, Dickstein Shapiro L.L.P., Washington, DC, US.

**JUDGES:** NAN R. NOLAN, United States Magistrate Judge.

**OPINION BY:** NAN R. NOLAN

**OPINION:**

### MEMORANDUM OPINION AND ORDER

Plaintiff Auto Meter Products, Inc. has filed suit against Defendant Maxima Technologies & Systems,

LLC alleging [*2]  trademark infringement and unfair competition under *15 U.S.C. §§ 1114* and *1125*, and under Illinois common law. Currently before the court is Auto Meter's motion to compel complete answers to Interrogatory Nos. 12, 13, and 15. For the reasons set forth below, the motion is granted in part and denied in part.

### BACKGROUND

Auto Meter develops, manufactures, and sells automotive measuring instruments, such as tachometers, speedometers, and gauges for measuring oil pressure, oil temperature, water temperature, vacuum, fuel pressure, and fuel levels. In connection with that business, Auto Meter owns the Super Bezel Trademark, Principal Registration No. 2,883,435 (the '435 Registration), and the "ULTRA-LITE" trademark, Principal Registration No. 1,967,655 (the '655 Registration). It also owns the trade dress for the "Monster Tachometer."

On May 16, 2003, Auto Meter filed a complaint with the International Trade Commission ("ITC") seeking to stop 19 respondents from importing and selling imitation tachometers and gauges that infringe Auto Meter trademarks. Maxima was not a respondent in that action, but was involved as a third party [*3]  and produced documents to the named respondents. In this lawsuit against Maxima, Auto Meter alleges that Maxima's "Stewart Warner Performance" series of tachometers, gauges, and speedometers infringes the '435 and '655 Registrations, and the Monster Tachometer Trade Dress.

Prior to the close of fact discovery, Auto Meter served Maxima with several contention interrogatories, including the following:

2006 U.S. Dist. LEXIS 81687, *

Interrogatory No. 12: State fully the basis, including all supporting facts, documents, exhibits, testimony and/or expert opinions, for Maxima's allegations in paragraphs 1-5 of its affirmative defenses that Auto Meter's Super Bezel Trademark, Associated Trade Dress, and Monster Tachometer Trade Dress are functional and that Auto Meter is not entitled to any trade dress protection; that Auto Meter's Super Bezel Trademark, Associated Trade Dress, and Monster Tachometer Trade Dress are not inherently distinctive and have not acquired secondary meaning; that the relief requested in Auto Meter's Complaint is barred by laches and that Auto Meter unreasonably delayed in filing suit; and that Maxima's use of the term "Ultra-Shift Light" constitutes a fair use.

Interrogatory [*4] No. 13: State fully the basis, including all supporting facts, documents, exhibits, testimony and/or expert opinions, for Maxima's allegation that its accused products do not infringe Auto Meter's trade dress and trademark rights asserted in this action.

Interrogatory No. 15: State fully the basis, including all supporting facts, documents, exhibits, testimony and/or expert opinions, for Maxima's counterclaim.

Maxima initially responded to these interrogatories on February 7, 2006, directing Auto Meter to its amended answer and stating that "other facts may be disclosed in the course of discovery." (Ex. 4 to Pl. Mem., at 9-11.) On June 30, 2006, Maxima submitted supplemental responses stating that "[d]iscovery is on-going and Maxima will supplement this response as discovery progresses." With respect to Interrogatory No. 15, Maxima further directed Auto Meter to "the documents produced in response to Auto Meter's document requests." (Ex. 5 to Pl. Mem., at 9-10.)

Maxima supplemented its discovery responses a second time on September 6, 2006, the original deadline for fact discovery. n1 Auto Meter found these responses inadequate and ultimately filed a motion to [*5] compel on September 29, 2006. On October 5, 2006, Auto Meter conducted a continued deposition of Maxima's President and CEO Oddie Leopando, who had been designated as the company's *Rule 30(b)(6)* witness and who was origi-

nally deposed on August 17, 2006. During the continued deposition, Auto Meter questioned Mr. Leopando about the September 6, 2006 supplemental responses. On October 17, 2006, Maxima supplemented its responses a third time, adding still new contentions in support of its defenses and counterclaim. (Ex. B to Def. Resp.) Auto Meter insists that Maxima should be barred from relying on "any contentions, factual bases, and documents not fully disclosed in its October 17 supplemental response, or in its August 17 and October 5 *Rule 30(b)(6)* depositions." Auto Meter also seeks to recover attorneys' fees and costs incurred in pursuing this motion to compel.

n1 On September 11, 2006, the court agreed to extend fact discovery to October 6, 2006. (Minute Order of 9/11/06, Doc. 51.)

