IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| BRIDGESTONE SPORTS CO., LTD., and BRIDGESTONE GOLF, INC., | ) ) ) | |
| Plaintiffs, | ) ) | C.A. No. 05-132 (JJF) |
| v. | ) ) | **REDACTED –** |
| ACUSHNET COMPANY, | ) ) | **PUBLIC VERSION** |
| Defendant. | ) ) ) | |

## BRIDGESTONE'S OPENING BRIEF IN SUPPORT OF
## ITS MOTION TO COMPEL PRODUCTION OF DOCUMENTS

MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Jack B. Blumenfeld (#1014)
Maryellen Noreika (#3208)
Leslie A. Polizoti (#4299)
1201 N. Market St.
P.O. Box 1347
Wilmington, DE 19801
(302) 658-9200
*Attorneys for Bridgestone Sports Co., Ltd.*
*and Bridgestone Golf, Inc.*

OF COUNSEL:

Robert M. Masters
Scott M. Flicker
Terrance J. Wikberg
Brandon M. White
PAUL, HASTINGS, JANOFSKY & WALKER LLP
875 15th St., N.W.
Washington, DC 20005
(202) 551-1700

Original Filing Date:  April 13, 2007
Redacted Filing Date:  April 23, 2007

TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ............................................................................... ii

NATURE AND STAGE OF THE PROCEEDINGS .................................................. 1

SUMMARY OF ARGUMENT ............................................................................ 1

STATEMENT OF FACTS ................................................................................. 4

    A.    Dr. Felker And The October 2000 Testing And Opinion Letter ............... 5

    B.    The Declaration of William Morgan ................................................ 6

    C.    Testing Documents That Dr. Felker Considered ............................... 7

ARGUMENT ................................................................................................. 7

    I.    APPLICABLE LAW ............................................................................ 7

        A.    Waiver of the Attorney-Client Privilege And Work Product Protection ................................................................................. 7

        B.    Acushnet Must Produce All Documents That Its Testifying Experts "Considered" In Forming Their Opinions ................................. 8

    II.    ACUSHNET WAIVED THE ATTORNEY-CLIENT PRIVILEGE AND WORK PRODUCT PROTECTION BY DISCLOSING THE 2000 OPINION LETTER TO ITS TESTIFYING EXPERT AND THEN PRODUCING IT ............................................................................... 9

    III.    ACUSHNET WAIVED THE ATTORNEY-CLIENT PRIVILEGE AND WORK PRODUCT PROTECTION BY RELYING ON THE PURPORTED EXPERT OPINION OF SEVERAL OF ITS EMPLOYEES ...... 11

        A.    William Morgan – Acushnet's Senior Vice President of Research & Development for Golf Balls ................................................... 11

        B.    Other Acushnet Employees Who Participated In Testing ................. 13

    IV.    ACUSHNET WAIVED THE ATTORNEY-CLIENT PRIVILEGE AND WORK PRODUCT PROTECTION BY DISCLOSING TESTING DATA TO ITS TESTIFYING EXPERT ........................................................... 13

        A.    Testing On The Pro V1x Golf Ball ............................................... 14

        B.    Testing On The Wilson Ultra Tour Balata Golf Ball ........................ 14

        C.    Testing On The JP '673 Golf Balls .............................................. 15

CONCLUSION .............................................................................................. 16

TABLE OF AUTHORITIES

CASES

Page

*CP Kelco U.S. Inc. v. Pharmacia Corp.*,
 213 F.R.D. 176 (D. Del. 2003) ..................................................................8

*Dyson Tech. Ltd. v. Maytag Corp.*,
 No. 05-434, 2007 WL. 656252 (D. Del. Mar. 6, 2007) ...............................9, 11

*Helman v. Murry's Steaks, Inc.*,
 728 F. Supp. 1099 (D. Del. 1990)...............................................................7

*In re Hechinger Investment Co. of Del.*,
 303 B.R. 18 (D. Del 2003)........................................................................8

*In re Martin Marietta Corp. v. U.S.*,
 856 F.2d 619 (4th Cir. 1988) ....................................................................8

*Smith v. Alyeska Pipeline Serv. Co.*,
 538 F. Supp. 977 (D. Del. 1982)................................................................7

