IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

BRIDGESTONE SPORTS CO., LTD., and
BRIDGESTONE GOLF, INC.,
    *Plaintiffs*,

v.

ACUSHNET COMPANY,
    *Defendant.*

C.A. No. 05-132 (JJF)

**REDACTED –
PUBLIC VERSION**

## BRIDGESTONE'S OPENING BRIEF IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT OF NO INVALIDITY OF U.S. PATENT NO. 6,679,791

MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Jack B. Blumenfeld (#1014)
Leslie A. Polizoti (#4299)
1201 N. Market St.
P.O. Box 1347
Wilmington, DE 19801
(302) 658-9200

*Attorneys for Bridgestone Sports Co., Ltd.
and Bridgestone Golf, Inc.*

OF COUNSEL:

Robert M. Masters
Scott M. Flicker
PAUL, HASTINGS, JANOFSKY & WALKER LLP
875 15th St., N.W.
Washington, DC 20005
(202) 551-1700

Original Filing Date: April 13, 2007

Redacted Filing Date: April 23, 2007

## TABLE OF CONTENTS

| | Page |
|---|---|
| NATURE AND STAGE OF THE PROCEEDINGS | 1 |
| SUMMARY OF ARGUMENT | 1 |
| STATEMENT OF FACTS | 2 |
|     A. The '791 Patent | 2 |
|     B. Acushnet Says That The Specification Does Not Enable Cores With A Difference In JIS-C Hardness Of At Least 22 | 3 |
|     C. Acushnet's Allegations Regarding Written Description | 4 |
| ARGUMENT | 4 |
|     I. LEGAL PRINCIPLES | 4 |
|         A. Enablement | 4 |
|         B. Written Description | 6 |
|     II. ACUSHNET'S ALLEGATIONS REGARDING LACK OF ENABLEMENT ARE INSUFFICIENT AND INCORRECT | 7 |
|         A. The Claimed Range of "At Least 22" | 7 |
|         B. The Disclosure of the Specification | 9 |
|     III. ACUSHNET'S ALLEGATIONS REGARDING WRITTEN DESCRIPTION ARE INSUFFICIENT AND INCORRECT | 11 |
| CONCLUSION | 12 |

ii.

## TABLE OF AUTHORITIES

Cases

*Abbott Labs. v. Geneva Pharms., Inc.*,
    182 F.3d 1315 (Fed. Cir. 1999) .................................................................... 4

*AK Steel Corp. v. Sollac & Ugine*,
    344 F.3d 1234 (Fed. Cir. 2003) .............................................................. passim

*CFMT, Inc. v. YieldUp Int'l Corp.*,
    349 F.3d 1333 (Fed. Cir. 2003) .................................................................... 5

*Cordis Corp. v. Medtronic AVE, Inc.*,
    339 F.3d 1352 (Fed. Cir. 2003) .................................................................... 6

*In re Wands*,
    858 F.2d 731 (Fed. Cir. 1988) ...................................................................... 5

*In re Wertheim*,
    541 F.2d 257 (C.C.P.A. 1976) ................................................................. 7, 11

*Invitrogen Corp. v. Clontech Labs. Inc.*,
    429 F.3d 1052 (Fed. Cir. 2005) .................................................................... 5

*LizardTech, Inc. v. Earth Res. Mapping, Inc.*,
    424 F.3d 1336 (Fed. Cir. 2005) .................................................................... 6

*Lockwood v. American Airlines, Inc.*,
    107 F.3d 1565, 41 U.S.P.Q.2d 1961, 1966 (Fed. Cir. 1997) ........................ 6

*Massachusetts Institute of Technology v. A.B. Fortia*,
    774 F.2d 1104 (Fed. Cir. 1985) .................................................................... 5

*Pfaff v. Wells Elecs., Inc.*,
    525 U.S. 55 (1998) ........................................................................................ 7

*Phillips v. AWH Corp.*,
    415 F.3d 1303 (Fed. Cir. 2005) (en banc) .................................................... 5

*Spectra-Physics, Inc. v. Coherent, Inc.*,
    827 F.2d 1524 (Fed. Cir. 1987) .................................................................... 6

