# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| BRIDGESTONE SPORTS CO., LTD., and BRIDGESTONE GOLF, INC., | ) ) ) | |
| Plaintiffs, | ) ) | C. A. No. 05-132 (JJF) |
| v. | ) ) ) | **PUBLIC VERSION** |
| ACUSHNET COMPANY, | ) ) | |
| Defendant. | ) ) | |

### ACUSHNET'S MEMORANDUM IN OPPOSITION TO BRIDGESTONE'S MOTION FOR SUMMARY JUDGMENT THAT THE "WILSON ULTRA TOUR BALATA 90" GOLF BALLS, THE "1993 WILSON ULTRA COMPETITION 90" GOLF BALLS AND THE "1996 PRECEPT EV EXTRA SPIN" GOLF BALLS ARE NOT PRIOR ART

Richard L. Horwitz (#2246)
David E. Moore (#3983)
POTTER ANDERSON & CORROON LLP
Hercules Plaza, 6th Floor
1313 North Market Street
P. O. Box 951
Wilmington, DE 19899-0951
Tel: (302) 984-6000
rhorwitz@potteranderson.com
dmoore@potteranderson.com

*Attorneys for Defendant*
*Acushnet Company*

OF COUNSEL:

Alan M. Grimaldi
Joseph P. Lavelle
Kenneth W. Donnelly
HOWREY LLP
1299 Pennsylvania Avenue, N.W.
Washington, DC 20004
Tel: (202) 783-0800

Dated: April 30, 2007
Public Version Dated: May 7, 2007
793585 / 28946

**TABLE OF CONTENTS**

I.     NATURE AND STAGE OF PROCEEDINGS ......................................................1

II.    SUMMARY OF ARGUMENT ............................................................................1

III.   ARGUMENT.....................................................................................................1

       A.   Legal Standards...................................................................................1

       B.   The Tested Wilson Ultra Tour Balata 90 Golf Balls Are Prior Art
            to the '852 Patent ................................................................................2

       C.   The Wilson Ultra Competition 90 Golf Balls Are Prior Art to the
            '834 Patent ..........................................................................................7

       D.   The Bridgestone Ev Extra Spin Golf Balls Are Prior Art to the
            '834 Patent ..........................................................................................8

IV.    CONCLUSION.................................................................................................10

## TABLE OF AUTHORITIES

### CASES

*Anderson v. Liberty Lobby, Inc.*,
    477 U.S. 242, 106 S. Ct. 2505 (1986)............................................................................2

*Baker Hughes, Inc. v. Davis-Lynch, Inc.*,
    31 Fed. Appx. 650 (Fed. Cir. 2002)..............................................................................6

*Buildex, Inc. v. Kason Industries, Inc.*,
    849 F.2d 1461 (Fed. Cir. 1988)......................................................................................6

*C.R. Bard, Inc. v. Advanced Cardiovascular Systems, Inc.*,
    911 F.2d 670 (Fed. Cir. 1990)............................................................................... *passim*

*Celotex Corp. v. Catrett*,
    477 U.S. 317 (1986).....................................................................................2, 7, 8, 10

*Constant v. Advanced Micro-Devices, Inc.*,
    848 F.2d 1560 (Fed. Cir. 1988)......................................................................................6

*In re Hall*,
    781 F.2d 897 (Fed. Cir. 1986)........................................................................................6

*KeyStone Retaining Wall System, Inc. v. Westrock, Inc.*,
    997 F.2d 1444 (Fed. Cir. 1993)......................................................................................2

*Monarch Knitting Machinery Corp. v. Sulzer Morat GmbH*,
    139 F.3d 877 (Fed. Cir. 1998)........................................................................................1

### STATUTES

35 U.S.C. § 102(b) ...........................................................................................................3, 7

Fed. R. Civ. P. 56(c) ............................................................................................................1

Acushnet Company ("Acushnet") opposes Bridgestone Sports Co., Ltd. and Bridgestone Golf, Inc.'s ("Bridgestone") motion for summary judgment relating to certain prior art golf balls. Bridgestone's motion should be denied.

