## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| BRIDGESTONE SPORTS CO., LTD., and BRIDGESTONE GOLF, INC., | ) ) ) | |
| | ) | C. A. No. 05-132 (JJF) |
| Plaintiffs, | ) ) | |
| v. | ) ) | **PUBLIC VERSION** |
| ACUSHNET COMPANY, | ) ) ) | |
| Defendant. | ) | |

### ACUSHNET'S MEMORANDUM IN OPPOSITION TO BRIDGESTONE'S MOTION FOR SUMMARY JUDGMENT OF INFRINGEMENT OF U.S. PATENT NO. 6,634,961

<div style="float:right">

Richard L. Horwitz (#2246)
David E. Moore (#3983)
POTTER ANDERSON & CORROON LLP
Hercules Plaza, 6th Floor
1313 North Market Street
P. O. Box 951
Wilmington, DE  19899-0951
Tel:  (302) 984-6000
rhorwitz@potteranderson.com
dmoore@potteranderson.com

*Attorneys for Defendant*
*Acushnet Company*

</div>

OF COUNSEL:

Alan M. Grimaldi
Joseph P. Lavelle
Kenneth W. Donnelly
HOWREY LLP
1299 Pennsylvania Avenue, N.W.
Washington, DC  20004
Tel:  (202) 783-0800

Dated:  April 30, 2007
Public Version Dated:  May 7, 2007
793576 / 28946

# TABLE OF CONTENTS

**Page(s)**

I.    NATURE AND STAGE OF PROCEEDINGS ....................................................... 1

II.   SUMMARY OF ARGUMENT ............................................................................. 1

III.  BACKGROUND STATEMENT OF FACTS ....................................................... 3

IV.   ARGUMENT....................................................................................................... 7

    A.   Legal Standards................................................................................... 7

    B.   Acushnet's Current Pro V1-392 Model Golf Ball Does Not Infringe The '961 Patent ....................................................................................... 8

    C.   Bridgestone Has No Credible Evidence Of Infringement That Entitles It To Summary Judgment In Its Favor; Acushnet Is Entitled To Summary Judgment................................................................................................ 9

    D.   Recipe Change Data Shows That Acushnet Did Not Infringe The '961 Patent For Substantial Periods Of Time.................................................. 10

    E.   Bridgestone's Attempt To Accuse Additional Golf Ball Models Is Untimely And Improper........................................................................ 11

V.    CONCLUSION.................................................................................................... 13

## TABLE OF AUTHORITIES

*Anderson v. Liberty Lobby, Inc.,*
    477 U.S. 242, 106 S. Ct. 2505 (1986)........................................................7

*In re Baby Foods Antitrust Litigation,*
    166 F.3d 112 (3rd Cir. 1999) .............................................................10

*Brooke Group, Ltd. V. Brown & Williamson Tobacco Corp.,*
    509 U.S. 209 (1993).......................................................................9

*C.R. Bard, Inc. v. Advanced Cardiovascular Systems, Inc.,*
    911 F.2d 670 (Fed. Cir. 1990)...........................................................7

*Celotex Corp. v. Catrett,*
    477 U.S. 317, 106 S. Ct. 2548 (1986)..................................................7

*Daubert v. Merrell Dow Pharmaceuticals, Inc.,*
    509 U.S. 579, 113 S. Ct. 2786 (1993)..................................................9

*Gumbs v. International Harvester, Inc.,*
    718 F.2d 88 (3d Cir. 1983)...............................................................10

*KeyStone Retaining Wall System, Inc. v. Westrock, Inc.,*
    997 F.2d 1444 (Fed. Cir. 1993).........................................................8

*Monarch Knitting Machinery Corp. v. Sulzer Morat GmbH,*
    139 F.3d 877 (Fed. Cir. 1998)...........................................................7

*Out-A-Sight Pet Containment, Inc. v. Radio Systems Corp.,*
    2004 WL 1562556 (E.D. Pa. July 09, 2004)..........................................10

*Pharmastem Therapeutics, Inc. v. ViaCell Inc.,*
    2004 U.S. Dist. LEXIS 18638 (D. Del. Sept. 15, 2004)...........................10

*Robinson v. G.D. Searle & Company,*
    286 F. Supp. 2d 1216 (N.D. Ca. 2003) ...............................................9

### STATUTES

Fed. R. Civ. P. 56(c) ...........................................................................7

The Court should deny Bridgestone Sports Co., Ltd. and Bridgestone Golf, Inc.'s ("Bridgestone") Motion for Summary Judgment of Infringement of U.S. Patent No. 6,634,961 ("the '961 patent") (Ex. A) and grant either or both of Acushnet Company's ("Acushnet") summary judgment motions on the '961 patent (D.I. 365 and 367). The facts that are genuinely undisputed entitle Acushnet to summary judgment, not Bridgestone.

