**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

BRIDGESTONE SPORTS CO., LTD., and BRIDGESTONE GOLF, INC.,

Plaintiffs,

v.

ACUSHNET COMPANY,

Defendant.

C. A. No. 05-132 (JJF)

**PUBLIC VERSION**

# ACUSHNET'S MEMORANDUM IN OPPOSITION TO BRIDGESTONE'S MOTION FOR SUMMARY JUDGMENT OF NO INVALIDITY OF UNITED STATES PATENT NO. 5,782,707

OF COUNSEL:

Alan M. Grimaldi
Joseph P. Lavelle
Kenneth W. Donnelly
HOWREY LLP
1299 Pennsylvania Avenue, N.W.
Washington, DC 20004
Tel: (202) 783-0800

Richard L. Horwitz (#2246)
David E. Moore (#3983)
POTTER ANDERSON & CORROON LLP
Hercules Plaza, 6th Floor
1313 North Market Street
P. O. Box 951
Wilmington, DE 19899-0951
Tel: (302) 984-6000
rhorwitz@potteranderson.com
dmoore@potteranderson.com

*Attorneys for Defendant Acushnet Company*

Dated: April 30, 2007
Public Version Dated: May 7, 2007
793817 / 28946

## TABLE OF CONTENTS


I. NATURE AND STAGE OF PROCEEDINGS ........................................ 1

II. SUMMARY OF ARGUMENT ........................................ 1

III. COUNTER -STATEMENT OF FACTS ........................................ 2

IV. APPLICABLE LAW ........................................ 3

A. The Legal Standard for Summary Judgment. ........................................ 3

B. The Legal Standard for Obviousness. ........................................ 3

V. ARGUMENT ........................................ 5

A. Dr. Felker Does Not Rely on Inherency. ........................................ 5

B. The '707 Patent Is Obvious ........................................ 5

1. Scope and Content of the Prior Art ........................................ 5

2. Differences Between the Claimed Invention and the Prior Art ........................................ 8

3. Objective Factors of Non Obviousness ........................................ 11

VI. CONCLUSION ........................................ 12

## TABLE OF AUTHORITIES

### CASES

*In re Adams*,
356 F.2d 998 (C.C.P.A. 1966) ....................3

*Alvord-Polk, Inc. v. Schumacher & Co.*,
37 F.3d 996 (3d Cir. 1994)....................3

*Alza Corp. v. Mylan Laboratories, Inc.*,
464 F.3d 1286 (Fed. Cir. 2006)....................4

*A. Natterman & Cie v. Bayer Corp.*,
428 F. Supp. 2d 253 (E.D. Pa 2006) ....................3

*Anderson v. Liberty Lobby*,
477 U.S. 242 (1986)....................3

*Dippin' Dots, Inc. v. Mosey*,
476 F.3d 1337 (Fed. Cir. 2007)....................4, 10

*Graham v. John Deere Co.*,
383 U.S. 1 (1966)....................4

*In re Kahn*,
441 F.3d 997 (Fed. Cir. 2006)....................4

*KSR International Co. v. Teleflex Inc.*,
No. 04-1350, slip op. (U.S. Apr. 30, 2007)....................4, 10

*Merck & Co. v. Biocraft Laboratories., Inc.*,
874 F.2d 804, 807 (Fed. Cir. 1989)....................4

*In re O'Farrell*,
853 F.2d 894 (Fed. Cir. 1988)....................9

*Pfizer, Inc. v. Apotex, Inc.*,
480 F.3d 1348 (Fed. Cir. 2007)....................9, 10, 11

*Princeton Biochemicals, Inc. v. Beckman Coulter, Inc.*,
411 F.3d 1332 (Fed. Cir. 2005)....................9

*In re Rinehart*,
531 F.2d 1048 (C.C.P.A. 1976) ....................3

*In re Spormann*,
363 F.2d 444 (C.C.P.A. 1966) .......... 3

*Witco Corp. v. Beekhius*,
38 F.3d 682 (3d Cir. 1994).......... 3

**STATUTES**

35 U.S.C. § 102.......... 2

35 U.S.C. § 103.......... 2, 4

Defendant Acushnet Company ("Acushnet") opposes Bridgestone's Motion for Summary Judgment of No Invalidity of U.S. Patent No. 5,782,707 ("the '707 patent") (D.I. 348, Ex. 1). Bridgestone's motion should be denied.

