# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| BRIDGESTONE SPORTS CO., LTD., and BRIDGESTONE GOLF, INC., ) ) ) | |
| Plaintiffs, ) ) | C. A. No. 05-132 (JJF) |
| v. ) ) | **PUBLIC VERSION** |
| ACUSHNET COMPANY, ) ) | |
| Defendant. ) | |

## ACUSHNET'S MEMORANDUM IN SUPPORT OF ITS OPPOSITION TO BRIDGESTONE'S MOTION TO COMPEL PRODUCTION OF DOCUMENTS

Richard L. Horwitz (#2246)
David E. Moore (#3983)
POTTER ANDERSON & CORROON LLP
Hercules Plaza, 6th Floor
1313 North Market Street
P. O. Box 951
Wilmington, DE 19899-0951
Tel: (302) 984-6000
rhorwitz@potteranderson.com
dmoore@potteranderson.com

OF COUNSEL:

*Attorneys for Defendant*
*Acushnet Company*

Alan M. Grimaldi
Joseph P. Lavelle
Kenneth W. Donnelly
HOWREY LLP
1299 Pennsylvania Avenue, N.W.
Washington, DC 20004
Tel: (202) 783-0800

Dated: April 30, 2007
Public Version Dated: May 7, 2007
793819 / 28946

## TABLE OF CONTENTS

I.    NATURE AND STAGE OF PROCEEDINGS .......................................................1

II.   SUMMARY OF ARGUMENT ..............................................................................1

III.  STATEMENT OF FACTS .....................................................................................3

      A.    Acushnet's Use of Employees as Experts.....................................................3

      B.    Bridgestone's Use of Employees as Experts ...............................................5

      C.    Dr. Felker And The October 2000 Testing And Opinion Letter.................6

      D.    The Declaration of William Morgan.............................................................8

      E.    The Parties Expressly Agreed to Limit Expert Discovery.........................10

IV.   ARGUMENT........................................................................................................13

      A.    Employee-Expert Disclosures are Limited ................................................13

      B.    Acushnet's Waiver of the Attorney-Client Privilege and Work
            Product Protection in Connection with the 2000 Opinion Letter
            was Limited to the Document Itself and the Facts Contained
            Therein ........................................................................................................18

      C.    Acushnet Did Not Waive the Attorney-Client Privilege and Work
            Product Protection by Relying on the Technical Knowledge of
            Several of Its Employees ...........................................................................20

      D.    Acushnet Did Not Waive the Attorney-Client Privilege and Work
            Product Protection by Disclosing Testing Data to its Testifying
            Expert...........................................................................................................22

            1.    Testing on the Pro V1x Golf Ball ...................................................23

            2.    Testing on the Wilson Ultra Tour Balata Golf Ball.......................24

            3.    Testing on the JP '673 Golf Balls...................................................26

V.    CONCLUSION.....................................................................................................27

## TABLE OF AUTHORITIES

### CASES

*B.C.F. Oil Refining v. Consolidated Edison Co.,*
    171 F.R.D. 57 (S.D.N.Y. 1997) ................................................................................17

*Bank of China v. NBM LLC,*
    359 F.3d 171 (2d Cir. 2004).....................................................................................14

*Bogosian v. Gulf Oil Co.,*
    738 F.2d 587 (3d Cir. 1984).....................................................................................16

*Bowling v. Hasbro, Inc.,*
    No. 05-229S, 2006 U.S. Dist. LEXIS 58910 (D.R.I. Aug. 10, 2006)..........................13

*CP Kelco U.S. Inc., v. Pharmacia Corp.,*
    213 F.R.D. 176 (D. Del. 2003) ...........................................................................17, 19

*Day v. Conrail,*
    No. 95 Civ. 968, 1996 U.S. Dist. LEXIS 6596 (S.D.N.Y. May 15, 1996).................15

*Dobrek v. Phelan,*
    419 F.3d 259 (3d Cir. 2005).....................................................................................14

*Dyson Tech. Ltd. v. Maytag Corp.,*
    C.A. No. 05-434-GMS, 2007 U.S. Dist. LEXIS 15364
    (D. Del. Mar. 6, 2007)....................................................................................... *passim*

*In re G-I Holdings, Inc.,*
    218 F.R.D. 428 (D.N.J. 2003)...................................................................................17

*GSI Group, Inc. v. Sukup Manufacturing Co.,*
    No. 05-3011, 2007 U.S. Dist. LEXIS 18764 (C.D. Ill. Mar. 16, 2007)......................13

*Hearn v. Rhay,*
    68 F.R.D. 574 (E.D. Wash. 1975).............................................................................17

*Kent v. Katz,*
    No. 2:99 Civ. 189, 2000 U.S. Dist. LEXIS 22034,
    (D. Vt. Aug. 9, 2000) ..............................................................................................15

*Koppers Co. v. Aetna Casualty & Surety Co.,*
    847 F. Supp. 360 (D. Pa. 1994).................................................................................17

*Marcoux v. American Airlines, Inc.*,
    No. 04 CV 1376, 2006 U.S. Dist. LEXIS 88322 (E.D.N.Y. Dec. 6, 2006)...........17, 18

*Register v. PNC Finance Services Group, Inc.*,
    477 F.3d 56 (3d Cir. 2007)...........................................................................................13

*Sicurelli v. Jeneric/Penton Inc.*,
    No. 03-CV-4934, 2006 U.S. Dist. LEXIS 29813 (E.D.N.Y. May 16, 2006) ..............19

*Synthes Spine Co., L.P. v. Walden*,
    232 F.R.D. 460 (E.D. Pa. 2005)..............................................................16, 19, 21, 22

*Thorn EMI N. America v. Micron Tech.*,
    837 F. Supp. 616 (D. Del. 1993).................................................................................20

*Upchurch v. Hester*,
    C.A. No. 05-252-JJF, 2006 U.S. Dist. LEXIS 76776 (D. Del. Oct. 23, 2006)............13

*Vitalo v. Cabot Corp.*,
    212 F.R.D. 478 (E.D. Pa. 2002).................................................................................17

## FEDERAL STATUTES

Fed. R. Civ. P. 26(a)(2)................................................................ ....................................3, 15

Fed. R. Civ. P. 26(a)(2)(A) ................................................................................... *passim*

Fed. R. Civ. P. 26(a)(2)(B) ................................................................................... *passim*

Fed. R. Civ. P. 26(b)(4)(A) ......................................................................................4, 15

Fed. R. Evid. 702 ...................................................................................................3, 4, 14

Defendant Acushnet Company ("Acushnet") files this Opposition to Bridgestone's Motion to Compel Production of Documents. (D.I. 342). For the reasons disclosed herein, Bridgestone's motion should be denied.

