# EXHIBIT A

# HOWREY LLP

1299 Pennsylvania Avenue, NW
Washington, DC 20004-2402
www.howrey.com

Matthew J. Moore
Partner
T 202.383.7275
F 202.383.6610
moorem@howrey.com

September 26, 2005

BY FACSIMILE

Robert M. Masters, Esq.
Raja N. Saliba, Esq.
Sughrue Mion, PLLC
2100 Pennsylvania Avenue, N.W.
Washington, D.C. 20037-3213

Re:  *Bridgestone Sports Co. v. Acushnet Co.*, Civil Action No. 05-132 (JJF) (D. Del.)
     **Acushnet's Responses to Bridgestone's Second Set of Interrogatories**

Gentlemen:

I write in response to your September 15, 2005 letter regarding Acushnet's Objections and Responses to Bridgestone's Second Set of Interrogatories and your September 16, 2005 letter regarding Acushnet's Objections and Responses to Bridgestone's Second Set of Requests for the Production of Documents. In addition, I identify certain deficiencies in Bridgestone's Responses to Acushnet's Second Set of Requests for the Production of Documents and Things Directed to Bridgestone (Nos. 44-86). Finally, I raise two additional discovery issues as part of the meet-and-confer process.

> ### A. Acushnet's Objections and Responses to Bridgestone's Second Set of Interrogatories

In your September 15 letter, you state that you incorporate the remarks you made in your August 17, 2005 letter regarding Acushnet's General Objection Nos. 2-13 to Bridgestone's First Set of Interrogatories. Acushnet is not withholding any information in response to Bridgestone's Second Set of Interrogatories pursuant to its General Objection Nos. 2, 4-7, 10-11.

Acushnet stands on its General Objection Nos. 3, 8, 9, and 12 and will not produce information about Acushnet products other than the accused Acushnet golf balls in response to any Bridgestone interrogatory.

Acushnet stands on its General Objection No. 13 and will not produce any information protected by the attorney-client privilege or work product doctrine. Acushnet will identify on its privilege log any information withheld by Acushnet subject to General Objection No. 13.

Acushnet is not withholding any information pursuant to its specific objection that Bridgestone's Interrogatory No. 25 is duplicative of Bridgestone Interrogatory No. 10. Acushnet further bases its willful infringement claim on Bridgestone's constructive notice of the Acushnet patents-in-suit and on Bridgestone's actual notice from the parties' pre-litigation correspondence. We will supplement our response to Bridgestone's Interrogatory No. 25 accordingly.

# HOWREY

Robert M. Masters, Esq.
Raja N. Saliba, Esq.
September 26, 2005
Page 2

For every response to Bridgestone's interrogatories in which Acushnet relies on Fed. R. Civ. P. 33(d), Acushnet will provide bates numbers identifying the responsive document(s) after it has completed its review of its document production. We expect Bridgestone to do the same for every response to Acushnet's interrogatories in which Bridgestone relies on Rule 33(d). We are willing to discuss a mutual date for the exchange of bates numbers during our meet-and-confer on September 28.

Acushnet will supplement its response to Bridgestone Interrogatory No. 26 to set forth our contentions regarding the relevant dates of conception, reduction to practice, acts of diligence, etc. for the Acushnet patents-in-suit. We expect Bridgestone similarly to supplement its response to Acushnet Interrogatory No. 6 to identify its contentions beyond relying on Rule 33(d).

Acushnet will supplement its response to Bridgestone Interrogatory No. 27 to set forth its contentions regarding the relevant dates of first public use, offer for sale and sale for any product embodying the Acushnet patents-in-suit. We expect Bridgestone similarly to supplement its response to Acushnet Interrogatory No. 7 to identify its contentions beyond relying on Rule 33(d).

Acushnet will supplement its response to Bridgestone Interrogatory No. 28 to identify the dates on which Acushnet became aware of Prior Art. We expect Bridgestone similarly to supplement its response to Acushnet Interrogatory No. 8 to identify the dates it became aware of Prior Art, instead of relying solely on Rule 33(d).

Acushnet has not withheld any information or documents based on a confidentiality or nondisclosure agreement with a third party.

Acushnet will provide a privilege log identifying any information or documents withheld subject to a claim of attorney-client privilege or work product protection. We propose a mutual exchange of privilege logs by 5:00 pm on Tuesday, September 27, 2005 so that any issues identified by either party with respect to the privilege logs may be discussed during Wednesday's conference. Please let us know as soon as possible whether Bridgestone agrees to that exchange.

Acushnet will supplement its response to Bridgestone Interrogatory No. 30.

To the extent Acushnet is withholding any information responsive to Bridgestone Interrogatory Nos. 32 or 33 under claim of attorney-client privilege or work product protection, we will identify any such information on our privilege log. We expect Bridgestone to do the same for its responses to Acushnet Interrogatory Nos. 14 and 15, which are virtually identical to Bridgestone Interrogatory Nos. 32 and 33, respectively. To date, Bridgestone has not agreed to produce any information in response to Acushnet Interrogatory No. 14 and has provided only a vague and conclusory statement that "Bridgestone will seek all damages permitted by the patent statutes, and including costs and expenses to Bridgestone for bringing suit, including reasonable attorney's fees" in response to Acushnet Interrogatory No. 15. That response is less detailed than the similar Acushnet response that Bridgestone calls "bare-bones" and "deficient for several

**HOWREY**

Robert M. Masters, Esq.
Raja N. Saliba, Esq.
September 26, 2005
Page 3

reasons." We are willing to discuss a mutual supplementation of responses to these interrogatories on Wednesday's call.

Acushnet is not withholding any information pursuant to its objections that Bridgestone Interrogatory Nos. 35 and 36 are duplicative of other Bridgestone interrogatories.

Acushnet believes the invalidity claim charts it provided in response to Bridgestone Interrogatory No. 4 adequately respond to Bridgestone Interrogatory Nos. 4, 35 and 36 at this time. To the extent Bridgestone believes it is entitled to more detailed invalidity claim charts from Acushnet, please let us know when you will provide any invalidity claim charts in response to Acushnet Interrogatory No. 18, which is virtually identical to Bridgestone Interrogatory No. 35.

Acushnet believes its response to Bridgestone Interrogatory No. 38 is sufficient.

Acushnet will supplement its response to Bridgestone Interrogatory No. 39 to identify the portions of the prosecution history on which it relies for its non-infringement contentions. We understand from our August 31, 2005 call that Bridgestone is similarly supplementing its response to Acushnet Interrogatory No. 21, which is virtually identical to Bridgestone Interrogatory No. 39.

Finally, Acushnet alleges that the Precept U-Tri Tour ball, not the Precept u-Tri Spin ball, infringes the '861 patent.

### B. Acushnet's Objections and Responses to Bridgestone's Second Set of Requests for the Production of Documents

In your September 16 letter, you state that you incorporate the remarks you made in your August 25, 2005 letter regarding Acushnet's General Objections to Bridgestone's First Set of Requests for Documents. Acushnet is not withholding any documents in response to Bridgestone's Second Set of Document Requests pursuant to its General Objection Nos. 2, 4-8, 10-12, 15, 17-18, and 20-21.

Acushnet stands on its General Objection No. 1 and will identify on its privilege log any document withheld as protected by the attorney-client privilege or work product immunity.

Acushnet stands on its General Objection Nos. 3, 9, 13, 14, and 19 and will not produce documents concerning Acushnet products other than the accused Acushnet golf balls in response to any Bridgestone request.

Acushnet is not withholding any document responsive to any Bridgestone request on the ground that such request is duplicative of any other Bridgestone request.

Acushnet accepts Bridgestone's clarification of Bridgestone Request No. 102 as set forth in your letter and has produced all responsive documents. Please confirm that you have produced

# HOWREY LLP

Robert M. Masters, Esq.
Raja N. Saliba, Esq.
September 26, 2005
Page 4

all responsive documents applying a similar clarification to Acushnet's Request No. 1, which is virtually identical to Bridgestone Request No. 102.

Acushnet is not withholding any document pursuant to any specific objection that the requested document is already within Bridgestone's custody, possession or control.

Acushnet is not withholding any document pursuant to its specific objection that the term "Prior Art" in Bridgestone's Request No. 104 is vague and ambiguous.

Acushnet is not withholding any document responsive to Bridgestone Request No. 105 regarding commercial success pursuant to its specific objection that the request is unlimited in time, other than to the extent the request calls for the production of documents created after the March 7, 2005 filing date of Bridgestone's complaint in this case. Further, Acushnet is producing documents responsive to this request only for the '705 patent, which is the only Acushnet patent-in-suit for which Bridgestone has asserted an obviousness defense.

Acushnet is not withholding any document pursuant to its specific objection that the term "instructions" in Bridgestone's Request No. 108 is vague and ambiguous.

Acushnet is not withholding any document responsive to Bridgestone Request Nos. 110 and 111 concerning damages and market success, respectively, subject to its objections to those requests as premature. Please confirm that Bridgestone is similarly not withholding any documents subject to its objections to virtually identical Acushnet Request Nos. 35 and 36, respectively, as "premature."

Acushnet stands on its objection to Bridgestone Request No. 114 as unduly burdensome to the extent it requires Acushnet to produce 24 samples of each model of the accused golf balls. We will agree to produce samples of the accused balls for inspection. We will also agree to make available for inspection documents or things responsive to Bridgestone Request Nos. 115, 119, 125-132 and 135-143 to the extent they are in Acushnet's custody, control or possession.

Acushnet is not withholding any document responsive to Bridgestone Request Nos. 116-117 and 119-122 pursuant to its objections that the terms "intermediate layer," "core," or "core precursor" are vague and ambiguous. Acushnet, however, notes that its accused balls do not include anything it considers to be an "intermediate layer."

Acushnet is not withholding any document responsive to Bridgestone Request No. 117 pursuant to its objection that the request is overly broad and unduly burdensome. Acushnet, however, stands on its objection that rejected components from Acushnet's manufacturing process are irrelevant to the issues in this case.

Acushnet stands on its objection to Bridgestone Request No. 119 that core precursors are not relevant to the issues in this case. While several claims of the Bridgestone patents-in-suit recite physical properties of a golf ball core, Acushnet has agreed to make samples of its golf

# HOWREY

Robert M. Masters, Esq.
Raja N. Saliba, Esq.
September 26, 2005
Page 5

balls available for inspection. The core precursors, as opposed to the finished golf ball cores, are not relevant.

Acushnet is not withholding any documents responsive to Bridgestone Request Nos. 120 and 121 regarding "[p]laques and sample blocks of material." Acushnet, however, does not have any responsive documents or things in its possession, custody or control.

Acushnet stands on its objection to Bridgestone Request No. 123 requesting "[o]ne (1) kg of each type of Fusablend® material used in the Acushnet products." Acushnet is making available samples of the accused golf balls. The material used in the covers of the accused golf balls, as opposed to the finished golf ball covers themselves, are not relevant. Acushnet urther stands on its objection that the production of "[o]ne (1) kg of each type of Fusablend® material used in the Acushnet products" is unduly burdensome in light of Acushnet's making samples of the accused golf balls available for inspection.

With regard to Bridgestone Request Nos. 126 and 128-130, Acushnet will make available for inspection the identified Bridgestone golf balls in its possession, custody or control.

With regard to Bridgestone Request Nos. 131 and 132, Acushnet is not withholding any documents pursuant to its objection that the term "each model and revision" as it applies to the Titleist HP Eclipse and Titleist Tour Distance balls is vague and ambiguous. Acushnet, however, stands on its objection that the Titleist HP Eclipse and Tour Distance golf balls are irrelevant to the issues in this case.

Acushnet is not withholding any document based on its objection that Bridgestone Request No. 134 is vague and ambiguous or requiring Acushnet to form a legal conclusion.

Subject to Bridgestone's limitation of its Request Nos. 138-143 as stated in your September 16 letter, Acushnet is not withholding any document pursuant to its objection that the requests call for Acushnet to produce documents related to polybutadiene rubbers that are irrelevant to the issues in this case.

With regard to Bridgestone Request Nos. 149-152 requesting lists of on-course retailers, off-course retailers, sporting goods retailers, and all other retailers, respectively, Acushnet stands on its General Objection No. 3 that such information is irrelevant to the issues in this case. Acushnet further stands on its specific objections to the extent the request calls for the production of documents related to Acushnet products other than the accused golf balls. Acushnet has produced financial information for the accused golf balls.

Acushnet stands on its specific objection to Bridgestone Request No. 154 in that any Acushnet reliance on or identification of "differences between different types of retailers" is irrelevant to the issues in this case, including whether or not the accused Acushnet golf balls are commercially successful. Acushnet has produced financial information for the accused golf balls from which commercial success of those balls, or lack thereof, may be derived.

**HOWREY** LLP

Robert M. Masters, Esq.
Raja N. Saliba, Esq.
September 26, 2005
Page 6

### C.    Bridgestone's Responses to Acushnet's Second Set of Requests for the Production of Documents

Please confirm whether Bridgestone is withholding any documents based on its general objection that the requests are untimely.

