# EXHIBIT P

# THIS EXHIBIT HAS BEEN REDACTED IN ITS ENTIRETY

# EXHIBIT Q

# THIS EXHIBIT HAS BEEN REDACTED IN ITS ENTIRETY

# EXHIBIT R

THIS EXHIBIT HAS BEEN
REDACTED IN ITS ENTIRETY

# EXHIBIT S

# THIS EXHIBIT HAS BEEN REDACTED IN ITS ENTIRETY

# EXHIBIT T

# HOWREY LLP

1299 Pennsylvania Avenue, NW
Washington, DC 20004-2402
T 202.783.0800
F 202.383.6610
www.howrey.com

Direct Dial 202.383.7176
File 00634.0002

March 16, 2007

BY FACSIMILE

Brandon M. White, Esq.
Paul, Hastings, Janofsky & Walker LLP
875 15th Street, N.W.
Washington, D.C. 20005

     Re:    ***Bridgestone Sports Co. v. Acushnet Co.,***
                **Civil Action No. 05-132 (JJF) (D. Del.)**

Dear Brandon:

In his March 12, 2007 deposition, Mr. Lauro Cadorniga explained that he was involved in "prototype" tests conducted in or around August, 2006 that he relied upon in forming the opinions expressed in his expert report. (*See* March 12 Cadorniga Rough Tr. at 238-239). He further indicated that Dr. Caulfield or Kevin Jones may have recorded the results of such testing.

Mr. Cadorniga also discussed the use of a "fixture" which was used to perform core hardness testing in conjunction with his infringement analysis of U.S. Patent No. 5,803,834 and which was not identified in either his expert reports or the expert reports of Dr. Caulfield. (*See* March 12 Cadorniga Rough Tr. at 295; 300-301).

Please produce all documents related to the "prototype" testing as well as all data and all test results. Please do so for all "prototype" testing performed without regard to the nature of the test. For each "prototype" test performed, identify which, if any test identified in Dr. Caulfield's expert reports to which it relates, the dates the "prototype" tests occurred, and the individuals present at each test. To the extent that measurement results were not retained, please explain why they were discarded or destroyed.

Please make the "fixture" available for inspection at either the depositions of Dr. Caulfield or Mr. Jones.

Regards,

Renée L. Staslo

AMSTERDAM  BRUSSELS  CHICAGO  HOUSTON  IRVINE  LONDON
LOS ANGELES  MENLO PARK  NORTHERN VIRGINIA  PARIS  SAN FRANCISCO  WASHINGTON, DC
DM_US:20281347_2

# EXHIBIT U

**From:** Stasio, Renee
**Sent:** Tuesday, March 27, 2007 4:10 PM
**To:** White, Brandon M.
**Cc:** Jenkins, Thomas; Donnelly, Ken
**Subject:** Documents and Things for Caulfield's Deposition

Brandon:

I sent you a letter on March 16, 2007 requesting that Bridgestone produce the results of testing that Dr. Caulfield conducted as part of "practice runs" that he did last summer and that Mr. Cadorniga testified during his deposition that he saw. You have not responded to my letter. Acushnet requests that you produce those documents before Dr. Caulfield's deposition or explain in writing where those results are and why Bridgestone refuses to produce them.

In my letter, I also requested that the fixture that Mr. Cadorniga testified he made in connection with Dr. Caulfield's 5 mm testing be produced for inspection at Dr. Caulfield's deposition. Please confirm that the fixture will be available at his deposition or explain in writing why Bridgestone refuses to produce it for inspection.

Finally, in reviewing Dr. Caulfield's first report, I noted that in Exhibit 2, Dr. Caulfield listed that he reviewed "Bridgestone Testing Protocols (70416.0002) (Binder)" under the "Miscellaneous" heading. According to our records, Bridgestone has not produced this binder during discovery. Acushnet requests that Bridgestone produce this binder before Dr. Caulfield's deposition or explain in writing why it refuses to do so. If Bridgestone already has produced the document, provide Acushnet with the bates-stamp number of the document.

I look forward to your immediate response. Thank you.

---

*Renée L. Stasio*
*Of Counsel*
*Howrey LLP*
*1299 Pennsylvania Avenue N.W.*
*Washington, DC 20004*
*T: 202.383.7176*
*F: 202.383.6610*
*stasior@howrey.com*

# EXHIBIT V

03/28/2007 15:57 FAX 202 551 1705        PAUL HASTINGS                    ☑001

                                                                    *S63061*

# Paul Hastings

Paul, Hastings, Janofsky & Walker LLP
875 15th Street, N.W. • Washington, DC 20005
telephone 202 551 1700 • facsimile 202 551 1705 • www.paulhastings.com

## FACSIMILE TRANSMISSION

| | | | |
|---|---|---|---|
| **to:** | **company/office:** | **facsimile:** | **telephone:** |
| Renee L. Stasio | Howrey LLP | (202) 383-6610 | (202) 383-7176 |
| **from:** | **facsimile:** | **telephone:** | **initials:** |
| Brandon M. White | (202) 551-0154 | (202) 551-1754 | BMW2 |
| **client name:** | Bridgestone Sports | **client matter number:** | 70416.00002 |
| **date:** | March 28, 2007 | **pages (with cover):** | 27 |

**comments:**

Renee,

Please find attached additional information from Dr. Caulfield.

Regards,

Brandon

**If you do not receive all pages, please call immediately Facsimile Center: (202) 551-1275**

*This message is intended only for the use of the individual or entity to which it is addressed, and may contain information that is privileged, confidential and exempt from disclosure under applicable law. If the reader of this message is not the intended recipient, or the employee or agent responsible for delivering the message to the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited. If you have received this communication in error, please notify us immediately by telephone, and return the original message to us at the above address via the U.S. Postal Service. Thank you.*

Ball Manufacturer: **Titleist**

Model: **DT/SOLO**

Tester: klj

Date: 10/25/06

Time Start: 2:05 PM

Room Temperature: 70

Room Humidity: 58

Time Finish: 4:05 PM

| Ball ID | SIDE A Core 5mm Hardness (JIS - C) | | | | | Average | Group Average | Group Standard Deviation |
|---------|---|---|---|---|---|---------|---------------|--------------------------|
|         | 1 | 2 | 3 | 4 | 5 |         |               |                          |
| D1.UU.05 | 74 | 74 | 74 | 73 | 73 | 73.6 | 73.7 | 1.089 |
| D1.UU.01 | 76 | 75 | 75 | 75 | 75 | 75.2 |      |       |
| D1.UU.10 | 73 | 72 | 73 | 72 | 73 | 72.6 |      |       |
| D1.UU.07 | 73 | 74 | 73 | 73 | 73 | 73.2 |      |       |
| D1.SS.03 | 74 | 74 | 74 | 74 | 73 | 73.8 | 74.3 | 0.954 |
| D1.SS.11 | 75 | 75 | 75 | 74 | 75 | 74.8 |      |       |
| D1.SS.17 | 75 | 74 | 74 | 75 | 74 | 74.4 |      |       |
| D1.SS.08 | 76 | 75 | 75 | 75 | 74 | 75 |      |       |
| D1.SS.04 | 74 | 74 | 74 | 75 | 74 | 74.2 |      |       |
| D1.SS.24 | 73 | 73 | 73 | 72 | 72 | 72.6 |      |       |
| D1.SS.15 | 76 | 75 | 75 | 75 | 76 | 75.4 |      |       |
| D1.SS.21 | 74 | 74 | 74 | 74 | 73 | 73.8 |      |       |
| D1.WW.02 | 75 | 75 | 75 | 75 | 74 | 74.8 | 73.7 | 0.949 |
| D1.WW.06 | 73 | 73 | 73 | 73 | 73 | 73 |      |       |
| D1.WW.12 | 74 | 75 | 75 | 73 | 74 | 74.2 |      |       |
| D1.WW.19 | 75 | 75 | 74 | 73 | 74 | 74.2 |      |       |
| D1.WW.13 | 73 | 73 | 73 | 73 | 73 | 73 |      |       |
| D1.WW.09 | 74 | 74 | 74 | 73 | 73 | 73.6 |      |       |
| D1.WW.23 | 73 | 72 | 72 | 72 | 72 | 72.2 |      |       |
| D1.WW.16 | 74 | 74 | 74 | 75 | 74 | 74.2 |      |       |

03/28/2007 15:57 FAX 202 551 1705    PAUL HASTINGS    ☒003

| | | SIDE B | | | | | |
|---|---|---|---|---|---|---|---|
| | | Core 5mm Hardness (JIS - C) | | | | | |
| 1 | 2 | 3 | 4 | 5 | Average | Group Average | Group Standard Deviation |
| 76 | 75 | 75 | 75 | 75 | 75.2 | 74.6 | 0.821 |
| 75 | 75 | 75 | 75 | 74 | 74.8 | | |
| 76 | 74 | 75 | 74 | 75 | 74.8 | | |
| 74 | 74 | 74 | 73 | 73 | 73.6 | | |
| | | | | | | | |
| 75 | 75 | 74 | 74 | 74 | 74.4 | 74.6 | 0.705 |
| 76 | 76 | 76 | 75 | 75 | 75.6 | | |
| 75 | 75 | 74 | 74 | 74 | 74.4 | | |
| 75 | 75 | 75 | 75 | 74 | 74.8 | | |
| 76 | 75 | 75 | 75 | 75 | 75.2 | | |
| 75 | 74 | 74 | 74 | 73 | 74 | | |
| 75 | 74 | 74 | 75 | 74 | 74.4 | | |
| 75 | 74 | 74 | 74 | 74 | 74.2 | | |
| | | | | | | | |
| 75 | 74 | 74 | 75 | 75 | 74.6 | 74.0 | 0.815 |
| 74 | 74 | 74 | 75 | 75 | 74.4 | | |
| 74 | 73 | 73 | 73 | 74 | 73.4 | | |
| 75 | 75 | 74 | 74 | 74 | 74.4 | | |
| 74 | 73 | 73 | 72 | 72 | 72.8 | | |
| 74 | 74 | 74 | 74 | 75 | 74.2 | | |
| 74 | 74 | 73 | 73 | 73 | 73.4 | | |
| 75 | 74 | 74 | 74 | 75 | 74.4 | | |

03/28/2007 15:57 FAX 202 551 1705    PAUL HASTINGS    ☒004

Ball Manufacturer: **Titleist**          Tester: PBO          Room Temperature:          70

Model: **DT/SOLO**                       Date: 10/9/2006      Room Humidity:            59

                                         Time Start:    2:30  Time Finish: 4:00 PM

| Ball ID | SIDE A | | | | | | | |
| | Core 5mm Hardness (JIS - C) | | | | | | | |
| | 1 | 2 | 3 | 4 | 5 | Average | Group Average | Group Standard Deviation |
|---|---|---|---|---|---|---|---|---|
| D2.CC.16 | 73 | 72 | 72 | 71 | 71 | 71.8 | | |
| D2.CC.24 | 73 | 73 | 72 | 72 | 72 | 72.4 | | |
| D2.CC.02 | 73 | 73 | 73 | 73 | 72 | 72.8 | 72.3 | 0.785 |
| D2.CC.09 | 73 | 73 | 72 | 72 | 72 | 72.4 | | |
| D2.CC.21 | 74 | 73 | 73 | 72 | 72 | 72.8 | | |
| D2.CC.10 | 72 | 72 | 71 | 71 | 71 | 71.4 | | |
| | | | | | | | | |
| D2.BB.07 | 74 | 73 | 73 | 73 | 73 | 73.2 | | |
| D2.BB.17 | 72 | 71 | 71 | 71 | 71 | 71.2 | | |
| D2.BB.04 | 73 | 73 | 72 | 72 | 72 | 72.4 | 72.2 | 0.817 |
| D2.BB.13 | 72 | 72 | 72 | 71 | 71 | 71.6 | | |
| D2.BB.23 | 72 | 72 | 72 | 72 | 72 | 72 | | |
| D2.BB.10 | 73 | 73 | 73 | 73 | 73 | 73 | | |
| | | | | | | | | |
| D2.RR.03 | 74 | 74 | 74 | 74 | 73 | 73.8 | | |
| D2.RR.18 | 73 | 73 | 73 | 72 | 72 | 72.6 | | |
| D2.RR.19 | 73 | 73 | 73 | 73 | 73 | 73 | 72.6 | 1.006 |
| D2.RR.14 | 72 | 71 | 71 | 71 | 71 | 71.2 | | |
| D2.RR.05 | 74 | 73 | 73 | 73 | 73 | 73.2 | | |
| D2.RR.11 | 72 | 72 | 72 | 71 | 71 | 71.6 | | |
| | | | | | | | | |
| D2.AA.15 | 74 | 74 | 74 | 74 | 73 | 73.8 | | |
| D2.AA.22 | 73 | 73 | 73 | 72 | 72 | 72.6 | | |
| D2.AA.20 | 73 | 73 | 73 | 73 | 73 | 73 | 72.9 | 0.923 |
| D2.AA.08 | 72 | 72 | 72 | 71 | 71 | 71.6 | | |
| D2.AA.04 | 75 | 74 | 74 | 73 | 73 | 73.8 | | |
| D2.AA.01 | 73 | 73 | 73 | 72 | 72 | 72.6 | | |

03/28/2007 15:58 FAX 202 551 1705    PAUL HASTINGS    ☑005

| SIDE B | | | | | | | |
|---|---|---|---|---|---|---|---|
| Core 5mm Hardness (JIS - C) | | | | | | | |
| 1 | 2 | 3 | 4 | 5 | Average | Group Average | Group Standard Deviation |
| 74 | 73 | 73 | 73 | 73 | 73.2 | | |
| 74 | 73 | 73 | 73 | 72 | 73 | | |
| 74 | 73 | 73 | 73 | 73 | 73.2 | 72.9 | 0.629 |
| 73 | 72 | 72 | 72 | 72 | 72.2 | | |
| 74 | 73 | 73 | 73 | 72 | 73 | | |
| 73 | 73 | 73 | 72 | 72 | 72.6 | | |
| | | | | | | | |
| 74 | 74 | 73 | 73 | 73 | 73.4 | | |
| 72 | 72 | 72 | 71 | 71 | 71.6 | | |
| 74 | 73 | 73 | 73 | 73 | 73.2 | 72.3 | 0.907 |
| 72 | 72 | 72 | 71 | 71 | 71.6 | | |
| 72 | 72 | 72 | 71 | 71 | 71.6 | | |
| 73 | 72 | 72 | 72 | 72 | 72.2 | | |
| | | | | | | | |
| 74 | 74 | 74 | 74 | 73 | 73.8 | | |
| 74 | 74 | 74 | 74 | 74 | 74 | | |
| 74 | 74 | 74 | 73 | 73 | 73.6 | 73.1 | 0.845 |
| 72 | 72 | 72 | 72 | 72 | 72 | | |
| 73 | 73 | 73 | 73 | 72 | 72.8 | | |
| 73 | 73 | 72 | 72 | 72 | 72.4 | | |
| | | | | | | | |
| 74 | 74 | 73 | 73 | 73 | 73.4 | | |
| 74 | 74 | 73 | 73 | 73 | 73.4 | | |
| 74 | 74 | 73 | 73 | 73 | 73.4 | 73.6 | 0.774 |
| 75 | 74 | 74 | 74 | 74 | 74.2 | | |
| 75 | 75 | 74 | 74 | 74 | 74.4 | | |
| 73 | 73 | 73 | 72 | 72 | 72.6 | | |

03/28/2007 15:58 FAX 202 551 1705    PAUL HASTINGS    ☒006

Ball Manufacturer: **Titleist**          Tester: _____    Room Temperature: _____

Model: **DT/SOLO**          Date: _____    Room Humidity: _____

Time Start: _____    Time Finish: _____

| Ball ID | | | SIDE A | | | | | |
|---------|---|---|---|---|---|---|---|---|
| | | | Core 5mm Hardness (JIS - C) | | | | | |
| Ball ID | 1 | 2 | 3 | 4 | 5 | Average | Group Average | Group Standard Deviation |
| D2.GG.01 | 71 | 71 | 70 | 70 | 71 | 70.6 | | |
| D2.GG.04 | 70 | 70 | 70 | 70 | 70 | 70 | | |
| D2.GG.13 | 72 | 72 | 72 | 72 | 72 | 72 | | |
| D2.GG.16 | 71 | 71 | 70 | 71 | 70 | 70.6 | | |
| D2.GG.31 | 70 | 69 | 70 | 70 | 70 | 69.8 | 70.6 | 0.9 |
| D2.GG.34 | 72 | 70 | 70 | 71 | 70 | 70.6 | | |
| D2.GG.39 | 70 | 70 | 70 | 70 | 70 | 70 | | |
| D2.GG.41 | 72 | 72 | 72 | 72 | 72 | 72 | | |
| D2.GG.48 | 70 | 70 | 70 | 70 | 70 | 70 | | |
| | | | | | | | | |
| D2.FF.05 | 71 | 71 | 71 | 71 | 71 | 71 | | |
| D2.FF.10 | 74 | 74 | 74 | 73 | 74 | 73.8 | | |
| D2.FF.14 | 73 | 73 | 73 | 72 | 72 | 72.6 | | |
| D2.FF.19 | 72 | 72 | 71 | 70 | 71 | 71.2 | | |
| D2.FF.24 | 72 | 72 | 72 | 72 | 71 | 71.8 | 71.9 | 1.0 |
| D2.FF.28 | 72 | 72 | 71 | 71 | 71 | 71.4 | | |
| D2.FF.32 | 72 | 71 | 71 | 71 | 71 | 71.2 | | |
| D2.FF.41 | 72 | 72 | 72 | 72 | 72 | 72 | | |
| D2.FF.43 | N/A | | | | | #DIV/0! | | |

03/28/2007 15:58 FAX 202 551 1705    PAUL HASTINGS    ☒007

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| D2.HH.01 | 70 | 70 | 70 | 70 | 70 | 70 | |
| D2.HH.08 | 70 | 69 | 69 | 70 | 69 | 69.4 | |
| D2.HH.18 | 71 | 71 | 70 | 70 | 71 | 70.6 | |
| D2.HH.20 | 70 | 70 | 70 | 69 | 70 | 69.8 | |
| D2.HH.26 | 71 | 70 | 71 | 71 | 70 | 70.6 | 70.3 |
| D2.HH.29 | 72 | 71 | 72 | 71 | 72 | 71.6 | 0.9 |
| D2.HH.35 | 72 | 71 | 72 | 72 | 71 | 71.6 | |
| D2.HH.40 | 70 | 70 | 70.4 | 70 | 70 | 70.08 | |
| D2.HH.45 | 70 | 69 | 69 | 70 | 69 | 69.4 | |
| | | | | | | | |
| D2.OO.02 | 72 | 72 | 72 | 73 | 73 | 72.4 | |
| D2.OO.04 | 72 | 71 | 71 | 71 | 71 | 71.2 | |
| D2.OO.12 | 72 | 71 | 71 | 72 | 72 | 71.6 | |
| D2.OO.13 | 73 | 72 | 72 | 72 | 73 | 72.4 | |
| D2.OO.19 | 71 | 71 | 71 | 71 | 70 | 70.8 | 71.6 |
| D2.OO.23 | 72 | 72 | 71 | 71 | 71 | 71.4 | 0.9 |
| D2.OO.26 | 72 | 72 | 72 | 71 | 71 | 71.6 | |
| D2.OO.30 | 73 | 73 | 72 | 73 | 72 | 72.6 | |
| D2.OO.36 | 70 | 70 | 70 | 70 | 70 | 70 | |

| SIDE B | | | | | | | |
|---|---|---|---|---|---|---|---|
| Core 5mm Hardness (JIS - C) | | | | | | | |
| 1 | 2 | 3 | 4 | 5 | Average | Group Average | Group Standard Deviation |
| 71 | 71 | 71 | 71 | 71 | 71 | 70.6 | 0.5 |
| 72 | 71 | 71 | 71 | 71 | 71.2 | | |
| 71 | 71 | 71 | 71 | 71 | 71 | | |
| 71 | 71 | 71 | 71 | 71 | 71 | | |
| 70 | 70 | 70 | 71 | 70 | 70.2 | | |
| 70 | 70 | 70 | 70 | 70 | 70 | | |
| 71 | 71 | 71 | 71 | 70 | 70.8 | | |
| 71 | 70 | 70 | 70 | 70 | 70.2 | | |
| 71 | 70 | 71 | 70 | 70 | 70.4 | | |
| | | | | | | | |
| 73 | 72 | 72 | 72 | 72 | 72.2 | 72.2 | 0.5 |
| 73 | 72 | 72 | 72 | 72 | 72.2 | | |
| 72 | 72 | 72 | 72 | 72 | 72 | | |
| 72 | 72 | 72 | 73 | 72 | 72.2 | | |
| 73 | 73 | 73 | 73 | 73 | 73 | | |
| 72 | 72 | 72 | 72 | 71 | 71.8 | | |
| 72 | 72 | 71 | 72 | 72 | 71.8 | | |
| 73 | 72 | 72 | 72 | 72 | 72.2 | | |
| N/A | | | | | #DIV/0! | | |

03/28/2007 15:58 FAX 202 551 1705    PAUL HASTINGS    ☒009

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 71 | 71 | 71 | 70 | 70 | 70.6 | | |
| 72 | 71 | 71 | 72 | 71 | 71.4 | | |
| 72 | 71 | 71 | 71 | 71 | 71.2 | | |
| 71 | 72 | 71 | 71 | 71 | 71.2 | 71.2 | 0.9 |
| 72 | 72 | 72 | 71 | 71 | 71.6 | | |
| 72 | 72 | 73 | 73 | 73 | 72.6 | | |
| 72 | 72 | 72 | 72 | 72 | 72 | | |
| 71 | 71 | 71 | 71 | 71 | 71 | | |
| 70 | 70 | 70 | 69 | 69 | 69.6 | | |
| | | | | | | | |
| 72 | 72 | 72 | 72 | 72 | 72 | | |
| 72 | 73 | 72 | 72 | 72 | 72.2 | | |
| 73 | 73 | 72 | 73 | 73 | 72.8 | | |
| 73 | 73 | 73 | 72 | 72 | 72.6 | 71.9 | 0.9 |
| 72 | 72 | 71 | 71 | 71 | 71.4 | | |
| 72 | 72 | 71 | 72 | 71 | 71.6 | | |
| 72 | 73 | 73 | 73 | 72 | 72.6 | | |
| 73 | 72 | 72 | 72 | 72 | 72.2 | | |
| 70 | 70 | 70 | 70 | 70 | 70 | | |

03/28/2007 15:58 FAX 202 551 1705        PAUL HASTINGS                    ☒010

Ball Manufacturer: **Pinnacle**          Tester: PBO          Room Temperature:        71

Model: **Exception**          Date:    10/31/06          Room Humidity:        55

Time Start:        11:00          Time Finish: 11:30 AM

| Ball ID | SIDE A | | | | | Average | Group Average | Group Standard Deviation | |
|---------|---|---|---|---|---|---------|---------------|--------------------------|---|
| | Core 5mm Hardness (JIS - C) | | | | | | | | |
| | 1 | 2 | 3 | 4 | 5 | | | | |
| E1.KK.02 | 73 | 73 | 73 | 73 | 73 | 73 | 73.0 | 0.459 | |
| E1.KK.04 | 73 | 73 | 73 | 72 | 72 | 72.6 | | | |
| E1.KK.07 | 73 | 73 | 73 | 73 | 73 | 73 | | | |
| E1.KK.11 | 74 | 74 | 73 | 73 | 73 | 73.4 | | | |
| | | | | | | | | | |
| E1.SS.01 | 73 | 73 | 73 | 73 | 73 | 73 | 72.8 | 0.410 | |
| E1.SS.06 | 73 | 73 | 73 | 73 | 73 | 73 | | | |
| E1.SS.09 | 73 | 73 | 73 | 73 | 72 | 72.8 | | | |
| E1.SS.10 | 73 | 73 | 72 | 72 | 72 | 72.4 | | | |
| | | | | | | | | | |
| E1.WW.03 | 73 | 73 | 73 | 73 | 72 | 72.8 | 72.1 | 0.545 | |
| E1.WW.05 | 72 | 72 | 72 | 72 | 72 | 72 | | | |
| E1.WW.08 | 72 | 72 | 72 | 72 | 72 | 72 | | | |
| E1.WW.12 | 73 | 73 | 72 | 72 | 72 | 72.4 | | | |
| E1.WW.13 | 73 | 72 | 72 | 72 | 72 | 72.2 | | | |
| E1.WW.17 | 72 | 72 | 72 | 72 | 72 | 72 | | | |
| E1.WW.20 | 72 | 71 | 71 | 71 | 71 | 71.2 | | | |
| E1.WW.24 | 73 | 72 | 72 | 72 | 72 | 72.2 | | | |

