IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| BRIDGESTONE SPORTS CO., LTD. and BRIDGESTONE GOLF, INC., <br><br> Plaintiffs, <br><br> v. <br><br> ACUSHNET COMPANY, <br><br> Defendant. | ) ) ) ) ) ) ) ) ) ) ) ) | C.A. No. 05-132 (JJF) <br><br> **REDACTED – PUBLIC VERSION** |

**BRIDGESTONE'S ANSWERING BRIEF IN OPPOSITION TO ACUSHNET'S MOTION FOR SUMMARY JUDGMENT OF <u>NON-INFRINGEMENT OF U.S. PATENT NO. 5,743,817</u>**

MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Jack B. Blumenfeld (#1014)
Leslie A. Polizoti (#4299)
1201 N. Market St.
P.O. Box 1347
Wilmington, DE 19801
(302) 658-9200

*Attorneys for Bridgestone Sports Co., Ltd.
and Bridgestone Golf, Inc.*

OF COUNSEL:
Robert M. Masters
Scott M. Flicker
PAUL, HASTINGS, JANOFSKY & WALKER LLP
875 15th St., N.W.
Washington, DC 20005
(202) 551-1700

Original Filing Date:  April 30, 2007
Redacted Filing Date:  May 7, 2007

# TABLE OF CONTENTS

| | Page |
|---|---|
| TABLE OF AUTHORITIES | iii |
| NATURE AND STAGE OF THE PROCEEDINGS | 1 |
| SUMMARY OF ARGUMENT | 1 |
| STATEMENT OF FACTS | 2 |
|     I. THERE ARE OUTSTANDING CLAIM CONSTRUCTION ISSUES RELEVANT TO ACUSHNET'S INFRINGEMENT OF THE '817 PATENT | 2 |
|     II. BRIDGESTONE'S EXPERTS' REPORTS AND DEPOSITIONS AND ACUSHNET'S DOCUMENTS AND ADMISSIONS PROVE THAT ACUSHNET'S GOLF BALLS INFRINGE CLAIM 1 OF THE '817 PATENT | 2 |
|         A. Core Distortion Under A 100 kg Load | 3 |
|         B. Finished Golf Ball Cover Composition | 4 |
|         C. Cover Thickness | 4 |
|         D. Cover Hardness | 4 |
| ARGUMENT | 6 |
|     I. APPLICABLE LAW | 6 |
|         A. Summary Judgment | 6 |
|         B. Patent Infringement | 6 |
|     II. ACUSHNET'S MOTION IS BASED ON AN INCORRECT AND FLAWED INTERPRETATION OF DR. CAULFIELD'S 100 KG COMPRESSION DATA | 7 |
|     III. THE COVERS OF THE ACCUSED ACUSHNET GOLF BALLS CONSIST OF AN IONOMER RESIN AS A RESIN COMPONENT | 9 |
|         A. The DT So/Lo, PTS So/Lo and Pinnacle Exception Golf Balls | 10 |

|   |   |   |   |
|---|---|---|---|
|   | B. | The ◀NXT•Tour▶, ◀NXT Tour▶, ◀NXT-Tour▶ And The Exception Golf Balls | 11 |
| IV. | | THERE ARE MATERIAL FACTS IN DISPUTE RELATED TO THE COVER THICKNESS OF THE ACCUSED ACUSHNET GOLF BALLS THAT PREVENT THE GRANT OF SUMMARY JUDGMENT IN ACUSHNET'S FAVOR | 12 |
| V. | | THERE ARE MATERIAL FACTS IN DISPUTE RELATED TO THE COVER HARDNESS OF THE ACCUSED ACUSHNET GOLF BALLS | 13 |

CONCLUSION ............ 15

# TABLE OF AUTHORITIES

Page

**CASES**

*Adickes v S. H. Kress & Co.*,
  398 U.S. 144 (1970)......................................................................................................6

*Anderson v. Liberty Lobby, Inc.*,
  477 U.S. 242 (1986)......................................................................................................6

*ArthroCare Corp. v Smith & Nephew, Inc.*,
  310 F. Supp. 2d 638 (D. Del. 2004)..............................................................................7

