IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| BRIDGESTONE SPORTS CO., LTD., and BRIDGESTONE GOLF, INC., <br><br> Plaintiffs, <br><br> v. <br><br> ACUSHNET COMPANY, <br><br> Defendant. | ) ) ) ) ) ) ) ) ) ) ) ) | C.A. No. 05-132 (JJF) <br><br> **REDACTED –** <br> **PUBLIC VERSION** |

# BRIDGESTONE'S ANSWERING BRIEF IN OPPOSITION TO ACUSHNET'S MOTION FOR SUMMARY JUDGMENT OF INVALIDITY AND NON-INFRINGEMENT OF U.S. PATENT NO. 5,803,834

MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Jack B. Blumenfeld (#1014)
Leslie A. Polizoti (#4299)
1201 N. Market St.
P.O. Box 1347
Wilmington, DE 19801
(302) 658-9200

*Attorneys for Bridgestone Sports Co., Ltd.
and Bridgestone Golf, Inc.*

OF COUNSEL:
Robert M. Masters
Scott M. Flicker
PAUL, HASTINGS, JANOFSKY & WALKER LLP
875 15th St., N.W.
Washington, DC 20005
(202) 551-1700

Original Filing Date: April 30, 2007
Redacted Filing Date: May 7, 2007

TABLE OF CONTENTS

| | Page |
|---|---|
| NATURE AND STAGE OF THE PROCEEDINGS | 1 |
| SUMMARY OF ARGUMENT | 1 |
| STATEMENT OF FACTS | 2 |
| I. ACUSHNET HAS NOT PROPERLY IDENTIFIED THIS NEWLY-ASSERTED DEFENSE | 2 |
| II. ACUSHNET'S OFFERS NO EXPERT TESTIMONY TO SUPPORT ITS INDEFINITENESS DEFENSE | 3 |
| III. DR. CAULFIELD'S TESTING OF THE "HARDNESS WITHIN 5 MM INSIDE THE CORE SURFACE" IS PROPER AND SUPPORTS MR. CADORNIGA'S INFRINGEMENT OPINION | 4 |
| ARGUMENT | 5 |
| I. APPLICABLE LAW | 5 |
|     A. Summary Judgment | 5 |
|     B. Claim Definiteness Under 35 U.S.C. § 112, para. 2 | 5 |
|     C. Patent Infringement | 7 |
| II. ACUSHNET IS NOT ENTITLED TO SUMMARY JUDGMENT THAT CLAIM 1 OF THE '834 PATENT IS INDEFINITE | 8 |
|     A. Acushnet's New Invalidity Position Was Never Identified In Its Discovery Responses | 8 |
|     B. No Acushnet Expert Has Offered An Opinion As To The Definiteness Of The '834 Patent | 9 |
|     C. Acushnet Applies an Incorrect Standard for Indefiniteness | 10 |
|     D. Claim 1 of the '834 Patent is Definite | 11 |
| III. ACUSHNET IS NOT ENTITLED TO SUMMARY JUDGMENT THAT ITS GOLF BALLS DO NOT INFRINGE CLAIM 1 OF THE '834 PATENT | 12 |
| CONCLUSION | 15 |

# TABLE OF AUTHORITIES

Page

**CASES**

*Adickes v S. H. Kress & Co.*,
   398 U.S. 144 (1970)..................................................................................................5

*Amgen Inc. v. Hoechst Marion Roussel, Inc.*,
   314 F.3d 1313 (Fed. Cir. 2003)................................................................................10

*Amhil Enters. v. Wawa, Inc.*,
   81 F.3d 1554 (Fed. Cir. 1996)....................................................................................7

*Anderson v. Liberty Lobby, Inc.*,
   477 U.S. 242 (1986)..................................................................................................5

*Coolspring Stone Supply v. American States Life Ins. Co.*,
   10 F.3d 144 (3d Cir. 1993).........................................................................................5

