IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

BRIDGESTONE SPORTS CO., LTD.,       )
and BRIDGESTONE GOLF, INC.,         )
                                    )
                Plaintiffs,         )       C.A. No. 05-132 (JJF)
                                    )
        v.                          )       **REDACTED –**
                                    )       **PUBLIC VERSION**
ACUSHNET COMPANY,                   )
                                    )
                Defendant.          )

**BRIDGESTONE'S ANSWERING BRIEF IN OPPOSITION TO ACUSHNET'S MOTION
FOR SUMMARY JUDGMENT OF NON-INFRINGEMENT OF U.S. PATENT 5,553,852**

MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Jack B. Blumenfeld (#1014)
Leslie A. Polizoti (#4299)
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899
(302) 658-9200

*Attorneys for Bridgestone Sports Co., Ltd.
and Bridgestone Golf, Inc.*

OF COUNSEL:
Robert M. Masters
Scott M. Flicker
PAUL, HASTINGS, JANOFSKY & WALKER LLP
875 15th St., N.W.
Washington, DC 20005
(202) 551-1700

Original Filing Date: April 30, 2007
Redacted Filing Date: May 7, 2007

## TABLE OF CONTENTS

**Page**

NATURE AND STAGE OF THE PROCEEDINGS ..................................................................1

SUMMARY OF ARGUMENT ........................................................................................1

STATEMENT OF FACTS ...........................................................................................3

    A.    The '852 Patent ..........................................................................................3

    B.    The Prosecution History Of The '852 Patent.....................................................4

    C.    The Parties' Experts Served Reports Concerning The
           Infringement Of The '852 Patent .................................................................4

    D.    Acushnet's Dr. Felker Agrees That The Claim Language
           At Issue Is Literally Entitled To Additional Scope.............................................5

    E.    Bridgestone's Infringement Contention Responses Were
           Proper And Sufficient ..............................................................................6

ARGUMENT ........................................................................................................7

    I.    LEGAL PRINCIPLES ..............................................................................7

           A.    Summary Judgment ........................................................................7

           B.    Literal Infringement .......................................................................7

           C.    The Doctrine of Equivalents .............................................................8

    II.    LITERAL INFRINGEMENT .......................................................................9

           A.    Acushnet's Motion Is A "Re-Do" On Claim Construction .......................9

                   1.    Intermediate Layer Limitation .................................................10
                   2.    Outer Cover Layer ...............................................................11
                   3.    Genuine Issues Of Material Fact Exist .......................................12

           B.    The Accused Products Have The Claimed Cover And
                Intermediate Layer ........................................................................15

           C.    The Preamble Of Claim 1 Is Not A Limitation......................................17

i

## TABLE OF CONTENTS, cont'd

Page

D.    Each Of The Pro V1* And Pro V1x Golf Balls Has The
       Claimed "Center Core"........................................................................18

III.    DOCTRINE OF EQUIVALENTS .......................................................20

A.    Bridgestone's Expert Conducted An Analysis And Opined
       On Doctrine Of Equivalents................................................................21

B.    Bridgestone Did Not "Clearly And Unmistakably"
       Surrender Equivalents........................................................................22

C.    Bridgestone's Interrogatory Responses Were Sufficient And Proper ....25

CONCLUSION..................................................................................................26

## TABLE OF AUTHORITIES

CASES                                                                      PAGE

*Augustine Medical, Inc. v. Gaymar Industries, Inc.*,
    181 F.3d 1291 (Fed. Cir. 1999)..................................................................8, 23

*Bai v. L & L Wings, Inc.*,
    160 F.3d 1350 (Fed. Cir. 1998)..................................................................8, 12

*Bayer AG v. Elan Pharmaceuticals, Inc.*,
    212 F.3d 1241 (Fed. Cir. 2000)..................................................................9, 23

*Catalina Marketing International, Inc. v. Coolsavings.com, Inc.*,
    289 F.3d 801 (Fed. Cir. 2002)....................................................................17

*Cybor Corp. v. FAS Technologies, Inc.*,
    138 F.3d 1448 (Fed. Cir. 1998) (*en banc*) ..............................................9, 23

*Doral Juvenile Group, Inc. v. Graco Children's Products, Inc.*,
    429 F.3d 1043 (Fed. Cir. 2005)....................................................................15

*Fiber Optic Designs, Inc. et al. v. Seasonal Specialties, LLC*,
    172 Fed. Appx. 995 (Fed. Cir. 2006).........................................................24

*Graver Tank & Mfg. Co. v. Linde Air Products Co.*,
    339 U.S. 605 (1950).......................................................................................8

*Honeywell Inc. v. Victor Co. of Japan, Ltd.*,
    298 F.3d 1317 (Fed. Cir. 2002)....................................................................24

*Horowitz v. Fed. Kemper Life Assurance Co.*,
    57 F.3d 300 (3d Cir. 1995)............................................................................7

*IMS Tech., Inc. v. Haas Automation, Inc.*,
    206 F.3d 1422 (Fed. Cir. 2000)....................................................................18

*Johnson Worldwide Associates, Inc. v. Zebco Corp.*,
    175 F.3d 985 (Fed. Cir. 1999)......................................................................15

*Liebel-Flarsheim Co. et al. v. Medrad, Inc.*,
    358 F.3d 898 (Fed. Cir. 2004).................................................................*Passim*

*Markman v. Westview Instruments, Inc.*,
    52 F.3d 967 (Fed. Cir. 1995)....................................................................8, 18

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,
    475 U.S. 574 (1986)........................................................................................7

## TABLE OF AUTHORITIES, cont'd

CASES                                                                     PAGE

*Modine Mfg. Co. v. I.T.C.,*
    75 F.3d 1545 (Fed. Cir. 1996)...................................................................10, 11

*Northrop Grumman Corp. v. Intel Corp.,*
    325 F.3d 1346 (Fed. Cir. 2003)...........................................................................24

