IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

BRIDGESTONE SPORTS CO., LTD.            )
and BRIDGESTONE GOLF, INC.,             )
                                        )
              Plaintiffs,               )        C.A. No. 05-132 (JJF)
                                        )
      v.                                )        **REDACTED –**
                                        )        **PUBLIC VERSION**
ACUSHNET COMPANY,                       )
                                        )
              Defendant.                )

**BRIDGESTONE'S ANSWERING BRIEF IN OPPOSITION TO ACUSHNET'S MOTION
FOR SUMMARY JUDGMENT OF INVALIDITY OF U.S. PATENT NO. 6,679,791**

MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Jack B. Blumenfeld (#1014)
Leslie A. Polizoti (#4299)
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899
(302) 658-9200

*Attorneys for Bridgestone Sports Co., Ltd.
and Bridgestone Golf, Inc.*

OF COUNSEL:
Robert M. Masters
Scott M. Flicker
PAUL, HASTINGS, JANOFSKY & WALKER LLP
875 15th St., N.W.
Washington, DC 20005
(202) 551-1700

Original Filing Date:  April 30, 2007
Redacted Filing Date:  May 7, 2007

## TABLE OF CONTENTS

NATURE AND STAGE OF THE PROCEEDINGS ...................................................... 1

SUMMARY OF ARGUMENT .................................................................................... 1

STATEMENT OF FACTS ............................................................................................ 3

      A.    The '791 Patent ................................................................................... 3
      B.    The Prosecution History of the '791 Patent .......................................... 5
      C.    The Asserted Claims of the '791 Patent ................................................ 5
      D.    There Is No Dispute That Hardness Gradients Were Known In The Art ...................................................................................................... 6
      E.    Bridgestone's Expert Testimony Regarding *Inherent* Disclosure – Not Enablement ................................................................................. 8
      F.    Acushnet's Interrogatory Responses Are Silent On Any Factual Bases For Invalidity ........................................................................... 9
      G.    Dr. Felker's Assertions With Respect to Enablement of "At Least 22" In the '791 Patent Are Insufficient To Support A Holding of Invalidity ........................................................................................... 10
      H.    Dr. Felker Provides No Allegations of Non-Enablement of Claims That Do Not Recite "Gradually Increasing" .......................................... 11

ARGUMENT .............................................................................................................. 11

    I.    LEGAL PRINCIPLES ............................................................................ 12

    II.    ACUSHNET'S ASSERTIONS REGARDING LACK OF ENABLEMENT OF "AT LEAST 22" ARE INSUFFICIENT AND INCORRECT ...................................................................................... 14

      A.    Acushnet Ignores The Proper Enablement Analysis Specified By The Federal Circuit ........................................................................... 14
      B.    Acushnet's Argument Of Enablement Ignores The Proper Legal Precedent ......................................................................................... 15

          1.    Core Gradients Are "Predictable" ............................................... 15
          2.    Patent Specifications Are Not Manufacturing Specifications ............................................................................. 16
          3.    Core Gradients Were Well-Known In The Art ............................. 17
          4.    The '791 Patent's Disclosure Is More Than Sufficient To Enable The Claims In Question ................................................. 18
          5.    The '791 Patent Examples Are Specific And Enable Broad Claims .................................................................................... 21
          6.    Bridgestone Does Not Seek To Broaden The Claim Scope Beyond That Issued ............................................................... 23

        C.      Acushnet Also Cannot Rely on Dr. Felker's Arguments.........................24

III.    ACUSHNET'S ASSERTIONS REGARDING LACK OF
        ENABLEMENT OF CLAIMS THAT DO NOT RECITE "GRADUALLY
        INCREASING" ARE INSUFFICIENT AND INCORRECT ............................25

        A.      The Proper Analysis Under *AK Steel*.......................................................25
        B.      Acushnet Ignores *AK Steel* And Bases Its Argument On Attorney
                Conjecture.................................................................................................25
        C.      Acushnet's Attorney Arguments Are Also Incorrect................................26

IV.     ACUSHNET DID NOT DISCLOSE THE ARGUMENT THAT CLAIMS
        THAT DO NOT RECITE "GRADUALLY INCREASING" ARE NOT
        ENABLED IN ITS CONTENTION INTERROGATORIES OR ITS
        EXPERT REPORTS.....................................................................................28

CONCLUSION...............................................................................................................28

<u>TABLE OF AUTHORITIES</u>

CASES

*Abbott Labs. v. Geneva Pharms., Inc.,*
    182 F.3d 1315 (Fed. Cir. 1999)............................................................12

*AK Steel Corp. v. Sollac & Ugine,*
    344 F.3d 1234 (Fed. Cir. 2003).....................................................*Passim*

*ArthoCare Corp. v. Smith & Nephew, Inc.,*
    310 F. Supp. 2d 638 (D. Del. 2004), *aff'd in part, vacated in part on other grounds,*
    2005 U.S. App. LEXIS 8108 (Fed. Cir. 2005) ........................................28

*CFMT, Inc. v. YieldUp Int'l Corp.,*
    349 F.3d 1333 (Fed. Cir. 2003)..............................................13, 16, 19

*Continental Can Co. v. Monsanto Co.,*
    948 F.2d 1264 (Fed. Cir. 1991).............................................................20

*In re Robertson,*
    169 F.3d 743 (Fed. Cir. 1999)..............................................................20

*In re Wands,*
    858 F.2d 731 (Fed. Cir. 1988)......................................................*Passim*

*Invitrogen Corp. v. Clontech Labs. Inc.,*
    429 F.3d 1052 (Fed. Cir. 2005).............................................................12

*LizardTech, Inc. v. Earth Res. Mapping, Inc.,*
    424 F.3d 1336 (Fed. Cir. 2005)........................................................13, 18

*Massachusetts Institute of Technology v. A.B. Fortia,*
    774 F.2d 1104, 227 USPQ 428 (Fed. Cir. 1985) ...................................13

*Philips Elecs. N. Am. Corp. v. Contec Corp.,*
    C.A. No. 02-123-KAJ (D. Del., April 5, 2004) .....................................28

*Phillips v. AWH Corp.,*
    415 F.3d 1303 (Fed. Cir. 2005) (en banc).............................................12

*Spectra-Physics, Inc. v. Coherent, Inc.,*
    827 F.2d 1524 (Fed. Cir. 1987)......................................................14, 17, 22

*Union Oil Co. v. Atl. Richfield Co.,*
    208 F.3d 989 (Fed. Cir. 2000).........................................................13, 16, 19

**STATUTES**

35 U.S.C. § 112........................................................................................................*Passim*

**OTHER AUTHORITIES**

Fed. R. Civ. P. 37(c)(1)........................................................................................28

## NATURE AND STAGE OF THE PROCEEDINGS

This is a patent infringement action brought by Plaintiffs Bridgestone Sports Co., Ltd. and Bridgestone Golf, Inc. (collectively "Bridgestone") against Defendant Acushnet Company ("Acushnet") in March 2005. Bridgestone asserts that various Acushnet golf balls infringe seven patents, including U.S. Patent No. 6,679,791 ("the '791 Patent"; Ex. 1), which is directed to structural features of golf balls.

