IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| BRIDGESTONE SPORTS CO., LTD. and BRIDGESTONE GOLF, INC., | ) ) ) | |
| Plaintiffs, | ) ) | C.A. No. 05-132 (JJF) |
| v. | ) ) ) | **REDACTED – PUBLIC VERSION** |
| ACUSHNET COMPANY, | ) ) | |
| Defendant. | ) ) | |

## BRIDGESTONE'S REPLY BRIEF IN SUPPORT OF ITS MOTION TO COMPEL PRODUCTION OF DOCUMENTS

MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Jack B. Blumenfeld (#1014)
Leslie A. Polizoti (#4299)
1201 N. Market St.
P.O. Box 1347
Wilmington, DE 19801
(302) 658-9200

*Attorneys for Bridgestone Sports Co., Ltd.
and Bridgestone Golf, Inc.*

OF COUNSEL:

Robert M. Masters
Scott M. Flicker
PAUL, HASTINGS, JANOFSKY & WALKER LLP
875 15th St., N.W.
Washington, DC 20005
(202) 551-1700

Original Filing Date: May 4, 2007
Redacted Filing Date: May 9, 2007

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ................................................................................................ ii

INTRODUCTION ............................................................................................................... 1

ARGUMENT ...................................................................................................................... 1

I.    Testing-Related Documents That Dr. Felker & Acushnet's Employee
Experts Considered ................................................................................................. 3

    A.    Employee Experts ........................................................................................ 3

        1.    Acushnet's Employee Experts Should Have Provided
Reports Under Rule 26 ................................................................. 3

        2.    Acushnet Cannot Use Its So-Called Employee Experts To
Selectively Hide Data ................................................................... 5

        3.    The Parties' Agreement Is Not As Broad As Acushnet
Wants It To Be ............................................................................. 9

        4.    Bridgestone Did Not Use Its Employees As Experts ................... 11

    B.    Data And Information That Dr. Felker Considered .................................... 11

II.    The October 2000 Testing And Opinion Letter .................................................... 12

    A.    Scope Of Waiver For Voluntary Disclosure Of A Privileged
Document .................................................................................................... 13

    B.    The Bottom Line: Acushnet Voluntarily Disclosed An Opinion Of
Counsel ...................................................................................................... 13

III.    The Declaration of William Morgan ...................................................................... 16

CONCLUSION ................................................................................................................... 17

## TABLE OF AUTHORITIES

Page

Cases

*Ansell Healthcare Prods., LLC v. Tillotson Corp.*,
    C.A. No. 06-527, Feb. 2, 2007 Tr.      9

*Bank of China v. NBM LLC*,
    359 F.3d 171 (2d Cir. 2004)      4

*Blue Lake Forest Prods., Inc. v. U.S.*,
    2007 WL 968142 (Fed. Cl. March 29, 2007)      13

*Bogosian v. Gulf Oil Co.*,
    738 F.2d 587 (3d Cir. 1984)      11, 12

*Day v. Consolidated Rail Corp.*,
    No. 95 CIV. 968, 1996 WL 257654 (S.D.N.Y. May 15, 1996)      4

*Dyson Tech. Ltd. v. Maytag Corp.*,
    2007 WL 656252 (D. Del. March 6, 2007)      4, 12

*KW Plastics v. U.S. Can Co.*,
    199 F.R.D. 687 (M.D. Ala. 2000)      3, 4

*McCulloch v. Hartford Life & Accident Ins. Co.*,
    223 F.R.D. 26 (D. Conn. 2004)      4

*Prism Techs., LLC v. Verisign*,
    C.A. No. 05-214, Mar. 2, 2007 Tr.      9

*Storage Tech. Corp. v. Custom Hardware Eng'g & Consulting*,
    No. 02-12102-RWZ, 2006 WL 1766434 (D. Mass. Jun. 28, 2006)      4

*Thorn EMI N. Am. v. Micron Tech.*,
    837 F. Supp. 616 (D. Del. 1993)      14

Statutes

Fed. R. Civ. P. 26      4

## INTRODUCTION

Acushnet's employees have conducted tests on prior art and accused golf balls starting in the 1990s and continuing through expert discovery in this case. Acushnet has withheld many of the tests and results on grounds of privilege and work product (and, in fact, Judge Farnan upheld Acushnet's assertions of privilege for such test results in November 2006). Acushnet has now given some, but not all, of these test results – that it withheld during fact discovery – to its lawyers (who in turn give the results to Acushnet's experts), while continuing to withhold the remaining test results. It is a basic principle of law that this sword-and-shield game is prohibited.

