IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

BRIDGESTONE SPORTS CO., LTD. and
BRIDGESTONE GOLF, INC.,

        Plaintiffs,

        v.

ACUSHNET COMPANY,

        Defendant.

C.A. No. 05-132 (JJF)

REDACTED –
PUBLIC VERSION

## BRIDGESTONE'S DAUBERT MOTION
## TO EXCLUDE EXPERT TESTIMONY FROM MR. JEFFREY DALTON

This is a patent infringement action brought by Plaintiffs Bridgestone Sports Co., Ltd. and Bridgestone Golf, Inc. (collectively, "Bridgestone") against Defendant Acushnet Company ("Acushnet") in March 2005. Fact discovery in this case closed on October 10, 2006, and expert discovery ended on March 30, 2007. The pre-trial conference is scheduled for May 25, 2007 and trial is set to begin on June 18.

### SUMMARY OF ARGUMENT

REDACTED

(Ex. 1, Dalton Tr. (Mar. 2, 2007) at 19:16-18). That comes straight from Jeff Dalton's own testimony. Acushnet, however, intends to call him to testify as an expert on this very system. Bridgestone asks that the Court take Mr. Dalton at his word.

On February 20, 2007, Jeffrey Dalton, Acushnet's Vice President for Intellectual Property, submitted a declaration in rebuttal to certain reports submitted by Bridgestone's experts. This declaration should be excluded and Mr. Dalton should be precluded from offering any expert testimony at trial. Such exclusion is warranted on several grounds:

- Mr. Dalton's declaration was prepared by counsel, and the exhibits attached to it are summaries prepared at trial counsel's direction. They are therefore unreliable.

- Mr. Dalton could not identify the exhibits to his own declaration.

- Mr. Dalton's declaration does not contain "scientific, technical, or other specialized knowledge [that] will assist the trier of fact."

- Mr. Dalton's declaration is based on facts not produced during discovery.

- Mr. Dalton's declaration is based on facts Acushnet's counsel refused to produce during discovery on the grounds that they were duplicative of documents already produced. Allowing Mr. Dalton or any other witness to rely on his declaration or to provide testimony as to similar subject matter would result in confusion of the issues and the needless presentation of cumulative evidence.

- Mr. Dalton had little or no involvement in preparation of the summaries which were provided directly to Acushnet's lawyers from those who prepared them.

## STATEMENT OF FACTS

On February 20, 2007, Jeffrey Dalton, Acushnet's Vice President for Intellectual Property, submitted a declaration in rebuttal to certain reports submitted by Bridgestone's experts (Ex. 2, Dalton Decl.). The declaration was based on information culled from Acushnet's Mesabi Mix Vision weigh-feed system and its predecessor systems (collectively, "Mesabi"). Acushnet repeatedly refused to produce documents from these systems to Bridgestone during discovery on the grounds that it would have been duplicative of other documents already produced, that this is not the type of information Acushnet uses in the ordinary course of business and because of an alleged "undue burden" in producing the documents (Ex. 3, Sept. 6, 2006 ltr). Mr. Dalton stated in his declaration, however, that it was necessary to rely on Mesabi.

The weigh-feed documentation provided in Mr. Dalton's declaration is not complete. It is a hand-selected portion chosen by Acushnet's counsel based on what they viewed to be "relevant." To this day, Acushnet has not produced all of the recipes from Mesabi.

Mr. Dalton does not purport to be an expert on Mesabi.

REDACTED

When asked if he provided Dr. David Felker, Acushnet's infringement and validity expert, any documents from the predecessor system to Mesabi, the Kronos-Richardson system, Mr. Dalton testified

REDACTED

Mr. Dalton is admittedly not an expert on Acushnet's golf ball manufacturing process.

Furthermore, Mr. Dalton did not actually author his declaration or prepare the documents and tables attached to it.

REDACTED

The summary tables were prepared by Mr. Rastko Gajic and Mr. Patrick Elliott with only a cursory review by Mr. Dalton (*id.* at 14:10-15:4).

