IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| BRIDGESTONE SPORTS CO., LTD. and BRIDGESTONE GOLF, INC.,<br><br>Plaintiffs,<br><br>v.<br><br>ACUSHNET COMPANY,<br><br>Defendant. | C.A. No. 05-132 (JJF)<br><br>REDACTED –<br>PUBLIC VERSION |

**BRIDGESTONE'S DAUBERT MOTION TO PRECLUDE DR. FRANCIS DES LYNCH FROM OFFERING TESTIMONY REGARDING INFRINGEMENT OF U.S. PATENT NOS 4,729,861; 4,936,587 AND 5,080,367**

This is a patent infringement action brought by Plaintiffs Bridgestone Sports Co., Ltd. and Bridgestone Golf, Inc. (collectively "Bridgestone") against Defendant Acushnet Company ("Acushnet") in March 2005. Bridgestone asserts that various Acushnet golf balls infringe seven of Bridgestone's patents, and Acushnet asserts through its counterclaims that various Bridgestone golf balls infringe four Acushnet patents, three of which are U.S. Patent Nos. 4,729,861; 4,936,587; and 5,080,367 (the "'861 patent," "'587 patent," and "'367 patent," respectively – collectively the "Lynch patents").[1]

Acushnet has alleged that Bridgestone's Precept Laddie, Precept U-Tri Tour and Bridgestone Tour B330 golf balls (the "Bridgestone golf balls") infringe the Lynch patents.[2] In

---

[1] The '861 patent expired on March 8, 2005 and the remaining two Lynch patents will expire during trial.

[2] For this infringement Dr. Kaplan, Acushnet's damages expert, opined that Acushnet's damages total     REDACTED

an effort to demonstrate this alleged infringement, on January 17, 2007, Acushnet served the Expert Witness Statement of Francis deS. Lynch Re Infringement of U.S. Patent Nos. 4,729,861; 4,936,587; and 5,080,367 (the "Lynch Statement") (Ex. 1). Dr. Lynch is a named inventor on these patents.

Because Dr. Lynch (1) has not been employed in the golf ball industry for at least 27 years (since 1980) and (2) his Statement ignores fundamental tenets of patent law, Bridgestone requests that the Court preclude Dr. Lynch from offering any testimony regarding the infringement of the Lynch patents.

## ARGUMENT

In *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), the Supreme Court set out an analytical framework to determine admissibility of expert testimony under Federal Rule of Evidence Rule 702. Rule 702 provides that an expert witness with "scientific, technical, or other specialized knowledge" may testify in the form of an opinion "if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case."

Under *Daubert*, the trial court acts as a "gatekeeper" to provide preliminary adjudication of whether or not the proffered expert evidence is admissible. The trial court must determine "whether the reasoning or methodology underlying the testimony is scientifically valid and [] whether that reasoning or methodology can properly be applied to the facts at issue." *Daubert*, 509 U.S. at 592-93. "Thus, trial judges are responsible for determining whether the **knowledge** of the expert, whether scientific, technical, or specialized, is based upon the application of reliable theories or techniques." *DSU Med. Corp. v. JMS Co.*, 296 F. Supp. 2d 1140, 1146-47 (N.D. Cal. 2003) (emphasis added). The "proponent of the testimony must

establish admissibility by a preponderance of the evidence." *Id.* (*citing Bourjaily v. United States*, 483 U.S. 171, 175-76 (1988)).

The trial court has broad discretion in determining how to assess the competence of a purported expert witness. *See Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 147-49 (1999). "The factors the Court should consider in deciding how to make this determination will depend on the specific nature of the testimony to be presented and the facts of the particular case." *DSU*, 296 F. Supp. 2d at 1147 (*citing Kumho Tire*, 526 U.S. at 150-51).

