IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| BRIDGESTONE SPORTS CO., LTD., and BRIDGESTONE GOLF, INC., <br><br> Plaintiffs, <br><br> v. <br><br> ACUSHNET COMPANY, <br><br> Defendant. | ) <br> ) <br> ) <br> ) <br> ) <br> ) C. A. No. 05-132 (JJF) <br> ) <br> ) <br> ) <br> ) <br> ) |

**ACUSHNET COMPANY'S REPLY MEMORANDUM IN SUPPORT
OF EMERGENCY MOTION TO AMEND INVALIDITY EXPERT REPORTS
AND TO RESET THE PRETRIAL AND TRIAL DATES**

OF COUNSEL:

Alan M. Grimaldi
Joseph P. Lavelle
Kenneth W. Donnelly
HOWREY LLP
1299 Pennsylvania Avenue, N.W.
Washington, DC 20004
Tel: (202) 783-0800

Dated: May 14, 2007
795181/28946

Richard L. Horwitz (#2246)
David E. Moore (#3983)
POTTER ANDERSON & CORROON LLP
Hercules Plaza, 6th Floor
1313 North Market Street
P. O. Box 951
Wilmington, DE 19899-0951
Tel: (302) 984-6000
rhorwitz@potteranderson.com
dmoore@potteranderson.com

*Attorneys for Defendant
Acushnet Company*

## TABLE OF CONTENTS

I. INTRODUCTION. ...........................................................................................................1

II. BRIDGESTONE'S CONTENTIONS ARE NOT REALISTIC OR PROPER.......3

III. Acushnet Respectfully Opposes Bifurcation of Validity..........................................7

    a. Validity is a key issue as to some patents......................................................7

    b. The issues are interwoven..............................................................................8

    c. Bridgestone is estopped from seeking bifurcation. .....................................9

IV. CONCLUSION................................................................................................10

# TABLE OF AUTHORITIES

**CASES**

*Alza Corp. v. Myland Labs., Inc.*,
    464 F.3d 1286 (Fed. Cir. 2006)..................................................................................4

*Dystar Texttifarben GmbH & Co. Deutschland KG v. C.H. Patrick Co.*,
    464 F.3d 1356 (Fed. Cir. 2006)..................................................................................4

*KSR, Int'l Co. v. Teleflex, Inc.*,
    550 U.S. ___, 207 WL 1237837 (2007)...........................................................*Passim*

*Leapfrog Enterprises v. Fischer-Price Co.*,
    No. 06-1402 (Fed. Cir. May 9, 2007) ........................................................................1

*New Hampshire v. Maine*,
    532 U.S. 742 (2001).................................................................................................10

*Pegram v. Herdrich*,
    530 U.S. 211 (2000).................................................................................................10

*Power Integrations, Inc. v. Fairchild Semiconductor, Int'l*,
    C.A. No. 04-1371-JJF, 2006 WL 2864569 (D. Del., Oct. 5, 2006)...........................3

Defendant and Counterclaim plaintiff, Acushnet Company ("Acushnet"), files this brief reply memorandum in support of its emergency motion to amend certain pretrial and trial dates in light of the landmark Supreme Court decision in *KSR v. Teleflex.* Acushnet will show that the relief it seeks is in the best interests of the parties and the Court, and should be granted.

## I.  INTRODUCTION

Bridgestone's brief contains its usual, tiresome collection of rants and overstated hyperbole. However, Acushnet submits that the issue before the Court is more practical and measured, and requires a considered solution to best protect the interests of the Court and the parties.

1.  It is difficult for anyone (except Bridgestone apparently) to deny that the Supreme Court's decision in *KSR Int't v. Teleflex Inc.*[1] brought about a fundamental and unexpected change in the law of obviousness.[2] While many expected some sort change in the way the United States Court of Appeals for the Federal Circuit applied its "teaching, suggestion, motivation" test, few can credibly assert that they foresaw the fundamental change in the approach to combination patents and patents covering only routine advances in the art suggested by the sweeping, unanimous Supreme Court.

