IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| BRIDGESTONE SPORTS CO., LTD. | ) | |
| and BRIDGESTONE GOLF, INC., | ) | |
| | ) | |
| Plaintiffs, | ) | C.A. No. 05-132 (JJF) |
| | ) | |
| v. | ) | |
| | ) | |
| ACUSHNET COMPANY, | ) | |
| | ) | |
| Defendant. | ) | |

**BRIDGESTONE'S OPPOSITION TO ACUSHNET'S _DAUBERT_ MOTION TO
EXCLUDE THE PROPOSED EXPERT TESTIMONY OF NICK PRICE**

As an experienced, respected professional golfer for over 30 years, as the winner

of three "majors," as the former number "1" golfer in the world, as the 1993 and 1994 PGA

Player of the Year, and as a member of the World Golf Hall of Fame, Nick Price has relevant,

specialized knowledge about the game of golf that will assist both the Court and the jury.  Mr.

Price can explain the intricacies of the game and the importance of ball performance like few

others can.  He can provide the jury context and background about golf ball performance and the

changes in golf ball technology over time.  These issues are relevant to this case, including to

Bridgestone's claims of infringement and validity.

STATEMENT OF FACTS

I.    NICK PRICE'S BACKGROUND

Nick Price is a professional golfer on the PGA's Champions Tour.  He began his

professional golf career in 1977 on the Southern Africa Tour, before moving to the European

Tour and then to the PGA Tour in 1983.  Mr. Price has 18 PGA Tour wins.

Mr. Price has many other wins on the European Tour and in other sanctioned

tournaments.  By the mid-90s, Mr. Price was regarded as the best player in the world, and in 1994 he won two majors back-to-back – The Open Championship (*a/k/a*, the British Open) and the PGA Championship – adding to his first major (also the PGA Championship) from 1992.  He topped the PGA Tour money list in 1993 and 1994, setting a new earnings record each time, and spent 43 weeks at the top of the Official World Golf Rankings.  Mr. Price was inducted into the World Golf Hall of Fame in 2003 (Ex. A).  In 2005, he was awarded the Bob Jones Award, the highest honor given by the United States Golf Association in recognition of distinguished sportsmanship in golf.

Mr. Price will testify as to the historical development of golf ball technology, in particular, the transition from wound ball technology to solid ball technology, how a golf ball is evaluated by a golfer, including the parameters of spin, feel, distance, control, and compression. He is the witness qualified to testify about the subjective characteristics of golf ball technology including spin, feel and control.  Mr. Price will also testify as to Bridgestone's role in the development of solid golf ball technology.

II.    THE WOUND BALL TO SOLID BALL TRANSITION

For years, golf balls were made by wrapping polyisoprene threads around corn syrup centers, the so-called wound ball.  Starting in the 1990s, the golf ball market began to shift to solid ball technology.  This transition is important in this case.  Understanding it will allow the jury to appreciate the importance of Bridgestone's patents and the technology at issue, and will allow the jury to appreciate the innovation of Bridgestone's patents.  And understanding this transition will allow the jury to understand why Acushnet needed to use Bridgestone's technology.

III.   GOLF BALL PERFORMANCE CHARACTERISTICS AND THE BRIDGESTONE PATENTS-IN-SUIT

Golf balls have several important characteristics of concern to all golfers – distance, spin, feel, durability and control, just to name a few.  Each one of the Bridgestone patents-in-suit discusses at least some of these characteristics.  The '852 patent, for example, teaches that a ball manufactured according to its teachings will have "a good total balance of properties in that feeling and controllability are improved at no sacrifice of flying performance and durability" (D.I. 2 at Ex. B, '852 patent at Abstract).  The '707 patent teaches that a ball made according to its teachings "features an increased flight distance on full shots with a driver and improved control on approach shots with No. 5 iron or sand wedge" (*id*. at Ex. E, '707 patent at col. 1:8-11).  The '791 patent teaches that balls made according to its teachings feature improved distance of the ball when struck with a driver, provide the ball with excellent spin characteristics and thus good controllability on approach shots, and give the ball a good feel on impact, enabling the ball to meet the high expectations of skilled golfers (*id*. at Ex. I, '791 patent at Abstract).  The remaining Bridgestone patents-in-suit each correlate the claimed golf balls to similar improvements in various golf ball performance characteristics.

Through his experience and knowledge, and most importantly as a professional golfer, Mr. Price can give these abstract and subjective concepts of distance, spin, feel, durability and control real meaning.  He can explain to the jury why it is these things matter in a way few others can.

