

**Potter
Anderson
&Corroon LLP**

1313 North Market Street
P.O. Box 951
Wilmington, DE 19899-0951
302 984-6000

www.potteranderson.com

Richard L. Horwitz
Partner
Attorney at Law
rhorwitz@potteranderson.com
302 984-6027 Direct Phone
302 658-1192 Fax

May 15, 2007

**VIA ELECTRONIC FILING**

The Honorable Joseph J. Farnan, Jr.
United States District Court
844 King Street
Wilmington, Delaware 19801

Re:  *Bridgestone Sports Co. v. Acushnet Co.*, C.A. No. 05-132 (JJF)

Dear Judge Farnan:

We write to Your Honor in two respects regarding Acushnet's Emergency Motion to Amend Invalidity Expert Reports And To Reset Pretrial and Trial Dates in Light of the Supreme Court's Decision in *KSR Int'l Co. v. Teleflex Inc.* (D.I. 426).

First, with yesterday's filing of Acushnet's reply memorandum in support of its Emergency Motion (D.I. 489), briefing on this issue is now complete. Counsel for Acushnet is prepared to address this motion at the Court's earliest convenience, if Your Honor determines that additional participation from the parties would be helpful.

Second, counsel for Acushnet has obtained just this morning the transcript of a decision in a patent case with similar circumstances to this case and facing the same issues raised by Acushnet's Emergency Motion. In that case, involving multiple patents and scheduled for trial to begin on May 21, Judge Rudi Brewster of the District Court of the Southern District of California last Friday ordered a delay of the trial over objections from plaintiff in order to allow sufficient time for both sides to revise their expert reports and include additional prior art in view of the decision in *KSR*. The Court viewed this relief in the form a brief delay in the trial as a matter of fairness to the defendants:

> [M]y position is I'm willing to permit the parties to supplement their expert witness opinions, and that would mean I'm willing to permit depositions of the witness on the supplemental report, and then, the question is, well, do we have time for all of that. … [F]rankly, I think the question in my mind, then, is, well, doesn't due process require that we have to give them the opportunity to do this? And if it does, then, it doesn't matter what the trial date is, it doesn't matter what

The Honorable Joseph J. Farnan, Jr.
May 15, 2007
Page 2

> the calendar says. There will just have to be a date and there will have to be a time when the case can be tried before whomever. But, it seems to me like the parties should have the right to conform their case to the last word of the Supreme Court.
>
> ...
>
> The point right now is, what do I feel needs to be done to try this case fairly and give everybody the due process that they're entitled to, and I think that I'm required to give the Defendants the opportunity to take another look at their prior art and see whether there are any other prior art references that could have been invoked before but weren't, and they want to bring them into the game now. And I think they're entitled to that, And if they -- and also, I think both sides are entitled to depose experts on -- I mean, to get reports from them, and depositions.

(5/11/07 Order on Transcript, *Lucent Technologies v. Gateway, Inc.*, at 46 and 52.)[1]

We ask Your Honor's consideration of this non-binding, but persuasive authority with respect to Acushnet's Emergency Motion.

Respectfully,

*/s/ Richard L. Horwitz*

Richard L. Horwitz

RLH/msb
795209

Enclosure
cc:  Clerk of the Court (by hand delivery)
     Jack B. Blumenfeld, Esquire (by electronic mail)
     Robert M. Masters, Esquire (by electronic mail)

