IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| BRIDGESTONE SPORTS CO., LTD., and BRIDGESTONE GOLF, INC., <br><br> Plaintiffs, <br><br> v. <br><br> ACUSHNET COMPANY, <br><br> Defendant. | C. A. No. 05-132 (JJF) <br><br> **PUBLIC VERSION** |

**ACUSHNET'S MEMORANDUM IN SUPPORT OF ITS DAUBERT MOTION TO EXCLUDE THE TESTIMONY AND REPORTS OF BRIDGESTONE'S EXPERTS REGARDING INFRINGEMENT OF U.S. PATENT NOS. 5,252,652 AND 6,634,961**

OF COUNSEL:

Alan M. Grimaldi
Joseph P. Lavelle
Kenneth W. Donnelly
HOWREY LLP
1299 Pennsylvania Avenue, N.W.
Washington, DC 20004
Tel: (202) 783-0800

Dated: May 8, 2007
Public Version Dated: May 15, 2007
795618 / 28946

Richard L. Horwitz (#2246)
David E. Moore (#3983)
POTTER ANDERSON & CORROON LLP
Hercules Plaza, 6th Floor
1313 North Market Street
P. O. Box 951
Wilmington, DE 19899-0951
Tel: (302) 984-6000
rhorwitz@potteranderson.com
dmoore@potteranderson.com

*Attorneys for Defendant*
*Acushnet Company*

# TABLE OF CONTENTS

TABLE OF CONTENTS ..................................................................................................... I

I.    SUMMARY OF ARGUMENT ................................................................................ 1

II.   STATEMENT OF FACTS ....................................................................................... 2

III.  ARGUMENT ............................................................................................................ 4

    A.    Legal Standards ............................................................................................. 4

    B.    Bridgestone's Experts' Infringement Opinions Are Not
        Sufficiently Tied to the Facts of the Case. ..................................................... 6

        1.   The Experts' Sole Reliance on Manufacturing Guidelines
            Renders Their Infringement Opinions Unreliable ........................... 6

        2.   Bridgestone's Experts' Unsupported Assumptions
            Regarding the Purity of Zn-PCTP and ZDA Renders Their
            Infringement Opinions Unreliable ................................................... 8

IV.   CONCLUSION ....................................................................................................... 10

# TABLE OF AUTHORITIES

**CASES**

                        **Pages**

*Barber v. United Airlines, Inc.,*
   17 Fed. Appx. 433, 2001 WL 950885 ..................................................................9

*Brooke Group, Ltd. v. Brown & Williamson Tobacco Corp.,*
   509 U.S. 209 (1993)..............................................................................................7

*Calhoun v. Yamaha Motor Corp., U.S.A.,*
   350 F.3d 316 (3d Cir. 2003)..................................................................................5

*Callaway Golf Co. v. Dunlop Slazenger Group Americas, Inc.,*
   C.A. No. 01-669-KAJ, 2004 WL 1534786 (D. Del. 2004)....................................5

*Concord Boat Corp. v. Brunswick Corp.,*
   207 F.3d 1039 (8th Cir. 2000) ...............................................................................5

*Daubert v. Merrell Dow Pharmaceuticals,*
   509 U.S. 579 (1993)...............................................................................4, 5, 6, 7

*General Electric Co. v. Joiner,*
   522 U.S. 136 (1997)..............................................................................................5

*Gumbs v. Int'l Harvester, Inc.*
   718 F.2d 88 (3rd Cir. 1983) ...................................................................................7

*In re Baby Foods Antitrust Litigation,*
   166 F.3d 112 (3rd Cir. 1999) .................................................................................7

*In re Citric Acid Litigation,*
   191 F.3d 1090 (9th Cir. 1999) ...............................................................................7

*In re Rezulin Prods. Liability Litigation,*
   369 F. Supp. 2d 398 (S.D.N.Y. 2005)...................................................................9

