# EXHIBIT 1

# THIS EXHIBIT HAS BEEN REDACTED IN ITS ENTIRETY

# EXHIBIT 2

# THIS EXHIBIT HAS BEEN REDACTED IN ITS ENTIRETY

# EXHIBIT 3

# THIS EXHIBIT HAS BEEN REDACTED IN ITS ENTIRETY

# EXHIBIT 4

# THIS EXHIBIT HAS BEEN
# REDACTED IN ITS ENTIRETY

# EXHIBIT 5

LEXSEE 1999 US DIST LEXIS 21545



Caution
As of: May 08, 2007

## 2660 WOODLEY ROAD JOINT VENTURE, WOODLEY ROAD ASSOCIATES, INC., JOHN HANCOCK MUTUAL LIFE INSURANCE COMPANY and SUMITOMO LIFE REALTY (N.Y.), INC., Plaintiffs, v. ITT SHERATON CORPORATION and SHERATON OPERATING CORPORATION, Defendants.

### Civil Action No. 97-450-JJF

### UNITED STATES DISTRICT COURT FOR THE DISTRICT OF DELAWARE

*1999 U.S. Dist. LEXIS 21545*

**November 30, 1999, Decided**

**DISPOSITION:** [*1] Defendants' Motion in Limine to Exclude Claims Barred by Statute of Limitations DENIED, to Exclude Any Reference to Content of Parties' Settlement Discussions and to Exclude Evidence Relating to Nicoletti and Giano GRANTED.

**CASE SUMMARY:**

**PROCEDURAL POSTURE:** Defendants filed a motion in limine to exclude: (1) claims barred the statute of limitations; (2) any reference to the content of the parties' settlement discussions; and (3) evidence relating to two individuals.

**OVERVIEW:** The court ruled as follows: 1. Defendants' motion in limine to exclude claims barred by statute of limitations was denied. 2. Defendants' motion in limine to exclude any reference to the content of the parties' settlement discussions was granted under Fed. R. Evid. 408. 3. Defendants' motion in limine to exclude evidence relating to the individuals was granted as irrelevant and prejudicial under Fed. R. Evid. 402 and Fed. R. Evid. 403.

**OUTCOME:** The court denied defendants' motion in limine to exclude claims barred by the statute of limitations. The court granted defendants' motion to exclude the content of the parties' settlement discussions.

**LexisNexis(R) Headnotes**

*Civil Procedure > Pleading & Practice > Defenses, Demurrers, & Objections > Affirmative Defenses*
*Torts > Procedure > Statutes of Limitations > General Overview*
[HN1] District of Columbia law recognizes the "discovery rule" for the accrual of claims, which provides that a cause of action generally does not accrue until the plaintiff knows, or in the exercise of reasonable diligence should know of the injury.

*Torts > Procedure > Statutes of Limitations > General Overview*
[HN2] Federal courts have established that what is reasonable diligence under the mandates of the discovery rule and when accrual actually commences are highly factual analyses and should be left to be determined by the trier of fact.

*Civil Procedure > Settlements > General Overview*
*Evidence > Relevance > Compromise & Settlement*

*Negotiations*
[HN3] Rule 408 of the Federal Rules of Evidence excludes from admissibility evidence of both settlement offers and all conduct or statements made in compromise negotiations. Fed. R. Evid. 408.

*Evidence > Relevance > Confusion, Prejudice & Waste of Time*
*Evidence > Relevance > Relevant Evidence*
[HN4] Rule 402 of the Federal Rules of Evidence excludes from admissibility evidence which is not relevant, Fed. R. Evid. 402. Rule 403 of the Federal Rules of Evidence excludes from admissibility evidence which, in comparison to its probative value, is substantial prejudicial. Fed. R. Evid. 403.

COUNSEL: For 2660 WOODLEY ROAD JOINT VENTURE, WOODLEY ROAD ASSOCIATES, INC., JOHN HANCOCK MUTUAL LIFE INSURANCE COMPANY, SUMITOMO LIFE REALTY (N.Y.) INC., plaintiffs: Edward B. Maxwell, 2nd, Young, Conaway, Stargatt & Taylor, Wilmington, DE.

For ITT SHERATON CORPORATION, SHERATON OPERATING CORPORATION, defendants: Allen M. Terrell, Jr., Richards, Layton & Finger, Wilmington, DE.

For WASHINGTON SHERATON CORPORATION, ITT SHERATON CORPORATION, SHERATON OPERATING CORPORATION, counter-claimants: Allen M. Terrell, Jr., Richards, Layton & Finger, Wilmington, DE.

For 2660 WOODLEY ROAD JOINT VENTURE, WOODLEY ROAD ASSOCIATES, INC., JOHN HANCOCK MUTUAL LIFE INSURANCE COMPANY, SUMITOMO LIFE REALTY (N.Y.) INC., counter-defendants: Edward B. Maxwell, 2nd, Young, Conaway, Stargatt & Taylor, Wilmington, DE.

JUDGES: Joseph J. Farnan, Jr., UNITED STATES DISTRICT JUDGE.

OPINION BY: Joseph J. Farnan, Jr.

OPINION:

  ORDER

    WHEREAS, presently before the Court is

Defendants' Motion [*2] in Limine to Exclude: (1) Claims Barred by the Statute of Limitations; (2) Any Reference to the Content of the Parties' Settlement Discussions; and (3) Evidence Relating to Nicoletti and Giano (D.I. 297);

    WHEREAS, the Plaintiffs filed an Opposition to Defendants' Motions in Limine on October 22, 1999 (D.I. 301);

    WHEREAS, the Court heard oral argument on Defendants' Motion in Limine to Exclude Claims Barred by the Statute of Limitations at a Pretrial Conference on October 27, 1999 (D.I. 309 at 28-46);

    WHEREAS, the parties agree that District of Columbia law applies (D.I. 297 at 1, D.I. 301 at 2);

    WHEREAS, [HN1] District of Columbia law recognizes the "discovery rule" for the accrual of claims, which provides that a cause of action generally does not accrue until "the plaintiff knows, or in the exercise of reasonable diligence should know of the injury," *Ehrenhaft v. Malcolm Price, Inc., 483 A.2d 1192, 1203 (D.C. 1984);*

    WHEREAS, [HN2] federal courts have established that what is reasonable diligence under the mandates of the discovery rule and when accrual actually commences are highly factual analyses and should be left to be determined by the trier of fact; *Diamond v. Davis, 680 A.2d 364, 370, 372 (D.C. 1996);* [*3] *Cipollone v. Liggett Group, Inc., 893 F.2d 541, 581 (3d Cir. 1990)* (holding that because a jury could find that the Plaintiff, by exercising due diligence, might have known that she contracted cancer by smoking, summary judgment for the Plaintiff as to whether action was barred by statute of limitations was inappropriate);

    WHEREAS, [HN3] *Rule 408 of the Federal Rules of Evidence* excludes from admissibility evidence of both settlement offers and all "conduct or statements made in compromise negotiations," *Fed. R. Evid. 408;*

    WHEREAS, [HN4] *Rule 402 of the Federal Rules of Evidence* excludes from admissibility evidence which is not relevant, *Fed. R. Evid. 402;*

    WHEREAS, *Rule 403 of the Federal Rules of Evidence* excludes from admissibility evidence which, in comparison to its probative value, is substantial

1999 U.S. Dist. LEXIS 21545, *3

prejudicial, *Fed. R. Evid. 403*;

NOW THEREFORE, IT IS HEREBY ORDERED this 30 day of November, 1999, that:

1. Defendants' Motion in Limine to Exclude Claims Barred by Statute of Limitations is DENIED.

2. Defendants' Motion in Limine to Exclude Any Reference to the Content of the Parties' Settlement Discussions is GRANTED under *Federal Rule of Evidence 408.*

3. Defendants' Motion [*4] in Limine to Exclude Evidence Relating to Nicoletti and Giano is GRANTED as irrelevant and prejudicial under *Rules 402 and 403 of the Federal Rules of Evidence.*

Joseph J. Farnan, Jr.

