IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| BRIDGESTONE SPORTS CO., LTD. and BRIDGESTONE GOLF, INC., <br><br> *Plaintiffs,* <br><br> v. <br><br> ACUSHNET COMPANY, <br><br> *Defendant.* | C.A. No. 05-132 (JJF) <br><br> REDACTED - <br> PUBLIC VERSION |

## BRIDGESTONE'S REPLY BRIEF IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT OF NO INVALIDITY OF U.S. PATENT NO. 6,679,791

MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Jack B. Blumenfeld (#1014)
Leslie A. Polizoti (#4299)
1201 N. Market St.
P.O. Box 1347
Wilmington, DE 19801
(302) 658-9200

*Attorneys for Bridgestone Sports Co., Ltd.
and Bridgestone Golf, Inc.*

OF COUNSEL:

Robert M. Masters
Scott M. Flicker
PAUL, HASTINGS, JANOFSKY & WALKER LLP
875 15th St., N.W.
Washington, DC 20005
(202) 551-1700

Original Filing Date: May 11, 2007
Redacted Filing Date: May 16, 2007

i.

**TABLE OF CONTENTS**

Page

INTRODUCTION .................................................................................................................. 1

ARGUMENT.......................................................................................................................... 1

    I.    ACUSHNET FAILED TO PROPERLY ANALYZE ENABLEMENT ............... 1

    II.    ACUSHNET FAILED TO PROPERLY ANALYZE WRITTEN DESCRIPTION................................................................................................. 3

    III.    ACUSHNET'S ATTORNEY ARGUMENTS REGARDING THE UPPER LIMIT OF "AT LEAST 22" ARE IRRELEVANT AND INCORRECT................................................................................................... 4

        A.    Acushnet's Argument That Core Hardness Gradients Are "Unpredictable" Is Unsupported................................................................ 4

        B.    Patent Specifications Are Not Manufacturing Specifications ................... 6

        C.    Core Gradients Were Known In The Art...................................................... 7

        D.    The '791 Patent's Disclosure Is Sufficient To Enable The Claims In Question.................................................................................................. 7

        E.    The '791 Patent Examples Enable Broad Claims ...................................... 9

        F.    The '791 Patent Is Not Limited To Single Cores .................................... 10

        G.    The '791 Patent Does Not Teach Away From Gradients Greater Than 30 .................................................................................................... 11

        H.    Acushnet's Further Written Description Arguments Are Unsupportive............................................................................................. 12

CONCLUSION.................................................................................................................... 13

ii.

# TABLE OF AUTHORITIES

Cases

*AK Steel Corp. v. Sollac & Ugine,*
  344 F.3d 1234 (Fed. Cir. 2003)..................................................................................1, 6, 8

*CFMT, Inc. v. YieldUp Int'l Corp.,*
  349 F.3d 1333 (Fed. Cir. 2003)..........................................................................................6, 8

*Continental Can Co. v. Monsanto Co.,*
  948 F.2d 1264 (Fed. Cir. 1991)...........................................................................................5

*In re Robertson,*
  169 F.3d 743 (Fed. Cir. 1999).............................................................................................5

*In re Wands,*
  858 F.2d 731 (Fed. Cir. 1988).........................................................................................1, 5

*KCJ Corp. v. Kinetic Concepts, Inc.,*
  223 F.3d 1351 (Fed. Cir. 2000)..........................................................................................11

*LizardTech, Inc. v. Earth Res. Mapping, Inc.,*
  424 F.3d 1336 (Fed. Cir. 2005)...........................................................................................7

*Spectra-Physics, Inc. v. Coherent, Inc.,*
  827 F.2d 1524 (Fed. Cir. 1987).......................................................................................7, 9

*Union Oil Co. v. Atl. Richfield Co.,*
  208 F.3d 989 (Fed. Cir. 2000)........................................................................................6, 8

*Vas-Cath, Inc. v. Mahurkar,*
  935 F.2d 1555 (Fed. Cir. 1991)...........................................................................................3

1.

