IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

BRIDGESTONE SPORTS CO., LTD.          )
and BRIDGESTONE GOLF, INC.,           )
                                      )
            Plaintiffs,               )       C.A. No. 05-132 (JJF)
                                      )
      v.                              )       **REDACTED – PUBLIC VERSION**
                                      )
ACUSHNET COMPANY,                     )
                                      )
            Defendant.                )


**BRIDGESTONE'S REPLY BRIEF IN SUPPORT OF
ITS MOTION FOR SUMMARY JUDGMENT THAT THE
"WILSON ULTRA TOUR BALATA 90" GOLF BALLS, THE "1993 WILSON ULTRA
COMPETITION 90" GOLF BALLS AND THE "1996 PRECEPT EV EXTRA SPIN"
GOLF BALLS ARE NOT PRIOR ART**

MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Jack B. Blumenfeld (#1014)
Leslie A. Polizoti (#4299)
1201 N. Market St.
P.O. Box 1347
Wilmington, DE 19801
(302) 658-9200

*Attorneys for Bridgestone Sports Co., Ltd.
and Bridgestone Golf, Inc.*


OF COUNSEL:

Robert M. Masters
Scott M. Flicker
PAUL, HASTINGS, JANOFSKY & WALKER LLP
875 15th St., N.W.
Washington, DC 20005
(202) 551-1700

Originally Filed:  May 11, 2007
Redacted Version Filed:  May 16, 2007

i.

## TABLE OF CONTENTS

TABLE OF AUTHORITIES                                                                          ii

ARGUMENT                                                                                      1

I.  THE WILSON ULTRA TOUR BALATA 90 GOLF BALLS ARE NOT
    PRIOR ART TO THE '852 PATENT                                                              1

    A.  Acushnet Cannot Rely On The 1993 Competitive Log Because It
        Withheld It During Fact Discovery                                                     1

    B.  The Log 93007 Balls Are Not The Balls Acushnet Tested Because
        The Data On Which Dr. Felker Relies Does Not Match The Log                            3

    C.  The Three Log 93007 Balls Are Not The Twelve Balls Acushnet
        Tested                                                                                4

    D.  The Properties Of The Wilson Ultra Tour Balata 90 Golf Balls As
        Tested In 2006 Are Not Representative Of The Properties Of
        Those Golf Balls In 1993                                                              5

II. THE WILSON ULTRA COMPETITION 90 GOLF BALLS ARE NOT
    PRIOR ART TO THE '834 PATENT                                                              6

    A.  Dr. Felker's Test Results Bear No Relationship To The Results In
        Log 93049                                                                             6

    B.  Acushnet Cannot Rely On The 1993 Competitive Log Because It
        Was Withheld During Discovery                                                         6

III. THE PRECEPT EV EXTRA SPIN GOLF BALLS ARE NOT PRIOR
     ART TO THE '834 PATENT                                                                   7

CONCLUSION                                                                                    9

ii.

<u>TABLE OF AUTHORITIES</u>

<u>Page</u>

<u>Statutes</u>

35 U.S.C. §102(b) ............................................................................................................ 1, 6-7

1.

Acushnet's opposition fails to demonstrate why summary judgment is not proper. Acushnet ignores contemporaneously-created documents it produced in this case (while focusing on documents it withheld). Acushnet ignores the testimony of its Rule 30(b)(6) witness, Mr. Jeffrey Dalton, and of its invalidity expert, Dr. David Felker. Accordingly, Bridgestone requests that the Court grant its motion for summary judgment that the (1) Wilson Ultra Tour Balata 90 golf balls, (2) the 1993 Wilson Ultra Competition 90 golf balls, and (3) the 1996 Precept EV Extra Spin golf balls are not prior art.

<u>ARGUMENT</u>

I.    THE WILSON ULTRA TOUR BALATA 90 GOLF BALLS ARE NOT
      <u>PRIOR ART TO THE '852 PATENT</u>

Acushnet has failed to cite any evidence sufficient to demonstrate that the exact golf balls relied upon by Acushnet and Dr. Felker in his invalidity report, and the testing of those balls, constitute prior art under 35 U.S.C. §102(b). Acushnet has in fact failed to show that the Wilson Ultra Tour Balata 90 Golf balls tested and relied upon were actually in public use or on sale in this country before July 1993.

