IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| BRIDGESTONE SPORTS CO., LTD. and BRIDGESTONE GOLF, INC., *Plaintiffs*, <br><br> v. <br><br> ACUSHNET COMPANY, *Defendant*. | C.A. No. 05-132 (JJF) <br><br> **REDACTED - PUBLIC VERSION** |

**BRIDGESTONE'S REPLY BRIEF IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT OF NO INVALIDITY OF U.S. PATENT NO. 5,782,707**

MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Jack B. Blumenfeld (#1014)
Leslie A. Polizoti (#4299)
1201 N. Market St.
P.O. Box 1347
Wilmington, DE 19801
(302) 658-9200

*Attorneys for Bridgestone Sports Co., Ltd. and Bridgestone Golf, Inc.*

OF COUNSEL:

Robert M. Masters
Scott M. Flicker
PAUL, HASTINGS, JANOFSKY & WALKER LLP
875 15th St., N.W.
Washington, DC 20005
(202) 551-1700

Originally Filed: May 11, 2007
Redacted Version Filed: May 16, 2007

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ..................................................................................................... ii

INTRODUCTION ...................................................................................................................... 1

ARGUMENT ............................................................................................................................... 3

    I.     INHERENCY IS PART OF AN OBVIOUSNESS ANALYSIS ......................... 3

    II.    DR. FELKER RELIES ON INHERENCY FOR CORE
          CENTER HARDNESS OF EP '043 ...................................................................... 4

    III.   THE "OBVIOUSNESS" ANALYSIS DR. FELKER DID WAS
          DIRECTED TO DIMPLE COVERAGE, NOT CORE HARDNESS ................. 7

    IV.   ACUSHNET'S ATTORNEY ARGUMENTS ARE IRRELEVANT ................. 8

    V.    ACUSHNET'S CONTENTIONS REGARDING OBJECTIVE
          FACTORS OF NON-OBVIOUSNESS ARE INCORRECT .............................. 9

CONCLUSION .......................................................................................................................... 10

# TABLE OF AUTHORITIES

**CASES**

*Continental Can Co. v. Monsanto Co.*,
   948 F.2d 1264 (Fed. Cir. 1991)............................................................................................3

*In re Adams*,
   53 C.C.P.A. 996 (C.C.P.A. 1966)........................................................................................3

*In re Dembiczak*,
   175 F.3d 994 (Fed. Cir. 1999)..............................................................................................5

*In re Napier*,
   55 F.3d 610 (Fed. Cir. 1995)................................................................................................3

*In re Rinehart*,
   531 F.2d 1048 (C.C.P.A. 1976) ...........................................................................................3

*In re Robertson*,
   169 F.3d 743 (Fed. Cir. 1999).........................................................................................4, 6

*In re Spormann*,
   53 C.C.P.A. 1375 (C.C.P.A. 1966)......................................................................................3

*In re Zurko*,
   258 F.3d 1379 (Fed. Cir. 2001)............................................................................................3

*KSR International Co. v. Teleflex Inc.*,
   C.A. No. 04-1350, slip op. (U.S. Apr. 30, 2007) .................................................................8

*Trintec Indus., Inc. v. Top-U.S.A. Corp.*,
   295 F.3d 1292 (Fed. Cir. 2002)........................................................................................3, 6

INTRODUCTION

Acushnet concedes that EP '043 fails to expressly disclose a core hardness difference of between 8 and 20 degrees. Acushnet also concedes that cores made according to EP '043 do not necessarily have a core hardness difference between 8 and 20 – an example being the cores made by Acushnet in the middle of expert discovery (which it "did not retain" because they were unfavorable). Thus, Acushnet does not dispute the two underlying material facts that form the basis for Bridgestone's Motion.

Instead, Acushnet opposes Bridgestone's Motion based on: (1) a legally incorrect argument that inherency is only part of an anticipation analysis, not an obviousness analysis;[1] (2) a factually incorrect argument that Dr. Felker's invalidity opinion does not rely on the inherent disclosure of EP '043's core properties; and (3) attorney argument that the '707 patent is obvious.

Acushnet's argument that inherency is not part of an obviousness analysis is incorrect. One of ordinary skill in the art can rely not only on express disclosures of references when conducting an obviousness analysis, but also on the inherent disclosures of the references. This is exactly what Dr. Felker did with respect to the sole prior art reference – EP '043 – when he said that reference discloses the core as claimed in the '707 patent.

