IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| BRIDGESTONE SPORTS CO., LTD., and BRIDGESTONE GOLF, INC., <br><br> Plaintiffs, <br><br> v. <br><br> ACUSHNET COMPANY, <br><br> Defendant. | ) <br> ) <br> ) <br> ) C. A. No. 05-132 (JJF) <br> ) <br> ) <br> ) **PUBLIC VERSION** <br> ) <br> ) <br> ) |

**ACUSHNET'S REPLY BRIEF IN SUPPORT
OF ITS MOTION FOR SUMMARY JUDGMENT
OF NON-INFRINGEMENT OF U.S. PATENT NO. 5,743,817**

OF COUNSEL:

Alan M. Grimaldi
Joseph P. Lavelle
Kenneth W. Donnelly
HOWREY LLP
1299 Pennsylvania Avenue, N.W.
Washington, DC  20004
Tel:  (202) 783-0800

Dated: May 11, 2007
Public Version Dated: May 18, 2007
796433 / 28946

Richard L. Horwitz (#2246)
David E. Moore (#3983)
POTTER ANDERSON & CORROON LLP
Hercules Plaza, 6th Floor
1313 North Market Street
P. O. Box 951
Wilmington, DE  19899-0951
Tel:  (302) 984-6000
rhorwitz@potteranderson.com
dmoore@potteranderson.com

*Attorneys for Defendant
Acushnet Company*

## TABLE OF CONTENTS

I. INTRODUCTION ...........................................................................................................1

II. ARGUMENT..................................................................................................................1

    A. There Is No Genuine Dispute of Material Fact That None of the Accused Acushnet Golf Balls Include a Cover That "Consists of an Ionomer Resin as a Resin Component." ............................2

    B. There Is No Genuine Dispute of Material Fact That the ◄NXT Tour► and ◄NXT•Tour► Golf Balls Do Not Have a Cover Thickness of "1.3 to 1.8 mm." ................................................4

    C. There Is No Genuine Dispute of Material Fact That Certain Accused Golf Balls Do Not Have a Cover With "a Shore D Hardness of Up to 60." ...........................................................................6

    D. There Is No Genuine Dispute of Material Fact That Bridgestone Has Failed to Show That Any Accused Golf Balls Has "a Core Distortion of 2.9 to 4.0 mm Under a Load of 100 kg." ....................................................................................8

III. CONCLUSION..............................................................................................................11

# TABLE OF AUTHORITIES

## CASES

*Biovail Corp. Int'l, v. Andrx Pharms., Inc.*,
    239 F.3d 1297 (Fed. Cir. 2001) ............................................................................... 3

*Celotex Corp. v. Catrett*,
    477 U.S. 317 (1986) ................................................................................................ 1

*Chester Valley Coach Works v. Fisher-Price, Inc.*,
    2001 U.S. Dist. LEXIS 15902 (E.D. Pa., Aug. 29, 2001) ....................................... 2

*Dynacore Holdings Corp. v. U.S. Phillips Corp.*,
    363 F.3d 1263 (Fed. Cir. 2004) ............................................................................... 3

*Honeywell Int'l, Inc. v. ITT Indus., Inc.*,
    452 F.3d 1312 (Fed. Cir. 2006) ............................................................................... 5

*Interfaith Cmty. Org. v. Honeywell Int'l, Inc.*, 215 F. Supp. 2d 482
    (D.N.J. 2002) ........................................................................................................... 9

*Izumi Prod. Co. v. Koninklinjke Philips Electronics N.V.*,
    315 F. Supp. 2d 589 (D. Del. 2004) ........................................................................ 7

*J&M Corp. v. Harley-Davidson, Inc.*,
    269 F.3d 1360 (Fed. Cir. 2001) ............................................................................... 5

*Kerrigan v. Maxon Ind.*,
    223 F. Supp. 2d 626 (E.D. Pa. 2002) ...................................................................... 7

*Kumho Tire Co., Ltd. v. Carmichael*,
    526 U.S. 137 (1999) .......................................................................................... 3, 10

*Pactiv Corp. v. S.J. Johnson & Son, Inc.*,
    No. 98 C 2679, 2000 WL 1898839 (N.D. Ill. Nov. 29, 2000) .......................... 3, 10

