## IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF DELAWARE

BRIDGESTONE SPORTS CO., LTD., )
and BRIDGESTONE GOLF, INC., )
                        )
        Plaintiffs, )
                        )
    v. )
                        )
ACUSHNET COMPANY, )
                        )
        Defendant. )

C. A. No. 05-132 (JJF)

**PUBLIC VERSION**

### ACUSHNET COMPANY'S REPLY MEMORANDUM
### IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT OF
### <u>NON-INFRINGEMENT OF U.S. PATENT 5,553,852</u>

OF COUNSEL:

Alan M. Grimaldi
Joseph P. Lavelle
Kenneth W. Donnelly
HOWREY LLP
1299 Pennsylvania Avenue, N.W.
Washington, DC 20004
Tel: (202) 783-0800

Dated: May 11, 2007
Public Version Dated: May 18, 2007
796512/28946

Richard L. Horwitz (#2246)
David E. Moore (#3983)
POTTER ANDERSON & CORROON LLP
Hercules Plaza, 6th Floor
1313 North Market Street
P. O. Box 951
Wilmington, DE 19899-0951
Tel: (302) 984-6000
rhorwitz@potteranderson.com
dmoore@potteranderson.com

*Attorneys for Defendant*
*Acushnet Company*

**TABLE OF CONTENTS**

I.   ACUSHNET'S PRODUCTS DO NOT LITERALLY INFRINGE
     THE INTERMEDIATE AND OUTER COVER LAYER
     LIMITATIONS OF THE '852 PATENT ................................................................1

     A.   No Genuine Issues of Fact Preclude Summary Judgment on the
          Basis of the Cover Layer Limitations ..........................................................1

          1.   Interpretation of "intermediate layer having a thickness
               of at least 1mm" ..............................................................................3

          2.   Interpretation of "cover layer having a thickness of 1-3
               mm" ..................................................................................................4

II.  ACUSHNET DOES NOT LITERALLY INFRINGE THE CORE
     DIAMETER LIMITATION OF THE '852 PATENT ...........................................7

     A.   No Genuine Issues of Fact Preclude Summary Judgment on the
          Basis of the Core Diameter Limitation .......................................................7

III. ACUSHNET DOES NOT LITERALLY INFRINGE THE THREE-
     PIECE BALL LIMITATION OF THE '852 PATENT ..........................................9

     A.   No Genuine Issues of Fact Preclude Summary Judgment on the
          Limitation of a Three-Piece Ball ................................................................9

IV.  BRIDGESTONE IS NOT ENTITLED TO RELY ON DOCTRINE OF
     EQUIVALENTS TO PROVE INFRINGEMENT OF THE '852
     PATENT ...........................................................................................................12

     A.   Bridgestone Cannot Recapture Alleged Equivalents
          Specifically Disclaimed In The '852 Patent .............................................12

          1.   Undisputed Facts Show Acushnet's Motion Should Be
               Granted............................................................................................12

          2.   Bridgestone's Opposition Motion Creates No Issues of
               Fact..................................................................................................13

          3.   Bridgestone Mischaracterizes the Objectives of the '852
               Patent...............................................................................................16

     B.   Cadorniga Admitted That He Did Not Perform An Analysis
          Under The Doctrine Of Equivalents ..........................................................18

       C.     Bridgestone's Failure To Disclose Infringement Contentions
             Precludes Them From Relying On The Doctrine of Equivalents..............19

V.    CONCLUSION......................................................................................................20

## TABLE OF AUTHORITIES

### CASES

*Astrazeneca AB v. Mutual Pharm. Co., Inc.,*
    384 F.3d 1333 (Fed. Cir. 2004)................................................................16

*Athletic Alternatives, Inc v. Prince Manufacturing, Inc.,*
    73 F.3d 1573 (Fed. Cir. 1996)................................................................15

*Bell Communications Research, Inc. v. Vitalink Communications, Corp.,*
    55 F.3d 615 (Fed. Cir. 1995)................................................................10

*Bicon, Inc. v. Straumann Co.,*
    441 F.3d 945 (Fed. Cir. 2006)................................................................9, 16

*Biogen, Inc. v. Berlex Laboratoriess, Inc.,*
    318 F.3d 1132 (Fed.Cir.2003)................................................................16

*Catalina Marketing International, Inc. v. Coolsavings.com, Inc.,*
    289 F.3d 801 (Fed. Cir. 2001)................................................................10, 11

*Cultor Corp. v. A.E. Staley Manufacturing Co.,*
    224 F.3d 1328 (Fed. Cir. 2000)................................................................16

*Data Race, Inc. v. Lucent Technologies, Inc.,*
    73 F. Supp. 2d 698 (W.D.Tex. 1999)................................................................12

*Dolly, Inc. v. Spalding & Evenflo Cos.,*
    16 F.3d 394 (Fed. Cir. 1994)................................................................15

*Eaton Corp v. Rockwell International Corp.,*
    323 F.3d 1332 (Fed. Cir. 2003)................................................................10

*Edwards System Tech., Inc. v. Digital Control System, Inc.,*
    99 Fed. Appx. 911, 2004 WL. 1153662 (Fed. Cir. 2004)................................................16

*Fiber Optic Designs, Inc. v. Seasonal Specialties, LLC,*
    172 Fed. Appx. 995 (Fed. Cir. 2006)................................................................15

*General America Trans. v. Cryo-Trans, Inc.,*
    93 F.3d 766 (Fed. Cir. 1996)................................................................14, 16

