## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| BRIDGESTONE SPORTS CO., LTD., and BRIDGESTONE GOLF, INC., | ) ) ) | |
| Plaintiffs, | ) ) | C. A. No. 05-132 (JJF) |
| v. | ) ) | **PUBLIC VERSION** |
| ACUSHNET COMPANY, | ) ) | |
| Defendant. | ) | |

## ACUSHNET'S REPLY MEMORANDUM IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT OF INVALIDITY OF U.S. PATENT 6,634,961

Richard L. Horwitz (#2246)
David E. Moore (#3983)
POTTER ANDERSON & CORROON LLP
Hercules Plaza, 6th Floor
1313 North Market Street
P. O. Box 951
Wilmington, DE  19899-0951
Tel:  (302) 984-6000
rhorwitz@potteranderson.com
dmoore@potteranderson.com

OF COUNSEL:

Alan M. Grimaldi
Joseph P. Lavelle
Kenneth W. Donnelly
HOWREY LLP
1299 Pennsylvania Avenue, N.W.
Washington, DC  20004
Tel:  (202) 783-0800

Dated:  May 11, 2007
Public Version Dated:  May 18, 2007
796513/28946

*Attorneys for Defendant*
*Acushnet Company*

**TABLE OF CONTENTS**

**Page**

I.    INTRODUCTION ...................................................................................................1

II.   ACUSHNET IS NOT RELYING ON ANY NEW INVALIDITY
      THEORY ...............................................................................................................1

III.  NESBITT '940 DISCLOSES THE USE OF ORGANOSULFUR
      COMPOUNDS .......................................................................................................3

IV.   NEO CIS 40 SATISFIES ALL OF THE CLAIM
      REQUIREMENTS FOR THE POLYBUTADIENE RUBBER
      REQUIRED BY CLAIM 2 .....................................................................................6

V.    NESBITT '940 DISCLOSES A GOLF BALL WITH THE
      HARDNESS VALUES CLAIMED BY THE '961 PATENT ..................................8

VI.   NESBITT '940 DISCLOSES A BASE RUBBER
      FORMULATION CLAIMED BY THE '961 PATENT .........................................11

VII.  THE '961 PATENT IS OBVIOUS .......................................................................14

      1.   The Base Rubber Composition .......................................................................14

      2.   Organosulfur Limitation ................................................................................15

      3.   Shore D Hardness Limitations .......................................................................16

VIII. CONCLUSION....................................................................................................17

# TABLE OF AUTHORITIES

## CASES

*3M Innovative Properties Co. v. Avery Dennison Corp.*,
    350 F.3d 1365 (Fed. Cir. 2003)...................................................................13

*Advanced Display System, Inc. v. Kent State University*,
    212 F.3d 1272 (Fed. Cir. 2000)....................................................................4

*Atlas Powder Co. v. Ireco Inc.*,
    190 F.3d 1342 (Fed. Cir. 1991)....................................................................7

*Callicrate v. Wadsworth Manufacturing, Inc.*,
    427 F.3d 1361 (Fed. Cir. 2005)...................................................................13

*Crown Operations International, Ltd. V. Solutia*,
    289 F.3d 1367 (Fed. Cir. 2002)....................................................................7

*Glaxo Group Ltd. v. Apotex, Inc.*,
    376 F.3d 1339 (Fed. Cir. 2004).....................................................................2

*Habasit Belting Inc. v. Rexnord Industrial, Inc.*,
    340 F. Supp. 2d 518 (D. Del. 2004).............................................................13

*KSR, International Co. v. Teleflex, Inc.*,
    No. 04-1350 (April 30, 2007) ....................................................................14

*LG.Phillips LCD Co. Ltd. v. Tatung Co.*,
    434 F. Supp. 2d 292 (D. Del. 2006).............................................................13

*Markman v. Westview Instruments, Inc.*,
    52 F.3d 967 (Fed. Cir. 1995), *aff'd* 517 U.S. 370 (1996)..............................8

*Mehl/Biophile International Corp. v. Milgraum M.D.*,
    8 F. Supp. 2d 434 (D. N.J. 1998) .................................................................7

*N. America Container, Inc. v. Plastipak Packaging, Inc.*,
    415 F.3d 1335 (Fed. Cir. 2005)...................................................................13

*Perricone v. Medicis Pharm. Corp.*,
    432 F.3d 1368 (Fed. Cir. 2005)....................................................................7

*Prima Tek II, L.L.C. v. Polypap, S.A.R.L.*,
    412 F.3d 1284 (Fed. Cir. 2005)...................................................................13

*Rocep Lusol Holdings Ltd. v. Permatex, Inc.*,
    470 F. Supp. 2d 448 (D. Del. 2007)..............................................................................4

*Security First National Bank of Los Angeles v. Lutz*,
    322 F.2d 348 (9th Cir. 1963) ......................................................................................8

*In re Spada*,
    911 F.2d 705 (Fed.Cir.1990).........................................................................................2

*Titanium Metals v. Corp. of America v. Banner*,
    778 F.2d 775 (Fed. Cir. 1985)......................................................................................7

