**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

BRIDGESTONE SPORTS CO., LTD.,  )
and BRIDGESTONE GOLF, INC.,    )
                               )    C. A. No. 05-132 (JJF)
    Plaintiffs,          )
                               )
    v.                   )    **PUBLIC VERSION**
                               )
ACUSHNET COMPANY,              )
                               )
    Defendant.           )


**ACUSHNET COMPANY'S REPLY MEMORANDUM
IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT OF
<u>INVALIDITY OF U.S. PATENT NO. 6,679,791</u>**


Richard L. Horwitz (#2246)
David E. Moore (#3983)
POTTER ANDERSON & CORROON LLP
Hercules Plaza, 6th Floor
1313 North Market Street
P. O. Box 951
Wilmington, DE  19899-0951
Tel:  (302) 984-6000
rhorwitz@potteranderson.com
dmoore@potteranderson.com

*Attorneys for Defendant
Acushnet Company*

OF COUNSEL:

Alan M. Grimaldi
Joseph P. Lavelle
Kenneth W. Donnelly
HOWREY LLP
1299 Pennsylvania Avenue, N.W.
Washington, DC  20004
Tel:  (202) 783-0800

Dated: May 11, 2007
Public Version Dated:  May 18, 2007
796515/28946

## TABLE OF CONTENTS

I.      INTRODUCTION ...................................................................................................1

II.     THE CLAIMS AT ISSUE ARE NOT ENABLED. ................................................2

        A.      The Knowledge of Those of Skill in the Art................................................3

        B.      Core Gradient Chemistry Is Unpredictable.................................................4

        C.      Core Chemistry Is Not a "Mechanical" Art.................................................5

        D.      The '791 Patent Does Not Support the Entire Claimed
                Range. ..........................................................................................................6

III.    CLAIMS 13, 16 AND 26 OF THE '791 PATENT ARE INVALID ....................9

IV.     CONCLUSION....................................................................................................12

# TABLE OF AUTHORITIES

## CASES

*AK Steel Corp. v. Sollac & Ugine,*
  344 F.3d 1234 (Fed. Cir. 2003)..........................................................................2

*Amgen, Inc. v. Chugai Pharmaceutical Co.,*
  927 F.2d 1200 (Fed. Cir. 1991)........................................................................10

*Atofina v. Great Lakes Chem. Corp.,*
  411 F.3d 991, 996 (Fed. Cir. 2006)..................................................................10

*In re Fisher,*
  427 F.2d 833 (C.C.P.A. 1970) ...........................................................................1

*Genentech Inc. v. Novo Nordisk A/S,*
  108 F.3d 1361 (Fed. Cir. 1997)..........................................................................1

*KSR Int'l Co. v. Teleflex, Inc.,*
  127 S.Ct. 1727, 82 U.S.P.Q.2d 1385 (U.S. 2007)..........................................4, 7

*Liebel-Flarsheim Co. v. Medrad, Inc.,*
  Nos. 06-1156, 06-1157, 2007 U.S. App. LEXIS 6607
  (Fed. Cir. Mar. 22, 2007) ..........................................................................2, 9, 11

*Lizardtech, Inc. v. Earth Resource Mapping, Inc.,*
  424 F.3d 1336 (Fed. Cir. 2005)......................................................................9, 11

*Markman v. Westview Instr.,*
  517 U.S. 370 (1996) ........................................................................................10

*Phillips v. AWH Corp.,*
  415 F.3d 1303 (Fed. Cir. 2005 (en banc)........................................................10

*Spectra Physics Inc. v. Coherent, Inc.,*
  827, f.2d 1524 (Fed Cir. 1987) .......................................................................5, 7

*Tronzo v. Biomet, Inc.,*
  156 F.3d 1154 (Fed. Cir. 1998).........................................................................9

## STATUTES AND REGULATIONS

35 U.S.C. § 103.........................................................................................................4

35 U.S.C. § 112........................................................................................................11

Defendant, Acushnet Company ("Acushnet"), files this reply memorandum in support of its motion for summary judgment that U.S. Patent No. 6,679,791 (the "'791 patent") is invalid.

## I.    INTRODUCTION

Acushnet's Opening Brief demonstrated that claims 11, 13, 16 and 26 of the '791 patent are not enabled and therefore invalid. Acushnet's motion was based primarily on the intrinsic evidence of the '791 patent and the admissions made by both of Bridgestone's experts that the art of manufacturing golf balls with specific core gradients is highly unpredictable. (*See* Acushnet's Memorandum in Support of Its Motion for Summary Judgment of Invalidity of U.S. Patent No. 6,679,791 ("D.I. 381") at 5-7, 11-13).

