IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

BRIDGESTONE SPORTS CO., LTD., )
and BRIDGESTONE GOLF, INC., )
)
Plaintiffs, )
) C. A. No. 05-132 (JJF)
v. )
)
ACUSHNET COMPANY, ) **PUBLIC VERSION**
)
Defendant. )
)

**ACUSHNET COMPANY'S REPLY MEMORANDUM IN SUPPORT
OF ITS MOTION FOR SUMMARY JUDGMENT OF INVALIDITY AND
NON-INFRINGEMENT OF U.S. PATENT NO. 5,803,834**

OF COUNSEL:

Alan M. Grimaldi
Joseph P. Lavelle
Kenneth W. Donnelly
HOWREY LLP
1299 Pennsylvania Avenue, N.W.
Washington, DC 20004

Dated: May 11, 2007
Public Version Dated: May 18, 2007
796516/28946

Richard L. Horwitz (#2246)
David E. Moore (#3983)
POTTER ANDERSON & CORROON LLP
Hercules Plaza, 6th Floor
1313 North Market Street
P. O. Box 951
Wilmington, DE 19899-0951
Tel: (302) 984-6000
rhorwitz@potteranderson.com
dmoore@potteranderson.com

*Attorneys for Defendant
Acushnet Company*

# TABLE OF CONTENTS

**Page**

I. ACUSHNET IS ENTITLED TO SUMMARY JUDGMENT OF NON-INFRINGEMENT OF THE '834 PATENT ..................................................... 1

II. CLAIM 1 IS INVALID AS DEMONSTRATED BY ACUSHNET'S OPENING BRIEF .................................................................................................... 4

    A. The Indefiniteness Issue Is Timely Raised. ........................................................ 4

    B. The Evidence of Those Skilled in the Art Supports Indefiniteness. ................... 6

    C. The Parties' Stipulation Is Not Controlling. ...................................................... 6

    D. Claim 1 Is Indefinite. ......................................................................................... 7

III. CONCLUSION .............................................................................................................. 10

# TABLE OF AUTHORITIES

*Exxon Research and Eng. v. United States*,
   265 F.3d 1371 (Fed. Cir. 2001)..................................................................................8

*Honeywell Int'l v. Int'l Trade Comn'n.*,
   341 F.3d 1332 (Fed. Cir. 2003) ........................................................................3, 4, 7, 8

*Marley Mouldings Ltd. v. Mikron Industrial Inc.*,
   417 F.3d 1356 (Fed. Cir. 2005)..............................................................................8, 9

*Novartis Corp. v. Ben Venue Lab, Inc.*,
   271 F.3d 1043, 1046 (Fed. Cir. 2001)........................................................................1

*Phillips Petroleum Co. v. Huntsman Polymers Corp.*,
   157 F.3d 866 (Fed. Cir. 1998)....................................................................................2

*United Carbon Co. v. Binney & Smith*,
   317 U.S. 228 (1943)...................................................................................................8

*Zelinski v. Brunswick Corp.*,
   185 F.3d 1311 (Fed. Cir. 1999)..................................................................................2

## STATUTES

35 U.S.C. § 112....................................................................................................................3, 9

Acushnet Company ("Acushnet") files this reply memorandum in support of its motion for summary judgment that U.S. Patent No. 5,803,834 ("the '834 patent") is invalid and not infringed. Acushnet will show that Bridgestone failed to adduce sufficient evidence to entitle it to a trial on the infringement issues and that, as a matter of law, claim 1 of the patent is invalid.

### I.   ACUSHNET IS ENTITLED TO SUMMARY JUDGMENT OF NON-INFRINGEMENT OF THE '834 PATENT.

Acushnet's opening brief demonstrated that it is entitled to summary judgment of non-infringement. Acushnet showed that the parties stipulated to a claim construction that required that *every* point within 5mm of the surface of the core had a hardness value that was within 8 degrees of the hardness of the core surface. (Acushnet's Memorandum in Support of Its Motion for Summary Judgment of Invalidity and Non-Infringement of the '834 Patent ("D.I. 376") at 17-18). It is undisputed that Bridgestone's tested the accused golf balls at only *one point,* approximately 5mm in from the core surface. (*Id.* at 17-18). Acushnet next showed that because, as Bridgestone's own experts concede, core chemistry and core hardness values are unpredictable, it is impossible to extrapolate from this single measurement to the value of all points within 5mm of the core surface. (*Id.* at 18-20). Thus, there is no evidence from which a juror could conclude that all points within 5 mm of the core surface has the claimed hardness value from a single point, and summary judgment of non-infringement is proper.[1]

