# EXHIBIT 3

# THIS EXHIBIT HAS BEEN REDACTED IN ITS ENTIRETY

# EXHIBIT 4

# THIS EXHIBIT HAS BEEN REDACTED IN ITS ENTIRETY

# EXHIBIT 5

# THIS EXHIBIT HAS BEEN REDACTED IN ITS ENTIRETY

# EXHIBIT 6

(Slip Opinion)          OCTOBER TERM, 2006                    1

Syllabus

NOTE: Where it is feasible, a syllabus (headnote) will be released, as is
being done in connection with this case, at the time the opinion is issued.
The syllabus constitutes no part of the opinion of the Court but has been
prepared by the Reporter of Decisions for the convenience of the reader.
See *United States* v. *Detroit Timber & Lumber Co.,* 200 U. S. 321, 337.

# SUPREME COURT OF THE UNITED STATES

Syllabus

## KSR INTERNATIONAL CO. *v.* TELEFLEX INC. ET AL.

CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR
THE FEDERAL CIRCUIT

No. 04–1350.   Argued November 28, 2006—Decided April 30, 2007

To control a conventional automobile's speed, the driver depresses or
releases the gas pedal, which interacts with the throttle via a cable or
other mechanical link. Because the pedal's position in the footwell
normally cannot be adjusted, a driver wishing to be closer or farther
from it must either reposition himself in the seat or move the seat,
both of which can be imperfect solutions for smaller drivers in cars
with deep footwells. This prompted inventors to design and patent
pedals that could be adjusted to change their locations. The Asano
patent reveals a support structure whereby, when the pedal location
is adjusted, one of the pedal's pivot points stays fixed. Asano is also
designed so that the force necessary to depress the pedal is the same
regardless of location adjustments. The Redding patent reveals a dif-
ferent, sliding mechanism where both the pedal and the pivot point
are adjusted.

In newer cars, computer-controlled throttles do not operate through
force transferred from the pedal by a mechanical link, but open and
close valves in response to electronic signals. For the computer to
know what is happening with the pedal, an electronic sensor must
translate the mechanical operation into digital data. Inventors had
obtained a number of patents for such sensors. The so-called '936
patent taught that it was preferable to detect the pedal's position in
the pedal mechanism, not in the engine, so the patent disclosed a
pedal with an electronic sensor on a pivot point in the pedal assem-
bly. The Smith patent taught that to prevent the wires connecting
the sensor to the computer from chafing and wearing out, the sensor
should be put on a fixed part of the pedal assembly rather than in or
on the pedal's footpad. Inventors had also patented self-contained
modular sensors, which can be taken off the shelf and attached to any

2                    KSR INT'L CO. *v.* TELEFLEX INC.

Syllabus

mechanical pedal to allow it to function with a computer-controlled
throttle. The '068 patent disclosed one such sensor. Chevrolet also
manufactured trucks using modular sensors attached to the pedal
support bracket, adjacent to the pedal and engaged with the pivot
shaft about which the pedal rotates. Other patents disclose elec-
tronic sensors attached to adjustable pedal assemblies. For example,
the Rixon patent locates the sensor in the pedal footpad, but is known
for wire chafing.

After petitioner KSR developed an adjustable pedal system for cars
with cable-actuated throttles and obtained its '976 patent for the de-
sign, General Motors Corporation (GMC) chose KSR to supply ad-
justable pedal systems for trucks using computer-controlled throttles.
To make the '976 pedal compatible with the trucks, KSR added a
modular sensor to its design. Respondents (Teleflex) hold the exclu-
sive license for the Engelgau patent, claim 4 of which discloses a posi-
tion-adjustable pedal assembly with an electronic pedal position sen-
sor attached a fixed pivot point. Despite having denied a similar,
broader claim, the U. S. Patent and Trademark Office (PTO) had al-
lowed claim 4 because it included the limitation of a fixed pivot posi-
tion, which distinguished the design from Redding's. Asano was nei-
ther included among the Engelgau patent's prior art references nor
mentioned in the patent's prosecution, and the PTO did not have be-
fore it an adjustable pedal with a fixed pivot point. After learning of
KSR's design for GMC, Teleflex sued for infringement, asserting that
KSR's pedal system infringed the Engelgau patent's claim 4. KSR
countered that claim 4 was invalid under §103 of the Patent Act,
which forbids issuance of a patent when "the differences between the
subject matter sought to be patented and the prior art are such that
the subject matter as a whole would have been obvious at the time
the invention was made to a person having ordinary skill in the art."

*Graham* v. *John Deere Co. of Kansas City*, 383 U. S. 1, 17–18, set
out an objective analysis for applying §103: "[T]he scope and content
of the prior art are . . . determined; differences between the prior art
and the claims at issue are . . . ascertained; and the level of ordinary
skill in the pertinent art resolved. Against this background the obvi-
ousness or nonobviousness of the subject matter is determined. Such
secondary considerations as commercial success, long felt but un-
solved needs, failure of others, etc., might be utilized to give light to
the circumstances surrounding the origin of the subject matter
sought to be patented." While the sequence of these questions might
be reordered in any particular case, the factors define the controlling
inquiry. However, seeking to resolve the obviousness question with
more uniformity and consistency, the Federal Circuit has employed a
"teaching, suggestion, or motivation" (TSM) test, under which a pat-

Syllabus

ent claim is only proved obvious if the prior art, the problem's nature, or the knowledge of a person having ordinary skill in the art reveals some motivation or suggestion to combine the prior art teachings.

The District Court granted KSR summary judgment. After reviewing pedal design history, the Engelgau patent's scope, and the relevant prior art, the court considered claim 4's validity, applying *Graham*'s framework to determine whether under summary-judgment standards KSR had demonstrated that claim 4 was obvious. The court found "little difference" between the prior art's teachings and claim 4: Asano taught everything contained in the claim except using a sensor to detect the pedal's position and transmit it to a computer controlling the throttle. That additional aspect was revealed in, *e.g.*, the '068 patent and Chevrolet's sensors. The court then held that KSR satisfied the TSM test, reasoning (1) the state of the industry would lead inevitably to combinations of electronic sensors and adjustable pedals, (2) Rixon provided the basis for these developments, and (3) Smith taught a solution to Rixon's chafing problems by positioning the sensor on the pedal's fixed structure, which could lead to the combination of a pedal like Asano with a pedal position sensor.

