IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| BRIDGESTONE SPORTS CO., LTD., and BRIDGESTONE GOLF, INC., | ) ) ) | |
| Plaintiffs, | ) ) | C. A. No. 05-132 (JJF) |
| v. | ) ) ) | **PUBLIC VERSION** |
| ACUSHNET COMPANY, | ) ) | |
| Defendant. | ) | |

**ACUSHNET COMPANY'S OPPOSITION BRIEF TO BRIDGESTONE'S
MOTION *IN LIMINE* NO. 3 TO PRECLUDE ACUSHNET FROM
REFERENCING LITIGATION BETWEEN MR. CALABRIA AND ACUSHNET**

OF COUNSEL:

Alan M. Grimaldi
Joseph P. Lavelle
Kenneth W. Donnelly
HOWREY LLP
1299 Pennsylvania Avenue, N.W.
Washington, DC 20004
Tel: (202) 783-0800

Dated: May 14, 2007
Public Version Dated: May 22, 2007
797077 / 28946

Richard L. Horwitz (#2246)
David E. Moore (#3983)
POTTER ANDERSON & CORROON LLP
Hercules Plaza, 6th Floor
1313 North Market Street
P. O. Box 951
Wilmington, DE 19899-0951
Tel: (302) 984-6000
rhorwitz@potteranderson.com
dmoore@potteranderson.com

*Attorneys for Defendant
Acushnet Company*

# TABLE OF CONTENTS

I.   Introduction ................................................................................................................. 1

II.  The Maxfli litigation is proper subject for cross-examination of
     Bridgestone's Experts ................................................................................................ 2

   A.  Mr. Calabria's Involvement in the *Maxfli* Litigation is Relevant to the
       Credibility of His Proffered Testimony. ............................................................... 2

   B.  The *Maxfli* Litigation is Also Proper for the Cross-Examination of
       Bridgestone's Damages Expert. ............................................................................ 4

III. CONCLUSION ......................................................................................................... 5

## TABLE OF AUTHORITIES

### CASES

*Hughes Aircraft Co. v. United States,*
   86 F.3d 1566 (Fed. Cir. 1996)..................................................................................4

*Stecyk v. Bell Helicopter Textron, Inc.,*
   295 F.3d 408 (3d Cir. 2002)......................................................................................4

*U.S. v. Abel,*
   469 U.S. 45 (1984).....................................................................................................2

### STATUTES

Fed. R. Evid. 607 ...............................................................................................................2

Acushnet Company ("Acushnet") opposes the Motion *in Limine* No. 3 submitted by Bridgestone Sports Co., Ltd. and Bridgestone Golf, Inc. (collectively "Bridgestone").

## I.   INTRODUCTION

It is unclear precisely what Bridgestone seeks to exclude with respect to *Acushnet Company v. Dunlop Maxfli Sports,* 1:98-cv-00717-SLR (D. Del.) (*Maxfli* Litigation), John Calabria's involvement in that case or his involvement in any other case.[1] To the extent Bridgestone seeks to preclude Acushnet from referring to or using the *Maxfli* Litigation or information therein, its motion should be denied for the following reasons:

***First***, the actions of Mr. Calabria, formerly with Acushnet and now an expert for Bridgestone, formed the central factual foundation of the *Maxfli* Litigation – specifically, whether he misappropriated and used Acushnet's intellectual property to cause Dunlop to infringe Acushnet's patents. Mr. Calabria was identified several times in the complaint filed by Acushnet in the *Maxfli* Litigation. (Ex. 1 – Compl. at ¶¶ 7-14). Moreover, Mr. Calabria touts his inventorship role at Acushnet and subsequent experiences at Maxfli to bolster his credibility as an expert in this case. (Ex. 2 – Calabria CV). Thus, Acushnet is at least entitled to examine the nature of his relationship with Acushnet as well as Dunlop before, during and after the *Maxfli* case, including that Acushnet named him in its complaint as the key contributor to Maxfli's misappropriation of Acushnet's IP. This is to demonstrate that Mr. Calabria harbors bias toward Acushnet and allow the jury to take account of such bias when evaluating the credibility and weight of his testimony.

***Second***, and independently, Bridgestone's damages expert, Mr. Jarosz, relied on two license agreements that resolved the *Maxfli* Litigation in his attempt to opine on a

---

[1] Bridgestone's motion, styled as seeking to preclude "Acushnet from referencing any litigation between Mr. Calabria and Acushnet," states in the very first paragraph that it "moves *in limine* to preclude [Acushnet] and its experts from referencing [the *Maxfli* case]... or one of Bridgestone's experts, John Calabria, involvement in that litigation." The motion concludes that Acushnet "be precluded from introducing any evidence of John Calabria's involvement in any other lawsuit, including the *Maxfli* litigation."

reasonable royalty rate applicable in this case. Thus, at a minimum, Acushnet is entitled to question Mr. Jarosz on the *Maxfli* Litigation and present evidence regarding the circumstances leading to the entry of these licenses, including the context of the *Maxfli* Litigation and the commercial circumstances leading to entry of those license agreements. In fact, Mr. Calabria is expressly named and released in one of the licenses that settled Acushnet's claim directed to Mr. Calabria's misappropriation.

