# EXHIBIT 1

JS 44
(Rev. 12/96)

# CIVIL COVER SHEET

*98-717*

The JS-44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

| PLAINTIFFS | DEFENDANTS |
|---|---|
| ACUSHNET COMPANY | DUNLOP MAXFLI SPORTS CORPORATION |

**(b)** COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF _____
(EXCEPT IN U.S. PLAINTIFF CASES)

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT _____
(IN U.S. PLAINTIFF CASES ONLY)
NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)
William J. Wade, Esquire
Richards, Layton & Finger
One Rodney Square
P.O. Box 551
Wilmington, DE 19899
(302) 651-7718

ATTORNEYS (IF KNOWN)

## II.  BASIS OF JURISDICTION (PLACE AN X IN ONE BOX ONLY)

- ☐ 1 U.S. Government Plaintiff
- ☒ 3 Federal Question (U.S. Government Not a Party)
- ☐ 2 U.S. Government Defendant
- ☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

## III.  CITIZENSHIP OF PRINCIPAL PARTIES (PLACE AN X IN ONE BOX FOR PLAINTIFF AND ONE BOX FOR DEFENDANT)
(For Diversity Cases Only)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business in This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## VI.  ORIGIN (PLACE AN X IN ONE BOX ONLY)

- ☒ 1 Original Proceeding
- ☐ 2 Removed from State Court
- ☐ 3 Remanded from Appellate Court
- ☐ 4 Reinstated or Reopened
- ☐ 50 Transferred from another district (specify)
- ☐ 6 Multidistrict Litigation
- ☐ 7 Appeal to District Judge from Magistrate Judgment

## V.  NATURE OF SUIT (PLACE AN X IN ONE BOX ONLY)

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reappointment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury – Med. Malpractice | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal 28 USC 157 | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 365 Personal Injury – Product Liability | ☐ 625 Drug Related Seizure of Property 21 USC 881 | | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 450 Commerce/ICC Rates/etc. |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 460 Deportation |
| | | **PERSONAL PROPERTY** | ☐ 650 Airline Regs. | ☒ 830 Patent | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 151 Medicare Act | ☐ 340 Marine | ☐ 370 Other Fraud | ☐ 660 Occupational Safety/Health | ☐ 840 Trademark | ☐ 810 Selective Service |
| ☐ 152 Recovery of Defaulted Student Loans (excl. Veterans) | ☐ 345 Marine Product Liability | ☐ 371 Truth in Lending | ☐ 690 Other | **SOCIAL SECURITY** | ☐ 850 Securities/Commodities/Exchange |
| | ☐ 350 Motor Vehicle | ☐ 380 Other Personal Property Damage | | ☐ 861 HIA (1395ff) | ☐ 875 Customer Challenge 12 USC 3410 |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 355 Motor Vehicle Product Liability | ☐ 385 Property Damage Product Liability | **LABOR** | ☐ 862 Black Lung (923) | ☐ 891 Agricultural Acts |
| ☐ 160 Stockholder's Suits | ☐ 360 Other Personal Injury | | ☐ 710 Fair Labor Standards Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 892 Economic Stabilization Act |
| ☐ 190 Other Contract | | | ☐ 720 Labor/Mgmt. Relations | ☐ 864 SSID Title XVI | ☐ 893 Environmental Matters |
| ☐ 195 Contract Product Liability | | | ☐ 730 Labor/Mgmt. Reporting & Disclosure Act | ☐ 865 RSI (405(g)) | ☐ 894 Energy Allocation Act |
| | | | ☐ 740 Railway Labor Act | **FEDERAL TAX SUITS** | ☐ 895 Freedom of Information Act |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 790 Other Labor Litigation | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate Sentence Habeas Corpus: | ☐ 791 Empl. Ret. Inc. Security Act | ☐ 871 IRS – Third Party 26 USC 7609 | ☐ 950 Constitutionality of State Statutes |
| ☐ 220 Foreclosure | ☐ 442 Employment | ☐ 530 General | | | ☐ 890 Other Statutory Actions |
| ☐ 230 Rent Lease & Eject | ☐ 443 Housing/ Accommodations | ☐ 535 Death Penalty | | | |
| ☐ 240 Torts to Land | ☐ 444 Welfare | ☐ 540 Mandamus & Other | | | |
| ☐ 245 Tort Product Liability | ☐ 440 Other Civil Rights | ☐ 550 Civil Rights | | | |
| ☐ 290 All Other Real Property | | ☐ 555 Prison Condition | | | |

## IV.  CAUSE OF ACTION
(CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE. DO NOT CITE JURISDICTIONAL STATUTES UNLESS DIVERSITY.)
Patent infringement arising under the Patent Laws of the United States, Title 35, United States Code.

