IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| BRIDGESTONE SPORTS CO., LTD., and BRIDGESTONE GOLF, INC., <br><br> Plaintiffs, <br><br> v. <br><br> ACUSHNET COMPANY, <br><br> Defendant. | ) <br> ) <br> ) <br> ) C. A. No. 05-132 (JJF) <br> ) <br> ) <br> ) **PUBLIC VERSION** <br> ) <br> ) <br> ) |

**ACUSHNET'S OPPOSITION TO BRIDGESTONE'S MOTION TO PRECLUDE
DR. DAVID FELKER FROM OFFERING TESTIMONY REGARDING
INVALIDITY AND NON-INFRINGEMENT OF THE BRIDGESTONE PATENTS**

OF COUNSEL:

Alan M. Grimaldi
Joseph P. Lavelle
Kenneth W. Donnelly
HOWREY LLP
1299 Pennsylvania Avenue, N.W.
Washington, DC  20004
Tel:  (202) 783-0800

Dated:  May 14, 2007
Public Version Dated:  May 22, 2007
797090/28946

Richard L. Horwitz (#2246)
David E. Moore (#3983)
POTTER ANDERSON & CORROON LLP
Hercules Plaza, 6th Floor
1313 North Market Street
P. O. Box 951
Wilmington, DE  19899-0951
Tel:  (302) 984-6000
rhorwitz@potteranderson.com
dmoore@potteranderson.com

*Attorneys for Defendant
Acushnet Company*

**TABLE OF CONTENTS**

I.    INTRODUCTION ............................................................................................................1

II.   DR. FELKER IS QUALIFIED TO GIVE HIS EXPERT OPINION ON
      THE INVALIDITY AND NON-INFRINGEMENT OF THE
      BRIDGESTONE PATENTS ..........................................................................................1

III.  DR. FELKER'S TESTIMONY IS RELIABLE ............................................................4

      A.    The Relationship Among Dr. Felker, Acushnet and Counsel Was
            Proper. ..................................................................................................................4

      B.    Dr. Felker's Testimony Is Based on Facts and Data upon Which an
            Expert Normally Relies. .......................................................................................5

IV.   CONCLUSION................................................................................................................8

## TABLE OF AUTHORITIES
## CASES

*Crowley v. Chait*,
  322 F. Supp. 2d 530 (D. N.J 2004) .................................................................................6

*Endress & Hauser, Inc. v. Hawk Measurement Sys. Pty Ltd.*,
  122 F.3d 1040 (Fed. Cir. 1997) ........................................................................................2

*Ferrara & DiMercurio v. St. Paul Mercury, Ins. Co.*,
  240 F. 3d 1 (1st Cir. 2001) ...........................................................................................3, 8

*Neutrino Dev. Corp. v. Sonosite, Inc.*,
  410 F. Supp. 2d 529 (S.D. Texas 2006) ..........................................................................2

*NN&R, Inc. v. One Beacon Ins. Group*,
  No. 03-5011 (JBS), 2006 WL 2845703 (D. N.J. Sept. 29, 2006) ................................5, 6

*Scholl, Inc. v. S.S. Kresge Co.*,
  580 F.2d 244 (Fed. Cir. 1978) .........................................................................................2

*Totty v. Chubb Corp.*,
  No. 05-111, 2007 WL 141058 (W.D. Pa. Jan. 17, 2007) ................................................8

Defendant Acushnet Company ("Acushnet") files this Memorandum in Opposition to Bridgestone's Motion to Preclude Dr. David Felker from Offering Testimony Regarding Invalidity and Non-Infringement of the Bridgestone Patents. Bridgestone's motion is without merit and should be denied.

### I.   INTRODUCTION

Dr. Felker is more than qualified to opine on the invalidity and non-infringement of the patents-in-suit. Bridgestone argues that Dr. Felker is not qualified because he does not fit the profile of how the parties' experts in this case, including Dr. Felker, have defined one of ordinary skill in the art. However, the person of ordinary skill is a theoretical construct, and experts, such as Dr. Felker, are often of extraordinary skill in the art, perfectly capable of opining how one of ordinary skill would have interpreted the patents-in-suit.

