IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| BRIDGESTONE SPORTS CO., LTD., and BRIDGESTONE GOLF, INC., | ) ) ) |
| Plaintiffs, | ) C. A. No. 05-132 (JJF) ) |
| v. | ) ) **PUBLIC VERSION** |
| ACUSHNET COMPANY, | ) ) |
| Defendant. | ) |

**ACUSHNET'S BRIEF IN OPPOSITION TO BRIDGESTONE'S
*DAUBERT* MOTION TO PRECLUDE DR. JACK KOENIG FROM OFFERING
TESTIMONY REGARDING INFRINGEMENT OF U.S. PATENT NO. 6,818,705**

OF COUNSEL:

Alan M. Grimaldi
Joseph P. Lavelle
Kenneth W. Donnelly
HOWREY LLP
1299 Pennsylvania Avenue, N.W.
Washington, DC 20004
Tel: (202) 783-0800

Dated: May 14, 2007
Public Version Dated: May 22, 2007
797078/28946

Richard L. Horwitz (#2246)
David E. Moore (#3983)
POTTER ANDERSON & CORROON LLP
Hercules Plaza, 6th Floor
1313 North Market Street
P. O. Box 951
Wilmington, DE 19899-0951
Tel: (302) 984-6000
rhorwitz@potteranderson.com
dmoore@potteranderson.com

*Attorneys for Defendant
Acushnet Company*

# TABLE OF CONTENTS

I.  INTRODUCTION ...........................................................................................................1

II. ARGUMENT..................................................................................................................1

    A.    Legal Standards..................................................................................................1

    B.    Dr. Koenig's Infringement Analysis Was Appropriate. ....................................3

        1.    Dr. Koenig properly relied on molecular weight and resilience index testing performed by Acushnet technicians...........3

        2.    Dr. Koenig was not instructed to assume that any limitation of the '705 patent was met. ........................................................................5

    C.    Bridgestone's Brief Is Based Substantially On Unsupported Mischaracterization And Attorney Argument. ..............................................6

    D.    Bridgestone Seeks To Hold Acushnet's Experts To A Higher Standard Than Its Own. ....................................................................................7

III. CONCLUSION................................................................................................................9

# TABLE OF AUTHORITIES

## CASES

*Crowley v. Chait*,
    322 F. Supp. 2d 530 (D.N.J. 2004) ................................................................ 6

*Eaton Corp. v. Parker-Hannifin Corp.*,
    292 F. Supp. 2d 555 (D. Del. 2003) ................................................................ 2

*In re Paoli R.R. Yard PCB Litig.*,
    35 F.3d 717 (3d Cir. 1994) ............................................................................. 2

*In re TMI Litig.*,
    193 F.3d 613 (3d Cir. 1999) ........................................................................... 6

*Inline Connection Corp. v. AOL Time Warner, Inc.*,
    C.A. No. 02-272-MPT, 2007 U.S. Dist. LEXIS 6207
    (D. Del., Jan. 29, 2007) ................................................................................. 2

*Montgomery County v. Microvote Corp.*,
    320 F.3d 440 (3d Cir. 2003) ........................................................................... 6

*Seese v. Volkswagenwek A.G.*,
    648 F.2d 833 (2d Cir. 1981) ........................................................................... 4

## RULES

Fed. R. Evid. 702 ................................................................................................ 2

Fed. R. Evid. 703, Advisory Committee Notes, 1972 Proposed Rules ............... 4

## I. INTRODUCTION

Bridgestone seeks to preclude the testimony at trial of Dr. Jack Koenig, Acushnet's infringement expert for U.S. Patent No. 6,818,705 ("the '705 patent") (Ex. 1). The '705 patent is directed a multilayered solid golf ball that has a center, an inner cover, and an outer cover that is made from a polyurethane composition. (Ex. 1 – '705 Pat., Col. 33, ll. 41-51). The only asserted claim is claim 4, which depends from claim 1. Claim 1 requires a center "comprising a material [formed] from the conversion reaction of at least a cis-to-trans catalyst and a polybutadiene, wherein the material has a molecular weight of greater than about 200,000 and a resilience index of at least about 40." (*Id.* at Col. 33, ll. 43-47).[1] Claim 4 adds the requirement that the cis-to-trans catalyst of claim 1 "comprises at least one of" a number of chemical compounds, including an organosulfur compound. (*Id.* at Col. 33, ll. 59-64).

