IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| BRIDGESTONE SPORTS CO., LTD., and BRIDGESTONE GOLF, INC., </br></br>Plaintiffs, </br></br>v. </br></br>ACUSHNET COMPANY, </br></br>Defendant. | ) ) ) ) ) ) ) ) ) ) ) ) ) C. A. No. 05-132 (JJF) </br></br>**PUBLIC VERSION** |

**ACUSHNET'S OPPOSITION TO BRIDGESTONE'S MOTION TO EXCLUDE
EXPERT TESTIMONY FROM MR. JEFFREY DALTON**

OF COUNSEL:

Alan M. Grimaldi
Joseph P. Lavelle
Kenneth W. Donnelly
HOWREY LLP
1299 Pennsylvania Avenue, N.W.
Washington, DC 20004
Tel: (202) 783-0800

Dated: May 14, 2007
Public Version Dated: May 22, 2007
797106/28946

Richard L. Horwitz (#2246)
David E. Moore (#3983)
POTTER ANDERSON & CORROON LLP
Hercules Plaza, 6th Floor
1313 North Market Street
P. O. Box 951
Wilmington, DE 19899-0951
Tel: (302) 984-6000
rhorwitz@potteranderson.com
dmoore@potteranderson.com

*Attorneys for Defendant*
*Acushnet Company*

**TABLE OF CONTENTS**

I. INTRODUCTION ..................................................................................................1
II. STATEMENT OF FACTS ....................................................................................1
   A. Mr. Dalton's Declaration Contains Other Information Not Related to Mesabi and Not, Therefore, within Bridgestone's Current Motion ..........................1
   B. The Summary Charts In Mr. Dalton's Declaration..................................................2
III. ARGUMENT ..........................................................................................................6
   A. Acushnet Timely Produced All Information Contained in Mr. Dalton's Declaration. .......................................................................................................6
   B. The Methodology Used to Create Summary Charts Was Proper and Reliable ........................................................................................................7
      1. The Summary Charts Attached to Mr. Dalton's Declaration Are the Charts Created by Messrs. Gajic and Elliott ......................................7
      2. Summary Charts Track Only Relevant Ingredients .................................8
      3. Mr. Dalton Reviewed the Summary Charts and Supporting Information ...........8
   C. Acushnet Properly Identified Mr. Gajic and Mr. Elliott as Rule 26(a)(2)(A) Experts..................................................................................................9
IV. CONCLUSION.....................................................................................................10

Defendant Acushnet Company ("Acushnet") files this Memorandum in Opposition to Bridgestone's Motion to Exclude Expert Testimony from Mr. Jeffrey Dalton. Bridgestone's motion is without merit and should be denied.

## I. INTRODUCTION

Bridgestone's motion seeks to preclude Acushnet from presenting expert testimony on its Mesabi Control System from Mr. Dalton or any other expert witness and to further preclude Acushnet from presenting the Mesabi information contained within Mr. Dalton's February 20, 2007 declaration and attached exhibits.[1]

Mr. Dalton has not and will not be offering expert testimony related to the workings of Mesabi. As pointed out by Bridgestone, Mr. Dalton stated in his deposition that he is not an expert on the Mesabi system. There is no basis, however, to preclude either the factual Mesabi information itself, contained in Mr. Dalton's February 20, 2007 declaration, or the testimony of other Acushnet witnesses on Mesabi. Bridgestone arguments are based primarily on the premises that Acushnet did not timely produce Mesabi information (an issue presently pending before the Special Master) and that Mr. Dalton had minimal involvement in the preparation of his declaration. As explained below, both of these premises are incorrect and Bridgestone's motion should be denied.

