IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

BRIDGESTONE SPORTS CO., LTD.　　　)
and BRIDGESTONE GOLF, INC.,　　　　)
　　　　　　　　　　　　　　　　　　)
　　　　　　　　Plaintiffs,　　　　　)　　C.A. No. 05-132 (JJF)
　　　　　　　　　　　　　　　　　　)
　　　　v.　　　　　　　　　　　　　)　　REDACTED – PUBLIC VERSION
　　　　　　　　　　　　　　　　　　)
ACUSHNET COMPANY,　　　　　　　　)
　　　　　　　　　　　　　　　　　　)
　　　　　　　　Defendant.　　　　　)

**BRIDGESTONE'S RESPONSE TO ACUSHNET'S MAY 15, 2007 CITATION OF
SUPPLEMENTAL AUTHORITY AND ITS MOTION FOR LEAVE TO FILE THE
ATTACHED SURREPLY BRIEF IN OPPOSITION TO ACUSHNET'S EMERGENCY
MOTION TO AMEND INVALIDITY EXPERT REPORTS AND TO RESET THE
<u>PRETRIAL AND TRIAL DATES</u>**

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

Jack B. Blumenfeld (#1014)
Leslie A. Polizoti (#4299)
1201 N. Market St.
P.O. Box 1347
Wilmington, DE 19801
(302) 658-9200
*Attorneys for Bridgestone Sports Co., Ltd.
and Bridgestone Golf, Inc.*

OF COUNSEL:

Robert M. Masters
Scott M. Flicker
PAUL, HASTINGS, JANOFSKY & WALKER LLP
875 15th St., N.W.
Washington, DC 20005
(202) 551-1700

Originally Filed:  May 16, 2007
Redacted Version Filed:  May 22, 2007

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| BRIDGESTONE SPORTS CO., LTD.<br>and BRIDGESTONE GOLF, INC., | ) ) ) | |
| Plaintiffs, | ) ) | C.A. No. 05-132 (JJF) |
| v. | ) ) | REDACTED – PUBLIC VERSION |
| ACUSHNET COMPANY, | ) ) | |
| Defendant. | ) ) | |

**BRIDGESTONE'S RESPONSE TO ACUSHNET'S MAY 15, 2007 CITATION OF
SUPPLEMENTAL AUTHORITY AND ITS MOTION FOR LEAVE TO FILE THE
ATTACHED SURREPLY BRIEF IN OPPOSITION TO
ACUSHNET'S EMERGENCY MOTION TO AMEND INVALIDITY EXPERT
<u>REPORTS AND TO RESET THE PRETRIAL AND TRIAL DATES</u>**

Plaintiffs Bridgestone Sports Co., Ltd. and Bridgestone Golf, Inc. (collectively
"Bridgestone") move for leave to file the attached surreply brief in opposition to Acushnet's May
14, 2007 reply brief (D.I. 489) and to respond to Acushnet's May 15, 2007 citation of
supplemental authority (D.I. 507). Bridgestone requests leave to file a surreply because
Acushnet raised numerous new issues and arguments in its reply brief. For example, even
though the Court precluded Acushnet from using certain prior art against Bridgestone's '707 and
'791 patents, and from submitting supplemental expert reports, Acushnet argues that the
Supreme Court's *KSR* decision justifies Acushnet now being able to come up with new invalidity
theories against those two patents and the five other Bridgestone patents in suit and to be able to
submit almost unlimited new expert reports. There is no basis for Acushnet to parlay *KSR* into a
basis to reopen its invalidity case entirely or as a remedy for its discovery defaults and
misconduct.

Acushnet also argues against a first infringement and damages trial, followed by a later validity trial. In doing so, it ignores that this Court already ruled in January 2006 that "this case will be chopped up for trial....But, you know we'll do an infringement trial probably, and then a validity trial, so that the jury can...get its hands around it..." (D.I. 73 at 27).

Acushnet also misrepresents entirely its bifurcation motion and Bridgestone's opposition to it that led to the Court's decision. In doing so, Acushnet makes a baseless judicial estoppel argument. Acushnet also admits that it has no significant non-infringement position with respect to Bridgestone's '707, '791 and '961 patents, even though it has moved for summary judgment of non-infringement on one of them and opposed a motion for summary judgment of infringement on another.

Bridgestone requests leave to file the attached surreply so that it can address the many new arguments made by and positions taken by Acushnet.

Pursuant to D. Del. LR 7.1.1, counsel for Bridgestone certifies that the subject of this motion has been discussed with counsel for Acushnet, and that the parties have been unable to reach agreement; however, counsel for Acushnet advises that it will consent to a short letter response to its May 15, 2007 citation of supplemental authority (D.I. 507). Bridgestone's response to Acushnet's letter is contained in the attached surreply.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Jack B. Blumenfeld*
Jack B. Blumenfeld (#1014)
Leslie A. Polizoti (#4299)
1201 N. Market St.
P.O. Box 1347
Wilmington, DE 19801
(302) 658-9200

*Attorneys for Bridgestone Sports Co., Ltd.*
*and Bridgestone Golf, Inc.*

3

OF COUNSEL:

Robert M. Masters
Scott M. Flicker
PAUL, HASTINGS, JANOFSKY & WALKER LLP
875 15th St., N.W.
Washington, DC 20005
(202) 551-1700

May 16, 2007

EXHIBIT 1

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

BRIDGESTONE SPORTS CO., LTD.           )
and BRIDGESTONE GOLF, INC.,            )
                                       )
                    Plaintiffs,        )       C.A. No. 05-132 (JJF)
                                       )
        v.                             )       REDACTED – PUBLIC VERSION
                                       )
ACUSHNET COMPANY,                      )
                                       )
                    Defendant.         )

**BRIDGESTONE'S SURREPLY BRIEF IN OPPOSITION TO
ACUSHNET'S EMERGENCY MOTION TO AMEND INVALIDITY EXPERT
REPORTS AND TO RESET THE PRETRIAL AND TRIAL DATES**

MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Jack B. Blumenfeld (#1014)
Leslie A. Polizoti (#4299)
1201 N. Market St.
P.O. Box 1347
Wilmington, DE 19801
(302) 658-9200

*Attorneys for Bridgestone Sports Co., Ltd.
and Bridgestone Golf, Inc.*

OF COUNSEL:

Robert M. Masters
Scott M. Flicker
PAUL, HASTINGS, JANOFSKY & WALKER LLP
875 15th St., N.W.
Washington, DC 20005
(202) 551-1700

May 16, 2007

i

## TABLE OF CONTENTS

I.    *KSR* DOES NOT JUSTIFY THE "DO OVER" ACUSHNET SEEKS ............................. 1

II.   THE COURT SAID IT WOULD BIFURCATE VALIDITY FROM INFRINGEMENT AND DAMAGES MORE THAN A YEAR AGO ............................. 5

ii

## <u>TABLE OF AUTHORITIES</u>

<u>Cases</u>

*Graham v. John Deere Co. of Kansas City,*
    383 U.S. 1 (1966) ........................................................................................................... 2


<u>Statutes</u>

35 U.S.C. § 102 ................................................................................................................. 2

1

Plaintiffs Bridgestone Sports Co., Ltd. and Bridgestone Golf, Inc. (collectively "Bridgestone") submit this surreply in response to Acushnet's May 14, 2007 reply brief (D.I. 489) and May 15, 2007 letter to the Court (D.I. 507). Acushnet overstates the effect of *KSR* on the obviousness analysis and seeks to denigrate the inventions of Bridgestone's patents – as if that were the issue on its motion. *KSR* is not even relevant to Bridgestone's '791 patent, because Acushnet has no prior art defense to it. At the same time, Acushnet as much as admits that it infringes three of Bridgestone's patents, including the '791. Acushnet also opposes a first trial on infringement and damages, followed by a later trial on validity, even though this Court already ruled more than a year ago that there would be a first infringement trial when it ruled on Acushnet's bifurcation motion.

## I.    *KSR* DOES NOT JUSTIFY THE "DO OVER" ACUSHNET SEEKS

In its reply brief, Acushnet acknowledges – after more than two years of litigation and court orders about its invalidity disclosures – that it now wants a "do over" – a mulligan – with respect to its obviousness contentions on all seven Bridgestone patents. Acushnet does not seek merely to conform its existing obviousness contentions in its expert reports to *KSR*. It wants to start over entirely, opening up new obviousness contentions limited only to "prior art already identified in the case..." (D.I. 489 at 2) – giving no indication of what or how many obviousness contentions it wants to add. In fact, the "prior art already identified" is far more than the excessive amount that Bridgestone's motions and the Court's Orders reduced. What Acushnet now wants is what it has been seeking to accomplish for months – to postpone the trial in a case pending for over two years, since March 2005 – and to seek to repair its invalidity

2

case.[1]  It is not that Bridgestone "wants to rush to a verdict on any snippet of this case that it can" (D.I. 489 at 2).

Acushnet's justification for its desire to open up its defenses entirely is that *KSR* made a "fundamental" change in the law of obviousness.  Indeed, Acushnet uses the word "fundamental" to describe the *KSR* change seven times in the first four pages of its brief, as if repeating it enough times would make it so.  It's not.  The PTO, for example, issued a Memorandum to its examiners on May 3, 2007 stating that after *KSR*, "it remains necessary to identify the reason why a person of ordinary skill in the art would have combined the prior art elements in the manner claimed" (Ex. A at 2; *see also* Ex. B ("Experts say this statement [from the PTO] shows that the PTO is acknowledging that the TSM test can still be helpful in determining the obviousness of a patent.  The PTO is not anticipating nor encouraging a wholesale change in the current test....")).  Indeed, *KSR* itself says that to find a claimed combination obvious, there must be "an apparent reasons to combine the known elements in the fashion claimed by the patent at issue" (D.I. 427 at Ex. 1 at 14).

In fact, in *KSR*, the Supreme Court began by reiterating the obviousness analysis it had set forth in *Graham v. John Deere Co. of Kansas City*, 383 U.S. 1 (1966).  The Court then "rejected the rigid approach" of "teaching, suggestion, or motivation" ("TSM") adopted by the

---

[1]    Apparently, Acushnet intends to try this anyway, regardless of *KSR*.  Its Statement of Intended Proof in its May 2 draft pretrial order sections includes the prior art that was excluded – as well as a lot of art not cited in Acushnet's expert reports.  For example, Acushnet wants to prove that "Claim 1 of the '707 patent is invalid under 35 U.S.C. § 102 in light of the Altus Newing Massy golf balls (94092) obtained by Acushnet prior to March 10, 1996" and that "Claims 11, 13, 16, and 26 of the '791 patent are invalid under 35 U.S.C. § 102 in light of United States Patent No. 5,779,563" (Ex. C).  Acushnet's exhibit list also contains five opinions of counsel on invalidity that have not been produced.

3

Federal Circuit, in favor of a more "flexible approach" (D.I. 427, Ex. 1 at 11). The Court made clear that, although the TSM test could be useful, it was not a "rigid rule" (*id.* at 15). The Court also noted that the "factfinder should be aware, of course, of the distortion caused by hindsight bias and must be cautious of arguments reliant upon *ex post* reasoning." *KSR* was not a "fundamental change" in the law of obviousness. Nothing prevented Acushnet from making the arguments it now says it wants to make earlier, when it was required to do so in compliance with the Court's orders.

For example, with respect to Bridgestone's '791 patent, the Court precluded Acushnet from relying on any prior art – so Acushnet has no prior art defense for this patent. *KSR* has no impact on that. With respect to Bridgestone's '707 patent, the Court precluded Acushnet from relying on its main prior art reference for failure to timely disclose it, leaving Acushnet with EP '043 as its primary reference. Acushnet elected not to seek reconsideration of this ruling. But ever since then, Acushnet has been trying to fix the problem it created for itself. Notably, after the Court told it that there could be no supplemental expert reports (which Acushnet told the Special Master was "dicta" (Ex. D at 35)), Acushnet went forward with testing, submitted a supplemental report, and produced an opinion of counsel that it withheld all through discovery. Now Acushnet argues that the jury "deserves to be told" about its new theory of obviousness based on EP '043 (D.I. 489 at 5). This has nothing to do with *KSR*, and everything to do with Acushnet's attempt to use *KSR* as a pretext to a redo its obviousness contentions.

Acushnet had to make its obviousness contentions – for Bridgestone's patents, which Acushnet says are "trivial modifications" (D.I. 489 at 5) – in the time provided by the Court's orders. Although Acushnet was "constrained by the need to comply with Federal Circuit

4

law for appeal purposes" (*id.* at 4) – it certainly would not have chosen the most stringent articulation of the obviousness standard possible. There were numerous cases that support a less rigid TSM test, including the ones cited in *KSR* itself (D.I. 427, Ex. 1 at 12, 14, 18). Acushnet did not have to be "prescient" or "see the future."[2]

Indeed, there are other patent cases in this district that are set for trial this summer, and none of those defendants, to the best of our knowledge, have made any request to re-do expert discovery. The only example that Acushnet points to is a May 11, 2007 transcript in *Lucent Techs. v. Gateway, Inc.*, a patent case pending in the Southern District of California. There, the court allowed supplemental expert discovery so the defendants could "conform their case to the last word of the Supreme Court" (D.I. 507, Tr. at 46). Bridgestone did not dispute in its opening brief, and does not dispute, that the parties should have an opportunity to conform existing obviousness contentions to *KSR* (not, as Acushnet says, to have carte blanche "to revise expert reports on obviousness" (D.I. 489 at 2)). But that is not what Acushnet wants. It wants a do-over.

Acushnet's reply brief provides two examples of the different prior art it seeks to use. One example is EP 043 and the '707 patent, where Acushnet wants the Court now to permit its use of the March 2007 supplemental testing that was already prohibited (D.I. 489 at 5-6). The second example concerns Bridgestone's '791 patent, which Acushnet wants to invalidate by combining the '707 patent with other references. After Bridgestone's motion to preclude,

---

[2]     Acushnet says that the Court stayed the *Power Integrations* case because "there was also a pending reexamination in the PTO" (D.I. 489 at 3 n.3). There is nothing in the Court's order even mentioning that the stay of the validity part of that case – after an infringement and damages verdict – was related to a pending reexamination.

5

Acushnet was left with no prior art invalidity defense for the '791 patent due to its own strategic choices. *KSR* is not a basis to permit Acushnet to undo the result of those choices.

