IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| BRIDGESTONE SPORTS CO., LTD. and BRIDGESTONE GOLF, INC., | ) ) ) |
| Plaintiffs, | ) ) C.A. No. 05-132 (JJF) |
| v. | ) ) REDACTED – PUBLIC VERSION |
| ACUSHNET COMPANY, | ) ) |
| Defendant. | ) ) |

**BRIDGESTONE'S REPLY IN SUPPORT OF ITS MOTION TO EXCLUDE EXPERT TESTIMONY FROM MR. JEFFREY DALTON**

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

Jack B. Blumenfeld (#1014)
Leslie A. Polizoti (#4299)
1201 N. Market Street, P.O. Box 1347
Wilmington, DE 19801
(302) 658-9200
*Attorneys for Bridgestone Sports Co., Ltd.
and Bridgestone Golf, Inc.*

OF COUNSEL:

Robert M. Masters
Scott M. Flicker
PAUL, HASTINGS, JANOFSKY & WALKER LLP
875 15th St., N.W.
Washington, DC 20005
(202) 551-1700

Original Filed: May 18, 2007
Redacted Version Filed: May 22, 2007

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| BRIDGESTONE SPORTS CO., LTD.<br>and BRIDGESTONE GOLF, INC., ) | |
| ) | |
| Plaintiffs, ) | C.A. No. 05-132 (JJF) |
| ) | |
| v. ) | REDACTED – PUBLIC VERSION |
| ) | |
| ACUSHNET COMPANY, ) | |
| ) | |
| Defendant. ) | |

**BRIDGESTONE'S REPLY IN SUPPORT OF ITS MOTION TO EXCLUDE EXPERT TESTIMONY FROM MR. JEFFREY DALTON**

Let's start with what is not in dispute: (1) Mr. Dalton did not even recognize the documents appended to his own sworn declaration, (2) Mr. Dalton did not prepare his declaration (his lawyers did), (3) Mr. Dalton did not meaningfully review his declaration, (4) Mr. Dalton does not consider himself an expert on either the Mesabi or Kronos Richardson systems, and (5) the declaration is based on a cherry-picked selection of data chosen by trial counsel. Although Mr. Dalton may be knowledgeable about certain aspects of golf ball manufacturing at Acushnet, Mesabi is not one of them.[1] Indeed, he only recently learned about the Mesabi system and was unaware of how it was used at Acushnet, during his several days of Rule 30(b)(6) testimony on ball construction. Acushnet is offering up Mr. Dalton as an expert to introduce facts into

---

[1] [REDACTED]

evidence that Acushnet intentionally withheld during discovery. The Dalton Declaration is unreliable and neither Mr. Dalton nor any other witness should be permitted to offer testimony as to its contents.

I. THIS MOTION IS TO EXCLUDE TESTIMONY

Acushnet attempts to recast Bridgestone's motion as a rehashing of issues pending before the Special Master. This is simply incorrect. Certainly, the Mesabi data should be excluded in its entirety (because along with most of what it considers to be the relevant documents, Acushnet failed to produce this data during discovery (and has yet to produce it *in toto*)) and it made material misrepresentations of fact about the Mesabi data during discovery) but that is not the basis of this motion. This motion seeks to exclude any expert testimony of Mr. Dalton that is based on his declaration and to prevent others from adopting his declaration or offering similar testimony based on this unreliable document.

A. Mr. Dalton Did Not Recognize The Documents In His Own Declaration.

Mr. Dalton was repeatedly unable to identify documents attached to his declaration. In fact, in numerous instances, Mr. Dalton testified that he had <u>never</u> seen some of the documents attached to his declaration before they were shown to him at his deposition and he could not explain what they were used for or the information contained therein (*see, e.g.*, D.I. 452 at Ex. 1 at 63:13-65:15; 124:8-20; 125:17-126:16; 272:15-275:14). When asked if a document was a printout from the Mix Vision system (*i.e.*, Mesabi), Mr. Dalton responded (*id.* at Ex. 1 at 63:22-64:5 (emphasis added)):

[redacted]



When Mr. Dalton cannot identify the documents attached to his own declaration, his testimony about them cannot be valuable or have any probative value.