### DISCUSSION

Contention [*6] interrogatories, such as those at issue here, basically "require the answering party to commit to a position and give factual specifics supporting its claims." *Ziemack v. Centel Corp., 1995 U.S. Dist. LEXIS 18192 at 5, No. 92 C 3551, 1995 WL 729295, at *2 (N.D. Ill. Dec. 7, 1995).* "When one party poses contention interrogatories after considerable discovery, and the opposing party refuses to answer the interrogatories, courts routinely compel the resisting party to answer the interrogatories." *Calobrace v. American Nat'l Can Co., No. 93 C 999, 1995 U.S. Dist. LEXIS 1371, at *3 (N.D. Ill. Feb. 3, 1995)* (citing *Rusty Jones, Inc. v. Beatrice Co., 1990 U.S. Dist. LEXIS 12116 at 2-3, No. 89 C 7381, 1990 WL 139145, at *2 (N.D. Ill. Sept. 14, 1990)).*

### A. Interrogatory Nos. 12 and 15

Interrogatory No. 12 seeks information regarding Maxima's affirmative defenses. Interrogatory No. 15 requests the facts and documents supporting Maxima's counterclaim, which seeks cancellation of Auto Meter's Super Bezel Trademark based on Maxima's affirmative defenses. Auto Meter argues that Maxima has engaged in a pattern of providing deficient answers to these interrogatories, and then serially supplementing those [*7] answers with new allegations and citations. For example, at his October 5, 2006 30(b)(6) deposition, Mr. Leopando purported to disclose all of the factual bases and evidence for Maxima's functionality defense. (Leopando Dep., at 517, 518-91.) In the October 17, 2006 supplemental response, however, Maxima newly asserted that it is additionally relying on "documents addressing functionality from the International Trade Commission proceeding." (Ex. B to Def. Resp., at 3.) According to Auto Meter, the ITC record consists of more than 75,000 pages, but Maxima has not identified

"a single one of the documents from that mountain of materials that it expects to rely upon for its functionality allegations." (Pl. Reply, at 6.)

Similarly, with respect to Maxima's defense that Auto Meter's trademarks/trade dress lack secondary meaning, Maxima produced at the October 5 deposition three old gauges made by the now defunct Sun Electric Company in the 1960s and 1970s. (Pl. Reply, at 6 n.7.) Mr. Leopando then testified that these were the only historical Sun products upon which Maxima intended to rely. (Ex. E to Def. Resp., at 598-609, 615.) In the October 17, 2006 supplemental response, however, Maxima [*8] referenced some 36 additional gauges listed in the expert report of a Mr. Behrens from the ITC case. (Ex. B. to Def. Resp., at 5; Pl. Reply, at 6.) Maxima also stated for the first time that "evidence concerning third-party gauges and tachometers can be found in the production of documents and gauges which Auto Meter inspected on September 26, 2006." (Ex. B to Def. Resp., at 5.) This production apparently comprises approximately 36 bankers boxes of old gauges, automotive magazines, brochures, and documents. Auto Meter claims that Maxima has not identified which materials from those boxes support its defenses or counterclaim. Auto Meter also objects that Maxima "continues to withhold its contentions . . . concerning the facts necessary to establish the relevance of those old gauges (or the other gauges it relies upon) to the use of 'secondary meaning,' e.g., the channels of trade into which they are sold, their market position and market segments, features relevant to consumers, their sales and market share, etc." (Pl. Reply, at 7.)

In addition, Maxima apparently raised an entirely new contention supporting its secondary meaning defense in the October 17 supplemental response;  [*9] namely, that Auto Meter's small percentage of sales to private label and original equipment customers ("OEM") eliminate the secondary meaning of the Super Bezel trademark. (Ex. B to Def. Resp., at 5.) Maxima claims that unspecified "licensed third-parties" to the Super Bezel mark and unspecified "documents produced by Auto Meter concerning OEM and private label sales and customers, artwork for OEM and private label dial faces" support this new assertion.

As for Maxima's laches defense, the company still has not produced documents Mr. Leopando mentioned at his deposition that purportedly show that Auto Meter received certain "strategic information" about Maxima's products during a Maxima plant tour. (Pl. Reply, at 8-9.) Nor has Maxima identified the individuals involved in that plant tour, or the Auto Meter personnel who allegedly spoke about the Maxima products during a trade show. (Id.)

At this late stage of the case, the court agrees that it is time for Maxima to fully and completely answer Auto Meter's interrogatories. Fact discovery is at an end, yet Maxima is still referencing new documents and materials supporting its defenses and counterclaim. As noted, contention interrogatories [*10]  "require the answering party to commit to a position and give factual specifics supporting its claims." Thomas & Betts Corp. v. Panduit Corp., 1996 U.S. Dist. LEXIS 4494 at 7, No. 93 C 4017, 1996 WL 169389, at *2 (N.D. Ill. Apr. 9, 1996). The Federal Rules, moreover, "are designed to promote liberal discovery in an effort to narrow the issues for trial and prevent unfair surprise." Wright v. Touhy, 2003 U.S. Dist. LEXIS 19167, No. 97 C 742, 2003 WL 22439864, at *4 (N.D. Ill. Oct. 28, 2003).