*Synthes Spine Co. v. Walden*,
 232 F.R.D. 460 (E.D. Pa. 2005).................................................................8

*Vitalo v. Cabot Corp.*,
 212 F.R.D. 478 (E.D. Pa. 2002).................................................................8

*Westinghouse Elec. Corp. v. Repub. of the Philippines*,
 951 F.2d 1414, 1426 n.12 and 1430 (3d Cir. 1991)........................................7

STATUTES

FED. R. CIV. P. 26(a)(2)(A) ............................................................................ 2, 11

FED. R. CIV. P. 26(a)(2)(B) .............................................................................1, 2, 8

FED. R. CIV. P. 26(b)(3) .................................................................................8

## NATURE AND STAGE OF THE PROCEEDINGS

This is a patent infringement action brought by Plaintiffs Bridgestone Sports Co., Ltd. and Bridgestone Golf, Inc. (collectively, "Bridgestone") against Defendant Acushnet Company ("Acushnet") in March 2005. Fact discovery in this case closed on October 10, 2006, expert discovery ended on March 30, 2007, and trial is set to begin on June 18th.

Even though the deadlines for expert discovery have now come and gone, and despite the fact that trial is just a little over two months away, Acushnet still refuses to produce documents as to which it has recently waived the attorney-client privilege and work production protection, and documents considered or relied upon by its designated testifying experts. As a result, Acushnet has selectively disclosed documents as a sword to support its case, while simultaneously shielding itself from the fallout of the non-produced documents by continuing to claim privilege or assert the work product protection. This is fundamentally unfair.

This is Bridgestone's opening brief in support of its motion to compel production of these documents. Pursuant to D. Del. LR 7.1.1, counsel for Bridgestone certifies that they have made reasonable efforts to reach agreement on the subject matter of this motion.

## SUMMARY OF ARGUMENT

1.    Acushnet continues to ignore the mandatory disclosure requirements of Federal Rule of Civil Procedure Rule 26(a)(2)(B) and well-established precedent from this Court regarding waiver of the attorney-client privilege and work production protection with respect to documents that testifying experts consider in formulating their opinions. Rule 26(a)(2)(B) requires that testifying experts disclose the data and other information that they considered in formulating their opinions – even if they ultimately reject it, irrespective of an assertion of the attorney-client privilege or work product protection, and regardless of whether the expert or purported expert is an employee of the party on whose behalf he or she will testify.

2.      On the date that expert disclosures were due, Acushnet identified, by letter, eleven of its employees as testifying experts under Rule 26(a)(2)(A).  (Exh. A, 01/16/2007 Lavelle Ltr.).  Acushnet later confirmed that eight of these individuals may testify at trial as to "testing relied upon by Dr. Felker."[1]  (Exh. B, 02/22/2007 Seal Ltr., p. 2).  That testing was conducted by Acushnet engineers, and was fed through Acushnet's counsel to Dr. Felker.  It forms part of the basis of his invalidity and non-infringement opinions.

3.      Dr. Felker relies on the results of some of these tests in both his non-infringement and invalidity expert reports.  Bridgestone, however, has only received portions of these test results – i.e., those that Acushnet has decided it wants to rely upon.  Acushnet has not produced to Bridgestone the balance of the test results or protocols, the raw data produced in connection with the tests, the parameters for the testing, and numerous other relevant testing documents – notwithstanding that they are in its possession.

4.      On the date that rebuttal expert reports were due, Acushnet served the "declaration" of its employee William Morgan, who declares himself an "expert."  Mr. Morgan

███████████████████████████████████████████████

████████    Nonetheless, Acushnet refuses to produce the basis for this and other opinions offered by Mr. Morgan.

---

[1]      Bridgestone intends to move to preclude these individuals from testifying as experts because they did not submit expert reports in accordance with Rule 26(a)(2)(B).  Rule 26 expressly states that experts who may be used at trial must present a written report containing a complete statement of all opinions to be expressed and the basis and reasons therefor, including the data or other information considered by the expert in forming his or her opinions.