*Union Oil Co. v. Atl. Richfield Co.*,
    208 F.3d 989 (Fed. Cir. 2000) ...................................................................... 5

*Vas-Cath, Inc. v. Mahurkar*,
    935 F.2d 1555 (Fed. Cir. 1991) .................................................................... 6

NATURE AND STAGE OF THE PROCEEDINGS

This is a patent infringement action brought by Plaintiffs Bridgestone Sports Co., Ltd. and Bridgestone Golf, Inc. (collectively "Bridgestone") against Defendant Acushnet Company ("Acushnet") in March 2005. Bridgestone asserts that various Acushnet golf balls infringe seven patents, including U.S. Patent No. 6,679,791 ("the '791 Patent"), which is directed to structural features of golf balls. Fact discovery closed on October 10, 2006. A *Markman* hearing was held on November 29. Expert discovery closed on March 30, 2007. Trial is scheduled to begin on June 18.

Acushnet's purported invalidity expert, David Felker, originally asserted five invalidity defenses with respect to the '791 Patent – three of them under 35 U.S.C. §§ 102 and 103, using references that were not asserted against the '791 Patent at any time during fact discovery. On February 15, 2007, this Court precluded Acushnet from relying on those references (D.I. 288). Accordingly, only two of Dr. Felker's invalidity defenses against the '791 Patent remain – lack of enablement and written description. Bridgestone requests summary judgment that the '791 Patent is not invalid over these remaining defenses.

SUMMARY OF ARGUMENT

1. Claim 1 of the '791 Patent requires, *inter alia*, a core having "a difference in JIS-C hardness of at least 22 between the center and the surface." Acushnet alleges that the range of "at least 22" fails to satisfy the enablement requirement of 35 U.S.C. § 112. Acushnet's expert, however, fails to analyze this requirement as one of ordinary skill would. Further, the arguments that Acushnet's expert does advance are unsupported and/or incorrect, as they do not take into account the context in which the term "at least 22" is provided.

2. There is a strong presumption that claim limitations present in an application as-filed comply with the written description requirement. The core hardness gradient

recited in the original independent claim filed with the '791 Patent's application was "at least 18." The issued claims, which were amended, recite "at least 22," which Acushnet's purported expert does not analyze from the point of view of one of ordinary skill. The upper bound of the range "at least 22" enjoys a strong presumption that it complies with the written description requirement. Acushnet has not addressed this presumption in the single paragraph of Dr. Felker's expert report that deals with this subject. Its written description argument is unsupported.

## STATEMENT OF FACTS

A. <u>The '791 Patent</u>

The '791 Patent (Ex. 1) is directed to a multilayer golf ball of "at least three layers" (Ex. 1, col. 1:6-8), as shown in exemplary form in FIG. 1, which is reproduced to the right. Figure 1 depicts a rubbery elastic core (1), a cover (2), and an intermediate layer (3). The intermediate layer (3) is made of a resin material that is  harder than the cover. The core has a hardness which increases from the center (C) to the surface (S). The hardness increase may be gradual, and the difference in JIS-C hardness between the center (C) and surface (S) is "most preferably at least 22 units" (Ex. 1, col. 3:32-35). The difference in hardness within the core gives the ball a low spin when hit with a driver, enabling better distance off of the tee (*id.* at 3:35-38). The resultant ball has improved distance, without diminishing controllability and feel (*id.* at col. 1:31-35).

The '791 specification also provides specific examples of cores made according to its disclosure in Table 3 (*id.* at col. 7-8). These cores had a center hardness of around 55 to 61

degrees JIS-C and a surface hardness of around 78 to 83 JIS-C, yielding core hardness differences of around 23 or 24 JIS-C.

Bridgestone asserts claims 11, 13, 16 and 26 of the '791 Patent against various Acushnet products. Each of these claims recites, *inter alia*, that the core has "a difference in JIS-C hardness of at least 22 between the center and the surface." Neither party has requested the Court to construe this claim language.