## I.    NATURE AND STAGE OF PROCEEDINGS

This patent infringement suit involves eleven patents and scheduled for trial, starting June 18, 2007. Fact and expert discovery is finished and a pre-trial conference will be held on May 25, 2007. Bridgestone filed its Motion for Summary Judgment that certain golf balls are not prior art on April 13, 2007 ("Bridgestone's Motion"). Bridgestone's motion relates to two of the patents-in-suit, U.S. Patent Nos. 5,553,852 ("the '852 patent") and 5,803,834 ("the '834 patent").

## II.    SUMMARY OF ARGUMENT

The 1993 Ultra Tour Balata 90 golf balls tested by Acushnet and relied upon by Dr. Felker were obtained prior to July 8, 1993, and are therefore prior art to the '852 patent.

The 1993 Wilson Ultra Competition 90 and 1996 Precept EV Extra Spin golf balls tested by Acushnet and relied upon by Dr. Felker were obtained prior to February 27, 1996, and are therefore prior art to the '834 patent.

## III.    ARGUMENT

### A.    Legal Standards

Summary judgment is appropriate only when there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law. Fed. R. Civ. P. 56(c); *see also Monarch Knitting Machinery Corp. v. Sulzer Morat GmbH*, 139 F.3d 877, 880 (Fed. Cir. 1998). The burden is on the moving party to establish both the absence of a genuine issue of material fact and that it is entitled to a judgment as a matter of law. Fed. R. Civ. P. 56(c); *C.R. Bard, Inc. v. Advanced Cardiovascular Systems, Inc.*,

911 F.2d 670, 672 (Fed. Cir. 1990); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247, 106 S.Ct. 2505 (1986).

In ruling on a motion for summary judgment, the Court must view the evidence presented in the light most favorable to the non-moving party, with all doubts resolved in favor of the non-movant. *C.R. Bard*, 911 F.2d at 672; *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23, 106 S.Ct. 2548 (1986). This requires, among other things, that "[t]he evidence submitted by the nonmovant, in opposition to a motion for summary judgment, 'is to be believed, and all justifiable inferences are to be drawn in [its] favor.'" *KeyStone Retaining Wall Sys., Inc. v. Westrock, Inc.*, 997 F.2d 1444, 1449-50 (Fed. Cir. 1993) (*quoting Anderson*, 477 U.S. at 255, 106 S.Ct. 2505). To avoid summary judgment, "all that is required is that sufficient evidence supporting the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *Anderson* 477 U.S. at 249, 106 S.Ct. 2505.

### B.    The Tested Wilson Ultra Tour Balata 90 Golf Balls Are Prior Art to the '852 Patent

At the direction of Dr. Felker, Acushnet's invalidity expert, twelve Ultra Tour Balata 90 golf balls ("the UTB 90 balls") were tested for various parameters. The results of those tests form the basis of Dr. Felker's opinion that Bridgestone's '852 patent is invalid.

Bridgestone does not dispute the test results that Acushnet obtained. In fact, Bridgestone's own expert also tested the UTB 90 balls and came up with consistent results. (Ex. A – 2/20/07 Supplemental Caulfield Report, pg. 5-7 and attached exhibits 46-50; Ex. B – 3/29/07 Caulfield Tr. 221:2-223:8, 224:2-226:19). Instead, to fend off Acushnet's invalidity defense, Bridgestone asserts that Acushnet cannot demonstrate that the UTB 90 balls relied on by Dr. Felker were actually prior art to the '852 patent.

Bridgestone admits that the UTB 90 ball was on sale and in use prior to July 1993, which is more than one year prior to the '852 patent's U.S. filing date, and

therefore prior art under 35 U.S.C. §102(b). However, because the UTB 90 ball was also on sale and in use after July 1993, Bridgestone simply raises the possibility that Acushnet might have obtained these balls sometime after July 1993. That is simply not the case. There are numerous documents that have been produced in this case, and there is further declaration testimony that supports the fact that the tested UTB 90 balls are prior art to the '852 patent.