## I.     NATURE AND STAGE OF PROCEEDINGS

This is a patent infringement suit involving eleven patents and scheduled for trial, starting June 18, 2007. Bridgestone alleges that Acushnet infringes seven patents-in-suit. Acushnet alleges that Bridgestone infringes four patents-in-suit. The Court held a Markman hearing on November 29, 2006, but the Court has not yet issued a decision construing the asserted claims. Fact and expert discovery is finished and a pre-trial conference will be held on May 25, 2007. Acushnet filed its Motions for Summary Judgment of Non Infringement and Invalidity of U.S. Patent No. 6,634,961 on April 13, 2007 ("Acushnet's Motion")[1], and Bridgestone filed its Motion for Summary Judgment of Non-Infringement on April 13, 2007 ("Bridgestone's Motion").

## II.     SUMMARY OF ARGUMENT

1.     The only asserted claim of the '961 patent (claim 2) requires the base rubber of a golf ball core to be composed of at least 20 weight percent of a polybutadiene rubber that is synthesized using a rare earth catalyst.

---

[1] If the Court grants Acushnet's Summary Judgment Motion for Invalidity of the '961 patent (D.I. 367), the infringement issues raised by Acushnet's and Bridgestone's competing summary judgment briefs need not be reached.

2.    Incredibly, Bridgestone pursues a historical infringement theory based exclusively on a single recipe found in *guidelines* that everyone (including Bridgestone) agrees were not actually followed to make the cores of the accused Pro V1-392 golf balls. Acushnet employees testified that the guidelines are a good first source of information in general about its golf balls, but recipes for its balls change over time, and that recipe change notices must be examined to accurately determine the exact formulations of Acushnet's balls for infringement purposes. Bridgestone acknowledges this fact (D.I. 305, at pg. 12), but allowed both of its experts to disregard the factual record and declare recipe changes immaterial. (Ex. F – Cadorniga 1/16/2007 Report, at 10; Ex. H – Coughlin 1/16/2007 Report at 9). Bridgestone now continues this approach in its present motion. By strategically ignoring all recipe changes, Bridgestone lacks any credible evidence of infringement of the '961 patent – much less undisputed evidence of infringement.

3.    Bridgestone's attempt to accuse now additional golf ball models of infringing the '961 patent is untimely and improper. In August, Bridgestone decided to focus its infringement claim to one specific model golf ball, the Pro V1-392. (*See* Ex. B – 8/11/06 White Ltr. to Seal). In its current motion, however, it now requests by way of footnote that any infringement judgment be applied not only against the Pro V1-392, but to three other golf ball models: ◀●Pro V1 392●▶, ◀●Pro V1x332●▶ and ◀Pro V1x-332▶. Bridgestone does not even attempt, however, to prove that any of these additional models infringe the '961 patent; nor does it offer any evidence that these balls have a similar core formulation to the Pro V1-392. Bridgestone's claim that it only "recently" learned that it could have accused these golf models is equally unfounded.

2

### III.    BACKGROUND STATEMENT OF FACTS

Bridgestone accuses only the Pro V1-392 model golf ball of infringing the '961

patent.  Bridgestone asserts only claim 2 of the '961 patent, which depends from claim 1.