## I. NATURE AND STAGE OF PROCEEDINGS

This patent infringement suit involves eleven patents and is scheduled for trial starting June 18, 2007. Seven of the patents-in-suit are asserted by Bridgestone. Bridgestone filed its Motion for Summary Judgment of No Invalidity of U.S. Patent No. 5,782,707 on April 13, 2007 ("Bridgestone's Motion") (D.I. 348). Simultaneously, Acushnet filed its Motion for Summary Judgment of Non-Infringement of U.S. Patent No. 5,782,707 ("Acushnet's Motion") (D.I. 369).

## II. SUMMARY OF ARGUMENT

Bridgestone's motion for summary judgment alleging that the '707 patent has not been proven invalid should be denied. Bridgestone has not established the absence of disputed facts and it has not established its entitlement to judgment as a matter of law.

First, Bridgestone spends most of its motion trying to show that Dr. Felker failed to demonstrate that example 2 of European Patent Application EP 0633 043 A1 ("EP 043") inherently discloses the limitation of claim 1 of the '707 requiring a core where "the core surface hardness is higher than the core center hardness by 8 to 20 degrees." (*See* Bridgestone's Motion at 1). However, Dr. Felker based his opinion on obviousness, which is evidenced in his invalidity expert report. Acushnet also has pointed this out to Bridgestone recently in its opposition to Bridgestone's motion for sanctions; thus, the majority of Bridgestone's motion is irrelevant.

Second, Bridgestone attempts summarily to dismiss Acushnet's obviousness argument by alleging that Dr. Felker failed to analyze the scope and content of the prior art, the level of ordinary skill in the art, the different between the claimed invention and the prior art and the objective evidence of non-obviousness. In reality, Acushnet has

amassed ample evidence that the '707 patent is invalid as obvious. Therefore, Bridgestone's motion for summary judgment of no invalidity of the '707 should be denied.

## III. COUNTER-STATEMENT OF FACTS

Bridgestone mischaracterizes at least three important facts in its opening brief. Acushnet provides an accurate version of those facts here.

First, Dr. Felker never opined in his January 16, 2007, report that balls manufactured according to the EP 043 inherently have the core gradient limitation in claim 1 of the '707 patent. Inherency is a form of anticipation under 35 U.S.C. § 102. Dr. Felker's opinion is based on obviousness under 35 U.S.C. § 103. His actual opinion is that the '707 patent "is invalid based on obviousness in light of the combination of the European Patent 0 633 043, which discloses the claimed intermediate layer and core, ***and the knowledge of one skilled in the art.***" (*See* D.I. 348, Ex. 3 - Felker 1/16/07 Report at 48) (emphasis added). The EP 043 testing, taken in its entirety, shows that one of ordinary skill in the art can use the teachings of the EP 043 to create the core hardness gradient claimed in the '707 patent without undue experimentation.

[redacted]



## IV. APPLICABLE LAW

### A. The Legal Standard for Summary Judgment.

Rule 56 of the Federal Rules of Civil Procedure mandates that summary judgment shall be rendered if "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." *Anderson v. Liberty Lobby,* 477 U.S. 242, 255 (1986). Where, as here, the summary judgment movant does not have the burden of proof at trial, the movant for summary judgment must show that the non-moving party has failed to produce evidence to establish the existence of an essential element of its case. *Alvord-Polk, Inc. v. Schumacher & Co.,* 37 F.3d 996, 1000 (3d Cir. 1994); *A. Natterman & Cie v. Bayer Corp.,* 428 F. Supp. 2d 253 (E.D. Pa. 2006). If the movant makes this showing, the non-movant must show that it has adduced sufficient evidence for a jury to rule in its favor and that fact disputes exist that preclude entry of summary judgment. *See Witco Corp. v. Beekhius,* 38 F.3d 682, 686 (3d Cir. 1994).