## I.     NATURE AND STAGE OF PROCEEDINGS

This patent infringement suit involves eleven patents and is scheduled for trial starting June 18, 2007. Fact and expert discovery is finished and a pre-trial conference will be held on May 25, 2007.

## II.    SUMMARY OF ARGUMENT

Under the Scheduling Order, briefing on case dispositive motions is currently underway. As Bridgestone admits, the deadlines for expert discovery have come and gone. Despite this late hour, however, Bridgestone has filed the present motion seeking to compel an inspection of Acushnet privileged documents on its privilege log, and the production of documents relating to expert discovery that Bridgestone itself agreed – before expert discovery – would not be exchanged and would be protected from disclosure. Bridgestone's motion should be denied for any one of several reasons.[1]

1.     Bridgestone has demanded a litany of materials from Acushnet, much of which Acushnet has already produced. First, Acushnet has attached all of the raw data underlying the tests that Dr. Felker considered or relied upon to support his expert report.[2] Second, Acushnet produced, in response to requests by Bridgestone, the calibration records, testing protocols, and test plan used by Acushnet's employee-experts who performed the testing relied upon by Dr. Felker. Acushnet has further produced an

---

[1] The Court has recently referred three discovery motions to Special Master Bechtle. Judicial efficiency might best be served by combining Bridgestone's present motion with the other disputes presently before the Special Master. (*See* D.I. 341).

[2] Acushnet produced ball-by-ball data. In contrast, Bridgestone's experts only included averages of their data, and did not produce their raw data until Acushnet demanded the underlying data.

October 6, 2000 Opinion Letter that Dr. Felker reviewed, as Acushnet agreed that it would, and has investigated whether it has further documents relevant to that testing. The remainder of Bridgestone's requests are directed to material that is either irrelevant, privileged, or covered by an agreement between the parties.

2.    Acushnet has met its discovery obligation with respect to the October 2000 Opinion Letter that Dr. Felker reviewed. Because Dr. Felker reviewed the document in consideration of his opinion, Acushnet produced the document. Bridgestone's motion has failed to cite to any authority for the proposition that providing a work product or privileged document to a testifying expert constitutes any sort of broader subject matter waiver of the privilege protection. The only authority that Acushnet has found limits the waiver to the documents actually furnished to the testifying expert.

3.    Bridgestone mischaracterizes the facts and the law regarding Acushnet's employee-experts. Acushnet has identified several of its employees as employee-experts under Federal Rule of Civil Procedure 26(a)(2)(A). They will testify both as to technical facts of which they have firsthand knowledge, and to the opinions that they draw from those facts based upon their technical and specialized knowledge as individuals skilled in the golf ball art. Rule 26(a)(2)(B), which is not applicable to these employees, only mandates disclosure of materials considered by experts who must submit *written* reports – that is, those who are "retained or specially employed to provide expert testimony in the case or whose duties as an employee of the party regularly involve giving expert testimony." Fed. R. Civ. P. 26(a)(2)(B). These employees are not such experts. Moreover, Bridgestone alleges, without any support, that employees, such as William Morgan, who submitted a declaration, must have reviewed privileged documents in preparation of their opinions. That simply is not the case. Bridgestone's further attempts to compel discovery of work product testing performed by Acushnet employees that is irrelevant to their expert testimony are without merit.

2

4.    Finally, by filing its motion, Bridgestone has chosen to ignore an express and clear agreement between the parties that any experts' "notes, drafts, and communications with counsel" are not subject to discovery. (*See* Ex. A, 9/26/2005 Moore Ltr. to Masters & Saliba). Both parties have relied upon this agreement; yet, Bridgestone now asks the Court to compel the production of information falling under this agreement. Bridgestone should not be allowed to disregard an agreement that it has relied upon to its benefit. If the court, however, disregards the agreement, both parties should be compelled to produce documents withheld pursuant to that agreement.

### III.    STATEMENT OF FACTS

#### A.    Acushnet's Use of Employees as Experts

Acushnet has designated eight employees as expert witnesses under Rule 26(a)(2). These are individuals who, as provided for in Rule 702, have relevant "scientific, technical, or other specialized knowledge [that] will assist the trier of fact to understand the evidence or to determine a fact in issue," including, for example, the physical properties of prior art and accused golf balls. *See* Fed. R. Evid. 702. These employees are Jeff Dalton, Ken Welchman, Rasto Gajic, Pat Elliot, Steve Aoyama, Jay Williams, Traci Olson and David Bulpett.[3] (*See* D.I. 369 at Ex. A, 1/16/2007 Lavelle Ltr. to Masters). These employees may be called in part to testify regarding testing that they performed and that was relied upon by Dr. Felker. Others may have analyzed data upon which the experts Dr. Koenig and Dr. Lynch relied. (*See* D.I. 369 at Ex. B, 2/22/2007 Seal Ltr. to White at 2). Several of these employees are skilled artisans and would logically testify as to what one of ordinary skill would know and understand in the golf ball art.

---

[3] Acushnet also identified Dr. Murali Rajagopalan, Larry Bissonette, and Scott Gleadow as witnesses pursuant to Rule 26(a)(2)(A), but has since volunteered not to call them as expert witnesses. (*See* D.I. 369 at Ex. B ,2/22//2007 Seal Ltr. to Masters).

Acushnet made the disclosure mandated by Rule 26(a)(2)(A) on January 16, 2007, the expert disclosure date.[4] (*See* D.I. 369 at Ex. A, 1/16/2007 Lavelle Ltr. to Masters). Acushnet also provided further detail regarding the subject matter of these employees' specialized testimony – which is more detail than required by the language of Rule 26(a)(2)(A). (*See* D.I. 369 at Ex. B, 2/22/2007 Seal Ltr. to White at 2; Ex. B, 2/25/2007 Seal Ltr. to White). Acushnet made each of these individuals available for deposition, as well, as required by Rule 26(b)(4)(A). Bridgestone opted to take the deposition of five of these individuals.



Both Mr. Dalton and Mr. Bulpett have performed numerous tests at the request of Acushnet's counsel not only in connection with this litigation, but prior to the onset of this case, in anticipation of this and other litigation. Furthermore, both Mr. Dalton and Mr. Bulpett have assisted Dr. Felker in the preparation of his expert report by performing experiments and investigations that he considered for his report.

When Mr. Dalton and Mr. Bulpett were called upon to provide materials for Dr. Felker to review and consider, they worked with Acushnet's counsel to prepare

---

[4] Fed. R. Civ. P. 26(a)(2)(A) provides that "a party shall disclose to other parties the identity of any person who may be used at trial to present evidence under Rules 702, 703, or 705 of the Federal Rules of Evidence."

documents and transmit the finalized documents to Dr. Felker. In the course of their work, as all experts have done in this case, they took notes and prepared drafts, but these materials were not disclosed to Dr. Felker, or if they were, they were produced to Bridgestone as required by Rule 26(a)(2)(B). The employees also orally consulted with Dr. Felker regarding the materials that he had relied upon.