Please confirm whether Bridgestone is withholding any documents based on its General Objection No. 14 based on time other than where specifically stated in response to Acushnet's individual Request Nos. 47 and 77.

Bridgestone's time objection to Acushnet's Request No. 47 is improper because documents or things regarding U.S.G.A. conformance or non-conformance of the prior art Bridgestone golf balls identified by name in that request may be relevant to Acushnet's invalidity defense, regardless of whether or not those documents or things were created after the critical dates of the Bridgestone Patents. Please confirm that you will produce such documents or things.

Bridgestone's response to Acushnet's Request No. 77 concerning Bridgestone's attempts to design around the Acushnet patents states that it will produce documents "within a relevant period of time." To the extent Bridgestone has withheld any documents or things based on its understanding of the "relevant period of time," please set forth the time period for which you have produced documents and things. Further, Acushnet's request is not limited to a specific time period and Bridgestone cannot unilaterally limit Acushnet's request. Documents and things related to Bridgestone's attempts to design around the Acushnet patents-in-suit are relevant regardless of the time period.

Bridgestone also makes specific time objections to Acushnet Request Nos. 45, 46, 48, 50-52, 63, 65-69, 71, 73, 74, 85, and 86, but does not limit its answer to any particular period of time. Please confirm you are not withholding any such documents based on these objections. If you are withholding documents based on a specific time objection, please identify the time period for which you produced documents and state the specific basis for withholding any such document.

Please identify whether Bridgestone is withholding any documents based on its General Objection No. 15 based on geographic area where a specific geographic objection was not made. Bridgestone makes specific geographic area objections to Acushnet Request Nos. 65-69, 71, and 79-86, but does not indicate whether it is withholding any documents subject to those specific geographic objections. Please confirm whether you are withholding any such documents subject to an objection regarding geographic area and, if so, please identify the documents withheld and state the specific basis for withholding any such document.

Bridgestone also specifically objects to Acushnet Request Nos. 44, 45, 56, 58, 59, 65-71, 73, 74, and 79-84 as requiring the disclosure of documents or things covered by third-party confidentiality or nondisclosure agreements. Please confirm that you will produce all responsive documents regardless of whether or not they are subject to third-party confidentiality or nondisclosure agreements, as the existence of such agreements is no basis for withholding

# HOWREY

Robert M. Masters, Esq.
Raja N. Saliba, Esq.
September 26, 2005
Page 7

documents. If the current Protective Order is deemed insufficient to protect Bridgestone or a third party, the concerned party must move to modify the Protective Order.

Acushnet's Request Nos. 52 and 64 should read "Bridgestone" in place of "Acushnet." Please confirm that you will produce all responsive documents.

### D.    Additional Discovery Issues

Fed. R. Civ. P. 34(b) requires Bridgestone to produce documents "as they are kept in the usual course of business." Our review of Bridgestone's document production, however, revealed that the production consists of single sheets of paper, without demarcation, and thus no indication where specific documents begin and end. We suspect that is not how Bridgestone maintains its documents in the usual course of business. Further, Bridgestone's failure to separate individual documents within its production has impeded – and continues to impede – our review of those documents. Please re-produce your document production with individual documents separated by blue sheets or some other manner of demarcation.

Further, as agreed between Mr. Gruskin and Mr. Seal, we returned to you by 6:00 pm on Friday the documents identified in Mr. Masters's September 19 letter. While Mr. Masters asserted that the documents were inadvertently-produced documents subject to both the attorney-client privilege and work product doctrine, our review of the documents did not indicate that any portion of the documents was an attorney-client communication. Further, most of the information contained therein is technical data not subject to work product protection, some of which significantly predates the filing of the complaint in this case. Thus, we request that you produce the documents. If you intend to withhold these documents from production, please identify the specific bases for withholding them.

In addition, without discussing the specific contents of the documents, I note with some concern that the data contained within them raises some serious questions as to whether Bridgestone has a good-faith basis to assert that Acushnet literally infringes certain claims of the Bridgestone patents-in-suit.

Finally, I confirm in writing the agreement between Mr. Gruskin and Mr. Seal that expert witnesses' notes, drafts, and communications with counsel are excluded from discovery.

I look forward to discussing the issues raised in the letter during our meet-and-confer on Wednesday.

Best regards,

*Matt Moore*

Matthew J. Moore

# EXHIBIT B

# HOWREY LLP

1299 Pennsylvania Avenue, NW
Washington, DC 20004-2402
T 202.783.0800
F 202.383.6610
www.howrey.com

Direct Dial 202.383.6904
File 00634.0002

February 25, 2007

BY FACSIMILE

Brandon M. White, Esq.
Paul, Hastings, Janofsky & Walker LLP
875 15th Street, N.W.
Washington, D.C. 20005

Re:  ***Bridgestone Sports Co. v. Acushnet Co.,***
     ***C.A. No. 05-132 (JJF) (D. Del.)***

Dear Brandon:

Further to the topics identified in my letter of February 22, and as I imagine is already clear to Bridgestone from its reading of Mr. Kaplan's reports, Jeff Dalton may also testify under Fed. R. Civ. P. 26(a)(2)(A) with regard to information relied upon by Mr. Kaplan, including providing opinion and technical testimony at trial related to Acushnet's noninfringing alternatives to the Bridgestone patents-in-suit. Again, as stated in my letter of February 22, the list of topics we are providing you is not required by the rules and is not intended to be exhaustive. Rather, our identification of topics is provided as a courtesy to Bridgestone.

Regards,

Brian S. Seal

# EXHIBIT C

UNITED STATES DISTRICT COURT
DISTRICT OF DELAWARE

| | |
|---|---|
| BRIDGESTONE SPORTS CO., LTD., and BRIDGESTONE GOLF, INC.,<br><br>Plaintiffs,<br><br>v.<br><br>ACUSHNET COMPANY,<br><br>Defendant.<br><br>ACUSHNET COMPANY,<br><br>Counterclaimant,<br><br>v.<br><br>BRIDGESTONE SPORTS CO., LTD., and BRIDGESTONE GOLF, INC.,<br><br>Counterdefendant. | Case No. 05-CA-132 (JJF) |

## DECLARATION OF JEFFREY DALTON

I, Jeffrey Dalton, declare as follows:

1.      I have read the statements of Mr. Larry Cadorniga (Cadorniga) and Dr. Bryan E. Coughlin (Coughlin) relating to the appropriateness of relying exclusively on Acushnet's manufacturing guidelines manuals to determine the core formulations of Acushnet's commercial golf balls.  Cadorniga and Coughlin base their statements on certain excerpted testimony from my depositions in this case, which have been taken out of context, misconstrued and incorrectly summarized.  As I explained in my deposition, in order to accurately determine the core composition of Acushnet's golf balls, the manufacturing guidelines manuals must be reviewed in light of applicable change notices.

## A. QUALIFICATIONS AND CREDENTIALS

2.     The purpose of this declaration is to set forth the following statement of facts relating to Acushnet Company's ("Acushnet") standard practices for the manufacture of golf balls.

3.     . I have been an employee of Acushnet Company since 1989. My current title is Vice President of Intellectual Property. As an employee since 1989, I am knowledgeable in the manufacturing and documentation practices employed by Acushnet.

## B. BALL PLANTS

4.     Acushnet manufactures golf balls in two locations: Ball Plant II and Ball Plant III. Ball Plant III produces the Pro V1, ProV1x, and the mantle for the NXT Tour golf ball. Ball Plant II produces all other models of golf balls accused of infringement in this case, including the DT So/Lo, the PTS So/Lo, the NXT Tour, the NXT, and the Pinnacle Exception. When necessary to satisfy demand or as a result of technical issues at Ball Plant III, Ball Plant II has also been used to produce the Pro V1 golf ball.

## C. CORE FORMULATION DOCUMENTATION

5.     For each new golf ball produced by Acushnet, the research and development division typically creates a "manufacturing guidelines manual." This manual aims to include information regarding the intended construction, formulation, manufacturing process methods, and attributes (such as compression, cover hardness and performance) of the new golf ball.

6.     The manufacturing guidelines manual includes a section that lists a core formulation for the new golf ball. This core formulation is provided to the manufacturing department as *a starting point* for producing a commercial golf ball with the intended construction and attributes of the new golf ball. The starting formulation included in the manufacturing guidelines manual will often be changed or adjusted by the Manufacturing Department for any number of reasons, including manufacturing conditions, atmospheric

conditions, or raw material supplier issues, among others. When an aspect of a golf ball is changed by the manufacturing department, a change notice or a recipe change notice is created to document the change.

7.    A change notice is typically created when the manufacturing department desires to change some aspect of the manufacturing process that relates to processing or manufacturability. One specific type of change notice is referred to as a "recipe change notice." A recipe change notice is created to document a change to the core, casing or cover formulations. For example, if the manufacturing guidelines manual for a model of golf ball suggested using 150 lbs. of Shell 1220 polybutadiene rubber in the core formulation, and the manufacturing department desired to adjust the amount or type of rubber, a recipe change notice would be created to document the adjustment. Recipe changes occur frequently to ensure that the intended physical properties and attributes of the golf ball, such as the target compression, are maintained.

8.    During my deposition I explained Acushnet's documentation procedures, and I specifically explained the purpose of change notices and their effect on the manufacturing guidelines manual:

> Q:    Okay. So these manufacturing change notices were primarily directed towards processing or manufacturability?
>
> A:    Yes.
>       (Dalton Dep. Tr. 7/20/06, pg. 137, lines 10-13).
>
>                         ***
>
> Q:    You would expect some documents, of some kind, to reflect either a change to [the manufacturing guidelines] or somehow reflecting the target compression specification for the core of the ProV1 Star?
>
> A:    Again, if it were a change, a real change ... my expectation would be that there would be a change

3

notice that ... documented the change in those numbers.

Q:    And were would you find this change notice?

A:    In the change notice database.
      (Dalton Dep. Tr. 7/20/06, pg. 227, lines 13-21).

                              ***

Q:    If something were to change in the design of the golf ball during the course of its manufacturing run at that time would a new set of guidelines be prepared?

A:    ...Let's say, for instance, the – the manufacturing guideline's manual may have said that the weight of those should be so many grams, but they found that ... as they ran manufacturing ... that weight was too large or too small, and it caused them a problem, then they would go in and change that and use the manufacturing change notices as a ... way to document that change.
      (Dalton Dep. Tr. 7/20/06, pg. 135, line 15 – pg. 137, line 1).

                              ***

Q:    And similar to the Pro V1 Star guidelines we previously discussed these guidelines would be used for the manufacture of all of those balls during that year?

A:    Yes, sir.

Q:    Except for some minor change notices, which were directed towards the manufacturability as opposed to the ultimate performance characteristics of the ball?

A:    Once again, sir, yes, these would be the manufacturing guidelines that we used ... as we transferred the ball to the manufacturing organization. And any changes from there *would have been documented by change notices.*
      (Dalton Dep. Tr. 7/20/06, pg. 264, line 9 – pg. 265, line 2).

                              4

***

Q:    Okay.  Are you aware of any changes to the manufacturing process or material used in the manufacture of the golf balls manufactured pursuant to [DT So/LO Manufacturing Guidelines Manual] that would have had a material effect on the performance or property of those balls?

A:    No, sir, not that would have affected the performance or properties of those balls, *as always, there were changes that were documented by change notices or recipe changes.*

Q:    And you would expect any changes in the manufacturing process in materials used in those balls or concentration used in those balls to be reflected by a change notice or a recipe change?

A:    I would expect so, yes.
      (Dalton Dep. Tr. 7/27/06, pg. 617, line 12 – pg. 618, line 5).

9.      Therefore, as I explained in my deposition, in order to know the type and quantity of ingredients that are being used in the formulation of a particular model of golf ball core at any given point, the manufacturing guidelines manual must be reviewed in light of both change notices and recipe changes.  Only by reviewing all of these materials, is it possible to identify the specific type and quantity of ingredients that have been used in a core formulation for a particular golf ball over the course of its manufacturing lifetime.

### D. FORMULATIONS WITH POWDERS VERSUS PELLETS

10.     In calculating the amount of zinc diacrylate (ZDA) and zinc pentachlorothiophenol (Zn-PCTP) that Acushnet uses in its core formulations, Cadorniga and Coughlin use incorrect purity information.

11.     At certain times Acushnet used zinc diacrylate (ZDA) and zinc pentachlorothiophenol (Zn-PCTP) in powder form and at other times in pellet form.

5

12.    ZDA powder is obtained from Sartomer Company and contains no more than 91.8% ZDA. The remaining ingredients of the ZDA powder are held as a trade secret by Sartomer Company. (Ex. A).