03/28/2007 15:59 FAX 202 551 1705          PAUL HASTINGS                    ☒011

| | | SIDE B | | | | | |
|---|---|---|---|---|---|---|---|
| | | Core 5mm Hardness (JIS - C) | | | | | |
| 1 | 2 | 3 | 4 | 5 | Average | Group Average | Group Standard Deviation |
| 74 | 74 | 74 | 74 | 73 | 73.8 | 73.7 | 0.801 |
| 73 | 73 | 73 | 72 | 72 | 72.6 | | |
| 75 | 74 | 74 | 74 | 74 | 74.2 | | |
| 75 | 74 | 74 | 74 | 74 | 74.2 | | |
| | | | | | | | |
| 73 | 72 | 72 | 72 | 72 | 72.2 | 73.0 | 0.605 |
| 73 | 73 | 73 | 73 | 73 | 73 | | |
| 74 | 74 | 73 | 73 | 73 | 73.4 | | |
| 74 | 73 | 73 | 73 | 73 | 73.2 | | |
| | | | | | | | |
| 74 | 73 | 73 | 73 | 73 | 73.2 | 72.4 | 0.594 |
| 73 | 73 | 72 | 72 | 72 | 72.4 | | |
| 73 | 73 | 72 | 72 | 72 | 72.4 | | |
| 73 | 72 | 72 | 72 | 72 | 72.2 | | |
| 73 | 73 | 72 | 72 | 72 | 72.4 | | |
| 73 | 73 | 73 | 72 | 72 | 72.6 | | |
| 72 | 72 | 72 | 72 | 71 | 71.8 | | |
| 73 | 73 | 72 | 72 | 72 | 72.4 | | |

03/28/2007 15:59 FAX 202 551 1705     PAUL HASTINGS     ☒012

Ball Manufacturer: **Pinnacle**          Tester: PBO          Room Temperature: 70

Model: **Exception**          Date: 10/9/2006          Room Humidity: 59

Time Start: 2:30          Time Finish: 4:00 PM

| Ball ID | SIDE A — Core 5mm Hardness (JIS - C) | | | | | | | |
|---------|---|---|---|---|---|---------|------------------|-----------------------------|
|  | 1 | 2 | 3 | 4 | 5 | Average | Group Average | Group Standard Deviation |
| E1.AB.01 | 74 | 73 | 73 | 73 | 72 | 73 | | |
| E1.AB.05 | 74 | 73 | 73 | 73 | 73 | 73.2 | | |
| E1.AB.09 | 75 | 74 | 74 | 74 | 74 | 74.2 | | |
| E1.AB.16 | 74 | 74 | 73 | 73 | 73 | 73.4 | | |
| E1.AB.20 | 73 | 73 | 72 | 72 | 72 | 72.4 | 73.1 | 0.848 |
| E1.AB.24 | 73 | 73 | 73 | 72 | 72 | 72.6 | | |
| E1.AB.27 | 73 | 73 | 73 | 72 | 72 | 72.6 | | |
| E1.AB.31 | 75 | 74 | 74 | 74 | 74 | 74.2 | | |
| E1.AB.35 | 73 | 72 | 72 | 72 | 72 | 72.2 | | |
| | | | | | | | | |
| E1.CC.02 | 73 | 73 | 72 | 72 | 72 | 72.4 | | |
| E1.CC.06 | 74 | 73 | 73 | 73 | 73 | 73.2 | | |
| E1.CC.07 | 73 | 73 | 72 | 72 | 72 | 72.4 | | |
| E1.CC.17 | 73 | 73 | 73 | 73 | 73 | 73 | | |
| E1.CC.21 | 74 | 74 | 74 | 74 | 73 | 73.8 | 72.8 | 0.670 |
| E1.CC.22 | 74 | 73 | 73 | 73 | 73 | 73.2 | | |
| E1.CC.25 | 73 | 73 | 73 | 72 | 72 | 72.6 | | |
| E1.CC.32 | 73 | 72 | 72 | 72 | 72 | 72.2 | | |
| E1.CC.36 | 73 | 72 | 72 | 72 | 72 | 72.2 | | |

03/28/2007 15:59 FAX 202 551 1705          PAUL HASTINGS                    ✉013

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| E1.EE.03 | 72 | 72 | 71 | 71 | 71 | 71.4 | | |
| E1.EE.04 | 74 | 74 | 73 | 73 | 73 | 73.4 | | |
| E1.EE.08 | 74 | 74 | 74 | 73 | 73 | 73.6 | | |
| E1.EE.18 | 75 | 75 | 74 | 74 | 74 | 74.4 | | |
| E1.EE.19 | 73 | 73 | 73 | 72 | 72 | 72.6 | 73.1 | 1.027 |
| E1.EE.23 | 74 | 74 | 73 | 73 | 73 | 73.4 | | |
| E1.EE.26 | 73 | 73 | 72 | 72 | 72 | 72.4 | | |
| E1.EE.33 | 73 | 73 | 73 | 72 | 72 | 72.6 | | |
| E1.EE.34 | 75 | 74 | 74 | 74 | 74 | 74.2 | | |
| | | | | | | | | |
| E1.JJ.04 | 75 | 75 | 75 | 75 | 74 | 74.8 | | |
| E1.JJ.08 | 73 | 73 | 72 | 72 | 72 | 72.4 | | |
| E1.JJ.12 | 74 | 74 | 73 | 73 | 73 | 73.4 | | |
| E1.JJ.15 | 75 | 74 | 74 | 74 | 74 | 74.2 | | |
| E1.JJ.19 | 73 | 73 | 73 | 73 | 73 | 73 | 73.6 | 0.867 |
| E1.JJ.23 | 75 | 75 | 74 | 74 | 74 | 74.4 | | |
| E1.JJ.25 | 73 | 73 | 73 | 73 | 73 | 73 | | |
| E1.JJ.28 | 74 | 74 | 74 | 74 | 74 | 74 | | |
| E1.JJ.33 | 73 | 73 | 73 | 73 | 72 | 72.8 | | |

03/28/2007 15:59 FAX 202 551 1705        PAUL HASTINGS                    ☑014

| SIDE B | | | | | | | |
|---|---|---|---|---|---|---|---|
| Core 5mm Hardness (JIS - C) | | | | | | | |
| 1 | 2 | 3 | 4 | 5 | Average | Group Average | Group Standard Deviation |
| 73 | 73 | 73 | 73 | 72 | 72.8 | | |
| 74 | 74 | 73 | 73 | 73 | 73.4 | | |
| 74 | 74 | 74 | 73 | 73 | 73.6 | | |
| 75 | 74 | 74 | 74 | 74 | 74.2 | | |
| 74 | 73 | 73 | 73 | 73 | 73.2 | 73.5 | 0.695 |
| 73 | 73 | 73 | 73 | 72 | 72.8 | | |
| 74 | 74 | 73 | 73 | 73 | 73.4 | | |
| 75 | 74 | 74 | 74 | 74 | 74.2 | | |
| 75 | 74 | 74 | 73 | 73 | 73.8 | | |
| | | | | | | | |
| 74 | 73 | 73 | 73 | 73 | 73.2 | | |
| 73 | 73 | 73 | 72 | 72 | 72.6 | | |
| 73 | 73 | 72 | 72 | 72 | 72.4 | | |
| 74 | 74 | 74 | 74 | 74 | 74 | | |
| 75 | 74 | 74 | 74 | 74 | 74.2 | 73.4 | 0.751 |
| 75 | 74 | 74 | 74 | 74 | 74.2 | | |
| 74 | 73 | 73 | 73 | 73 | 73.2 | | |
| 74 | 74 | 73 | 73 | 73 | 73.4 | | |
| 74 | 74 | 73 | 73 | 73 | 73.4 | | |
| | | | | | | | |

03/28/2007 15:59 FAX 202 551 1705    PAUL HASTINGS    ☒015

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 74 | 73 | 73 | 73 | 73 | 73.2 | | |
| 74 | 73 | 73 | 73 | 73 | 73.2 | | |
| 75 | 74 | 74 | 74 | 74 | 74.2 | | |
| 75 | 74 | 74 | 74 | 74 | 74.2 | | |
| 73 | 72 | 72 | 72 | 72 | 72.2 | 73.5 | 0.757 |
| 74 | 74 | 74 | 73 | 73 | 73.6 | | |
| 74 | 73 | 73 | 73 | 73 | 73.2 | | |
| 74 | 73 | 73 | 73 | 73 | 73.2 | | |
| 75 | 74 | 74 | 74 | 74 | 74.2 | | |
| | | | | | | | |
| 75 | 75 | 75 | 74 | 74 | 74.6 | | |
| 74 | 74 | 73 | 73 | 73 | 73.4 | | |
| 74 | 74 | 74 | 74 | 73 | 73.8 | | |
| 75 | 75 | 75 | 74 | 74 | 74.6 | | |
| 74 | 74 | 74 | 73 | 73 | 73.6 | 73.9 | 0.668 |
| 74 | 74 | 74 | 73 | 73 | 73.6 | | |
| 75 | 75 | 74 | 74 | 74 | 74.4 | | |
| 74 | 74 | 74 | 74 | 74 | 74 | | |
| 74 | 73 | 73 | 73 | 73 | 73.2 | | |

03/28/2007 15:59 FAX 202 551 1705        PAUL HASTINGS                    ☑016

Ball Manufacturer: **Pinnacle**          Tester: klj       Room Temperature:        70

Model: **EXCEPTION**          Date: _____       Room Humidity:        59

Time Start:  11:30 AM          Time Finish: _____

Calibration Check (Start): 51, 51, 51
Calibration Check (Finish): 51, 51, 51

| Ball ID | Core 5mm Hardness (JIS - C) | | | | | Average | Group Average | Group Standard Deviation |
|---|---|---|---|---|---|---|---|---|
| | 1 | 2 | 3 | 4 | 5 | | | |
| E2.FF.01 | 71 | 71 | 71 | 71 | 71 | 71 | | |
| E2.FF.05 | 71 | 71 | 70 | 71 | 70 | 70.6 | | |
| E2.FF.12 | 70 | 70 | 70 | 70 | 69 | 69.8 | | |
| E2.FF.17 | 72 | 72 | 72 | 70 | 70 | 71.2 | | |
| E2.FF.19 | 71 | 71 | 71 | 71 | 71 | 71 | 71.0 | 1.0 |
| E2.FF.27 | 73 | 73 | 73 | 72 | 73 | 72.8 | | |
| E2.FF.36 | 71 | 71 | 71 | 70 | 70 | 70.6 | | |
| E2.FF.40 | 71 | 71 | 70 | 70 | 70 | 70.4 | | |
| E2.FF.44 | 72 | 72 | 72 | 72 | 71 | 72 | | |
| | | | | | | | | |
| E2.GG.03 | 71 | 71 | 71 | 70 | 71 | 70.8 | | |
| E2.GG.10 | 71 | 71 | 71 | 70 | 71 | 70.8 | | |
| E2.GG.15 | 71 | 71 | 71 | 71 | 70 | 70.8 | | |
| E2.GG.17 | 71 | 71 | 71 | 71 | 71 | 71 | 70.8 | 0.8 |
| E2.GG.22 | 72 | 72 | 71 | 71 | 71 | 71.4 | | |
| E2.GG.26 | 72 | 71 | 71 | 71 | 71 | 71.2 | | |
| E2.GG.30 | 72 | 72 | 71 | 71 | 71 | 71.4 | | |
| E2.GG.43 | 70 | 69 | 69 | 69 | 69 | 69.2 | | |
| E2.GG.46 | 71 | 70 | 71 | 70 | 71 | 70.6 | | |

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| E2.00.07 | 70 | 70 | 70 | 70 | 70 | 70 | |
| E2.00.11 | 71 | 71 | 71 | 70 | 71 | 70.8 | |
| E2.00.14 | 69 | 68 | 68 | 69 | 69 | 68.6 | |
| E2.00.23 | 69 | 69 | 69 | 69 | 70 | 69.2 | 69.8 | 1.1 |
| E2.00.28 | 72 | 72 | 71 | 72 | 72 | 71.8 | |
| E2.00.31 | 69 | 69 | 69 | 69 | 69 | 69 | |
| E2.00.37 | 69 | 69 | 69 | 68 | 69 | 68.8 | |
| E2.00.41 | 71 | 71 | 71 | 70 | 71 | 70.8 | |
| E2.00.45 | 69 | 69 | 68 | 69 | 69 | 69 | |
| | | | | | | | |
| E2.HH.02 | | | | | | #DIV/0! | |
| E2.HH.08 | 70 | 71 | 70 | 70 | 70 | 70.2 | |
| E2.HH.18 | 71 | 71 | 71 | 71 | 71 | 71 | |
| E2.HH.24 | 71 | 71 | 71 | 71 | 71 | 71 | 69.8 | 1.1 |
| E2.HH.25 | 69 | 70 | 69 | 70 | 70 | 69.6 | |
| E2.HH.33 | 68 | 68 | 68 | 68 | 68 | 68 | |
| E2.HH.35 | 69 | 69 | 68 | 69 | 69 | 68.8 | |
| E2.HH.42 | 70 | 71 | 69 | 69 | 70 | 69.8 | |
| E2.HH.48 | 71 | 70 | 70 | 70 | 70 | 70.2 | |

| Core 5mm Hardness (JIS - C) | | | | | | | |
| 1 | 2 | 3 | 4 | 5 | Average | Group Average | Group Standard Deviation |
|---|---|---|---|---|---|---|---|
| 72 | 72 | 72 | 71 | 71 | 71.75 | 71.0 | 0.8 |
| 70 | 70 | 70 | 70 | 70 | 70 | | |
| 72 | 71 | 71 | 71 | 71 | 71.2 | | |
| 73 | 72 | 72 | 70 | 72 | 71.8 | | |
| 71 | 71 | 71 | 71 | 71 | 71 | | |
| 72 | 71 | 72 | 72 | 71 | 71.6 | | |
| 71 | 71 | 70 | 71 | 70 | 70.6 | | |
| 71 | 71 | 71 | 70 | 70 | 70.6 | | |
| 71 | 70 | 70 | 71 | 70 | 70.4 | | |
| | | | | | | | |
| 71 | 71 | 71 | 71 | 71 | 71 | 70.7 | 0.7 |
| 71 | 71 | 71 | 71 | 71 | 71 | | |
| 71 | 71 | 71 | 71 | 71 | 71 | | |
| 70 | 70 | 69 | 69 | 69 | 69.4 | | |
| 71 | 71 | 71 | 71 | 71 | 71 | | |
| 71.4 | 71.6 | 71.2 | 71.2 | 71 | 71.28 | | |
| 71 | 71 | 71 | 70 | 71 | 70.8 | | |
| 70 | 70 | 70 | 70 | 70 | 70 | | |
| 72 | 71 | 71 | 71 | 71 | 71.2 | | |

CORES LIGHT BLUE IN COLOR

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 69 | 70 | 70 | 69 | 69 | 69.4 | | |
| 72 | 71 | 72 | 71 | 71 | 71.4 | | |
| 70 | 69 | 70 | 70 | 69 | 69.6 | | |
| 69 | 68 | 69 | 69 | 69 | 68.8 | | |
| 72 | 72 | 71 | 72 | 72 | 71.8 | 69.8 | 1.2 |
| 70 | 70 | 69 | 69 | 69 | 69.4 | | |
| 69 | 69 | 69 | 68 | 68 | 68.6 | | |
| 70 | 70 | 70 | 70 | 70 | 70 | | |
| 70 | 69 | 69 | 68 | 69 | 69 | | |
| | | | | | #DIV/0! | | Ball Damaged During Machining – TESTING STOPPED |
| 71 | 71 | 70 | 71 | 71 | 70.8 | | |
| 70 | 70 | 71 | 70 | 70 | 70.2 | | |
| 71 | 70 | 71 | 71 | 72 | 71 | | |
| 70 | 70 | 70 | 70 | 70 | 70 | 70.1 | 0.9 |
| 69 | 69 | 69 | 68 | 69 | 68.8 | | |
| 70 | 69 | 68 | 69 | 69 | 69 | | |
| 71 | 70 | 70 | 71 | 70 | 70.4 | | |
| 71 | 71 | 70 | 70 | 70 | 70.4 | | |

03/28/2007 16:00 FAX 202 551 1705         PAUL HASTINGS                              ☒020

Ball Manufacturer: **Titleist**          Tester: KLJ          Room Temperature:        70

Model: **NXT**          Date:  10/25/06          Room Humidity:        58

Time Start:  11:10 AM          Time Finish: 1:55:00 PM

| Ball ID | 1 | 2 | 3 | 4 | 5 | Average | Group Average | Group Standard Deviation | |
|---|---|---|---|---|---|---|---|---|---|
| SIDE A | | | | | | | | | |
| Core 5mm Hardness (JIS - C) | | | | | | | | | |
| N1.TT.15 | 72 | 72 | 72 | 71 | 71 | 71.6 | | | |
| N1.TT.09 | 72 | 72 | 72 | 72 | 72 | 72 | | | |
| N1.TT.16 | 73 | 73 | 73 | 73 | 72 | 72.8 | | | |
| N1.TT.06 | 73 | 73 | 73 | 72 | 72 | 72.6 | 72.0 | 0.785 | |
| N1.TT.02 | 71 | 72 | 71 | 71 | 71 | 71.2 | | | |
| N1.TT.11 | 71 | 71 | 71 | 71 | 71 | 71 | | | |
| N1.TT.20 | 73 | 73 | 73 | 72 | 72 | 72.6 | | | |
| | | | | | | | | | |
| N1.SS.23 | 73 | 73 | 72 | 73 | 72 | 72.6 | | | |
| N1.SS.21 | 73 | 73 | 73 | 72 | 72 | 72.6 | | | |
| N1.SS.14 | 74 | 73 | 73 | 73 | 73 | 73.2 | | | |
| N1.SS.12 | 73 | 72 | 72 | 72 | 73 | 72.4 | 72.3 | 0.960 | |
| N1.SS.07 | 71 | 71 | 71 | 71 | 70 | 70.8 | | | |
| N1.SS.03 | 72 | 72 | 72 | 72 | 72 | 72 | | | |
| N1.SS.18 | 74 | 73 | 74 | 73 | 73 | 73.4 | | | |
| N1.SS.05 | 72 | 71 | 71 | 71 | 71 | 71.2 | | | |
| | | | | | | | | | |
| N1.UU.10 | 72 | 72 | 71 | 72 | 71 | 71.6 | | | |
| N1.UU.08 | 71 | 71 | 71 | 71 | 71 | 71 | | | |
| N1.UU.17 | 72 | 72 | 72 | 71 | 72 | 71.8 | 71.9 | 0.759 | |
| N1.UU.01 | 73 | 73 | 73 | 72 | 72 | 72.6 | | | |
| N1.UU.04 | 72 | 73 | 71 | 72 | 71 | 71.8 | | | |
| N1.UU.13 | 73 | 73 | 73 | 72 | 72 | 72.6 | | | |

03/28/2007 16:00 FAX 202 551 1705    PAUL HASTINGS    ☒021

| SIDE B | | | | | | | |
|---|---|---|---|---|---|---|---|
| Core 5mm Hardness (JIS - C) | | | | | | | |
| 1 | 2 | 3 | 4 | 5 | Average | Group Average | Group Standard Deviation |
| 71 | 71 | 71 | 71 | 71 | 71 | | |
| 72 | 72 | 72 | 72 | 71 | 71.8 | | |
| 74 | 73 | 73 | 73 | 73 | 73.2 | | |
| 72 | 72 | 72 | 71 | 73 | 72 | 72.1 | 1.056 |
| 73 | 73 | 72 | 72 | 73 | 72.6 | | |
| 71 | 71 | 70 | 70 | 71 | 70.6 | | |
| 74 | 73 | 73 | 73 | 73 | 73.2 | | |
| | | | | | | | |
| 73 | 73 | 73 | 72 | 72 | 72.6 | | |
| 73 | 73 | 73 | 73 | 73 | 73 | | |
| 75 | 75 | 74 | 75 | 74 | 74.6 | | |
| 73 | 72 | 73 | 72 | 72 | 72.4 | 73.0 | 0.906 |
| 73 | 73 | 73 | 72 | 72 | 72.6 | | |
| 73 | 72 | 72 | 73 | 72 | 72.4 | | |
| 74 | 74 | 74 | 74 | 74 | 74 | | |
| 73 | 72 | 72 | 73 | 72 | 72.4 | | |
| | | | | | | | |
| 72 | 72 | 72 | 71 | 71 | 71.6 | | |
| 70 | 70 | 70 | 70 | 70 | 70 | | |
| 73 | 73 | 73 | 73 | 73 | 73 | 71.5 | 1.137 |
| 73 | 73 | 73 | 72 | 72 | 72.6 | | |
| 71 | 71 | 70 | 71 | 70 | 70.6 | | |
| 72 | 72 | 71 | 71 | 71 | 71.4 | | |

03/28/2007 16:00 FAX 202 551 1705          PAUL HASTINGS                    ☑022

Ball Manufacturer: **Titleist**          Tester: PBO          Room Temperature:          71

Model: **NXT**          Date: 10/9/2006          Room Humidity:          58

Time Start: 11:05 AM          Time Finish: 1:55

| Ball ID | Core 5mm Hardness (JIS - C) | | | | | Average | Group Average | Group Standard Deviation | |
|---|---|---|---|---|---|---|---|---|---|
| | 1 | 2 | 3 | 4 | 5 | | | | |
| N2.JJ.48 | 72 | 72 | 71 | 71 | 71 | 71.4 | 71.4 | 0.855 | |
| N2.JJ.28 | 71 | 70 | 70 | 70 | 70 | 70.2 | | | |
| N2.JJ.38 | 72 | 72 | 72 | 72 | 71 | 71.8 | | | |
| N2.JJ.33 | 73 | 72 | 73 | 72 | 72 | 72.4 | | | |
| N2.JJ.25 | 72 | 72 | 72 | 71 | 72 | 71.8 | | | |
| N2.JJ.42 | 71 | 71 | 71 | 70 | 71 | 70.8 | | | |
| | | | | | | | | | |
| N2.CC.12 | 70 | 70 | 70 | 69 | 69 | 69.6 | 70.4 | 0.894 | |
| N2.CC.18 | 72 | 72 | 72 | 72 | 72 | 72 | | | |
| N2.CC.09 | 70 | 70 | 70 | 70 | 70 | 70 | | | |
| N2.CC.15 | 70 | 70 | 70 | 70 | 70 | 70 | | | |
| N2.CC.24 | 71 | 71 | 71 | 71 | 71 | 71 | | | |
| N2.CC.03 | 70 | 70 | 70 | 70 | 69 | 69.8 | | | |
| | | | | | | | | | |
| N2.AB.23 | 69 | 69 | 69 | 68 | 68 | 68.6 | 70.3 | 2.368 | |
| N2.AB.20 | 70 | 69 | 69 | 69 | 60 | 67.4 | | | |
| N2.AB.05 | 71 | 71 | 71 | 70 | 71 | 70.8 | | | |
| N2.AB.17 | 72 | 72 | 72 | 72 | 71 | 71.8 | | | |
| N2.AB.06 | 72 | 72 | 72 | 72 | 71 | 71.8 | | | |
| N2.AB.02 | 72 | 72 | 71 | 72 | 71 | 71.6 | | | |
| | | | | | | | | | |
| N2.BB.04 | 71 | 71 | 70 | 70 | 70 | 70.4 | 71.3 | 0.794 | |
| N2.BB.13 | 72 | 71 | 71 | 71 | 70 | 71 | | | |
| N2.BB.19 | 72 | 71 | 71 | 71 | 71 | 71.2 | | | |
| N2.BB.22 | 73 | 73 | 72 | 72 | 72 | 72.4 | | | |
| N2.BB.07 | 72 | 72 | 71 | 71 | 71 | 71.4 | | | |
| N2.BB.10 | 72 | 71 | 71 | 72 | 71 | 71.4 | | | |

| Core 5mm Hardness (JIS - C) | | | | | | | |
|---|---|---|---|---|---|---|---|
| 1 | 2 | 3 | 4 | 5 | Average | Group Average | Group Standard Deviation |
| 72 | 71 | 71 | 71 | 71 | 71.2 | | |
| 72 | 72 | 71 | 71 | 71 | 71.4 | | |
| 72 | 72 | 71 | 72 | 71 | 71.6 | 71.6 | 0.621 |
| 72 | 72 | 72 | 72 | 72 | 72 | | |
| 72 | 72 | 70 | 71 | 71 | 71.2 | | |
| 73 | 72 | 72 | 72 | 72 | 72.2 | | |
| | | | | | | | |
| 70 | 70 | 70 | 70 | 70 | 70 | | |
| 72 | 72 | 72 | 73 | 72 | 72.2 | | |
| 71 | 71 | 71 | 71 | 70 | 70.8 | 71.0 | 1.129 |
| 71 | 72 | 71 | 71 | 71 | 71.2 | | |
| 72 | 72 | 73 | 73 | 72 | 72.4 | | |
| 70 | 70 | 70 | 69 | 69 | 69.6 | | |
| | | | | | | | |
| 70 | 70 | 70 | 69 | 69 | 69.6 | | |
| 71 | 70 | 70 | 70 | 70 | 70.2 | | |
| 71 | 72 | 71 | 71 | 71 | 71.2 | 70.9 | 0.885 |
| 72 | 72 | 71 | 71 | 71 | 71.4 | | |
| 72 | 72 | 72 | 71 | 71 | 71.6 | | |
| 72 | 72 | 71 | 71 | 71 | 71.4 | | |
| | | | | | | | |
| 71 | 71 | 71 | 71 | 71 | 71 | | |
| 72 | 71 | 72 | 71 | 71 | 71.4 | | |
| 73 | 73 | 72 | 72 | 72 | 72.4 | 71.9 | 0.753 |
| 73 | 73 | 72 | 72 | 72 | 72.4 | | |
| 73 | 72 | 72 | 72 | | 72.25 | | |
| 73 | 73 | 72 | 71 | 72 | 72.2 | | |