*Coolspring Stone Supply v. American States Life Ins. Co.*,
  10 F.3d 144 (3d Cir. 1993)............................................................................................6

*Hilgraeve Corp. v. Symantec Corp.*,
  265 F.3d 1336 (Fed. Cir. 2001).....................................................................................7

*Manetas v. Int'l Petroleum Carriers, Inc.*,
  541 F.2d 408 (3d Cir. 1976)..........................................................................................6

*Pitney Bowes, Inc. v. Hewlett-Packard Co.*,
  182 F.3d 1298 (Fed. Cir. 1999).....................................................................................7

*Trinsey v. Pagliaro*,
  229 F. Supp. 647 (E.D. Pa. 1964).................................................................................6

**OTHER AUTHORITIES**

Fed. R. Civ. P. 56(c) ...........................................................................................................6

Rule 30(b)(6).................................................................................................................5, 14

NATURE AND STAGE OF THE PROCEEDINGS

This is a patent infringement action brought by Plaintiffs Bridgestone Sports Co., Ltd. and Bridgestone Golf, Inc. ("Bridgestone") against Defendant Acushnet Company ("Acushnet") in March 2005. Bridgestone is currently asserting claims from seven patents against various Acushnet golf balls. Fact discovery closed on October 10, 2006. A *Markman* hearing was held on November 29. Expert discovery closed on March 30, 2007. The pre-trial conference is scheduled for May 25, 2007 and trial is scheduled to begin on June 18.

Acushnet filed a nine motions for summary judgment. This is Bridgestone's answering brief in opposition to Acushnet's motion for summary judgment of non-infringement of U.S. Patent No. 5,743,817 (D.I. 360).

SUMMARY OF ARGUMENT

Acushnet's motion should be denied. Edward M. Caulfield, Ph.D., P.E. tested the physical properties of the accused Acushnet golf balls. Dr. E. Bryan Coughlin, a polymer science and engineering professor at the University of Massachusetts, studied the cover compositions of the accused Acushnet golf balls and offered his expert opinion as to their composition vis-à-vis claim 1 of the '817 patent. Mr. Larry Cadorniga – with 30 years' experience in the design, development and manufacture of golf balls – concluded from his review of the reports of Dr. Caulfield and Dr. Coughlin, the Acushnet documents (at least the ones produced prior to the exchange of expert reports) and from his experience in the golf ball industry, that the accused Acushnet golf balls infringe claim 1 of the '817 patent.

Whether the accused Acushnet golf balls infringe claim 1 of the '817 patent is a factual inquiry dependent in large part on the credibility of the parties' experts

who have offered, in many instances, diametrically-opposed opinions. Deciding who is correct is a factual inquiry that requires evaluation of not just each witness' expertise, knowledge and analysis, the evidence relied upon, but also their credibility. With such genuine issues of fact in dispute, summary judgment is improper, and Acushnet's motion should be denied.

## STATEMENT OF FACTS

### I. THERE ARE OUTSTANDING CLAIM CONSTRUCTION ISSUES RELEVANT TO ACUSHNET'S INFRINGEMENT OF THE '817 PATENT

The Court held a *Markman* hearing on November 29, 2006 (*see* D.I. 254). One of the claim terms the parties asked the Court to construe is the "said cover consists of an ionomer resin as a resin component" term from Bridgestone's '817 patent (D.I. 229). The Court has not yet issued a claim construction ruling.

### II. BRIDGESTONE'S EXPERTS' REPORTS AND DEPOSITIONS AND ACUSHNET'S DOCUMENTS AND ADMISSIONS PROVE THAT ACUSHNET'S GOLF BALLS INFRINGE CLAIM 1 OF THE '817 PATENT

Three of Bridgestone's experts have prepared reports and have offered deposition testimony. Dr. Caulfield evaluated the physical properties of the accused golf balls and prepared a detailed report, including written testing protocols, summary charts and all of the raw data (*see* Ex. 1 at Tab A, Caulfield Decl.). Dr. Coughlin reviewed the cover formulations for the accused Acushnet golf balls and opined on the chemical composition of the finished golf ball cover vis-à-vis the relevant elements of the '817 patent (*see* Ex. 2 at 23-24, Coughlin Rep). Mr. Cadorniga, with 30 years' experience in the golf industry, reviewed both the Coughlin and Caulfield reports and the Acushnet

3

documents and, along with his experience and knowledge, prepared a detailed report showing how each element of the '817 patent can be found in the accused golf balls (*see* Ex. 3, Cadorniga Rep.). Acushnet deposed each of these experts. Their opinion concerning the limitations of claim 1 of the '817 patent are briefly summarized below.