*E.I. DuPont de Nemours & Co. v. Millennium Chems., Inc.*,
   C.A. No. 97-237 (SLR), 1999 U.S. Dist. LEXIS 12447 (D. Del. Aug. 2, 1999) ........6, 7, 9

*Exxon Research & Eng'g Co. v. United States*,
   265 F.3d 1371 (Fed. Cir. 2001)..............................................................................6, 9

*Hilgraeve Corp. v. Symantec Corp.*,
   265 F.3d 1336 (Fed. Cir. 2001)..................................................................................7

*In re Moore*,
   58 C.C.P.A. 1042, 439 F.2d 1232 (C.C.P.A. 1971)....................................................6

*Invitrogen Corp. v. Biocrest Mfg., L.P.*,
   424 F.3d 1374 (Fed. Cir. 2005)................................................................................11

*Manetas v. International Petroleum Carriers, Inc.*,
   541 F.2d 408 (3d Cir. 1976).......................................................................................5

*Marley Mouldings Ltd. V. Mikron Industries, Inc.*,
   417 F.3d 1356 (Fed. Cir. 2005..........................................................................11, 12

*Miles Lab., Inc. v. Shandon*,
   997 F.2d 870 (Fed. Cir. 1993)....................................................................................6

*Nat'l Recovery Techs. V. Magnetic Separation Sys., Inc.*,
   166 F.3d at 1195.....................................................................................................5, 9

*Pitney Bowes, Inc. v. Hewlett-Packard Co.*,
    182 F.3d 1298 (Fed. Cir. 1999) ............................................................................................. 7

*SmithKline Beecham Corp. v. Apotex Corp.*,
    403 F.3d 1331 (Fed. Cir. 2005) ........................................................................................... 11

*Union Pac. Res. Co. v. Chesapeake Energy Corp.*,
    236 F.3d 684 (Fed. Cir. 2001) .............................................................................................. 6

*Wang Lab., Inc. v. Toshiba Corp.*,
    993 F.2d 858 (Fed. Cir. 1993) ........................................................................................... 6, 9

**STATUTES**

35 U.S.C. § 112 ................................................................................................................... *passim*

**OTHER AUTHORITIES**

Fed. R. Civ. P. 56(c) ................................................................................................................... 5

## NATURE AND STAGE OF THE PROCEEDINGS

This is a patent infringement action brought by Plaintiffs Bridgestone Sports Co., Ltd. and Bridgestone Golf, Inc. ("Bridgestone") against Defendant Acushnet Company ("Acushnet") in March 2005. Bridgestone is currently asserting claims from seven patents against various Acushnet products.

Acushnet filed a total of nine motions for summary judgment. This is Bridgestone's answering brief in opposition to Acushnet's motion for summary judgment of invalidity and non-infringement of U.S. patent no. 5,803,834 (D.I. 376).

## SUMMARY OF ARGUMENT

Acushnet never previously asserted invalidity under 35 U.S.C. § 112, para. 2 based on the supposed indefiniteness of the "within 5 mm inside the core surface" element of claim 1 of the '834 patent as a defense. In fact, the parties agreed to a construction of this phrase, and Acushnet never raised the issue that this language was somehow indefinite. Acushnet should therefore be precluded from asserting this new defense, consistent with the Court's previous preclusion rulings. In any event, the defense has no merit.

Further, Acushnet has offered no expert testimony on this issue, and plainly ignores relevant Federal Circuit precedent. Acushnet cannot meet its clear and convincing burden of proof necessary to overcome the '834 patent's statutory presumption of validity. Acushnet's motion should be denied.

In particular, the parties dispute whether certain testing performed by Edward M. Caulfield, Ph.D., P.E. (an independent expert retained to test the properties of Acushnet's golf balls who has been previously qualified as an expert in this Court) is sufficient to show that "a hardness within 5 mm inside the core surface is up to 8 degrees lower than the surface hardness." Bridgestone offers the opinions and testimony of Dr. Caulfield and Larry Cadorniga (an expert

2

on the issue of the infringement of the '834 patent) in support of its infringement position; Acushnet advances attorney argument to say that it is not. Although Acushnet's position is ultimately without merit, there are, at the very least, disputes as to material facts as well as conflicting expert positions that prevent Acushnet from proving that it is entitled to summary judgment.