*Pa. Coal Ass'n v. Babbitt,*
    63 F.3d 231 (3d Car. 1995)....................................................................................7

*Panduit Corp. v. Dennison Mfg, Co.,*
    836 F.2d 1329 (Fed. Cir. 1987)..............................................................................8

*Pitney Bowes, Inc. v. Hewlett-Packard Co.,*
    182 F.3d 1298 (Fed. Cir. 1999)...........................................................................17

*Resonate Inc. v. Alteon Websystems, Inc.,*
    338 F.3d 1360 (Fed. Cir. 2003)...........................................................................24

*Rowe v, Dror,*
    112 F.3d 473,478 (Fed. Cir. 1997).......................................................................17

*SciMed Life Systems, Inc. v. Advanced Cardiovascular Systems, Inc.,*
    242 F.3d 1337 (Fed. Cir. 2001)...........................................................................24

*SmithKline Diagnostics Inc. v. Helena Lab. Corp.,*
    859 F.2d 878 (Fed. Cir. 1988)................................................................................8

*TechSearch, L.L.C. v. Intel Corp.,*
    286 F. 3d 1360 ......................................................................................................13

*Warner-Jenkinson Co. v. Hilton Davis Chem. Co.,*
    520 U.S. 17 (1997).................................................................................................8

*Zelinski v. Brunswick Corp.,*
    185 F.3d 1311 (Fed. Cir. 1999)..............................................................................8

STATUTES

35 U.S.C. § 271(a) .........................................................................................................7

OTHER AUTHORITIES

Fed. R. Civ. P. 56(c) .....................................................................................................7

Fed. R. Civ. P. 56(e) .....................................................................................................7

## NATURE AND STAGE OF THE PROCEEDINGS

This is a patent infringement action brought by Plaintiffs Bridgestone Sports Co., Ltd. and Bridgestone Golf, Inc. (collectively "Bridgestone") against Defendant Acushnet Company ("Acushnet") in March 2005. Bridgestone asserts that various Acushnet golf balls infringe seven patents, including claims 1, 6 and 7 of U.S. Patent No. 5,553,852 ("the '852 patent"), which is directed to structural features of golf balls.

This is Bridgestone's answering brief in opposition to Acushnet's Motion for Summary Judgment of Non-Infringement of U.S. Patent No. 5,553,852.

## SUMMARY OF ARGUMENT

Acushnet's Motion for Summary Judgment of Non-Infringement of U.S. Patent No. 5,553,852 should be denied in its entirety because there are numerous genuine issues of material fact that are in dispute. Regardless of how the Court ultimately construes the claim limitations of Claim 1, the parties' experts offer competing opinions on the issue of infringement.

First, Acushnet contends that its accused products do not literally infringe the asserted claims of the '852 patent because:

1. "its accused products do not have an 'intermediate layer having a thickness of at least 1 mm'" or "its accused products do not have ... a 'cover having a thickness of 1 to 3 mm'"; and

2. its "accused golf ball models Pro V1x and Pro V1* ... do not meet the claim 1 limitation of a 'three-piece' solid golf ball" or its "accused golf ball models Pro V1x and Pro V1* ... do not contain a 'center core having a diameter of at least 29 mm.'"

1

Acushnet ignores the expert report and extensive analysis of Bridgestone's expert, Mr. Cadorniga.   Mr. Cadorniga, using the same thickness measurements of the accused intermediate and cover layer identified in Acushnet's Motion, opined that the accused golf balls infringe the asserted claims.

Second, Acushnet argues that Bridgestone cannot rely on the doctrine of equivalents to prove infringement because:

1.  Bridgestone's infringement expert "did not even conduct a doctrine of equivalence [sic] analysis";

2.  Bridgestone's '852 patent "specifically and intentionally excluded structures with cover layers less than 1mm thick from the claims"; and

3.  Bridgestone "avoided disclosing to Acushnet the basis for its infringement contentions as they relate to the doctrine of equivalents during fact discovery."

Acushnet's motion (1) identifies numerous genuine issues of material fact in dispute, (2) is an improper re-briefing of claim construction issues, (3) improperly reads the preamble of a claim as a limitation, (4) misrepresents the claim terms asked to be construed by this Court, (5) ignores an agreed-upon claim construction of the term "center core" and inserts its own "new" construction with no explanation, (6) overstates the law regarding estoppel, (7) mischaracterizes and takes out of context expert testimony, and (8) is an improper attempt for sanctions.

Finally, Bridgestone's infringement expert, Mr. Cadorniga, conducted and provided a detailed doctrine of equivalents analysis in his expert report.   Bridgestone has not "clearly and unmistakably surrendered" any subject matter with regard to the cover thickness, and to the extent Acushnet's motion misstates the posture of this case, it is improper.

STATEMENT OF FACTS

A.    The '852 Patent

The '852 patent (D.I. 363, Acushnet Op. Br., Ex. 1) is directed to a solid ball with a relatively hard intermediate layer (2) between a core (1) and a cover (3), and to balancing the specific gravity of the respective layers.  By providing a golf ball with such features, the center core (1) and cover (3) can be made relatively soft, and the golf ball will have improved feeling and controllability, without any corresponding



deterioration of flying performance and durability (D.I. 363, Ex. 1 at col. 1:65-2:2 and col. 2:48-56).

The '852 patent discloses that the intermediate layer (2) is designed to compensate for the relatively soft center core (1) and soft outer cover layer (3).  The intermediate layer functions primarily on full shots (*e.g.*, driver shots) to provide repulsion to obtain distance. The '852 patent discloses that the "intermediate layer 2 has a radial thickness of at least 1 mm … [and w]ith a thickness of less than 1 mm repulsion is lowered due to reduced flying distance" (*id.* at col. 3, lines 28-33).  Here, the '852 patent teaches merely that, as the thickness decreases less than 1 mm, the repulsion decreases.  The '852 patent does not say that repulsion with a thickness less than 1 mm is insufficient or that the ball no longer meets the objects of the patent.