On April 13, 2007, the parties cross-moved on the validity of Bridgestone's '791 Patent. Bridgestone moved for summary judgment that its '791 Patent was not invalid for, among other things, lack of enablement (D.I. 349), and Acushnet moved for summary judgment that all asserted claims were not enabled (D.I. 380). This is Bridgestone's answering brief in opposition to Acushnet's motion.

## SUMMARY OF ARGUMENT

Acushnet argues that claims 11, 13, 16 and 26 of the '791 Patent are invalid because the recitation of a core hardness difference of "at least 22" between its surface and center is not enabled under 35 U.S.C. § 112, first paragraph. Acushnet also argues that claims 13, 16 and 26 of the '791 Patent are invalid because they do not recite a core hardness profile that "gradually increases," and are therefore not enabled under 35 U.S.C. § 112, first paragraph.

Acushnet, however, cannot meet its burden of proving these assertions of invalidity by clear and convincing evidence – let alone the additional burden required for summary judgment – because it has failed to perform the correct legal analysis for enablement. To determine whether a claim is enabled, the claim must first be construed as one of ordinary skill in the art at the time of the invention would understand it. Then, the construed claim must be compared to the specification, as understood by one of ordinary skill in the art, to determine

- 1 -

whether its scope is enabled thereby (*i.e.*, whether one of ordinary skill could practice the claimed invention without undue experimentation). Acushnet has completely failed to perform this analysis. It has failed to provide <u>any</u> factual basis as to how one of ordinary skill in the art would construe the scope of the claim or would have understood the underlying specification, with or without undue experimentation. Acushnet has, instead, offered only attorney argument and conjecture. Thus, Acushnet cannot meet its burden to show that no reasonable jury could find that the claims of the '791 Patent are fully enabled.

Specifically, Acushnet attempts to support its argument that "at least 22" is not enabled only by attorney argument. Acushnet does not cite to any of its own experts' testimony to support these arguments – instead, it cites testimony of Bridgestone's validity expert, John Calabria. That testimony, however, has <u>nothing</u> at all to do with what is required for enablement. It is testimony about what is required to prove an <u>inherent</u> disclosure of core gradients. The legal standard for enablement is vastly different than the legal standard to show an inherent disclosure.

Acushnet also supports its argument that claims 13, 16 and 26 are not enabled – because the phrase "gradually increasing" does not appear therein – by pure attorney argument. Acushnet does not cite any factual evidence to support its position. Nor did Acushnet's invalidity expert witness, Dr. David Felker, offer an opinion on this issue. Thus, Acushnet has absolutely no factual basis from which to assert that claims 13, 16 and 26 are not enabled because they do not recite "gradually increasing."

In fact, this is the first time Bridgestone has even seen this argument. It appeared in no contention interrogatories, and was not advanced by any of Acushnet's expert witnesses. Acushnet should be precluded from advancing this argument now.[1]

## STATEMENT OF FACTS

A.    The '791 Patent



The '791 Patent is directed to a solid, multilayer golf ball of "at least three layers" (Ex. 1 at col. 1:6-8). Figure 1 shows a core (1), a cover (2), and an intermediate layer (3). The intermediate layer (3) is made of a resin material that is harder than the cover and the core surface. The core has a hardness which increases from the center (C) to the surface (S), and the difference in JIS-C hardness between the center (C) and surface (S) is "most preferably at least 22 units" (id. at col. 3:32-35). This combination of core, intermediate layer and cover physical properties provides improved distance, without diminishing controllability and feel (id. at col. 1:31-35).

Regarding the core, the '791 Patent teaches that the hardness of the surface of the core is to be higher than the hardness of the center of the core by "at least 18, preferably at least 20, and most preferably at least 22 units."[2] (Id. at col. 3:33-35). It is this "difference in

---

[1]    Acushnet has also moved for summary judgment that some of its patents are not invalid because "Bridgestone has offered no evidence – in the form of expert testimony or otherwise – to support its claim that the Lynch patents are invalid" under 35 U.S.C. § 112 (D.I. 359 at 2). There should be no double standard. Acushnet's motion should be denied on this basis alone.

[2]    Acushnet has misinterpreted this portion of the specification as "preferably 22, and most preferably 25" (D.I. 380 at 5) – adding confusion to the issue.

hardness" that "gives the ball a low spin when hit with a driver (number 1 wood), enabling it to travel well and thus attain a good total distance." (*Id*. at col. 3:35-39).

Indeed, the '791 Patent teaches that "[i]t is critical for the core to have an optimized hardness profile in which the hardness gradually increases radially outward from the center toward the outside edge or surface of the core. That is, the core has a higher hardness at the surface than at the center." (*Id*. at col. 3:26-30). This "optimized hardness profile," where the core surface has a higher hardness (22 points in the claims) than the center, provides the improved performance. (*Id*. at col. 3:35-36).

The '791 Patent's specification provides specific examples of cores made according to its disclosure in Table 3. (*Id*. at col. 7-8). These cores had a center hardness of around 55 to 61 degrees JIS-C and a surface hardness of around 78 to 83 JIS-C, yielding core hardness differences of around 23 or 24 JIS-C. These inventive cores are contrasted with "comparative examples[,]" which have a "small or flat hardness profile" (4 points), a "noticeable, yet gradual, hardness profile" (16 points), and "distinct hardness profiles," (24 points, but did not have the claimed intermediate layer). (*Id*. at col. 6). As shown in Table 4 of the '791 Patent, only the examples made according to the claims of the '791 Patent achieve the goal of the invention - "good" distance, spin, and feel characteristics. (*Id*. at col. 7-8).

Thus, the '791 Patent is directed to providing a combination of a core, an intermediate layer and a cover, each having specific physical properties. It is this combination of components and physical properties that provides the benefits of the invention – improved performance. (*Id*. at col. 5:29-33).

B.    The Prosecution History of the '791 Patent

During prosecution of the application which lead to the '791 Patent, the patent examiner issued three office actions, rejecting the claims on prior art grounds. (Ex. 2 at 2-7, 18-23, and 36-40). However, not once during prosecution did the Examiner reject any of the issued independent claims 1, 13 and 24 under 35 U.S.C. § 112 as being non-enabled. Nor did the Examiner object to: (1) any of the issued independent claims 1, 13 and 24 for reciting "at least 22;" or (2) either of the issued independent claims 13 and 24 for not reciting a "gradually increasing" hardness in the core.

Further, almost half of the Applicant's arguments during prosecution relied upon differentiating the features of the "intermediate layer" from the prior art. (*Id.* at 13-16, 28-33, and 49-51). The combination of this "intermediate layer," along with the recited "cover" and "core," is what the '791 Patent claims as its invention. (Ex. 1 at cols. 8-10, claims 1, 13 and 24). It is this combination that provides the benefits of the invention. (*Id.* at col. 5:29-33).