Concerning the testing that Acushnet's employees conducted during this litigation, Acushnet has selectively disclosed to its experts the results of tests on which it wants to rely, and has held back others. It does this by having its employees feed their test results to Acushnet's lawyers, who decide which results to give to their experts.

There is no legal basis for Acushnet to produce, when it feels like it, only a portion of the test results in its possession.

## ARGUMENT

Acushnet contends that it does not have to produce all documents and test data that its purported employee experts considered or reviewed in forming their opinions. Acushnet conducted expert discovery by having its employees perform tests (or use tests that they had already performed), and give the test results to Acushnet's attorneys, who in turn feed them to Acushnet's non-employee experts. Acushnet argues that the tests that were not provided to its non-employee experts remain protected by the privilege, the work product doctrine, or the parties' agreement that notes, drafts and communications with attorneys are immune from expert discovery – even though Acushnet's employee experts considered or reviewed them (see Section

I).  This is fundamentally unfair and contravenes the disclosure requirements of Federal Rule of Civil Procedure 26.

Acushnet did the same thing with the testing that its employees performed in connection with the October 2000 opinion of counsel – it held the test results and the opinion as privileged during fact discovery, and then gave them to its expert, Dr. Felker, during expert discovery.  Contrary to what Acushnet says, it did not "m[e]et its discovery obligation" by giving Bridgestone the opinion after Dr. Felker reviewed it; that production voluntarily waived privilege for the subject matter of the opinion.  Acushnet refuses to produce documents within the scope of this waiver (*see* Section II).

Acushnet also decided during expert discovery to submit an expert declaration that discusses legal advice that it withheld during fact discovery, but now refuses to produce the documents that its employee expert, William Morgan, considered in submitting his declaration.  Acushnet contends that Mr. Morgan, did not "consider" any opinions of counsel or legal advice when he wrote in his expert declaration that:

(*see* Section III).

I.    TESTING-RELATED DOCUMENTS THAT DR. FELKER & ACUSHNET'S EMPLOYEE EXPERTS CONSIDERED

    A.    Employee Experts

        1.    Acushnet's Employee Experts Should Have Provided Reports Under Rule 26

Acushnet says that Rule 26(a)(2)(B) "is not applicable" to its employee experts because they are not "retained or specially employed to provide expert testimony in the case" and their "duties as an employee of the party [do not] regularly involve giving expert testimony" (D.I. 423 at 2). It further asserts that, because its employee experts do not have to provide written reports, they do not have to "produce any materials that they have reviewed in formulating the specialized testimony and opinions they will give at trial" (*id.* at 13).

Acushnet is wrong – its employees had to provide expert reports.[1] Federal Rule of Civil Procedure 26(a)(2)(B) requires an expert report from "a witness who is retained or specially employed to provide expert testimony in the case or whose duties as an employee of the party regularly involve giving expert testimony." Courts have held that an employee who does not regularly give expert testimony must provide an expert report because the witness is "specially employed" to provide such testimony. In *KW Plastics*, the Court held that "expert reports must be filed for corporate employees whose testimony is proffered solely or principally for their expert opinions." *KW Plastics v. U.S. Can Co.*, 199 F.R.D. 687, 689 (M.D. Ala. 2000). The court reasoned that an employee is "employed" when "put to use or service," and that

---

[1]    This issue – under what circumstances employee experts must provide reports, and whether these particular Acushnet employees must provide reports – is the subject of one of Bridgestone's motions *in limine*. Briefing on that motion will be completed on May 18.

"specially" meant "used with reference to a particular purpose" that is "surpassing what is common or usual." *Id.* at 690.  Thus, "when a corporate party designates one of its employees as an expert, it typically authorizes the employee to perform special actions that fall outside of the employee's normal scope of employment." *Id. See also Day v. Consolidated Rail Corp.*, No. 95 CIV. 968, 1996 WL 257654, at *2 (S.D.N.Y. May 15, 1996) (noting that limiting the expert report requirement would "create a distinction seemingly at odds with the evident purpose of promoting full pre-trial disclosure of expert information").