The request for these summaries did not come from Mr. Dalton, but instead from Acushnet's trial counsel and Acushnet's in-house attorney (Ex. 4, Elliott Tr. at 77:18-78:22). In fact, Acushnet's lawyers refused to allow Mr. Elliott testify as to what his instructions were

REDACTED

After receiving the request from Acushnet's attorneys, Mr. Elliott asked another Acushnet employee, Mr. Roy, to prepare the exhibits for Mr. Dalton's declaration (*id.* at 61:3-5).

4.

When the summary charts were finished, Mr. Elliott did not provide them to Mr. Dalton – but

sent them directly to Acushnet's attorneys:

REDACTED

(Ex. 4, Elliott Tr. at 89:7-90:11).

REDACTED

REDACTED

ARGUMENT

I.    Applicable Law.

Federal Rule of Evidence 702 provides:

> If scientific, technical, or other specialized knowledge will assist the trier
> of fact to understand the evidence or to determine a fact in issue, a witness
> qualified as an expert by knowledge, skill, experience, training, or
> education, may testify thereto in the form of an opinion or otherwise.

In *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), the

Supreme Court charged trial judges with the responsibility of acting as "gatekeepers" to exclude

unreliable expert testimony, *id.* at 597, and in *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 141

(1999), clarified that this "gatekeeper" function applies not only to testimony based on

"scientific" knowledge but to testimony based on "technical" and "other specialized" knowledge

as well.  The *Daubert* Court explicitly refused to adopt any "definitive checklist or test" for

determining the reliability of expert scientific testimony, and emphasized the need for flexibility.

The Third Circuit has addressed the requirements of Federal Rule of Evidence

702, focusing on the "trilogy of restrictions on expert testimony: qualification, reliability and fit."

*Schneider v. Fried*, 320 F.3d 396, 405 (3d Cir. 2003).  First, the witness must be qualified to

testify as an expert.  Second, the testimony must be reliable.  In other words, "the expert's

opinion must be based on the 'methods and procedures of science' rather than on 'subjective

belief or unsupported speculation'; the expert must have 'good grounds' for his or her belief." *Id.* at 742 (quoting *Daubert*, 509 U.S. at 590). Third, the expert testimony must "fit," *id.* at 743, meaning "the expert's testimony must be relevant for the purposes of the case and must assist the trier of fact." *Schneider*, 320 F.3d at 405.

In *In re TMI Litigation*, 193 F.3d 613, 698 (3d Cir. 1999), the Third Circuit excluded an expert who based his opinion on medical history summaries prepared by plaintiff's trial counsel: "[c]ommon sense alone suggests that such evidence is 'based on an unreliable source of information.'" *In re TMI*, 193 F.3d at 698 (citing *In re Paoli Railroad Yard PCB Litig.*, 35 F.3d 717, 762 (3d Cir. 1994)). The Court held that the expert should have done more than rely on information spoon-fed to her by plaintiff's counsel. *Id.*

Similarly, in *Montgomery County v. Microvote Corp.*, 320 F.3d 440 (3d Cir. 2003), the Third Circuit affirmed the district court's exclusion of expert testimony because "it was unreliable." The district court had commented that it was "disturbing" that "some of the things that were shown to [the expert] he didn't seem to know where they were from or what the source of them were," *id.* at 448, and that the expert admitted "that he did not know what the document was, who created it, or how it was created," *id.* at 448-49. Other documents the expert relied on were selected by an attorney, which the court found to be improper: "the District Court did not abuse its discretion in excluding [the expert's] testimony because the court reasonably concluded that the data underlying [the expert's] opinion was so unreliable that no reasonable expert could base an opinion on it." *Id.* at 449.