    1.    Dr. Lynch Has Not Worked In The Golf Ball Industry For Nearly Three Decades.

Dr. Lynch has not worked in the golf ball industry for at least 27 years. On page 1 of his report, Dr. Lynch says that he worked for Acushnet from 1970 to 1980, where his responsibilities REDACTED (Ex. 1, Lynch Statement, at 1) –

(Ex. 2, Lynch Depo., pg. 13:7 to 14:19). This is the only experience that Dr. Lynch has in the golf industry (Ex. 1 at Ex. A) – and he relies on it to assert that he is "qualified to testify in this case as an expert in the fields of golf ball dimple design and measurement" (*id.* at 1).

Dr. Lynch has not been involved in the golf ball industry, in any capacity, for almost three decades REDACTED (Ex. 1, Lynch Statement, Ex. A). He cannot be qualified as an expert based on this limited and antiquated experience in the golf ball industry.

---

[3] REDACTED

### 2. Dr. Lynch Failed To Conduct A Proper Infringement Analysis.

An infringement analysis is a two-step process that requires (1) determining the proper scope of the claim language, and (2) comparing the accused products with the properly construed claims. *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 976 (Fed. Cir. 1995). Literal infringement occurs where each limitation of at least one claim of the patent is found exactly in the alleged infringer's product. *Panduit Corp. v. Dennison Mfg, Co.*, 836 F.2d 1329, 1330 n.1 (Fed. Cir. 1987).

Infringement may also be found under the doctrine of equivalents, which requires that the accused product embody every limitation of a claim, either literally or by an equivalent. *See Warner-Jenkinson Co. v. Hilton Davis Chem. Co.*, 520 U.S. 17, 41 (1997). An element is equivalent if the differences between the element and the claim limitation are "insubstantial." *Zelinski v. Brunswick Corp.*, 185 F.3d 1311, 1316 (Fed. Cir. 1999). The most widely used and accepted test to determine "insubstantiality" is whether the element performs substantially the same function in substantially the same way to obtain substantially the same result as the claim limitation. *See Graver Tank & Mfg. Co. v. Linde Air Prods. Co.*, 339 U.S. 605, 508 (1950).

Not only does Dr. Lynch not give any guidance as to whether the alleged infringement is literal or under the doctrine of equivalents, but he does not even perform a proper infringement analysis (Ex. 1, Lynch Statement, at 6-20). Dr. Lynch simply does not analyze – or even acknowledge – the construction of claim terms before comparing the accused products with them (*id.*).

The parties agreed to the definition of many terms in the claims of the Lynch patents: (a) dimple "diameter," (b) dimple "depth," (c) "average," (d) "adjacent dimple," (e) "closest points"/"closest distances," (f) "periphery of the golf ball or its continuation," (g)

"about," (h) "A finished golf ball which has from 182 to 392 dimples," and (i) "A finished, painted golf ball which has from about 182 to about 392 dimples" (D.I. 228 at 18-26). The parties disagreed about the definition of the term "edge" in all of the Lynch patents and the meaning of the "determining" step in claim 1 of the '861 patent (*id.* at 20-21).

Dr. Lynch ignored all of the agreed upon and contested claim meanings – except for "about" and "adjacent dimple"[4] (Ex. 1, Lynch Statement, at 14-15). Because of Dr. Lynch's failures, Dr. Lynch's analysis fails as a matter of law. He has completely ignored the required two steps in any patent infringement analysis. Dr. Lynch has not (1) determined or otherwise recognized the proper scope or meaning of the claim terms (even though the parties' agreement on these terms renders this task relatively easy), or (2) compared each of the accused products with those properly construed claim terms. Thus, Dr. Lynch's reasoning and methodology can not be "properly be applied to the facts at issue." *Daubert*, 509 U.S. at 592-93.

Similarly, on page 15 of Dr. Lynch's Statement (Ex. 1) there is what appears to be an attempt at an analysis under the doctrine of equivalents. Dr. Lynch, however, merely concludes that the differences between the claims and the accused Bridgestone golf balls are "insubstantial" and that this is "made possible by the use of multiple dimple sizes on the ball" (*id.* at 15). Dr. Lynch's analysis fails on its face as it ignores the law of equivalents – at no point does he analyze whether the corresponding structure on the Bridgestone golf balls performs substantially the same *function* in substantially the same *way* to obtain substantially the same *result* as the claim limitation. *See Graver Tank*, 339 U.S. at 605.