2.  This Court has had enough experience with the patents at issue in this case to understand that they are squarely in the class of patents most likely to be effected by the *KSR* decision. These are not broad or fundamental patents; they are incremental at

---

[1] *KSR, Int'l Co. v. Teleflex, Inc.*, 550 U.S. ___, 207 WL 1237837 (2007).

[2] In its first post-*KSR* decision, the Federal Circuit affirmed a finding of obviousness by Judge Sleet, noting that common sense should be applied when the patent is nothing more than a known combination of old elements. *Leapfrog Enterprises v. Fischer-Price Co.,* No. 06-1402 (Fed. Cir. May 9, 2007), Slip Op. at 7. (Ex. A hereto). It thus seems that this fundamental change in approach may already be taking hold in the Federal Circuit.

best—adding PCTP to a core ('652); adding another rubber with known properties to the golf ball's core ('961); tweaking the hardness gradient of a golf ball core to be below a hardness of 20 ('707) or above 22 ('791); and the like. Bridgestone's opposition cannot obscure the fact that many of these patents face serious questions about their validity after *KSR*.

3.  In light of the foregoing, Acushnet's motion provides a reasonable approach to further the interests of justice, without engendering significant delay in the ultimate resolution of the case. Acushnet does <u>not</u> seek to reopen discovery. Acushnet does <u>not</u> seek introduce new prior art into the case that is not already found in interrogatory answers or otherwise reflected in expert reports or the like. Acushnet does <u>not</u> seek to revisit the Court's prior discovery rulings or sanctions ruling. Instead, Acushnet proposes to allow the experts to revise their expert reports on obviousness, a step even Bridgestone concedes is needed. (Opp. Mem. at 9). Acushnet proposes that this revision only be based on prior art already identified in the case and that summary judgment motions be allowed, where appropriate, on the obviousness issue. In *KSR*, the Supreme Court emphasized that obviousness is a legal issue that can be ripe for summary judgment. Acushnet's approach seems to best balance the need to revise expert reports on obviousness with only a modest extension in the current pretrial schedule and trial dates.

4.  It seems clear that Bridgestone, on the other hand, wants to rush to a verdict on any snippet of this case that it can, improperly using this Court as a vehicle for settlement leverage, and going so far as to distort a fundamental change in patent law while saying Acushnet should have been prescient to know exactly what was going to

2

happen. The Court should not let this blatant opportunism outweigh measured case management in view of a change in the law.

## II. BRIDGESTONE'S CONTENTIONS ARE NOT REALISTIC OR PROPER

Bridgestone argues that Acushnet should have seen the future, known in advance the outcome in *KSR* months ago, and moved to stay the case months ago. (Opp. at 1-2). Obviously, this contention is not credible. While many expected some change in the TSM test, few could have expected the sweeping decision that the Court issued. The Supreme Court has fundamentally altered the approach to obviousness in a sweeping, 9-0 decision. The Court broadly announced that combinations of old elements to achieve a predictable result are not patentable, a ruling that harkens back to the "synergy" requirement that courts applied in the 1960s and 70s, before the Federal Circuit was founded. The Court noted that routine advancements in the art that would have happened anyhow are not patentable, a comment that calls many of the Bridgestone patents into question, and which seems to signal a change in the prior practice of upholding even fairly incremental patents. We respectfully submit that no one can be expected to have foreseen this.[3]

Bridgestone argues that there is no reason to redo expert reports on obviousness, as the *KSR* decision will only make Acushnet's existing obviousness arguments stronger. This argument is also not on point or realistic. Initially, we all recognize that today

---

[3] In the *Power Integrations, Inc. v. Fairchild Semiconductor, Int'l*, (C.A. No. 04-1371-JJF, 2006 WL 2864569 (D. Del., Oct. 5, 2006)) case that Bridgestone cites there was also a pending reexamination in the PTO which likely had an impact on the decision to stay that case. Bridgestone's argument is in effect every defendant in every patent case should have asked for their case to be stayed when certiorari was granted in *KSR*. This is not realistic, as the Court undoubtedly recognizes. The Supreme Court's handling of patent cases has rarely been predictable, and district courts, as a practical matter, cannot stay all their patent cases whenever the Supreme Court takes a patent case.