IV.   BRIDGESTONE'S ROLE AS A LEADER IN THE DEVELOPMENT OF SOLID GOLF BALL TECHNOLOGY

Bridgestone was a leader in the development of solid ball technology throughout the 1990s and it continues in that pioneering role today.  Mr. Price, as a professional golfer who has played Bridgestone's solid golf balls since the early 90s, has seen first hand the development

of Bridgestone's technology.  Of course, as a member of the PGA Tour, Mr. Price was able to

observe first-hand how other companies sought to improve their technology.

<u>ARGUMENT</u>

I.    MR. PRICE HAS SPECIALIZED KNOWLEDGE THAT WILL ASSIST
      THE COURT AND THE JURY AND THAT IS RELEVANT TO THE
      ISSUES IN THIS CASE

      A.    <u>Golf Ball Performance</u>

Mr. Price has relevant and specialized knowledge that will assist both the Court

and the jury.  He will offer expert testimony about golf ball performance and subjective

characteristics, including spin, control, distance and feel – performance parameters at the heart of

Bridgestone's patented technology.  The specifications of Bridgestone's patents discuss these

performance characteristics in detail.  Certainly, there cannot be any legitimate dispute that Mr.

Price, a member of the World Golf Hall of Fame, has true expertise on golf ball performance and

how golf ball performance is evaluated by golfers.  Acushnet can hardly argue that golf ball

performance is somehow irrelevant to the issues in a patent infringement case for golf balls.

Golf ball performance is relevant.  It will be helpful to the jury to understand golf

ball performance to place the Bridgestone patents in their proper technological context, *i.e.*, to

understand why it is that Bridgestone's inventions constitute improvements over the prior art.

Mr. Price's testimony will also assist the jury in understanding important characteristics of golf

balls to a professional golfer, and of Acushnet's infringement in general, both literal and under

the doctrine of equivalents.  Mr. Price has the ability to explain to the Court and to the jury what

would be an "insubstantial" change in considering the issue of equivalents in a way that the

scientific experts cannot.

The jurors will not necessarily have knowledge of the game of golf.  Some jurors

may be avid golfers, others may play occasionally, and still others may be totally unfamiliar with

the game.  Mr. Price's testimony will assist them in understanding the game and how the technology embodied in a little white ball fits into the game.  Even if a golf ball's performance parameters were not relevant to any other issue in this case (and they are), context and background into the golf ball industry is in and of itself relevant and a proper area for expert testimony.

> B.    <u>Wound Ball To Solid Ball Transition</u>

Mr. Price was consistently rated as one of the best golfers in the world at the same time when some golf companies, except Acushnet, began meaningfully transitioning their product lines from thread wound balls to solid balls.  Mr. Price played through this transition and was one of the first professional golfers to adopt the solid ball technology that exists today.  Mr. Price has spoken and continues to speak with other professional and amateur golfers about the performance of golf balls.  He can assist the Court and the jury in understanding how and why this transition occurred, and what it means to the professional golfer.  He has specialized knowledge that will assist the Court and the jury in understanding the differences between solid balls and would balls and why golfers much preferred the solid ball technology.

> C.    <u>Bridgestone's Role In The Development Of Solid Ball Technology</u>

Mr. Price began playing Bridgestone's solid golf balls in the early 90s, and was one of the first truly elite golfers to begin playing them.  Mr. Price continued to play Bridgestone's solid golf balls throughout the 90s and continues to play them today.  From the perspective of a professional golfer, Mr. Price has the expertise to render an opinion about the advantages of the solid technology and assist the jury in deciding the issues in this case.  It is from this unique vantage point and because of this unique experience that Mr. Price can explain Bridgestone's technology and how Bridgestone's balls developed over time and changed the game of golf forever.

Acushnet has argued repeatedly that golf ball patents exist in a "crowded art" (*see, e.g.*, D.I. 233 at 2, n.1), and will undoubtedly make the same arguments at trial. It would be helpful to the jury to hear Mr. Price's opinions about Bridgestone's role in the development of solid golf ball technology to place Acushnet's claims about the state of the art in the proper context.

Acushnet has identified professional golfer Davis Love III as an expert, and served his expert report. Both Mr. Love and Mr. Price can offer their opinions to assist the jury. Acushnet can cross-examine Mr. Price, just as Bridgestone will do if Mr. Love testifies. The remedy here (to the extent any is required) is simply a prepared cross-examination of the witness, not exclusion of relevant testimony.