---

[1] A copy of the relevant sections of the transcript is attached. *See generally id.* at 45-55.

```
                    UNITED STATES DISTRICT COURT
                   SOUTHERN DISTRICT OF CALIFORNIA


LUCENT TECHNOLOGIES,        )  Case No. 02CV2060-B(CAB)
                            )         Consolidated with
          Plaintiff,        )         03CV0699-B(CAB)
                            )         03CV1108-B(CAB)
vs.                         )         Related to:
                            )         06CV0684-B(CAB)
GATEWAY, INC., et al.,      )
                            )  San Diego, California
          Defendants.       )
                            )  Friday,
                               May 11, 2007
                               9:00 a.m.


                   TRANSCRIPT OF MOTION HEARING
             BEFORE THE HONORABLE RUDI M. BREWSTER
                   UNITED STATES DISTRICT JUDGE

APPEARANCES:

For the Plaintiff:
                            JOHN DESMARAIS, ESQ.
                            ROBERT A. APPLEBY, ESQ.
                            JAMES MARINA, ESQ.
                            Kirkland & Ellis, LLP.
                            153 East 53rd Street
                            New York, New York 10022
                            (212) 909-3189

For the Defendant:          W. BRYAN FARNEY, ESQ.
                            JEFFREY B. PLIES, ESQ.
                            ANDREW N. THOMASES, ESQ.
                            JOSHUA WALSH-BENSON, ESQ.
                            Dechert, LLP
                            300 West Sixth Street
                            Suite 1850
                            Austin, Texas 78701
                            (512) 394-3000



Proceedings recorded by electronic sound recording;
transcript produced by transcription service.
```

ii

APPEARANCES (Cont'd.)

For MicroSoft:
JUANITA A. BROOKS, ESQ.
Fish & Richardson
4350 La Jolla Village Drive
Suite 500
San Diego, California 92122
(858) 678-5070

For Dell:
JOEL FREED, ESQ.
JOSEPH MICALLEF, ESQ.
Arnold & Porter
555 Twelfth Street, NW
Washington, DC 20004
(202) 942-5000

Transcript Ordered by:
JOHN GARTMAN, ESQ.

Court Recorder:
Nancy Cablay/Jennie Hinkle
United States District Court
940 Front Street
San Diego, California  92101

Transcriber:
Carol Abbott/Jordan Keilty
Echo Reporting, Inc.
6336 Greenwich Drive
Suite B
San Diego, California  92122
(858) 453-7590

1  Supreme Court decision with respect to obvious. Nancy,
2  we're interrupting the record on the summary judgment
3  motions to --
4          THE CLERK: What case are we going on?
5          THE COURT: It's just a different issue, but it
6  involves more than one case, and it involves more than one
7  case.
8          MR. FREED: Your clerk has kind of identified the
9  issue for us. Could we perhaps take two minutes and let the
10 Defendants talk, so we can convey to you a consistent
11 position?
12         THE COURT: That's fine. Buzz me when you're
13 ready.
14         MR. DESMARAIS: While they're out of the room, can
15 I make some other arguments?
16     (Proceedings recessed briefly.)
17         THE COURT: Okay, we're back on the record and
18 we're going to solve the logistic and procedural problems
19 that we have with the -- I keep wanting to say the KFC, but
20 it's not -- it's KSI. I keep thinking it's the fried
21 chicken case, but it's the Supreme Court decision on
22 obviousness, and we all have read the case, so we know what
23 that says. The question is, to what extent does it impact
24 our pending cases? We have two of them before this Court
25 pending, and so, the question is, what's the impact of that

46

1  decision on our case, and do we -- and if it does have an
2  impact, my position is I'm willing to permit the parties to
3  supplement their expert witness opinions, and that would
4  mean I'm willing to permit depositions of the witness on the
5  supplemental report, and then, the question is, well, do we
6  have time for all of that.  And if we don't, I think that --
7  frankly, I think the question in my mind, then, is, well,
8  doesn't due process require that we have to give them the
9  opportunity to do this?  And if it does, then, it doesn't
10 matter what the trial date is, it doesn't matter what the
11 calendar says.  There will just have to be a date and there
12 will have to be a time when the case can be tried before
13 whomever.  But, it seems to me like the parties should have
14 the right to conform their case to the last word of the
15 Supreme Court.
16        MR. DESMARAIS:  I can't debate that issue with
17 you, but I will take issue with whether it has an effect
18 that needs to be corrected.
19        THE COURT:  Well, that, I don't know.
20        MR. DESMARAIS:  Yeah, if you read the decision,
21 all the Supreme Court did was reiterate their prior case,
22 which was <u>Granby John Deere</u> saying that was the standard we
23 laid down years ago, that's the standard today.  The Federal
24 Circuit has augmented <u>Granby John Deere</u> with this rigid --
25 what the Supreme Court called a rigid test of motivation and