*Kumho Tire Co. v. Carmichael,*
   526 U.S. 137 (1999)..............................................................................................5

*Lust By and Through Lust v. Merrell Dow Pharm., Inc.,*
   89 F.3d 594 (9th Cir. 1996) ..................................................................................9

*Oddi v. Ford Motor Co.,*
   234 F.3d 136 (3d Cir. 2000)..................................................................................5

*Out-A-Sight Pet Containment, Inc. v. Radio Sys. Corp.*,
   2004 WL 1562556 (E.D. Pa. Jul 09, 2004)..................................................................7

*Pharmastem Therapeutics, Inc. v. ViaCell Inc.*,
   C.A. No. 02-148-GMS, 2004 U.S. Dist. LEXIS 18638
   (D. Del. Sept. 15, 2004) .............................................................................................7

*Robinson v. G.D. Searle & Co.*,
   286 F.Supp.2d 1216 (N.D.Ca. 2003) .........................................................................7

*U.S. v. Trala,*
   162 F. Supp.2d 336 (D. Del. 2001) ............................................................................5

*United States v. Downing,*
   753 F.2d 1224 (3rd Cir. 1985) ..................................................................................6

**OTHER AUTHORITIES**

Fed. R. Evid. 104(a)..............................................................................................................5

Fed. R. Evid. 702 ..................................................................................................1, 4, 5, 6

Fed. R. Evid. 703 ...........................................................................................................4, 6

Defendant Acushnet Company ("Acushnet"), pursuant to Rule 702 of the Federal Rules of Evidence, moves to exclude the proffered expert testimony and reports of Mr. Larry Cadorniga and Dr. E. Bryan Coughlin related to infringement of U.S. Patent Nos. 6,634,961 ("the '961 patent") (Ex.1) and 5,252,652 ("the '652 patent") (Ex. 2).

I. **SUMMARY OF ARGUMENT**

The '961 and '652 patents relate to the combination of specific materials, in type and amount, used to formulate the core of a solid golf ball. Bridgestone has acknowledged that a proper infringement analysis of these patents requires an understanding of the core formulation of the accused golf balls. (*See, e.g.,* D.I. 420, at 3).



Furthermore, in determining the amount of claimed materials in Acushnet's accused products relevant to the '652 patent, including zinc pentachlorothiophenol (Zn-PCTP) and zinc diacrylate (ZDA), both of Bridgestone's experts relied on inaccurate, unsupported *assumptions* as to the purity of these materials. Bridgestone's experts assumed that the purity of the Zn-PCTP is 98% and that the purity of the ZDA is 100%.



Bridgestone has offered no factual basis to dispute this evidence.

Because Bridgestone's experts' opinions are so far divorced from any actual

factual foundation in this case, their opinions on infringement with respect to these two patents are inherently speculative and unreliable and should be excluded.

## II. STATEMENT OF FACTS

The asserted claims of the '961 and '652 patent require the core of a solid golf ball to be made with certain amounts of specific materials. The '961 patent requires, in part, that the core be made from a base rubber composed of at least 20 weight percent polybutadiene rubber synthesized using a rare earth catalyst. The '652 patent requires, in part, that the core be made from about 0.05 to about 2 parts by weight of Zn-PCTP and about 25 to about 40 parts by weight of ZDA.

Therefore, to determine whether the accused products infringe these claims, it is first necessary to determine what the cores are comprised of. Neither of Bridgestone's experts, however, bases his infringement opinion on actual core compositions of the accused golf balls. ███████████████████████████████████████████ Bridgestone's expert, Dr. Coughlin, relies solely on this information to support his opinion of infringement of that patent. ███████████████████████████████████████████



Both of Bridgestone's experts had access to the recipe change notices and yet decided to ignore them based solely on clearly wrong considerations of the record:

Cadorniga: "Thus, it is my opinion, based on my more than 30 years of experience in the golf ball industry, the testimony of Acushnet and Acushnet's employees, ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬"

---

1 ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬

Coughlin: "[redacted] Thus, although I have reviewed Acushnet's change notices generated during the manufacturing process for the Pro V1 golf ball, in my professional opinion it is appropriate and reliable to look to the Manufacturing Guidelines in order to determine Acushnet's core formulation ..."