UNITED STATES DISTRICT JUDGE

JUDGMENT IN A CIVIL CASE

This action came before the Court for a trial by jury. The issues have been tried and the jury has rendered its verdict on December 10, 1999 and answered a General Verdict Form Accompanied By Special Interrogatories, a copy attached hereto.

IT IS ORDERED AND ADJUDGED that judgment is entered in favor of the Plaintiff, 2660 Woodley Road Joint Venture, et al and against the Defendants, ITT Sheraton Corporation, et al.

Joseph J. Farnan, Jr.

District Judge

Date: December 13, 1999

**GENERAL VERDICT FORM ACCOMPANIED BY SPECIAL INTERROGATORIES** - Filed in Open Court 12/10/99

**INSTRUCTIONS:**

As judges of the facts, you are being asked to answer questions, called "interrogatories," to record your findings on certain factual issues that have been presented in this trial. You are to deliberate and answer every interrogatory by circling the appropriate response (YES or NO). Your answer to each interrogatory must be unanimous. [*5]

In addition, your verdict on each of Plaintiff's claims will be recorded on this verdict form. You must decide either for Plaintiffs or for Sheraton on each claim. Your verdict on each claim must be unanimous. If, after full deliberation, you are unable to reach a verdict on any claim, you are to notify the bailiff.

After you have completed your deliberations and entered on this form your answers to the interrogatories and your verdicts on the Plaintiffs' claims, the foreperson of the jury must sign the verdict form, certifying that it accurately records the answers and verdicts of the jury. Then notify the bailiff that you have completed the verdict form.

**SPECIAL    INTERROGATORIES    and GENERAL VERDICT FORM**

**Plaintiffs' RICO Claims-Special Interrogatories**

1. Did Sheraton violate the Racketeer Influenced and Corrupt Practices Act ("RICO")?

    **YES OR NO X**

2. If you answered **YES** in Question 1: Were plaintiffs injured in their business or property as a result of Sheraton's conduct? **YES NO NOT APPLICABLE.**

**(IF    NO    OR    NOT    APPLICABLE,    OMIT QUESTIONS 3-6.)**

**Plaintiffs' RICO Claims-General Verdicts**

3. On Plaintiffs' [*6] claim under *18 U.S.C. Section 1962*(c), we find for:

    Plaintiffs Defendants

4. On Plaintiffs' claim under *18 U.S.C. Section 1962*(a), we find for:

    Plaintiffs    Defendants

5. On Plaintiffs' claim under *18 U.S.C. Section 1962*(d), we find for:

    Plaintiffs    Defendants

6. If you found for Plaintiffs in Questions 3,4 or 5, what amount of damages, if any, should plaintiffs be awarded (specify a dollar amount or zero)? $

**Plaintiffs' Robinson-Patman Claim-General Verdict**

7. On Plaintiffs' claim under the Robinson-Patman Act, we find for:

    Plaintiffs X  Defendants

8. If you found for Plaintiffs in Question 7, what amount of damages, if any, should plaintiffs be awarded (specify a dollar amount or zero)? $ 750,000

**Plaintiffs' Contract Claims-Special Interrogatories and Verdict**

9. Did Sheraton materially breach the Management Contract with respect to its obligations concerning any of the following services or duties?

| | |
|---|---|
| a. to act as owners agent | YES X OR NO |
| b. purchasing services? | YES X OR NO |
| c. frequent traveler program ("SCI")? | YES OR NO X |
| d. reservations system? | YES OR NO X |
| e. "usable denials" practices? | YES OR NO X |
| f. workers compensation | YES X OR NO |
| g. complimentary rooms practices? | YES OR NO X |
| h. any other contractual duty? | YES OR NO X |

[*7]

**ANSWER QUESTION 10 ONLY WITH RESPECT TO THOSE ITEMS, IF ANY, FOR WHICH YOU ANSWERED YES IN QUESTION 9.**

10. What damages, if any, do you award to plaintiffs for a breach of the Management Contract concerning each of the following (specify either zero or a dollar amount):

| | |
|---|---|
| a. to act as owners agent | $ 10.26 mm |
| b. purchasing services? | $ 250,000 |
| c. frequent traveler program | $ 0 |
| d. reservations system? | $ 0 |
| e. "usable denials" practices? | $ 0 |
| f. workers compensation | $ 222,000 |
| g. complimentary rooms practices? | $ 0 |
| h. any other contractual duty? | $ 0 |

**ANSWER QUESTION 11 ONLY FOR THOSE ITEMS FOR WHICH YOU AWARDED**

**A DOLLAR AMOUNT IN QUESTION 10.**

**Plaintiffs' Other Common Law Claims-General**

1999 U.S. Dist. LEXIS 21545, *7

**Verdicts**

12. On Plaintiffs' claim for breach of fiduciary duty, we find for:

    Plaintiffs  X  Defendants

13. On Plaintiffs' claim for breach of the implied duty of good faith and fair dealing, we find for:

    Plaintiffs  X  Defendants

14. On Plaintiffs' claim for fraud, we find for

    Plaintiffs    Defendants  X

15. On Plaintiffs' claim for intentional or negligent [*8] misrepresentation, we find for:

    Plaintiffs  X  Defendants

16. If you found for Plaintiffs in Questions 12, 13, 14 or 15, what damages, if any, do you award (specify dollar amount or zero)? $ 1.1 mm

**Plaintiffs' claim for Punitive Damages**

17. On Plaintiffs' claim for punitive damages, we find for:

    Plaintiffs  X  Defendants

18. If you found for Plaintiffs in Question 17, what amount of punitive damages do you award to Plaintiffs (specify dollar amount or zero)? $ 37.5 mm

**Defendants'    Contract    Counterclaims-Special Interrogatories**

19. On Defendants' counterclaim for wrongful termination of the Management Contract, we find for:

    Defendants    Plaintiffs  X

20. If you found for Defendant in Question 17, what damages, if any, do you award (specify dollar amount or zero)? $ 0

21. On Defendants' counterclaim for breach of the Management Contract, we find for:

    Defendants    Plaintiffs  X

22. If you found for Defendants in Question 19, what damages, if any, do you award (specify dollar amount of zero)? $ 0

DATED: Dec. 10, 1999

/s/ Signature

FOREPERSON

JUROR

JUROR [*9]

JUROR

JUROR

JUROR

JUROR

JUROR

# EXHIBIT 6

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

BRIDGESTONE SPORTS CO., LTD., and
BRIDGESTONE GOLF, INC.,

Plaintiffs,

v.

ACUSHNET COMPANY,

Defendant.

C.A. No. 05-132 (JJF)

DEMAND FOR JURY TRIAL

## PLAINTIFFS' NINTH SUPPLEMENTAL RESPONSES TO DEFENDANT'S FIRST SET OF INTERROGATORIES (1-28)

Pursuant to Rule 33 of the Federal Rules of Civil Procedure, Plaintiffs Bridgestone Sports Co., Ltd., and Bridgestone Golf, Inc. (individually or collectively "Bridgestone") hereby supplement their responses to Interrogatory Nos. 1, 2, 4, 5, 6, 10, 12, 15, 16, 18, 19, 20, 27 and 28 of Defendant's First Set of Interrogatories to Plaintiff.

## GENERAL OBJECTIONS

Bridgestone incorporates by reference the General Objections contained in its previous responses to Defendant's First Set of Interrogatories to Plaintiff.

## SPECIFIC OBJECTIONS AND RESPONSES

### INTERROGATORY NO. 1

Identify on a claim-by-claim basis for the Bridgestone Patents, each Acushnet product that you contend infringes any claim of the Bridgestone Patents.

### RESPONSE TO INTERROGATORY NO. 1

Bridgestone incorporates by reference its previous responses and objections to Interrogatory No. 1.

1

Further, with respect to each of the Bridgestone Patents and each claim asserted therefrom, Bridgestone intends to rely upon the manufacture and sale of Acushnet's infringing golf balls, including the Titleist Pro V1, Titleist Pro V1x, Titleist Pro V1*, Titleist NXT, Titleist NXT Tour, Titleist DT SoLo and Pinnacle Exception brands of golf balls, regardless of sidestamp or marking, as evidence of commercial success of the invention claimed in each of the Bridgestone Patents.