## INTRODUCTION

The parties have cross-moved for summary judgment on the validity of Bridgestone's '791 patent. Bridgestone moved for summary judgment that the asserted claims of its '791 patent were not invalid for lack of enablement and written description (D.I. 349), and Acushnet moved for summary judgment that the asserted claims were invalid as non-enabled (D.I. 380). On April 30, the parties filed their respective oppositions (D.I. 419 and 409). This is Bridgestone's reply brief in support of its motion for summary judgment of no invalidity.

## ARGUMENT

Acushnet <u>does not dispute</u> that its expert Dr. Felker has addressed none of the most basic Federal Circuit-mandated tasks of an enablement and written description analysis. This failure means that Acushnet has offered nothing that even approximates a proper opinion or argument regarding whether the '791 Patent's specification provides sufficient enablement or written description of the asserted claims – and that it cannot do so at trial.

### I.   ACUSHNET FAILED TO ANALYZE ENABLEMENT PROPERLY

To show that the claims of the '791 Patent do not meet the enablement requirement, Acushnet has the burden to prove, by clear and convincing evidence, that one of ordinary skill in the art, after reading the specification, could not "practice the claimed invention without undue experimentation." *AK Steel Corp. v. Sollac & Ugine*, 344 F.3d 1234, 1244 (Fed. Cir. 2003). Because one of skill is analyzing the <u>claimed</u> invention, an "enablement inquiry typically begins with a construction of the claims." *Id.* at 1241. The presence of "undue experimentation" is analyzed by consideration of the *Wands* factors. *In re Wands*, 858 F.2d 731, 737 (Fed. Cir. 1988).

Accordingly, the enablement analysis that Acushnet <u>should</u> have performed was to determine: (1) what "at least 22" means to one of ordinary skill; and (2) whether one of

ordinary skill would understand the specification to enable the construed range of "at least 22" without undue experimentation – such as by utilizing the *Wands* factors. Neither Acushnet nor its expert, Dr. Felker, did any such analysis.

Instead of analyzing how one of ordinary skill in the art would understand the claimed range of "at least 22" in the context of the '791 Patent, Dr. Felker addressed what *he* believes a range of "at least 22" to mean in an abstract "theoretical" sense.[1] (D.I. 350, Ex. 3 at 71, n. 34). Whether or not Dr. Felker's theoretical analysis is accurate, it is undisputed that Dr. Felker did not analyze "at least 22" <u>as it is claimed</u> in the '791 Patent – in the context of the "core" of a golf ball provided in conjunction with intermediate and cover layers with particular properties.[2]

Similarly, instead of analyzing what core hardness gradient ranges one of ordinary skill in the art would understand the specification of the '791 Patent to enable without undue experimentation, Dr. Felker addressed only what *he* believes it to disclose – again in an abstract "theoretical" sense.[3] Whether or not Dr. Felker's theoretical analysis is accurate, it is undisputed that he did not analyze what core hardness gradient ranges the specification of the '791 Patent

---

[1] Dr. Felker's analysis is that it could mean "at least 22 to 100," because someone (he doesn't say who) could make a core have a 0 center hardness and 100 surface hardness.

[2] Dr. Felker has completely failed to address at least two considerations of the claim terms - that: (1) that the core hardness gradient of "at least 22" is recited as part of the "core" of a "golf ball" and thus would not have a core center hardness of 0 JIS-C; and (2) that the surface of the "core" recited in the '791 Patent could not be 100 JIS-C due to the other claim requirements, such as that the intermediate layer is harder than the core surface. D.I. 350, Ex. 1, col. 8-10, claims 1, 13 and 24.

[3] Dr. Felker concludes that the '791 Patent is only directed to a single-layer core, and then goes off on a theoretical exploration of what hardness gradients he believes are possible in such single layer cores – asserting that gradients of "40 or 50" are the maximum possible. D.I. 349, Ex. 3 at 72, 73. He also contends that the '791 Patent teaches "away from cores with gradients over 30."

enables without undue experimentation. Indeed, Dr. Felker <u>does not even mention the term "undue experimentation,"</u> nor address any of the *Wands* factors, in his report.