A.    Acushnet Cannot Rely On The 1993 Competitive Log Because It
      <u>Withheld It During Fact Discovery</u>

Acushnet argues that its 1993 competitive log "indicates the precise dates the balls were obtained and removes any ambiguity that Bridgestone's expert speculated to exist with respect to when Acushnet obtained the relevant Ultra Tour Balata 90 golf balls" (D.I. 413 at 5). It says that "around March 7, 2007, an Acushnet employee familiar with the prior use of handwritten logbooks searched for and found the original 1993 paper ledger relating to the

2.

receipt of these balls" (*id*.).  This competitive log is the subject of Bridgestone's pending motion

for sanctions, because Acushnet did not produce it until the middle of expert discovery.[1]

Acushnet withheld the 1993 competitive log until it decided it wanted to use it to

cross examine John Calabria, one of Bridgestone's experts, on March 15, 2007 (Ex. A, Calabria

Dep. at 155:12-156:6):



That was what Acushnet said on March 15, 2007.  On April 3, 2007, in response

to Bridgestone's motion for sanctions, Acushnet said that 

---
[1]

3.

Bridgestone raised its concern about Acushnet's failure to produce this type of document as far back as September 30, 2005, when it wrote to Acushnet raising this specific deficiency (Ex. B, Masters to Moore, Sept. 30, 2005):

> 17.    Acushnet has not produced documents relating to the acquisition, custody or storage of any ball that Acushnet has analyzed and maintains anticipates or render obvious one or more claims of any patent-in-suit, as requested in at least Document Request 133.

This letter could not have been more to the point – the 1993 competitive log is exactly the type of document identified in Bridgestone's letter sent more than a year and a half ago.

B.    **The Log 93007 Balls Are Not The Balls Acushnet Tested Because The Data On Which Dr. Felker Relies Does Not Match That Log**

In addition, the other document on which Acushnet relies – log 93007 – cannot support a prior art date for the Ultra Tour Balata 90 golf balls, because the balls Dr. Felker relied on are different. 

The documents show that the log 93007 balls and the balls on which Dr. Felker relied are different.

4.

C.    The Three Log 93007 Balls Are Not The Twelve Balls Acushnet
       Tested



---

<div style="font-size:smaller">

2    Dr. Felker initially asserted that these golf balls are prior art because "when the ball first
came out I thought it was a pretty good golf ball and so I know I used that ball" (Ex. D at
195:12-14 (Felker Dep.)); he quickly recanted this testimony and withdrew his reliance
on his "personal knowledge" upon questioning (*id.* at 197:21-22).

</div>

5.



D.    The Properties Of The Wilson Ultra Tour Balata 90 Golf Balls As Tested In 2006 Are Not Representative Of The Properties Of Those Golf Balls In 1993

Even if Acushnet could somehow prove by clear and convincing evidence that it acquired, before July 1993, the Wilson Ultra Competition 90 golf balls that Mr. Dalton tested, Acushnet cannot show that the golf balls that Dr. Felker tested in 2006 had the same or even similar properties as the 1993 balls.

Mr. Dalton testified that ambient moisture penetrates a golf ball's balata cover over time, resulting in changes to the core properties (Ex. E, Dalton Tr. (Aug. 22, 2006) at 109:6-110:1). Thus, balls with balata covers – like the Ultra Tour Balata 90 balls – that have been stored for more than 13 years (at least according to Acushnet) would certainly have degraded. The properties of these golf balls, as tested in 2006, are not representative of the properties of the

6.

golf balls at any time when they were prior art.

II.   **THE WILSON ULTRA COMPETITION 90 GOLF BALLS ARE NOT PRIOR ART TO THE '834 PATENT**

Acushnet has failed to cite any evidence sufficient to demonstrate that the exact golf balls relied upon by Acushnet and Dr. Felker in his invalidity report, and the testing of those balls, constitute prior art under 35 U.S.C. §102(b). Acushnet has in fact failed to show that the Wilson Ultra Competition 90 golf balls tested and relied upon were the same balls in public use or on sale in this country prior to March 1996.

A.   **Dr. Felker's Test Results Bear No Relationship To The Results In Log 93049**

Acushnet says that "the Wilson Ultra Competition 90 golf balls relied on by Dr. Felker originated from log number 93049" (D.I. 413 at 7). That cannot be correct. The data for the Wilson Ultra Competition 90 golf balls in Dr. Felker's report and in log 93049 bear no relation to one another. ██████████████████████████████████

████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████

████████████████ The only logical conclusion to account for this discrepancy is that Dr. Felker's Ultra Competition 90 golf balls are different golf balls than the balls tested in Log 93049. Log 93049 cannot establish a prior art date for Dr. Felker's golf balls.

B.   **Acushnet Cannot Rely On The 1993 Competitive Log Because It Was Withheld During Discovery**

For the reasons set forth in Section I.A., above, the 1993 competitive log should be excluded and not be considered by the Court.