Acushnet's argument that Dr. Felker actually opined that "[t]he EP 043 testing, taken in its entirety, shows that one of ordinary skill in the art can use the teachings of the EP 043 to create the core hardness gradient claimed in the '707 patent without undue experimentation" (D.I. 412 at 2) is factually incorrect. In his January 16, 2007 expert report, Dr. Felker stated that EP '043 "discloses **the claimed** intermediate layer and **core**," that, "[a]lthough

---

[1] If the Court finds that inherency is properly part of an obviousness analysis, as a matter of law, there are no genuine issues of material fact in dispute and no other reasons for the Court to deny Bridgestone's Motion.

1

the inventors did not disclose the core center hardness ..., **one of ordinary skill can easily determine that value**," and that engineers followed the directions in EP '043 to "measure **the properties of the core.**" Dr. Felker thus contends that EP '043's core must have a particular core center hardness, and that one can determine that hardness by recreating that core according to the instructions in EP '043. This is an inherency position, not an obviousness position.

Acushnet is now trying to retreat from this inherency position. Since Acushnet served Dr. Felker's invalidity report, Acushnet employees prepared other example cores according to EP '043, and found that they fell outside of the asserted claims of the '707 patent – which destroys any inherency argument. (These are the cores that Acushnet "did not retain."). Therefore, Acushnet now seeks a "do over" to create an entirely new position of obviousness – this is one reason why Acushnet has filed its emergency motion with the Court. (D.I. 427).

Acushnet's other arguments that the '707 Patent is obvious are just attorney argument. They were not made by Dr. Felker in his invalidity report, and are therefore irrelevant. Further, Acushnet bases its arguments on several references that Dr. Felker did not compare to the claimed invention of the '707 Patent. Nor were most of these references listed among the **two dozen** references in Acushnet's invalidity contention interrogatory responses.[2]

---

[2] The Court already has precluded Acushnet from relying on other references not listed in its final contention interrogatory responses with respect to another of Bridgestone's patents-in-suit. D.I. 288.

ARGUMENT

I.  INHERENCY IS PART OF AN OBVIOUSNESS ANALYSIS

Acushnet's entire opposition is premised on the proposition that inherency is not part of an obviousness analysis. D.I. 412 at 2. It is basic patent law, however, that inherent disclosures in references can form part of an obviousness analysis. *See In re Napier*, 55 F.3d 610, 613 (Fed. Cir. 1995) ("The inherent teaching of a prior art reference, a question of fact, arises both in the context of anticipation and obviousness."); *see also In re Zurko*, 258 F.3d 1379, 1384 (Fed. Cir. 2001) ("Obviousness is a legal question based on underlying factual determinations including: (1) the scope and content of the prior art, including what that prior art teaches explicitly and inherently.").

Acushnet's simplistic argument that "inherency" and "obviousness" are different concepts (D.I. 412 at 3) is not in dispute – they are. But that does not mean the two are mutually exclusive, and nowhere does Acushnet cite a case that stands for such a proposition.[3] Thus, in attempting to show invalidity based on obviousness, one can show that a prior art reference discloses a claimed limitation through inherency.[4]

---

[3] The cases cited by Acushnet do not appear to be on point. *In re Rinehart* says that a "reasonable expectation of success" cannot be shown by inherency. *In re Rinehart*, 531 F.2d 1048, 1054 (C.C.P.A. 1976). *In re Spormann* says that an "advantage" cannot be shown by inherency. *In re Spormann*, 53 C.C.P.A. 1375, 1380 (C.C.P.A. 1966). *In re Adams* says that the benefit of an invention may be inherent, but that does not mean it is obvious. *In re Adams*, 53 C.C.P.A. 996, 1001 (C.C.P.A. 1966). None hold that inherent disclosures of references cannot be used in an obviousness analysis.

[4] To show inherency, it must be "clear that the missing descriptive matter is necessarily present in the thing described in the reference, and that it would be so recognized by persons of ordinary skill." *Continental Can Co. v. Monsanto Co.*, 948 F.2d 1264, 1268 (Fed. Cir. 1991). Inherency "requires that the missing descriptive material is 'necessarily present,' not merely probably or possibly present." *Trintec Indus., Inc. v. Top-U.S.A. Corp.*, 295 F.3d 1292, 1295 (Fed. Cir. 2002) (citations omitted). The mere fact that "a certain thing may result from a given set of
(continued...)

3

## II.   DR. FELKER RELIES ON INHERENCY FOR CORE CENTER HARDNESS OF EP '043

Acushnet says that "Dr. Felker never opined that the core gradient limitation was inherent" (D.I. 412 at 5). "Inherent" means not expressly present – and that's exactly what Dr. Felker said, that "the inventors [of EP 043] did not disclose the core center hardness of the example balls," but one of ordinary skill "can easily determine that value" (D.I. 348, Ex. 3 at 48).