*Rohm & Haas Co. v. Brotech Corp.*,
    127 F.3d 1089 (Fed. Cir. 1997) ......................................................................... 3, 10

*Scimed Life Sys. v. Advanced Cardiovascular Sys.*,
    242 F.3d 1337 (Fed. Cir. 2001) ............................................................................... 5

*Techsearch, L.L.C. v. Intel Corp.*,
    286 F.3d 1360 (Fed. Cir. 2002) ........................................................................... 2, 9

## RULES

Fed. R. Civ. P. Rule 56(c) ................................................................................................ 1

Defendant Acushnet Company ("Acushnet") files this Reply Brief in Support of Its Motion for Summary Judgment of Invalidity and Non-Infringement of U.S. Patent No. 5,743,817 ("the '817 patent").

## I.  INTRODUCTION

Plaintiffs Bridgestone Sports Co. Ltd. and Bridgestone Golf, Inc. (collectively, "Bridgestone") have failed to demonstrate that any genuine dispute of material fact exists with regard to Acushnet's non-infringement of the '817 patent for failure to meet a number of limitations, any one of which independently supports a finding of summary judgment of non-infringement. No reasonable jury could find on infringement based on the evidence Bridgestone has adduced. Hence, summary judgment of non-infringement of the '817 patent is proper.

## II.  ARGUMENT

Where, as here, the nonmoving party has the burden of proof at trial, the moving party need only point to a lack of evidence and has no burden to disprove the nonmoving party's claim. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). The non-moving party must then come forward with evidence demonstrating a genuine issue as to a material fact, and such evidence must consist not merely of denials or assertions that a fact is challenged. *See id.* at 324. If the non-moving party fails to make a sufficient factual showing as to any element of its case on which it bears the burden of proof at trial, the "plain language of Rule 56(c) mandates the entry of summary judgment." *Id.* at 322. Here, Bridgestone's failure to demonstrate a genuine issue of material fact renders their claims of infringement of the '817 patent appropriate for summary judgment resolution.

A.     **There Is No Genuine Dispute of Material Fact That None of the Accused Acushnet Golf Balls Include a Cover That "Consists of an Ionomer Resin as a Resin Component."**

Bridgestone has failed to demonstrate a genuine dispute of material fact with regard to non-infringement of this limitation under either party's construction.

The parties agree that the resin component of the cover must be ionomer resin. (*See* D.I. 229 at 15). Thus, under either party's construction, the presence of any nonionomeric resin in the cover of the finished golf ball prevents a finding of infringement. And the very evidence on which Bridgestone's infringement expert relies shows that each of the accused Acushnet golf balls has a nonionomeric resin in the cover. (D.I. 361 at Ex. N – Cadorniga 1/16 Report at D-13).

To support its infringement argument of this limitation, Bridgestone relies solely on the theoretical and conclusory testimony of its expert, Dr. Coughlin, regarding the supposed reaction of the nonionomeric resins with the ionomeric resins. In summary, Coughlin's opinion is based on a belief that the nonionomeric resin bonds with the ionomeric resin at a molecular level and that the bonded molecules are themselves ionomeric. (*See* D.I. 361 at Ex. O – Coughlin 1/16/07 Report at 24). However, Coughlin offers no support or analysis for his conclusory opinion that a molecular reaction occurs between the ionomeric and nonionomeric resins. Nor does he cite to any treatises or other authority of the types on which experts generally rely to support such theories. *See Chester Valley Coach Works v. Fisher-Price, Inc.*, 2001 U.S. Dist. LEXIS 15902, at *32 (E.D. Pa., Aug. 29, 2001) (Ex. 1 hereto) (excluding expert opinion for failure to "rely on any testing, experimentation or generally accepted texts or treatises to support it"). Dr. Coughlin's conclusory opinion, therefore, fails to establish sufficient evidence of infringement to bring this issue before a jury.

It is well settled that an expert's unsupported opinion is insufficient to avoid summary judgment. *See Techsearch, L.L.C. v. Intel Corp.*, 286 F.3d 1360, 1372 (Fed.