*Honeywell, International Inc. v. ITT Industrial, Inc.,*
    425 F.3d 1312 (Fed. Cir. 2006)................................................................16

*Jeneric/Pentron, Inc. v. Dillon Company,*
    205 F.3d 1377 (Fed. Cir. 2000)........................................................................6

*Liebel-Flarsheim Company, v. Medrad, Inc.,*
    358 F.3d 898 (Fed. Cir. 2004)..............................................................14, 15

*London v. Carson Pirie Scott & Co.,*
    946 F.2d 1534, 20 U.S.P.Q. 2d 1456 (Fed.Cir.1991) ..................................12

*Modine Manufacturing Co., v. I.T.C.,*
    75 F.3d 1545 (Fed. Cir. 1996) (D.I. 417, pg. 10-11) ...............................5, 16

*Pall Corp. v. Micron Separations, Inc.,*
    66 F.3d 1211 (Fed. Cir. 1995)........................................................................5

*Quantum Corp. v. Rodine, Plc.,*
    65 F.3d 1577 (Fed. Cir. 1995)........................................................................3

*SciMed Life Systems, Inc. v. Advanced Cardiovascular Systems, Inc.,*
    242 F.3d 1337 (Fed. Cir. 2001)...............................................................13, 15

*Senior Technologies, Inc. v. R.F. Technologies, Inc.,*
    76 Fed. Appx. 318 (Fed. Cir. 2003) ...........................................................13

*Toro Co. v. White Consolidated Industrial, Inc.,*
    199 F.3d 1295 (Fed. Cir. 1999).....................................................................16

*Transco Products Inc. v. Performance Contracting, Inc.,*
    792 F. Supp. 594 (N.D.Ill. 1992) .................................................................12

*Watts v. XL System, Inc.,*
    232 F.3d 877 (Fed. Cir. 2000).......................................................................16

Acushnet Company ("Acushnet") submits this reply in support of its summary judgment motion of non-infringement of U.S. Patent No. 5,553,852 ("the '852 patent") (Ex. 1). Acushnet's opening brief demonstrated with Bridgestone's expert's own testing of the intermediate and outer cover layers of Acushnet's golf balls that Acushnet's entire line of Pro V1 golf balls does not read on claim 1 of the '852 patent, the only independent claim of that patent. In its opposition to Acushnet's motion, Bridgestone musters no credible argument or set of facts to create a genuine fact dispute and preclude summary judgment in favor of Acushnet. Hence, Acushnet's motion should be granted.

## I.    ACUSHNET'S PRODUCTS DO NOT LITERALLY INFRINGE THE INTERMEDIATE AND OUTER COVER LAYER LIMITATIONS OF THE '852 PATENT

### A.    No Genuine Issues of Fact Preclude Summary Judgment on the Basis of the Cover Layer Limitations

The '852 patent requires an intermediate layer with a thickness of "at least 1mm" and an outer cover with "a thickness of 1 to 3 mm." ███████████████

| Accused Golf Ball (sidestamp) | Average Intermediate Layer Thickness (mm) | Average Outer Cover Thickness (mm) |
|---|---|---|
| Pro V1 392* | | |
| Pro V1 392 (stretched)* | | |
| ◀Pro V1●392▶ | | |
| ◀●Pro V1 392●▶ | | |
| ◀Pro V1-392▶ | | |
| ◀Pro V1* 392▶ | | |
| ◀●Pro V1x 332●▶ | | |
| ◀Pro V1x-332▶ | | |

(Ex. 2 – 1/16/07 Cadorniga Expert Report at C-13 (Table C-6) and C-34 (Table C-13)).



Bridgestone conjures up two arguments that there are factual issues that preclude summary judgment, both of which fail. First, Bridgestone argues that Acushnet's expert, Dr. David Felker, relied on different information than Bridgestone's expert to opine that the accused products do not infringe the '852 patent. Dr. Felker relied on Acushnet's internal quality control information to determine the thickness of the intermediate cover and outer cover layers on Acushnet's accused products, and Bridgestone argues that this information is not reliable because these documents used information from "a different manufacturing state of the golf balls." (D.I. 417, pg. 14-15).

How is any of this relevant to Acushnet's motion? It isn't. As Acushnet stated in its opening brief, Acushnet accepted ***Bridgestone's*** own data for purposes of this motion. Since both experts' data show that the inner and outer cover layers of the accused balls are less than 1 mm thick, it does not matter which is more credible.

Bridgestone's second argument, closely related to its first, is simply that if there is a difference of opinion on infringement between the experts that this, necessarily, raises an issue of fact that precludes summary judgment.

Here Bridgestone misunderstands the law. A fact dispute must be *material*, and expert opinions must be grounded on facts that are relevant. Where all material factual inquires are left undisputed, as they are here, summary judgment is appropriate.

Bridgestone goes on for several pages about how Mr. Cadorniga relied on his "knowledge and experience gained from 30 years in the golf ball industry" to conclude that the accused golf balls have a cover having a thickness of 1 to 3 mm and an intermediate layer having a thickness of at least 1 mm. (*See, e.g.*, D.I. 417, pg. 15-16).

? It is undisputed that the claim language requires an

2

intermediate layer that is "at least 1 mm thick" and an outer cover that is between "1 to 3 mm thick."

That is a question of law, not of fact.