*Webster v. Offshore Food Service, Inc.*,
    434 F.2d 1191 (5th Cir. 1970) .....................................................................................8

## STATUTES

35 U.S.C. § 102(e) ..................................................................................................................1

35 U.S.C. § 103...................................................................................................................1, 14

Fed. R. Civ. P. 56(c) ...............................................................................................................2

## I.    INTRODUCTION

Acushnet Company ("Acushnet") submits this reply memorandum in support of its summary judgment motion of invalidity of U.S. Patent No. 6,634,961 ("the '961 patent") (Ex. 1). Acushnet's opening brief showed that the asserted claim of the '961 patent is anticipated or made obvious by a single prior art patent, U.S. Patent No. 6,612,940 ("the Nesbitt '940 patent") (Ex. 2), and therefore invalid under 35 U.S.C. § 102(e) and/or §103. In its opposition to Acushnet's motion, Bridgestone musters no credible argument or set of disputed facts to create a genuine fact dispute and preclude summary judgment in favor of Acushnet. Hence, Acushnet's motion should be granted.

## II.    ACUSHNET IS NOT RELYING ON ANY NEW INVALIDITY THEORY

Acushnet carefully demonstrated in its opening brief that every limitation of claim 2 of the '961 patent is taught by the embodiment of Nesbitt '940 disclosed in Tables 30, 34 and 37 of that prior art patent. Bridgestone's primary argument in response to Acushnet's demonstration is a procedural one. Bridgestone argues – in three different sections of its twenty-page brief – that "Acushnet does not rely on the embodiment from the U.S. Patent No. 6,612,940 to Nesbitt on which its expert opined" and cannot file a summary judgment argument based on matter not discussed by its expert. (*E.g.*, D.I. 421 at 1). Bridgestone's argument is wrong, factually and legally.

Bridgestone's '961 patent claims a specific core formulation with an intermediate and outer cover layer within certain hardness ranges. In explaining why the '940 patent invalidates the '961 patent, Acushnet's expert Dr. Koenig cited in his report Tables 6, 34 and 37 of the Nesbitt '940 patent. Table 6 describes a core formulation, with a mix of rubbers, and Tables 34 and 37 describe the hardness values of an intermediate and outer cover layer of a golf ball. As a simple core-and-cover combination, this would infringe

the '961 patent, but for the fact that it long pre-dates the '961 patent. It therefore invalidates the '961 patent.

In rebuttal to Dr. Koenig's report, Bridgestone's expert Dr. Coughlin argued that there is no evidence that Tables 6, 34 and 37 of the Nesbitt '940 patent represents a single embodiment of that invention. According to Dr. Coughlin, Dr. Koenig was relying on more than one example described in Nesbitt '940. (Ex. 3 – 2/20/07 Coughlin Report at 26). Even if this were true, which it is not, the fact that Dr. Koenig found all of the elements from Nesbitt by looking at more than one example does not defeat anticipation. There is no requirement that each claim limitation be found in a single example. *See Glaxo Group Ltd. v. Apotex, Inc.*, 376 F.3d 1339, 1349 (Fed. Cir. 2004) ("[A]nticipation requires that all limitations of the claimed invention are described in a single reference, rather than a single example in the reference."); *In re Spada*, 911 F.2d 705, 708 (Fed.Cir.1990).

Nevertheless, in response to Dr. Coughlin's argument, Dr. Koenig testified that his ultimate opinion did not relying strictly on Tables 6, 34 and 37, but that other tables in the patent were also useful to his analysis:

> Q    And you do not specifically refer to any other embodiments for a core formulation; is that correct?
>
> A    Now, there are other tables in that patent that are -- are useful, and table six is the one that's in this document, yes.

(Ex. 4 – 3/15/07 Koenig Tr. 108:2-7).

Dr. Koenig testified particularly that he was also relying on Table 30:

> Q.    So, in order to show anticipation of the '961 patent, you intend to rely on both table six and table 30?
>
> A.    Yes.[1]

---

[1] Rule 56(c) states that "the judgment sought shall be rendered forthwith if the pleadings, *depositions*, answers to interrogatories, … show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

(Ex. 4 – 3/15/07 Koenig Tr. 352:10-13).

Table 30 is substitutable for Table 6 in all material aspects of claim 2 of the '961 patent, but the only difference is that the Nesbitt patent specifically states that Table 30's core recipe was combined with the covers disclosed in Tables 34 and 37, thereby rebutting any argument that the specific combination cited by Dr. Koenig in his expert report was only achieved by picking and choosing from different embodiments.