The Federal Circuit case law is clear that where the claimed invention is the application of an unpredictable technology, an enabling description in the specification must provide those skilled in the art with a specific and useful teaching. *See Genentech Inc. v. Novo Nordisk A/S,* 108 F.3d 1361, 1367-68 (Fed. Cir. 1997); *see also In re Fisher,* 427 F.2d 833, 839 (C.C.P.A. 1970). In its Opening Brief, Acushnet demonstrated as a matter of law that:

- the '791 patent does not enable the manufacture of a gradually increasing core gradient at any hardness greater than 22;

- the '791 patent does not enable all cores with a core gradient of greater than 22; and

- the '791 patent does not teach one of ordinary skill in the art to make cores with any core gradients other than the fairly narrow range of 23-24.

Bridgestone's opposition wholly fails to rebut this showing, or to show that fact disputes exist that make the motion inappropriate for summary judgment. Essentially, Bridgestone argues that the patent concerns a *mechanical invention*, despite the fact that

it is clearly directed to the chemistry of golf balls cores. Second, Bridgestone argues that in *mechanical arts* a single example can support a broad claim to a range. From this, it concludes, despite a raft of contrary testimony from its own experts, that the few examples of core gradients of 22 or 23 in the '791 support a claim to the broad range of "greater than 22" and that the "critical" "gradually increasing" hardness profile is supported despite the fact that the patent does not say a word about how to generate this critical feature.

Bridgestone's arguments are ultimately hollow and should be rejected as a matter of law. Critically, it does not create a genuine fact dispute on any point that would preclude judgment of invalidity as a matter of law on the legal issue of enablement.

## II.    THE CLAIMS AT ISSUE ARE NOT ENABLED.

As Acushnet pointed out in its Opening Brief, the '791 patent contains three example of the invention (Examples 1-3), all of which have a hardness gradient of 23 or 24 degrees. (D.I. 381, Ex. 1 at Col 7, Table 3). The patent does not state whether these examples have a "gradually increasing" hardness profile, and no example of the invention exists that discloses or teaches this supposedly "critical" feature of the invention.

Moreover, while the art is not predictable according to Bridgestone's own experts, there is nothing in the patent that explains how to make core gradients at any gradient other than 23-24. Nor do the examples disclose all of the parameters that are necessary to determine the hardness profile as described by Bridgestone's experts. (*See* D.I. 381, Ex. 9 - 3/15/07 Calabria Tr. at 91-92). The patent nowhere explains how or why these examples result in a core gradient with a core gradient within the claim limitation, or why other examples do not. (D.I. 381, Ex. 1 at Col. 6, Table 3). As a result, the '791 patent is invalid. *See* D.I. 381, Ex. 11 - *Liebel-Flarsheim Co v. Medrad, Inc.*, Nos. 06-1156, 2007 U.S. App. LEXIS 6607, at *23 (Fed. Cir. Mar. 22, 2007); *AK Steel Corp. v. Sollac & Ugine*, 344 F.3d 1234 (Fed. Cir. 2003), and other exemplary cases cited *supra* at 9.

Also as described by Acushnet in its Opening Brief, the '791 patent contains no disclosure whatsoever of many parameters that Bridgestone's experts admit are needed to determine the properties of the core gradient (D.I. 381 at 10-13). For example, the '791 patent does not disclose the mold size, mold geometry, mold pressure, heat application technique, or mixing parameters. (D.I. 381 at 11). Bridgestone's experts admit that one skilled in the art needs to know all of these parameters to determine the core gradient. (D.I. 381, Ex. 9 - 3/15/07 Calabria Tr. at 96-100).

Bridgestone's contrary arguments are unavailing. We discuss each below.

### A.    The Knowledge of Those of Skill in the Art.

Bridgestone argues that Acushnet was required to offer testimony as to what one of ordinary skill in the art would understand "at least 22" to mean and that the record does not demonstrate whether one of skill in the art would appreciate whether the entire range of the claim is supported. (Bridgestone's Opposition to Acushnet's Motion for Summary Judgment of Invalidity of U.S. Patent No. 6,679,791 ("D.I. 419")). This argument is not well taken.