Faced with a properly supported motion challenging the sufficiency of the evidence on the infringement issue where Bridgestone had the burden, Bridgestone was obligated to come forward with evidence sufficient to demonstrate the existence of facts from which a reasonable jury could find in its favor on infringement. *See Novartis Corp. v. Ben Venue Lab, Inc.,* 271 F.3d 1043, 1046 (Fed. Cir. 2001). Importantly, a party may

---

[1] Bridgestone has offered no evidence and hence is precluded from relying on the doctrine of equivalents as to this patent. *See* D.I. 376 at 20.

not rely on an expert's own, unsupported *ipse dixit* to avoid summary judgment. If the expert's opinion is not based on factual underpinnings in the record, the mere conclusory assertion that infringement exists is not adequate to avoid summary judgment. *See Zelinski v. Brunswick Corp.*, 185 F.3d 1311 (Fed. Cir. 1999); *Phillips Petroleum Co. v. Huntsman Polymers Corp.*, 157 F.3d 866, 876 (Fed. Cir. 1998) (reasoning that conclusory expert declarations devoid of facts upon which the conclusions were reached fail to raise a genuine issue of material fact which would preclude summary judgment).

Bridgestone' opposition wholly fails to meet its burden to present evidence from which a jury could rule for it, and summary judgment of non-infringement is proper.

First, Bridgestone does not dispute that it offered no testing or other evidence that the ◄NXT► and DT So/Lo balls infringe. (*See* D.I. 376 at 23). Thus, the Bridgestone experts have no basis at all to assert that these balls infringe, and summary judgment is proper as to these balls.

Second, as to the remaining balls accused of infringement, Bridgestone simply relies on the *ipse dixit* of its expert, Mr. Cadorniga, who opines that infringement exists based solely on the one-data-point-per-ball that Dr. Caulfield measured. (Bridgestone's Answering Brief in Opposition to Acushnet's Motion for Summary Judgment of Invalidity and Non-Infringement of the '834 Patent ("D.I. 418") at 12-15). Aside from repeating, at least five times, that Mr. Cadorniga has 30 years of golf ball experience, Bridgestone provides no basis – and none exists – for Mr. Cadorniga to conclude that every point within 5 mm of the surface of the accused ball cores has the required hardness measurement. There simply is no data in the record and no basis for Mr. Cadorniga to draw this conclusion, even if he had 100 years of experience in golf ball art.

Indeed, as shown in Acushnet's main brief, Mr. Cadorniga and Bridgestone's other experts concede that core chemistry is unpredictable. Further, Bridgestone's experts agree that golf ball cores can have dips or peaks in the hardness profile extending radially from the center to the surface of the core and that it is not possible to predict the

2

hardness of an exact point between the surface and the center of the core. (D.I. 376 at 17-18; *see generally,* Acushnet's Memorandum in Support of Its Motion for Summary Judgment of Invalidity of U.S. Patent No. 6,679,791 ("D.I. 381") at 5-7; D.I. 381 at Ex. 1, 3/12/07 Cadorniga Tr. 235:2-235:13 (without a detailed understanding of a particular core's manufacturing process, one cannot assume what the hardness is at an internal point of that core relative to its surface without testing that particular point), and at Ex. 2, 2/20/07 Calabria Report at 12 ("[S]ome cores will have a uniform cure from center to surface, a hardness profile which peaks or dips along radial directions of the core…")).

It is also clear that Mr. Cadorniga predicated his infringement opinion on the mistaken belief that to show infringement it was sufficient to have only a ***single point*** within 5 mm meet the hardness value of the claim limitation. Mr. Cadorniga, however, conceded that if the claim required a showing of the hardness value at ***each point*** within 5 mm (which the parties have stipulated it does) that further testing would be required. (D.I. 376 at 9-10; *see also* D.I. 381, Ex. 1, 3/12/07 Cadorniga Tr. at 340:18-341:7). The testing which Bridgestone failed to do.

Thus, the record shows that Mr. Cadorniga has not offered an opinion applying the correct claim construction; that Mr. Cadorniga and the other Bridgestone experts agree that further testing would be needed to opine about the hardness of other points within 5 mm of the surface; and that there is no factual basis for Mr. Cadorniga to opine that infringement exists because **all points** within 5 mm of the surface of the accused ball cores have the required hardness. As there is no evidence of infringement, and as Mr. Cadoniga's *ipse dixit* is inadequate under settled law to entitle Bridgestone to a trial on this issue, summary judgment of non-infringement of the '834 Patent should be granted.