Reversing, the Federal Circuit ruled the District Court had not applied the TSM test strictly enough, having failed to make findings as to the specific understanding or principle within a skilled artisan's knowledge that would have motivated one with no knowledge of the invention to attach an electronic control to the Asano assembly's support bracket. The Court of Appeals held that the District Court's recourse to the nature of the problem to be solved was insufficient because, unless the prior art references addressed the precise problem that the patentee was trying to solve, the problem would not motivate an inventor to look at those references. The appeals court found that the Asano pedal was designed to ensure that the force required to depress the pedal is the same no matter how the pedal is adjusted, whereas Engelgau sought to provide a simpler, smaller, cheaper adjustable electronic pedal. The Rixon pedal, said the court, suffered from chafing but was not designed to solve that problem and taught nothing helpful to Engelgau's purpose. Smith, in turn, did not relate to adjustable pedals and did not necessarily go to the issue of motivation to attach the electronic control on the pedal assembly's support bracket. So interpreted, the court held, the patents would not have led a person of ordinary skill to put a sensor on an Asano-like pedal. That it might have been obvious to try that combination was likewise irrelevant. Finally, the court held that genuine issues of material fact precluded summary judgment.

*Held:* The Federal Circuit addressed the obviousness question in a narrow, rigid manner that is inconsistent with §103 and this Court's

4                KSR INT'L CO. *v.* TELEFLEX INC.

Syllabus

precedents.  KSR provided convincing evidence that mounting an
available sensor on a fixed pivot point of the Asano pedal was a de-
sign step well within the grasp of a person of ordinary skill in the
relevant art and that the benefit of doing so would be obvious.  Its ar-
guments, and the record, demonstrate that the Engelgau patent's
claim 4 is obvious.  Pp. 11–24.

   1. *Graham* provided an expansive and flexible approach to the ob-
viousness question that is inconsistent with the way the Federal Cir-
cuit applied its TSM test here.  Neither §103's enactment nor *Gra-
ham*'s analysis disturbed the Court's earlier instructions concerning
the need for caution in granting a patent based on the combination of
elements found in the prior art.  See *Great Atlantic & Pacific Tea Co.*
v. *Supermarket Equipment Corp.,* 340 U. S. 147, 152.  Such a combi-
nation of familiar elements according to known methods is likely to
be obvious when it does no more than yield predictable results.  See,
*e.g., United States* v. *Adams,* 383 U. S. 39, 50–52.  When a work is
available in one field, design incentives and other market forces can
prompt variations of it, either in the same field or in another.  If a
person of ordinary skill in the art can implement a predictable varia-
tion, and would see the benefit of doing so, §103 likely bars its pat-
entability.  Moreover, if a technique has been used to improve one
device, and a person of ordinary skill in the art would recognize that
it would improve similar devices in the same way, using the tech-
nique is obvious unless its actual application is beyond that person's
skill.  A court must ask whether the improvement is more than the
predictable use of prior-art elements according to their established
functions.  Following these principles may be difficult if the claimed
subject matter involves more than the simple substitution of one
known element for another or the mere application of a known tech-
nique to a piece of prior art ready for the improvement.  To determine
whether there was an apparent reason to combine the known ele-
ments in the way a patent claims, it will often be necessary to look to
interrelated teachings of multiple patents; to the effects of demands
known to the design community or present in the marketplace; and to
the background knowledge possessed by a person having ordinary
skill in the art.  To facilitate review, this analysis should be made ex-
plicit.  But it need not seek out precise teachings directed to the chal-
lenged claim's specific subject matter, for a court can consider the in-
ferences and creative steps a person of ordinary skill in the art would
employ.  Pp. 11–14.

   (b) The TSM test captures a helpful insight: A patent composed of
several elements is not proved obvious merely by demonstrating that
each element was, independently, known in the prior art.  Although
common sense directs caution as to a patent application claiming as

Syllabus

innovation the combination of two known devices according to their
established functions, it can be important to identify a reason that
would have prompted a person of ordinary skill in the art to combine
the elements as the new invention does: Inventions usually rely
upon building blocks long since uncovered, and claimed discoveries
almost necessarily will be combinations of what, in some sense, is al-
ready known. Helpful insights, however, need not become rigid and
mandatory formulas. If it is so applied, the TSM test is incompatible
with this Court's precedents. The diversity of inventive pursuits and
of modern technology counsels against confining the obviousness
analysis by a formalistic conception of the words teaching, sugges-
tion, and motivation, or by overemphasizing the importance of pub-
lished articles and the explicit content of issued patents. In many
fields there may be little discussion of obvious techniques or combina-
tions, and market demand, rather than scientific literature, may of-
ten drive design trends. Granting patent protection to advances that
would occur in the ordinary course without real innovation retards
progress and may, for patents combining previously known elements,
deprive prior inventions of their value or utility. Since the TSM test
was devised, the Federal Circuit doubtless has applied it in accord
with these principles in many cases. There is no necessary inconsis-
tency between the test and the *Graham* analysis. But a court errs
where, as here, it transforms general principle into a rigid rule limit-
ing the obviousness inquiry. Pp. 14–15.

  (c) The flaws in the Federal Circuit's analysis relate mostly to its
narrow conception of the obviousness inquiry consequent in its appli-
cation of the TSM test. The Circuit first erred in holding that courts
and patent examiners should look only to the problem the patentee
was trying to solve. Under the correct analysis, any need or problem
known in the field and addressed by the patent can provide a reason
for combining the elements in the manner claimed. Second, the ap-
peals court erred in assuming that a person of ordinary skill in the
art attempting to solve a problem will be led only to those prior art
elements designed to solve the same problem. The court wrongly
concluded that because Asano's primary purpose was solving the con-
stant ratio problem, an inventor considering how to put a sensor on
an adjustable pedal would have no reason to consider putting it on
the Asano pedal. It is common sense that familiar items may have
obvious uses beyond their primary purposes, and a person of ordinary
skill often will be able to fit the teachings of multiple patents to-
gether like pieces of a puzzle. Regardless of Asano's primary pur-
pose, it provided an obvious example of an adjustable pedal with a
fixed pivot point, and the prior art was replete with patents indicat-
ing that such a point was an ideal mount for a sensor. Third, the

6                    KSR INT'L CO. *v.* TELEFLEX INC.

Syllabus

court erred in concluding that a patent claim cannot be proved obvi-
ous merely by showing that the combination of elements was obvious
to try. When there is a design need or market pressure to solve a
problem and there are a finite number of identified, predictable solu-
tions, a person of ordinary skill in the art has good reason to pursue
the known options within his or her technical grasp. If this leads to
the anticipated success, it is likely the product not of innovation but
of ordinary skill and common sense. Finally, the court drew the
wrong conclusion from the risk of courts and patent examiners falling
prey to hindsight bias. Rigid preventative rules that deny recourse to
common sense are neither necessary under, nor consistent with, this
Court's case law. Pp. 15–18.