## II. THE MAXFLI LITIGATION IS PROPER SUBJECT FOR CROSS-EXAMINATION OF BRIDGESTONE'S EXPERTS

In the broadest sense, Bridgestone appears to move *in limine* to preclude Acushnet and its experts from referencing any aspect of the *Maxfli* Litigation. Acushnet anticipates using such evidence in its cross-examination of Bridgestone's experts. As set forth below, this evidence is not only non-prejudicial but is highly probative in assisting the jury's assessment of the proper weight, if any, to afford the proffered testimony.

### A. Mr. Calabria's Involvement in the *Maxfli* Litigation is Relevant to the Credibility of His Proffered Testimony.

The rules of evidence permit parties to examine a witness about potential bias and past relationships the witness may have with other witnesses or parties that may otherwise be relevant to the proceedings. Fed. R. Evid. 607; *see U.S. v. Abel*, 469 U.S. 45, 51-52 (1984). This principle is of particular import with regard to an expert witness who presumably has no connection with the case other than that one of the parties hired the expert to render an unbiased opinion about a specific aspect of the case. Here, the jury has the task of determining if there is anything about the expert witness or his relationship to a party that renders the witness more or less trustworthy. For this reason, courts are reluctant to restrict questions that go to bias, which can be some of the most powerful modes of examination. "Proof of bias is almost always relevant because the jury, as finder of fact and weigher of credibility, has historically been entitled to assess all evidence which might bear on the accuracy and truth of a witness' testimony." *Id.*

In *Maxfli*, Acushnet sued Dunlop for infringement of two patents, one of which ("the '428 patent") issued to Mr. Calabria. Acushnet alleged expressly in the *Maxfli* complaint that Mr. Calabria took technology that he acquired while employed at Acushnet, and utilized the technology to facilitate Dunlop's introduction of two new golf ball products manufactured according to and therefore infringing the '428 patent. (Ex. 1 ¶¶7-8, 12.) To state that Mr. Calabria was only "tangentially connected as a fact witness" truly belies the facts. Mr. Calabria was not a named *party*, but both Acushnet and Dunlop recognized that his conduct was at the heart of the allegations made in that case. As Dunlop stated in one of its briefs, "[t]he ultimate factual foundation of Acushnet's claim of infringement with respect to the '428 patent rests with the employment history of Mr. Calabria." (Ex. 3 – Dunlop's Mot. to Dismiss at 9.)

Here Acushnet is entitled to explore the nature of Mr. Calabria's employment before, during, and after the *Maxfli* Litigation, including to cross-examine Mr. Calabria whether he harbors any bitterness or resentment toward Acushnet as a result of the *Maxfli* Litigation targeting his conduct. Such evidence of bias is highly probative in the jury's evaluation of the credibility and therefore weight, if any, to afford his testimony. Indeed, had Bridgestone done due diligence in retaining Mr. Calabria, it surely would have learned of the *Maxfli* case and could have avoided any alleged prejudice by retaining someone else. By failing to do so, however, it is hard pressed now to remove Acushnet's right to establish bias, one of the most fundamental areas of cross-examination.

Bridgestone's motion seeking to preclude Acushnet from referencing Mr. Calabria's involvement in that litigation should be denied.[2]

---

[2] Similarly, Acushnet alleged in *Maxfli* that Mr. Lauro Cadorniga, another now-Bridgestone expert, also misappropriated Acushnet technology acquired while at Acushnet. Thus, Acushnet intends also to question Lauro Cadorniga about the *Maxfli* case, as to allow the jury to take into account his bias toward Acushnet.

3

### B. The *Maxfli* Litigation is Also Proper for the Cross-Examination of Bridgestone's Damages Expert.

The rules of evidence place the burden of exploring the facts and assumptions underlying the testimony of an expert witness on opposing counsel during cross-examination. *Stecyk v. Bell Helicopter Textron, Inc.*, 295 F.3d 408, 414 (3d Cir. 2002). Indeed, vigorous cross-examination of an adverse expert witness regarding the basis of his opinion is the appropriate means for attacking shaky evidence and to highlight the weaknesses of the testimony. Such evidence is critical in assisting the jury to determine the proper weight, if any, to afford the testimony. As to damages, the Federal Circuit has repeatedly held that in the determination of the proper royalty rate based on prior licenses, the entirety of circumstances surrounding the licenses should be considered, including the infringement context and what led the parties to the license agreement. *See, e.g., Hughes Aircraft Co. v. United States,* 86 F.3d 1566, 1573 (Fed. Cir. 1996) (proper to consider "the infringement context in which the licensing offers were made.").