## VII.  REQUESTED IN COMPLAINT:
CHECK IF THIS IS A **CLASS ACTION**   ☐ Under F.R.C.P. 23   **DEMAND $** _____
CHECK YES only if demanded in complaint:
**JURY DEMAND:** ☐ YES  ☒ NO

## VIII. RELATED CASE(S) IF ANY
(See instructions):
Judge _____   Docket Number _____

December 17, 1998

SIGNATURE OF ATTORNEY OF RECORD
*William Wade*

## FOR OFFICE USE ONLY

RECEIPT #_____   AMOUNT _____   APPLYING IFP_____   JUDGE _____   MAG. JUDGE _____

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

ACUSHNET COMPANY

                    Plaintiff,

            v.

DUNLOP MAXFLI SPORTS
CORPORATION.

                    Defendant.

Civil Action No.: 98-712

## COMPLAINT

Plaintiff, Acushnet Company, by its undersigned attorneys, as and for its complaint against defendant, Dunlop Maxfli Sports Corporation, alleges as follows:

### NATURE OF ACTION

1.      This is a civil action for patent infringement arising under the Patent Laws of the United States, Title 35, United States Code.

### THE PARTIES

2.      Plaintiff, Acushnet Company ("Acushnet"), is a corporation organized and existing under the laws of the State of Delaware, with a principal place of business at 333 Bridge Street, Fairhaven, Massachusetts. Acushnet is a leading manufacturer of golf equipment, including golf balls, golf shoes and golf clubs.

3.      Defendant, Dunlop Maxfli Sports Corporation ("Dunlop"), upon information and belief, is a corporation organized and existing under the laws of the State of Delaware, with a

principal place of business at 728 N. Pleasantburg Dr., Greenville, South Carolina. . Dunlop manufactures and sells golf equipment, including golf balls and golf clubs.

JURISDICTION AND VENUE

4.    This Court has jurisdiction over this action under 28 U.S.C. § 1338(a).

5.    Venue is proper in this Judicial District pursuant to 28 U.S.C. §§ 1400(b) and 1391(c) as the defendant is incorporated in this Judicial District and the unlawful acts of defendant complained of herein have been committed by defendant within this Judicial District and/or have had effect in this Judicial District.

BACKGROUND RELATING TO DUNLOP'S INFRINGEMENT OF
ACUSHNET'S POLYURETHANE PROCESS PATENT

6.    Acushnet manufactures and sells polyurethane covered golf balls under the trademark "Titleist Professional." These golf balls are manufactured by forming a liquid filled center, winding elastomeric thread around the center, applying a thin latex coating over the windings and then casting a spherical polyurethane cover over the coated windings.

7.    Acushnet had begun researching how to make polyurethane covered golf balls prior to August 1988 when it hired Mr. John Calabria as a Senior Project Manager to assist in further polyurethane cover development work. Between 1988 and 1995, Mr. Calabria worked almost exclusively in the polyurethane cover development and manufacturing program. Acushnet introduced its first polyurethane covered golf balls into the Japanese market in April 1993 and into the United States market in August 1993. Acushnet presently continues to manufacture and sell such golf balls.

8.    During his employment by Acushnet, Mr. Calabria participated in a number of inventions relating to polyurethane covered golf balls and their manufacture. Mr. Calabria also

assisted legal counsel for Acushnet in the preparation and prosecution of patent applications relating to the polyurethane covered golf balls and their manufacture.

9.    On March 31, 1998, the United States Patent and Trademark Office ("USPTO") granted Mr. Calabria, et al. United States Patent No. 5,733,428 ("the '428 patent"), entitled "Method for Forming Polyurethane Cover on Golf Ball Core." (Exh. A).

10.    The '428 patent is assigned to Acushnet pursuant to an assignment agreement recorded with the USPTO.

11.    In July 1995, Mr. Calabria resigned from Acushnet.

12.    Upon information and belief, in July 1995, Mr. Calabria became employed by Dunlop, where he assisted in the development and manufacture of polyurethane covered golf balls.