Further, Bridgestone argues that Dr. Felker's testimony is unreliable because he relied on Acushnet employees' testing data in forming his conclusions of invalidity and non-infringement, some of which was physically provided to him by Acushnet's outside counsel. Bridgestone also argues Dr. Felker's testimony is unreliable because he relied on what it considers to be the unreliable data in Mr. Dalton's expert declaration. Bridgestone's arguments fail here, as well, because not only are they wrong, but they go to the weight and credibility of the evidence Dr. Felker relied upon – not to the reliability of the methodology he used or whether it will assist the trier of fact. Therefore, Bridgestone's arguments should be saved for the jury and its motion denied.

### II.   DR. FELKER IS QUALIFIED TO GIVE HIS EXPERT OPINION ON THE INVALIDITY AND NON-INFRINGEMENT OF THE BRIDGESTONE PATENTS

Dr. Felker received a masters and Ph.D. in chemical engineering from Iowa State University with a GPA of almost 3.7. (*See* Ex. 1, Felker C.V.). After graduation, he went directly to the DuPont Company where he worked with plastic and rubber products

for ten years, serving as a research engineer, manufacturing engineer, product development engineer and technology superintendent of major capital projects (worth millions of dollars) for DuPont all across the United States. (*Id.*).

In 1996, he was hand-picked by Callaway Golf Company to be the charter member of an executive team that successfully built a $170 million start up company, the Callaway Golf Ball Company, which eventually produced the Rule 35, patented line of Callaway golf balls. (*Id.*). Over the next 4 years, as Vice-President of Research & Development ("R&D"), Dr. Felker led the effort in designing and developing the R&D and manufacturing process of a company that had total sales of $55 million. (*See* Ex. 2, 3/8/2007 Felker Tr. at 29:13-36:19; 63:10-69:6). Dr. Felker is also the named inventor on eight patents relating to golf balls, clubs and manufacturing processes. (*See* Ex. 1, Felker C.V.).

Bridgestone arguments that Dr. Felker is unqualified under Rule 702 of the Federal Rules of Evidence because he is not "one of ordinary skill in the art" as defined by the experts in this case has been rejected by the Federal Circuit:

> The 'person of ordinary skill in the art' is a theoretical construct..., and is not descriptive of some particular individual...To suggest that the construct applies to particular individuals could mean that a person of *exceptional* skill in the art would be disqualified from testifying as an expert because not ordinary enough. (citations omitted).

*Endress & Hauser, Inc. v. Hawk Measurement Sys. Pty Ltd.*, 122 F.3d 1040, 1042 (Fed. Cir. (1997); *see also Scholl, Inc. v. S.S. Kresge Co.*, 580 F.2d 244, 246, n.11 (Fed. Cir. 1978); *Neutrino Dev. Corp. v. Sonosite, Inc.*, 410 F. Supp. 2d 529, 550 (S.D. Texas 2006) ("expert witnesses quite often have ***extraordinary skill*** in the art and are quite capable of evaluating the level of ordinary skill and applying that perspective") (emphasis added).

Dr. Felker is more highly qualified educationally and professionally from the hypothetical skilled artisan - who the experts agree in general would have a B.S. in chemistry or an equivalent discipline with five or more years in the golf ball industry, i.e.,

2

in manufacturing, design and/or development. (*See* Ex. 3, Felker 1/16/2007 Invalidity Report at 3; Ex. 4, 2/20/2007 Calabria Report at 7). Thus, theoretically, in this case, a person of ordinary skill could be a 28 year old person with an undergraduate degree in chemistry and 5 years working in a golf ball plant. Dr. Felker, however, has a level of experience that is broader in scope and greater in depth.

Dr. Felker, who has a Ph.D. in chemical engineering, had ten years working with rubber products at DuPont, something which, according to Bridgestone, is more than enough to qualify someone as an expert in this case.[1] Moreover, he has been involved in every aspect of making golf balls during his tenure at Callaway. (*See* Ex. 1, Felker C.V.; Ex. 2, Felker Tr. at 29:18-36:19). Further, it defies the imagination that Dr. Felker would be hand-picked by a successful and respected company like Callaway Golf Company to start up their golf ball subsidiary ten years ago, but he would be unqualified to opine on the physical properties of a golf ball today. Bridgestone notes that Dr. Felker has never qualified as an expert in the golf ball industry at trial. However, it is of no moment that Dr. Felker is not a professional witness, as is the case with Bridgestone's witnesses. Not only has he never been found ***not*** to be qualified as an expert, but "the views of prior judges about [] [an expert] would be largely irrelevant. A presiding judge has broad discretion in his or her determinations regarding expert qualifications." *Ferrara & DiMercurio v. St. Paul Mercury, Ins. Co.*, 240 F.3d 1, 8 n. 4 (1st Cir. 2001).