Bridgestone bases its *Daubert* motion on mischaracterizations, unsupported attorney argument and out-of-context quotes taken from Dr. Koenig's deposition to paint an inaccurate picture that is contradicted by the facts. Bridgestone further seeks to impose a higher standard on Dr. Koenig than that imposed by Bridgestone on its own infringement expert. For those reasons, Acushnet respectfully requests that the Court deny Bridgestone's motion in its entirety.

## II. ARGUMENT

### A. Legal Standards

Expert opinion may be used to provide conclusions or inferences from facts that a lay person is unqualified to make. To introduce expert testimony before a court, the Federal Rules of Evidence define three requirements that must be satisfied.

---

[1] The parties agree that the term "farmed" is a typographical error for the term "formed." (D.I. 228 at 28).

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

Fed. R. Evid. 702{ TA \l "Fed. R. Evid. 702" \s "Fed. R. Evid. 702" \c 4 }. Based upon this rule, there are no particular requirements for the qualification of an expert. The rules do require, however, that the trial judge be persuaded that the purported expert has knowledge or training in an area of specialized knowledge that is beyond the abilities of an ordinary juror. *See Eaton Corp. v. Parker-Hannifin Corp.*, 292 F. Supp. 2d 555, 567 (D. Del. 2003){ TA \l "*Eaton Corp. v. Parker-Hannifin Corp.*, 292 F. Supp. 2d 555, 567 (D. Del. 2003)" \s "Eaton Corp. v. Parker-Hannifin Corp., 292 F. Supp. 2d 555, 567 (D. Del. 2003)" \c 1 }.

The Third Circuit has identified several factors to be considered in deciding whether to exclude testimony:

> (1) the prejudice or surprise in fact of the party against whom the excluded witnesses would have testified, (2) the ability of that party to cure the prejudice, (3) the extent to which waiver of the rule against calling unlisted witnesses would disrupt the orderly and efficient trial of the case or of other cases in the court, and (4) bad faith or willfulness in failing to comply with the district court's order.

*In re Paoli R.R. Yard PCB Litig.*, 35 F.3d 717, 791 (3d Cir. 1994){ TA \l "*In re Paoli R.R. Yard PCB Litig.*, 35 F.3d 717, 791 (3d Cir. 1994)" \s "In re Paoli R.R. Yard PCB Litig., 35 F.3d 717, 791 (3d Cir. 1994)" \c 1 }. The court "clearly emphasized that 'the importance of the excluded testimony should be considered.'" *Inline Connection Corp. v. AOL Time Warner, Inc.*, C.A. No. 02-272-MPT, 2007 U.S. Dist. LEXIS 6207, *11 (D. Del., Jan. 29, 2007){ TA \l "*Inline Connection Corp. v. AOL Time Warner, Inc.*, C.A. No. 02-272-MPT, 2007 U.S. Dist. LEXIS 6207, *11 (D. Del., Jan. 29, 2007)" \s "Inline Connection Corp. v. AOL Time Warner, Inc., C.A. No. 02-272-MPT, 2007 U.S. Dist. LEXIS 6207, *11 (D. Del., Jan. 29, 2007)" \c 1 } (Ex. 2).

### B. Dr. Koenig's Infringement Analysis Was Appropriate.

#### 1. Dr. Koenig properly relied on molecular weight and resilience index testing performed by Acushnet technicians.

Bridgestone overstates its case in its attempt to show Dr. Koenig's supposed "non-involvement" in certain testing undertaken by Acushnet technicians. Dr. Koenig relied on the results of only two tests – molecular weight and resilience index – that were performed by Acushnet technicians.