## II. STATEMENT OF FACTS

### A. Mr. Dalton's Declaration Contains Other Information Not Related to Mesabi and Not, Therefore, within Bridgestone's Current Motion

Mr. Dalton has been an employee of Acushnet Company since 1989. For almost twenty years Mr. Dalton has been involved in one way or another with the research,

---

[1] Although Bridgestone states in its conclusion that it seeks to exclude expert testimony of Mr. Dalton, including his declaration, apparently *in toto*, Bridgestone's motion is specific to Mesabi and provides no basis or support with respect to other subject matters to which Mr. Dalton is disclosed as an expert or discusses in his declaration. Acushnet therefore has limited its response accordingly, but reserves the right to supplement its opposition should Bridgestone proffer arguments for exclusion on other subject matters.

development and manufacture of Acushnet's golf balls. (Ex. 1 – 2/20/07 Dalton Decl. ¶ 2-3). In this case he has provided numerous depositions evidencing the fact that he is highly knowledgeable and technically skilled in the art of golf ball research, development, manufacturing and documentation practices employed by Acushnet. All of the information contained in Mr. Dalton's declaration is within his personal knowledge, as he testified, and he is able to testify to it. (Ex. 2 – 3/2/07 Dalton Tr. 13:2-17).

Mr. Dalton's declaration provides a concise statement of facts relating to Acushnet's standard practices for the manufacture of golf balls, including how Acushnet documents the core formulations it uses. (Ex. 1 – 2/20/07 Dalton Decl. ¶ 1-2).

Mr. Dalton's declaration was necessitated by the fact that Bridgestone's experts grossly mischaracterized his earlier deposition testimony in the case and made several incorrect and careless assumptions about Acushnet's practices in their infringement reports. Despite evidence to the contrary, including Mr. Dalton's own testimony, Bridgestone's experts "assumed" that they could rely on a model core recipe in a single manufacturing guideline without considering whether that recipe, if even used at all, was changed. (D.I. 365, p. 6-9). Mr. Dalton's declaration specifically rebuts this assumption and further points out his deposition testimony in which he informed Bridgestone that recipe changes must be considered. (Ex. 1 – 2/20/07 Dalton Decl. ¶ 1, 5-9).

Further, Bridgestone's experts made incorrect assumptions with regard to the purity of the Zn-PCTP and ZDA raw materials used by Acushnet. Mr. Dalton's declaration also rebuts these incorrect assumptions of Bridgestone's experts. (*Id.* ¶ 10-16). Bridgestone completely ignores these parts of Mr. Dalton's declaration in seeking to exclude his declaration and offers no basis for any of this information to be excluded.

### B. The Summary Charts In Mr. Dalton's Declaration

Mr. Dalton's declaration also includes several "summary charts," which track the amount of rubber, ZDA and Zn-PCTP used in the core formulations of the accused golf

2

balls over time.[2] These charts and the underlying information are the only information that Bridgestone attempts to exclude from Mr. Dalton's declaration. The summary charts, which utilize, in part, information from Acushnet's Mesabi Control System, were prepared at Mr. Dalton's direction by two Acushnet plant manager employees, Mr. Rastko Gajic and Mr. Patrick Elliott, highly experienced with the Mesabi Control System. (Ex. 2 – 3/2/07 Dalton Tr. 13:18-14:17).

Bridgestone argues that it was Acushnet's trial counsel, and not Mr. Dalton that directed the creation of these "summary charts." Even if true, which it is not, Bridgestone offers no support that such a fact should result in the information being precluded. In fact, Bridgestone does not present any argument or evidence that any of the information contained in the summary charts is anything but 100% accurate. Bridgestone further did not dispute the accuracy of the data presented in these summary charts when they were used to support Acushnet's motion for summary judgment of non-infringement of the '961 patent. (*See* D.I. 365, p. 6-9; D.I. 420). Instead, like here, Bridgestone argued that the Mesabi information should be precluded despite the fact it shows that the '961 patent could not have been infringed for significant times. (D.I. 420, p. 1).[3]

The evolution of the summary charts is straightforward, and shows that the methodology used by Acushnet was reliable. In connection with his non-infringement opinions, Acushnet's retained expert, Dr. David Felker, sought from Acushnet the most accurate information possible of the amounts of certain ingredients in the cores of

---

[2] The summary charts track the amount of rubber, ZDA and Zn-PCTP in the core of Acushnet's products, because those are the ingredients that are relevant, in light of the asserted claims, to Acushnet's non-infringement defenses.