## II.     THE COURT SAID IT WOULD BIFURCATE VALIDITY FROM INFRINGEMENT AND DAMAGES MORE THAN A YEAR AGO

Acushnet also opposes a first trial on infringement and damages. In doing so, it ignores entirely the fact that this Court already ruled in January 2006 that "this case will be chopped up for trial. And everybody ought to remind me of that when we get there. But, you know we'll do an infringement trial probably, and then a validity trial, so that the jury can . . . get its hands around it, and so I'll have an easier job making evidentiary rulings" (D.I. 73 at 27).

Acushnet also misrepresents entirely what happened on its bifurcation motion that led to that result.     In December 2005, Acushnet moved to bifurcate discovery and trial of liability from damages and willfulness (D.I. 44). Acushnet says that Bridgestone opposed that motion because "bifurcation would prejudice" it (D.I. 489 at 9). In fact, Bridgestone opposed because Acushnet proposed bifurcation of discovery and trial of liability from damages and willfulness. Thus, Bridgestone argued that it "would be prejudiced by the considerable delay *that would result from separated discovery periods*" (D.I. 55 at 2) (emphasis added). As for Acushnet's assertion that Bridgestone "claimed that the damages and validity issues were intertwined" (D.I. 489 at 9), Bridgestone similarly cited issues with bifurcating discovery: "commercial success and licensing – issues for which relevant discovery would be withheld under Acushnet's proposed bifurcation – are important secondary considerations that would be relevant to rebut an obviousness allegation" (D.I. 55 at 6). Right now, discovery (except for willfulness) is complete, so that concern is no longer an issue.

Acushnet correctly states that Bridgestone argued that "the scope of the case did not warrant bifurcation" (D.I. 489 at 9). The reason, however, was that Bridgestone did not

6

believe that infringement and damages needed to be bifurcated. That is the same position it takes now – infringement and damages should be tried together, followed by a trial on validity.

In fact, Bridgestone's opposition made clear that bifurcation at that time – December 2005, months before even the October 2006 fact discovery cutoff – was premature. Bridgestone argued that "the case is not sufficiently advanced to determine the appropriateness of bifurcation" (D.I. 55 at 9), and explained that this "is an issue that should be addressed at the pretrial conference" (*id.* at 10). There can be no judicial estoppel.

Acushnet's position simply makes no sense. On the one hand, it argues that "the validity and infringement issues are so inextricably intertwined that . . . bifurcation would not be appropriate" (D.I. 489 at 8), although it does not explain why – other than its naked assertion that "[i]t will be simpler, and clearer, for one jury to hear all the issues" (*id.* at 9). On the other hand, Acushnet admits that "on several patents in suit ('707, '791, and '961), Acushnet does not make significant challenges" on infringement (*id.* at 7). So much for "inextricably intertwined" issues.

Acushnet also argues that "trying damages without trying validity could cause the jury to conclude that Acushnet has no defense as to these balls, and could greatly prejudice Acushnet" (D.I. 489 at 8). The same could be said of all of the patent cases where this Court has done what it said it will do here.

Nor will it "be very hard to break out the damages award in the likely event that some or many of the Bridgestone patents are found to be invalid" (D.I. 489 at 8). Bridgestone seeks a reasonable royalty for infringement of seven patents. ██████████████

7

CONCLUSION

For the reasons set forth herein, Acushnet's emergency motion should be denied.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

/s/ Jack B. Blumenfeld
Jack B. Blumenfeld (#1014)
Leslie A. Polizoti (#4299)
1201 N. Market St.
P.O. Box 1347
Wilmington, DE 19801
(302) 658-9200

*Attorneys for Bridgestone Sports Co., Ltd.
and Bridgestone Golf, Inc.*

OF COUNSEL:

Robert M. Masters
Scott M. Flicker
PAUL, HASTINGS, JANOFSKY & WALKER LLP
875 15th St., N.W.
Washington, DC 20005
(202) 551-1700

May 16, 2007

---

[3]    Acushnet does not argue that its four patents – for which it requests less than $49,000 in damages, and most of which will expire during trial – should be tried with Bridgestone's seven patents.

EXHIBIT A

 UNITED STATES PATENT AND TRADEMARK OFFICE

COMMISSIONER FOR PATENTS
UNITED STATES PATENT AND TRADEMARK OFFICE
P.O. BOX 1450
ALEXANDRIA, VA 22313-1450
www.uspto.gov

## MEMORANDUM

**DATE:**    May 3, 2007

**TO:**    Technology Center Directors

**FROM:**    Margaret A. Focarino
Deputy Commissioner
for Patent Operations

**SUBJECT:**    Supreme Court decision on *KSR Int'l. Co., v. Teleflex, Inc.*


The Supreme Court has issued its opinion in *KSR*, regarding the issue of obviousness under 35 U.S.C. § 103(a) when the claim recites a combination of elements of the prior art. *KSR Int'l Co. v. Teleflex, Inc.*, No 04-1350 (U.S. Apr. 30, 2007). A copy of the decision is available at http://www.supremecourtus.gov/opinions/06pdf/04-1350.pdf. The Office is studying the opinion and will issue guidance to the patent examining corps in view of the *KSR* decision in the near future. Until the guidance is issued, the following points should be noted:

(1) The Court reaffirmed the *Graham* factors in the determination of obviousness under 35 U.S.C. § 103(a). The four factual inquiries under *Graham* are:
    (a) determining the scope and contents of the prior art;
    (b) ascertaining the differences between the prior art and the claims in issue;
    (c) resolving the level of ordinary skill in the pertinent art; and
    (d) evaluating evidence of secondary consideration.

*Graham v. John Deere*, 383 U.S. 1, 17-18, 148 USPQ 459, 467 (1966).

(2) The Court did not totally reject the use of "teaching, suggestion, or motivation" as a factor in the obviousness analysis. Rather, the Court recognized that a showing of "teaching, suggestion, or motivation" to combine the prior art to meet the claimed subject matter could provide a helpful insight in determining whether the claimed subject matter is obvious under 35 U.S.C. § 103(a).

(3) The Court rejected a rigid application of the "teaching, suggestion, or motivation" (TSM) test, which required a showing of some teaching, suggestion, or motivation in the prior art that would lead one of ordinary skill in the art to combine the prior art elements in the manner claimed in the application or patent before holding the claimed subject matter to be obvious.

(4) The Court noted that the analysis supporting a rejection under 35 U.S.C. § 103(a) should be made explicit, and that it was "important to identify a reason that would have prompted a person of ordinary skill in the relevant field to combine the [prior art] elements" in the manner claimed. The Court specifically stated:

> Often, it will be necessary . . . to look to interrelated teachings of multiple patents; the effects of demands known to the design community or present in the marketplace; and the background knowledge possessed by a person having ordinary skill in the art, all in order to determine whether there was an **apparent reason** to combine the known elements in the fashion claimed by the patent at issue. To facilitate review, this analysis **should be made explicit**.

*KSR*, slip op. at 14 (emphasis added).

**Therefore, in formulating a rejection under 35 U.S.C. § 103(a) based upon a combination of prior art elements, it remains necessary to identify the reason why a person of ordinary skill in the art would have combined the prior art elements in the manner claimed.**

2

# EXHIBIT B



Portfolio Media, Inc. | 648 Broadway, Suite 200 | New York, NY 10012 | www.law360.com

Phone: +1 212 537 6331 | Fax: +1 212 537 6371 | customerservice@portfoliomedia.com

## PTO Issues Memo On KSR Decision To Examiners

By **Amanda Ernst**, amanda.ernst@portfoliomedia.com

*Friday, May 04, 2007* --- Despite the U.S. Supreme Court's ruling in KSR v. Teleflex, the U.S. Patent and Trademark Office has advised its examiners to not toss out the teaching-suggestion-motivation test altogether.

In a memo sent to technology center directors on Thursday, Deputy Commissioner of Patent Operations Margaret Focarino sent some preliminary guidance to patent examiners regarding KSR. The memo said the PTO is studying the Supreme Court's order and will give further guidance to its examiners in the near future.

Focarino also used the memo to remind the staff to continue to look for specific reasons why prior art would be combined into a new patent before rejecting applications for obviousness.

Focarino used the memo to highlight the important aspects of the Supreme Court's decision, which came down April 30. She emphasized that the Court reaffirmed the factors in determining obviousness laid out in Graham v. John Deere, which was the standard before the U.S. Court of Appeals for the Federal Circuit began implementing its TSM test.

The deputy commissioner's memo also mentioned that although the Court did not completely rule out the TSM test, it rejected the rigid application of it. Lastly, Focarino emphasized that the Supreme Court stated a rejection under 35 USC § 103(a) should be based on an apparent reason why prior art was combined.

"In formulating a rejection under 35 USC § 103(a) based upon a combination of prior art elements, it remains necessary to identify the reason why a person of ordinary skill in the art would have combined the prior art elements in the manner claimed," the memo said.

Experts say this statement shows that the PTO is acknowledging that the TSM test can still be helpful in determining the obviousness of a patent. The PTO is not anticipating nor encouraging a wholesale change in the current test, said Ben Davidson, a trademark, copyright and patent litigator at Howrey LLP and a former patent examiner.

"The PTO is saying that there's no drastic change in the Supreme Court's decision," Davidson said. "They don't want to rock the boat too much. Patent examiners will still need to explain why a patent should be rejected based on obviousness."

All Content Copyright 2006, Portfolio Media, Inc.



Those within the patent community will be keeping a close eye on the PTO's future actions regarding the KSR decision.

"The patent office does not want to be overly strict and not issue patents that are deserving of patent protection. And it doesn't want to discourage people from filing patents because it's not going to be worthwhile," Davidson said. "The office will need to give examiners some objective way to determine obviousness."

In its unanimous decision Monday, the Supreme Court more or less disposed of the TSM test as it is currently viewed and used by the U.S. Patent and Trademark Office, patent attorneys and district courts.

In its decision, the Supreme Court rejected the "rigid approach of the Court of Appeals" regarding the TSM test. The Court found that the appellate court had erred by not looking at the broader problems that someone in the field faces, and by not looking for broader solutions within prior art, possible even inventions used for other purposes.

The Supreme Court further said the appellate court had erred by finding that a patent couldn't be proved obvious if the combination of prior art was "obvious to try." Lastly, the Federal Circuit "drew the wrong conclusion from the risk of courts and patent examiners falling prey to hindsight bias," the decision said.

The Supreme Court said that inventors should be allowed to consider prior inventions when creating new works. However, the combination of the prior art must create a novel combination in order to be patentable.

"In many fields it may be that there is little discussion of obvious techniques or combinations, and it often may be the case that market demand, rather than scientific literature, will drive design trends," the decision said. "Granting patent protection to advances that would occur in the ordinary course without real innovation retards progress and may, in the case of patents combining previously known elements, deprive prior inventions of their value or utility."

On Monday, Jon Dudas, the undersecretary of commerce for intellectual property and the PTO's director, acknowledged that patent examiners would be affected by the ruling.

"The decision gives our examiners more flexibility to use their considerable technical skills to reject obvious changes to existing technology," Dudas said.

All Content Copyright 2006, Portfolio Media, Inc.

EXHIBIT C

**EXHIBIT 4**
**STATEMENT OF INTENDED PROOF**

I.     **BRIDGESTONE'S PATENTS**

    A.     **U.S. Patent No. 5,252,652**

1.     The Asserted Claims are invalid because they are anticipated under 35 U.S.C. § 102, in light of at least the Fujii Japanese Kokai Publication No. 02-092378.

2.     The Asserted Claims are invalid because they are obvious under 35 U.S.C. §103, in light of at least the following prior art references:

- Fujii Japanese Kokai Publication No. 02-092378
- U.S. Patent No. 4,556,220
- H. Fries et al, Mastication of Rubber (1981)
- U.S. Patent No. 4,722,977
- Knowledge of one of ordinary skill in the art
- Other art identified by Acushnet in its discovery responses

3.     In proving obviousness, Acushnet will provide evidence to determine the scope and content of the prior art, ascertain the differences between the prior art and the claims, and resolve the level of ordinary skill in the art.

4.     None of Acushnet's Accused Products practice any of the Asserted Claims of the '652 patent because they lack one or more claim element including, but not limited to, the following:

- "a rubber composition containing 100 parts by weight of a base rubber selected from the group consisting of polybutadiene rubber, natural rubber, polyisoprene rubber and styrene-butadiene rubber"
- "about 25 to about 40 parts by weight of a zinc or magnesium salt of an unsaturated fatty acid having 3 to 8 carbon atoms"

14

- "about 0.05 to about 2 parts by weight of a sulfur compound selected from the group consisting of pentachlorothiophenol, 4-t-tubyl-o-thiocresol, 4-t-butyl-p-thiocresol, 2-benzamidothiophenol, thiobenzoic acid, and zinc salts thereof"

5.    Bridgestone cannot prove that the '652 patent is entitled to rely on its Japanese foreign filing date for priority purposes.

6.    The addition of new matter during the prosecution of the '652 patent results in the '652 patent having a priority date of May 10, 1990.

7.    Bridgestone is barred from attempting to prove infringement under the doctrine of equivalents because of prosecution history estoppel.

### B.    U.S. Patent No. 5,553,852

1.    The Asserted Claims are invalid because they are anticipated under 35 U.S.C. § 102, in light of at least the U.S. Patent No. 4,431,193 to Nesbitt issued on February 14, 1984, based on an application filed August 25, 1981.

2.    The Asserted Claims are invalid because they are obvious under 35 U.S.C. §103, in light of at least the following prior art references:

- U.S. Patent No. 4,431,193
- U.S. Patent No. 5,314,187
- The Wilson Ultra Tour Balata 90 Golf Ball manufactured and sold by Wilson Sporting Goods and obtained by Acushnet prior to July 1993 and stored under log number 93007.
- Knowledge of one of ordinary skill in the art
- Other art identified by Acushnet in its discovery responses

3.    In proving obviousness, Acushnet will provide evidence to determine the scope and content of the prior art, ascertain the differences between the prior art and the claims, and resolve the level of ordinary skill in the art.

4.     None of Acushnet's Accused Products practice any of the Asserted Claims of the '852 patent because they lack one or more claim element including, but not limited to, the following:

- "a three-piece solid golf ball"
- "said center core having a diameter of at least 29 mm"
- "said intermediate layer having a thickness of at least 1 mm"
- "said cover having a thickness of 1 to 3 mm"

5.     Further, the inventor expressly disavowed golf balls, such as the Accused Products, during the prosecution of the '852 patent.

6.     Bridgestone cannot prove that the '852 patent is entitled to rely on its Japanese foreign filing date for priority purposes.