B.　The Declaration Is Based On Cherry-Picked Data

It is undisputed that the Dalton declaration was created based on a much larger data set – one that has never been produced to Bridgestone. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ The rest of the data, Acushnet argues, is irrelevant and too burdensome to produce. Bridgestone is entitled to see the entire data set so that it can determine for itself just how relevant and accurate it is. Acushnet has not produced it – and the consequence – as the Third Circuit has repeatedly held – is that expert testimony based on cherry-picked information is unreliable and should be excluded. *In re TMI Litigation*, 193 F.3d 613 (3d Cir. 1999); *Montgomery County v. Microvote Corp.*, 320 F.3d 440 (3d Cir. 2003). No witness should be permitted to testify about the Dalton Declaration.

Acushnet chastises Bridgestone for attempting to keep out "100% accurate" data (D.I. 501 at 3). It argues that Bridgestone's position should be dismissed out of hand because "Bridgestone points to nothing from the depositions of Messrs. Gajic and Elliott to discredit the

3

information in the summary charts" (*id.* at 9). The standard for excluding testimony based on intentionally withheld data is not whether the party who does not have the data can prove that it is wrong.

This entire dispute arises because of Acushnet's casual approach to its discovery obligations in the face of Bridgestone's repeated and persistent attempts to obtain this exact "100% accurate" information contained in the Dalton declaration. And Acushnet continues with this approach to its discovery obligations and to the Court's orders during expert discovery by continuing to refuse to produce all of the data. Testimony is not admissible simply because Acushnet's refusal to produce the underlying data prevents Bridgestone from effectively testing the data – this is the very reason to keep it out.

Acushnet's story is that Bridgestone refused to inspect the Mesabi system – but it ignores its earlier, contradictory statements about Acushnet's weigh-feed systems, including Mesabi and Kronos Richardson. Acushnet represented that it would be "too burdensome" and would take 1000 hours to get the recipes out of Mesabi. Apparently it wasn't, and it didn't. Acushnet represented that Mesabi was cumulative of documents it had already produced. Apparently it isn't. Acushnet represented that the best place to find a chronology of core recipes is in the manufacturing guidelines and change notices. Apparently that too is wrong.

    C.    Mr. Dalton's Declaration Was Prepared By Acushnet's Outside Counsel And Was Not Meaningfully Reviewed By Mr. Dalton

Mr. Dalton did not prepare his declaration or select the documents and tables attached to it; ███████████████

████████████████████████████████████████

4

███ Why is Mr. Dalton the declarant when he knows little about this data or its use at Acushnet? This is the epitome of unreliable testimony.

    D.    **Mr. Dalton Does Not Consider Himself An "Expert" On Mesabi Or A Kronos Richardson**

Mr. Dalton admits that he is not an expert an Mesabi or Kronos Richardson (D.I. 452 at Ex. 1 at 19:16-18) and now so does Acushnet (D.I. 501 at 1). Mr. Dalton should not be permitted to offer expert testimony on Mesabi when both he and Acushnet admit that he is not one.

    II.    **ACUSHNET FAILS TO ADDRESS THE "CUMULATIVE" NATURE OF THIS TESTIMONY**

According to Acushnet, the Mesabi and Kronos Richardson data is unnecessary because it is cumulative of the data Acushnet elected to produce (Ex. 2, 9/6/06 ltr, Seal to White) – that is the very reason Acushnet refused to produce it to Bridgestone despite repeated requests and Court orders (which are apparently nothing more than "*dicta*" anyway) (Ex. 3, Tr. from 5/8/07 Hearing at 35). The question remains: why are the Court, the Special Master and the parties spending so much time, effort and money fighting over this issue if the Mesabi data is cumulative of documents Acushnet actually produced?

## CONCLUSION

Bridgestone requests that the Court grant Bridgestone's motion.