Maxima is ordered to identify (1) the specific ITC documents that support its functionality defense; (2) the specific gauges and documents from the September 26, 2006 inspection and the Behrens report that it intends to rely upon for its secondary meaning defense; (3) the facts supporting the relevance of these third-party gauges; (4) the documents Mr. Leopando mentioned at his deposition, and any other documents that purportedly show that (a) Auto Meter received certain "strategic information" about Maxima's products during a Maxima plant tour, and (b) Maxima suffered prejudice from Auto Meter's delay in pursuing its claims; (5) the Auto Meter personnel who participated in the Maxima plant tour and/or attended the trade [*11] show, and the specific statements they made which support Maxima's laches defense; and (6) the specific documents and data supporting Maxima's assertion that Auto Meter's small percentage of sales to private label and original equipment customers eliminate the secondary meaning of the Super Bezel trademark. Any facts or documents not so disclosed cannot be relied upon in this case.

Contrary to Maxima's assertion, none of this information constitutes protected work product. (Def. Resp., at 8.) Auto Meter is requesting the identification of facts, documents, individuals, statements, and products supporting Maxima's defenses and counterclaim, and not Maxima's legal theories or analyses. Responses to these requests will not, as Maxima suggests, provide Auto Meter with "a 'playbook' of how Maxima will present its defenses and counterclaim at trial." (Id. at 10-11.) See, e.g., Fridkin v. Minnesota Mut. Life Ins. Co., 1998 U.S. Dist. LEXIS 1017 at 13, No. 97 C 332, 1998 WL 42322, at *4 (N.D. Ill. Jan. 29, 1998) (work-product privilege did not protect defendant from producing documents, witnesses, and industry/company policy supporting its defense); Mead Corp. v. Riverwood Natural Resources, Corp., 145 F.R.D. 512, 517-18 (D. Minn. 1992) [*12] (rejecting alleged infringer's work-product immunity defense to answering interrogatories that sought "objec-

tive facts upon which defenses interposed were based and the identity of persons with knowledge of those facts.") Auto Meter's motion to compel the above information is granted.

## B. Interrogatory No. 13

Interrogatory No. 13 seeks information supporting Maxima's defense of non-infringement. In the October 17, 2006 supplemental response, Maxima states that it is relying on "the overall different look and impression of its products as compared to Auto Meter's; the prominent display of distinguishing brand names and the use of distinguishing packaging; [and] that there have been no instances of confusion." (Ex. B to Def. Resp., at 9.) Maxima refuses, however, to identify (1) how the Maxima products create a different look and impression, including identification of distinguishing features; (2) the distinguishing brand names, how they are displayed, and how their display supports Maxima's contention of non-infringement; and (3) the distinguishing packaging and how its use supports Maxima's contention of non-infringement. (Def. Resp., at 9.) Maxima argues that engaging [*13] in a detailed comparison of the parties' products and packages "would require Maxima to reveal its legal strategy and positions with regard to the entire case." (*Id.*) The court disagrees.

As with Interrogatory No. 12, Auto Meter seeks the facts upon which Maxima's non-infringement defense is based, and not any legal theory or analysis. Indeed, Maxima cannot prevail on its non-infringement defense in the absence of specific facts. *See, e.g., Homefront, Inc. v. Cashmere Crafts, Inc., 2005 U.S. Dist. LEXIS 40401 at 21, No. C 05-0597 PJH, 2005 WL 3369988, at *8 (N.D. Cal. Dec. 12, 2005)* ("[S]imply to assert that the accused products did not actually infringe Homefront's copyrights is far from providing facts that support a de-

fense of non-infringement.") The motion to compel is granted with respect to Interrogatory No. 13.

## C. Expert Opinions

In addition to the information discussed above, Interrogatory Nos. 12, 13, and 15 all seek expert opinions supporting Maxima's defenses and counterclaim. The court agrees with Maxima that these disclosures are properly addressed pursuant to the expert discovery schedule set by this court on September 11, 2006. (Minute Order of 9/11/06, Doc. 51.) This portion of [*14] Auto Meter's motion to compel is denied.

## D. Sanctions

In light of the above ruling, the court finds that Auto Meter has not been harmed by Maxima's delay in responding to the contention interrogatories and declines to award sanctions. *Commonwealth Ins. Co. v. Titan Tire Corp., 398 F.3d 879, 888 (7th Cir. 2004)* ("A district court enjoys broad discretion in declining to impose discovery sanctions and exclude evidence."); *Najieb v. Chrysler-Plymouth, 2002 U.S. Dist. LEXIS 24927 at 12 n.10, No. 01 C 8295, 2002 WL 31906466, at *3 n.10 (N.D. Ill. Dec. 31, 2002)* ("Th[e] Court has broad discretion to determine whether to issue discovery sanctions.")

## CONCLUSION

For the reasons stated above, Auto Meter's motion to compel [Doc. 54] is granted in part and denied in part. Maxima is ordered to provide Auto Meter with further answers to Interrogatory Nos. 12, 13, and 15 consistent with this opinion by November 30, 2006.

Dated: November 6, 2006

NAN R. NOLAN

United States Magistrate Judge