5.    Acushnet's purported employee experts, including Mr. Morgan and Dr. Felker, are subject to the mandatory disclosure requirements of Rule 26.  Acushnet must therefore produce all documents and communications that these individuals considered or relied upon in formulating their purported expert opinions, or are expected to testify about at trial,[2] including:  (1) testing performed in October 2000 in connection with an opinion ███████████ ████████████████████████████ that Dr. Felker considered ████████████████████████ ████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████ ████████████████████████████████████████ and (3) all testing data for the Pro V1x, Wilson Ultra Tour Balata and JP '673 Reference golf balls and any other testing that Dr. Felker considered and/or relied upon in forming his opinion that Acushnet does not infringe Bridgestone's patents or that they are invalid.

6.    Acushnet's refusal to produce these documents prejudices Bridgestone.  It is well-settled that use of selectively disclosed documents as a sword to support one's case, while simultaneously shielding oneself from the fallout of the non-produced documents by continuing to claim privilege or assert the work product protection, is fundamentally unfair.

---

[2]    Even if Acushnet decides not to call these individuals at trial, Bridgestone is nevertheless entitled to all documents that that they considered in formulating their purported expert opinions and/or are expected to testify about at trial.  Bridgestone must have these documents to adequately prepare for trial.

[3]    The Opinion Letter itself was produced to Bridgestone on March 2, 2007, just thirty minutes prior to Mr. Dalton's deposition.  However, none of the underlying documents for the Opinion or the documents within the scope of the waiver have been produced.

3

<u>STATEMENT OF FACTS</u>

Throughout fact discovery, Bridgestone sought discovery from Acushnet as to its non-infringement and invalidity defenses to the Bridgestone patents-in-suit. In each instance, Acushnet maintained both the attorney-client privilege and work-product protection.

At one point, Acushnet even sought relief from the Court so it did not have to elect whether to rely on the advice of counsel and waive privilege, and the Court agreed to bifurcate willfulness. Later, after Bridgestone moved to compel documents listed on Acushnet's privilege log, the Court held an *ex-parte* hearing with Acushnet on November 20, 2006, and, based on Acushnet's representations, upheld the assertions of privilege. (D.I. 244). ███████

████████████████████████████████████████████████

████████████████████████████

Then, on January 16, 2007, Acushnet produced the expert report of Dr. Felker relating to the alleged invalidity of Bridgestone's patents. Dr. Felker relied on substantial testing conducted internally within Acushnet by various Acushnet employees. Although the report sets forth the purported results of those tests, there is no explanation as to how those tests were performed, the protocol used, the conditions, the equipment used, and who performed them.

Also on January 16, 2007, Acushnet identified eleven employees "who may be used at trial to present evidence under Rules 702, 703, or 705 of the Federal Rules of Evidence[]," although none served a report as required by Rule 26. When asked about the propriety of not providing reports for them, Acushnet responded that these employees were not "retained or specially employed to provide expert testimony in the case" and that their duties do not "regularly involve giving expert testimony." That assertion is incorrect.

Since then, Bridgestone has learned through depositions that Acushnet employees conducted nearly all of the tests relied upon by Dr. Felker (and another expert – Dr. Koenig) and

provided the experts with the results of those tests. Some of the tests were conducted back in the 1990's, some around 2000, some more recently but prior to commencement of this case, and some in the past few months. Bridgestone has also learned that Acushnet has not produced all of the test results, but instead has selectively disclosed to its experts the results of tests it wants to rely upon, and has decided to hold back other results. Acushnet has fed all correspondence from Acushnet employees to its experts through counsel.[4]

Not only has Acushnet refused to produce all of its testing data that its designated experts considered, but has also refused to produce all documents for which Acushnet waived the attorney-client privilege and work product protection. Acushnet has ignored Bridgestone's April 5, 2007 request for a meet and confer on these issues. (Exh. D, 04/05/2007 White Ltr.).

### A.     Dr. Felker And The October 2000 Testing And Opinion Letter

Throughout fact discovery and even after rebuttal expert reports were served, Acushnet claimed privilege as to opinions of counsel and other test data related to the '707 Patent. Only after Bridgestone asked about the cores that were relied upon by Dr. Felker to support his opinion of invalidity ███████████████████████████████████████

████████████████████████████████████████████████████████████

███████████

---

[4]     Bridgestone, in contrast, retained an independent expert, Dr. Edward Caulfield – previously qualified in this Court as an expert – to conduct tests related to Bridgestone's allegations of infringement, and to prepare and render a report describing all of the tests he conducted, the protocols used, and the results. Bridgestone's expert on infringement, Larry Cadorniga, relied on Dr. Caulfield's report, among other information produced by Acushnet, in forming his opinions and preparing his expert report. Bridgestone has provided full disclosure of the tests its experts have considered and are relying upon.