### B. Acushnet Says That The Specification Does Not Enable Cores With A Difference In JIS-C Hardness Of At Least 22

Acushnet's December 18, 2006 final interrogatory responses simply contend, ███████████████████████████████████████████████████ Acushnet says nothing else in these responses.

Its invalidity expert, Dr. David Felker, says that the asserted claims are invalid because they are not enabled (emphasis added):

> The '791 Patent's specification shows that Bridgestone did not invent any technology embodied in the '791 patent *which fulfills the entire range of the claim limitation, '[said elastic core] has a difference in JIS-C hardness of at least 22.'*

(Ex. 3, p. 71). This is his only basis for non-enablement. Dr. Felker's support for this conclusion is: (1) his "assumption" that the claimed range comprehends that a "maximum theoretical core hardness gradient is 100" JIS-C; (2) his statement that the specification discloses only a golf ball with a single layer core that can only provide a maximum gradient of "40 or 50"; and (3) his statement that the '791 Patent's specification "teaches away from cores with gradients over 30" (Ex. 3, pp.71-73).

C.     Acushnet's Allegations Regarding Written Description

Dr. Felker also argues that claims 11, 13, 16 and 26 of the '791 Patent "are not supported by a written description which shows that Bridgestone actually possessed any technology which could create cores with a gradient significantly over 22" (Ex. 3, p. 73). Dr. Felker attempts to support this position by arguing that: (1) "the patent does not give any example gradients over 25, and states that gradients over 30 are not preferred;" and (2) "the patent only teaches the use of single-layer cores, a technology that can only obtain gradients of up to around 40." Dr. Felker provides no further support or explanation (Ex. 3, pp. 73-74).

ARGUMENT

I.    LEGAL PRINCIPLES

"Summary judgment is proper when there is no genuine issue of material fact and the moving party is entitled to a judgment as a matter of law." *Abbott Labs. v. Geneva Pharms., Inc.*, 182 F.3d 1315, 1317 (Fed. Cir. 1999) (affirming summary judgment of invalidity).

A patent is presumed to be valid. Acushnet has the burden, by clear and convincing evidence, to show facts supporting a conclusion of invalidity. *AK Steel Corp. v. Sollac & Ugine*, 344 F.3d 1234, 1238-39 (Fed. Cir. 2003).

A.    Enablement

Claims are enabled when the specification describes "the manner and process of making and using [the invention], in such full, clear, concise, and exact terms as to enable any person skilled in the art to which it pertains, or with which it is most nearly connected, to make and use the [invention]." This requirement "is satisfied when one skilled in the art, after reading the specification, could practice the claimed invention without undue experimentation." *AK Steel*, 344 F.3d at 1244.

An "enablement inquiry typically begins with a construction of the claims." *AK Steel*, 344 F.3d at 1241. When construing the claims, the terms therein are generally given their ordinary and customary meaning to one of ordinary skill in the art, informed by the context of the particular claim in which the term appears, and in the context of the rest of the patent, including the specification. *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312 (Fed. Cir. 2005) (en banc).

Whether the construed claim is enabled is a question of law, *Invitrogen Corp. v. Clontech Labs. Inc.*, 429 F.3d 1052, 1070 (Fed. Cir. 2005), based on underlying factual considerations of whether "undue experimentation" is required by one skilled in the art. These considerations, commonly referred to as the "*Wands* factors," include: "(1) the quantity of experimentation necessary, (2) the amount of direction or guidance presented, (3) the presence or absence of working examples, (4) the nature of the invention, (5) the state of the prior art, (6) the relative skill of those in the art, (7) the predictability or unpredictability of the art, and (8) the breadth of the claims." *In re Wands*, 858 F.2d 731, 737 (Fed. Cir. 1988).

When considering the *Wands* factors, the Federal Circuit has emphasized that it is "undue" experimentation that is required to invalidate – even complex experimentation is not undue if the art typically engages in such experimentation. *Massachusetts Institute of Technology v. A.B. Fortia*, 774 F.2d 1104 (Fed. Cir. 1985).