In his expert report, Dr. Felker noted that the tested UTB 90 balls originated from the lot of balls stored at Acushnet, in its retained ball room, under log number 93007. (Ex. C – 1/16/07 Felker Report, pg. 19; Ex. D – 4/30/07 Dalton Decl. at ¶ 10). Acushnet's standard practice has been to regularly obtain competitive golf balls, as well as its own product, for testing and storage purposes in various quantities typically ranging from a single ball to multiple dozens. (Ex. D – 4/30/07 Dalton Decl. at ¶ 3; D.I. 324, Ex. OO – 4/3/07 Bulpett Decl., at ¶ 4). These balls were logged into a ledger-type notebook starting in 1992. (Ex. D – 4/30/07 Dalton Decl. at ¶ 4). In these log books, which were in use through early March of 1997, a sequential log number was assigned.[1] (Ex. D – 4/30/07 Dalton Decl. at ¶ 4; D.I. 324, Ex. OO – 4/3/07 Bulpett Decl., at ¶ 4). The log number was five digits long, with the first two digits representing the year, and the remaining digits representing the order in that year in which the ball was logged. (Ex. D – 4/30/07 Dalton Decl. at ¶ 4; D.I. 324, Ex. OO – 4/3/07 – Bulpett Decl., at ¶ 4). For example, the first competitive balls obtained in 1993 were assigned the log number 93001. Therefore, the log number for the tested UTB 90 balls, which was 93007, represents that they were the seventh type of ball obtained for competitive testing in 1993.

---

1 After 1997, Acushnet began using a computer database to store its competitive ball information and stopped using the paper ledger-type notebook. Ex. D – 4/30/07 Dalton Decl. at ¶ 8; D.I. 324, Ex. OO – 4/3/07 Bulpett Decl., at ¶ 7-9).

Business records created at the time Acushnet obtained the Ultra Tour Balata 90 golf balls indicate that Acushnet obtained the balls on three different occasions in 1993. (Ex. D – 4/30/07 Dalton Decl. at ¶ 12 and exhibits 1-6). From 1992 to mid 1994, ball types, that is balls that had the same name on their packaging, that were previously logged in that year would receive the same log number, but would get a unique chronological entry in the log book.[2] (Ex. D – 4/30/07 Dalton Decl. at ¶ 6; D.I. 324, Ex. OO – 4/3/07 Bulpett Decl., at ¶ 5). Therefore, each time Acushnet obtained Ultra Tour Balata 90 golf balls in 1993, it logged them in and stored them under the same log number 93007. (Ex. D – 4/30/07 Dalton Decl. at ¶ 12-13).

Acushnet's business records show that all of the golf balls logged in under the log number 93007 were obtained before July 1993, the prior art cut off date. The business records show that Acushnet first logged three UTB 90 golf balls under log number 93007 in March 1993. (Ex. D – 4/30/07 Dalton Decl. at ¶ 12 and attached exhibit 1, AB 4474). Business records further show that Acushnet obtained additional UTB 90 golf balls before the end of April 1993. In fact, on April 29, 1993, Acushnet employee Ed Hebert provided a memorandum describing his testing and analysis of six UTB 90 golf balls under that same log number. (*See* Ex. D – 4/30/07 Dalton Decl. at ¶ 12 and attached exhibit 3, AB 91229-91236). Further business records show that Acushnet obtained two dozen UTB 90 golf balls on April 2, 1993 and four dozen UTB 90 golf balls on June 1, 1993. (Ex. D – 4/30/07 Dalton Decl. at ¶ 12 and attached exhibits 4 and 6, AB 91247 and AB 118749-84).

Thus, Bridgestone's argument that the golf balls tested for Dr. Felker could not have come from log 93007 because it is "undisputed" that that log only contained three

---

2 Around 1995, Acushnet's practice was changed so that balls of the same type that were obtained at different times during the year would generally receive their own unique log number. (Ex. D – 4/30/07 Dalton Decl. at ¶ 7; D.I. 324, Ex. OO – 4/3/07 Bulpett Decl., at ¶ 5).

balls and Dr. Felker tested twelve UTB 90 balls is entirely wrong. Although Bridgestone seems to feel this is "undisputed," any speculative notion that log 93007 only contained three balls is absolutely disputed, and more importantly factually incorrect. The documents produced in this case conclusively show that log 93007 contained multiple dozens of UTB 90 golf balls, as shown above, and as such, contained more than enough balls for Dr. Felker to have been able to test twelve UTB 90 balls from log 93007 for his report, as was done.