Claims 1 and 2 of the '961 patent read together as follows:

A multi-piece solid golf ball comprising a solid core, an inner cover layer and an outer cover layer, wherein *the solid core is molded from a rubber composition comprising 100 parts by weight of a base rubber composed of (a) 20 to 100 wt % of a polybutadiene having a cis-1, 4 content of* at least 60% and 1,2 vinyl content of at most 2%, having a viscosity $\eta$ at 25° C. as a 5 wt % solution in toluene of up to 600 mPa·s, *being synthesized using a rare-earth catalyst* and satisfying the relationship:  10B+ 5≤A≤10B+60, wherein A is the Mooney viscosity ($ML_{1+4}$(100° C.)) of the polybutadiene and B is the ratio Mw/Mn between the weight-average molecular weight Mw and the number-average molecular weight Mn of the polybutadiene, in combination with (b) 0 to 80 wt % of a diene rubber other than component (a), (c) 10 to 60 parts by weight of an unsaturated carboxylic acid or a metal salt thereof or both, (d) 0.1 to 5 parts by weight of an organosulfur compound, (e) 5 to 80 parts b y weight of an inorganic filler, (f) 0.1 to 5 parts by weight of an organic peroxide; the inner cover layer has a Shore D hardness of 50 to 80; the outer cover layer has a Shore D hardness of 35 to 60; and the outer cover layer has a lower Shore D hardness than the inner cover layer.

*The golf ball of claim 1*, wherein the diene rubber (b) includes 30 to 100 wt % of a second polybutadiene which has a cis-1, 4 content of at least 60% and a 1,2 vinyl content of at most 5%, has a Mooney viscosity ($ML_{1+4}$(100°C.)) of not more than 55, and satisfies the relationship: $\eta$≤20A-550, wherein A is the Mooney viscosity ($ML_{1+4}$(100°C.)) of the second polybutadiene and $\eta$ is the viscosity of the second polybutadiene, in mPa·s, at 25° C. as a 5 wt % solution in toluene.

(Ex. A – '961 patent) (emphasis added).

As can be seen from these claims, to determine infringement of the patent it is

necessary to first determine what the rubber-based core of the accused product is

comprised of.  Bridgestone acknowledges that "a proper infringement analysis requires

an understanding of the core formulation of the accused Pro V1 ball."  (Bridgestone

Motion at 3).  Bridgestone, however, has not provided any actual evidence of what the

core of the Pro V1 ball is actually comprised of.  Instead, Bridgestone relies on a single

core recipe contained in a guideline's manual, which Bridgestone knows may *never* have

been used. (Ex. C – 3/17/07 Elliott Tr. 49:9-50:4; Ex. D – 3/20/07 Gajik Tr. 19:15-20:1; D.I. 365, Ex. 8 – 4/3/07 Bartsch Decl., at ¶ 20).

For each new golf ball model produced by Acushnet, the research and development division of Acushnet typically creates a "manufacturing guidelines manual." (D.I. 365, Ex. 11 – 2/20/07 Dalton Decl., at ¶ 5). This manual aims to include information about the intended construction, formulation, manufacturing process methods, and physical attributes (such as compression, hardness and performance) of the new golf ball model. *Id.* at ¶ 5.

The guidelines include a core recipe for the new model, which recipe is provided to the manufacturing department as *a starting point* for mass production of the newly developed model. *Id.* at ¶ 6.



When an aspect of a golf ball core's formulation is changed by the manufacturing department, a recipe change notice is typically created to document the change. (D.I. 365, Ex. 11 – 2/20/07 Dalton Decl., at ¶ 7). In addition, Acushnet also documents changes to core formulations



Although Bridgestone had access to both recipe change notices and the Mesabi information, it chose strategically to ignore these changes and rely instead on a single guidelines recipe to assert that millions of Pro V1-392 model golf balls (whose core

formulation had been changed hundreds of times) infringe the '961 patent.[2]  Bridgestone has acknowledged that it was fully aware that to determine core formulations the manufacturing guidelines needed to be reviewed in light of recipe changes.  (D.I. 305 at 12).  Bridgestone states in one recent motion:

> Mr. Dalton testified (as a 30(b)(6) designee) in ***July 2006*** that, to determine core formulations, the 'manufacturing guidelines manual must be reviewed ***in light of change notices, including recipe changes***.'

(*Id.*) (emphasis added).  Yet, Bridgestone still attempts to prove infringement without considering any recipe changes by stating that Mr. Dalton ***also*** stated, "the best place to look for specifications for a product are the manufacturing guidelines" and that recipe change notices reflect "issues …related to manufacturability."  (Bridgestone Motion at 3).[3]

Of course, neither of these statements can be read legitimately to permit Bridgestone to ignore recipe changes to prove infringement.