### B. The Legal Standard for Obviousness.

Inherency and obviousness are different concepts. *In re Rinehart*, 531 F.2d 1048, 1054 (C.C.P.A. 1976); *In re Spormann*, 363 F.2d 444, (C.C.P.A. 1966); *In re Adams*, 356

F.2d 998, (C.C.P.A. 1966). A claim may be obvious under 35 U.S.C. § 103 when the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art. Ex. J - *KSR Int'l Co. v. Teleflex, Inc.*, No. 04-1350, slip op. at 1-2 (U.S. Apr. 30, 2007); *see also Alza Corp. v. Mylan Labs., Inc.*, 464 F.3d 1286, 1289 (Fed. Cir. 2006); *In re Kahn*, 441 F.3d 997, 985 (Fed. Cir. 2006)(citing *Graham v. John Deere Co.*, 383 U.S. 1, 13, 14 (1966); *Merck & Co. v. Biocraft Labs., Inc.*, 874 F.2d 804, 807 (Fed. Cir. 1989)).

Obviousness is a question of law based upon underlying factual questions, which are (1) the scope and content of the prior art; (2) the level of ordinary skill in the prior art; (3) the differences between the claimed invention and the prior art; and (4) objective evidence of non-obviousness." *Alza Corp.*, 464 F.3d at 1289-90; *see also Dippin' Dots, Inc. v. Mosey*, 476 F.3d 1337, 1343 (Fed. Cir. 2007).

If a person of ordinary skill can implement a predictable variation, § 103 likely bars its patentability. Likewise, if a technique has been used to improve one device, and a person of ordinary skill in the art would recognize that it would improve similar devices in the same way, using the technique is obvious. *KSR*, No. 04-1350, slip op. at 13. "When there is a design need or market pressure to solve a problem and there are a finite number of identified, predictable solutions, a person of ordinary skill has a good reason to pursue the known options within his or her technical grasp. If this leads to the anticipated success, it is likely the product not [sic] of innovation but of ordinary skill and common sense." *Id.* at 17.

In conducting an obviousness analysis, the court need not seek out precise teachings directed to the specific subject matter of the challenged claim, but rather a court can take into account the inferences and creative steps that a person of ordinary skill would employ. *Id.* at 14.

## V. ARGUMENT

### A. Dr. Felker Does Not Rely on Inherency.

Bridgestone asserts that Dr. Felker's invalidity report fails to support his opinion that the core hardness difference of 8 to 20, claimed in the '707 patent, is inherent in the EP 043. However, Dr. Felker never opined that the core gradient limitation was inherent. (*See* D.I. 348, Ex. 3 - Felker 1/16/07 Report at 48; *see also* Ex. B - Acushnet's Opposition to Bridgestone's Motion for Sanctions at 36). Thus, on this ground alone Bridgestone's motion for summary judgment should be denied.

### B. The '707 Patent Is Obvious.

The extent of Bridgestone's non-obviousness position is summarized in a single paragraph that states that Dr. Felker failed to analyze the scope and content of the prior art; the level of ordinary skill in the prior art; the difference between the claimed invention and the prior art and the objective evidence of non-obviousness. (Bridgestone's Motion at 13). Quite to the contrary, some of these issues are contained in Dr. Felker's expert report and others exist elsewhere in the record. Bridgestone's motion for summary judgment of no invalidity of the '707 should be denied.

#### 1. Scope and Content of the Prior Art

The evidence will show that as early as 1983, the golf ball art was trying to make a better three piece solid golf ball that had improved distance (rebound characteristics) and controllability (spin rate), while still maintaining its durability and good feel. Over a ten year period, the PTO issued several patents disclosing recipes of how to make each individual layer of the three piece balls, which were designed to meet these objectives, in part, by optimizing the hardness of the core or its gradient. The following is a sample of

the scope and content of that art - the art the skilled artisan would have had before him at the time Bridgestone claims to have invented the golf ball in the '707 patent.[1]

On December 22, 1987, the PTO issued U.S. Patent No. 4,714,253 ("the '253 patent") entitled *Three Piece Solid Golf Ball*. The patent, which was assigned to Sumitomo Rubber Industries, Ltd., stated that the invention provided a golf ball having "an excellent rebound coefficient without adversely affecting the durability of the golf ball by controlling the diameters, the specific gravities and the ***hardnesses of the central core and outer layer of the two-piece solid core***." (Ex. C at col. 1, lines 40-46). (emphasis added). The specification further disclosed that the core had a hardness range of 57 to 80 at its center and that the hardness at 5 mm and 10 mm from the center is larger, but not more than 83. (*Id.* at col. 2, lines 51-57). "Unless the hardness distribution of the central core satisfies the specified condition, the expected object of the present invention cannot be attained." (*Id.* at col. 3, lines 3-5).