Dr. Felker has appended to his expert report all of the materials from Acushnet that he considered or relied upon in forming his opinions, including all materials and data provided by Mr. Dalton and Mr. Bulpett. Furthermore, Acushnet has, on several instances since the exchange of expert reports, supplemented its production with the materials that Mr. Dalton and Mr. Bulpett considered in formulating their testing regimes that were shared with Dr. Felker. Acushnet, for example, has produced the calibration records for its test equipment that was shown to Dr. Felker, the test protocol that Mr. Dalton followed in conducting his prior art ball testing, which was drafted in consultation with Dr. Felker, and Acushnet's internal testing standards and manuals that Mr. Dalton and Mr. Bulpett consulted when they performed relevant tests. (*See* Ex. H, 2/1/2007 Chase Ltr. to Masters (enclosing AB 0116309 – AB 0116432); Ex. I, 3/7/2007 Jenkins e-mail to Wikberg). That is the extent of the materials that Mr. Dalton and Mr. Bulpett have consulted in performing the testing that Dr. Felker has considered or relied upon to form his opinions on invalidity and non-infringement.

### B.    Bridgestone's Use of Employees as Experts

Bridgestone likewise has had its employees perform tests relied upon by its testifying experts. However, unlike Acushnet, Bridgestone has neither designated them under Rule 26(a)(2)(A) nor made these employees available for deposition.[5] ▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

---

[5] Acushnet should not be penalized for complying with the Federal Rules while Bridgestone is allowed to withhold evidence simply because it failed to do so.



**C.    Dr. Felker And The October 2000 Testing And Opinion Letter**





█████████████████████████████████████████████████████

Acushnet first provided the results of Mr. Dalton's testing to Bridgestone on
February 15, 2007, before Bridgestone filed this lawsuit. ████████████████████

████████████████████████████ Acushnet also disclosed the EP 043 as relevant art on July 4,
2005, in its answers to Bridgestone Interrogatory No. 5, which asked for the basis for
Acushnet's invalidity allegations. (*See* Ex. O, Acushnet's First Response to Bridgestone
Interrogatory No. 5). Acushnet did not produce the Opinion Letter itself, but logged it on
its privilege log as attorney client privileged and work product.

Dr. Felker and Mr. Dalton had numerous conversations regarding various testing
that was performed at Acushnet regarding the invalidity of all of the patents-in-suit,
including this testing related to the '707 patent. During these discussions, which touched
upon the EP 043 reference, Dr. Felker learned of the details of this testing, although no
one explained that this particular testing was performed in connection with an opinion of
counsel. Rather, he was simply supplied with the facts surrounding Mr. Dalton's testing,
which Mr. Dalton would testify about at trial. After these discussions with Mr. Dalton,
Dr. Felker was satisfied that the cores were made and tested pursuant to acceptable test
methods and protocols; thus he could rely on the results in connection with his expert
report. Dr. Felker relied on the verbal report from Mr. Dalton.

After Bridgestone's expert Mr. Calabria criticized Dr. Felker's description of the
testing of the EP 043 in Calabria's February 20, 2007 report, however, there were
subsequent conversations about this testing. Dr. Felker was told that the testing was done
in connection with an opinion of counsel and he was shown the opinion. Dr. Felker only
reviewed the portion of the opinion regarding the EP 043 testing and continued to be

satisfied with his opinion. Because Dr. Felker considered this document in connection

with his opinion, however, Acushnet provided it to Bridgestone on March 2, 2007.[7]

### D.    The Declaration of William Morgan

Contrary to Bridgestone's assertions, William Morgan did not base his declaration

upon the review of any privileged documents such as "opinions of counsel on the '652

patent," or other legal analysis.[8] (D.I. 344 at 12). The vast majority of Mr. Morgan's

declaration is a recital of facts of which he has personal knowledge. The opinions that he

forms are based upon this personal knowledge. He did have discussions with the

attorneys regarding which patents were at issue in this case, but he had to in order to

know what to write about. (*See* Ex. Q, 3/19/2007 Morgan Tr. at 31:5 – 35:12).

Mr. Morgan primarily relied upon the documents discussed in his declaration,

with a few exceptions ███████████████████████████████████

███████████████████████ (*See* Ex. Q, 3/19/2007 Morgan Tr. at 36:5 – 39:18).

His declaration does not discuss any privileged communication or legal analysis.[9] (*See*

D.I 369 at Ex. M, 2/20/2007 Morgan Declaration). All that he does is characterize

Acushnet's business practices with regard to patents, from his perspective as head of

---

[7] In contrast to this situation, as discussed *infra* § III.E., Dr. Caulfield, Bridgestone's
testing expert, claims to have made or kept *no* written records whatsoever of a "Program
A" testing that he considered and relied upon to support opinions he will give at trial on
the test methods that Bridgestone is using to prove infringement. (*See* Ex. P, 3/29/2007
Caulfield Tr. at 185:9 – 187:15)

[8] Gerald Bellis likewise did not participate in golf ball testing upon which Dr. Felker
relies, or otherwise communicate attorney-client privileged or work product protected
information to Dr. Felker or to any Acushnet employee in connection with their expert
testimony. (*See* Ex. R, 3/8/2007 Bellis Tr. at 40:6 – 40:21). This allegation is nothing
more than further speculation on Bridgestone's part.

[9] Mr. Morgan did review a database of publicly available patents, with the assistance of
his legal department, and he reported the results of this review in his declaration at
paragraphs 53 to 57. (*See* D.I 369 at Ex. M, 2/20/2007 Morgan Declaration at ¶¶ 53 – 57;
Ex. Q, 3/19/2007 Morgan Tr. at 32:2 – 34:12).

research and development.  (*See* D.I 369 at Ex. M, 2/20/2007 Morgan Declaration at ¶¶ 53 – 62).

Bridgestone mischaracterizes Mr. Morgan's testimony regarding the materials he reviewed in preparing his opinion.

However, he did not state that he did so in connection with preparing this report.  He did not.  What Mr. Morgan did review and consider has been identified in his declaration or in an attachment to his declaration, or in testimony during his deposition on the subject of the declaration. (*See* D.I 369 at Ex. M, 2/20/2007 Morgan Decl. at Ex. B; Ex. Q, 3/19/2007 Morgan Tr. at 36:5 – 39:18).

Likewise, Mr. Morgan did not admit that his opinion "came directly from Acushnet's attorneys." (D.I. 344 at 12).