13.    ZDA pellets are obtained from Rheim Chemie, which is a subsidiary of Lanxess. Rheim Chemie formulates the ZDA pellets by combining 80% ZDA Powder obtained from Sartomer (which, as described above, is at most 91.8% ZDA), with 17% CB23 polybutadiene rubber, and other minor ingredients.

14.    Zn-PCTP powder is obtained from Dannier Company and, in some case e-China Inc. Both suppliers provide Zn-PCTP powder that is at least 99% pure. (Ex. B).

15.    Zn-PCTP pellets are obtained from Rheim Chemie, which formulates the Zn-PCTP pellet by combining 75% Zn-PCTP powder obtained from Dannier and/or e-China (which is, at least 99% Zn-PCTP), with 11% CB23 polybutadiene rubber, and other minor ingredients. (Ex. C).

16.    In mid 2006, Acushnet adjusted its formulation of Zn-PCTP pellets to include 70% Zn-PCTP powder, 12.5% CB23 polybutadiene rubber and other minor ingredients. (Ex. D).

### E.  BASE RUBBER FORMULATION OF ◄Pro V1-392►

17.    At my direction, the manufacturing guidelines manual for the ◄Pro V1-392► model golf ball was reviewed in light of the applicable change notices and recipe changes to determine the type and quantity of rubber in the core formulation over time. I have attached a chart, identifying the composition of the base rubber for the ◄Pro V1-392► model golf ball. (*See* Ex. E).

### F.  ZDA AND ZN-PCTP CONTENT

18.    At my direction, the manufacturing guidelines manual for the ◄●Pro V1 392●► model golf ball was reviewed in light of the applicable change notices and recipe changes to determine the type and quantity of ZDA and Zn-PCTP (in parts per hundred rubber), in the core formulation over time. (*See* Ex. E).

6

19.    At my direction, the manufacturing guidelines manual for the ◀Pro V1-392▶ model golf ball was reviewed in light of the applicable change notices and recipe changes to determine the type and quantity of ZDA and Zn-PCTP (in parts per hundred rubber), in the core formulation over time.  (See Ex. E).

20.    I was unable to find any change notices related to the core formulation of the ◀Pro V1*392▶ model golf ball.

21.    At my direction, the manufacturing guidelines manual for the ◀●Pro V1x 332●▶ model golf ball was reviewed in light of the applicable change notices and recipe changes to determine the type and quantity of ZDA and Zn-PCTP (in parts per hundred rubber), in the core formulation over time.  (See Ex. F).

22.    At my direction, the manufacturing guidelines manual for the ◀Pro V1x-332▶ model golf ball was reviewed in light of the applicable change notices and recipe changes to determine the type and quantity of ZDA and Zn-PCTP (in parts per hundred rubber), in the core formulation over time.  (See Ex. F).

23.    At my direction, the manufacturing guidelines manual for the DT So/Lo model golf ball was reviewed in light of the applicable change notices and recipe changes to determine the type and quantity of ZDA and Zn-PCTP (in parts per hundred rubber), in the core formulation over time.  (See Ex. G).

24.    At my direction, the manufacturing guidelines manual for the ◀DT So/Lo▶ model golf ball was reviewed in light of the applicable change notices and recipe changes to determine the type and quantity of ZDA and Zn-PCTP (in parts per hundred rubber), in the core formulation over time.  (See Ex. G).  The PTS So/Lo model golf ball uses the same core as the DT So/Lo model golf ball.

25.    At my direction, the manufacturing guidelines manual for the ◀NXT Tour▶ model golf ball was reviewed in light of the applicable change notices and recipe changes to determine the type and quantity of ZDA and Zn-PCTP (in parts per hundred rubber), in the core formulation over time.  (See Ex. G).

7

26.    At my direction, the manufacturing guidelines manual for the ◀NXT-Tour▶ model golf ball was reviewed in light of the applicable change notices and recipe changes to determine the type and quantity of ZDA and Zn-PCTP (in parts per hundred rubber), in the core formulation over time. (*See* Ex. G and Ex. H).

27.    At my direction, the manufacturing guidelines manual for the ◀NXT▶ model golf ball was reviewed in light of the applicable change notices and recipe changes to determine the type and quantity of ZDA and Zn-PCTP (in parts per hundred rubber), in the core formulation over time. (*See* Ex. G).

28.    At my direction, the manufacturing guidelines manual for the ◀-NXT-▶ model golf ball was reviewed in light of the applicable change notices and recipe changes to determine the type and quantity of ZDA and Zn-PCTP (in parts per hundred rubber), in the core formulation over time. (*See* Ex. G).

29.    At my direction, the manufacturing guidelines manual for the Pinnacle Exception model golf ball was reviewed in light of the applicable change notices and recipe changes to determine the type and quantity of ZDA and Zn-PCTP (in parts per hundred rubber), in the core formulation over time. (*See* Ex. G).

30.    At my direction, the manufacturing guidelines manual for the Exception model golf ball was reviewed in light of the applicable change notices and recipe changes to determine the type and quantity of ZDA and Zn-PCTP (in parts per hundred rubber), in the core formulation over time. (*See* Ex. G).

31.    At my direction, and at great effort, the applicable change notices, used to prepare the data charts discussed above, were collected from the change notice database produced to Bridgestone and from the Mesabi Mixed Vision database offered to Bridgestone for inspection. The data was supplemented to update and reflect changes made since the last document production. Attached is a complete set of the data that I have relied on to prepare the data charts in this declaration (See Ex. I for Ball Plant II; and Ex. J for Ball Plant III).

02/20/2007  16:31    5089793903              ACUSHNET CO                    PAGE  02/02

DATED: February 20, 2007

Jeffrey Dalton

# EXHIBIT D

UNITED STATES DISTRICT COURT
DISTRICT OF DELAWARE

| | |
|---|---|
| BRIDGESTONE SPORTS CO., LTD., and BRIDGESTONE GOLF, INC., | Case No. 05-CA-132 (JJF) |
| Plaintiffs, | |
| v. | |
| ACUSHNET COMPANY, | |
| Defendant. | |
| ACUSHNET COMPANY, | |
| Counterclaimant, | |
| v. | |
| BRIDGESTONE SPORTS CO., LTD., and BRIDGESTONE GOLF, INC., | |
| Counterdefendant. | |

## DECLARATION OF DAVID BULPETT

I, David Bulpett, declare as follows:

### A. QUALIFICATIONS AND CREDENTIALS

1.    The purpose of this declaration is to set forth the following statement of facts relating to Acushnet Company's ("Acushnet") standard practices for logging, collecting and recording data regarding the physical characteristics of competitive golf balls.

2.    I have been an employee of Acushnet Company since 1995. My current title is senior manager. I currently manage the Analytical Laboratory. As an employee since 1995, I am knowledgeable in the testing and documentation practices employed by Acushnet regarding competitive golf balls.

## B. COMPETITIVE BALL TEST DOCUMENTATION

3.     The following is a highlighted chronology of Acushnet practices in regards to logging and testing competitive golf balls, from about 1992 to the present. Although I was not employed by Acushnet in 1992, it is my understanding, based on orientation that I received in 1995, as well as documents that I have seen, that the following practices were in place.

4.     Acushnet's practice has been to obtain competitive golf balls, as well as its own product, in various quantities, typically ranging from a single ball to multiple dozens. These balls were logged in to a ledger-type notebook starting in 1992. In these log books, which were in use through early March of 1997, a sequential log number was assigned. The log number was five digits long, with the first two digits representing the year, and the remaining digits representing the order in that year in which the ball was logged. For example, the first competitive balls obtained in 1996 were assigned the log number 96001.

5.     From 1992 to mid 1994, ball types, that is balls that had the same name on their packaging, that were previously logged in that year would receive the same log number, but would get a unique chronological entry in the log book. Around 1995, Acushnet's practice was changed so that balls of the same type that were obtained at different times during the year would generally receive their own unique log number.

6.     The log books discussed above may also contain information such as the date that the golf ball sample was obtained and the number of balls in that sample. They may also contain information about the ball construction, and whether certain tests were performed and when.

7.     Actual data from measurements that were made on these golf balls were either hand written on blank forms and/or entered into Lotus 123 spreadsheets. These spreadsheets were stored on a series of floppy disks. These original Lotus 123 data files

2

were eventually copied to a network drive in order to obtain more reliable archiving. One disk was found to be unreadable at the time that copying was attempted.

8.     Eventually, two Lotus Notes Databases were created. The Competitive Log Database was created in March 1997 to replace the need for log books, and the Competitive Ball I Database was created in August 1996 to replace the Lotus 123 spreadsheets, as a place to store data. At some point, Acushnet also attempted to capture some of the information that was contained in the log books in the Log Database. Acushnet also attempted to backfill the new Competitive Ball Database with data from the Lotus 123 spreadsheets, however this work was never completed.

9.     It was realized at the end of 2000 that maintaining a separate log database was not necessary or productive, since all of the information in that database could be directly entered into the Competitive Ball Database. Starting with log # 200107, balls were logged directly into the Competitive Ball database. This has remained the current practice for logged golf balls to the present time.

10.     In 2000, an updated version of the Competitive Ball database was created, also using the Lotus Notes format. It was called the Competitive Ball Database II. This database had an improved look and functionality and took advantage of collapsible sections to hide fields from view if they were not of immediate interest, yet still make the information readily available and easy to find without excessive scrolling. Most or all of the data from the older Competitive Ball I Database, as well as significant portions of the Lotus 123 spreadsheets were eventually transferred to the Competitive Ball Database II. The Competitive Ball Database II is a much more comprehensive collection of competitive ball testing, and now includes information about all balls logged from 1992 to the present.

## C.  THE 1993 COMPETITIVE BALL LOG

11.     Around March 7, 2007, it had come to my attention that Jeff Dalton was being asked by counsel for proof of the fact that the Ultra Tour Balata ball that was tested in

connection with this litigation, log #93007, was received by Acushnet's R&D department in early 1993. Because of my personal familiarity with the old competitive ball records that were kept in paper form at that time, I personally searched for the original paper Competitive Log book from 1993.

12.     I first contacted the current competitive ball technician who did not know of the existence of these logs. I then contacted the individual who was the competitive ball technician until 2000. He then searched to find this log book, which he ultimately found in a locked desk drawer. It is my belief that the existence of these log books were only known by a handful of people in the department – specifically those people who worked with them when they were in active use, and those who had a need to use them more recently.

13.     I declare under penalty of perjury that the foregoing is true and correct.

DATED: April 3, 2007

David Bulpett

# EXHIBIT E

# THIS EXHIBIT HAS BEEN REDACTED IN ITS ENTIRETY

# EXHIBIT F

# THIS EXHIBIT HAS BEEN REDACTED IN ITS ENTIRETY

# EXHIBIT G

# THIS EXHIBIT HAS BEEN REDACTED IN ITS ENTIRETY

# EXHIBIT H



1299 Pennsylvania Avenue, NW
Washington, DC 20004-2402
T 202.783.0800
F 202.383.6610
www.howrey.com

February 1, 2007

<u>BY COURIER</u>

Robert M. Masters, Esq.
Paul, Hastings, Janofsky & Walker LLP
875 15th Street, N.W.
Washington, D.C. 20005

   Re: **Bridgestone Sports Co., Ltd. et.al.  v. Acushnet Co.**
     <u>**Civil Action No. 05-132**</u>

Dear Mr. Masters:

  Enclosed please find documents bearing bates numbers AB 0116309 – AB 0116342 and a CD bearing bates number AB 0116343.

      Sincerely,

      David D. Chase
      Litigation Case Manager

Enclosures

# EXHIBIT I

**Subject:**     FW: EP '043
**Attachments:** AB 0118715a.pdf; AB 0118710 - 0118715.pdf

---

**From:** Jenkins, Thomas
**Sent:** Wednesday, March 07, 2007 6:40 PM
**To:** terrywikberg@paulhastings.com; robertmasters@paulhastings.com
**Subject:** EP '043

Terry and Rob,

Please find attached results from additional testing by Acushnet regarding the EP '043 reference, completed and provided to Dr. Felker as of this date.

Regards,
Tom.

# EXHIBIT J

# THIS EXHIBIT HAS BEEN REDACTED IN ITS ENTIRETY

# EXHIBIT K

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| BRIDGESTONE SPORTS CO. LTD., AND BRIDGESTONE GOLF, INC<br><br>    Plaintiff,<br><br>  v.<br><br>ACUSHNET COMPANY<br><br>    Defendant. | Case No. 05-132(JJF) |
| ACUSHNET COMPANY<br><br>   Counterclaim-Plaintiff,<br><br>  v.<br><br>BRIDGESTONE SPORTS CO. LTD., AND BRIDGESTONE GOLF, INC<br><br>   Counterclaim-Defendant. | |

**SUPPLEMENTAL EXPERT REPORT OF EDWARD M. CAULFIELD, Ph.D., P.E.**

**SUPPLEMENTAL EXPERT REPORT OF EDWARD M. CAULFIELD**

4.  Kevin L. Jones, a Senior Staff Consultant at Packer Engineering with a B.S. in

    Metallurgical and Materials Engineering, assisted with the evaluation and analysis of the

    golf balls studied in this investigation.