03/28/2007 16:01 FAX 202 551 1705        PAUL HASTINGS                     ☑024

Ball Manufacturer: **Titleist**           Tester: PBO        Room Temperature:        71

Model: **NXT**                  Date:   9/7/2006        Room Humidity:          56

                                    Time Start:   8:55 AM        Time Finish: 1:55

| Ball ID | \multicolumn{7}{c}{Core 5mm Hardness (JIS - C)} | Group Average | Group Standard Deviation |
|---------|----|----|----|----|----|---------|-------|---|
|         | 1  | 2  | 3  | 4  | 5  | Average | Group Average | Group Standard Deviation |
| N2.FF.01 | 71 | 71 | 70 | 70 | 70 | 70.4 | | |
| N2.FF.09 | 72 | 72 | 71 | 71 | 70 | 71.2 | | |
| N2.FF.11 | 73 | 73 | 72 | 72 | 72 | 72.4 | | |
| N2.FF.16 | 70 | 70 | 70 | 70 | 69 | 69.8 | | |
| N2.FF.19 | 71 | 70 | 70 | 69 | 69 | 69.8 | 70.5 | 1.0 |
| N2.FF.27 | 70 | 70 | 69 | 69 | 69 | 69.4 | | |
| N2.FF.32 | 71 | 71 | 70 | 70 | 70 | 70.4 | | |
| N2.FF.41 | 71 | 71 | 70 | 70 | 70 | 70.4 | | |
| N2.FF.45 | 71 | 71 | 70 | 70 | 70 | 70.4 | | |
|          |    |    |    |    |    |      | | |
| N2.GG.04 | 70 | 70 | 70 | 69 | 69 | 69.6 | | |
| N2.GG.07 | 71 | 71 | 71 | 71 | 71 | 71 | | |
| N2.GG.14 | 70 | 70 | 70 | 69 | 69 | 69.6 | | |
| N2.GG.21 | 73 | 72 | 72 | 72 | 72 | 72.2 | | |
| N2.GG.22 | 70 | 70 | 70 | 70 | 70 | 70 | 70.3 | 1.0 |
| N2.GG.25 | 70 | 70 | 69 | 69 | 69 | 69.4 | | |
| N2.GG.30 | 70 | 70 | 70 | 69 | 69 | 69.6 | | |
| N2.GG.40 | 71 | 71 | 71 | 70 | 70 | 70.6 | | |
| N2.GG.48 | 71 | 71 | 70 | 70 | 70 | 70.4 | | |
|          |    |    |    |    |    |      | | |

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| N2.HH.02 | 70 | 70 | 70 | 70 | 70 | 70 | |
| N2.HH.05 | 71 | 70 | 69 | 69 | 69 | 69.6 | |
| N2.HH.13 | 70 | 70 | 70 | 69 | 69 | 69.6 | |
| N2.HH.24 | 69 | 69 | 69 | 68 | 68 | 68.6 | |
| N2.HH.26 | 70 | 70 | 70 | 69 | 69 | 69.6 | 69.9 | 1.0 |
| N2.HH.28 | 70 | 70 | 70 | 69 | 69 | 69.6 | |
| N2.HH.34 | 72 | 71 | 71 | 71 | 71 | 71.2 | |
| N2.HH.42 | 72 | 72 | 71 | 71 | 71 | 71.5 | |
| N2.HH.43 | 71 | 70 | 70 | 69 | 69 | 69.8 | |
| N2.OO.03 | 70 | 70 | 69 | 69 | 69 | 69.4 | |
| N2.OO.08 | 71 | 70 | 70 | 70 | 69 | 70 | |
| N2.OO.10 | 69 | 69 | 68 | 68 | 68 | 68.4 | |
| N2.OO.15 | 72 | 71 | 71 | 70 | 70 | 70.8 | |
| N2.OO.20 | 69 | 68 | 68 | 68 | 68 | 68.2 | 69.6 | 1.0 |
| N2.OO.23 | 71 | 70 | 70 | 70 | 69 | 70 | |
| N2.OO.29 | 70 | 70 | 69 | 69 | 69 | 69.4 | |
| N2.OO.31 | 71 | 71 | 71 | 70 | 70 | 70.6 | |
| N2.OO.35 | 71 | 70 | 70 | 69 | 69 | 69.8 | |

03/28/2007 16:01 FAX 202 551 1705        PAUL HASTINGS                    ☒026

| Core 5mm Hardness (JIS - C) | | | | | | Group Average | |
|---|---|---|---|---|---|---|---|
| 1 | 2 | 3 | 4 | 5 | Average | | |
| 72 | 71 | 71 | 70 | 71 | 71 | | |
| 73 | 72 | 72 | 72 | 71 | 72 | | |
| 72 | 72 | 71 | 71 | 71 | 71.4 | | |
| 72 | 71 | 71 | 71 | 71 | 71.2 | | |
| 72 | 71 | 71 | 71 | 71 | 71.2 | 71.4 | 0.6 |
| 72 | 72 | 72 | 71 | 71 | 71.6 | | |
| 72 | 72 | 71 | 71 | 71 | 71.4 | | |
| 72 | 72 | 71 | 71 | 71 | 71.4 | | |
| 72 | 72 | 71 | 71 | 71 | 71.4 | | |
| | | | | | | | |
| 72 | 72 | 71 | 71 | 71 | 71.4 | | |
| 72 | 71 | 71 | 71 | 71 | 71.2 | | |
| 72 | 72 | 71 | 71 | 71 | 71.4 | | |
| 73 | 73 | 72 | 72 | 72 | 72.4 | | |
| 72 | 72 | 71 | 71 | 71 | 71.4 | 71.3 | 0.8 |
| 71 | 71 | 70 | 70 | 70 | 70.4 | | |
| 71 | 71 | 70 | 70 | 70 | 70.4 | | |
| 73 | 72 | 72 | 72 | 71 | 72 | | |
| 72 | 72 | 71 | 71 | 71 | 71.4 | | |

03/28/2007 16:01 FAX 202 551 1705    PAUL HASTINGS    ☑027

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 71 | 71 | 70 | 71 | 71 | 70.8 | | |
| 71 | 70 | 70 | 70 | 69 | 70 | | |
| 71 | 71 | 70 | 70 | 70 | 70.4 | | |
| 72 | 71 | 71 | 71 | 70 | 71 | 70.7 | 0.8 |
| 71 | 71 | 70 | 70 | 70 | 70.4 | | |
| 72 | 72 | 72 | 72 | 71 | 71.8 | | |
| 72 | 72 | 71 | 71 | 71 | 71.4 | | |
| 71 | 70 | 70 | 70 | 70 | 70.25 | | |
| 71 | 71 | 70 | 70 | 70 | 70.4 | | |
| 71 | 70 | 70 | 70 | 70 | 70.2 | | |
| 72 | 71 | 70 | 70 | 70 | 70.6 | | |
| 71 | 70 | 70 | 70 | 69 | 70 | | |
| 73 | 72 | 72 | 72 | 71 | 72 | 70.7 | 0.9 |
| 70 | 70 | 69 | 69 | 69 | 69.4 | | |
| 71 | 71 | 71 | 71 | 70 | 70.8 | | |
| 72 | 72 | 71 | 71 | 71 | 71.4 | | |
| 71 | 71 | 70 | 70 | 70 | 70.4 | | |
| 72 | 72 | 71 | 71 | 71 | 71.4 | | |

# EXHIBIT W

THIS EXHIBIT HAS BEEN
REDACTED IN ITS ENTIRETY

# EXHIBIT X

# THIS PAGE INTENTIONALLY LEFT BLANK

# EXHIBIT Y

**Documents Referenced in Bridgestone's Exhibit K That Are Relevant to the '707 Patent**

| LIST NO. | DATE | AUTHOR | ADDRESSEES | ADDITIONAL RECIPIENTS | DOCUMENT DESCRIPTION |
|---|---|---|---|---|---|
| 14 | UNDATED | T. LESTER | | | PATENT OPINION INDEX SUMMARIZING CONCLUSIONS OF NONINFRINGEMENT AND INVALIDITY. |
| 18 | UNDATED | T. LESTER | | | PATENT CHART SUMMARIZING LEGAL CONCLUSIONS OF PATENT INFRINGEMENT AND INVALIDITY. |
| 54 | UNDATED | T. LESTER | | B. MORGAN, J. DALTON, KEVIN H. | HANDWRITTEN NOTES OF COUNSEL CONTAINING LEGAL ADVICE REGARDING PATENT ISSUES |
| 65 | UNDATED | | | | TEST DATA OBTAINED AT THE REQUEST OF COUNSEL FOR PROVIDING LEGAL ADVICE RE PATENT ISSUES. |
| 71 | UNDATED | | | | PATENT ANALYSIS REFLECTING LEGAL ADVICE OF COUNSEL REGARDING PATENT ISSUES. |
| 75 | UNDATED | | | | HANDWRITTEN NOTE DESCRIBING LEGAL ADVICE OF COUNSEL REGARDING PATENT ISSUES |
| 76 | UNDATED | | | | PATENT ANALYSIS PREPARED AT THE REQUEST OF COUNSEL REFLECTING LEGAL ADVICE OF COUNSEL REGARDING PATENT ISSUES. |
| 83 | UNDATED | T. LESTER | | | PATENT ANALYSIS REFLECTING LEGAL ADVICE OF COUNSEL REGARDING PATENT ISSUES. |
| 86 | UNDATED | T. LESTER | | | PATENT ANALYSIS CONTAINING LEGAL ADVICE OF COUNSEL REGARDING PATENT ISSUES. |
| 88 | 09/26/00 | H. BOEHM | | | HANDWRITTEN NOTES DESCRIBING LEGAL ADVICE OF COUNSEL REGARDING PATENT ISSUES. |
| 92 | UNDATED | E. PENNINGTON | | | CLAIM CHARTS PREPARED BY COUNSEL REFLECTING THE LEGAL ADVICE OF COUNSEL REGARDING PATENT ISSUES IN ANTICIPATION OF LITIGATION. |

# EXHIBIT Z

UNITED STATES DISTRICT COURT
DISTRICT OF DELAWARE

| | |
|---|---|
| BRIDGESTONE SPORTS CO., LTD., and BRIDGESTONE GOLF, INC., | Case No. 05-CA-132 (JJF) |
| Plaintiffs, | |
| v. | **INVALIDITY EXPERT REPORT OF DR. DAVID FELKER** |
| ACUSHNET COMPANY, | |
| Defendant. | |
| | |
| ACUSHNET COMPANY, | |
| Counterclaimant, | |
| v. | |
| BRIDGESTONE SPORTS CO., LTD., and BRIDGESTONE GOLF, INC., | |
| Counterdefendant. | |

## Prior Art Golf Ball Test Results

**Ball Type: Wilson Ultra Tour Balata log # 93007**
**Ultra Tour Balata 90 Golf Balls obtained in 1993.**

### Diameter before Sandblasting (Ball Diameter), in

|    | Pole  | EQ1   | EQ2   | Avg Diam |
|----|-------|-------|-------|----------|
| 1  | 1.684 | 1.685 | 1.686 | 1.685    |
| 2  | 1.683 | 1.687 | 1.688 | 1.686    |
| 3  | 1.682 | 1.684 | 1.686 | 1.684    |
| 4  | 1.683 | 1.686 | 1.688 | 1.687    |
| 5  | 1.680 | 1.684 | 1.684 | 1.683    |
| 6  | 1.687 | 1.686 | 1.685 | 1.686    |
| 7  | 1.685 | 1.689 | 1.687 | 1.687    |
| 8  | 1.681 | 1.686 | 1.684 | 1.684    |
| 9  | 1.682 | 1.684 | 1.686 | 1.684    |
| 10 | 1.680 | 1.686 | 1.687 | 1.684    |
| 11 | 1.686 | 1.689 | 1.687 | 1.687    |
| 12 | 1.683 | 1.685 | 1.685 | 1.684    |

### Diameter after Sandblasting (Sandblasted Ball Diameter), in

|    | Pole  | EQ1   | EQ2   | Avg Diam |
|----|-------|-------|-------|----------|
| 1  | 1.679 | 1.681 | 1.680 | 1.680    |
| 2  | 1.678 | 1.684 | 1.682 | 1.681    |
| 3  | 1.678 | 1.682 | 1.681 | 1.680    |
| 4  | 1.682 | 1.684 | 1.684 | 1.683    |
| 5  | 1.675 | 1.681 | 1.679 | 1.678    |
| 6  | 1.683 | 1.681 | 1.683 | 1.682    |
| 7  | 1.681 | 1.682 | 1.682 | 1.682    |
| 8  | 1.678 | 1.681 | 1.681 | 1.680    |
| 9  | 1.678 | 1.682 | 1.681 | 1.680    |
| 10 | 1.678 | 1.682 | 1.682 | 1.681    |
| 11 | 1.680 | 1.682 | 1.683 | 1.682    |
| 12 | 1.680 | 1.682 | 1.683 | 1.682    |

### Diameter after cover is removed (Casing Diameter), in

|    | Pole  | EQ1   | EQ2   | Avg Diam |
|----|-------|-------|-------|----------|
| 1  | 1.576 | 1.582 | 1.578 | 1.579    |
| 2  | 1.581 | 1.583 | 1.581 | 1.582    |
| 3  | 1.577 | 1.583 | 1.588 | 1.583    |
| 4  | 1.577 | 1.586 | 1.585 | 1.583    |
| 5  | 1.580 | 1.587 | 1.583 | 1.583    |
| 6  | 1.580 | 1.587 | 1.587 | 1.585    |
| 7  | 1.586 | 1.585 | 1.584 | 1.585    |
| 8  | 1.574 | 1.587 | 1.586 | 1.582    |
| 9  | 1.573 | 1.584 | 1.585 | 1.581    |
| 10 | 1.575 | 1.579 | 1.583 | 1.579    |
| 11 | 1.580 | 1.585 | 1.581 | 1.582    |
| 12 | 1.577 | 1.582 | 1.583 | 1.581    |

### Thickness of the Cover, in

|    | Ball-core diam | Sandblasted ball-core diam |
|----|----------------|----------------------------|
| 1  | 0.053          | 0.051                      |
| 2  | 0.052          | 0.050                      |
| 3  | 0.050          | 0.049                      |
| 4  | 0.052          | 0.050                      |
| 5  | 0.050          | 0.048                      |
| 6  | 0.050          | 0.049                      |
| 7  | 0.051          | 0.049                      |
| 8  | 0.051          | 0.049                      |
| 9  | 0.052          | 0.050                      |
| 10 | 0.052          | 0.051                      |
| 11 | 0.052          | 0.050                      |
| 12 | 0.052          | 0.051                      |

**Specific Gravity of the core**

1.132
1.126
1.131
1.135

**Specific Gravity of the Inner Cover Layer**

0.963
0.975
0.966
0.961

**Core Diameter, in**

|    | Pole  | EQ1   | EQ2   | Avg Diam |
|----|-------|-------|-------|----------|
| 1  | 1.528 | 1.526 | 1.526 | 1.527    |
| 2  | 1.526 | 1.524 | 1.527 | 1.526    |
| 3  | 1.526 | 1.524 | 1.523 | 1.524    |
| 4  | 1.529 | 1.526 | 1.526 | 1.527    |
| 5  | 1.526 | 1.526 | 1.523 | 1.525    |
| 6  | 1.528 | 1.527 | 1.526 | 1.527    |
| 7  | 1.527 | 1.525 | 1.526 | 1.526    |
| 8  | 1.523 | 1.520 | 1.521 | 1.521    |
| 9  | 1.528 | 1.526 | 1.524 | 1.526    |
| 10 | 1.524 | 1.521 | 1.522 | 1.522    |
| 11 | 1.525 | 1.524 | 1.523 | 1.524    |
| 12 | 1.522 | 1.522 | 1.521 | 1.522    |

**Inner Cover Layer thickness, in**

|    | Casing- Core diam. |
|----|--------------------|
| 1  | 0.026              |
| 2  | 0.028              |
| 3  | 0.030              |
| 4  | 0.028              |
| 5  | 0.029              |
| 6  | 0.029              |
| 7  | 0.030              |
| 8  | 0.030              |
| 9  | 0.028              |
| 10 | 0.028              |
| 11 | 0.029              |
| 12 | 0.030              |

**Inner Cover Layer Hardness (on ball) (JIS-C)**

|    | N. Pole | S. Pole | Avg JIS-C |
|----|---------|---------|-----------|
| 1  | 87.4    | 92.0    | 89.7      |
| 2  | 90.0    | 85.4    | 87.7      |
| 3  | 84.7    | 87.9    | 86.3      |
| 4  | 84.8    | 89.1    | 87.0      |
| 5  | 86.4    | 86.9    | 86.6      |
| 6  | 85.0    | 91.0    | 88.0      |
| 7  | 91.9    | 87.6    | 89.8      |
| 8  | 91.1    | 89.2    | 90.2      |
| 9  | 88.7    | 88.2    | 88.4      |
| 10 | 88.4    | 87.4    | 87.9      |
| 11 | 85.8    | 90.6    | 88.2      |
| 12 | 86.3    | 90.4    | 88.4      |

# EXHIBIT AA

# THIS EXHIBIT HAS BEEN REDACTED IN ITS ENTIRETY

# EXHIBIT BB

**Subject:**     FW: Documents Requested During Deposition of Jeff Dalton
**Attachments:** AB 0118716 - 0118717.pdf; AB 0118718 - 0118748.pdf

**From:** Jenkins, Thomas
**Sent:** Wednesday, March 07, 2007 6:34 PM
**To:** terrywikberg@paulhastings.com
**Subject:** Documents Requested During Deposition of Jeff Dalton

Terry,

I have attached the testing plan and protocols mentioned by Jeff Dalton during his deposition, as requested.  This information supplements other testing procedures produced in this case.

Regards,
Tom.

# EXHIBIT CC

LEXSEE 2006 U.S. DIST LEXIS 76776



Analysis
As of: Apr 30, 2007

ROBERT ANDREW UPCHURCH and ISA UPCHURCH, Plaintiffs, v. OFFICER
EDWARD K. HESTER, OFFICER TIMOTHY D. MUTTER, CITY OF DOVER,
THE MILLS CORPORATION, d/b/a DOVER MALL, SMS HOLDINGS CORPO-
RATION d/b/a VALOR SECURITY SERVICES, and DANIEL WIDENER, Defen-
dants.

Civil Action No. 05-252-JJF

UNITED STATES DISTRICT COURT FOR THE DISTRICT OF DELAWARE

*2006 U.S. Dist. LEXIS 76776*

October 23, 2006, Decided

**PRIOR HISTORY:** *Upchurch v. Hester, 2006 U.S.
Dist. LEXIS 37472 (D. Del., June 8, 2006)*

**CASE SUMMARY:**

**PROCEDURAL POSTURE:** Plaintiffs filed this *42
U.S.C.S. § 1983* action against defendants, police offi-
cers, the City of Dover, the operator of a mall, a security
company, and an employee of the mall, in connection
with an incident at a mall in March 2004. Before the
court was plaintiffs' request/motion seeking thirty days to
produce an expert report from one plaintiff's treating
physician.

**OVERVIEW:** Plaintiffs sought permission to designate
plaintiff's treating physician as an expert, even though
the Scheduling Order deadline had passed. Plaintiffs also
sought permission to allow the treating physician to pro-
duce an expert report within 30 days if the court granted
the request. Defendants objected to the request. Defen-
dants contend that the treating physician could not opine
on the cause of plaintiff's injuries or on any future medi-
cal needs of plaintiff because his testimony was expert,
not factual, testimony, and because plaintiffs did not
timely identify the treating physician or submit an expert
report by him. The court found that because plaintiffs
intended to have the treating physician opine as to the
causation of plaintiff's injuries, and his future treatment
needs, plaintiffs intended to have the treating physician
provide expert testimony that reached beyond the ordi-

nary treatment of plaintiff. Therefore, an expert report
should have been provided to all defendants in accor-
dance with *Fed. R. Civ. P. 26(a)(2)(B)*. However, the
court found that plaintiff's failure to disclose was harm-
less.

**OUTCOME:** The request was granted.

**LexisNexis(R) Headnotes**

*Civil Procedure > Discovery > Disclosures > Manda-
tory Disclosures
Civil Procedure > Discovery > Methods > Expert Wit-
ness Discovery*
[HN1] Pursuant to *Fed. R. Civ. P. 26(a)(2)(A)*, expert
witnesses must be disclosed to the opposing side(s). In
determining whether a witness is an expert and therefore
must be identified and disclosed, Rule 26 focuses not on
the status of the witness, but rather on the substance of
the testimony.

*Civil Procedure > Discovery > Disclosures > Manda-
tory Disclosures
Civil Procedure > Discovery > Methods > Expert Wit-
ness Discovery*
[HN2] The designation of a witness as an expert is a mat-
ter separate from whether an expert report must be sub-
mitted by that witness. Not all identified experts must

2006 U.S. Dist. LEXIS 76776, *

submit expert reports. Rather, expert reports only need to be submitted by those witnesses who are retained or specifically employed to provide expert testimony. *Fed. R. Civ. P. 26(a)(2)(B)*. *Fed. R. Civ. P. 26(a)(2)(B)* does not require an expert report from a treating physician who will testify concerning his or her examination, diagnosis, treatment of a patient. However, the spirit and substance of Rule 26 cannot be avoided by employing the treating physician to provide, without an accompanying expert report, "classic expert testimony" regarding prognosis. When a treating physician's proffered testimony reaches beyond the basic facts learned during the treatment of a patient, and extends to typical opinion testimony, the provisions of Rule 26(a)(2)(B) attach, and an expert report must be provided.

*Civil Procedure > Discovery > Disclosures > Mandatory Disclosures*
*Civil Procedure > Discovery > Methods > Expert Witness Discovery*
[HN3] *Fed. R. Civ. P. 26(a)(2)(C)* details three methods to set a date for submitting an expert report: (1) by direction of the court, (2) by stipulation of the parties, or (3) by statute. If the parties or the court have not set a disclosure date, disclosures must be made at least 90 days before the trial date or the date the case is to be ready for trial.

*Civil Procedure > Discovery > Misconduct*
[HN4] A party that without substantial justification fails to disclose information required by *Fed. R. Civ. P. 26(a)* is not, unless such failure is harmless, permitted to use as evidence at a trial, at a hearing, or on a motion any witness or information not so disclosed. In addition to or in lieu of this sanction, the court may impose other appropriate sanctions. *Fed. R. Civ. P. 37(c)(1)*.

**COUNSEL:** [*1] Victor F. Battaglia, Sr., Esquire, and Phillip B. Bartoshesky, Esquire, of BIGGS & BATTAGLIA, Wilmington, Delaware. Attorneys for Plaintiffs.

Daniel A. Griffith, Esquire, and John Vernon Work, Esquire, of MARSHALL, DENNEHEY, WARNER, COLEMAN & GOGGIN, Wilmington, Delaware. Attorneys for Defendants Officer Edward K. Hester, Officer Timothy D. Mutter and City of Dover.

Michael L. Sensor, Esquire, of PERRY & SENSOR, Wilmington, Delaware. Attorney for Defendants The Mills Corporation d/b/a Dover Mall, SMS Holdings Corporation d/b/a Valor Security Services, and Daniel Widener.

**JUDGES:** Joseph J. Farnan Jr., UNITED STATES DISTRICT JUDGE.

**OPINION BY:** Joseph J. Farnan Jr.

**OPINION:**

### MEMORANDUM OPINION

October 23, 2006

Wilmington, Delaware

**Farnan, District Judge.**

Pending before the Court is Plaintiffs' request/motion n1 seeking thirty days to produce an expert report from Mr. Upchurch's treating physician. (D.I. 62). For the following reasons, the request will be granted.

n1 The parties have submitted this dispute by letters, which is prohibited by the *Rule 16* Scheduling Order (D.I. 17). Although the Court will entertain the current request, the Court will not entertain further requests submitted by letters.