    A.    <u>Core Distortion Under A 100 kg Load</u>

Acushnet admitted in response to Bridgestone's Requests for Admission that the ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ ▇▇▇▇▇▇▇▇▇▇▇▇▇▇

As for the remaining accused golf balls (the DT So/Lo, NXT and Pinnacle Exception golf balls), Dr. Caulfield's distortion data (summarized below) places the core distortion under a 100 kg load squarely within the claimed range of "2.9 to 4.0 mm" (*see* Ex. 1 at Ex-15, Caulfield Decl.).



Dr. Caulfield's opening expert report provides these values at Ex-15 and he has confirmed in his declaration that these values are accurate and correct (Ex. 1 at para. 6, Caulfield Decl.).

B.  Finished Golf Ball Cover Composition

The accused golf balls have a cover wherein "said cover consists of an ionomer resin as a resin component." Dr. Coughlin offered this opinion in his report (Ex. 2 at 23-24, Coughlin Rep.) and confirmed it during his deposition (Ex. 5 at 146:5-15, Coughlin Dep.). Mr. Cadorniga agreed in his report (Ex. 3 at D-12 to D-15, Cadorniga Rep.). The ionomer resin claim element is literally present in each of the accused Acushnet golf balls.

C.  Cover Thickness

Acushnet's documents specify that the cover thickness for the NXT Tour and NXT Tour golf balls is 1.18 mm.[1] Acushnet does not dispute these values. Mr. Cadorniga has opined that these balls infringe claim 1 of the '817 patent. To the extent this limitation is not literally present in the NXT Tour golf balls, Mr. Cadorniga has testified that it is his opinion that that this element is present under the doctrine of equivalents (Ex. 6 at 355: 8-13, Cadorniga Dep.; *see also* Ex. 3 at D-15 to D-18, Cadorniga Rep.).

D.  Cover Hardness

Acushnet <u>admitted</u> in response Bridgestone's Requests for Admission that

███████████████████████████████████████████████████

---

[1]  Acushnet has not challenged Dr. Caulfield's cover thickness data or Mr. Cadorniga's testimony with respect to the remaining accused Acushnet golf balls.

5



These are the same documents that Acushnet's Rule 30(b)(6) witness, Mr. Jeffrey Dalton, identified as the most reliable source to determine the properties of the accused golf balls (Ex. 8 at 673:2-17, Dalton Tr. (July 27, 2006)):



## ARGUMENT

I.  **APPLICABLE LAW**

   A.  Summary Judgment

Summary judgment should be granted only when no "reasonable jury could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); Fed. R. Civ. P. 56(c). A non-moving party may rely on, *inter alia*, depositions to show that there is a material fact in dispute. Fed. R. Civ. P. 56(c). Further, "[s]ummary judgment is inappropriate when a case will turn on credibility determinations." *Coolspring Stone Supply v. American States Life Ins. Co.*, 10 F.3d 144, 148 (3d Cir. 1993).

The party moving for summary judgment has the burden of showing absence of genuine issue of material fact; therefore, all evidence and inferences must be viewed in the light most favorable to opposing party. *Adickes v S. H. Kress & Co.*, 398 U.S. 144 (1970). "Statements of counsel in their briefs or argument while enlightening to the Court are not sufficient for purposes of granting a motion to dismiss or summary judgment." *Trinsey v. Pagliaro*, 229 F. Supp. 647, 649 (E.D. Pa. 1964). A court should not make factual determinations as to merits of a claim based on an evaluation of conflicting depositions, because documents filed in support of motions for summary judgment are to be used to determine whether issues of fact exist, not to decide fact issues themselves. *Manetas v. Int'l Petroleum Carriers, Inc.*, 541 F.2d 408, 414 (3d Cir. 1976).