## STATEMENT OF FACTS

### I. ACUSHNET HAS NOT PROPERLY IDENTIFIED THIS NEWLY-ASSERTED DEFENSE

Acushnet asserts – for the first time in its motion – that claim 1 of the '834 patent is invalid as indefinite under 35 U.S.C. § 112, para. 2. Acushnet is, yet again, relying on untimely-asserted invalidity positions.

In its December 18, 2006 supplemental response to Bridgestone's Interrogatory No. 4, Acushnet gave two reasons why it contended that claim 1 was invalid under 35 U.S.C. § 112:



(Ex. 1, Acushnet's Sixth Supp. Resp. to Bridgestone First Set of Interrog. Directed to Acushnet (Nos. 1-24) at A-125). Acushnet <u>never</u> previously contended the claim limitation "a hardness within 5 mm inside the core surface is up to 8 degrees lower than the surface hardness" is indefinite under 35 U.S.C. § 112, para. 2.

II.  ACUSHNET OFFERS NO EXPERT TESTIMONY TO SUPPORT ITS INDEFINITENESS DEFENSE

Dr. Felker has offered no opinion regarding the supposed indefiniteness of claim 1 of the '834 patent (*see* Ex. 2, Felker Rpt. at 51-56). The lack of expert opinion or testimony on the issue of compliance with Section 112, para. 2 forms the basis for Acushnet's motion for summary judgment with respect to three of the Acushnet patents-in-suit (the Lynch patents) (D.I. 358). Yet, in that brief, Acushnet's arguments directly contradict the positions taken here – that failure to present expert testimony on an issue for which a party bears the burden of proof is fatal (*id.*).

Even if Dr. Felker were to offer testimony at trial regarding the definiteness of claim 1 of the '834 patent, he is not a competent expert on this topic.[1] His experience in the golf industry is limited to less than 4 years at Callaway Golf as a management-level executive; his experience in manufacture and design is limited, at best (*see* Ex. 2, Felker Rpt. at Tab 1 at p. 2). Prior to December 1996, Dr. Felker had <u>no</u> experience in the golf industry (*id.*). In fact, his experience is so limited that he fails to qualify as one of <u>ordinary</u> skill in the art under his own standard (*see id.* at 3 ("In my opinion, one of ordinary skill in the art at the relevant time period for each of the Bridgestone patents I address would have had a B.S. in chemistry or an equivalent discipline with <u>five or more years of experience in the golf ball manufacturing field</u>.") (emphasis added)).

---

[1] At present, Bridgestone intends to file a *Daubert* motion to limit the scope of Dr. Felker's testimony at trial.

III.  DR. CAULFIELD'S TESTING OF THE "HARDNESS WITHIN 5 MM INSIDE THE CORE SURFACE" IS PROPER AND SUPPORTS MR. CADORNIGA'S INFRINGEMENT OPINION

Dr. Caulfield conducted testing of the accused golf balls, including the "hardness within 5 mm inside the core surface" (*see* Ex. 3, Caulfield Rpt. at 11 at Ex-9 (testing protocol) and at Ex-18 (result summary)). Dr. Caulfield has extensive experience testing the properties of materials, including the hardness of cured polymers, such as the golf ball cores at issue (*see* Ex. 4, Caulfield Dep. Tr. at 33-44). Mr. Cadorniga, with 30 years of experience in the design, development and manufacture of golf balls (Ex. 5, Cadorniga Rpt. at 2),[2] assisted Dr. Caulfield in arriving at the protocols to test for the "hardness within 5 mm inside the core surface" (Ex. 4, Caulfield Dep. Tr. at 25:6-20).