Further, the '852 patent discloses that the cover layer (3) is made relatively soft, compared to the intermediate layer (2).  This provides a soft-feeling golf ball and gives control on approach shots by permitting the ball to have sufficient spin and controllability.  The '852 patent states that the "cover 3 has a radial thickness of 1 to 3 mm … [and] a cover less than 1

3

mm thick is low in durability such as cut resistance" (*id.* at col. 3, lines 59-62). Again, there is no statement in the '852 patent that a cover layer having a thickness less than 1 mm is not durable or does not meet the objects of the invention.

     B.     The Prosecution History Of The '852 Patent

The '852 patent issued from an application first filed in Japan in July 1993. The claim language regarding the intermediate layer having "a thickness of at least 1mm" and a cover layer with "a thickness of 1 to 3 mm" were part of the originally filed claim 1, and were not added by amendment during the prosecution of the '852 patent application. Moreover, at no point during the prosecution of the '852 patent did Bridgestone or its representatives "clearly and unmistakably" disclaim any scope regarding the above claim language.

     C.     The Parties' Experts Served Reports Concerning The Infringement Of The '852 Patent

On January 16, 2007, Bridgestone's expert, Mr. Cadorniga, submitted an expert report that included his detailed infringement analysis regarding the '852 patent, and his opinion that the accused products infringed the asserted claims of the '852 patent both literally and under the doctrine of equivalents.

Mr. Cadorniga stated that he reviewed (1) the extensive independent test data of Dr. Edward Caulfield, (2) the deposition testimony of Acushnet and many of its current and ex-employees, and (3) a considerable number of internal Acushnet documents. Based on this review (along with his 30 years of experience in the golf ball industry), Mr. Cadorniga concluded that:

     1.

2. 

3.

he concluded that "each version and model of the Pro V1, Pro V1* (star) and Pro V1x golf balls manufactured by Acushnet literally infringes each of claims 1, 6 and 7 of the '852 patent" (*id.* at C-56 to C-57).  Mr. Cadorniga also conducted a detailed doctrine of equivalents analysis on both the intermediate layer and cover layer limitations of the asserted claims and further concluded that "to the extent that any version or models of these golf balls are not found to literally infringe, they are equivalent, and infringement occurs under the doctrine of equivalents" (*id.* at C-27 to C-33; C-46 to C-54; and C-57).

    D.    Acushnet's Dr. Felker Agrees That The Claim Language At Issue Is Literally Entitled To Additional Scope

Acushnet's expert, Dr. David Felker, testified that the use of "1 mm" in the claim language was "loose and imprecise" and was less precise than using 1.0 mm to define the thickness of layers (Ex. 2, Felker Dep. Tr. at 326:18-20; 329:9-19; and 332:6 to 334:2). Therefore, Dr. Felker agreed that the language at issue within claim 1 of the '852 patent is entitled to additional scope, beyond the exactly 1.0 to 3.0 mm that Acushnet proposed.

Dr. Felker's statement is consistent with the infringement opinion of Mr. Cadorniga, who opined that the literal scope of the claim language at issue included the respective thicknesses of the cover and intermediate layers of the accused products.

E.    Bridgestone's Infringement Contention Responses Were
      Proper And Sufficient

Bridgestone's infringement contentions always stated that Acushnet infringed the

'852 patent literally and under the doctrine of equivalents.[1]

Bridgestone's May 1, 2006 contentions (1) stated that each of the accused

products has features within the scope of the respective claim language, (2) provided an

extensive listing of Acushnet documents which supported Bridgestone's contentions, and (3)

stated that each of the respective products satisfied the claim limitations "literally and/or under

the Doctrine of Equivalents" (D.I. 321, Bridgestone's Ans. Br. in Opp. to Acushnet's Mots. To

Preclude And To Withdraw Admissions, at 6-7.)

Then on December 18, 2006, Bridgestone supplemented its infringement

contentions by citing to more documents and deposition testimony that supported Bridgestone's

positions regarding infringement, and further stated:



(*Id.* at 7-8).[2]

---

[1]    A detailed discussion regarding the propriety of Bridgestone's contentions is in
Bridgestone's Answering Brief in Opposition to Acushnet's Motions to Preclude and to
Withdraw Admissions (D.I. 321).    Acushnet's issues regarding Bridgestone's
interrogatory responses have been fully briefed and are currently before a Special Master.

ARGUMENT

I.     <u>LEGAL PRINCIPLES</u>

A.     <u>Summary Judgment</u>

A court shall grant summary judgment only if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party bears the burden of proving that no genuine issue of material fact exists. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 n.10 (1986). "Facts that could alter the outcome are 'material,' and disputes are 'genuine' if evidence exists from which a rational person could conclude that the position of the person with the burden of proof on the disputed issue is correct." *Horowitz v. Fed. Kemper Life Assurance Co.*, 57 F.3d 300, 302 n.1 (3d Cir. 1995) (internal citations omitted). If the moving party has demonstrated an absence of material fact, the nonmoving party then "must come forward with 'specific facts showing that there is a genuine issue for trial.'" *Matsushita*, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e)). The court will "view the underlying facts and all reasonable inferences therefrom in the light most favorable to the party opposing the motion." *Pa. Coal Ass'n v. Babbitt*, 63 F.3d 231, 236 (3d Cir. 1995).

B.     <u>Literal Infringement</u>

A patent is infringed when a person "without authority makes, uses or sells any patented invention, within the United States . . . during the term of the patent." 35 U.S.C. §

---

[2]     This particular response is representative of Bridgestone's other infringement contentions.