C.    The Asserted Claims of the '791 Patent

Bridgestone is asserting that various Acushnet products infringe claims 11, 13, 16 and 26 of the '791 Patent. (*Id.* at cols. 8-10). There are two parts of these claims at issue in Acushnet's motion. First, claim 11 (*via* its dependency from independent claim 1), recites:

> A golf ball comprising a rubbery elastic core ... wherein ... said elastic core has a hardness which gradually increases radially outward from the center to the surface thereof, and a difference in JIS-C hardness of at least 22 between the center and the surface.

(*Id.* at cols. 8-9).

Second, claims 13, 16 (via its dependency from claim 13) and 26 (via its dependency from claim 24) recite:

> A golf ball comprising a rubbery elastic core ... wherein ... said
> elastic core has a hardness at the center and a hardness at the
> surface thereof which is greater than the hardness at the center
> thereof, and a difference in JIS-C hardness of at least 22 between
> the center and the surface.

(*Id.* at cols. 9-10).

Both portions recite a hardness difference of "at least 22" between the center and

surface of the core.   Claim 11 specifies that the hardness "gradually increases" between the

center and surface.

### D.    There Is No Dispute That Hardness Gradients Were Known In The Art

Acushnet argues that the '791 Patent is not enabled because it does not "contain a

single sentence explaining what core gradients are, how they form, how they are created, or any

other similar teaching" (D.I. 381 at 9).   A few sentences later, however, Acushnet acknowledges

that "[g]olf balls with core gradients of more than 22 were known in the art before the '791

patent" (*id.* at 10).   That is consistent with what Acushnet's experts have opined:

> I agree ... that formation of hardness gradients in cured rubbers is
> well-known in rubber chemistry. Scientists and engineers working
> on rubber molding have known about hardness gradients for
> decades. Much effort has gone into measuring and modeling the
> extent of cure in a molded rubber part. Also, academics have
> written papers on the modeling of the extent of cure in molded
> rubber parts.

(Ex. 3, Felker Rpt. at 40).   Another of Acushnet's experts, Dr. Jack Koenig stated:

> Gradients in rubber have necessarily existed from the first time
> rubber articles were fabricated over a hundred years ago.  In short,
> a gradient is an inherent quality of rubber that one of ordinary skill
> in the golf ball art in 1995 would understand.

(Ex. 4, Koenig Rpt. at 63, ¶ 302).

Acushnet's experts have also pointed out that hardness gradients are known to be provided in prior art golf ball cores. Specifically, Dr. Felker opined that:

> [h]ardness gradients were known to those in the golf ball field before … (March 1996). The formation of a hardness gradient in the core is a natural result of the manufacturing process for solid rubber golf balls, and this too was well known before the Bridgestone patents.

(Ex. 3 at 40). Dr. Koenig also stated that the molding processes for golf balls "produce a gradient hardness in the physical and mechanical properties of the rubber from the center to the surface." (Ex. 4 at 64, ¶ 308).

In fact, Dr. Felker has identified many U.S. Patents that he says discuss core hardness gradients, such as U.S. Patent Nos. 4,714,253; 5,002,281; 5,184,828; 5,711,723; 5,730,663; and 6,645,496. (Ex. 3 at 41-42). Dr. Felker has also pointed out that other patents, such as U.S. Patent Nos. 5,830,085; 6,390,935; and 6,386,993, discuss the provision of core hardness gradients of more than 22 (5-25; 8-25; and 20-40, respectively), such as is claimed in the '791 Patent. (Ex. 3 at 42).

Bridgestone does not disagree with these observations. The cited evidence shows that the provision of hardness gradients in golf ball cores – and, necessarily, how to make these gradients – was known before the '791 Patent. Indeed, two of the other Bridgestone patents-in-suit (the '834 and '707 Patents – which Acushnet does not challenge the enablement of) are themselves directed to the provision of core gradient technology, and were filed before the '791 Patent. Bridgestone's '791 Patent cannot be read in a vacuum, but together with this body of information that is known to one of ordinary skill in the art.

E.     Bridgestone's Expert Testimony Regarding *Inherent*
       Disclosure – Not Enablement

John Calabria, Bridgestone's validity expert, provided an expert report responding

to Acushnet's position of invalidity of, *inter alia*, Bridgestone's '707 and '791 Patents.  Despite

the instant Motion being directed to the '791 Patent, Acushnet draws heavily on arguments and

testimony of Mr. Calabria in relation to Acushnet's allegations regarding the '707 Patent.

To support his opinion that claim 1 of the '707 Patent (Ex. 5, U.S. Patent No.

5,782,707) is invalid, Dr. Felker has alleged that example ball 2 shown in Tables 1 and 2 of EP 0

633 043 ("EP '043") inherently discloses a particular center hardness.  (Ex. 3 at 48-49).  Dr.

Felker was forced to make an inherency argument because example 2 does not disclose the

hardness of the core center.

Mr. Calabria disagrees with this inherency argument, namely that the core center

of example 2 of EP '043 necessarily has (*i.e.*, must have) a particular core center hardness.  (Ex.

6, Calabria Rpt. at App. C, ¶¶ 17-28).  Mr. Calabria supported this conclusion by pointing out

that, *inter alia*, EP '043 failed to disclose: (1) a specific core "recipe" (*i.e.*, the name brands of

materials); (2) how the materials are mixed prior to molding; (3) the pressure that the core was

molded at; and (4) the specific cavity size and shape used to form the cores.  *Id*.  Because of this

lack of specificity, one of ordinary skill could freely choose various materials, mixing processes,

pressures, and cavities to form the invention disclosed in EP '043 (which itself has noting to do

with core gradients).   But, these various materials, mixing processes, pressures, and cavities

could form cores that have gradients both inside and outside the claimed range of 8 to 20 – as

both Bridgestone and Acushnet's testing shows.  (*Id*. at App. C, ¶¶ 47-51; Ex. 7, Acushnet EP

'043 Rpt. at 1).  Due to this variability, Mr. Calabria concluded that example ball 2 of EP '043

cannot be said to inherently disclose any one particular core center hardness – and is therefore useless to show an <u>inherent</u> disclosure thereof. (Ex. 6 at App. C, ¶¶ 20 and 28).

Thus, the arguments and testimony of Mr. Calabria cited by Acushnet are in connection with an analysis of inherency, not of enablement. Nowhere does Mr. Calabria opine that one of ordinary skill in the art, at the time of the invention of the '791 Patent, would require a disclosure of specific materials, mixing processes, pressures, etc. in order to understand that a particular claimed hardness gradient range was <u>enabled</u>.

> F.    Acushnet's Interrogatory Responses Are
>        Silent On Any Factual Bases For Invalidity

Acushnet's December 18, 2006 final interrogatory responses contend the following:



(Ex. 8 at A-347; A-371; A-392; and A-440).

None of the contentions (1) to (4) provide any further reasoning or arguments as to why the quoted portions would not meet the definiteness, written description or enablement standards set by 35 U.S.C. § 112. Rather, each simply recites what Acushnet purports to be claim language, and concludes it to be invalid as indefinite, lacking written description, or non-enabled.