Other courts have extended this analysis to "hybrid" employee experts – witnesses who will testify as both fact and expert witnesses – because "testimony that is expert testimony should not 'evade the expert witness disclosure requirements set forth in Fed. R. Civ. P. 26,' simply because the testimony is proffered through a fact witness." *Storage Tech. Corp. v. Custom Hardware Eng'g & Consulting*, No. 02-12102-RWZ, 2006 WL 1766434, at *36 (D. Mass. Jun. 28, 2006); *McCulloch v. Hartford Life & Accident Ins. Co.*, 223 F.R.D. 26, 28 (D. Conn. 2004) (holding that hybrid employee experts who were primarily serving as fact witnesses must provide expert reports).[2]

Acushnet wants its employee experts to give classic expert testimony while avoiding the disclosure requirements of Rule 26.  Acushnet, for example, says that "[s]everal of

---

[2]    Another line of cases holds that employees do not have to provide expert reports, period. Judge Sleet recently rejected this line, finding the rationale of *Day* more compelling. *Dyson Tech. Ltd. v. Maytag Corp.*, 2007 WL 656252 (D. Del. March 6, 2007). Furthermore, Acushnet's citation to the Second Circuit's decision in *Bank of China v. NBM LLC*, 359 F.3d 171, 182 n.13 (2d Cir. 2004) is inapposite.  That Court only footnoted that the employee expert did not need to provide an expert report.  Its brief analysis in no way indicates that it rejected the line of cases Judge Sleet relied on in *Dyson*.

these employees are skilled artisans and would logically testify as to what one of ordinary skill would know and understand in the golf ball art" (D.I. 423 at 3), including "the physical properties of prior art and accused golf balls" (*id.*) and regarding testing that they performed and that was relied upon by Dr. Felker," Dr. Koenig, or Dr. Lynch (*id.*). (Most of this is news to Bridgestone, however, because Acushnet did not provide reports. In fact, one of Acushnet's employee experts, Mr. Bulpett, testified that he did not know what expert opinions he would provide at trial (Ex. A, Bulpett 3/20/07 Dep. Tr. at 9, 10-11)).

Bridgestone requests that Acushnet produce all of the testing that Acushnet's "employee experts" conducted, considered or relied on for this case – not just the select data they gave to Acushnet's lawyers who gave them to Drs. Felker, Koenig or Lynch.

>            2.      Acushnet Cannot Use Its So-Called Employee
>                    Experts To Selectively Hide Data

Acushnet's employees performed the tests on which its non-employee experts – including Drs. Felker, Lynch and Koenig – rely. Acushnet explains that its employees performed "numerous tests at the request of Acushnet's counsel not only in connection with this litigation, but prior to the onset of this case, in anticipation of this and other litigation" (D.I. 423 at 4). In all or nearly all instances, Acushnet's employees gave the test results to Acushnet's lawyers.

Sometimes, Drs. Felker, Koenig and Lynch relied on tests that Acushnet's employees conducted for them for this case. Sometimes, they relied on tests that Acushnet's employees had conducted before or during this case, at the request of Acushnet's lawyers (*e.g.,* the core manufactured in October 2000 in connection with the opinion of counsel). Sometimes, even Acushnet does not even know the distinction between the two. As Mr. Bulpett, one of Acushnet's employee experts, testified:



(Ex. A, Bulpett 3/20/07 Tr. at 15).

One of Acushnet's non-employee experts, Dr. Jack Koenig, also testified that Acushnet's employees did the testing, but he did not have any involvement in it:



(Ex. B, Koenig 3/16/07 Dep. Tr. at 266:15-267:6).

Acushnet has drawn the line that, if its employees gave the data to Drs. Felker, Lynch or Koenig, then Acushnet (eventually) produced it. If, however, the data was not provided to those experts, Acushnet asserted privilege:

- "Acushnet has, on several instances since the exchange of expert reports, supplemented its production with the materials that Mr. Dalton and Mr. Bulpett considered in formulating their testing regimes *that were shared with Dr. Felker*" (D.I. 243 at 5) (emphasis added).