In *Crowley v. Chait*, 322 F. Supp. 2d 530 (D.N.J. 2004), just as in *TMI*, the Court also excluded an expert when he relied on summaries prepared by counsel and conducted very

little independent investigation into the witnesses beyond the summaries prepared for him. *Id.* at

546. The court held that it was "unacceptable" to make the expert a "mouthpiece," and that:

> [The expert's] reliance upon the spoonfed depositions led him to draw questionable conclusions ... and by reviewing what appears to be for the most part only preselected [documents, the expert] relied upon information that is simply too unreliable to be trusted.

*Id.* at 546-47.

These cases are on point here as the summary charts were provided directly to

Acushnet's attorneys. Accordingly, Mr. Dalton has no basis to state that the summary charts

attached to his declaration were the charts prepared by Messrs. Gajic and Dalton. Moreover, Mr.

Dalton testified that he had not "looked at every single entry" (Ex. 1, Dalton Tr. at 14:10- 15:4).

    II.    <u>Rule 403 Prohibits Cumulative And Confusing Presentations Of Evidence.</u>

It is unclear how Acushnet intends to utilize Mr. Dalton at trial. He has been a

Rule 30(b)(6) witness (*see, e.g.*, Ex. 6), he submitted a declaration during the rebuttal phase of

expert discovery (Ex. 2, Dalton Decl.), and he has recently been identified on Acushnet's witness

list as an expert who may be called at trial (Ex. 7, Acushnet's proposed witness list). Acushnet

can certainly call Mr. Dalton to testify as to facts as to which he has personal knowledge. He

cannot, however, testify as an expert on any subject matter, especially as an expert concerning

Mesabi, about which he admits under oath that he is not an expert.

Moreover, any testimony offered by Mr. Dalton related to core recipes from

Acushnet's Mesabi systems is cumulative, confusing and unnecessary. Mr. Dalton's declaration

states that it was submitted to set forth "facts relating to [Acushnet's] <u>standard practices</u> for the

manufacture of golf balls" (Ex. 2, Dalton Decl. at 2). Acushnet represented that it "does not

ordinarily access or print this [Mesabi] recipe data as part of its ordinary course of business" (Ex.

3, Sept. 6, 2006 ltr).             REDACTED

REDACTED

Substantial jury confusion is likely to result if Mr. Dalton is permitted to offer expert testimony based on Mesabi. If Acushnet is allowed to run away from its interrogatory responses and the representations it made during discovery, the jury will be offered conflicting facts on Acushnet's golf ball manufacturing process: one set of facts based on Acushnet's discovery responses and deposition testimony, and another based on Acushnet's rebuttal expert reports. This is unnecessarily confusing. Limiting Acushnet to its discovery responses (by excluding Mr. Dalton's declaration) avoids that unnecessary confusion.

Any expert testimony related to the Mesabi system would also be "cumulative," which is what Acushnet told Bridgestone during fact discovery (Ex. 3, Sept. 6, 2006 ltr). If this data was "cumulative" during discovery, it is cumulative now and Mr. Dalton should be precluded from testifying about it.

Finally, any expert testimony related to the Mesabi system and its implementation in Acushnet's manufacturing process is highly prejudicial in view of Acushnet's refusal to produce this information during discovery (and its *continued* refusal to make a complete production of this data). Acushnet should not be permitted to deny Bridgestone relevant discovery, then use that denied discovery in an attempt to rebut Bridgestone's experts.

III.     Mr. Dalton Cannot Identify The Documents Attached To His Declaration.

Mr. Dalton testified that Exhibits I and J to his declaration represented a "complete set of all the data that was used to generate" his declaration (Ex. 1, Dalton Tr. at

24:19-25:10). Mr. Dalton, however, was repeatedly unable to identify documents attached to his declaration. In fact, in numerous instances, Mr. Dalton testified that he had *never* seen some of the documents attached to his declaration before they were shown to him during his deposition and could not explain what they were used for or the information contained therein (Ex. 1, Dalton Tr. (Mar. 2, 2007) at 63:13-65:15; 124:8-20; 125:17-126:16; and 272:15-275:14).