In fact, Dr. Lynch's ultimate conclusion is merely the conclusory statement that

---

[4] Dr. Lynch used a definition for "adjacent dimple" that is merely similar to that agreed upon by the parties – the exact definition out of the Lynch patents (Ex. 1, Lynch Statement, at 14).

Bridgestone's golf balls "infringe" the Lynch patents (Ex. 1, Lynch Statement, at 20). Even though Dr. Lynch made an attempt at a doctrine of infringement analysis, he provided no guidance as to whether that infringement is either literal or under the doctrine of equivalents, or both.

Dr. Lynch's proffered testimony, therefore, is not premised on a proper legal analysis, and should be excluded. *Oxford Gene Tech. Ltd. v. Mergen Ltd.*, 345 F. Supp. 2d 431, 436 (D. Del. 2004) (excluding testimony of proffered expert and stating that "Dr. Purdue's failure to disclose a clear construction of each disputed claim element makes his report less than helpful to the trier of fact, in contravention of Federal Rule of Evidence 702."); *Inline Connection Corp. v. AOL Time Warner Inc.*, 2007 WL 275928, *5 (D. Del. Jan. 29, 2007) ("Because Waring did not conduct a proper enablement analysis, his opinion is not reliable and is not admissible on enablement. As a result, Waring's opinion and testimony regarding enablement is excluded."). Here Dr. Lynch has failed to conduct a proper infringement analysis because of his disregard for the proper scope and meaning of numerous claim terms and his failure to compare the Bridgestone golf balls with those properly construed claim terms.

Dr. Lynch's failure to conduct a proper infringement analysis of any kind, coupled with the fact that he has not been involved in the golf ball industry for nearly three decades, renders his proffered testimony unreliable, as both the reasoning and methodology have not been properly applied to the facts of the present case.

## CONCLUSION

Bridgestone requests that the Court preclude Acushnet from presenting testimony of Dr. Lynch, or other evidence, suggesting that any of the Bridgestone golf balls infringe any of the Lynch patents either literally or under the doctrine of equivalents.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

/s/ Leslie A. Polizoti

Jack B. Blumenfeld (#1014)
Leslie A. Polizoti (#4299)
1201 N. Market St.
P.O. Box 1347
Wilmington, DE 19801
(302) 658-9200
*Attorneys for Bridgestone Sports Co., Ltd.
and Bridgestone Golf, Inc.*

OF COUNSEL:

Robert M. Masters
Scott M. Flicker
PAUL, HASTINGS, JANOFSKY & WALKER LLP
875 15th St., N.W.
Washington, DC 20005
(202) 551-1700

Original Filing Date: May 8, 2007
Redacted Filing Date: May 10, 2007

## CERTIFICATE OF SERVICE

I certify that on May 10, 2007 I electronically filed the foregoing with the Clerk of the Court using CM/ECF, which will send notification of such filing(s) to Richard L. Horwitz and David E. Moore.

I further certify that I caused copies to be served upon the following on May 10, 2007 in the manner indicated:

**BY E-MAIL & HAND**

Richard L. Horwitz, Esquire
POTTER ANDERSON & CORROON LLP
1313 N. Market Street
Wilmington, DE 19801

**BY E-MAIL & FEDERAL EXPRESS**

Joseph P. Lavelle, Esquire
HOWREY LLP
1299 Pennsylvania Avenue, NW
Washington, DC 20004

*/s/ Leslie A. Polizoti*
Leslie A. Polizoti (#4299)
MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Wilmington, DE 19801
(302) 658-9200
lpolizoti@mnat.com

# EXHIBIT 1

# REDACTED

# EXHIBIT 2

# REDACTED