3

experts are limited in what they can say at trial by their expert reports and depositions, if taken. As Bridgestone even seems to acknowledge, amendment of expert reports will be needed to allow the experts to reframe their arguments in light of *KSR*. Moreover, as noted in Acushnet's main brief, while in some cases Acushnet's current argument can be presented more forcefully in light of *KSR*, in other cases a somewhat different selection of prior art might be more compelling, given the rejection of the CAFC's rigid application of the TSM test. To recognize this is only to be realistic and practical. The selection of prior art on which to rely at trial is always constrained by the need to comply with Federal Circuit law for appeal purposes. Realistically, some changes in prior art can be expected when the law so fundamentally changes.

For the same reason, the recent "relaxation" in the CAFC approach to the TSM test in cases like *DyStar*[4] and *Alza Corp. v. Myland Labs*[5] does not warrant denial of the motion as Bridgestone suggests. (Opp. Mem. at 6). First of all, the Supreme Court clearly did not embrace these cases, noting instead that those cases were not before it and "do not correct the errors of law made by the Court of Appeals in this case." (*KSR*, Slip op. at 18). Indeed, as discussed above, the message the Supreme Court seems to be sending the federal courts is much more fundamental than tinkering with the "suggestion to combine" or TSM test alluded to in *DyStar* and such cases. It is this more fundamental message about the standard for obviousness that warrants the relief Acushnet seeks, not merely the tweaking of the TSM rules.

---

[4] *Dystar Texttifarben GmbH & Co. Deutschland KG v. C.H. Patrick Co.*, 464 F.3d 1356 (Fed. Cir. 2006).

[5] *Alza Corp. v. Myland Labs., Inc.*, 464 F.3d 1286 (Fed. Cir. 2006).

Bridgestone, wrongly, argues that Acushnet's obviousness arguments are not dependent on *KSR*, citing only one example, the '707 patent. Once again, Bridgestone ignores the facts and overlooks the broader picture. Acushnet's expert repeatedly focused on motivation to combine throughout his expert report on validity. (*See, e.g.*, Felker 1/16/07 Report at 16, 20-22, 50, 64, 71). It is common knowledge that, before *KSR*, obviousness arguments could not be fashioned without complying with the Federal Circuit precedent. Bridgestone cannot ignore this reality.

To take one example, consider the '791 Patent. The '791 Patent seems to be little more than an effort to take the core gradient limitations in the '707 patent (8-20 hardness gradient) and extend it to a higher range (greater than 22 hardness gradient). While higher hardness gradients were known in the art, under the Federal Circuit's pre-*KSR* case law, it would be difficult to combine the '707 patent with one of these higher gradient references, as the need for an explicit teaching to combine would present a challenge. However, under *KSR*, this type of obviousness argument can and should now be made.

Further, the '707 patent that Bridgestone points to itself seems to be a patent that is clearly invalid after *KSR*, and one where invalidity can be more simply and directly proven under the *KSR* framework. As Bridgestone notes, Acushnet contends that the '707 patent is a trivial modification of yet another prior art Bridgestone patent, which was published in Europe as what the parties call EP '043. By selecting an antioxidant from the class of known antioxidants at the time, the recipe of EP '043 creates the cores claimed in the '707 patent. The factfinder deserves to be told that the combination of these two elements, both known in the art, to achieve the fully predictable result, renders

5

the patent invalid under *KSR*.[6] The factfinder deserves to hear that this is nothing more than routine tinkering that would have occurred inevitably. The factfinder may well conclude that the dubious practice of filing patents that disclose what was already known in the art while claiming features, like core gradients, that are not new but that were not routinely measured in the prior art does not warrant patent protection. The factfinder deserves to hear that this is just common sense, and that the '707 patent (and several other patents at issue here) seem to be retarding, not advancing the art.