## II.    ACUSHNET WILL SUFFER NO PREJUDICE FROM MR. PRICE'S TESTIMONY

Acushnet argues that it will be greatly harmed by Mr. Price's testimony. That Acushnet disagrees with the opinions that Mr. Price will offer does not mean he should be precluded. His renown as a professional golfer, Acushnet argues, would apparently sway the jury based on emotion instead of the facts (D.I. 450 at 7). Acushnet doesn't explain why that is. In any event, Acushnet has submitted an expert report from a professional golfer – Davis Love III.

Indeed, the Third Circuit has held that an expert's impressive qualifications provide no basis to exclude his testimony. *U.S. v. Rutland*, 372 F.3d 543 (3d Cir. 2004) (handwriting expert allowed to testify over defendant's objection that jury will be prejudicially swayed if expert with such extraordinary qualifications is permitted to testify to ultimate issues.). Juries may properly consider expert's impressive qualifications in evaluating testimony. *Id.*

Forbidding especially well-qualified experts from opining would lead to "absurd results" by incentivizing litigants to search out less qualified experts. *Id*.

III.    MR. PRICE'S TESTIMONY WILL NOT RESULT IN CONFUSION OF THE ISSUES OR BE A WASTE OF TIME

Acushnet argues that if Mr. Price is allowed to testify, the case will become nothing more than a "battle of expert witnesses" (D.I. 450 at 7). What's wrong with that? That's what patent cases are. *Telcordia Techs. v. Lucent Techs.*, 2007 U.S. Dist. LEXIS 31960 (D. Del. 2007) ("the court concludes that the dispute between the parties can be classified only as a classic battle of the experts"); *Constr. Research & Tech. v. Euclid Chem. Co.*, 2006 U.S. Dist. LEXIS 37213 (N.D. Ohio 2006) ("As is often the case where the terms to be construed are highly technical in nature, this case represents a classic battle of the experts."); *Ebeling v. Pak-Mor Mfg. Co.*, 683 F.2d 909, 913 (5th Cir. 1982) ("We turn to the issue of infringement. As usual, this was a battle of experts."). If the experts did not disagree, there would be no dispute and there would be no trial.

It is not a waste of time when experts disagree. This is what happens in patent cases. This is why jurors are charged with weighing the expertise and credibility of witnesses to determine whose testimony to accept.

IV.    MR. PRICE'S TESTIMONY WILL BE RESTRICTED TO THE SCOPE OF HIS EXPERT REPORT

Acushnet argues that Mr. Price should be precluded from offering testimony beyond the scope of his expert report. Bridgestone agrees, and requests that this rule be enforced both ways. Indeed, Bridgestone believes that no expert on either side should be permitted to offer opinions that are not included in his expert report, and that people who submitted no report should be precluded from offering any expert testimony.

CONCLUSION

Bridgestone requests that the Court deny Acushnet's motion.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Leslie A. Polizoti*

_____
Jack B. Blumenfeld (#1014)
Leslie A. Polizoti (#4299)
1201 N. Market St.
P.O. Box 1347
Wilmington, DE 19801
(302) 658-9200
*Attorneys for Bridgestone Sports Co., Ltd.*
*and Bridgestone Golf, Inc.*

OF COUNSEL:

Robert M. Masters
Scott M. Flicker
PAUL, HASTINGS, JANOFSKY & WALKER LLP
875 15th St., N.W.
Washington, DC 20005
(202) 551-1700

May 14, 2007

<u>CERTIFICATE OF SERVICE</u>

I certify that on May 14, 2007 I electronically filed the foregoing with the Clerk

of the Court using CM/ECF, which will send notification of such filing(s) to Richard L. Horwitz

and David E. Moore.

I further certify that I caused copies to be served upon the following on May 14,

2007 in the manner indicated:

### BY E-MAIL and HAND

Richard L. Horwitz, Esquire
POTTER ANDERSON & CORROON LLP
1313 N. Market Street
Wilmington, DE  19801

### BY E-MAIL and FEDERAL EXPRESS

Joseph P. Lavelle, Esquire
HOWREY LLP
1299 Pennsylvania Avenue, NW
Washington, DC  20004


*/s/  Leslie A. Polizoti*
Leslie A. Polizoti (#4299)
MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Wilmington, DE  19801
(302) 658-9200
lpolizoti@mnat.com