1  teaching.  And the Supreme Court said you can take that into
2  account, but we're not going to allow that to be a rigid
3  modification of Granby John Deere.  So, what is the net
4  effect of that?  That has made the Defendants' job
5  moderately easier to prove obviousness.  So, their expert
6  reports right now would have said, here's the Granby John
7  Deere analysis, which all expert reports and obviousness do.
8  So, they've got that.  And they probably had an extra couple
9  paragraphs in the reports that say, in addition, the prior
10 art combinations teach, motivate, suggest.
11         So, the Supreme Court said, well, that's no longer
12 a rigid test.  Well, that's consistent.  You can still talk
13 about that.  It's no longer the --
14         THE COURT:  You can still use it.  If you've got
15 it, use it.
16         MR. DESMARAIS:  So, they got it.  They got it.
17 It's in there.  They could use it.  They could choose not to
18 use it.  They've still got the Granby John Deere analysis in
19 the reports.  So --
20         THE COURT:  But, they may need an expert to say
21 that, even if we didn't have it, You know, even if they
22 didn't have the teaching or the motivation, it's still
23 obvious.  And that may not have been made -- that may not
24 have been --
25         MR. DESMARAIS:  They don't need a new report for

48

1 that. The expert can say, you don't need motivation,
2 teaching and suggestion, but here we've got it or we don't
3 got it or he doesn't even need to mention it. But, they
4 don't need a new opinion. They don't need new prior art.
5 They don't need new obviousness combinations, which is where
6 they're trying to go with this.
7       THE COURT: Well, now, I'm not so sure. I'm not
8 so sure about that, because I'm just -- I'm just thinking,
9 if I were the Defendant, if I now -- if I now were not
10 hampered in finding prior art, by finding prior art to which
11 there was some teaching or some more obvious motivation to
12 reach out, now if I'm ready to -- I'm going to go out into
13 Tulle's and East Jesus and grab some over here, Timbuktu and
14 grab something over there, and God knows where and grab
15 something over there. And then find some expert somewhere
16 to say, well, those are just obvious, the prior art that
17 should have been taken into account, and they don't have
18 that. They haven't gone to Timbuktu and East Jesus because
19 they had to look for teaching and motivation.
20       So, I think that their chance to use it in your
21 description of what they're doing, to let them obfuscate a
22 little more, I think the Court's given them that license to
23 do that.
24       MR. FREED: Your Honor, in addition to that, the
25 Court has given us --

49

MR. DESMARAIS: I disagree with that, your Honor. I don't think KSR had anything to do with that.

MR. FARNEY: Mr. Desmarais is the only patent attorney in the country that doesn't think that case changed the law.

MR. DESMARAIS: That's actually not true.

THE COURT: I'm sorry, what?

MR. FARNEY: He's the only patent attorney in the country who thinks KSR didn't change the law.

MR. DESMARAIS: That's actually not true, your Honor.

THE COURT: Well, and he wouldn't be saying it if he were sitting over here.

MR. FARNEY: That's exactly right.

MR. DESMARAIS: Your Honor, just to be clear --

MR. FARNEY: But, I admire him for the argument he made. It wasn't bad.

THE COURT: I'm aware of that. I'm aware of that.

MR. DESMARAIS: Just to be clear, I'm not the only one. I was a the Federal Circuit.

MR. FARNEY: Mr. Appleby agrees with him.