(Ex. 6 – Cadorniga 1/16/2007 Report, at 10; Ex. 7 – Coughlin 1/16/2007 Report at 9).

Although Bridgestone's experts had access to accurate core formulation data, Bridgestone chose strategically to ignore this reality and rely instead on an assumption of a single guidelines recipe as in use for all relevant times, so as to assert that millions of golf balls (whose formulations had been changed hundreds of times) infringe the '961 and '652 patents.[2] Remarkably, Bridgestone has acknowledged that it was fully aware [redacted]. (D.I. 305 at 12). Bridgestone states in one recent motion:

[redacted]

(*Id.*) (emphasis added). Still, Bridgestone proffers experts who have chosen to ignore the indisputable record evidence to reach their opinions of infringement.

### III.   ARGUMENT

#### A.   Legal Standards

Under *Daubert* and Federal Rules of Evidence 702 and 703, the Court must carefully examine the basis of expert testimony before admitting such testimony. Expert infringement opinions that do not satisfy this criteria – such as opinions that lack sufficient factual foundation or are speculative – are not admissible into evidence.

---

[2] By the parties' agreed-upon deadline for fact discovery, and well in advance of the submission of opening expert reports, Acushnet offered on several occasions to allow Bridgestone to inspect the Mesabi database containing this data. Bridgestone, however, declined those offers in favor of claiming prejudice that it could have easily avoided.

4

Preliminary questions concerning the admissibility of evidence must be determined by the Court. Fed. R. Evid. 104(a). Federal Rule of Evidence 702 provides:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert ... may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles or methods, and (3) the witness has applied the principles and methods reliably to the facts ....

The Federal Rules of Evidence, especially Rule 702, "assign to the trial judge the task of ensuring that an expert's testimony both *rests on a reliable foundation* and is relevant to the task at hand." *Daubert v. Merrell Dow Pharmaceuticals*, 509 U.S. 579, 597 (1993). This "gatekeeping" obligation applies to all expert testimony based on specialized knowledge, and it charges trial judges with the responsibility of admitting expert testimony only if it is sufficiently reliable. *Kumho Tire Co. v. Carmichael*, 526 U.S. 137 (1999); *Calhoun v. Yamaha Motor Corp., U.S.A.*, 350 F.3d 316, 321 (3d Cir. 2003); *U.S. v. Trala*, 162 F. Supp.2d 336, 344 (D. Del. 2001).

To be considered reliable, an expert's opinion must be based on the "methods and procedures of science" rather than on "subjective belief or unsupported speculation," and the expert must have "good grounds" for his conclusions. *Calhoun*, 350 F.3d at 321; *Callaway Golf Co. v. Dunlop Slazenger Group Americas, Inc.*, C.A. No. 01-669-KAJ. 2004 WL 1534786 (D. Del. 2004)(Ex. 17); *U.S. v. Trala*, 162 F.Supp.2d at 345. In addition, the Court must determine if the expert's conclusions could reliably flow from the facts known to the expert and the methodology used. *Oddi v. Ford Motor Co.*, 234 F.3d 136, 145-46 (3d Cir. 2000); *Callaway*, 2004 WL 1534786; *U.S. v. Trala*, 162 F.Supp.2d at 346. If the analytic gap between the data relied upon and the opinion proffered is simply too great, the opinion should be excluded. *General Electric Co. v. Joiner*, 522 U.S. 136, 142 (1997); *Oddi*, 234 F.3d at 146. Where there are "deficiencies in the foundation of the opinion," the expert's conclusions are "mere speculation" and inadmissible. *Concord Boat Corp. v. Brunswick Corp.*, 207 F.3d 1039, 1057 (8th Cir. 2000).