With respect to the '852 and '707 patents, Bridgestone intends to rely on the patent license agreement to Callaway Golf Company (BSP 58856-890) as evidence of commercial success of the invention claimed in each of the '852 and '707 patents.

Bridgestone expressly reserves the right to later amend or supplement its contentions after further investigation and discovery and after the Court construes the claims. In addition, Bridgestone expressly reserves the right to later amend or supplement its contentions after receiving further discovery Acushnet has agreed to provide.

**INTERROGATORY NO. 12**

Separately for each of the Bridgestone Patents, state whether Bridgestone contends it has complied with the marking provision of 35 U.S.C. § 287, and if so, identify the article so marked and describe all facts supporting such contention, including dates of first alleged compliance and whether such compliance has been continuous to the filing of the Complaint.

**RESPONSE TO INTERROGATORY NO. 12**

In addition to the General Objections, Bridgestone objects to the interrogatory as being a multiple and compound request constituting more than one interrogatory. Further, Bridgestone objects to the interrogatory as being overly broad and unduly burdensome.

12

Subject to and without waiving the General and Specific Objections (including the General and Specific objections in previous responses to Interrogatory No. 12), Bridgestone supplements its prior responses as follows.

Bridgestone contends that it has complied with the marking statute for each of the Bridgestone Patents. With respect to each of the Bridgestone Patents, Bridgestone further responds as follows:

| Bridgestone Patent | Article Marked | First Compliance and First Offer for Sale |
|---|---|---|
| '652 | Precept MC Spin; | on or about March 20, 1998 |
| | Precept MC Senior; | on or about September 1, 1998 |
| | Precept MC Lady; | on or about September 1, 1998 |
| | Precept Extra Spin; | on or about August 15, 2000 |
| | Precept Extra Distance; | on or about August 15, 2000 |
| | EV Classic Distance; | on or about August 15, 2000 |
| | Precept Laddie | on or about January 1, 2002 |
| | Precept U-Tri Extra Spin | on or about September 1, 2002 |
| | Precept U-Tri Extra Distance | on or about September 1, 2002 |
| | Precept Lady | on or about January 31, 2003 |
| | Precept U-Tri Tour | on or about May 20, 2003 |
| | Precept D▲Force | on or about July 18, 2003 |
| | Precept D▲Feel | on or about July 18, 2003 |
| | Bridgestone Golf Tour B330 | on or about December 1, 2004 |
| | Bridgestone Golf Tour B330-S | on or about June 1, 2005 |
| | Bridgestone Golf Tour B330 (new) | on or about December 1, 2006 |
| | Bridgestone Golf Tour B330-S (new) | on or about December 1, 2006 |
| | Precept PWR Drive | on or about April 8, 2004 |
| '852 | Precept MC Tour Premium; | on or about October 1, 1999 |
| | Precept U-Tri Extra Spin | on or about September 1, 2002 |
| | Precept U-Tri Extra Distance | on or about September 1, 2002 |

13

| | Precept Tour Premium LS | on or about August 1, 2001 |
|---|---|---|
| | Precept U-Tri Tour | on or about May 20, 2003 |
| | Bridgestone Golf Tour B330 | on or about December 1, 2004 |
| | Bridgestone Golf Tour B330-S | on or about June 1, 2005 |
| '817 | Precept Tour Premium LS | on or about August 1, 2001 |
| '707 | Precept MC Tour Premium | on or about October 1, 1999 |
| | Precept Tour Premium | on or about August 15, 2000 |
| | Precept U-Tri Extra Spin | on or about September 1, 2002 |
| | Precept U-Tri Extra Distance | on or about September 1, 2002 |
| | Precept Tour Premium LS | on or about August 1, 2001 |
| | Precept U-Tri Tour | on or about May 20, 2003 |
| | Bridgestone Golf Tour B330-S | on or about June 1, 2005 |
| '791 | Bridgestone Golf Tour B330 (new) | on or about December 1, 2006 |
| | Bridgestone Golf Tour B330-S (new) | on or about December 1, 2006 |
| '834 | Precept Laddie | on or about January 1, 2002 |
| '961 | Bridgestone Golf Tour B330 | on or about December 1, 2004 |
| | Bridgestone Golf Tour B330-S | on or about June 1, 2005 |
| | Bridgestone Golf Tour B330 (new) | on or about December 1, 2006 |
| | Bridgestone Golf Tour B330-S (new) | on or about December 1, 2006 |

Bridgestone contends that it has continuously marked each of the foregoing golf ball products as so indicated continuously beginning with the first sale of such golf ball until the golf ball was no longer sold or the date of the complaint.

Pursuant to Fed. R. Civ. P. 33(d), Bridgestone further responds by specifying documents bearing Bates Nos. BSP050537-050551, BSP087986-088005, and BSP094584-094600.

Bridgestone further responds by identifying the personal deposition testimony of Yoshinori Egashira, Hiroshi Higuchi, Hideo Watanabe and Hirotaka Shimosaka, the Rule

14

30(b)(6) deposition testimony of Bridgestone, and the exhibits used therein, as providing factual

bases as to the marking of Bridgestone products.

Bridgestone expressly reserves the right to later amend or supplement its

disclosures after further investigation and discovery and after the Court construes the claims.

## INTERROGATORY NO. 15

For each claim and each product identified above in RESPONSE TO
INTERROGATORY NO. 1, describe in detail each and every item of damages sought, including
any bases for the damages claim. If any damages identified is allegedly based upon lost profits,
described whether there was a demand for the product, whether there was an absence of
acceptable non-infringing substitutes, whether Bridgestone had the ability to meet the demand,
the amount of Bridgestone's incremental profit, whether there was price erosion or any tag along
sales, and the amount of such price erosion or tag along sales, and identify all documents with
respect to such lost profit claim and the persons having the most knowledge thereof. Similarly, if
any damages identified is allegedly based upon reasonable royalty, describe in detail the amount
of such royalty, Bridgestone's willingness to license others in the past, Bridgestone's profit
margin on sales, the availability of like products from others, any collateral sales benefits, the
expected profit margin of Bridgestone or any other alleged infringer, royalty rates of comparable
[patents] in the field, and identify all documents with respect to such reasonable royalty claim
and the persons having the most knowledge thereof.

## RESPONSE TO INTERROGATORY NO. 15

In addition to the General Objections, Bridgestone objects to the interrogatory as

being a multiple and compound request constituting more than one interrogatory. Bridgestone

also objects to the interrogatory as being premature because it calls for expert opinion and expert

discovery, as well as information in the possession of Acushnet that forms a basis for damages.

Further, Bridgestone objects to the interrogatory as being overly broad and unduly burdensome.

Subject to and without waiving the general and specific objections, Bridgestone

will seek all damages permitted by the patent statutes concerning reasonable royalties, and

including costs and expenses to Bridgestone for bringing suit, including reasonable attorney's

fees. Bridgestone is not seeking damages based on a lost profit basis. Bridgestone reserves the

# EXHIBIT 7

IN UNITED STATES DISTRICT COURT
DISTRICT OF DELAWARE

---

BRIDGESTONE SPORTS CO., LTD.,
AND BRIDGESTONE GOLF, INC.,

         *Plaintiffs,*

      *v.*

ACUSHNET COMPANY,

         *Defendant.*

C.A. No. 05-132(JJF)

---

## PLAINTIFFS' FIFTH SUPPLEMENTAL RESPONSES TO DEFENDANT'S FIRST SET OF INTERROGATORIES

Pursuant to Rule 33 of the Federal Rules of Civil Procedure, Plaintiffs Bridgestone Sports Co., Ltd., and Bridgestone Golf, Inc., (individually or collectively "Bridgestone") hereby supplements its responses to Defendant's First Set of Interrogatories to Plaintiff.