## II. ACUSHNET FAILED TO ANALYZE WRITTEN DESCRIPTION PROPERLY

To comply with the written description requirement, the specification must allow persons of ordinary skill in the art to recognize that the inventor had possession of the claimed invention. *Vas-Cath, Inc. v. Mahurkar*, 935 F.2d 1555, 1563 (Fed. Cir. 1991). Thus, to determine whether the claim term "at least 22" meets the written description requirement, Acushnet should have determined: (1) what "at least 22" means to one of ordinary skill; and (2) whether the specification provides a "written description" of the construed range of "at least 22." Acushnet and Dr. Felker did <u>none of this</u>.

Instead, as mentioned above, Dr. Felker provides only a theoretical analysis of "at least 22" that does not consider its context in the '791 Patent. Further, Dr. Felker only argues that: (1) "the patent does not give any example gradients over 25, and states that gradients over 30 are not preferred;" and (2) the '791 Patent "only teaches the use of single-layer cores, a technology that can only obtain gradients of up to around 40." (D.I. 350, Ex. 3 at 73, 74). Whether or not Dr. Felker's analysis is accurate, Acushnet does not dispute that Dr. Felker did not analyze whether one of ordinary skill in the art would recognize that the inventor of the '791 Patent had possession of the claimed invention.

4.

III. ACUSHNET'S ATTORNEY ARGUMENTS REGARDING THE UPPER LIMIT OF "AT LEAST 22" ARE IRRELEVANT AND INCORRECT

Acushnet presents only attorney argument that the '791 Patent is invalid. These arguments cannot cure Dr. Felker's legally deficient analysis.

Acushnet's arguments are repeated, almost *verbatim*, from Acushnet's Motion for Invalidity of the '791 Patent.[4] (D.I. 380). Bridgestone's opposition to that motion (D.I. 419) addresses each of these arguments in detail, and they are addressed below in a somewhat shorter fashion.

In short, Acushnet attempts to portray core hardness gradients as some unknown and unpredictable art field -- <u>a position that is completely contrary to the opinions of its experts, and all the evidence of record</u>. It is undisputed that three specific embodiments, and acceptable parameter ranges to produce other embodiments, are disclosed in the '791 Patent. Because core hardness gradients are "predictable," these specific and general embodiments provide broad enablement. This broad enablement is fatal to Acushnet's non-enablement argument – so it argues that core hardness gradients are unpredictable in the face of all of the evidence of record.

A. Acushnet's Argument That Core Hardness Gradients Are "Unpredictable" Is Unsupported

Acushnet first argues – without any factual support – that core gradients are "unpredictable." (D.I. 409 at 7). However, no expert witness has opined that core gradients are "unpredictable." In fact, Acushnet's own experts – Drs. Felker and Koenig -- opine that core

---

[4] Acushnet repeatedly argues that Bridgestone did not address any of these arguments in its original Motion for No Invalidity. (D.I. 409 at 2). This makes no sense - Bridgestone could not have done so because these arguments are all new attorney arguments in Acushnet's Motion for Invalidity filed the same day. Further, Bridgestone could not have anticipated these arguments, because they are not Dr. Felker's.

gradients are well-known properties of rubber products and golf ball cores (D.I. 349, Ex. 3 or D.I. 419, Ex. 3, at 40; Ex. 4 at 63, 64), and that many prior U.S. Patents deal with core hardness gradients – including two other Bridgestone patents-in-suit.[5] (D.I. 349, Ex. 3, or D.I. 419, Ex. 3, at 41, 42).