III.    THE PRECEPT EV EXTRA SPIN GOLF BALLS ARE NOT PRIOR ART TO
        THE '834 PATENT

    Acushnet has likewise failed to cite any evidence sufficient to demonstrate that the exact Precept EV Extra Spin golf balls relied upon by Acushnet and Dr. Felker in his invalidity report, and the testing of those balls, constitute prior art under 35 U.S.C. §102(b). Acushnet has no credible evidence to show that the Precept EV Extra Spin 392 AM golf balls were the same balls in public use or on sale in this country prior to March 1996.



8.

Acushnet also argues that it "has further produced documents conclusively show[ing] that those balls were obtained on January 2, 1996" (D.I. 413 at 9). Acushnet, however, does not provide any citation to support its statement.



9.

<u>CONCLUSION</u>

Bridgestone requests that the Court grant its motion for summary judgment that the Wilson Ultra Tour Balata 90 golf balls, the 1993 Wilson Ultra Competition 90 golf balls and the 1996 Precept EV Extra Spin golf balls are not prior art.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Leslie A. Polizoti*

Jack B. Blumenfeld (#1014)
Leslie A. Polizoti (#4299)
1201 N. Market St.
P.O. Box 1347
Wilmington, DE 19801
(302) 658-9200
*Attorneys for Bridgestone Sports Co., Ltd.*
*and Bridgestone Golf, Inc.*

OF COUNSEL:

Robert M. Masters
Scott M. Flicker
PAUL, HASTINGS, JANOFSKY & WALKER LLP
875 15th St., N.W.
Washington, DC 20005
(202) 551-1700

May 11, 2007
825306

## CERTIFICATE OF SERVICE

I certify that on May 11, 2007 I electronically filed the foregoing with the Clerk of the Court using CM/ECF, which will send notification of such filing(s) to Richard L. Horwitz and David E. Moore.

I further certify that I caused copies to be served upon the following on May 11, 2007 in the manner indicated:

### BY E-MAIL & HAND

Richard L. Horwitz, Esquire
POTTER ANDERSON & CORROON LLP
1313 N. Market Street
Wilmington, DE 19801

### BY E-MAIL & FEDERAL EXPRESS

Joseph P. Lavelle, Esquire
HOWREY LLP
1299 Pennsylvania Avenue, NW
Washington, DC 20004


*/s/ Leslie A. Polizoti*
Leslie A. Polizoti (#4299)
MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Wilmington, DE 19801
(302) 658-9200
lpolizoti@mnat.com

EXHIBIT A

CONFIDENTIAL EXHIBIT

# EXHIBIT B



2100 Pennsylvania Avenue, NW
Washington, DC 20037-3213

T 202.293.7060
F 202.293.7860

www.sughrue.com

September 30, 2005

*Via Facsimile*

Matthew J. Moore
Howrey LLP
1299 Pennsylvania Avenue, NW
Washington, DC 20004

    Re:    *Bridgestone Sports Co., Ltd. v. Acushnet Co.*, C.A. No. 05-132 (JJF) (D.Del.)

Dear Matt:

    Based on our initial review of Acushnet's production, we have noticed the following deficiencies, which we would like to discuss with you prior to the October 5, 2005 hearing:

    1.    It does not appear that Acushnet produced any information regarding the export of golf balls manufactured in the United States. Such documents are responsive to at least Document Requests 87, 93 and 95.

    2.    It also does not appear that Acushnet produced manufacturing reports sufficient to identify the number and type of golf balls manufactured at its U.S. manufacturing facilities. Such documents are responsive to at least Document Requests 13 and 94.

    3.    Acushnet appears to have produced very limited financial information. The documents produced thus far appear to be bi-annual reports that include the number of units of accused balls produced, the dollar value of these sales, the costs and the margin without providing any further breakdown or detail to which Bridgestone is entitled. Such documents are responsive to at least Document Requests 87-89, 109, 110 and 112.

    4.    It does not appear that Acushnet produced documents responsive to at least Document Requests 16-17 and 91 requesting documents relating to USGA certification and compliance.

    5.    It does not appear that Acushnet produced documents responsive to at least Document Requests 64 and 65, relating to Acushnet's patent marking policies and procedures.

    6.    It appears that Acushnet produced only a select few documents relating to PGA/LPGA player testing, endorsement contracts, licenses, etc. We believe there is likely to be many more responsive documents. See at least Document Request 92.