In his Expert Report, Dr. Felker asserts that claim 1 of the '707 Patent is invalid as obvious:

> in light of the combination of [EP '043], **which discloses the claimed intermediate layer and core,** and the knowledge of one skilled in the art.

(D.I. 348, Ex. 3 at 48, **emphasis** added).[5]

It is unmistakable from this passage that Dr. Felker is asserting that EP '043 discloses the claimed features of the core and intermediate layer. He later points out that there is no express disclosure of core center hardness, but relies on cores purportedly made according to Example 2 of EP '043 to show that this feature is inherent.

Specifically, Dr. Felker asserts that EP '043 discloses a "three-piece golf ball ... just like that of the '707 Patent," and that it has "an intermediate layer which is hard relative to the cover and core" (citing par. [0010]) and "a core which is formed from a 'well known rubber composition'" (citing par. [0017]). (D.I. 348, Ex. 3 at 48). Dr. Felker then focuses on the nine example balls of Tables 1 and 2, and asserts that EP 043 "provides detailed instruction" on how

---

(...continued)
circumstances is not sufficient." *In re Robertson*, 169 F.3d 743, 745 (Fed. Cir. 1999) (citations omitted).

[5] Acushnet has alleged that Bridgestone has mischaracterized this argument as one of inherent anticipation. It is undisputed that Dr. Felker is advancing an obviousness position – but that does not mean that he is not relying on an inherent disclosure of EP '043 – he clearly is.

4

to manufacture cores due to the listing in Tables 1 and 2 of the "core composition, curing time, and curing temperature," and measurements of "cover hardness, intermediate layer hardness, and core surface hardness." (*Id.*).

Dr. Felker correctly points out that EP '043 lacks an express disclosure of the core center hardness or gradient: "the inventors of [EP '043] did not disclose the core center hardness" in Table 2. (*Id.*). Nevertheless, Dr. Felker asserts that, "based on the teachings of the specification, **one of ordinary skill in the art can easily determine that value**" by actually making cores according to example 2. (*Id.* at 48, 49). Dr. Felker then asserts: "**the engineers followed the directions in the [EP '043] patent to make and measure the properties of the core**," and that the "core" made by the "engineers" had a center hardness of "50.2 degrees" and a surface hardness of "67.4 degrees."[6] (Id. at 49). Thus, Dr. Felker contends that example 2's core inherently has a center hardness of "50.2 degrees" and a surface hardness of "67.4 degrees, and that one of skill could determine that value.[7]

Dr. Felker does not conduct any type of obviousness analysis with respect to the core center hardness of EP '043. Obviousness is analyzed by reviewing: (1) the scope and content of the prior art; (2) the level of ordinary skill in the prior art; (3) the differences between the claimed invention and the prior art; and (4) objective evidence of nonobviousness." *In re Dembiczak*, 175 F.3d 994, 998 (Fed. Cir. 1999). In this instance, Dr. Felker does not contend that there are any "differences between the claimed invention and the prior art" reference – EP

---

[6] Acushnet contends that Bridgestone has mischaracterized the role of the engineer - Jeff Dalton - role in the 2000 opinion of counsel. (D.I. 412 at 2). It is difficult to understand just what Acushnet thinks is wrong with what Bridgestone said, as Bridgestone cited to the opinion of counsel, included it as an exhibit, and quoted directly from it in its motion.

[7] Acushnet similarly contends that EP '043 discloses this feature in paragraph "[0023], Table 1; Table 2" in its final invalidity contentions. (D.I. 348, Ex. 2 at A-87,88).

'043 – with respect to the core center hardness. Dr. Felker also does not contend that one of ordinary skill would look to **another** reference (or general knowledge) to determine the core center hardness of EP '043 was, or would, provide a particular core center hardness of EP '043 in view of the teachings of **another** reference (or general knowledge). Rather, <u>Dr. Felker contends that the prior art – EP '043 – has the claimed core center hardness</u>. All of this evidence shows that Dr. Felker is relying on what he believes to be the inherent disclosure of core center hardness in EP '043 – not what core center hardness values are obvious in view of EP '043. To argue otherwise is against all the evidence of record.