2

Cir. 2002) (holding that the expert's "wholly conclusory allegations failed to raise a genuine issue of material fact" regarding infringement); *Rohm & Haas Co. v. Brotech Corp.*, 127 F.3d 1089, 1092 (Fed. Cir. 1997) (affirming summary judgment of noninfringement because patentee's only evidence was summary opinion of its expert witnesses); *Kumho Tire Co., Ltd. v. Carmichael,* 526 U.S. 137, 157 (1999) ("nothing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert"); *Dynacore Holdings Corp. v. U.S. Phillips Corp.*, 363 F.3d 1263, 1277-78 (Fed. Cir. 2004) (rejecting expert testimony and noting that a party may not avoid summary judgment of infringement by framing an expert's conclusion as an assertion that the accused device contains a particular critical claim limitation); *Pactiv Corp. v. S.J. Johnson & Son, Inc.*, No. 98 C 2679, 2000 WL 1898839, at *8 (N.D. Ill. Nov. 29, 2000) (Ex. 2 hereto) (noting that the experts' conclusions consist of nothing more than their say-so and thus, they failed to create a genuine issue of material fact regarding the doctrine of equivalents). Accordingly, as a matter of law, Coughlin's opinion does not demonstrate a genuine dispute of material fact.

Even if the Court credits Coughlin's opinion in full, it is insufficient to meet Bridgestone's burden of proof on infringement.

In order to establish infringement under its own claim construction, Bridgestone must show by a preponderance of the evidence, that ***all*** of the nonionomeric resin in the cover bonds with the ionomeric resin. *See Biovail Corp. Int'l, v. Andrx Pharms., Inc.*, 239 F.3d 1297, 1302 (Fed. Cir. 2001). In *Biovail*, the asserted patent required the presence of a homogenous chemical mixture. *Id.* at 1303. The district court found that the tests submitted by the patentee's experts, including electron microscope photographs, "do not show that a homogeneous admixture is formed in the [accused] product." *Id.*

Bridgestone faces a similar burden here. Because the parties agree that the resin component of the cover claimed by the '817 patent must be an ionomer resin,

3

Bridgestone must show that the blend of ionomeric and nonionomeric forms a homogenous blend of ionomer such that no unreacted nonionomeric resin is present. Coughlin, however, provides no evidence that *any* of the nonionomeric resin – much less all of it – bonds with the ionomer and obtains an ionomeric charge. (In contrast, Acushnet's expert, Dr. Felker, provided electron microscope images of the covers of finished golf balls showing that the ionomeric and nonionomeric resins do not form a homogenous mixture and that, therefore, unreacted nonionomeric resin is present in the covers of the finished golf balls. (*See* Ex. 3 - Felker 2/20/07 Report at 79-82)).

Thus, Bridgestone has not shown – and cannot show – that any cover for an accused Acushnet golf ball that includes nonionomeric resin is a cover "consisting of an ionomer resin as a resin component." Even crediting Coughlin's theoretical and conclusory opinion in full, Bridgestone failed to come forward with evidence sufficient to meet its burden of proving infringement by a preponderance of the evidence. Accordingly, summary judgment of non-infringement is appropriate.[1]

    **B.    There Is No Genuine Dispute of Material Fact That the ◄NXT Tour► and ◄NXT•Tour► Golf Balls Do Not Have a Cover Thickness of "1.3 to 1.8 mm."**

Bridgestone further fails to establish any genuine issue of material fact regarding non-infringement of the cover thickness limitation by the accused ◄NXT Tour► and ◄NXT•Tour► golf balls. In its attempt to avoid summary judgment, Bridgestone states only that "[i]nfringement here is a highly factual inquiry" and that Bridgestone asserts infringement both literally and under the doctrine of equivalents. (D.I. 416 at 12-13). As shown below, however, there are no genuine disputes of material fact that (1) the cover thicknesses of the accused ◄NXT Tour► and ◄NXT•Tour► golf balls are outside the

---

[1] Bridgestone incorrectly states that " ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ " (D.I. 416 at 10-11). On the contrary, Acushnet cited just such documents in its opening brief. (*See* D.I. 361 at 9).