### 1.  Interpretation of "intermediate layer having a thickness of at least 1mm"

Bridgestone is grasping at straws.  Its entire infringement claim rests on the incredible proposition that because the '852 patent requires that cover layers be "at least 1 mm," and not "at least 1.0 mm," that cover layers less than 1mm can literally be within the asserted claim of the patent.  But the law is clear that unless specifically defined in the patent otherwise, the public is entitled to rely on the plain and ordinary meaning of claim terms.  And there can be no legitimate dispute that the plain and ordinary meaning of "at least 1mm" means "at least" that value.  Put another way, the layer must be greater than 0.999999…9 mm thick, which means it must be at a minimum 1.0 mm thick.

This is the only logical interpretation for a claim that explicitly requires the intermediate layer to be *at least* 1mm thick, where the specification specifically criticizes intermediate layers less than 1 mm thick, where every example in the patent uses an intermediate layer greater than 1 mm thick, and where the specification states that the preferred thickness is 1.5 to 3.5 mm thick.

Bridgestone ignores the clear intrinsic evidence and further ignores the Federal Circuit's decisional law cited by Acushnet which repeatedly holds that "at least" means "as the minimum." *E.g., Quantum Corp. v. Rodine, Plc.*, 65 F.3d 1577, 1581 (Fed. Cir. 1995) ("Regarding the limitation 'at least 600 tpi,' the term 'at least' means '*as the minimum*,' Webster's Third New International Dictionary 1287 (1986), and therefore when coupled with a specific number sets forth an absolute lower limit of a range, i.e.,

600 on up.); *Lantech, Inc. v. Keip Mach. Co.*, 32 F.3d 542, 546 (Fed. Cir. 1994) ("[T]he term 'at least two' sets forth ***the minimum number*** of a particular element required."). In both of these cases, the fact that the numerical limitation was a whole number, just like in the present case, did not affect the Federal Circuit's claim construction.

The only evidence that Bridgestone even attempts to provide to support its position is an excerpt from Dr. Felker's deposition testimony where he said abstractly that 1mm is less precise as math than 1.0 mm. First of all, this is extrinsic evidence that should only be considered if the claim language is unclear after reviewing the intrinsic record. The intrinsic record is not unclear. Second, this extrinsic testimony is irrelevant. The claim is not limited only to 1mm, it is limited to "***at least 1 mm***." Bridgestone's counsel did not ask Dr. Felker to compare "at least 1 mm" with "at least 1.0mm."

Bridgestone fails to address its own expert's testimony. Mr. Cadorniga stated that without language of approximation, such as about, the claim term is *more* precise. (Ex. 3 – 3/12/07 Cadorniga Tr. 94:1-3). Nor does it acknowledge that its expert also agreed that the '852 patent criticizes intermediate layers less than 1mm thick. (Ex. 3 – 3/12/07 Cadorniga Tr. 161:4-7 ("Q: The patent teaches, though, you will admit, that intermediate layers of less than one are disfavored; correct? A: Yes, correct.").

Bridgestone's specious arguments to the contrary notwithstanding, the overwhelming evidence supports a construction that the intermediate layer of a golf ball must be at least 1.0 mm to read on the '852 patent. ████████████████████ ████████████████████████████████████████████, none of them could possible literally infringe.

## 2. Interpretation of "cover layer having a thickness of 1-3 mm"

Bridgestone proposition with respect to the outer cover layer thickness requirement is likewise infirm. Here Bridgestone asserts that the claim can properly be read to literally include outer covers less than 1 mm thick and more than 3 mm thick.

4

This interpretation is so clearly contrary to a plain and ordinary meaning of a "cover layer having a thickness of 1-3 mm" it seems preposterous.

Acushnet's proposed construction for this claim phrase is that the outer cover layer must be a minimum of 1.0 mm thick and a maximum of 3.0 mm thick. This is the only proper interpretation for a claim that explicitly requires the outer cover to be 1 to 3 mm thick, where the specification specifically criticizes outer cover layers less than 1 mm thick and more than 3 mm thick, where every example in the patent uses an outer cover layer between 1 to 3 mm thick, and where the specification states that the preferred thickness is 1.5 to 2.5 mm.

Instead of addressing the Federal Circuit cases cited by Acushnet, Bridgestone cites to *Modine Manufacturing Co., v. I.T.C.*, 75 F.3d 1545 (Fed. Cir. 1996) (D.I. 417, pg. 10-11). The *Modine* discussion, however, favors Acushnet's positions not Bridgestone's. *See id.* at 1551. The relevant claim element in *Modine* did not contain a numerical limitation, but was directed to the meaning of the descriptive words *"relatively small"* hydraulic diameter. The *Modine* court simply decided that the numerical limitations in the specification for the hydraulic diameter (0.015 to 0.040 in) should not be read as an absolute bar to the scope of "relatively small," since the specification and other claims in the patent used the qualifier "about." *Id.* at 1554. Based on this, the court stated that the proper interpretation of "relatively small" is "about 0.015 to 0.040." *Id.* at 1551-52.

In this case, the '852 patent does not contain descriptive words such as "relatively small" as the limitation, or any language of approximation, either in the claims, specification or elsewhere, with respect to the cover layer thicknesses. Instead the claim specifically requires an intermediate cover layer of at least 1mm and an outer cover layer thickness of 1 to 3 mm. The fact that the claim does not use any broadening or qualifying language further indicates that a limitation to the precise ranges is proper. Without broadening words that ordinarily receive some leeway, the precise ranges of a claim do not avoid a strict numerical boundary to the specified parameter. *See Pall Corp. v.*

5

*Micron Separations, Inc.*, 66 F.3d 1211, 1217 (Fed. Cir. 1995); *Jeneric/Pentron, Inc. v. Dillon Company*, 205 F.3d 1377, 1381 (Fed. Cir. 2000). Confirming this, Bridgestone's expert Mr. Cadorniga testified that when such broadening words are not used it indicates an intended higher level of precision. (Ex. 3 – 3/12/07 Cadorniga Tr. 94:1-4).