In fact, Bridgestone's expert testified that he agrees that Tables 30, 34 and 37 represent a single embodiment (Ex. 5 – 3/6/07 Coughlin Tr. 250:10-22), and Bridgestone does not dispute that in its current motion. Bridgestone's expert also testified that he agrees that all substantive aspects of claim 2 of the '961 patent (i.e., the rubber, zinc oxide, zinc diacrylate and triganox 42-40B) are represented in *both* Tables 6 and 30 in amounts within the '961 patent's claims. (Ex. 5 – Coughlin Tr. 252:4-16)

Therefore, this whole argument is much ado about nothing, and more than anything else all it does is highlight the weakness of Bridgestone's position that it so heavily features this in its opposition brief. Furthermore, there is no requirement that an expert report contains every basis for a summary judgment motion, and Bridgestone cites no case law to support such a proposition. Therefore, Bridgestone's argument must fail.

## III.    NESBITT '940 DISCLOSES THE USE OF ORGANOSULFUR COMPOUNDS

Bridgestone's argument with respect to the organosulfur limitation is similarly futile in fending off Acushnet's motion. Bridgestone argues that because the specific tables relied on by Dr. Koenig in the Nesbitt patent (Tables 6 and 30) do not explicitly list an organosulfur compound, the Nesbitt '940 patent cannot anticipate the '961 patent.

Simply pointing out that Tables 6 and 30 do not physically list an organosulfur compound, however, does not change the fact that the Nesbitt patent specifically teaches by incorporation that organosulfur compounds can be added to all of its core formulations. Specifically, the Nesbitt '940 patent states that "the dithiocarbonates [sic]

3

set forth in U.S. Patent No. 4,852,884 may also be incorporated into the polybutadiene compositions of the present invention." (Ex. 2 – Nesbitt '940, col. 13, lines 25-32). Bridgestone does not dispute that the dithiocarbamates identified in U.S. Patent No. 4,852,884 are organosulfur compounds. Nor does it challenge what the law is: "that material incorporated by reference in a document may be considered in an anticipation determination." *Advanced Display Sys., Inc. v. Kent State Univ.*, 212 F.3d 1272, 1282 (Fed. Cir. 2000) (citations omitted). Although Bridgestone makes much of the fact that Dr. Koenig admitted that Tables 6 and 30 do not show an organosulfur compound, this point has never been challenged by either Acushnet or Dr. Koenig; and under the law it certainly does not negate the fact that the Nesbitt '940 patent expressly teaches by incorporation by reference the use of organosulfur compounds in its core formulations.

Bridgestone argues meritlessly that because Nesbitt states that the organosulfur compounds *may be* added, not *must be* added, it is "legally insufficient to show anticipation." (D.I. 421, pg. 13). Bridgestone offers no legal support for this position. Not surprisingly, courts have held that such a disclosure *is* legally sufficient. *See Rocep Lusol Holdings Ltd. v. Permatex, Inc.*, 470 F. Supp. 2d 448, 455-56 & n.6 (D. Del. 2007) (granting summary judgment of anticipation, rejecting the argument that an alternative embodiment regarding a potential use of a disputed limitation was non-anticipatory).

Moreover, Bridgestone ignores that its own expert, based on this provision, admitted that the Nesbitt '940 patent includes an "indirect" teaching of using an organosulfur compounds in a core formulation. (Ex. 5 – Coughlin 3/6/07 Tr. 203:17-204:11) Bridgestone also fails to address that Dr. Coughlin admitted that the use of organosulfur compounds in a golf ball core composition was well known even before the Nesbitt '940 and Bridgestone '961 patents (Ex. 5 – Coughlin 3/6/07 Tr. 209:5-10).

Bridgestone's other attempts at arguing that the '940 patent does not disclose an organosulfur compound, which Bridgestone brings up in passing, are easily dismissed. Bridgestone argues that Nesbitt does not use an organosulfur in an amount which would

satisfy the requirements of the '961 patent. (D.I. 421, pg. 13). The '961 patent requires
0.1 to 5 parts of an organosulfur compound. As Acushnet explained in its opening brief,
Nesbitt states that the organosulfur compounds incorporated by reference into its core
formulations *are used in the amounts indicated in the incorporated patent.* (Ex. 2 –
Nesbitt '940, col. 13, lines 29-32). The incorporated patent, Sullivan '884, discloses that
the organosulfur compounds can be included in amounts between 0.1 to 0.5 parts by
weight. (D.I. 367, at Ex. 10 – Sullivan '884, at col. 2, lines 44-48). This is entirely
within the claimed range for organosulfur compounds in the '961 patent.

Bridgestone also states in its opposition brief that the type of organosulfur
disclosed in Nesbitt is different from those disclosed in the '961 patent. Again, as
discussed in Acushnet's opening brief, and ignored by Bridgestone, the '961 patent is not
limited to any specific type of organosulfur compounds; the claim requires "0.1 to 5 parts
by weight of an organosulfur compound." Furthermore, the specification of the '961
patent explicitly states that "exemplary organosulfur compounds include … organosulfur
compounds having 2 to 4 sulfurs." (Ex. 1 – '961 Patent, at col. 7, lines 44-51). The
organosulfur compounds of Nesbitt' 940 are organosulfur compounds with 2 sulfurs:

The dithiocarbamate component of the core compo-
sition is selected from those compounds of the formula

$$\begin{bmatrix} R_1 \\ \diagdown \\ \diagup \\ R_1 \end{bmatrix} N—C—S \atop \|S \end{bmatrix}_x Me$$

Bridgestone's attempts to raise an issue of fact are unavailing. Nesbitt '940
clearly teaches the organosulfur limitation of the '961 patent.