As to the issue of claim construction, neither party has contended that the expression "at least 22" requires a claim construction. Plainly, "at least 22" means just that – the core gradient has to be at least 22. Nor is it material to determine the precise upper end of the range. Whether the theoretical upper limit of hardness gradients for single (or even dual) cores that could be made is 30, 40, 50 or something else even higher, is not material to this motion. The '791 patent does not teach how to make cores with gradients of 30, 40, 50 or anything higher. It does not teach enough even for the experts to agree how to apply it at higher gradients, as the briefing here shows. Thus, there is no need for a further claim construction to determine that this patent is invalid.

With regard to what one of ordinary skill in the art would understand, Acushnet has relied extensively on the admissions of Bridgestone's own experts. As Bridgestone

3

has noted elsewhere, these experts have over 30 years of experience making golf balls. Their candid admission that the chemistry of golf ball cores is unpredictable is conclusive against Bridgestone here.[1]

## B.    Core Gradient Chemistry Is Unpredictable.

It is somewhat unbelievable that Bridgestone could actually make the statement "Acushnet provides no factual support for th[e] assertion" that core gradients are unpredictable, but it does. (*See* D.I. 419 at 15).[2] The factual record, however, is rife with Bridgestone's own experts opining about the unpredictability of core gradients and the many factors one of ordinary skill in the art would need to know in order to determine the core gradient in a golf ball core – which Acushnet points out in its opening brief and in its opposition to Bridgestone's motion. (*See* D.I. 381, Ex. 7- 2/20/2007 Calabria Report at App. C, ¶¶ 24-27; D.I. 381, Ex. 9 - 3/15/07 Calabria Tr. at 69:4 - 69:9; 71:12 - 73:7; 96:1- 101:24; 264:2 - 271:6 (factors relevant to the formation of a core gradient include the core size, how the materials are mixed before molding, including sequencing of materials and time parameters and temperature profiles, and information regarding the ball core press, including the geometry of the press mold, and the number, shape, and layout of mold cavities); D.I. 381, Ex. 10 - 3/12/07 Cadorniga Tr. 235:3-235:6 (Mr.

---

[1] Indeed, Bridgestone's position on the validity of this patent seems utterly hopeless. The only way to prevail on this motion is for it to convince the Court that core gradient chemistry is predictable. However, if that were so, the patent is clearly invalid under the decision in *KSR v. Teleflex,* as the patent is just a modest change from the prior art '707 patent, just moving to a slightly higher core gradient. If this step is predictable, the '791 patent is invalid under 35 U.S.C. § 103 as obvious, and Acushnet would request the right to brief this argument under KSR.

[2] Bridgestone spends many pages discussing the fact that Acushnet's experts, Dr. Felker and Dr. Koenig, discuss the fact that gradients in rubber have existed from the first time rubber articles were fabricated, that rubber articles were well-known in rubber chemistry and that Dr. Felker opines that gradients were well-known in the golf ball prior art. This is true. However, this does not create a factual dispute as to whether the art of core gradients was predictable for purposes of this motion.

Cadorniga again concurs that without a detailed understanding of a particular core's manufacturing process, one cannot assume what the hardness is at an internal point of that core relative to its surface without testing that particular point); *see generally*, D.I. 381 at 5-7; 11-13).

Bridgestone argues that core gradients are well known, and that the adequacy of its disclosure must be judged against this background. (D.I. 419 at 15-16). This argument is not persuasive. It is correct, and undisputed apparently, that the prior art showed cores with various core gradients, including gradients higher than 22. (D.I. 419 at 6-7). The experts all agree that core gradients higher than 22 were known. (D.I. 419 at 6-7).

The fact that prior art exists in an area, of course, does not render an art predictable. There are over 3 billion people on earth, yet genetic engineering remains unpredictable and mysterious. Similarly here, the fact that core gradients form when cores are made does not render the art predictable, or show that Bridgestone knew or disclosed how to consistently make core gradients with "gradually increasing" profiles in the '791 patent. Bridgestone's experts, with over 30 years of experience in the golf ball art, concede the art is not predictable. The Court need not second guess that conclusion.

### C.    Core Chemistry Is Not a "Mechanical" Art.

Bridgestone makes the fairly desperate argument that the '791 patent is a "mechanical" patent and that in mechanical arts, which are generally more predictable, a narrow disclosure can sometimes support a broad range, citing *Spectra-Physics*. (D.I. 419 at 16-17). *Spectra Physics Inc. v. Coherent, Inc.*, 827 F.2d 1524 (Fed. Cir. 1987).