3

## II.   CLAIM 1 IS INVALID AS DEMONSTRATED BY ACUSHNET'S OPENING BRIEF.

Acushnet's opening brief also demonstrated that claim 1 of the '834 patent is hopelessly and insolubly indefinite and hence is invalid under 35 USC § 112, second paragraph.

Specifically, Acushnet demonstrated that there is no way to determine from the patent and its intrinsic record how to prepare a specimen and measure the hardness value within 5 mm of the core surface. Therefore, the patent fails to give adequate notice of what does and does not infringe, and hence is invalid. (D.I. 376. at 10-14; 23-26). In particular, Acushnet relied on the Federal Circuit decision in *Honeywell Int'l v. Int'l Trade Comn'n.*, 341 F.3d 1332 (Fed. Cir. 2003). The Court declared a patent invalid where, although the patent claimed measuring the temperature of a sample, the patent failed to apprise one of skill in the art how to prepare the sample to be measured where the preparation could be done a number of ways. *Id.* at 1340. Since the value of the temperature depended critically on how the sample was prepared, but the preparation method could not be discerned from the patent, the patent was invalid as indefinite. *Id.*

Despite Bridgestone's assertion to the contrary, *Honeywell* is controlling here, as there are multiple ways to measure the hardness value within 5 mm of the core surface, the different methods give different results, and there is nothing in the patent or its intrinsic record to decide which test to apply. Bridgestone makes several arguments as to why the Court should not find, as a matter law, that the patent is invalid. They should all be rejected.

### A.   The Indefiniteness Issue Is Timely Raised.

Bridgestone argues that the § 112 indefiniteness issue was not preserved in Acushnet's December 18, 2006 interrogatory answers. This argument is not well taken.

As is apparent from Acushnet's opening brief, the indefiniteness evidence is predicated on the fact that the Acushnet and Bridgestone technical expert teams, all

4

skilled in the art, read this patent and found three different ways to do the test. Bridgestone's team, in particular, found two of those ways, one of which was not even disclosed by Bridgestone until the end of the expert discovery period. Acushnet further relies on the fact that the testing methodology is critical, as two of the three tests methods show that there is no infringement. (D.I. 376 at 10-14).

As the Court is also aware from the briefs on the Motion to Preclude and Motion for Sanctions,[2] Bridgestone **withheld all of its expert testing data until after it provided its expert reports to Acushnet in January 2007**, including until after the December 18 discovery and contention cut-off date. Despite being directed by the Court to tell Acushnet its evidence in fact discovery, Bridgestone withheld it and claims that was ok. Indeed, as already noted, Acushnet did not receive the information on one of Dr. Caulfield's testing methodologies until March 28, 2007. (D.I. 376 at Ex. 7; *see also* D.I. 323 at 4).

Plainly, Bridgestone was withholding from Acushnet the evidence on which the indefiniteness claim is predicated in December 2006, when Acushnet supplemented its interrogatory answers. Bridgestone cannot now credibly claim that Acushnet should have raised this defense before Bridgestone produced the most relevant evidence that lends to this claim. Indeed, this argument shows how truly bereft of merit Bridgestone's position is on this patent.[3]

---

[2] *See* Acushnet's Brief in Opposition to Bridgestone's Motion for Sanction (D.I. 323) at 4; Acushnet's Brief in Support of Its Motion to Preclude Certain Evidence (D.I. 294) at 8-12.

[3] It is also typical of many of Bridgestone's other arguments in response to numerous of Acushnet's motions for summary judgment on the various patents at issue. Rather than argue the merits of its patent infringement claims - which it cannot do - Bridgestone attempts to distract the Court with issues that are either inaccurately portrayed or irrelevant.

### B. The Evidence of Those Skilled in the Art Supports Indefiniteness.

Bridgestone next argues, somewhat curiously, that Dr. Felker does not opine on the indefiniteness of the '834 patent and that evidence as to what one of skill in the art would understand is required. (D.I. 418 at 9-10). This argument is wrong.

Once again, it is the case that Dr. Felker's expert report was prepared and served while Bridgestone was withholding the relevant test data on its testing of cores related to the '834 Patent.[4] Hence, Bridgestone can hardly fault Acushnet or Dr. Felker for not commenting on evidence Bridgestone was withholding.