   2. Application of the foregoing standards demonstrates that claim 4
is obvious. Pp. 18–23.

   (a) The Court rejects Teleflex's argument that the Asano pivot
mechanism's design prevents its combination with a sensor in the
manner claim 4 describes. This argument was not raised before the
District Court, and it is unclear whether it was raised before the
Federal Circuit. Given the significance of the District Court's finding
that combining Asano with a pivot-mounted pedal position sensor fell
within claim 4's scope, it is apparent that Teleflex would have made
clearer challenges if it intended to preserve this claim. Its failure to
clearly raise the argument, and the appeals court's silence on the is-
sue, lead this Court to accept the District Court's conclusion. Pp. 18–
20.

   (b) The District Court correctly concluded that when Engelgau
designed the claim 4 subject matter, it was obvious to a person of or-
dinary skill in the art to combine Asano with a pivot-mounted pedal
position sensor. There then was a marketplace creating a strong in-
centive to convert mechanical pedals to electronic pedals, and the
prior art taught a number of methods for doing so. The Federal Cir-
cuit considered the issue too narrowly by, in effect, asking whether a
pedal designer writing on a blank slate would have chosen both
Asano and a modular sensor similar to the ones used in the Chevrolet
trucks and disclosed in the '068 patent. The proper question was
whether a pedal designer of ordinary skill in the art, facing the wide
range of needs created by developments in the field, would have seen
an obvious benefit to upgrading Asano with a sensor. For such a de-
signer starting with Asano, the question was where to attach the
sensor. The '936 patent taught the utility of putting the sensor on
the pedal device. Smith, in turn, explained not to put the sensor on
the pedal footpad, but instead on the structure. And from Rixon's
known wire-chafing problems, and Smith's teaching that the pedal
assemblies must not precipitate any motion in the connecting wires,

Syllabus

the designer would know to place the sensor on a nonmoving part of
the pedal structure. The most obvious such point is a pivot point.
The designer, accordingly, would follow Smith in mounting the sensor
there. Just as it was possible to begin with the objective to upgrade
Asano to work with a computer-controlled throttle, so too was it pos-
sible to take an adjustable electronic pedal like Rixon and seek an
improvement that would avoid the wire-chafing problem. Teleflex
has not shown anything in the prior art that taught away from the
use of Asano, nor any secondary factors to dislodge the determination
that claim 4 is obvious. Pp. 20–23.

3. The Court disagrees with the Federal Circuit's holding that
genuine issues of material fact precluded summary judgment. The
ultimate judgment of obviousness is a legal determination. *Graham*,
383 U. S., at 17. Where, as here, the prior art's content, the patent
claim's scope, and the level of ordinary skill in the art are not in ma-
terial dispute and the claim's obviousness is apparent, summary
judgment is appropriate. P. 23.

119 Fed. Appx. 282, reversed and remanded.

KENNEDY, J., delivered the opinion for a unanimous Court.

Cite as: 550 U. S. ____ (2007)    1

Opinion of the Court

NOTICE: This opinion is subject to formal revision before publication in the
preliminary print of the United States Reports. Readers are requested to
notify the Reporter of Decisions, Supreme Court of the United States, Wash-
ington, D. C. 20543, of any typographical or other formal errors, in order
that corrections may be made before the preliminary print goes to press.

# SUPREME COURT OF THE UNITED STATES

No. 04–1350

## KSR INTERNATIONAL CO., PETITIONER *v.* TELEFLEX INC. ET AL.

### ON WRIT OF CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT

[April 30, 2007]

JUSTICE KENNEDY delivered the opinion of the Court.

Teleflex Incorporated and its subsidiary Technology Holding Company—both referred to here as Teleflex—sued KSR International Company for patent infringement. The patent at issue, United States Patent No. 6,237,565 B1, is entitled "Adjustable Pedal Assembly With Electronic Throttle Control." Supplemental App. 1. The patentee is Steven J. Engelgau, and the patent is referred to as "the Engelgau patent." Teleflex holds the exclusive license to the patent.

Claim 4 of the Engelgau patent describes a mechanism for combining an electronic sensor with an adjustable automobile pedal so the pedal's position can be transmitted to a computer that controls the throttle in the vehicle's engine. When Teleflex accused KSR of infringing the Engelgau patent by adding an electronic sensor to one of KSR's previously designed pedals, KSR countered that claim 4 was invalid under the Patent Act, 35 U. S. C. §103, because its subject matter was obvious.

Section 103 forbids issuance of a patent when "the differences between the subject matter sought to be pat-

ented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains."

In *Graham* v. *John Deere Co. of Kansas City,* 383 U. S. 1 (1966), the Court set out a framework for applying the statutory language of §103, language itself based on the logic of the earlier decision in *Hotchkiss* v. *Greenwood,* 11 How. 248 (1851), and its progeny. See 383 U. S., at 15–17. The analysis is objective:

> "Under §103, the scope and content of the prior art are to be determined; differences between the prior art and the claims at issue are to be ascertained; and the level of ordinary skill in the pertinent art resolved. Against this background the obviousness or nonobviousness of the subject matter is determined. Such secondary considerations as commercial success, long felt but unsolved needs, failure of others, etc., might be utilized to give light to the circumstances surrounding the origin of the subject matter sought to be patented." *Id.,* at 17–18.

While the sequence of these questions might be reordered in any particular case, the factors continue to define the inquiry that controls. If a court, or patent examiner, conducts this analysis and concludes the claimed subject matter was obvious, the claim is invalid under §103.

Seeking to resolve the question of obviousness with more uniformity and consistency, the Court of Appeals for the Federal Circuit has employed an approach referred to by the parties as the "teaching, suggestion, or motivation" test (TSM test), under which a patent claim is only proved obvious if "some motivation or suggestion to combine the prior art teachings" can be found in the prior art, the nature of the problem, or the knowledge of a person having ordinary skill in the art. See, *e.g., Al-Site Corp.* v. *VSI*

*Int'l, Inc.,* 174 F. 3d 1308, 1323–1324 (CA Fed. 1999). KSR challenges that test, or at least its application in this case. See 119 Fed. Appx. 282, 286–290 (CA Fed. 2005). Because the Court of Appeals addressed the question of obviousness in a manner contrary to §103 and our precedents, we granted certiorari, 547 U. S ___ (2006). We now reverse.

I

A

In car engines without computer-controlled throttles, the accelerator pedal interacts with the throttle via cable or other mechanical link. The pedal arm acts as a lever rotating around a pivot point. In a cable-actuated throttle control the rotation caused by pushing down the pedal pulls a cable, which in turn pulls open valves in the carburetor or fuel injection unit. The wider the valves open, the more fuel and air are released, causing combustion to increase and the car to accelerate. When the driver takes his foot off the pedal, the opposite occurs as the cable is released and the valves slide closed.

In the 1990's it became more common to install computers in cars to control engine operation. Computer-controlled throttles open and close valves in response to electronic signals, not through force transferred from the pedal by a mechanical link. Constant, delicate adjustments of air and fuel mixture are possible. The computer's rapid processing of factors beyond the pedal's position improves fuel efficiency and engine performance.