Bridgestone's damages expert has submitted an expert report on the appropriate royalty rate for Acushnet's alleged infringement, discussing as relevant the two licenses that finally resolved the *Maxfli* Litigation ("Licenses"). (Ex. 5 – Jarosz Rpt. at 20, 24 & Tab 33). In discussing these Licenses, he also referred to the testimony of Acushnet's General Counsel, Joseph Nauman, who negotiated these agreements and testified to the factors that the parties considered in arriving at the terms associated with these Licenses. Acushnet's damages expert, David Kaplan, in his rebuttal report, also examined the Licenses, the *Maxfli* Litigation and Mr. Nauman's testimony. (Ex. 6 – Kaplan Rpt. at 25.) Among other things, the experts found relevant that the royalty rates associated with these Licenses were affected by Acushnet's belief that Acushnet's former employees, Messrs. Calabria and Cadorniga, misappropriated the technology resulting in the *Maxfli* Litigation. (Ex. 6 – Kaplan Rpt. at 24-25; Ex 5 – Jarosz Rpt. at 24, nn.106-111 (citing Nauman testimony about the Licenses); and Ex. 7 – Nauman Dep. Tr. at 34.)

4

By his reliance on the agreements that resolved the *Maxfli* Litigation, Acushnet is at least entitled to question Mr. Jarosz on the circumstances surrounding the bringing and settlement of that litigation, which of course resulted in the Licenses, including the underlying facts and commercial consequences of the infringement there, to put into context whether Mr. Jarosz's consideration of these Licenses and his conclusions based on those considerations are proper. Similarly, Acushnet's expert is entitled to present rebuttal evidence to highlight the weaknesses of Mr. Jarosz's testimony. Such evidence is highly probative in determining the appropriate weight to afford Mr. Jarosz's opinions.

A party's ability to test the factual underpinnings of an adverse expert's testimony through the crucible of the adversarial system is critical to illuminate whether the proffered testimony is lacking in any respect. Bridgestone has not pointed to any real danger or unfair prejudice in using such evidence because there is none.

Remarkably, while Bridgestone seeks to exclude Acushnet's reliance on any discussion of the *Maxfli* Litigation or Mr. Calabria's involvement in it (a factor relevant to what that led to the Licenses and settlement agreements relied upon by its expert on damages), Bridgestone itself has designated in pre-trial submissions deposition testimony about the *Maxfli* Litigation and the negotiations that lead to the settlement of that litigation that is cited by its damages expert. The testimony makes explicit reference to the Calabria circumstance. (Ex. 8 – Bridgestone's Pre-Trial Deposition Designation of Mr. Nauman's Testimony; Ex. 7 – Nauman Tr. at 34). Surely Bridgestone cannot have it both ways. Acushnet is entitled to use this evidence too. The circumstances surrounding the *Maxfli* Litigation illuminate the appropriateness of Mr. Jarosz's reliance on the associated Licenses and far outweighs any unsubstantiated danger of prejudice.

### III.   CONCLUSION

For the foregoing reasons, Acushnet respectfully requests the Court deny Bridgestone's motion *in limine* No. 3 in its entirety.

5

|  |  |
|---|---|
|  | POTTER ANDERSON & CORROON LLP |
| OF COUNSEL: | By: /s/ David E. Moore |
|  | Richard L. Horwitz (#2246) |
| Alan M. Grimaldi | David E. Moore (#3983) |
| Joseph P. Lavelle | Hercules Plaza, 6th Floor |
| Kenneth W. Donnelly | 1313 N. Market Street |
| HOWREY LLP | P.O. Box 951 |
| 1299 Pennsylvania Ave., N.W. | Wilmington, DE 19899-0951 |
| Washington, DC 20004 | (302) 984-6000 |
| Telephone: (202) 783-0800 | rhorwitz@potteranderson.com |
|  | dmoore@potteranderson.com |
| Dated: May 14, 2007 |  |
| Public Version Dated: May 22, 2007 | *Attorneys for Defendant* |
| 797077/28946 | *Acushnet Company* |

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

## CERTIFICATE OF SERVICE

I, David E. Moore, hereby certify that on May 22, 2007, the attached document was hand delivered to the following persons and was electronically filed with the Clerk of the Court using CM/ECF which will send notification to the registered attorney(s) of record that the document has been filed and is available for viewing and downloading:

Jack B. Blumenfeld
Maryellen Noreika
Leslie A. Polizoti
Morris, Nichols, Arsht & Tunnell
1201 N. Market Street
Wilmington, DE  19801

I hereby certify that on May 22, 2007, I have Electronically Mailed the documents to the following:

Robert M. Masters
Paul, Hastings, Janofsky & Walker LLP
875 15th Street, N.W.
Washington, D.C.  20005
RobMasters@paulhastings.com

/s/ David E. Moore
Richard L. Horwitz
David E. Moore
Potter Anderson & Corroon LLP
Hercules Plaza – Sixth Floor
1313 North Market Street
P.O. Box 951
Wilmington, DE  19899-0951
(302) 984-6000
rhorwitz@potteranderson.com
dmoore@potteranderson.com

680012 / 28946