13.    Upon information and belief, in 1997, Dunlop introduced two polyurethane covered golf balls into the U.S. market under the trademarks "Maxfli Revolution" and "Maxfli HT".

14.    Upon information and belief, Dunlop is currently selling the Revolution and HT golf balls in violation of and without license under the '428 patent.

15.    Upon information and belief, Dunlop is currently selling or offering to sell polyurethane covered golf balls to David Geoffrey & Associates, d/b/a Slazenger Golf USA to be sold under the trademark "Slazenger 420 Select" in violation of and without license under the '428 patent.

## BACKGROUND RELATING TO DUNLOP'S INFRINGEMENT OF ACUSHNET'S RUBBER CORE PROCESS PATENT

16.    Acushnet manufactures and sells golf balls with a solid rubber core under the trademark "Titleist HP2 Tour," "Titleist HP2 Distance," "Titleist DT Two Piece" and "Pinnacle." These rubber cores are manufactured by forming preps of a rubber composition, placing the preps

RLF3-1079548-1                              - 3 -

into the lower mold cavity of a two-piece spherical mold and compression molding the preps into spherical golf ball cores.

17.    One of the problems traditionally encountered with compression molding is that the cores have a tendency to stick in both the upper and lower molds.  Acushnet solved this problem by designing the lower mold half to be greater than a hemispherical dimension, such that the cores would remain in the lower mold half until ejected by an ejection pin located within the lower mold half.

18.    On June 21, 1983, the USPTO granted Peter Kudriavetz a patent on this process, United States Patent No. 4,389,365 ("the '365 patent"), entitled "Method and Apparatus for Stripping Molded Round Articles from Mold." (Exh. B).

19.    The '365 patent is assigned to Acushnet pursuant to an assignment agreement recorded with the USPTO.

20.    In December 1986, Mr. Lauro Cadorniga was hired by Acushnet as Project Engineering Manager of Golf Ball Product Development. During his employment with Acushnet, Mr. Cadorniga observed the above procedure for the production of various Acushnet golf balls.

21.    In March 1989, Mr. Cadorniga resigned from Acushnet.

22.    Upon information and belief, in March 1989, Mr. Cadorniga became employed by Dunlop, where he assisted in the development and manufacture of solid rubber core golf balls.

23.    Acushnet received an anonymous letter dated September 26, 1998 (Exh. C) disclosing that Dunlop was manufacturing solid rubber core golf balls in "violation" of the '365 patent.

24.    Upon information and belief, Dunlop is currently selling or offering to sell solid rubber core golf balls in violation of and without license under the '365 patent, including, but not limited to, golf balls sold under the following trademarks: "Maxfli XS Tour 90", "Maxfli XS Tour 100", "Maxfli XS Distance 90", "Maxfli XS Distance 100", "Maxfli MD Tungsten 80", "Maxfli MD Tungsten 90", "Maxfli MD Tungsten 100" and various balls under the "Dunlop" trademark.

25.    Upon information and belief, Dunlop is currently selling or offering to sell solid rubber core golf balls to David Geoffrey & Associates, d/b/a Slazenger Golf USA to be sold under the trademark "Slazenger 420d Raw Distance," "Slazenger 420t Tour Caliber" and "Slazenger 420p Power Control" in violation of and without license under the '365 patent.

## COUNT I
## PATENT INFRINGEMENT OF THE '428 PATENT

Acushnet realleges and incorporates by reference paragraphs 1 through 25 as if fully set forth herein.

26.    Upon information and belief, Dunlop has infringed and continues to infringe the '428 patent in this Judicial District and elsewhere in the United States, by making, using, offering for sale and/or selling polyurethane covered golf balls that are made according to the method covered by the claims of the '428 patent, including, but not limited to, Dunlop's "Maxfli Revolution" and "Maxfli HT" golf balls.

27.    Upon information and belief, Dunlop has and continues to induce the infringement of the '428 patent in this Judicial District and elsewhere in the United States, by making, using, offering for sale and/or selling polyurethane covered golf balls that are made

according to the method covered by the claims of the '428 patent, including, but not limited to, the "Slazenger 420 Select" golf ball.

28.    Upon information and belief, Dunlop's infringement of the '428 patent has been and continues to be willful, wanton and deliberate, without license and with knowledge of Acushnet's exclusive rights under the '428 patent.

29.    The aforesaid acts of Dunlop have caused and will continue to cause irreparable injury to Acushnet, unless such acts are enjoined by this Court.