---

[1] Dr. Caulfield, Bridgestone's expert, never has had any experience in the golf ball industry but is qualified by the fact that he has experience testing the physical properties of rubber alone, primarily in cases involving the automobile industry. (*See* D.I. 415 Bridgestone's Answering Brief To Acushnet's Motion for Summary Judgment of Invalidity of U.S. Patent No, 5,782,707 at 18-19; Ex. 5, 3/29/2007 Caulfield Tr. at 21:16-23:2).

3

### III. DR. FELKER'S TESTIMONY IS RELIABLE

#### A. The Relationship Among Dr. Felker, Acushnet and Counsel Was Proper.

Bridgestone argues that Dr. Felker's opinions are unreliable apparently because "Acushnet employees conducted nearly all of the tests relied upon by Dr. Felker in his validity and non-infringement reports," outside counsel acted as an "intermediary" between Dr. Felker and Acushnet employees and only "fed Dr. Felker certain test results" that were "favorable to [Acushnet's] positions." (D.I. 451 at 6-10).

Aside from Acushnet taking issue with Bridgestone's insinuation that Acushnet has been inappropriately withholding evidence from the Court, Bridgestone's facts are wrong and in any event, its evidence insufficient to show that Dr. Felker's testimony is unreliable and should be excluded.

First, Acushnet designated its employees as experts in this case as qualified to perform the testing upon which Dr. Felker has relied in making his invalidity and non-infringement opinions. (*See* Ex. 6, 1/16/2007 Letter from Lavelle to Masters; Acushnet's Opposition to Bridgestone's Motion in Limine No. 1, to Preclude Acushnet's Employees from Testifying as Experts, at 1). Bridgestone is not objecting to any of the methodologies, standards or protocols used by Acushnet in connection with those tests. Further, Bridgestone has not provided any authority that it is improper for counsel to provide Dr. Felker with those test results or act as an intermediary between Dr. Felker and other experts in the case when passing along test results. There is no such authority.[2]

Most importantly, the evidence completely contradicts Bridgestone's assertion that "Acushnet separated Dr. Felker from the Acushnet employees." (D.I. 451 at 10). Dr. Felker, Mr. Dalton and Mr. Bulpett all testified that they talked numerous times – too

---

[2] Indeed, Bridgestone's testing expert sent all of his testing data to Bridgestone's attorneys – and never sent any data directly to Mr. Cadorniga. (*See* Ex. 7, 3/30/2007 Jones Tr. at 189:15-190:4).

4

numerous to count – about the issues in the case and test results – and there is no evidence that counsel interfered with the free flow of information between Acushnet employees and Dr. Felker. (*See* Ex. 2, 3/8/2007 Felker Tr. at 288:1-6; Ex. 8, 3/2/2007 Dalton Tr. at 132:10-19; 162:15-22; Ex. 9, 3/20/2007 Bulpett Tr. at 18:7-19:7). Dr. Felker and Mr. Dalton created a testing plan together for the case. (*See* Ex. 10, AB 0118716-17, Testing Program for Prior Art Golf Balls; Ex. 8, 3/2/2007 Dalton Tr. at 162:15-22). Dr. Felker visited Acushnet's manufacturing facility. (Ex. 8, 3/2/2007 Dalton Tr. at 132:10-19). Dr. Felker spent three days with Mr. Bulpett at Bridgestone's hired outside test facility inspecting the samples Bridgestone tested. (Ex. 9, 3/20/2007 Bulpett Tr. at 18:12-19).

Nothing here provides the basis for a finding of unreliability.