Contrary to Bridgestone's characterization, Dr. Koenig never "provided sworn testimony that he had *no role* in the testing that Acushnet's employees performed...." (D.I. 454 at 2) (emphasis added). Instead, Dr. Koenig stated only that he did not have "an *active role*" in the testing. (*Id.*, quoting Koenig Dep. at 266:15-267:6) (emphasis added). Bridgestone exaggerates that statement to argue repeatedly, but incorrectly, that Dr. Koenig "had no involvement in any of the testing," (*id.*), "admittedly was not involved in the testing described in his report," (*id.*), "had no role in the testing that Acushnet's employees performed," (*id.*), or had a "lack of involvement in the testing" (*id.* at 8). The actual deposition testimony cited by Bridgestone does not support such an exaggerated mischaracterization.

Bridgestone's argument is further overstated because there is no dispute over how those tests were performed. Unlike Bridgestone's patents-in-suit, which provide no guidance on how to measure properties like core distortion and hardness, Acushnet's '705 patent explicitly describes how the tests for resilience index and molecular weight tests are to be performed, which Dr. Koenig acknowledged in his report. (D.I. 454 at Ex. 1, p. 8). In fact, Dr. Koenig expressly identified the parameters for testing both molecular weight and resilience:

> The "molecular weight" of the core material is the average molecular weight of a sample of the material. (Ex. C – '705 Patent, Col. 10, ll. 31-63). The molecular weight is derived by dissolving a sample of the material in a solution as set forth in the '705 patent and then using a

3

> specified detector to obtain the molecular weight number from the solution. (Ex. C – '705 Patent, Col. 10, ll. 31-63)
>
> \*\*\*
>
> The resilience index is obtained from an equation that requires two compression measurements, known as "loss tangent" measurements, be made of a sample – in this case, the core material. (Ex. C – '705 Patent, Col. 11, ll. 13-26). The loss tangent of a sample is its ability to regain its shape after a succession of compressive loads, known as cycles. According to the '705 patent, one must take the loss tangent of the material at 10 cpm ("cycles per minute") and at 1,000 cpm. (Ex. C – '705 Patent, Col. 11, ll. 13-26). The '705 patent provides the specific settings and even the specific machine – a dynamic mechanical analyzer known as an RPA 2000 – to measure the loss tangent. (Ex. C – '705 Patent, Col. 11, ll. 13-26). The two loss tangent measurements are then inserted into the resilience index equation to provide the resilience index itself. (Ex. C – '705 Patent, Col. 11, ll. 13-26).

(D.I. 454 at Ex. 1, p. 8).

The fact that those two tests were conducted outside of Dr. Koenig's presence is no basis for exclusion. The Federal Rules of Evidence provide that experts may base their opinions on "presentation of data to the expert outside of court and ***other than by his own perception***." Fed. R. Evid. 703, Advisory Committee Notes, 1972 Proposed Rules{ TA \l "Fed. R. Evid. 703, Advisory Committee Notes, 1972 Proposed Rules" \s "Fed. R. Evid. 703, Advisory Committee Notes, 1972 Proposed Rules" \c 4 } (emphasis added). *See Seese v. Volkswagenwek A.G.*, 648 F.2d 833, 844 (2d Cir. 1981){ TA \l "*Seese v. Volkswagenwek A.G.*, 648 F.2d 833, 844 (2d Cir. 1981)" \s "Seese v. Volkswagenwek A.G., 648 F.2d 833, 844 (2d Cir. 1981)" \c 1 } (allowing expert to offer opinion based on "facts, data and conclusions" provided by others).

Accordingly, Dr. Koenig's reliance on the molecular weight and resilience index tests is appropriate and Bridgestone has offered no factual or legal basis to exclude his opinion for such reliance.

4

### 2. Dr. Koenig was not instructed to assume that any limitation of the '705 patent was met.

Nor, contrary to Bridgestone's assertion, did Acushnet instruct Dr. Koenig to assume that *any* limitation of the '705 patent was met by the accused Bridgestone products. The '705 patent requires, *inter alia*,

> a center comprising a material farmed from the conversion reaction of at least a cis-to-trans catalyst and a polybutadiene, wherein the material has a molecular weight of greater than about 200,000 and a resilience index of at least about 40

(Ex. 1 – '705 Patent at Col. 33, ll. 43-47).