[3] Notably, Bridgestone undertook no testing of Acushnet's golf balls for the relevant chemicals pertinent to whether Acushnet infringes (or infringed) the '961 and '652 patents, but instead is trying to base its entire case of infringement on an out-of-context, and simply wrong, interpretation of Acushnet's manufacturing guidelines, which are not meant to specify the day-to-day formulation of the cores of Acushnet's golf balls. Bridgestone knows this (D.I. 482, p. 4) but refuses to abandon its unsubstantiated assertions, in favor of procedural motions attempting to exclude the undisputed facts.

3

Acushnet's accused golf balls as they were manufactured over time. Based on this request Acushnet set out to determine the most accurate and efficient way to meet Dr. Felker's request. (Ex. 3 – Acushnet's Opposition to Bridgestone's Motions for Sanctions, p. 8-21).

Mr. Dalton informed that the best people to obtain this information were Mr. Gajic and Mr. Elliott, who were the quality process managers at Ball Plant II and Ball Plant III, respectively. (Ex. 2 – 3/2/07 Dalton Tr. 13:18-14:17). After several false starts, Mr. Gajic and Mr. Elliott determined that the best way to provide this information in the time available was to rely primarily on the recipe change notice database in combination with the Mesabi information. (Ex. 3 – Acushnet's Opposition to Bridgestone's Motions for Sanctions, p. 13). Collecting this information and preparing the summary charts was no easy task. Retrieving core formulation information from Mesabi is extremely difficult. The Mesabi system is not set up to readily print out historical core formulations. (Ex. 3 –Acushnet's Opposition to Bridgestone's Motions for Sanctions, p. 11; Ex. 4 – 4/3/07 Bartsch Decl. ¶14-16).

After collecting the required information, Messrs. Gajic and Elliott then proceeded to create summary charts from the recipe change notices and Mesabi data, indicating the amount of rubber, ZDA and Zn-PCTP used in the core formulations of the accused golf balls. These were the ingredients pertinent to the '652 and '961 patents, which were relevant to Dr. Felker's non-infringement analysis. Mr. Gajic provided charts and information from Ball Plant II, whereas Mr. Elliott provided charts and information from Ball Plant III. (Ex. 2 – 3/2/07 Dalton Tr. 92:8-12).

The "summary charts" and underlying supporting information were then sent to Acushnet's trial counsel and to Mr. Dalton. (Ex. 5 – 3/20/07 Gajic Tr. 94:22-95:7). Mr. Dalton reviewed the information, checked it to make sure it was accurate and then attached it to his declaration. (Ex. 2 – 3/2/07 Dalton Tr. 14:18-15:21). Although Bridgestone characterizes his review as "cursory," (D.I. 452, p. 3), Mr. Dalton testified

4

that he performed much more than a cursory review – "I did review many of the pages and worksheets to make sure the calculations were done properly." (Ex. 2 – 3/2/07 Dalton Tr. 15:6-9). The entire process was discussed during one succinct portion of Mr. Dalton's recent deposition testimony. (*See* Ex. 2 – 3/2/07 Dalton Tr. 13:18-15:21):