7.     Allowing Bridgestone to pursue infringement under the doctrine of equivalents would result in Bridgestone improperly recapturing intentionally excluded subject matter.  For at least this reason, Bridgestone should be precluded from pursuing infringement under the doctrine of equivalents.

### C.     U.S. Patent No. 6,634,961

1.     The Asserted Claim is invalid because it is anticipated under 35 U.S.C. § 102, in light of at least U.S. Patent 6,612,940 to Nesbitt issued on September 2, 2003, based on an application filed on November 9, 2000 claiming priority to a provisional application filed on January 22, 1999.

2.     The Asserted Claim is invalid because it is obvious under 35 U.S.C. §103, in light of at least the following prior art references:

- U.S. Patent No. 6,612,940
- U.S. Patent No. 6,486,261
- U.S. Patent No. 5,508,350
- U.S. Patent No. 6,486,261

- U.S. Patent No. 4,683,257
- U.S. Patent No. 4,556,200
- U.S. Patent No. 5,252,652
- U.S. Patent No. 6,162,135
- U.S. Patent No. 6,975,131
- Knowledge of one of ordinary skill in the art
- Other art identified by Acushnet in its discovery responses

3.     In proving obviousness, Acushnet will provide evidence to determine the scope and content of the prior art, ascertain the differences between the prior art and the claims, and resolve the level of ordinary skill in the art.

4.     Bridgestone has failed to meet its burden of proof that Acushnet's Accused Product practices the Asserted Claim of the '961 patent.

5.     Bridgestone Dr. Coughlin's assumption that the core formulations described in the manufacturing guidelines remained constant over time was so contrary to the record that his opinion cannot be credited leaving Bridgestone with no evidence of infringement for any particular time period.

6.     Acushnet's current Accused Product does not practice the Asserted Claim of the '961 patent because it does not contain a rubber composition comprising 100 parts by weight of a base rubber composed of 20 to 100 wt % of a polybutadiene synthesized using a rare earth catalyst.

7.     For substantial periods of time, Acushnet's Accused Product did not practice the Asserted Claim of the '961 patent because it did not contain a rubber composition comprising 100 parts by weight of a base rubber composed of 20 to 100 wt % of a polybutadiene synthesized using a rare earth catalyst.

D.    U.S. Patent No. 5,743,817

1.      Bridgestone is barred from attempting to prove infringement under the doctrine of equivalents because of prosecution history estoppel

2.      None of Acushnet's NXT Tour golf balls bearing the "◄NXT•Tour►" sidestamp infringe claim 1 of the '817 patent because they lack one or more claim elements, including but not limited to the following:

- a core with a distortion of 2.9 to 4.0 mm under a load of 100 kg;
- a cover consisting of an ionomer resin as a resin component;
- a cover thickness of 1.3 to 1.8 mm; and
- a cover with a Shore D hardness of up to 60.

3.      None of Acushnet's NXT Tour golf balls bearing the "◄NXT Tour►" sidestamp infringe claim 1 of the '817 patent, because they lack one or more claim elements, including but not limited to the following:

- a core with a distortion of 2.9 to 4.0 mm under a load of 100 kg;
- a cover consisting of an ionomer resin as a resin component;
- a cover thickness of 1.3 to 1.8 mm; and
- a cover with a Shore D hardness of up to 60.

4.      None of Acushnet's NXT Tour golf balls bearing the "◄NXT-Tour►" sidestamp infringe claim 1 of the '817 patent, because they lack one or more claim elements, including but not limited to the following:

- a core with a distortion of 2.9 to 4.0 mm under a load of 100 kg;
- a cover consisting of an ionomer resin as a resin component; and
- a cover with a Shore D hardness of up to 60.

5.      None of Acushnet's DT So/Lo golf balls bearing the "◄DT So/Lo►" sidestamp infringe claim 1 of the '817 patent, because they lack one or more claim elements, including but not limited to the following:

- a core with a distortion of 2.9 to 4.0 mm under a load of 100 kg;

- a cover consisting of an ionomer resin as a resin component; and

- a cover with a Shore D hardness of up to 60.

6.     None of Acushnet's DT So/Lo golf balls bearing the "DT So/Lo" sidestamp infringe claim 1 of the '817 patent, because they lack one or more claim elements, including but not limited to the following:

- a core with a distortion of 2.9 to 4.0 mm under a load of 100 kg;

- a cover consisting of an ionomer resin as a resin component; and

- a cover with a Shore D hardness of up to 60.

7.     None of Acushnet's PTS So/Lo golf balls bearing the "◀PTS So/Lo▶" sidestamp infringe claim 1 of the '817 patent, because they lack one or more claim elements, including but not limited to the following:

- a core with a distortion of 2.9 to 4.0 mm under a load of 100 kg;

- a cover consisting of an ionomer resin as a resin component; and

- a cover with a Shore D hardness of up to 60.

8.     None of Acushnet's PTS So/Lo golf balls bearing the "PTS So/Lo" sidestamp infringe claim 1 of the '817 patent, because they lack one or more claim elements, including but not limited to the following:

- a core with a distortion of 2.9 to 4.0 mm under a load of 100 kg;

- a cover consisting of an ionomer resin as a resin component; and

- a cover with a Shore D hardness of up to 60.

9.     None of Acushnet's Pinnacle Exception golf balls bearing the "Pinnacle Exception" sidestamp infringe claim 1 of the '817 patent, because they lack one or more claim elements, including but not limited to the following:

- a core with a distortion of 2.9 to 4.0 mm under a load of 100 kg;

- a cover consisting of an ionomer resin as a resin component; and

- a cover with a Shore D hardness of up to 60.

10.    None of Acushnet's Pinnacle Exception golf balls bearing the "Exception" sidestamp infringe claim 1 of the '817 patent, because they lack one or more claim elements, including but not limited to the following:

- a core with a distortion of 2.9 to 4.0 mm under a load of 100 kg;

- a cover consisting of an ionomer resin as a resin component; and

- a cover with a Shore D hardness of up to 60.

11.    Bridgestone is estopped from attempting to argue infringement under the doctrine of equivalents for at least the following limitations:

- a core with a distortion of 2.9 to 4.0 mm under a load of 100 kg; and

- a cover consisting of an ionomer resin as a resin component.

12.    The '817 patent is anticipated under 35 U.S.C. § 102 by JP '673.

13.    The Asserted Claim is invalid because it is obvious under 35 U.S.C. §103, in light of at least the following prior art references:

- JP '673

- Knowledge of one of ordinary skill in the art

- Other art identified by Acushnet in its discovery responses

14.    In proving obviousness, Acushnet will provide evidence to determine the scope and content of the prior art, ascertain the differences between the prior art and the claims, and resolve the level of ordinary skill in the art.

### E.    U.S. Patent No. 5,782,707

1.    Bridgestone has failed to prove by a preponderance of the evidence that the golf balls bearing the side stamp "Pro V1 392" manufactured by Acushnet at some time between 2000 and 2002 infringe the following limitations of claim 1 of the '707 patent:

- "the core center hardness is up to 75 degrees"

- "the core surface hardness is up to 85 degrees"

- "the core surface hardness is higher than the core center hardness by 8 to 20 degrees"
- "the intermediate layer hardness is higher than the core surface hardness by at least 5 degrees"

2.    Bridgestone has failed to prove by a preponderance of the evidence that the golf balls bearing the side stamp "Pro V1 392 (stretched)" manufactured by Acushnet at some time between 2000 and 2002 infringe the following limitation of claim 1 of the '707 patent:

- "the core center hardness is up to 75 degrees"
- "the core surface hardness is up to 85 degrees"
- "the core surface hardness is higher than the core center hardness by 8 to 20 degrees"
- "the intermediate layer hardness is higher than the core surface hardness by at least 5 degrees"

3.    Bridgestone has failed to prove by a preponderance of the evidence that the golf balls bearing the side stamp "◄Pro V1●392►" manufactured by Acushnet at some time between 2000 and 2002 infringe the following limitations of claim 1 of the '707 patent:

- "the core center hardness is up to 75 degrees"
- "the core surface hardness is up to 85 degrees"
- "the core surface hardness is higher than the core center hardness by 8 to 20 degrees"
- "the intermediate layer hardness is higher than the core surface hardness by at least 5 degrees"

4.    Claim 1 of the '707 patent is invalid under 35 U.S.C. § 102 in light of the Altus Newing Massy golf balls (94092) obtained by Acushnet prior to March 10, 1996.

5.      Claim 1 of the '707 patent is invalid under 35 U.S.C. § 103 in light of the pertinent prior art, including:

- The knowledge of one of ordinary skill in the art

- European Patent Application EP 0 633 043 A1

6.      In proving obviousness, Acushnet will provide evidence to determine the scope and content of the prior art, ascertain the differences between the prior art and the claims, and resolve the level of ordinary skill in the art.

7.      Claim 1 of the '707 patent is invalid under 35 U.S.C. § 112.

**F.      U.S. Patent No. 5,803,834**

1.      Claim 1 of the '834 patent is invalid because it is anticipated under 35 U.S.C. § 102 in light of the following:

- Precept EV Extra Spin golf balls (96001) obtained by Acushnet prior to February 27, 1996

- Wilson Ultra Competition golf balls (93049) obtained by Acushnet prior to February 27, 1996

2.      Claim 1 of the '834 patent is invalid because it is obvious under 35 U.S.C. § 103 in light of at least the following prior art references:

- Knowledge of one of ordinary skill in the art

- Other art identified by Acushnet in its discovery responses

3.      In proving obviousness, Acushnet will provide evidence to determine the scope and content of the prior art, ascertain the differences between the prior art and the claims, and resolve the level of ordinary skill in the art.

4.      Claim 1 of the '834 patent is invalid under 35 U.S.C. § 112.

5.      Bridgestone has failed to prove by a preponderance of the evidence that the golf balls bearing the side stamp "◄NXT►" manufactured by Acushnet infringe at least the following limitations of claim 1 of the '834 patent:

22

- "a surface hardness is up to 85 degrees"
- "a center hardness is lower than the surface hardness by not less than 8 to less than 20 degrees"
- "a hardness within 5 mm inside the core surface is up to 8 degrees lower than the surface hardness"
- "said cover has a hardness which is higher than the surface hardness of the core by 1 to 15 degrees"

6.    Bridgestone has failed to prove by a preponderance of the evidence that the golf balls bearing the side stamp "◄-NXT-►" manufactured by Acushnet infringe at least the following limitations of claim 1 of the '834 patent:

- "a surface hardness is up to 85 degrees"
- "a center hardness is lower than the surface hardness by not less than 8 to less than 20 degrees"
- "a hardness within 5 mm inside the core surface is up to 8 degrees lower than the surface hardness"
- "said cover has a hardness which is higher than the surface hardness of the core by 1 to 15 degrees"

7.    Bridgestone has failed to prove by a preponderance of the evidence that the golf balls bearing the side stamp "DT So/Lo" manufactured by Acushnet infringe at least the following limitations of claim 1 of the '834 patent:

- "a surface hardness is up to 85 degrees"
- "a center hardness is lower than the surface hardness by not less than 8 to less than 20 degrees"
- "a hardness within 5 mm inside the core surface is up to 8 degrees lower than the surface hardness"
- "said cover has a hardness which is higher than the surface hardness of the core by 1 to 15 degrees"

23

8.      Bridgestone has failed to prove by a preponderance of the evidence that the golf balls bearing the side stamp "PTS So/Lo" manufactured by Acushnet infringe at least the following limitations of claim 1 of the '834 patent:

- "a surface hardness is up to 85 degrees"
- "a center hardness is lower than the surface hardness by not less than 8 to less than 20 degrees"
- "a hardness within 5 mm inside the core surface is up to 8 degrees lower than the surface hardness"
- "said cover has a hardness which is higher than the surface hardness of the core by 1 to 15 degrees"

9.      Bridgestone has failed to prove by a preponderance of the evidence that the golf balls bearing the side stamp "◀DT So/Lo▶" manufactured by Acushnet infringe at least the following limitations of claim 1 of the '834 patent:

- "a surface hardness is up to 85 degrees"
- "a center hardness is lower than the surface hardness by not less than 8 to less than 20 degrees"
- "a hardness within 5 mm inside the core surface is up to 8 degrees lower than the surface hardness"
- "said cover has a hardness which is higher than the surface hardness of the core by 1 to 15 degrees"

10.      Bridgestone has failed to prove by a preponderance of the evidence that the golf balls bearing the side stamp "◀PTS So/Lo▶" manufactured by Acushnet infringe at least the following limitations of claim 1 of the '834 patent:

- "a surface hardness is up to 85 degrees"
- "a center hardness is lower than the surface hardness by not less than 8 to less than 20 degrees"

- "a hardness within 5 mm inside the core surface is up to 8 degrees lower than the surface hardness"
- "said cover has a hardness which is higher than the surface hardness of the core by 1 to 15 degrees"

11.    Bridgestone has failed to prove by a preponderance of the evidence that the golf balls bearing the side stamp "Exception airfoil logo" manufactured by Acushnet infringe at least the following limitations of claim 1 of the '834 patent:

- "a surface hardness is up to 85 degrees"
- "a center hardness is lower than the surface hardness by not less than 8 to less than 20 degrees"
- "a hardness within 5 mm inside the core surface is up to 8 degrees lower than the surface hardness"
- "said cover has a hardness which is higher than the surface hardness of the core by 1 to 15 degrees"

12.    Bridgestone has failed to prove by a preponderance of the evidence that the golf balls bearing the side stamp "Exception" manufactured by Acushnet infringe at least the following limitations of claim 1 of the '834 patent:

- "a surface hardness is up to 85 degrees"
- "a center hardness is lower than the surface hardness by not less than 8 to less than 20 degrees"
- "a hardness within 5 mm inside the core surface is up to 8 degrees lower than the surface hardness"
- "said cover has a hardness which is higher than the surface hardness of the core by 1 to 15 degrees"

13.    Bridgestone is barred from attempting to prove infringement under the doctrine of equivalents because of prosecution history estoppel.

25

G.    U.S. Patent No. 6,679,791

1.    Claims 11, 13, 16, and 26 of the '791 patent are invalid under 35 U.S.C. § 102 in light of United States Patent No. 5,779,563.

2.    Claims 11, 13, 16, and 26 of the '791 patent are invalid because it is obvious under 35 U.S.C. § 103 in light of at least the following prior art references:

- Knowledge of one of ordinary skill in the art
- United States Patent No. 6,174,247
- United States Patent No. 6,390,935
- United States Patent No. 5,830,085
- United States Patent No. 6,386,993
- Other art identified by Acushnet in its discovery responses.