    MORRIS, NICHOLS, ARSHT & TUNNELL LLP

    */s/ Leslie A. Polizoti*

    Jack B. Blumenfeld (#1014)
    Leslie A. Polizoti (#4299)
    1201 N. Market Street, P.O. Box 1347
    Wilmington, DE 19801
    (302) 658-9200
    *Attorneys for Bridgestone Sports Co., Ltd.*
    *and Bridgestone Golf, Inc.*

OF COUNSEL:

Robert M. Masters
Scott M. Flicker
PAUL, HASTINGS, JANOFSKY & WALKER LLP
875 15th St., N.W.
Washington, DC 20005
(202) 551-1700

May 14, 2007

# EXHIBIT 1

## FULLY REDACTED

# EXHIBIT 2

## FULLY REDACTED

# EXHIBIT 3

Page 1

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

BRIDGESTONE SPORTS CO., LTD. and  )
BRIDGESTONE GOLF, INC.,            )
                                   )
                      Plaintiffs,  )
                                   )  Civil Action
            v.                     )  No. 05-132
                                   )      (JJF)
ACUSHNET COMPANY,                  )
                                   )
                      Defendant.   )

       Special Master Hearing taken at the law offices of Morris, Nichols, Arsht & Tunnell, 1201 North Market Street, 17th Floor, Wilmington, Delaware, beginning at 10:00 a.m. on Monday, May 7, 2007, before Kathleen White Palmer, Registered Merit Reporter and Notary Public.

BEFORE:  THE HONORABLE LOUIS C. BECHTLE

APPEARANCES:

       JACK C. BLUMENFELD, ESQUIRE
       LESLIE A. POLIZOTI, ESQUIRE
       MORRIS, NICHOLS, ARSHT & TUNNELL
         1201 North Market Street - 17th Floor
         Wilmington, Delaware  19899-1347
               -and-
       ROBERT M. MASTERS, ESQUIRE
       BRANDON M. WHITE, ESQUIRE
       PAUL HASTINGS JANOFSKY & WALKER LLP
         875 15th Street, NW
         Washington, D.C.   20005
         for the Plaintiffs

---

WILCOX & FETZER
1330 King Street - Wilmington, Delaware 19801
(302) 655-0477

www.wilfet.com

**Page 34**

1  other data that they are going to want to bring in
2  with all the cores that they did retain and use that
3  versus our statement where we don't have the ability
4  to go look and see how favorable it was to us in terms
5  of the hardness difference.
6      SPECIAL MASTER BECHTLE: Well, maybe the
7  bottom line should be nobody testifies about any of
8  the tests. It's just the conclusion that there were
9  tests made and three did and three didn't, period,
10 without any embellishment of what all those tests
11 were.
12     I'm trying to find out why that wouldn't,
13 from an evidentiary viewpoint, satisfy Bridgestone.
14 Four tests were convened, one showed this and three
15 showed that.
16     MR. MASTERS: The other thing, Your Honor,
17 is that these came in March 7th. They were due
18 January 16th. And that is a theme that will be
19 throughout this day, is the lateness of everything.
20     SPECIAL MASTER BECHTLE: Well, so
21 supplement issues just dominates this whole thing,
22 quite frankly, because if there was no supplement,
23 it's out there; right? If that's what the Judge
24 concludes.

**Page 35**

1      MR. MASTERS: Judge, our response -- I'm
2  sorry.
3      SPECIAL MASTER BECHTLE: Maybe it's up to
4  the Court of Appeals. The Judge says, here are my
5  reasons for it and they're sound. My discretion.
6  That's it. No. I mean, that's it.
7      MR. LAVELLE: I do think on this
8  supplementation question that it's probably worth
9  reading his order, that we asked for reconsideration
10 of his order, excluding some evidence.
11     And we also asked him, if you are going to
12 exclude evidence, let us supplement this report as to
13 a particular piece of prior art. And he said, no, you
14 can't supplement as to this piece of prior art.
15     And he then goes on to say, and what I
16 think you'll conclude is his dicta, that it's just too
17 late in the day to allow for further supplementation.
18     Now, I'm not saying that it's not a serious
19 comment that has to be taken seriously.
20     SPECIAL MASTER BECHTLE: Sure.
21     MR. LAVELLE: But I think if we had
22 Judge Farnan here today, he would have to tell you
23 that he hadn't foreseen either of these two
24 circumstances.