On March 2, 2007, Acushnet produced the Opinion Letter for the first time (Exh. C), apparently attempting to support Dr. Felker's opinion (Exh. E, Felker Invalidity Expert Report; Exh. F, 02/13/2007 Stasio Ltr.). Aside from the Opinion Letter and the limited number of documents attached thereto, Acushnet has not produced any additional documents.

Bridgestone has asked Acushnet many times for documents relating to the Opinion Letter. (Exh. G, 02/07/2007 White Ltr.; Exh. H, 03/13/2007 White Ltr.; Exh. I, 03/19/2007 White Ltr.). Despite Dr. Felker's reliance on the testing disclosed in the Opinion Letter and its subsequent production, Acushnet maintains that it has not waived the attorney-client privilege or work production protection, and that, even if it did, it would not have many more documents to produce (with the exception of perhaps one or two). (Exh. I, 03/19/2007 White Ltr.).

There are a considerable number of documents on Acushnet's privilege log which appear to relate to the same subject matter as the Opinion Letter based simply on their description and the fact that they are dated in or around the time of the Opinion Letter. (Exh. J). Acushnet continues to withhold those documents.

B.    The Declaration of William Morgan

In his expert declaration served in rebuttal to Bridgestone's expert reports, Mr. Morgan offers opinions on various issues, including non-infringement of the '652 Patent. He says

6

C.    Testing Documents That Dr. Felker Considered

Acushnet is required to produce all golf ball testing documents that Dr. Felker considered or relied upon in forming his opinions on invalidity and non-infringement of the patents-in-suit.  Although Dr. Felker did not personally participate in this testing, he says he assisted in the design of the testing protocol.  He also considered, and selectively incorporated into his report, the actual results of these tests.  In addition, because Acushnet designated as "experts" its employees who apparently performed the testing, all testing-related documents are discoverable.

## ARGUMENT

I.    APPLICABLE LAW

A.    Waiver of the Attorney-Client Privilege And Work Product Protection

The general rule is subject matter waiver.  "Voluntary disclosure of privileged attorney-client communication constitutes waiver of the privilege as to all other such communications on the same subject." *Helman v. Murry's Steaks, Inc.*, 728 F. Supp. 1099, 1103 (D. Del. 1990) (citing *Smith v. Alyeska Pipeline Serv. Co.*, 538 F. Supp. 977, 982 (D. Del. 1982)).  Voluntary disclosure to an adversary of work product protected documents similarly results in a subject matter waiver as to non-opinion work product pertaining to the disclosed material. *Westinghouse Elec. Corp. v. Repub. of the Philippines*, 951 F.2d 1414, 1426 n.12 and 1430 (3d Cir. 1991) (recognizing subject matter waiver of work product protected materials disclosed to an adversary under a fairness theory); *In re Martin Marietta Corp. v. U.S.*, 856 F.2d

619, 625 (4th Cir. 1988) (same); *In re Hechinger Inv. Co. of Del.*, 303 B.R. 18, 26 (D. Del. 2003) (same).[5]

> B.   Acushnet Must Produce All Documents That Its Testifying
>        Experts "Considered" In Forming Their Opinions

Federal Rule of Civil Procedure 26(a)(2)(B) vitiates the attorney-client privilege and work production protection with respect to any information "considered" by a party's expert, whether or not ultimately relied upon. The Rule explicitly requires that experts provide a written report containing a complete statement of all opinions to be expressed and the basis and reasons therefore, which includes "the data and information considered by the witness in forming the opinions." FED. R. CIV. P. 26(a)(2)(B). The advisory committee notes to the 1993 Amendment of Rule 26(a)(2)(B) further explain (emphasis added):

> The report is to disclose the data and other information 'considered' by the expert and any exhibits or charts that summarize or support the expert's opinions. Given this obligation of disclosure, litigants should no longer be able to argue that materials furnished to their experts to be used in forming their opinions—whether or not ultimately relied upon by the expert— are privileged or otherwise protected from disclosure when such persons are testifying or being deposed.