Additionally, the amount of guidance in the specification does not have to rise to the level of a manufacturing schematic or a perfected, commercially viable embodiment, nor contain examples explicitly covering the full scope of the claim language. *See CFMT, Inc. v. YieldUp Int'l Corp.*, 349 F.3d 1333 (Fed. Cir. 2003); *Union Oil Co. v. Atl. Richfield Co.*, 208 F.3d 989, 997 (Fed. Cir. 2000). This "is because the patent specification is written for a person

of skill in the art, and such a person comes to the patent with the knowledge of what has come before[, ... thus], it is unnecessary to spell out every detail of the invention in the specification; only enough must be included to convince a person of skill in the art that the inventor possessed the invention and to enable such a person to make and use the invention without undue experimentation." *LizardTech, Inc. v. Earth Res. Mapping, Inc.*, 424 F.3d 1336, 1345 (Fed. Cir. 2005).

Also, if an invention pertains to an art where the results are predictable, *e.g.*, in the mechanical arts, then disclosure of even a single embodiment can enable a broad claim. *Spectra-Physics, Inc. v. Coherent, Inc.*, 827 F.2d 1524 (Fed. Cir. 1987).

B. <u>Written Description</u>

35 U.S.C. § 112 also states that the "specification shall contain a written description of the invention." Compliance with this "written description requirement" is a question of fact. *Vas-Cath, Inc. v. Mahurkar*, 935 F.2d 1555, 1563 (Fed. Cir. 1991). There is no requirement that the written description describe exactly the subject matter claimed, but the description must allow persons of ordinary skill in the art to recognize that the inventor had possession of the claimed invention. *Id.* However, "the disclosure as originally filed does not . . . have to provide *in haec verba* support for the claimed subject matter at issue." *Cordis Corp. v. Medtronic AVE, Inc.*, 339 F.3d 1352, 1364 (Fed. Cir. 2003).

An applicant shows that he was in "possession" of the claimed invention by describing that invention with all of its limitations using such descriptive means, such as words, structures, figures, diagrams, and formulas that fully set forth the claimed invention. *Lockwood v. American Airlines, Inc.*, 107 F.3d 1565, 1572, 41 U.S.P.Q.2d 1961, 1966 (Fed. Cir. 1997). These descriptions can show that there was an actual reduction to practice of the invention (*i.e.*,

there was a working example), or that the invention was "ready for patenting." *See, e.g., Pfaff v. Wells Elecs., Inc.*, 525 U.S. 55, 68 (1998).

There is a strong presumption that an adequate written description of the claimed invention is present when the application is filed. *In re Wertheim*, 541 F.2d 257, 263 (C.C.P.A. 1976).

## II. ACUSHNET'S ALLEGATIONS REGARDING LACK OF ENABLEMENT ARE INSUFFICIENT AND INCORRECT

According to *AK Steel*, the enablement analysis that Acushnet should have performed was to: (1) determine what "at least 22" would mean to one of ordinary skill; and (2) determine whether one of ordinary skill would understand the specification to enable the construed range of "at least 22" without undue experimentation – such as by utilizing the *Wands* factors. Acushnet and Dr. Felker did none of this.

Instead, Dr. Felker addressed what *he* believes the claimed range of "at least 22" to mean in an abstract "theoretical" sense – not in the context of the '791 Patent, and not from the point of view of one or ordinary skill in the art. Further, Dr. Felker addressed only what *he* believes the specification of the '791 Patent to disclose (again in the abstract) – never even mentioning the *Wands* factors. Dr. Felker's "analysis" of the specification's support consists solely of: (1) an incorrect and unsupported argument that the '791 Patent is directed to a "single layer" core which is only capable of providing a gradient of "40 or 50;" and (2) the seemingly contrary argument that the specification "teaches away from cores with gradients over 30."