Moreover, although there are several documents that show that the UTB 90 balls were obtained prior to July 1993, there are *no* documents that indicate that Acushnet obtained any of the UTB 90 golf balls after July 1993. Thus, apart from speculation, Bridgestone has nothing to show against Acushnet's proof that the UTB 90 golf balls tested are prior art. Acushnet disclosed the fact that it intended to rely on the UTB 90 ball for its invalidity position as far back as May of 2006. (Ex. E – 5/1/2006 Invalidity Contentions, at pg. A-59). Bridgestone never contested that the UTB 90 ball was prior art until it submitted its rebuttal expert reports on February 20, 2007, wherein its validity expert for the '852 patent, merely attempts to cast doubt on Acushnet's evidence. (*See* Ex. F – Calabria Report at A-27 to A-30). Although the documents produced in the case had clearly shown that the tested UTB 90 balls were obtained prior to July 1993, around March 7, 2007, an Acushnet employee familiar with the prior use of handwritten logbooks searched for and found the original 1993 paper ledger relating to the receipt of these balls. (Ex. D – 4/30/07 Dalton Decl. at ¶ 9; D.I. 324, Ex. OO – 4/3/07 Bulpett Decl., at ¶ 11-12). The handwritten log notebook indicates the precise dates the balls were obtained and removes any ambiguity that Bridgestone's expert speculated to exist with respect to when Acushnet obtained the relevant Ultra Tour Balata 90 golf balls.

This ledger conclusively confirms again what was indisputable prior to Bridgestone's expert's musings – that all of the UTB 90 golf balls logged in during 1993 were obtained prior to July 1993. The logbook shows that *three UTB 90 balls* were

logged in on March 3, 1993; that *two dozen UTB 90 balls* were logged in on April 2, 1993; and that an additional *four dozen UTB 90 balls* were logged in on June 1, 1993. (Ex. D – 4/30/07 Dalton Decl. at ¶ 12-13 and attached exhibits 1-6). There are *no entries* after July 1993 which indicates that any additional UTB 90 balls were obtained or logged in under log number 93007.

Therefore, Bridgestone's assertion that there is no evidence that the tested UTB 90 golf balls were obtained prior to July 1993 is readily disputed. Acushnet has produced numerous documents and declaration testimony that supports that the tested balls are prior art to the '852 patent. *See In re Hall*, 781 F.2d 897, 899 (Fed. Cir. 1986) (relying on the affidavit of the director and manager of a university library with respect to general library procedures in estimating the date of public accessibility); *Constant v. Advanced Micro-Devices, Inc.*, 848 F.2d 1560, 1568-69 (Fed. Cir. 1988) (finding evidence of routine business practice sufficient to prove a reference was publicly accessible before a critical date); *Baker Hughes, Inc. v. Davis-Lynch, Inc.*, 31 Fed. Appx. 650, 656-57 (Fed. Cir. 2002) (finding affidavits and documentary evidence to be sufficient documentary evidence supporting an on-sale bar claim to defeat summary judgment); *Buildex, Inc. v. Kason Industries, Inc.*, 849 F.2d 1461, 1463-64 (Fed. Cir. 1988) (overturning lower court failure to find on-sale bar based on date determined from deposition testimony and documents where plaintiff presented no evidence to show a later date).

On summary judgment, this evidence must be reviewed in the light most favorable to Acushnet, with all doubts resolved in favor of the Acushnet. *C.R. Bard*, 911 F.2d at 672; *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). Thus, Bridgestone's motion for summary judgment on this ball should be denied.

C.    **The Wilson Ultra Competition 90 Golf Balls Are Prior Art to the '834 Patent**

Bridgestone asserts that Acushnet has no evidence that the Wilson Ultra Competition 90 golf balls, relied on by Dr. Felker to show that the '834 patent is invalid, are prior art. Again, Bridgestone is mistaken.