---

[2] By the parties' agreed-upon deadline for fact discovery, and well in advance of the submission of opening expert reports, Acushnet offered on several occasions to allow Bridgestone to inspect the Mesabi database.  Bridgestone, however, declined those offers in favor of claiming prejudice that it could have easily avoided.

[3] Bridgestone further states, without any support, that "Acushnet represented that any manufacturing deviation from the core recipes listed in the Manufacturing Guidelines would have only been minor, insubstantial changes related to manufacturability." (Bridgestone Motion at 4).  This statement is not supported by any citation to the record. Instead, it comes directly out of Mr. Cadorniga's Expert Report (Bridgestone's expert), where it is similarly unsupported.  (Ex. F – 1/16/07 Cadorniga Report, pg. 10).

That the recipe changes reflect "issues related to manufacturability" does not negate the fact that the changes clearly do effect the infringement determination.

In fact, Mr. Dalton made it clear in his deposition that to accurately determine the core formulation, recipe changes must be considered:

> Q:   Okay. Are you aware of any changes to the manufacturing process or material used in the manufacture of the golf balls manufactured pursuant to [DT So/Lo Manufacturing Guidelines Manual] that would have had a material effect on the performance or property of those balls?
>
> A:   No, sir, not that would have affected the performance or properties of those balls, *as always, there were changes that were documented by change notices or recipe changes.*
>
> Q:   And you would expect any changes in the manufacturing process in materials used in those balls or concentration used in those balls to be reflected by a change notice or a recipe change?
>
> A:   I would expect so, yes.

(Ex. G – Dalton Dep. Tr. 7/27/06, pg. 617, line 12 – pg. 618, line 5) (emphasis added).

Finally, Bridgestone also alludes to difficulty in using the recipe change notices to determine the core formulations. But this is just an excuse that Bridgestone recently came up with to justify the faulty and unsupported decision of its experts to rely only on the guidelines and take a cliff notes approach to proving infringement. Both of Bridgestone's experts had access to the recipe change notices and yet decided not to rely on them based *solely* on amblyopic (and clearly wrong) considerations of the record:

> Cadorniga:   "Thus, it is my opinion, based on my more than 30 years of experience in the golf ball industry, the testimony of Acushnet and Acushnet's employees, it is appropriate, reliable and proper to look to Acushnet's manufacturing

guidelines to determine the properties, characteristics, and formulations of the accused Acushnet golf balls."

Coughlin:     "Acushnet represented that any manufacturing deviation from the core recipes listed in the Manufacturing Guidelines would have only been minor, insubstantial changes related to manufacturability.  Thus, although I have reviewed Acushnet's change notices generated during the manufacturing process for the Pro V1 golf ball, in my professional opinion it is appropriate and reliable to look to the Manufacturing Guidelines in order to determine Acushnet's core formulation ..."

(Ex. F – Cadorniga 1/16/2007 Report, at 10; Ex. H – Coughlin 1/16/2007 Report at 9).

Bridgestone wants the simplicity of proving infringement by relying exclusively on Acushnet's manufacturing guidelines manual for the Pro V1 golf ball.  But because Bridgestone has failed to prove indisputably by this method that any actual core formulation used in the Pro V1 model golf ball infringes the '961 patent, Bridgestone's motion for summary judgment should be denied.

## IV.     ARGUMENT

### A.     Legal Standards

Summary judgment is appropriate only when there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law.  Fed. R. Civ. P. 56(c); *see also Monarch Knitting Machinery Corp. v. Sulzer Morat GmbH*, 139 F.3d 877, 880 (Fed. Cir. 1998).  The burden is on the moving party to establish both the absence of a genuine issue of material fact and that it is entitled to a judgment as a matter of law.  Fed. R. Civ. P. 56(c); *C.R. Bard, Inc. v. Advanced Cardiovascular Sys., Inc.*, 911 F.2d 670, 672 (Fed. Cir. 1990); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247, 106 S. Ct. 2505 (1986).

In ruling on a motion for summary judgment, the Court must view the evidence presented in the light most favorable to the non-moving party, with all doubts resolved in favor of the non-movant.  *C.R. Bard*, 911 F.2d at 672; *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23, 106 S. Ct. 2548 (1986).  This requires, among other things, that

7

"[t]he evidence submitted by the nonmovant, in opposition to a motion for summary

judgment, 'is to be believed, and all justifiable inferences are to be drawn in [its] favor.'"