On March 26, 1991, the PTO issued U.S. Patent No. 5,002,281 ("the '281 patent"), entitled *Three Piece Solid Golf Ball* and assigned to Sumitomo Rubber Industries Ltd. Here, the objective was to develop a golf ball having "impact resilience higher than a conventional two-piece golf ball and improved hit feeling, and flying capacity." (Ex. D at col. 1, lines 62-66). The patent claims a difference of 10 or more between the central hardness of the inner core and the surface hardness of the outer core. The disclosure specifically stated that if the hardness difference is less than 10, the objectives are not achieved. (*Id.* at col. 3, lines 53-56).

On February 9, 1993, the PTO issued U.S. Patent No. 5,184,828, entitled Solid Three Piece Golf Ball and assigned to Ilya Co., Ltd. The stated objectives of this invention were to improve rebound characteristics and carry distance, while maintaining

[1] Dr. Felker mentioned all of these patents in his invalidity report. (D.I. 348, Ex. 3 - Felker 1/16/07 report at 41-42).

adequate spin rate. (Ex. E at col. 1, lines 4-7) These were achieved by controlling the size, specific gravity and hardness of the two pieces forming the core assembly. (*Id.* at col. 6, lines 43-49).

On June 4, 1997, the European Patent Office issued a patent based on the application EP 0 633 043 A1 entitled *Golf Balls* and assigned to Bridgestone, naming Hiroshi Higuchi, Hisashi Yamagishi, and Yoshinori Egashira as the inventors. Mr. Yamagishi and Mr. Higuchi are also the two inventors on the '707 Patent.

EP 043 claimed a three-piece solid golf ball. The stated objective of the invention was to achieve a good feel and controllability while maintaining the good flying performance and durability which were characteristic of solid golf balls. (D.I. 348, Ex 4 at 2, lines 32-34). The invention achieved these goals by optimizing the hardness, size and specific gravity of the three layers. (*Id.* at 2, lines 35-39).

On January 7, 1998, the PTO issued U.S. Patent No. 5,711,723 ("the '723 patent"), entitled *Three Piece Solid Golf Ball* and assigned to Sumitomo Rubber, Ltd. The goal of this invention was to provide a golf ball which attained a long flight distance when hit by a driver and an effective amount of spin when hit by a short iron (controllability). (Ex. F at Col. 1, lines 30-33). These objectives were achieved by optimizing the hardness of both the center core and the core surface. (*Id.* at col. 2, lines 22-43) The six examples all showed a center to surface hardness of 4 to 12. (*Id.* at cols. 6-7, Tables 1 and 4).

On March 24, 1998, the PTO issued U.S. Patent No. 5,730,663, entitled *Solid Golf Ball* and assigned to Sumitomo Rubber Industries Inc. The inventors wanted to provide a solid golf ball with high rebound characteristics, superior flight performance, durability, controllability and shot feel. (Ex. G at col. 1, lines 39-43). High rebound and durability were obtained when the difference between the hardness at the center of the core and that of the other portions of the core were within the range of 5%. (*Id.* at col. 3, lines 1-7).

The primary ingredients in all the golf ball cores taught in these patents were as follows: Cis-1,4 polybutadiene (base rubber), zinc diacrylate (co-cross linking agent), zinc oxide (filler), peroxide (initiator) and antioxidant. But, as these patents teach, as well as what was known in the prior art, various types of these ingredients could be used in the recipe, which could affect the resulting properties and dimensions of the cores. (*See, e.g.* '253 (BR-01 polybutadiene); '281 (BR-11 polybutadiene); '723 (BR-11 polybutadiene and Noclak NS-6 antioxidant)).

### 2. Differences Between the Claimed Invention and the Prior Art

The '707 patent discloses a three-piece solid golf ball comprising a solid core, an intermediate layer and a cover. Claim 1, the only asserted claim, reads:

> A three piece solid golf ball of the three layer structure comprising a solid core, an intermediate layer and a cover having a plurality of dimples in the ball surface wherein the solid core, intermediate layer, and cover each have a hardness as measured by a JIS-C scale hardness meter wherein the core center hardness is up to 75 degrees, the core surface hardness is up to 85 degrees, the core surface hardness is higher than the core center hardness by 8 to 20 degrees, the intermediate layer hardness is higher than the core surface hardness by at least 5 degrees, and the cover hardness is lower than the intermediate layer hardness by at least 5 degrees, and the dimples occupy at least 62% of the ball surface.
>
> (D.I. 348, Ex. 1 at col. 10, lines 55-67).