Also, contrary to what Bridgestone alleges, Mr. Morgan did not offer an "opinion of non-infringement of the '652 patent." (D.I. 344 at 12). As he admits, he is not a patent lawyer. (Ex. D.I. 369 at Ex. M, 2/20/2007 Morgan Decl. at ¶ 59).



In short, Mr. Morgan did not review any "opinions of counsel on the '652 Patent; testing or measurements of Acushnet products vis-à-vis the claims of the '652 Patent," or any other documents memorializing "information relating to Acushnet's attempts to design around the '652 patent" in creating his declaration. (D.I. 344 at 12). Bridgestone has never established that he reviewed any of the documents that it claims he has relied upon. He did not need to review any of the attorneys' analysis to recall the facts to which he testified.

### E. The Parties Expressly Agreed to Limit Expert Discovery

On September 26, 2005, more than a year before expert discovery, the parties agreed orally, and memorialized by letter, that "expert witnesses' notes, drafts, and communications with counsel are excluded from discovery." (Ex. A, 9/26/2005 Moore Ltr. to Masters & Saliba). Bridgestone's own conduct in this litigation shows what they

understand the scope of this agreement to mean, for it has clearly relied upon this agreement and withheld numerous categories of draft expert witness materials itself.

For example, Bridgestone's counsel hired Dr. Edward Caulfield in 2002 to investigate techniques of measuring golf balls. (*See* Ex. P, 3/29/2007 Caulfield Tr. at 15:11 – 15:22). He performed experiments to evaluate different methods and methodologies of testing golf balls. (*See* Ex. P, 3/29/2007 Caulfield Tr. at 17:23 – 19:8). He also considered or relied on the results of these tests in forming his opinions regarding how to test golf balls in this case. In fact, he testified at his deposition that the opinions in Exhibit 9 of his expert report are based upon this testing. (*See* Ex. P, 3/29/2007 Caulfield Tr. at 56:17 – 59:5). However, Bridgestone's counsel asserted the parties' agreement to instruct the witness to limit his answers at his testing deposition. (*See* Ex. P, 3/29/2007 Caulfield Tr. at 16:17 – 17:17 (instructing the witness not to disclose privileged communications because of the parties' agreement, which Bridgestone's counsel characterizes as "broad")).

Dr. Caulfield characterized this first set of experimentation, during which he performed tests that he later relied on when determining which protocols to use, as "Program A," which allegedly lasted from 2002 through 2005. (*See* Ex. P, 3/29/2007 Caulfield Tr. at 59:10 – 61:1). During the early months of 2005 is when the parties were attempting to resolve this dispute prior to Bridgestone filing this lawsuit. (*See* Ex. N, 2/14/2005 Lester Ltr. to Masters). Incredibly, however, Dr. Caulfield claims that absolutely no records were kept of any of this testing. (*See* Ex. P, 3/29/2007 Caulfield Tr. at 64:1 – 68:18). Furthermore, Bridgestone's experts Cadorniga, Caulfield, and Jones met together in Dr. Caulfield's laboratory sometime around August 2006 to perform trial tests to determine the test protocols that they were going use to test Acushnet products. (*See* Ex. S, 3/12/2007 Cadorniga Tr. at 245:21 – 246:20). And Bridgestone never produced any documentation regarding any of this "prototype" testing either, despite Acushnet's requests. (*See* Ex. T, 3/16/2007 Stasio Ltr. to White; Ex. U, 3/27/2007

11

Stasio e-mail to White). In fact, Bridgestone has produced absolutely no documents reflecting this "Program A" work.

Once they completed "Program A" testing and were ready, Bridgestone's experts began what they called "Program B." (*See* Ex. P, 3/29/2007 Caulfield Tr. at 62:3 – 63:4). These are the tests undertaken by Bridgestone that Mr. Cadorniga then elected to cite in his expert report.

Bridgestone has also failed to produce all documents created during its "Program B" testing. For example, Bridgestone's experts changed their opinions regarding which test methods are proper during the course of their experimentation. On the eve of the deposition of its infringement expert, Bridgestone produced 27 pages of test results containing the results of previously undisclosed infringement testing of Acushnet products from "Program B."[10] (*See* Ex. V, 3/28/2007 White Ltr. to Stasio). This testing shows that none of the accused products infringe the '834 patent. Dr. Caulfield later justified Bridgestone's rejection of this data by explaining that, after performing these tests, he had an epiphany that the method employed was not true to the patent claim language. (*See* Ex. P, 3/29/2007 Caulfield Tr. at 146:9 – 150:23).

Although it eventually produced these 27 pages of data from tests Dr. Caulfield performed six months ago, Bridgestone still has produced no protocols or other documents about these tests. Under the parties' agreement, it claims that these protocols are "drafts." (*See* Ex. W, 3/30/2007 Jones Tr. at 35:18 – 38:22).[11]

---

[10] Dr. Caulfield never mentioned these tests in his January 16, 2007 expert report. He does not describe these tests, the protocols used to perform them, or their results anywhere in his report. Therefore, Bridgestone's assertion that "Bridgestone, in contrast, retained an independent expert, Dr. Edward Caulfield . . . . to prepare and render a report describing all of the tests he conducted, the protocols used, and the results" is incorrect. (D.I. 344 at 5 n. 4).

[11] Although Mr. Jones claims that this protocol is a draft, he testified that when a protocol is given to a technician to perform the testing it is final, and he did give this protocol to a technician. (*See* Ex. W, 3/29/2007 Jones Tr. at 33:1 – 33:15; 35:18 – 38:22). Bridgestone has failed to both produce the relevant protocols or to volunteer these test

## IV.    ARGUMENT

### A.    Employee-Expert Disclosures are Limited

There is no controlling law that compels employee-experts, who do not furnish expert reports, to produce any materials that they have reviewed in formulating the specialized testimony and opinions they will give at trial, let alone documents that are accorded work product protection.

As this Court has observed, "not all identified experts must submit expert reports." Ex. CC, *Upchurch v. Hester*, C.A. No. 05-252-JJF, 2006 U.S. Dist. LEXIS 76776, at *6 (D. Del. Oct. 23, 2006). Rule 26(a)(2)(B) does not require reports from experts who are not "retained or specifically employed to provide expert testimony." *Id.* "Employees of a party who do not regularly give expert testimony as part of their duties are not required to produce expert reports that disclose all the data on which they relied." Ex. DD, *GSI Group, Inc. v. Sukup Mfg. Co.*, No. 05-3011, 2007 U.S. Dist. LEXIS 18764, at * 5 (C.D. Ill. Mar. 16, 2007) (holding that Rule 26(a)(2)(B) does not require a party to disclose everything that employee witness have seen prior to formulating their opinions, including otherwise privileged materials); Ex. EE, *Bowling v. Hasbro, Inc.*, No. 05-229S, 2006 U.S. Dist. LEXIS 58910, at *3 - * 6 (D.R.I. Aug. 10, 2006) (denying motion to strike the expert testimony of two executives, including the Vice President of R&D and Inventor Relations on the grounds that they did not produce an expert report because Rule 26(a)(2)(B) did not require such reports).