## II. MATERIALS CONSIDERED

5.  In addition to information as a result of my general background and experience, I have

    reviewed and asked my engineering staff to help in the review of materials relating to the

    patents-in-suit and testing standards as listed in Exhibit EX-2 and EX-3 in my initial

    report as well as the material contained in the exhibits attached to this report.

## III. METHODOLOGY

6.  This investigation included the evaluation of a number of golf balls manufactured by

    Acushnet Company, Wilson Sporting Goods and Bridgestone Sports for their material

    properties and performance as related to the patents at issue in this matter.  Specifically,

    Wilson Ultra Tour Balata, Bridgestone Precept EV Extra Spin and golf balls

    manufactured by Acushnet related to the '817 ('673 Reference) were evaluated.  The

    Acushnet golf balls and Wilson Sporting Goods golf balls were provided by Acushnet for

    these evaluations and Acushnet's identification scheme was utilized on these balls.  Five

    (5) Bridgestone Precept EV Extra Spin golf balls were also provided by Bridgestone with

    no specific identification.  For testing purposes, these balls were identified as P1 to P5.

    Bridgestone also provided four (4) Bridgestone cores identified by Bridgestone as 1E-1,

    1E-2, 3E-1 and 3E-2.  See Table XIV in Exhibit EX-45 for a listing of all the ball

    identifications used in these evaluations.

2

# EXHIBIT L

TABLE XIV

GOLF BALL IDENTIFICATION

| Ball ID | Ball History - Ball Name | Quantity | Source |
|---|---|---|---|
| P1 - P5 | Untested - Bridgestone Precept EV Extra Spin | 5 | Bridgestone |
| 1, 2, 3 | Untested - Wilson Ultra Tour Balata | 3 | Acushnet |
| 1-1, 3-7, 4-4 | Untested - Wilson Ultra Tour Balata | 3 | Acushnet |
| Deflection/Core Diameter | Acushnet Prepared '673 Reference Balls | 24 | Acushnet |
| "L" Casing | Plaque Prepared from IML of Wilson Ultra Tour Balata | 1 | Acushnet |
| SA to SF | Acushnet Tested Cores - Wilson Ultra Competition 90 | 6 | Acushnet |
| BA to BF | Acushnet Tested Cores - Bridgestone EV Extra Spin | 6 | Acushnet |
| 1E-1, 1E-2, 3E-1, 3E-2 | Bridgestone Cores | 4 | Bridgestone |

# EXHIBIT M

# THIS EXHIBIT HAS BEEN REDACTED IN ITS ENTIRETY

# EXHIBIT N

# THIS EXHIBIT HAS BEEN REDACTED IN ITS ENTIRETY

# EXHIBIT O

## IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF DELAWARE

BRIDGESTONE SPORTS CO., LTD.,           )
and BRIDGESTONE GOLF, INC.,             )
                                        )
        Plaintiffs,        )
                                        )
        v.                 )
                                        )
ACUSHNET COMPANY,                       )    C. A. No. 05-132 (JJF)
                                        )
        Defendant.         )
                                        )    **DEMAND FOR JURY TRIAL**
ACUSHNET COMPANY,                       )
                                        )
        Counterclaim Plaintiff,   )
                                        )
        v.                 )
                                        )
BRIDGESTONE SPORTS CO., LTD.,           )
and BRIDGESTONE GOLF, INC.,             )
                                        )
        Counterclaim Defendant.   )

### ACUSHNET'S OBJECTIONS AND RESPONSES TO
### BRIDGESTONE'S FIRST SET OF INTERROGATORIES
### DIRECTED TO ACUSHNET (NOS. 1-24)

Pursuant to Rule 33 of the Federal Rules of Civil Procedure, defendant and counterclaim

plaintiff Acushnet Company ("Acushnet") hereby responds to *the First Set of Interrogatories*

*Directed to Acushnet (Nos. 1-24)* ("First Set of Interrogatories") of defendants Bridgestone

Sports Co., Ltd. and Bridgestone Golf, Inc. (collectively, "Bridgestone").

### GENERAL STATEMENT

In responding to Bridgestone's First Set of Interrogatories, Acushnet does not waive any

objection that may be applicable to: (a) the use, for any purpose, of any information or

documents given in response to Bridgestone's First Set of Interrogatories; or (b) the

admissibility, relevancy, or materiality of any information or documents to any issue in this case.

United States Patent No. 5,024,444 to Yamagishi et al., titled "Golf Ball" (issued Jun. 18, 1991).

**Interrogatory No. 5:**

Separately, for each claim of the Bridgestone patents-in-suit that Acushnet contends is invalid, identify all Prior Art and/or Prior Art Golf Balls that Acushnet contends affects or relates to the validity of the Bridgestone patents-in-suit.

**Response to Interrogatory No. 5:**

Acushnet incorporates all of its General Objections and Objections to Definitions as though fully set forth herein and further specifically objects to this interrogatory as overly broad to the extent it seeks information protected by attorney-client privilege and/or work-product immunity. Acushnet further objects to this interrogatory as premature, overly broad and unduly burdensome. Bridgestone, with the service of this First Set of Interrogatories (Nos. 1-24) has just identified which claims it believes are infringed by Accused Acushnet Products. Acushnet is continuing its investigation of the Bridgestone patents-in-suit. Accordingly, Acushnet reserves the right to supplement, amend or change any part of the entirety of its response to this interrogatory. Without waiving, and subject to, these objections, Acushnet responds as follows:

To the extent that Bridgestone claims that the Bridgestone patents-in-suit cover the Accused Acushnet products, then the claims of the Bridgestone patents-in-suit are invalid for at least the following reasons:

12

| Bridgestone Patent | Claim No. | Prior Art Related to Validity |
|---|---|---|
| 5,252,652 | 1 | • United States Patent No. 4,556,220 to Tominaga et al., titled "Solid Golf Balls" (issued Dec. 3, 1985).<br><br>• United States Patent No. 4,683,257 to Kakiuchi et al., titled "Rubber Compositions for Solid Golf Balls" (issued Jul. 28, 1987).<br><br>• United States Patent No. 4,722,977 to Heinz Fischer, titled "Process and Composition for Viscosity Degradation of Diene Rubbers" (issued Feb. 2, 1988).<br><br>• H. Fries et al. "Mastication of Rubber," Vol. 55, Rubber Chemistry and Technology, pp. 309-327. |
| | 3 | • United States Patent No. 4,556,220 to Tominaga et al., titled "Solid Golf Balls" (issued Dec. 3, 1985).<br><br>• United States Patent No. 4,683,257 to Kakiuchi et al., titled "Rubber Compositions for Solid Golf Balls" (issued Jul. 28, 1987).<br><br>• United States Patent No. 4,722,977 to Heinz Fischer, titled "Process and Composition for Viscosity Degradation of Diene Rubbers" (issued Feb. 2, 1988).<br><br>• H. Fries et al. "Mastication of Rubber," Vol. 55, Rubber Chemistry and Technology, pp. 309-327. |
| | 5 | • United States Patent No. 4,556,220 to Tominaga et al., titled "Solid Golf Balls" (issued Dec. 3, 1985).<br><br>• United States Patent No. 4,683,257 to Kakiuchi et al., titled "Rubber Compositions for Solid Golf Balls" (issued Jul. 28, 1987).<br><br>• United States Patent No. 4,722,977 to Heinz Fischer, titled "Process and Composition for Viscosity Degradation of Diene Rubbers" (issued Feb. 2, 1988).<br><br>• H. Fries et al. "Mastication of Rubber," Vol. 55, Rubber Chemistry and Technology, pp. 309-327. |

| Bridgestone Patent | Claim No. | Prior Art Related to Validity |
|---|---|---|
| | 6 | • United States Patent No. 4,556,220 to Tominaga et al., titled "Solid Golf Balls" (issued Dec. 3, 1985).<br><br>• United States Patent No. 4,683,257 to Kakiuchi et al., titled "Rubber Compositions for Solid Golf Balls" (issued Jul. 28, 1987).<br><br>• United States Patent No. 4,722,977 to Heinz Fischer, titled "Process and Composition for Viscosity Degradation of Diene Rubbers" (issued Feb. 2, 1988).<br><br>• H. Fries et al. "Mastication of Rubber," Vol. 55, Rubber Chemistry and Technology, pp. 309-327. |
| | 7 | • United States Patent No. 4,556,220 to Tominaga et al., titled "Solid Golf Balls" (issued Dec. 3, 1985).<br><br>• United States Patent No. 4,683,257 to Kakiuchi et al., titled "Rubber Compositions for Solid Golf Balls" (issued Jul. 28, 1987).<br><br>• United States Patent No. 4,722,977 to Heinz Fischer, titled "Process and Composition for Viscosity Degradation of Diene Rubbers" (issued Feb. 2, 1988).<br><br>• H. Fries et al. "Mastication of Rubber," Vol. 55, Rubber Chemistry and Technology, pp. 309-327. |
| | 8 | • United States Patent No. 4,556,220 to Tominaga et al., titled "Solid Golf Balls" (issued Dec. 3, 1985).<br><br>• United States Patent No. 4,683,257 to Kakiuchi et al., titled "Rubber Compositions for Solid Golf Balls" (issued Jul. 28, 1987).<br><br>• United States Patent No. 4,722,977 to Heinz Fischer, titled "Process and Composition for Viscosity Degradation of Diene Rubbers" (issued Feb. 2, 1988).<br><br>• H. Fries et al. "Mastication of Rubber," Vol. 55, Rubber Chemistry and Technology, pp. 309-327. |

| Bridgestone Patent | Claim No. | Prior Art Related to Validity |
|---|---|---|
| | 9 | • United States Patent No. 4,556,220 to Tominaga et al., titled "Solid Golf Balls" (issued Dec. 3, 1985).<br><br>• United States Patent No. 4,683,257 to Kakiuchi et al., titled "Rubber Compositions for Solid Golf Balls" (issued Jul. 28, 1987).<br><br>• United States Patent No. 4,722,977 to Heinz Fischer, titled "Process and Composition for Viscosity Degradation of Diene Rubbers" (issued Feb. 2, 1988).<br><br>• H. Fries et al. "Mastication of Rubber," Vol. 55, Rubber Chemistry and Technology, pp. 309-327. |
| | 11 | • United States Patent No. 4,556,220 to Tominaga et al., titled "Solid Golf Balls" (issued Dec. 3, 1985).<br><br>• United States Patent No. 4,683,257 to Kakiuchi et al., titled "Rubber Compositions for Solid Golf Balls" (issued Jul. 28, 1987).<br><br>• United States Patent No. 4,722,977 to Heinz Fischer, titled "Process and Composition for Viscosity Degradation of Diene Rubbers" (issued Feb. 2, 1988).<br><br>• H. Fries et al. "Mastication of Rubber," Vol. 55, Rubber Chemistry and Technology, pp. 309-327. |
| | 12 | • United States Patent No. 4,556,220 to Tominaga et al., titled "Solid Golf Balls" (issued Dec. 3, 1985).<br><br>• United States Patent No. 4,683,257 to Kakiuchi et al., titled "Rubber Compositions for Solid Golf Balls" (issued Jul. 28, 1987).<br><br>• United States Patent No. 4,722,977 to Heinz Fischer, titled "Process and Composition for Viscosity Degradation of Diene Rubbers" (issued Feb. 2, 1988).<br><br>• H. Fries et al. "Mastication of Rubber," Vol. 55, Rubber Chemistry and Technology, pp. 309-327. |

| Bridgestone Patent | Claim No. | Prior Art Related to Validity |
|---|---|---|
| | 13 | • United States Patent No. 4,556,220 to Tominaga et al., titled "Solid Golf Balls" (issued Dec. 3, 1985).<br><br>• United States Patent No. 4,683,257 to Kakiuchi et al., titled "Rubber Compositions for Solid Golf Balls" (issued Jul. 28, 1987).<br><br>• United States Patent No. 4,722,977 to Heinz Fischer, titled "Process and Composition for Viscosity Degradation of Diene Rubbers" (issued Feb. 2, 1988).<br><br>• H. Fries et al. "Mastication of Rubber," Vol. 55, Rubber Chemistry and Technology, pp. 309-327. |
| 5,553,852 | 1 | • Wilson Ultra Tour Balata 90 golf ball made by Wilson Sporting Goods Co.<br><br>• Wilson Ultra Tour Balata 100 golf ball made by Wilson Sporting Goods Co.<br><br>• United States Patent No. 4,431,193 to R. Dennis Nesbitt, titled "Golf Ball and Method of Making Same" (issued Feb. 14, 1984).<br><br>• United States Patent No. 5,314,187 to James R. Proudfit, titled "Golf Ball with Improved Cover" (issued May 24, 1994). |