[*2]

## I. BACKGROUND

### A. Parties

Plaintiffs, Robert Andrew Upchurch and Isa Upchurch ("Plaintiffs"), are citizens of the State of Delaware who have brought this action pursuant to *42 U.S.C. § 1983*, in connection with an incident at the Dover Mall in March 2004.

Defendants Edward K. Hester ("Hester") and Timothy D. Mutter ("Mutter") are officers of the Dover Police Department who were engaged in extra duty assignments at the Dover Mall in March 2004. Defendant City of Dover is a political subdivision of the State of Delaware. The Court will refer to these defendants, collectively, as the "Dover Defendants."

Defendant Dover Mall Limited Partnership, designated by Plaintiffs as "The Mills Corporation d/b/a Dover Mall" is a Delaware business entity which operates and does business as the Dover Mall ("Mall"). Defendant SMS Holdings Corporation d/b/a Valor Security Services is a Delaware Corporation which provides security services for the Dover Mall ("Valor"). Defendant Daniel Widener ("Widener"), a Delaware resident, was an employee of Valor in March 2004. The Court will refer to these defendants, collectively, as the "Mall Defendants."

2006 U.S. Dist. LEXIS 76776, *

### B. Background [*3]

The following facts are alleged in Plaintiffs' Amended Complaint. (D.I. 12). On the evening of March 14, 2006, after 9:00 p.m., Plaintiffs went shopping at the Dover Mall. Around 9:30 p.m., Mr. Upchurch went to see if the Boscov's store was still open. It was not. Mr. Upchurch was then approached by Defendant Widener, a security guard for Valor Security Services ("Valor"). Mr. Upchurch was advised that the store was not an exit from the Mall area. Mr. Upchurch then left the area after a verbal exchange between Defendant Widener and Mr. Upchurch, in which Defendant Widener identified himself as a security guard. As he was leaving, Mr. Upchurch heard Defendant Widener make a call on his two-way radio. Mr. Upchurch headed toward the Stawbridge's store, also in the Mall and still open at the time. As he approached Strawbridge's, he was stopped by Defendant Hester, an extra-duty City of Dover police officer procured by Valor for mall security duty through an arrangement with the City of Dover Police Department. Defendant Hester placed his hands on Mr. Upchurch's shoulders. Mr. Upchurch alleges he tried to run into Strawbridge's but was tackled to the floor from behind by Defendant Hester. [*4] Mr. Upchurch also alleges that Defendant Mutter, another extra-duty police officer, then sprayed Mr. Upchurch with mace or pepper spray while Mr. Upchurch was pinned to the floor. Mr. Upchurch was taken into custody and escorted out of the mall. As a result of this incident, Mr. Upchurch alleges he sustained injuries to his arm and left shoulder.

On April 28, 2005, Plaintiffs filed their Complaint. (D.I. 1). On December 22, 2005, the Court entered a Scheduling Order setting forth the parties' discovery deadlines. (D.I. 17). The Court designated April 20, 2006 as the date by which Plaintiffs were to produce expert reports, and, consequently, identify their experts. Id. To date, Plaintiffs have not designated any experts, and have not produced any expert reports. Plaintiffs now seek leave to submit an expert report from Dr. Glenn D. Rowe, Mr. Upchurch's treating physician.

### II. PARTIES' CONTENTIONS

By their letter request, Plaintiffs seek permission to designate Dr. Rowe as an expert, even though the Scheduling Order deadline has passed. Plaintiffs also seek permission to allow Dr. Rowe to produce an expert report within 30 days if the Court grants the request.

Both [*5] the Mall Defendants and the Dover Defendants object to Plaintiffs' request. The Mall Defendants contend that Dr. Rowe cannot opine on the cause of Mr. Upchurch's injuries or on any future medical needs of Mr. Upchurch, because his testimony is expert, not factual, testimony, and because Plaintiffs did not

timely identify Dr. Rowe or submit an expert report by him. (D.I. 61). Since all expert disclosures and reports were due by April 20, 2006, the Mall Defendants contend that Plaintiffs should not now be permitted to designate Dr. Rowe as an expert, nearly six months after the Scheduling Order deadline. Id. The Dover Defendants have also filed a letter in opposition to Plaintiffs' Motion, reiterating the Mall Defendants position. (D.I. 63).

### III. ISSUES PRESENTED

In the Court's view, the issues raised by Plaintiffs' request are: (1) whether the proffered testimony of Dr. Rowe is "expert" or "factual" in nature; and (2) when were Plaintiffs required to disclose Dr. Rowe's identity and proffered expert testimony to Defendants.

### IV. DISCUSSION

#### A. Dr. Rowe's Testimony Is Expert In Nature

[HN1] Pursuant to *Federal Rule of Civil Procedure 26(a)(2)(A)* [*6] , expert witnesses must be disclosed to the opposing side(s). In determining whether a witness is an expert and therefore must be identified and disclosed, *Rule 26* "focuses not on the status of the witness, but rather on the substance of the testimony." *Gomez v. Rivera Rodriguez, 344 F.3d 103, 113 (1st Cir. 2003)(citing Patel v. Gayes, 984 F.2d 214, 218 (7th Cir. 1993)).* The Court concludes that Plaintiffs should have designated and disclosed Dr. Rowe, Mr. Upchurch's treating physician, as an expert witness under *Rule 26(a)(2)(A).*

[HN2] The designation of a witness as an expert is a matter separate from whether an expert report must be submitted by that witness. Not all identified experts must submit expert reports. Rather, expert reports only need to be submitted by those witnesses who are "retained or specifically employed to provide expert testimony." *Fed. R. Civ. P. 26(a)(2)(B).* In advancing their contention that Dr. Rowe was not previously required to submit an expert report, Plaintiffs misconstrue the commentary to *Rule 26* identifying treating physicians as one group for which an expert report is not automatically [*7] required. (D.I. 62); see *Fed. R. Civ. P. 26,* cmt. 1993 Amendments, subdivision (a), para (2). *Rule 26(a)(2)(B)* does not require an expert report from a treating physician who will testify concerning his or her examination, diagnosis, treatment of a patient. However, the spirit and substance of *Rule 26* cannot be avoided by employing the treating physician to provide, without an accompanying expert report, "classic expert testimony" regarding prognosis. *Lauria v. AMTRAK, 1997 U.S. Dist. LEXIS 3408 at *4 (E.D. Pa 1997).* When a treating physician's proffered testimony reaches beyond the basic facts learned during the treatment of a patient, and extends to

2006 U.S. Dist. LEXIS 76776, *

typical opinion testimony, the provisions of *Rule 26(a)(2)(B)* attach, and an expert report must be provided. *Buss v. Quigg*, 2002 U.S. Dist. LEXIS 15081 at *2 (E.D. Pa 2002).

Because Plaintiffs intend to have Dr. Rowe opine as to the causation of Mr. Upchurch's injuries, and his future treatment needs, the Court concludes that Plaintiffs intend to have Dr. Rowe provide expert testimony that reaches beyond the ordinary treatment [*8] of Mr. Upchurch. The Court, therefore, concludes that an expert report should have been provided to all Defendants in accordance with *Rule 26(a)(2)(B)*.

B. Plaintiffs Were Required To Disclose All Experts In Accordance With The Court's Scheduling Order

[HN3] *Federal Rule of Civil Procedure 26(a)(2)(C)* details three methods to set a date for submitting an expert report: (1) by direction of the Court, (2) by stipulation of the parties, or (3) by statute. If the parties or the Court have not set a disclosure date, disclosures must be made "at least 90 days before the trial date or the date the case is to be ready, for trial." Id.

In this case, the *Rule 16* Scheduling Order (D.I. 17) required the Plaintiffs to disclose all experts and expert reports no later than April 20, 2006. Because Plaintiffs' current request to identify Dr. Rowe as an expert, and produce his expert report, was made on October 11, 2006, the Court concludes that the request is untimely.

C. The Impact Of Failing To Timely Disclose An Expert

Having concluded that Plaintiff's expert report is untimely, the Court must determine whether that untimeliness is sufficient to preclude [*9] Plaintiff from offering Dr. Rowe's expert report and testimony pursuant to *Federal Rule of Civil Procedure 37*. [HN4] "A party that without substantial justification fails to disclose information required by *Rule 26(a)* . . . is not, unless such failure is harmless, permitted to use as evidence at a trial, at a hearing, or on a motion any witness or information not so disclosed. In addition to or in lieu of this sanction, the court . . . may impose other appropriate sanctions." *Fed. R. Civ. P. 37(c)(1)*.

Plaintiffs' only justification for failing to disclose Dr. Rowe as an expert witness is their misunderstanding of the requirements of *Rule 26*. In the Court's view, this misunderstanding of the statute does not clearly constitute "substantial justification;" however, the Court finds that Plaintiff's failure to disclose is harmless. The Pre-Trial Conference is scheduled for January 2007. Moreover, Defendants have been aware, throughout the discovery period, of Mr. Upchurch's alleged shoulder injury

as well as the identity of Dr. Rowe as Mr. Upchurch's treating physician. Further, Plaintiffs indicate that Dr. Rowe's [*10] "expert report" will be provided to Defendants by mid-November. In these circumstances, the Court concludes that Plaintiffs should not be precluded from designating Dr. Rowe as an expert witness.

V. CONCLUSION

In sum, the Court concludes that Plaintiffs failed to comply with *Rule 26(a)* and identify Dr. Rowe as an expert witness and provide his expert report. However, because the Court finds that Plaintiffs' failure to disclose under *Rule 26(a)* was harmless, the Court will grant Plaintiff's request. Plaintiffs will be required to produce Dr. Rowe's expert report within thirty days of the date of this Order.

Finally, to avoid any undue prejudice to Defendants, the Court will require Mr. Upchurch to submit to a medical examination pursuant to *Federal Rule of Civil Procedure 35*, as requested by the Mall Defendants. (D.I. 61). Any medical expert reports to be offered by Defendants will be due 45 days after Mr. Upchurch's medical examination.

An order consistent with this Memorandum Opinion will be entered.

ORDER

At Wilmington, this 23 day of October 2006, for the reasons set forth in the Memorandum Opinion issued this date; [*11]

IT IS HEREBY ORDERED that Plaintiffs' request to designate an expert and submit an expert report is GRANTED (D.I. 62);

IT IS FURTHER ORDERED that:

1. Plaintiff is permitted to designate Dr. Rowe as an expert witness;

2. Plaintiff is required to produce Plaintiff's medical reports and Dr. Rowe's expert report to all Defendants within 30 days of this date;

3. Mr. Upchurch must submit to a medical examination pursuant to *Federal Rule of Civil Procedure 35*; and

4. Any medical expert reports to be offered by Defendants are due 45 days after Mr. Upchurch's medical examination.

Joseph J. Farnan Jr.

UNITED STATES DISTRICT JUDGE

# EXHIBIT DD

LEXSEE 2007 US DIST LEXIS 18764



Analysis
As of: Apr 30, 2007

THE GSI GROUP, INC., Plaintiff, v. SUKUP MANUFACTURING CO., Defendant.

No. 05-3011

UNITED STATES DISTRICT COURT FOR THE CENTRAL DISTRICT OF IL-
LINOIS, SPRINGFIELD DIVISION

*2007 U.S. Dist. LEXIS 18764*

**March 16, 2007, Decided**
**March 16, 2007, E-Filed**

**PRIOR HISTORY:** *GSI Group, Inc. v. Sukup Mfg. Co.,*
*2007 U.S. Dist. LEXIS 17809 (C.D. Ill., Mar. 14, 2007)*

**COUNSEL:** [*1] For The GSI Group Inc, Plaintiff,
Counter Defendant: Douglas D Churovich, Jonathan P
Soifer, McPherson D Moore, William B Cunningham, Jr,
LEAD ATTORNEYS, POLSTER LIEDER WOOD-
RUFF & LUCCHESI LC, St. Louis, MO.

For Sukup Manufacturing Co, Defendant, Counter
Claimant: Dean L Franklin, Matthew A Rosenberg,
LEAD ATTORNEYS, THOMPSON COBURN LLP, St
Louis, MO; Timothy J Londrigan, LEAD ATTORNEY,
LONDRIGAN POTTER & RANDLE PC, Springfield,
IL; Timothy J Zarley, LEAD ATTORNEY, ZARLEY
LAW FIRM, Des Moines, IA.

For Sukup Manufacturing Co, Counter Claimant: Dean L
Franklin, Matthew A Rosenberg, LEAD ATTORNEYS,
THOMPSON COBURN LLP, St Louis, MO; Timothy J
Zarley, LEAD ATTORNEY, ZARLEY LAW FIRM,
Des Moines, IA.

For Sukup Manufacturing Co, Counter Claimant: Timo-
thy J Zarley, LEAD ATTORNEY, ZARLEY LAW
FIRM, Des Moines, IA.

**JUDGES:** Byron G. Cudmore, UNITED STATES
MAGISTRATE JUDGE.

**OPINION BY:** Byron G. Cudmore

**OPINION:** BYRON G. CUDMORE, U.S. MAGIS-
TRATE JUDGE:

This matter comes before the Court on Defendant
Sukup Manufacturing Company's (Sukup) Motion to
Compel Privileged Documents (d/e 181) (Motion to
Compel). For the reasons set forth below, the Motion is
DENIED.

Plaintiff GSI Group, Inc. (GSI) designated [*2] sev-
eral individuals as expert witnesses, including three GSI
employees Burl Shuler, David Morrison, and Randal
Sheley. GSI supplied Sukup with expert reports from
these disclosed witnesses. On November 17, 2006, Su-
kup served on GSI its Fourth Request for Production of
Documents, which included Request No. 176. This re-
quest asked for,

> All documents shown to, considered,
> and/or relied upon by Renner, Towne,
> Hoffman, Shuler, Morrison, and Sheley in
> preparation of their expert reports and tes-
> timony.

Motion to Compel, Exhibit A, Sukup Manufacturing
Co.'s Fourth Request for Production of Documents and
Things Nos. 170-176 to GSI Group, Inc., at 3. GSI re-
sponded,

> OBJECTION to the extent this Request
> seeks materials covered by the attorney-

Case 1:05-cv-00132-JJF    Document 435-3    Filed 05/07/2007    Page 64 of 98

Page 2

2007 U.S. Dist. LEXIS 18764, *

client privilege or the work product doc-
trine. Further OBJECTION in that all
such materials are identified in each of the
said experts' reports, and are all such ma-
terials are either already in the possession
of Sukup or equally available to Sukup.

Motion to Compel, Exhibit B, GSI's Responses to Sukup
Manufacturing Co.'s Fourth Request for Production of
Documents and Things Nos. 170-176, at 5. In subsequent
[*3] correspondence between counsel, Sukup's counsel
requested production of specific documents identified on
GSI's privilege log. The documents requested related to
communications that involved GSI's counsel and em-
ployees Morrison, Shuler, or Sheley. The privilege log
indicated that GSI asserted either the attorney-client or
work product privilege for these documents. GSI's coun-
sel refused to produce these documents, reasserting GSI's
claims of privilege. Motion to Compel, Exhibits C and E,
Correspondence Between Attorneys Zarley and Cun-
ningham.

Sukup's Motion to Compel now asks this Court to
order GSI to turn over all documents seen by GSI's ex-
pert witnesses, including the ones identified in the corre-
spondence. The communications between counsel before
bringing this matter to the Court, however, narrowed the
dispute to documents seen by Morrison, Shuler and
Sheley, rather than documents seen by the other experts.
Sukup's Memorandum also seems to be limited to docu-
ments seen by these three witnesses. Therefore, the Court
will only address the issue of documents seen by these
three witnesses for which GSI has asserted a claim of
privilege. If Sukup is seeking documents seen by [*4]
other expert witnesses, it should attempt to secure those
documents directly from GSI. If the parties fail to resolve
any such disputes, Sukup should file another motion.
*Fed. R. Civ. P. 37(a)(2)(A)*.

Sukup argues that GSI effectively waived its claim
of privilege to any documents seen by these three wit-
nesses because GSI elected to designate them as expert
witnesses. GSI is required to disclose the identity of all
witnesses who will provide expert opinion testimony.
*Fed. R. Civ. P. 26(a)(2)(A)*. GSI is also required to pro-
vide Sukup with reports from certain expert witnesses,
which reports must include, inter alia, "the data or other
information considered by the witness in forming the
opinions." *Fed. R. Civ. P. 26(a)(2)(B)*. Sukup argues that
*Rule 26(a)(2)(B)* requires GSI to disclose everything that
these three witness have seen prior to formulating their
opinions, including otherwise privileged materials. Su-
kup argues that the obligation under *Rule 26(a)(2)(B)*
effectively waives GSI's claim of privilege to any docu-

ments that these three expert witnesses saw before for-
mulating their opinions.

The Court disagrees with Sukup's analysis because
*Rule 26(a)(2)(B)* does not [*5] apply to these three wit-
nesses. *Rule 26(a)(2)(B)* requires certain, specific expert
witnesses to prepare and produce reports that include the
type of information sought by Sukup. The Rule applies
to, "a witness who is retained or specially employed to
provide expert testimony in the case or whose duties as
an employee of the party regularly involve giving expert
testimony." *Fed. R. Civ. P. 26(a)(2)(B)*. Employees of a
party who do not regularly give expert testimony as part
of their duties are not required to produce expert reports
that disclose all the data on which they relied. *Bank of
China, New York Branch v. NBM LLC, 359 F.3d 171,
182 n. 13 (2d Cir. 2004); Navajo Nation v. Norris, 189
F.R.D. 610, 612-13 (E.D. Wash. 1999); Bowling v. Has-
bro, 2006 U.S. Dist. LEXIS 58910 , 2006 WL 2345941,
at *1-2 (D. R.I. 2006)*. n1 Sukup does not claim that
Morrison, Shuler or Sheley regularly provide expert tes-
timony as part of their duties at GSI. *Rule 26(a)(2)(B)*,
therefore, does not require these employee experts to
prepare expert reports. Hence, GSI's decision to use them
as expert witnesses does not constitute a waiver of GSI's
claims of privilege to the documents [*6] sought. n2

n1 Some courts have reached an opposite
conclusion. See e.g., *Day v. CONRAIL, 1996 U.S.
Dist. LEXIS 6596, 1996 WL 257654 (S. D. N. Y.
May 15, 1996)*. However, these courts ignore the
plain meaning of the words of the Rule. The
Court agrees with the cases cited in the opinion
above that *Rule 26(a)(2)(B)* does not require em-
ployees to prepare expert reports.

n2 The Court notes that GSI has actually
given Sukup more than the Rules require by pro-
viding expert reports from these individuals.

Sukup also argues that GSI failed to comply with
*Federal Rule of Civil Procedure 26(b)(5)* by failing to
provide a proper privilege log, and therefore, lost any
claim of privilege to these documents. Defendant's
Memorandum In Support of Motion to Compel Privi-
leged Documents (d/e 182) (Defendant's Memorandum),
at 6-7. Sukup previously challenged the sufficiency of
GSI's privilege log. Defendant's Motion Requesting
Waiver of Privilege (d/e 123). The Court denied that [*7]
motion as untimely. Text Order entered December 15,
2006. Sukup has, thus, waived its ability to complain
about the sufficiency of GSI's privilege log. n3 GSI's
request to compel production of these documents on the

2007 U.S. Dist. LEXIS 18764, *

grounds that GSI waived its claims of privilege is denied.
n4

     n3 GSI also argues that Sukup waived its right to challenge GSI's objections to Request No. 176, quoted above, because on February 27, 2005, Sukup requested documents seen by experts retained by GSI, and Sukup failed to file a timely motion to challenge GSI's response to that request. See Memorandum in Opposition to Sukup's Motion to Compel Privileged Documents (d/e 182)(d/e 205), at 4. Sukup's February 27, 2005, request was limited to documents seen by retained experts. The 2005 request did not seek documents seen by employee experts, such as Morrison, Shuler, and Sheley. Sukup's Request No. 176 is not just a repetition of the prior request.

     n4 GSI also argues that Sukup failed to demonstrate a substantial need for privileged materi-

als. See *Fed. R. Civ. P. 26(b)(3)*. Sukup's motion only addresses whether GSI's privilege claims have been waived. The Court does not address at this time any issues concerning whether Sukup has a sufficient need under *Rule 26(b)(3)* to require GSI to produce privileged materials used by these experts to formulate their opinions.

[*8]

     WHEREFORE, Defendant's Motion to Compel Privileged Documents (d/e 181) is DENIED.

IT IS THEREFORE SO ORDERED.

ENTER: March 16, 2007

     FOR THE COURT:

     s/ Byron G. Cudmore

     UNITED STATES MAGISTRATE JUDGE

# EXHIBIT EE

LEXSEE 2006 US DIST LEXIS 58910



Positive
As of: Apr 30, 2007

## MICHAEL BOWLING v. HASBRO, INC.

### C.A. No. 05-229S

### UNITED STATES DISTRICT COURT FOR THE DISTRICT OF RHODE IS-LAND

### 2006 U.S. Dist. LEXIS 58910

**August 10, 2006, Decided**
**August 10, 2006, Filed**

### CASE SUMMARY:

**PROCEDURAL POSTURE:** Plaintiff individual moved to preclude expert testimony or, in the alternative, to compel production of documents considered by defendant corporation's expert and those listed on the corporation's privilege log.

**OVERVIEW:** Plaintiff sought to preclude expert testimony from two employees of the corporation because the corporation did not produce written expert reports in accordance with *Fed. R. Civ. P. 26(a)(2)(B)*. The corporation disclosed the employees as both fact and expert witnesses. The court held that the corporation was not required under Rule 26(a)(2)(B) to provide formal expert reports because there was no indication that either was "retained or specially employed" to provide expert testimony, or that they "regularly" did so as part of their job duties. The motion to compel documents was denied because the corporation represented that it had produced every document reviewed or relied upon by the employees in connection with their expert testimony. Further, plaintiff waived its argument by waiting nearly seven months after the corporation's document production to file his motion. Finally, plaintiff showed no prejudice by the timing of the corporation's document production.

**OUTCOME:** The court denied plaintiff's motion in its entirety.

### LexisNexis(R) Headnotes

*Civil Procedure > Discovery > Methods > Expert Witness Discovery*
[HN1] *Fed. R. Civ. P. 26(a)(2)(B)* requires the disclosure of written expert reports from any expert witness retained or specifically employed to provide expert testimony in the case or whose duties as an employee of the party regularly involve giving expert testimony.

*Civil Procedure > Discovery > Methods > Expert Witness Discovery*
[HN2] *Fed. R. Civ. P. 26(a)(2)(B)* contains a written report exemption for employee-expert witnesses who are not "specially employed" to provide expert testimony and do not "regularly" testify as experts. The plain language of Rule 26(a)(2)(B) facilitates a party's use of an employee for expert witness testimony without the burden of a formal report.

*Civil Procedure > Discovery > Methods > Expert Witness Discovery*
[HN3] No expert report is required where the witness is not specially retained or employed to give expert testimony, or does not regularly give expert testimony in his or her capacity as an employee.

*Governments > Courts > Rule Application & Interpretation*

Page 2

2006 U.S. Dist. LEXIS 58910, *

[HN4] Policy should only be used to construe a rule, not to contravene its language.

*Governments > Courts > Rule Application & Interpretation*
[HN5] A court is not empowered to modify the plain language of the Federal Rules so as to secure a result that it thinks is correct.

*Governments > Courts > Rule Application & Interpretation*
[HN6] Parties should have the certainty that the court will construe the Federal Rules as written and not have to guess as to which line of conflicting authority the court might follow in construing an unambiguous procedural rule.

**COUNSEL:**  [*1]  For Michael Bowling, Plaintiff: Christine K. Bush, Duffy Sweeney & Scott, Ltd., Providence, RI; Craig M. Scott, Duffy Sweeney & Scott, Ltd., Providence, RI; Douglas J. Williams, Merchant & Gould P.C., Minneapolis, MN; Thomas J. Leach, Merchant & Gould P.C., Minneapolis, MN.

For Hasbro, Inc., Defendant: David K.S. Cornwell, Sterne Kessler Goldstein & Fox P.L.L.C., Washington, DC; Jeffrey K. Techentin, Adler Pollock & Sheehan P.C., Providence, RI; Tracey-Gene G. Durkin, Sterne Kessler Goldstein & Fox P.L.L.C., Washington, DC.

For Hasbro, Inc., Counter Claimant: David K.S. Cornwell, Sterne Kessler Goldstein & Fox P.L.L.C., Washington, DC; Todd D. White, Adler Pollock & Sheehan P.C., Providence, RI.