   B.  Patent Infringement

Patent infringement analysis consists of two steps: first, claim construction, where the meaning and scope of patent claims are determined; the second

step entails proving infringement by comparing properly construed claims to device accused of infringing. *Pitney Bowes, Inc. v. Hewlett-Packard Co.*, 182 F.3d 1298, 1304 (Fed. Cir. 1999). The patent owner has burden of proving direct infringement. *ArthroCare Corp. v Smith & Nephew, Inc.*, 310 F. Supp. 2d 638 (D. Del. 2004). Summary judgment on the issue of infringement is inappropriate where there are conflicting expert opinions. *Hilgraeve Corp. v. Symantec Corp.*, 265 F.3d 1336, 1343-44 (Fed. Cir. 2001). Summary judgment of non-infringement can only be granted if, after viewing the alleged facts in the light most favorable to the non-movant, there is no genuine issue whether the accused device is encompassed by the claims.

II. ACUSHNET'S MOTION IS BASED ON AN INCORRECT AND FLAWED INTERPRETATION OF DR. CAULFIELD'S 100 KG COMPRESSION DATA

For the NXT Tour balls, Acushnet argues that "Caulfield's raw core distortion data for the [NXT Tour] golf balls are outside the [claimed range] (D.I. 361 at 7). ███████████████████████████

As to the remaining accused golf balls (the DT So/Lo, NXT and Pinnacle Exception golf balls), Dr. Caulfield's distortion data (summarized below) places the core distortion under a 100 kg load squarely within the claimed range of "2.9 to 4.0 mm" (*see*

---

2   Acushnet has moved to withdraw this admission. That motion is pending before Special Master Bechtle. Acushnet does not, however, even acknowledge its admission, acting as if its motion has already been granted.

Ex. 1 at para. 6, Caulfield Decl.).



Dr. Caulfield's opening expert report provides these values at Ex-15 and he has confirmed in his declaration that these values are accurate and correct (Ex. 1, Caulfield Decl.). Acushnet does not dispute that Dr. Caulfield's data is reported as within "2.9 to 4.0 mm" (D.I. 361 at 14-16). Instead, Acushnet argues that "the actual test data they acquired shows that to be untrue" (*id.* at 14), and that both Dr. Caulfield and Mr. Jones have (repeatedly, apparently) misinterpreted their own raw data and that the core distortion is actually greater than 5 mm (*id.*). Acushnet is simply mistaken.

Bridgestone can only speculate as to how Acushnet is interpreting the raw data from Dr. Caulfield's 100 kg distortion tests, but however it is interpreting it, it is wrong. The 100 kg distortion values reported in Ex-15 to Dr. Caulfield's opening expert report are the correct values (Ex. 1 at para. 6-8, Caulfield Decl.). No golf ball tested by Dr. Caulfield had a distortion under a 100 kg load of 5 mm or more, as Acushnet contends.

Acushnet's misinterpretation of the raw data from the 100 kg distortion tests is surprising. Acushnet says that it "raised this issue…in its motion to preclude," and complains that "Bridgestone's only response was that 'Acushnet's assertions are based on what appears to be a misunderstanding of the data'" (D.I. 361 at 15). Despite

this, Acushnet still did not even ask either Dr. Caulfield or Mr. Jones, a project manager at Packer Engineering, how to "understand" the data. Acushnet did not ask these two witnesses questions about how to interpret the raw data during these two days of deposition. Acushnet's misunderstanding does not entitle it to summary judgment.

Nor does Acushnet look to the detailed, written testing protocol for conducting these tests included in Dr. Caulfield's report (Ex. 1 at para. 7, Caulfield Decl.). Unlike with Acushnet's in-house testing, Dr. Caulfield's report included protocols for the tests he performed. These, too, are ignored by Acushnet.

The 100 kg distortion numbers provided by Dr. Caulfield are correct; Acushnet's interpretation of Dr. Caulfield's raw data is not. Dr. Caulfield's testing supports Bridgestone's position. The only "unsubstantiated disagreement" (D.I. 361 at 15) is Acushnet's assertion that Bridgestone's experts misread their own data – which is just naked attorney argument.