Mr. Cadorniga relied on this testing to show that the accused golf balls infringe claim 1 of the '834 patent (Ex. 5, Cadorniga Rpt. at Ex. F). In his report, he referred to the agreed-upon definition of the language "hardness within 5 mm inside the core surface" as "the hardness of each point within the region of the core which radially extends for the surface to a depth of 5 mm in cross section" (*id.* at Ex. F-2; *see also* joint claim construction statement (D.I. 228)). Mr. Cadorniga then opined:



---

[2] During his deposition, Mr. Cadorniga confirmed that the report contains his opinions (Ex. 6 at 15:15-17, Cadorniga Dep.).

███████████████████████████████

(Ex. 5, Cadorniga Rpt. at Ex. F-2). Thus, two independent experts – true experts in their respective fields – have opined that this data is accurate, proper and shows infringement.

## ARGUMENT

I. **APPLICABLE LAW**

A. <u>Summary Judgment</u>

Summary judgment should be granted only when no "reasonable jury could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); Fed. R. Civ. P. 56(c). A non-moving party may rely on, *inter alia*, depositions to show that there is a material fact in dispute. Fed. R. Civ. P. 56(c). Further, summary judgment is inappropriate where the case turns on credibility determinations. *Coolspring Stone Supply v. American States Life Ins. Co.*, 10 F.3d 144 (3d Cir. 1993).

The party moving for summary judgment has the burden of showing the absence of a genuine issue of material fact; therefore, all evidence and inferences must be viewed in light most favorable to the opposing party. *Adickes v S. H. Kress & Co.*, 398 U.S. 144 (1970). A court should not make factual determinations as to the merits of claims based on an evaluation of conflicting depositions, because documents filed in support of motions for summary judgment are to be used to determine whether issues of fact exist, not to decide the fact issues themselves. *Manetas v. Int'l Petroleum Carriers, Inc.*, 541 F.2d 408 (3d Cir. 1976).

B. <u>Claim Definiteness Under 35 U.S.C. § 112, para. 2</u>

Acushnet has the burden of proving by clear and convincing evidence that the '834 patent is invalid as indefinite for failure to comply with 35 U.S.C. § 112, para 2. *Nat'l Recovery Techs., Inc. v. Magnetic Separation Sys., Inc.*, 166 F.3d 1190, 1195 (Fed. Cir. 1999);

*Wang Lab., Inc. v. Toshiba Corp.*, 993 F.2d 858, 865 (Fed. Cir. 1993). On a motion for summary judgment, the nonmoving party need not present opposing evidence of definiteness where, as here, the movant has failed to show the absence of genuine factual disputes. *E.I. DuPont de Nemours & Co. v. Millennium Chems., Inc.*, C.A. No. 97-237 (SLR), 1999 U.S. Dist. LEXIS 12447, *9-10 (D. Del. Aug. 2, 1999) (attached as Ex. 7).

Section 112, para. 2 requires that the specification conclude with one or more claims particularly pointing out and distinctly claiming the subject matter which the applicant regards as his invention. This statute is satisfied if a person skilled in the field of the invention would reasonably understand the claim when read in the context of the specification. *See Union Pac. Res. Co. v. Chesapeake Energy Corp.*, 236 F.3d 684, 692 (Fed. Cir. 2001) (the definiteness requirement set forth in § 112, para. 2 "focuses on whether those skilled in the art would understand the scope of the claim when the claim is read in light of the rest of the specification"); *Miles Lab., Inc. v. Shandon*, 997 F.2d 870, 875 (Fed. Cir. 1993) (if the claims "reasonably apprise those skilled in the art of the scope of the invention, § 112 demands no more"); *In re Moore*, 439 F.2d 1232, 1235 (C.C.P.A. 1971) (the indefiniteness inquiry asks whether the claims "circumscribe a particular area with a reasonable degree of precision and particularity").