271(a).  A court should employ a two-step analysis in making an infringement determination. *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 976 (Fed. Cir. 1995).  First, the court must construe the asserted claims to ascertain their meaning and scope.  *Id.*  The finder of fact must then compare the properly construed claims with the accused infringing product.  *Markman*, 52 F.3d at 976.  This second step is a question of fact.  *See Bai v. L & L Wings, Inc.*, 160 F.3d 1350, 1353 (Fed. Cir. 1998).  Literal infringement occurs where each limitation of at least one claim of the patent is found exactly in the alleged infringer's product.  *Panduit Corp. v. Dennison Mfg, Co.*, 836 F.2d 1329, 1330 n.1 (Fed. Cir. 1987).

## C.    The Doctrine of Equivalents

Even if there is no literal infringement, infringement may nevertheless exist under the doctrine of equivalents.  The doctrine of equivalents requires that the accused product embody every limitation of a claim, either literally or by an equivalent.  *See Warner-Jenkinson Co. v. Hilton Davis Chem. Co.*, 520 U.S. 17, 41 (1997).  An element is equivalent if the differences between the element and the claim limitation are "insubstantial."  *Zelinski v. Brunswick Corp.*, 185 F.3d 1311, 1316 (Fed. Cir. 1999).  One test used to determine "insubstantiality" is whether the element performs substantially the same function in substantially the same way to obtain substantially the same result as the claim limitation.  *See Graver Tank & Mfg. Co. v. Linde Air Products Co.*, 339 U.S. 605, 508 (1950).  This test is commonly referred to as the "function-way-result" test.

Although prosecution history estoppel may restrict the ability of a patentee to invoke the doctrine of equivalents, a patentee is only barred from arguing infringement under the doctrine of equivalents if there is a "clear and unmistakable surrender of subject matter."  *Augustine Medical, Inc. v. Gaymar Industries, Inc.*, 181 F.3d 1291, 1299 (Fed. Cir. 1999).  "In

8

determining whether there has been a clear and unmistakable surrender of subject matter, the prosecution history must be examined as a whole." *Bayer AG v. Elan Pharms., Inc.*, 212 F.3d 1241, 1252 (Fed. Cir. 2000). Arguments or statements must be viewed in context because every statement by an applicant during prosecution to distinguish prior art does not create a separate estoppel. *Cybor Corp. v. FAS Techs., Inc.*, 138 F.3d 1448, 1460 (Fed. Cir. 1998) (*en banc*). When relying on the written description of a patent to form the basis of a disclaimer, the written description must contain a "clear disavowal" of the subject matter alleged to be surrendered. *Liebel-Flarsheim Co. v. Medrad, Inc.*, 358 F.3d 898, 908 (Fed. Cir. 2004).

## II. LITERAL INFRINGEMENT

Acushnet argues it is entitled to summary judgment of non-infringement of Bridgestone's '852 patent, even though Bridgestone's expert opined that the accused Pro V1, Pro V1*(Star) and Pro V1x model golf balls literally infringe claims 1, 6 and 7 of the '852 patent. This motion raises numerous genuine issues of disputed material fact concerning the very issue of infringement. *See, e.g.*, D.I. 363 at 6 (with regard to the intermediate layer, "Mr. Cadorniga ... stated that this term should be afforded its plain and ordinary meaning, which under [his] interpretation encompasses values less than 1 mm thick"); at 9 (with regard to the cover, the "interpretation encompasses values less than 1 mm thick"); and at 11 (with regard to the core, "[i]n reaching his infringement opinion with respect to the dual core balls, therefore, Mr. Cadorniga was forced to argue that the claims term 'center core' can be construed to read on both the center core and the outer core combined together").

### A. Acushnet's Motion Is A "Re-Do" On Claim Construction

Acushnet ignores the fact that the parties have already fully briefed and argued the two disputed claim terms. Acushnet instead re-argues the issues in an apparent "do-over."

1.    Intermediate Layer Limitation

Claim 1 of the '852 patent recites an intermediate layer "having a thickness of at least 1 mm." The issue turns on the imprecision of the numeral value of "1 mm." As Bridgestone explained in its claim construction brief, and as the Federal Circuit has found in several cases, the precision used in reciting numerical values in claims must be taken into account. "It is usually incorrect to read numerical precision into a claim from which it is absent." *Modine Mfg. Co. v. I.T.C.*, 75 F.3d 1545, 1551 (Fed. Cir. 1996).

Here, the claim uses the value of 1 mm, not 1.0 mm (as Acushnet contends) or 1.00 mm. The inventors knew how to be more precise – other claims in the '852 patent disclose values down to the tenths (*e.g.*, a specific gravity of 1.4). The '852 patent specification shows intermediate layer thicknesses measured down to the tenths as in 1.6 mm, and this should be contrasted with the actual lack of precision in the claims.

Even Dr. Felker, Acushnet's expert, agreed that the claims were not written as precise as Acushnet argues. ███████████████████████████████████ ████████████████████████████████████ Moreover, the inventors purposefully left the claims less precise to provide leeway reciting merely to the whole number, which even Dr. Felker recognized. The claim should not be interpreted with any more precision than expressly claimed.

Furthermore, contrary to Acushnet's argument (D.I. 363 at 6-7), the '852 patent does not "disfavor" thicknesses less than 1.0 mm. The '852 patent points out that repulsion is reduced with values less than 1 mm. But here, the '852 patent does not say less than 1.0 mm – it says 1 mm, and it does not clearly disavow any intermediate or cover layer having a thickness less than 1 mm. *See Liebel-Flarsheim*, 358 F.3d at 908.

Acushnet's citations to case law are inapposite (D.I. 363 at 7). Bridgestone does not dispute the fact that the phrase "at least" is in the intermediate layer thickness limitation. The focus, however, is not on the phrase "at least," but that the claim recites 1 mm and not 1.0 mm. Where, as here, the claim is quantified in whole numbers such as 0, 1, 2, 3, and so on, there is no doubt that values such as 0.9 mm or 0.88 mm represent 1 mm, by rounding or by the fact they are between the whole numbers 0 and 1 and are closer to 1 mm.