Contentions (3) and (4) fail to accurately quote claims 16 and 26, which do not include a recitation that the "elastic core has a hardness which gradually increases radially outward." This feature is expressly recited in claim 11 (*via* independent claim 1) only.

> G.    Dr. Felker's Assertions With Respect to Enablement of "At Least 22" In the '791 Patent Are Insufficient To Support A Holding of Invalidity

Acushnet's invalidity expert, Dr. Felker, says that the asserted claims are invalid because they are not enabled (emphasis added):

> The '791 [Patent]'s specification shows that Bridgestone did not invent any technology embodied in the '791 patent *which fulfills the entire range of the claim limitation, "[said elastic core] has a difference in JIS-C hardness of at least 22."*

(Ex. 3 at 71 (emphasis added)). This is the entirety of Dr. Felker's non-enablement opinion.

Dr. Felker's entire support for this conclusion is found on a bit over two pages of his report. First, he provides his assumption that the claimed range of "at least 22" comprehends that a "maximum theoretical core hardness gradient is 100" JIS-C. (*Id.* at 71-72). Dr. Felker does not address how one of ordinary skill would interpret the claimed range of "at least 22."

Second, Dr. Felker asserts that the specification discloses only a golf ball with a single layer core that can only provide a maximum gradient of "40 or 50." (*Id*. at 72). But, he does not address how one of ordinary skill would interpret the specification's disclosure.

Third, Dr. Felker asserts that the '791 Patent's specification "teaches away from cores with gradients over 30." (*Id*. at 73). But, again, he does not address why one of ordinary skill would believe this to be so. Further, he does not explain the contradiction between this conclusion and: (1) his analysis that the '791 Patent teaches a method for creating core gradients of "40 or 50;" (2) the '791 Patent's indication that exemplary embodiments of the core have a center hardness of at least 50 JIS-C, and surface hardness of 90 or less. (Ex. 1 at col. 3:48-51).

Dr. Felker's failings rise to the level that Bridgestone has filed a *Motion for Summary Judgment of No Invalidity* of the '791 Patent. D.I. 349, 350. Bridgestone's Motion explains in detail why Dr. Felker's opinions cannot provide the requisite support for any reasonable jury to find that the '791 Patent is invalid due to non-enablement.

H.    Dr. Felker Provides No Allegations of Non-Enablement
      of Claims That Do Not Recite "Gradually Increasing"

Dr. Felker provides absolutely no discussion or allegation in his expert report (Ex. 4) that the independent claims of the '791 Patent that do not recite a "gradually increasing" core hardness – asserted claims 13, 16 and 26 – are not enabled simply <u>because</u> they do not recite "gradually increasing." This argument is new, is found only in Acushnet's Motion, and is based purely on attorney argument - without any factual basis.

<u>ARGUMENT</u>

Acushnet has not met its burden of showing that there is no genuine issue of material fact and the moving party is entitled to a judgment as a matter of law. It offers nothing

more than attorney argument, and does not even apply the enablement analysis correctly (*see* D.I.

350, Bridgestone's Summary Judgment Brief Of No Invalidity Of The '791 Patent at 4-6).

## I.    LEGAL PRINCIPLES

"Summary judgment is proper when there is no genuine issue of material fact and

the moving party is entitled to a judgment as a matter of law." *Abbott Labs. v. Geneva Pharms.,*

*Inc.*, 182 F.3d 1315, 1317 (Fed. Cir. 1999) (affirming summary judgment of invalidity).

A patent is presumed to be valid. Acushnet has the burden, by clear and

convincing evidence, to show facts supporting a conclusion of invalidity. *AK Steel Corp. v.*

*Sollac & Ugine*, 344 F.3d 1234, 1238-39 (Fed. Cir. 2003).

Claims are enabled when the specification describes "the manner and process of

making and using [the invention], in such full, clear, concise, and exact terms as to enable any

person skilled in the art to which it pertains, or with which it is most nearly connected, to make

and use the [invention]." This requirement "is satisfied when one skilled in the art, after reading

the specification, could practice the claimed invention without undue experimentation." *AK Steel*,

344 F.3d at 1244.

An "enablement inquiry typically begins with a construction of the claims." *AK*

*Steel*, 344 F.3d at 1241. When construing the claims, the terms therein are generally given their

ordinary and customary meaning to one of ordinary skill in the art, informed by the context of

the particular claim in which the term appears, and in the context of the rest of the patent,

including the specification. *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312 (Fed. Cir. 2005) (en

banc).

Whether the construed claim is enabled is a question of law, *Invitrogen Corp. v.*

*Clontech Labs. Inc.*, 429 F.3d 1052, 1070 (Fed. Cir. 2005), based on underlying factual

considerations of whether "undue experimentation" is required by one skilled in the art. These considerations, commonly referred to as the *"Wands* factors," include: "(1) the quantity of experimentation necessary, (2) the amount of direction or guidance presented, (3) the presence or absence of working examples, (4) the nature of the invention, (5) the state of the prior art, (6) the relative skill of those in the art, (7) the predictability or unpredictability of the art, and (8) the breadth of the claims." *In re Wands*, 858 F.2d 731, 737 (Fed. Cir. 1988).

When considering the *Wands* factors, the Federal Circuit has emphasized that it is "undue" experimentation that is required to invalidate – even complex experimentation is not undue if the art typically engages in such experimentation. *Massachusetts Institute of Technology v. A.B. Fortia*, 774 F.2d 1104, 227 USPQ 428 (Fed. Cir. 1985).

Additionally, the amount of guidance in the specification does not have to rise to the level of a manufacturing schematic or a perfected, commercially viable, embodiment, nor contain examples explicitly covering the full scope of the claim language. *See CFMT, Inc. v. YieldUp Int'l Corp.*, 349 F.3d 1333, 1338 (Fed. Cir. 2003) and *Union Oil Co. v. Atl. Richfield Co.*, 208 F.3d 989, 997 (Fed. Cir. 2000). This "is because the patent specification is written for a person of skill in the art, and such a person comes to the patent with the knowledge of what has come before[, ... thus], it is unnecessary to spell out every detail of the invention in the specification; only enough must be included to convince a person of skill in the art that the inventor possessed the invention and to enable such a person to make and use the invention without undue experimentation." *LizardTech, Inc. v. Earth Res. Mapping, Inc.*, 424 F.3d 1336, 1345 (Fed. Cir. 2005).

Also, if an invention pertains to an art where the results are predictable, *e.g.*, in the mechanical arts, then disclosure of even a single embodiment can enable a broad claim. *Spectra-Physics, Inc. v. Coherent, Inc.*, 827 F.2d 1524 (Fed. Cir. 1987).