- Acushnet says that it produced, for example, "Acushnet's internal testing standards and manuals that Mr. Dalton and Mr. Bulpett consulted when they performed *relevant* tests" (*id*. at 5) (emphasis added).

- "This is the extent of the materials that Mr. Dalton and Mr. Bulpett have consulted *in performing the testing that Dr. Felker has considered and relied upon* to form his opinions on invalidity and non-infringement" (*id.* at 5) (emphasis added).

- "Except for the 'notes, drafts and communications with counsel' withheld on the basis of the parties' agreement related to expert discovery, Acushnet has produced all *relevant* materials considered by its employee experts" (*id.* at 21) (emphasis added).

- "Any other testing that Mr. Dalton performed is not the subject of any expert testimony and, consequentially, protected work product" (*id.* at 25).

Another example of this selective disclosure problem occurs with the Wilson Ultra Tour Balata golf ball. Acushnet contends that this ball is the commercial embodiment of a prior art patent that invalidates Bridgestone's '852 patent. Dr. Felker relied on tests that Mr. Dalton performed years ago on these balls (D.I. 423 at 24). Acushnet says that, ████████████ ████████████████████████████████████████████████████ ████████████████████████████████████████████████████ ████████████████████ Mr. Dalton gave those test results to his attorneys, and "summarized [only] the testing relevant to Acushnet's invalidity position" for Dr. Felker (*id.*). Acushnet says that Mr. Dalton "is going to testify only as to testing considered by Dr. Felker" (*id.*), and that "[a]ny other testing that Mr. Dalton performed is not the subject of any expert testimony and, consequentially [is] work product" (*id.*).[3] In other words, Acushnet picked the test results it

---

[3]    Acushnet says that it "has allowed Mr. Dalton to be deposed upon all of the testing that he had performed, in addition to that relied upon by Dr. Felker" (D.I. 423 at 25). It is difficult to see how Bridgestone could meaningfully depose Mr. Dalton on all the testing that he performed – when Acushnet had not produced it or have its employees submit reports detailing or even identifying the testing. Acushnet's lawyers instructed Mr. Bulpett (another Acushnet employee who conducted testing) not to answer questions
(continued...)

wanted to give to its expert, and is selectively relying on them while hiding behind the privilege and work product protection for the other test results. Bridgestone, in fact, does not know the extent of the testing that Acushnet has not produced -- Acushnet did not list all of it on its privilege log.

In another example, Acushnet says that Bridgestone "mischaracterizes" Mr. Dalton's testimony when Bridgestone argued that "'Acushnet has not produced all of the test results' of the testing that Mr. Dalton discussed during his March 2, 2007 deposition" (D.I. 423 at 24). Mr. Dalton testified that he tested, among other things, core diameters. These test results have not been produced to Bridgestone. Acushnet's response is that "*Dr. Felker* did not review, consider or rely on ball diameter testing in his expert report" (D.I. 423 at 24) (emphasis added).

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮ This is the same sleight-of-hand – Acushnet must produce all of the test results that *Mr. Dalton* reviewed, considered, or relied on, not just the ones that Dr. Felker did.

In another example, as noted in Bridgestone's opening brief (D.I. 344) at page 14,

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

Acushnet has not, however, produced all of the test results, even though Mr. Dalton confirmed that they exist and are in his possession (D.I. 344 at Ex. Q, Dalton Depo., 265:6-267:17).

---

(...continued)

    relating to all of the tests that he performed on the basis of work product (Ex. J, Bulpett 3/20/07 Tr. at 12-15).

Acushnet cannot refuse to disclose its tests during fact discovery because of privilege, and then only partially disclose them during expert discovery. *See* 1993 Adv. Committee Notes to Rule 26 ("Given this obligation of disclosure, litigants should no longer be able to argue that materials furnished to their experts to be used in forming their opinions – whether or not ultimately relied upon by the expert – are privileged or otherwise protected from disclosure...."). Judge Farnan could not have been clearer:

- "You either give it to them now in response to their motion [to compel the production of source code] or you never ever get – am I being clear – ever get to use it – ever for anything" (D.I. 305 at 24, quoting *Prism Techs., LLC v. Verisign*, C.A. No. 05-214, Mar. 2, 2007 Tr.).