IV.     Mr. Dalton's Methodology Is Not Reliable.

Mr. Dalton's methodology is not reliable. His declaration was prepared at counsel's direction without his substantive involvement. He conducted only a cursory review of the exhibits to his declaration. He has done little, if any, independent investigation. Mr. Dalton is simply relying on information spoon-fed to him by Acushnet's counsel, as it is undisputed that his declaration includes only portions of data selected by counsel from Mesabi. Further, Mr. Dalton did not even recognize the exhibits to his own declaration. The Third Circuit has been quite clear in the *TMI Litigation*, *Montgomery County* and *Crowley* cases discussed above that expert testimony under these circumstances is not reliable and should be excluded.

V.      The Subject Matter Of Mr. Dalton's Declaration Is Not Scientific Information
        That Will Assist The Jury.

Mr. Dalton's declaration does not contain "scientific, technical, or other specialized knowledge will assist the trier of fact." Fed. R. Evid. 702. He is acting merely as a conduit to funnel the lawyer's arguments to the jury in the guise of an "expert." Mr. Dalton's declaration is a compilation of data compiled at the direction of Acushnet's trial counsel and with only minimal review by Mr. Dalton. The declaration does not purport to interpret the data vis-à-vis the asserted claims of the Bridgestone patents-in-suit or otherwise offer any opinions.

VI.    Mr. Dalton Admitted That He Is Not An Expert On The Mesabi And Kronos Richardson Weigh Feed Systems.

Mr. Dalton is not an expert on the subject matter of his declaration: specifically Acushnet's Mesabi and Kronos Richardson weigh feed systems.    That is not naked attorney argument – it is Mr. Dalton's own candid evaluation under oath:

REDACTED

CONCLUSION

Bridgestone requests that the Court preclude Acushnet from presenting (1) "expert" testimony of Mr. Dalton, (2) Mr. Dalton's declaration or its attachments, and (3) other "expert" testimony on the Mesabi Mix Vision system offered for any reason.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Leslie A. Polizoti*

Jack B. Blumenfeld (#1014)
Leslie A. Polizoti (#4299)
1201 N. Market St.
P.O. Box 1347
Wilmington, DE 19801
(302) 658-9200
*Attorneys for Bridgestone Sports Co., Ltd.*
*and Bridgestone Golf, Inc.*

OF COUNSEL:

Robert M. Masters
Scott M. Flicker
Terrance J. Wikberg
Brandon M. White
PAUL, HASTINGS, JANOFSKY & WALKER LLP
875 15th St., N.W.
Washington, DC 20005
(202) 551-1700

Original Filing Date:  May 8, 2007
Redacted Filing Date:  May 10, 2007

CERTIFICATE OF SERVICE

I certify that on May 10, 2007 I electronically filed the foregoing with the Clerk of the Court using CM/ECF, which will send notification of such filing(s) to Richard L. Horwitz and David E. Moore.

I further certify that I caused copies to be served upon the following on May 10, 2007 in the manner indicated:

**BY E-MAIL & HAND**

Richard L. Horwitz, Esquire
POTTER ANDERSON & CORROON LLP
1313 N. Market Street
Wilmington, DE 19801

**BY E-MAIL & FEDERAL EXPRESS**

Joseph P. Lavelle, Esquire
HOWREY LLP
1299 Pennsylvania Avenue, NW
Washington, DC 20004

/s/ Leslie A. Polizoti
Leslie A. Polizoti (#4299)
MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Wilmington, DE 19801
(302) 658-9200
lpolizoti@mnat.com

# EXHIBIT 1

# REDACTED

# EXHIBIT 2

REDACTED

# EXHIBIT 3

REDACTED

EXHIBIT 4

REDACTED

# EXHIBIT 5

REDACTED

# EXHIBIT 6

REDACTED

# EXHIBIT 7

REDACTED

# EXHIBIT 8

REDACTED