Finally, Bridgestone continues to argue, incredibly, that nothing in *KSR* would justify new obviousness contentions, that *KSR* was following "well-established" precedents, and that "*KSR* did nothing to change the nature of an accused infringer's obviousness contentions." (Opp. Mem. at 9). Once again, these arguments seem to fly in the face of what the Court did. The older Supreme Court cases, such as *United States v. Adams* or *Anderson's Black Rock* (also known as the "*Radiant Burners*" case), can hardly be considered "well established precedents" prior to being revived by *KSR*. These cases, which were relied on in the 1960s and 1970s when courts invalidated patents on combinations of elements without something unexpected (often called "synergy" in the regional courts of appeal), have been largely banished from Federal Circuit obviousness law until now. Indeed, one wonders if current patent law students study these cases, although they certainly will be studied after *KSR*. This is not a modest change in the law, this is very significant development. Equally important is the Court's instruction that the level of skill in an art increases over time, and that more is expected of a patentable

---

[6] As there does not seem to be any dispute about the basic facts, the '707 patent is a good example of a patent that may be ripe for summary judgment of invalidity, depending upon the positions taken in any revised expert reports submitted by Bridgestone.

6

invention as time and the art progresses. Bridgestone's brief ignores the basic reality of what the Court seems to have done.

Acushnet also respectfully disagrees that the *KSR* decision can be handled solely through jury instructions as was done in *Telecordia*. Given that the jury apparently had already been chosen when *KSR* was decided, we expect that the Court had little choice but to proceed as it did in *Telecordia*. However, we submit that this approach is far from ideal and not proper in this case. Obviously, jury instructions cannot present new arguments or be used to present any evidence to the jury. The instructions are not evidence and cannot take the place of evidence. It would be error, we submit, to handle *KSR* simply through jury instructions. The jury will be denied valuable evidence and argument that could invalidate many of the patents in suit. Moreover, this approach could result in a retrial if the Federal Circuit concludes that the proper course was to try the case with the experts addressing the controlling law, even if this necessitates a brief extension of the trial date.

### III. ACUSHNET RESPECTFULLY OPPOSES BIFURCATION OF VALIDITY

Acushnet respectfully opposes the bifurcation of the case with validity tried separately from infringement and damages. Acushnet submits that such bifurcation would be inappropriate in this case for several reasons.

#### a. Validity is a key issue as to some patents.

First, on several patents in suit ('707, '791, and '961), Acushnet does not make significant challenges to whether the claims read on the accused Pro V1 golf balls. As to these patents, two issued after Acushnet started selling the Pro V1 golf balls, and Acushnet makes limited challenges as to the claims reading on the balls. In all three cases, Acushnet's principal claim is that the patents are invalid.

7

Thus, trying damages without trying validity could cause the jury to conclude that Acushnet has no defense as to these balls, and could greatly prejudice Acushnet. This prejudice could not be cured with an instruction, as the jury plainly could conclude that if it is being asked to award damages, Acushnet must be liable. Acushnet would be greatly prejudiced if forced to go through a damages phase where it did not present its main defense, that the patents in suit are invalid. This is particularly true in this case, where the law on validity seems to have shifted in a fundamental way that should even more clearly invalidate the '707, '791 and '961 patents when that evidence is considered.

Furthermore, damages will be very hard, if not impossible, to try separate from validity. The parties have very divergent views of the significance or triviality of these patents, which dispute the jury needs to evaluate properly to award damages. Both parties damages experts rely on the so-called *Georgia Pacific* factors to calculate damages, which requires the jury to assess the strength of the patents at issue.

Additionally, if damages were tried before validity, it will be very hard to break out the damages award in the likely event that some or many of the Bridgestone patents are found to be invalid. It seems utterly unrealistic in a twelve patent case to ask the first jury to award damages patent by patent. Thus, after a later validity trial where some patents are found to be invalid, there will be no easy way to recalculate damages without one party claiming that its seventh amendment right to have the damages awarded by the jury was impacted.

    **b.    The issues are interwoven.**

The notion of trying validity to a separate jury from the jury that tries infringement is a troubling one. However, here the validity and infringement issues are so inextricably intertwined that such bifurcation would not be appropriate.