MR. DESMARAIS: I was at the Federal Circuit on Wednesday and Judge Lory (phonetic) agrees with me. We had an argument about --

THE COURT: I agree with you, too. I'm just

50

1  pointing out -- I'm just pointing out, having agreed with
2  what you say, I still say, if I were representing the
3  Defendant, I would now take another look at that prior art
4  and see if we can't find some more prior art as to which may
5  not have been within the teaching or the motivation.
6       MR. FARNEY:  Not only that, your Honor, the
7  Federal Circuit has already now issued their first case post
8  KSR and they specifically found that the Plaintiff had not
9  shown that the patent, the combination didn't yield an
10 unpredictable result, citing KSR as standard that would have
11 not been used prior to KSR.  I mean, the Federal Circuit got
12 the message from the Supreme Court loud and clear, and it's
13 changing the standard of the law.
14      MR. DESMARAIS:  But, they didn't say it changed
15 the law.  That decision does not say KSR changed the law.
16      MR. FREED:  Well, whether they said it changed the
17 law or not, your Honor, what they did was acknowledge one
18 big change by the KSR court, and that is, if I have a bunch
19 of references and I have a claim to the combination of A, B,
20 C, D and E, and I can point to A, B, C, D and E, wherever
21 they are in the references and say that they're doing the
22 same things in the references as they're doing in that
23 claim, I don't need to talk about motivation.  The end of
24 the ball game there.  It then becomes their burden to deal
25 with that issue.  That's exactly what this new case at the

Federal Circuit applied after KSR, because KSR couldn't have been more plain.  If you have things that are in the prior art doing the same thing in the patented invention, maybe in a different combination, but doing what they did before, it's going to be a cold day in Hades before that's going to be a valid patent.  They didn't quite say that --

MR. DESMARAIS:  That's not what it said.

MR. FREED:  They didn't quite say that.  They said some words that were very close to that.  They said it will be a very --

THE COURT:  It's a chilly day in purgatory.

MR. FREED:  Yeah, something like that.

MR. DESMARAIS:  That's not true.  If you read the decision, they actually said someone skilled in the art would have to look at that prior art and know to combine it.  They don't use the word teaching and suggestion, but they did say that somebody skilled in the art would have to look at the prior art.  They'd have to be in the same field, and they'd have to be expected to combine it.

MR. FARNEY:  They said the combination had to yield an unpredictable result, which was clearly not the standard before.  That was something the Federal Circuit had squarely rejected before.

MR. FREED:  If it's not yielding an unpredictable result, forget about it.


52

1  MR. FARNEY: It's clearly changed the law.
2  There's just no two ways about it, although I admire
3  Ms. Desmarais for a creative argument.
4  MR. DESMARAIS: Talk to Judge Lory. He agrees
5  with me.
6  THE COURT: Let's get to the chase. Whether he's
7  right or wrong, whether you're right or wrong or whether I'm
8  right or wrong really isn't the point. The point right now
9  is, what do I feel needs to be done to try this case fairly
10 and give everybody the due process that they're entitled to,
11 and I think that I'm required to give the Defendants the
12 opportunity to take another look at their prior art and see
13 whether there are any other prior art references that could
14 have been invoked before but weren't, and they want to bring
15 them into the game now. And I think they're entitled to
16 that, And if they -- and also, I think both sides are
17 entitled to depose experts on -- I mean, to get reports from
18 them, and depositions.
19 MR. FREED: Your Honor, we're also entitled to
20 take a new look at the art we already brought forward to be
21 able to say that that art has things in it that are in the
22 claims and it's doing the same thing in the claims as it is
23 in that art. And we can say that, whereas, before, we had
24 to focus on whether there was a motivation or not to do
25 that. Now, we don't have to focus on that. We could say,

```
                                                              53
 1  even as to the art we're already using, that elements A, B,
 2  C, D and E are found in the prior art.  They're found in the
 3  claims and they're doing the same thing.
 4          THE COURT:  Well, I think you could have said that
 5  before.  I would have said that before.
 6          MR. FREED:  We couldn't, your Honor.  We --
 7  motivation before.  Now, we don't have to have a motivation.
 8          MR. FARNEY:  There may be different combinations
 9  we can make as well.
10          MR. FREED:  We couldn't do that before without a
11  motivation.  Now, we can do it without the motivation.
12          THE COURT:  Well, but even -- but, logically, if
13  before you cited it and you said there was a motivation,
14  you've already cited it and you've relied on it, but all you
15  could say now is not only did we cite it, not only did we
16  say there was motivation, which there was, we don't even
17  have to show motivation.
18          MR. FREED:  -- even pointed to the things in
19  there, and relied on them because of the fact that we
20  didn't -- when we had to look for motivation.  Maybe we'll
21  point to different things in the same art.
22          THE COURT:  Well, now, you're just -- that's
23  another way of saying you found prior art.  That's all
24  you're saying.
25          MR. FARNEY:  Right.  I think the point is, if we
```