5

Although *Daubert* focused on the requirements of Rule 702, the Court also held that district courts must apply Rule 703 when assessing a proffer of expert testimony. *Daubert*, 509 U.S. at 595. Rule 703 provides in part that "the facts or data in the particular case upon which an expert bases an opinion or inference may be those perceived by or made known to the expert at or before the hearing."

### B. Bridgestone's Experts' Infringement Opinions Are Not Sufficiently Tied to the Facts of the Case.

#### 1. The Experts' Sole Reliance on Manufacturing Guidelines Renders Their Infringement Opinions Unreliable

Bridgestone has not, and cannot, demonstrate that the reports and testimony of Mr. Cadorniga and Dr. Coughlin are sufficiently relevant and reliable to be permitted. Both Cadorniga and Coughlin stated in their reports and depositions that their analysis is based *solely* on the single core recipe found in the guidelines.[3] (Ex. 7 – 1/16/07 Coughlin Rep., pg. 8-9; Ex. 6 – 1/16/07 Cadorniga Rep., pg. 9-10). An analysis based on the guidelines, however, has no bearing on the actual core formulations used by Acushnet.

"An additional consideration under Rule 702 . . . is whether expert testimony proffered in the case is sufficiently tied to the facts of the case that it will aid the jury in resolving a factual dispute." *Daubert*, 509 U.S. at 592 (quoting *United States v. Downing*, 753 F.2d 1224, 1242 (3rd Cir. 1985)). This consideration is a question of "fit." *Id.* Cadorniga's and Coughlin's opinions do not adequately "fit" the issues to be

---

[3] Cadorniga testified that he also relied on his "experience in the golf ball industry" to opine that the guidelines can be solely relied on to determine the actual core formulations of Acushnet's products. Mr. Cadorniga's "experience," however, is irrelevant as to whether Acushnet changes its core formulations over time or whether it actually uses the guidelines' initial core formulation. In fact, Mr. Cadorniga admitted that he has no basis to know how Acushnet actually uses the guidelines, or whether the guidelines are a true reflection of the cores produced by Acushnet. Mr. Cadorniga further admitted, that Mr. Dalton would be much more qualified to determine whether the guidelines could be relied on to determine Acushnet's actual core formulations. (Ex. 8 – 3/12/07 Cadorniga Tr. 67:7-68:11).

6

determined in this case. Their naked assumptions that the core formulations described in the guidelines remained constant was so contrary to the record (the record that they claim to have studied for purposes of their report) that their opinions cannot be credited, leaving Bridgestone with no evidence of infringement for any particular time period. *See Brooke Group, Ltd. v. Brown & Williamson Tobacco Corp.*, 509 U.S. 209, 242 (1993) ("When an expert opinion is not supported by sufficient facts to validate it in the eyes of the law, or when indisputable record facts contradict or otherwise render the opinion unreasonable, it cannot support a jury's verdict."); *Daubert*, 509 U.S. at 591 (1993) (discussing the importance of "fit" between the totality of facts and the argument being proffered; stating that the testimony must be "sufficiently tied to the facts of the case"); *Robinson v. G.D. Searle & Co.*, 286 F.Supp.2d 1216, 1221 (N.D.Ca. 2003) (granting summary judgment against plaintiff where its expert did not rely on a sufficient basis of facts; noting that there were indisputable facts that went ignored that directly refuted the expert's opinion.); *Pharmastem Therapeutics, Inc. v. ViaCell Inc.*, C.A. No. 02-148-GMS, 2004 U.S. Dist. LEXIS 18638 (D. Del. Sept. 15, 2004) (granting new trial because exploring only some of the defendants product was not enough to rule that 100% of defendants stem cell products infringe.) (Ex. 9); *Gumbs v. Int'l Harvester, Inc.* 718 F.2d 88, 98 (3rd Cir. 1983) (sustaining objection to expert testimony for not being based on a "sufficient factual foundation," where expert offered an opinion that was inconsistent with the facts); *Out-A-Sight Pet Containment, Inc. v. Radio Sys. Corp.*, 2004 WL 1562556, at *2-3 (E.D. Pa. Jul 09, 2004) (excluding expert due to his failure to consider entire factual record) (Ex. 10); *In re Baby Foods Antitrust Litigation*, 166 F.3d 112, 135 (3rd Cir. 1999) ("An expert opinion based on the meager superficial information ... is highly speculative, unreliable and of dubious admissibility before a jury."); *In re Citric Acid Litigation*, 191 F.3d 1090, 1102 (9th Cir. 1999) ("When an expert opinion is not supported by sufficient facts to validate it in the eyes of the law, or when indisputable record facts contradict or otherwise render the opinion unreasonable, it cannot support a jury's verdict.").