### GENERAL OBJECTIONS

The General and Specific Objections set forth in Plaintiffs' First Responses to Defendant's First Set of Interrogatories, Plaintiff's First Supplemental Responses to Defendant's First Set of Interrogatories, Plaintiff's Second Supplemental Responses to Defendant's First Set of Interrogatories, Plaintiff's Third Supplemental Responses to Defendant's First Set of Interrogatories, and Plaintiff's Fourth Supplemental Responses to Defendant's First Set of Interrogatories are incorporated herein by reference.

The following responses are based upon Acushnet's production of documents and things to date. Acushnet has failed to produce all relevant and responsive information, documents and things in response to Bridgestone's Requests for the Production of Documents and Things and Bridgestone's Interrogatories to Acushnet. Accordingly, Bridgestone reserves the right to later amend or supplement its contentions and responses after further production of such information,

Bridgestone reserves the right to later amend or supplement its contentions after further investigation, discovery and after the Court construes the claims.

## INTERROGATORY NO. 9

Identify and describe in detail all Bridgestone and/or all third-party products that have ever been sold commercially or used in the public that embody any of the claims of the Bridgestone Patents, and for each such product, identify the time period(s) and geographical location in which that product was made, used and/or sold.

## RESPONSE TO INTERROGATORY NO. 9

In addition to the General Objections, Bridgestone objects to the interrogatory as being a multiple and compound request constituting more than one interrogatory. Bridgestone also objects to the interrogatory as being overly broad and unduly burdensome and oppressive because it is not limited in geographical location or time period relevant to the issues of this case. Further, Bridgestone objects to the interrogatory as seeking information in the possession of third parties. Bridgestone further objects to the interrogatory to the extent that it purports to require Bridgestone to disclose information in violation of legal or contractual obligation of nondisclosure to a third party.

Subject to and without waiving the general and specific objections, Bridgestone supplements its previous response to this interrogatory by incorporating Bridgestone's responses to Interrogatory Nos. 5 and 12 to show the Bridgestone Products that have been sold and that embody at least one of the claims of the Bridgestone Patents.

Further, as to third party Products, in its complaint against Callaway, Bridgestone alleged that certain of Callaway's Rule 35 balls were covered by one or more claims of the '852 and '707 patents. See AB0046303-46326.

Still further, Bridgestone supplements its previous Responses to this Interrogatory by identifying the Acushnet golf balls identified in the attached Appendices A-J as embodying one

7.

or more of the claims of the Bridgestone Patents as set forth therein.

Bridgestone reserves the right to later amend and/or supplement its disclosures after

further investigation, discovery and based on positions taken by, or contentions of, Acushnet.

## INTERROGATORY NO. 16

On a claim-by-claim basis, identify and describe in detail in a claim chart the factual
bases for Bridgestone's non-infringement contention in its First Affirmative Defense in the *Reply
and Counterclaim of Bridgestone to Acushnet's Answer and Counterclaim*, namely, that
"Bridgestone has not infringed and does not infringe, either directly or indirectly and either
literally or by application of the doctrine of equivalents," any claim of any of the Acushnet
Patents, including all witnesses with knowledge of such facts and all documents that support
such facts.

## RESPONSE TO INTERROGATORY NO. 16

In addition to the General Objections, Bridgestone objects to the interrogatory as being a

multiple and compound request constituting more than one interrogatory.  Bridgestone also

objects to the interrogatory as premature at this early stage of discovery, especially because

Acushnet bears the burden of proof of its infringement allegations and because the interrogatory

calls for expert opinion and expert discovery.  In addition, the claims of the Acushnet Patents

have not been construed by a Court.

Subject to and without waiving the general and specific objections, Bridgestone responds

that no accused Bridgestone Product infringes any asserted claim, either literally or under the

doctrine of equivalents, because, for each asserted claim, the accused Bridgestone products do

not meet at least one claim limitation.  With respect to the '861, '587 and '367 patents, the

accused Bridgestone products do not meet the claimed requirement that at least 80 percent of the

distances between adjacent dimples be less than 0.065 inches.

With respect to the '976 patent, the accused Bridgestone products do not meet the

claimed requirements for the aerodynamic coefficient magnitudes and the aerodynamic force

# EXHIBIT 8

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| BRIDGESTONE SPORTS CO., LTD., and BRIDGESTONE GOLF, INC., | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | |
| ACUSHNET COMPANY, | ) ) | C. A. No. 05-132 (JJF) |
| Defendant. | ) ) | |
| ACUSHNET COMPANY, | ) ) | DEMAND FOR JURY TRIAL |
| Counterclaim Plaintiff, | ) ) | |
| v. | ) ) | |
| BRIDGESTONE SPORTS CO., LTD. and BRIDGESTONE GOLD, INC. | ) ) ) | |
| Counterclaim Defendant. | ) | |

## DEFENDANT'S FOURTH SET OF INTERROGATORIES DIRECTED TO PLAINTIFFS (NOS. 45-53)

Pursuant to Rule 33 of the Federal Rules of Civil Procedure, defendant and counterclaim plaintiff Acushnet Company ("Acushnet") hereby requests that plaintiffs and counterclaim defendants Bridgestone Sports Co., Ltd. and Bridgestone Golf, Inc. (collectively, "Bridgestone") answer the following interrogatories, to which Bridgestone shall respond separately and fully, in writing and under oath, within the time prescribed by the Federal Rules of Civil Procedure, in accordance with the Definitions and Instructions set forth hereafter.

## DEFINITIONS

Acushnet incorporates by reference the DEFINITIONS set forth in DEFENDANT'S FIRST SET OF INTERROGATORIES TO PLAINTIFF and DEFENDANT'S SECOND SET OF INTERROGATORIES TO PLAINTIFF as though

evidence. Accordingly, Bridgestone will not answer this Interrogatory.

Bridgestone reserves the right to later amend or supplement its answer to this Interrogatory after further investigation and discovery.

## INTERROGATORY NO. 52

Identify and describe the factual basis for any assertion or contention that current or potential customers of each Bridgestone or Nike ball Sold in the United States value the patented feature of the ball, as covered by a Bridgestone Patent.

## RESPONSE TO INTERROGATORY NO. 52

In addition to the General Objections, Bridgestone objects to the Interrogatory as being a multiple and compound request constituting more than one Interrogatory. Bridgestone also objects to the Interrogatory as being premature because it calls for expert opinion and expert discovery. Further, Bridgestone objects to the Interrogatory as being overly broad and unduly burdensome as it is not relevant to any issues in this case and is not reasonably calculated to lead to the discovery of admissible evidence. Bridgestone still further objects to the Interrogatory as being overly broad, unduly burdensome, and oppressive as it contains no temporal limitation.

In view of Bridgestone's agreement not to seek lost profits, this Interrogatory is not relevant to any issue in this case nor is it likely to lead to the discovery of admissible evidence. Accordingly, Bridgestone will not answer this Interrogatory.

Bridgestone reserves the right to later amend or supplement its answer to this Interrogatory after further investigation and discovery.

11

# EXHIBIT 9

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

BRIDGESTONE SPORTS CO., LTD.,  )
and BRIDGESTONE GOLF, INC.,    )
                               )
            Plaintiffs,        )    C.A. No. 05-132 (JJF)
                               )
       v.                      )
                               )
ACUSHNET COMPANY,              )
                               )
            Defendant.         )

## PLAINTIFFS' OBJECTIONS AND RESPONSES TO DEFENDANT'S FOURTH SET OF INTERROGATORIES DIRECTED TO PLAINTIFFS (NOS. 45-53)

Pursuant to Rule 33 of the Federal Rules of Civil Procedure, Plaintiffs Bridgestone Sports Co., Ltd. and Bridgestone Golf, Inc. (individually or collectively "Bridgestone") hereby object and respond to Defendant's Fourth Set of Interrogatories Directed to Plaintiffs.

## GENERAL OBJECTIONS

The General and Specific Objections set forth in Plaintiffs' previous Objections and Responses to Defendant's First, Second and Third Sets of Interrogatories are incorporated herein by reference.