Acushnet cites a portion of the testimony of Bridgestone expert John Calabria as purportedly supporting its assertion that core gradients are "unpredictable." (D.I. 409 at 7). Mr. Calabria's testimony, however, is directed to what the <u>inherent</u> disclosure of a prior art reference with respect to Bridgestone's '707 Patent would be, not to enablement.[6] Enablement and inherency are two entirely different legal concepts, which Acushnet conflates.[7] Nowhere does Mr. Calabria opine that one of ordinary skill in the art, at the time of the invention of the '791 Patent, would require a disclosure of specific materials, mixing processes, pressures, etc. in order to understand that a particular claimed hardness gradient range was <u>enabled</u>.

Further, Acushnet's argument is contrary to the position that it takes in its opposition (D.I. 412) to another one of Bridgestone's motions for summary judgment. In that opposition, Acushnet alleges that core gradients are "simple additions" to references, and that references such as "EP '043" disclose a recipe from which to make cores that would meet a core

---

[5] Acushnet does not challenge the enablement of the claims of these two patents.

[6] [REDACTED]

[7] To rely on the inherent disclosure of a feature in a prior art reference, Acushnet has to show that the feature <u>must</u> be found in the reference, not just probably or possibly. *See Continental Can Co. v. Monsanto Co.*, 948 F.2d 1264, 1268 (Fed. Cir. 1991); and *In re Robertson*, 169 F.3d 743, 745 (Fed. Cir. 1999).

6.

gradient limitation of Bridgestone's '707 Patent (8 to 20), while leaving many choices open to one of ordinary skill. (D.I. 412 at 9). Acushnet cannot have it both ways.

    B.  <u>Patent Specifications Are Not Manufacturing Specifications</u>

Acushnet also argues that "the disclosure of the '791 patent does not enable the manufacture of a gradually increasing core gradient at any hardness greater than 22; does not enable all cores with a core gradient of greater than 22; and does not teach one of ordinary skill in the art to make cores with any core gradients other than the fairly narrow range of 23-24." (D.I. 409 at 8). Dr. Felker offered none of these opinions.

Acushnet's arguments are contradictory because Acushnet argues both that the '791 Patent does not enable core gradients "at any hardness greater than 22" and that it only discloses core gradients in the "range of 23-24."

The Federal Circuit has explicitly held that each of Acushnet's arguments is irrelevant to an enablement analysis. Acushnet's argument that the '791 Patent must "enable the manufacture" of the claimed product is contrary to the Federal Circuit's rulings that the amount of guidance in the specification does not have to rise to the level of a manufacturing schematic or a perfected, commercially viable, embodiment, nor contain examples explicitly covering the full scope of the claim language. *See CFMT, Inc. v. YieldUp Int'l Corp.*, 349 F.3d 1333, 1338 (Fed. Cir. 2003), and *Union Oil Co. v. Atl. Richfield Co.*, 208 F.3d 989, 997 (Fed. Cir. 2000). Acushnet's argument that the '791 Patent does not enable "all cores with a core gradient of greater than 22" is contrary to the Federal Circuit's rulings that what is required is a reasonable enablement of the <u>claimed</u> range – as interpreted by one of ordinary skill. *See AK Steel*, 344 F.3d at 1244. Acushnet's unsupported assertions of what is or what is not "greater than 22" are irrelevant. Finally, Acushnet's argument that the '791 Patent only enables cores with gradients of 23-24 is contrary to the Federal Circuit's rulings that the disclosure of even a single

embodiment can enable a broad claim. *Spectra-Physics, Inc. v. Coherent, Inc.*, 827 F.2d 1524, 1533 (Fed. Cir. 1987). This is particularly so when, as in this case, the invention is in the "mechanical" art. *Id.*

### C. Core Gradients Were Known In The Art

Acushnet also argues that the '791 Patent does not discuss how to: (1) form a core gradient; (2) insure that the surface hardness is higher than the center; (3) insure that the core gradient is greater than 22 degrees; or (4) provide a gradually increasing gradient. (D.I. 409 at 8, 9). Dr. Felker offered none of these opinions.