    7.    Acushnet's production does not appear to be complete at least with respect to documents relating to the development of the Pinnacle Exception and Titleist DT So/Lo, as requested by at least Document Requests 8-12. For example, the small volume of documents for



**Sughrue**
SUGHRUE MION, PLLC

Matthew J. Moore
Howrey LLP
September 30, 2005
Page 2

these golf balls relative to those produced for the ProV1 and ProV1x golf balls leads us to believe that responsive documents are being withheld.

8.      It does not appear that Acushnet produced documents responsive to at least Document Requests 24-25 and 78-79 requesting organizational, corporate management charts, and employee rosters, and the roles and responsibilities of the inventors of the Acushnet patents-in-suit.

9.      It also does not appear that Acushnet produced documents responsive to at least Document Request 84, which requests licensing of the patents-in-suit.

10.     Acushnet does not appear to have produced documents responsive to at least Document Requests 19-22, 39-43, 56 and 60 requesting documents relating to any testing or analysis of golf balls Acushnet asserts as prior art against one or more of the Bridgestone patents-in-suit.

11.     Acushnet does not appear to have produced documents from the personal files from all of the individuals involved in the development of the Acushnet products and the inventors of the Acushnet patents-in-suit as requested by at least Document Request 102

12.     It does not appear that Acushnet produced documents responsive to at least Document Requests 100 and 135-143, requesting documents relating to BR-11, BR-18 and BR-19.

13.     Acushnet has not produced any sales and marketing literature, displays, advertisements, etc. as requested by at least Document Request 85.

14.     Acushnet has not produced all file histories of the parent applications and pending applications that relate to the Acushnet patents-in-suit, as defined in at least Document Requests 51-52. In particular, we did not find file histories for at least U.S. Application Nos.: 09/989,191; 09/404,164; 08/922,633; 09/721,740; 09/461,736; 09/311,591; 09/274,015; 60/113,949; 05/236,318; 05/363,353; 05/716,100; 05/816,882; 05/920,396; and 06/091,087.

15.     Acushnet does not appear to have produced documents responsive to at least Document Request 53, requesting the foreign counterpart applications and prosecution histories corresponding to the Acushnet patents-in-suit.

16.     Acushnet has not produced dimple data, including dimple geometry, and aerodynamic characteristics for the HP Eclipse and Tour Distance golf balls, as requested in at least Document Request 132.



**Sughrue**

SUGHRUE MION; PLLC

Matthew J. Moore
Howrey LLP
September 30, 2005
Page 3

17.     Acushnet has not produced documents relating to the acquisition, custody or storage of any ball that Acushnet has analyzed and maintains anticipates or render obvious one or more claims any patent-in-suit, as requested in at least Document Request 133.

18.     Acushnet has not produced samples as requested in at least Document Requests 114 and 115. There are other document requests relating to samples that we discussed in our meet and confer of September 28, which we do not mention herein.

In addition, we have noticed the following procedural problems in Acushnet's production. The following (as well as the foregoing) is not intended to be an exhaustive list, but merely an exemplary showing of problems encountered to date. Moreover, the specific examples identified should not be assumed to represent each occurrence of the problem, but merely to illustrate one example of the problem.

1.     We found that there were no redactions in the first twenty-two (22) boxes produced, whereas nearly every document in the last four (4) boxes produced contained redactions. It seems that these redacted documents were pulled from where they originally appeared and hence the documents produced to us are not in an order as kept in the ordinary course of business. In other words, you removed certain documents (those found in the last four (4) boxes) from the earlier production so they could be redacted, in which case we have no way of knowing where those redacted documents were removed from the first twenty-two (22) boxes. Please provide us with the necessary information to let us determine the set of documents from which these redacted documents were pulled from.

2.     You have indicated that blue sheets in Acushnet's production represent document breaks which accurately reflect breaks in the documents as kept by Acushnet. This representation, however, does not appear accurate. For example, there is a blue break sheet between AB-43026, page 7 of JP 11-319148, and AB-43027, page 8 of JP 11-319148, another blue break sheet between AB-43201, page 13 of an Amendment, and AB-43202, page 14 of the same Amendment, and yet another blue break sheet between AB-44982, page 7 of a bound inventor notebook, and AB-44983, page 8 of the same bound inventor notebook. In addition, there are no break sheets between the discrete documents at AB-38561-62 and no break sheets between the several discrete e-mails at AB-38317-38340. These are just a few examples of the placement of blue sheets that gives us doubt about your representation.

3.     Certain documents were missing from the production, including at least documents AB-6094-6095, 22411, 33547-34044. Please immediately produce these missing documents or explain why they are missing.



SUGHRUE MION, PLLC

Matthew J. Moore
Howrey LLP
September 30, 2005
Page 4

   4.    Numerous e-mail documents were produced without the accompanying attachments. (*See, e.g.*, AB975-1046 and 2233). Please immediately produce the attachments or explain why they are missing.