Because Dr. Felker relies on an inherent disclosure of core center hardness, he must show that "the missing descriptive material is 'necessarily present,' not merely probably or possibly present." *Trintec Indus., Inc. v. Top-U.S.A. Corp.*, 295 F.3d 1292, 1295 (Fed. Cir. 2002) (citations omitted). The mere fact that "a certain thing may result from a given set of circumstances is not sufficient" to show inherency. *In re Robertson*, 169 F.3d 743, 745 (Fed. Cir. 1999) (citations omitted). Dr. Felker cannot, however, show that the core center hardness is <u>necessarily</u> present. Acushnet's own supplemental testing for Dr. Felker shows that cores can be made outside of the claimed range.[8] (*See* D.I. 348, Ex. 7 at 1, and D.I. 412 at 11). Dr. Felker also confirmed this during his deposition:

[REDACTED]

---

[8] Acushnet's counter statement of facts asserts that Dr. Felker "did not supplement his report." (D.I. 412 at 3). Rather, Acushnet contends that it "made and tested four additional batches of cores" and that "this testing shows that one can use the EP 043 recipe, without undue experimentation, to recreate the cores claimed in the '707 patent." (*Id.*). No matter what Acushnet calls it, if Dr. Felker is going to rely on this testing, it is supplemental, and therefore improper. This issue is currently pending before the Special Master.

6

(D.I. 348, Ex. 9 at 264:9-13).

That admission is dispositive for Dr. Felker's inherency argument because the particular core center hardness he asserts is disclosed in EP '043 is not <u>necessarily</u> present.

### III. THE "OBVIOUSNESS" ANALYSIS DR. FELKER DID WAS DIRECTED TO DIMPLE COVERAGE, NOT CORE HARDNESS

In addition to claiming a particular core hardness difference, and the hardnesses of intermediate and cover layers, the '707 Patent also specifies that "dimples occupy at least 62% of the ball surface." Dr. Felker concedes that "EP '043 does not disclose the dimple coverage" of its example balls, and states that:

> One of ordinary skill in the golf ball art would recognize that, for a ball to have good flying performance, it would have to have dimples. Therefore, one of ordinary skill in the golf ball are would have looked to what was common in the golf ball art at the time the patentee filed the application that resulted in the EP '043 patent and use a comparable design.

(D.I. 348, Ex. 3 at 50). Then, Dr. Felker cited an Acushnet-prepared Exhibit, and explained (*id.*):

> Exhibit 48 is a summary of the percentage dimple coverage for a variety of golf balls from 1992 through 1994, and ... lists percentage dimple coverage of numerous competitively tested balls, which have been calculated using the phantom sphere method described in the '707 specification.

Dr. Felker concludes that "[c]onsequentially, it would have been obvious to one of ordinary skill in the art to use a dimple pattern with at least 62% dimple coverage."

This <u>is</u> an obviousness analysis. Dr. Felker identified a missing parameter, looked to the asserted prior art, and asserted that the missing feature would be added to EP '043. This is very different from Dr. Felker's analysis of the core center hardness disclosed in EP '043.

7

IV.    ACUSHNET'S ATTORNEY ARGUMENTS ARE IRRELEVANT

Acushnet provides more than five pages of attorney argument that claim 1 of the '707 Patent is obvious over EP '043 (D.I. 412 at 5-12). Dr. Felker, however, did not provide any of this analysis in his report. Acushnet tries to fill the gap by citing *KSR*.[9] But *KSR* reaffirms that claims must be obvious to one of skill in the art. Acushnet has no evidence of that. Its expert said that EP 043 "did not disclose the core center hardness of the example balls." Acushnet cannot morph that into an obviousness argument that its testing "shows beyond any real doubt that the claim of the '707 patent can be achieved by taking another Bridgestone prior art patent (EP 043) and making a choice of antioxidant filler for the core from among the antioxidants commercially available at the time" (D.I. 427 at 10). There is nothing in Dr. Felker's report about choosing antioxidants.[10]

Further, the references cited by Acushnet are of little use with respect to providing teachings useful in combination with the only reference applied by Dr. Felker – EP '043. EP '043 is directed to a multi-layer golf ball with a softer cover than intermediate layer. In contrast, four of the references cited by Acushnet are either directed to: (1) single-cover golf balls (U.S. Patent Nos. 5,002,281 and 5,711,723), *i.e.*, balls with no intermediate layer; or (2) golf balls with harder covers than intermediate layers (U.S. Patent Nos. 4,714,253 and 5,184,828). As indicated in the '707 Patent, single-cover golf balls require different core hardnesses to function with the single-layer cover, and are therefore inapplicable to a multi-layer golf ball as disclosed in EP '043. (D.I. 348, Ex. 1 at col. 1). Further, as indicated by Acushnet's Vice President of R&D,

---

[9] *KSR International Co. v. Teleflex Inc.*, C.A. No. 04-1350, slip op. (U.S. Apr. 30, 2007).