4

literal range claimed by the '817 patent and (2) Bridgestone, as a matter of law, is not entitled to assert infringement under the doctrine of equivalents.

The limitation requires a cover with a thickness of "1.3 to 1.8 mm." (D.I. 361 at Ex. 1). ■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■.

Further, as a matter of law, Bridgestone is not entitled to assert infringement of this limitation under the doctrine of equivalents. In discussing this limitation in the '817 patent, the inventors state that "[a]ccording to the invention, the cover has a radial thickness of 1.3 to 1.8 mm, especially 1.4 to 1.8 mm. ***Outside the range, the objects of the invention cannot be achieved.*** A cover of thinner than 1.3 mm is less resistant against top damage and liable to be broken." (D.I. 361 at Ex. A – '817 patent, col. 2, ll. 58-62) (emphasis added).

As noted in Acushnet's opening brief, the law is clear that such a disclaimer precludes Bridgestone from asserting infringement of this limitation under the doctrine of equivalents. *See Scimed Life Sys. v. Advanced Cardiovascular Sys.*, 242 F.3d 1337, 1341 (Fed. Cir. 2001) ("Where the specification makes clear that the invention does not include a particular feature, that feature is deemed to be outside the reach of the claims of the patents, even though the language of the claims, read without reference to the specification, might be considered broad enough to encompass the feature in question."). *See also Honeywell Int'l, Inc. v. ITT Indus., Inc.*, 452 F.3d 1312, 1319 (Fed. Cir. 2006) ("based on the disclosure in the written description, which demeaned the properties of carbon fibers, we conclude that the patentee thereby disavowed carbon fibers from the scope of the '879 patent's claims"); *J&M Corp. v. Harley-Davidson, Inc.*, 269 F.3d 1360,

5

1366 (Fed. Cir. 2001) ("The scope of equivalents may also be limited by statements in the specification that disclaim coverage of certain subject matter.").

Bridgestone offers no response, but merely reasserts that infringement is both literal and under the doctrine of equivalents. Again, summary judgment of non-infringement is therefore proper.

### C. There Is No Genuine Dispute of Material Fact That Certain Accused Golf Balls Do Not Have a Cover With "a Shore D Hardness of Up to 60."

Bridgestone further has failed to show that a genuine dispute of material fact exists with regard to non-infringement of this limitation by the DT So/Lo (PTS So/Lo) and Pinnacle Exception golf balls.[2]

The '817 patent requires a cover with "a Shore D hardness of up to 60." (D.I. 361 at Ex. 1 – '817 patent, col. 6, ll. 54-56). Bridgestone has accused various models and sidestamps of Acushnet's DT So/Lo and Pinnacle Exception families of golf balls. The accused DT So/Lo family (also sold in Europe under the name "PTS So/Lo") consists of two models, also known as "sidestamps," identified by Bridgestone as the "DT So/Lo" (or "PTS So/Lo") and one as the "◄DT So/Lo►" ("◄PTS So/Lo►"). Similarly, the Pinnacle Exception family consists of two models, identified by Bridgestone as the "Pinnacle Exception" and "Exception" sidestamps. In its attempt to show infringement of this limitation by those golf balls, Bridgestone's expert relied on a handful of Acushnet documents reporting cover hardness values. (D.I. 361 at Ex. N – Cadorniga Report at D-20, Table D-10). Those documents actually show, however, that those golf balls have cover Shore D hardnesses outside the claimed range.

---

[2] While Bridgestone's preferred method of measuring the cover Shore D hardness on a plaque, as opposed to on the ball itself, shows that the accused NXT Tour golf balls do not meet this limitation, Acushnet has previously admitted that those golf balls have a Shore D hardness within the claimed range and does not challenge that admission now. Nevertheless, as shown above, separate bases for summary judgment of non-infringement exist for the NXT Tour golf balls, so summary judgment is still appropriate.

Specifically, . *See Izumi Prod. Co. v. Koninklinjke Philips Electronics N.V.*, 315 F. Supp. 2d 589, 602 (D. Del. 2004) (rejecting expert testimony on infringement based upon an examination of only 2 of 114 accused models of electric razors); *Kerrigan v. Maxon Ind.*, 223 F. Supp. 2d 626, 638 (E.D. Pa. 2002) (rejecting an expert's extrapolation based on observations of a single accused device).