Bridgestone's reliance on Dr. Felker's testimony does not help them either. In an effort to support its argument, Bridgestone argues that Dr. Felker characterized the claim language related to the cover layer thickness as being "imprecise and loose." (D.I. 417, pg. 12). This is an incomplete account of Dr. Felker's testimony, however. When posed the specific question that matters, he reinforced his opinion that Acushnet's proposed construction is the proper construction and the construction that those of ordinary skill in the art would ascribe to it. Below is the actual transcription of Dr. Felker's statement:

> Q    And just without using the decimal and the tense, just the thickness of one to three millimeters, is imprecise and loose, as it's stated here in claim one; correct?
>
> A    You're -- you're saying that just one to three is imprecise and loose?
>
> Q    Yes.
>
> A    Well, I -- you know, I don't -- I don't know if there's a term loose. I mean, I'm just saying that one to three, to me, what one to three means is it's between one and it's between three, it's not less than one, and it's not more than three. And then you have to ask yourself, well, when you're in between that range, what is it, well, it's not just – it's not three numbers, why didn't they just say one to three. They meant in between there, so there's numbers in between, and I agree with Acushnet's proposal that it's one to three, 1.0 to 3.0.

(Ex. 4 – 3/8/07 Felker Tr. 334:12-335:8).

In light of the clear claim language, the specification criticizing thicknesses less than 1mm and more than 3mm, and the Federal Circuit precedent, there is no doubt that the correct interpretation of an outer cover layer that is "1 to 3 mm" is that the cover is at a minimum 1.0 mm thick, and at a maximum 3.0 mm thick.

██████████████████████████████████████

## II.    ACUSHNET DOES NOT LITERALLY INFRINGE THE CORE DIAMETER LIMITATION OF THE '852 PATENT

### A.    No Genuine Issues of Fact Preclude Summary Judgment on the Basis of the Core Diameter Limitation

The following facts cannot be genuinely disputed:

- Claim 1 requires a center core of a diameter of at least 29 mm;

████████████████████████████████

- The parties agreed that "center core" means *an object* forming the center;

████████████████████████████████

- The only way the Acushnet's Pro V1 and Pro V1* golf ball models is argued to have a center core with a diameter of at least 29 mm, as required by claim 1, is to add the center core diameter to the outer core's thickness.



Thus, to fend off summary judgment on these balls, Bridgestone argues that Acushnet is ignoring the agreed upon claim construction for "center core." On the contrary, it is Bridgestone that ignores the agreed upon claim construction.

The parties agreed that "center core" means "an object forming a center of a golf ball." (D.I. 417 at p. 18). This construction does not encompass more than one object, as Bridgestone now attempts to re-write it. Rather, it requires *an object* (i.e., a single object) that forms the center of the golf ball, not multiple objects. To credit Bridgestone's twisted interpretation would allow one to point to the entire golf ball, up to the very outer cover, as the center.

The Court must decide whether Bridgestone can avoid the parties' agreed construction, and thus summary judgment on these balls, by its argument that the outer and inner core of the dual core balls can be added together to meet the '852 patent's requirement that the diameter of the "center core" be at least 29 mm. As explained in Acushnet's opening brief, they should not be allowed to do so. (D.I. 363, p. 11-13).

Indeed, Mr. Cadorniga's "because I say so" attempt to maintain infringement with this argument strains any reasonable interpretation of the claim term – an interpretation which in any event is for the Court, not Mr. Cadorniga. The '852 patent specifically describes and claims a "*center core*," not a "combined core," "a dual core," "center core with outer mantle," or even simply "a core." Bridgestone, itself, in other patents just as this one, clearly uses the term "center core" to describe the inner or center core of a dual core ball. For example in its U.S. Patent No. 4,919,434 (D.I. 363, at Ex. 4), Bridgestone specifically distinguishes the center core from the outer core, as shown below:

## FIG.2



In short, "center core" cannot include within its scope both the center core and outer core of a dual core ball. ████████████████████████████████████

████████████████████████████████████████

## III.    ACUSHNET DOES NOT LITERALLY INFRINGE THE THREE-PIECE BALL LIMITATION OF THE '852 PATENT

### A.    No Genuine Issues of Fact Preclude Summary Judgment on the Limitation of a Three-Piece Ball

Acushnet's dual core balls, the Pro V1x and Pro V1*, further do not infringe the '852 patent because a three-piece golf ball is required by the patent. Here, these are the facts (or legal issues, in the case of construction) that cannot be genuinely disputed:

- The preamble of claim 1 of the '852 requires a three piece golf ball with a center core, an intermediate layer and an outer cover;

- The specification repeatedly states that the invention relates to three-piece golf balls; and

████████████████████████████████████████

The only argument that Bridgestone makes in rebuttal is that the "three-piece" golf ball limitation of the preamble can be ignored because it should not be considered a limitation ████████████████████████████████████ Therefore, the only question, which is a legal question for the Court, is whether the preamble is a limitation.