**IV.    NEO CIS 40 SATISFIES ALL OF THE CLAIM REQUIREMENTS FOR THE POLYBUTADIENE RUBBER REQUIRED BY CLAIM 2**

Bridgestone next argues that Neo Cis 40 rubber, disclosed in the core formulations throughout the Nesbitt patent, cannot satisfy the Mooney viscosity requirement for the second polybutadiene of claim 2 of the '961 patent. Bridgestone does not dispute that Neo Cis 40 meets all of the other limitations of the second polybutadiene. The relevant facts are undisputed, rendering the question suitable as a matter of law:

- Neo Cis 40 has a published Mooney viscosity of 43 +/- 5 (*i.e.*, 38 to 48)

- Neo Cis 40 meets the requirements of the '961 patent with Mooney viscosities from 40.8 through 48

- Bridgestone's own expert, Dr. Coughlin, admitted that Neo Cis 40 rubber *would have* a nominal or average Mooney viscosity of 43, consistent with what is published and stated by the manufacturer

- The manufacturer of Neo Cis 40 represents that this rubber's Mooney viscosity is 43

- Dr. Coughlin also admitted that Neo Cis 40 *would have* Mooney viscosities throughout the entire range, specifically stating that it *would have* Mooney values at the upper end of the range 38 to 48.

Given these undisputed facts, the only issue to be decided on this limitation is whether Bridgestone may avoid invalidity by anticipation by arguing that the Neo Cis 40 rubber may also have strands of polymer whose Mooney viscosity is in the extreme lower end of the published range of Mooney viscosity values (*i.e,* 38 to 40.8), where the Mooney viscosity of those strands does not satisfy the '961 patent. Bridgestone's expert proffered this argument in his expert report but in deposition admitted that it raises a legal question. (Ex. 5 – 3/6/07 Coughlin Tr. 239:4-15).

Particular to this is the undisputed fact that any given piece of Neo Cis 40 rubber will have a bell curve distribution of Mooney viscosity values, based on the "ensemble" character of the polymer that makes up the rubber. (Ex. 5 – Coughlin 3/6/07 Tr. 68:9-

20). The bell curve distribution has an average or nominal viscosity of 43, but Mooney viscosities of lesser or greater value may appear in the rubber at the focused molecular level. (Ex. 5 – Coughlin 3/6/07 Tr. 240:20-22).

The simple fact that one could, as Bridgestone's expert described, go in with "microscopic tweezers" and search for strands of the polymer making up the Neo Cis 40 rubber and find material with a Mooney viscosity under 40.8, is not sufficient to defeat summary judgment. (Ex. 5 – Coughlin 3/6/07 Tr. 240:11-16). The undisputed evidence, supported by Bridgestone's own expert, is that Neo Cis 40 *"would have"* an average Mooney viscosity of 43 and *"would have"* sections of the rubber where the Mooney viscosity is in the upper end of the range. Based on this evidence, there is no question that Neo Cis BR40 satisfies the claimed relationship between solution viscosity and Mooney viscosity. *See Titanium Metals v. Corp. of Am. v. Banner*, 778 F.2d 775, 781 (Fed. Cir. 1985) ("A single disclosure within a claimed genus range is, as a matter of law, anticipatory."); *Perricone v. Medicis Pharm. Corp.*, 432 F.3d 1368, 1377 (Fed. Cir. 2005) (concluding that a prior art reference anticipated when approximately 50% of the disclosed range overlapped with the claimed range); *Atlas Powder Co. v. Ireco Inc.*, 190 F.3d 1342, 1346 (Fed. Cir. 1991) (stating that "when a patent claims a chemical composition in terms of ranges of elements, any single prior art reference that falls within each of the ranges anticipates the claim"); *Mehl/Biophile International Corp. v. Milgraum M.D.*, 8 F.Supp.2d 434 (D. N.J. 1998) (finding anticipation where the prior art and the asserted patent claim substantially overlapped).

Bridgestone relies on *Crown Operations International, Ltd. V. Solutia*, 289 F.3d 1367 (Fed. Cir. 2002). This case states that inherency cannot be established by probabilities or possibilities. Whether Neo Cis 40 has a Mooney viscosity over 40.7 is not, however, just a probability, it is a certainty. As Dr. Coughlin, Bridgestone's expert stated, *"Nominally, you can expect if you were buying, for example, a Neocis 40, that the Mooney viscosity is going to be a nominal value of about 43."* Dr. Coughlin further

7

admitted that "*You would have materials that would be at the upper end [of the range 38 to 48]*" (Ex. 5 – Coughlin 3/6/07 Tr. 240:20-22). Bridgestone's attempt to create a genuine issue of fact over this issue is futile.