One need only read the '791 patent to assure himself that the technology at issue is the chemistry of making golf ball cores. If anything else is really needed, Bridgestone's Mr. Calabria, in his expert report, stated that core hardness profiles are "*dependent on the chemistry employed* in preparing the rubber, the time and temperature

of the parameters during molding as well as the size of the cavities and pressure used to form the cores." (D.I. 381, Ex. 7, 2/20/2007 Calabria Report at 12) (emphasis added). Bridgestone does not advance its cause by trying to portray this admittedly chemical patent as a mechanical one.

### D.    The '791 Patent Does Not Support the Entire Claimed Range.

Bridgestone argues, as it must, that the three examples in the specification, which show gradients of only 22 and 23, enable one to practice the entire claimed range. (D.I. 419 at 18-23). These arguments are not persuasive.

To rely on the examples of the patent to enable the entire range of "at least 22," Bridgestone must confront the testimony of its experts, who admitted that much greater specificity is needed to predict a core gradient than in present in the '791 patent. (D.I. 381 at 5-8 and *passim*). According to Bridgestone, the Court should not take these admissions at face value because the admissions were made "in connection with" an argument about inherency, not enablement. (D.I. 419 at 20-21).

Bridgestone's argument can be readily rejected. One need only read the testimony in question of Mr. Calabria to see that the witness was asked, and responded directly to, questions related to what one of ordinary skill in the art would need to be able to determine a hardness gradient. (*E.g.*, D.I. 381, Ex. 9, 3/15/2007 Calabria Tr. at 96-101). Mr. Cadorniga, who incidentally says he has over 30 years of experience in the golf ball art, substantially agreed that without testing, core gradients cannot be predicted without detailed knowledge of the manufacturing process. (See D.I. 381 at 6). None of this testimony was "limited" to an inherency argument. Mr. Calabria agreed that this testimony applied fully and in toto to the patents in suit:

> Q:    I take it that your testimony about one skilled in the art and what they would need to know to understand the hardness profile, that the same factors that one skilled in the art would

6

> need to know to understand EP 043 would be true of any other patent that one skilled in the art reviewed?
>
> A:    I think that's a fair statement.
>
> Q:    Right.    I mean, you're not keeping two sets of books for Bridgestone patents and for prior art patents, are you?
>
> A:    No.
>
> ****************
>
> Q:    [Y]our testimony about one skilled in the art would need to know to understand the [prior art] applies equally to the patents in suit in this case?
>
> A:    Yes.

(D.I. 381, Ex. 9 3/15/07 Calabria Tr. at 101:20 -104:4).

Bridgestone's experts agree – the art of core gradients is unpredictable – no matter what patent is in question; and Bridgestone cannot argue otherwise.    Without this argument at its disposal, all of Bridgestone's arguments based on the ***predictable*** nature of the art fail as well.[3]

Clearly, if art is as unpredictable as Bridgestone's experts admit, the handful of examples in the patent showing  a gradient of 22 or 23 do not enable the entire range of "at least 22" claimed in the patent.    Similarly, none of the examples state whether they teach a "gradually increasing" hardness profile, a feature the patent says is critical to the invention.    Failure to teach how to make a "critical" aspect of the invention alone invalidates this patent.

---

[3] If the Court denies Acushnet's motion on the basis of *Spectra-Physics* or the predictability of the art, Acushnet requests that the Court order that Bridgestone is judicially estopped from arguing that the art of core gradients is unpredictable at any subsequent juncture of the case.    Specifically, Bridgestone should be estopped from arguing that the art of core gradients is unpredictable in the context of its non-obviousness position in connection with the Supreme Court obvious standard under *KSR Int'l Co. v. Teleflex, Inc, No*, 127 S.Ct. 1727, 82 U.S.P.Q.2d 1385 (U.S. 2007).

The '791 patent repeatedly states the need for a gradually increasing hardness profile. In fact, the '791 patent's specification goes so far as to state:

> ***It is critical for the core to have an optimized hardness profile in which the hardness gradually increases radially outward from the center toward the outside edge or surface of the core.***

(D.I. 381 Ex. 1 at Col. 3, ll. 26 – 30 (emphasis added)).