More fundamentally, however, there is compelling evidence in Acushnet's motion to establish that the '834 patent is insolubly indefinite to those skilled in the art. Here, the data and procedures considered by the experts of the parties themselves show that several sets of highly skilled teams, Acushnet's engineers, Mr. Caulfield, and Mr. Cadorniga, all reviewed the '834 patent extensively, were highly motivated to test the correct way, and yet used three different, and irreconcilable, approaches to test hardness within 5 mm of the core surface. The difference in protocols are material, as in two of the tests Acushnet's balls do not infringe. This is ample evidence of how those skilled in the art are unable by reading the patent and prosecution history to solve the question of how to prepare the core for measurement and where and what direction to measure the core in order to test the hardness within 5 mm. This argument has no substance.

### C. The Parties' Stipulation Is Not Controlling.

Bridgestone argues that the parties' stipulation as to the meaning of this claim limitation demonstrates that the claim limitation is not "insolubly ambiguous" and

---

[4] Dr. Felker's invalidity report was due and exchanged the same day that Bridgestone provided its infringement reports to Acushnet. However, as noted above and in Acushnet's opening brief, Bridgestone did not provide the relevant test data until much later. There was no way Dr. Felker could have opined on this withheld evidence.

6

therefore summary judgment must be denied. (D.I. 418 at 10). Again, this argument is not well taken.

The parties stipulated to the meaning of the clause in question in November 2006, as part of the *Markman* briefing, during the time when Bridgestone was withholding the test data in question. (D.I. 376 at Ex. 3, Joint Claim Construction Statement (D.I. 228) at 13). However, the parties' stipulation was focused on, and directed toward, the question of whether the claim required that **one point** or **all points** within 5mm of the core surface have a hardness of within 8 degrees of the surface. This is clear from the parties' correspondence as well as from the stipulation itself, which specifically adopts the "all points" construction of the claim.

At the time of the stipulation the parties never discussed or contemplated the different ways in which the hardness value could be measured. Indeed, Bridgestone was busy withholding its test data during this time and the fact that it found that Acushnet's balls did not meet the limitation. Hence, the parties neither considered nor addressed this issue at the time of their stipulation, and that stipulation does not resolve the issue present here, which relates to how one measures the hardness value.

### D. Claim 1 Is Indefinite.

Bridgestone's argument on the merits is notable for what it does not say. Nowhere does Bridgestone explain what the patent teaches is the proper method to make the 5mm measurement. Bridgestone does not point to anything in the patent, its prosecution history, or any intrinsic evidence to resolve the question of what to measure and how to orient the durometer in order to resolve this ambiguity. Hence, Bridgestone concedes that the '834 patent does not explain how to make the measurement in question.

Bridgestone contends that the '834 patent teaches that the hardness is measured with a JIS-C durometer and that therefore the "hardness at 5mm" limitation is definite. In Bridgestone's view, how one actually makes the measurement – *i.e.*, what is placed in the

7

durometer (a half of a core or a slice cut from a core) and, if a slice is measured, is the top or bottom measured—is just a fact question for the jury to be decided as part of the infringement inquiry. (D.I. 481 at 11-12). Bridgestone's argument is untenable and inconsistent with the controlling decision in *Honeywell*.

In *Honeywell*, the claim limitation at issue related to measuring a temperature, specifically the melting point of a polymer. 341 F.3d at 1335. There was no dispute how to measure temperature, indeed the specification identified the specific device, a Perkin Elmer calorimeter, used to measure the melting point. *Id.* at 1336.

What was not taught by the patent in *Honeywell* was how to prepare the sample of the material to be tested. There were at least four ways to prepare the sample, and the results of the temperature measurement varied depending on how the sample was prepared—some sample preparation methods infringed, others did not. *Id.* After a thorough review of the patent and its file history, the Federal Circuit concluded that there was no way within the text of the patent and its intrinsic record to decide how to prepare the samples, and hence the patent was invalid as one skilled in the art was not given adequate information to determine whether or not they infringed the claim. *Id* at 1339-42.

The *Honeywell* case is controlling here. Here, the device used to measure hardness – the durometer – is known, just as the calorimeter was known in *Honeywell*. However, what to measure and how to measure is material and not explained in the patent, just as the sample preparation method was critical and not specified in *Honeywell*. Hence, claim 1 of the '834 patent is invalid, as one skilled in the art cannot determine whether or not the claim is infringed. *See also United Carbon Co. v. Binney & Smith*, 317 US 228, 236 (1943); *Exxon Research and Eng. v. United States*, 265 F.3d 1371, 1375 (Fed. Cir. 2001).