For a computer-controlled throttle to respond to a driver's operation of the car, the computer must know what is happening with the pedal. A cable or mechanical link does not suffice for this purpose; at some point, an electronic sensor is necessary to translate the mechanical operation into digital data the computer can understand.

Before discussing sensors further we turn to the me-

4                     KSR INT'L CO. *v.* TELEFLEX INC.

Opinion of the Court

chanical design of the pedal itself.    In the traditional
design a pedal can be pushed down or released but cannot
have its position in the footwell adjusted by sliding the
pedal forward or back.  As a result, a driver who wishes to
be closer or farther from the pedal must either reposition
himself in the driver's seat or move the seat in some way.
In cars with deep footwells these are imperfect solutions
for drivers of smaller stature.  To solve the problem, in-
ventors, beginning in the 1970's, designed pedals that
could be adjusted to change their location in the footwell.
Important for this case are two adjustable pedals disclosed
in U. S. Patent Nos. 5,010,782 (filed July 28, 1989) (Asano)
and 5,460,061 (filed Sept. 17, 1993) (Redding).  The Asano
patent reveals a support structure that houses the pedal
so that even when the pedal location is adjusted relative to
the driver, one of the pedal's pivot points stays fixed.  The
pedal is also designed so that the force necessary to push
the pedal down is the same regardless of adjustments to
its location.  The Redding patent reveals a different, slid-
ing mechanism where both the pedal and the pivot point
are adjusted.

    We return to sensors.  Well before Engelgau applied for
his challenged patent, some inventors had obtained pat-
ents involving electronic pedal sensors for computer-
controlled throttles.  These inventions, such as the device
disclosed in U. S. Patent No. 5,241,936 (filed Sept. 9, 1991)
('936), taught that it was preferable to detect the pedal's
position in the pedal assembly, not in the engine.  The '936
patent disclosed a pedal with an electronic sensor on a
pivot point in the pedal assembly.    U. S. Patent No.
5,063,811 (filed July 9, 1990) (Smith) taught that to pre-
vent the wires connecting the sensor to the computer from
chafing and wearing out, and to avoid grime and damage
from the driver's foot, the sensor should be put on a fixed
part of the pedal assembly rather than in or on the pedal's
footpad.

In addition to patents for pedals with integrated sensors inventors obtained patents for self-contained modular sensors. A modular sensor is designed independently of a given pedal so that it can be taken off the shelf and attached to mechanical pedals of various sorts, enabling the pedals to be used in automobiles with computer-controlled throttles. One such sensor was disclosed in U. S. Patent No. 5,385,068 (filed Dec. 18, 1992) ('068). In 1994, Chevrolet manufactured a line of trucks using modular sensors "attached to the pedal support bracket, adjacent to the pedal and engaged with the pivot shaft about which the pedal rotates in operation." 298 F. Supp. 2d 581, 589 (ED Mich. 2003).

The prior art contained patents involving the placement of sensors on adjustable pedals as well. For example, U. S. Patent No. 5,819,593 (filed Aug. 17, 1995) (Rixon) discloses an adjustable pedal assembly with an electronic sensor for detecting the pedal's position. In the Rixon pedal the sensor is located in the pedal footpad. The Rixon pedal was known to suffer from wire chafing when the pedal was depressed and released.

This short account of pedal and sensor technology leads to the instant case.

B

KSR, a Canadian company, manufactures and supplies auto parts, including pedal systems. Ford Motor Company hired KSR in 1998 to supply an adjustable pedal system for various lines of automobiles with cable-actuated throttle controls. KSR developed an adjustable mechanical pedal for Ford and obtained U. S. Patent No. 6,151,976 (filed July 16, 1999) ('976) for the design. In 2000, KSR was chosen by General Motors Corporation (GMC or GM) to supply adjustable pedal systems for Chevrolet and GMC light trucks that used engines with computer-controlled throttles. To make the '976 pedal compatible with the

trucks, KSR merely took that design and added a modular sensor.

Teleflex is a rival to KSR in the design and manufacture of adjustable pedals. As noted, it is the exclusive licensee of the Engelgau patent. Engelgau filed the patent application on August 22, 2000 as a continuation of a previous application for U. S. Patent No. 6,109,241, which was filed on January 26, 1999. He has sworn he invented the patent's subject matter on February 14, 1998. The Engelgau patent discloses an adjustable electronic pedal described in the specification as a "simplified vehicle control pedal assembly that is less expensive, and which uses fewer parts and is easier to package within the vehicle." Engelgau, col. 2, lines 2–5, Supplemental App. 6. Claim 4 of the patent, at issue here, describes:

"A vehicle control pedal apparatus comprising:

a support adapted to be mounted to a vehicle structure;

an adjustable pedal assembly having a pedal arm moveable in for[e] and aft directions with respect to said support;

a pivot for pivotally supporting said adjustable pedal assembly with respect to said support and defining a pivot axis; and

an electronic control attached to said support for controlling a vehicle system;

said apparatus characterized by said electronic control being responsive to said pivot for providing a signal that corresponds to pedal arm position as said pedal arm pivots about said pivot axis between rest and applied positions wherein the position of said pivot remains constant while said pedal arm moves in fore and aft directions with respect to said pivot." *Id.*, col.

6, lines 17–36, Supplemental App. 8 (diagram numbers omitted).

We agree with the District Court that the claim discloses "a position-adjustable pedal assembly with an electronic pedal position sensor attached to the support member of the pedal assembly. Attaching the sensor to the support member allows the sensor to remain in a fixed position while the driver adjusts the pedal." 298 F. Supp. 2d, at 586–587.

Before issuing the Engelgau patent the U. S. Patent and Trademark Office (PTO) rejected one of the patent claims that was similar to, but broader than, the present claim 4. The claim did not include the requirement that the sensor be placed on a fixed pivot point. The PTO concluded the claim was an obvious combination of the prior art disclosed in Redding and Smith, explaining:

> "'Since the prior ar[t] references are from the field of endeavor, the purpose disclosed . . . would have been recognized in the pertinent art of Redding. Therefore it would have been obvious . . . to provide the device of Redding with the . . . means attached to a support member as taught by Smith.'" *Id.*, at 595.

In other words Redding provided an example of an adjustable pedal and Smith explained how to mount a sensor on a pedal's support structure, and the rejected patent claim merely put these two teachings together.

Although the broader claim was rejected, claim 4 was later allowed because it included the limitation of a fixed pivot point, which distinguished the design from Redding's. *Ibid.* Engelgau had not included Asano among the prior art references, and Asano was not mentioned in the patent's prosecution. Thus, the PTO did not have before it an adjustable pedal with a fixed pivot point. The patent issued on May 29, 2001 and was assigned to Teleflex.