## COUNT II
## PATENT INFRINGEMENT OF THE '365 PATENT

Acushnet realleges and incorporates by reference paragraphs 1 through 25 as if fully set forth herein.

30.    Upon information and belief, Dunlop has infringed and continues to infringe the '365 patent in this Judicial District and elsewhere in the United States, by making, using, offering for sale and/or selling golf balls with a solid rubber core that are made according to the method covered by the claims of the '365 patent, including, but not limited to, the "Maxfli XS Tour 90," "Maxfli XS Tour 100," "Maxfli XS Distance 90," "Maxfli XS Distance 100," "Maxfli MD Tungsten 80," "Maxfli MD Tungsten 90," "Maxfli MD Tungsten 100" and "Dunlop" golf balls.

31.    Upon information and belief, Dunlop has and continues to induce the infringement of the '365 patent in this Judicial District and elsewhere in the United States, by making, using, offering for sale and/or selling golf balls with a solid rubber core that are made according to the method covered by the claims of the '365 patent, including, but not limited to, the "Slazenger 420d Raw Distance," "Slazenger 420t Tour Caliber" and "Slazenger 420p Power Control" golf balls.

32.    Upon information and belief, Dunlop's infringement of the '365 patent has been and continues to be willful, wanton and deliberate, without license and with knowledge of Acushnet's exclusive rights under the '365 patent.

WHEREFORE, Acushnet respectfully requests judgment as follows:

(i)    preliminarily and permanently enjoining and restraining Dunlop, its officers, directors, employees, agents, servants, successors and assigns, and any and all persons acting in privity or in concert with it, from further infringement of United States Patent No. 5,733,428;

(ii)    permanently enjoining and restraining Dunlop, its officers, directors, employees, agents, servants, successors and assigns, and any and all persons acting in privity or in concert with it, from further infringement of United States Patent No. 4,389,365;

(iii)    awarding Acushnet damages sufficient to compensate for defendant's infringement of said patents, and conducting an accounting to determine such damages;

(iv)    increasing such damages up to three times the amount found or assessed;

(v)    awarding to plaintiff its costs and disbursements in this action, including reasonable attorneys' fees;

(vi)    an assessment of pre- and post-judgment interest; and

(vii)    granting such other and further relief as this Court may deem just and proper.

Date:  December 17, 1998

William J. Wade (I.D. No. 704)
Richards, Layton & Finger
One Rodney Square
P.O. Box 551
Wilmington, Delaware  19899
302-658-6541
    Attorneys for Plaintiff
    Acushnet Company

OF COUNSEL:

Paul J. Zegger
Troy R. Lester
Greg P. Roggin
Vivian S. Kuo
PENNIE & EDMONDS LLP
1667 K Street, N.W.
Washington, DC. 20006
(202) 496-4400

# EXHIBIT 2

### *JOHN CALABRIA*

741 SHEFWOOD DRIVE
EASLEY, SC 29642
HOME (864) 306-9750      CELL (864) 420-6503
E-MAIL – JC12450@AOL.COM

### *EDUCATION*

MASTER OF SCIENCE - MECHANICAL ENGINEERING - 1976
BACHELOR OF SCIENCE - ZOOLOGY AND CHEMISTRY - 1972
University of Massachusetts, Amherst, MA

### *PROFESSIONAL EXPERIENCE*

Double Eagle Consulting, LLC
741 Shefwood Drive
Easley, SC 29642

OWNER AND PRINCIPAL CONSULTANT – 2005

*RESPONSIBILITIES*: Engineering consultant to the golf industry working in the areas of tooling, manufacturing improvements, product enhancements, equipment design and intellectual property issues. Able to take on a wide range of assignments based on 20+ years working for major golf ball companies.

TaylorMade-adidas Golf
104 Hidden Lake Circle
Duncan, SC 29334

HEAD OF GOLF BALL TECHNICAL OPERATIONS – 2003 to 2004

*RESPONSIBILITIES*:  Interacted with various golf OEM ball vendors to produce new products.  Acted as a liaison between R & D and the suppliers to explain product requirements, new material implementation/commercialization and provide two-way feedback between the groups.  Conduct training seminars on ball performance and assist with product quality and supply chain requirements. Assist with development of intellectual property and interpretation of competitive patents as they relate to material use and process requirements.  Interact with golf professionals to validate product performance.
*ACCOMPLISHMENTS*: Assisted with the development of six new golf ball products, two of which were my direct responsibility.  Improved quality and reduced costs associated with implementation of these new products.