### B. Dr. Felker's Testimony Is Based on Facts and Data upon Which an Expert Normally Relies.

Bridgestone argues that counsel for Acushnet selectively "fed" Dr. Felker test results and data that supported its position, while failing to provide those that did not; and therefore, under Fed.R.Evid. 703, the facts and data upon which Dr. Felker relies are not "of a type reasonably relied upon by experts" and hence, unreliable. First, this is a rehash of arguments made in Bridgestone's Motion to Compel Production of Documents, which is now before the Special Master. (D.I. 342). Second, Bridgestone has no evidence to support this conclusion but instead apparently argues that since counsel for Acushnet acted as the intermediary for the data transfer between experts from Acushnet and Dr. Felker, the information is inherently unreliable. That, however, is not the law.

In *NN&R, Inc. v. One Beacon Ins. Group*, the Court held that expert testimony is reliable where underlying facts are received from counsel, as long as counsel did not present a skewed version of the facts to its expert and defendants could not point to any misstatement that expert relied upon to taint his understanding derived from counsel's synopsis. Ex. 11, Civil No. 03-5011 (JBS), 2006 WL 2845703, at *3 (D. N.J. Sept. 29,

5

2006). The Court in *NN&R* specifically distinguished *Crowley v. Chait*, the case upon which Bridgestone relies. *Id.* In *Crowley*, plaintiff's counsel supplied the expert with carefully selected excerpts from deposition testimony on which the expert relied in giving his opinion. 322 F. Supp. 2d 530, 546-47 (D. N.J 2004). The Court excluded his testimony as unreliable because there was other deposition testimony in the record that directly contradicted the facts upon which the expert relied, but counsel chose not to disclose it to him. *Id.* at 547. This is not the case here. Dr Felker can review any evidence in the case he so chooses, and has reviewed hundreds of documents, depositions, and test results from both sides. (*See* Ex., 3, 1/16/2007 Felker Report at Ex. 2, Materials Considered; Ex. 12, 2/20/2007 Felker Report at Ex. 1, Materials Considered). Counsel has not supplied Dr. Felker with any inaccurate or contradictory information and Bridgestone has offered no evidence to the contrary.

First, Bridgestone argues that Dr. Felker's failure to disclose the cover hardness measurements of the Wilson Ultra Tour Balata ("UTB") ball in his expert report, despite testimony from Mr. Dalton that he gave those test results to counsel, is "odd." (D.I. 451 at 5).

Dr. Felker did not rely on or ask for testing data related to cover hardness and plaque hardness in connection with the Wilson Ultra Tour Balata ball identified in Exhibit 13 of his expert report, which is the reason that data is not included in the exhibit. Even Bridgestone's experts agree that the balata covering of the UTB ball gets harder over time; therefore Dr. Felker knew that cover hardness measurements from a ball that was 13 years old would not accurately reflect the hardness of that cover at the time the ball was originally made. (*See* Ex. 13, 3/15/2007 Calabria Tr. at 80:1-3). Thus, Dr. Felker knew those test results would be irrelevant to his analysis, which is why he relied on U.S. Patent No. 5,314,187 to Proudfit, which discloses a soft cover over a hard intermediate layer, in combination with the UTB ball, for his conclusion that Bridgestone's '852 was invalid as obvious. The cover hardness measurements performed

6

on the UTB balls confirmed what the experts already agreed upon -- balata covers get harder over time.[3]

Next, Bridgestone argues that the data from the EP '043 core testing that Acushnet did in February-March 2007 is "concerning" because counsel for Acushnet asked Acushnet to performed the tests and that counsel "filtered" the unfavorable data from the document Acushnet gave Dr. Felker describing the testing. (D.I. 451 at 9).

Bridgestone's characterizations are just wrong. Acushnet disclosed every detail of the EP '043 core testing to Dr. Felker, Bridgestone and the Court – including the test results on cores that did not meet the 8-20 limitation of claim 1 of the '707 patent. There is *no* evidence that Acushnet withheld any information regarding the EP 043 core testing; indeed its reward for being forthcoming with Bridgestone was a motion for sanctions based on spoliation.