The parties dispute the construction of the claim term "material" as it appears in that limitation. (*See* D.I. 228 at 28-30). As Dr. Koenig acknowledged, he was instructed by Acushnet's counsel "to assume that the term 'material' refers to the combination of a polybutadiene rubber and a cis-to-trans catalyst in which the cis-to-trans catalyst has converted at least some of the cis-isomer to trans-isomer." (D.I. 454 at Ex. 1, pp. 9-10). Thus his assumption was clearly (and appropriately) limited to a question of claim construction, and not to his opinion on infringement, as suggested by Bridgestone.

Dr. Koenig then proceeded to offer his opinion that such a conversion necessarily takes place when one combines a high-cis polybutadiene (█████████████) with a cis-to-trans catalyst (█████████████). (D.I. 454 at Ex. 1, pp. 10-11). Rather than "assuming" the limitation to be met, Dr. Koenig based his opinion on his more than four decades of experience as a polymer chemist. (D.I. 454 at Ex. 1, pp. 2-3).

Regardless, Bridgestone argues – again repeatedly and again incorrectly – that Acushnet instructed Dr. Koenig to assume that the properly-construed limitation was present in the accused Bridgestone products: "[o]ne assumption is actually a limitation in the '705 patent" (D.I. 454 at 3), "Acushnet's lawyers … told Dr. Koenig to 'assume' that limitation" (*id.*), "Acushnet told him that some of the limitations in the '705 patent were

5

met" (*id.*), "[i]t was Acushnet's lawyers who told Dr. Koenig to 'assume' that a cis-to-trans conversion occurred" in the accused products (*id.*), to assume that 'the cis-to-trans catalyst has converted at least some of the cis-isomer to trans-isomer ...." (D.I. 454 at 6-7. *See also* D.I. 454 at 3). A simple review of Dr. Koenig's report reveals those statements to be incorrect. Accordingly, Bridgestone's reliance on them is unavailing.

### C. Bridgestone's Brief Is Based Substantially On Unsupported Mischaracterization And Attorney Argument.

Bridgestone does not rest with mischaracterizing Dr. Koenig's testimony, but further relies on additional mischaracterization and attorney argument that are wholly unsubstantiated by the record. For example, Bridgestone states, without authority, that Acushnet "picked the tests they wanted and gave the results to Dr. Koenig" (D.I. 454 at 7) and that "it is impossible for Dr. Koenig to verify their accuracy or to understand the significance of those results that were provided to him in light of what was not given to him" (*id.* at 8). Those statements are rank speculation; there is simply no evidence that Acushnet withheld *any* test results from Dr. Koenig at any point (and in fact, it did not).

Bridgestone is forced into such speculation because all of the case law on which it relies requires such "filtering" and "spoonfeeding" to support exclusion. *See Montgomery County v. Microvote Corp.*, 320 F.3d 440, 448-49 (3d Cir. 2003){ TA \l "*Montgomery County v. Microvote Corp.*, 320 F.3d 440, 448-49 (3d Cir. 2003)" \s "Montgomery County v. Microvote Corp., 320 F.3d 440, 448-49 (3d Cir. 2003)" \c 1 }; *In re TMI Litig.*, 193 F.3d 613, 697-98 (3d Cir. 1999){ TA \l "*In re TMI Litig.*, 193 F.3d 613, 697-98 (3d Cir. 1999)" \s "In re TMI Litig., 193 F.3d 613, 697-98 (3d Cir. 1999)" \c 1 }; *Crowley v. Chait*, 322 F. Supp. 2d 530, 546-47 (D.N.J. 2004){ TA \l "*Crowley v. Chait*, 322 F. Supp. 2d 530, 546-47 (D.N.J. 2004)" \s "Crowley v. Chait, 322 F. Supp. 2d 530, 546-47 (D.N.J. 2004)" \c 1 }. There is no evidence, however, that Dr. Koenig was spoonfed or that Acushnet filtered any data provided to him. On the contrary, Acushnet

6

technicians performed tests for molecular weight and resilience index according to the instructions set forth in the '705 patent and accepted by Dr. Koenig, who then received the test results and formed his conclusions based on those results in combination with several other factors, including his more than 40 years of experience as a polymer chemist. Accordingly, the cases cited by Bridgestone are inapplicable here.