> Q   Do you recognize this as a declaration prepared by yourself?
> A   Yes, sir, I do.
> Q   If you could turn to the last page of this declaration; is that your signature?
> A   Yes, sir, it is.
> Q   And did you write this declaration?
> A   I believe that the declaration was primarily written by our attorneys, and I reviewed it and made comments and -- and edits.
> Q   Do you know which attorneys were involved?
> A   I'm not sure, exactly, which of our attorneys were.
> Q   Okay. Are all of the statements set forth in this declaration true, to your knowledge?
> A   Yes, sir.
> Q   Did anyone at Acushnet assist you in the preparation of this declaration?
> A   In the entire declaration, including all of the data that was gathered, yes, sir.
> Q   And who were they?
> A   There were two people, there's Rastko Gajic, who I believe your colleagues deposed yesterday.
> Q   That is correct.
> A   And Pat Elliott.
> Q   And who is Pat Elliott?
> A   Pat Elliott, I'm not sure of his title, he's technical manager or maybe quality manager for Ball Plant III.
> Q   Okay. So is it fair to say that Mr. Gajic --
> A   Yes, Gajic.
> Q   -- prepared the information in this declaration, and specifically the summaries for Ball Plant II, and Mr. Elliott did the same for Ball Plant III?
> A   Yes, sir, they did.
> Q   And did you review those exhibits and information that they prepared for purposes of your declaration?
> A   Yes, sir, I did.
> Q   And do you feel that everything was done properly and completely?

5

> A    I believe so, obviously there's a lot of information, and I can't say that I looked at every single entry.
> Q    I understand.
> A    But I did review the -- many of the pages and the worksheets to make sure that the calculations were done properly. And -- and -- and I was able to verify that.
> Q    Okay. And you can not specifically identify any attorneys who assisted you in the drafting of this declaration; is that correct?
> A    I just don't recall, to be honest with you.
> Q    Okay. I'd like you to turn to paragraph 31, which is on the second to last page of the declaration?
> A    Paragraph 31? Yes, sir.
> Q    Okay. And where it says, at my direction, and that's because of Mr. Gajic and Mr. Elliott assisted you; is that correct?
> A    That's correct.

The information in Mr. Dalton's declaration was then provided to Dr. Felker, who relied on the summary chart information to reach his opinion that Acushnet's accused products did not infringe either the '961 or '652 patents.

### III. ARGUMENT

#### A. Acushnet Timely Produced All Information Contained in Mr. Dalton's Declaration.

Bridgestone asserts that the Mesabi data contained in Mr. Dalton's declaration should be precluded because it was not timely produced during fact discovery. This assertion, however, is not true. This argument is yet another rehashing of the same argument presented in various other motions and which is currently pending before the Special Master. As explained previously, Acushnet provided hundreds of recipe change notices and access to thousands more within the time frame that the parties had agreed to for mutual fact discovery. (*See* D.I., 410, pg. 4-5). Moreover, all of the supporting Mesabi information, attached to Mr. Dalton's declaration, was offered to Bridgestone for inspection at its facilities during fact discovery.[4] Bridgestone chose strategically to

---

[4] By the parties' agreed-upon December 18, 2006 fact discovery deadline, and well in advance of the submission of expert reports, Acushnet offered on several occasions to

6

ignore this information and rely instead on a manufacturing guideline which does not show the actual amount of any ingredient used in Acushnet's products. Since all of the Mesabi information was offered to Bridgestone, its motion to exclude must fail. (Ex. 3).

> **B.    The Methodology Used to Create Summary Charts Was Proper and Reliable**

Bridgestone's over-arching basis for excluding the factual Mesabi information attached to Mr. Dalton's declaration appears to be the fact that Mr. Dalton did not personally collect the underlying information and prepare the summary charts himself. This fact, however, does not make the information attached to Mr. Dalton's declaration unreliable or excludable. Mr. Dalton delegated the responsibility for collecting the information and preparing the summary charts to Messrs. Gajic and Elliott, knowledgeable people at Acushnet with respect to the day-to-day core formulations and electronic records located in the Mesabi system that lies on the factory floor. (Ex. 2 – 3/2/07 Dalton Tr. 13:18-14:17). **If anything, this delegation of responsibility increases the reliability of the information.** Mr. Dalton then reviewed the information provided by Messrs. Gajic and Elliott to ensure that the charts were created properly and the calculations were performed correctly, so that he could attach the results to his declaration. Bridgestone provides no evidence that such a methodology is improper.