3.    In proving obviousness, Acushnet will provide evidence to determine the scope and content of the prior art, ascertain the differences between the prior art and the claims, and resolve the level of ordinary skill in the art.

4.    Claims 11, 13, 16, and 26 of the '791 patent are invalid under 35 U.S.C. § 112.

5.    Bridgestone has failed meet it burden of proof to show that the golf balls bearing the side stamp "◄● Pro V1 392 ●►" manufactured by Acushnet infringe at least the following limitations of claim 11 of the '791 patent and claim 1, from which it depends:

- "said intermediate layer is composed of a resin material which is harder than the cover and has a greater hardness than the surface of the elastic core when compared using the same hardness scale"
- "said elastic core has a hardness which gradually increases radially outward from the center to the surface thereof and a difference in JIS-C hardness of at least 22 between the center and the surface"

26

6.     Bridgestone has failed meet it burden of proof to show that the golf balls bearing the side stamp "◄● Pro V1 392 ●►" manufactured by Acushnet infringe at least the following limitations of claim 13 of the '791 patent:

- "said intermediate layer is composed of a resin material which is harder than the cover and has a greater hardness than the surface of the elastic core when compared using the same JIS-C hardness scale"

- "said elastic core has a hardness at the center and a hardness at the surface thereof which is greater than the hardness at the center thereof, and a difference in JIS-C hardness of at least 22 between the center and the surface"

7.     Bridgestone has failed meet it burden of proof to show that the golf balls bearing the side stamp "◄● Pro V1 392 ●►" manufactured by Acushnet infringe at least the following limitations of claim 16 of the '791 patent and claim 13, from which it depends:

- "said intermediate layer is composed of a resin material which is harder than the cover and has a greater hardness than the surface of the elastic core when compared using the same JIS-C hardness scale"

- "said elastic core has a hardness at the center and a hardness at the surface thereof which is greater than the hardness at the center thereof, and a difference in JIS-C hardness of at least 22 between the center and the surface"

- "the intermediate layer has a Shore D hardness of 50 to 67"

8.     Bridgestone has failed meet it burden of proof to show that the golf balls bearing the side stamp "◄● Pro V1 392 ●►" manufactured by Acushnet infringe at least the following limitations of claim 26 of the '791 patent, and claim 24 of the '791 patent from which it depends:

- "said intermediate layer is composed of a resin material which is harder than the cover having a Shore D hardness of 45 to 58 and has a greater hardness than the surface of the elastic core when compared using the same JIS-C hardness scale"

- "said elastic core has a hardness at the center and a hardness at the surface thereof which is greater than the hardness at the center thereof, and a difference in JIS-C hardness of at least 22 between the center and the surface"

9.     Bridgestone has failed meet it burden of proof to show that the golf balls bearing the side stamp "◄ Pro V1-392 ►" manufactured by Acushnet infringe at least the following limitations of claim 11 of the '791 patent and claim 1, from which it depends:

- "said intermediate layer is composed of a resin material which is harder than the cover and has a greater hardness than the surface of the elastic core when compared using the same hardness scale"

- "said elastic core has a hardness which gradually increases radially outward from the center to the surface thereof and a difference in JIS-C hardness of at least 22 between the center and the surface"

10.     Bridgestone has failed meet it burden of proof to show that the golf balls bearing the side stamp "◄ Pro V1-392 ►" manufactured by Acushnet infringe at least the following limitations of claim 13 of the '791 patent:

- "said intermediate layer is composed of a resin material which is harder than the cover and has a greater hardness than the surface of the elastic core when compared using the same JIS-C hardness scale"

- "said elastic core has a hardness at the center and a hardness at the surface thereof which is greater than the hardness at the center thereof,

28

and a difference in JIS-C hardness of at least 22 between the center and the surface"

11.     Bridgestone has failed meet it burden of proof to show that the golf balls bearing the side stamp "◄ Pro V1-392 ►" manufactured by Acushnet infringe at least the following limitations of claim 16 of the '791 patent and claim 13, from which it depends:

- "said intermediate layer is composed of a resin material which is harder than the cover and has a greater hardness than the surface of the elastic core when compared using the same JIS-C hardness scale"

- "said elastic core has a hardness at the center and a hardness at the surface thereof which is greater than the hardness at the center thereof, and a difference in JIS-C hardness of at least 22 between the center and the surface"

- "the intermediate layer has a Shore D hardness of 50 to 67"

12.     Bridgestone has failed meet it burden of proof to show that the golf balls bearing the side stamp "◄ Pro V1-392 ►" manufactured by Acushnet infringe at least the following limitations of claim 26 of the '791 patent, and claim 24 of the '791 patent from which it depends:

- "said intermediate layer is composed of a resin material which is harder than the cover having a Shore D hardness of 45 to 58 and has a greater hardness than the surface of the elastic core when compared using the same JIS-C hardness scale"

- "said elastic core has a hardness at the center and a hardness at the surface thereof which is greater than the hardness at the center thereof, and a difference in JIS-C hardness of at least 22 between the center and the surface"

13.    Bridgestone has failed meet it burden of proof to show that the golf balls bearing the side stamp "◄● Pro V1x 332 ●►" manufactured by Acushnet infringe at least the following limitations of claim 11 of the '791 patent and claim 1, from which it depends:

- "said intermediate layer is composed of a resin material which is harder than the cover and has a greater hardness than the surface of the elastic core when compared using the same hardness scale"

- "said elastic core has a hardness which gradually increases radially outward from the center to the surface thereof and a difference in JIS-C hardness of at least 22 between the center and the surface"

14.    Bridgestone has failed meet it burden of proof to show that the golf balls bearing the side stamp "◄● Pro V1x 332 ●►" manufactured by Acushnet infringe at least the following limitations of claim 13 of the '791 patent:

- "said intermediate layer is composed of a resin material which is harder than the cover and has a greater hardness than the surface of the elastic core when compared using the same JIS-C hardness scale"

- "said elastic core has a hardness at the center and a hardness at the surface thereof which is greater than the hardness at the center thereof, and a difference in JIS-C hardness of at least 22 between the center and the surface"

15.    Bridgestone has failed meet it burden of proof to show that the golf balls bearing the side stamp "◄● Pro V1x 332 ●►" manufactured by Acushnet infringe at least the following limitations of claim 16 of the '791 patent and claim 13, from which it depends:

- "said intermediate layer is composed of a resin material which is harder than the cover and has a greater hardness than the surface of the elastic core when compared using the same JIS-C hardness scale"

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

BRIDGESTONE SPORTS CO., LTD.  )
and BRIDGESTONE GOLF, INC.,    )
                               )
            Plaintiffs,         )        C.A. No. 05-132 (JJF)
                               )
     v.                         )        REDACTED – PUBLIC VERSION
                               )
ACUSHNET COMPANY,               )
                               )
            Defendant.          )

**BRIDGESTONE'S RESPONSE TO ACUSHNET'S MAY 15, 2007 CITATION OF
SUPPLEMENTAL AUTHORITY AND ITS MOTION FOR LEAVE TO FILE THE
ATTACHED SURREPLY BRIEF IN OPPOSITION TO ACUSHNET'S EMERGENCY
MOTION TO AMEND INVALIDITY EXPERT REPORTS AND TO RESET THE
PRETRIAL AND TRIAL DATES**

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

Jack B. Blumenfeld (#1014)
Leslie A. Polizoti (#4299)
1201 N. Market St.
P.O. Box 1347
Wilmington, DE 19801
(302) 658-9200
*Attorneys for Bridgestone Sports Co., Ltd.
and Bridgestone Golf, Inc.*

OF COUNSEL:

Robert M. Masters
Scott M. Flicker
PAUL, HASTINGS, JANOFSKY & WALKER LLP
875 15th St., N.W.
Washington, DC 20005
(202) 551-1700

Originally Filed: May 16, 2007
Redacted Version Filed: May 22, 2007

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

BRIDGESTONE SPORTS CO., LTD.          )
and BRIDGESTONE GOLF, INC.,           )
                                      )
                Plaintiffs,           )       C.A. No. 05-132 (JJF)
                                      )
        v.                            )       REDACTED – PUBLIC VERSION
                                      )
ACUSHNET COMPANY,                     )
                                      )
                Defendant.            )

**BRIDGESTONE'S RESPONSE TO ACUSHNET'S MAY 15, 2007 CITATION OF
SUPPLEMENTAL AUTHORITY AND ITS MOTION FOR LEAVE TO FILE THE
ATTACHED SURREPLY BRIEF IN OPPOSITION TO
ACUSHNET'S EMERGENCY MOTION TO AMEND INVALIDITY EXPERT
REPORTS AND TO RESET THE PRETRIAL AND TRIAL DATES**

Plaintiffs Bridgestone Sports Co., Ltd. and Bridgestone Golf, Inc. (collectively "Bridgestone") move for leave to file the attached surreply brief in opposition to Acushnet's May 14, 2007 reply brief (D.I. 489) and to respond to Acushnet's May 15, 2007 citation of supplemental authority (D.I. 507). Bridgestone requests leave to file a surreply because Acushnet raised numerous new issues and arguments in its reply brief. For example, even though the Court precluded Acushnet from using certain prior art against Bridgestone's '707 and '791 patents, and from submitting supplemental expert reports, Acushnet argues that the Supreme Court's *KSR* decision justifies Acushnet now being able to come up with new invalidity theories against those two patents and the five other Bridgestone patents in suit and to be able to submit almost unlimited new expert reports. There is no basis for Acushnet to parlay *KSR* into a basis to reopen its invalidity case entirely or as a remedy for its discovery defaults and misconduct.

Acushnet also argues against a first infringement and damages trial, followed by a later validity trial. In doing so, it ignores that this Court already ruled in January 2006 that "this case will be chopped up for trial....But, you know we'll do an infringement trial probably, and then a validity trial, so that the jury can...get its hands around it..." (D.I. 73 at 27).

Acushnet also misrepresents entirely its bifurcation motion and Bridgestone's opposition to it that led to the Court's decision. In doing so, Acushnet makes a baseless judicial estoppel argument. Acushnet also admits that it has no significant non-infringement position with respect to Bridgestone's '707, '791 and '961 patents, even though it has moved for summary judgment of non-infringement on one of them and opposed a motion for summary judgment of infringement on another.

Bridgestone requests leave to file the attached surreply so that it can address the many new arguments made by and positions taken by Acushnet.

Pursuant to D. Del. LR 7.1.1, counsel for Bridgestone certifies that the subject of this motion has been discussed with counsel for Acushnet, and that the parties have been unable to reach agreement; however, counsel for Acushnet advises that it will consent to a short letter response to its May 15, 2007 citation of supplemental authority (D.I. 507). Bridgestone's response to Acushnet's letter is contained in the attached surreply.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Jack B. Blumenfeld*
Jack B. Blumenfeld (#1014)
Leslie A. Polizoti (#4299)
1201 N. Market St.
P.O. Box 1347
Wilmington, DE 19801
(302) 658-9200

*Attorneys for Bridgestone Sports Co., Ltd.*
*and Bridgestone Golf, Inc.*

OF COUNSEL:

Robert M. Masters
Scott M. Flicker
PAUL, HASTINGS, JANOFSKY & WALKER LLP
875 15th St., N.W.
Washington, DC 20005
(202) 551-1700

May 16, 2007

EXHIBIT 1

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| BRIDGESTONE SPORTS CO., LTD. and BRIDGESTONE GOLF, INC., | ) ) ) | |
| Plaintiffs, | ) ) | C.A. No. 05-132 (JJF) |
| v. | ) ) | REDACTED – PUBLIC VERSION |
| ACUSHNET COMPANY, | ) ) | |
| Defendant. | ) ) | |

### BRIDGESTONE'S SURREPLY BRIEF IN OPPOSITION TO ACUSHNET'S EMERGENCY MOTION TO AMEND INVALIDITY EXPERT REPORTS AND TO RESET THE PRETRIAL AND TRIAL DATES

MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Jack B. Blumenfeld (#1014)
Leslie A. Polizoti (#4299)
1201 N. Market St.
P.O. Box 1347
Wilmington, DE 19801
(302) 658-9200

*Attorneys for Bridgestone Sports Co., Ltd.
and Bridgestone Golf, Inc.*

OF COUNSEL:

Robert M. Masters
Scott M. Flicker
PAUL, HASTINGS, JANOFSKY & WALKER LLP
875 15th St., N.W.
Washington, DC 20005
(202) 551-1700

May 16, 2007

i

## TABLE OF CONTENTS

I.   *KSR* DOES NOT JUSTIFY THE "DO OVER" ACUSHNET SEEKS ............................ 1

II.  THE COURT SAID IT WOULD BIFURCATE VALIDITY FROM INFRINGEMENT AND DAMAGES MORE THAN A YEAR AGO ............................ 5

## TABLE OF AUTHORITIES

Cases

*Graham v. John Deere Co. of Kansas City,*
   383 U.S. 1 (1966) ............................................................................................... 2


Statutes

35 U.S.C. § 102 ..................................................................................................... 2

1

Plaintiffs Bridgestone Sports Co., Ltd. and Bridgestone Golf, Inc. (collectively "Bridgestone") submit this surreply in response to Acushnet's May 14, 2007 reply brief (D.I. 489) and May 15, 2007 letter to the Court (D.I. 507). Acushnet overstates the effect of *KSR* on the obviousness analysis and seeks to denigrate the inventions of Bridgestone's patents – as if that were the issue on its motion. *KSR* is not even relevant to Bridgestone's '791 patent, because Acushnet has no prior art defense to it. At the same time, Acushnet as much as admits that it infringes three of Bridgestone's patents, including the '791. Acushnet also opposes a first trial on infringement and damages, followed by a later trial on validity, even though this Court already ruled more than a year ago that there would be a first infringement trial when it ruled on Acushnet's bifurcation motion.

I.    *KSR* DOES NOT JUSTIFY THE "DO OVER" ACUSHNET SEEKS

In its reply brief, Acushnet acknowledges – after more than two years of litigation and court orders about its invalidity disclosures – that it now wants a "do over" – a mulligan – with respect to its obviousness contentions on all seven Bridgestone patents. Acushnet does not seek merely to conform its existing obviousness contentions in its expert reports to *KSR*. It wants to start over entirely, opening up new obviousness contentions limited only to "prior art already identified in the case..." (D.I. 489 at 2) – giving no indication of what or how many obviousness contentions it wants to add. In fact, the "prior art already identified" is far more than the excessive amount that Bridgestone's motions and the Court's Orders reduced. What Acushnet now wants is what it has been seeking to accomplish for months – to postpone the trial in a case pending for over two years, since March 2005 – and to seek to repair its invalidity

case.[1] It is not that Bridgestone "wants to rush to a verdict on any snippet of this case that it can" (D.I. 489 at 2).