**Page 36**

1      SPECIAL MASTER BECHTLE: I don't know what
2  to do about that. You are on a track here where you
3  are meeting these various litigation deadlines. It
4  just doesn't kind of go on and on. Here is something
5  we just read something last night, Judge, here's
6  something you ought to know about this case. There
7  comes a time when the guillotine comes down, so to
8  speak.
9      MR. LAVELLE: Sure. There has to be an end
10 at some point.
11     SPECIAL MASTER BECHTLE: See, we are in a
12 process. This can go on for years. But there has to
13 be a process. And it ends up to kind of be a
14 compromise of what might be ideal. And I think we are
15 in that process.
16     And, you know, I don't think the fact that
17 Judge Farnan was slightly, I'd say, informal about his
18 comments and observations. I think that's kind of his
19 style of genuineness to communicate with lawyers,
20 let's go, let's get going. I think he means it,
21 though. And some judges do it differently.
22     So we are in a process and he is
23 functioning in a process and things are happening that
24 compromise that process, or so it seems to be. Where

**Page 37**

1  do we go? That seems to me to be a factor here.
2      MR. LAVELLE: Sure. I don't mean you
3  should disregard this or that, you shouldn't take this
4  seriously and we shouldn't take it seriously. Of
5  course we should.
6      All I really am saying, though, is that the
7  kind of things that happened here, some additional
8  testing that was disclosed to the other side before
9  the expert took his deposition or closing a loop that
10 was just left open in the case of the '817 patent,
11 those are not unheard of things in large, substantial
12 patent infringement litigation.
13     SPECIAL MASTER BECHTLE: Okay. I think
14 within limits, it limits, if you will, tidying up
15 something different than a substantial supplement to
16 an expert's report. That's what we are saying and
17 that's kind of where we are.
18     I think we have your views.
19     MR. MASTERS: One last --
20     SPECIAL MASTER BECHTLE: Yes.
21     MR. MASTERS: The initial report of
22 Dr. Felker on invalidity was January 16th.
23 Bridgestone had to file its responsive rebuttal report
24 February 20th on this issue. These cores came out

CERTIFICATE OF SERVICE

I certify that on May 18, 2007 I electronically filed the foregoing with the Clerk of the Court using CM/ECF, which will send notification of such filing(s) to Richard L. Horwitz and David E. Moore.

I further certify that I caused copies to be served upon the following on May 18, 2007 in the manner indicated:

**BY E-MAIL & HAND**

Richard L. Horwitz, Esquire
POTTER ANDERSON & CORROON LLP
1313 N. Market Street
Wilmington, DE 19801

**BY E-MAIL & FEDERAL EXPRESS**

Joseph P. Lavelle, Esquire
HOWREY LLP
1299 Pennsylvania Avenue, NW
Washington, DC 20004

/s/ Leslie A. Polizoti
Leslie A. Polizoti (#4299)
MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Wilmington, DE 19801
(302) 658-9200
lpolizoti@mnat.com

## CERTIFICATE OF SERVICE

I certify that on May 22, 2007 I electronically filed the foregoing with the Clerk of the Court using CM/ECF, which will send notification of such filing(s) to Richard L. Horwitz and David E. Moore.

I further certify that I caused copies to be served upon the following on May 22, 2007 in the manner indicated:

### BY E-MAIL & HAND

Richard L. Horwitz, Esquire
POTTER ANDERSON & CORROON LLP
1313 N. Market Street
Wilmington, DE 19801

### BY E-MAIL & FEDERAL EXPRESS

Joseph P. Lavelle, Esquire
HOWREY LLP
1299 Pennsylvania Avenue, NW
Washington, DC 20004


/s/ Leslie A. Polizoti
Leslie A. Polizoti (#4299)
MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Wilmington, DE 19801
(302) 658-9200
lpolizoti@mnat.com