It is manifestly unfair to allow a party to use the privilege to shield information which it has chosen to use offensively to arm its expert for testimony. *CP Kelco U.S. Inc. v. Pharmacia Corp.*, 213 F.R.D. 176, 179 (D. Del. 2003); *Synthes Spine Co. v. Walden*, 232 F.R.D. 460, 462-65 (E.D. Pa. 2005); *Vitalo v. Cabot Corp.*, 212 F.R.D. 478, 479 (E.D. Pa. 2002).

---

[5]   Work product is typically bifurcated into non-opinion and opinion (an attorney's pure mental impressions and legal strategy). *In re Martin Marietta*, 856 F.2d at 625-26; FED. R. CIV. P. 26(b)(3).

8

Rule 26's mandatory disclosure requirements apply to "employee" experts as well. In *Dyson Tech. Ltd. v. Maytag Corp.*, No. 05-434, 2007 WL 656252 (D. Del. Mar. 6, 2007), the issue was whether the defendant, by designating and employee of one of its subsidiaries as an expert, waived the attorney-client privilege and work product protection with respect to materials considered by the expert in forming his opinions. *Id.* at *1. Judge Sleet's answer was: "yes." *Id.* at *7.

II.    ACUSHNET WAIVED THE ATTORNEY-CLIENT PRIVILEGE AND WORK PRODUCT PROTECTION BY DISCLOSING THE 2000 OPINION LETTER TO ITS TESTIFYING EXPERT AND THEN PRODUCING IT

Dr. Felker opined in his January 16, 2007 invalidity expert report that the '707 Patent is invalid based on testing of a golf ball core performed by Acushnet engineers (Exh. E, Felker Invalidity Report, pp. 48-49), even though Acushnet had previously asserted privilege in response to discovery requests that called for this testing (including withholding some test data for which the Court later upheld Acushnet's assertion of privilege, *see* D.I. 255). Only when Bridgestone asked about this testing did Acushnet show the opinion of counsel describing it to Dr. Felker, and then produced that opinion to Bridgestone.

██████████████████████████████████████████████████████████

████████████████████████████    By voluntarily producing it, Acushnet waived the attorney-client privilege and work product protection as to the subject matter in it. Acushnet, however, refuses to produce other related documents.

Such documents exist. ███████████████████████████████

████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████



Acushnet then promised to investigate the matter further. (*Id.*). Bridgestone has received no response to date. Bridgestone asks that the Court order Acushnet to produce any documents listed on Acushnet's privilege log that relate to the Opinion letter.[6]

---

[6]     A list of entries from Acushnet's privilege log that appear to relate to the Opinion Letter are attached as Exhibit K.



III.   ACUSHNET WAIVED THE ATTORNEY-CLIENT PRIVILEGE
       AND WORK PRODUCT PROTECTION BY RELYING ON
       THE PURPORTED EXPERT OPINION OF SEVERAL OF ITS
       EMPLOYEES

Just like the defendant in *Dyson*, Acushnet wants to have its cake and eat it too. Acushnet designated eleven of its employees as experts under Rule 26(a)(2)(A), including Jeff Dalton and Dave Bulpett, and relies upon the purported expert opinion of William Morgan in a "declaration" that he submitted to rebut Bridgestone's expert reports. Yet, Acushnet refuses to disclose the documents and communications that these employees considered in forming their purported expert opinions. Such "sketchy and vague" expert disclosure is plainly inconsistent with Rule 26, as it would impermissibly enable Acushnet to ambush Bridgestone at trial with testimony that it had no opportunity to test. Bridgestone is entitled to all documents that Acushnet's experts considered in formulating their opinions and all documents related to the subject matter disclosed therein—not just those that counsel for Acushnet selectively gives them.

A.   William Morgan – Acushnet's Senior Vice President of
     Research & Development for Golf Balls

Mr. Morgan submitted a detailed "declaration" in response to the expert reports of Bridgestone's experts. (Exh. M, Morgan Decl.). In essence, this is an expert report – it was served on the same day that rebuttal expert reports were due and Mr. Morgan represents that he is an expert. Mr. Morgan states that he is "qualified to testify as an expert in golf balls and golf

ball technology, including the innovations in the golf balls over the past 25 years." (*Id.* at p. 2).