### A. The Claimed Range of "At Least 22"

Rather than analyze what one of ordinary skill in the art would understand the claimed range of "at least 22" to mean in the context of the '791 Patent – as he must do to determine enablement – Dr. Felker goes off on a theoretical exploration of hardness scales in the

abstract. He says that there is a "maximum theoretical core hardness gradient" of 100 degrees (Ex. 3, p. 71), based on his assumption that someone could make a core having a zero center hardness and a 100 surface hardness (*id.* at p. 71, n.34):

> You would achieve this limit by curing the core in such a manner that the outer surface is completely vulcanized and is made as hard as possible, and the center is completely uncured. I can assume that the completely vulcanized rubber could be made to have nearly the maximum hardness measurable on the JIS-C scale, 100 degrees, and that the uncured rubber would have nearly the minimum, zero degrees. Therefore, the maximum theoretical hardness gradient can never exceed 100 degrees.

Whether or not this assumption is true (a subject that is certainly open to debate), it has absolutely no applicability to an analysis of the scope of the term "at least 22" as it is claimed in the '791 Patent. There is simply no evidence that one of ordinary skill in the art would determine that the claimed range of "at least 22" means "at least 22 to 100," as Dr. Felker would have it. In fact, one of ordinary skill would not come to that conclusion at all, for several reasons. Dr. Felker's imaginary golf ball does not take into account what the claim and specification of the '791 Patent indicate. For example, the core hardness gradient of "at least 22" is recited as part of the "core" of a "golf ball" (Ex. 1, col. 8-10, claims 1, 13 and 24). Dr. Felker did not make or cite to – in the '791 Patent, in the hundreds of prior art references cited by Acushnet in this case, or in the hundreds of competitive balls tested by Acushnet – any core with a center hardness of 0 JIS-C. Indeed, such a core center hardness would likely not provide a golf ball that would be functional.

In addition, it makes no sense for Dr. Felker to assume that the surface of the "core" recited in the '791 Patent could be 100 JIS-C. Doing so ignores the claim requirement that the intermediate layer is harder than the core surface (Ex. 1, col. 8-10, claims 1, 13 and 24). Accordingly, to ensure that the intermediate layer is actually harder than the core surface, it is

likely that the maximum core surface hardness must be significantly less than 100.

Thus, Dr. Felker's analysis of the scope of the claim range "at least 22" is improper under *AK Steel* – and Acushnet has failed to meet its burden to show that the claims of the '791 Patent are invalid.

### B.    The Disclosure of the Specification

Similarly, rather than analyze what core hardness gradient ranges one of ordinary skill in the art would understand the specification of the '791 Patent to enable – as he must do to determine enablement – Dr. Felker says that the patent is only directed to a single-layer core, and then goes off on a theoretical exploration that gradients of "40 to 50" are the maximum possible in such cores (Ex. 3, pp. 72, 73).

Dr. Felker's insistence that the '791 Patent discloses only a single core is belied by the patent's disclosures that: (1) "[t]he present invention relates to a golf ball having a multilayer construction of at least three layers which includes a core, an intermediate layer and a cover" (Ex. 1, col. 1:7-9); (2) "[i]t is therefore an object of the present invention to provide a golf ball having a multilayer construction of three or more layers..." (*id.* at col. 1:31-34); and (3) "the golf ball G of the present invention is composed of at least three layers, commonly known as a 'multi-piece construction" (*id.* at col. 1:64-66). Nothing in the '791 Patent indicates that it is limited to a single layer core.

Having concluded that the patent discloses a single-layer core, Dr. Felker bootstraps an argument that, because he thinks that single layer cores only can have a core hardness gradient of "40 to 50," that is all the patent supports (Ex. 3, p. 72). Dr. Felker does not address what gradients are possible in multi-layer cores – except to admit that they "can have a larger core gradient" (*id.*). Nor does Dr. Felker provide any analysis of how he determined that a

core hardness gradient of "40 to 50" was the maximum possible in a single layer core. He fails to cite any documents, fails to provide any analysis of the hundreds of prior art references cited by Acushnet

Dr. Felker also attempts to portray the '791 Patent's specification as teaching "away from cores with gradients over 30" (Ex. 3, p. 73). This argument is contradictory and incorrect. This allegation is contradictory because Dr. Felker states that the '791 Patent teaches a method for creating core gradients of "40 or 50." "40 or 50" is more than 30. It's incorrect because the '791 Patent merely discloses that it is *recommended* that the hardness differential be 30 or less, but does not indicate that this range is required, or that it has any adverse performance characteristics for a ball made according to the '791 Patent. Nor does the '791 Patent indicate that one cannot obtain a hardness differential greater than 30 in view of the disclosure of the '791 Patent. For example, the '791 Patent indicates that the core has a typical center hardness of at least 50 JIS-C, and preferably has a core surface hardness of 90 or less (Ex. 3, col. 3:48-51).