The U.S. filing date of the '834 patent is February 27, 1997. Therefore, under 35 U.S.C. §102(b), any golf ball on sale or in use more than one year prior to that date (i.e., February 27, 1996) would be prior art. The Wilson Ultra Competition 90 golf balls relied on by Dr. Felker originated from log number 93049. (Ex. D – 4/30/07 Dalton Decl. at ¶ 14). This, by itself, indicates that the balls were obtained by Acushnet in 1993, and are therefore, prior art to the '834 patent. (Ex. D – 4/30/07 Dalton Decl. at ¶ 14).

Documents produced in this case further show that the golf balls logged in under 93049 were obtained in 1993. (Ex. D – 4/30/07 Dalton Decl. at ¶ 15 and attached exhibit 5, AB 91251, showing Wilson Ultra Competition 90 balls logged in under log number 93049 on August 30, 1993; see also, Ex. D – 4/30/07 Dalton Decl. at ¶ 15 and attached exhibit 7, AB 4466-67, further showing 36 Wilson Ultra Competition 90 balls logged in under log number 93049 on August 30, 1993). Moreover, the handwritten log notebook for 1993 also shows that the Wilson Ultra Competition 90 golf balls logged in and stored under log number 93049 were obtained on August 30, 1993. (Ex. D – 4/30/07 Dalton Decl. at ¶ 14-15 and attached exhibit 6, at AB 118771).

Bridgestone's only basis for its argument that the Wilson Ultra Competition 90 balls relied on by Dr. Felker are not prior art is that that Acushnet initially informed Bridgestone that it had only two Ultra Competition 90 balls, yet was able to test six balls for Dr. Felker. As explained to Bridgestone, however, the initial information that only two such balls existed was incorrect. That information was specific to the set of Wilson Ultra Competition 90 golf balls stored under a log number in 1994 (log number 94080), not log number 93049. (*See* Ex. G – 2/13/07 Stasio Ltr. to White; Ex. D – 4/30/07 Dalton

7

Decl., at ¶ 16-17). Acushnet had ten 1993 Wilson Ultra Tour Competition balls in its possession, under log number 93049. Acushnet informed Bridgestone of these balls and provided four of them to Bridgestone on February 8, 2007. (Ex. G – 2/13/07 Stasio Ltr. to White). Bridgestone's expert, Dr. Caulfield, was able to perform tests on those balls and report the results of his tests in his February 20, 2007 expert report. (Ex. A – 2/20/07 Caulfield Supplemental Report, at exhibit 57).

Therefore, Bridgestone's assertion that there is no evidence that the tested Ultra Competition 90 golf balls are prior art is readily disputed. Acushnet has produced numerous documents and declaration testimony that supports that the tested balls are prior art to the '834 patent. On summary judgment, this evidence must be reviewed in the light most favorable to Acushnet, with all doubts resolved in favor of the Acushnet. *C.R. Bard*, 911 F.2d at 672; *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). Bridgestone's motion for summary judgment on this ball should be denied.

### D.    The Bridgestone EV Extra Spin Golf Balls Are Prior Art to the '834 Patent

Bridgestone further argues that Acushnet has no evidence that the EV Extra Spin golf balls, which Dr. Felker relies on for his opinion that the '834 patent is invalid, are prior art. Again, Bridgestone is wrong.

The tested EV Extra Spin golf balls were logged in and stored under log number 96001, signifying that they were the first balls obtained in 1996 for competitive testing. (Ex. D – 4/30/07 Dalton Decl. at ¶ 18). Documents produced in this case show that the balls logged in under 96001 were obtained on January 2, 1996, thereby making them prior art to the '834 patent. (Ex. D – 4/30/07 Dalton Decl. at ¶18 and attached exhibit 8, AB 4613, showing twelve EV Extra Spin balls being logged in on January 2, 1996). Bridgestone's own validity expert, Mr. John Calabria, refers to this document in his report, showing that Bridgestone was aware that the EV Extra Spin balls logged in under 96001 were obtained on January 2, 1996. (*See* Ex. F – 2/20/07 Calabria Report at D-4).

Rather than disputing the fact that the balls logged in under log number 96001 are prior art, Bridgestone argues that it is not clear that the tested EV Extra Spin balls actually came from that log number (despite testimony and documents from Acushnet witnesses that they did). (Ex. D – 4/30/07 Dalton Decl. at ¶ 18, and attached exhibit 8, AB 4613). Bridgestone notes that log 96001 states that the nameplate and side stamp on the balls was "Precept EV Extra Spin 392," whereas the name plate and side stamp on the tested balls also contained an additional marking that said "AM."