*KeyStone Retaining Wall Sys., Inc. v. Westrock, Inc.*, 997 F.2d 1444, 1449-50 (Fed. Cir.

1993) (*quoting Anderson*, 477 U.S. at 255, 106 S. Ct. 2505).  To avoid summary

judgment, "all that is required is that sufficient evidence supporting the claimed factual

dispute be shown to require a jury or judge to resolve the parties' differing versions of the

truth at trial." *Anderson* 477 U.S. at 249, 106 S. Ct. 2505.

**B.    Acushnet's Current Pro V1-392 Model Golf Ball Does
Not Infringe The '961 Patent**





Therefore, there is no dispute that Acushnet does not currently infringe claim 1 or 2 of the '961 patent. For this reason alone, Bridgestone's Motion for Summary Judgment should be denied.

**C.      Bridgestone Has No Credible Evidence Of Infringement
That Entitles It To Summary Judgment In Its Favor;
Acushnet Is Entitled To Summary Judgment**

As argued by Acushnet's own motion for summary judgment, Bridgestone's assumption that the core formulations described in the manufacturing guidelines remained constant over time was so contrary to the record, that it leaves Bridgestone with no evidence of infringement for any particular time period. *See Brooke Group, Ltd. V. Brown & Williamson Tobacco Corp.*, 509 U.S. 209 (1993) ("When an expert opinion is not supported by sufficient facts to validate it in the eyes of the law, or when indisputable record facts contradict or otherwise render the opinion unreasonable, it cannot support a jury's verdict."); *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 113 S. Ct. 2786, (1993) (discussing the importance of "fit" between the totality of facts and the argument being proffered. Specifically, the court stated that the testimony must be "sufficiently tied to the facts of the case."); *Robinson v. G.D. Searle & Co.*, 286 F. Supp. 2d 1216

(N.D. Ca. 2003) (Granting motion for summary judgment against plaintiff where plaintiff's expert did not rely on a sufficient basis of facts. Court noted that there were indisputable facts that went ignored that directly refuted the expert's opinion.); *Pharmastem Therapeutics, Inc. v. ViaCell Inc.*, 2004 U.S. Dist. LEXIS 18638 (D. Del. Sept. 15, 2004) (granting new trial because exploring only some of the defendants product was not enough to rule that 100% of defendants stem cell products infringe.) (Ex. I); *Gumbs v. Int'l Harvester, Inc.* 718 F.2d 88 (3d Cir. 1983) (sustaining objection to expert testimony for not being based on a "sufficient factual foundation," where expert offered an opinion that was inconsistent with the facts); *Out-A-Sight Pet Containment, Inc. v. Radio Systems Corp.*, 2004 WL 1562556 (E.D. Pa. Jul 09, 2004) (excluding expert due to his failure to consider entire factual record) (Ex. J); *In re Baby Foods Antitrust Litig.*, 166 F.3d 112 (3d Cir. 1999) ("An expert opinion based on the meager superficial information … is highly speculative, unreliable and of dubious admissibility before a jury.").

By relying only on manufacturing guidelines, and ignoring the complete record, Bridgestone lacks "sufficient factual foundation" and its infringement proofs are not "sufficiently tied to the facts of the case." The recipe change information, from both the recipe change notice database and the Mesabi control system, show that for substantial periods of time, Acushnet's accused product did not infringe the '961 patent.

### D.    Recipe Change Data Shows That Acushnet Did Not Infringe The '961 Patent For Substantial Periods Of Time

Recipe changes to the core formulation of the Pro V1 golf ball are properly determined by reviewing the recipe change notices and/or the data contained within the Mesabi Control System. (D.I. 365, Ex. 8 – 4/3/07 Bartsch Decl. ¶19; Ex. D – 3/20/07 Gajik Tr. 92:20-97:2; 98:1-100:6; Ex. C – 3/17/07 Elliott Tr. 89:17-93:5; 168:2-169:11).

An analysis of the recipe change notice database in combination with the Mesabi information shows the precise amounts of ingredients in the cores of the Pro V1 golf ball as they were manufactured over time. (D.I. 365, Ex. 8 – 4/3/07 Bartsch Decl., ¶19; D.I. 365, Ex. 11 – 2/20/07 Dalton Decl., ¶ 9, 17-30 and Exhibit E).