The only element the EP 043 does not expressly disclose is the core center hardness, and as a result, the difference between the core surface hardness and the core center hardness.[2] However, it would have been obvious to one of ordinary skill in the art at the relevant time[3] to take the EP 043 in combination with the knowledge of the skilled

---

[2] The EP 043 also does not disclose the dimple coverage limitation, but Bridgestone has not raised that issue in its motion for summary judgment.

[3] The skilled artisan at the time the named inventors filed the application for the '707 patent would have had a B.S. in chemistry or an equivalent discipline with five or more years of experience in the golf ball manufacturing field. (*See* Ex. H - Felker 1/16/07 Report at 3). Bridgestone's expert agrees, except to add that manufacturing experience

artisan to produce a golf ball with a core gradient between 8 and 20. *See Pfizer v. Apotex, Inc.*, 480 F.3d 1348 (Fed. Cir. 2007); *In re O'Farrell*, 853 F.2d 894, 902 (Fed. Cir. 1988) (rejection based on obviousness in light of the reference and knowledge in prior art). These were "simple additions" to the invention of the EP 043 that were well-known in the prior art. *See Princeton Biochemicals, Inc. v. Beckman Coulter, Inc.*, 411 F.3d 1332, 1338 (Fed. Cir. 2005).

The EP 043 has a detailed recipe to make the cores that satisfied the goals of the invention. Notably, however, the specific brand of rubber or antioxidant was not disclosed; thus leaving it up to one or ordinary skill in the art to select the brand of antioxidant as an obvious, routine design choice. (*See* D.I. 348, Ex. 4 at 3, lines 18-20 ("[t]he base rubber may be one conventionally used in solid golf balls and preferably is selected from polybutadiene rubber and mixes of polybutadiene rubber and polyisoprene rubber"); line 29 ("antioxidants may also be blended)). Table 1 provided examples of the exact amount of each ingredient that should be used. (*See, e.g.*, *id.* at Table 1, Example 2, 100 parts per weight ("ppw") of polybutadiene; 20 ppw zinc acrylate; 26 ppw zinc oxide; .2 ppw antioxidant; .65 ppw dicumyl peroxide). The EP 043 taught to mix these ingredients and pressure mold them at 155 C for 15 minutes. (*Id.* at 4, line 9).

At the time of the EP 043, the name of the game in the golf ball art was to make 3-piece balls that had improved distance and controllability, along with durability and good feel. These goals were accomplished in a very crowded art through tinkering with recipes and the comparable hardness of the layers, as well as the hardness gradients of the cores. (*See* Exs. C - G, *supra*).

Knowing that it was always a challenge to create a golf ball that balanced distance, control, durability and good feel and knowing that this challenge was about

---

alone would not suffice - design and development experience also would have been required. (Ex. I - Calabria 2/20/07 Report at 7).

optimizing the hardness of the core (*see* Exs. C - G, *supra*), the skilled artisan would recognize that the golf ball of the EP 043 could be improved in a similar way, i.e., tinkering with the rubber and/or antioxidant (didn't matter which) to optimize the core hardness gradient. *See* Ex. J - *KSR*, No. 04-135, slip op. at 13. It would have been obvious to one of ordinary skill in the art to look at Table 2 of EP 043 and immediately notice that the core center property was missing.

Since the stated goal of the EP 043 was good feel and controllability and maintenance of good flying performance, it would have been obvious to the skilled artisan to make a batch of the EP 043 cores pursuant to the recipe taught in the reference, and then to measure the core center, and as a result, verify the presence of a hardness gradient and optimize the gradient using routine testing procedures. *See* Ex. J - *KSR*, No. 04-135, slip op. at 13-17); *Pfizer*, 480 F.3d at 1368 (finding of obviousness where it was simply routine to test the reaction of benzene sulphonate with amlodipine to confirm presence of salt, and then to verify that the properties of amlodipine besylate were adequate); *see also Dippin'Dots*, 476 F.3d at 1344. In doing so, he would arrive at the missing elements of the '707 patent.