The plain text of Rule 26(a)(2)(B) does not require any reports by employee-experts.[12] It says the opposite:

---

results, only producing the test results after Mr. Cadorniga disclosed in his deposition that there was some additional testing that he saw and after Acushnet asked repeatedly for this testing. (*See* Ex. S, 3/12/2007 Cadorniga Tr. at 245:1 – 246:7; Ex.T, 3/16/2007 Stasio ltr. to White; Ex. U, 3/27/2007 Stasio e-mail to White).

[12] *See Register v. PNC Fin. Servs. Group, Inc.*, 477 F.3d 56, 67 (3d Cir. 2007) ("when interpreting statutes or regulations, the first step is to determine whether the language at

Except as otherwise stipulated or directed by the court, this disclosure shall, *with respect to a witness who is retained or specially employed to provide expert testimony in the case or whose duties as an employee of the party regularly involve giving expert testimony*, be accompanied by a written report prepared and signed by the witness. *The report* shall contain a complete statement of all opinions to be expressed and the basis and reasons therefor; *the data or other information considered by the witness in forming the opinions*;

(Fed. R. Civ. P. 26(a)(2)(B) (emphasis added)). The Advisory Committee Notes to Rule 26 confirms this:

This rule and revised Rule 30 continue to use the term "expert" to refer to those persons who will testify under Rule 702 of the Federal Rules of Evidence with respect to scientific, technical, and other specialized matters. The requirement of a written report in paragraph (2)(B), however, applies only to those experts who are retained or specially employed to provide such testimony in the case or whose duties as an employee of a party regularly involve the giving of such testimony.

(Fed. R. Civ. P. 26 advisory committee's notes). The Court of Appeals for the Second Circuit has recently followed the plain language of Rule 26(a)(2)(A) and Rule 26(A)(2)(B):

Notably, although defendants were entitled to notice, pursuant to Rule 26(a)(2)(A), that Huang would testify as an expert, they were not entitled to an expert report under Rule 26(a)(2)(B). "This Rule only requires a witness who is retained or specially employed to provide expert testimony in the case or whose duties as an employee of the party regularly involve giving expert testimony" to prepare a signed written report. Where the witness is not specially retained or employed to give expert testimony, or does not regularly give expert testimony in his or her capacity as an employee, no expert report is required. Because Huang was not specially retained to provide expert testimony, and his duties as an employee of Bank of China do not regularly include giving expert testimony, Rule 26(a)(2)(B) does not apply.

*Bank of China v. NBM LLC*, 359 F.3d 171, 182 n. 13 (2d Cir. 2004) (citations to numerous cases stating the same omitted).

---

issue has a plain and unambiguous meaning" (citing *Dobrek v. Phelan*, 419 F.3d 259, 263 (3d Cir. 2005))).

Thus, "data or other information considered by the witness in forming" his opinions must be included in the expert's report of Rule 26(a)(2)(B). But Rule 26(a)(2)(B) states that it only applies to experts who are not "retained or specially employed to provide expert testimony in the case or whose duties as an employee of the party regularly involve giving expert testimony." All that is required for an employee expert is therefore: (1) as provided in Rule 26(a)(2)(A), that he be identified; and (2) as provided in Rule 26(b)(4)(A), that the witness be made available for deposition. *See also* Ex. FF, *Kent v. Katz*, No. 2:99 Civ. 189, 2000 U.S. Dist. LEXIS 22034, at *3 (D. Vt. Aug. 9, 2000) ("The structure of Rule 26(a)(2) provides a clear distinction between the retained class of experts and the unretained class of experts. . . . This distinction protects experts from preparing reports when they are not retained to do so and when it is outside the scope of their regular duties.") (citations omitted).

The only district court case in Delaware that Bridgestone cites to support its argument to the contrary is *Dyson Technology*, which fails to consider the plain text of Rule 26 and the clear commentary on the rule, and relies heavily on a district court case in the Southern District of New York that is inconsistent with subsequent cases in the Second Circuit. *See* Ex. GG, *Dyson Tech. Ltd. v. Maytag Corp.*, C.A. No. 05-434-GMS, 2007 U.S. Dist. LEXIS 15364 (D. Del. Mar. 6, 2007) (citing Ex. HH, *Day v. Conrail*, No. 95 Civ. 968, 1996 U.S. Dist. LEXIS 6596 (S.D.N.Y. May 15, 1996)).

Moreover, the Dyson court premised its holding on the fact that the employee-experts in that case submitted written expert reports, which, it determined, then triggered the disclosure requirement of Rule 26(a)(2)(B). *Id.* at *8. So, its holding was limited to experts who submitted written reports as if they were 26(a)(2)(B) experts:

> After having considered the relevant law, the court concludes that Rule 26(a)(2)(B) requires disclosure of all information considered by a testifying expert in formulating his or her ***report***, without regard to the asserted privilege.

*Id.* at * 10 (emphasis added).  As the *Dyson* court observed, it is the only Delaware case
to address the application of Rule 26 to an employee-expert witness.  *Id.* at *5. [13]

  Furthermore, even after *Dyson*, when disclosure of work product considered by a
testifying employee-expert is compelled, the scope of disclosure from employee-experts
is narrowly tailored to the specific materials considered by the expert in connection with
the testimony he intends to give at trial.  The court in *Dyson* refused the movant's request
for materials that were not actually considered by an employee expert in connection with
formulating his opinions:

> Maytag contends that it is entitled to all information and documents
> considered by Widdowson before or in connection with the formulation of
> his expert opinions, regardless of any claims of attorney-client privilege,
> work-product protection, or time limitations before or after his designation
> as a testifying expert. ***The court disagrees and will limit production to
> only the information and documents considered by Widdowson in
> connection with formulating his expert opinions expressed in his report.***
> Widdowson is an employee of Dyson Limited who also is being offered as
> an expert. Thus, ***he possesses general information regarding his ordinary
> job duties, as well as the specialized knowledge contained in his expert
> report*** . Under these circumstances, the court finds that ***it would be
> burdensome and unjust to order the production of information and
> documents not considered by Widdowson in connection with his expert
> report.***

Ex. GG, *Dyson Tech. Ltd.*, 2007 U.S. Dist. LEXIS at * 14 (emphasis added).  *See also*
*Synthes Spine Co., L.P. v. Walden*, 232 F.R.D. 460, 465 (E.D. Pa. 2005) ("defendants are
not entitled to notes that have no relation to the expert's role as a testifying expert");

---

[13] Prevailing Third Circuit law does not mandate "mandatory disclosure" of all materials
considered by an expert witness in any event.  Bridgestone cites to no appellate law in
support of its argument that Rule 26 mandates disclosure of work product shown to
experts.  That is because the controlling appellate precedent in the Third Circuit,
*Bogosian v. Gulf Oil Company*, holds that core work product disclosed to a testifying
witness is not discoverable.  *Bogosian v. Gulf Oil Co.*, 738 F.2d 587, 590-91 (3d Cir.
1984).