| Bridgestone Patent | Claim No. | Prior Art Related to Validity |
|---|---|---|
| | 2 | • Wilson Ultra Tour Balata 90 golf ball made by Wilson Sporting Goods Co.<br>• Wilson Ultra Tour Balata 100 golf ball made by Wilson Sporting Goods Co.<br>• United States Patent No. 4,431,193 to R. Dennis Nesbitt, titled "Golf Ball and Method of Making Same" (issued Feb. 14, 1984).<br>• United States Patent No. 5,314,187 to James R. Proudfit, titled "Golf Ball with Improved Cover" (issued May 24, 1994).<br>• United States Patent No. 6,210,293 to Michael J. Sullivan, titled "Multi-Layer Golf Ball" (issued Apr. 3, 2001).<br>• United States Patent No. 6,213,894 to Michael J. Sullivan, titled "Multi-Layer Golf Ball" (issued Apr. 10, 2001).<br>• United States Patent No. 6,503,156 to Michael J. Sullivan, titled "Golf Ball with Unique Outer Cover Characteristics" (issued Jan. 7, 2003).<br>• United States Patent No. 6,595,873 to Michael J. Sullivan, titled "Multi-Layer Golf Ball" (issued Jul. 22, 2003). |
| | 3 | • Wilson Ultra Tour Balata 90 golf ball made by Wilson Sporting Goods Co.<br>• Wilson Ultra Tour Balata 100 golf ball made by Wilson Sporting Goods Co.<br>• United States Patent No. 4,431,193 to R. Dennis Nesbitt, titled "Golf Ball and Method of Making Same" (issued Feb. 14, 1984). |

| Bridgestone Patent | Claim No. | Prior Art Related to Validity |
|---|---|---|
| | 4 | • Wilson Ultra Tour Balata 90 golf ball made by Wilson Sporting Goods Co.<br><br>• Wilson Ultra Tour Balata 100 golf ball made by Wilson Sporting Goods Co.<br><br>• United States Patent No. 5,314,187 to James R. Proudfit, titled "Golf Ball with Improved Cover" (issued May 24, 1994).<br><br>• United States Patent No. 6,210,293 to Michael J. Sullivan, titled "Multi-Layer Golf Ball" (issued Apr. 3, 2001).<br><br>• United States Patent No. 6,213,894 to Michael J. Sullivan, titled "Multi-Layer Golf Ball" (issued Apr. 10, 2001).<br><br>• United States Patent No. 6,503,156 to Michael J. Sullivan, titled "Golf Ball with Unique Outer Cover Characteristics" (issued Jan. 7, 2003).<br><br>• United States Patent No. 6,595,873 to Michael J. Sullivan, titled "Multi-Layer Golf Ball" (issued Jul. 22, 2003). |
| | 6 | • Wilson Ultra Tour Balata 90 golf ball made by Wilson Sporting Goods Co.<br><br>• United States Patent No. 5,314,187 to James R. Proudfit, titled "Golf Ball with Improved Cover" (issued May 24, 1994).<br><br>• Wilson Ultra Tour Balata 100 golf ball made by Wilson Sporting Goods Co.<br><br>• United States Patent No. 5,314,187 to James R. Proudfit, titled "Golf Ball with Improved Cover" (issued May 24, 1994). |
| | 7 | • Wilson Ultra Tour Balata 90 golf ball made by Wilson Sporting Goods Co.<br><br>• United States Patent No. 5,314,187 to James R. Proudfit, titled "Golf Ball with Improved Cover" (issued May 24, 1994).<br><br>• Wilson Ultra Tour Balata 100 golf ball made by Wilson Sporting Goods Co.<br><br>• United States Patent No. 5,314,187 to James R. Proudfit, titled "Golf Ball with Improved Cover" (issued May 24, 1994). |

18

| Bridgestone Patent | Claim No. | Prior Art Related to Validity |
|---|---|---|
| | 8 | • Wilson Ultra Tour Balata 90 golf ball made by Wilson Sporting Goods Co.<br><br>• United States Patent No. 5,314,187 to James R. Proudfit, titled "Golf Ball with Improved Cover" (issued May 24, 1994).<br><br>• Wilson Ultra Tour Balata 100 golf ball made by Wilson Sporting Goods Co.<br><br>• United States Patent No. 5,314,187 to James R. Proudfit, titled "Golf Ball with Improved Cover" (issued May 24, 1994).<br><br>• United States Patent No. 6,210,293 to Michael J. Sullivan, titled "Multi-Layer Golf Ball" (issued Apr. 3, 2001).<br><br>• United States Patent No. 6,213,894 to Michael J. Sullivan, titled "Multi-Layer Golf Ball" (issued Apr. 10, 2001).<br><br>• United States Patent No. 6,503,156 to Michael J. Sullivan, titled "Golf Ball with Unique Outer Cover Characteristics" (issued Jan. 7, 2003).<br><br>• United States Patent No. 6,595,873 to Michael J. Sullivan, titled "Multi-Layer Golf Ball" (issued Jul. 22, 2003). |
| 5,695,413 | 1 | • JP 6-14228 to Bridgestone Sports, titled "Multi-Piece Solid Golf Ball" (published May 24, 1994).<br><br>• United States Patent No. 5,439,227 to Egashira et al., titled "Multi-piece Solid Golf Ball" (issued Aug. 8, 1995).<br><br>• United States Patent No. 5,507,493 to Sullivan et al., titled "Golf Ball" (issued Apr. 16, 1996).<br><br>• United States Patent No. 4,848,770 to Sami Shama, titled "Three-Piece Solid Golf Ball" (issued Jul. 18, 1989). |
| | 2 | • JP 6-14228 to Bridgestone Sports, titled "Multi-Piece Solid Golf Ball" (published May 24, 1994).<br><br>• United States Patent No. 5,439,227 to Egashira et al., titled "Multi-piece Solid Golf Ball" (issued Aug. 8, 1995).<br><br>• United States Patent No. 4,848,770 to Sami Shama, titled "Three-Piece Solid Golf Ball" (issued Jul. 18, 1989). |

| Bridgestone Patent | Claim No. | Prior Art Related to Validity |
|---|---|---|
| | 3 | • JP 6-14228 to Bridgestone Sports, titled "Multi-Piece Solid Golf Ball" (published May 24, 1994).<br><br>• United States Patent No. 5,439,227 to Egashira et al., titled "Multi-piece Solid Golf Ball" (issued Aug. 8, 1995).<br><br>• United States Patent No. 5,507,493 to Sullivan et al., titled "Golf Ball" (issued Apr. 16, 1996).<br><br>• United States Patent No. 4,848,770 to Sami Shama, titled "Three-Piece Solid Golf Ball" (issued Jul. 18, 1989). |
| | 4 | • JP 6-14228 to Bridgestone Sports, titled "Multi-Piece Solid Golf Ball" (published May 24, 1994).<br><br>• United States Patent No. 5,439,227 to Egashira et al., titled "Multi-piece Solid Golf Ball" (issued Aug. 8, 1995).<br><br>• United States Patent No. 5,507,493 to Sullivan et al., titled "Golf Ball" (issued Apr. 16, 1996).<br><br>• United States Patent No. 4,848,770 to Sami Shama, titled "Three-Piece Solid Golf Ball" (issued Jul. 18, 1989). |
| | 9 | • JP 6-14228 to Bridgestone Sports, titled "Multi-Piece Solid Golf Ball" (published May 24, 1994).<br><br>• United States Patent No. 5,439,227 to Egashira et al., titled "Multi-piece Solid Golf Ball" (issued Aug. 8, 1995).<br><br>• United States Patent No. 5,507,493 to Sullivan et al., titled "Golf Ball" (issued Apr. 16, 1996).<br><br>• United States Patent No. 4,848,770 to Sami Shama, titled "Three-Piece Solid Golf Ball" (issued Jul. 18, 1989). |
| | 10 | • JP 6-14228 to Bridgestone Sports, titled "Multi-Piece Solid Golf Ball" (published May 24, 1994).<br><br>• United States Patent No. 5,439,227 to Egashira et al., titled "Multi-piece Solid Golf Ball" (issued Aug. 8, 1995).<br><br>• United States Patent No. 4,848,770 to Sami Shama, titled "Three-Piece Solid Golf Ball" (issued Jul. 18, 1989). |

20

| Bridgestone Patent | Claim No. | Prior Art Related to Validity |
|---|---|---|
| | 11 | • JP 6-14228 to Bridgestone Sports, titled "Multi-Piece Solid Golf Ball" (published May 24, 1994).<br><br>• United States Patent No. 5,439,227 to Egashira et al., titled "Multi-piece Solid Golf Ball" (issued Aug. 8, 1995).<br><br>• United States Patent No. 5,507,493 to Sullivan et al., titled "Golf Ball" (issued Apr. 16, 1996).<br><br>• United States Patent No. 4,848,770 to Sami Shama, titled "Three-Piece Solid Golf Ball" (issued Jul. 18, 1989). |
| 5,743,817 | 1 | • Wilson Ultra Competition 90 golf ball manufactured by Wilson Sporting Goods Co.<br><br>• UK Patent Application Publication No. 2 276 628 to Bridgestone Sports Co Ltd. (published Oct. 5, 1994).<br><br>• JP 6-14228 to Bridgestone Sports, titled "Multi-Piece Solid Golf Ball" (published May 24, 1994).<br><br>• United States Patent No. 5,439,227 to Egashira et al., titled "Multi-Piece Solid Golf Ball" (issued Aug. 8, 1995).<br><br>• United States Patent No. 4,858,924 to Saito et al., titled "Solid Golf Ball" (issued Aug. 22, 1989).<br><br>• United States Patent No. 4,848,770 to Sami Shama, titled "Three-Piece Solid Golf Ball" (issued Jul. 18, 1989). |
| | 2 | • Wilson Ultra Competition 90 golf ball manufactured by Wilson Sporting Goods Co.<br><br>• UK Patent Application Publication No. 2 276 628 to Bridgestone Sports Co Ltd. (published Oct. 5, 1994).<br><br>• JP 6-14228 to Bridgestone Sports, titled "Multi-Piece Solid Golf Ball" (published May 24, 1994).<br><br>• United States Patent No. 5,439,227 to Egashira et al., titled "Multi-Piece Solid Golf Ball" (issued Aug. 8, 1995).<br><br>• United States Patent No. 4,858,924 to Saito et al., titled "Solid Golf Ball" (issued Aug. 22, 1989).<br><br>• United States Patent No. 4,848,770 to Sami Shama, titled "Three-Piece Solid Golf Ball" (issued Jul. 18, 1989). |

| Bridgestone Patent | Claim No. | Prior Art Related to Validity |
|---|---|---|
| 5,782,707 | 1 | • Wilson Ultra Tour Balata 90 golf ball manufactured by Wilson Sporting Goods Co.<br><br>• Wilson Ultra Tour Balata 100 golf ball manufactured by Wilson Sporting Goods Co.<br><br>• EP 0 633 043 to Bridgestone Sports Co. Ltd., titled "Golf Balls" (published Jan. 11. 1995).<br><br>• United States Patent No. 4,804,189 to William Gobush, titled "Multiple Dimple Golf Ball" (issued Feb. 14, 1989). |
|  | 2 | • Wilson Ultra Tour Balata 90 golf ball manufactured by Wilson Sporting Goods Co.<br><br>• Wilson Ultra Tour Balata 100 golf ball manufactured by Wilson Sporting Goods Co.<br><br>• EP 0 633 043 to Bridgestone Sports Co. Ltd., titled "Golf Balls" (published Jan. 11. 1995).<br><br>• United States Patent No. 4,804,189 to William Gobush, titled "Multiple Dimple Golf Ball" (issued Feb. 14, 1989). |
|  | 3 | • Wilson Ultra Tour Balata 90 golf ball manufactured by Wilson Sporting Goods Co.<br><br>• Wilson Ultra Tour Balata 100 golf ball manufactured by Wilson Sporting Goods Co.<br><br>• EP 0 633 043 to Bridgestone Sports Co. Ltd., titled "Golf Balls" (published Jan. 11. 1995).<br><br>• United States Patent No. 4,804,189 to William Gobush, titled "Multiple Dimple Golf Ball" (issued Feb. 14, 1989).<br><br>• United States Patent No. 6,210,293 to Michael J. Sullivan, titled "Multi-Layer Golf Ball" (issued Apr. 3, 2001).<br><br>• United States Patent No. 6,213,894 to Michael J. Sullivan, titled "Multi-Layer Golf Ball" (issued Apr. 10, 2001).<br><br>• United States Patent No. 6,503,156 to Michael J. Sullivan, titled "Golf Ball with Unique Outer Cover Characteristics" (issued Jan. 7, 2003).<br><br>• United States Patent No. 6,595,873 to Michael J. Sullivan, titled "Multi-Layer Golf Ball" (issued Jul. 22, 2003). |

| Bridgestone Patent | Claim No. | Prior Art Related to Validity |
|---|---|---|
| | 4 | • Wilson Ultra Tour Balata 90 golf ball manufactured by Wilson Sporting Goods Co.<br>• Wilson Ultra Tour Balata 100 golf ball manufactured by Wilson Sporting Goods Co.<br>• EP 0 633 043 to Bridgestone Sports Co. Ltd., titled "Golf Balls" (published Jan. 11. 1995).<br>• United States Patent No. 4,804,189 to William Gobush, titled "Multiple Dimple Golf Ball" (issued Feb. 14, 1989). |
| | 5 | • Wilson Ultra Tour Balata 90 golf ball manufactured by Wilson Sporting Goods Co.<br>• Wilson Ultra Tour Balata 100 golf ball manufactured by Wilson Sporting Goods Co.<br>• EP 0 633 043 to Bridgestone Sports Co. Ltd., titled "Golf Balls" (published Jan. 11. 1995).<br>• United States Patent No. 4,804,189 to William Gobush, titled "Multiple Dimple Golf Ball" (issued Feb. 14, 1989). |
| | 9 | • Wilson Ultra Tour Balata 90 golf ball manufactured by Wilson Sporting Goods Co.<br>• Wilson Ultra Tour Balata 100 golf ball manufactured by Wilson Sporting Goods Co.<br>• EP 0 633 043 to Bridgestone Sports Co. Ltd., titled "Golf Balls" (published Jan. 11. 1995).<br>• United States Patent No. 4,804,189 to William Gobush, titled "Multiple Dimple Golf Ball" (issued Feb. 14, 1989). |
| | 10 | • Wilson Ultra Tour Balata 90 golf ball manufactured by Wilson Sporting Goods Co.<br>• Wilson Ultra Tour Balata 100 golf ball manufactured by Wilson Sporting Goods Co. |