For Michael Bowling, Counter Defendant: Christine K. Bush, Duffy Sweeney & Scott, Ltd., Providence, RI; Douglas J. Williams, Merchant & Gould P.C., Minneapolis, MN; Thomas J. Leach, Merchant & Gould P.C., Minneapolis, MN.

For Michael Bowling, Counter Defendant: Christine K. Bush, Duffy Sweeney & Scott, Ltd., Providence, RI.

**JUDGES:** LINCOLN D. ALMOND, United States Magistrate Judge.

**OPINION BY:** LINCOLN D. ALMOND

**OPINION:**

**MEMORANDUM AND ORDER**

Before this Court for determination (*28 U.S.C. § 636(b)(1)(A)* [*2]  and LR Cv 72(a)) is Plaintiff's Motion to Preclude Expert Testimony or, alternatively to Compel Reports and Documents Considered. (Document No. 53). Defendant ("Hasbro") has objected. (Document No. 59). Neither party has requested oral argument and/or an evidentiary hearing (LR Cv 7(e)), and this Court concludes that none is necessary. For the reasons discussed below, Plaintiff's Motion (Document No. 53) is DENIED.

**Discussion**

Plaintiff seeks to preclude expert testimony from two Hasbro employees because Hasbro did not produce written expert reports in accordance with *Fed. R. Civ. P. 26(a)(2)(B)*. The two employees, Michael Gray and Michael Hirtle, have been disclosed by Hasbro as both fact and expert witnesses. They both work for Hasbro Games Division -- Mr. Gray as Senior Director, New Product Acquisition and Mr. Hirtle as Vice President of R&D, Inventor Relations and Product Acquisition. Both have been deposed in this case -- Mr. Gray as a fact witness and Mr. Hirtle as a *Fed. R. Civ. P. 30(b)(6)* designee.

This issue is governed by [HN1] *Fed. R. Civ. P. 26(a)(2)(B)* [*3]  which requires the disclosure of written expert reports from any expert witness "retained or specifically employed to provide expert testimony in the case or whose duties as an employee of the party regularly involve giving expert testimony. . . ." There is a split of authority on the interpretation of this procedural rule.

One line of cases relied upon by Plaintiff ignores the plain language of *Rule 26(a)(2)(B)* and refuses, for policy reasons, to recognize an exemption to the report requirement for certain employee-experts. See *McCulloch v. Hartford Life and Accidental Ins. Co.*, 223 F.R.D. 26, 28 (D. Conn. 2004) n1 (court held that "the interests in this case weigh[ed] in favor of requiring expert reports" from employees); *KW Plastics v. U.S. Can Co.*, 199 F.R.D. 687, 688 (M.D. Ala. 2000)([T]he court finds that the Federal Rules of Civil Procedure require disclosures from every [expert] witness . . . regardless of whether the expert is an employee of the defendant corporation); and *3M v. Signtech USA, 177 F.R.D. 459 (D. Minn. 1998)*. The other line of cases relied upon by Hasbro strictly construes [*4]  the text of [HN2] *Fed. R. Civ. P. 26(a)(2)(B)* and finds a written report exemption for employee-expert witnesses who are not "specially employed" to provide expert testimony and do not "regularly" testify as experts. See *Adams v. Gateway, Inc.*, 2006 U.S. Dist. LEXIS 14413, No. 2101 CV 106TS; 2006 WL 644848 (D. Utah March 10, 2006)("The plain language of the rule facilitates a party's use of an employee for expert witness testimony without the burden of a formal report."); *Duluth Lighthouse for the Blind v. C.G.*

2006 U.S. Dist. LEXIS 58910, *

*Bretting Mfg. Co., 199 F.R.D. 320 (D. Minn. 2000)*(same); and *Navajo Nation v. Norris, 189 F.R.D. 610, 613 (E.D. Wash. 1999)*("Those who drafted *FRCP 26(a)(2)(B)* could simply have required reports for all employee-experts if that is what they had intended.").

n1 It is questionable whether *McCulloch* remains good law in the Second Circuit. Magistrate Judge Fitzsimmons issued her opinion in *McCulloch* on January 23, 2004 — less than one month later on February 17, 2004, the Second Circuit strictly interpreted *Rule 26(a)(2)(B)* and held that [HN3] no expert report is required "[w]here the witness is not specially retained or employed to give expert testimony, or does not regularly give expert testimony in his or her capacity as an employee. . . ." *Bank of China v. NBM LLC, 359 F.3d 171, 182 n.13 (2nd Cir. 2004).*

[*5]

This Court has thoroughly reviewed both lines of cases and finds the cases relied upon by Hasbro to be more persuasive. "All of the[] cases [relied upon by Plaintiff] have unnecessarily stretched to find a reason that the Rule requires a report for an employee expert witness who is not specially employed and does not regularly testify, when the Rule clearly says otherwise." *Adams, 2006 U.S. Dist. LEXIS 14413, 2006 WL 644848 at *3.* "If the drafters had intended [*Rule 26(a)(2)(B)*] to impose a report obligation on all employee-experts, they could have and would have done so." *Navajo Nation, 189 F.R.D. at 613.* While a Rule requiring full disclosure by report for all experts may be desirable from a policy standpoint, the plain language of the Rule provides otherwise. See *Adams, 2006 U.S. Dist. LEXIS 14413, 2006 WL 644848 at *3* [HN4] ("policy should only be used to construe a rule, not to contravene its language"); and *Duluth Lighthouse, 199 F.R.D. at 325* [HN5] ("we are not empowered to modify the plain language of the Federal Rules so as to secure a result that we think is correct"). [HN6] Parties should have the certainty that the Court will construe the Federal Rules as written and not [*6] have to guess as to which line of conflicting authority the Court might follow in construing an unambiguous procedural rule. Here, Hasbro has identified Mr. Gray and Mr. Hirtle as both fact and expert witnesses, and

there is no indication that either was "retained or specially employed" to provide expert testimony, or that they "regularly" do so as part of their job duties. Thus, Hasbro was not required to provide formal expert reports under *Rule 26(a)(2)(B)* for Mr. Gray or Mr. Hirtle, and Plaintiff's Motion to Preclude Expert Testimony, or alternatively, to Compel the Production of Expert Reports is DENIED.

Plaintiff also tangentially requests an Order compelling Hasbro to produce all responsive documents to his First Set of Document Requests, including those considered by Hasbro's designated experts and those listed on Hasbro's privilege log. This Court concludes that such broad and extraordinary relief is not warranted under the circumstances and the request is DENIED. First, Hasbro represents in its opposition that "it has produced every document reviewed or relied upon by Messrs. Hirtle and Gray in connection with their expert testimony" and "recognizes its continuing [*7] obligation to supplement its document production should the witnesses review anything else in connection with the preparation of that testimony." Hasbro's Mem. in Opp. at p. 9 (emphasis in original). Second, the Document Requests were served and responded to by Hasbro nearly seven months prior to the instant Motion being filed. If Plaintiff had a substantive issue with Hasbro's discovery responses last Fall, he should have moved to compel (after conferring as required by *Fed. R. Civ. P. 37(a)(2)(B)*) in a timely fashion. In fact, Judge Smith's Pretrial Order provides that no motions shall be filed more than ten days after the close of discovery without leave of Court in order to discourage eleventh-hour motion practice. There is no indication that Plaintiff obtained leave of court to file this Motion and, in any event, this Court concludes that Plaintiff has waived this argument by not pursuing it in a timely fashion. Finally, Plaintiff has shown no prejudice to him by the timing of Hasbro's document production in 2005.

**Conclusion**

For the foregoing reasons, Plaintiff's Motion to Preclude/Compel (Document No. 53) is DENIED in its entirety. [*8]

LINCOLN D. ALMOND
United States Magistrate Judge
August 10, 2006

# EXHIBIT FF

LEXSEE 2000 US DIST LEXIS 22034


Caution
As of: Apr 30, 2007

DEAN KENT, Plaintiff v. OFFICER JARED KATZ, Individually and as a Police Officer for the Town of Colchester, CHARLES KIRKER, Individually and as the Chief of Police for The Town of Colchester, and the TOWN OF COLCHESTER, Defendants

Docket No. 2:99-CV-189

UNITED STATES DISTRICT COURT FOR THE DISTRICT OF VERMONT

2000 U.S. Dist. LEXIS 22034

August 9, 2000, Decided
August 9, 2000, Filed

**DISPOSITION:** [*1] Defendant's motion to exclude testimony from plaintiff's expert witnesses denied.

**CASE SUMMARY:**

**PROCEDURAL POSTURE:** Plaintiff arrestee brought a civil action against defendant officers and the town for, inter alia, injuries allegedly sustained during a forcible arrest. Defendants moved to exclude testimony from the arrestee's expert witnesses.

**OVERVIEW:** The expert witnesses were going to testify to facts and opinions arising from their treatment of the arrestee's injuries. The testimony might have included the cause of the injuries and the need for and cost of future treatment. Although defendants received copies of the physicians' medical records regarding the treatment, none of the treating physicians submitted an expert report pursuant to Fed. R. Civ. P. 26(a)(2). The issue was whether the physicians reached their opinions about causation and injury directly through treatment or whether they were developed close in time to the litigation and in connection therewith or at the request of counsel. The arrestee proffered that the treating physicians formulated their opinions in the course of treatment and not in anticipation of litigation.

**OUTCOME:** Defendants' motion to exclude testimony from the arrestee's expert witnesses was denied.

**LexisNexis(R) Headnotes**

*Civil Procedure > Discovery > Disclosures > Mandatory Disclosures*
[HN1] See Fed. R. Civ. P. 26(a)(2).

*Civil Procedure > Discovery > Disclosures > Mandatory Disclosures*
*Civil Procedure > Discovery > Methods > Expert Witness Discovery*
[HN2] See Fed. R. Civ. P. 26, advisory committee's notes, 1993 amendment.

*Civil Procedure > Discovery > Disclosures > Mandatory Disclosures*
*Civil Procedure > Discovery > Methods > Expert Witness Discovery*
*Healthcare Law > Treatment > General Overview*
[HN3] The structure of Fed. R. Civ. P. 26(a)(2) provides a clear distinction between the "retained" class of experts and the unretained class of experts. As the advisory note states, treating physicians commonly are considered unretained experts. While all experts must be disclosed under Fed. R. Civ. P. 26(a)(2)(A), only "retained" experts must provide Fed. R. Civ. P. 26(a)(2)(B) reports. This distinction protects experts from preparing reports when

2000 U.S. Dist. LEXIS 22034, *

they are not retained to do so and when it is outside the scope of their regular duties.

*Civil Procedure > Counsel > General Overview*
*Civil Procedure > Sanctions > Baseless Filings > General Overview*
*Criminal Law & Procedure > Discovery & Inspection > Discovery Misconduct*
[HN4] While it is probably folly to assume that counsel will not seek to cloak "retained" experts in unretained expert guise, or that counsel will not seek to define unretained experts as retained in an effort to preclude their testimony, *Fed. R. Civ. P. 11* and *Fed. R. Civ. P. 37(c)(1)* should give them pause. *Fed. R. Civ. P. 11* and *Fed. R. Civ. P. 37(c)* allow sanctions such as exclusion of any expert testimony improperly disclosed. The threat of sanctions might limit the occurrence of such cloaking; however, this issue remains an important factor for consideration.

*Civil Procedure > Discovery > Methods > Expert Witness Discovery*
*Civil Procedure > Discovery > Misconduct*
[HN5] As an unretained expert, a treating physician may testify to events and opinions arising directly through her treatment of the patient. A treating physician may describe what she has seen, describe and explain her diagnosis and the treatment she prescribed, and offer her opinions and expert inferences therefrom-all without running afoul of the constraints of *Fed. R. Civ. P. 26* and *Fed. R. Civ. P. 37*. Treating physicians' opinions and expert inferences arising from treatment commonly include issues of causation and prognosis. As a general rule, a treating physician considers not just the plaintiff's diagnosis and prognosis, but also the cause of the plaintiff's injuries.

*Civil Procedure > Discovery > Disclosures > General Overview*
*Civil Procedure > Discovery > Methods > Expert Witness Discovery*
[HN6] Treating physicians' opinions and expert inferences regarding issues of causation and prognosis do not in themselves subject a treating physician to the requirement of a written report pursuant to *Fed. R. Civ. P. 26*. Treating physicians commonly consider the cause of any medical condition presented in a patient, the diagnosis, the prognosis and the extent of disability, if any, caused by the condition or injury. Opinions as to these matters are encompassed in the ordinary care of a patient and do not subject the treating physician to the report require-

ment of *Fed. R. Civ. P. 26(a)(2)(B)*. The majority of American courts hold this view.

*Civil Procedure > Discovery > Disclosures > Mandatory Disclosures*
*Civil Procedure > Discovery > Methods > Expert Witness Discovery*
*Evidence > Testimony > Experts > Admissibility*
[HN7] *Fed. R. Civ. P. 26(a)(2)* does not require a treating physician to submit an expert report if the physician has not been specially retained to testify at trial and if the physician's duties as an employee of the party do not regularly involve giving expert testimony. A physician who has not provided an expert report pursuant to *Fed. R. Civ. P. 26(a)(2)* may testify to any observations and opinions formed directly through treatment of the patient. This testimony may include statements regarding causation and prognosis as long as these observations and opinions were not formed in anticipation of litigation.

**COUNSEL:** For DEAN KENT, plaintiff: Thomas C. Nuovo, Esq., Bauer, Anderson & Gravel, Burlington, VT.

For DEAN KENT, plaintiff: Adele V. Pastor, Corsones & Corsones, Rutland, VT.

For JARED KATZ, CHARLES KIRKER, COLCHESTER, TOWN OF, defendants: Nancy Goss Sheahan, Joseph Andrews Farnham, Esq., McNeil, Leddy & Sheahan, P.C., Burlington, VT.

**JUDGES:** William K. Sessions, III, United States District Court.

**OPINION BY:** William K. Sessions, III

**OPINION:**

**OPINION AND ORDER**

On July 9, 1999 Dean Kent brought this civil action against Officer Jared Katz, Charles Kirker, and the Town of Colchester for, *inter alia*, injuries allegedly sustained during a forcible arrest.

On May 26, 2000 Defendants filed a Motion to Exclude Testimony from Plaintiff's Expert Witnesses (Paper 28), arguing that Plaintiff's treating physicians had failed to submit expert reports in accordance with *Fed. R. Civ. P. 26(a)(2)(B)*. On June 8, 2000 Plaintiff filed a Response to Defendants' Motion to Exclude Testimony from Plaintiff's Expert Witnesses (Paper 31), arguing that Rule 26 does not require Plaintiff's treating physicians to file expert [*2] reports because they have not been spe-

2000 U.S. Dist. LEXIS 22034, *

cially retained and because their opinions were developed in the course of treatment.

On July 10, 2000, the Court orally denied Defendants' motion. The Court now provides a brief written order to clarify an unresolved issue of Vermont law.

### FACTS

Plaintiff alleges that he sustained injuries arising from a forcible arrest by Defendant Officer Katz on June 20, 1996. As a result, Plaintiff received medical attention from a number of treating physicians. Plaintiff has submitted to Defendant the names of those treating physicians whom he intends to call as expert witnesses. These expert witnesses will testify to facts and opinions arising from their treatment of Plaintiff's injuries. This testimony may include the cause of the injuries and the need for and cost of future treatment. Although Defendant has received copies of the physicians' medical records regarding Plaintiff's treatment, none of the treating physicians has submitted an expert report pursuant to Rule 26(a)(2).

### DISCUSSION

[HN1] *Federal Rule of Civil Procedure 26(a)(2)* provides:

> (A) In addition to the disclosures required by paragraph (1), a party shall disclose to other [*3] parties the identity of any person who may be used at trial to present evidence under *Rules 702, 703, or 705 of the Federal Rules of Evidence*.
> (B) Except as otherwise stipulated or directed by the court, this disclosure shall, with respect to a witness who is retained or specially employed to provide expert testimony in the case or whose duties as an employee of the party regularly involve giving expert testimony, be accompanied by a written report prepared and signed by the witness.

An Advisory Note to Rule 26(a)(2) states:

> [HN2] The requirement of a written report in paragraph (2)(B) ... applies only to those experts who are retained or specially employed to provide testimony in the case or whose duties as an employee of the party regularly involve the giving of such testimony. A treating physician, for example, can be deposed or called to

> testify at trial without any requirement for a written report.

*Fed.R.Civ.P. 26*, Advisory Committee's Notes, 1993 Amendment.

[HN3] "The structure of Rule 26(a)(2) provides a clear distinction between the 'retained' class of experts and the unretained class of experts." *Sprague v. Liberty Mut. Ins. Co., 177 F.R.D. 78, 81 (D.N.H. 1998).* [*4] As the Advisory Note states, treating physicians commonly are considered unretained experts. "While all experts must be disclosed under Rule 26(a)(2)(A), only 'retained' experts must provide Rule 26(a)(2)(B) reports." *Sprague, 177 F.R.D. at 81.* This distinction protects experts from preparing reports when they are not retained to do so and when it is outside the scope of their regular duties.

The Sprague court warns that [HN4] "while it is probably folly to assume that in the future counsel will not seek to cloak 'retained' experts in unretained expert guise, or that counsel will not seek to define unretained experts as retained in an effort to preclude their testimony, Rule 11 and Rule 37(c)(1) should give them pause." *Sprague, 177 F.R.D. at 82.* Rule 11 and Rule 37(c) allow sanctions such as exclusion of any expert testimony improperly disclosed. The threat of sanctions might limit the occurrence of such cloaking; however, this issue remains an important factor for consideration.

[HN5] As an unretained expert, a treating physician may testify to events and opinions arising directly through her treatment of the patient. "[A] treating physician . . . may [*5] describe what she has seen, describe and explain her diagnosis and the treatment she prescribed, and offer her opinions and expert inferences therefrom–all without running afoul of the constraints of *Rules 26 and 37 of the Federal Rules of Civil Procedure." Riddick v. Washington Hospital Center, 183 F.R.D. 327, 330 (D.D.C. 1998).* Treating physicians' opinions and expert inferences arising from treatment commonly include issues of causation and prognosis. "As a general rule, a treating physician considers not just the plaintiff's diagnosis and prognosis, but also the cause of the plaintiff's injuries." *Salas v. United States, 165 F.R.D. 31, 33 (W.D.N.Y. 1995).*

[HN6] Treating physicians' opinions and expert inferences regarding issues of causation and prognosis do not in themselves subject a treating physician to the requirement of a written report pursuant to Rule 26:

> Treating physicians commonly consider the cause of any medical condition presented in a patient, the diagnosis, the

2000 U.S. Dist. LEXIS 22034, *

prognosis and the extent of disability, if any, caused by the condition or injury. Opinions as to these matters are encompassed in the ordinary care of a patient and do [*6] not subject the treating physician to the report requirement of Rule 26(a)(2)(B)."

*Shepardon v. West Beach Estates, 172 F.R.D. 415, 416-417 (D.Haw. 1997).* The majority of American courts hold this view. See *Sprague, 177 F.R.D. at 81; Piper v. Harnischfeger Corp., 170 F.R.D. 173, 175 (D.Nev. 1997); Baker v. Taco Bell Corp., 163 F.R.D. 348, 349 (D.Colo. 1995); Mangla v. University of Rochester, 168 F.R.D. 137, 139 (W.D.N.Y. 1996).*

Thus, "the issue comes down to whether [the physician] reached her opinions about causation and injury directly through her treatment of [the patient] or whether she developed those opinions close in time to the litigation of this matter and in connection therewith or at the request of counsel." *Riddick, 183 F.R.D. at 330-331.*

**CONCLUSION**

[HN7] Rule 26(a)(2) does not require a treating physician to submit an expert report if the physician has not been specially retained to testify at trial and if the physician's duties as an employee of the party do not regularly involve giving expert testimony. A physician who has not provided an expert report [*7] pursuant to Rule 26(a)(2) may testify to any observations and opinions formed directly through treatment of the patient. This testimony may include statements regarding causation and prognosis as long as these observations and opinions were not formed in anticipation of litigation.

Wherefore, based on Plaintiff's proffer that the treating physicians formulated their opinions in the course of treatment and not in anticipation of litigation, the Court **DENIES** Defendant's Motion to Exclude Testimony from Plaintiff's Expert Witnesses.

Dated at Burlington, Vermont this 9th day of August, 2000.

William K. Sessions, III

United States District Court

# EXHIBIT GG

LEXSEE 2007 US DIST LEXIS 15364

**DYSON TECHNOLOGY LIMITED and DYSON, INC., Plaintiffs, v. MAYTAG CORPORATION, Defendant.**

**Civil Action No. 05-434 (GMS)**

**UNITED STATES DISTRICT COURT FOR THE DISTRICT OF DELAWARE**

*2007 U.S. Dist. LEXIS 15364*

**March 6, 2007, Decided**
**March 6, 2007, Filed**

**CASE SUMMARY:**

**PROCEDURAL POSTURE:** The court held a discovery teleconference, in which was raised an issue as to the discoverability of work-product and attorney-client privilege information that plaintiffs provided to its experts, specifically an employee of an indirect parent of one plaintiff. After hearing argument, the court ordered the parties to submit letter briefing on the issue, which it treated as defendant's motion to compel.

**OVERVIEW:** The court concluded that the requirements of *Fed. R. Civ. P. 26(a)(2)(B)* applied to the employee, who was designated as an expert witness and had provided an expert report in this action. The employee was not analogous to a "treating physician," at least with respect to the information contained in his report, because the information contained in the report was not a recitation of the facts of the case with some expert opinions expressed. Instead it was an expert report regarding various advertising claims by plaintiffs for vacuum cleaners that had been challenged by defendant in pending litigation. Next, Rule 26(a)(2)(B) required the disclosure of all materials considered by plaintiffs' experts, regardless of plaintiffs' claims of attorney-client privilege or work-product privilege. Finally, defendant was not entitled to information or documents that the employee might have considered in performing his general job duties, but did not consider in connection with formulating the opinions expressed in his expert report. It would have been burdensome and unjust to order the production of information and documents not considered by the employee in connection with his expert report.

**OUTCOME:** Plaintiffs were ordered to produce all information and documents considered by the employee in connection with formulating the opinions expressed in his expert report. The court did not order production of information or documents that the employee might have considered in performing his general job duties, but did not consider in connection with formulating the opinions expressed in his expert report.

**LexisNexis(R) Headnotes**

*Civil Procedure > Discovery > Disclosures > Mandatory Disclosures*
*Civil Procedure > Discovery > Methods > Expert Witness Discovery*
[HN1] *Fed. R. Civ. P. 26(a)(2)(B)* provides that expert disclosure with respect to a witness who is retained or specially employed to provide expert testimony in the case or whose duties as an employee of the party regularly involve giving expert testimony shall be accompanied by a written report prepared and signed by the witness, which shall contain a complete statement of all opinions to be expressed and the basis and reasons therefor; the data or other information considered by the witness in forming the opinions; and any exhibits to be used as a summary of or support for the opinions, among other things.

*Civil Procedure > Discovery > Disclosures > Mandatory Disclosures*
*Civil Procedure > Discovery > Methods > Expert Witness Discovery*
[HN2] *Fed. R. Civ. P. 26(a)(2)(B)* requires disclosure of all information considered by a testifying expert in formulating his or her report, without regard to asserted privilege.

2007 U.S. Dist. LEXIS 15364, *

*Civil Procedure > Discovery > Disclosures > Mandatory Disclosures*
*Civil Procedure > Discovery > Methods > Expert Witness Discovery*
[HN3] A testifying expert shall submit an expert report containing a complete statement of all opinions to be expressed and the basis and reasons therefor, and the data or other information considered by the witness in forming the opinions. *Fed. R. Civ. P. 26(a)(2)(B).* Courts have defined the term "considered" broadly to include materials that an expert reviews, reflects upon, reads, or uses.

COUNSEL: [*1] John W. Shaw, Esquire, C. Barr Flinn, Esquire, and Adam W. Poff, Esquire, of YOUNG, CONAWAY, STARGATT & TAYLOR, LLP, Wilmington, Delaware, and Garrard R. Beeney, Esquire, Richard C. Pepperman, Esquire, Keith McKenna, Esquire, David B. Tulchin, Esquire, James T. Williams, Esquire, and Adam R. Brebner, Esquire, of SULLIVAN & CROMWELL LLP, New York, New York, and Steven F. Reich, Esquire, Jeffrey S. Edelstein, Esquire, Monica Y. Youn, Esquire, Tamar Feder, Esquire, Melissa D. Goetz, Esquire, Christopher A. Cole, Esquire, John F. Libby, Esquire, Craig S. Rutenberg, Esquire, and George A. Clarick, Esquire, of MANATT, PHELPS & PHILLIPS, LLP, New York, New York, Attorneys for Plaintiff.