### III. THE COVERS OF THE ACCUSED ACUSHNET GOLF BALLS CONSIST OF AN IONOMER RESIN AS A RESIN COMPONENT

Claim 1 of the '817 patent recites a golf ball wherein "said cover consists of an ionomer resin as a resin component." The accused golf balls have such a cover. Dr. Coughlin offered this opinion in his report (Ex. 2 at 23-24, Coughlin Rep.) and confirmed these opinions during his deposition (Ex. 5 at 146:5-15, Coughlin Dep.). Mr. Cadorniga agreed in his report (Ex. 3 at D-12 to D-15, Cadorniga Rep.). The ionomer resin claim element is literally present in each of the accused Acushnet golf balls.

Acushnet's position is that there can be only one ionomer resin in the golf ball cover. Bridgestone believes the claim requires what it says – that the resin

component of the finished golf ball cover is an ionomer resin. Under either construction, however, there is a genuine issue of material fact. Because claim 1 recites a "golf ball," Bridgestone's experts opined that it is appropriate to look at the finished golf ball, not its raw materials. In the finished golf ball at issue, there is only one ionomer resin in the finished golf ball cover.

      A.      The DT So/Lo, PTS So/Lo and Pinnacle Exception Golf Balls

The only resin component in the basic formulation of these golf balls is a ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬ When combined in the manufacture of a golf ball, the two grades of ionomer resins form "an ionomer resin."

Claim 1 of the '817 patent recites "a golf ball." This is an article of manufacture claim – it is not a method claim, it is not a "recipe" claim, it is not a process claim. The infringing product is the *finished* golf ball, not the golf ball in its inchoate stages. Acushnet improperly looks to the raw materials that go into the cover – ▬▬▬▬▬▬▬▬▬▬▬ – as being dispositive (D.I. 361 at 17-19). Far from being dispositive, this analysis is irrelevant. In the finished golf ball, ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬



Acushnet has offered <u>no</u> evidence to rebut the testimony of Dr. Coughlin (*see* D.I. 361 at 17-19). Acushnet's disagreement with these experts is rooted solely in attorney argument and is insufficient to establish that Acushnet is entitled to summary judgment.

There are material facts in dispute here: the parties dispute whether two commercial grades of Surlyn, when mixed and used to form a golf ball cover, result in a finished golf ball having a cover comprising "an ionomer resin as a resin component."

      B.    The ◄NXT·Tour►, ◄NXT Tour►, ◄NXT-Tour► And The Exception Golf Balls

For the NXT Tour and Exception golf balls, the cover of the finished golf ball has an ionomer resin as a resin component, as Dr. Coughlin testified during his deposition (Ex. 5 at 146:5-13, Coughlin Dep.; *see also* Ex. 2 at 23-24, Coughlin Rep.; Ex. 3 at D-12 to D-15, Cadorniga Rep.).

Just as before, Acushnet's analysis focuses on the raw materials, not on the claimed subject matter – a finished golf ball. Dr. Coughlin has offered a detailed opinion as to the complex chemistry at issue here. ███████████████



IV. **THERE ARE MATERIAL FACTS IN DISPUTE RELATED TO THE COVER THICKNESS OF THE ACCUSED ACUSHNET GOLF BALLS THAT PREVENT THE GRANT OF SUMMARY JUDGMENT IN ACUSHNET'S FAVOR**

███████████████ Acushnet does not dispute these values. Mr. Cadorniga has opined that these balls infringe claim 1 of the '817 patent. To the extent this limitation is not literally present in the NXT Tour golf balls, Mr. Cadorniga has testified that it is his opinion that that this element is present under the doctrine of

---

3      Acushnet has not challenged Dr. Caulfield's cover thickness data or Mr. Cadorniga's opinion with respect to the remaining accused Acushnet golf balls.

equivalents (Ex. 6 at 355:8-13, Cadorniga Dep.; *see also* Ex. 3 at D-15 to D-18, Cadorniga Rep.). The difference of about 0.00393 inches – roughly the thickness of a human hair – is, according to Mr. Cadorniga's testimony, an insubstantial change in cover thickness and is less than the tolerance for cover thickness Acushnet allows during the manufacture of its golf balls (*id.*). Based on his 30 years of experience in the golf ball industry, Mr. Cadorniga opined that such an minor, insubstantial change would not affect the performance of the golf ball. Accordingly, the cover performs the same function, in the same way, to achieve the same result, and this limitation is met under the doctrine of equivalent.