Only if the court determines that a claim is not "amenable to construction" is the claim invalid as indefinite under 35 U.S.C. § 112, para. 2. *Exxon Research & Eng'g Co. v. United States*, 265 F.3d 1371, 1375 (Fed. Cir. 2001). Because a claim is presumed valid, a claim is indefinite only if the "claim is insolubly ambiguous, and no narrowing construction can properly be adopted." *Id.* at 1375.

"On a motion for summary judgment, abstract and rhetorical arguments in support of indefiniteness simply do not satisfy defendant's burden of proof." *DuPont*, 1999 U.S. Dist.

LEXIS 12447, *9. At issue in *DuPont* was whether one skilled in the art would find the patent's use of certain terms indefinite. *Id.* at 8. Defendant-infringer, however, offered neither evidence of the requisite degree of skill in the art nor evidence of how one skilled in the art would interpret the disputed claims. *Id.* Instead, defendant merely argued in rhetorical fashion that the aforementioned terms are indefinite. *Id.* In refusing to grant defendant's motion for summary judgment, the court stated that the defendant cannot prevail by simply arguing that the terms are indefinite to any reader of the patent; rather, defendant must demonstrate that those skilled in the art would find them indefinite. *Id.* at 8-9.

        C.    Patent Infringement

Patent infringement analysis consists of two steps: first, claim construction, where meaning and scope of patent claims asserted to be infringed are determined; the second step entails proving infringement by comparing properly construed claims to device accused of infringing. *Pitney Bowes, Inc. v. Hewlett-Packard Co.*, 182 F.3d 1298, 1304 (Fed. Cir. 1999). "A district court should approach a motion for summary judgment on the fact issue of infringement with great care." *Amhil Enters. v. Wawa, Inc.*, 81 F.3d 1554, 1557 (Fed. Cir. 1996). Summary judgment on the issue of infringement is inappropriate where there are conflicting expert opinions on that issue. *Hilgraeve Corp. v. Symantec Corp.*, 265 F.3d 1336, 1343-44 (Fed. Cir. 2001). Summary judgment of non-infringement can only be granted if, after viewing the alleged facts in the light most favorable to the non-movant, there is no genuine issue as to whether the accused device is encompassed by the claims.

8

II. ACUSHNET IS NOT ENTITLED TO SUMMARY JUDGMENT THAT CLAIM 1 OF THE '834 PATENT IS INDEFINITE

Acushnet argues – for the first time – in its motion that the '834 patent is invalid for allegedly failing to comply with 35 U.S.C. § 112, para. 2 (the "specification shall conclude with one or more claims particularly pointing out and distinctly claiming the subject matter which the applicant regards as his invention"). Acushnet's conclusory assertions, however, fail to establish that it is entitled to summary judgment, a burden it must bear before summary judgment can be granted in its favor. Although Bridgestone believes that Acushnet cannot and has not shown that the '834 patent is invalid, there are at the very least material facts in dispute that prevent the grant of summary judgment in Acushnet's favor.

    A. Acushnet's New Invalidity Position Was Never Identified In Its Discovery Responses

Again, Acushnet puts forward an untimely asserted invalidity position. In its response to Bridgestone Interrogatory No. 4, Acushnet contended that claim 1 was invalid under 35 U.S.C. § 112 for two reasons, neither of which related to the "hardness within 5 mm inside the core surface" element (*see* Ex. 1, Acushnet's Sixth Supp. Resp. to Bridgestone First Set of Interrog. Directed to Acushnet (Nos. 1-24) at A-125). Acushnet never contended that the claim limitation "a hardness within 5 mm inside the core surface is up to 8 degrees lower than the surface hardness" is indefinite under 35 U.S.C. § 112, para 2. The Court has previously excluded Acushnet from relying on untimely identified invalidity position (D.I. 288, 291) and it should do so here.[3]

---

[3] At present, Bridgestone intends to file a motion *in limine* to prevent Acushnet from relying on its most recent insertion of new invalidity positions into this case despite the Court's previous preclusion orders.