2.     Outer Cover Layer

Similarly, claim 1 recites a cover layer "having a thickness of 1 mm to 3 mm[.]" The issue turns, again, on the lack of precision used by the inventors in defining the cover thickness. As Bridgestone explained in its claim construction brief and as the Federal Circuit has found in several other cases, the precision used in reciting numerical values in claims must be taken into account. *See Modine Mfg. Co. v. I.T.C.*, 75 F.3d 1545, 1551 (Fed. Cir. 1996).

Here, the claim recites "1 mm to 3 mm," not "1.0 mm or 3.0 mm," as Acushnet contends. The precision of the cover layer's thickness should be contrasted with other values in the claim (*e.g.*, specific gravity of 1.4), which defined to the tenths, and the specification, which defined cover thicknesses down to the tenths. The inventors did not use such precision in the claim, and Bridgestone should not be straddled with added layers of precision.

Mr. Cadorniga opined that the claim language at issue does not "specify precision to any significant digits," and when taking into account "the state of technology in 1993 when the Japanese priority document to the '852 patent was filed in Japan," the plain and ordinary meaning of the claim phrases would include "values below 1 mm," as understood by those of ordinary skill in the art (Ex. 1, Cadorniga Decl. at Ex. A, C-12 and C-33).

Dr. Felker, Acushnet's expert, confirmed Mr. Cadorniga's understanding of the claim language, and the scope to which it is entitled. Dr. Felker characterized the claim language as ██████████████████████████████████████████████████████████████████████
██████████████████████████████████████████████████████████

Dr. Felker added with respect to the term "1 to 3 mm":



(*Id.* at 329:22 to 330:10 and 334:5-9).

Furthermore, contrary to Acushnet's argument (D.I. 363 at 8-9), the '852 patent does not "criticize" thicknesses less than 1.0 mm. The '852 patent points out that a cover with a thickness less than 1 mm is low in durability. But, the '852 patent does not say less than 1.0 mm, and it does not clearly disavow any cover layer having a thickness less than 1 mm. *See Liebel-Flarsheim*, 358 F.3d at 908.

### 3.   Genuine Issues Of Material Fact Exist

Bridgestone's expert, Mr. Cadorniga, provided a detailed infringement report in which he opined that each of the accused Acushnet products literally infringed claims 1, 6 and 7 of the '852 patent (Ex. 1, Cadorniga Decl.). This opinion was reiterated during his deposition. (Ex. 3, Cadorniga Dep. Tr. at 150:17-21). Dr. Felker disagrees with Mr. Cadorniga's conclusions.

The difference of opinion between Mr. Cadorniga and Dr. Felker represents the epitome of a genuine issue of material fact. The question of whether the accused products contain the claimed intermediate layer and cover is a question to be determined by the finder of fact. *See Bai*, 160 F.3d at 1353. "Summary judgment is appropriate when it is apparent that only

one conclusion as to infringement could be reached by a reasonable jury." *TechSearch, L.L.C. v. Intel Corp.*, 286 F.3d 1360, 1369 (Fed. Cir. 2002). Summary judgment is not appropriate in this case, because a reasonable finder of fact can conclude that Mr. Cadorniga's analysis is correct.

Further, not only is the finder of fact required to determine whether Mr. Cadorniga's or Dr. Felker's opinions are correct, but it is also tasked with resolving a dispute as to some of the actual properties of the golf balls. In formulating his opinion, Mr. Cadorniga has relied on the independent testing of Dr. Edward Caulfield, deposition testimony, and Acushnet's own documents.

Specifically, Dr. Caulfield's independent test data showed that the cover thicknesses of the accused golf balls are as follows:



(Ex. 1, Cadorniga Decl., Ex. A at C-34).



Based, at least in part, on this data, Mr. Cadorniga concluded that claims 1, 6 and 7 of the '852 patent are literally infringed by the accused products. Specifically, Mr. Cadorniga concluded in part that:

1. █████████████████████████████████████████

2. █████████████████████████████████████████

Accordingly, Mr. Cadorniga concluded that "each version and model of the Pro V1, Pro V1* (star) and Pro V1x golf balls manufactured by Acushnet literally infringes each of claims 1, 6 and 7 of the '852 patent" (*id.* at C-56 to C-57).

Dr. Felker, however, came to a different conclusion based in part on thickness data that did not actually measure the cover thickness of a golf ball.████████████████

████████████████████████████████████████████████████████████

Therefore, not only did Dr. Felker come to a different conclusion than Bridgestone's expert, but he did so based on measurements of the golf ball cover at a completely different manufacturing stage of the golf balls. Thus, not only is there a dispute as to the ultimate issue of infringement, there is also a dispute as to what aspects of the accused products represents the golf ball "cover." When such a dispute exists as to the relevant structure of an accused product, the Court should not "invade[] the province of the finder of fact ... in deciding the infringement question." *Doral Juvenile Group, Inc. v. Graco Children's Prods., Inc.*, 429 F.3d 1043, 1047 (Fed. Cir. 2005); *compare Johnson Worldwide Assoc., Inc. v. Zebco Corp.*, 175 F.3d 985 (Fed. Cir. 1999) (stating that "[b]ecause the relevant aspects of the accused device's structure and operation are undisputed in this case, the question of whether [the accused infringer's] product infringes the claim of ... [the] patent turns on an interpretation of those claims.").

B.    The Accused Products Have The Claimed Cover And Intermediate Layer

Contrary to Acushnet's assertions, each of the accused products has the claimed cover and intermediate layer.