II.     ACUSHNET'S ASSERTIONS REGARDING LACK OF ENABLEMENT OF "AT LEAST 22" ARE INSUFFICIENT AND INCORRECT

A.     Acushnet Ignores The Proper Enablement Analysis Specified By The Federal Circuit

According to *AK Steel*, the enablement analysis that Acushnet must perform is to: (1) determine what "at least 22" would mean to one of ordinary skill[3]; and (2) determine whether one of ordinary skill would understand the specification to enable the construed range of "at least 22" without undue experimentation – such as by utilizing the *Wands* factors.

Acushnet has not performed this analysis in its Motion. Acushnet's Motion did not address what "at least 22" would mean to one of ordinary skill in the art at the time of the invention. Not once does Acushnet take a position as to the scope of the claimed range. Nor can they - Acushnet's invalidity expert, Dr. Felker, has also completely failed to address what "at least 22" would mean to one of ordinary skill in the art at the time of the invention. Thus, Acushnet has no factual basis from which to argue what "at least 22" would mean to one of ordinary skill in the art.

Similarly, Acushnet's Motion has not attempted to provide an analysis of what one of ordinary skill in the art at the time of the invention would understand to be disclosed by the specification of the '791 Patent. Nor has Acushnet attempted to analyze whether "undue

---

[3]     Acushnet has not argued that this term should be afforded anything else than its plain and ordinary meaning. Nor have they asked for this term to be interpreted by the Court. D.I. 228 at 14-16. Thus, plain and ordinary meaning must apply.

experimentation" would be necessary to enable the claimed range. In fact, other than reciting the words "undue experimentation" in its "applicable law" section, Acushnet does not even mention "undue experimentation." Acushnet cannot correct these errors – Dr. Felker has also completely failed to address this matter in his expert report.[4]

Because Acushnet has not conducted the correct legal analysis for enablement of the term "at least 22" in claims 11, 13, 16 and 26 of the '791 Patent, and has no factual predicate for such an analysis, Acushnet cannot show that no reasonable jury would find these claims enabled. Thus, Acushnet's Motion must fail.

### B.    Acushnet's Argument Of Enablement Ignores The Proper Legal Precedent

Rather than conducting a proper enablement analysis under the law, Acushnet attempts to confuse the record by presenting various attorney arguments that they allege support non-enablement of claims 11, 13, 16 and 26 of the '791 Patent. Not only are these arguments irrelevant (because they do not address the proper enablement analysis under *AK Steel*), they are factually inaccurate as well – and often ignore settled legal precedent.

### 1.    Core Gradients Are "Predictable"

Acushnet first argues that core gradients are "unpredictable." D.I. 381 at 9. However, Acushnet provides no factual support for this assertion. In fact, all of the evidence of record is contrary to such an assertion. Acushnet's experts – Dr. Felker and Dr. Keonig – both agree that core gradients are well known properties of rubber products and golf ball cores. (Ex. 3 at 40; Ex. 4 at 63-64). As Dr. Felker has pointed out, many prior U.S. Patents deal with core

---

[4]    On the other hand, Bridgestone's expert has opined that one of ordinary skill would find the correctly interpreted claimed range to be fully enabled by the specification. (Ex. 6 at App. E, ¶ 34).

hardness gradients – including two other Bridgestone patents-in-suit that Acushnet does not challenge the validity of.  (Ex. 3 at 41-42).  Neither Acushnet's nor Bridgestone's experts provides any opinion that the provision of core gradients is "unpredictable."

       2.      <u>Patent Specifications Are Not Manufacturing Specifications</u>

       Acushnet next argues that "the disclosure of the '791 patent does not enable the manufacture of a gradually increasing core gradient at any hardness greater than 22; does not enable all cores with a core gradient of greater than 22; and does not teach one of ordinary skill in the art to make cores with any core gradients other than the fairly narrow range of 23-24."  D.I. 381 at 9.

       Acushnet's arguments are contradictory.  Acushnet argues both that the '791 Patent does not enable core gradients "at any hardness greater than 22" and that it only discloses core gradients in the "range of 23-24."  "23-24" <u>is</u> greater than "22."

       Regarding Acushnet's argument that the "disclosure of the '791 patent does not enable the manufacture" of cores, the Federal Circuit has explained many times that this is not the requirement.  The amount of guidance in the specification does not have to rise to the level of a manufacturing schematic or a perfected, commercially viable, embodiment, nor contain examples explicitly covering the full scope of the claim language.  *See CFMT, Inc.* 349 F.3d at 1338 and *Union Oil*, 208 F.3d at 997.

       Regarding Acushnet's argument that the disclosure of the '791 Patent does not: (1) "enable all cores with a core gradient of greater than 22;" and (2) "teach one of ordinary skill in the art to make cores with any core gradients other than the fairly narrow range of 23-24," the Federal Circuit has also explained that this is not the standard.  What is required is that there be a reasonable enablement of the claimed range.  In fact, if an invention pertains to an art where the

results are predictable then disclosure of even a single embodiment can enable a broad claim. *Spectra-Physics, Inc. v. Coherent, Inc.*, 827 F.2d 1524, 1533 (Fed. Cir. 1987). The '791 Patent claims an invention in the "mechanical arts," discloses ranges of exemplary embodiments, and three very specific embodiments. This is quite enough to enable the claimed range under *Spectra-Physics*.

Acushnet also argues that the '791 Patent does not disclose how to make a "gradually increasing" core gradient, and that this feature is "critical." D.I. 381 at 10. This argument is incorrect because what the '791 Patent indicates is "critical" is "an optimized hardness profile." It is also irrelevant because Acushnet's very own experts have repeatedly indicated that core hardness gradients, and the ability to make them, was well known in the prior art. Ex. 3 at 40-42. In fact, a reference cited by the Examiner during the prosecution of the '791 Patent – U.S. Patent No. 5,803,833 to Nakamura *et al.* – disclosed a gradually increasing hardness gradient (as Acushnet recognizes – D.I. 381 at 4). As such, there was no reason to add detailed descriptions of how to form a "gradually increasing hardness" in the '791 Patent.

### 3. Core Gradients Were Well-Known In The Art

Acushnet next argues that the '791 Patent does not discuss:

> what core gradients are, how they form, how they are created, or any other similar teaching regarding core gradients. The '791 patent does not disclose how to form a core gradient in general, what chemicals are important, or even how the cores of the present patent differ from the cores of the prior art.

D.I. 381 at 9.

However, there is no requirement that the '791 Patent do any of this to enable the claimed range. Patent specifications are written for those of ordinary skill in the art, a critical point ignored by Acushnet. As Acushnet and its experts have explained in detail, core gradients

were known in the art before the '791 Patent. (Ex. 3 at 40; Ex. 4 at 63-64). In fact, Acushnet even admits in its Motion that "core gradients of more than 22 were known in the art before the '791 patent." D.I. 381 at 10. As such, there was no need to provide the kind of excruciating detail that Acushnet seems to argue should have been included. This "is because the patent specification is written for a person of skill in the art, and such a person comes to the patent with the knowledge of what has come before[, ... thus], it is unnecessary to spell out every detail of the invention in the specification; only enough must be included to convince a person of skill in the art that the inventor possessed the invention and to enable such a person to make and use the invention without undue experimentation." *LizardTech, Inc. v. Earth Res. Mapping, Inc.*, 424 F.3d 1336, 1345 (Fed. Cir. 2005).