- "What I'm looking at is if they have asserted the privilege, they can't use any of that information or anything stemming from that information... Now, if there's something real good in that test for them...and they come back and try to hammer you with it, they're not getting it in" (D.I. 305 at 28, quoting *Ansell Healthcare Prods., LLC v. Tillotson Corp.*, C.A. No. 06-527, Feb. 2, 2007 Tr.).

Acushnet also cannot produce only some, but not all, of the test results that its employees did for this case, just because it had its lawyers act as middlemen in shuffling testing from Acushnet's employee experts to its non-employee experts. Acushnet is either precluded from using this data, as set forth in Bridgestone's Motion for Sanctions, or it must produce all of the testing that any of Acushnet's experts – employees or not – reviewed or considered in connection with formulating their expert opinions.

3.    The Parties' Agreement Is Not As Broad As Acushnet Wants It To Be

Acushnet's argument that the parties' agreement somehow allows this selective disclosure is incorrect. The parties agreed that "expert witnesses' notes, drafts and communications with counsel are excluded from discovery" (D.I. 423 at 10). This agreement does not apply to test results or documents that Acushnet's non-employee or so-called employee

experts considered or reviewed in forming their opinions (even if those documents were not provided to Drs. Felker, Koenig or Lynch). Acushnet's argument that Bridgestone is "estopped" from requesting "any additional data that Dr. Felker did not review" (*id.* at 26) because of the parties' agreement (*id.* at 21) makes no sense. The test results that Acushnet's attorneys got from Acushnet employees are simply not "notes, drafts, or communications with counsel."

Acushnet says that "Bridgestone's own conduct in this litigation shows what they understood the scope of the agreement to mean, for it has clearly relied upon this agreement and withheld numerous categories of draft expert witness materials itself" (D.I. 423 at 11). Acushnet complains that Bridgestone's expert, Dr. Caulfield, did not produce documents, and Bridgestone's counsel did not let him answer questions about the testing that he did before this case –

█████████████████████████████████████████████████

█████████████████████████████████████████████████

████  In contrast, Acushnet refuses to produce testing that its employee experts considered or reviewed in connection with this litigation.

Acushnet also argues that "Bridgestone has also failed to produce" documents that its experts created for this litigation (D.I. 423 at 12), but in the next sentence acknowledges that Bridgestone produced such documents before Dr. Caulfield's deposition. What happened was that Bridgestone discovered, in preparing for Dr. Caulfield's deposition, that it had not produced 27 pages of test data – on which it is not relying (and which do not show that the accused products do not infringe) – and produced them immediately. Under Acushnet's version of the parties' agreement, in fact, Bridgestone would be able to withhold these results.

4.    Bridgestone Did Not Use Its Employees As Experts

Acushnet says that "Bridgestone likewise has had its employees perform tests relied upon by its testifying experts" (D.I. 423 at 5), but that Bridgestone did not designate them under Rule 26(a)(2) or make them available for deposition (*id.*).

Acushnet doesn't have the story quite right.  Mr. Higuchi, one of Bridgestone's engineers, manufactured golf ball cores and gave them to Packer Engineering, the independent lab that performed the tests on those cores (and on all of the other golf balls on which Bridgestone's experts rely).  The results of the tests are in Dr. Caulfield's report (Ex. E, excerpts from Dr. Caulfield's and Mr. Calabria's expert reports).  Although Acushnet is correct that Bridgestone did not designate Mr. Higuchi as an expert witness, it is because Bridgestone does not rely on him as an expert.  Acushnet's statement that Bridgestone did not make Mr. Higuchi available for deposition is just wrong – Acushnet "preserved" its right to "take Higuchi depending on what Calabria knows about his testing" (Ex. F, 2/22/07 email R. Stasio to B. White).  Bridgestone did not object, and Acushnet did not ask again.

Acushnet's other example, that "Mr. Calabria relies upon tests of prior art Precept EV Extra Spin golf balls that Dr. Caulfield, Bridgestone's testing expert, did not explain who sent them" (D.I. 423 at 6 n.6), also rings hollow in light of the fact that Acushnet did not ask Dr. Caulfield anything about these tests during his deposition.