8

As is often the case, the parties experts have taken various, interwoven views on certain issues depending if the position is taken on infringement or validity. Bridgestone, for example, takes the position that prior art references like EP '043 teach little or nothing beyond the words on the page. At the same time when Bridgestone defends other of its equally sparse patents from claims of invalidity as not enabled (like the '791 patent), it claims that the patent, read in light of the prior art, teaches a host of things that are not in the patent. The jury, to the extent it is presented these issues, is entitled to see that Bridgestone's experts are keeping "two sets of books," one for Bridgestone patents, and a different set of rules of prior art patents. More generally, the issues of validity and infringement are closely intertwined in this case, and there will be much duplication and overlap between the two trials. It will be simpler, and clearer, for one jury to hear all the issues.

### c.  Bridgestone is estopped from seeking bifurcation.

Earlier in this case Acushnet moved to bifurcate the damages portion of this case, Bridgestone opposed that motion claiming that "bifurcation would prejudice Bridgestone." Bridgestone cited the burden and cost of bringing its witness from Japan, claimed that the damages and validity issues were intertwined, and asserted that the scope of this case did not warrant bifurcation. (D.I. 55; Bridgestone's Answering Brief in Opposition to Acushnet's Motion to Bifurcate at 6-12)

Having prevailed at that time in opposing bifurcation, Bridgestone is estopped, by the doctrine of judicial estoppel and basic fairness, from seeking bifurcation by taking the opposite position here. Bridgestone prevailed in a prior stage of this case by asserting that bifurcation would prejudice it and that the case was not appropriate for bifurcation. It may not now adopt a contrary position and propose bifurcation, simply because,

opportunistically, it now perceives that bifurcation may be in its interest. The doctrine of judicial estoppel exists to prevent such gamesmanship by litigants. *See New Hampshire v. Maine*, 532 U.S. 742, 749 (2001); *Pegram v. Herdrich*, 530 U.S. 211, 227 n.8 (2000). (explain the foundations of fairness in which judicial estoppel is rooted).

## IV. CONCLUSION

For the foregoing reasons, as well as those in Acushnet's opening brief, Acushnet asks that the Court allow the parties to amend their expert reports on obviousness in light of *KSR*, submit new summary judgment briefs, if appropriate, on the issue of obviousness, and to grant a reasonable continuance of the trial date to accommodate the efficient preparation of this case under the recently changed, and controlling *KSR* standard.

Respectfully submitted,

POTTER ANDERSON & CORROON LLP

OF COUNSEL:

Alan M. Grimaldi
Joseph P. Lavelle
Kenneth W. Donnelly
Brian S. Seal
HOWREY LLP
1299 Pennsylvania Avenue, N.W.
Washington, DC 20004
Tel: (202) 783-0800

Dated: May 14, 2007
795181 / 28946

By: /s/ David E. Moore
Richard L. Horwitz (#2246)
David E. Moore (#3983)
Hercules Plaza, 6th Floor
1313 North Market Street
P. O. Box 951
Wilmington, DE 19899-0951
Tel: (302) 984-6000
rhorwitz@potteranderson.com
dmoore@potteranderson.com

*Attorneys for Defendant
Acushnet Company*

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

**CERTIFICATE OF SERVICE**

I, David E. Moore, hereby certify that on May 14, 2007, the attached document was hand delivered to the following persons and was electronically filed with the Clerk of the Court using CM/ECF which will send notification to the registered attorney(s) of record that the document has been filed and is available for viewing and downloading:

Jack B. Blumenfeld
Maryellen Noreika
Leslie A. Polizoti
Morris, Nichols, Arsht & Tunnell
1201 N. Market Street
Wilmington, DE  19801

I hereby certify that on May 14, 2007, I have Electronically Mailed the documents to the following:

Robert M. Masters
Paul, Hastings, Janofsky & Walker LLP
875 15th Street, N.W.
Washington, D.C.  20005
RobMasters@paulhastings.com

/s/ David E. Moore
Richard L. Horwitz
David E. Moore
Potter Anderson & Corroon LLP
Hercules Plaza – Sixth Floor
1313 North Market Street
P.O. Box 951
Wilmington, DE  19899-0951
(302) 984-6000
rhorwitz@potteranderson.com
dmoore@potteranderson.com

680012 / 28946