had A, B and C and we were saying A plus B or A plus C, we might now be able to say B plus C where we didn't think we could before.

       THE COURT: That's just another way of using the prior art. Okay, so, the question is, what do you want to do? We've got one case that's starting within a month.

       MS. BROOKS: Actually, the Group 4 starts a week from Monday.

       MR. FARNEY: A week. Next week.

       THE COURT: What? A week from Monday.

       MS. BROOKS: That's what triggered this entire thing, your Honor, is that the Group 4 case, we attempted to reach agreement with Lucent on supplementing and were not able.

       THE COURT: Well, we're going to -- then we're going to have to exempt that case from this KSR case and --

       MR. DESMARAIS: Why don't we just try it and then serve expert reports afterwards?

       THE COURT: Because it's too soon to the trial. We can't kick off the trial. I've got to go to trial a week from Monday.

       MR. DESMARAIS: Why don't we try the case and then we can serve supplemental expert reports afterwards.

       THE COURT: Well, okay, what do you want to do? Do you want to --

54

had A, B and C and we were saying A plus B or A plus C, we might now be able to say B plus C where we didn't think we could before.

      THE COURT: That's just another way of using the prior art. Okay, so, the question is, what do you want to do? We've got one case that's starting within a month.

      MS. BROOKS: Actually, the Group 4 starts a week from Monday.

      MR. FARNEY: A week. Next week.

      THE COURT: What? A week from Monday.

      MS. BROOKS: That's what triggered this entire thing, your Honor, is that the Group 4 case, we attempted to reach agreement with Lucent on supplementing and were not able.

      THE COURT: Well, we're going to -- then we're going to have to exempt that case from this KSR case and --

      MR. DESMARAIS: Why don't we just try it and then serve expert reports afterwards?

      THE COURT: Because it's too soon to the trial. We can't kick off the trial. I've got to go to trial a week from Monday.

      MR. DESMARAIS: Why don't we try the case and then we can serve supplemental expert reports afterwards.

      THE COURT: Well, okay, what do you want to do? Do you want to --

```
                                                            55
 1          MR. FARNEY:  It might help us to know what slots
 2   you have.  We've talked about the various timing on our end.
 3   But, we're not sure what you have available.
 4          THE CLERK:  Throw out some suggestions.  I'll tell
 5   you what our calendar looks like.
 6          MR. FREED:  It's going to take at least three
 7   weeks to get the expert reports supplemented and deposed.
 8          THE COURT:  You bet.  It will take -- I don't see
 9   how you could get the expert witness and the depositions
10   within a month.
11          MR. FARNEY:  That's right, because we'd like a
12   little time to look for art.
13          MR. FREED:  I think a month is the right number.
14   It may even go a little bit longer, but I think that's about
15   right.
16          MR. FARNEY:  And we would like a little time to
17   look for art, in case we --
18          MS. BROOKS:  So, let's say --
19          THE COURT:  You've got to get a report out to your
20   opponent.  He's got to have a chance to absorb the report,
21   consult his own expert witness and perhaps get a report from
22   him or her, but even if they don't get a report, they've got
23   to consult with their expert before they can depose your
24   expert.  I don't see how all this could be done within a
25   month.
```