By ignoring the record, Cadorniga's and Coughlin's opinions lack "sufficient factual foundation" and are not "sufficiently tied to the facts." Having proffered an opinion unsupported by the record (indeed, an opinion that indisputable record facts contradict), their opinions (rather speculation) with respect to the guidelines, and in particular Acushnet's infringement of the '961 patent, should be excluded from the trial.

### 2. Bridgestone's Experts' Unsupported Assumptions Regarding the Purity of Zn-PCTP and ZDA Renders Their Infringement Opinions Unreliable

In connection with the '652 patent, Cadorniga bases his infringement opinions on *ipse dixit* assumptions that are inconsistent with the facts with respect to ZDA and Zn-PCTP. In determining the amount of ZDA and Zn-PCTP in the core of Acushnet's accused products, Bridgestone's experts assume that the ZDA powder used by Acushnet is made up of 100% ZDA and that the purity of Zn-PCTP is 98%.



In ignoring this documentation, neither Cadorniga nor Coughlin attempted to determine, by testing or otherwise, what the purity of these materials is. (Ex. 8 – 3/12/07 Cadorniga Tr. 132:16-133:135:6; Ex. 14 – 3/6/07 Coughlin Tr. 115:10-116:7). Nor did they attempt to determine this information by asking the manufacturers. (Ex. 8 – 3/12/07 Cadorniga Tr. 139:2-17). Instead, with respect to the Zn-PCTP, Cadorniga relied solely

on the unsupported testimony of Mr. Peter Voorheis 

(Ex. 8 – 3/12/07 Cadorniga Tr. 132:16-133:16).

Bridgestone's experts fails to explain how Mr. Voorheis is to be relied upon in one instance but not in another. They conveniently ignore his latter testimony because it does not fit their fact-devoid assumption that ZDA powder contains 100% ZDA.[4]

Cadorniga's and Coughlin's picking and choosing of what testimony to rely on from Mr. Voorheis deposition testimony is improper. *Barber v. United Airlines, Inc.*, 17 Fed. Appx. 433, 437-38, 2001 WL 950885 (7th Cir. 2001 (unpublished) (excluding expert testimony where expert "cherry-picked" his facts) (Ex. 16); *Lust By and Through Lust v. Merrell Dow Pharm., Inc.*, 89 F.3d 594, 596 (9th Cir. 1996) (excluding expert testimony where expert selectively chose the scientific facts upon which he relied); *In re Rezulin Prods. Liability Litigation*, 369 F. Supp. 2d 398, 425 (S.D.N.Y. 2005) (same). Rather, Cadorniga states that he just assumed that the ZDA powder is 100% ZDA based on his experience. He,

---

[4] Not surprisingly, it is to Bridgestone's advantage to decrease the purity of Zn-PCTP used by Acushnet, while increasing the percentage of ZDA in the ZDA powder.

however, never did any investigation to determine if this assumption was correct. Moreover, his opinion admittedly stems from his employment in the late 1970's. (Ex. 8 – 3/12/07 Cadorniga Tr. 139:3-17). An assumption derived 35 years ago and never tested for accuracy is hardly a basis to ignore both recent testimony and documentation that shows that the ZDA powder is not 100% ZDA, but rather at most 91.8% ZDA.