## SPECIFIC OBJECTIONS AND RESPONSES

### INTERROGATORY NO. 45

Identify and describe in detail all existing licenses between Bridgestone and third parties for patents related to golf ball technology, any correspondence between Bridgestone and any past, present, or prospective licensors or licensees, the Internal Revenue Service (pertaining to I.R.C. § 482 and §6662), investors, or the media regarding actual or potential licenses for patents on golf ball technology, and any other licenses in Bridgestone's possession or documents regarding the licensing of golf ball technology, including industry standard or published royalty rates.

evidence. Accordingly, Bridgestone will not answer this Interrogatory.

Bridgestone reserves the right to later amend or supplement its answer to this Interrogatory after further investigation and discovery.

### INTERROGATORY NO. 52

Identify and describe the factual basis for any assertion or contention that current or potential customers of each Bridgestone or Nike ball Sold in the United States value the patented feature of the ball, as covered by a Bridgestone Patent.

### RESPONSE TO INTERROGATORY NO. 52

In addition to the General Objections, Bridgestone objects to the Interrogatory as being a multiple and compound request constituting more than one Interrogatory. Bridgestone also objects to the Interrogatory as being premature because it calls for expert opinion and expert discovery. Further, Bridgestone objects to the Interrogatory as being overly broad and unduly burdensome as it is not relevant to any issues in this case and is not reasonably calculated to lead to the discovery of admissible evidence. Bridgestone still further objects to the Interrogatory as being overly broad, unduly burdensome, and oppressive as it contains no temporal limitation.

In view of Bridgestone's agreement not to seek lost profits, this Interrogatory is not relevant to any issue in this case nor is it likely to lead to the discovery of admissible evidence. Accordingly, Bridgestone will not answer this Interrogatory.

Bridgestone reserves the right to later amend or supplement its answer to this Interrogatory after further investigation and discovery.

11

# EXHIBIT 10

LEXSEE 2007 US DIST LEXIS 20833

**DAVID SCOTT McMILLAN, Plaintiff, v. WEEKS MARINE, INC., Defendant.**

**Civil Action No. 03-0006 JJF**

**UNITED STATES DISTRICT COURT FOR THE DISTRICT OF DELAWARE**

*2007 U.S. Dist. LEXIS 20833*

**March 22, 2007, Decided**

**CASE SUMMARY:**

**PROCEDURAL POSTURE:** Plaintiff, a worker in the dredging industry, brought an action against defendant employer under the Jones Act, 46 U.S.C.S. app. § 688, alleging that he sustained damages as a result of the employer's negligence. After a jury verdict in the worker's favor, the employer filed several motions, including a motion for judgment as a matter of law and a motion to vacate the award of past and future lost earnings and for a new trial on damages.

**OVERVIEW:** The worker alleged that, through its negligence and unseaworthy vessels, his employer subjected him to unsafe working conditions from which he sustained injuries. According to the worker, he had been working on an overly muddy scow and was not given a chance to wash the mud off his boots before transferring to another boat. As a result, he slipped and fell off the boat, sustaining facial and shoulder injuries. A jury returned a verdict finding that the employer was partially negligent, and awarded the worker $ 378,533. The court found that the worker's evidence was sufficient to support the jury's verdict finding the employer partially negligent. However, it also found that the worker's expert improperly based his projections of lost earnings on his assumption that the worker would work for the rest of his work-life on a full-time basis at an artificially determined wage. The court concluded that the expert reports lacked a proper foundation because the expert failed to consider the worker's complete work history and the seasonal nature of the worker's dredging industry positions prior to the injury. As a result, the court ordered a new trial on damages.

**OUTCOME:** The court denied the employer's motion for judgment as a matter of law, but granted the motion to vacate the award and for a new trial on damages.

**LexisNexis(R) Headnotes**

*Civil Procedure > Trials > Judgment as Matter of Law > General Overview*
[HN1] A court may grant judgment as a matter of law when there is no legally sufficient evidentiary basis for a reasonable jury to find for that party on that issue. *Fed. R. Civ. P. 50(a)*. In assessing the sufficiency of the evidence, a court must review all of the evidence in the record, viewing it in the light most favorable to the non-moving party and giving the non-moving party the benefit of all fair and reasonable inferences that could be drawn from it. The court may not weigh the evidence, make credibility determinations, or substitute its version of the facts for the jury's version. Motions for judgment as a matter of law are granted sparingly and only in those circumstances in which the record is critically deficient of the minimum quantum of evidence in support of the verdict. The question the court must answer then, is whether, viewing the evidence in the light most favorable to the verdict, a reasonable jury could have found for the prevailing party.

*Civil Procedure > Judgments > Relief From Judgment > Motions for New Trials*
[HN2] A court may grant a new trial to all or any of the parties and on all or part of the issues in an action in which there has been a trial by jury, for any of the

2007 U.S. Dist. LEXIS 20833, *

reasons for which new trials have heretofore been granted in actions at law in the courts of the United States. *Fed. R. Civ. P. 59(a)*. A court should grant a new trial where the verdict is contrary to the weight of the evidence and a miscarriage of justice would result if the verdict were to stand. However, where the ground for a new trial is that the jury's verdict was against the weight of the evidence, the court should proceed cautiously, because such a ruling would necessarily substitute the court's judgment for that of the jury. A motion for a new trial is also appropriately granted where a substantial error occurred in the admission or rejection of evidence.

### *Civil Procedure > Judgments > Relief From Judgment > Motions for New Trials*

[HN3] In determining whether to grant a motion for a new trial under *Fed. R. Civ. P. 59(a)*, the court need not view the evidence in the light most favorable to the verdict winner, a distinction from similar motions under *Fed. R. Civ. P. 50*. However, a new trial should only be granted where a miscarriage of justice would result if the verdict were to stand, the verdict cries out to be overturned, or where the verdict shocks the conscience. The moving party has the burden of proving that a new trial is warranted.

### *Workers' Compensation & SSDI > Maritime Workers' Claims > Compensability > Jones Act*

[HN4] The Jones Act provides that any seaman who shall suffer personal injury in the course of his employment may, at his election, maintain an action for damages at law, with the right of trial by jury. 46 U.S.C.S. app. § 688(a). Though a plaintiff alleging claims under the Jones Act must prove the traditional elements of negligence (duty, breach, notice, causation and damages), the standard of proof for causation is featherweight. Under this featherweight standard of proof, causation is satisfied if the proofs justify with reason the conclusion that employer negligence played any part, even the slightest, in producing the injury. In a Jones Act case, issues of negligence are questions for the jury to resolve.

### *Evidence > Testimony > Experts > Admissibility*

[HN5] A trial court has broad discretion to admit or exclude evidence under the Federal Rules of Evidence. However, expert testimony cannot be submitted to the jury unless it is accompanied by a sufficient factual foundation. Although mathematical exactness is not required, testimony of post-injury earning capacity must be based upon the proper factual foundation. *Fed. R. Evid. 702*. Moreover, an expert's testimony should be excluded as speculative if it is based on unrealistic assumptions regarding the plaintiff's future employment prospects, including his wage rate and ability to maintain full-time work in seasonal or other part-time industries.

### *Civil Procedure > Discovery > Disclosures > Mandatory Disclosures*

[HN6] Pursuant to *Fed. R. Civ. P. 26(a)(2)(B)*, an expert's report shall contain a complete statement of all opinions to be expressed and the basis and reasons therefor; and the data or other information considered by the witness in forming the opinions. *Fed. R. Civ. P. 26(a)(2)(B)*. The purpose of this disclosure rule is to give opposing parties a reasonable opportunity to prepare for effective cross examination or to secure their own expert witness.

### *Civil Procedure > Discovery > Disclosures > Sanctions Evidence > Testimony > Experts > Admissibility*

[HN7] When an expert's testimony goes beyond the parameters of that expert's report, the court's procedure is to consider objections at the conclusion of trial because of the difficulty of resolving such disputes during trial. If the verdict is adverse to the objecting party, the court then undertakes consideration of whether or not the expert testified outside the parameters of the *Fed. R. Civ. P. 26* report. For a party to prevail on this argument, it must demonstrate that the expert's testimony exceeded the scope of the Rule 26 report, and that the objecting party suffered undue prejudice because of the violation. If the court finds that the opinions offered at trial were not disclosed, the court then considers whether a new trial is warranted and what sanctions, if any, should be imposed.