There is no requirement that the '791 Patent do any of the things Acushnet says it should do to enable the claims. Acushnet's arguments again ignore basic patent law - patent specifications are written for those of ordinary skill in the art. *LizardTech, Inc. v. Earth Res. Mapping, Inc.*, 424 F.3d 1336, 1345 (Fed. Cir. 2005). As explained above, Acushnet's experts have acknowledged that core gradients were known in the art before the '791 Patent. (D.I. 350, Ex. 3 or D.I. 419, Ex. 3 at 40; Ex. 4 at 63, 64). In fact, Acushnet even admits in its cross-motion that "core gradients of more than 22 were known in the art before the '791 patent." (D.I. 381 at 10). Thus, there was no need to provide the kind of detail that Acushnet argues should have been included.

### D. The '791 Patent's Disclosure Is Sufficient To Enable The Claims In Question

Acushnet next argues that the specification "describes the process for making cores only in the broadest, most general terms." (D.I. 409 at 9). Specifically, Acushnet argues that the '791 Patent discloses: (1) only the use of 1,4 polybutadiene, but no "brand, lot or grade thereof;" (2) that "any number of peroxides can be used," but no brands or "grades that work and do not work;" (3) that the "mold temperature can be between 150 and 190 degrees and the mold

time can be between 12 and 20 minutes;" and (4) no "mold size, mold geometry, mold pressure, heat application technique, or mixing parameters." (D.I. 409 at 10, 11). Dr. Felker offered none of these opinions.

In fact, information regarding these different parameters, in the form of exemplary embodiments, is provided in cols. 2 and 3 of the '791 Patent. (D.I. 350, Ex. 1). Further, Acushnet ignores the specific examples provided by the '791 Patent in Table 3. (D.I. 350, Ex. 1, cols. 6-8). In three different examples, specific amounts of the various core ingredients are listed (in parts by weight, or "pbw"), along with specific grades of both types of peroxide (footnotes 1 and 2), sulfur (footnote 3), and antioxidant. *Id.* Additionally, specific molding times (15 minutes) and molding temperatures (175 ° C) are provided. *Id.*

Further, Acushnet's arguments are irrelevant because the level of specificity it contends is necessary <u>is not required</u> for enablement. What is required is that "one skilled in the art, after reading the specification, could practice the claimed invention without undue experimentation." *AK Steel*, 344 F.3d at 1244. But, the amount of guidance in the specification does not have to rise to the level of a manufacturing schematic or a perfected, commercially viable, embodiment, nor contain examples explicitly covering the full scope of the claim language. *See CFMT, Inc.* 349 F.3d at 1338 and *Union Oil*, 208 F.3d at 997.

Acushnet has not disputed that one of ordinary skill <u>could</u> make cores that have gradients that meet the claimed range of "at least 22" using the disclosure of the '791 Patent's specification. And Acushnet has not argued that it would be <u>difficult</u> for one of ordinary skill in

9.

the art to make such cores (or even mentioned what would or would not constitute "undue experimentation."[8]

### E. The '791 Patent Examples Enable Broad Claims

Acushnet next argue that "while the patent does contain a few 'examples' of cores made under the '791 patent, the examples do more to obscure than to enable the core gradient issue." (D.I. 409 at 10). Acushnet attempts to support this conclusion by arguing: (1) that the '791 Patent "does not state whether these examples have a 'gradually increasing' hardness profile;" (2) that the examples do not list "molding parameters which are critical to the invention;" and (3) the '791 Patent doesn't "explain how or why these examples work, or why other examples fail."

Acushnet's argument is irrelevant because it has not disputed that examples 1-3 of the '791 Patent do, in fact, fall within the scope of each of the asserted claims 11, 13, 16 and 26. Where, as here, "an invention pertains to an art where the results are predictable, *e.g.*, in the mechanical arts, then disclosure of even a single embodiment can enable a broad claim." *Spectra-Physics*, 827 F.2d at 1533. Acushnet offers nothing more than attorney argument that this art is unpredictable. In fact, as discussed above, even Acushnet's experts concede that the formation of core gradients is a well-known process.