   5.    Certain Excel files were printed so as to be unreadable. (*See, e.g.*, AB-29537-AB 30726.) Many of these documents appear to have been printed specifically for this production as they indicate a date in the footer of "8/25/2005." Please provide the electronic version of these documents immediately.

   6.    Many documents have been inappropriately marked as highly confidential (e.g., an entire box of patents and BSP's own press releases). Box 11 (AB-18000 to AB- 20204) contains only patent literature, yet each page in this box is labeled as "highly confidential." Please confirm that you will withdraw this improper assertion of confidentiality.

   7.    There are several documents that appear to have been inserted into the production by your vendor or during your review process, including AB-3124 ("LOOSE DOCS HERE"), AB-11777 ("Color Document Here"), and AB-11777 ("Document Break"). Please identify whether these documents are part of Acushnet's production.

   8.    Acushnet produced four (4) video tapes (each with a 2-4 hour video capacity). We viewed these video tapes, and two of the video tapes (AB 46299 and AB46300) appear to be completely blank. One of the video tapes (AB46301) has a short (approximately one minute long) video clip and is otherwise blank, and the other video tape (AB46302 - labeled as confidential) has a short (a few minutes long) video clip and is otherwise blank. Please check your original video tapes and let us know whether the video tapes you produced are complete, particularly since the first two video tapes mentioned above are completely blank.



**Sughrue**
SUGHRUE MION, PLLC

Matthew J. Moore
Howrey LLP
September 30, 2005
Page 5


As we indicated above, the items listed above are not intended to be an exhaustive list, but rather just a listing of issues we have identified thus far in our review of Acushnet's production. We would like to continue the meet and confer process to try to resolve these issues. Please let us know of your availability prior to next Wednesday's hearing.


Very truly yours,

Robert M. Masters
Steven M. Gruskin

# EXHIBIT C

CONFIDENTIAL EXHIBIT

EXHIBIT D

CONFIDENTIAL EXHIBIT

# EXHIBIT E

CONFIDENTIAL EXHIBIT

# EXHIBIT F

CONFIDENTIAL EXHIBIT

EXHIBIT G

CONFIDENTIAL EXHIBIT

EXHIBIT H

CONFIDENTIAL EXHIBIT

EXHIBIT I

# HOWREY LLP

1299 Pennsylvania Avenue, NW
Washington, DC 20004-2402
T 202.783.0800
F 202.383.6610
www.howrey.com

Direct Dial 202.383.6904
File 00634.0002

April 26, 2007

BY COURIER

Brandon M. White, Esq.
Paul, Hastings, Janofsky & Walker LLP
875 15th Street, N.W.
Washington, D.C. 20005

  **Re:** *Bridgestone Sports Co. v. Acushnet Co.,*
     **Civil Action No. 05-132 (JJF) (D. Del.)**

Dear Brandon:

  Please find enclosed a document bearing the Bates numbers AB 118749 through AB 118784. This document is a Bates-numbered copy of Exhibit 6 to the March 15, 2007 deposition of John Calabria.

       Regards,

       John E. Dubiansky[1]

---

[1] Admitted only in New York. District of Columbia application pending. Practicing under the supervision of firm principals.

AMSTERDAM  BRUSSELS  CHICAGO  HOUSTON  IRVINE  LONDON
LOS ANGELES  MENLO PARK  NORTHERN VIRGINIA  PARIS  SAN FRANCISCO  WASHINGTON, DC
DM_US:20403926_1

1993 Competitive Log

*1? Column*

AB 118749

HIGHLY CONFIDENTIAL
SUBJECT TO PROTECTIVE
ORDER

<u>CERTIFICATE OF SERVICE</u>

I certify that on May 16, 2007 I electronically filed the foregoing with the Clerk of the Court using CM/ECF, which will send notification of such filing(s) to Richard L. Horwitz and David E. Moore.

I further certify that I caused copies to be served upon the following on May 161, 2007 in the manner indicated:

**BY E-MAIL & HAND**

Richard L. Horwitz, Esquire
POTTER ANDERSON & CORROON LLP
1313 N. Market Street
Wilmington, DE 19801

**BY E-MAIL & FEDERAL EXPRESS**

Joseph P. Lavelle, Esquire
HOWREY LLP
1299 Pennsylvania Avenue, NW
Washington, DC 20004

*/s/ Leslie A. Polizoti*
Leslie A. Polizoti (#4299)
MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Wilmington, DE 19801
(302) 658-9200
lpolizoti@mnat.com