[10] This discussion also shows the utter fallacy of Acushnet's arguments in its other summary judgment motions and oppositions that core hardness gradients are "unpredictable." (D.I. 409 at 7; D.I. 381 at 14).

8

balls with harder covers than intermediate layers are also "entirely different" technologies. (Ex. 1 at 7, ¶ 28). The final reference cited by Acushnet, U.S. Patent No. 5,730,663, is directed to a core that has a center and surface hardness that are less than 5% different, and this in fact teaches away from the '707 patent.[11]

Regardless of these deficiencies, Dr. Felker did not compare any of these references directly with the '707 Patent, and did not discuss them in combination with EP '043.

## V. ACUSHNET'S CONTENTIONS REGARDING OBJECTIVE FACTORS OF NON-OBVIOUSNESS ARE INCORRECT

Acushnet argues that "there are no objective factors of non-obviousness in connection with the '707 Patent." (D.I. 412 at 11.) This is incorrect – Bridgestone's expert, Mr. Calabria, has pointed out several factors of non-obviousness in his expert report. (Ex. 2 at C-15, 16, ¶¶ 61-65). Just because Acushnet may disagree with these opinions does not mean they do not exist. This is also irrelevant: the Court need not consider anything about secondary considerations to grant Bridgestone's motion.

---

[11] Acushnet's reliance on three of these references is improper. None of Acushnet's interrogatory responses identified U.S. Patent No. 5,711,723. And in response to the Court's August 3, 2006 Order, Acushnet dropped U.S. Patent Nos. 5,002,281 and 5,730,663 from its invalidity contentions – but now cites them here, in its brief.

9

## CONCLUSION

For the reasons set forth above, Bridgestone requests that the Court grant its motion for summary judgment that claim 1 of the '707 Patent is not invalid.

        MORRIS, NICHOLS, ARSHT & TUNNELL LLP

        */s/ Leslie A. Polizoti*

        Jack B. Blumenfeld (#1014)
        Leslie A. Polizoti (#4299)
        1201 N. Market St.
        P.O. Box 1347
        Wilmington, DE 19801
        (302) 658-9200
        *Attorneys for Bridgestone Sports Co., Ltd.*
        *and Bridgestone Golf, Inc.*

OF COUNSEL:

Robert M. Masters
Scott M. Flicker
PAUL, HASTINGS, JANOFSKY & WALKER LLP
875 15th St., N.W.
Washington, DC 20005
(202) 551-1700

May 11, 2007
825273.1

10

CERTIFICATE OF SERVICE

I certify that on May 11, 2007 I electronically filed the foregoing with the Clerk of the Court using CM/ECF, which will send notification of such filing(s) to Richard L. Horwitz and David E. Moore.

I further certify that I caused copies to be served upon the following on May 11, 2007 in the manner indicated:

**BY E-MAIL & HAND**

Richard L. Horwitz, Esquire
POTTER ANDERSON & CORROON LLP
1313 N. Market Street
Wilmington, DE 19801

**BY E-MAIL & FEDERAL EXPRESS**

Joseph P. Lavelle, Esquire
HOWREY LLP
1299 Pennsylvania Avenue, NW
Washington, DC 20004

*/s/ Leslie A. Polizoti*
Leslie A. Polizoti (#4299)
MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Wilmington, DE 19801
(302) 658-9200
lpolizoti@mnat.com

# EXHIBIT 1

# CONFIDENTIAL EXHIBIT

# EXHIBIT 2

# CONFIDENTIAL EXHIBIT

## CERTIFICATE OF SERVICE

I certify that on May 16, 2007 I electronically filed the foregoing with the Clerk of the Court using CM/ECF, which will send notification of such filing(s) to Richard L. Horwitz and David E. Moore.

I further certify that I caused copies to be served upon the following on May 161, 2007 in the manner indicated:

**BY E-MAIL & HAND**

Richard L. Horwitz, Esquire
POTTER ANDERSON & CORROON LLP
1313 N. Market Street
Wilmington, DE 19801

**BY E-MAIL & FEDERAL EXPRESS**

Joseph P. Lavelle, Esquire
HOWREY LLP
1299 Pennsylvania Avenue, NW
Washington, DC 20004

/s/ Leslie A. Polizoti
Leslie A. Polizoti (#4299)
MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Wilmington, DE 19801
(302) 658-9200
lpolizoti@mnat.com