Further, the documents relied upon by Bridgestone's expert show that (*Id.*). Thus, even accepting Bridgestone's evidence in full, no reasonable jury could find that Bridgestone has met its burden of proving infringement by a preponderance of the evidence.

In its opposition brief, Bridgestone simply reasserts its reliance on those previously-identified documents ( ). (D.I. 416 at 13-14). Although Bridgestone accuses *Acushnet* of "ignoring" those documents (D.I. 416 at 14), despite that Acushnet discussed them in detail in its opening brief (D.I. 361 at 21-22), it appears that Bridgestone is ignoring the documents on which it purports to rely.

Accordingly, Bridgestone's failure to raise a genuine dispute of material fact regarding infringement of this limitation by the DT So/Lo, PTS SoLo, ◄DT So/Lo►,

7

◄PTS So/Lo►, Pinnacle Exception, and Exception sidestamps renders summary judgment of non-infringement appropriate.

>   **D.   There Is No Genuine Dispute of Material Fact That Bridgestone Has Failed to Show That Any Accused Golf Balls Has "a Core Distortion of 2.9 to 4.0 mm Under a Load of 100 kg."**

As set forth in Acushnet's opening brief, all of Bridgestone's raw core distortion data taken at points at or around 100 kg, is well outside the range of 2.9 mm to 4.0 mm. (*See* D.I. 361 at Exs. K-M). Bridgestone responds by offering only the conclusory affidavit of its expert, which does not explain his calculations. Although Acushnet has offered Bridgestone repeated opportunities to explain the discrepancy, Bridgestone has not done so. Instead, as before, Bridgestone provides only unsubstantiated disagreement.

For example, Bridgestone incorrectly states that it "can only speculate as to how Acushnet is interpreting the raw data from Dr. Caulfield's 100 kg distortion tests." (D.I. 416 at 8). On the contrary, Acushnet's expert, Dr. Felker, explained the discrepancy in detail in his February 20 report, even providing specific examples in which Dr. Caulfield's reported core distortion calculations were contradicted by his raw test data. (*See* Ex. 3 – Felker 2/20/07 Report at 68-76). Acushnet reiterated that explanation in connection with its motion to preclude (D.I. 295 at 10-11) and again in its opening brief on the instant motion. (D.I. 361 at 4-8).

Bridgestone also incorrectly states that "Acushnet still did not ask either Dr. Caulfield or Mr. Jones, a project manager at Packer Engineering, how to 'understand' the data." (D.I. 416 at 9). On the contrary, Acushnet specifically asked Mr. Jones, who performed the disputed conversions on behalf of Bridgestone, how they were done. He confirmed that Caulfield's raw data should be converted from inches and pounds to millimeters and kilograms using standard conversion constants, which is the method used and described repeatedly by Acushnet. (D.I. 361 at Ex. F – Jones Dep. at 193-96).

8

Bridgestone incorrectly states, too, that "[n]or does Acushnet look at the detailed, written testing protocol for conducting these tests included in Dr. Caulfield's report." (D.I. 416 at 9). On the contrary, Acushnet did review Dr. Caulfield's protocols, which shed no light on the discrepancy. Rather, his protocols, attached as Ex. 4 hereto, are silent on the conversion from inches/pounds to mm/kg. (*See* Ex. 4 – Caulfield Report at Ex. 7, pp. 1-2) Finally, Bridgestone incorrectly states that Acushnet's position is "just naked attorney argument." (D.I. 416 at 9). As explained above, Acushnet's expert Dr. Felker described in detail the data discrepancy in his February 20 report.