A preamble must be considered as a limitation where it is needed to give meaning to the claim or properly define the invention, or where it recites an essential structure of the claim. *Bicon, Inc. v. Straumann Co.*, 441 F.3d 945, 952-53 (Fed. Cir. 2006) (finding preamble limiting because patentee chose to use both the preamble and the body to define the subject matter of the claimed invention). "If the body of the claim 'sets out the complete invention,' the preamble is not ordinarily treated as limiting the scope of the claim." *Id.* at 952 (citation omitted). However, if the preamble helps to determine the

9

scope of the patent claim, then it is construed as part of the claimed invention. *Bell Communications Research, Inc. v. Vitalink Communications, Corp.*, 55 F.3d 615, 620 (Fed. Cir. 1995) ("When the claim drafter chooses to use both the preamble and the body to define the subject matter of the claimed invention."); *Eaton Corp v. Rockwell International Corp.*, 323 F.3d 1332, 1339 (Fed. Cir. 2003) (when limitations in the body of the claim "rely upon and derive antecedent basis from the preamble, then the preamble may act as a necessary component of the claimed invention").

Whether a preamble is a claim limitation or only a statement of intended use is determined in light of the claim as a whole and the invention described in the patent. *See Bell Communications*, 55 F.3d at 621; *Catalina Mktg. Int'l, Inc. v. Coolsavings.com, Inc.*, 289 F.3d 801, 808 (Fed. Cir. 2001) (determined "on the facts of each case in light of the overall form of the claim, and the invention as described in the specification and illuminated in the prosecution history").

The preamble must be considered a limitation in this case, because it recites one of the most essential aspects of the structure of the invention, that the invention relates to a three-piece golf ball, a limitation that would otherwise be lost if strictly the body of claim 1 were considered. (*See* Ex. 1 – '852 patent, Claim 1 (body of claim nowhere referencing a three-piece golf ball). The entire patent is devoted to three-piece golf balls and speaks only of three-piece balls. The title is "***Three-Piece Solid Golf Ball.***" The Abstract begins by describing the invention as "A three piece solid golf ball." (Ex. 1 – '852 Patent, Abstract). The only figure depicts a three-piece golf ball. The written description also begins describing the invention as "relat[ed] to three-piece solid golf balls." (*Id.* at Col. 1, lines 6-7). Finally, the specification repeatedly emphasizes that the scope of the invention is limited to three-piece solid golf balls:

- "The present invention provides a three-piece solid golf ball comprising…" (*Id.* at Col. 2, lines 30-31)

- "Referring to Fig 1, there is schematically illustrated a typical three-piece solid golf ball according to the invention." (*Id.* at Col. 2, lines 48-49)

- "As is evident from Table 2, the three-piece solid golf balls of the present invention have a good balance of properties…" (*Id.* at Col. 5, lines 55-57)

- "There has been described a three-piece solid golf ball which includes…" (*Id.* at Col. 5, lines 61-62)

Bridgestone's argument against the preamble being a limitation is that it is not a limitation because the body of claim 1 fully defines the structure of the claimed invention, absent any contribution from the preamble. That is incorrect.

The body of claim 1 nowhere mentions a three-piece golf ball. A reader cannot even tell that a three-piece golf ball is claimed by reference strictly to the body of the claim. The body of the claim, with references to only cores, layers, hardnesses, thicknesses, specific gravity, and covers, could read on any number of devices with cores, layers, covers and the like, whether golf balls or other objects. It is therefore apparent that the inventors of the '852 patent used the preamble of claim 1 to more precisely define their invention. Indeed, one of the most stressed aspects of what this invention is – *that it relates to a three-piece solid golf ball* – would be lost if the preamble were not a limitation. "When the preamble is essential to understand limitation or terms in the claim body, the preamble limits claim scope." *Catalina Mktg.*, 289 F.3d at 808.

Because the overwhelming evidence shows that the preamble recites an essential structure of the claim, the preamble is limiting in this case.

## IV.    BRIDGESTONE IS NOT ENTITLED TO RELY ON DOCTRINE OF EQUIVALENTS TO PROVE INFRINGEMENT OF THE '852 PATENT

Proving infringement of multiple claim limitations under the doctrine of equivalents is rare. *London v. Carson Pirie Scott & Co.*, 946 F.2d 1534, 1538, 20 USPQ2d 1456, 1458-59 (Fed.Cir.1991) ("the doctrine of equivalents is the exception, ... not the rule.")  Furthermore, the golf ball art is a crowded one, as this Court has recognized.  Proving that multiple claim elements infringe the '852 patent in light of this crowded art is a highly difficult task that Bridgestone simply cannot accomplish.  This is especially true in view of the fact that the specification of the '852 patent expressly teaches away from being outside of the recited claim limitations. *Transco Products Inc. v. Performance Contracting, Inc.*, 792 F.Supp. 594, 602 (N.D.Ill. 1992) ("Doctrine of equivalents must be narrowly applied in crowded fields of invention."); *Data Race, Inc. v. Lucent Technologies, Inc.*, 73 F.Supp.2d 698, 740 (W.D.Tex. 1999) ("inventions in a crowded field are often restricted to a narrow range of equivalents, if any").

### A.    Bridgestone Cannot Recapture Alleged Equivalents Specifically Disclaimed In The '852 Patent

#### 1.    Undisputed Facts Show Acushnet's Motion Should Be Granted

There is no legitimate argument that the '852 patent criticizes intermediate layers that are less than 1mm thick and outer cover layers that are less than 1 mm thick or more than 3 mm thick.  Quoting directly from the patent, it states:

- "With a thickness of less than 1 mm, repulsion is lowered to reduce flying distance" (Ex. 1 – '852 Patent, col. 3, lines 33-34).