## V.    NESBITT '940 DISCLOSES A GOLF BALL WITH THE HARDNESS VALUES CLAIMED BY THE '961 PATENT

The entire issue with respect to Shore D hardness is whether the '961 patent requires its Shore D hardness values to be made "off the ball." This issue is a question of law for the Court as well. The Court is charged to determine the scope and meaning of the claims as a matter of law. *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 976 (Fed. Cir. 1995) (en banc), *aff'd* 517 U.S. 370 (1996).

The claims of the '961 patent require the inner cover layer to have a Shore D hardness of 50 to 80 and an outer cover layer to have a Shore D hardness of 35 to 60. There is no mention in the claims that the hardness values must be measured off the ball. In fact, the *only* support Bridgestone has for its "off the ball" limitation argument is one sentence from the specification that states that the "Shore D hardnesses of the inner cover layer and the outer cover layer were measured with a durometer by the test method described in ASTM D 2240." (Ex. 1 – '961 Patent, col. 12:54-57).

Bridgestone's sole reliance on this one sentence is misplaced. The specification, read as a whole, shows that the hardness values in the '961 patent are actually "on the ball" measurements, just like those found in the Nesbitt patent. This is not surprising, as it is common knowledge in the golf ball industry that Shore D hardness measurements are made in accordance to the ASTM D 2240 method, but are made "on the ball." (*See* D.I. 367, pg. 19-23 and attached Ex. 11 – 4/13/07 Dalton Declaration). Bridgestone ignores this evidence in its opposition brief, as it does its own expert's testimony that is contrary to Bridgestone's argument: "I don't see anywhere in here where it says that they must be measured by that [standard]." (Ex. 5 – 3/6/07 Coughlin Tr. 242:21-243:19). *Webster v. Offshore Food Service, Inc.*, 434 F.2d 1191, 1193 (5th Cir. 1970); *Security First National*

8

*Bank of Los Angeles v. Lutz*, 322 F.2d 348, 355 (9th Cir. 1963) ("the trier may not act arbitrarily in disregarding uncontradicted and entirely probable testimony of witnesses whose qualifications and judgment have not been discredited").

Bridgestone fails to address the fact that, in column 9 of the '961 patent, the specification expressly defines the "inner cover layer" and "outer cover layer" of the claimed golf ball (the Shore D hardness of which is spoken to in claim 1) as *"cover layers"* produced from known *"cover stock."*

> The golf ball of the invention is a multi-piece solid golf ball having a cover composed of at least two layers which are referred to herein as the "inner cover layer" and the "outer cover layer." *Such cover layers can be produced from known cover stock.* The cover stocks used to make both cover layers in the inventive golf ball may be composed primarily of a thermoplastic or thermoset polyurethane elastomer, polyester elastomer, ionomer resin, ionomer resin having a relatively high degree of neutralization, polyolefin elastomer or mixture thereof.

(Ex. 1 – '961 Patent, col. 9, lines 14-24).

As argued in Acushnet's opening brief, this draws a clear distinction between *"cover layer"* and *"cover stock."* The cover stock is the material off the ball. The cover layer is what is formed on the ball as a layer. (Ex. 1 – '961 Patent, col. 9:14-28). Claim 1 is clearly directed to the Shore D hardness of the "cover layer," and not the "cover stock." The only way to measure the "cover layer" is by conducting an "on the ball" measurement.

In its opening brief, Acushnet also provided compelling evidence and testimony from one of ordinary skill in the art, which has now gone unrebutted as well, that the '961 patent's Shore D hardness requirements are not limited to "off the ball" testing and that the values listed in Nesbitt '940 are reliable.

Bridgestone's attempt to explain how its expert can properly rely on "on the ball" data provided by Acushnet to reach an infringement opinion, yet at the same time argue that such data is unreliable for purposes of invalidity lends even greater weight to

Acushnet's position. Bridgestone cannot on one hand state that such information proves infringement, yet on the other hand say it is irrelevant for an invalidity analysis.

Indeed, Bridgestone's attempt to marginalize this inconsistency, by stating that Dr. Coughlin relied on Acushnet's "on the ball" data merely to "bolster" his opinion (D.I. 421, pg. 17)[2], advances nothing for Bridgestone. To make this argument is to recognize that the Shore D hardness values "on the ball" are not too different from "off the ball" measurements, because otherwise there would be no basis for such information to "bolster" Dr. Coughlin's infringement opinion. Bridgestone can hardly dispute this fact nonetheless, since it did not dispute any of Acushnet's evidence discussed in its opening brief with respect to this issue, and further did not provide any evidence of its own. (D.I. 367, pg. 19-24). Moreover, Dr. Coughlin testified that he did no analysis on this subject whatsoever, and further had no experience with Shore D hardness measurements. (Ex. 5 – 3/6/07 Coughlin Tr. 137:20-138:3, 142:16-143:2).

If the values between "off the ball" and "on the ball" will not significantly differ, as Bridgestone suggests, then even under Bridgestone's improper claim construction, the Nesbitt Shore D measurements would still show Shore D hardness values within the claimed ranges. This position is further supported by the deposition testimony of Mr. Dalton, who stated that the difference would be about 3 or 4 Shore D points. (D.I. 367, at Ex. 13 – 7/21/06 Dalton Tr. 161:12-17).