Bridgestone claims, however, that this section ***does not*** mean that it is critical to have a core with an optimized hardness profile in which the hardness gradually increases radially outward from the center to toward the outside edge or surface of the core, but only that it is critical to have an "optimized hardness profile," seemingly just ignoring the "gradually increasing" phrase in the sentence. (D.I. 419 at 27). For its position, Bridgestone cites the portion of the specification that reads:

> [t]he core center and surface must have a difference between their respective measured JIS-C hardness of at least 18, preferably at least 20, and most preferably at least 22 units.

(D.I. 381, Ex. 1 at Col. 4, 11, 1-5). This proves nothing about whether or not the gradually increasing hardness profile is critical or not. Nor does it provide evidence of a factual dispute.

The specification clearly describes the invention with a core having "a hardness which gradually increases radially." The summary of the invention describes the invention as having a core that has a "hardness which gradually increases radially." (D.I. 381, Ex. 1 at Col. 1, ll. 41-43). The detailed description of the invention describes the only illustrated embodiment as having a core "which gradually increases radially outward from the center C to the surface S." (*Id.* at Col. 2, ll. 6-9). Moreover, the improved flight distance of the stated invention is attributed in part to the gradually increasing hardness of the core from the center to the surface. (*Id.* at Col. 4, ll. 1-10). During prosecution,

8

Bridgestone distinguished prior art that had a decreasing hardness profile. (*See* D.I. 381, Ex. 6 at p. 7).[4]

Significantly, Acushnet also pointed out that specification of the '791 patent states that a gradually increasing hardness profile is "critical" for the invention. (D.I. 381, Ex. 1 at Col. 3, lines 26-30). Yet there is not a word, anywhere in the patent, as to how to form a core with a "gradually increasing" hardness profile. The patent fails to teach this "critical" step in the carrying out of the invention. As the performance of this step is neither routine nor predictable, this failing alone is adequate to invalidate the patent. *See* D.I. 381, Ex. 11 - *Liebel-Flarsheim* at *19; *Lizardtech, Inc. v. Earth Resource Mapping, Inc.*, 424 F.3d 1336, 1345 (Fed. Cir. 2005); *Tronzo v. Biomet, Inc.*, 156 F.3d 1154, 1159 (Fed. Cir. 1998).

The Court should reject Bridgestone's arguments and find the '791 patent invalid as a matter of law as not enabling the full scope of the claimed range.[5]

### III.    CLAIMS 13, 16 AND 26 OF THE '791 PATENT ARE INVALID

In its Opening Brief, Acushnet demonstrated that even if the court finds that the '791 patent is not invalid for the reasons stated above, at least asserted claims 13, 16 and 26 are invalid for lack of enablement if they are construed not to include the limitation "said elastic core has a hardness which gradually increases radially outward." (D.I. 381 at p. 14-15).

---

[4] Bridgestone incorrectly claims that a reference cited during the prosecution of the '791 patent, U.S. Patent No. 5,803,833 to Nakamura, had a gradually increasing hardness gradient. Bridgestone actually overcame an obviousness rejection by distinguishing this reference as having a ***decreasing*** hardness gradient. (*See* D.I. 381, Ex. 6 at p. 7).

[5] Bridgestone does rely on its old standby argument that Acushnet failed to timely disclose the factual bases for its enablement defense, but, as Bridgestone recognizes, Acushnet did disclose an enablement defense in its interrogatory responses. (D.I. 419 at 9-10).

Further, the specification clearly shows that although independent claims 13 and 24 (from which claim 26 depends) do not specifically require the gradient to be "gradually increasing" every piece of intrinsic evidence leads to the unambiguous conclusion that a "gradually increasing" core profile is what the inventors claimed to have invented. (*See* D.I. 381, Ex. 1 at Col 3, ll. 26-29; Col. 4, ll. 1-8; Col. 2, ll. 6-9). Bridgestone fails to identify anything in the specification of the '791 patent that guides or teaches one of ordinary skill in the art how to make a core with a hardness profile that gradually decreases or remains consistent. There is nothing.