Bridgestone relies on *Marley Mouldings Ltd. v. Mikron Indus. Inc.*, 417 F.3d 1356 (Fed. Cir. 2005). However, *Marley Mouldings* is clearly distinguishable on its facts. In

8

*Marley Mouldings,* the claim in question required some of the ingredients in the molding process to be present in certain volumes, expressed as parts per volume. *Id.* at 1358. There was no question in that case how to measure volume or how to do the measurement. *Id.*

The problem in *Marley Mouldings* was the supplier data sheets for the ingredients in question expressed the amounts of the ingredients in weight measure, not in parts per volume. *Id.* While weights and parts per volume are related, the data needed to compare them (the density of the components) was not specified sufficiently on the data sheets to allow a determination of whether infringement existed.

In reversing a holding of indefiniteness, the Federal Circuit in *Marley Mouldings* quite properly said the problem in that case was not related to the patent or the requirement that volumes be measured. Rather, the problem was that the data sheets the plaintiff was relying on were not what was needed to prove infringement. *Id.* at 1359-61. This is an infringement problem, not an indefiniteness problem, the court properly noted.

*Marley Mouldings* does not apply here. The problem in this case relates to the patent, and to the fact that the patent does not teach one what to measure or how to measure it, and hence the "hardness within 5mm" limitation is indefinite. The factual situation is identical to that in *Honeywell,* which is controlling. *Marley Mouldings* plainly does not mean that all questions about how to perform a test are fact questions for the jury, as Bridgestone improperly suggests. Rather, *Marley Mouldings* simply stands for the proposition that where the infringement issues are unclear because the data is not expressed the right way in manufacturer data sheets, the problem is not one that implicates the definiteness of the patent. That decision is inapplicable here.

Aside from misstating the facts and holding of *Marley Mouldings,* Bridgestone has no other arguments. In particular, it has no explanation based on the patent of what

to test or how to test to perform a "hardness within 5 mm" test. Hence, the Court should find claim 1 invalid.

### III. CONCLUSION

For the foregoing reasons, as well as those in Acushnet's opening brief, Acushnet respectfully requests that the Court find the '834 patent not infringed and/or that claim 1 is invalid as indefinite under 35 USC § 112. Either way Acushnet's motion should be granted.

        Respectfully submitted,

        POTTER ANDERSON & CORROON LLP

OF COUNSEL:

Alan M. Grimaldi
Joseph P. Lavelle
Kenneth W. Donnelly
HOWREY LLP
1299 Pennsylvania Ave., N.W.
Washington, DC 20004
Telephone: (202) 783-0800

Dated: May 11, 2007
Public Version Dated: May 18, 2007
796516/28946

By: */s/ David E. Moore*
    Richard L. Horwitz (#2246)
    David E. Moore (#3983)
    Hercules Plaza, 6th Floor
    1313 N. Market Street
    P.O. Box 951
    Wilmington, DE 19899-0951
    (302) 984-6000
    rhorwitz@potteranderson.com
    dmoore@potteranderson.com

*Attorneys For Defendant*
*Acushnet Company*

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

**CERTIFICATE OF SERVICE**

I, David E. Moore, hereby certify that on May 18, 2007, the attached document was hand delivered to the following persons and was electronically filed with the Clerk of the Court using CM/ECF which will send notification to the registered attorney(s) of record that the document has been filed and is available for viewing and downloading:

Jack B. Blumenfeld
Maryellen Noreika
Leslie A. Polizoti
Morris, Nichols, Arsht & Tunnell
1201 N. Market Street
Wilmington, DE 19801

I hereby certify that on May 18, 2007, I have Electronically Mailed the documents to the following:

Robert M. Masters
Paul, Hastings, Janofsky & Walker LLP
875 15th Street, N.W.
Washington, D.C. 20005
RobMasters@paulhastings.com

/s/ David E. Moore
Richard L. Horwitz
David E. Moore
Potter Anderson & Corroon LLP
Hercules Plaza – Sixth Floor
1313 North Market Street
P.O. Box 951
Wilmington, DE 19899-0951
(302) 984-6000
rhorwitz@potteranderson.com
dmoore@potteranderson.com

680012 / 28946