Upon learning of KSR's design for GM, Teleflex sent a

Opinion of the Court

warning letter informing KSR that its proposal would
violate the Engelgau patent. "'Teleflex believes that any
supplier of a product that combines an adjustable pedal
with an electronic throttle control necessarily employs
technology covered by one or more'" of Teleflex's patents.
*Id.*, at 585. KSR refused to enter a royalty arrangement
with Teleflex; so Teleflex sued for infringement, asserting
KSR's pedal infringed the Engelgau patent and two other
patents. *Ibid.* Teleflex later abandoned its claims regard-
ing the other patents and dedicated the patents to the
public. The remaining contention was that KSR's pedal
system for GM infringed claim 4 of the Engelgau patent.
Teleflex has not argued that the other three claims of the
patent are infringed by KSR's pedal, nor has Teleflex
argued that the mechanical adjustable pedal designed by
KSR for Ford infringed any of its patents.

C

The District Court granted summary judgment in KSR's
favor. After reviewing the pertinent history of pedal
design, the scope of the Engelgau patent, and the relevant
prior art, the court considered the validity of the contested
claim. By direction of 35 U. S. C. §282, an issued patent is
presumed valid. The District Court applied *Graham*'s
framework to determine whether under summary-
judgment standards KSR had overcome the presumption
and demonstrated that claim 4 was obvious in light of the
prior art in existence when the claimed subject matter was
invented. See §102(a).

The District Court determined, in light of the expert
testimony and the parties' stipulations, that the level of
ordinary skill in pedal design was "'an undergraduate
degree in mechanical engineering (or an equivalent
amount of industry experience) [and] familiarity with
pedal control systems for vehicles.'" 298 F. Supp. 2d, at
590. The court then set forth the relevant prior art, in-

Opinion of the Court

cluding the patents and pedal designs described above.

Following *Graham*'s direction, the court compared the teachings of the prior art to the claims of Engelgau. It found "little difference." 298 F. Supp. 2d, at 590. Asano taught everything contained in claim 4 except the use of a sensor to detect the pedal's position and transmit it to the computer controlling the throttle. That additional aspect was revealed in sources such as the '068 patent and the sensors used by Chevrolet.

Under the controlling cases from the Court of Appeals for the Federal Circuit, however, the District Court was not permitted to stop there. The court was required also to apply the TSM test. The District Court held KSR had satisfied the test. It reasoned (1) the state of the industry would lead inevitably to combinations of electronic sensors and adjustable pedals, (2) Rixon provided the basis for these developments, and (3) Smith taught a solution to the wire chafing problems in Rixon, namely locating the sensor on the fixed structure of the pedal. This could lead to the combination of Asano, or a pedal like it, with a pedal position sensor.

The conclusion that the Engelgau design was obvious was supported, in the District Court's view, by the PTO's rejection of the broader version of claim 4. Had Engelgau included Asano in his patent application, it reasoned, the PTO would have found claim 4 to be an obvious combination of Asano and Smith, as it had found the broader version an obvious combination of Redding and Smith. As a final matter, the District Court held that the secondary factor of Teleflex's commercial success with pedals based on Engelgau's design did not alter its conclusion. The District Court granted summary judgment for KSR.

With principal reliance on the TSM test, the Court of Appeals reversed. It ruled the District Court had not been strict enough in applying the test, having failed to make "'finding[s] as to the specific understanding or principle

Opinion of the Court

within the knowledge of a skilled artisan that would have motivated one with no knowledge of [the] invention' . . . to attach an electronic control to the support bracket of the Asano assembly." 119 Fed. Appx., at 288 (brackets in original) (quoting *In re Kotzab,* 217 F. 3d 1365, 1371 (CA Fed. 2000)). The Court of Appeals held that the District Court was incorrect that the nature of the problem to be solved satisfied this requirement because unless the "prior art references address[ed] the precise problem that the patentee was trying to solve," the problem would not motivate an inventor to look at those references. 119 Fed. Appx., at 288.

Here, the Court of Appeals found, the Asano pedal was designed to solve the "'constant ratio problem'"—that is, to ensure that the force required to depress the pedal is the same no matter how the pedal is adjusted—whereas Engelgau sought to provide a simpler, smaller, cheaper adjustable electronic pedal. *Ibid.* As for Rixon, the court explained, that pedal suffered from the problem of wire chafing but was not designed to solve it. In the court's view Rixon did not teach anything helpful to Engelgau's purpose. Smith, in turn, did not relate to adjustable pedals and did not "necessarily go to the issue of motivation to attach the electronic control on the support bracket of the pedal assembly." *Ibid.* When the patents were interpreted in this way, the Court of Appeals held, they would not have led a person of ordinary skill to put a sensor on the sort of pedal described in Asano.

That it might have been obvious to try the combination of Asano and a sensor was likewise irrelevant, in the court's view, because "'"[o]bvious to try" has long been held not to constitute obviousness.'" *Id.*, at 289 (quoting *In re Deuel,* 51 F. 3d 1552, 1559 (CA Fed. 1995)).

The Court of Appeals also faulted the District Court's consideration of the PTO's rejection of the broader version of claim 4. The District Court's role, the Court of Appeals

Opinion of the Court

explained, was not to speculate regarding what the PTO might have done had the Engelgau patent mentioned Asano. Rather, the court held, the District Court was obliged first to presume that the issued patent was valid and then to render its own independent judgment of obviousness based on a review of the prior art. The fact that the PTO had rejected the broader version of claim 4, the Court of Appeals said, had no place in that analysis.

The Court of Appeals further held that genuine issues of material fact precluded summary judgment. Teleflex had proffered statements from one expert that claim 4 "'was a simple, elegant, and novel combination of features,'" 119 Fed. Appx., at 290, compared to Rixon, and from another expert that claim 4 was nonobvious because, unlike in Rixon, the sensor was mounted on the support bracket rather than the pedal itself. This evidence, the court concluded, sufficed to require a trial.

## II
### A

We begin by rejecting the rigid approach of the Court of Appeals. Throughout this Court's engagement with the question of obviousness, our cases have set forth an expansive and flexible approach inconsistent with the way the Court of Appeals applied its TSM test here. To be sure, *Graham* recognized the need for "uniformity and definiteness." 383 U. S., at 18. Yet the principles laid down in *Graham* reaffirmed the "functional approach" of *Hotchkiss*, 11 How. 248. See 383 U. S., at 12. To this end, *Graham* set forth a broad inquiry and invited courts, where appropriate, to look at any secondary considerations that would prove instructive. *Id.*, at 17.