Dunlop Slazenger Group
100 Maxfli Drive
Westminster, SC 29693

VICE PRESIDENT – GOLF R & D WORLDWIDE - 1995 TO 2003

*RESPONSIBILITIES*: Managed a diverse department of 22 associates tasked with the worldwide development effort for new golf products.  This included management of intellectual property portfolio and development/defense of patents for new and

existing products. Focused on creation of new technologies, materials and processes to enhance existing product performance and deliver innovative, leading edge products to the customer. Worked with top PGA and LPGA Tour pros such as Jack Nicklaus, Greg Norman, Fred Couples and Se Ri Pak to gain validation for new products.

***ACCOMPLISHMENTS***: Provided leadership to a department that was not moving ahead by directing a complete overhaul of the process used to design new products. Created the platform for the Dunlop, Slazenger and Maxfli brands to move to the forefront of golf ball technology and improve their relative leadership positions in the golf industry. One product, the Revolution golf ball, achieved the position as the best performing golf ball sold in the world. This was followed by the $A^{10}$, which supplanted it as the best performing ball. Nationally recognized as an expert on golf ball performance and technology. Widely quoted in all of the leading golf magazines as well as TV and radio appearances. Received Maxfli Award of Inspiration, which was given by the Maxfli sales force to recognize dedication and leadership. Author of numerous patents and pending patents related to golf ball technology and process development.

Titleist/FootJoy Worldwide
333 Bridge Street
Fairhaven, MA 02719

### SENIOR PROJECT MANAGER - URETHANE - 1993 - 1995

***RESPONSIBILITIES***: Supervised 70 associates and two professionals in the day-to-day activities required to produce the Titleist "Professional" golf ball.

***ACCOMPLISHMENTS***: Designed and established a completely new process and manufacturing department, which evolved from a one shift, five-day week operation to a three shift, seven-day week operation over a one-year period. Developed and implemented a totally new pay program (skill-based pay) for all associates. Demand for the product outpaced capacity since its initial introduction and eventually achieved the #1 ball rating on the PGA Tour. Nationally recognized in the industry as the "father" of urethane golf balls. Author of five different patents covering products and processes related to the development and production of urethane covered golf balls.

### SENIOR PROJECT MANAGER - R & D - 1988 - 1993

***RESPONSIBILITIES***: Supervised three professionals and two technicians in the design and implementation of new golf ball products/processes into production.

***ACCOMPLISHMENTS***: Designed/developed process for a unique new golf ball and implemented into production. This product was entirely new to the golf ball industry and previous attempts by competitors to create a product of this type were unsuccessful. Promoted to head of manufacturing for this product.

Tambrands, Inc.
Palmer, MA 01069

### SENIOR INDUSTRIAL ENGINEER - 1982 - 1988

***RESPONSIBILITIES***: Supervised one professional. Trained new personnel relative to products and processes. Designed/implemented new production

methods/processes for new products.  Responsible for implementation and maintenance of MRP II inventory system from the bills of material side.  Conducted feasibility studies on new products and acted as an in-house consultant to outside contract packagers.

***ACCOMPLISHMENTS***: Tripled production capacity for a new product to meet national debut.  Developed Engineering Training manual for entry-level engineers.  Assisted numerous outside vendors in improvement of production methods and capacity increases.  Achieved over $600K in cost savings related to process and material improvements.

Spalding Sports Worldwide
Chicopee, MA 01013

MANAGER, INDUSTRIAL ENGINEERING - 1979 - 1982

***RESPONSIBILITIES***: Supervised engineers and technicians handling IE requirements for the factory.  Coordinated the Productivity Improvement Program and controlled the wage incentive system for balls and clubs.  Numerous other assignments such as packaging improvements, strategic planning, new material handling concepts and Quality Circle Leader Training.

***ACCOMPLISHMENTS***: Directly responsible for more than $250K in cost savings involving packaging changes and labor improvements.  Additional savings of $120K achieved through development of proprietary assembly and handling techniques for golf clubs.  Recipient of Questor Corp. award for management excellence.

Nissen Corporation
Cedar Rapids, IA 52406

ASSISTANT DIRECTOR - R & D - 1977 - 1979

***RESPONSIBILITIES***: Supervised two technicians in the design, construction and implementation of new gymnastics equipment and weight machines from concept to production.  Created specifications for manufacturing, installation and maintenance of equipment.