Finally, Bridgestone argues that Dr. Felker's testimony is unreliable to the extent he relies on Mr. Dalton's declaration because (1) counsel asked Mr. Dalton to prepare the summary charts attached as Exhibit E to his declaration; (2) Mr. Dalton did not have any interaction with Dr. Felker in the preparation of his declaration; (3) counsel for Acushnet "first reviewed" the summary data in Mr. Dalton's declaration "before passing it on to Dr. Felker" and (4) Mr. Gajic, who prepared the summary charts, only included the raw materials that were at issue in the case. (D.I. 451 at 9-10). Acushnet has addressed these arguments in its Opposition to Bridgestone's Daubert Motion to Exclude Expert Testimony of Mr. Jeffery Dalton. (Filed 5/14/2007).

Bridgestone's evidence is not a challenge to the reliability or admissibility of Dr. Felker's expert testimony, but rather a challenge to the sufficiency and weight of the

---

[3] Bridgestone's also cannot argue that Acushnet was intentionally withholding this information from them because Bridgestone already knew the cover hardness measurements from the UTB ball from the competitive ball reports that Acushnet produced during fact discovery earlier in the case. (Ex. 14, AB 4474-76, Competitive Ball Report).

evidence relied upon by him, which is within the sole province of the jury. *See* Ex. 15, *Totty v. Chubb Corp.*, Civ. No. 05-111, 2007 WL 141058, at *3 (W.D. Pa. Jan. 17, 2007) (failure of expert to perform tests or provide calculations to support theory because they had no bearing on his conclusion does not go to the reliability or admissibility of his testimony but to the weight).

Apparently, the primary basis for Bridgestone's motion is the fact that counsel requested that tests be performed and declarations be written and passed the information back and forth between the experts. However, if this were the basis for the exclusion of expert witness testimony, most civil trials would have no testifying experts.

Since Bridgestone does not challenge that the tests and information is that upon which an expert normally relies, and there is no evidence that counsel withheld any data from Dr. Felker, Bridgestone's challenge is more appropriately raised on cross-examination at trial. *See* Ex. 15, *Totty*, 2007 WL 141058 at *3; *Ferrara*, 240 F.3d at 9 (when an expert relies on the opinion of another, such reliance goes to the weight, not to the admissibility of the expert's opinion).

### IV.    CONCLUSION

For the foregoing reasons, Acushnet respectfully requests the Court deny Bridgestone's Motion to Preclude Dr. David Felker from Offering Testimony Regarding Invalidity and Non-Infringement of the Bridgestone Patents.

Respectfully submitted,

POTTER ANDERSON & CORROON LLP

OF COUNSEL:

Alan M. Grimaldi
Joseph P. Lavelle
Kenneth W. Donnelly
HOWREY LLP
1299 Pennsylvania Ave., N.W.
Washington, DC 20004
Telephone: (202) 783-0800

Dated: May 14, 2007
Public Version Dated: May 22, 2007
797090/28946

By: /s/ David E. Moore
Richard L. Horwitz (#2246)
David E. Moore (#3983)
Hercules Plaza, 6th Floor
1313 N. Market Street
P.O. Box 951
Wilmington, DE 19899-0951
(302) 984-6000
rhorwitz@potteranderson.com
dmoore@potteranderson.com

*Attorneys for Defendant
Acushnet Company*

9

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

**CERTIFICATE OF SERVICE**

I, David E. Moore, hereby certify that on May 22, 2007, the attached document was hand delivered to the following persons and was electronically filed with the Clerk of the Court using CM/ECF which will send notification to the registered attorney(s) of record that the document has been filed and is available for viewing and downloading:

Jack B. Blumenfeld
Maryellen Noreika
Leslie A. Polizoti
Morris, Nichols, Arsht & Tunnell
1201 N. Market Street
Wilmington, DE 19801

I hereby certify that on May 22, 2007, I have Electronically Mailed the documents to the following:

Robert M. Masters
Paul, Hastings, Janofsky & Walker LLP
875 15th Street, N.W.
Washington, D.C. 20005
RobMasters@paulhastings.com

/s/ David E. Moore
Richard L. Horwitz
David E. Moore
Potter Anderson & Corroon LLP
Hercules Plaza – Sixth Floor
1313 North Market Street
P.O. Box 951
Wilmington, DE 19899-0951
(302) 984-6000
rhorwitz@potteranderson.com
dmoore@potteranderson.com

680012 / 28946