### D. Bridgestone Seeks To Hold Acushnet's Experts To A Higher Standard Than Its Own.

Bridgestone's motion should be denied also because it seeks to impose a standard on Acushnet's experts that is higher than the standards to which Bridgestone held its own experts. In each case, the supposed infirmity identified by Bridgestone against Dr. Koenig applies with equal, if not greater, force against its own infringement expert, Mr. Larry Cadorniga. For example:

- Mr. Cadorniga testified under oath that he relied on tests he did not witness and whose results were simply reported to him. (*See, e.g.*, Ex. 3 – Cadorniga Dep. at 89:12-16; 133:13-16; 170:17 – 171:3; 245:21 – 246:4).

- He was unable to describe the conditions under which certain testing was performed. (*Id.* at 253:17 – 254:1).

- He further testified that, for certain testing, he reviewed only summary data and not the raw data used to create the summaries. (*Id.* at 249:11 – 250:2).

- Still other data relied upon by Mr. Cadorniga was not provided to him directly, but was – to use Bridgestone's language – "funneled" to him through Bridgestone's attorneys. (*See* Ex. 4 – Jones Dep. at 189:15-190:4).

- Mr. Cadorniga also relied on data in his report even though he was unaware of the source of that data. (*See* Ex. 3 – Cadorniga Dep. at 361:14-363:13).

7

- Further, Mr. Cadorniga opined in his report that the Shore D hardness of a golf ball cover must be measured off the golf ball on a plaque formed of the cover material. (*See* Ex. 5 – Cadorniga Report at D-19). At his deposition, however, he testified that he relied on certain cover Shore D hardness data, without knowing how that data was acquired, including whether or not it was measured off the ball. (*See* Ex. 3 – Cadorniga Dep. at 363:15-364:12).

Thus, if Bridgestone maintains its motion to preclude Dr. Koenig's infringement testimony at trial, the same standard should be applied to Mr. Cadorniga's infringement testimony.

### III. CONCLUSION

Based on the foregoing, Acushnet respectfully requests that the Court deny Bridgestone's motion to preclude Dr. Koenig's testimony.

Respectfully submitted,

POTTER ANDERSON & CORROON LLP

OF COUNSEL:

Alan M. Grimaldi
Joseph P. Lavelle
Kenneth W. Donnelly
HOWREY LLP
1299 Pennsylvania Ave., N.W.
Washington, DC  20004
Telephone: (202) 783-0800

Dated:  May 14, 2007
Public Version Dated:  May 22, 2007
797078/28946

By: /s/ David E. Moore
Richard L. Horwitz (#2246)
David E. Moore (#3983)
Hercules Plaza, 6th Floor
1313 N. Market Street
P.O. Box 951
Wilmington, DE  19899-0951
(302) 984-6000
rhorwitz@potteranderson.com
dmoore@potteranderson.com

*Attorneys for Defendant
Acushnet Company*

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

**CERTIFICATE OF SERVICE**

I, David E. Moore, hereby certify that on May 22, 2007, the attached document was hand delivered to the following persons and was electronically filed with the Clerk of the Court using CM/ECF which will send notification to the registered attorney(s) of record that the document has been filed and is available for viewing and downloading:

Jack B. Blumenfeld
Maryellen Noreika
Leslie A. Polizoti
Morris, Nichols, Arsht & Tunnell
1201 N. Market Street
Wilmington, DE 19801

I hereby certify that on May 22, 2007, I have Electronically Mailed the documents to the following:

Robert M. Masters
Paul, Hastings, Janofsky & Walker LLP
875 15th Street, N.W.
Washington, D.C. 20005
RobMasters@paulhastings.com

/s/ *David E. Moore*
Richard L. Horwitz
David E. Moore
Potter Anderson & Corroon LLP
Hercules Plaza – Sixth Floor
1313 North Market Street
P.O. Box 951
Wilmington, DE 19899-0951
(302) 984-6000
rhorwitz@potteranderson.com
dmoore@potteranderson.com

680012 / 28946