> **1.    The Summary Charts Attached to Mr. Dalton's Declaration Are the Charts Created by Messrs. Gajic and Elliott**

Bridgestone insinuates that the summary charts provided in Mr. Dalton's declaration may not be the summary charts created by Messrs. Gajic and Elliott, because the charts were sent to Acushnet's trial counsel first, and then to Mr. Dalton for his

---

allow Bridgestone to inspect the Mesabi database with this data. Bridgestone, however, declined those offers in favor of claiming prejudice that it could have easily avoided.

review. (D.I. 452, p. 7). Incredibly, Bridgestone suggests this without a scintilla of any evidence that the summary charts were manipulated.

Furthermore, Bridgestone ignores the fact that Mr. Gajic was deposed on the content of Mr. Dalton's declaration and the summary charts and he specifically stated that he directly emailed his summary charts, from Ball Plant II, to Mr. Dalton. (Ex. 5 – 3/20/07 Gajic Tr. 94:22-95:7) Likewise, Mr. Elliott testified at his deposition that the summary charts from Ball Plant III, which were attached to Mr. Dalton's declaration from him, were prepared by him. (Ex. 6 – 3/17/07 Elliott Tr. 80:17-20).

### 2. Summary Charts Track Only Relevant Ingredients

Bridgestone further argues that the methodology used by Acushnet in creating the summary charts is not reliable because counsel instructed Messrs. Gajic and Elliott on which ingredients it wanted them to track. This argument is nonsensical.

Bridgestone accuses Acushnet of infringing the '652 and '961 patents. These patents require specific types of amounts of certain ingredients. (Ex. 7 – '652 Patent, Claim 1; Ex. 8 – '961 Patent, Claim 1-2). The summary charts track the amount of rubber, ZDA and Zn-PCTP used in the core of Acushnet's accused balls over time, because those are the ingredients, in light of the asserted patent claims, that are relevant to Acushnet's non-infringement defenses. There is no reason for Messrs. Gajic and Elliott to have further analyzed the amount and type of additional ingredients within Acushnet's core formulation, which are not relevant to Acushnet's non-infringement defenses. The simple fact that counsel, in view of the asserted claims, informed Messrs. Gajic and Elliott which ingredients to track is not improper.

### 3. Mr. Dalton Reviewed the Summary Charts and Supporting Information

Bridgestone further argues that the Mesabi information contained within Mr. Dalton's declaration should be excluded because Mr. Dalton did not look at and analyze

8

every entry in the summary chart or at every piece of supporting data. (D.I. 452, p. 8-9). This, however, does not make the information or the methodology in creating the summary charts unreliable. Mr. Dalton testified that he relied on Messrs. Gajic and Elliott to create the summary charts and collect the supporting information, which Mr. Dalton then reviewed, in large part, to confirm that the information was accurate and that the calculations were done correctly. (Ex. 2 – 3/2/07 Dalton Tr. 14:18-15:21). Mr. Dalton specifically testified that he reviewed "many of the pages and the worksheets to make sure that the calculations were done properly." (Ex. 2 – 3/2/07 Dalton Tr. 15:6-9).

There is no dispute that Messrs. Gajic and Elliott are qualified to testify regarding the Mesabi data system. (Ex. 5– 3/20/07 Gajic Tr. 92:12-93:1; Ex. 6 – 3/17/07 Elliott Tr. 165:12-166:5). In addition to Mr. Dalton, both Messrs. Gajic and Elliott were made available for deposition and were deposed by Bridgestone for nearly two and half days on their efforts related to the creation of the summary charts at issue. Gajic and Elliott were able to thoroughly explain how the summary charts were created, how the calculations were performed, and where the underlying supporting documentation for the charts were found, organized and presented to Mr. Dalton. (*See* Ex. 9 – 3/1/07 Gajic Tr.; Ex. 5 – 3/20/07 Gajic Tr.; Ex. 6 – 3/17/07 Elliott Tr.).

It is telling that Bridgestone points to nothing from the depositions of Messrs. Gajic and Elliott to discredit the information in the summary charts. There is simply no basis to exclude the charts and supporting information from Mr. Dalton's declaration.