Acushnet's justification for its desire to open up its defenses entirely is that *KSR* made a "fundamental" change in the law of obviousness. Indeed, Acushnet uses the word "fundamental" to describe the *KSR* change seven times in the first four pages of its brief, as if repeating it enough times would make it so. It's not. The PTO, for example, issued a Memorandum to its examiners on May 3, 2007 stating that after *KSR*, "it remains necessary to identify the reason why a person of ordinary skill in the art would have combined the prior art elements in the manner claimed" (Ex. A at 2; *see also* Ex. B ("Experts say this statement [from the PTO] shows that the PTO is acknowledging that the TSM test can still be helpful in determining the obviousness of a patent. The PTO is not anticipating nor encouraging a wholesale change in the current test....")). Indeed, *KSR* itself says that to find a claimed combination obvious, there must be "an apparent reasons to combine the known elements in the fashion claimed by the patent at issue" (D.I. 427 at Ex. 1 at 14).

In fact, in *KSR*, the Supreme Court began by reiterating the obviousness analysis it had set forth in *Graham v. John Deere Co. of Kansas City*, 383 U.S. 1 (1966). The Court then "rejected the rigid approach" of "teaching, suggestion, or motivation" ("TSM") adopted by the

---

[1]     Apparently, Acushnet intends to try this anyway, regardless of *KSR*. Its Statement of Intended Proof in its May 2 draft pretrial order sections includes the prior art that was excluded – as well as a lot of art not cited in Acushnet's expert reports. For example, Acushnet wants to prove that "Claim 1 of the '707 patent is invalid under 35 U.S.C. § 102 in light of the Altus Newing Massy golf balls (94092) obtained by Acushnet prior to March 10, 1996" and that "Claims 11, 13, 16, and 26 of the '791 patent are invalid under 35 U.S.C. § 102 in light of United States Patent No. 5,779,563" (Ex. C). Acushnet's exhibit list also contains five opinions of counsel on invalidity that have not been produced.

Federal Circuit, in favor of a more "flexible approach" (D.I. 427, Ex. 1 at 11). The Court made clear that, although the TSM test could be useful, it was not a "rigid rule" (*id.* at 15). The Court also noted that the "factfinder should be aware, of course, of the distortion caused by hindsight bias and must be cautious of arguments reliant upon *ex post* reasoning." *KSR* was not a "fundamental change" in the law of obviousness. Nothing prevented Acushnet from making the arguments it now says it wants to make earlier, when it was required to do so in compliance with the Court's orders.

For example, with respect to Bridgestone's '791 patent, the Court precluded Acushnet from relying on any prior art – so Acushnet has no prior art defense for this patent. *KSR* has no impact on that. With respect to Bridgestone's '707 patent, the Court precluded Acushnet from relying on its main prior art reference for failure to timely disclose it, leaving Acushnet with EP '043 as its primary reference. Acushnet elected not to seek reconsideration of this ruling. But ever since then, Acushnet has been trying to fix the problem it created for itself. Notably, after the Court told it that there could be no supplemental expert reports (which Acushnet told the Special Master was "dicta" (Ex. D at 35)), Acushnet went forward with testing, submitted a supplemental report, and produced an opinion of counsel that it withheld all through discovery. Now Acushnet argues that the jury "deserves to be told" about its new theory of obviousness based on EP '043 (D.I. 489 at 5). This has nothing to do with *KSR*, and everything to do with Acushnet's attempt to use *KSR* as a pretext to a redo its obviousness contentions.

Acushnet had to make its obviousness contentions – for Bridgestone's patents, which Acushnet says are "trivial modifications" (D.I. 489 at 5) – in the time provided by the Court's orders. Although Acushnet was "constrained by the need to comply with Federal Circuit

4

law for appeal purposes" (*id.* at 4) – it certainly would not have chosen the most stringent articulation of the obviousness standard possible. There were numerous cases that support a less rigid TSM test, including the ones cited in *KSR* itself (D.I. 427, Ex. 1 at 12, 14, 18). Acushnet did not have to be "prescient" or "see the future."[2]

Indeed, there are other patent cases in this district that are set for trial this summer, and none of those defendants, to the best of our knowledge, have made any request to re-do expert discovery. The only example that Acushnet points to is a May 11, 2007 transcript in *Lucent Techs. v. Gateway, Inc.*, a patent case pending in the Southern District of California. There, the court allowed supplemental expert discovery so the defendants could "conform their case to the last word of the Supreme Court" (D.I. 507, Tr. at 46). Bridgestone did not dispute in its opening brief, and does not dispute, that the parties should have an opportunity to conform existing obviousness contentions to *KSR* (not, as Acushnet says, to have carte blanche "to revise expert reports on obviousness" (D.I. 489 at 2)). But that is not what Acushnet wants. It wants a do-over.

Acushnet's reply brief provides two examples of the different prior art it seeks to use. One example is EP 043 and the '707 patent, where Acushnet wants the Court now to permit its use of the March 2007 supplemental testing that was already prohibited (D.I. 489 at 5-6). The second example concerns Bridgestone's '791 patent, which Acushnet wants to invalidate by combining the '707 patent with other references. After Bridgestone's motion to preclude,

---

[2]     Acushnet says that the Court stayed the *Power Integrations* case because "there was also a pending reexamination in the PTO" (D.I. 489 at 3 n.3). There is nothing in the Court's order even mentioning that the stay of the validity part of that case – after an infringement and damages verdict – was related to a pending reexamination.

5

Acushnet was left with no prior art invalidity defense for the '791 patent due to its own strategic choices. *KSR* is not a basis to permit Acushnet to undo the result of those choices.

II.    THE COURT SAID IT WOULD BIFURCATE VALIDITY FROM INFRINGEMENT
       AND DAMAGES MORE THAN A YEAR AGO

Acushnet also opposes a first trial on infringement and damages. In doing so, it ignores entirely the fact that this Court already ruled in January 2006 that "this case will be chopped up for trial. And everybody ought to remind me of that when we get there. But, you know we'll do an infringement trial probably, and then a validity trial, so that the jury can . . . get its hands around it, and so I'll have an easier job making evidentiary rulings" (D.I. 73 at 27).

Acushnet also misrepresents entirely what happened on its bifurcation motion that led to that result.   In December 2005, Acushnet moved to bifurcate discovery and trial of liability from damages and willfulness (D.I. 44). Acushnet says that Bridgestone opposed that motion because "bifurcation would prejudice" it (D.I. 489 at 9).  In fact, Bridgestone opposed because Acushnet proposed bifurcation of discovery and trial of liability from damages and willfulness. Thus, Bridgestone argued that it "would be prejudiced by the considerable delay *that would result from separated discovery periods*" (D.I. 55 at 2) (emphasis added).  As for Acushnet's assertion that Bridgestone "claimed that the damages and validity issues were intertwined" (D.I. 489 at 9), Bridgestone similarly cited issues with bifurcating discovery: "commercial success and licensing – issues for which relevant discovery would be withheld under Acushnet's proposed bifurcation – are important secondary considerations that would be relevant to rebut an obviousness allegation" (D.I. 55 at 6).  Right now, discovery (except for willfulness) is complete, so that concern is no longer an issue.

Acushnet correctly states that Bridgestone argued that "the scope of the case did not warrant bifurcation" (D.I. 489 at 9).  The reason, however, was that Bridgestone did not

6

believe that infringement and damages needed to be bifurcated. That is the same position it takes now – infringement and damages should be tried together, followed by a trial on validity.

In fact, Bridgestone's opposition made clear that bifurcation at that time – December 2005, months before even the October 2006 fact discovery cutoff – was premature. Bridgestone argued that "the case is not sufficiently advanced to determine the appropriateness of bifurcation" (D.I. 55 at 9), and explained that this "is an issue that should be addressed at the pretrial conference" (*id.* at 10). There can be no judicial estoppel.

Acushnet's position simply makes no sense. On the one hand, it argues that "the validity and infringement issues are so inextricably intertwined that . . . bifurcation would not be appropriate" (D.I. 489 at 8), although it does not explain why – other than its naked assertion that "[i]t will be simpler, and clearer, for one jury to hear all the issues" (*id.* at 9). On the other hand, Acushnet admits that "on several patents in suit ('707, '791, and '961), Acushnet does not make significant challenges" on infringement (*id.* at 7). So much for "inextricably intertwined" issues.

Acushnet also argues that "trying damages without trying validity could cause the jury to conclude that Acushnet has no defense as to these balls, and could greatly prejudice Acushnet" (D.I. 489 at 8). The same could be said of all of the patent cases where this Court has done what it said it will do here.

Nor will it "be very hard to break out the damages award in the likely event that some or many of the Bridgestone patents are found to be invalid" (D.I. 489 at 8). Bridgestone seeks a reasonable royalty for infringement of seven patents. ███████████████

7

CONCLUSION

For the reasons set forth herein, Acushnet's emergency motion should be denied.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

/s/ Jack B. Blumenfeld
Jack B. Blumenfeld (#1014)
Leslie A. Polizoti (#4299)
1201 N. Market St.
P.O. Box 1347
Wilmington, DE 19801
(302) 658-9200

*Attorneys for Bridgestone Sports Co., Ltd.*
*and Bridgestone Golf, Inc.*

OF COUNSEL:

Robert M. Masters
Scott M. Flicker
PAUL, HASTINGS, JANOFSKY & WALKER LLP
875 15th St., N.W.
Washington, DC 20005
(202) 551-1700

May 16, 2007

---

[3] Acushnet does not argue that its four patents – for which it requests less than $49,000 in damages, and most of which will expire during trial – should be tried with Bridgestone's seven patents.

EXHIBIT A

 UNITED STATES PATENT AND TRADEMARK OFFICE

COMMISSIONER FOR PATENTS
UNITED STATES PATENT AND TRADEMARK OFFICE
P.O. BOX 1450
ALEXANDRIA, VA 22313-1450
www.uspto.gov

# MEMORANDUM

**DATE:**       May 3, 2007

**TO:**         Technology Center Directors

**FROM:**       Margaret A. Focarino
                Deputy Commissioner
                for Patent Operations

**SUBJECT:**    Supreme Court decision on *KSR Int'l. Co., v. Teleflex, Inc.*

The Supreme Court has issued its opinion in *KSR*, regarding the issue of obviousness under 35 U.S.C. § 103(a) when the claim recites a combination of elements of the prior art. *KSR Int'l Co. v. Teleflex, Inc.*, No 04-1350 (U.S. Apr. 30, 2007). A copy of the decision is available at http://www.supremecourtus.gov/opinions/06pdf/04-1350.pdf. The Office is studying the opinion and will issue guidance to the patent examining corps in view of the *KSR* decision in the near future. Until the guidance is issued, the following points should be noted:

(1) The Court reaffirmed the *Graham* factors in the determination of obviousness under 35 U.S.C. § 103(a). The four factual inquiries under *Graham* are:
    (a) determining the scope and contents of the prior art;
    (b) ascertaining the differences between the prior art and the claims in issue;
    (c) resolving the level of ordinary skill in the pertinent art; and
    (d) evaluating evidence of secondary consideration.

*Graham v. John Deere*, 383 U.S. 1, 17-18, 148 USPQ 459, 467 (1966).

(2) The Court did not totally reject the use of "teaching, suggestion, or motivation" as a factor in the obviousness analysis. Rather, the Court recognized that a showing of "teaching, suggestion, or motivation" to combine the prior art to meet the claimed subject matter could provide a helpful insight in determining whether the claimed subject matter is obvious under 35 U.S.C. § 103(a).

(3) The Court rejected a rigid application of the "teaching, suggestion, or motivation" (TSM) test, which required a showing of some teaching, suggestion, or motivation in the prior art that would lead one of ordinary skill in the art to combine the prior art elements in the manner claimed in the application or patent before holding the claimed subject matter to be obvious.

(4) The Court noted that the analysis supporting a rejection under 35 U.S.C. § 103(a) should be made explicit, and that it was "important to identify a reason that would have prompted a person of ordinary skill in the relevant field to combine the [prior art] elements" in the manner claimed. The Court specifically stated:

> Often, it will be necessary . . . to look to interrelated teachings of multiple patents; the effects of demands known to the design community or present in the marketplace; and the background knowledge possessed by a person having ordinary skill in the art, all in order to determine whether there was an **apparent reason** to combine the known elements in the fashion claimed by the patent at issue. To facilitate review, this analysis **should be made explicit.**

*KSR*, slip op. at 14 (emphasis added).

**Therefore, in formulating a rejection under 35 U.S.C. § 103(a) based upon a combination of prior art elements, it remains necessary to identify the reason why a person of ordinary skill in the art would have combined the prior art elements in the manner claimed.**

2

# EXHIBIT B



Portfolio Media, Inc. | 648 Broadway, Suite 200 | New York, NY 10012 | www.law360.com

Phone: +1 212 537 6331 | Fax: +1 212 537 6371 | customerservice@portfoliomedia.com

## PTO Issues Memo On KSR Decision To Examiners

By **Amanda Ernst**, amanda.ernst@portfoliomedia.com

*Friday, May 04, 2007* --- Despite the U.S. Supreme Court's ruling in KSR v. Teleflex, the U.S. Patent and Trademark Office has advised its examiners to not toss out the teaching-suggestion-motivation test altogether.

In a memo sent to technology center directors on Thursday, Deputy Commissioner of Patent Operations Margaret Focarino sent some preliminary guidance to patent examiners regarding KSR. The memo said the PTO is studying the Supreme Court's order and will give further guidance to its examiners in the near future.

Focarino also used the memo to remind the staff to continue to look for specific reasons why prior art would be combined into a new patent before rejecting applications for obviousness.

Focarino used the memo to highlight the important aspects of the Supreme Court's decision, which came down April 30. She emphasized that the Court reaffirmed the factors in determining obviousness laid out in Graham v. John Deere, which was the standard before the U.S. Court of Appeals for the Federal Circuit began implementing its TSM test.

The deputy commissioner's memo also mentioned that although the Court did not completely rule out the TSM test, it rejected the rigid application of it. Lastly, Focarino emphasized that the Supreme Court stated a rejection under 35 USC § 103(a) should be based on an apparent reason why prior art was combined.