He says that:



B.    Other Acushnet Employees Who Participated In Testing

As discussed in further detail in Section IV, Dr. Felker relies on testing results performed by Acushnet engineers to support his non-infringement and invalidity arguments. Acushnet employees Jeff Dalton and Dave Bulpett appear to have participated most in this testing, and were also designated as employee experts.[7]  Acushnet indicated that the substantive areas on which both Messrs. Dalton and Bulpett may testify include the very testing upon which Dr. Felker relies.  (Exh. B, 02/22/2007 Seal Ltr., p. 2).  Under Rule 26, Acushnet must thus produce all documents and communications that Mr. Dalton and Mr. Bulpett were privy to with respect to this testing.

IV.    ACUSHNET WAIVED THE ATTORNEY-CLIENT PRIVILEGE AND WORK PRODUCT PROTECTION BY DISCLOSING TESTING DATA TO ITS TESTIFYING EXPERT

Rule 26's mandatory disclosure requirements also apply to all testing-related data that Dr. Felker, Acushnet's testifying expert, considered in forming his opinions, regardless of whether he ultimately rejected it in reaching those opinions.  At Dr. Felker's direction, Acushnet engineers tested the Pro V1x golf ball to support Acushnet's non-infringement position, and tested the Wilson Ultra Tour Balata and JP '673 Reference golf balls to support its invalidity

---

[7]    Gerald Bellis, another Acushnet employee, purports to be an expert "qualified to testify as an expert in the golf ball marketplace, the innovations in the golf ball marketplace, and the real world acceptance and use of golf ball products among professional golfers, skilled amateurs, and novice golfers." (Exh. O, Bellis Decl., p. 2).  To the extent that he participated in golf ball testing upon which Dr. Felker relies, or he otherwise communicated any attorney-client privileged or work product protected information to Dr. Felker or any other testifying expert, all documents and communications relating to that information must be produced.

defenses. Acushnet must produce all of its test results and other documents that Dr. Felker and the employees that Acushnet represents to be experts considered.

### A.    Testing On The Pro V1x Golf Ball

In his rebuttal expert report on non-infringement, Dr. Felker says that the Pro V1x golf ball does not infringe because of purported differences in the hardness gradients in Bridgestone's '791 Patent and the Pro V1x golf balls. (Exh. P, Felker Non-Infringement Report, pp. 128-30). Dr. Felker bases his opinion on the results of testing – performed under his "direction and control" – purportedly conducted by Acushnet engineers on the ProV1x-332 golf ball. (*Id.* at p. 128). Acushnet has not produced all of the test results, even though Mr. Dalton confirmed that they exist and are in his possession. (Exh. Q, Dalton Depo., 265:6-267:17). Under Rule 26, Acushnet must produce the underlying raw data for the tests and any other documents which at all relate to hardness gradient testing of any of the accused balls, including but not limited to the Pro V1x golf balls.

### B.    Testing On The Wilson Ultra Tour Balata Golf Ball

Acushnet contends that the Wilson Ultra Tour Balata golf ball is the commercial embodiment of the asserted prior art Proudfit '187 Patent, and thus invalidates Bridgestone's '852 Patent. To support its contention, Acushnet performed testing on the Wilson Ultra Tour Balata ball, including hardness and specific gravity measurements. (Exh. Q, Dalton Depo., 152:16-153:1, 159:17-160:16) (confirming making these measurements).

Dr. Felker considered the results of these tests in forming his expert opinion on invalidity. For example, he states: "Following my direction, engineers measured the specific gravity of the core and intermediate layer of the. . .UTB 90 golf ball. . .in accordance with a protocol that I designed…." (Exh. E, Felker Invalidity Report, p. 19). Indeed, he includes many

14

of the test results in Exhibit 13 to his invalidity report, and discusses some of them in greater detail in the actual text of the report.[8]  (*Id*. at pp. 19-20; Exh. E1, Exhibit 13 to Felker Invalidity Report).