Thus, Dr. Felker's analysis of the specification's enablement is improper under

*AK Steel* - and Acushnet has failed to meet its burden to show that the claims of the '791 Patent are invalid.

### III. ACUSHNET'S ALLEGATIONS REGARDING WRITTEN DESCRIPTION ARE INSUFFICIENT AND INCORRECT

To determine whether the claim term "at least 22" meets the "written description requirement, Dr. Felker must: (1) determine what "at least 22" would mean to one of ordinary skill; and (2) determine whether the specification provides a "written description" of the construed range of "at least 22." As noted above, Dr. Felker has not opined on how one of ordinary skill in the art would define "at least 22."

Further, there is a strong presumption that an adequate written description of the claimed invention is present when the application is filed. *In re Wertheim*, 541 F.2d at 263. The core hardness gradient recited in the original independent claim filed with the '791 Patent's application was "at least 18." The issued claims, which were amended, recite "at least 22." Accordingly, the upper bound of the range "at least 22" enjoys a strong presumption that it complies with the written description requirement. Dr. Felker has failed to address the "strong presumption" that an adequate written description of the claimed invention is present when the application is filed, and therefore its written description argument is unsupported.

Dr. Felker's specific arguments also fail to support his conclusion that the '791 Patent fails to provide a written description of a core gradient of "at least 22." He argues that: (1) "the patent does not give any example gradients over 25, and states that gradients over 30 are not preferred"; and (2) the '791 Patent "only teaches the use of single-layer cores, a technology that can only obtain gradients of up to around 40" (Ex. 3, pp. 73, 74). Both of these arguments are inaccurate and irrelevant, for at least the reasons discussed above.

Thus, Dr. Felker has not applied the proper written description analysis to the

12.

term "at least 22" in the claims of the '791 Patent, and Acushnet cannot show that the term "at least 22" fails the written description requirement.

## CONCLUSION

For the reasons set forth above, Bridgestone requests that claims 11, 13, 16 and 26 of the '791 Patent be held not invalid.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

/s/ Leslie A. Polizoti

---

OF COUNSEL:

Robert M. Masters
Scott M. Flicker
PAUL, HASTINGS, JANOFSKY
  & WALKER LLP
875 15th St., N.W.
Washington, DC 20005
(202) 551-1700

Jack B. Blumenfeld (#1014)
Leslie A. Polizoti (#4299)
1201 N. Market Street
P.O. Box 1347
Wilmington, DE  19801
  *Attorneys for Bridgestone Sports Co., Ltd.*
  *and Bridgestone Golf, Inc.*

April 13, 2007

799084

# CERTIFICATE OF SERVICE

I certify that on April 23, 2007 I electronically filed the foregoing with the Clerk of the Court using CM/ECF, which will send notification of such filing(s) to the following:

> Richard L. Horwitz, Esquire
> POTTER ANDERSON & CORROON LLP
> Hercules Plaza, 6th Floor
> 1313 North Market Street
> Wilmington, DE 19801

I further certify that I caused copies to be served upon the following on April 23, 2007 in the manner indicated:

### BY HAND & E-MAIL

Richard L. Horwitz, Esquire
POTTER ANDERSON & CORROON LLP
1313 N. Market Street
Wilmington, DE 19801

### BY E-MAIL and FEDERAL EXPRESS

Joseph P. Lavelle, Esquire
HOWREY LLP
1299 Pennsylvania Avenue, NW
Washington, DC 20004


/s/ Leslie A. Polizoti
Leslie A. Polizoti (#4299)
MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Wilmington, DE 19801
(302) 658-9200
lpolizoti@mnat.com