"AM" is not, however, a nameplate or side stamp. This is confirmed by the fact that even Bridgestone (the ball's manufacturer) has no record of such a ball being produced. (Bridgestone Motion, pg. 9). Rather, it likely stands for initials of the professional golfer (Andrew McGee) who played the ball. (Ex. D – 4/30/07 Dalton Decl. at ¶¶19-20). In 1996 it was Acushnet's practice to identify balls obtained for competitive testing by noting their nameplate and side stamp in the log notebook. (Ex. D – 4/30/07 Dalton Decl. at ¶ 19-20). Because "AM" is neither a nameplate nor a side stamp, the "AM" was simply not transcribed into the log notebook. (Ex. D – 4/30/07 Dalton Decl. at ¶ 19-20).

In any event, Acushnet has produced evidence that the EV Extra Spin balls relied on by Dr. Felker were obtained from log number 96001. (Ex. D – 4/30/07 Dalton Decl. at ¶ 18, and attached exhibit 8, AB 4613). Acushnet has further produced documents that conclusively show that those balls were obtained on January 2, 1996, and are therefore, prior art. If Acushnet obtained any additional EV Extra Spin balls after January 2, 1996, they would have been logged in under a separate log number. (Ex. D – 4/30/07 Dalton Decl. at ¶ 21; D.I. 324, Ex. OO – 4/3/07 Bulpett Decl., at ¶ 5).

Therefore, Bridgestone's assertion that there is no evidence that the EV Extra Spin balls are prior art is readily disputed. Acushnet has produced numerous documents and declaration testimony that supports that the tested EV Extra Spin balls are prior art to the '834 patent. On summary judgment, this evidence must be reviewed in the light most

favorable to Acushnet, with all doubts resolved in favor of the Acushnet. *C.R. Bard*, 911 F.2d at 672; *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).  Thus, Bridgestone's motion for summary judgment on this ball should be denied.

## IV.    CONCLUSION

For the foregoing reasons, Acushnet respectfully requests that the Court deny Bridgestone's motion for summary judgment in its entirety.

Respectfully submitted,

POTTER ANDERSON & CORROON LLP

OF COUNSEL:

Alan M. Grimaldi
Joseph P. Lavelle
Kenneth W. Donnelly
HOWREY LLP
1299 Pennsylvania Avenue, N.W.
Washington, DC  20004
Tel: (202) 783-0800

Dated:  April 30, 2007
Public Version Dated:  May 7, 2007
793585 / 28946

By:  */s/ David E. Moore*
Richard L. Horwitz (#2246)
David E. Moore (#3983)
Hercules Plaza, 6th Floor
1313 North Market Street
P. O. Box 951
Wilmington, DE  19899-0951
Tel: (302) 984-6000
rhorwitz@potteranderson.com
dmoore@potteranderson.com

*Attorneys for Defendant*
*Acushnet Company*

10

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

### CERTIFICATE OF SERVICE

I, David E. Moore, hereby certify that on May 7, 2007, the attached document was hand

delivered to the following persons and was electronically filed with the Clerk of the Court using

CM/ECF which will send notification to the registered attorney(s) of record that the document

has been filed and is available for viewing and downloading:

Jack B. Blumenfeld
Maryellen Noreika
Leslie A. Polizoti
Morris, Nichols, Arsht & Tunnell
1201 N. Market Street
Wilmington, DE 19801

I hereby certify that on May 7, 2007, I have Electronically Mailed the documents to the

following:

Robert M. Masters
Paul, Hastings, Janofsky & Walker LLP
875 15th Street, N.W.
Washington, D.C. 20005
RobMasters@paulhastings.com

/s/ David E. Moore
Richard L. Horwitz
David E. Moore
Potter Anderson & Corroon LLP
Hercules Plaza – Sixth Floor
1313 North Market Street
P.O. Box 951
Wilmington, DE 19899-0951
(302) 984-6000
rhorwitz@potteranderson.com
dmoore@potteranderson.com

680012 / 28946