Therefore, Acushnet respectfully requests this Court to grant its Motion for Partial Summary Judgment of Non-Infringement of the '961 Patent during these time periods and to deny Bridgestone's Motion for Summary Judgment of Infringement.

### E.  Bridgestone's Attempt To Accuse Additional Golf Ball Models Is Untimely And Improper

In August, Bridgestone decided to focus its infringement claim to one specific model golf ball, the Pro V1-392. (*See* Ex. B – 8/11/06 White Ltr. to Seal). In a footnote

---

4

to its motion, however, Bridgestone requests now that any judgment with respect to the Pro V1 model golf ball be applied to three additional golf ball models:  ◄●Pro V1 392●►, ◄●Pro V1x332●► and ◄Pro V1x-332►.  Bridgestone's half-hearted attempt to accuse additional Acushnet products of infringement is infirm in several respects.

First, Bridgestone offers no proof that any of these additional models infringe the '961 patent, nor does it offer any evidence that these models have a similar formulation to the Pro V1-392.  Looking at the guidelines alone, which Bridgestone relies upon as definitive in the case of the Pro V1-392 model, those documents show that these three other golf ball models *do not* infringe the '961 patent.[5]  Bridgestone of course does not now cite that evidence, because it wants to pick and choose when the manufacturing guidelines offer any proof of infringement, so in this instance the guidelines are ignored.

Second, Bridgestone's claim that it desires now to accuse these additional balls because it learned only "recently" through "late-produced documents" that it could have done so rings hollow



Finally, Acushnet offered Bridgestone the opportunity to review and inspect its Mesabi database at Acushnet's facilities several months before expert reports.  (D.I. 365, Ex. R – Seal Declaration, at ¶ 5).

---

[5]

In reality, Bridgestone's did not pursue these additional models because it decided to rely exclusively on the manufacturing guidelines (as its expert reports confirm), despite the paper and other documents that Bridgestone clearly knew modified those guidelines. Acushnet should not be punished for Bridgestone's strategic decisions, or for its failure to review documents, ask appropriate questions or inspect a database offered to it for inspection. Therefore, Bridgestone's request to impose a verdict related to the Pro V1-392 golf ball on these additional models should be denied.

## V.    CONCLUSION

For all of the foregoing reasons, Acushnet respectfully requests the Court to deny Bridgestone's Motion for Summary Judgment of Infringement.

POTTER ANDERSON & CORROON LLP

OF COUNSEL:
Alan M. Grimaldi
Joseph P. Lavelle
Kenneth W. Donnelly
HOWREY LLP
1299 Pennsylvania Ave., N.W.
Washington, DC 20004
Telephone: (202) 783-0800

By:  */s/ David E. Moore*
    Richard L. Horwitz (#2246)
    David E. Moore (#3983)
    Hercules Plaza, 6th Floor
    1313 N. Market Street
    P.O. Box 951
    Wilmington, DE 19899-0951
    (302) 984-6000
    rhorwitz@potteranderson.com
    dmoore@potteranderson.com

Dated: April 30, 2007
Public Version Dated: May 7, 2007
793576 / 28946

*Attorneys For Defendant / Counterclaim*
*Plaintiff / Acushnet Company*

13

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

## CERTIFICATE OF SERVICE

I, David E. Moore, hereby certify that on May 7, 2007, the attached document was hand delivered to the following persons and was electronically filed with the Clerk of the Court using CM/ECF which will send notification to the registered attorney(s) of record that the document has been filed and is available for viewing and downloading:

Jack B. Blumenfeld
Maryellen Noreika
Leslie A. Polizoti
Morris, Nichols, Arsht & Tunnell
1201 N. Market Street
Wilmington, DE 19801

I hereby certify that on May 7, 2007, I have Electronically Mailed the documents to the following:

Robert M. Masters
Paul, Hastings, Janofsky & Walker LLP
875 15th Street, N.W.
Washington, D.C. 20005
RobMasters@paulhastings.com

/s/ David E. Moore
Richard L. Horwitz
David E. Moore
Potter Anderson & Corroon LLP
Hercules Plaza – Sixth Floor
1313 North Market Street
P.O. Box 951
Wilmington, DE 19899-0951
(302) 984-6000
rhorwitz@potteranderson.com
dmoore@potteranderson.com

680012 / 28946