It also would have been obvious for a skilled artisan to make the EP 043 using different brands of rubber and/or antioxidant in the amounts disclosed in Table 1, which would then provide the core center and the resulting gradient. In fact, the EP 043 invites the artisan to do so. (*See* D.I. 381, Ex. 4 at 3, lines 18-20 ("[t]he base rubber may be one conventionally used in solid golf balls and preferably is selected from polybutadiene rubber and mixes of polybutadiene rubber and polyisoprene rubber"); line 29 ("antioxidants may also be blended"); *see also id.* at 7, lines 5-12).

This would have been obvious because the EP 043 only discloses the antioxidant and rubbers generically, as do all but one or two of the prior art patents (and even those do so simply as examples) - which strongly suggests that any antioxidant or rubber will do. *See* Ex. J - *KSR*, No. 04-135, slip op. at 13 (where there is a design need and a finite

number of identified predictable solutions, a person or ordinary skill has a good reason to pursue the known options within his or her technical grasp - this is common sense, not innovation); *Pfizer*, 480 F.3d at 1365 (where a reference places no limitation on an anion used in a tablet formulation there is a strong suggestion that any and all known ones would work for their intended purpose). [redacted] Acushnet's evidence shows that the '707 would have been obvious to one of ordinary skill in the art.

### 3. Objective Factors of Non Obviousness

There are no objective factors of non-obviousness in connection with the '707 patent. (Ex. H - Felker 1/16/07 report at 74-75). Specifically, Dr. Felker points out that Bridgestone fails to describe or explain any connection between an objective indicia of non-obviousness and the claimed invention of the '707 patent. He opines that there can be no nexus between the asserted claims of the '707 patent and the commercial success of Acushnet's products if Acushnet does not infringe the asserted claims of the '707 patent. (*See* Ex. H - Felker 1/16/07 Report at 74). Non-infringement of the '707 patent is also evidence of no copying. (*Id.*).

---

4 [redacted]

Dr. Felker further opines that Bridgestone does not describe or explain how Acushnet's failure to produce golf balls with two-layer covers was related in any way to a failure to use the claimed features of the '707 patent. (*Id.* at 75). Mr. Calabria's only retort is rather circular: "Acushnet's inability to produce balls with two-layer covers in accordance with claim 1 of the '707 patent shows that others failed to produce such a ball." (Ex. I - Calabria 2/20/07 Report at C-15). Setting aside the merits of Bridgestone's position, it has failed to offer evidence of the requisite nexus between the asserted claims of the '707 patent and any objective indicia of non-obviousness.

## VI. CONCLUSION

For all of the foregoing reasons, Acushnet requests that Bridgestone's motion for summary judgment that the '707 patent is not invalid be denied.

POTTER ANDERSON & CORROON LLP

By: /s/ David E. Moore
Richard L. Horwitz (#2246)
David E. Moore (#3983)
Hercules Plaza, 6th Floor
1313 N. Market Street
P.O. Box 951
Wilmington, DE 19899-0951
Tel: (302) 984-6000
rhorwitz@potteranderson.com
dmoore@potteranderson.com

*Attorneys For Defendant*
*Acushnet Company*

OF COUNSEL:

Alan M. Grimaldi
Joseph P. Lavelle
Kenneth W. Donnelly
HOWREY LLP
1299 Pennsylvania Ave., N.W.
Washington, DC 20004
Tel: (202) 783-0800

Dated: April 30, 2007
Public Version Dated: May 7, 2007
793817 / 28946

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

**CERTIFICATE OF SERVICE**

I, David E. Moore, hereby certify that on May 7, 2007, the attached document was hand delivered to the following persons and was electronically filed with the Clerk of the Court using CM/ECF which will send notification to the registered attorney(s) of record that the document has been filed and is available for viewing and downloading:

Jack B. Blumenfeld
Maryellen Noreika
Leslie A. Polizoti
Morris, Nichols, Arsht & Tunnell
1201 N. Market Street
Wilmington, DE 19801

I hereby certify that on May 7, 2007, I have Electronically Mailed the documents to the following:

Robert M. Masters
Paul, Hastings, Janofsky & Walker LLP
875 15th Street, N.W.
Washington, D.C. 20005
RobMasters@paulhastings.com

*/s/ David E. Moore*
Richard L. Horwitz
David E. Moore
Potter Anderson & Corroon LLP
Hercules Plaza – Sixth Floor
1313 North Market Street
P.O. Box 951
Wilmington, DE 19899-0951
(302) 984-6000
rhorwitz@potteranderson.com
dmoore@potteranderson.com

680012 / 28946