*B.C.F. Oil Ref. v. Consol. Edison Co.*, 171 F.R.D. 57, 62 (S.D.N.Y. 1997) ("documents having no relation to the expert's role as an expert need not be produced").

As other courts have found, disclosure is generally limited to the documents viewed by the expert themselves in consideration of their opinions. *See CP Kelco U.S. Inc., v. Pharmacia Corp.*, 213 F.R.D. 176, 179 (D. Del. 2003) ("Pharmacia is directed to produce forthwith all documents disclosed to Mr. Schnapf, as required by Federal Rule of Civil Procedure 26."); *Vitalo v. Cabot Corp.*, 212 F.R.D. 478, 479 (E.D. Pa. 2002) (same).

Finally, Bridgestone has not made any showing that they are entitled to a broad subject matter waiver for the entire subject matter of materials shown to an expert witness. *See, e.g.,* Ex. II, *Marcoux v. American Airlines, Inc.*, No. 04 CV 1376, 2006 U.S. Dist. LEXIS 88322, at *12 (E.D.N.Y. Dec. 6, 2006) ("the broad application of 'at issue' waiver advocated by plaintiffs would eviscerate all privileged material related to the subject matter of an expert's opinion and is not supported by the law"). Among other things, Bridgestone has offered no legal analysis to show why it is entitled to an "at issue waiver," such as the *Hearn v. Rhay* analysis which has been looked to by courts in this and other circuits. *See Hearn v. Rhay*, 68 F.R.D. 574, 580 (E.D. Wash. 1975); *In re G-I Holdings, Inc.*, 218 F.R.D. 428, 431 (D.N.J. 2003); *Koppers Co. v. Aetna Cas. & Sur. Co.*, 847 F. Supp. 360, 362 (D. Pa. 1994); Ex. II, *Marcoux* 2006 U.S. Dist. LEXIS at *12.

In fact, Bridgestone's requests, had it included an analysis of this issue, would fail the "at issue" analysis. Under the third prong of this analysis, Acushnet's assertion of privilege on materials not relied upon by Dr. Felker has not denied Bridgestone access to information vital to its case. Ex. II, *Marcoux* 2006 U.S. Dist. LEXIS at *14 - *15. In *Marcoux*, the Eastern District of New York denied a motion to compel documents related to the subject matter of an expert's report, but that were not relied upon by the expert, because, *inter alia*, the movant had already received relevant documents reviewed by the

expert, had deposed key witnesses with knowledge of the subject matter, and had the opportunity to have its own expert render an opinion based upon the data relied upon by the non-moving party's expert. *Id.* at *14 - *15.

> **B.    Acushnet's Waiver of the Attorney-Client Privilege and Work Product Protection in Connection with the 2000 Opinion Letter was Limited to the Document Itself and the Facts Contained Therein**

In its motion, Bridgestone requests that the Court order Acushnet to produce any documents listed on Acushnet's privilege log that relate to the 2000 Opinion Letter, and identifies a list of entries from Acushnet's privilege log that appear to relate to the opinion letter. (D.I. 344 at 10 n. 6).



Acushnet welcomes the Court to review these documents *in camera*, though it does not believe that any of the documents are subject to a waiver for the reasons discussed already as well as for the reasons discussed below.

While Acushnet maintains that there is nothing further even to consider from its privilege log relating to the '707 patent, Acushnet also contends that Bridgestone has not established that it is entitled to any further documents as a result of Acushnet's disclosure of the 2000 Opinion Letter to Acushnet's expert for additional reasons.[14]

First, Bridgestone is incorrect to allege that Acushnet's "voluntary" production of this document constituted a waiver of the privilege and work product protection as to the subject matter in it. Materials shown to an expert witness must be disclosed; however, the act of showing a document to an expert witness does not constitute a waiver of the privilege on all of the subject matter related to the document. *See* Ex. JJ *Sicurelli v. Jeneric/Penton Inc.*, No. 03-CV-4934, 2006 U.S. Dist. LEXIS 29813, at *12 (E.D.N.Y. May 16, 2006) (only testing that a party's expert considered in formulating his expert opinion, or that a party intends otherwise to rely upon is subject to an "at-issue" waiver); Ex. GG, *Dyson Tech. Ltd.*, 2007 U.S. Dist. LEXIS at * 14 ("it would be burdensome and unjust to order the production of information and documents not considered" in connection with an expert's report); *Synthes Spine Co.*, 232 F.R.D. at 465 (movant is "not entitled to notes that have no relation to the expert's role as a testifying expert").

Acushnet has met its obligation under Third Circuit law – it has provided Bridgestone with the document reviewed by Dr. Felker. *See CP Kelco*, 213 F.R.D. at 179 (determining that Rule 26 requires production of all documents disclosed to an expert). Consequentially, Bridgestone has no basis to request any documents beyond those relating to the testing results that Dr. Felker considered in forming his opinions.

Second, Bridgestone's claim that it is entitled to documents on Acushnet's log relating to core gradients and the formation of core gradients because these topics are relevant to the Opinion Letter's non-infringement analysis is entirely without merit. (D.I.

---

14 ██████████████████████████████████████████████████
██████████████████

344 at 10). The documents that Bridgestone requests are well beyond the scope of the subject matter of the opinion letter. As a threshold matter, the advice of counsel regarding non-infringement is irrelevant to the issues in the present matter:

> Typically, counsel's advice to a client on whether or not the client may be infringing a valid patent is not relevant to the claims in an action for patent infringement. Evidence of that advice would not tend to make the existence of any fact of consequence to the determination of the action more or less probable and would not, therefore, fall within the definition of relevant evidence under Federal Rule of Evidence 401.

*Thorn EMI N. Am. v. Micron Tech.*, 837 F. Supp. 616, 620-621 (D. Del. 1993).



### C.    Acushnet Did Not Waive the Attorney-Client Privilege and Work Product Protection by Relying on the Technical Knowledge of Several of Its Employees

Bridgestone also argues in its brief that it is entitled to "all documents that Acushnet's [employee-] experts considered in formulating their opinions and all documents related to the subject matter disclosed therein," and then goes on to allege that

Acushnet's counsel has selectively given its employee-experts documents to review. (D.I. 344 at 11). This is unsupported, and again a mischaracterization of the facts.