23

| Bridgestone Patent | Claim No. | Prior Art Related to Validity |
|---|---|---|
| | 11 | • Wilson Ultra Tour Balata 90 golf ball manufactured by Wilson Sporting Goods Co.<br><br>• Wilson Ultra Tour Balata 100 golf ball manufactured by Wilson Sporting Goods Co.<br><br>• EP 0 633 043 to Bridgestone Sports Co. Ltd., titled "Golf Balls" (published Jan. 11. 1995).<br><br>• United States Patent No. 4,804,189 to William Gobush, titled "Multiple Dimple Golf Ball" (issued Feb. 14, 1989). |
| | 12 | • Wilson Ultra Tour Balata 90 golf ball manufactured by Wilson Sporting Goods Co.<br><br>• Wilson Ultra Tour Balata 100 golf ball manufactured by Wilson Sporting Goods Co. |
| | 13 | • Wilson Ultra Tour Balata 90 golf ball manufactured by Wilson Sporting Goods Co.<br><br>• Wilson Ultra Tour Balata 100 golf ball manufactured by Wilson Sporting Goods Co.<br><br>• EP 0 633 043 to Bridgestone Sports Co. Ltd., titled "Golf Balls" (published Jan. 11. 1995).<br><br>• United States Patent No. 4,804,189 to William Gobush, titled "Multiple Dimple Golf Ball" (issued Feb. 14, 1989). |
| | 14 | • Wilson Ultra Tour Balata 90 golf ball manufactured by Wilson Sporting Goods Co.<br><br>• Wilson Ultra Tour Balata 100 golf ball manufactured by Wilson Sporting Goods Co.<br><br>• EP 0 633 043 to Bridgestone Sports Co. Ltd., titled "Golf Balls" (published Jan. 11. 1995).<br><br>• United States Patent No. 4,804,189 to William Gobush, titled "Multiple Dimple Golf Ball" (issued Feb. 14, 1989). |
| | 16 | • EP 0 633 043 to Bridgestone Sports Co. Ltd., titled "Golf Balls" (published Jan. 11. 1995).<br><br>• United States Patent No. 4,804,189 to William Gobush, titled "Multiple Dimple Golf Ball" (issued Feb. 14, 1989). |

| Bridgestone Patent | Claim No. | Prior Art Related to Validity |
|---|---|---|
| | 17 | • Wilson Ultra Tour Balata 90 golf ball manufactured by Wilson Sporting Goods Co.<br><br>• Wilson Ultra Tour Balata 100 golf ball manufactured by Wilson Sporting Goods Co.<br><br>• EP 0 633 043 to Bridgestone Sports Co. Ltd., titled "Golf Balls" (published Jan. 11, 1995).<br><br>• United States Patent No. 4,804,189 to William Gobush, titled "Multiple Dimple Golf Ball" (issued Feb. 14, 1989). |
| 5,803,834 | 1 | • Wilson Ultra Competition 90 golf ball manufactured by Wilson Sporting Goods Co.<br><br>• Wilson Ultra Competition 100 golf ball manufactured by Wilson Sporting Goods Co.<br><br>• Precept EV Extra Spin golf ball manufactured by Bridgestone Sports, Ltd. |
| | 2 | • Wilson Ultra Competition 90 golf ball manufactured by Wilson Sporting Goods Co.<br><br>• Wilson Ultra Competition 100 golf ball manufactured by Wilson Sporting Goods Co.<br><br>• Precept EV Extra Spin golf ball manufactured by Bridgestone Sports, Ltd. |
| | 4 | • Wilson Ultra Competition 90 golf ball manufactured by Wilson Sporting Goods Co.<br><br>• Wilson Ultra Competition 100 golf ball manufactured by Wilson Sporting Goods Co.<br><br>• Precept EV Extra Spin golf ball manufactured by Bridgestone Sports, Ltd. |
| 5,813,924 | 1 | • Wilson Ultra Competition 90 golf ball manufactured by Wilson Sporting Goods Co.<br><br>• Wilson Ultra Competition 100 golf ball manufactured by Wilson Sporting Goods Co.<br><br>• Precept EV Extra Spin golf ball manufactured by Bridgestone Sports, Ltd.<br><br>• JP 6-14228 to Bridgestone Sports, titled "Multi-Piece Solid Golf Ball" (published May 24, 1994). |

25

| Bridgestone Patent | Claim No. | Prior Art Related to Validity |
|---|---|---|
| | | • United States Patent No. 4,858,924 to Saito et al., titled "Solid Golf Ball" (issued Aug. 22, 1989). |
| | | • Reygrande WF 432 golf ball manufactured by Bridgestone Sports, Ltd. |
| | | • Precept Dynawing Double Cover S+ golf ball manufactured by Bridgestone Sports, Ltd. |
| | | • United States Patent No. 5,779,563 to Yamagishi et al., titled "Multi-Piece Solid Golf Ball" (effective filing date May 13, 1996). |
| 6,634,961 | 1 | • United States Patent No. 6,486,261 to Wu et al., titled "Thin-layer-covered Golf Ball with Improved Velocity." |
| | | • United States Patent No. 6,875,131 to Cavallaro et al., titled "Multi-Layer Golf Ball" (effective filing date Mar. 14, 2001). |
| | | • United States Patent No. 6,162,135 to Bulpett et al., titled "Low Compression, Resilient Golf Balls Including an Inorganic Catalyst and Methods for Making the Same" (issued Dec. 19, 2000). |
| | 3 | • United States Patent No. 6,486,261 to Wu et al., titled "Thin-layer-covered Golf Ball with Improved Velocity." |
| | | • United States Patent No. 6,875,131 to Cavallaro et al., titled "Multi-Layer Golf Ball" (effective filing date Mar. 14, 2001). |
| | | • United States Patent No. 6,162,135 to Bulpett et al., titled "Low Compression, Resilient Golf Balls Including an Inorganic Catalyst and Methods for Making the Same" (issued Dec. 19, 2000). |
| | 4 | • United States Patent No. 6,486,261 to Wu et al., titled "Thin-layer-covered Golf Ball with Improved Velocity." |
| | | • United States Patent No. 6,875,131 to Cavallaro et al., titled "Multi-Layer Golf Ball" (effective filing date Mar. 14, 2001). |
| | | • United States Patent No. 6,162,135 to Bulpett et al., titled "Low Compression, Resilient Golf Balls Including an Inorganic Catalyst and Methods for Making the Same" (issued Dec. 19, 2000). |

| Bridgestone Patent | Claim No. | Prior Art Related to Validity |
|---|---|---|
| | 5 | • United States Patent No. 6,486,261 to Wu et al., titled "Thin-layer-covered Golf Ball with Improved Velocity."<br><br>• United States Patent No. 6,875,131 to Cavallaro et al., titled "Multi-Layer Golf Ball" (effective filing date Mar. 14, 2001).<br><br>• United States Patent No. 6,162,135 to Bulpett et al., titled "Low Compression, Resilient Golf Balls Including an Inorganic Catalyst and Methods for Making the Same" (issued Dec. 19, 2000). |
| | 6 | • United States Patent No. 6,486,261 to Wu et al., titled "Thin-layer-covered Golf Ball with Improved Velocity."<br><br>• United States Patent No. 6,875,131 to Cavallaro et al., titled "Multi-Layer Golf Ball" (effective filing date Mar. 14, 2001).<br><br>• United States Patent No. 6,162,135 to Bulpett et al., titled "Low Compression, Resilient Golf Balls Including an Inorganic Catalyst and Methods for Making the Same" (issued Dec. 19, 2000). |
| | 7 | • United States Patent No. 6,486,261 to Wu et al., titled "Thin-layer-covered Golf Ball with Improved Velocity."<br><br>• United States Patent No. 6,875,131 to Cavallaro et al., titled "Multi-Layer Golf Ball" (effective filing date Mar. 14, 2001).<br><br>• United States Patent No. 6,162,135 to Bulpett et al., titled "Low Compression, Resilient Golf Balls Including an Inorganic Catalyst and Methods for Making the Same" (issued Dec. 19, 2000). |
| | 8 | • United States Patent No. 6,486,261 to Wu et al., titled "Thin-layer-covered Golf Ball with Improved Velocity."<br><br>• United States Patent No. 6,875,131 to Cavallaro et al., titled "Multi-Layer Golf Ball" (effective filing date Mar. 14, 2001).<br><br>• United States Patent No. 6,162,135 to Bulpett et al., titled "Low Compression, Resilient Golf Balls Including an Inorganic Catalyst and Methods for Making the Same" (issued Dec. 19, 2000). |

| Bridgestone Patent | Claim No. | Prior Art Related to Validity |
|---|---|---|
| 6,679,791 | 1 | • United States Patent No. 6,390,935 to Kazushige Sugimoto, titled "Three-Piece Solid Golf Ball" (effective filing date Oct. 7, 1999).<br><br>• United States Patent No. 6,465,578 to Bissonnette et al., titled "Low Compression, Resilient Golf Balls Including an Organosulfur Catalyst and Method for Making Same" (effective filing date Dec. 24, 1998).<br><br>• EP 0 577 058 B1 to Wilson Sporting Goods Company, titled "Golf Ball with Improved Cover" (published Jan. 5, 1994).<br><br>• Top Flite System C golf ball manufactured by the Top Flite Golf Company.<br><br>• Tour Stage U-Spin golf Ball manufactured by Bridgestone Sports, Ltd. |
| | 2 | • United States Patent No. 6,390,935 to Kazushige Sugimoto, titled "Three-Piece Solid Golf Ball" (effective filing date Oct. 7, 1999).<br><br>• United States Patent No. 6,465,578 to Bissonnette et al., titled "Low Compression, Resilient Golf Balls Including an Organosulfur Catalyst and Method for Making Same" (effective filing date Dec. 24, 1998).<br><br>• EP 0 577 058 B1 to Wilson Sporting Goods Company, titled "Golf Ball with Improved Cover" (published Jan. 5, 1994).<br><br>• Top Flite System C golf ball manufactured by the Top Flite Golf Company.<br><br>• Tour Stage U-Spin golf Ball manufactured by Bridgestone Sports, Ltd. |

| Bridgestone Patent | Claim No. | Prior Art Related to Validity |
|---|---|---|
|  | 3 | • United States Patent No. 6,390,935 to Kazushige Sugimoto, titled "Three-Piece Solid Golf Ball" (effective filing date Oct. 7, 1999). |
|  |  | • United States Patent No. 6,465,578 to Bissonnette et al., titled "Low Compression, Resilient Golf Balls Including an Organosulfur Catalyst and Method for Making Same" (effective filing date Dec. 24, 1998). |
|  |  | • EP 0 577 058 B1 to Wilson Sporting Goods Company, titled "Golf Ball with Improved Cover" (published Jan. 5, 1994). |
|  |  | • Top Flite System C golf ball manufactured by the Top Flite Golf Company. |
|  |  | • Tour Stage U-Spin golf Ball manufactured by Bridgestone Sports, Ltd. |
|  | 4 | • United States Patent No. 6,390,935 to Kazushige Sugimoto, titled "Three-Piece Solid Golf Ball" (effective filing date Oct. 7, 1999). |
|  |  | • United States Patent No. 6,465,578 to Bissonnette et al., titled "Low Compression, Resilient Golf Balls Including an Organosulfur Catalyst and Method for Making Same" (effective filing date Dec. 24, 1998). |
|  |  | • EP 0 577 058 B1 to Wilson Sporting Goods Company, titled "Golf Ball with Improved Cover" (published Jan. 5, 1994). |
|  |  | • Top Flite System C golf ball manufactured by the Top Flite Golf Company. |
|  |  | • Tour Stage U-Spin golf Ball manufactured by Bridgestone Sports, Ltd. |