Francis DiGiovanni, Esquire, of CONNOLLY, BOVE, LODGE & HUTZ LLP, Wilmington, Delaware, and Kimball R. Anderson, Esquire, Stephen P. Durchslag, Esquire, Anthony DiSarro, Esquire, Lisa J. Parker, Esquire, and Ronald Y. Rothstein, Esquire, of WINSTON & STRAWN LLP, Chicago, Illinois, and Ray L. Weber, Esquire, and Laura J. Gentilcore, Esquire, of RENNER, KENNER, GREIVE, BOBAK, TAYLOR & WEBER, Akron, Ohio, Attorneys for Defendants.

JUDGES: Gregory M. Sleet, UNITED STATES DISTRICT JUDGE.

OPINION BY: Gregory M. Sleet

OPINION: [*2]
### MEMORANDUM AND ORDER

SLEET, District Judge

1. On February 2, 2007, the court held a discovery teleconference in the above-captioned action. One of the issues raised by Maytag Corporation ("Maytag") was the discoverability of work-product and attorney-client privilege information that Dyson Technology Limited and Dyson, Inc. ("Dyson") provided to its experts, specifically James Widdowson ("Widdowson"), an employee of

Dyson Limited (an indirect parent of Dyson, Inc.). After hearing argument, the court ordered the parties to submit letter briefing on the issue, which it would treat as Maytag's motion to compel.

2. On February 7, 2007, Maytag filed its opening brief (D.I. 245), framing the issues as follows: (1) whether materials shown to experts by attorneys remain privileged under *Federal Rule of Civil Procedure 26(a)(2)(B)* and Third Circuit precedent; and (2) whether Dyson, by designating Widdowson a testifying expert and submitting a report on his behalf, waived the work-product and attorney-client privileges with respect to materials considered by him in forming his opinions. It is Maytag's position that, based [*3] on the broad disclosure requirements of *Rule 26(a)(2)(B)*, it is entitled to all documents and information otherwise subject to attorney-client privilege and attorney work-product protection that were provided to or considered by Dyson's testifying experts in forming their opinions. Maytag further asserts that Dyson has waived the attorney-client privilege and work-product protection with respect to Widdowson, because Dyson has designated him as an expert, submitted a report on his behalf, and made him available for an expert deposition.

3. On February 12, 2007, Dyson filed a responsive letter brief (D.I. 250). Dyson argues that *Rule 26(a)(2)(B)* does not apply to Widdowson, because he is not an expert witness that is "retained" or "specially employed" by Dyson, and is not an employee who "regularly" provides expert testimony, as the rule requires. Dyson further argues that, even if Widdowson were subject to all of *Rule 26(a)(2)(B)*'s requirements, it has not waived all attorney-client or work-product privileges under *Bogosian v. Gulf Oil Corp., 738 F.2d 587 (3d Cir. 1984)*.

4. After having considered the parties submissions, the arguments made during the discovery [*4] teleconference, and the relevant law, the court concludes that the requirements of *Rule 26(a)(2)(B)* apply to Widdowson, an employee of Dyson Limited, who is designated as an expert witness and has provided an expert report in this action. The court further concludes that *Rule 26(a)(2)(B)* requires the disclosure of all materials considered by Dyson's experts, regardless of Dyson's claims of attorney-client privilege or work-product privilege. Finally, the court concludes that Maytag is not entitled to information and/or documents that Widdowson may have considered in performing his general job duties, but did not consider in connection with formulating the opinions expressed in his expert report. The court explains its rationale below, first addressing the *Rule 26(a)(2)(B)* issue, and then turning to the scope of the waiver.

2007 U.S. Dist. LEXIS 15364, *

5. *Rule 26(a)(2)(B)* [HN1] provides that expert disclosure "with respect to a witness who is retained or specially employed to provide expert testimony in the case or whose duties as an employee of the party regularly involve giving expert testimony [shall] be accompanied by a written report prepared and signed by the witness, [which] . . . shall contain a complete [*5] statement of all opinions to be expressed and the basis and reasons therefor; the data or other information considered by the witness in forming the opinions; [and] any exhibits to be used as a summary of or support for the opinions," among other things. *Fed. R. Civ. P. 26(a)(2)(B)*. This court has not had occasion to consider the application of *Rule 26(a)(2)(B)* to an employee-expert witness. However, courts in the Southern District of New York, the District of Minnesota, and the Middle District of Alabama have rejected the argument that Dyson advances in the present case. *See KW Plastics v. United States Can Co., 199 F.R.D. 687 (M.D. Ala. 2000); 3M v. Signtech USA, Ltd., 177 F.R.D. 459 (D. Minn. 1998); Day v. CONRAIL, No. 95 CIV. 968 (PKL), 1996 U.S. Dist. LEXIS 6596, 1996 WL 257654 (S.D.N.Y. May 15, 1996).*

6. The court finds persuasive the rationale and decision reached by the Southern District of New York in *Day v. Consolidated Rail Corp.* Specifically, the *Day* court stated:

The argument [that the federal rule governing expert witness discovery does not apply to] [*6] Mr. Heide is premised on the fact that he is an employee of [the defendant]. . . . According to the defendant, Mr. Heide's job duties . . . do not "regularly involve giving expert testimony" and he was not "retained or specially employed to provide expert testimony in the case. . . ."

[T]he reading [of *Rule 26(a)(2)(B)*] proposed by the defendant would create a distinction seemingly at odds with the evident purpose of promoting full pre-trial disclosure of expert information. The logic of the defendant's position would be to create a category of expert trial witness for whom no written disclosure is required -- a result plainly not contemplated by the drafters of the current version of the rules and not justified by any articulable policy.

Although *rule 26(b)(4)(A)*, governing depositions of experts, appears to imply that some category of experts may be exempt from the report requirement, that exemption is apparently addressed to experts

who are testifying as fact witnesses, although they may also express some expert opinions -- for example, treating physicians. . . . In such an instance, we may infer that the reasons for requiring an expert's report are far less compelling and [*7] may unfairly burden a non-party who is appearing principally because he or she witnessed certain events relevant to the lawsuit.

In a case such as this, in which it appears that the witness in question . . . although employed by the defendant is being called solely or principally to offer expert testimony, there is little justification for construing the rules as excusing the report requirement. Since his duties do not normally involve giving expert testimony, he may be fairly viewed as having been "retained" or "specially employed" for that purpose.

*1996 U.S. Dist. LEXIS 6596, 1996 WL 257654, at *1-3. See KW Plastics v. United States Can Co., 199 F.R.D. 687 (M.D. Ala. 2000)* (citing *Day* with approval and adopting its rationale); *3M v. Signtech USA, Ltd., 177 F.R.D. 459 (D. Minn. 1998)* (discussing *Day* decision and finding its rationale "instructive and compelling"). Given the circumstances in the present case and the rationale of *Day*, the court concludes that Widdowson is not analogous to a "treating physician," at least with respect to the information contained in his report. n1 This is because the information contained [*8] in Widdowson's report is not a recitation of the facts of the case with some expert opinions expressed. Instead it is, in Widdowson's own words, "an expert report regarding various advertising claims by [Dyson] for its vacuum cleaners that have been challenged by [Maytag] in pending litigation." (D.I. 250 Ex. A, at 1.)

n1 Dyson points out that Widdowson has already been deposed as both a fact and 30(b)(6) witness. The court's conclusion with respect to the information provided in Widdowson's expert report does not apply to the factual information previously provided by Widdowson in his capacity as a fact and 30(b)(6) witness. That is, it applies only to the opinions expressed by Widdowson in his expert report.

2007 U.S. Dist. LEXIS 15364, *

7. Moreover, it appears in the present case that Widdowson has gone even further than the expert in *Day*, who was disclosed to the plaintiff, but had not produced a report. *See Day, 1996 U.S. Dist. LEXIS 6596, 1996 WL 257654, at *1.* That is, as previously mentioned, Dyson designated Widdowson as an expert [*9] under *Rule 26(a)(2)(A)*, and had him submit an expert report. (See D.I. 250 Ex. A, at 1.) Maytag contends that the submission of the report subjects Widdowson to the same disclosure requirements applicable to all expert witnesses under *rule 26(a)(2)(B)*. The court agrees. It seems as though Dyson is attempting to "have its cake and eat it too." Put another way, Dyson has designated Widdowson as an expert and submitted an expert report on his behalf, presumably because it wants to call him as an expert at trial, but does not want Maytag to have access to all of the information Widdowson used to formulate his opinions. What Dyson is trying to accomplish is not in accord with *Rule 26*, which exists to avoid expert disclosure that is "sketchy and vague," so that litigants can be prepared for trial. *Fed. R. Civ. Pro. 26(a)(2)(B)* Advisory Committee's Note. Accordingly, Widdowson is subject to the requirements of *Rule 26(a)(2)(B)*. n2

n2 The District of Kansas, in a case with facts similar to those in the present case, ordered production of disclosures required by *Rule 26(a)(2)(B)*. *See Super Film of Am. v. UCB Films, Inc., 219 F.R.D. 649 (D. Kan. 2004)*. In *Super Film*, the plaintiff designated one of its employees as an expert pursuant to *Rule 26(a)(2)(A)* and furnished the defendant with an expert report from the employee. *Id. at 658*. When the defendant requested *Rule 26(a)(2)(B)* disclosures, the plaintiff objected, stating that the expert was not retained, specially employed, or regularly involved in providing expert testimony. *Id.* The defendant moved to compel production of the materials and the plaintiff responded by stating that it designated the employee as an expert "'out of an abundance of caution . . . in order to preserve those opinions for this case.'" *Id. at 659* (citation to record omitted). Dyson advanced a similar, if not identical, rationale for its designation of Widdowson during the oral presentation of the issue to the court. The court in *Super Film* reached the same conclusion that this court reaches today. The court concludes that, as a result of the employee's designation as an expert and submission of a report, the defendant is entitled to the disclosures required by *Rule 26(a)(2)(B)*.

[*10]

8. The court now turns to the second issue presented in Maytag's motion, i.e. the scope of the disclosure. Maytag contends that Dyson must produce all information and documents otherwise protected by attorney-client and work-product privileges shown to, or considered by, Dyson's testifying experts. Conversely, Dyson asserts it has not waived all attorney-client and work-product privileges, citing *Bogosian v. Gulf Oil Co., 738 F.2d 587 (3d Cir. 1984)*, as support. After having considered the relevant law, the court concludes [HN2] that *Rule 26(a)(2)(B)* requires disclosure of all information considered by a testifying expert in formulating his or her report, without regard to asserted privilege. In reaching its conclusion, the court relies on the text of *Rule 26(a)(2)(B)*, the Advisory Committee Notes to *Rule 26*, and persuasive authority from courts in this circuit.

9. In *Bogosian*, a case decided in 1984, the issue presented to the Third Circuit was whether *Rule 26(b)(4)(A)* overrides the work-product privilege of *Rule 26(b)(3)* as to all documents shown to an expert who is identified as an intended trial witness, even though the documents may contain the mental [*11] impressions and thought processes of counsel. *738 F.2d at 590-91*. The court concluded that *Rule 26(b)(3)*, which protects an attorney's legal theories, opinions, and mental impressions, did not "give way" to *Rule 26(b)(4)*, authorizing discovery relating to expert witnesses. *Id. at 594-96* ("When *Rules 26(b)(3)* and *26(b)(4)* are viewed as set forth here [under the 1984 version of the Federal Rules of Civil Procedure], we believe they do not present the 'tension' that the district court saw, and that the policies underlying each section can be satisfied.") n3

n3 Dyson also relies on the Third Circuit's decision in *In re Cendant Corp., 343 F.3d 658 (3d Cir. 2003)* to support its contention that it is not required to produce materials protected by the work-product privilege. *Cendant* is distinguishable, however, because the issue there was whether *Rule 26(b)(4)(B)* required production of work-product generated by a *non-testifying* expert, and not a *testifying* expert as in the present case. *343 F.3d at 659* ("At issue on appeal is whether the 'work product' of a non-testifying trial consultant in this case is privileged and subject to only limited discovery.") As such, Dyson's reliance on that authority is misplaced.

[*12]

10. Subsequent to the Third Circuit's decision in *Bogosian*, *Rule 26* was amended to broaden the scope of

2007 U.S. Dist. LEXIS 15364, *

discovery, particularly with respect to experts. Specifically, *Rule 26(a)(2)(B)* was amended to provide that [HN3] a testifying expert shall submit an expert report containing "a complete statement of all opinions to be expressed and the basis and reasons therefor," and "the data or other information considered by the witness in forming the opinions." *Fed. R. Civ. P. 26(a)(2)(B)*. Courts have defined the term "considered" broadly to include materials that an expert reviews, reflects upon, reads, and/or uses. *Synthes Spine Co. v. Walden, 232 F.R.D. 460, 463 (E.D. Pa. 2005); Vitalo v. Cabot Corp., 212 F.R.D. 472, 474 (E.D. Pa. 2002)*. Thus, putting privilege considerations aside, a testifying expert must disclose all information that he or she reviewed, reflected upon, read and/or used in formulating his or her opinions.

11. With respect to privilege, the Advisory Committee's notes to the 1993 amendments to *Rule 26(a)(2)* state: "[g]iven [the] obligation of disclosure, litigants should no longer be able [*13] to argue that materials furnished to their experts to be used in forming their opinions -- whether or not ultimately relied upon by the expert -- are privileged or otherwise protected from disclosure when such persons are testifying or being deposed." *Fed. R. Civ. P. 26* Advisory Committee's Note. By its plain terms, the note states that the attorney-client and work-product privileges once relied upon by litigants to prevent disclosure of certain materials furnished to experts no longer exist. *See* Wright, Miller & Marcus, Federal Practice and Procedure § 2016.2, at 252 (2d ed. 1994) ("At least with respect to experts who testify at trial, the disclosure requirements of *Rule 26(a)(2)*, adopted in 1993, were intended to pretermit further discussion and mandate disclosure despite privilege.") Accordingly, the court interprets *Rule 26(a)(2)(B)* as requiring the disclosure of all materials considered by Dyson's experts, including Widdowson, regardless of Dyson's claims of attorney-client or work-product protection. n4

n4 In ruling as it does today, the court finds persuasive and follows authority in this district, and several other districts, requiring production of all documents considered by the testifying expert. *See Synthes Spine, 232 F.R.D. at 463-64* (noting that the "overwhelming majority of courts addressing this issue [the scope of disclosure required by an expert witness] have adopted a pro-discovery position, concluding that, pursuant to *Rule 26(a)(2)(B)*, a party must disclose all information provided to its testifying expert for consideration in the expert's report, including information otherwise protected by the attorney-client privilege or the work product privilege" and citing cases); *CP Kelco U.S. Inc. v. Pharmacia*

*Corp., 213 F.R.D. 176, 178-79 (D. Del. 2003)* (ordering production of documents considered by testifying expert, even though the documents were claimed as privileged, because "[i]t would be manifestly unfair to allow a party to use the privilege to shield information which it had deliberately chosen to use offensively . . . when it used the allegedly privileged documents to arm its expert for testimony"); *Vitalo v. Cabot Corp., 212 F.R.D. 478, 479 (E.D. Pa. 2002)* (same).

[*14]

12. Finally, Maytag contends that it is entitled to all information and documents considered by Widdowson before or in connection with the formulation of his expert opinions, regardless of any claims of attorney-client privilege, work-product protection, or time limitations before or after his designation as a testifying expert. The court disagrees and will limit production to only the information and documents considered by Widdowson in connection with formulating his expert opinions expressed in his report. Widdowson is an employee of Dyson Limited who also is being offered as an expert. Thus, he possesses general information regarding his ordinary job duties, as well as the specialized knowledge contained in his expert report. Under these circumstances, the court finds that it would be burdensome and unjust to order the production of information and documents not considered by Widdowson in connection with his expert report.

Therefore, IT IS HEREBY ORDERED that:

1. Maytag's Motion to Compel (D.I. 245) is GRANTED in part and DENIED in part.

2. Maytag's motion is GRANTED in that Dyson shall produce all information and documents considered by Widdowson in connection with formulating [*15] the opinions expressed in his January 15, 2007 expert report.

3. Dyson shall produce the information and documents that are the subject of this Order within five (5) days of Widdowson's expert deposition.

4. Maytag's motion is DENIED in that the court will not order production of information and/or documents that Widdowson may have considered in performing his general job duties, but did not consider in connection with formulating the opinions expressed in his January 15, 2007 expert report.

Dated: March 6, 2007

Gregory M. Sleet

UNITED STATES DISTRICT JUDGE

# EXHIBIT HH

LEXSEE 1996 US DIST LEXIS 6596



Caution
As of: Apr 30, 2007

DANIEL J. DAY, Plaintiff, -against- CONSOLIDATED RAIL CORPORATION, Defendant.

95 Civ. 968 (PKL)

UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF NEW YORK

*1996 U.S. Dist. LEXIS 6596*

May 14, 1996, Decided
May 15, 1996, FILED

**CASE SUMMARY:**

**PROCEDURAL POSTURE:** In a FELA case, plaintiff and defendant sought to preclude experts named by the other side for failure to comply with the rules that govern the production of expert witness information, *Fed. R. Civ. P. 26.*

**OVERVIEW:** Plaintiff requested that defendant be precluded from calling two individuals, and defendant sought to prevent plaintiff from calling one of its witnesses. The court found that defendant's expert witness disclosures did not meet the requirements of *Fed. R. Civ. P. 26(a)(2)(B).* Each gave only the barest description of the subject matter of the expert testimony and general conclusions of each witness. The court, however, exercised its broad discretion to permit defendant to call the two named experts to testify on the condition that defendant (1) provide the information required by R. 26(a)(2)(B) for both experts; (2) make them both available for depositions before their appearance at trial; and (3) bear the full expense of those depositions. This was done in spite of prejudice to plaintiff because of the court's policy encouraging the disposition of cases on their merits. The court found that the plaintiff had never even disclosed that it intended to call its disputed expert witness. Because plaintiff did not respond to the court's application, it was assumed that plaintiff conceded the point and the testimony was not admitted.

**OUTCOME:** The court permitted defendant to call its expert witnesses upon stated conditions. The court did not permit plaintiff's expert to testify.

**LexisNexis(R) Headnotes**

*Civil Procedure > Discovery > Methods > Expert Witness Discovery*
*Evidence > Testimony > General Overview*
[HN1] A broad scope of required written disclosure concerning trial experts' anticipated testimony, including summaries of their opinions and the grounds for them, has been defined. There is no suggestion that the rule applied only to certain trial experts, and instead emphasized that broad disclosure is required concerning those experts whom a party expects to call as trial witnesses. The only distinction is between that category of experts and those who have been retained or specially employed by the party but who are not expected to be witnesses.

*Civil Procedure > Discovery > Methods > Expert Witness Discovery*
*Evidence > Testimony > General Overview*
[HN2] Although *Fed. R. Civ. P. 26(b)(4)(A),* governing depositions of experts, appears to imply that some category of experts may be exempt from the report requirement, that exemption is apparently addressed to experts who are testifying as fact witnesses, although they may

1996 U.S. Dist. LEXIS 6596, *

also express some expert opinion, for example, treating physicians.

*Civil Procedure > Discovery > Methods > Expert Witness Discovery*
*Evidence > Testimony > Experts > General Overview*
[HN3] Although a witness is employed by a party and is being called solely or principally to offer expert testimony, there is little justification for construing the rules as excusing the report requirement. Since a witness' do not normally involve giving expert testimony, he may fairly be viewed as having been retained or specially employed for that purpose. Moreover, although the party might argue that the witness is not receiving extra compensation for that performance, the rules contain no disclosure exemption for experts who are not monetarily compensated.

*Civil Procedure > Discovery > Disclosures > General Overview*
*Civil Procedure > Discovery > Methods > Expert Witness Discovery*
[HN4] Where a party has failed to identify an expert witness and apparently has not provided the required disclosures, the application for preclusion that witness as an expert should be granted. A party that without substantial justification fails to disclose information required by *Fed. R. Civ. P. 26(a)* shall not, unless such failure is harmless, be permitted to use as evidence at a trial any witness or information not so disclosed.

**COUNSEL:** [*1]  For DANIEL J. DAY, plaintiff: David Jaroslawicz, Jaroslawicz & Jaros, Esqs., New York, NY, USA.

For CONSOLIDATED RAIL CORPORATION, defendant: Lawrence R. Bailey, Jr., Walker & Bailey, New York, NY.

**JUDGES:** MICHAEL H. DOLINGER, UNITED STATES MAGISTRATE JUDGE. Judge Peter K. Leisure

**OPINION BY:** MICHAEL H. DOLINGER

**OPINION:**

### MEMORANDUM & ORDER

MICHAEL H. DOLINGER
UNITED STATES MAGISTRATE JUDGE:

On the eve of trial, plaintiff and defendant in this FELA case are in vigorous dispute over the adequacy of their respective disclosures concerning their designated expert witnesses. Each seeks to preclude experts named by the other side for failure to comply with the rules that govern the production of expert witness information. (See, e.g., April 22 & 23, 1996 letters to the Court from Lawrence R. Bailey, Jr., Esq.; April 23, 1996 letter to the Court from Gregory L. Nester, Esq.). n1

n1 Both sides have named a number of trial experts concerning whom there is no controversy.

### A. Defendant's Experts [*2]

Plaintiff requests that defendant be precluded from calling two individuals, Walter L. Heide and Dr. James Pugh. Heide apparently is primed to testify about track inspection requirements and Pugh, who is described as an accident reconstruction expert, is to testify about the likelihood that plaintiff's alleged failure to wear a seat belt may have caused his injuries.

On March 7, 1996 defendant served two documents signed by trial counsel, each labelled "Expert Witness Disclosure", one for Mr. Heide and the other for Dr. Pugh. Both were manifestly inadequate to meet the requirements of *Fed. R. Civ. P. 26(a)(2)(B)*. Each gave only the barest description of the subject matter of testimony and the general conclusions of each witness. Neither contained the required report of the expert containing "a complete statement of all opinions to be expressed and the basis and reasons therefore; the data and other information considered by the witness in forming the opinions;" publications, if any by the witness; compensation, if any, of the witness; and a list of all cases in which the witness has testified.

In response, plaintiff's counsel belatedly brought this matter to the court's attention [*3] by telephone call on March 28, 1996, at which time counsel was instructed to consult with opposing counsel. The matter was not presented to the court for resolution until April 9, 1996. At a telephone conference on April 17, 1996, defendant was directed to proffer a written explanation for the apparent inadequacy of the so-called "Expert Witness Disclosures."

We have since received letter briefs from both sides. Defendant argues both that the objections were untimely and too informal and that the federal rule governing expert-witness discovery does not apply to Mr. Heide. I address these matters in reverse order.

The argument about Mr. Heide is premised on the undisputed fact that he is an employee of defendant Con Rail. Defendant then points to the language from the rule governing the scope of Rule 26(a)(2)(B), which applies to "a witness who is retained or specially employed to

1996 U.S. Dist. LEXIS 6596, *

provide expert testimony in the case or whose duties as an employee of the party regularly involve giving expert testimony . . . ." According to defendant, Mr. Heide's job duties at Con Rail do not "regularly involve giving expert testimony" and he was not "retained or specially employed to provide expert [*4] testimony in the case." Accordingly, defendant argues that it need not provide the information otherwise required for expert witnesses.

The principal difficulty with this argument is that even if the quoted language is perhaps susceptible to several alternative interpretations, the reading proposed by defendant would create a distinction seemingly at odds with the evident purpose of promoting full pre-trial disclosure of expert information. The logic of defendant's position would be to create a category of expert trial witness for whom no written disclosure is required -- a result plainly not contemplated by the drafters of the current version of the rules and not justified by any articulable policy. See *Fed. R. Civ. P. 26(a)(2)(B)*, Advisory Committee Notes at 125 (West 1996 ed.) (noting that 1993 amendments broadened expert discovery); *Ferriso v. Conway Org., 1995 U.S. Dist. LEXIS 14328, *6, 1995 WL 580197*, at *2 (S.D.N.Y. Oct. 3, 1995) (1993 amendments impose additional duty to disclose information).

The implausibility of defendant's position on this point is underscored by the language of the relevant Advisory Committee notes both for the current version of the rules and for its predecessor. Thus, in [*5] commenting on the 1970 amendments, which first [HN1] defined a broad scope of required written disclosure concerning trial experts' anticipated testimony, including summaries of their opinions and the grounds for them, the Advisory Committee made no suggestion that the rule applied only to certain trial experts, and instead emphasized that broad disclosure was required concerning "those experts whom a party expects to call as trial witnesses." The only distinction was between that category of experts and those "who have been retained or specially employed by the party but who are not expected to be witnesses." Advisory Committee Notes at 118.