Infringement here is a highly factual inquiry. Bridgestone and its experts believe that the covers of the accused golf balls satisfy the "1.3 to 1.8 mm" cover thickness limitation literally, and if not literally, under the doctrine of equivalents. Acushnet disagrees. These are, at the very least, genuine issues of material facts in dispute.

### V. THERE ARE MATERIAL FACTS IN DISPUTE RELATED TO THE COVER HARDNESS OF THE ACCUSED ACUSHNET GOLF BALLS

Acushnet <u>admitted</u> in response to Bridgestone's Requests for Admission ▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Yet, Acushnet now inexplicably tells the Court that there is no dispute of material fact as to the cover hardness limitation recited in claim 1 of the '817 patent (D.I. 361 at 21-22). Acushnet's admissions alone prevent it from meeting its burden of establishing that it is entitled to summary judgment.

▮▮▮▮▮▮▮▮▮▮▮▮▮▮

███████████████████████████████████████████
███████████████████████████████████████████
████████████████████████████ Acushnet ignores its own documents and the full-page table in Mr. Cadorniga's report listing the cover hardness of the accused golf balls. ██████████████████████████████████████
████████████████████████████████████ Acushnet ignores these documents, even though they are the same ones that Acushnet's Rule 30(b)(6) witness, Mr. Dalton, identified as the most reliable source to determine the properties of the accused golf balls (Ex. 8 at 673:2-17, Dalton Tr. (July 27, 2006)).

There are disputes as to material facts. Acushnet admitted that its NXT Tour golf balls ███████████████████████████ Acushnet's own documents – the very documents Acushnet corporate representative identified as the "most reliable" sources for finding the properties of Acushnet's golf balls ██████
███████████████████████████████████████████
██████████████████████████

## CONCLUSION

Bridgestone requests that the Court deny Acushnet's motion for summary judgment of non-infringement of Bridgestone's '817 patent.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

/s/ *Leslie A. Polizoti (#4299)*
Jack B. Blumenfeld (#1014)
Leslie A. Polizoti (#4299)
1201 N. Market St.
P.O. Box 1347
Wilmington, DE 19801
(302) 658-9200
*Attorneys for Bridgestone Sports Co., Ltd.*
*and Bridgestone Golf, Inc.*

OF COUNSEL:
Robert M. Masters
Scott M. Flicker
PAUL, HASTINGS, JANOFSKY &
WALKER LLP
875 15th St., N.W.
Washington, DC 20005
(202) 551-1700

April 30, 2007
814395

CERTIFICATE OF SERVICE

I certify that on May 7, 2007 I electronically filed the foregoing with the Clerk of the Court using CM/ECF, which will send notification of such filing(s) to the following:

> Richard L. Horwitz, Esquire
> POTTER ANDERSON & CORROON LLP
> Hercules Plaza, 6th Floor
> 1313 North Market Street
> Wilmington, DE 19801

I further certify that I caused copies to be served upon the following on May 7, 2007 in the manner indicated:

**BY HAND & E-MAIL**

> Richard L. Horwitz, Esquire
> POTTER ANDERSON & CORROON LLP
> 1313 N. Market Street
> Wilmington, DE 19801

**BY E-MAIL and FEDERAL EXPRESS**

> Joseph P. Lavelle, Esquire
> HOWREY LLP
> 1299 Pennsylvania Avenue, NW
> Washington, DC 20004

> /s/ Leslie A. Polizoti
> Leslie A. Polizoti (#4299)
> MORRIS, NICHOLS, ARSHT & TUNNELL LLP
> Wilmington, DE 19801
> (302) 658-9200
> lpolizoti@mnat.com