Further, not only was the limitation never identified as a basis for claim indefiniteness, but the parties agreed to a construction of this term in their joint submission to the Court (*see* D.I. 288). This alone is fatal to Acushnet's indefiniteness positions. *Exxon Research*, 265 F.3d at 1375 (holding that a claim is indefinite only if the court determines that a claim is not "amenable to construction").

      B.    No Acushnet Expert Has Offered An Opinion As To The Definiteness Of The '834 Patent

No witness has offered an opinion that the '834 patent is indefinite for failure to comply with Section 112, para. 2. In particular, Dr. Felker has offered no opinion regarding the purported indefiniteness of the '834 patent – Dr. Felker's sole basis to conclude that the '834 patent is invalid is based on two allegedly prior art golf balls (Ex. 2, Felker Rpt. at 51-56). Acushnet can hardly disagree that the absence of expert opinion is fatal to a 35 U.S.C. § 112 defense – *this is the very reason that Acushnet has moved the Court for summary judgment with respect to three of the Acushnet patents-in-suit* (D.I. 358). Yet, in that brief, Acushnet arguments directly contradict the positions they take here.

The '834 patent is presumed valid. Acushnet thus bears the burden of proving by clear and convincing evidence that the '834 patent is invalid as indefinite for failure to comply with 35 U.S.C. § 112. *Nat'l Recovery Techs.*, 166 F.3d at 1195; *Wang Lab.*, 993 F.2d at 865. Only if the court determines that a claim is not "amenable to construction" is the claim invalid as indefinite under 35 U.S.C. § 112, para. 2. *Exxon Research*, 265 F.3d at 1375. Acushnet has offered no facts – through expert testimony or otherwise – to support its contention of invalidity under 35 U.S.C. § 112, para. 2. Rhetorical argument alone is not enough. *DuPont*, 1999 U.S. Dist. LEXIS 12447, *9 ("Defendant, however, offered neither evidence of the requisite degree of skill in the art nor evidence of how one skilled in the art would interpret the disputed

claims...defendant merely argued in rhetorical fashion that the... terms are indefinite. Defendant cannot prevail by arguing that these terms are indefinite to any reader of the patent; rather, defendant must demonstrate that those skilled in the art would find them indefinite."). Acushnet cannot meet its burden of proof at trial on any facts.

In any event, Dr. Felker is not a competent expert on this issue because of his limited experience in the golf industry -- indeed, he does not even rise to the level of one of ordinary skill in the art based on his own definition (*see* Statement of Facts, section II, *supra*). Any opinions offered by Dr. Felker are entitled to no weight.

Further, the supposedly conflicting test methods were performed by Acushnet engineers, not Dr. Felker. Dr. Felker had no contact with the Acushnet engineers. That Acushnet engineers acting at the direction of Acushnet's in-house and trial counsel can gin up a different (and incorrect) test method than that performed by Dr. Caulfield and relied on by Mr. Cadorniga fails to render the claims "insolubly ambiguous."

### C.  Acushnet Applies an Incorrect Standard for Indefiniteness

Acushnet applies an incorrect legal standard for indefiniteness under 35 U.S.C. § 112, para. 2. Section 112, para. 2 requires that the "specification shall conclude with one or more claims particularly pointing out and distinctly claiming the subject matter which the applicant regards as his invention." A claim is indefinite under 35 U.S.C. § 112, para. 2 only if it is "insolubly ambiguous." The standard of indefiniteness is high. *Amgen Inc. v. Hoechst Marion Roussel, Inc.*, 314 F.3d 1313 (Fed. Cir. 2003). Here, there can no credible argument that the claims are "insolubly ambiguous," and, in fact, the parties have agreed to the construction of the claim limitation at issue (D.I. 228).