In his extensive and detailed expert report, Mr. Cadorniga concluded that "it is [his] opinion that each version and model of the Pro V1, Pro V1* (star) and Pro V1x golf balls manufactured by Acushnet literally infringes each of claims 1, 6 and 7 of the '852 patent. Additionally, to the extent that any version or models of these golf balls are not found to literally infringe, they are equivalent, and infringement occurs under the doctrine of equivalents" (Ex. 1,

15

Cadorniga Decl., Ex. A at C-56 to C-57). Because Mr. Cadorniga's opinions are fully set forth in his attached declaration and report, his detailed analysis will not be repeated herein.

Mr. Cadorniga relied on his "knowledge and experience gained from 30 years in the golf ball industry" to conclude that the accused golf balls have a "cover having a thickness of 1 to 3 mm" and an "intermediate layer having a thickness of at least 1 mm" (*id.* at C-12 and C-33). Mr. Cadorniga's conclusions regarding the cover and intermediate layers of the accused products are based, in part, on independent test data provide by Dr. Caulfield (discussed above), ██████████████████████████████ and Mr. Cadorniga's understanding of the "plain and ordinary" meaning of the claim language at issue (*id.* at C-12 to C-57).

Mr. Cadorniga further confirmed his understanding regarding the plain and ordinary meaning of the claim phrases using, ████████████████████████████

████████████████████████████████████████████████████

Based upon this overwhelming evidence in favor of Mr. Cadorniga's understanding of the plain and ordinary meaning of the '852 patent claim language, Mr. Cadorniga concluded that each of the accused golf balls have a "cover having a thickness of 1 to 3 mm" and an "intermediate layer having a thickness of at least 1 mm" (*id.* at C-12 and C-33).

Accordingly, as evidenced by Mr. Cadorniga's detailed opinion, each of the accused golf balls literally has a cover having a thickness of 1 to 3 mm and an intermediate layer having a thickness of at least 1 mm.

C.    The Preamble Of Claim 1 Is Not A Limitation

Acushnet asserts for the first time that the preamble of claim 1 is a limitation of the asserted claims.[3] That is incorrect. Claim 1 reads "A three-piece solid golf ball comprising; a center core, an intermediate layer, and a cover enclosing the core through the intermediate layer,…" (D.I. 363, Ex. 1 at col. 6:65 to col. 7:9).

It is well-settled that a preamble does not limit a claimed invention unless it "recites essential structure or steps, or if it is 'necessary to give life, meaning, and vitality' to the claim." *Catalina Marketing Int'l, Inc. v. Coolsavings.com, Inc.*, 289 F.3d 801, 808 (Fed. Cir. 2002) (*citing Pitney Bowes, Inc. v. Hewlett-Packard Co.*, 182 F.3d 1298, 1305 (Fed. Cir. 1999)). Further, a preamble does not limit the claimed invention "where a patentee defines a structurally complete invention in the claim body and uses the preamble only to state a purpose or intended use for the invention." *Rowe v. Dror*, 112 F.3d 473,478 (Fed. Cir. 1997).

Acushnet has provided no basis for the preamble of claim 1 being considered a limitation. Acushnet merely concludes that the "Pro V1x and Pro V1* model golf balls further cannot infringe the '852 patent because they are not 'three-piece' golf balls" (D.I. 363 at 13). Acushnet's conclusory analysis is on its face insufficient to provide any basis to consider the preamble of claim 1 of the '852 patent a limitation of any kind.

Moreover, the body of claim 1 fully and completely defines the structure of the claimed invention absent any contribution from the preamble. The preamble provides no antecedent basis, or otherwise gives "life, meaning, or vitality" to any limitation within the body

---

[3]    Acushnet raises this issue for the first time in its Motion for Summary Judgment. Acushnet did not properly raise this issue during the claim construction proceedings in this case, or at any time during fact discovery.

of the claim. Additionally, at no point did Bridgestone rely on the preamble to distinguish the claimed invention from any prior art during patent prosecution and, as such, the preamble should not be considered a limitation of the claimed invention. *See IMS Tech., Inc. v. Haas Automation, Inc.*, 206 F.3d 1422, 1434 (Fed. Cir. 2000).

Acushnet's arguments regarding its products allegedly not being a "three piece" golf ball should be disregarded and Acushnet's motion for summary judgment should be denied.

D.    Each Of The Pro V1* And Pro V1x Golf Balls Has The Claimed "Center Core"

Acushnet further argues that the accused Pro V1* (star) and Pro V1x golf balls do not literally infringe the claims of the '852 patent because they contain a "dual core." To support this argument, Acushnet relies on Dr. Felker's non-infringement report (D.I. 363 at 12). Both Acushnet and Dr. Felker, however, ignore the claim construction agreed upon by both parties for the "center core." As such, both Acushnet's and Dr. Felker's analyses are irrelevant, because their respective infringement analyses do not compare the **properly construed** claims with the accused infringing product. *Markman*, 52 F.3d at 976.

During claim construction, both Bridgestone and Acushnet agreed that the term "center core" means "an object forming a center of a golf ball" (D.I. 228, Joint Claim Construction Statement, at 4).

The Pro V1x and Pro V1* both have a "center core" or "an object forming the center of the ball." These golf balls incorporate a dual-core made of a rubber composition and the dual-core is enclosed entirely by the intermediate layer. Mr. Cadorniga addressed this specific construction and found that the Pro V1x and Pro V1* satisfied the limitation of a center core or an object forming the center of a ball.

Unlike both Acushnet and Dr. Felker, Mr. Cadorniga used the proper definition for the term "center core" in his infringement analysis. In his report, Mr. Cadorniga stated:



(Ex. 1, Cadorniga Decl., Ex. A at C-2).

Using the proper meaning of the claim term "center core," Mr. Cadorniga recognized that:



(*Id.* at C-5).