Acushnet's argument that there is no indication of "how the cores of the present patent differ from the cores of the prior art" is also irrelevant to the issue of whether a patent satisfies 35 U.S.C. § 112. Acushnet has no prior art defenses to the '791 Patent.

4.    The '791 Patent's Disclosure Is More Than Sufficient
      To Enable The Claims In Question

Acushnet next argues that the specification "describes the process for making cores only in the broadest, most general terms." D.I. 381 at 10. Specifically, Acushnet argues that the '791 Patent discloses: (1) only the use of 1,4 polybutadiene, but no "brand, lot or grade thereof;" (2) that "any number of peroxides can be used," but no brands or "grades that work and do not work;" (3) that the "mold temperature can be between 150 and 190 degrees and the mold time can be between 12 and 20 minutes;" and (4) no "mold size, mold geometry, mold pressure, heat application technique, or mixing parameters." D.I. 381 at 10-11. These arguments are incorrect and irrelevant.

These arguments are incorrect because information regarding these different parameters, in the form of exemplary embodiments, are provided in cols. 2 and 3 of the '791 Patent. Examples of base rubbers are provided. (Ex. 1 at col. 2:26-32). Examples of metal salts of unsaturated carboxylic acids, and their relative weights, are provided. (*Id.* at col. 2:33-41). Examples of organic peroxides, and their relative weights, are provided. (*Id.* at col. 2:42-49). Examples of compounding ingredients, and their relative weights, are provided. (*Id.* at col. 2:50-67). Examples of processing parameters are provided. (*Id.* at col. 3:5-16). Examples of core weights are provided. (*Id.* at col. 3:17-26).

Further, Acushnet ignores the specific examples provided by the '791 Patent in Table 3. (*Id.* at cols. 6-8). In three different examples, specific amounts of the various core ingredients are listed (in parts by weight, or "pbw"), along with specific grades of both types of peroxide (footnotes 1 and 2), sulfur (footnote 3), and antioxidant. (*Id.* at cols. 6-8). Additionally, specific molding times (15 minutes) and molding temperatures (175° C) are provided. (*Id.* at cols. 6-8).

Further, Acushnet's arguments are irrelevant because the level of specificity it contends is necessary is not required for enablement. What is required for enablement is that "one skilled in the art, after reading the specification, could practice the claimed invention without undue experimentation." *AK Steel*, 344 F.3d at 1244. But, the amount of guidance in the specification does not have to rise to the level of a manufacturing schematic or a perfected, commercially viable, embodiment, nor contain examples explicitly covering the full scope of the claim language. *See CFMT, Inc.* 349 F.3d at 1338 and *Union Oil*, 208 F.3d at 997.

Acushnet has not disputed that one of ordinary skill could make cores that have gradients that meet the claimed range of "at least 22" using the disclosure of the '791 Patent's

specification, or that it would be <u>difficult</u> for one of ordinary skill in the art to make such cores (or even mentioned what would or would not constitute "undue experimentation."[5] Instead, Acushnet conflates the law regarding two distinct patent law concepts - inherency and enablement – in an attempt to manufacture some kind of non-enablement position. To do so, Acushnet cites various expert report positions and deposition testimony of Bridgestone's expert witness, John Calabria, out of context. These cited portions deal explicitly with Mr. Calabria's opinion that Bridgestone's '707 Patent is not obvious over a prior art reference – EP '043, and has nothing to do with the '791 Patent.

Specifically, Mr. Calabria's opinion concerning the '707 Patent was in response to Dr. Felker's opening expert report that claim 1 of the '707 Patent (Ex. 5) is invalid as being obvious in view of EP '043. Ex. 3 at 48-49. Dr. Felker alleged that example ball 2 shown in Tables 1 and 2 of EP '043 <u>inherently</u> discloses a particular center hardness, and that the inherently disclosed core center hardness provides a hardness gradient between 8 and 20, which is what is recited in claim 1 of the '707 Patent. (Ex. 3 at 48-49; Ex. 6).

To show an inherent disclosure, the extrinsic evidence "must make clear that the missing descriptive matter is necessarily present in the thing described in the reference, and that it would be so recognized by persons of ordinary skill." *Continental Can Co. v. Monsanto Co.*, 948 F.2d 1264, 1268 (Fed. Cir. 1991). The mere fact that "a certain thing may result from a given set of circumstances is not sufficient" to show inherency. *In re Robertson*, 169 F.3d 743, 745 (Fed. Cir. 1999) (citations omitted).

---

[5]       Acushnet has argued that the disclosure is merely an "invitation to experiment." This is also irrelevant. Patents, by their nature, are invitations for further experimentation. What is required for enablement is that the experimentation not be "undue." Acushnet provides no analysis as to what is or is not "undue experimentation."

Taking these standards into account, Mr. Calabria opined that the disclosure of EP '043 is insufficient to determine whether there is an <u>inherent</u> disclosure of the core center hardness of example ball 2 (*i.e.*, whether example ball 2 <u>must</u> have a certain center hardness value). (Ex. 6 at App. C, ¶¶ 17-28). Mr. Calabria supported this conclusion by pointing out reasons why the disclosure of EP '043 disclosed variability in several parameters that affect core center hardness, and that cores made according to EP '043 fall outside of the range of the '707 Patent. (*Id.* at App. C, ¶¶ 17-28 and 47-51). Acushnet's testing also shows this. (Ex. 7 at 1). Due to this variability, Mr. Calabria concluded that example ball 2 of EP '043 cannot be said to inherently disclose any one particular core center hardness – and is therefore useless to show an <u>inherent</u> disclosure thereof. (Ex. 6 at App. C, ¶¶ 20 and 28). In other words, the teachings of EP '043 are not limited to any particular core center hardness.

Thus, the arguments and testimony of Mr. Calabria cited by Acushnet are in connection with an analysis of <u>inherency</u>, not of <u>enablement</u>. Enablement and inherency are two entirely different legal theories. Nowhere does Mr. Calabria opine that one of ordinary skill in the art, at the time of the invention of the '791 Patent, would require a disclosure of specific materials, mixing processes, pressures, etc. in order to understand that a particular claimed hardness gradient range was <u>enabled</u>. Nor does Mr. Calabria indicate that these features are somehow "critical" to enablement as Acushnet alleges. D.I. 381 at 14. Nor does Mr. Calabria discuss what is required for a general understanding of core hardness profiles, as Acushnet alleges. D.I. 381 at 5.

### 5. The '791 Patent Examples Are Specific And Enable Broad Claims

Acushnet next argues that "while the patent does contain a few 'examples' of cores made under the '791 patent, the examples do more to obscure than to enable the core

gradient issue." D.I. 381 at 12. Whatever this means, Acushnet attempts to support this conclusion by arguing: (1) that the '791 Patent "does not state whether these examples have a 'gradually increasing' hardness profile;" (2) that the examples do not list "molding parameters which are critical to the invention;" and (3) the '791 Patent doesn't "explain how or why these examples work, or why other examples fail."