B.    Data And Information That Dr. Felker Considered

The parties generally agree on the law – that "disclosure is generally limited to the documents viewed by the expert themselves in consideration of their opinions" (D.I. 423 at 17), whether or not the expert actually relies on those documents in his or her report.  The only exception that Acushnet asserts is that the Third Circuit's decision in *Bogosian v. Gulf Oil Co.*, 738 F.2d 587 (3d Cir. 1984) holds that Rule 26 does not require "disclosure of work product

shown to experts" (D.I. 423 at 16 n.13).  *Bogosian*, however, is no longer good law in light of the 1993 amendments to Rule 26.  *See Dyson Tech. Ltd. v. Maytag Corp.*, 2007 WL 656252, *4 (D. Del. March 6, 2007) ("By its plain terms, the [1993 Advisory Committee's] note states that the attorney-client and work product privileges once relied upon by litigants to prevent disclosure of certain materials furnished to experts no longer exist.").

There is no dispute that Dr. Felker is one of Acushnet's proffered experts, and that he provided expert reports.  Acushnet, therefore, must produce all testing that Dr. Felker "reviewed or considered" in connection with his report (D.I. 423 at 23).  It hasn't.  For example, Acushnet says that "Dr. Felker has produced all of the *relevant* data from this testing [about the Pro V1 golf ball]" (*id.* at 23) and "[a]gain, Dr. Felker has included all of the *relevant* data that he reviewed or considered [concerning testing on the JP '673 balls] in his expert report" (*id.* at 26) (emphasis added).  Acushnet has to produce all of the data that Dr. Felker reviewed – not just the "relevant" data.

Acushnet's assertions that Bridgestone requests documents "which were produced before it even filed its motion" (D.I. 423 at 25) are also incorrect.

II.     THE OCTOBER 2000 TESTING AND OPINION LETTER

Dr. Felker's reliance on test results from October 2000 that Acushnet did not produced during fact discovery is improper, for the reasons in Bridgestone's Motion for Sanctions.  Acushnet has gone ever further, and shown Dr. Felker its October 2000 opinion of counsel, which it listed on its privilege log during fact discovery.  Acushnet's reliance on the opinion during expert discovery, after holdings it as privileged during fact discovery, is also improper, for the same reasons.  Having shown Dr. Felker that opinion, however, Acushnet has waived the privilege with respect to the subject matter in it, and must produce those documents.

A.    Scope Of Waiver For Voluntary Disclosure Of A Privileged Document

Acushnet says that "Bridgestone's motion has failed to cite to any authority for the proposition that providing a work product or privileged document to a testifying expert constitutes any sort of broader subject matter waiver of the privilege protection. The only authority that Acushnet has found limits the waiver to the documents actually furnished to the testifying expert" (D.I. 423 at 2). That authority, however, relates to whether there has been an "at issue" waiver – when "the privilege holder makes assertions, the truth of which can only be assessed by examination of privileged communications," *Blue Lake Forest Prods., Inc. v. U.S.*, 2007 WL 968142, *3 (Fed. Cl. March 29, 2007).

The issue here, however, is not how Acushnet waived the privilege (which is why "Bridgestone has offered no legal analysis to show why it is entitled to an 'at issue waiver'" (D.I. 423 at 17)). Acushnet waived the privilege by voluntarily giving the October 2000 opinion to Bridgestone. The issue here is the scope of the waiver. Voluntary production of a privileged document to one's adversary waives all communications on that subject matter, as set forth in Bridgestone's Opening Brief (*see* D.I. 344 at 7-8).

B.    The Bottom Line: Acushnet Voluntarily Disclosed An Opinion Of Counsel

Acushnet tells a story about how Dr. Felker and Mr. Dalton "had numerous conversations" about the testing of the cores that Mr. Dalton manufactured according to the EP 043 prior art reference (neither of them, however, remember those conversations, *e.g.*, D.I. 305, Bridgestone's Op. Br. In Support Of Mot. For Sanctions, at 8). Acushnet says that when Bridgestone's expert criticized Dr. Felker's description of the testing, ███████████████████ ██████████████████████████████████████████████ ███████████████████████ He reviewed the opinion of counsel, and "continued to be

satisfied with his [expert] opinion" (*id.* at 7-8).[4]

      None of that matters.  The point is, when Acushnet disclosed the opinion of counsel to Bridgestone in March 2007, that was a voluntary waiver of all communications on the subject matter of the opinion. ███████████████████████████████████

████████████████████████████████████████████████████████████████

█████████████████████████████████████████████████ (D.I. 423 at 18).