Dr. Coughlin stated that he based his assumption that the ZDA powder was 100% ZDA solely on an Acushnet material specification document that indicated that the ZDA powder was a free flowing powder, free of contamination. (Ex. 14 – 3/6/07 Coughlin Tr. 114:2-115:17). But the fact that the ZDA powder is free from contamination is irrelevant as to whether the powder formulation is made up entirely of ZDA. Everyone in the golf ball industry, which Dr. Coughlin admits he is not a part of (Ex. 14 – 3/6/07 Coughlin Tr. 24:7-15), knows that ZDA powder, even free of contamination, includes additional materials besides ZDA, such as zinc stearate, to allow the powder to flow freely. (*See, e.g.*, Ex. 15 – 9/15/06 Voorheis Tr. 297:17-298:2). ██████████

Finally, Cadorniga himself admitted that the ZDA powder would need to have some other component besides ZDA to allow the material to flow properly and not clump together. (Ex. 8 – 3/12/07 Cadorniga Tr. 138:2-139:1). Nevertheless, he and Bridgestone's other expert continue their naked assumption that ZDA powder is made up of 100% ZDA. In so doing, they ignore the record to rely only upon unsupported and factually devoid assumptions. Their opinions thus lack "sufficient factual foundation" and are not "sufficiently tied to the facts of the case." Having proffered opinions on whether Acushnet infringes the '652 patent inconsistent with the facts, their opinions in this regard, just as with their opinions on the '961 patent, should be excluded.

### IV.    CONCLUSION

Acushnet respectfully requests the Court to preclude Mr. Cadorniga and Dr. Coughlin from testifying regarding the infringement of the '652 and '961 patents.

10

|  | POTTER ANDERSON & CORROON LLP |
|---|---|
| OF COUNSEL:<br><br>Alan M. Grimaldi<br>Joseph P. Lavelle<br>Kenneth W. Donnelly<br>HOWREY LLP<br>1299 Pennsylvania Ave., N.W.<br>Washington, DC 20004<br>Telephone: (202) 783-0800<br><br>Dated: May 8, 2007<br>Public Version Dated: May 15, 2007<br>795618/28946 | By: */s/ David E. Moore*<br>Richard L. Horwitz (#2246)<br>David E. Moore (#3983)<br>Hercules Plaza, 6th Floor<br>1313 N. Market Street<br>P.O. Box 951<br>Wilmington, DE 19899-0951<br>(302) 984-6000<br>rhorwitz@potteranderson.com<br>dmoore@potteranderson.com<br><br>*Attorneys For Defendant*<br>*Acushnet Company* |

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

**CERTIFICATE OF SERVICE**

I, David E. Moore, hereby certify that on May 15, 2007, the attached document was hand delivered to the following persons and was electronically filed with the Clerk of the Court using CM/ECF which will send notification to the registered attorney(s) of record that the document has been filed and is available for viewing and downloading:

Jack B. Blumenfeld
Maryellen Noreika
Leslie A. Polizoti
Morris, Nichols, Arsht & Tunnell
1201 N. Market Street
Wilmington, DE  19801

I hereby certify that on May 15, 2007, I have Electronically Mailed the documents to the following:

Robert M. Masters
Paul, Hastings, Janofsky & Walker LLP
875 15th Street, N.W.
Washington, D.C.  20005
RobMasters@paulhastings.com

/s/ David E. Moore
Richard L. Horwitz
David E. Moore
Potter Anderson & Corroon LLP
Hercules Plaza – Sixth Floor
1313 North Market Street
P.O. Box 951
Wilmington, DE  19899-0951
(302) 984-6000
rhorwitz@potteranderson.com
dmoore@potteranderson.com

680012 / 28946