**COUNSEL:** [*1] For David Scott McMillan, Plaintiff: Leo John Ramunno, LEAD ATTORNEY, Leo John Ramunno, Esq., Wilmington, DE; Rudolph V. Degeorge, III, Pro Hac Vice.

For Weeks Marine Inc., Defendant: Carmella P. Keener, LEAD ATTORNEY, Rosenthal, Monhait & Goddess, P.A., Wilmington, DE.

**JUDGES:** Joseph J. Farnan, Jr., UNITED STATES DISTRICT JUDGE.

**OPINION BY:** Joseph J. Farnan, Jr.

2007 U.S. Dist. LEXIS 20833, *1

**OPINION:**

### MEMORANDUM OPINION

March 22, 2007
Wilmington, Delaware

**Joseph J. Farnan, Jr.**
**Farnan, District Judge.**

Pending before the Court are three Motions filed by Defendant Weeks Marine, Inc., a Motion For Judgment As A Matter Of Law Under *Fed. R. Civ. P. 50* (D.I. 77), a Motion To Vacate The Award Of Past And Future Lost Earnings And For A New Trial On Damages (D.I. 86), and a Motion For Stay Of Execution Of Judgment Pending Disposition Of Post Trial Motions (D.I. 88). For the reasons discussed, the Court will deny Defendant's Motion For Judgment As A Matter Of Law (D.I. 77), grant Defendant's Motion To Vacate The Award Of Past And Future Lost Earnings And For A New Trial On Damages (D.I. 86), and deny as moot Defendant's Motion For Stay Of Execution Of Judgment [*2] Pending Disposition Of Post Trial Motions (D.I. 88).

### I. BACKGROUND

On January 3, 2002, Plaintiff, David McMillan, filed this lawsuit against Defendant in the Eastern District of Pennsylvania alleging that Defendant, through its negligence and unseaworthy vessels, subjected him to unsafe working conditions from which he sustained injuries. (D.I. 1). Plaintiff alleged that he had been working on an overly muddy scow and was not given a chance to wash the mud off his boots before transferring to another boat. As a result, he alleges, he slipped and fell off the boat, sustaining facial and shoulder injuries. The Pennsylvania court transferred the case to this Court on January 3, 2003. (D.I. 11).

From April 26 to May 1, 2006, the Court held a jury trial on the issues of whether Defendant was negligent under the Jones Act, *46 U.S.C. App. § 688*, and whether Defendant's vessels were unseaworthy. At the close of all of the evidence, Defendant moved the Court for judgment as a matter of law pursuant to *Fed. R. Civ. P. 50(a)*. (D.I. 77). The Court deferred judgment on the Motion and allowed the case to proceed to the [*3] jury. On Plaintiff's unseaworthiness claim, the jury returned a verdict in favor of Defendant. On Plaintiff's negligence claim, the jury returned a verdict finding that Defendant

was negligent, and awarding Plaintiff damages in the amount of $ 620,546. However, the jury also found that Plaintiff acted negligently and that thirty-nine percent of Plaintiff's negligence contributed to his own injury. (D.I. 79). Accordingly, the total damages awarded to Plaintiff were reduced by 39 percent, resulting in final damages of $ 378,533.06. Judgment was entered on May 11, 2006. By the instant Motions, Defendant renews its request for judgment as a matter of law, and alternatively, requests the Court to vacate the jury's award for past and future lost earnings and order a new trial on those damages.

### II. LEGAL STANDARD

A. Motion For Judgment As A Matter Of Law

[HN1] A court may grant judgment as a matter of law when "there is no legally sufficient evidentiary basis for a reasonable jury to find for that party on that issue." *Fed. R. Civ. P. 50(a)*. In assessing the sufficiency of the evidence, a court must review all of the evidence in the record, [*4] viewing it in the light most favorable to the non-moving party and giving the non-moving party the benefit of all fair and reasonable inferences that could be drawn from it. *Reeves v. Sanderson Plumbing Products, Inc., 530 U.S. 133, 150, 120 S. Ct. 2097, 147 L. Ed. 2d 105 (2000)*. The court may not weigh the evidence, make credibility determinations, or substitute its version of the facts for the jury's version. Id. Motions for judgment as a matter of law are granted "sparingly" and only in those circumstances in which "the record is critically deficient of the minimum quantum of evidence in support of the verdict." *Johnson v. Campbell, 332 F.3d 199, 204 (3d Cir. 2003)*. The question the Court must answer then, is "whether, viewing the evidence in the light most favorable to the verdict, a reasonable jury could have found for the prevailing party." Id.

B. Motion For a New Trial

[HN2] A court may grant a new trial "to all or any of the parties and on all or part of the issues. . . in an action in which there has been a trial by jury, for any of the reasons for which new trials have heretofore been granted in actions at law in the courts of the United States . . . ." *Fed. R. Civ. P. 59(a)* [*5] . A court should grant a new trial where the verdict is contrary to the weight of the evidence and a miscarriage of justice would result if the verdict were to stand. *Brennan v. Norton, 350 F.3d 399, 430 (3d Cir. 2003)* (citing *Williamson v. CONRAIL, 926 F.2d 1344, 1352 (3d Cir. 1991)*). However, where the

ground for a new trial is that the jury's verdict was against the weight of the evidence, the court should proceed cautiously, because such a ruling would necessarily substitute the court's judgment for that of the jury. *Klein v. Hollings, 992 F.2d 1285, 1290 (3d Cir. 1993)*. A motion for a new trial is also appropriately granted where a substantial error occurred in the admission or rejection of evidence. *Goodman v. Pennsylvania Turnpike Comm'n, 293 F.3d 655, 676 (3d Cir. 2002)*.

[HN3] In determining whether to grant a motion for a new trial under *Rule 59(a)*, the court need not view the evidence in the light most favorable to the verdict winner, a distinction from similar motions under *Rule 50*. *Whelan v. Teledyne Metalworking Prods., 2006 U.S. Dist. LEXIS 1908 at *20 (W.D. Pa. Jan. 6, 2006)*(citing [*6] *Bullen v. Chaffinch, 336 F. Supp. 2d 342, 347 (D. Del. 2004)*). However, a new trial should only be granted where "a miscarriage of justice would result if the verdict were to stand," the verdict "cries out to be overturned," or where the verdict shocks the conscience. *Williamson v. Conrail, 926 F.2d 1344, 1352 (3d Cir. 1991)*; see also *Price v. Delaware Dep't of Correction, 40 F. Supp. 2d 544, 550 (D. Del. 1999)*. The moving party has the burden of proving that a new trial is warranted. *Whelan, 2006 U.S. Dist. LEXIS 1908 at *20*.

## III. DISCUSSION

A. Whether Defendant Is Entitled To Judgment As A Matter Of Law On Plaintiff's Claim Under The Jones Act

By its Motion, Defendant contends that the evidence Plaintiff presented at trial does not, as a matter of law, establish that Defendant was negligent. (D.I. 77). Defendant also contends that Plaintiff failed to establish causation under the Jones Act, *46 U.S.C. App. § 688*. According to Defendant the evidence offered at trial clearly demonstrates that Plaintiff's accident was caused exclusively by his own negligence, because he knew [*7] his boots were muddy yet failed to clean or change them. In response, Plaintiff contends that the jury's verdict was supported by the evidence.

[HN4] The Jones Act provides that "any seaman who shall suffer personal injury in the course of his employment may, at his election, maintain an action for damages at law, with the right of trial by jury." *46 U.S.C. App. § 688(a)*; see *Neely v. Club Med Mgmt. Servs., 63 F.3d 166, 194 (3d Cir. 1995)*. Though a plaintiff alleging claims under the Jones Act must prove the traditional

elements of negligence (duty, breach, notice, causation and damages), the standard of proof for causation is "featherweight." *Evans v. United Arab Shipping Co. S.A.G., 4 F.3d 207, 210 (3d Cir. 1993)*. Under this "featherweight" standard of proof, causation is satisfied "if the proofs justify with reason the conclusion that employer negligence played any part, even the slightest, in producing the injury." *Wilburn v. Maritrans GP, Inc., 139 F. 3d 350, 357 (3rd cir. 1998)*. In a Jones Act case, issues of negligence are questions for the jury to resolve. *Southard v. Indep. Towing Co., 453 F.2d 1115, 1118 (3d Cir. 1971)* [*8] (the jury "plays a preeminent role" in Jones Act cases).