Acushnet's arguments are also incorrect. Acushnet's first argument, that the '791 Patent "does not state whether these examples have a 'gradually increasing' hardness profile," is incorrect, and inconsistent with Acushnet's concession that "the inventors made a few specific

---

[8] Acushnet has argued that the disclosure is merely an "invitation to experiment." This is also irrelevant. Patents, by their nature, are invitations for further experimentation. What is required for enablement is that the experimentation not be "undue." Acushnet provides no analysis as to what is or is not "undue experimentation."

examples with the requisite gradient." (D.I. 409 at 13). Indeed, Acushnet also argues that a "gradually increasing" profile is a necessary part of the '791 Patent's invention.

Acushnet's second argument, that the examples do not list "molding parameters which are critical to the invention," is incorrect because these parameters are simply not necessary to enable a claim, as discussed in detail above.

Acushnet's third argument, that the '791 Patent doesn't "explain how or why these examples work, or why other examples fail," is incorrect because the '791 Patent specifically indicates why the comparative examples fail. The '791 Patent indicates that cores with hardness differences that are too small "allow[] the ball to take on too much spin when hit with a driver, so that it does not travel well and has a short run after it hits the ground." (D.I. 350, Ex. 1, col. 3:38-42). It also indicates that "a golf ball lacking the adequate intermediate layer prescribed by the present invention fails to attain[] the objects of the invention since it cannot adequately suppress spin when hit with a driver." *Id.* at col. 4:14-18. Examples 1-3 of Table 3 of the '791 Patent have cores and intermediate layers within the scope of the claimed invention. Comparative examples 1 and 2 do not have the required core hardness parameters. *Id.* at Table 3. Comparative examples 3-5 do not have the required intermediate layer parameters. *Id.* at Table 3. As shown in Table 4, each of the comparative examples therefore has spin characteristics that are not "good." *Id.* at Table 4. It is the goal of the invention to provide a ball with "improved distance" that does not "diminish the controllability and feel" of the ball.

F.  The '791 Patent Is Not Limited To Single Cores

Acushnet next argues that the '791 Patent is limited to a single core. (D.I. 409 at 14, 15). This is contradicted by the '791 Patent's statement that: (1) "[t]he present invention relates to a golf ball having a multilayer construction of at least three layers which includes a

core, an intermediate layer and a cover" (D.I. 350, Ex. 1, col. 1:7-9); and (2) "[i]t is therefore an object of the present invention to provide a golf ball having a multilayer construction of three or more layers ..." (*Id.* at col. 1:31-34). <u>Nothing</u> in the '791 Patent says that it is limited to a single layer core.

Acushnet attempts to get around the '791 Patent's clear disclosure by arguing that its separate indications of "a rubbery elastic core" and "one or more intermediate layers" or "at least one intermediate layer" somehow shows that Bridgestone intended only a one layer core to be covered by the '791 Patent. (D.I. 409 at 15). This argument is legally wrong - it is basic patent law that "a" means "one or more." *KCJ Corp. v. Kinetic Concepts, Inc.*, 223 F.3d 1351, 1356 (Fed. Cir. 2000).

### G. The '791 Patent Does Not Teach Away From Gradients Greater Than 30

Acushnet next argues that the '791 Patent's specification teaches "away from cores with gradients over 30." (D.I. 409 at 16). It concedes that the '791 Patent "recommends" the use of a core gradient of 30 or less, but still argues that this somehow binds the invention to such gradients.

The '791 Patent does not indicate that its "optimized" hardness profile must be less than 30. (D.I. 350 at 16). The '791 Patent only ties performance parameters to a minimum hardness – "at least 22" – and says that too small a difference adversely affects distance. (D.I. 350, Ex. 1, col. 3:32-45). The portion of the '791 Patent cited by Acushnet (col. 3:51-57) discusses core center and surface hardness individually – not a core hardness difference. The '791 Patent does not ascribe any particular performance effect to hardness profiles greater than 30 – and the inventors "recommendation" could be based on other things, such as quality or manufacturability.