After all of this, Bridgestone – the party whose burden it is to prove infringement and who must come forward to defeat summary judgment with actual *evidence* sufficient to meet this burden – still has not offered a single explanation for how it reached its results in view of the raw testing data. Specifically, in response to Acushnet's detailed explanation of why Dr. Caulfield's data does not support his conclusions, Bridgestone offers a declaration from Dr. Caulfield. (*See* D.I. 416 at 2-3 and Ex. 1). But Dr. Caulfield's declaration is thread-bare conclusory and states only that he has reviewed his data and that it is accurate. (*Id.* at Ex. 1). He again discloses nothing about his calculations or the methodology by which he used the raw data to make those calculations. (*Id.*) He states simply that "these are the correct values … based on a proper analysis of the raw data." (*Id.* at 2, ¶ 6). In this, he discloses nothing of his analysis, by which his opinion could even be tested by the Court. And tellingly, he offers no explanation why Acushnet's calculations are not correct. (*Id.*).

The law is clear in this circumstance that Bridgestone's conclusory response to Acushnet's motion does not entitle it to claim a genuine fact dispute. Unsubstantiated disagreement does not rise to the level required to create a material dispute of fact. *See Interfaith Cmty. Org. v. Honeywell Int'l, Inc.*, 215 F. Supp. 2d 482, 500 (D.N.J. 2002) ("mere disagreement … falls short of establishing a genuine dispute of material fact"); *Techsearch, L.L.C.*, 286 F.3d at 1372 (holding that the expert's "wholly conclusory

9

allegations failed to raise a genuine issue of material fact" regarding infringement); *Rohm & Haas Co.*, 127 F.3d at 1092 (affirming summary judgment of non-infringement because patentee's only evidence was summary opinion of its expert witnesses); *Kumho Tire Co., Ltd.*, 526 U.S. at 157 ("nothing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert"); *Pactiv Corp.*, 2000 WL 1898839, at *8 (Ex. 2 hereto) (noting that the experts' conclusions consist of nothing more than their say-so and thus, they failed to create a genuine issue of material fact on the doctrine of equivalents).

In view of the inadequacy of its response, Bridgestone has failed to demonstrate any genuine dispute of material fact that Bridgestone's own data shows that the accused Acushnet balls it measured do not have core distortions under a load of 100 kg within the claimed range. Nor does Bridgestone dispute that it is not entitled to claim infringement of this limitation under the doctrine of equivalents.

Bridgestone's failure to raise a genuine dispute of material fact regarding infringement of this limitation renders summary judgment of non-infringement of the '817 patent proper for this reason too.

### III. CONCLUSION

For the foregoing reasons, Acushnet respectfully requests that the Court grant its motion.

Respectfully submitted,

POTTER ANDERSON & CORROON LLP

OF COUNSEL:

Alan M. Grimaldi
Joseph P. Lavelle
Kenneth W. Donnelly
HOWREY LLP
1299 Pennsylvania Avenue, N.W.
Washington, DC 20004
Tel: (202) 783-0800

Dated: May 11, 2007
Public Version Dated: May 18, 2007
796433/28946

By: /s/ David E. Moore
Richard L. Horwitz (#2246)
David E. Moore (#3983)
Hercules Plaza, 6th Floor
1313 North Market Street
P. O. Box 951
Wilmington, DE 19899-0951
Tel: (302) 984-6000
rhorwitz@potteranderson.com
dmoore@potteranderson.com

*Attorneys for Defendant*
*Acushnet Company*

11

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

**CERTIFICATE OF SERVICE**

I, David E. Moore, hereby certify that on May 18, 2007, the attached document was hand delivered to the following persons and was electronically filed with the Clerk of the Court using CM/ECF which will send notification to the registered attorney(s) of record that the document has been filed and is available for viewing and downloading:

Jack B. Blumenfeld
Maryellen Noreika
Leslie A. Polizoti
Morris, Nichols, Arsht & Tunnell
1201 N. Market Street
Wilmington, DE  19801

I hereby certify that on May 18, 2007, I have Electronically Mailed the documents to the following:

Robert M. Masters
Paul, Hastings, Janofsky & Walker LLP
875 15th Street, N.W.
Washington, D.C.  20005
RobMasters@paulhastings.com

/s/ *David E. Moore*
Richard L. Horwitz
David E. Moore
Potter Anderson & Corroon LLP
Hercules Plaza – Sixth Floor
1313 North Market Street
P.O. Box 951
Wilmington, DE  19899-0951
(302) 984-6000
rhorwitz@potteranderson.com
dmoore@potteranderson.com

680012 / 28946