- "a cover less than 1mm thick is low in durability such as cut resistance" (*Id.* col. 3, lines 62-63).

- "a cover more than 3 mm thick is low in repulsion" (*Id.* col. 3, lines 60-11).

Bridgestone's expert admitted that the specification of the '852 patent teaches that intermediate layers of less than one are disfavored:

> Q:    The patent teaches, though, you will admit, that intermediate layers of less than one are disfavored; correct?
>
> A:    Yes, correct.

(Ex. 3 – 3/12/07 Cadorniga Tr. 161:4-7).

Bridgestone further cannot *legitimately* argue that the '852 patent limits itself to avoid intermediate and cover layers with the thicknesses that its specification criticized and which its own expert stated were disfavored. Quoting again from the patent, claim 1 requires a three-piece golf ball of a center core, intermediate layer and a cover, with "said intermediate layer having a thickness of at least 1 mm" and "said cover layer having a thickness of 1 to 3 mm." By specifically identifying intermediate and cover layers with thicknesses less than 1 mm, criticizing such layers as resulting in poor performance characteristics, and then specifically excluding them from the claims, Bridgestone has informed the public that the scope of its invention does not include them.

Here, the patentees' choice of claim terms has plainly, necessarily, and implicitly excluded from the scope of the patent the embodiment Bridgestone now seeks to capture through the doctrine of equivalents. *SciMed Life Systems, Inc. v. Advanced Cardiovascular Systems, Inc.*, 242 F.3d 1337 (Fed. Cir. 2001); *Senior Technologies, Inc. v. R.F. Technologies, Inc.*, 76 Fed. Appx. 318, 322 (Fed. Cir. 2003).

### 2.    Bridgestone's Opposition Motion Creates No Issues of Fact

In its opposition brief, Bridgestone presents a convoluted argument. Apparently, Bridgestone argues that the written description of the '852 patent does not act as a disclaimer of intermediate cover layers less than 1 mm or outer cover layers less than 1 mm, because the description does not contain a clear disavowal of the subject matter alleged to be disclaimed. (D.I. 417 at 23.) Bridgestone then argues that the

13

specifications criticisms of intermediate cover layers and outer cover layers less than 1 mm is nothing more than "a relative indication of a property that can be affected," as opposed to a disclaimer. (*Id.* at 25). From this wrong premise, Bridgestone then concludes that the mere fact that the '852 patent discloses various performance parameters as objectives "does not require that the claims be construed as limited to golf balls that are capable of achieving all of those objectives." (*Id.*).

There are numerous problems with Bridgestone's argument.

First, and most importantly, Bridgestone altogether ignores the most critical fact in this question, which is that in addition to whatever was said or not said in the written description, *the claims* of the '852 patent specifically exclude intermediate cover layers less than 1 mm and outer cover layers less than 1 mm and greater than 3 mm. It is difficult to imagine a clearer indication than that from the inventors that such layers are not part of their patent. *See General Am. Trans. v. Cryo-Trans, Inc.*, 93 F.3d 766, 770 (Fed. Cir. 1996) (no infringement by doctrine of equivalents because claim and specification limited invention to particular structure).

Moreover, in Bridgestone's cited cases the claims did not specifically exclude the materials sought to be disclaimed. Rather, in each instance they were broad enough to potentially encompass the material sought to be disclaimed, but did not do so explicitly. The issue was whether *the written description* of the patent nevertheless disclaimed the interpretation of that claim language so that it could not read on the material.

Bridgestone's primary reliance on *Liebel-Flarsheim Company, v. Medrad, Inc.*, 358 F.3d 898 (Fed. Cir. 2004) proves the point. In *Liebel-Flarsheim*, the defendant sought to limit the claims of a patent to devices that use "pressure jackets," despite that none of the claims in the patent recited the use of a pressure jacket. The defendant based his position solely on the fact that the embodiments in the specification all included the use of such pressure jackets. *Id.* at 905-6. In finding no disclaimer, the Court first noted the fact that the claims did not expressly require devices that used pressure jackets, and

14

then ruled that the absence of a structure in the specification that lacks a pressure jacket is not sufficient reason, by itself, to create a disclaimer. *Id.*

Bridgestone's *Liebel-Flarsheim* case is entirely different from the situation here, where ***the claims*** actually do exclude the structure sought to be disclaimed (intermediate and outer cover layers less than 1 mm thick) and where the specification specifically criticizes such thinner-layer structures as inferior to those claimed in the patent.

Bridgestone states in its brief that Acushnet relies primarily on *SciMed Life Systems, Inc. v. Advanced Cardiovascular Systems, Inc.*, 242 F.3d 1337 (Fed. Cir. 2001). While Bridgestone attempts futilely to distinguish this case, it does not even address any of the other cases cited by Acushnet in its opening brief, such as *Dolly, Inc. v. Spalding & Evenflo Cos.*, 16 F.3d 394, 400 (Fed. Cir. 1994) or *Athletic Alternatives, Inc v. Prince Manufacturing, Inc.*, 73 F.3d 1573 (Fed. Cir. 1996).