The claims of the '961 patent require the inner cover layer have a Shore D hardness of 50 to 80 and the outer cover layer have a Shore D hardness of 35 to 60. The Nesbitt patent discloses hardness values right in the middle of these broad ranges (~70 for

---

[2] Bridgestone further states that Dr. Coughlin relies primarily on Acushnet's response to a request for admission that the accused balls have the claimed Shore D hardness values. This lawyer statement, however, is unsupported by anything in Dr. Coughlin's report or deposition. Moreover, Acushnet's response to the request for admission was based on "on the ball" data. To the extent such data is deemed unreliable, then Acushnet's response to the request for admission must be retracted.

the inner cover and ~46 for the outer cover), thereby necessitating a large difference for there to be any affect to the invalidity determination. There is therefore no genuine issue of fact that Nesbitt '940 discloses a golf ball with cover hardness values within the ranges claimed by the '961 patent.

## VI.    NESBITT '940 DISCLOSES A BASE RUBBER FORMULATION CLAIMED BY THE '961 PATENT

Bridgestone's final effort to raise a genuine issue of fact relates to whether the Nesbitt patent discloses a base rubber composition within the scope of the '961 patent.

Claim 1 of the '961 patent requires a base rubber to be composed of (a) 20 to 100 weight percent polybutadiene synthesized using a rare earth catalyst; and (b) 0 to 80 weight percent of a diene rubber other than polybutadiene (a). Claim 2 further requires that the diene rubber (b) include 30 to 100 weight percent of a second polybutadiene with certain additional material properties, including having a Mooney viscosity under 55.

The disclosures of the Nesbitt patent are undisputed. Table 30 of Nesbitt discloses a core with 30 wt % of Neo Cis BR60, 30 wt % of Neo Cis BR40, and 40 wt % of Cariflex 1220x. (D.I. 367, pg. 8).

As explained in its opening brief, Neo Cis BR60 satisfies all of the limitations of the first polybutadiene (a) of claim 1 of the '961 patent, and Neo Cis BR40 satisfies all of the limitations of the second polybutadiene (b) of claim 2. (D.I. 367, pg. 9-14).

Bridgestone's response is to argue that the '961 patent does not permit three polybutadience rubbers, as used in Nesbitt. This presents a legal question for summary judgment: what is the proper construction of the '961 patent? Here, Bridgestone changes its arguments from those presented in its expert report, attempts to get a do-over on claim construction, and improperly seeks to read in a limitation from the specification to narrowly avoid the otherwise invalidating reference of Nesbitt.

Bridgestone argues that although the '961 patent can be composed of three different rubbers (a position contrary to its previous position and that of its expert[3]) it cannot be composed of three different *polybutadiene* rubbers. Bridgestone advances this theory by changing its position with respect to the agreed proper claim construction for the '961 patent's "diene rubber (b)" limitation.

Previously Bridgestone and its expert stated that "(b) 0 to 80 wt % of a diene rubber other than component (a)" should simply be afforded its plain and ordinary meaning. (Ex. 3 – 2/20/07 Coughlin Report, pg. 11). Now, it argues that this language should be further construed to mean that "diene rubber (b)" can be composed of, at most, just one type of polybutadiene. Bridgestone argues that any additional rubber must be a different type of diene rubber, such as styrene-butadiene rubber or natural rubber. This is certainly not the plain and ordinary meaning of this claim language, nor is it even close to Bridgestone's and its expert's initial position with respect to this claim limitation.

In any event, Bridgestone's only support for its new theory is the statement in the specification that "specific examples of the diene rubbers (b) include polybutadiene rubber, styrene-butadiene rubber (SBR), natural rubber, polyisoprene rubber, and ethylene-propylene-diene rubber (EPDM). Any one or combination of two or more of thereof may be used." (Ex. 1 – '961 patent, col. 5, lines, 56-60).

This statement, however, cannot be read to exclude from the claim all diene rubbers composed of two types of polybutadiene rubber. This language simply provides examples of the claimed "diene rubber" that may be used in practicing this invention and further states that any one of these types of rubber can make up the diene rubber (b).

---

[3] Previously, Bridgestone argued that the '961 patent was limited to essentially two base rubbers, polybutadiene (a) and diene rubber (b), based on the patent's use of the claim term "composed of." Dr. Coughlin further argued, based on this understanding, that the diene rubber (b) must meet the under 55 Mooney viscosity requirement of claim 2. (Ex.3 – 2/20/07 Coughlin Report, pg. 21). After recanting that position in his deposition (Ex. 5 – 3/6/07 Coughlin Tr. 199:8-200:12), Bridgestone developed a new claim construction in opposition to Acushnet's summary judgment motion.

There is no basis for interpreting this language as excluding combinations of different types of polybutadiene rubber.