Bridgestone first argues that Acushnet relies only on attorney argument. This is without merit. As Bridgestone is well aware, claim construction is a legal issue "exclusively within the province of the court." *Markman v. Westview Instr.*, 517 U.S. 370, 372 (1996). When construing a claim, the court should focus primarily on the intrinsic evidence of the patent, which includes the language of the claims, the specification and the prosecution history. *Atofina v. Great Lakes Chem. Corp.*, 441 F.3d 991, 996 (Fed. Cir. 2006). Extrinsic evidence, such as expert testimony, is generally considered less reliable than the intrinsic record. *Phillips v. AWH Corp.*, 415 F.3d 1303, 1317 (Fed. Cir. 2005) (en banc). Further, whether a claimed invention is enabled is also a question of law. *Amgen, Inc. v. Chugai Pharmaceutical Co., Ltd.*, 927 F.2d 1200, 1212 (Fed. Cir. 1991). Therefore, it is not necessary for Acushnet to have one of its experts opine on this issue.

Bridgestone then argues that Acushnet's construction of the claims and reading of specification is wrong based on their own interpretation of the specification described on pages 7-9, *supra*. Bridgestone's twisted interpretation of the specification is untenable and clearly goes against the plain language of the specification.

Finally, Bridgestone contends that Acushnet is raising this issue for the first time. However, Acushnet specifically raised this argument in its November 2, 2006 Opening Brief in Support of Its Opening Claim Construction (D.I. 230 at 25, 26), and again at the

*Markman* hearing on November 29, 2006. (*See* D.I. 254, *Markman* Tr. at 99:7-102:8). Bridgestone's mantra of Acushnet's allegedly tardy defenses is once again simply an unsuccessful attempt to divert the Court from the fact that Bridgestone cannot dispute Acushnet's evidence of invalidity.

Acushnet's evidence is undisputed. Since the '791 patent specification teaches away from a core that does not have a gradually increasing hardness profile, and the prosecution history indicates that such a core was not what the inventors intended to claim at the time of filing, unless claims 13, 16 and 24 are construed to include the limitation, they are invalid under Section 112 as broader than the disclosed invention. *See* D.I. 381, Ex. 11 - *Liebel-Flarsheim*, at *23; *Lizardtech*, 424 F.3d at 1346-47.

Therefore, Acushnet is entitled to summary judgment of invalidity for claims 13, 16, and 26 because those claims are not enabled.

## IV.    CONCLUSION

For all of the foregoing reasons, as well as those in its Opening Brief, Acushnet requests that its motion for summary judgment be granted. The '791 patent is invalid because it fails to fulfill the enablement requirement of 35 U.S.C. §112, ¶1. In the alternative, at least claims 13, 16 and 26 are invalid as not enabled if the claims are construed not to include the limitation "said elastic core has a hardness which gradually increases radially outward."

Respectfully submitted,

POTTER ANDERSON & CORROON LLP

OF COUNSEL:

Alan M. Grimaldi
Joseph P. Lavelle
Kenneth W. Donnelly
HOWREY LLP
1299 Pennsylvania Avenue, N.W.
Washington, DC 20004
Tel: (202) 783-0800

Dated: May 11, 2007
Public Version Dated: May 18, 2007
796515/28946

By:    /s/ David E. Moore
Richard L. Horwitz (#2246)
David E. Moore (#3983)
Hercules Plaza, 6th Floor
1313 North Market Street
P. O. Box 951
Wilmington, DE 19899-0951
Tel: (302) 984-6000
rhorwitz@potteranderson.com
dmoore@potteranderson.com

*Attorneys for Defendant*
*Acushnet Company*

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

## CERTIFICATE OF SERVICE

I, David E. Moore, hereby certify that on May 18, 2007, the attached document was hand

delivered to the following persons and was electronically filed with the Clerk of the Court using

CM/ECF which will send notification to the registered attorney(s) of record that the document

has been filed and is available for viewing and downloading:

Jack B. Blumenfeld
Maryellen Noreika
Leslie A. Polizoti
Morris, Nichols, Arsht & Tunnell
1201 N. Market Street
Wilmington, DE  19801

I hereby certify that on May 18, 2007, I have Electronically Mailed the documents to the

following:

Robert M. Masters
Paul, Hastings, Janofsky & Walker LLP
875 15th Street, N.W.
Washington, D.C.  20005
RobMasters@paulhastings.com

/s/ David E. Moore
Richard L. Horwitz
David E. Moore
Potter Anderson & Corroon LLP
Hercules Plaza – Sixth Floor
1313 North Market Street
P.O. Box 951
Wilmington, DE  19899-0951
(302) 984-6000
rhorwitz@potteranderson.com
dmoore@potteranderson.com

680012 / 28946