Neither the enactment of §103 nor the analysis in *Graham* disturbed this Court's earlier instructions concerning the need for caution in granting a patent based on the combination of elements found in the prior art. For over a

half century, the Court has held that a "patent for a combination which only unites old elements with no change in their respective functions . . . obviously withdraws what is already known into the field of its monopoly and diminishes the resources available to skillful men." *Great Atlantic & Pacific Tea Co.* v. *Supermarket Equipment Corp.*, 340 U. S. 147, 152 (1950). This is a principal reason for declining to allow patents for what is obvious. The combination of familiar elements according to known methods is likely to be obvious when it does no more than yield predictable results. Three cases decided after *Graham* illustrate the application of this doctrine.

In *United States* v. *Adams*, 383 U. S. 39, 40 (1966), a companion case to *Graham*, the Court considered the obviousness of a "wet battery" that varied from prior designs in two ways: It contained water, rather than the acids conventionally employed in storage batteries; and its electrodes were magnesium and cuprous chloride, rather than zinc and silver chloride. The Court recognized that when a patent claims a structure already known in the prior art that is altered by the mere substitution of one element for another known in the field, the combination must do more than yield a predictable result. 383 U. S., at 50–51. It nevertheless rejected the Government's claim that Adams's battery was obvious. The Court relied upon the corollary principle that when the prior art teaches away from combining certain known elements, discovery of a successful means of combining them is more likely to be nonobvious. *Id.*, at 51–52. When Adams designed his battery, the prior art warned that risks were involved in using the types of electrodes he employed. The fact that the elements worked together in an unexpected and fruitful manner supported the conclusion that Adams's design was not obvious to those skilled in the art.

In *Anderson's-Black Rock, Inc.* v. *Pavement Salvage Co.*, 396 U. S. 57 (1969), the Court elaborated on this approach.

The subject matter of the patent before the Court was a device combining two pre-existing elements: a radiant-heat burner and a paving machine. The device, the Court concluded, did not create some new synergy: The radiant-heat burner functioned just as a burner was expected to function; and the paving machine did the same. The two in combination did no more than they would in separate, sequential operation. *Id.,* at 60–62. In those circumstances, "while the combination of old elements performed a useful function, it added nothing to the nature and quality of the radiant-heat burner already patented," and the patent failed under §103. *Id.,* at 62 (footnote omitted).

Finally, in *Sakraida* v. *AG Pro, Inc.,* 425 U. S. 273 (1976), the Court derived from the precedents the conclusion that when a patent "simply arranges old elements with each performing the same function it had been known to perform" and yields no more than one would expect from such an arrangement, the combination is obvious. *Id.,* at 282.

The principles underlying these cases are instructive when the question is whether a patent claiming the combination of elements of prior art is obvious. When a work is available in one field of endeavor, design incentives and other market forces can prompt variations of it, either in the same field or a different one. If a person of ordinary skill can implement a predictable variation, §103 likely bars its patentability. For the same reason, if a technique has been used to improve one device, and a person of ordinary skill in the art would recognize that it would improve similar devices in the same way, using the technique is obvious unless its actual application is beyond his or her skill. *Sakraida* and *Anderson's-Black Rock* are illustrative—a court must ask whether the improvement is more than the predictable use of prior art elements according to their established functions.

Following these principles may be more difficult in other

Opinion of the Court

cases than it is here because the claimed subject matter
may involve more than the simple substitution of one
known element for another or the mere application of a
known technique to a piece of prior art ready for the im-
provement. Often, it will be necessary for a court to look
to interrelated teachings of multiple patents; the effects of
demands known to the design community or present in the
marketplace; and the background knowledge possessed by
a person having ordinary skill in the art, all in order to
determine whether there was an apparent reason to com-
bine the known elements in the fashion claimed by the
patent at issue. To facilitate review, this analysis should
be made explicit. See *In re Kahn*, 441 F. 3d 977, 988 (CA
Fed. 2006) ("[R]ejections on obviousness grounds cannot be
sustained by mere conclusory statements; instead, there
must be some articulated reasoning with some rational
underpinning to support the legal conclusion of obvious-
ness"). As our precedents make clear, however, the analy-
sis need not seek out precise teachings directed to the
specific subject matter of the challenged claim, for a court
can take account of the inferences and creative steps that
a person of ordinary skill in the art would employ.

B

When it first established the requirement of demon-
strating a teaching, suggestion, or motivation to combine
known elements in order to show that the combination is
obvious, the Court of Customs and Patent Appeals cap-
tured a helpful insight. See *Application of Bergel*, 292
F. 2d 955, 956–957 (1961). As is clear from cases such as
*Adams*, a patent composed of several elements is not
proved obvious merely by demonstrating that each of its
elements was, independently, known in the prior art.
Although common sense directs one to look with care at a
patent application that claims as innovation the combina-
tion of two known devices according to their established

Opinion of the Court

functions, it can be important to identify a reason that would have prompted a person of ordinary skill in the relevant field to combine the elements in the way the claimed new invention does. This is so because inventions in most, if not all, instances rely upon building blocks long since uncovered, and claimed discoveries almost of necessity will be combinations of what, in some sense, is already known.

Helpful insights, however, need not become rigid and mandatory formulas; and when it is so applied, the TSM test is incompatible with our precedents. The obviousness analysis cannot be confined by a formalistic conception of the words teaching, suggestion, and motivation, or by overemphasis on the importance of published articles and the explicit content of issued patents. The diversity of inventive pursuits and of modern technology counsels against limiting the analysis in this way. In many fields it may be that there is little discussion of obvious techniques or combinations, and it often may be the case that market demand, rather than scientific literature, will drive design trends. Granting patent protection to advances that would occur in the ordinary course without real innovation retards progress and may, in the case of patents combining previously known elements, deprive prior inventions of their value or utility.

In the years since the Court of Customs and Patent Appeals set forth the essence of the TSM test, the Court of Appeals no doubt has applied the test in accord with these principles in many cases. There is no necessary inconsistency between the idea underlying the TSM test and the *Graham* analysis. But when a court transforms the general principle into a rigid rule that limits the obviousness inquiry, as the Court of Appeals did here, it errs.

C

The flaws in the analysis of the Court of Appeals relate

Opinion of the Court

for the most part to the court's narrow conception of the
obviousness inquiry reflected in its application of the TSM
test. In determining whether the subject matter of a
patent claim is obvious, neither the particular motivation
nor the avowed purpose of the patentee controls. What
matters is the objective reach of the claim. If the claim
extends to what is obvious, it is invalid under §103. One
of the ways in which a patent's subject matter can be
proved obvious is by noting that there existed at the time
of invention a known problem for which there was an
obvious solution encompassed by the patent's claims.

The first error of the Court of Appeals in this case was
to foreclose this reasoning by holding that courts and
patent examiners should look only to the problem the
patentee was trying to solve. 119 Fed. Appx., at 288. The
Court of Appeals failed to recognize that the problem
motivating the patentee may be only one of many ad-
dressed by the patent's subject matter. The question is
not whether the combination was obvious to the patentee
but whether the combination was obvious to a person with
ordinary skill in the art. Under the correct analysis, any
need or problem known in the field of endeavor at the time
of invention and addressed by the patent can provide a
reason for combining the elements in the manner claimed.