***ACCOMPLISHMENTS***: Achieved leadership position in cost reduction program.  Designed and built equipment using original and patentable concepts.  Nationally recognized gymnastics coach and as an expert on gymnastics equipment design.

### ASSOCIATED ACTIVITIES

Member - Golf Digest Technical Panel - 1998 to Present
Primary Delegate - Polyurethane Manufacturers Association - 1989 to 2000
Senior Member - Institute of Industrial Engineers (IIE) – 1988 - 1996
Institute of Industrial Engineers - Local Chapter President – 1988/89
IIE District Award Winner - Community Affairs Project - 1988
Member – American Society of Mechanical Engineers – 1999 to Present
Certified Teacher – State of Massachusetts – Biology, Chemistry and English

### REFERENCES

Will be supplied as requested.

ADDENDUM TO CV OF JOHN CALABRIA

Existing contracts for Double Eagle Consulting, LLC

TaylorMade-adidas Golf
100 Dunlop Drive
Westminster, SC  29693

Consulting agreement for work on golf ball manufacturing processes,
implementation of new golf ball products and rationalization of global supply chain

Bridgestone Sports Co. Ltd
Omori Bellport E. Bldg 6-22-7
Minami-Oi, Shinagawa-ku
Tokyo 140  Japan

Retainer agreement as an expert witness to assist with ongoing litigation.

# EXHIBIT 3

FROM RICHARDS LAYTON &    FINGER          (WED) 1. 6 '99 18:22/ST. 18:20/NO. 4201900010 P 5

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| ACUSHNET COMPANY | ) |
| | ) |
| Plaintiff, | ) |
| | ) Case No.: 98-717 (SLR) |
| v. | ) |
| | ) |
| DUNLOP MAXFLI SPORTS CORPORATION | ) |
| | ) |
| Defendant. | ) |
| | ) |

### DEFENDANT DUNLOP MAXFLI SPORTS CORPORATION'S
### OPENING BRIEF IN SUPPORT OF THEIR
### MOTION TO DISMISS PURSUANT TO RULE 12(b)(6)

Respectfully submitted,

FERRY & JOSEPH, P.A.

David J. Ferry (#2149)
824 Market Street, Suite 904
P.O. Box 1351
Wilmington, DE  19899
(302) 575-1555

OF COUNSEL:

Anthony M. Lorusso
Mark D. Lorusso
Donald J. Perreault
LORUSSO & LOUD
440 Commercial Street
Boston, MA  02109
(617) 227-0700

Geoffrey & Associates.  This sole factual assertion is
hardly sufficient to cover the elements of Acushnet's
inducement to infringe charge.  This assertion is simply
insufficient to support Acushnet's inducement claim which
should be dismissed.

Turning to the issue of direct infringement, rather
than point out the features of Dunlop's alleged infringing
golf balls that support Acushnet's claim, Acushnet relies
on innocuous facts relating to the employment of one
individual.  The ultimate factual foundation of Acushnet's
claim of infringement with respect to the `428 patent
rests with the employment history of Mr. Calabria.  Even
granting Acushnet all reasonable inferences that could be
derived from Mr. Calabria's employment history, e.g., that
Mr. Calabria brought with him to Dunlop, the knowledge
acquired at Acushnet and used that knowledge in
conjunction with his work at Dunlop, such inferences do
not sufficiently support Acushnet's infringement claim.

It is Dunlop's contention that such inferences, to
the extent they can be made, are not warranted in light of
the fact that Acushnet has been given intimate knowledge
of Dunlop's polyurethane molding process.  Armed with this
knowledge, Acushnet has not even alleged a direct
connection between Mr. Calabria's apparent knowledge about
polyurethane golf ball cover technology and the alleged
infringing products produced by Dunlop.  Also absent are

9

# EXHIBIT 4

# THIS EXHIBIT HAS BEEN REDACTED IN ITS ENTIRETY

# EXHIBIT 5

# THIS EXHIBIT HAS BEEN REDACTED IN ITS ENTIRETY

# EXHIBIT 6

# THIS EXHIBIT HAS BEEN REDACTED IN ITS ENTIRETY

# EXHIBIT 7

# THIS EXHIBIT HAS BEEN REDACTED IN ITS ENTIRETY

# EXHIBIT 8

# THIS EXHIBIT HAS BEEN REDACTED IN ITS ENTIRETY