### C. Acushnet Properly Identified Mr. Gajic and Mr. Elliott as Rule 26(a)(2)(A) Experts

Finally, Bridgestone also seeks to exclude any other expert's testimony related to Acushnet's Mesabi system. This request must fail. Acushnet timely identified Mr. Gajic and Mr. Elliott as Rule 26(a)(2)(A) expert witnesses. Mr. Gajic and Mr. Elliott were disclosed to provide expert testimony related to Mesabi. (Ex. 10 – 1/16/07 Lavelle Ltr. to Masters). Bridgestone proceeded to depose Mr. Gajic for two days on issues

predominately related to his Rule 26(a)(2)(A) testimony and Mr. Elliot for another day. There can be no argument that they are both qualified to discuss the Mesabi system. Mr. Gajic and Mr. Elliott provided full and in-depth answers to all of Bridgestone's questions related to Mesabi. In fact, Bridgestone does not argue in its motion that either Messrs. Gajic or Elliott is not qualified to present testimony on Mesabi. The only basis that Bridgestone presents is its continuing assertion that the data was not timely produced during fact discovery, which, as discussed above is not true. As argued therefore herein and repeatedly elsewhere in response to other motions filed by Bridgestone, there is no basis to exclude Mr. Gajic or Mr. Elliott from providing expert testimony on Mesabi on any grounds. (*See* 5/14/07 Acushnet's Opp. to Bridgestone's Motion *In Limine* to Preclude Acushnet's Employees from Testifying as Experts; *see also* D.I. 423, p. 3-4, Acushnet's Opp. to Bridgestone's Motion to Compel Production of Documents; and D.I. 461).

## IV. CONCLUSION

For the foregoing reasons, Acushnet respectfully requests the Court to deny Bridgestone's Daubert Motion to Exclude Expert Testimony From Mr. Jeffrey Dalton.

Respectfully submitted,

POTTER ANDERSON & CORROON LLP

OF COUNSEL:

Alan M. Grimaldi
Joseph P. Lavelle
Kenneth W. Donnelly
HOWREY LLP
1299 Pennsylvania Ave., N.W.
Washington, DC 20004
Telephone: (202) 783-0800

Dated: May 14, 2007
Public Version Dated: May 22, 2007
797106/28946

By: /s/ David E. Moore
Richard L. Horwitz (#2246)
David E. Moore (#3983)
Hercules Plaza, 6th Floor
1313 N. Market Street
P.O. Box 951
Wilmington, DE 19899-0951
(302) 984-6000
rhorwitz@potteranderson.com
dmoore@potteranderson.com

*Attorneys for Defendant
Acushnet Company*

10

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

**CERTIFICATE OF SERVICE**

    I, David E. Moore, hereby certify that on May 22, 2007, the attached document was hand delivered to the following persons and was electronically filed with the Clerk of the Court using CM/ECF which will send notification to the registered attorney(s) of record that the document has been filed and is available for viewing and downloading:

Jack B. Blumenfeld
Maryellen Noreika
Leslie A. Polizoti
Morris, Nichols, Arsht & Tunnell
1201 N. Market Street
Wilmington, DE 19801

    I hereby certify that on May 22, 2007, I have Electronically Mailed the documents to the following:

Robert M. Masters
Paul, Hastings, Janofsky & Walker LLP
875 15th Street, N.W.
Washington, D.C. 20005
RobMasters@paulhastings.com

                                                                        /s/ *David E. Moore*
                                                                        Richard L. Horwitz
                                                                        David E. Moore
                                                                        Potter Anderson & Corroon LLP
                                                                        Hercules Plaza – Sixth Floor
                                                                        1313 North Market Street
                                                                        P.O. Box 951
                                                                        Wilmington, DE 19899-0951
                                                                        (302) 984-6000
                                                                        rhorwitz@potteranderson.com
                                                                        dmoore@potteranderson.com

680012 / 28946