"In formulating a rejection under 35 USC § 103(a) based upon a combination of prior art elements, it remains necessary to identify the reason why a person of ordinary skill in the art would have combined the prior art elements in the manner claimed," the memo said.

Experts say this statement shows that the PTO is acknowledging that the TSM test can still be helpful in determining the obviousness of a patent. The PTO is not anticipating nor encouraging a wholesale change in the current test, said Ben Davidson, a trademark, copyright and patent litigator at Howrey LLP and a former patent examiner.

"The PTO is saying that there's no drastic change in the Supreme Court's decision," Davidson said. "They don't want to rock the boat too much. Patent examiners will still need to explain why a patent should be rejected based on obviousness."

---

All Content Copyright 2006, Portfolio Media, Inc.



Those within the patent community will be keeping a close eye on the PTO's future actions regarding the KSR decision.

"The patent office does not want to be overly strict and not issue patents that are deserving of patent protection. And it doesn't want to discourage people from filing patents because it's not going to be worthwhile," Davidson said. "The office will need to give examiners some objective way to determine obviousness."

In its unanimous decision Monday, the Supreme Court more or less disposed of the TSM test as it is currently viewed and used by the U.S. Patent and Trademark Office, patent attorneys and district courts.

In its decision, the Supreme Court rejected the "rigid approach of the Court of Appeals" regarding the TSM test. The Court found that the appellate court had erred by not looking at the broader problems that someone in the field faces, and by not looking for broader solutions within prior art, possible even inventions used for other purposes.

The Supreme Court further said the appellate court had erred by finding that a patent couldn't be proved obvious if the combination of prior art was "obvious to try." Lastly, the Federal Circuit "drew the wrong conclusion from the risk of courts and patent examiners falling prey to hindsight bias," the decision said.

The Supreme Court said that inventors should be allowed to consider prior inventions when creating new works. However, the combination of the prior art must create a novel combination in order to be patentable.

"In many fields it may be that there is little discussion of obvious techniques or combinations, and it often may be the case that market demand, rather than scientific literature, will drive design trends," the decision said. "Granting patent protection to advances that would occur in the ordinary course without real innovation retards progress and may, in the case of patents combining previously known elements, deprive prior inventions of their value or utility."

On Monday, Jon Dudas, the undersecretary of commerce for intellectual property and the PTO's director, acknowledged that patent examiners would be affected by the ruling.

"The decision gives our examiners more flexibility to use their considerable technical skills to reject obvious changes to existing technology," Dudas said.

All Content Copyright 2006, Portfolio Media, Inc.

EXHIBIT C

## EXHIBIT 4
## STATEMENT OF INTENDED PROOF

### I.    BRIDGESTONE'S PATENTS

#### A.    U.S. Patent No. 5,252,652

1.    The Asserted Claims are invalid because they are anticipated under 35 U.S.C. § 102, in light of at least the Fujii Japanese Kokai Publication No. 02-092378.

2.    The Asserted Claims are invalid because they are obvious under 35 U.S.C. §103, in light of at least the following prior art references:

- Fujii Japanese Kokai Publication No. 02-092378
- U.S. Patent No. 4,556,220
- H. Fries et al, Mastication of Rubber (1981)
- U.S. Patent No. 4,722,977
- Knowledge of one of ordinary skill in the art
- Other art identified by Acushnet in its discovery responses

3.    In proving obviousness, Acushnet will provide evidence to determine the scope and content of the prior art, ascertain the differences between the prior art and the claims, and resolve the level of ordinary skill in the art.

4.    None of Acushnet's Accused Products practice any of the Asserted Claims of the '652 patent because they lack one or more claim element including, but not limited to, the following:

- "a rubber composition containing 100 parts by weight of a base rubber selected from the group consisting of polybutadiene rubber, natural rubber, polyisoprene rubber and styrene-butadiene rubber"
- "about 25 to about 40 parts by weight of a zinc or magnesium salt of an unsaturated fatty acid having 3 to 8 carbon atoms"

14

- "about 0.05 to about 2 parts by weight of a sulfur compound selected from the group consisting of pentachlorothiophenol, 4-t-tubyl-o-thiocresol, 4-t-butyl-p-thiocresol, 2-benzamidothiophenol, thiobenzoic acid, and zinc salts thereof"

5.    Bridgestone cannot prove that the '652 patent is entitled to rely on its Japanese foreign filing date for priority purposes.

6.    The addition of new matter during the prosecution of the '652 patent results in the '652 patent having a priority date of May 10, 1990.

7.    Bridgestone is barred from attempting to prove infringement under the doctrine of equivalents because of prosecution history estoppel.

### B.    U.S. Patent No. 5,553,852

1.    The Asserted Claims are invalid because they are anticipated under 35 U.S.C. § 102, in light of at least the U.S. Patent No. 4,431,193 to Nesbitt issued on February 14, 1984, based on an application filed August 25, 1981.

2.    The Asserted Claims are invalid because they are obvious under 35 U.S.C. §103, in light of at least the following prior art references:

- U.S. Patent No. 4,431,193
- U.S. Patent No. 5,314,187
- The Wilson Ultra Tour Balata 90 Golf Ball manufactured and sold by Wilson Sporting Goods and obtained by Acushnet prior to July 1993 and stored under log number 93007.
- Knowledge of one of ordinary skill in the art
- Other art identified by Acushnet in its discovery responses

3.    In proving obviousness, Acushnet will provide evidence to determine the scope and content of the prior art, ascertain the differences between the prior art and the claims, and resolve the level of ordinary skill in the art.

4.    None of Acushnet's Accused Products practice any of the Asserted Claims of the '852 patent because they lack one or more claim element including, but not limited to, the following:

- "a three-piece solid golf ball"
- "said center core having a diameter of at least 29 mm"
- "said intermediate layer having a thickness of at least 1 mm"
- "said cover having a thickness of 1 to 3 mm"

5.    Further, the inventor expressly disavowed golf balls, such as the Accused Products, during the prosecution of the '852 patent.

6.    Bridgestone cannot prove that the '852 patent is entitled to rely on its Japanese foreign filing date for priority purposes.

7.    Allowing Bridgestone to pursue infringement under the doctrine of equivalents would result in Bridgestone improperly recapturing intentionally excluded subject matter.  For at least this reason, Bridgestone should be precluded from pursuing infringement under the doctrine of equivalents.

## C.    U.S. Patent No. 6,634,961

1.    The Asserted Claim is invalid because it is anticipated under 35 U.S.C. § 102, in light of at least U.S. Patent 6,612,940 to Nesbitt issued on September 2, 2003, based on an application filed on November 9, 2000 claiming priority to a provisional application filed on January 22, 1999.

2.    The Asserted Claim is invalid because it is obvious under 35 U.S.C. §103, in light of at least the following prior art references:

- U.S. Patent No. 6,612,940
- U.S. Patent No. 6,486,261
- U.S. Patent No. 5,508,350
- U.S. Patent No. 6,486,261

16

- U.S. Patent No. 4,683,257
- U.S. Patent No. 4,556,200
- U.S. Patent No. 5,252,652
- U.S. Patent No. 6,162,135
- U.S. Patent No. 6,975,131
- Knowledge of one of ordinary skill in the art
- Other art identified by Acushnet in its discovery responses

3.    In proving obviousness, Acushnet will provide evidence to determine the scope and content of the prior art, ascertain the differences between the prior art and the claims, and resolve the level of ordinary skill in the art.

4.    Bridgestone has failed to meet its burden of proof that Acushnet's Accused Product practices the Asserted Claim of the '961 patent.

5.    Bridgestone Dr. Coughlin's assumption that the core formulations described in the manufacturing guidelines remained constant over time was so contrary to the record that his opinion cannot be credited leaving Bridgestone with no evidence of infringement for any particular time period.

6.    Acushnet's current Accused Product does not practice the Asserted Claim of the '961 patent because it does not contain a rubber composition comprising 100 parts by weight of a base rubber composed of 20 to 100 wt % of a polybutadiene synthesized using a rare earth catalyst.

7.    For substantial periods of time, Acushnet's Accused Product did not practice the Asserted Claim of the '961 patent because it did not contain a rubber composition comprising 100 parts by weight of a base rubber composed of 20 to 100 wt % of a polybutadiene synthesized using a rare earth catalyst.

17

D.     U.S. Patent No. 5,743,817

1.     Bridgestone is barred from attempting to prove infringement under the doctrine of equivalents because of prosecution history estoppel

2.     None of Acushnet's NXT Tour golf balls bearing the "◄NXT•Tour►" sidestamp infringe claim 1 of the '817 patent because they lack one or more claim elements, including but not limited to the following:

- a core with a distortion of 2.9 to 4.0 mm under a load of 100 kg;

- a cover consisting of an ionomer resin as a resin component;

- a cover thickness of 1.3 to 1.8 mm; and

- a cover with a Shore D hardness of up to 60.

3.     None of Acushnet's NXT Tour golf balls bearing the "◄NXT Tour►" sidestamp infringe claim 1 of the '817 patent, because they lack one or more claim elements, including but not limited to the following:

- a core with a distortion of 2.9 to 4.0 mm under a load of 100 kg;

- a cover consisting of an ionomer resin as a resin component;

- a cover thickness of 1.3 to 1.8 mm; and

- a cover with a Shore D hardness of up to 60.

4.     None of Acushnet's NXT Tour golf balls bearing the "◄NXT-Tour►" sidestamp infringe claim 1 of the '817 patent, because they lack one or more claim elements, including but not limited to the following:

- a core with a distortion of 2.9 to 4.0 mm under a load of 100 kg;

- a cover consisting of an ionomer resin as a resin component; and

- a cover with a Shore D hardness of up to 60.

5.     None of Acushnet's DT So/Lo golf balls bearing the "◄DT So/Lo►" sidestamp infringe claim 1 of the '817 patent, because they lack one or more claim elements, including but not limited to the following:

- a core with a distortion of 2.9 to 4.0 mm under a load of 100 kg;

18

- a cover consisting of an ionomer resin as a resin component; and
- a cover with a Shore D hardness of up to 60.

6.    None of Acushnet's DT So/Lo golf balls bearing the "DT So/Lo" sidestamp infringe claim 1 of the '817 patent, because they lack one or more claim elements, including but not limited to the following:

- a core with a distortion of 2.9 to 4.0 mm under a load of 100 kg;
- a cover consisting of an ionomer resin as a resin component; and
- a cover with a Shore D hardness of up to 60.

7.    None of Acushnet's PTS So/Lo golf balls bearing the "◄PTS So/Lo►" sidestamp infringe claim 1 of the '817 patent, because they lack one or more claim elements, including but not limited to the following:

- a core with a distortion of 2.9 to 4.0 mm under a load of 100 kg;
- a cover consisting of an ionomer resin as a resin component; and
- a cover with a Shore D hardness of up to 60.

8.    None of Acushnet's PTS So/Lo golf balls bearing the "PTS So/Lo" sidestamp infringe claim 1 of the '817 patent, because they lack one or more claim elements, including but not limited to the following:

- a core with a distortion of 2.9 to 4.0 mm under a load of 100 kg;
- a cover consisting of an ionomer resin as a resin component; and
- a cover with a Shore D hardness of up to 60.

9.    None of Acushnet's Pinnacle Exception golf balls bearing the "Pinnacle Exception" sidestamp infringe claim 1 of the '817 patent, because they lack one or more claim elements, including but not limited to the following:

- a core with a distortion of 2.9 to 4.0 mm under a load of 100 kg;
- a cover consisting of an ionomer resin as a resin component; and
- a cover with a Shore D hardness of up to 60.

10.    None of Acushnet's Pinnacle Exception golf balls bearing the "Exception" sidestamp infringe claim 1 of the '817 patent, because they lack one or more claim elements, including but not limited to the following:

- a core with a distortion of 2.9 to 4.0 mm under a load of 100 kg;
- a cover consisting of an ionomer resin as a resin component; and
- a cover with a Shore D hardness of up to 60.

11.    Bridgestone is estopped from attempting to argue infringement under the doctrine of equivalents for at least the following limitations:

- a core with a distortion of 2.9 to 4.0 mm under a load of 100 kg; and
- a cover consisting of an ionomer resin as a resin component.

12.    The '817 patent is anticipated under 35 U.S.C. § 102 by JP '673.

13.    The Asserted Claim is invalid because it is obvious under 35 U.S.C. §103, in light of at least the following prior art references:

- JP '673
- Knowledge of one of ordinary skill in the art
- Other art identified by Acushnet in its discovery responses

14.    In proving obviousness, Acushnet will provide evidence to determine the scope and content of the prior art, ascertain the differences between the prior art and the claims, and resolve the level of ordinary skill in the art.

### E.    U.S. Patent No. 5,782,707

1.    Bridgestone has failed to prove by a preponderance of the evidence that the golf balls bearing the side stamp "Pro V1 392" manufactured by Acushnet at some time between 2000 and 2002 infringe the following limitations of claim 1 of the '707 patent:

- "the core center hardness is up to 75 degrees"
- "the core surface hardness is up to 85 degrees"

- "the core surface hardness is higher than the core center hardness by 8 to 20 degrees"
- "the intermediate layer hardness is higher than the core surface hardness by at least 5 degrees"

2.    Bridgestone has failed to prove by a preponderance of the evidence that the golf balls bearing the side stamp "Pro V1 392 (stretched)" manufactured by Acushnet at some time between 2000 and 2002 infringe the following limitation of claim 1 of the '707 patent:

- "the core center hardness is up to 75 degrees"
- "the core surface hardness is up to 85 degrees"
- "the core surface hardness is higher than the core center hardness by 8 to 20 degrees"
- "the intermediate layer hardness is higher than the core surface hardness by at least 5 degrees"

3.    Bridgestone has failed to prove by a preponderance of the evidence that the golf balls bearing the side stamp "◄Pro V1●392►" manufactured by Acushnet at some time between 2000 and 2002 infringe the following limitations of claim 1 of the '707 patent:

- "the core center hardness is up to 75 degrees"
- "the core surface hardness is up to 85 degrees"
- "the core surface hardness is higher than the core center hardness by 8 to 20 degrees"
- "the intermediate layer hardness is higher than the core surface hardness by at least 5 degrees"

4.    Claim 1 of the '707 patent is invalid under 35 U.S.C. § 102 in light of the Altus Newing Massy golf balls (94092) obtained by Acushnet prior to March 10, 1996.