Under Rule 26, Acushnet must produce all prior art test results relating to the Wilson Ultra Tour Balata ball, and all documents that relate to such testing, including the test protocol (Exh. Q, Dalton Depo., 145:6-146:1),[9] parameters for the testing (*id*. at 160:4-161:4), and raw data from the testing (*e.g.*, for the hardness and specific gravity measurements) (*id*. at 146:14-147:7, 152:16-153:1, 159:17-160:16).

C.    Testing On The JP '673 Golf Balls

Acushnet claims that Bridgestone's '817 Patent is invalid as anticipated by Bridgestone's own Japanese Kokai Publication No. 60-163673 ("JP '673").  (Exh. E, Felker Invalidity Report, pp. 26-36).  Specifically, Dr. Felker asserts that the JP '673 expressly discloses core distortions and cover thickness that are claimed by the '817 Patent, and inherently discloses the ratio of core distortion divided by ball distortion as well as Shore D hardness of the ball cover.  (*Id*. at pp. 27-28).  He bases these assertions on trial batches of golf ball cores purportedly constructed according to the specifications set forth in JP '673, and on the results of tests that Acushnet engineers performed on these cores.  (*Id*. at 28-36).

---

[8]    Dr. Felker did not include or reference in his report the cover hardness and "plaque" hardness measurements, even though Acushnet provided apparently gave them to him. (Exh. Q, Dalton Depo., 152:16-153:1 and 159:17-160:16).  That so many other measurements were included in Exhibit 13, with the exception of these two, is nonetheless telling.  The obvious inference is that Dr. Felker omitted these results because they do not support his invalidity opinion.

[9]    This testing plan document was the same one that was used in all prior art golf ball testing, and was given to Dr. Felker. (Exh. Q, Dalton Depo., 145:6-146:1).

Acushnet has not produced to Bridgestone much of the data related to these test cores, including: trial batches of cores that were made in attempting to get the correct distortion (Exh. Q, Dalton Depo., 168:20-169:17); an English translation relied upon when making the cores (*Id.* at 164:2-167:21); experimentation data used to create the recipes for these cores (*Id*); 100 kilogram load testing on the cores (*Id.* at pp. 171:21-175:14) and electronic and handwritten data captured during the 100 kilogram load testing (*Id.* at 180:8-22); and various manufacturing, molding and stoichiometric analysis documents  (*Id.* at 168:5-169:6, 173:12-175:14; 177:1-9). Acushnet must produce these documents and any others that at all relate to the trial batches and testing of the JP '673 cores.

## CONCLUSION

Bridgestone requests that the Court compel Acushnet to produce all documents and communications that its purported experts considered or for which the attorney client privilege and work production protection have been waived.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Leslie A. Polizoti*

Jack B. Blumenfeld (#1014)
Maryellen Noreika (#3208)
Leslie A. Polizoti (#4299)
1201 N. Market St.
P.O. Box 1347
Wilmington, DE 19801
(302) 658-9200
*Attorneys for Bridgestone Sports Co., Ltd.*
*and Bridgestone Golf, Inc.*

OF COUNSEL:

Robert M. Masters
Scott M. Flicker
Terrance J. Wikberg
Brandon M. White
PAUL, HASTINGS, JANOFSKY & WALKER LLP
875 15th St., N.W.
Washington, DC 20005
(202) 551-1700

April 13, 2007
800229

## CERTIFICATE OF SERVICE

I, Leslie A. Polizoti, certify that on April 23, 2007, I electronically filed the foregoing with the Clerk of the Court using CM/ECF, which will send notification of such filing to:

>Richard L. Horwitz, Esquire
>David Moore, Esq.
>POTTER ANDERSON & CORROON LLP
>Hercules Plaza, 6th floor
>1313 N. Market Street
>Wilmington, DE 19899

and that I caused copies to be served upon the following in the manner indicated:

### BY E-MAIL & HAND

>Richard L. Horwitz, Esquire
>David Moore, Esq.
>POTTER ANDERSON & CORROON LLP
>1313 N. Market Street
>Wilmington, DE 19801

### BY E-MAIL & FEDERAL EXPRESS

>Joseph P. Lavelle, Esquire
>HOWREY LLP
>1299 Pennsylvania Avenue, NW
>Washington, DC 20004

*/s/ Leslie A. Polizoti*
Leslie A. Polizoti (#4299)
lpolizoti@mnat.com