Acushnet's counsel has asked its engineering staff, several of whom are skilled in the art and possess specialized knowledge related to the testing performed in this case, to do two distinct things relating to this litigation. First, it has asked them to perform factual investigation and experimentation to assist counsel in the development of legal strategy. This is work product. Second, and distinctly, it has asked them to work with Dr. Felker and perform experiments and for him to rely on in the formulation of his expert opinions.

Acushnet's employee-experts have explicitly been identified as Rule 26(a)(2)(A) persons with respect to the latter – that is, with respect to their technical and specialized knowledge of the art and testing, and the physical testing relied upon by Dr. Felker in his reports. Except for the "notes, drafts, and communications with counsel" withheld on the basis of the parties' agreement related to expert discovery, Acushnet has produced all relevant materials considered by its employee experts in this connection.

Furthermore, Bridgestone has no basis in law for requesting that Acushnet produce anything beyond the materials that its technical employee-experts considered and generated when conducting the tests that Dr. Felker relied upon. First, as already discussed, nowhere in the Federal Rules is there a requirement that employee-experts furnish expert reports, let alone all materials that they considered in formulating their opinions. Second, the scope of waiver of attorney-client privilege, and work product protection, if any, would be limited to the actual documents that the experts have reviewed – in consideration of their testimony for trial and nothing else. *See Dyson Tech. Ltd.*, 2007 U.S. Dist. LEXIS at *14; *Synthes Spine Co.*, 232 F.R.D. at 465. Third, Bridgestone is estopped from requesting these documents because it has agreed that experts' notes, drafts, and communications with counsel are excluded from discovery. On September 26, 2005 the parties plainly agreed that "expert witnesses' notes, drafts, and communications with counsel are excluded from discovery." (Ex. A, 9/26/2005

Moore Ltr. to Masters & Saliba at 7). Acushnet does not understand how Bridgestone can now come and ask for documents that it agreed are excluded from discovery. Finally, Bridgestone had the opportunity to depose the individuals Acushnet has proffered with respect to the testing that they performed, and it has taken these depositions.

With respect to William Morgan, Bridgestone's request is especially unfounded. In its brief, Bridgestone alleges that Mr. Morgan consulted with privileged documents to form his opinions. But this is simply not the case. It provides no citation for this litany of privileged documents that it contends he consulted, and it cannot. (D.I. 344 at 12). Bridgestone ignores the list of documents Mr. Morgan testified that he did consider and rely upon. In any event, Mr. Morgan had firsthand knowledge of decisions that he, and other Acushnet managers, had made based upon discussions with counsel. He reported the actions that Acushnet took. His declaration did not disclose any advice of counsel or analysis performed by counsel, and he simply did not review any in preparation of his declaration. Bridgestone is not entitled to any privileged or protected materials which Mr. Morgan considered outside of his role as an expert witness. *See Synthes Spine Co.*, 232 F.R.D. at 465 ("Rule 26(a)(2)(B) does not require disclosure of documents having no relation to expert's role as testifying expert.").

### D.    Acushnet Did Not Waive the Attorney-Client Privilege and Work Product Protection by Disclosing Testing Data to its Testifying Expert

Finally, in demanding that Acushnet produce "all of its test results and other documents that Dr. Felker and the employees that Acushnet represents to be experts considered," Bridgestone has identified only three purported instances where documents have allegedly not been produced. (D.I. 344 at 14).

### 1.    Testing on the Pro V1x Golf Ball

Bridgestone argues that Acushnet is obligated to produce the "underling raw data for the tests and any other documents which relate to all hardness gradient testing of any of the accused balls, including but not limited to the Pro V1x golf balls." (D.I. 344 at 14). Bridgestone bases this request upon three graphs in Dr. Felker's report, which show the results of hardness gradient testing on the Pro V1x golf ball. (*See* D.I 369 at Ex. P, 2/20/2007 Felker Report at ¶ 469). These three graphs simply rebut Mr. Cadorniga's conclusions by showing that, if additional data points are measured in accordance with Dr. Caulfield's testing protocol, the additional data points show that the Pro V1x does not infringe the "gradually increasing" hardness limitation. (*See* D.I 369 at Ex. P, 2/20/2007 Felker Report at ¶¶ 468 - 470).

Dr. Felker has produced all of the relevant data from this testing in his expert report. As this is the only "hardness gradient testing of any of the accused balls," that Dr. Felker reviewed or considered it is all that Bridgestone is entitled to. (D.I. 344 at 14)

Bridgestone does not explain how Rule 26 mandates the broad disclosure of "all hardness gradient testing of any of the accused balls," whether privileged or subject to work product protection. Mr. Dalton and Mr. Bulpett will testify as to the facts and their opinions regarding the results of tests performed on the Pro V1x golf ball in accordance with the protocol described in Dr. Felker's report. At most, Rule 26 mandates disclosure of the materials they considered in connection with those tests. Any other tests are simply irrelevant. To the extent that Mr. Dalton or Mr. Bulpett performed any other core gradient testing at the request of counsel during the course of their employment, it would be work product that is not subject to discovery. Even the *Dyson* case that Bridgestone cites states that it would be burdensome and unjust to order the production of information and documents not considered by these employee-experts in connection with their expert testimony. *See Dyson Tech. Ltd.*, 2007 U.S. Dist. LEXIS at * 14.

Notably, Bridgestone mischaracterizes Mr. Dalton's testimony when it represents that "Acushnet has not produced all of the test results" of the testing that Mr. Dalton discussed during his March 2, 2007 deposition. (D.I. 344 at 14). In his deposition, Mr. Dalton was asked whether he maintained notes of additional data regarding the tests that he had performed – such as ball diameter. (*See* D.I 369 at Ex. Q, 3/2/2007 Dalton Tr. at 265:6 – 267:17). Dr. Felker did not review, consider, or rely on ball diameter testing in his expert report in this instance, and Bridgestone has not shown why ball diameter is relevant. (*See* D.I 369 at Ex. P, 2/20/2007 Felker Report at ¶¶ 468 – 470). Moreover, Mr. Dalton did not say that he had not produced the results of any tests performed according to this protocol. (*See* D.I 369 at Ex. Q, 3/2/2007 Dalton Tr. at 265:6 – 267:17).

### 2.    Testing on the Wilson Ultra Tour Balata Golf Ball

Bridgestone requests "all prior art test results relating to the Wilson Ultra Tour Balata ball." (D.I. 344 at 15). This request is overly broad, and is not supported by disclosure requirements of the expert discovery rules either.