| Bridgestone Patent | Claim No. | Prior Art Related to Validity |
|---|---|---|
| | 5 | • United States Patent No. 6,390,935 to Kazushige Sugimoto, titled "Three-Piece Solid Golf Ball" (effective filing date Oct. 7, 1999). <br><br> • United States Patent No. 6,465,578 to Bissonnette et al., titled "Low Compression, Resilient Golf Balls Including an Organosulfur Catalyst and Method for Making Same" (effective filing date Dec. 24, 1998). <br><br> • EP 0 577 058 B1 to Wilson Sporting Goods Company, titled "Golf Ball with Improved Cover" (published Jan. 5, 1994). <br><br> • Top Flite System C golf ball manufactured by the Top Flite Golf Company. <br><br> • Tour Stage U-Spin golf Ball manufactured by Bridgestone Sports, Ltd. |
| | 6 | • United States Patent No. 6,390,935 to Kazushige Sugimoto, titled "Three-Piece Solid Golf Ball" (effective filing date Oct. 7, 1999). <br><br> • United States Patent No. 6,465,578 to Bissonnette et al., titled "Low Compression, Resilient Golf Balls Including an Organosulfur Catalyst and Method for Making Same" (effective filing date Dec. 24, 1998). <br><br> • EP 0 577 058 B1 to Wilson Sporting Goods Company, titled "Golf Ball with Improved Cover" (published Jan. 5, 1994). <br><br> • Top Flite System C golf ball manufactured by the Top Flite Golf Company. <br><br> • Tour Stage U-Spin golf Ball manufactured by Bridgestone Sports, Ltd. |
| | 8 | • United States Patent No. 6,390,935 to Kazushige Sugimoto, titled "Three-Piece Solid Golf Ball" (effective filing date Oct. 7, 1999). <br><br> • United States Patent No. 6,465,578 to Bissonnette et al., titled "Low Compression, Resilient Golf Balls Including an Organosulfur Catalyst and Method for Making Same" (effective filing date Dec. 24, 1998). |

| Bridgestone Patent | Claim No. | Prior Art Related to Validity |
|---|---|---|
| | 9 | • United States Patent No. 6,390,935 to Kazushige Sugimoto, titled "Three-Piece Solid Golf Ball" (effective filing date Oct. 7, 1999). |
| | | • United States Patent No. 6,465,578 to Bissonnette et al., titled "Low Compression, Resilient Golf Balls Including an Organosulfur Catalyst and Method for Making Same" (effective filing date Dec. 24, 1998). |
| | | • EP 0 577 058 B1 to Wilson Sporting Goods Company, titled "Golf Ball with Improved Cover" (published Jan. 5, 1994). |
| | | • Top Flite System C golf ball manufactured by the Top Flite Golf Company. |
| | | • Tour Stage U-Spin golf Ball manufactured by Bridgestone Sports, Ltd. |
| | 10 | • United States Patent No. 6,390,935 to Kazushige Sugimoto, titled "Three-Piece Solid Golf Ball" (effective filing date Oct. 7, 1999). |
| | | • United States Patent No. 6,465,578 to Bissonnette et al., titled "Low Compression, Resilient Golf Balls Including an Organosulfur Catalyst and Method for Making Same" (effective filing date Dec. 24, 1998). |
| | | • EP 0 577 058 B1 to Wilson Sporting Goods Company, titled "Golf Ball with Improved Cover" (published Jan. 5, 1994). |
| | | • Top Flite System C golf ball manufactured by the Top Flite Golf Company. |
| | | • Tour Stage U-Spin golf Ball manufactured by Bridgestone Sports, Ltd. |
| | | • United States Patent No. 5,252,652 to Egashira et al., titled "Solid Golf Ball" (issued Oct. 12, 1993). |
| | | • United States Patent No. 4,556,220 to Tominaga et al., titled "Solid Golf Balls" (issued Dec. 3, 1985). |
| | | • United States Patent No. 4,722,977 to Heinz Fischer, titled "Process and Composition for Viscosity Degradation of Diene Rubbers" (issued Feb. 2, 1988). |
| | | • H. Fries et al. "Mastication of Rubber," Vol. 55, Rubber Chemistry and Technology, pp. 309-327. |

31

| Bridgestone Patent | Claim No. | Prior Art Related to Validity |
|---|---|---|
| | 11 | • United States Patent No. 6,390,935 to Kazushige Sugimoto, titled "Three-Piece Solid Golf Ball" (effective filing date Oct. 7, 1999).<br><br>• United States Patent No. 6,465,578 to Bissonnette et al., titled "Low Compression, Resilient Golf Balls Including an Organosulfur Catalyst and Method for Making Same" (effective filing date Dec. 24, 1998).<br><br>• Tour Stage U-Spin golf Ball manufactured by Bridgestone Sports, Ltd.<br><br>• United States Patent No. 5,252,652 to Egashira et al., titled "Solid Golf Ball" (issued Oct. 12, 1993).<br><br>• United States Patent No. 4,556,220 to Tominaga et al., titled "Solid Golf Balls" (issued Dec. 3, 1985).<br><br>• United States Patent No. 4,722,977 to Heinz Fischer, titled "Process and Composition for Viscosity Degradation of Diene Rubbers" (issued Feb. 2, 1988).<br><br>• H. Fries et al. "Mastication of Rubber," Vol. 55, Rubber Chemistry and Technology, pp. 309-327. |
| | 12 | • United States Patent No. 6,390,935 to Kazushige Sugimoto, titled "Three-Piece Solid Golf Ball" (effective filing date Oct. 7, 1999).<br><br>• United States Patent No. 6,465,578 to Bissonnette et al., titled "Low Compression, Resilient Golf Balls Including an Organosulfur Catalyst and Method for Making Same" (effective filing date Dec. 24, 1998).<br><br>• Tour Stage U-Spin golf Ball manufactured by Bridgestone Sports, Ltd.<br><br>• United States Patent No. 5,252,652 to Egashira et al., titled "Solid Golf Ball" (issued Oct. 12, 1993).<br><br>• United States Patent No. 4,556,220 to Tominaga et al., titled "Solid Golf Balls" (issued Dec. 3, 1985).<br><br>• United States Patent No. 4,722,977 to Heinz Fischer, titled "Process and Composition for Viscosity Degradation of Diene Rubbers" (issued Feb. 2, 1988).<br><br>• H. Fries et al. "Mastication of Rubber," Vol. 55, Rubber Chemistry and Technology, pp. 309-327. |

| Bridgestone Patent | Claim No. | Prior Art Related to Validity |
|---|---|---|
|  | 13 | • United States Patent No. 6,390,935 to Kazushige Sugimoto, titled "Three-Piece Solid Golf Ball" (effective filing date Oct. 7, 1999).<br><br>• United States Patent No. 6,465,578 to Bissonnette et al., titled "Low Compression, Resilient Golf Balls Including an Organosulfur Catalyst and Method for Making Same" (effective filing date Dec. 24, 1998).<br><br>• EP 0 577 058 B1 to Wilson Sporting Goods Company, titled "Golf Ball with Improved Cover" (published Jan. 5, 1994).<br><br>• Top Flite System C golf ball manufactured by the Top Flite Golf Company.<br><br>• Tour Stage U-Spin golf Ball manufactured by Bridgestone Sports, Ltd. |
|  | 14 | • United States Patent No. 6,390,935 to Kazushige Sugimoto, titled "Three-Piece Solid Golf Ball" (effective filing date Oct. 7, 1999).<br><br>• United States Patent No. 6,465,578 to Bissonnette et al., titled "Low Compression, Resilient Golf Balls Including an Organosulfur Catalyst and Method for Making Same" (effective filing date Dec. 24, 1998).<br><br>• EP 0 577 058 B1 to Wilson Sporting Goods Company, titled "Golf Ball with Improved Cover" (published Jan. 5, 1994).<br><br>• Top Flite System C golf ball manufactured by the Top Flite Golf Company. |

| Bridgestone Patent | Claim No. | Prior Art Related to Validity |
|---|---|---|
| | 15 | • United States Patent No. 6,390,935 to Kazushige Sugimoto, titled "Three-Piece Solid Golf Ball" (effective filing date Oct. 7, 1999).<br><br>• United States Patent No. 6,465,578 to Bissonnette et al., titled "Low Compression, Resilient Golf Balls Including an Organosulfur Catalyst and Method for Making Same" (effective filing date Dec. 24, 1998).<br><br>• EP 0 577 058 B1 to Wilson Sporting Goods Company, titled "Golf Ball with Improved Cover" (published Jan. 5, 1994).<br><br>• Top Flite System C golf ball manufactured by the Top Flite Golf Company. |
| | 16 | • United States Patent No. 6,390,935 to Kazushige Sugimoto, titled "Three-Piece Solid Golf Ball" (effective filing date Oct. 7, 1999).<br><br>• United States Patent No. 6,465,578 to Bissonnette et al., titled "Low Compression, Resilient Golf Balls Including an Organosulfur Catalyst and Method for Making Same" (effective filing date Dec. 24, 1998).<br><br>• EP 0 577 058 B1 to Wilson Sporting Goods Company, titled "Golf Ball with Improved Cover" (published Jan. 5, 1994).<br><br>• Top Flite System C golf ball manufactured by the Top Flite Golf Company. |

| Bridgestone Patent | Claim No. | Prior Art Related to Validity |
|---|---|---|
| | 17 | • United States Patent No. 6,390,935 to Kazushige Sugimoto, titled "Three-Piece Solid Golf Ball" (effective filing date Oct. 7, 1999). <br><br> • United States Patent No. 6,465,578 to Bissonnette et al., titled "Low Compression, Resilient Golf Balls Including an Organosulfur Catalyst and Method for Making Same" (effective filing date Dec. 24, 1998). <br><br> • United States Patent No. 5,252,652 to Egashira et al., titled "Solid Golf Ball" (issued Oct. 12, 1993). <br><br> • United States Patent No. 4,556,220 to Tominaga et al., titled "Solid Golf Balls" (issued Dec. 3, 1985). <br><br> • United States Patent No. 4,722,977 to Heinz Fischer, titled "Process and Composition for Viscosity Degradation of Diene Rubbers" (issued Feb. 2, 1988). <br><br> • H. Fries et al. "Mastication of Rubber," Vol. 55, Rubber Chemistry and Technology, pp. 309-327. |
| | 19 | • United States Patent No. 6,390,935 to Kazushige Sugimoto, titled "Three-Piece Solid Golf Ball" (effective filing date Oct. 7, 1999). <br><br> • United States Patent No. 6,465,578 to Bissonnette et al., titled "Low Compression, Resilient Golf Balls Including an Organosulfur Catalyst and Method for Making Same" (effective filing date Dec. 24, 1998). <br><br> • United States Patent No. 5,252,652 to Egashira et al., titled "Solid Golf Ball" (issued Oct. 12, 1993). <br><br> • United States Patent No. 4,556,220 to Tominaga et al., titled "Solid Golf Balls" (issued Dec. 3, 1985). <br><br> • United States Patent No. 4,722,977 to Heinz Fischer, titled "Process and Composition for Viscosity Degradation of Diene Rubbers" (issued Feb. 2, 1988). <br><br> • H. Fries et al. "Mastication of Rubber," Vol. 55, Rubber Chemistry and Technology, pp. 309-327. |