The 1993 amendments retain that distinction, and, as noted, have in fact broadened the scope of disclosure required for trial experts. As explained in the notes, this expansion in the discovery requirement was enacted because "the information disclosed under the former rule in answering interrogatories about the 'substance' of expert testimony was frequently so sketchy and vague that it rarely dispensed with the need to depose the expert and often was even of little help in preparing for a deposition of the witness." *Id.* at 125.

[HN2] Although Rule [*6] 26(b)(4)(A), governing depositions of experts, appears to imply that some category of experts may be exempt from the report requirement, that exemption is apparently addressed to experts who are testifying as fact witnesses, although they may also express some expert opinions -- for example, treating physicians. See 4 James W. Moore et al. *Moore's Federal Practice P 26.04[4]* at 26-107 (2d ed. 1995). See also Advisory Committee Notes at 125; *Patel v. Gayes, 984 F.2d 214, 218 (7th Cir. 1993)* ("Rule 26 focuses not on the status of the witness but rather on the substance of the testimony"); *Zarecki v. National R.R. Passenger Corp., 914 F. Supp. 1566, 1573 (N.D.Ill. 1996)* (rejecting plaintiff's argument that treating physician was exempt from report requirement where physician's testimony concerned professional opinion developed for trial and not simply information acquired through observation and care of patient). In such an instance, we may infer that the reasons for requiring an expert's report are far less compelling and may unfairly burden a non-party who is appearing principally because he or she witnessed certain events relevant to the lawsuit.

In a case such [*7] as this, in which it appears that the witness in question -- that is, Mr. Heide -- [HN3] although employed by the defendant, is being called solely or principally to offer expert testimony, there is little justification for construing the rules as excusing the report requirement. Since his duties do not normally involve giving expert testimony, he may fairly be viewed as having been "retained" or "specially employed" for that purpose. Moreover, although defendant might argue that Mr. Heide is not receiving extra compensation for that performance -- the record is silent on the matter -- the rules contain no disclosure exemption for experts who are not monetarily compensated.

As for the other expert, Dr. Pugh, he is apparently not employed by Con Rail. Accordingly, defendant must concede the applicability of the report requirement to him.

Defendant's alternative grounds for resistance are that plaintiff never made a formal motion to preclude defendant's experts and that the current application is untimely. The degree of formality of the request was established by the court, which permitted letter briefing and oral argument. Defendant makes no showing either that it was surprised by this [*8] manner of proceeding or that it was in any other way unfairly prejudiced.

Timing is another matter. By order dated January 18, 1996, the court set the final expert witness discovery schedule, which included a proviso for defendant to provide the Rule 26(a)(2)(B) expert witness information by March 7, 1996, and further specified that if either party failed to assert an objection in court to its adversary's production within seven days after the default, the objection would be deemed waived. (Jan. 18, 1996 Order at P

1996 U.S. Dist. LEXIS 6596, *

7.) In this case defendant telexed to plaintiff's counsel on March 7 the purported expert disclosure reports, and plaintiff failed to raise the issue with the court for at least three weeks, until March 28, 1996, and did not press his objection in writing to the court until April 9, 1996. n2 Moreover, contrary to S.D.N.Y. Civil Rule 3(f), it appears that plaintiff's counsel never fulfilled his obligation to consult with adversary counsel.

n2 We may question whether an ex parte phone call to chambers constitutes compliance with the court's directive, but that issue need not be addressed here.

[*9]

These failings have prejudiced defendant to a degree since the issue was not framed for decision until shortly before trial. Moreover, given the longstanding policy of this court to encourage the disposition of cases on their merits, we are inclined to exercise our broad discretion to permit defendant to call the two named experts to testify on the following conditions: (1) that defendant provide the information required by Rule 26(a)(2)(B) for both experts, (2) that defendant make them both available for depositions before their appearance at trial and (3) that defendant bear the full expense of those depositions. Cf. *Williams v. Monarch Mach. Tool Co., 26 F.3d 228, 230-31 (1st Cir. 1994)* (upholding trial court's refusal to exclude testimony of expert witness because trial judges have inherent discretionary authority to manage scheduling, expert discovery, and sanctions).

**B. Plaintiff's Expert**

The remaining issue concerns a witness named by plaintiff in the pre-trial order as a trial expert. The witness, a Dr. William Simon, was listed "as an expert to testify as to causation of the injuries, nature and extent of the medical treatment and prognosis for future recovery." [*10] This subject exactly duplicates the area on which another, properly disclosed expert witness -- Dr. Richard Radna -- is to testify for plaintiff.

According to defendant's counsel, plaintiff had never previously disclosed that Dr. Simon was to be called as an expert witness and thus never provided the required expert witness disclosure. Defendant therefore seeks to preclude plaintiff from calling Dr. Simon as an expert. (See April 23, 1996 letter to the Court from Lawrence R. Bailey, Jr.). Plaintiff has not responded to this application, and thus must be deemed to have conceded the point. [HN4] Since plaintiff failed to identify Dr. Simon as an expert witness and apparently did not provide the required disclosures as to his opinions, the application for preclusion of Dr. Simon as an expert witness should be granted. See, e.g., *Derby v. Godfather's Pizza, Inc., 45 F.3d 1212, 1215 (8th Cir. 1995);* see also Rule 37(c)(1) ("A party that without substantial justification fails to disclose information required by Rule 26(a) . . . shall not, unless such failure is harmless, be permitted to use as evidence at a trial . . . any witness or information not so disclosed.")

DATED: [*11] New York, New York
May 14, 1996

SO ORDERED.

MICHAEL H. DOLINGER

UNITED STATES MAGISTRATE JUDGE

# EXHIBIT II

LEXSEE 2006 U.S. DIST LEXIS 88322


Analysis
As of: Apr 30, 2007

ANN M. MARCOUX, ET AL., Plaintiffs, -against- AMERICAN AIRLINES, INC.,
A.M.R. CORP., ASSOCIATION OF PROFESSIONAL FLIGHT ATTENDANTS,
Defendants.

04 CV 1376(NG) (KAM)

UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF NEW
YORK

*2006 U.S. Dist. LEXIS 88322*

December 6, 2006, Decided
December 6, 2006, Filed

**PRIOR HISTORY:** *Marcoux v. Am. Airlines, Inc., 2006
U.S. Dist. LEXIS 14130 (E.D.N.Y., Mar. 28, 2006)*

**CASE SUMMARY:**

**PROCEDURAL POSTURE:** Plaintiff union members
filed an action, alleging that defendants, a union and air-
line companies, imposed a restructuring participation
agreement on flight attendants without proper ratification
by the union members. The court previously denied the
members' motion to compel production of bankruptcy
petitions and motions that the airline companies prepared
but did not file. The members filed a motion to renew
their motion to compel.

**OVERVIEW:** The court previously held that the draft
bankruptcy documents sought by the members were pro-
tected by the attorney-client and attorney work product
privileges. In their motion to renew, the members argued
that the airline companies waived the privileges by ask-
ing an expert to prepare a report on what would have
happened if the airline companies had filed for bank-
ruptcy. The court ruled that the members' motion,
whether considered as a motion for reconsideration pur-
suant to S.D.N.Y. & E.D.N.Y. Civ. R. 6.3 or an objection
to the court's order under *Fed. R. Civ. P. 72(a)*, was un-
timely because it was filed more than ten days after the
court issued its order denying the prior motion to com-
pel. The court also determined that the airline companies
did not waive the privileges because (1) the expert did

not consider the draft bankruptcy documents in preparing
his report, (2) the expert was not provided with the
documents, (3) the expert's report was based on a review
of other *11 U.S.C.S. § 1113* motions and restructuring
agreements in the industry, and (4) the members were
able to challenge the expert's conclusions by analyzing
the data relied upon by the expert.

**OUTCOME:** The court denied the union members' re-
newed motion to compel production of documents and
declined to award costs and fees to the airline companies.

**LexisNexis(R) Headnotes**

*Civil Procedure > Pleading & Practice > Motion Prac-
tice > Time Limitations*
[HN1] See S.D.N.Y. & E.D.N.Y. Civ. R. 6.3.

*Civil Procedure > Judicial Officers > Magistrates >
Pretrial Orders*
[HN2] See *Fed. R. Civ. P. 72(a)*.

*Civil Procedure > Discovery > Disclosures > Manda-
tory Disclosures*
[HN3] *Fed. R. Civ. P. 26(a)(2)(B)* sets forth the disclo-
sure requirements regarding experts, and directs that an
expert report must disclose, inter alia, the data or other

2006 U.S. Dist. LEXIS 88322, *

information considered by the witness in forming the opinions in the report. Given this obligation of disclosure, litigants should no longer be able to argue that materials furnished to their experts to be used in forming their opinions--whether or not ultimately relied upon by the expert--are privileged or otherwise protected from disclosure when such persons are testifying or otherwise being deposed.

*Civil Procedure > Discovery > Privileged Matters > General Overview*
*Evidence > Privileges > General Overview*
[HN4] A party may impliedly waive its privileges with respect to documents or information where it asserts a claim that in fairness requires examination of protected communications. Fairness considerations arise when the party attempts to use the privilege both as a shield and a sword. In other words, a party cannot partially disclose privileged communications or affirmatively rely on privileged communications to support its claim or defense and then shield the underlying communications from scrutiny by the opposing party. The quintessential example is a defendant who asserts an advice-of-counsel defense and is thereby deemed to have waived his privilege with respect to the advice that he received. Whether fairness requires disclosure has been decided by the courts on a case-by-case basis, and depends primarily on the specific context in which the privilege is asserted.

*Civil Procedure > Discovery > Privileged Matters > General Overview*
*Evidence > Privileges > General Overview*
[HN5] The following factors are relevant to whether there has been an at issue waiver of a privilege: (1) assertion of the privilege was a result of some affirmative act, such as filing suit, by the asserting party; (2) through this affirmative act, the asserting party put the protected information at issue by making it relevant to the case; and (3) application of the privilege would have denied the opposing party access to information vital to his defense. Thus, the waiver is applied only when the privileged communication information is relied upon or disclosed.

**COUNSEL:** [*1] For American Arbitration Association, Movant: Theodore L. Hecht, LEAD ATTORNEY, Sacks Montgomery, P.C., New York, NY US.

For Ann M. Marcoux, Constance LaMattina, Elizabeth Lee Price, Judith Alexander, Patty Gentry, Janet Gold, Dale Hagar, Carol Johnson, Plaintiffs: Emily Maruja Bass, LEAD ATTORNEY, Law OFfices of Emily Bass, Brooklyn, NY; Martin Garbus, LEAD ATTORNEY, Mark J. Rachman, Davis & Gilbert, LLP, New York,

NY; Michael S. Haber, LEAD ATTORNEY, Law Office of Michael Haber, New York, NY; Steven Mark Nachman, Law Offices of Steven M. Nachman, New York, NY.

For American Airlines Inc., A.M.R. Corporation, Defendants: Jonathan C. Fritts, LEAD ATTORNEY, Morgan, Lewis & Bockius LLP, Washington, DC US; Melissa C. Rodriguez, Thomas Edward. Reinert, Jr., LEAD ATTORNEYS, Morgan Lewis & Bockius, LLP, New York, NY; Sam Scott Shaulson, LEAD ATTORNEY, Morgan, Lewis & Bockius, LLP, New York, NY U.S.A; Christine Bannon Cox, Morgan Lewis & Bockius, LLP, Washington, DC.

For Association of Professional Flight Attendants, John Ward as President of Association of Professional Flight Attendants, Defendants: Michael L. Winston, Stephen B. Moldof, Travis M. Mastroddi, LEAD ATTORNEYS, Cohen, [*2] Weiss and Simon, LLP, New York, NY; Michael S. Haber, Law Office of Michael Haber, New York, NY.

**JUDGES:** KIYO A. MATSUMOTO, United States Magistrate Judge.

**OPINION BY:** KIYO A. MATSUMOTO

**OPINION:**

ORDER

MATSUMOTO, United States Magistrate Judge:

On November 13, 2006, plaintiffs, members of the Association of Professional Flight Attendants ("APFA" or "Union Defendants") moved to renew their motion to compel production of the Bankruptcy Petition and First Day Motions that defendants American Airlines, Inc. and A.M.R. Corporation ("AA" or the "Company Defendants") prepared but did not file in April 2003. (See docket no. 148, Pltfs' 11/13/06 Ltr.) These discovery requests were part of a prior motion to compel by plaintiffs (docket no. 138), and were denied by the Court in an order dated October 20, 2006 (docket no. 146, "10/20/06 Order"). n1 For the reasons stated herein and at the status conference on December 5, 2006, the Court denies plaintiffs' motion to renew its motion to compel.

n1 Plaintiffs have separately appealed other portions of the Court's October 20, 2006 order to District Judge Gershon (see docket no. 147).

[*3]

**BACKGROUND**

2006 U.S. Dist. LEXIS 88322, *

Plaintiffs bring the instant lawsuit alleging that the defendants imposed a Restructuring Participation Agreement ("RPA") on American Airline's flight attendants without proper ratification by the union members in violation of, *inter alia*, the Railway Labor Act, *45 U.S.C. §§ 151-188*, and the duty of fair representation. The discovery requests at issue in plaintiffs' motion to renew are document request no. 29, which calls for "All petition(s) for relief under Title 11 of the United States Code AMR prepared between January 2000 and May 1, 2003" and document request no. 32, which calls for "All motion(s) or draft motion(s) AMR prepared to be filed with or shortly after the bankruptcy petition referred to in Request # 29." (See docket no. 148, Ex. A.) In its October 20, 2006 order, the Court denied plaintiffs' motion to compel production of these draft documents, finding, "based on the weight of legal authority cited in AA's opposition, that the draft bankruptcy petitions and motions sought by plaintiffs are protected by the attorney-client and attorney work product privileges and were prepared in anticipation of litigation. [*4]  " (10/20/06 Order at 11.)

In support of their motion to renew, plaintiffs assert that the "record . . . changed" after they received the report of AA's expert, Jerrold A. Glass, on October 31, 2006. (See Pltfs' 11/13/06 Ltr. at 1 and Ex. B to Pltfs' 11/13/06 Ltr., Expert Opinion of Jerrold A. Glass (the "Glass Report").) Plaintiffs argue that Glass, in his report, "speculates on what would have happened if the Company Defendants had filed for bankruptcy in March or April 2003," thus effecting a waiver of the attorney-client and attorney work product privileges applicable to the Bankruptcy Petition and First Day Motions. (Pltfs' 11/13/06 Ltr. at 1.) In their response to plaintiffs' motion (see docket no. 151, Defts. 11/16/06 Ltr.), the Company Defendants argue that plaintiffs' motion is time-barred, deny that Glass relied on any proposed drafts of the Bankruptcy Petition or First Day Motions, deny that Glass's expert report constitutes a waiver of privilege, and request an award of attorneys' fees and costs for opposing plaintiffs' motion.

**DISCUSSION**

**I. Timeliness of Plaintiffs' Motion**

Plaintiffs frame their submission as a "motion to [*5] renew" their prior motion to compel with respect to the Bankruptcy Petition and First Day Motions. Plaintiffs do not identify the rule of procedure under which they seek to bring their motion to renew. Presumably, because they have raised the matter before the magistrate judge, plaintiffs are seeking to invoke *Local Civil Rule 6.3*, which provides: [HN1] "A notice of motion for reconsideration . . . of a court order determining a motion shall be served within ten (10) days after the entry of the court's

determination of the original motion . . . . There shall be served with the notice of motion a memorandum setting forth concisely the matters or controlling decisions which counsel believes the court has overlooked." Plaintiffs have not complied with *Local Civil Rule 6.3*'s prescribed time limits, notice of motion and memorandum of law.

Had the plaintiffs timely brought their application before the district court judge, *Fed. R. Civ. P. 72(a)* would have applied. That Rule provides that:

> [HN2] Within 10 days after being served with a copy of the magistrate judge's order [regarding a nondispositive matter], a party may serve and file objections to the [*6] order; a party may not thereafter assign as error a defect in the magistrate judge's order to which objection was not timely made. The district judge to whom the case is assigned shall consider such objections and shall modify or set aside any portion of the magistrate judge's order found to be clearly erroneous or contrary to law.

*Fed. R. Civ. P. 72(a)*. See also *28 U.S.C. § 636(b)(1)*. Plaintiffs have expressly stated in their objections to specific aspects of the Court's October 20, 2006 order that they were not objecting to other aspects of the order. (See docket no. 147 at 16.)

In either case, the Court finds that plaintiffs' November 13, 2006 submission, whether considered as a motion for reconsideration pursuant to *Local Civil Rule 6.3* or an objection to the Court's order under *Fed. R. Civ. P. 72(a)*, is not timely, because the motion was filed more than ten days after the Court's November 20, 2006 Order. Moreover, plaintiffs do not explain why they waited more than ten days after receiving the Company Defendants' expert report on October 31, 2006 to file their so-called [*7] motion to renew.

Even assuming that plaintiffs' motion was timely filed, however, the Court finds that defendants have not waived any of their previously asserted privileges with respect to the Bankruptcy Petition and First Day Motions for the reasons stated below.

**II. Defendants' Alleged Waiver of Privilege**

**A. Information "Considered" by AA's Expert**

In their motion to renew, plaintiffs do not challenge the Court's finding in its October 20, 2006 order that the Bankruptcy Petition and First Day Motions prepared by the Company Defendants' counsel, but never filed, are

protected by the attorney-client and attorney work product privileges and were prepared in anticipation of litigation. Instead, plaintiffs argue that the Company Defendants have waived the privileges associated with these documents by requesting their expert to assume in his report that the bankruptcy petition and motions were filed.

[HN3] *Fed. R. Civ. P. 26(a)(2)(B)* sets forth the disclosure requirements regarding experts, and directs that an expert report must disclose, *inter alia*, "the data or other information considered by the witness in forming the opinions" [*8] in the report. The Advisory Committee Notes to the 1993 Amendments to *Fed. R. Civ. P. 26(a)(2)(B)* clarify that "[g]iven this obligation of disclosure, litigants should no longer be able to argue that materials *furnished* to their experts to be used in forming their opinions -- whether or not ultimately relied upon by the expert -- are privileged or otherwise protected from disclosure when such persons are testifying or otherwise being deposed" (emphasis added). See also *Constr. Indus. Servs. Corp. v. Hanover Ins. Co., 206 F.R.D. 43, 50 (E.D.N.Y. 2001)* (noting that "documents and information *disclosed* to a testifying expert in connection with his testimony are discoverable by the opposing party, whether or not the expert relies on the documents and information in preparing his report" (quoting *In re Pioneer Hi-Bred Int'l, Inc., 238 F.3d 1370, 1375 (Fed. Cir. 2001)* (emphasis added))).

In his report, Glass describes the subject matter as to which he was requested to render an opinion:

> I have been directed by counsel for American Airlines to assume that the parties had not reached a consensual agreement [*9] and that on or about March or April 2003, the company had filed for Chapter 11 bankruptcy protection and filed a *Section 1113* motion to reject the 2001 collective bargaining agreement. Given that assumption, I have been asked to render an opinion as to whether the APFA 2001 agreement would have remained unchanged, would have been modified to the terms of the consensual Restructuring Participation Agreement (RPA), or would have contained additional concessions above and beyond those in the RPA.

(Glass Report P 12.)

It is clear that Glass never received nor considered the Bankruptcy Petition or First Day Motions in prepar-

ing his report. Glass notes that in preparing his report he reviewed the restructuring agreements negotiated with flight attendant unions across the industry in the post-9/11 environment, and that "[e]ach agreement was analyzed by reading the actual restructuring agreement, reviewing the summaries produced by the union, or by examining court papers filed in connection with an [sic] § 1113 motion." (Id. P 18) In a subsequent declaration, Glass further specifically states that he was not provided with, did not have access [*10] to, and did not review any bankruptcy papers prepared by AA's bankruptcy counsel for possible filing during March or April 2003, and that he examined only the court papers of airlines other than AA that were filed in connection with a § 1113 motion. (Docket no. 151, Ex. A, November 16, 2006 Declaration of Jerrold A. Glass ("Glass Declaration") PP 3 and 4.)

Given Glass's statements in his report and his declaration, the Court finds that Glass did not consider the Bankruptcy Petitions or First Day Motions in preparing his report, and did not thereby effect a waiver of the attorney-client privilege or attorney work product protection associated with these documents.

**B. "At Issue" or Implied Waiver**

Even if Glass did not consider the Bankruptcy Petition and First Day Motions, plaintiffs argue that "Defendants' act of proffering the expert and his Report effected an 'at issue' waiver" and that it would be a "denial of due process to permit defendants to speculate on the outcome of judicial proceedings while withholding the papers they had prepared to initiate those proceedings . . . ." (Pltfs' 11/13/06 Ltr. at 2.) The broad application of the "at issue" waiver advocated [*11] by plaintiffs would eviscerate all privileged material related to the subject matter of an expert's opinion and is not supported by the law.

The Second Circuit has held that [HN4] a party may impliedly waive its privileges with respect to documents or information where it "asserts a claim that in fairness requires examination of protected communications." *United States v. Bilzerian, 926 F.2d 1285, 1292 (2d Cir. 1991).* "[F]airness considerations arise when the party attempts to use the privilege both as 'a shield and a sword.' In other words, a party cannot partially disclose privileged communications or affirmatively rely on privileged communications to support its claim or defense and then shield the underlying communications from scrutiny by the opposing party." *In re Grand Jury Proceedings, 219 F.3d 175, 182 (2d Cir. 2000)* (citing *Bilzerian, 926 F.2d 1285* and *In re von Bulow, 828 F.2d 94, 100 (2d Cir. 1987)).* "The quintessential example is the defendant who asserts an advice-of-counsel defense and is thereby deemed to have waived his privilege with respect to the advice that he received." *Id. at 182-83* [*12]

2006 U.S. Dist. LEXIS 88322, *

(quoting *In re Kidder Peabody Sec. Litig.*, 168 F.R.D. 459, 470 (S.D.N.Y. 1996)). "Whether fairness requires disclosure has been decided by the courts on a case-by-case basis, and depends primarily on the specific context in which the privilege is asserted." *Id.* at 183.

[HN5] The factors relevant to whether there has been an at issue waiver were first articulated in *Hearn v. Rhay*, 68 F.R.D. 574 (E.D. Wash. 1975), which has been cited with approval in this Circuit. Those factors are:

> (1) assertion of the privilege was a result of some affirmative act, such as filing suit, by the asserting party; (2) through this affirmative act, the asserting party put the protected information at issue by making it relevant to the case; and (3) application of the privilege would have denied the opposing party access to information vital to his defense.

*Hearn*, 68 F.R.D. at 580. See also *Bilzerian*, 926 F.2d 1285, 1292 (2d Cir. 1991) (affirming district court's ruling that defendant's use of advice-of-counsel defense would waive his attorney-client privilege, and citing with approval Hearn); *Granite Partners, L.P. v. Bear, Stearns & Co.*, 184 F.R.D. 49, 55 (S.D.N.Y. 1999) [*13] (citing Hearn factors and finding waiver of work product privilege where plaintiff used work product documents to impeach witnesses and published portions of the documents in a report); *In re Kidder Peabody Sec. Litig.*, 168 F.R.D. 459, 470 (S.D.N.Y. 1996) (citing Hearn factors and finding waiver of work product and attorney-client privileges as to attorneys' interview notes and memoranda which formed basis for report published and used in litigation by defendant). Thus, the waiver is applied only when the privileged communication information is relied upon or disclosed.

Applying these principles, the Court finds that the Company Defendants have not placed the Bankruptcy Petition and First Day Motions at issue in this action. With regard to the first prong, in defending against plaintiffs' allegations, the Company Defendants have requested their expert to assume that AA had filed for bankruptcy in March or April 2003 and to prepare an opinion -- based on a review of other restructuring agreements in the industry -- on how the resulting APFA 2001 agreement would have been affected if the Company Defendants had filed a petition for Chapter 11 protection [*14] and a Section 1113 motion to reject the APFA 2001 agreement, and compare the possibly modified APFA 2001 agreement with the terms of the RPA that was ultimately implemented. In so doing, the Com-

pany Defendants' expert has stated under oath that he was not provided with the Bankruptcy Petitions or First Day Motions. The Company Defendants have continued to assert that these documents, which were never filed, are protected by the attorney-client privilege and attorney work product doctrine.

With regard to the second prong, the Company Defendants have not placed the protected information at issue because Glass's report does not rely on the draft Bankruptcy Petition and First Day Motions. The expert report assumes that AA filed for bankruptcy, but does not rely on the content of the Bankruptcy Petition or First Day Motions, and instead is based on a review of other Chapter 11 and Section 1113 motions and restructuring agreements in the industry. The content of the Bankruptcy Petition and First Day Motions are thus not relevant to an evaluation of the expert's report and have not been placed at issue.