Acushnet's arguments that the '834 patent is indefinite if it does not apprise the public of infringement is an incorrect legal standard rendering Acushnet's analysis wholly irrelevant to the issue at hand. What the public thinks is not what matters; it's whether one of ordinary skill in the art can determine infringement. "The test for indefiniteness does not depend on a potential infringer's ability to ascertain the nature of its own accused product to determine infringement, but instead on whether the claim delineates to a skilled artisan the bounds of the invention." *SmithKline Beecham Corp. v. Apotex Corp.*, 403 F.3d 1331, 1341 (Fed. Cir. 2005); *see also Invitrogen Corp. v. Biocrest Mfg., L.P.*, 424 F.3d 1374, 1384 (Fed. Cir. 2005). Moreover, a claim is definite "when the relevant value can be 'calculated or measured.'" *See Marley Mouldings*, 417 F.3d at 1360.

D.  Claim 1 of the '834 Patent is Definite

Acushnet's motion confuses infringement with validity. *See Invitrogen Corp. v. Biocrest Mfg., L.P.*, 424 F.3d 1374, 1384 (Fed. Cir. 2005) (The patentee "is really talking about the difficulty of avoiding infringement, not indefiniteness of the claim."). Acushnet argues that the "applicants never disclosed how to perform the tests on the core to determine the hardness of the interior points." That is incorrect – the patent says to use a JIS-C scale durometer, which is in fact what both parties' experts used in their testing. Instead, the only factual dispute is about the orientation of the hardness meter and which section of the golf ball to test.

Acushnet cites to the *Honeywell* decision to support its analysis, but the facts here are analogous to the Federal Circuit's more recent decision in *Marley Mouldings Ltd. v. Mikron Industries, Inc.*, 417 F.3d 1356 (Fed. Cir. 2005). In *Marley Mouldings*, the claims required the volume of wood flour to be measured. Everyone knew how to measure volume. The issue was, because volume depends on density, and the patent did not explain which density to use, the

volume could be easily manipulated. Thus, one expert used average bulk density values, while the other used minimum bulk density values. The Federal Circuit reversed the district court's grant of summary judgment of indefiniteness. It distinguished *Honeywell* because, there, persons of ordinary skill "understood that polymer melting point determinations vary significantly with the method used....In contrast, [in *Marley Mouldings*], it was not disputed that persons of experience in the field of the [patented] invention would understand how to measure parts by volume." The Federal Circuit therefore concluded that the argument "that shaking the wood flour may change its compactness, and thus produce different weight values for a given volume of wood flour,...relates to whether there is infringement," not invalidity.

Similarly, both parties here agree how to measure hardness – because the patent says to use a JIS-C durometer. What the parties disagree about is the orientation of that durometer; but Bridgestone's experts conducted the test corresponding to the agreed-upon construction of the language. Acushnet is now seeking to walk away from the earlier agreement. The orientation of the durometer when measuring the hardness is nevertheless a question of fact for the jury to resolve to decide infringement; not a reason to find the patent indefinite. Although Bridgestone believes its testing methodology is the proper way to test for the relevant claim limitation, at the very least there are genuine issues of material facts in dispute that prevent the grant of Acushnet's motion. Acushnet's ability to gin up incorrect and improper test protocols fails to render the '834 patent invalid.

### III. ACUSHNET IS NOT ENTITLED TO SUMMARY JUDGMENT THAT ITS GOLF BALLS DO NOT INFRINGE CLAIM 1 OF THE '834 PATENT

Dr. Caulfield conducted tests of the infringing Acushnet golf balls to determine the "hardness within 5 mm inside the core surface." Mr. Cadorniga, with 30 years of experience in the golf ball industry, relied on this testing to show that the accused Acushnet golf balls

infringe claim 1 of the '834 patent (Ex. 5, Cadorniga Rpt. at Ex. F). The experts believe this is the proper test:



In his report, Mr. Cadorniga stated that parties agreed that the term "hardness within 5 mm inside the core surface" means "the hardness of each point within the region of the core which radially extends for the surface to a depth of 5 mm in cross section" (Ex. 5, Cadorniga Rpt. at Ex. F-2). Mr. Cadorniga then opined:



Specifically, Mr. Cadorniga's analysis concluded that the NXT, DT So/Lo and Pinnacle Exception golf balls had a JIS-C hardness difference between the core surface and within 5 mm of the core surface of between 4.6 and 5.5 points, hardness differences that are

clearly less than 8 JIS-C points (Ex. 5 at F-9, Table F-4, Cadorniga Rep.):



Acushnet mistakenly believes that Mr. Cadorniga's reliance on Dr. Caulfield's testing is improper because the hardness at every single point between 5 mm from the core surface to the core surface has not been individually tested. Acushnet's position – a position that is ultimately incorrect – does not prove that there is no genuine issue as to material fact and that Acushnet is entitled to summary judgment. Mr. Cadorniga has opined, based in part on his 30 years' of experience in the golf ball industry, that Dr. Caulfield's testing is proper in view of the agreed upon claim construction and that the accused Acushnet golf balls infringe claim 1 of the '817 patent. Dr. Caulfield has more than thirty years' experience testing material properties and he stands by his testing methodology. Two independent experts – true experts in their respective fields – have opined that this data is accurate, proper and shows infringement.

Acushnet attempts to refute the opinions of Dr. Caulfield and Mr. Cadorniga with attorney argument. Acushnet has no proper expert to opine that Dr. Cadorniga's reliance on this testing is improper. Dr. Felker has such limited experience in the golf ball industry that he fails to meet his own standard of ordinary skill in the art; yet, even he has not offered an opinion on this subject.

Acushnet's attorney argument cannot negate the detailed reports and deposition testimony of Dr. Caulfield and Mr. Cadorniga, and it certainly cannot show that it is entitled to

summary judgment. Both of Bridgestone's expert witnesses believe the testing protocols are appropriate and correct for purposes of determining the limitation at issue. Both of these witnesses believe the testing results indisputably prove that the accused Acushnet golf balls infringe claim 1 of the '834 patent. Although Acushnet's motion is ultimately without merit, at the very least there are disputes as to material facts that prevent the grant of Acushnet's motion for summary judgment.

## CONCLUSION

Bridgestone requests that the Court deny Acushnet's motion for summary judgment of invalidity and non-infringement of Bridgestone's '834 patent.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Leslie A. Polizoti*
Jack B. Blumenfeld (#1014)
Leslie A. Polizoti (#4299)
1201 N. Market St.
P.O. Box 1347
Wilmington, DE 19801
(302) 658-9200
*Attorneys for Bridgestone Sports Co., Ltd.
and Bridgestone Golf, Inc.*

OF COUNSEL:
Robert M. Masters
Scott M. Flicker
PAUL, HASTINGS, JANOFSKY &
WALKER LLP
875 15th St., N.W.
Washington, DC 20005
(202) 551-1700

April 30, 2007
8142351

CERTIFICATE OF SERVICE

I certify that on May 7, 2007 I electronically filed the foregoing with the Clerk of the Court using CM/ECF, which will send notification of such filing(s) to the following:

>Richard L. Horwitz, Esquire
>POTTER ANDERSON & CORROON LLP
>Hercules Plaza, 6th Floor
>1313 North Market Street
>Wilmington, DE 19801

I further certify that I caused copies to be served upon the following on May 7, 2007 in the manner indicated:

**BY HAND & E-MAIL**

>Richard L. Horwitz, Esquire
>POTTER ANDERSON & CORROON LLP
>1313 N. Market Street
>Wilmington, DE 19801

**BY E-MAIL and FEDERAL EXPRESS**

>Joseph P. Lavelle, Esquire
>HOWREY LLP
>1299 Pennsylvania Avenue, NW
>Washington, DC 20004

>/s/ Leslie A. Polizoti
>Leslie A. Polizoti (#4299)
>MORRIS, NICHOLS, ARSHT & TUNNELL LLP
>Wilmington, DE 19801
>(302) 658-9200
>lpolizoti@mnat.com