Mr. Cadorniga confirmed this understanding by relying on, among other things,



Further, with regard to the diameter of the limitation of claim 1, Mr. Cadorniga again relied on the independent testing of Dr. Caulfield, whose data showed that the "object[s] forming the center of a golf ball" in the Pro V1x and Pro V1* (star) golf balls had the following dimensions:

19



(*Id.* at C-8, Table C-2).

Mr. Cadorniga also relied on the deposition of Acushnet and documents produced by Acushnet to confirm Mr. Cadorniga's opinion regarding the diameter of the "center core" (*id.* at C-8 to C-9). Because the data reviewed shows that the diameters of the "object[s] forming the center of a golf ball" in each of the respective accused products are over 29 mm, Mr. Cadorniga correctly opined that this claim limitation is also satisfied by all of the accused products, including the Pro V1x and Pro V1* (star) golf balls. Mr. Cadorniga's expert opinion is uncontroverted. Acushnet has proffered no opinion and no evidence as to whether or not the Pro V1* (star) or Pro V1x golf balls have "an object forming the center of a golf ball" with a diameter of at least 29 mm.

III.    DOCTRINE OF EQUIVALENTS

Acushnet also argues that it is entitled to summary judgment of no infringement under the doctrine of equivalents because (1) Bridgestone's infringement expert "did not conduct any analysis under the doctrine of equivalents with respect to cover thickness limitations of the '852 patent," (2) Bridgestone specifically disclaimed a cover thickness of less than 1 mm, and (3) Bridgestone's interrogatory responses were insufficient. Those arguments are incorrect.

A.    Bridgestone's Expert Conducted An Analysis And Opined
      On Doctrine Of Equivalents

Acushnet argues that it is entitled to summary judgment of no infringement under the doctrine of equivalents because Mr. Cadorniga, Bridgestone's '852 infringement expert, "admitted during deposition that he did not conduct any analysis under the doctrine of equivalents with respect to the cover thickness limitations of the '852 patent" (D.I. 363 at 13). Acushnet argues this even though it recognized that Mr. Cadorniga's "report contain[] several pages directed to such analysis" (*id.*). Thus, on its face, Acushnet's argument is contradictory.

In support of its motion, Acushnet points to two discrete portions of Mr. Cadorniga's deposition, and relies on quotes taken out of context (*id.* at 13-14). Acushnet cites these deposition sound bites to support the remarkable statement that Mr. Cadorniga did not conduct a doctrine of equivalents analysis (*id.* at 14).

In fact, Mr. Cadorniga's report dedicates approximately 13 pages to a doctrine of equivalents analysis on the cover and intermediate layer thicknesses of the accused golf balls. (Ex. 1, Cadorniga Decl., Ex. A at C-27 to C-33 and C-46 to C-54). This is consistent with his deposition testimony (Ex. 3, Cadorniga Dep. Tr. at 150:17-21). Acushnet's assertions and representations to the contrary simply take Mr. Cadorniga's testimony out of context.

When asked what his opinion was regarding the doctrine of equivalents, Mr.



Therefore, Mr. Cadorniga's expert infringement report, his declaration in support of this opposition, and his deposition testimony, taken in context, clearly indicate that Mr. Cadorniga conducted an infringement analysis under the doctrine of equivalents.

  B.  Bridgestone Did Not "Clearly And Unmistakably" Surrender Equivalents

Acushnet further argues that it is entitled to summary judgment of non-infringement because the "'852 patent specifically identified golf ball covers with a thickness less than 1 mm, proceeded to criticize such covers as resulting in poor performance characteristics, and then intentionally and specifically excluded such covers from the claims." (D.I. 363 at 14). In fact, the '852 patent does not clearly and unmistakably disclaim covers having a thickness of less than 1 mm.

The '852 patent discloses that the intermediate layer has a thickness of at least 1 mm, and that with "a thickness of less than 1 mm repulsion is lowered to reduce flying distance" (*id*. at Ex. 1, col. 3, lines 28-33). Similarly, the '852 patent indicates that the cover has a thickness of 1 to 3 mm and a "cover less than 1 mm is low in durability such as cut resistance" (*id*. at col. 3, lines 61-63). However, at no point does the '852 patent expressly disclaim, criticize or otherwise expressly exclude thicknesses of less than 1 mm. The 'patent merely indicates that either "repulsion is lowered" or the cover may be "low in durability." At no point does the '852 patent say that either of these cases result in a golf ball that is not part of the

invention of the '852 patent; or that somehow a ball fails to achieve the objects of the invention. These statements merely indicate that some limited attributes may be affected by reducing the thickness. There is no clear indication that stated affects to these attributes result in a golf ball which is not practicing the invention of the '852 patent. In fact, there are no statements that any reduced thicknesses adversely affect the feel or controllability of the golf ball of the '852 patent.

A patentee is barred from arguing infringement under the doctrine of equivalents only if there is a "clear and unmistakable surrender of subject matter." *Augustine Med.*, 181 F.3d at 1299. "In determining whether there has been a clear and unmistakable surrender of subject matter, the prosecution history must be examined as a whole." *Bayer AG v. Elan Pharms., Inc.*, 212 F.3d 1241, 1252 (Fed. Cir. 2000). Arguments or statements must be viewed in context because every statement by an applicant during prosecution to distinguish prior art does not create a separate estoppel. *Cybor Corp. v. FAS Techs., Inc.*, 138 F.3d 1448, 1460 (Fed. Cir. 1998) (*en banc*). When relying on the written description of a patent to form the basis of a disclaimer, the written description must contain a "clear disavowal" of the subject matter alleged to be surrendered. *Liebel-Flarsheim*, 358 F.3d at 908.

No such "clear and unmistakable" surrender occurred with the '852 patent. The '852 patent states:

> an object of the present invention is to provide a solid golf ball which is improved in feeling and controllability while maintaining the superior flying performance and durability which are characteristic of solid golf balls, that is, improved in total balance.