These arguments are, again, irrelevant and incorrect. They are irrelevant because Acushnet has not disputed that examples 1-3 of the '791 Patent do, in fact, fall within the scope of each of the asserted claims 11, 13, 16 and 26. Acushnet also does not appear to dispute that the '791 Patent falls within the mechanical arts (as they cannot). In such an instance, "if an invention pertains to an art where the results are predictable, *e.g.*, in the mechanical arts, then disclosure of even a single embodiment can enable a broad claim. *Spectra-Physics*, 827 F.2d at 1533. While Acushnet argues that the art is unpredictable, it does not offer anything other than attorney argument that this is so. In fact, as discussed above, even Acushnet's experts concede that the formation of core gradients is a well known process.

Acushnet's arguments are also incorrect. Acushnet's first argument, that the '791 Patent "does not state whether these examples have a 'gradually increasing' hardness profile," is incorrect, and inconsistent with Acushnet's concession that "the inventors made a few specific examples with the requisite gradient." D.I. 381 at 13. Because Acushnet seems to be arguing that a "gradually increasing" profile is a necessary part of the '791 Patent's invention, they cannot also logically argue that examples of the invention do not have such a feature.

Acushnet's second argument, that the examples do not list "molding parameters which are critical to the invention," is incorrect because these parameters are simply not necessary to enable a claim, as discussed in detail above.

Acushnet's third argument, that the '791 Patent doesn't "explain how or why these examples work, or why other examples fail," is incorrect because the '791 Patent very specifically indicates why the comparative examples fail.  The '791 Patent indicates that cores with hardness differences that are too small "allow[] the ball to take on too much spin when hit with a driver, so that it does not travel well and has a short run after it hits the ground." (Ex. 1 at col. 3, lines 38-42).  The '791 Patent also indicates that "a golf ball lacking the adequate intermediate layer prescribed by the present invention fails to attain[] the objects of the invention since it cannot adequately suppress spin when hit with a driver." (*Id.* at col. 4, lines 14-18). Examples 1-3 of Table 3 of the '791 Patent have cores and intermediate layers within the scope of the claimed invention.  Comparative examples 1 and 2 do not have the required core hardness parameters. (*Id.* at Table 3).    Comparative examples 3-5 do not have the required intermediate layer parameters.  (*Id.*).  As shown in Table 4, each of the comparative examples therefore have spin characteristics that are not "good." (*Id.* Table 4.)    It is the goal of the invention to provide a ball with "improved distance" that does not "diminish the controllability and feel" of the ball.

### 6.    Bridgestone Does Not Seek To Broaden The Claim Scope Beyond That Issued

Lastly, Acushnet argues that Bridgestone is trying to "broaden the claim so far that they sweep in prior art and balls that were already on the market, including the Pro V1 at issue in this case, which was on sale in the U.S. for months before the '791 Patent was filed in the United States." D.I. 381 at 14.  Acushnet misstates the facts concerning its own golf balls.

Acushnet's allegation that the "Pro V1" somehow qualifies as prior art to the '791 Patent is wrong because the earliest sale of a Pro V1 ball was in late 2000 – after the June 26, 2000 date of invention of the '791 Patent.  Thus, Pro V1 would not qualify as prior art against

the '791 Patent.  Acushnet has never before raised this issue and it is in fact precluded from raising any prior art allegations in the case.

Further, Acushnet's own testing records ███████████████████████████████ ███████████████████████ (Ex. 9 at AB 4633; 4636; 4642; 4639; and 4685), and thus fall under the scope of Bridgestone's '707 Patent – not the '791 Patent.  These balls are therefore irrelevant as prior art to the '791 Patent.

C.      Acushnet Also Cannot Rely on Dr. Felker's Arguments

Acushnet does not rely on any of its own experts' testimony to support its present Motion.  That is because their own experts completely contradict the attorney arguments regarding core hardness gradient espoused in the Motion.  In any event, even if Acushnet wanted to rely on expert testimony to establish how one of ordinary skill would interpret the claims and specification of the '791 Patent – they cannot.  Dr. Felker has completely failed to address such issues in his expert report.  (Ex. 3 at 71-73).

Dr. Felker has failed to even once address what range of core hardness gradients one of ordinary skill in the art at the time of the invention would understand to be enabled by the '791 Patent's specification.  Instead, Dr. Felker addressed what *he* believes the claimed range of "at least 22" to mean in an abstract "theoretical" sense – not in the context of the '791 Patent, and not from the point of view of one or ordinary skill in the art.  Further, Dr. Felker addressed only what *he* believes the specification of the '791 Patent to disclose (again in the abstract) – never even mentioning the *Wands* factors.  These failings are discussed in detail in Bridgestone's Motion for Summary Judgment of No Invalidity.  D.I. 349, 350.

Thus, Dr. Felker's analysis of enablement of "at least 22" is improper under *AK Steel* - and Acushnet cannot meet its burden to show that the claims of the '791 Patent are invalid.

III.    ACUSHNET'S ASSERTIONS REGARDING LACK OF ENABLEMENT
        OF CLAIMS THAT DO NOT RECITE "GRADUALLY INCREASING"
        ARE INSUFFICIENT AND INCORRECT

Acushnet argues that claims 13, 16 and 26 – which claim hardness gradients, but not ones that are "gradually increasing" – are not enabled because the '791 Patent's specification "teaches away from a core gradient that is not gradually increasing." D.I. 381 at 14. But, Acushnet has not presented sufficient evidence to meet its summary judgment burden. Acushnet's "teaching away" argument comes only from its attorneys – none of Acushnet's expert witnesses opined that claims 13, 16 or 26 are invalid because they teach away from a core that does not have a gradually increasing hardness.

A.    The Proper Analysis Under *AK Steel*

As discussed above, according to *AK Steel*, the enablement analysis that Acushnet must perform is to: (1) determine what "said elastic core has a hardness at the center and a hardness at the surface thereof which is greater than the hardness at the center thereof, and a difference in JIS-C hardness of at least 22 between the center and the surface" would mean to one of ordinary skill; and (2) determine whether one of ordinary skill would understand the specification to enable the construed limitation without undue experimentation – such as by utilizing the *Wands* factors. Acushnet has not performed this analysis in their Motion, and none of its experts has addressed this issue in an expert report.

B.    Acushnet Ignores *AK Steel* And Bases Its Argument On Attorney
       Conjecture

Acushnet bases its entire non-enablement argument in this regard on attorney conjecture. Acushnet first argues that the above-quoted portion of claims 13, 16 and 26 does not recite "gradually increasing" - but fails to provide any analysis of how one of ordinary skill

would interpret the claims. Thus, Acushnet cannot continue on with their legal analysis because of its failure to proffer factual testimony as to how one of ordinary skill in the art would interpret the phrase in question – which is required under *AK Steel*. The best Acushnet can do is put forth further repetitive attorney argument.