Acushnet says that it "welcomes the Court to review these documents *in camera*" (*id.*). Bridgestone requests that Acushnet bring these documents to the hearing on May 7, 2007 – although the scope of the waiver is broader than these few documents on Acushnet's privilege log.

      Acushnet argues that "advice of counsel regarding non-infringement is irrelevant to the issues in this matter," because it "would not tend to make the existence of any fact of consequence to the determination of the action more or less probable" (D.I. 423 at 20 (citing *Thorn EMI N. Am. v. Micron Tech.*, 837 F. Supp. 616, 620-21 (D. Del. 1993)).  The opinion that Acushnet produced contains testing that Acushnet relies on in this litigation.  At a minimum, any discussions about the opinion and the tests in it are relevant to determine the reliability of the tests that Acushnet is using to try to invalidate Bridgestone's patent.

---

4  ████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

Documents about the opinion and tests are also relevant to infringement. ▮

---

5      The Bridgestone patents-in-suit disclose golf balls with a core and a cover, for example.
The material in golf balls is harder closer to the cover, and generally gets softer as one
travels to the center of the core.  That is the difference in hardness discussed here.

███████████████████████████

### III.    THE DECLARATION OF WILLIAM MORGAN

Acushnet says that Mr. Morgan's declaration "does not discuss any privileged communications or legal analysis" (D.I. 423 at 8). Instead, "Mr. Morgan simply acknowledges that, at some time in the past, he has reviewed some opinions of counsel" (*id.* at 9), but that he did not rely on them in connection with his declaration. According to Acushnet, Mr. Morgan "clearly stated that he relied upon his 'general knowledge,'" which apparently includes (*id.*):



Acushnet does not dispute that Mr. Morgan is subject to the expert disclosure requirements of Rule 26. Instead, Acushnet takes a narrow reading of Rule 26's requirement that it must disclose documents "considered" by its experts. Mr. Morgan testified that he had conversations with

---

6 ███████████████████████████████

Acushnet's attorneys, ████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

Those had to form the basis for his statements about the specifics of how Acushnet tried to design around Bridgestone's '652 patent.   Mr. Morgan's "general knowledge" came from attorneys, not out of thin air.

Acushnet, however, says that Mr. Morgan "did not need to review any of the attorneys' analysis to recall the facts to which he testified" (D.I. 423 at 10).  But he can still have "considered," within the meaning of Rule 26, the opinion of counsel or any other documents even if he did not physically pick them up and read them just before signing his declaration.

Under Rule 26, Acushnet must produce all documents and communications that Mr. Morgan considered with respect to his opinions about the '652 patent, including any opinions of counsel.

## CONCLUSION

Bridgestone respectfully requests that its Motion to Compel Production of Documents be granted.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Leslie A. Polizoti*

Jack B. Blumenfeld (#1014)
Leslie A. Polizoti (#4299)
1201 N. Market St.
P.O. Box 1347
Wilmington, DE 19801
(302) 658-9200
*Attorneys for Bridgestone Sports Co., Ltd.*
*and Bridgestone Golf, Inc.*

OF COUNSEL:

Robert M. Masters
Scott M. Flicker
PAUL, HASTINGS, JANOFSKY & WALKER LLP
875 15th St., N.W.
Washington, DC 20005
(202) 551-1700

May 4, 2007

815450.4

<u>CERTIFICATE OF SERVICE</u>

I certify that on May 9, 2007 I electronically filed the foregoing with the Clerk of the Court using CM/ECF, which will send notification of such filing(s) to Richard L. Horwitz and David E. Moore.

I further certify that I caused copies to be served upon the following on May 9, 2007 in the manner indicated:

**BY E-MAIL & HAND**

Richard L. Horwitz, Esquire
POTTER ANDERSON & CORROON LLP
1313 N. Market Street
Wilmington, DE  19801

**BY E-MAIL & FEDERAL EXPRESS**

Joseph P. Lavelle, Esquire
HOWREY LLP
1299 Pennsylvania Avenue, NW
Washington, DC  20004


*/s/  Leslie A. Polizoti*
Leslie A. Polizoti (#4299)
MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Wilmington, DE  19801
(302) 658-9200
lpolizoti@mnat.com