Viewing all of the evidence in the light most favorable to Plaintiff, as must be done for *Rule 50* motions, the Court concludes that sufficient evidence supports the jury's verdict finding Defendant negligent. Plaintiff testified as to the condition of the scow, the operational urgency of moving scow men at the end of the job, and his knowledge of gangplanks being used by others in the industry for transferring dredge workers between tugs. (D.I. 94). He also testified that the amount of mud on the scow on the day of the accident was "uncommon to any of the other times[,]" with the walking surface of the scow covered with four to six inches of mud in lower areas and up to two feet of mud in other areas. (D.I. 94 at 31, 37, 40). Plaintiff testified that the dredge operator customarily rinsed the mud off the scow to create a safe work area, but on the day of the accident the mud had not been rinsed off. (D.I. 94 at 32-34). Plaintiff further testified that he complained about the scow's muddy condition to Captain Wise immediately before the accident (D.I. 94 at 35).

Plaintiff then testified that, while Plaintiff was still on the [*9] scow, Captain Wise called to him, telling him to "hurry up" and get onto a tug boat, the Shelby, for transfer to another boat, the Virginia, that would be taking the crew home. (D.I. 94 at 35, D.I. 97 at 9). Plaintiff further testified that his belongings were already packed and were handed to him when he arrived on the Shelby, so he would be able to get to the Virginia more quickly, adding to his perception of urgency. (D.I. 94 at 43). Plaintiff next testified that while on the Shelby, he tried to wipe the mud off his boots as best as he could, but that he felt there was no time for him to take off his boots or to put on his street shoes. (D.I. 94 at 43). Because Defendant did not equip its boat with gangplanks, Plaintiff testified, he transferred between the

2007 U.S. Dist. LEXIS 20833, *9

Shelby and the Virginia by stepping from a bulwark on the Shelby to another on the Virginia in one long step, without a handrail, from a height of two feet above the deck. (Id. at 45). Plaintiff testified that it was during that long step that he fell.

The Court finds Plaintiff's testimony, along with the other record evidence is sufficient to establish the elements of a negligence claim, including the slight causation requirement [*10] of the Jones Act. Thus, the Court concludes that Plaintiff's evidence was sufficient to support the jury's verdict finding Defendant partially negligent. Accordingly, the Court will deny Defendant's Motion For Judgment As A Matter Of Law (D.I. 77) on Defendant's negligence claims.

B. Whether Defendant Is Entitled To Have The Jury's Damages Award Vacated And A New Trial

In the event the Court concludes that the jury verdict should stand, Defendant contends in the alternative, that the jury's damages award of past lost earnings ($ 100,000) and future lost earnings ($ 377,000) should be vacated and a new trial ordered on those damages. Specifically Defendant challenges the Court's decision to admit the testimony and expert reports of Plaintiff's economist, Royal A. Bunin ("Mr. Bunin"), on the amount of Plaintiff's lost earnings. Defendant contends that Mr. Bunin's testimony was improper because: (1) Mr. Bunin based his entire wage calculation on speculation, hearsay and insufficient evidence; (2) Defendants were not provided with an expert report wherein Mr. Bunin employed an alternative wage calculation until the night before trial; and (3) Mr. Bunin's testimony was outside [*11] the scope of his expert report, as well as his expertise as an economist. n1

> n1 Defendant offers several other contentions for why a new trial on damages should be granted. Specifically, Defendant contends that Defendant should have been permitted to rebut the testimony of Plaintiff's medical experts with its own experts. Defendant also contends that the Court erred in allowing Plaintiff to testify about hearsay conversations related to job security and seniority in the Union, in allowing Mr. Bunin's second expert report even though it was submitted after 6:00 p.m. the night before trial, and in refusing to provide certain jury instructions. (D.I. 86). Because the Court concludes that a new trial is

warranted for the reasons discussed in this Memorandum Opinion, it declines to address these additional issues.

In response, Plaintiff contends that the Court did not abuse its discretion in admitting Mr. Bunin's testimony because (1) Mr. Bunin was qualified to testify as to Plaintiff's post-injury earning capacity, [*12] and (2) Mr. Bunin's last minute report, insofar as it actually reduced Plaintiff's lost wages, was not prejudicial. Thus, Plaintiff contends that the jury's damages award was supported by competent evidence, and, therefore, a new trial is not warranted.

1. Whether Mr. Bunin's Testimony Lacked A Proper Foundation

Defendant contends that Mr. Bunin's testimony lacked the proper foundation for admission into evidence because Mr. Bunin (1) calculated Plaintiff's lost earnings projection by relying on a very limited period of time that immediately preceded and immediately followed Plaintiff's injury and (2) used his "knowledge" of how seniority in a union ensures steady work to speculate that, had Plaintiff not been injured, he would have achieved and maintained full-time employment in the dredging industry. (D.I. 87 at 9-10).

[HN5] The trial court has broad discretion to admit or exclude evidence under the Federal Rules of Evidence. *Gumbs v. Int'l Harvester, Inc., 718 F.2d 88, 97 (3d Cir. 1983)*; see *Weinstein's Federal Evidence § 702.02*. However, expert testimony cannot be submitted to the jury unless it is accompanied by a sufficient factual [*13] foundation. *Benjamin v. Peter's Farm Condo. Owners Ass'n, 820 F.2d 640, 642 (3d Cir. 1987)*. Although mathematical exactness is not required, testimony of post-injury earning capacity must be based upon the proper factual foundation. Id. At 643; *Fed. R. Evid. 702*. Moreover, an expert's testimony should be excluded as speculative if it is based on unrealistic assumptions regarding the plaintiff's future employment prospects, including his wage rate and ability to maintain full-time work in seasonal or other part-time industries. *Boucher v. U.S. Suzuki Motor Corp., 73 F.3d 18, 21-22 (2d Cir. 1996)*; see also *Gumbs, 718 F.2d at 98*. In the present case, Mr. Bunin's projections of Plaintiff's lost earnings were based on his assumption that Plaintiff would work for the rest of his work-life on a full-time basis at an artificially determined wage. The Court concludes that

the evidence does not establish any foundation for Mr. Bunin's future wage projections.

Mr. Bunin is an actuarial-economic expert who was called to "project the values of future life time earnings of individuals allowing for future growth[.]" (D.I. [*14] 95 at 5). Mr. Bunin testified that the purpose of this calculation is "to determine how much money a person has lost due to a death or disability." Id. He also testified that, when preparing actuarial-economic reports, he "like[s] to get tax returns or some type of employment history on the individual, information about their date of birth [and] the injury and what happened," as well as "the residual capacity that would come from a medical report, a vocational report, and those sort of things." (D.I. 95 at 8). When the wage information is not for a complete year, Mr. Bunin prorates the wage information he has, meaning he calculates annual earnings by assuming a client's partial wage information will be constant throughout the year.

Mr. Bunin prepared two actuarial-economic expert reports for this litigation. For his first report ("Basis 1"), Mr. Bunin calculated Plaintiff's lost earnings capacity by "prorat[ing] on an annualized basis" the $ 9,420 that Plaintiff earned during "the last position he held prior to the injury," i.e. his seven-week seasonal position with Defendant. (Id. at 9, 29). Mr. Bunin testified that he did not factor Plaintiff's prior or subsequent [*15] employment history in the dredging industry into his "Basis 1" calculation. (D.I. 95 at 30-32). In making his "Basis 1" calculation, Mr. Bunin assumed that Plaintiff's injury was the reason why his employment ended with Defendant. This assumption was based solely on the opinion of Plaintiff's orthopedic surgeon that Plaintiff could not return to work as a scowman or deckhand. (D.I. 95 at 12, 27). n2

n2 Mr. Bunin testified that he did not consider the opinions of Plaintiff's treating physician or surgeon, both of whom did believe that Plaintiff could return to work, because "it would be beyond my [Mr. Bunin's] expertise to give a medical opinion." Id.