Acushnet also ignores the examples of the '791 Patent, which indicate that the core has a typical center hardness of at least 50 JIS-C, and preferably has a core surface hardness of 90 or less. Ex. 3, col. 3:48-51. These examples are inclusive of cores having a hardness difference of 40.

Acushnet also contradicts its own expert, Dr. Felker, who states that the '791 Patent teaches a method for creating core gradients of "40 or 50."[9]

### H. Acushnet's Further Written Description Arguments Are Unsupportive

Acushnet lastly attempts to save its written description argument by citing Dr. Felker's arguments in his expert report, and by arguing that a Bridgestone witness, Mr. Shimosaka, indicated that Bridgestone had not produced balls with core gradients over 30. (D.I. 409 at 18).

Dr. Felker's cursory written description arguments are deficient for the reasons discussed above – *i.e.*, that he has not provided an analysis of the scope of "at least 22" and whether one of ordinary skill in the art would believe the inventor to be in possession of the claimed invention.

Mr. Shimosaka's testimony is irrelevant. The core gradients of golf balls that Bridgestone has marketed and sold is completely irrelevant to the '791 Patent. What is relevant is what the '791 Patent discloses to one or ordinary skill in the art.

---

[9] Acushnet argues that Bridgestone "mischaracterizes" Dr. Felker's testimony (D.I. 409 at 16), but it is difficult to see how. Dr. Felker explicitly stated that "[t]he specification does not describe the use of any technology that would yield gradients in excess of 40 or 50 degrees." This is what Bridgestone quoted.

13.

## CONCLUSION

Bridgestone requests that claims 11, 13, 16 and 26 of the '791 Patent be held to comply with the enablement and written description requirements of 35 U.S.C. § 112.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Leslie A. Polizoti (#4299)*
Jack B. Blumenfeld (#1014)
Leslie A. Polizoti (#4299)
1201 N. Market St.
P.O. Box 1347
Wilmington, DE 19801
(302) 658-9200
*Attorneys for Bridgestone Sports Co., Ltd.*
*and Bridgestone Golf, Inc.*

OF COUNSEL:

Robert M. Masters
Scott M. Flicker
PAUL, HASTINGS, JANOFSKY & WALKER LLP
875 15th St., N.W.
Washington, DC 20005
(202) 551-1700

May 11, 2007

CERTIFICATE OF SERVICE

I certify that on May 11, 2007 I electronically filed the foregoing with the Clerk of the Court using CM/ECF, which will send notification of such filing(s) to Richard L. Horwitz and David E. Moore.

I further certify that I caused copies to be served upon the following on May 11, 2007 in the manner indicated:

**BY E-MAIL & HAND**

Richard L. Horwitz, Esquire
POTTER ANDERSON & CORROON LLP
1313 N. Market Street
Wilmington, DE 19801

**BY E-MAIL & FEDERAL EXPRESS**

Joseph P. Lavelle, Esquire
HOWREY LLP
1299 Pennsylvania Avenue, NW
Washington, DC 20004


/s/ Leslie A. Polizoti
Leslie A. Polizoti (#4299)
MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Wilmington, DE 19801
(302) 658-9200
lpolizoti@mnat.com

CERTIFICATE OF SERVICE

I certify that on May 16, 2007 I electronically filed the foregoing with the Clerk of the Court using CM/ECF, which will send notification of such filing(s) to Richard L. Horwitz and David E. Moore.

I further certify that I caused copies to be served upon the following on May 161, 2007 in the manner indicated:

**BY E-MAIL & HAND**

Richard L. Horwitz, Esquire
POTTER ANDERSON & CORROON LLP
1313 N. Market Street
Wilmington, DE 19801

**BY E-MAIL & FEDERAL EXPRESS**

Joseph P. Lavelle, Esquire
HOWREY LLP
1299 Pennsylvania Avenue, NW
Washington, DC 20004

/s/ Leslie A. Polizoti
Leslie A. Polizoti (#4299)
MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Wilmington, DE 19801
(302) 658-9200
lpolizoti@mnat.com