Moreover, Bridgestone's effort to distinguish *SciMed* falls way short. Bridgestone simply argues that *SciMed* is different because there the patent stated that "all embodiments of the present invention" were limited to the "coaxial catheter design." Therefore, Bridgestone essentially argues that without such express language present in the patent, there can be no disclaimer. This is not correct. In fact, in *Fiber Optic Designs, Inc. v. Seasonal Specialties, LLC*, 172 Fed. Appx. 995 (Fed. Cir. 2006), an unpublished case which Bridgestone relies on (D.I. 417, p. 24),[1] the Federal Circuit stated that the express language in *SciMed* was not the only basis for ruling in favor of

---

[1] The *Fiber Optics* case is easily distinguishable from the issues here. There, the defendants argued that there was a disclaimer of "current limiting circuitry" due to the patent's repetitious use of the phrase "without current limiting circuitry." *Fiber Optics*, 172 Fed. Appx. at 998-999. The Court failed to find a disclaimer, however, because the patent also included several references and suggestions for the use of current limiting circuitry. Based on the examples in the specification showing the use of such current limiting circuitry, the Court held that there was no disclaimer. *Id.* That is simply not the case here, where there are no references, examples, or suggestions to use intermediate layers or cover layers that are less than 1 mm thick. The only reference to such layers is when the patent is criticizing them as negatively affecting performance and durability.

disclaimer, and that there are a number of other cases where the specification was found to limit claims in the absence of comparable explicit language. *Id.* at 999; *Bicon, Inc. v. Straumann Co.*, 441 F.3d 945, 955-56 (Fed. Cir. 2006); *Honeywell, Int'l Inc. v. ITT Indus., Inc.*, 425 F.3d 1312, 1321 (Fed. Cir. 2006) (holding that the doctrine of equivalents did not apply where the specification disavowed the materials used in accused products); *Astrazeneca AB v. Mut. Pharm. Co., Inc.*, 384 F.3d 1333, 1342 (Fed. Cir. 2004) (holding that doctrine of equivalents could not recapture subject matter the specification criticized and thus, disavowed); *Edwards Sys. Tech., Inc. v. Digital Control Sys., Inc.*, 99 Fed. Appx. 911, 921, 2004 WL 1153662 (Fed. Cir. 2004); *General Am. Transp.*, 93 F.3d at 770; *see also Biogen, Inc. v. Berlex Labs., Inc.*, 318 F.3d 1132, 1139-40 (Fed.Cir.2003); *Watts v. XL Sys., Inc.*, 232 F.3d 877, 882-83 (Fed. Cir. 2000); *Cultor Corp. v. A.E. Staley Mfg. Co.*, 224 F.3d 1328, 1331 (Fed. Cir. 2000); *Toro Co. v. White Consol. Indus., Inc.*, 199 F.3d 1295, 1301-02 (Fed. Cir. 1999); *Modine Mfg. Co. v. U.S. Int'l Trade Comm'n*, 75 F.3d 1545, 1550-51 (Fed. Cir. 1996).

This is a straight-forward case of disclaimer. The specification specifically identifies and criticizes intermediate and cover layers less than 1 mm thick. Then, the claims are specifically drafted to avoid encompassing such. The patentees' choice of claim terms has plainly, necessarily, and implicitly excluded from the scope of the patent the embodiment Bridgestone now seeks to capture through the doctrine of equivalents.

### 3.    Bridgestone Mischaracterizes the Objectives of the '852 Patent

Bridgestone also argues that there is no indication in the '852 patent that golf balls with intermediate layers and cover layers less than 1 mm thick are not part of the '852 patent. Bridgestone states that "the patent merely indicates that either repulsion is lowered or the cover may be low in durability" with such layers, and that there is no "indication that these stated affects to these attributes result in a golf ball that is not practicing the invention of the '852 patent." (D.I., p. 22-23).

16

This statement ignores, however, the fact that the claims of the '852 patent, which is what defines the invention, specifically require the intermediate and outer cover layers to be at least 1 mm thick. In light of this, it is impossible to comprehend Bridgestone's position that covers less than 1 mm thick is still within the invention.

In any event, Bridgestone's statement that there is no indication in the '852 patent that a ball with intermediate and outer cover layers less than 1 mm will "somehow fail to achieve the objects of the invention" (*id.* at 23) lacks candor.

To support its argument, Bridgestone attempts to recast the stated objectives of the invention as solely related to a golf ball with improved feel and controllability. This is not the entire story. As stated repeatedly in the patent, the objectives also include a golf ball with no sacrifice of flying performance and durability:

- The ball has a good total balance of properties in that feeling and controllability are improved at no sacrifice of flying performance and durability. (Ex. 1 – '852 Patent, Abstract).

- The invention relates to "three-piece solid golf balls which are improved in feeling on impact, controllability and durability." (*Id.*, Col. 1, lines 6-8).

- In connection with a solid golf ball ... the inventors have found that by ... controlling the size ... of the core, intermediate layer and cover, the center core can be made relatively soft to improve feeling and controllability without deteriorating flying performance and durability. The feeling and controllability can be improved in a favorable way. (*Id.*, Col. 2, lines 3-12).

- There has been described a three-piece solid golf ball which includes a core, intermediate layer, and cover having a controlled size ... so that the ball has a good total balance of properties ... to ensure a pleasant feeling and controllability at no sacrifice of flying performance and durability. (*Id.*, Col. 5, lines 60-66).

The '852 patent clearly states that such objectives are not met with intermediate and outer cover layers less than 1 mm thick. For example, it states that with an intermediate layer less than 1 mm repulsion is lowered to reduce flying distance. (Ex. 1 – '852 Patent, Col. 3, lines 33-34). Therefore, the stated objective that there is no sacrifice

of flying performance would not be met with such a ball.  Furthermore, the patent states that when the intermediate layer (with controlled size) is formed of a high repulsion ionomer resin, the hitting feel and controllability can be further improved.  (Ex. 1– '852 Patent, Col. 2, lines 25-29).