Even if Bridgestone's strained interpretation of the specification were correct, it would still be improper to use that interpretation to read in an additional claim limitation. *Callicrate v. Wadsworth Mfg., Inc.*, 427 F.3d 1361, 1367 (Fed. Cir. 2005) (rejecting an interpretation based on additional descriptive language in the specification where the limiting language was not included in the claim); *N. Am. Container, Inc. v. Plastipak Packaging, Inc.*, 415 F.3d 1335, 1348 (Fed. Cir. 2005) (district court erroneously imported the specification's recommended dimensions for a commercial embodiment of the invention into the claims); *Prima Tek II, L.L.C. v. Polypap, S.A.R.L.,* 412 F.3d 1284, 1289 (Fed. Cir. 2005) (stating that it has repeatedly made clear that limitations should not be read into the claims); *3M Innovative Properties Co. v. Avery Dennison Corp.,* 350 F.3d 1365, 1371 (Fed. Cir. 2003) (stating that the rule against importing limitations from the specification into the claim must be strictly enforced, particularly where the specification provides a the clear definition of the claim term); *LG.Phillips LCD Co. Ltd. v. Tatung Co.,* 434 F. Supp. 2d 292, 300 (D. Del. 2006) (rejecting the interpretation that would import limits from the specification into the claim); *Habasit Belting Inc. v. Rexnord Indus., Inc.,* 340 F. Supp. 2d 518, 525 (D. Del. 2004) (refusing to interpret a term to include additional features described in the specification where the claim did not require such features).

It is clear that the actual claim of the '961 merely requires that the base rubber be composed of 0 to 80 weight percent diene rubber other than the rubber that accounts for component (a) (a rare earth catalyzed rubber, such as Neo Cis BR60). Bridgestone admits that this can be more than just one rubber; the only limitation is that all of the rubber be within the diene rubber family. There is no dispute that polybutadiene rubber is within that family. Thus, the Nesbitt patent's disclosure of a core formulation made of three different polybutadiene rubbers is within the scope of the '961 patent.

13

## VII.    THE '961 PATENT IS OBVIOUS

As shown above, there are no genuine issues of material fact precluding Acushnet's motion that the '961 patent is anticipated by the Nesbitt patent. However, to the extent any of the limitations of claims 1 or 2 are not anticipated, they are still invalid based on obviousness. 35 U.S.C. § 103.

Since the filing of Acushnet's opening summary judgment brief, the Supreme Court decided the case of *KSR, Int'l Co. v. Teleflex, Inc.*, No. 04-1350, slip op. (April 30, 2007) (Ex. 6). In *KSR*, the Supreme Court held that the Federal Circuit's long standing application of the "teaching, suggestion or motivation" test for obviousness is not a proper application of the obviousness rules set forth in case law under 35 U.S.C. § 103. The Supreme Court's decision announces a common-sense approach to obviousness that significantly changes the law related to obviousness.

In its opposition brief, Bridgestone does not cite any legal authority at all in its attempt to rebut Acushnet's obviousness arguments, but does argue that Nesbitt "does not *suggest* replacing Neo Cis 40 with BR-1220." Under *KSR*, however, Bridgestone's argument that a reference must "suggest" the combination is no longer good law.

### 1.    The Base Rubber Composition

As explained in the opening brief, it was well known prior to the '961 patent that a golf ball core could be made by combining a polybutadiene rubber synthesized using a rare earth catalyst with another polybutadiene rubber made with a low Mooney viscosity. In fact, Bridgestone's own expert admitted as much during his deposition. (Ex. 7 – 3/12/07 Cadorniga Tr. 81:2-9). Bridgestone attempts to marginalize Mr. Cadorniga's admission by stating that "he was not addressing each and every limitation of the ['961 patent] or addressing the merits of the [Nesbitt patent]. (D.I. 421, pg. 17). The response to this must be, so what? Mr. Cadorniga still admitted that the specific combination of rubbers claimed by the '961 was previously known – since 1989 – 12 years *before* the filing of the '961 patent. (Ex. 7 – 3/12/07 Cadorniga Tr. 81:2-9).

Furthermore, Bridgestone's argument that it would not have been obvious to remove Cariflex 1220x and replace it with a lower Mooney viscosity rubber stems from a false premise that it needs to be removed in the first place. Cariflex 1220x is a diene rubber within the scope of the '961 patent's "diene rubber (b)" requirement. Therefore, there is no need to remove Cariflex 1220x from Nesbitt in order to anticipate the '961 patent.

*Presuming* Bridgestone's argument is correct and the base rubber composition disclosed in Tables 6 and 30 does not anticipate the '961 patent because it does not disclose a rubber that satisfies the low Mooney viscosity requirement of claim 2, (which it does, as discussed fully above with respect to Neo Cis 40 rubber) then it would have been obvious to add such a rubber to the core formulations described in Nesbitt.