The second error of the Court of Appeals lay in its as-
sumption that a person of ordinary skill attempting to
solve a problem will be led only to those elements of prior
art designed to solve the same problem. *Ibid.* The pri-
mary purpose of Asano was solving the constant ratio
problem; so, the court concluded, an inventor considering
how to put a sensor on an adjustable pedal would have no
reason to consider putting it on the Asano pedal. *Ibid.*
Common sense teaches, however, that familiar items may
have obvious uses beyond their primary purposes, and in
many cases a person of ordinary skill will be able to fit the
teachings of multiple patents together like pieces of a

Opinion of the Court

puzzle. Regardless of Asano's primary purpose, the design provided an obvious example of an adjustable pedal with a fixed pivot point; and the prior art was replete with patents indicating that a fixed pivot point was an ideal mount for a sensor. The idea that a designer hoping to make an adjustable electronic pedal would ignore Asano because Asano was designed to solve the constant ratio problem makes little sense. A person of ordinary skill is also a person of ordinary creativity, not an automaton.

The same constricted analysis led the Court of Appeals to conclude, in error, that a patent claim cannot be proved obvious merely by showing that the combination of elements was "obvious to try." *Id.*, at 289 (internal quotation marks omitted). When there is a design need or market pressure to solve a problem and there are a finite number of identified, predictable solutions, a person of ordinary skill has good reason to pursue the known options within his or her technical grasp. If this leads to the anticipated success, it is likely the product not of innovation but of ordinary skill and common sense. In that instance the fact that a combination was obvious to try might show that it was obvious under §103.

The Court of Appeals, finally, drew the wrong conclusion from the risk of courts and patent examiners falling prey to hindsight bias. A factfinder should be aware, of course, of the distortion caused by hindsight bias and must be cautious of arguments reliant upon *ex post* reasoning. See *Graham*, 383 U. S., at 36 (warning against a "temptation to read into the prior art the teachings of the invention in issue" and instructing courts to "'guard against slipping into the use of hindsight'" (quoting *Monroe Auto Equipment Co.* v. *Heckethorn Mfg. & Supply Co.*, 332 F. 2d 406, 412 (CA6 1964))). Rigid preventative rules that deny factfinders recourse to common sense, however, are neither necessary under our case law nor consistent with it.

We note the Court of Appeals has since elaborated a

Opinion of the Court

broader conception of the TSM test than was applied in
the instant matter. See, *e.g.*, *DyStar Textilfarben GmbH
& Co. Deutschland KG* v. *C. H. Patrick Co.*, 464 F. 3d
1356, 1367 (2006) ("Our suggestion test is in actuality
quite flexible and not only permits, but *requires*, consid-
eration of common knowledge and common sense"); *Alza
Corp.* v. *Mylan Labs., Inc.*, 464 F. 3d 1286, 1291 (2006)
("There is flexibility in our obviousness jurisprudence
because a motivation may be found *implicitly* in the prior
art. We do not have a rigid test that requires an actual
teaching to combine . . ."). Those decisions, of course, are
not now before us and do not correct the errors of law
made by the Court of Appeals in this case. The extent to
which they may describe an analysis more consistent with
our earlier precedents and our decision here is a matter
for the Court of Appeals to consider in its future cases.
What we hold is that the fundamental misunderstandings
identified above led the Court of Appeals in this case to
apply a test inconsistent with our patent law decisions.

### III

When we apply the standards we have explained to the
instant facts, claim 4 must be found obvious. We agree
with and adopt the District Court's recitation of the rele-
vant prior art and its determination of the level of ordi-
nary skill in the field. As did the District Court, we see
little difference between the teachings of Asano and Smith
and the adjustable electronic pedal disclosed in claim 4 of
the Engelgau patent. A person having ordinary skill in
the art could have combined Asano with a pedal position
sensor in a fashion encompassed by claim 4, and would
have seen the benefits of doing so.

### A

Teleflex argues in passing that the Asano pedal cannot
be combined with a sensor in the manner described by

Opinion of the Court

claim 4 because of the design of Asano's pivot mechanisms. See Brief for Respondents 48–49, and n. 17. Therefore, Teleflex reasons, even if adding a sensor to Asano was obvious, that does not establish that claim 4 encompasses obvious subject matter. This argument was not, however, raised before the District Court. There Teleflex was content to assert only that the problem motivating the invention claimed by the Engelgau patent would not lead to the solution of combining of Asano with a sensor. See Teleflex's Response to KSR's Motion for Summary Judgment of Invalidity in No. 02–74586 (ED Mich.), pp. 18–20, App. 144a–146a. It is also unclear whether the current argument was raised before the Court of Appeals, where Teleflex advanced the nonspecific, conclusory contention that combining Asano with a sensor would not satisfy the limitations of claim 4. See Brief for Plaintiffs-Appellants in No. 04–1152 (CA Fed.), pp. 42–44. Teleflex's own expert declarations, moreover, do not support the point Teleflex now raises. See Declaration of Clark J. Radcliffe, Ph.D., Supplemental App. 204–207; Declaration of Timothy L. Andresen, *id.*, at 208–210. The only statement in either declaration that might bear on the argument is found in the Radcliffe declaration:

> "Asano . . . and Rixon . . . are complex mechanical linkage-based devices that are expensive to produce and assemble and difficult to package. It is exactly these difficulties with prior art designs that [Engelgau] resolves. The use of an adjustable pedal with a single pivot reflecting pedal position combined with an electronic control mounted between the support and the adjustment assembly at that pivot was a simple, elegant, and novel combination of features in the Engelgau '565 patent." *Id.*, at 206, ¶16.

Read in the context of the declaration as a whole this is best interpreted to mean that Asano could not be used to

solve "[t]he problem addressed by Engelgau '565[:] to provide a less expensive, more quickly assembled, and smaller package adjustable pedal assembly with electronic control." *Id.,* at 205, ¶10.

The District Court found that combining Asano with a pivot-mounted pedal position sensor fell within the scope of claim 4. 298 F. Supp. 2d, at 592–593. Given the sigificance of that finding to the District Court's judgment, it is apparent that Teleflex would have made clearer challenges to it if it intended to preserve this claim. In light of Teleflex's failure to raise the argument in a clear fashion, and the silence of the Court of Appeals on the issue, we take the District Court's conclusion on the point to be correct.