5.      Claim 1 of the '707 patent is invalid under 35 U.S.C. § 103 in light of the pertinent prior art, including:

- The knowledge of one of ordinary skill in the art

- European Patent Application EP 0 633 043 A1

6.      In proving obviousness, Acushnet will provide evidence to determine the scope and content of the prior art, ascertain the differences between the prior art and the claims, and resolve the level of ordinary skill in the art.

7.      Claim 1 of the '707 patent is invalid under 35 U.S.C. § 112.

### F.      U.S. Patent No. 5,803,834

1.      Claim 1 of the '834 patent is invalid because it is anticipated under 35 U.S.C. § 102 in light of the following:

- Precept EV Extra Spin golf balls (96001) obtained by Acushnet prior to February 27, 1996

- Wilson Ultra Competition golf balls (93049) obtained by Acushnet prior to February 27, 1996

2.      Claim 1 of the '834 patent is invalid because it is obvious under 35 U.S.C. § 103 in light of at least the following prior art references:

- Knowledge of one of ordinary skill in the art

- Other art identified by Acushnet in its discovery responses

3.      In proving obviousness, Acushnet will provide evidence to determine the scope and content of the prior art, ascertain the differences between the prior art and the claims, and resolve the level of ordinary skill in the art.

4.      Claim 1 of the '834 patent is invalid under 35 U.S.C. § 112.

5.      Bridgestone has failed to prove by a preponderance of the evidence that the golf balls bearing the side stamp "◄NXT►" manufactured by Acushnet infringe at least the following limitations of claim 1 of the '834 patent:

22

- "a surface hardness is up to 85 degrees"
- "a center hardness is lower than the surface hardness by not less than 8 to less than 20 degrees"
- "a hardness within 5 mm inside the core surface is up to 8 degrees lower than the surface hardness"
- "said cover has a hardness which is higher than the surface hardness of the core by 1 to 15 degrees"

6.     Bridgestone has failed to prove by a preponderance of the evidence that the golf balls bearing the side stamp "◄-NXT-►" manufactured by Acushnet infringe at least the following limitations of claim 1 of the '834 patent:

- "a surface hardness is up to 85 degrees"
- "a center hardness is lower than the surface hardness by not less than 8 to less than 20 degrees"
- "a hardness within 5 mm inside the core surface is up to 8 degrees lower than the surface hardness"
- "said cover has a hardness which is higher than the surface hardness of the core by 1 to 15 degrees"

7.     Bridgestone has failed to prove by a preponderance of the evidence that the golf balls bearing the side stamp "DT So/Lo" manufactured by Acushnet infringe at least the following limitations of claim 1 of the '834 patent:

- "a surface hardness is up to 85 degrees"
- "a center hardness is lower than the surface hardness by not less than 8 to less than 20 degrees"
- "a hardness within 5 mm inside the core surface is up to 8 degrees lower than the surface hardness"
- "said cover has a hardness which is higher than the surface hardness of the core by 1 to 15 degrees"

23

8.    Bridgestone has failed to prove by a preponderance of the evidence that the golf balls bearing the side stamp "PTS So/Lo" manufactured by Acushnet infringe at least the following limitations of claim 1 of the '834 patent:

- "a surface hardness is up to 85 degrees"
- "a center hardness is lower than the surface hardness by not less than 8 to less than 20 degrees"
- "a hardness within 5 mm inside the core surface is up to 8 degrees lower than the surface hardness"
- "said cover has a hardness which is higher than the surface hardness of the core by 1 to 15 degrees"

9.    Bridgestone has failed to prove by a preponderance of the evidence that the golf balls bearing the side stamp "◄DT So/Lo►" manufactured by Acushnet infringe at least the following limitations of claim 1 of the '834 patent:

- "a surface hardness is up to 85 degrees"
- "a center hardness is lower than the surface hardness by not less than 8 to less than 20 degrees"
- "a hardness within 5 mm inside the core surface is up to 8 degrees lower than the surface hardness"
- "said cover has a hardness which is higher than the surface hardness of the core by 1 to 15 degrees"

10.    Bridgestone has failed to prove by a preponderance of the evidence that the golf balls bearing the side stamp "◄PTS So/Lo►" manufactured by Acushnet infringe at least the following limitations of claim 1 of the '834 patent:

- "a surface hardness is up to 85 degrees"
- "a center hardness is lower than the surface hardness by not less than 8 to less than 20 degrees"

24

- "a hardness within 5 mm inside the core surface is up to 8 degrees lower than the surface hardness"
- "said cover has a hardness which is higher than the surface hardness of the core by 1 to 15 degrees"

11.　　Bridgestone has failed to prove by a preponderance of the evidence that the golf balls bearing the side stamp "Exception airfoil logo" manufactured by Acushnet infringe at least the following limitations of claim 1 of the '834 patent:

- "a surface hardness is up to 85 degrees"
- "a center hardness is lower than the surface hardness by not less than 8 to less than 20 degrees"
- "a hardness within 5 mm inside the core surface is up to 8 degrees lower than the surface hardness"
- "said cover has a hardness which is higher than the surface hardness of the core by 1 to 15 degrees"

12.　　Bridgestone has failed to prove by a preponderance of the evidence that the golf balls bearing the side stamp "Exception" manufactured by Acushnet infringe at least the following limitations of claim 1 of the '834 patent:

- "a surface hardness is up to 85 degrees"
- "a center hardness is lower than the surface hardness by not less than 8 to less than 20 degrees"
- "a hardness within 5 mm inside the core surface is up to 8 degrees lower than the surface hardness"
- "said cover has a hardness which is higher than the surface hardness of the core by 1 to 15 degrees"

13.　　Bridgestone is barred from attempting to prove infringement under the doctrine of equivalents because of prosecution history estoppel.

25

### G.    U.S. Patent No. 6,679,791

1.    Claims 11, 13, 16, and 26 of the '791 patent are invalid under 35 U.S.C. § 102 in light of United States Patent No. 5,779,563.

2.    Claims 11, 13, 16, and 26 of the '791 patent are invalid because it is obvious under 35 U.S.C. § 103 in light of at least the following prior art references:

- Knowledge of one of ordinary skill in the art
- United States Patent No. 6,174,247
- United States Patent No. 6,390,935
- United States Patent No. 5,830,085
- United States Patent No.6,386,993
- Other art identified by Acushnet in its discovery responses.

3.    In proving obviousness, Acushnet will provide evidence to determine the scope and content of the prior art, ascertain the differences between the prior art and the claims, and resolve the level of ordinary skill in the art.

4.    Claims 11, 13, 16, and 26 of the '791 patent are invalid under 35 U.S.C. § 112.

5.    Bridgestone has failed meet it burden of proof to show that the golf balls bearing the side stamp "◄● Pro V1 392 ●►" manufactured by Acushnet infringe at least the following limitations of claim 11 of the '791 patent and claim 1, from which it depends:

- "said intermediate layer is composed of a resin material which is harder than the cover and has a greater hardness than the surface of the elastic core when compared using the same hardness scale"
- "said elastic core has a hardness which gradually increases radially outward from the center to the surface thereof and a difference in JIS-C hardness of at least 22 between the center and the surface"

6.      Bridgestone has failed meet it burden of proof to show that the golf balls bearing the side stamp "◄● Pro V1 392 ●►" manufactured by Acushnet infringe at least the following limitations of claim 13 of the '791 patent:

- "said intermediate layer is composed of a resin material which is harder than the cover and has a greater hardness than the surface of the elastic core when compared using the same JIS-C hardness scale"

- "said elastic core has a hardness at the center and a hardness at the surface thereof which is greater than the hardness at the center thereof, and a difference in JIS-C hardness of at least 22 between the center and the surface"

7.      Bridgestone has failed meet it burden of proof to show that the golf balls bearing the side stamp "◄● Pro V1 392 ●►" manufactured by Acushnet infringe at least the following limitations of claim 16 of the '791 patent and claim 13, from which it depends:

- "said intermediate layer is composed of a resin material which is harder than the cover and has a greater hardness than the surface of the elastic core when compared using the same JIS-C hardness scale"

- "said elastic core has a hardness at the center and a hardness at the surface thereof which is greater than the hardness at the center thereof, and a difference in JIS-C hardness of at least 22 between the center and the surface"

- "the intermediate layer has a Shore D hardness of 50 to 67"

8.      Bridgestone has failed meet it burden of proof to show that the golf balls bearing the side stamp "◄● Pro V1 392 ●►" manufactured by Acushnet infringe at least the following limitations of claim 26 of the '791 patent, and claim 24 of the '791 patent from which it depends:

- "said intermediate layer is composed of a resin material which is harder than the cover having a Shore D hardness of 45 to 58 and has a greater hardness than the surface of the elastic core when compared using the same JIS-C hardness scale"

- "said elastic core has a hardness at the center and a hardness at the surface thereof which is greater than the hardness at the center thereof, and a difference in JIS-C hardness of at least 22 between the center and the surface"

9.     Bridgestone has failed meet it burden of proof to show that the golf balls bearing the side stamp "◄ Pro V1-392 ►" manufactured by Acushnet infringe at least the following limitations of claim 11 of the '791 patent and claim 1, from which it depends:

- "said intermediate layer is composed of a resin material which is harder than the cover and has a greater hardness than the surface of the elastic core when compared using the same hardness scale"

- "said elastic core has a hardness which gradually increases radially outward from the center to the surface thereof and a difference in JIS-C hardness of at least 22 between the center and the surface"

10.     Bridgestone has failed meet it burden of proof to show that the golf balls bearing the side stamp "◄ Pro V1-392 ►" manufactured by Acushnet infringe at least the following limitations of claim 13 of the '791 patent:

- "said intermediate layer is composed of a resin material which is harder than the cover and has a greater hardness than the surface of the elastic core when compared using the same JIS-C hardness scale"

- "said elastic core has a hardness at the center and a hardness at the surface thereof which is greater than the hardness at the center thereof,

and a difference in JIS-C hardness of at least 22 between the center and the surface"

11.    Bridgestone has failed meet it burden of proof to show that the golf balls bearing the side stamp "◄ Pro V1-392 ►" manufactured by Acushnet infringe at least the following limitations of claim 16 of the '791 patent and claim 13, from which it depends:

- "said intermediate layer is composed of a resin material which is harder than the cover and has a greater hardness than the surface of the elastic core when compared using the same JIS-C hardness scale"

- "said elastic core has a hardness at the center and a hardness at the surface thereof which is greater than the hardness at the center thereof, and a difference in JIS-C hardness of at least 22 between the center and the surface"

- "the intermediate layer has a Shore D hardness of 50 to 67"

12.    Bridgestone has failed meet it burden of proof to show that the golf balls bearing the side stamp "◄ Pro V1-392 ►" manufactured by Acushnet infringe at least the following limitations of claim 26 of the '791 patent, and claim 24 of the '791 patent from which it depends:

- "said intermediate layer is composed of a resin material which is harder than the cover having a Shore D hardness of 45 to 58 and has a greater hardness than the surface of the elastic core when compared using the same JIS-C hardness scale"

- "said elastic core has a hardness at the center and a hardness at the surface thereof which is greater than the hardness at the center thereof, and a difference in JIS-C hardness of at least 22 between the center and the surface"

13.     Bridgestone has failed meet it burden of proof to show that the golf balls bearing the side stamp "◄● Pro V1x 332 ●►" manufactured by Acushnet infringe at least the following limitations of claim 11 of the '791 patent and claim 1, from which it depends:

- "said intermediate layer is composed of a resin material which is harder than the cover and has a greater hardness than the surface of the elastic core when compared using the same hardness scale"

- "said elastic core has a hardness which gradually increases radially outward from the center to the surface thereof and a difference in JIS-C hardness of at least 22 between the center and the surface"

14.     Bridgestone has failed meet it burden of proof to show that the golf balls bearing the side stamp "◄● Pro V1x 332 ●►" manufactured by Acushnet infringe at least the following limitations of claim 13 of the '791 patent:

- "said intermediate layer is composed of a resin material which is harder than the cover and has a greater hardness than the surface of the elastic core when compared using the same JIS-C hardness scale"

- "said elastic core has a hardness at the center and a hardness at the surface thereof which is greater than the hardness at the center thereof, and a difference in JIS-C hardness of at least 22 between the center and the surface"

15.     Bridgestone has failed meet it burden of proof to show that the golf balls bearing the side stamp "◄● Pro V1x 332 ●►" manufactured by Acushnet infringe at least the following limitations of claim 16 of the '791 patent and claim 13, from which it depends:

- "said intermediate layer is composed of a resin material which is harder than the cover and has a greater hardness than the surface of the elastic core when compared using the same JIS-C hardness scale"

30

- "said elastic core has a hardness at the center and a hardness at the surface thereof which is greater than the hardness at the center thereof, and a difference in JIS-C hardness of at least 22 between the center and the surface"

- "the intermediate layer has a Shore D hardness of 50 to 67"

16.    Bridgestone has failed meet it burden of proof to show that the golf balls bearing the side stamp "◀● Pro V1x 332 ●▶" manufactured by Acushnet infringe at least the following limitations of claim 26 of the '791 patent, and claim 24 of the '791 patent from which it depends:

- "said intermediate layer is composed of a resin material which is harder than the cover having a Shore D hardness of 45 to 58 and has a greater hardness than the surface of the elastic core when compared using the same JIS-C hardness scale"

- "said elastic core has a hardness at the center and a hardness at the surface thereof which is greater than the hardness at the center thereof, and a difference in JIS-C hardness of at least 22 between the center and the surface"

17.    Bridgestone has failed meet it burden of proof to show that the golf balls bearing the side stamp "◀ Pro V1x-332 ▶" manufactured by Acushnet infringe at least the following limitations of claim 11 of the '791 patent and claim 1, from which it depends:

- "said intermediate layer is composed of a resin material which is harder than the cover and has a greater hardness than the surface of the elastic core when compared using the same hardness scale"

- "said elastic core has a hardness which gradually increases radially outward from the center to the surface thereof and a difference in JIS-C hardness of at least 22 between the center and the surface"

31

18.    Bridgestone has failed meet it burden of proof to show that the golf balls bearing the side stamp "◄ Pro V1x-332 ►" manufactured by Acushnet infringe at least the following limitations of claim 13 of the '791 patent:

- "said intermediate layer is composed of a resin material which is harder than the cover and has a greater hardness than the surface of the elastic core when compared using the same JIS-C hardness scale"

- "said elastic core has a hardness at the center and a hardness at the surface thereof which is greater than the hardness at the center thereof, and a difference in JIS-C hardness of at least 22 between the center and the surface"

19.    Bridgestone has failed meet it burden of proof to show that the golf balls bearing the side stamp "◄ Pro V1x-332 ►" manufactured by Acushnet infringe at least the following limitations of claim 16 of the '791 patent and claim 13, from which it depends:

- "said intermediate layer is composed of a resin material which is harder than the cover and has a greater hardness than the surface of the elastic core when compared using the same JIS-C hardness scale"

- "said elastic core has a hardness at the center and a hardness at the surface thereof which is greater than the hardness at the center thereof, and a difference in JIS-C hardness of at least 22 between the center and the surface"

- "the intermediate layer has a Shore D hardness of 50 to 67"

20.    Bridgestone has failed meet it burden of proof to show that the golf balls bearing the side stamp "◄ Pro V1x-332 ►" manufactured by Acushnet infringe at least the following limitations of claim 26 of the '791 patent, and claim 24 of the '791 patent from which it depends:

32

- "said intermediate layer is composed of a resin material which is harder than the cover having a Shore D hardness of 45 to 58 and has a greater hardness than the surface of the elastic core when compared using the same JIS-C hardness scale"

- "said elastic core has a hardness at the center and a hardness at the surface thereof which is greater than the hardness at the center thereof, and a difference in JIS-C hardness of at least 22 between the center and the surface"

21.     Bridgestone is barred from attempting to prove infringement under the doctrine of equivalents.

### H.     Damages

1.     Bridgestone's damages claim based on an alleged reasonable royalty of $146.5 million, generated by applying between 7.0 and 8.5 percent to report Acushnet worldwide dollar sales of alleged infringing golf balls, is grossly inflated and unsupported.