Acushnet tested twelve samples of a model of Ultra Tour Balata 90 that it obtained in 1993 as prior art against the '852 patent. These balls came from Acushnet's retained ball room, and were logged as lot number 93007. Dr. Felker considered certain measurements performed on these twelve balls in his expert report. (*See* Ex. Z, 1/16/2007 Felker Report at Ex. 13). As Mr. Dalton testified, these twelve balls are the only 93007 balls that he tested. (*See* D.I 369 at Ex. Q, 3/2/2007 Dalton Tr. at 161:13 – 161:16). As Mr. Dalton testified, Felker Exhibit 13 contains all of the raw data for the tests that it describes. (*See* D.I 369 at Ex.Q, 3/2/2007 Dalton Tr. at 146:19 – 147:5 (noting that the data contained in Felker Exhibit 13 are the raw data numbers transcribed from handwritten notes)).

At the request of his attorneys, Mr. Dalton tested numerous properties of the prior art Ultra Tour Balata 90 balls. (*See* Ex. AA, AB 0118716-17 ("Testing Program for Prior Art Balls")). The prior art golf balls tested by Acushnet were in limited supply and the testing was destructive, so as much data about each ball as was possible was gathered for testing of any ball that might become at issue in this case as to any patent that might be asserted by Bridgestone. After presenting this work product to the attorneys, Mr. Dalton assisted in the preparation of the documents that summarized the testing relevant to Acushnet's invalidity position.

Dr. Felker has included all of the results that he has reviewed or considered in his expert report. With regard to these balls, Mr. Dalton is going to testify only as to testing considered by Dr. Felker. (*See* D.I 369 at Ex. B, 2/22/2007 Seal Ltr. to White at 2). Any other testing that Mr. Dalton performed is not the subject of any expert testimony and, consequentially, protected work product. Furthermore, Acushnet has allowed Mr. Dalton to be deposed upon all of the testing that he had performed, in addition to that relied upon by Dr. Felker, and Bridgestone has taken his deposition. (*See* D.I 369 at Ex. Q, March 2, 2007 Dalton Tr. at 145:6 – 162:22).

Bridgestone specifically requests three additional documents, which were provided before it even filed its motion. It requests both the "test protocol" and the "parameters for the testing." (D.I. 344 at 15). Acushnet believes that Bridgestone is referring to the "testing plan" that Mr. Dalton discussed in his deposition. (*See* 3/2/2007 Dalton Tr. at 145:6 – 146:1). Acushnet produced that document, along with other test protocols that Mr. Dalton considered on March 27, 2007 (*See* Ex. BB, Jenkins e-mail to Wikberg (enclosing AB 0118716-48)). Bridgestone further requests "all raw data from the testing." (D.I. 344 at 15). As discussed above, Dr. Felker included all raw data from the relevant testing in Exhibit 13 of his expert report. (*See* Ex. Z, 1/16/2007 Felker Report at Ex. 13). To the extent that there are notes and draft protocols that Mr. Dalton

and his assistants prepared, by virtue of the parties' agreement, these are excluded from discovery.

### 3.     Testing on the JP '673 Golf Balls

Bridgestone claims that Acushnet did not produce "an English translation relied upon when making the cores." (D.I. 344 at 16). However, it acknowledges that Acushnet did produce the translation to it on March 7. (*See* 4/2/2007 White Ltr. to Seal). Bridgestone claims that Acushnet failed to produce physical specimens and notes from Mr. Dalton's process-definition experimentation. (D.I. 344 at 16). However, these specimens are indistinguishable from the specimens and notes that Dr. Caulfield experimented on during his "Program A" process definition experimentation. (*See* Ex. _P, 3/29/2007 Caulfield Tr. at 62:12 – 62:17). Bridgestone further requests various sorts of "experimentation data," "electronic and handwritten data," and "manufacturing, molding, and stoichiometric analysis." (D.I. 344 at 16). Again, Dr. Felker has included all of the relevant data that he reviewed or considered in his expert report (*see* D.I 369 at Ex. E, 1/16/2007 Felker Report at 26 - 33), and Bridgestone had the opportunity to depose both Mr. Dalton and Dr. Felker on this testing. Finally, again, to the extent that Mr. Dalton recorded any additional data that Dr. Felker did not review, or made notes or drafts, by virtue of the parties' agreement that documentation is excluded from expert discovery.

## V.    CONCLUSION

For the foregoing reasons, Bridgestone's motion should be denied. If Bridgestone's motion is granted, the Court should consider that over a year before expert discovery began, Bridgestone agreed to exclude experts' "notes, drafts, and communications with counsel" from discovery. Both parties relied on this agreement to withhold documents, protected by privilege and work product and otherwise, from discovery. Bridgestone cannot have it both ways. If the Court finds that Bridgestone's motion should be granted, then Bridgestone's experts and their testing employees must be held to the same standard of disclosure as Acushnet.

POTTER ANDERSON & CORROON LLP

OF COUNSEL:
Alan M. Grimaldi
Joseph P. Lavelle
Kenneth W. Donnelly
HOWREY LLP
1299 Pennsylvania Ave., N.W.
Washington, DC 20004
Tel: (202) 783-0800


Dated: April 30, 2007
Public Version Dated: May 7, 2007
793819 / 28946

By:  /s/ David E. Moore
     Richard L. Horwitz (#2246)
     David E. Moore (#3983)
     Hercules Plaza, 6th Floor
     1313 N. Market Street
     P.O. Box 951
     Wilmington, DE 19899-0951
     Tel: (302) 984-6000
     rhorwitz@potteranderson.com
     dmoore@potteranderson.com

*Attorneys For Defendant*
*Acushnet Company*

27

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

### CERTIFICATE OF SERVICE

I, David E. Moore, hereby certify that on May 7, 2007, the attached document was hand

delivered to the following persons and was electronically filed with the Clerk of the Court using

CM/ECF which will send notification to the registered attorney(s) of record that the document

has been filed and is available for viewing and downloading:

Jack B. Blumenfeld
Maryellen Noreika
Leslie A. Polizoti
Morris, Nichols, Arsht & Tunnell
1201 N. Market Street
Wilmington, DE  19801

I hereby certify that on May 7, 2007, I have Electronically Mailed the documents to the

following:

Robert M. Masters
Paul, Hastings, Janofsky & Walker LLP
875 15th Street, N.W.
Washington, D.C.  20005
RobMasters@paulhastings.com

/s/ David E. Moore
Richard L. Horwitz
David E. Moore
Potter Anderson & Corroon LLP
Hercules Plaza – Sixth Floor
1313 North Market Street
P.O. Box 951
Wilmington, DE  19899-0951
(302) 984-6000
rhorwitz@potteranderson.com
dmoore@potteranderson.com

680012 / 28946