35

| Bridgestone Patent | Claim No. | Prior Art Related to Validity |
|---|---|---|
| | 21 | • United States Patent No. 6,390,935 to Kazushige Sugimoto, titled "Three-Piece Solid Golf Ball" (effective filing date Oct. 7, 1999).<br><br>• United States Patent No. 6,465,578 to Bissonnette et al., titled "Low Compression, Resilient Golf Balls Including an Organosulfur Catalyst and Method for Making Same" (effective filing date Dec. 24, 1998).<br><br>• United States Patent No. 5,252,652 to Egashira et al., titled "Solid Golf Ball" (issued Oct. 12, 1993).<br><br>• United States Patent No. 4,556,220 to Tominaga et al., titled "Solid Golf Balls" (issued Dec. 3, 1985).<br><br>• United States Patent No. 4,722,977 to Heinz Fischer, titled "Process and Composition for Viscosity Degradation of Diene Rubbers" (issued Feb. 2, 1988).<br><br>• H. Fries et al. "Mastication of Rubber," Vol. 55, Rubber Chemistry and Technology, pp. 309-327. |
| | 22 | • United States Patent No. 6,390,935 to Kazushige Sugimoto, titled "Three-Piece Solid Golf Ball" (effective filing date Oct. 7, 1999).<br><br>• United States Patent No. 6,465,578 to Bissonnette et al., titled "Low Compression, Resilient Golf Balls Including an Organosulfur Catalyst and Method for Making Same" (effective filing date Dec. 24, 1998).<br><br>• United States Patent No. 5,252,652 to Egashira et al., titled "Solid Golf Ball" (issued Oct. 12, 1993).<br><br>• United States Patent No. 4,556,220 to Tominaga et al., titled "Solid Golf Balls" (issued Dec. 3, 1985).<br><br>• United States Patent No. 4,722,977 to Heinz Fischer, titled "Process and Composition for Viscosity Degradation of Diene Rubbers" (issued Feb. 2, 1988).<br><br>• H. Fries et al. "Mastication of Rubber," Vol. 55, Rubber Chemistry and Technology, pp. 309-327. |

| Bridgestone Patent | Claim No. | Prior Art Related to Validity |
|---|---|---|
| | 23 | • United States Patent No. 6,390,935 to Kazushige Sugimoto, titled "Three-Piece Solid Golf Ball" (effective filing date Oct. 7, 1999). |
| | | • United States Patent No. 6,465,578 to Bissonnette et al., titled "Low Compression, Resilient Golf Balls Including an Organosulfur Catalyst and Method for Making Same" (effective filing date Dec. 24, 1998). |
| | | • United States Patent No. 5,252,652 to Egashira et al., titled "Solid Golf Ball" (issued Oct. 12, 1993). |
| | | • United States Patent No. 4,556,220 to Tominaga et al., titled "Solid Golf Balls" (issued Dec. 3, 1985). |
| | | • United States Patent No. 4,722,977 to Heinz Fischer, titled "Process and Composition for Viscosity Degradation of Diene Rubbers" (issued Feb. 2, 1988). |
| | | • H. Fries et al. "Mastication of Rubber," Vol. 55, Rubber Chemistry and Technology, pp. 309-327. |
| 6,780,125 | 2 | • United States Patent No. 5,779,563 to Yamagishi et al., titled "Multi-Piece Solid Golf Ball" (issued Jul 14, 1998). |
| | | • JP 09-056848 to Bridgestone Sports, Ltd., titled "Multipiece Solid Golf Ball" (published Mar. 4, 1997). |
| | | • WO 97/09093 to Acushnet Company, titled "Enhanced Lofting Golf Balls" (published Mar. 13, 1997). |
| | | • Altus Newing Massy golf ball manufactured by Bridgestone Sports, Ltd. |
| | | • Precept Dynawing Double Cover S+ golf ball manufactured by Bridgestone Sports, Ltd. |

| Bridgestone Patent | Claim No. | Prior Art Related to Validity |
|---|---|---|
| | 3 | • United States Patent No. 5,779,563 to Yamagishi et al., titled "Multi-Piece Solid Golf Ball" (issued Jul 14, 1998).<br><br>• JP 09-056848 to Bridgestone Sports, Ltd., titled "Multipiece Solid Golf Ball" (published Mar. 4, 1997).<br><br>• WO 97/09093 to Acushnet Company, titled "Enhanced Lofting Golf Balls" (published Mar. 13, 1997).<br><br>• Altus Newing Massy golf ball manufactured by Bridgestone Sports, Ltd.<br><br>• Precept Dynawing Double Cover S+ golf ball manufactured by Bridgestone Sports, Ltd. |
| | 5 | • United States Patent No. 5,779,563 to Yamagishi et al., titled "Multi-Piece Solid Golf Ball" (issued Jul 14, 1998).<br><br>• JP 09-056848 to Bridgestone Sports, Ltd., titled "Multipiece Solid Golf Ball" (published Mar. 4, 1997).<br><br>• WO 97/09093 to Acushnet Company, titled "Enhanced Lofting Golf Balls" (published Mar. 13, 1997).<br><br>• Altus Newing Massy golf ball manufactured by Bridgestone Sports, Ltd.<br><br>• Precept Dynawing Double Cover S+ golf ball manufactured by Bridgestone Sports, Ltd. |
| | 6 | • United States Patent No. 5,779,563 to Yamagishi et al., titled "Multi-Piece Solid Golf Ball" (issued Jul 14, 1998).<br><br>• JP 09-056848 to Bridgestone Sports, Ltd., titled "Multipiece Solid Golf Ball" (published Mar. 4, 1997).<br><br>• WO 97/09093 to Acushnet Company, titled "Enhanced Lofting Golf Balls" (published Mar. 13, 1997).<br><br>• Altus Newing Massy golf ball manufactured by Bridgestone Sports, Ltd.<br><br>• Precept Dynawing Double Cover S+ golf ball manufactured by Bridgestone Sports, Ltd. |

| Bridgestone Patent | Claim No. | Prior Art Related to Validity |
|---|---|---|
| | 7 | • United States Patent No. 5,779,563 to Yamagishi et al., titled "Multi-Piece Solid Golf Ball" (issued Jul 14, 1998).<br><br>• JP 09-056848 to Bridgestone Sports, Ltd., titled "Multipiece Solid Golf Ball" (published Mar. 4, 1997).<br><br>• WO 97/09093 to Acushnet Company, titled "Enhanced Lofting Golf Balls" (published Mar. 13, 1997).<br><br>• Altus Newing Massy golf ball manufactured by Bridgestone Sports, Ltd.<br><br>• Precept Dynawing Double Cover S+ golf ball manufactured by Bridgestone Sports, Ltd. |
| | 8 | • United States Patent No. 5,779,563 to Yamagishi et al., titled "Multi-Piece Solid Golf Ball" (issued Jul 14, 1998).<br><br>• JP 09-056848 to Bridgestone Sports, Ltd., titled "Multipiece Solid Golf Ball" (published Mar. 4, 1997).<br><br>• WO 97/09093 to Acushnet Company, titled "Enhanced Lofting Golf Balls" (published Mar. 13, 1997).<br><br>• Altus Newing Massy golf ball manufactured by Bridgestone Sports, Ltd.<br><br>• Precept Dynawing Double Cover S+ golf ball manufactured by Bridgestone Sports, Ltd. |
| | 9 | • United States Patent No. 5,779,563 to Yamagishi et al., titled "Multi-Piece Solid Golf Ball" (issued Jul 14, 1998).<br><br>• JP 09-056848 to Bridgestone Sports, Ltd., titled "Multipiece Solid Golf Ball" (published Mar. 4, 1997).<br><br>• WO 97/09093 to Acushnet Company, titled "Enhanced Lofting Golf Balls" (published Mar. 13, 1997).<br><br>• Altus Newing Massy golf ball manufactured by Bridgestone Sports, Ltd.<br><br>• Precept Dynawing Double Cover S+ golf ball manufactured by Bridgestone Sports, Ltd.<br><br>• United States Patent No. 5,586,950 to Endo, titled "Golf Ball" (issued Dec. 24, 1996). |

39

| Bridgestone Patent | Claim No. | Prior Art Related to Validity |
|---|---|---|
| | 10 | • United States Patent No. 5,779,563 to Yamagishi et al., titled "Multi-Piece Solid Golf Ball" (issued Jul 14, 1998). <br><br> • JP 09-056848 to Bridgestone Sports, Ltd., titled "Multipiece Solid Golf Ball" (published Mar. 4, 1997). <br><br> • WO 97/09093 to Acushnet Company, titled "Enhanced Lofting Golf Balls" (published Mar. 13, 1997). <br><br> • Altus Newing Massy golf ball manufactured by Bridgestone Sports, Ltd. <br><br> • Precept Dynawing Double Cover S+ golf ball manufactured by Bridgestone Sports, Ltd. <br><br> • United States Patent No. 5,009,428 to Yamagishi et al., titled "Golf Ball" (issued Apr. 23, 1991). <br><br> • United States Patent No. 5,024,444 to Yamagishi et al., titled "Golf Ball" (issued Jun. 18, 1991). <br><br> • United States Patent No. 5,033,750 to Yamagishi et al., titled "Golf Ball" (issued Jul. 23, 1991). |
| | 11 | • United States Patent No. 5,779,563 to Yamagishi et al., titled "Multi-Piece Solid Golf Ball" (issued Jul 14, 1998). <br><br> • JP 09-056848 to Bridgestone Sports, Ltd., titled "Multipiece Solid Golf Ball" (published Mar. 4, 1997). <br><br> • WO 97/09093 to Acushnet Company, titled "Enhanced Lofting Golf Balls" (published Mar. 13, 1997). <br><br> • Altus Newing Massy golf ball manufactured by Bridgestone Sports, Ltd. <br><br> • Precept Dynawing Double Cover S+ golf ball manufactured by Bridgestone Sports, Ltd. <br><br> • United States Patent No. 5,009,428 to Yamagishi et al., titled "Golf Ball" (issued Apr. 23, 1991). <br><br> • United States Patent No. 5,024,444 to Yamagishi et al., titled "Golf Ball" (issued Jun. 18, 1991). <br><br> • United States Patent No. 5,033,750 to Yamagishi et al., titled "Golf Ball" (issued Jul. 23, 1991). |

| Bridgestone Patent | Claim No. | Prior Art Related to Validity |
|---|---|---|
| | 12 | • United States Patent No. 5,779,563 to Yamagishi et al., titled "Multi-Piece Solid Golf Ball" (issued Jul 14, 1998). |
| | | • JP 09-056848 to Bridgestone Sports, Ltd., titled "Multipiece Solid Golf Ball" (published Mar. 4, 1997). |
| | | • WO 97/09093 to Acushnet Company, titled "Enhanced Lofting Golf Balls" (published Mar. 13, 1997). |
| | | • Altus Newing Massy golf ball manufactured by Bridgestone Sports, Ltd. |
| | | • Precept Dynawing Double Cover S+ golf ball manufactured by Bridgestone Sports, Ltd. |
| | | • United States Patent No. 5,009,428 to Yamagishi et al., titled "Golf Ball" (issued Apr. 23, 1991). |
| | | • United States Patent No. 5,024,444 to Yamagishi et al., titled "Golf Ball" (issued Jun. 18, 1991). |
| | | • United States Patent No. 5,033,750 to Yamagishi et al., titled "Golf Ball" (issued Jul. 23, 1991). |
| | 13 | • United States Patent No. 5,779,563 to Yamagishi et al., titled "Multi-Piece Solid Golf Ball" (issued Jul 14, 1998). |
| | | • JP 09-056848 to Bridgestone Sports, Ltd., titled "Multipiece Solid Golf Ball" (published Mar. 4, 1997). |
| | | • WO 97/09093 to Acushnet Company, titled "Enhanced Lofting Golf Balls" (published Mar. 13, 1997). |
| | | • Altus Newing Massy golf ball manufactured by Bridgestone Sports, Ltd. |
| | | • Precept Dynawing Double Cover S+ golf ball manufactured by Bridgestone Sports, Ltd. |
| | | • United States Patent No. 5,009,428 to Yamagishi et al., titled "Golf Ball" (issued Apr. 23, 1991). |
| | | • United States Patent No. 5,024,444 to Yamagishi et al., titled "Golf Ball" (issued Jun. 18, 1991). |
| | | • United States Patent No. 5,033,750 to Yamagishi et al., titled "Golf Ball" (issued Jul. 23, 1991). |

| Bridgestone Patent | Claim No. | Prior Art Related to Validity |
|---|---|---|
| | 14 | • United States Patent No. 5,779,563 to Yamagishi et al., titled "Multi-Piece Solid Golf Ball" (issued Jul 14, 1998). |
| | | • JP 09-056848 to Bridgestone Sports, Ltd., titled "Multipiece Solid Golf Ball" (published Mar. 4, 1997). |
| | | • WO 97/09093 to Acushnet Company, titled "Enhanced Lofting Golf Balls" (published Mar. 13, 1997). |
| | | • Altus Newing Massy golf ball manufactured by Bridgestone Sports, Ltd. |
| | | • Precept Dynawing Double Cover S+ golf ball manufactured by Bridgestone Sports, Ltd. |
| | | • United States Patent No. 5,009,428 to Yamagishi et al., titled "Golf Ball" (issued Apr. 23, 1991). |
| | | • United States Patent No. 5,024,444 to Yamagishi et al., titled "Golf Ball" (issued Jun. 18, 1991). |
| | | • United States Patent No. 5,033,750 to Yamagishi et al., titled "Golf Ball" (issued Jul. 23, 1991). |

Acushnet also refers to any and all documents that were cited or in any way referred to during prosecution of the respective Bridgestone patents-in-suit and/or any continuations, divisionals, continuation-in-parts, reissues, and/or any foreign counter part applications to the Bridgestone patents-in-suit as including other prior art documents that affect or relate to the validity of the Bridgestone patents-in-suit.

Acushnet reserves the right to supplement this response if additional information becomes available.

**Interrogatory No. 6:**

42