Third, the Company Defendants' assertion of the privilege does not deny the plaintiffs [*15] access to information vital to their case. As the Company Defendants have previously noted, plaintiffs have been provided with the Section 1113 proposal term sheet (see docket no. 141, Company Defts' 9/8/06 Ltr. at 2 and Ex. D, Section 1113 proposal), and "have deposed key Company and Union witnesses about the presentation of the 1113 proposal in negotiations and the impact of a bankruptcy filing on flight attendants" (Company Defts' 9/8/06 Ltr at 2 and Exs. E-G). Plaintiffs may also seek an expert opinion, based on the same data relied upon by the Company Defendants' expert, that may challenge the conclusions of the Glass report.

A comparison of the present case with the facts in *Granite Partners, L.P.*, 184 F.R.D. 49, cited by plaintiffs, is instructive. In that case, plaintiffs' litigation advisory board sued defendants based on a report by the plaintiffs' bankruptcy trustee which analyzed the causes leading to the collapse of the plaintiffs' investment funds. Defendants moved to compel plaintiffs to produce the witness interview notes, valuations and analyses, and third-party documents upon which the trustee's report was based, and which [*16] plaintiffs argued were protected as attorney work product. The court found that plaintiffs had impliedly waived the work-product privilege with respect to those documents, because (i) the trustee's report made selective use of interview notes and expert analyses, (ii) the trustee's interview notes were used to impeach witnesses for the defendant, and (iii) the report relied on analysis by the trustee's expert which "placed the accuracy of his data and the validity of his analyses at issue and, thus, waives [the] privilege on the supporting documents [for the expert's analysis]." *Id.* at 55. The court further held that the defendants had shown substantial need for the material sought, because "[w]ithout ac-

cess to the data and analyses used by the Trustee's experts, no expert retained by the Moving Defendants will be able to reconstruct the methodology used and assumptions made by [the trustee's expert] in creating the 'benchmark' prices which form the basis for the [plaintiffs'] claims . . . in the [trustee's] Final Report and in the Amended Complaint." *Id. at 56.*

The facts in the present case do not provide plaintiffs with a similarly compelling [*17] justification for asserting a waiver of the Company Defendants' privilege with respect to the Bankruptcy Petition and First Day Motions. As discussed above, the Company Defendants have requested their expert only to assume that AA had filed for bankruptcy but did not disclose the Bankruptcy Petition and First Day Motions to the expert, and thus have not sought to use the content of the draft Bankruptcy Petition and First Day Motions against the plaintiffs. Plaintiffs are able to challenge the conclusions of the Glass report by analyzing the same data relied upon by Glass, which is disclosed in the expert report. (See Glass Report, PP 13, 18 and Attachment II.)

For the same reasons, the Court again finds that plaintiffs' renewed argument, pursuant to *Fed. R. Civ. P. 26(b)(3)*, that the work product doctrine should not apply because plaintiffs have substantial need for the Bankruptcy Petition and First Day Motions and no other means of obtaining the substantial equivalent of these materials, is without merit. (Pltfs' 11/13/06 Ltr. at 3.) Plaintiffs are able to perform the same analysis undertaken by the Company Defendants' expert and [*18] are not prejudiced by the non-disclosure of the Bankruptcy Petition and First Day Motions. Moreover, they may depose and subsequently cross-examine Mr. Glass at trial regarding his opinion, in which he assumes that the Chapter 11 petition and Section 1113 motions were filed and draws conclusions without actually having examined such documents.

## III. Defendants' Motion for Fees and Costs

Defendants have requested attorney's fees and costs associated with responding to plaintiffs' motion to compel, arguing that plaintiffs have attempted to re-litigate an issue that was "both time-barred and baseless." (Defts' 11/16/06 Ltr. at 3.) Notwithstanding the Glass Declaration's clear statement that Glass did not rely on any of the draft Chapter 11 petitions and Section 1113 motions prepared by AA's counsel, plaintiffs appear to have brought their motion, before receiving the Glass Declaration, based on a mistaken belief that the Glass report effected a waiver of privilege. Although the Court declines to award fees and costs to the Company Defendants with regard to the instant motion, plaintiffs should be well advised to carefully examine the facts and law as required by [*19] *Rule 11*, to avoid unnecessary motion practice in the future.

## CONCLUSION

Having found that the Company Defendants' expert report did not effect a waiver of their privileges regarding their proposed Bankruptcy Petition and First Day Motions, the Court denies plaintiffs' renewed motion to compel production of these documents and declines to award costs and fees to the Company Defendants. The parties have reported that discovery is completed. The parties shall seek pre-motion conference requests before Judge Gershon by January 8, 2007.

Dated: December 6, 2006

Brooklyn, New York

**SO ORDERED.**

KIYO A. MATSUMOTO

United States Magistrate Judge

# EXHIBIT JJ

LEXSEE 2006 US DIST LEXIS 29813



Analysis
As of: Apr 30, 2007

**ROBERT SICURELLI et al., Plaintiffs, -against- JENERIC/PENTRON INC. et al., Defendants.**

**03-CV-4934 (SLT) (KAM)**

**UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF NEW YORK**

*2006 U.S. Dist. LEXIS 29813*

**May 16, 2006, Decided**

**PRIOR HISTORY:** *Sicurelli v. Jeneric / Pentron, Inc., 2005 U.S. Dist. LEXIS 38943 (E.D.N.Y., Dec. 30, 2005)*

**COUNSEL:** [*1] For Dr. Robert Sicurelli, Dr., Dr. Samuel Masyr, Dr., Plaintiffs: Bradford James Badke, Michael S. Burling, Ropes & Gray LLP, New York, NY; Gloria Fuentes, Ropes & Gray, New York, NY.

For Jeneric/Pentron Inc., Defendant: Andrew C. Ryan, Cantor Colburn, LLP, South Bloomfield, CT; William J. Cass, Cantor Colburn, LLP, Bloomfield, CT; Charles D. Donohue, Drinker Biddle & Reath LLP, New York, NY; Gloria Fuentes, Ropes & Gray, New York, NY.

For Pentron Clinical Technologies, LLC, Pentron Corporation, Inc., Defendants: Charles D. Donohue, Drinker Biddle & Reath LLP, New York, NY.

For Jeneric/Pentron Inc., Counter Claimant: Charles D. Donohue, Drinker Biddle & Reath LLP, New York, NY.

For Dr. Samuel Masyr, Dr., Dr. Robert Sicurelli, Dr., Counter Defendants: Michael S. Burling, Ropes & Gray LLP, New York, NY; Gloria Fuentes, Ropes & Gray, New York, NY.

For Coltene/Whaledent, Inc., Cross Claimant: Michael F. Sarney, Katten Munchin Rosenman LLP, New York, NY.

For Pentron Clinical Technologies, LLC, Pentron Corporation, Inc., Cross Defendants: Charles D. Donohue, Drinker Biddle & Reath LLP, New York, NY.

For Jeneric/Pentron Inc., Cross Defendant: Andrew C. Ryan, [*2] Cantor Colburn, LLP, South Bloomfield, CT. Charles D. Donohue, Drinker Biddle & Reath LLP, New York, NY.

**JUDGES:** KIYO A. MATSUMOTO, United States Magistrate Judge.

**OPINION BY:** KIYO A. MATSUMOTO

**OPINION:**

**MEMORANDUM & ORDER**

MATSUMOTO, United States Magistrate Judge:

This patent infringement action has been referred to the undersigned for general pretrial supervision. Presently before the Court is the motion of Jeneric/Pentron, Inc., Pentron Clinical Technologies, LLC and Pentron Corporation, Inc. (collectively, "Jeneric/Pentron") to compel the production of certain documents, in plaintiffs' possession. The documents were subpoenaed by Jeneric/Pentron from Hi-Rel Laboratories, Inc. ("Hi-Rel"), an entity which purportedly conducted scanning electron microscopy ("SEM") tests of Jeneric/Pentron's dental posts which are the subject of this litigation. Specifically, in addition to all documents and things considered by plaintiffs' expert, Dr. Anthony Storace, in formulating his opinion and expert report, Jeneric/Pentron seeks production of "any and all documents and things, including . . . photographs . . . exchanged between [plaintiffs' litigation counsel] Ropes & Gray and Hi-Rel . . . [*3] . [,]" and

2006 U.S. Dist. LEXIS 29813, *

any and all documents that mention, refer or relate to the instant law suit or any of the parties thereto. (Doc. No. 183, Affirmation of Michael Burling, Esq. dated Apr. 3, 2006 ("Burling Aff."), Ex. D, Subpoena to Hi-Rel, Schedule A, PP4-6.)

Plaintiffs do not oppose the production of all materials considered by Dr. Storace in formulating his opinion and expert report. Instead, plaintiffs assert the work product privilege as to other documents relating to Hi-Rel's testing, specifically, testing commissioned by plaintiffs both prior to and following the commencement of this litigation. (See generally, Doc. No. 182, Plaintiffs' Memorandum of Law in Opposition to Motion to Compel ("Pls. Opp'n MOL").) Plaintiffs also dispute Jeneric/Pentron's contention that all materials prepared by or otherwise exchanged between plaintiffs and Hi-Rel, regardless of whether such materials were considered by Dr. Storace, should be produced because they have been placed "at issue." (Id. at 6-10.) Dr. Storace has declared under oath:

> I have no knowledge of the testing conducted by Hi-Rel with Dr. Sicurelli and Ropes & Gray, and I did not consider it in forming my opinions in [*4] this case. No person at Hi-Rel made reference in my dealings with them to any previous work having been performed for Dr. Sicurelli, Dr. Masyr, or Ropes & Gray. I have produced all materials that I considered in forming my opinions in the above-captioned matter.

(Burling Aff., Ex. A, Declaration of Dr. Anthony Storace dated Mar. 30, 2006 ("Storace Decl."), PP8-9.)

For the reasons set forth below, the Court finds that (i) documents relating to plaintiffs' pre-litigation SEM testing, and plaintiffs' litigation counsel's SEM testing, of Jeneric/Pentron's dental posts are protected by the work product privilege; (ii) Jeneric/Pentron has not demonstrated the requisite "substantial need" for the privileged materials sufficient to overcome work product protection; and (iii) plaintiffs have not otherwise placed such materials "at issue" so as to have waived work product protection. Accordingly, Jeneric/Pentron's motion to compel is denied without prejudice.

## DISCUSSION

The work product doctrine provides qualified protection from discovery of "documents and tangible things . . . prepared in anticipation of litigation" unless the party seeking discovery demonstrates a "substantial [*5] need

of the materials in the preparation of the party's case and that the party is unable without undue hardship to obtain the substantial equivalent of the materials by other means." Fed. R. Civ. P. 26(b)(3). The purpose of this doctrine is to protect from disclosure materials reflecting "the mental impressions, conclusions, opinions, or legal theories of an attorney or other representative of a party concerning the litigation." Id.

### A. Applicability of the Work Product Doctrine

"[T]hree conditions must be met to earn work product protection. The material must (1) be a document or a tangible thing, (2) that was prepared in anticipation of litigation, and (3) was prepared by or for a party, or by or for his representative." In Re Grand Jury Subpoenas Dated Dec. 18, 1981 & Jan. 4, 1982, 561 F. Supp. 1247, 1257 (E.D.N.Y. 1982). The burden of establishing all three elements of the work product privilege rests with the party invoking the privilege. In re Grand Jury Subpoena Dated Dec. 19, 1978, 599 F.2d 504, 510 (2d Cir. 1979). There is no dispute regarding the first and third prongs of this tripartite [*6] test.

With respect to the second prong -- whether the document was prepared in anticipation of litigation -- this Court has previously determined that one of the SEM tests was "commissioned by and for plaintiffs in their anticipation of litigation against Jeneric," prior to the commencement of this litigation ("pre-litigation testing"). Sicurelli v. Jeneric/Pentron, 2005 U.S. Dist. LEXIS 42233, at *22, No. 03-CV-4934, slip op. at 13-14 (E.D.N.Y. May 3, 2005) ("May 2005 Order"). This Court ruled that the documents relating to that test were "developed by the plaintiffs in the context of the plaintiffs' potential litigation against Jeneric . . . and [were] protected from disclosure as plaintiffs' work product and may not be disclosed . . . without plaintiffs' consent." Id.; see also Jeneric/Pentron, 2005 U.S. Dist. LEXIS 42227, at *16, No. 03-CV-4934, slip op. at 9 (E.D.N.Y. June 16, 2005) ("Order on Reconsideration") (on reconsideration, holding that documents relating to the results of SEM testing of dental posts commissioned by plaintiffs were work product "because the record established that plaintiffs commissioned the test to aid them in their anticipated litigation").

Moreover, the Court finds that documents relating to the results of the [*7] SEM tests commissioned by plaintiffs' litigation counsel, Ropes & Gray, LLP, and conducted during the course of litigation, also qualify as work product. A review of plaintiffs' privilege log regarding "Withheld Documents Submitted by Third-Party Hi-Rel Laboratories, Inc.," indicates that plaintiffs' litigation counsel commissioned tests in connection with the instant action on September 9, 2004, nearly one year after the filing of the Summons and Complaint on Sep-

tember 26, 2003, and that Hi-Rel provided the results of its testing to plaintiffs' counsel on or about December 9, 2004. (See Doc. No. 178, Affirmation of William J. Cass, Esq. ("Cass Aff."), at Ex. A, Privilege Log.) Accordingly, plaintiffs have satisfied the elements necessary to establish the applicability of the work product privilege to the disputed documents.

## B. Substantial Need for the Protected Documents

"Even where the applicability of the work product doctrine has been established, factual material may be ordered produced 'upon a showing of substantial need and inability to obtain the equivalent without undue hardship.'" *In re Omeprazole Patent Litig.*, *2005 U.S. Dist. LEXIS 6112, No. M-21-81, 2005 WL 818821*, [*8] *at *9 (S.D.N.Y. Feb. 18, 2005)* (quoting *Upjohn Co. v. United States, 449 U.S. 383, 400, 101 S. Ct. 677, 66 L. Ed. 2d 584 (1981))*; *In re Grand Jury Proceedings, 219 F.3d 175, 190-191 (2d Cir. 2000)* ("A party seeking discovery of attorney work-product must show substantial need, for fact work-product. As for work-product that shows mental impressions, conclusions, opinions, or legal theories of an attorney, . . . at a minimum such material is to be protected unless a highly persuasive showing [of need] is made.") (internal citations and quotation marks omitted).

"Substantial need is not evaluated in a vacuum, and in order to overcome work product protection, [defendant] must demonstrate that it cannot obtain the substantial equivalent of the information it seeks." *E.E.O.C. v. Carrols Corp., 215 F.R.D. 46, 52 (N.D.N.Y. 2003)* (citing *Horn & Hardart Co. v. Pillsbury Co., 888 F.2d 8, 12 (2d Cir. 1989))*. That does not mean that a party seeking the document must show an absolute impossibility, but rather that it is significantly more difficult, time-consuming or expensive to obtain the information from another source. *Securities & Exch. Comm'n. v. Thrasher, 1995 U.S. Dist. LEXIS 1355, 92 Civ. 6987, 1995 WL 46681*, [*9] *at *9 (S.D.N.Y. Feb. 7, 1995)*.

Jeneric/Pentron has not demonstrated why it could not and cannot now obtain the substantial equivalent of the information contained in the protected documents. As the Court indicated in its May 3, 2005 order, Jeneric/Pentron could have conducted its own SEM tests of its dental posts and, indeed, could have commissioned Hi-Rel to do so, just as it could have deposed the Hi-Rel employee that conducted the tests. See *Tribune Co. v. Purcigliotti, 1998 U.S. Dist. LEXIS 5155, 93 Civ. 7222, 1998 WL 175933 at *4 (S.D.N.Y. Apr. 14, 1998)* ("'Substantial need' cannot be shown where persons with equivalent information are available for deposition.") (citing *Pillsbury, 888 F.2d at 12*); *Atlantic Richfield Co. v. Current Controls, Inc., 1997 U.S. Dist. LEXIS 13082, No. 93-CV-0950, 1997 WL 538876, at *3 (W.D.N.Y. Aug.*

*21, 1997)* (noting that the party seeking facts in a privileged document may obtain those facts through other means of discovery); *ECDC Env't v. New York Marine and Gen. Ins. Co., 1998 U.S. Dist. LEXIS 8808, 96 Civ. 6033, 1998 WL 614478, at *15-16 (S.D.N.Y. June 4, 1998)* ("[B]ecause the work product privilege does not protect the facts in that document (the privilege [*10] protects documents, not facts), the party seeking those facts may obtain them through other means of discovery, such as through depositions and interrogatories."). It is true that other discovery devices may be more expensive or burdensome than the production of the protected documents; however, the discovery devices do provide an alternative means for Jeneric/Pentron to obtain the substantial equivalent and, perhaps more, without undue hardship and without impinging upon plaintiffs' work product. See *In re Int'l Sys. & Controls Corp., 693 F.2d 1235, 1241 (5th Cir. 1982)* (noting that although expense may be considered in determining undue hardship, "in the ordinary case, the cost of one or a few depositions is not enough to justify discovery of work product") (citation omitted)

## C. "At Issue" Waiver

Jeneric/Pentron also contends that plaintiffs have waived any claim over the Hi-Rel documents by placing their tests of Jeneric/Pentron's dental posts "at issue." (See Doc. No. 197, Jeneric/Pentron's Memorandum of Law in Support of Motion to Compel ("Def. MOL"), at 5-8.) Specifically, Jeneric/Pentron asserts that because plaintiffs, their counsel and Dr. [*11] Storace each retained Hi-Rel to conduct tests on the allegedly infringing dental posts, plaintiffs have placed at issue all of Hi-Rel's tests relative to those dental posts.

Jeneric/Pentron correctly asserts that "waiver of work product protection may result from a party's injection of an issue into the litigation that, in fairness, requires the party to disclose otherwise protected material." *Ruotolo v. City of New York, 2005 U.S. Dist. LEXIS 5958, No. 03 Civ. 5045, 2005 WL 823015, at *2-3 (S.D.N.Y. Apr. 7, 2005)* (citing *In re Grand Jury Proceedings, 219 F.3d 175, 182 (2d Cir. 2000))*. Courts have found that an "at-issue" waiver has occurred when the following factors are present:

(1) assertion of the privilege was the result of some affirmative act, such as filing suit, by the asserting party; (2) through this affirmative act, the asserting party put the protected information at issue by making it relevant to the case; and (3) application of the privilege would have denied

2006 U.S. Dist. LEXIS 29813, *

the opposing party access to information vital to [its] defense.

*Ruotolo, 2005 U.S. Dist. LEXIS 5958, 2005 WL 823015, at \*2-3 (citing Granite Partners v. Bear, Stearns & Co., Inc., 184 F.R.D. 49, 54 (S.D.N.Y. 1999)). [\*12]*

While plaintiffs' assertion of work product protection is the direct result of their commencement of this action, thus satisfying the first factor, the Court is not convinced that, with respect to the second factor, plaintiffs have placed the protected documents "at issue" by making them relevant to this case. Whether plaintiffs have placed their pre-litigation testing and the testing commissioned by their counsel at issue depends upon whether that information was considered by Dr. Storace in formulating his expert opinion and report or whether plaintiffs otherwise intend to rely on that information.

*Rule 26(a)(2)(B) of the Federal Rules of Civil Procedure*, which governs disclosures by expert witnesses, mandates the disclosure of, among other things, "the data or other information *considered* by the witness in forming the opinions . . . ." (Emphasis added). "[T]he requirement of disclosure applies not only to information actually relied upon by a testifying expert, but also to information that was not relied upon, but considered by the expert . . . ." *Schwab v. Philip Morris USA, Inc., 2006 U.S. Dist. LEXIS 11047, No. 04-CV-1945, 2006 WL 721368, at [\*13] \*2 (E.D.N.Y. Mar. 20, 2006) (citing Construction Indus. Servs. Corp. v. Hanover Ins. Co., 206 F.R.D. 43, 50 (E.D.N.Y. 2001)).*

The party resisting disclosure bears the burden of showing that an expert did not consider certain documents in forming his opinion. See *Schwab, 2006 U.S. Dist. LEXIS 11047, 2006 WL 721368, at \*3* (citation omitted). "[T]his burden cannot generally be satisfied by the expert's representations alone . . . . The burden is met when the documents could not have been considered by the expert in forming his opinion, as when they are reviewed by the expert only after he has testified. . . . It can also be met when the party opposing disclosure presents the court with affidavits and deposition testimony clearly establishing that the testifying witness never read, reviewed, or considered the subject documents in forming his opinions." Id. (citations and internal quotation marks omitted).

The results of pre-litigation testing and testing conducted by plaintiffs' counsel following the commencement of this action are not at issue because they could not have been considered by Dr. Storace in forming his opinion. Dr. Storace's declaration reflects that he was [\*14] not aware of the existence of other tests until March 2006, approximately five months following the

conclusion of his work with Hi-Rel and the preparation of his report, in November 2005. Thus, Dr. Storace could not have "considered" these tests for purposes of *Rule 26(a)(2)(B)* disclosure requirements. (See Storace Decl. PP5-9; Cass Aff., Ex. D, Expert Report of Anthony Storace dated Nov. 17, 2005.)

In its reply brief relative to this motion, Jeneric/Pentron asserts that Roger Devaney, the Hi-Rel employee who allegedly performed the tests ordered by Dr. Storace, as well as the pre-litigation testing commissioned by plaintiffs and later by plaintiffs' counsel in September 2004, acted as an "agent" of Dr. Storace, or as a non-testifying expert, whose knowledge about Jeneric/Pentron's posts was disclosed to Dr. Storace, and thereby informed Dr. Storace's expert opinion. Jeneric/Pentron contends that "Roger Devaney's prior consulting relationship with Plaintiff's [sic] counsel may have influenced the sample preparation and photography of the FibreKor samples used in Dr. Storace's report. It is therefore critical for Pentron to examine the extent to which the opinion of Dr. Storace [\*15] may have been based on or influenced by Roger Devaney's earlier tests and/or experiments." (Doc. No. 184, Jeneric/Pentron's Reply Brief in Support of Motion to Compel ("Def. Reply MOL"), at 7.)

While Jeneric/Pentron correctly points out that a non-testifying expert, who "is generally immune from discovery[,]" *Schwab, 2006 U.S. Dist. LEXIS 11047, 2006 WL 721368, at \*2*, may be subject to the disclosure requirements of *Rule 26(a)(2)(B)* if the non-testifying expert's opinion or knowledge informed the testifying expert's opinion, see *2006 U.S. Dist. LEXIS 11047, [WL] at \*3*, here, the alleged influence of Mr. Devaney on Dr. Storace's opinion and report is speculative. None of the cases cited by Jeneric/Pentron stand for the proposition that documents not seen, considered nor known about by a testifying expert need be disclosed where such documents are otherwise privileged. There is no indication that Roger Devaney's earlier tests or experiments influenced the preparation and photography of Jeneric/Pentron's posts discussed in Dr. Storace's report. Instead, the record reflects that Dr. Storace provided Mr. Devaney with detailed instructions regarding how he wanted the tests to be conducted and how the posts were to be photographed. [\*16] There is no indication that Mr. Devaney deviated from these instructions.

With respect to the third factor in determining if there has been an "at issue" waiver -- whether application of the work product privilege will deny defendants access to information vital to their defense -- the Court is not convinced that nondisclosure of the protected documents will deprive defendants of such "vital" information. As previously mentioned, although the documents themselves are privileged, the underlying facts contained

2006 U.S. Dist. LEXIS 29813, *

therein are not, and thus, Jeneric/Pentron may avail itself of other discovery devices to obtain those facts. See *Atlantic Richfield, 1997 U.S. Dist. LEXIS 13082, 1997 WL 538876, at *3.*

Accordingly, the Court does not find that the record before this Court requires plaintiffs to produce documents protected by the work product privilege. To the extent Jeneric/Pentron has not received any Hi-Rel documents related to Dr. Storace's requested tests, all such documents shall be produced within one week of the date of this order. Of course, if plaintiffs intend to rely on the protected documents, they shall be timely provided to all parties. At present, however, plaintiffs have not indicated that [*17] they will rely on the documents they now claim are privileged.

**D. Admissibility of Evidence**

The parties also dispute the admissibility of certain evidence which may be proffered at trial, including but not limited to Dr. Storace's report. (See Def. Reply MOL, at 2-5; Doc. No. 187, Plaintiffs' Sur-Reply Brief in Opposition to Motion to Compel, at 1-7.) The Court declines to make any determination as to the admissibility of evidence at trial at this stage in the litigation. The parties may make any motions regarding the admissibility of evidence at trial before the trial court at the appropriate time.

**CONCLUSION**

For the foregoing reasons, Jeneric/Pentron's motion to compel is denied without prejudice.

**SO ORDERED.**
Dated: May 16, 2006

Brooklyn, New York

/s/

KIYO A. MATSUMOTO

United States Magistrate Judge