(D.I. 363 at Ex. 1, col. 1:65 to col. 2:2).

Thus, the '852 patent is directed to obtaining a golf ball which improves "feeling and controllability" without sacrificing performance attributes which are "characteristic of solid golf balls" (*id.*). There is no explanation as to which other "solid balls" are being referred to, or

their relative performance characteristics with respect to the overall invention. "The fact that a patent asserts that an invention achieves several objectives does not require that each of the claims be construed as limited to structures that are capable of achieving all of the objectives." *Liebel-Flarsheim*, 358 F.3d at 908 (*citing Resonate Inc. v. Alteon Websystems, Inc.*, 338 F.3d 1360, 1367 (Fed. Cir. 2003)); *Northrop Grumman Corp. v. Intel Corp.*, 325 F.3d 1346, 1355 (Fed. Cir. 2003); *Honeywell Inc. v. Victor Co. of Japan, Ltd.*, 298 F.3d 1317, 1325-26 (Fed. Cir. 2002).

Acushnet relies primarily on *SciMed Life Systems, Inc. v. Advanced Cardiovascular Systems, Inc.*, 242 F.3d 1337 (Fed. Cir. 2001), to advance its argument that the '852 patent disclaims equivalents with regard to the intermediate layer and cover thicknesses. In *SciMed*, however, the Federal Circuit noted that the written description stated unequivocally that "all embodiments of the present invention" were limited to the coaxial catheter design, and it is "difficult to imagine how the patents could have been clearer in making the point that the coaxial lumen configuration was a necessary element of every variant of the claimed invention. *Id.* at 1344. No such unequivocal disclaimer exists in the '852 patent. *See Fiber Optic Designs, Inc. v. Seasonal Specialties, LLC*, 172 Fed. Appx. 995, 998 (Fed. Cir. 2006) (finding that repeated reference to an invention "without current-limiting circuitry" in the specification did not limit the claims to only products "without current-limiting circuitry" because those statements did not "express that commercial embodiments of the invention will never include such circuitry"); and *Honeywell Inc. v. Victor Co. of Japan, Ltd.*, 298 F.3d 1317, 1325 (Fed. Cir. 2002) (finding that there was no "clear" disclaimer which required the claims to be limited to an embodiment that solved all of the identified problems with the prior art, because there was no "broad and unequivocal" language to evidence such disclaimer).

The '852 patent is directed to a golf ball having improved feel and controllability, and indicates that "repulsion is lowered" when the intermediate layer is less than 1 mm or the cover is low in durability when less than 1 mm. However, the '852 patent makes it clear that these are "characteristic[s] of solid golf balls" which can be maintained by the present invention, even when feel and control are improved. There is no definition of the solid golf balls being referred to as the reference, and thus the fact that the '852 patent teaches that either durability or repulsion may be "reduced," is merely a relative indication of a property that can be affected, as opposed to a clear and unmistakable disclaimer of all thicknesses less than 1 mm. The mere fact that the '852 patent discloses various performance parameters as objectives "does not require that [] the claims be construed as limited to [golf balls] that are capable of achieving all of the objectives." *Liebel-Flarsheim*, 358 F.3d at 908. This is particularly true in this case where the durability and repulsion are not express objectives of the invention and are compared relative to undefined "solid golf balls."

As such, with regard to the cover and intermediate layer thicknesses discussed in the '852 patent, no "clear and unmistakable" disclaimer of equivalents exists such that the asserted claims of the '852 patent are not entitled to any additional scope under the doctrine of equivalents.

C.     Bridgestone's Interrogatory Responses Were Sufficient And Proper

Finally, Acushnet argues that it is entitled to summary judgment of non-infringement because of an alleged failure by Bridgestone to "identify the factual basis in support of [its doctrine of equivalents] argument in response to Acushnet's contention interrogatories." (D.I. 363 at 16). This issue has been fully briefed already, and is pending before the Special

Master.  This baseless allegation is an improper second attempt at a motion for sanctions in the guise of a summary judgment motion.

CONCLUSION

Bridgestone requests that Acushnet's Motion for Summary Judgment of Non-Infringement of U.S. Patent 5,553,852 be denied.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Leslie A. Polizoti*
Jack B. Blumenfeld (#1014)
Leslie A. Polizoti (#4299)
1201 N. Market St.
P.O. Box 1347
Wilmington, DE 19801
(302) 658-9200
*Attorneys for Bridgestone Sports Co., Ltd.*
*and Bridgestone Golf, Inc.*

OF COUNSEL:
Robert M. Masters
Scott M. Flicker
PAUL, HASTINGS, JANOFSKY & WALKER LLP
875 15th St., N.W.
Washington, DC 20005
(202) 551-1700

April 30, 2007

CERTIFICATE OF SERVICE

I certify that on May 7, 2007 I electronically filed the foregoing with the

Clerk of the Court using CM/ECF, which will send notification of such filing(s) to the

following:

> Richard L. Horwitz, Esquire
> POTTER ANDERSON & CORROON LLP
> Hercules Plaza, 6th Floor
> 1313 North Market Street
> Wilmington, DE 19801

I further certify that I caused copies to be served upon the following on

May 7, 2007 in the manner indicated:

**BY HAND & E-MAIL**

> Richard L. Horwitz, Esquire
> POTTER ANDERSON & CORROON LLP
> 1313 N. Market Street
> Wilmington, DE 19801

**BY E-MAIL and FEDERAL EXPRESS**

> Joseph P. Lavelle, Esquire
> HOWREY LLP
> 1299 Pennsylvania Avenue, NW
> Washington, DC 20004

> /s/ Leslie A. Polizoti
> Leslie A. Polizoti (#4299)
> MORRIS, NICHOLS, ARSHT & TUNNELL LLP
> Wilmington, DE 19801
> (302) 658-9200
> lpolizoti@mnat.com