Nor, similarly, does Acushnet provide any factual evidence of how one of ordinary skill in the art at the time of the invention would interpret the '791 Patent's specification to determine what is or is not necessary to the invention. Rather, Acushnet selectively quotes portions of the specification, and ties it together by attorney argument, to proffer a position. But this is not enough under *AK Steel*.

Because Acushnet has not conducted the correct legal analysis to establish whether claims 13, 16 and 26 of the '791 Patent are not enabled because they do not recite "gradually increases," and has no factual predicate for such an analysis, Acushnet cannot show that no reasonable jury would find these claims enabled. Thus, Acushnet's Motion must fail.

C.     Acushnet's Attorney Arguments Are Also Incorrect

Acushnet's attorney argument that the '791 Patent "teaches away from a core gradient that is not gradually increasing" is incorrect. The '791 Patent is directed in part to a golf ball core that has an "optimized hardness profile." (Ex. 1 at cols. 2:11-13, 3:27, 4:2-3, and 5:29-31). When the '791 Patent is read in its entirety, it appears that this "optimized hardness profile" necessarily includes the feature of a specific difference in hardness between the center and surface (*see, e.g., id.* at 3:31-57), but not a hardness that "gradually increases" (*see, e.g., id.* at 4:3-4).

Acushnet's arguments are based on the '791 Patent's disclosure that:

It is critical for the core to have an optimized hardness profile in which the hardness gradually increases radially outward from the

- 26 -

> center toward the outside edge or surface of the core. That is, the
> core has a higher hardness at the surface than at the center.

(*Id*. at col. 3:26-31).  Acushnet argues that this section indicates that it is "critical" to have a

gradually increasing hardness.   While Bridgestone agrees that this section states that it is

"critical" to have an "optimized hardness profile," it disagrees that it is also "critical" or

necessary for the hardness to "gradually increase." Rather, a gradually increasing hardness is

simply a preferred embodiment of the "optimized hardness profile," as is clear from the

remainder of the specification.  For example, the '791 Patent also indicates that:

> Since the core has a hardness gradually increasing radially outward
> from the center to the surface thereof and <u>an optimized difference
> in hardness between the center and the surface</u> where the core is
> hardest …

(*Id*. at col. 4:1-5, <u>emphasis</u> added).  This section indicates that the gradually increasing hardness

and the "optimized" difference in hardness are <u>two different things</u>.  Further, the '791 Patent also

indicates that:

> [t]he core center and surface must have a difference between their
> respective measured JIS-C hardnesses of at least 18, preferably at
> least 20, and most preferably at least 22 units.

(*Id*. at col. 4:1-5).  This section indicates that the invention "must" have a hardness difference,

but does not indicate that it "must" also have a gradually increasing hardness between its center

and sruface.

   In view of the specification of the '791 Patent read in its entirety, it is clear that

what is "critical" to the invention is the "optimized hardness profile," and that the "optimized

hardness profile" must include a specific hardness difference between the center and surface, but

does not necessarily include a gradually increasing hardness.

   The prosecution history does not lead to a different conclusion.   During

prosecution, the Examiner did not require that the inventor add the "gradually increasing"

hardness limitation to independent claims 13 and 24. Thus, the Examiner did not believe that this feature was "critical" to the invention.

IV.     ACUSHNET DID NOT DISCLOSE THE ARGUMENT THAT CLAIMS THAT
        DO NOT RECITE "GRADUALLY INCREASING" ARE NOT ENABLED IN
        ITS CONTENTION INTERROGATORIES OR ITS EXPERT REPORTS

This is the first time Bridgestone has seen Acushnet's argument that claims 13, 16 and 26 are not enabled because the do not recite "gradually increasing." Acushnet's December 18, 2006 final interrogatory responses stated only that the asserted claims are "indefinite, lack[] written description, and/or lack[] enablement." (Ex. 8 at A-347; A-371; A-392; A-440). Dr. Felker's January 16, 2007 expert report also did not disclose any of the theories in Acushnet's brief (and the enablement opinion he did provide is inadequate for the reasons stated in Bridgestone's Opening Brief In Support Of Its Motion for Summary Judgment Of No Invalidity Of The '791 Patent (D.I. 350)). None of Acushnet's other experts have advanced this theory. Acushnet, therefore, should be precluded under Rule 37 from making this argument, and its motion should be denied. *See* Fed. R. Civ. P. 37(c)(1); *see also, e.g., ArthoCare Corp. v. Smith & Nephew, Inc.*, 310 F. Supp. 2d 638, 667 (D. Del. 2004), *aff'd in part, vacated in part on other grounds*, 2005 U.S. App. LEXIS 8108 (Fed. Cir. 2005); *Philips Elecs. N. Am. Corp. v. Contec Corp.*, C.A. No. 02-123-KAJ (D. Del., April 5, 2004) (precluding CMT from using untimely produced documents at trial). *See also* D.I. 288, in which this Court precluded Acushnet from relying on late-produced references alleged to be prior art.

<u>CONCLUSION</u>

Acushnet cannot meet its burden to obtain summary judgment, let alone its burden to prove invalidity at trial, because it has not: (1) performed the correct legal analysis for enablement under *AK Steel*; (2) elicited any factual testimony from its experts that <u>can</u> support

- 28 -

the correct legal analysis under *AK Steel*; and (3) considered the Court's construction of claim terms at issue. Accordingly, Bridgestone requests that Acushnet's Motion be dismissed.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Leslie A. Polizoti*
Jack B. Blumenfeld (#1014)
Leslie A. Polizoti (#4299)
1201 N. Market St.
P.O. Box 1347
Wilmington, DE 19801
(302) 658-9200
*Attorneys for Bridgestone Sports Co., Ltd.*
*and Bridgestone Golf, Inc.*

*Of Counsel*:

Robert M. Masters
Scott M. Flicker
PAUL, HASTINGS, JANOFSKY & WALKER LLP
875 15th St., N.W.
Washington, DC 20005
(202) 551-1700

April 30, 2007

CERTIFICATE OF SERVICE

I certify that on May 7, 2007 I electronically filed the foregoing with the Clerk of the Court using CM/ECF, which will send notification of such filing(s) to the following:

Richard L. Horwitz, Esquire
POTTER ANDERSON & CORROON LLP
Hercules Plaza, 6th Floor
1313 North Market Street
Wilmington, DE 19801

I further certify that I caused copies to be served upon the following on May 7, 2007 in the manner indicated:

**BY HAND & E-MAIL**

Richard L. Horwitz, Esquire
POTTER ANDERSON & CORROON LLP
1313 N. Market Street
Wilmington, DE 19801

**BY E-MAIL and FEDERAL EXPRESS**

Joseph P. Lavelle, Esquire
HOWREY LLP
1299 Pennsylvania Avenue, NW
Washington, DC 20004

*/s/ Leslie A. Polizoti*
Leslie A. Polizoti (#4299)
MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Wilmington, DE 19801
(302) 658-9200
lpolizoti@mnat.com