Mr. Bunin prepared a second report ("Basis 2") after learning that "the reason [Plaintiff] stopped working [for Defendant] on June 7<th> was that was the last day of work, . . . he didn't stop working because he was injured

on the job" and that Plaintiff actually did return to work as a deckhand after the surgery. For his "Basis 2" calculation, Mr. Bunin [*16] also considered Plaintiff's wages during his two month employment at another dredging employer, C.J. Langenfelder, after Plaintiff's accident, as well as the downtime between Plaintiff's job with Defendant and his job with C.J. Langenfelder. When these additional factors were considered, Plaintiff's projected pro-rated lost earnings capacity fell from the $ 79,722 projected under "Basis 1" to $ 50,430. (D.I. 95 at 13, D.I. 87 Ex. A). However, Mr. Bunin still did not consider Plaintiff's prior work in the dredging industry or subsequent work outside of the dredging industry. "Basis 2" also did not anticipate periods of unemployment in the dredging industry.

The Court concludes that Mr. Bunin's expert reports and subsequent testimony about Plaintiff's lost wages lack a proper foundation because he failed to consider Plaintiff's complete work history and the seasonal nature of Plaintiff's dredging industry positions prior to the injury. The projected earnings estimates in both "Basis 1" and "Basis 2" are significantly higher than Plaintiff's 2005 W-2 earnings of $ 34,680, and both exceed any recorded annual earnings in Plaintiff's work history. (D.I. 87 Ex. A). Additionally, neither [*17] "Basis 1" nor "Basis 2" were adjusted downward for any periods between jobs when Plaintiff would not have been paid, even though Mr. Bunin acknowledged under cross examination that "these jobs are called on for a period of time, . . . then the job is over." n3 (D.I. 95 at 10, 39).

n3 "Basis 2" did include the period between Plaintiff's job with Defendant and his job with C.J. Langenfelder when Plaintiff was not paid. However, the calculation assumed that this brief period was the only time Plaintiff would be without work for the entire year.

In sum, the evidence at trial demonstrates that dredging jobs are seasonal and would not have been available to Plaintiff on a regular, full time basis. Indeed, during the year and a half that Plaintiff worked in the dredging industry, he experienced downtime or gaps in his employment and worked for multiple employers. (D.I. 94 at 15-21; D.I. 95 at 31, 35). Further, both Plaintiff's job with Defendant and his subsequent work with C.J. Langenfelder were seasonal jobs. (D. [*18] I. 94 at 39, D.I. 97 at 31-32). Yet, Mr. Bunin failed to consider this

important evidence in his wage earning calculation. Thus, the Court concludes that Mr. Bunin's expert reports and testimony were not based on realistic wage estimates, and were instead based on the faulty and unsupported assumption that Plaintiff would be able to maintain full-time work in a seasonal and part-time industry. Accordingly, the Court concludes that Mr. Bunin's expert reports should have been excluded from evidence because they lacked a proper foundation.

2. Whether Mr. Bunin's Testimony Exceeded The Scope Of His Expert Report

Defendant also contends that Mr. Bunin exceeded the scope of his expert report when he testified about the role of union membership in securing full time work for its members. (D.I. 87 at 5). [HN6] Pursuant to *Federal Rule of Civil Procedure 26(a)(2)(B)*, an expert's report "shall contain a complete statement of all opinions to be expressed and the basis and reasons therefor; [and] the data or other information considered by the witness in forming the opinions." *Fed. R. Civ. P. 26(a)(2)(B)*. The purpose of this disclosure rule is to give [*19] opposing parties a reasonable opportunity to prepare for effective cross examination or to secure their own expert witness. Advisory Committee Notes to 1993 Amendments to *Fed. R. Civ. P. 26(a)(2)(B)*.

[HN7] When an expert's testimony goes beyond the parameters of that expert's report, the Court's procedure is to consider objections at the conclusion of trial because of the difficulty of resolving such disputes during trial. If the verdict is adverse to the objecting party, the Court then undertakes consideration of whether or not the expert testified outside the parameters of the *Rule 26* report. For a party to prevail on this argument, it must demonstrate that the expert's testimony exceeded the scope of the *Rule 26* report, and that the objecting party suffered undue prejudice because of the violation. If the Court finds that the opinions offered at trial were not disclosed, the Court then considers whether a new trial is warranted and what sanctions, if any, should be imposed.

During trial, Mr. Bunin, an actuarial economist expert witness, was permitted to testify, over Defendant's objection, about the employment frequencies, hours worked, and employment experiences of workers in the [*20] dredging industry. He testified that "while earlier on in a person's career there may be fluctuation as they're getting known in the industry picking up work, but once they're known in the industry, they get picked up and

their work seems to be more solid year around." (D.I. 95 at 11). He also testified that this opinion derived from other reports he had prepared for other workers in the dredging industry who were members of the Union of Operating Engineers Local 25. Id. After reviewing Mr. Bunin's expert reports, the Court finds that these opinions were not disclosed as required, nor did Mr. Bunin provide any bases to support them. Moreover, the Court concludes that Mr. Bunin's testimony on Plaintiff's future prospects of employment in the dredging industry reflects vocational experience outside the scope of his expert report, discipline and prior experience as an actuarial-economist.

3. Summary

In sum, the Court concludes that Mr. Bunin's testimony was both unsupported and beyond the scope of his expert reports. Because the Court finds that Mr. Bunin's testimony was integral to the jury's verdict on lost wages, n4 the Court concludes that Defendant suffered undue prejudice [*21] warranting a new trial on damages. Accordingly, the Court will grant Defendant's Motion to vacate the damages award for past lost earnings ($ 100,000) and future lost earnings ($ 377,000), and schedule a new trial on these damages.

n4 The jury's verdict on past and future lost wages was approximately 80% of Mr. Bunin's Basis 2 calculations. D.I. 87, n. 1.

**IV. CONCLUSION**

For the reasons discussed, Defendant's Motion For Judgment As A Matter Of Law Under *Fed. R. Civ. P. 50* (D.I. 77) will be denied, Defendant's Motion To Vacate The Award Of Past And Future Lost Earnings And For a New Trial On Damages (D.I. 86) will be granted, and Defendant's Motion For Stay Of Execution Of Judgment Pending Disposition Of Post Trial Motions (D.I. 88) will be denied as moot.

An appropriate Order will be entered.

**ORDER**

At Wilmington, this 22nd day of March 2007, for the reasons discussed in the Memorandum Opinion issued

2007 U.S. Dist. LEXIS 20833, *21

this date;

IT IS HEREBY ORDERED that:

1) Defendant's [*22] Motion For Judgment As A Matter Of Law Under *Fed. R. Civ. P. 50* (D.I. 77) is **DENIED.**

2) Defendant's Motion To Vacate The Award Of Past And Future Lost Earnings And For a New Trial On Damages (D.I. 86) is **GRANTED.**

3) Defendant's Motion For Stay Of Execution Of Judgment Pending Disposition Of Post Trial Motions is **DENIED AS MOOT.**

4) The jury's damages award (D.I. 79) of $ 378,533.08 is **VACATED** to the extent that it awarded damages for past lost earnings ($ 100,000) and future lost earnings ($ 377,000). The Judgment Order (D.I. 83) is **VACATED** as to past lost earnings and future lost earnings. Judgment stands against Defendant and in favor of Plaintiff in the amount $ 87,563.06 (for past and future loss of life's pleasures ($ 40,000), past pain and suffering ($ 42,000), future pain and suffering ($ 55,000), and dental expenses ($ 6,546), as reduced by thirty-nine (39) percent to reflect Plaintiff's negligence ($ 55,982.94).

Joseph J. Farnan, Jr.

UNITED STATES DISTRICT JUDGE

# EXHIBIT 11

# THIS EXHIBIT HAS BEEN
# REDACTED IN ITS ENTIRETY