Similarly with respect to outer cover layers, the specification states that cover layers less than 1 mm thick are low in durability and that cover layers more than 3 mm are low in repulsion (which according to the patentees results in decreased distance). Again therefore, the patentees teach that the object of the invention is not met with such cover layers because there is a sacrifice to both flying performance and durability.

Hence, it is clear that none of the accused Acushnet products can be found to infringe under the doctrine of equivalents.  The '852 patent specifically identified golf ball covers with a thickness less than 1mm, proceeded to criticize such covers as resulting in poor performance characteristics, and then intentionally and specifically excluded such covers from the claims.  It is well established that in such circumstances, the doctrine of equivalents cannot be used to recapture the criticized embodiment.

### B.    Cadorniga Admitted That He Did Not Conduct An Analysis Under The Doctrine Of Equivalents

Finally, Bridgestone's expert, Mr. Cadorniga, admitted during deposition that he did not conduct any analysis under the doctrine of equivalents with respect to the cover thickness limitations of the '852 patent.  Despite asking Mr. Cadorniga several times about his doctrine of equivalents analysis, Mr. Cadorniga effectively ended the deposition questioning by flatly admitting that he was not relying on doctrine of equivalents for the claim limitations related to intermediate and outer cover layer thickness.

Bridgestone rightly characterizes this testimony as remarkable in light of the fact that Mr. Cadorniga devoted several pages to this analysis in his expert report.  (D.I. 417, pg. 21).  Bridgestone states in its opposition brief that, "When asked what his opinion

was regarding the doctrine of equivalents, Mr. Cadorniga did not respond by saying 'I didn't do one.'" (D.I. 417, at 21).

<u>Intermediate Layer Thickness Limitation</u>

Q:



(Ex. 3 – 3/12/07 Cadorniga Tr. 166:22-167:3, 182:6-13; *see also* 182:19-183:10).



**C.     Bridgestone's Failure To Disclose Infringement Contentions Precludes Them From Relying On The Doctrine of Equivalents**

To the extent Bridgestone is able to argue doctrine of equivalence, despite the law, and then also able to rely on the doctrine of equivalents argument contained in Mr. Cadorniga's report, despite that he admitted he did not actually do any such analysis, Bridgestone should still be precluded from asserting infringement under the doctrine of equivalents. Bridgestone should be precluded because it failed to identify the factual bases in support of any such argument in response to Acushnet's contention

interrogatories in fact discovery. (*See* D.I. 295 at 6-8 and Ex. Q; *see also* D.I. 363, p. 16-17). This misled Acushnet away from taken factual discovery, such as from the inventors, about the broad-ranging, very substantially-varied assertions we now hear from Bridgestone for the first time in this case concerning the scope of the '852 patent.

Throughout fact discovery, Bridgestone stated verbatim through its contentions only that "to the extent the claim is not literally infringed, it is infringed under the Doctrine of Equivalents, because any difference would be insubstantial." (D.I. 295 at Ex. A). No other details or facts were provided. Although Bridgestone completely ignores this argument in its opposition brief, the deliberate game of hide the ball perpetrated by Bridgestone should work to preclude, it from asserting the doctrine now.

## V.    CONCLUSION

For all of the foregoing reasons, Acushnet respectfully requests the Court to grant its Motion for Summary Judgment of Non-Infringement on the '852 Patent.

Respectfully submitted,

POTTER ANDERSON & CORROON LLP

OF COUNSEL:

Alan M. Grimaldi
Joseph P. Lavelle
Kenneth W. Donnelly
HOWREY LLP
1299 Pennsylvania Ave., N.W.
Washington, DC 20004
Telephone: (202) 783-0800

Dated: May 11, 2007
Public Version Dated: May 18, 2007
796512/28946

By:  */s/ David E. Moore*
Richard L. Horwitz (#2246)
David E. Moore (#3983)
Hercules Plaza, 6th Floor
1313 N. Market Street
P.O. Box 951
Wilmington, DE 19899-0951
(302) 984-6000
rhorwitz@potteranderson.com
dmoore@potteranderson.com

*Attorneys for Defendant*
*Acushnet Company*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

### CERTIFICATE OF SERVICE

I, David E. Moore, hereby certify that on May 18, 2007, the attached document was hand delivered to the following persons and was electronically filed with the Clerk of the Court using CM/ECF which will send notification to the registered attorney(s) of record that the document has been filed and is available for viewing and downloading:

Jack B. Blumenfeld
Maryellen Noreika
Leslie A. Polizoti
Morris, Nichols, Arsht & Tunnell
1201 N. Market Street
Wilmington, DE  19801

I hereby certify that on May 18, 2007, I have Electronically Mailed the documents to the following:

Robert M. Masters
Paul, Hastings, Janofsky & Walker LLP
875 15th Street, N.W.
Washington, D.C.  20005
RobMasters@paulhastings.com

/s/ David E. Moore
Richard L. Horwitz
David E. Moore
Potter Anderson & Corroon LLP
Hercules Plaza – Sixth Floor
1313 North Market Street
P.O. Box 951
Wilmington, DE  19899-0951
(302) 984-6000
rhorwitz@potteranderson.com
dmoore@potteranderson.com

680012 / 28946