Nesbitt specifically states that a low Mooney viscosity rubber, such as Cariflex BR-1220 (which is a different rubber than Cariflex 1220x) can be included in his invention: "The compositions of the present invention may also utilize other polybutadiene resins .... For example, Cariflex BR-1220 polybutadiene from Shell Chemical … may be utilized…" (Ex. 2 – Nesbitt Patent, Col, 9, lines 41-45). Bridgestone does not dispute that this rubber satisfies the low Mooney viscosity requirement. (Ex. 8 – 1/16/07 Coughlin Report, pg. 12-14).

Therefore, to the extent Nesbitt '940 does not explicitly disclose a golf ball formulation with the blend of rubbers described in the '961 patent, it would have been obvious based on the disclosures in Nesbitt '940 and the knowledge of one of ordinary skill in the art to formulate such a blend. (Ex. 9 – Koenig 1/16/07 Report, pg. 33-36).

### 2.     Organosulfur Limitation

Bridgestone cannot dispute that it was well-known by 2002 that the addition of organosulfur compounds were beneficial to the manufacture of golf balls. Its own '652 patent, which was filed in the U.S. on May 10, 1990, stated that:

15

> the inventors have found that when an organic sulfur compound … is added to the rubber composition, there is obtained a rubber composition that can be vulcanized into a rubbery elastomer having improved rebound resilience. If a one piece golf ball or a multi-layer golf ball core is formed from this rubber composition, the resulting golf ball exhibits an increased initial velocity upon hitting and improved flying performance. The present invention is predicated on this finding.

(D.I. 367, at Ex. 19, '652 patent col. 1, lines 46-56).

This is not, as Bridgestone asserts, "legal argument," but rather evidence that the use of organosulfur was well known prior to the '961 patent – a fact that its own expert does not deny. (Ex. 5 – 3/6/07 Coughlin Tr. 209:5-10).

Therefore, to the extent one were to conclude that Nesbitt '940 does not disclose using a sulfur compound in the formulation of golf ball cores, such use was well known in the prior art, and would have been obvious to one of ordinary skill in the art to include a sulfur compound. (Ex. 9 – Koenig 1/16/07 Report, pg. 35-36).

### 3.    Shore D Hardness Limitations

To the extent the Nesbitt '940 does not disclose the Shore D hardness limitations of the '961 patent, because its measurements were made "on the ball," it would have been obvious to one of ordinary skill in the art to use a cover with "off the ball" hardness values similar to or the same as those disclosed in Nesbitt '940. (Ex. 2 – Nesbitt '940, at Tables 34 and 37). As acknowledged by Bridgestone in its opposition brief, "on the ball" measurements are reliable indications of "off the ball" measurements, as Bridgestone's expert, Dr. Coughlin, specifically relied on "on the ball" measurements to "bolster" his opinion that Acushnet's accused products infringed the '961 patent. (D.I. 421, pg. 17).

The disclosure of Nesbitt '940 shows that the use of covers with hardness ranges within the ranges claimed by the '961 patent were well known in the golf ball industry, well before the '961 patent. Thus, it would have been obvious to one of ordinary skill in the art to include a cover as disclosed in the '961 patent.

16

## VIII.  CONCLUSION

Therefore, for all of the foregoing reasons, Acushnet requests that its Motion for

Summary Judgment of Invalidity of '961 Patent be granted.

Respectfully submitted,

POTTER ANDERSON & CORROON LLP

OF COUNSEL:

Alan M. Grimaldi
Joseph P. Lavelle
Kenneth W. Donnelly
HOWREY LLP
1299 Pennsylvania Avenue, N.W.
Washington, DC  20004
Tel:  (202) 783-0800

Dated:  May 11, 2007
Public Version Dated:  May 18, 2007
796513/28946

By:   _/s/ David E. Moore_
     Richard L. Horwitz (#2246)
     David E. Moore (#3983)
     Hercules Plaza, 6th Floor
     1313 N. Market Street
     P.O. Box 951
     Wilmington, DE  19899-0951
     (302) 984-6000
     rhorwitz@potteranderson.com
     dmoore@potteranderson.com

*Attorneys for Defendant*
*Acushnet Company*

17

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

## CERTIFICATE OF SERVICE

I, David E. Moore, hereby certify that on May 18, 2007, the attached document was hand

delivered to the following persons and was electronically filed with the Clerk of the Court using

CM/ECF which will send notification to the registered attorney(s) of record that the document

has been filed and is available for viewing and downloading:

Jack B. Blumenfeld
Maryellen Noreika
Leslie A. Polizoti
Morris, Nichols, Arsht & Tunnell
1201 N. Market Street
Wilmington, DE 19801

I hereby certify that on May 18, 2007, I have Electronically Mailed the documents to the

following:

Robert M. Masters
Paul, Hastings, Janofsky & Walker LLP
875 15th Street, N.W.
Washington, D.C. 20005
RobMasters@paulhastings.com

/s/ David E. Moore
Richard L. Horwitz
David E. Moore
Potter Anderson & Corroon LLP
Hercules Plaza – Sixth Floor
1313 North Market Street
P.O. Box 951
Wilmington, DE 19899-0951
(302) 984-6000
rhorwitz@potteranderson.com
dmoore@potteranderson.com

680012 / 28946