### B

The District Court was correct to conclude that, as of the time Engelgau designed the subject matter in claim 4, it was obvious to a person of ordinary skill to combine Asano with a pivot-mounted pedal position sensor. There then existed a marketplace that created a strong incentive to convert mechanical pedals to electronic pedals, and the prior art taught a number of methods for achieving this advance. The Court of Appeals considered the issue too narrowly by, in effect, asking whether a pedal designer writing on a blank slate would have chosen both Asano and a modular sensor similar to the ones used in the Chevrolet truckline and disclosed in the '068 patent. The District Court employed this narrow inquiry as well, though it reached the correct result nevertheless. The proper question to have asked was whether a pedal designer of ordinary skill, facing the wide range of needs created by developments in the field of endeavor, would have seen a benefit to upgrading Asano with a sensor.

In automotive design, as in many other fields, the interaction of multiple components means that changing one

Opinion of the Court

component often requires the others to be modified as
well. Technological developments made it clear that
engines using computer-controlled throttles would become
standard. As a result, designers might have decided to
design new pedals from scratch; but they also would have
had reason to make pre-existing pedals work with the new
engines. Indeed, upgrading its own pre-existing model led
KSR to design the pedal now accused of infringing the
Engelgau patent.

For a designer starting with Asano, the question was
where to attach the sensor. The consequent legal ques-
tion, then, is whether a pedal designer of ordinary skill
starting with Asano would have found it obvious to put the
sensor on a fixed pivot point. The prior art discussed
above leads us to the conclusion that attaching the sensor
where both KSR and Engelgau put it would have been
obvious to a person of ordinary skill.

The '936 patent taught the utility of putting the sensor
on the pedal device, not in the engine. Smith, in turn,
explained to put the sensor not on the pedal's footpad but
instead on its support structure. And from the known
wire-chafing problems of Rixon, and Smith's teaching that
"the pedal assemblies must not precipitate any motion in
the connecting wires," Smith, col. 1, lines 35–37, Supple-
mental App. 274, the designer would know to place the
sensor on a nonmoving part of the pedal structure. The
most obvious nonmoving point on the structure from
which a sensor can easily detect the pedal's position is a
pivot point. The designer, accordingly, would follow Smith
in mounting the sensor on a pivot, thereby designing an
adjustable electronic pedal covered by claim 4.

Just as it was possible to begin with the objective to
upgrade Asano to work with a computer-controlled throt-
tle, so too was it possible to take an adjustable electronic
pedal like Rixon and seek an improvement that would
avoid the wire-chafing problem. Following similar steps to

those just explained, a designer would learn from Smith to avoid sensor movement and would come, thereby, to Asano because Asano disclosed an adjustable pedal with a fixed pivot.

Teleflex indirectly argues that the prior art taught away from attaching a sensor to Asano because Asano in its view is bulky, complex, and expensive. The only evidence Teleflex marshals in support of this argument, however, is the Radcliffe declaration, which merely indicates that Asano would not have solved Engelgau's goal of making a small, simple, and inexpensive pedal. What the declaration does not indicate is that Asano was somehow so flawed that there was no reason to upgrade it, or pedals like it, to be compatible with modern engines. Indeed, Teleflex's own declarations refute this conclusion. Dr. Radcliffe states that Rixon suffered from the same bulk and complexity as did Asano. See *id.*, at 206. Teleflex's other expert, however, explained that Rixon was itself designed by adding a sensor to a pre-existing mechanical pedal. See *id.*, at 209. If Rixon's base pedal was not too flawed to upgrade, then Dr. Radcliffe's declaration does not show Asano was either. Teleflex may have made a plausible argument that Asano is inefficient as compared to Engelgau's preferred embodiment, but to judge Asano against Engelgau would be to engage in the very hindsight bias Teleflex rightly urges must be avoided. Accordingly, Teleflex has not shown anything in the prior art that taught away from the use of Asano.

Like the District Court, finally, we conclude Teleflex has shown no secondary factors to dislodge the determination that claim 4 is obvious. Proper application of *Graham* and our other precedents to these facts therefore leads to the conclusion that claim 4 encompassed obvious subject matter. As a result, the claim fails to meet the requirement of §103.

We need not reach the question whether the failure to

Opinion of the Court

disclose Asano during the prosecution of Engelgau voids the presumption of validity given to issued patents, for claim 4 is obvious despite the presumption. We nevertheless think it appropriate to note that the rationale underlying the presumption—that the PTO, in its expertise, has approved the claim—seems much diminished here.

IV

A separate ground the Court of Appeals gave for reversing the order for summary judgment was the existence of a dispute over an issue of material fact. We disagree with the Court of Appeals on this point as well. To the extent the court understood the *Graham* approach to exclude the possibility of summary judgment when an expert provides a conclusory affidavit addressing the question of obviousness, it misunderstood the role expert testimony plays in the analysis. In considering summary judgment on that question the district court can and should take into account expert testimony, which may resolve or keep open certain questions of fact. That is not the end of the issue, however. The ultimate judgment of obviousness is a legal determination. *Graham*, 383 U. S., at 17. Where, as here, the content of the prior art, the scope of the patent claim, and the level of ordinary skill in the art are not in material dispute, and the obviousness of the claim is apparent in light of these factors, summary judgment is appropriate. Nothing in the declarations proffered by Teleflex prevented the District Court from reaching the careful conclusions underlying its order for summary judgment in this case.

\*    \*    \*

We build and create by bringing to the tangible and palpable reality around us new works based on instinct, simple logic, ordinary inferences, extraordinary ideas, and sometimes even genius. These advances, once part of our

24          KSR INT'L CO. *v.* TELEFLEX INC.

Opinion of the Court

shared knowledge, define a new threshold from which innovation starts once more. And as progress beginning from higher levels of achievement is expected in the normal course, the results of ordinary innovation are not the subject of exclusive rights under the patent laws. Were it otherwise patents might stifle, rather than promote, the progress of useful arts. See U. S. Const., Art. I, §8, cl. 8. These premises led to the bar on patents claiming obvious subject matter established in *Hotchkiss* and codified in §103. Application of the bar must not be confined within a test or formulation too constrained to serve its purpose.

KSR provided convincing evidence that mounting a modular sensor on a fixed pivot point of the Asano pedal was a design step well within the grasp of a person of ordinary skill in the relevant art. Its arguments, and the record, demonstrate that claim 4 of the Engelgau patent is obvious. In rejecting the District Court's rulings, the Court of Appeals analyzed the issue in a narrow, rigid manner inconsistent with §103 and our precedents. The judgment of the Court of Appeals is reversed, and the case remanded for further proceedings consistent with this opinion.

*It is so ordered.*

# EXHIBIT 7

# THIS EXHIBIT HAS BEEN REDACTED IN ITS ENTIRETY

# EXHIBIT 8

# THIS EXHIBIT HAS BEEN
# REDACTED IN ITS ENTIRETY

# EXHIBIT 9

# THIS EXHIBIT HAS BEEN REDACTED IN ITS ENTIRETY