2.     Bridgestone cannot prove by a preponderance of the evidence that it is entitled to this in damages.  In particular, Mr. Jarosz's opinion related to the likely outcome of the hypothetical negotiation between Bridgestone and Acushnet is unreliable, the wrong analysis for this industry, and speculative guesswork.  It is further flawed in assuming that the Bridgestone patents-in-suit are valid and infringed, which they are not.

3.     Assuming that Acushnet infringes any of the Bridgestone patents, if valid, the most likely result of a hypothetical negotiation between Bridgestone and Acushnet with respect to the Bridgestone patents would have been a non-exclusive license involving a lump-sum royalty payment by Acushnet to Bridgestone of $1,487,555 at or about the time leading up to July 2000.

4.  Although less likely, another possible outcome of this negotiation would be a lump-sum payment by Acushnet in the amount of $8,597,285. The available evidence, in fact, suggests that the outcome of such a negotiation may well have generated lower royalty rates and resulting damage calculations.

## ACUSHNET PATENTS

### A.  U.S. Patent No. 6,818,705

1.  The Bridgestone Tour B330 golf ball infringes claim 4 of the '705 patent.

2.  The Precept U-Tri Extra Distance golf ball infringes claim 4 of the '705 patent.

3.  The Precept U-Tri Extra Spin golf ball infringes claim 4 of the '705 patent.

4.  The Nike One Black golf ball infringes claim 4 of the '705 patent.

5.  The Nike One Platinum golf ball infringes claim 4 of the '705 patent.

6.  The Nike One Gold golf ball infringes claim 4 of the '705 patent.

7.  The Nike One TW golf ball infringes claim 4 of the '705 patent.

8.  Acushnet will rebut Bridgestone's claim that the '705 patent is invalid under 35 U.S.C. § 102.

9.  Acushnet will rebut Bridgestone's claim that the '705 patent is invalid under 35 U.S.C. § 103.

10. Acushnet will rebut Bridgestone's claim that the '705 patent is invalid under 35 U.S.C. § 112.

### B.  U.S. Patent No. 4,729,861

1.  The Precept U-Tri Tour golf ball infringes claim 1 of the '861 patent.

2.  The Precept Laddie golf ball infringes claim 1 of the '861 patent.

3.  The Bridgestone Tour B300 golf ball infringes claim 1 of the '861 patent.

4.  Acushnet will rebut Bridgestone's claim that the '861 patent is invalid under 35 U.S.C. § 102.

5.  Acushnet will rebut Bridgestone's claim that the '861 patent is invalid under 35 U.S.C. § 103.

6.  Acushnet will rebut Bridgestone's claim that the '861 patent is invalid under 35 U.S.C. § 112.

### C.  U.S. Patent No. 4,936,587

1.  The Precept U-Tri Tour golf ball infringes claim 1 of the '587 patent

2.  The Precept Laddie golf ball infringes claim 1 of the '587 patent.

3.  The Bridgestone Tour B300 golf ball infringes claim 1 of the '587 patent.

4.  The Precept U-Tri Tour golf ball infringes claim 26 of the '587 patent.

5.  The Bridgestone Tour B300 golf ball infringes claim 26 of the '587 patent.

6.  Acushnet will rebut Bridgestone's claim that the '587 patent is invalid under 35 U.S.C. § 102.

7.  Acushnet will rebut Bridgestone's claim that the '587 patent is invalid under 35 U.S.C. § 103.

8.  Acushnet will rebut Bridgestone's claim that the '587 patent is invalid under 35 U.S.C. § 112.

### D.  U.S. Patent No. 5,080,367

1.  The Precept U-Tri Tour golf ball infringes claim 1 of the '367 patent.

2.  The Precept U-Tri Tour golf ball infringes claim 1 of the '367 patent.

3.  The Precept Laddie golf ball infringes claim 1 of the '367 patent.

4.  The Bridgestone Tour B300 golf ball infringes claim 1 of the '367 patent.

5.  Acushnet will rebut Bridgestone's claim that the '367 patent is invalid under 35 U.S.C. § 102.

6.      Acushnet will rebut Bridgestone's claim that the '367 patent is invalid under 35 U.S.C. § 103.

7.      Acushnet will rebut Bridgestone's claim that the '367 patent is invalid under 35 U.S.C. § 112.

### E.     Damages

1.      Acushnet intends to prove at trial that Bridgestone's infringement of the '705 and '861, '587 and '367 patents has damaged Acushnet, and that it is entitled to a reasonably royalty in the form of a lump-sum payment, plus pre-judgment and post-judgment interest and costs as fixed by the Court, pursuant to 35 U.S.C. § 284 and 28 U.S.C. § 1961.

2.      Acushnet intends to prove at trial that Bridgestone's infringement of the '705 and '861, '587 and '367 patents has damaged Acushnet, and that it is entitled to a reasonably royalty in the form of a lump-sum payment, plus pre-judgment and post-judgment interest and costs as fixed by the Court, pursuant to 35 U.S.C. § 284 and 28 U.S.C. § 1961.

3.      Acushnet intends to prove that the most likely result of a hypothetical negotiation between Bridgestone and Acushnet with respect to '861, '587 and '367 patents would have resulted in a lump-sum payment by Bridgestone to Acushnet of $46,520 at or about the time leading up to January 2002, and that the most likely outcome of a hypothetical negotiation concerning the '705 patent would have resulted in a lump-sum payment by Bridgestone to Acushnet of $3,334 at or about the time leading up to November 2004.

4.      Acushnet will also demonstrate that it is entitled to a permanent injunction against Bridgestone, preventing Bridgestone from further infringing the '705 patent.

# EXHIBIT D

Page 1

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

BRIDGESTONE SPORTS CO., LTD. and )
BRIDGESTONE GOLF, INC.,          )
                                 )
                Plaintiffs,      )
                                 )    Civil Action
        v.                       )    No. 05-132
                                 )      (JJF)
ACUSHNET COMPANY,                )
                                 )
                Defendant.       )

        Special Master Hearing taken at the law
offices of Morris, Nichols, Arsht & Tunnell,
1201 North Market Street, 17th Floor, Wilmington,
Delaware, beginning at 10:00 a.m. on Monday, May 7,
2007, before Kathleen White Palmer, Registered Merit
Reporter and Notary Public.

BEFORE:  THE HONORABLE LOUIS C. BECHTLE

APPEARANCES:

        JACK C. BLUMENFELD, ESQUIRE
        LESLIE A. POLIZOTI, ESQUIRE
        MORRIS, NICHOLS, ARSHT & TUNNELL
           1201 North Market Street - 17th Floor
           Wilmington, Delaware  19899-1347
                    -and-
        ROBERT M. MASTERS, ESQUIRE
        BRANDON M. WHITE, ESQUIRE
        PAUL HASTINGS JANOFSKY & WALKER LLP
           875 15th Street, NW
           Washington, D.C.   20005
           for the Plaintiffs
-----------------------------------------------------
        WILCOX & FETZER
   1330 King Street - Wilmington, Delaware 19801
              (302) 655-0477

            www.wilfet.com

## Page 34

1  other data that they are going to want to bring in
2  with all the cores that they did retain and use that
3  versus our statement where we don't have the ability
4  to go look and see how favorable it was to us in terms
5  of the hardness difference.
6      SPECIAL MASTER BECHTLE:  Well, maybe the
7  bottom line should be nobody testifies about any of
8  the tests.  It's just the conclusion that there were
9  tests made and three did and three didn't, period,
10  without any embellishment of what all those tests
11  were.
12      I'm trying to find out why that wouldn't,
13  from an evidentiary viewpoint, satisfy Bridgestone.
14  Four tests were convened, one showed this and three
15  showed that.
16      MR. MASTERS:  The other thing, Your Honor,
17  is that these came in March 7th.  They were due
18  January 16th.  And that is a theme that will be
19  throughout this day, is the lateness of everything.
20      SPECIAL MASTER BECHTLE:  Well, so
21  supplement issues just dominates this whole thing,
22  quite frankly, because if there was no supplement,
23  it's out there; right?  If that's what the Judge
24  concludes.

## Page 35

1      MR. MASTERS:  Judge, our response -- I'm
2  sorry.
3      SPECIAL MASTER BECHTLE:  Maybe it's up to
4  the Court of Appeals.  The Judge says, here are my
5  reasons for it and they're sound.  My discretion.
6  That's it.  No.  I mean, that's it.
7      MR. LAVELLE:  I do think on this
8  supplementation question that it's probably worth
9  reading his order, that we asked for reconsideration
10  of his order, excluding some evidence.
11      And we also asked him, if you are going to
12  exclude evidence, let us supplement this report as to
13  a particular piece of prior art.  And he said, no, you
14  can't supplement as to this piece of prior art.
15      And he then goes on to say, and what I
16  think you'll conclude is his dicta, that it's just too
17  late in the day to allow for further supplementation.
18      Now, I'm not saying that it's not a serious
19  comment that has to be taken seriously.
20      SPECIAL MASTER BECHTLE:  Sure.
21      MR. LAVELLE:  But I think if we had
22  Judge Farnan here today, he would have to tell you
23  that he hadn't foreseen either of these two
24  circumstances.

## Page 36

1      SPECIAL MASTER BECHTLE:  I don't know what
2  to do about that.  You are on a track here where you
3  are meeting these various litigation deadlines.  It
4  just doesn't kind of go on and on.  Here is something
5  we just read something last night, Judge, here's
6  something you ought to know about this case.  There
7  comes a time when the guillotine comes down, so to
8  speak.
9      MR. LAVELLE:  Sure.  There has to be an end
10  at some point.
11      SPECIAL MASTER BECHTLE:  See, we are in a
12  process.  This can go on for years.  But there has to
13  be a process.  And it ends up to kind of be a
14  compromise of what might be ideal.  And I think we are
15  in that process.
16      And, you know, I don't think the fact that
17  Judge Farnan was slightly, I'd say, informal about his
18  comments and observations.  I think that's kind of his
19  style of genuineness to communicate with lawyers,
20  let's go, let's get going.  I think he means it,
21  though.  And some judges do it differently.
22      So we are in a process and he is
23  functioning in a process and things are happening that
24  compromise that process, or so it seems to be.  Where

## Page 37

1  do we go?  That seems to me to be a factor here.
2      MR. LAVELLE:  Sure.  I don't mean you
3  should disregard this or that, you shouldn't take this
4  seriously and we shouldn't take it seriously.  Of
5  course we should.
6      All I really am saying, though, is that the
7  kind of things that happened here, some additional
8  testing that was disclosed to the other side before
9  the expert took his deposition or closing a loop that
10  was just left open in the case of the '817 patent,
11  those are not unheard of things in large, substantial
12  patent infringement litigation.
13      SPECIAL MASTER BECHTLE:  Okay.  I think
14  within limits, it limits, if you will, tidying up
15  something different than a substantial supplement to
16  an expert's report.  That's what we are saying and
17  that's kind of where we are.
18      I think we have your views.
19      MR. MASTERS:  One last --
20      SPECIAL MASTER BECHTLE:  Yes.
21      MR. MASTERS:  The initial report of
22  Dr. Felker on invalidity was January 16th.
23  Bridgestone had to file its responsive rebuttal report
24  February 20th on this issue.  These cores came out

10 (Pages 34 to 37)

# EXHIBIT E

## FULLY REDACTED

## CERTIFICATE OF SERVICE

I certify that on May 16, 2007 I electronically filed the foregoing with the Clerk of the Court using CM/ECF, which will send notification of such filing(s) to Richard L. Horwitz and David E. Moore.

I further certify that I caused copies to be served upon the following on May 16, 2007 in the manner indicated:

### BY E-MAIL & HAND

Richard L. Horwitz, Esquire
POTTER ANDERSON & CORROON LLP
1313 N. Market Street
Wilmington, DE 19801

### BY E-MAIL & FEDERAL EXPRESS

Joseph P. Lavelle, Esquire
HOWREY LLP
1299 Pennsylvania Avenue, NW
Washington, DC 20004


*/s/ Jack B. Blumenfeld*
Jack B. Blumenfeld (#1014)
MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Wilmington, DE 19801
(302) 658-9200
jblumenfeld@mnat.com

## CERTIFICATE OF SERVICE

I certify that on May 22, 2007 I electronically filed the foregoing with the Clerk of the Court using CM/ECF, which will send notification of such filing(s) to Richard L. Horwitz and David E. Moore.

I further certify that I caused copies to be served upon the following on May 22, 2007 in the manner indicated:

### BY E-MAIL & HAND

Richard L. Horwitz, Esquire
POTTER ANDERSON & CORROON LLP
1313 N. Market Street
Wilmington, DE  19801

### BY E-MAIL & FEDERAL EXPRESS

Joseph P. Lavelle, Esquire
HOWREY LLP
1299 Pennsylvania Avenue, NW
Washington, DC  20004


*/s/ Leslie A. Polizoti*
Leslie A. Polizoti (#4299)
MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Wilmington, DE  19801
(302) 658-9200
lpolizoti@mnat.com