IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| BRIDGESTONE SPORTS CO., LTD. | ) | |
| and BRIDGESTONE GOLF, INC., | ) | |
| | ) | |
| Plaintiffs, | ) | C.A. No. 05-132 (JJF) |
| v. | ) | |
| | ) | |
| ACUSHNET COMPANY, | ) | |
| | ) | |
| Defendant. | ) | |

## JOINT PROPOSED FINAL JURY INSTRUCTIONS

The parties jointly submit these proposed final jury instructions.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP       POTTER ANDERSON & CORROON LLP

*/s/ Leslie A. Polizoti*                                */s/ David E. Moore*

---

Jack B. Blumenfeld (#1014)
Leslie A. Polizoti (#4299)
1201 North Market Street
Wilmington, DE 19801
(302) 658-9200
jblumenfeld@mnat.com
lpolizoti@mnat.com
*Attorneys for Bridgestone Sports Co., Ltd.*
*and Bridgestone Golf, Inc.*

Richard L. Horwitz (#2246)
David E. Moore (#3983)
Hercules Plaza, 6th Floor
1313 North Market Street
P.O. Box 951
Wilmington, DE 19899
(302) 984-6000
rhorwitz@potteranderson.com
dmoore@potteranderson.com
*Attorneys for Acushnet Company*

OF COUNSEL:
Robert M. Masters
Scott M. Flicker
Terrance J. Wikberg
Brandon M. White
PAUL, HASTINGS, JANOFSKY & WALKER
LLP
875 15th St., N.W.
Washington, DC 20005
(202) 551-1700

OF COUNSEL:
Alan M. Grimaldi
Joseph P. Lavelle
Kenneth W. Donnelly
Renée L. Stasio
HOWREY LLP
1299 Pennsylvania Avenue, N.W.
Washington, DC 20004
(202) 783-0800

## TABLE OF CONTENTS

1.0 GENERAL INSTRUCTIONS

**1.1    INTRODUCTION [AGREED]**

Members of the jury, now it is time for me to instruct you about the law that you must follow in deciding this case.

I will start by explaining your duties and the general rules that apply in every civil case.

Then I will explain some rules that you must use in evaluating particular testimony and evidence.

Then I will explain the positions of the parties and the law you will apply in this case.

And last, I will explain the rules that you must follow during your deliberations in the jury room, and the possible verdicts that you may return.

Please listen very carefully to everything I say.

## 1.2    JURORS' DUTIES [AGREED]

You have two main duties as jurors.  The first one is to decide what the facts are from the evidence that you saw and heard here in court.  Deciding what the facts are is your job, not mine, and nothing that I have said or done during this trial was meant to influence your decision about the facts in any way.

Your second duty is to take the law that I give you, apply it to the facts, and decide, under the appropriate burden of proof, which party should prevail on any given issue.  It is my job to instruct you about the law, and you are bound by the oath that you took at the beginning of the trial to follow the instructions that I give you, even if you personally disagree with them.  This includes the instructions that I gave you before and during the trial, and these instructions.  All the instructions are important, and you should consider them together as a whole.

Perform these duties fairly.  Do not let any bias, sympathy or prejudice that you may feel toward one side or the other influence your decision in any way.

## 1.3    BURDENS OF PROOF [AGREED]

This is a civil case involving Bridgestone Sports Co., Ltd. and Bridgestone Golf, Inc. (collectively, "Bridgestone") and Acushnet Company ("Acushnet"). The party asserting patent infringement has the burden of proving patent infringement by what is called a preponderance of the evidence. That means that the patent owner has to produce evidence which, when considered in light of all of the facts, leads you to believe that what the patent owner alleges is more likely true than not. To put it differently, if you were to put the patent owner's and the accused party's evidence on the opposite sides of a scale, the evidence supporting the patent owner's allegations would have to make the scales tip somewhat on its side.

In this case, each side contends that the other side's patents are invalid. Under the law, a patent, however, is presumed to be valid. Accordingly, the accused party has the burden of proving that the patents-in-suit are invalid by clear and convincing evidence. Clear and convincing evidence is evidence that produces an abiding conviction that the truth of a factual contention is highly probable. Proof by clear and convincing evidence is thus a higher burden than proof by a preponderance of the evidence.

Those of you who are familiar with criminal cases will have heard the term "proof beyond a reasonable doubt." That burden does not apply in a civil case and you should, therefore, put it out of your mind in considering whether or not Bridgestone and Acushnet have met their respective burdens of proof.

## 1.4     EVIDENCE DEFINED [AGREED]

You must make your decision based only on the evidence that you saw and heard here in court.  Do not let rumors, suspicions, or anything else that you may have seen or heard outside of court influence your decision in any way.

The evidence in this case includes only what the witnesses said while they were testifying under oath, the exhibits that I allowed into evidence, the stipulations that the lawyers agreed to, and the facts that I have judicially noticed.

Nothing else is evidence.  The lawyers' statements and arguments are not evidence.  Their questions and objections are not evidence.  My legal rulings are not evidence. Any of my comments and questions are not evidence.

During the trial I may have not let you hear the answers to some of the questions that the lawyers asked.  I also may have ruled that you could not see some of the exhibits that the lawyers wanted you to see.  And sometimes I may have ordered you to disregard things that you saw or heard, or I struck things from the record.  You must completely ignore all of these things. Do not even think about them.  Do not speculate about what a witness might have said or what an exhibit might have shown.  These things are not evidence, and you are bound by your oath not to let them influence your decision in any way.

Make your decision based only on the evidence, as I have defined it here, and nothing else.

**1.5    CONSIDERATION OF EVIDENCE [AGREED]**

You should use your common sense in weighing the evidence. Consider it in light of your everyday experience with people and events, and give it whatever weight you believe it deserves. If your experience tells you that certain evidence reasonably leads to a conclusion, you are free to reach that conclusion.

## 1.6    USE OF NOTES [AGREED]

You may use notes taken during trial to assist your memory.  Remember that your notes are for your own personal use.  They are not to be given or read to anyone else.  Do not use your notes, or any other juror's notes, as authority to persuade fellow jurors.  Your notes are not evidence, and they are by no means a complete outline of the proceedings or a list of the highlights of the trial.  Some testimony that is considered unimportant at the time presented, and thus not written down, may take on greater importance later on in the trial in light of all the evidence presented.  Your notes are valuable only as a way to refresh your memory.  Your memory is what you should be relying on when it comes time to deliberate and render your verdict in this case.

## 1.7     DIRECT AND CIRCUMSTANTIAL EVIDENCE [AGREED]

Now, some of you may have heard the terms "direct evidence" and "circumstantial evidence."

Direct evidence is simply evidence like the testimony of an eyewitness which, if you believe it, directly proves a fact. If a witness testified that he saw it raining outside, and you believed him, that would be direct evidence that it was raining.

Circumstantial evidence is simply a chain of circumstances that indirectly proves a fact. If someone walked into the courtroom wearing a raincoat covered with drops of water and carrying a wet umbrella, that would be circumstantial evidence from which you could conclude that it was raining.

It is your job to decide how much weight to give the direct and circumstantial evidence. The law makes no distinction between the weight that you should give to either one, nor does it say that one is any better evidence than the other. You should consider all the evidence, both direct and circumstantial, and give it whatever weight you believe it deserves.

**1.8    CREDIBILITY OF WITNESSES[1] [DISPUTED – Bridgestone's Proposed Instruction]**

In determining the weight to give to the testimony of a witness, you should ask yourself whether there was evidence tending to prove that the witness testified falsely about some important fact, or, whether there was evidence that at some other time the witness said or did something, or failed to say or do something that was different from the testimony he gave at the trial.

You should remember that a simple mistake by a witness does not necessarily mean that the witness was not telling the truth. People may tend to forget some things or remember other things inaccurately. If a witness has made a misstatement, you must consider whether it was simply an innocent lapse of memory or an intentional falsehood, and that may depend upon whether it concerns an important fact or an unimportant detail.

---

[1]    From the 1993 Model Instructions at 1.7; *see also Affymetrix* Instructions at 1.7.

**1.8     CREDIBILITY OF WITNESSES[2] [DISPUTED – Acushnet's Proposed Instruction]**

In determining the weight to give to the testimony of a witness, you should ask yourself whether there was evidence tending to prove that the witness testified falsely about some important fact, or, whether there was evidence that at some other time the witness said or did something, or failed to say or do something that was different from the testimony he gave at the trial.

You are the sole judges of the credibility of the witnesses.  You may believe everything a witness says or only part of it or none of it.  If a witness is not credible as to a certain matter, you may, if you so choose, decide that the witness is not credible as to other matters.  If a witness testifies that he/she does not remember a fact or event, you may use your own judgment to decide whether you believe the witness is being truthful.  In deciding what to believe, you may consider a number of factors, including the following:

(1) the opportunity and ability of the witness to see or hear or know the things the witness testifies to;

(2) the quality of the witness's understanding and memory;

(3) the witness's manner while testifying;

(4) whether the witness has an interest in the outcome of the case or any motive, bias or prejudice;

(5) whether the witness is contradicted by anything the witness said or wrote before trial or by other evidence;

---

[2] Adapted from Del. Model Instructions at 1.7; Modern Federal Jury Instructions-Civil THIRD CIRCUIT at 1.7.

(6) how reasonable the witness's testimony is when considered in the light of other evidence that you believe; and

(7) any other factors that bear on believability.

**1.9    NUMBER OF WITNESSES [3] [DISPUTED – Bridgestone's Proposed Instruction; Acushnet would not include this instruction.]**

One more point about the witnesses. Sometimes jurors wonder if the number of witnesses who testified makes any difference.

Do not make any decisions based only on the number of witnesses who testified. What is more important is how believable the witnesses were, and how much weight you think their testimony deserves. Concentrate on that, not the numbers.

---

[3]    From the 1993 Model Instructions at 1.8; *see also Affymetrix* Instructions at 1.8.

**1.10    EXPERT WITNESSES[4] [DISPUTED – Bridgestone's Proposed Instruction]**

When scientific, technical or other specialized knowledge may be helpful to the jury, a person who has special knowledge, skill, education, training or experience in that technical field, called an expert witness, is permitted to state an opinion on those matters.

The value of this kind of testimony depends upon the qualifications and skill of the witness, the source of the witness's information, and the reasons supplied for any opinions given. You should consider this kind of testimony like all other testimony you hear and weigh it by the same tests. However, as with any other witness, you are not required to accept any expert's opinions. It will be up to you to decide whether to rely upon them.

---

[4]    From *Affymetrix* Instructions at 1.9.

**1.10     EXPERT WITNESSES[5] [DISPUTED – Acushnet's Proposed Instruction]**

When knowledge of technical subject matter may be helpful to the jury, a person who has special training or experience in that technical field, called an expert witness, is permitted to state his opinion on those technical matters.  However, you are not required to accept that opinion.  As with any other witness, it is up to you to decide whether to rely upon it.

---

[5] Del. Model Instructions at 1.9.

## 1.11    DEPOSITION TESTIMONY [AGREED]

During the trial, certain testimony was presented to you by the reading of a deposition transcript or the playing of video tape excerpts from a deposition.  This testimony is entitled to the same consideration you would give it had the witness personally appeared in court.

**1.12   DEMONSTRATIVE EXHIBITS [DISPUTED – Bridgestone's Proposed Instruction; Acushnet would not include this instruction.]**

During the course of the trial, you have seen many exhibits. Many of these exhibits were admitted as evidence. You will have these admitted exhibits in the jury room for your deliberations. The remainder of the exhibits (including charts and animations) were offered to help illustrate the testimony of various witnesses. These illustrative exhibits, called demonstrative exhibits, have not been admitted, are not evidence, and should not be considered as evidence. Rather it is the underlying testimony of the witness that you heard and the documents that were admitted into evidence when you saw the demonstrative exhibits that is the evidence in the case.

## 2.0    THE PARTIES AND THEIR CONTENTIONS

**2.1    THE PARTIES [AGREED, except Acushnet would delete the underlined and bracketed words]**

Bridgestone is the owner of U.S. Patent Nos. 5,252,652; 5,553,852; 5,743,817; 5,782,707; 5,803,834; 6,634,961; and 6,679,791.  You may have heard these patents referred to as the "Bridgestone patents-in-suit," or by their last three numbers.

Acushnet has made, marketed and sold a number of golf balls under its Titleist and Pinnacle brands, including the Pro V1, Pro V1x, Pro V1 Star, NXT, NXT-Tour, DT So/Lo and Exception golf balls.  Bridgestone has accused these golf balls of infringement.  I may refer to them collectively as the "[accused] Acushnet golf balls."

Acushnet is the owner of U.S. Patent Nos. 4,729,861; 4,936,587; 5,080,367; and 6,818,705.  You may have heard these patents referred to as the "Acushnet patents-in-suit," or by their last three numbers.

Bridgestone has made, marketed, and sold a number of golf balls, including the Precept Laddie, Precept U-Tri, Bridgestone Tour 330, and Nike One balls.  Acushnet has accused these golf balls of infringement.  I may refer to these golf balls collectively as the "[accused] Bridgestone golf balls."

## 2.2    BRIDGESTONE'S CONTENTIONS [AGREED, except Acushnet would delete the underlined and bracketed word]

Bridgestone contends that Acushnet infringes claims 1, 5 and 9 of the '652 patent, claims 1, 6 and 7 of the '852 patent, claim 1 of the '817 patent, claim 1 of the '707 patent, claim 1 of the '834 patent, claim 2 of the '961 patent, and claims 11, 13, 16 and 26 of the '791 patent, either literally or under the doctrine of equivalents, by making, using, selling and offering for sale in the United States the [accused] Acushnet golf balls.  I will explain the concepts of literal infringement and the doctrine of equivalents shortly.

Bridgestone also seeks damages for Acushnet's alleged infringement in the form of a reasonable royalty.

Bridgestone contends that it does not infringe the Acushnet patents-in-suit. Bridgestone also contends that claim 4 of Acushnet's '705 patent is invalid.

**2.3     ACUSHNET'S CONTENTIONS [AGREED, except Acushnet would delete the underlined and bracketed words]**

Acushnet contends that Bridgestone infringes claim 1 of the '861 patent, claims 1 and 26 of the '587 patent, claim 1 of the '367 patent, and claim 4 of the '705 patent, either literally or under the doctrine of equivalents, by making, using, selling and offering for sale in the United States the [accused] Bridgestone golf balls.     Acushnet seeks damages for Bridgestone's alleged infringement in the form of a royalty.

Acushnet also contends that it does not infringe the Bridgestone patents-in-suit, and that Bridgestone's asserted patent claims are invalid.

**2.4    SUMMARY OF ISSUES [AGREED]**

In this case, you must decide several things according to the instructions that I give you. They are:

1.    As to each of the asserted Bridgestone claims, whether Bridgestone has shown by a preponderance of the evidence that Acushnet has infringed that claim, either literally or under the doctrine of equivalents.

2.    As to each of the asserted Bridgestone claims, whether Acushnet has proven by clear and convincing evidence that the claim is invalid.

3.    If you find any of the asserted Bridgestone claims are infringed and not invalid, the amount of damages that Bridgestone has proven by a preponderance of the evidence.

4.    As to each of the asserted Acushnet claims, whether Acushnet has shown by a preponderance of the evidence that Bridgestone has infringed that claim, either literally or under the doctrine of equivalents.

5.    As to each of the asserted Acushnet claims, whether Bridgestone has proven by clear and convincing evidence that the claim is invalid.

6.    If you find any of the asserted Acushnet claims are infringed and not invalid, the amount of damages that Acushnet has proven by a preponderance of the evidence.

## 3.0     INFRINGEMENT

**3.1          PATENT CLAIMS GENERALLY [6] [DISPUTED – Bridgestone's Proposed Instruction]**

Deciding whether a claim has been directly infringed is a two-step process. First, the meaning of the patent claim is determined as a matter of law. That job is for the Court, and I will tell you shortly what the key terms of the asserted claims mean as a matter of law. In the second step, you must compare each claim as I have interpreted it to each of the accused golf balls to determine whether every element of the claim can be found in that accused golf ball. This element-by-element comparison is your responsibility as the jury for this case.

Before you can decide whether any of the patents-in-suit have been infringed, you will have to understand the patent "claims." The patent claims are the numbered paragraphs at the end of the patent. The claims are "word pictures" intended to define, in words, the boundaries of the invention described and illustrated in the patent. Only the claims of the patent can be infringed. Neither the specification, which is the written description of the invention, nor the drawings of a patent can be infringed.

Claims are typically divided into parts called "elements." For example, a claim that covers the invention of a table may recite the tabletop, four legs and the glue that secures the legs to the table top. The table top, legs and glue are each a separate element of the claim.

When making your decision regarding whether Acushnet infringes the asserted Bridgestone claims, you should not compare Acushnet's golf balls with any specific example set out in the Bridgestone patents-in-suit, or with any golf balls manufactured by Bridgestone.

---

[6]      From *Affymetrix* Instructions at 3.1.

Rather, you must only compare Acushnet's golf balls with the asserted claims of the Bridgestone patents-in-suit.

Similarly, when making your decision regarding whether Bridgestone infringes the asserted Acushnet claims, you should not compare Bridgestone's golf balls with any specific example set out in the Acushnet patents-in-suit, or with any golf balls manufactured by Acushnet. You must only compare Bridgestone's golf balls with the asserted claims of the Acushnet patents-in-suit.

Each of the claims must be considered individually, and to show patent infringement, the patent owner need only establish that one claim has been infringed.

## 3.1     CLAIM INFRINGEMENT[7] [DISPUTED – Acushnet's Proposed Instruction]

Before you can decide whether either party has infringed any of the other party's patents, you will have to understand the patent "claims."  The patent claims are the numbered paragraphs at the end of the patent.  The claims are "word pictures" intended to define, in words, the boundaries of the invention described and illustrated in the patent.  Only the claims of the patent can be infringed.  Neither the specification, which is the written description of the invention, nor the drawings of a patent can be infringed.

---

[7] Del. Model Instructions at 3.1.

3.2     **DEPENDENT AND INDEPENDENT CLAIMS [AGREED, except Bridgestone would delete the sentence that is bracketed and underlined.]**

There are two different types of claims in the patents. The first type is called an independent claim. An independent claim does not refer to any other claim of the patent. An independent claim is read separately to determine its scope.

On the other hand, a dependent claim refers to at least one other claim in the patent and thus incorporates whatever that other claim says. Accordingly, to determine what a dependent claim covers, you must read both the dependent claim and the claim or claims to which it refers.

In this case, for example, claim 6 of Bridgestone's '852 patent is a dependent claim, and it depends on claim 1. Accordingly, the words of claims 6 and 1 must be read together in order to determine what the dependent claim, claim 6, covers.

If you find that an independent claim is not infringed, then you must find that the dependent claim is not infringed. [Using the claims from the previous example, if you were to find that independent claim 1 of the '852 patent is not infringed, then you must find that claim 6, the dependent claim, is not infringed.]

Some claims of the patents-in-suit are broader than other claims. You are not to imply the limitations or words of the narrower or dependent claim into a broad or independent claim if the broader claim does not include the same limitations. You should not concern yourself with the number of claims that are asserted per patent.

**3.3   OPEN ENDED OR "COMPRISING" CLAIMS [8] [DISPUTED — Bridgestone's Proposed Instruction]**

Some of the asserted claims of the Bridgestone and Acushnet patents-in-suit use the transitional phrase "comprising" or "comprises." "Comprising" and "comprises" are interpreted the same as "including" or "containing." In patent claims, comprising means that the claims are open-ended. As such, the claim is not limited to only what is in the claim. Based on this explanation, if you find that the accused golf balls include all of the elements in any of the asserted patent claims, the fact that the accused golf balls may also include an additional component is irrelevant. The presence of additional components in the accused golf balls does not mean that the accused golf balls do not infringe a patent claim.

For example, a claim to a table comprising a tabletop, four legs and the glue would be infringed by a table that includes those elements, even if the table also includes additional elements such as wheels on the table's legs.

---

[8]     From *Affymetrix* Instructions at 3.3; *see also* 1993 Model Instructions at 3.11.

### 3.3    OPEN ENDED OR "COMPRISING" CLAIMS[9] [DISPUTED – Acushnet's Proposed Instruction]

The beginning portion, or preamble, of some of the asserted claims uses the word "comprising" or "comprises." In general, "comprising" or "comprises" means "including" or "containing." A claim that uses the word "comprising" or "comprises" is not limited to products or processes having only the elements or steps that are recited in the claim, but also covers products or processes that add additional elements or steps. For example, if a claim recites a table "comprising" a tabletop, legs and glue, the claim will cover any table that contains these structures, even if the table also contains other structures, such as a leaf or wheels on the legs.

---

[9] CAFC Model Patent Jury Instruction No. 7.5.

**3.4     CONSTRUCTION OF CLAIMS [AGREED]**

It is the Court's duty under the law to define what the patent claims mean.  I have made my determinations and I will now instruct you on the meaning of the claims.

You must apply the meaning that I give in each patent claim to decide if the claim is infringed.  You must ignore any different interpretations given to these terms by the witnesses or the attorneys.  If I have not provided a specific definition for a given term or phrase, you are to use the ordinary English language meaning of that term.

It may be helpful to refer to the copy of the patents-in-suit that you have been given as I discuss the claims at issue here.  The claims of the patents are toward the end of each patent.

You are advised that the following definitions for the following terms must be applied in the following patents-in-suit:

[insert claim construction]

26

**3.5     PATENT INFRINGEMENT -- GENERALLY[10] [DISPUTED – Bridgestone's Proposed Instruction]**

      A patent owner may enforce its right to exclude others from making, using or selling the patented invention by filing a lawsuit for patent infringement. Here, Bridgestone has sued Acushnet, and has alleged that Acushnet's golf balls infringe one or more claims of Bridgestone's seven patents-in-suit. Acushnet has counterclaimed, and has sued Bridgestone, and has alleged that Bridgestone's golf balls infringe one or more claims of Acushnet's four patents-in-suit.

      Patent law provides that any person or business entity which makes, uses or sells, without the patent owner's permission, any product, apparatus or method legally protected by at least one claim of a patent within the United States before the patent expires, infringes the patent.

      Next I will explain direct infringement to you more completely.

---

[10]     From *Affymetrix* Instructions at 4.1; *see also* 1993 Model Instructions at 3.4.

**3.5    PATENT INFRINGEMENT -- GENERALLY[11] [DISPUTED – Acushnet's Proposed Instruction]**

A patent owner has the right to stop others from using the invention covered by its patent claims during the life of the patent.  If any person makes, uses, sells, offers to sell or imports what is covered by the patent claims without the patent owner's permission, that person is said to infringe the patent.

In reaching your decision on infringement, keep in mind that only the claims of a patent can be infringed.  You must compare the claims of the patents-in-suit, as I have defined them, to the golf balls or processes that are alleged to infringe, and determine whether or not there is infringement.  You should not compare the golf balls or processes that are alleged to infringe with any specific example set out in the patents-in-suit, or with the patent owner's golf balls or processes.  The only correct comparison is with the language of the claim itself, as I have explained its meaning to you.

You must consider each claim individually and must reach your decision as to each assertion of infringement based on my instructions about the meaning and scope of the claims, the legal requirements for infringement, and the evidence presented to you by the parties.

---

[11] Adapted from CAFC Model Patent Jury Instruction No. 8.1; Del. Model Instructions at 3.4.

**3.6      DIRECT INFRINGEMENT -- KNOWLEDGE OF PATENT OR INTENT TO INFRINGE IS IMMATERIAL [12] [DISPUTED – Bridgestone's Proposed Instruction; Acushnet would not include this instruction]**

Acushnet would be liable for directly infringing Bridgestone's patents if you find that Bridgestone has proven by a preponderance of the evidence that Acushnet has made, used or sold the invention defined in at least one claim of Bridgestone's patents. Similarly, Bridgestone would be liable for directly infringing Acushnet's patents if you find that Acushnet has proven by a preponderance of the evidence that Bridgestone has made, used or sold the invention defined in at least one claim of Acushnet's patents.

Bridgestone or Acushnet may directly infringe a patent without knowledge that what it is doing is an infringement of the patent. Bridgestone or Acushnet may also infringe even though in good faith it believes that what it is doing is not an infringement of any patent.

---

[12]      From *Affymetrix* Instructions at 4.2; *see also* 1993 Model Instructions at 3.5.

**3.7    LITERAL INFRINGEMENT [13] [DISPUTED – Bridgestone's Proposed Instruction]**

There are two ways in which a patent claim may be directly infringed.  First, a claim may be literally infringed.  Second, a claim may be infringed under what is called the "doctrine of equivalents," which I will address shortly.

For an accused golf ball to literally infringe any one of the asserted claims, the subject matter of the patent claim must be found in the accused golf ball.  In other words, a patent claim is literally infringed if an accused golf ball includes each and every component in the patent claim.  If an accused golf ball omits any single component recited in the patent claim, that ball does not literally infringe that claim.  You must determine literal infringement with respect to each patent claim individually.

---

[13]    From *Affymetrix* Instructions at 4.3; *see also* 1993 Model Instructions at 3.8.

**3.7    LITERAL INFRINGEMENT[14] [DISPUTED – Acushnet's Proposed Instruction]**

In order to infringe a patent claim, the golf ball or process that is alleged to infringe must include every limitation of the claim.  If the accused party's golf ball or process omits even a single structure or step recited in a claim, then you must find that the accused party has not infringed the claim.  You must consider each of the claims separately.

A claim limitation is present in an accused golf ball or process if it exists in the golf ball or process just as it is described in the claim language, either as I have explained that language to you or, if I did not explain it, as you understand it.

_____

[14] CAFC Model Patent Jury Instruction No. 8.2.

**3.8    DOCTRINE OF EQUIVALENTS[15] [DISPUTED – Bridgestone's Proposed Instruction]**

If you do not find literal infringement, you may consider infringement under the "doctrine of equivalents." I have referred to the "doctrine of equivalents" before. Now it is time to explain this term.

As I have noted, to infringe a patent, every claim element must be present in the accused golf balls. A claim element may be present in an accused golf ball in one of two ways, either literally or under the doctrine of equivalents. A claim element is literally present if it exists in the accused golf balls just as it is described in the claim, either as I have explained that language to you, or, if I did not explain it, as you understand it from the evidence presented during trial.

A claim element is present in an accused golf ball under the doctrine of equivalents if the differences between the claim element and a corresponding aspect of the accused golf ball are insubstantial. One way to determine this is to look at whether or not the corresponding aspect of the accused golf ball performs substantially the same function, in substantially the same way, to achieve substantially the same result as the element in the claimed invention.

Application of the doctrine of equivalents is on an element-by-element basis, meaning that, for an accused golf ball to infringe under the doctrine of equivalents, the element of a patent claim which is not literally present in the accused golf ball must be present by equivalence. Therefore, the question is whether the accused golf ball contains an equivalent for

---

[15]     From *Affymetrix* Instructions at 4.4.

each element of the claim that is not literally present in the accused golf ball.  The question is not whether the accused golf ball as a whole is equivalent to the claimed invention as a whole.

It is not a requirement under doctrine of equivalents infringement that those of ordinary skill in the art knew of the equivalent when the patent application was filed or when the patent issued.  The question of whether the accused golf balls are equivalents to what is defined in the asserted claims is to be determined at the time of the alleged infringement.  Technology developed after the date of invention is the quintessential example of an equivalent, because the law does not require that an applicant describe in his specification every conceivable and possible future embodiment of his invention.

**3.8    INFRINGEMENT – EVERY CLAIM LIMITATION MUST BE PRESENT, EITHER LITERALLY OR UNDER THE DOCTRINE OF EQUIVALENTS 16 [DISPUTED – Acushnet's Proposed Instruction]**

In order to infringe a patent claim, a golf ball or process that is alleged to infringe must include every limitation of the claim. If an accused golf ball or process omits even a single limitation recited in a claim, then you must find that the accused party has not infringed the claim. You must consider each of the patent claims separately.

A claim limitation may be present in a golf ball or process in one of two ways, either literally or under what is known as the doctrine of equivalents. A claim limitation is literally present if it exists in the golf ball just as it is described in the claim language, either as I have explained that language to you or, if I did not explain it, as you understand it.

A claim limitation is present in a golf ball or process under the doctrine of equivalents if the differences between them are insubstantial. One way to determine this is to look at whether or not the golf ball or process that is alleged to infringe performs substantially the same function, in substantially the same way, to achieve substantially the same result as each claim limitation of the claimed invention. Under the doctrine of equivalents, an overall similarity between the asserted patent claim and the accused party's golf ball or process is not enough to find infringement. The evidence must demonstrate that the golf ball or process that is alleged to infringe contains a substantial equivalent of each limitation in the asserted patent claim.

---

[16] Adapted from CAFC Model Patent Jury Instruction No. 8.3; *Network Commerce, Inc. v. Microsoft Corp.*, 422 F.3d 1353, 1363 (Fed. Cir. 2005).

**3.9    SITUATIONS WHERE RESORT TO DOCTRINE OF EQUIVALENTS IS NOT PERMITTED17 [DISPUTED – Acushnet's Proposed Instruction; Bridgestone would not include this instruction]**

There are four situations wherein resort to the doctrine of equivalents to find infringement is not permitted.

First, resort to the doctrine of equivalents to find infringement is not permitted if you find that the accused party is merely practicing what was in the prior art prior to the patented invention or that which would have been obvious in light of what was in the prior art. This is because a patent owner should not obtain, under the doctrine of equivalents, coverage which he could not have lawfully obtained from the Patent Office.

Second, you may not find infringement under the doctrine of equivalents if even one limitation of a claim or its equivalent is missing from the golf ball or process that is alleged to infringe. Thus, if you determine that a finding of infringement under the doctrine of equivalents would entirely eliminate a particular claimed element, then you should not find infringement under the doctrine of equivalents.

Third, the doctrine of equivalents is limited by what is called "prosecution history estoppel." As you have already heard, during prosecution of the patents, arguments and amendments are often made in an attempt to convince the Patent Examiner and the Patent Office that the claimed invention is entitled to a patent despite the prior art before the Examiner. The applicant, in other words, sometimes amends his patent claims or submits arguments in order to

---

[17] Adapted from Del. Model Instructions at 3.10; Final Jury Instructions in *Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc.*, U.S. District Court Delaware, C.A. No. 04-1371-JJF (October 6, 2006), Instruction IV.4(a); AIPLA Model Patent Jury Instructions: "Limitations on the Doctrine of Equivalents"; *Warner-Jenkinson Co., Inc. v. Hilton Davis Chemical Co.*, 520 U.S. 17, 33-34; 117 S.Ct. 1040, 1051, 137 L.Ed.2d 146, 164-165 (1997); *SciMed Life Systems, Inc. v. Advanced Cardiovascular Systems, Inc.*, 242 F.3d 1337, 1341-1344. (Fed. Cir. 2001).

define or narrow the meaning of the claims so that they are distinguished from the prior art. Once it has done so, it cannot later argue that it is entitled to patent coverage under the doctrine of equivalents that would be so broad that it would cover the same feature that the applicant distinguished from his invention during his prosecution of the patent.

Consistent with this instruction, I instruct you that prosecution history estoppel prevents Bridgestone in this case from relying on the doctrine of equivalents to broaden the literal scope, just as it is described in the claim language, of at least the following Bridgestone patents:

-- In the Bridgestone '652 patent, the doctrine of prosecution history estoppel precludes Bridgestone from relying on the doctrine of equivalents to expand the scope of the claim limitations in claim requiring  "about 25 to about 40 parts by weight of a zinc or magnesium salt of an unsaturated fatty acid" and the limitation requiring "about 0.05 to about 2 parts by weight of a sulfur compound."

-- In the Bridgestone '817 patent, prosecution history estoppel precludes Bridgestone from relying on the doctrine of equivalents to expand the scope of the claim limitation requiring that the "cover consists of an ionomer resin as a resin component"

Fourth, the doctrine of equivalents cannot apply where a patent's written description makes clear that the invention does not include a particular feature.  This situation might arise, for example, where a patent's written description identifies a particular feature, structure, or device as having disadvantages and excludes that feature, structure or device from the invention.  If you find that the written description in any of the patents-in-suit makes clear that the invention does not include that particular feature, then you should not find infringement under the doctrine of equivalents.

**3.10  INFRINGEMENT    DESPITE    ACCUSED    INFRINGER'S INFRINGEMENT OR PATENTS ON IMPROVEMENTS [18] [DISPUTED – Bridgestone's Proposed Instruction; Acushnet would not include this instruction]**

You may find that Acushnet's accused golf balls represent an improvement over the invention defined in Bridgestone's patent claims, or that Bridgestone's accused golf balls represent an improvement over the invention defined in Acushnet's patent claims. However, you are not to presume that these facts mean that Acushnet cannot infringe Bridgestone's patent claims, or that Bridgestone cannot infringe Acushnet's patent claims. As long as the accused golf balls include all of the elements of at least one of the asserted patent claims, or if the accused golf balls are found to be equivalent under the doctrine of equivalents, then the patent claims are infringed by the accused golf balls despite any improvements.

---

[18]    From 1993 Model Instructions at 3.16.

**3.11   FOREIGN FILING DATE 19 [DISPUTED – Acushnet's Proposed Instruction; Bridgestone's proposed instruction is 4.9]**

A U.S. patent application may claim the "benefit" of an earlier filing date of a foreign patent application(s). This means that, for some purposes, the patent is considered to be filed on the date that the earlier foreign patent application was filed.

To obtain this benefit, five requirements must be met.

First, the filing must have been in an eligible foreign country. Japan is such an eligible country.

Second, the U.S. application must be filed within twelve months of the first foreign application.

Third, the foreign application must contain a written description of the invention, and of the manner and process of making and using the invention, in such full, clear, concise, and exact terms as to enable any person skilled in the art to which it pertains to make and to use the full scope of the invention as claimed.

Fourth, the foreign application must have been for a "patent."

Fifth, the foreign application must have been filed by the same applicant as in the U.S. or by a legal representative or assigns of that applicant.

Here, Bridgestone contends that the '652 patent is entitled to an effective filing date of November 5, 1989, based on its prior filing of a Japanese patent application. If you determine that Bridgestone has met each of the five requirements above, then you may find that the '652 patent is entitled to the earlier filing date. However, if you determine that any of the

---

[19] 35 U.S.C. § 119; *In re Chu*, 66 F.3d 292, 297 (Fed. Cir. 1995); *In re Gosteli*, 872 F.2d 1008, 1010 (Fed. Cir. 1989).

five requirements above has not been met, then you must find that the '652 patent is only entitled to the U.S. filing date, May 10, 1990, for purposes of this case.

4.0     VALIDITY DEFENSES

**4.1     VALIDITY[20] [DISPUTED – Bridgestone's Proposed Instruction]**

Acushnet contends that claims 1, 5 and 9 of the '652 Patent, claims 1, 6 and 7 of the '852 Patent, claim 1 of the '817 Patent, claim 1 of the '707 Patent, claim 1 of the '834 Patent, claim 2 of the '961 patent, and claims 11, 13, 16 and 26 of the '791 patent are invalid.

Bridgestone contends that claim 1 of the '861 patent, claims 1 and 26 of the '587 patent, claim 1 of the '367 patent, and claim 4 of the '705 patent are invalid.

I will now instruct you on presumption of validity that each patent enjoys, and the specific bases of invalidity asserted by each party.

---

[20]     From *Tristrata Tech., Inc. v. Mary Kay Inc.*, C.A. No. 01-127-JJF, March 9, 2005 Final Jury Instructions ("*Mary Kay* Instructions") at 3.

**4.1    VALIDITY IN GENERAL[21] [DISPUTED – Acushnet's Proposed Instruction]**

Only a valid patent may be infringed. For a patent to be valid, the invention claimed in the patent must be new, useful and non-obvious. A patent cannot take away from people their right to use what was known or what would have been obvious when the invention was made. The terms "new," "useful" and "non-obvious" have special meanings under the patent laws. I will explain these terms to you as we discuss the parties' grounds for asserting invalidity.

The invention claimed in a patent must also be adequately described. In return for the right to exclude others from making, using, selling or offering for sale the claimed invention, the patent owner must provide the public with a complete description in the patent of the invention and how to make and use it.

Both parties have challenged the validity of the patents-in-suit on a number of grounds. In each case, the accused party must prove that a patent claim is invalid by the clear and convincing standard. If a claim is invalid on any of the asserted grounds, then it is invalid. I will now explain to you each of the asserted grounds for invalidity in detail. In making your determination as to invalidity, you should consider each claim separately.

---

[21] CAFC Model Patent Jury Instruction No. 10.1.

**4.2    PRESUMPTION OF VALIDITY[22] [DISPUTED – Bridgestone's Proposed Instruction; Acushnet would not include this instruction]**

The granting of a patent by the Patent Office carries with it the presumption that the patent is valid. The law presumes, in the absence of clear and convincing evidence to the contrary, that the Patent Office acted correctly in issuing the patent. Nevertheless, once the validity of a patent has been put in issue, it is the responsibility of the jury to review what the Patent Office has done consistent with these instructions on the law.

This presumption of validity puts the burden of proving that Bridgestone's patents are invalid on Acushnet, and puts the burden of proving that Acushnet's patents are invalid on Bridgestone. While this presumption can be rebutted, the burden is on the accused infringer to do so. This burden requires that the accused infringer prove by clear and convincing evidence that an asserted claim is invalid. Clear and convincing evidence is evidence that produces an abiding conviction that the truth of the factual contention is highly probable. Proof by clear and convincing evidence is a higher burden then proof by a preponderance of the evidence.

However, if you find that the accused infringer has produced prior art or other evidence not considered by the Patent Office, you can consider whether that art is cumulative of art that was before the Patent Office.

Validity is determined on a claim-by-claim basis. If you find that an independent claim is invalid, that does not mean that a dependent claim is invalid. You must separately evaluate the validity of the dependent claims.

---

[22]    From *Mary Kay* Instructions at 3.1.

## 4.3    DEFINITENESS[23] [DISPUTED – Bridgestone's Proposed Instruction]

Bridgestone contends that: claim 1 of the '861 patent; claims 1 and 26 of the '587 patent; claim 1 of the '367 patent; and claim 4 of the '705 patent are invalid because they are indefinite.

The Patent laws require the claims of a patent to be sufficiently definite that one skilled in the art can determine the precise limits of the claimed invention. If a claim is found to be indefinite, the claim is invalid.

The amount of detail required to be included in the claims depends on the particular invention and the prior art, and is not to be evaluated in the abstract but in conjunction with the disclosure. If the claims, read in light of the disclosure, reasonably apprise those skilled in the art of the proper scope of the invention, and if the language is as precise as the subject matter permits, then the claims are not indefinite.

Simply because some claim language may not be precise does not automatically render a claim invalid. You must determine whether one of ordinary skill in the art would understand what is covered when the claim is read in light of the disclosure. Even if one needed to experiment so as to determine the limits of the claims of the patent, that would not necessarily be a basis for holding the claims invalid.

---

[23]    From 1993 Model Instructions at 4.1.

## 4.3     DEFINITENESS[24] [DISPUTED – Acushnet's Proposed Instruction]

The patent laws have requirements for the way in which patent claims are written. Patent claims must be sufficiently clear that a person of ordinary skill in the field of the invention reading them is able to determine what the claims cover and what they do not cover. A person of ordinary skill is a person of average education and training in the field. If a patent claim does not meet this requirement, then the claim is said to be indefinite, and the claim is invalid.

The amount of detail required for a claim to be definite depends on the particular invention, the prior art and the description of the invention contained in the patent. A patent claim, when read along with the rest of the patent, must reasonably inform those skilled in the field of the invention what the patent claims cover. Simply because claim language may not be precise does not automatically mean that the claim is indefinite. The claim language need only be as precise as the subject matter permits.

If you find that either or both parties have provided clear and convincing evidence that any patent claims asserted against it are indefinite because a person of ordinary skill in the art would not understand what is, and what is not, covered by the claims, you must then find that those claims are invalid.

---

[24] Adapted from CAFC Model Patent Jury Instruction No. 10.5.

**4.4     ENABLEMENT[25] [DISPUTED – Bridgestone's Proposed Instruction]**

Patent law requires that the disclosure or written description portion of a patent be sufficiently detailed to enable those skilled in the art to practice the claimed invention.  The purpose of this requirement is to ensure that the public, in exchange for the patent rights given to the inventor, obtains from the inventor a full disclosure of how to carry out the invention.  However, the patent disclosure need not provide information that is within the knowledge of one of ordinary skill in the art or that can be determined with routine testing.

To meet the enablement requirement, the patent disclosure must allow a person of ordinary skill in the art to practice the claimed invention without undue experimentation.  Because descriptions in patents are addressed to those skilled in the art to which the invention pertains, an applicant for a patent need not expressly include information that is commonly understood by persons skilled in the art.  In other words, the disclosure in the patent must not necessarily describe how to make and use every possible variation of the claimed invention – the person of ordinary skill in the art's knowledge can fill in missing information.  If an invention pertains to an art where the results are predictable, then the disclosure of a single embodiment can enable a broad claim.  But, a patent need not contain a working example so long as the patent discloses enough information to enable a person of ordinary skill in the art to practice the invention.

The fact that some experimentation may be required for a skilled person to practice the claimed invention does not mean that the specification is not enabling.

---

[25]     From *Affymetrix* Instructions at 3.2.

Experimentation or testing that is routine in the industry is permissible. Indeed, a considerable amount of experimentation is permissible, if it is merely routine, or if the specification provides a reasonable amount of guidance with respect to the direction in which the experimentation should proceed. A specification is enabling so long as the experimentation needed is not undue.

Factors to be considered in determining whether a disclosure would require undue experimentation include: (1) the quantity of experimentation necessary; (2) the amount of direction or guidance disclosed in the patent; (3) the presence or absence of working examples in the patent; (4) the nature of the invention; (5) the state of the prior art; (6) the relative skill of those in the art; (7) the predictability or unpredictability of the art; and (8) the breadth of the claims.

**4.4    ENABLEMENT[26] [DISPUTED – Acushnet's Proposed Instruction]**

The written description of the invention claimed in a patent must contain enough detail to teach, or enable, persons skilled in the field of the invention to make and use the invention. This is referred to as the enablement requirement. If the patent does not enable a skilled person to make and use the claimed invention without undue experimentation, then the claim is invalid.

In considering whether or not the written description of a patent meets the enablement requirement, you must keep in mind that patents are written for persons of skill in the field of the invention. Thus, a patent need not expressly state information that skilled persons would be likely to know or could obtain.

The fact that some experimentation may be required for a skilled person to practice the claimed invention does not mean that a patent claim is not enabled. However, if the amount of experimentation a skilled person would have to do to make the claimed invention is too much, called "undue experimentation," then the patent is invalid. A permissible amount of experimentation is that amount that is appropriate for the complexity of the field of the invention and for the level of expertise and knowledge of persons skilled in that field.

A patentee cannot always satisfy the enablement requirement merely by clearly describing one embodiment of the thing claimed. Although every embodiment of a claim does not need to be disclosed in a specification, there must be guidance or a suggestion to enable the full scope of the claimed invention.

---

[26] CAFC Model Patent Jury Instruction No. 10.3; *Liebel-Flarsheim Co. v. Medrad*, No 06-1156, 2007 U.S. App. LEXIS 6607 at *19 (Fed. Cir. March 22, 2007); *Lizardtech, Inc. v. Earth Resource Mapping, Inc.*, 424 F.3d 1336, 1344 (Fed. Cir. 2005).

If you find that the accused party has provided clear and convincing evidence that the written description in the patent does not enable a skilled person to make and use the golf ball covered by any of the asserted claims without undue experimentation, then you must find that the patent claim is invalid.

**4.5     PRIOR PUBLIC USE OR KNOWLEDGE[27] [DISPUTED – Bridgestone's Proposed Instruction]**

The prior public use of a claimed invention may be prior art to the patent claims, and therefore invalidate the claims, where the invention was known to or used by someone other than the inventor before the date of invention by the inventor on the patent, or where the invention was publicly used by the inventor, the patent owner, or anyone else more than one year before the application for the patent was filed.

In both circumstances, the public use must have been in the United States. Prior public use or knowledge of the claimed invention outside the United States is not prior art to a patent claim.

In either case, a prior use by someone other than the inventor or the patent owner will not be prior art unless it was public. Private or secret knowledge or use by another is not prior art.

---

[27] CAFC Model Patent Jury Instruction No. 10.6.4.

**4.5    PRIOR PUBLIC USE OR KNOWLEDGE** [28] **[DISPUTED – Acushnet's Proposed Instruction]**

The prior public use of a claimed invention may be prior art to the patent claims, and therefore invalidate the claims, under two different circumstances. The first is where the invention was known to or used by someone other than the inventor before the date of invention by the inventor on the patent. The second is where the invention was publicly used by the inventor, the patent owner, or anyone else more than one year before the application for the patent was filed.

In both circumstances, the public use must have been in the United States. Prior public use or knowledge of the claimed invention outside the United States is not prior art to a patent claim.

Use or knowledge by someone other than the inventor may be prior art if it was before the date of invention by the inventor on the patent, or more than one year before the filing of the application for the patent. In either case, a prior use by someone other than the inventor or the patent owner will not be prior art unless it was public. Private or secret knowledge or use by another is not prior art.

If the prior use was more than one year before the filing date of the application for the patent, then the date of invention for the patent claims is irrelevant. A public use more than one year before the patent application was filed will be prior art regardless of the date of invention.

--------

[28] CAFC Model Patent Jury Instruction No. 10.6.4.

A prior use more than one year before the application filing date by the inventor or the patent owner will be prior art if it was for commercial purposes, even if it was done in secret.

## 4.6    ANTICIPATION [29]    [DISPUTED  –  BRIDGESTONE'S  PROPOSED INSTRUCTION]

A person cannot obtain a patent on an invention if someone else has already made the same invention.  If the invention is not new, we say that it was "anticipated" by prior art. Prior art is the legal term used to describe what others had done in the field before the invention was made, and may include things such as articles, books and other patents.  It is not necessary that the prior art has been available to every member of the public.  It must have been available, without restriction, to that segment of the public most likely to avail itself of the prior art's contents.

An invention that is "anticipated" by the prior art is not entitled to patent protection.  In order to prove that an invention is "anticipated," the accused infringer must prove by clear and convincing evidence that a single piece of prior art describes or discloses all of the limitations of the claimed invention.

In deciding whether a single item of prior art anticipated a patent claim, you should consider not only what is expressly disclosed or embodied in the particular item of prior art but also what is inherently present.  But, an inherent disclosure requires that the missing descriptive material is necessarily present in the reference, not that it is possibly or even probably present, or that a certain thing may result from the circumstances of the reference.  If the result is a necessary consequence of what was deliberately intended, it is irrelevant that the prior art article's author did not appreciate the results.  However, if the particular prior art item was

_____

[29]    From *Mary Kay* Instructions at 3.3.

formed only accidentally, or occurred only occasionally or under unusual conditions, it is not an invalidating anticipation.

**4.6     ANTICIPATION[30] [DISPUTED – Acushnet's Proposed Instruction]**

A person cannot obtain a patent on an invention if someone else has already made the same invention.   In other words, the invention must be new.   If an invention is not new, we say that it was "anticipated" by the prior art.   An invention that is "anticipated" by the prior art is not entitled to patent protection.   A party challenging the validity of a patent must prove anticipation by clear and convincing evidence.

In order for a patent claim to be anticipated by the prior art, each limitation of the claim must be present within a single item of prior art, whether that prior art is a publication, a prior patent, a prior invention, a prior public use or sale, or some other item of prior art.  You may not find that the prior art anticipates a patent claim by combining two or more prior art references.   However, within a single prior art reference, there is no requirement that each limitation of the patent claim be found in a single example of the prior art reference.

Also, a prior art reference may anticipate a patent claim even without disclosing a limitation of the claim if the missing limitation is "inherent" in the prior art reference. Something is "inherent" in an item of prior art if it is the natural result that flows from the disclosure in the prior art.  Thus, in deciding whether or not a single item of prior art anticipates a patent claim, you should consider that which is expressly stated or present in the item of prior art, and also that which is inherently present.  It does not matter whether a person of ordinary

---

[30] CAFC Model Patent Jury Instruction No. 10.8; *Perricone v. Medicis Pharm. Corp.,* 432 F.3d 1368, 1375-6 (Fed. Cir. 2005); *SmithKline Beecham Corp. v. Apotex Corp.,* 403 F.3d 1331, 1343 (Fed. Cir. 2005); *Schering Corp. v. Geneva Pharms., Inc.,* 339 F.3d 1373, 1379 (Fed. Cir. 2003); *Glaxo Group Ltd. v. Apotex, Inc.,* 376 F.3d 1339, 1349 (Fed. Cir. 2004).

skill in the art would have recognized the inherent disclosure, or the newly discovered results, at the time the prior art was created.

A printed publication or patent will not be an anticipation unless it contains a description of the invention covered by the patent claims that is sufficiently detailed to teach a skilled person how to make and use the invention without undue experimentation. That means that a person skilled in the field of the invention reading the printed publication or patent would be able to make and use the invention using only an amount of experimentation that is appropriate for the complexity of the field of the invention and for the level of expertise and knowledge of persons skilled in that field.

If you find that either party has provided clear and convincing evidence that any of the claims asserted against it are anticipated by prior art, then you must find that those claims are invalid.

**4.7     OBVIOUSNESS [DISPUTED as to the sentence underlined and bracketed below]**

An inventor is not entitled to a patent if his or her invention would have been obvious to a person of ordinary skill in the field of the invention at the time the invention was made. [This is because granting patent protection to advances that would occur in the ordinary course without real innovation retards progress and may, in the case of patents combining previously known elements, deprive prior inventions of their value and utility.]

Unlike anticipation, obviousness may be shown by considering more than one item of prior art. The question is, would it have been obvious for a skilled person who knew of the prior art to make the claimed invention?   If the answer to that question is yes, then the patent claim is invalid. The accused party has the burden of proving by clear and convincing evidence that the claims asserted against it are invalid for obviousness.

Obviousness is determined from the perspective of a person of ordinary skill in the field of the invention. The issue is not whether the claimed invention would have been obvious to you, to me as a judge, or to a genius in the field of the invention. Rather, the question is whether or not the invention would have been obvious to a person of ordinary skill in the field of the invention.

In determining whether or not these claims would have been obvious, you should make the following determinations:

First, what is the scope and content of the prior art?

Second, what differences, if any, are there between the invention of the claims of the patent and the prior art?

Third, what was the level of ordinary skill in the art at the time the invention was made?

Fourth, are there any objective indications of non-obviousness?

Against this background, you must decide whether or not the invention covered by the asserted patent claims would have been obvious.

**4.8     KSR INSTRUCTION**[31] **[DISPUTED – Acushnet's Proposed Instruction; Bridgestone would not include this instruction]**

In determining whether the asserted patent claims would have been obvious to a person of ordinary skill in the art, and are therefore invalid, you should not apply any rigid test or formula. Rather, you should use your common sense to determine whether the claimed invention is truly innovative, or merely a combination of known elements to achieve predictable results. In general, the combination of familiar elements according to known methods is likely to be obvious when it does no more than yield predictable results.

When a work is available in one field, design goals and other market forces can prompt variations of it, either in the same field or in another. If a person of ordinary skill in the art can implement a predictable variation of a known work, and would see the benefit of doing so, then a patent on that idea is likely to be obvious. Moreover, if a technique has been used to improve one device, and a person of ordinary skill in the art would recognize that it would improve similar devices in the same way, using the technique is obvious unless its actual application is beyond that person's skill.

---

[31] *KSR Int'l Co. v. Teleflex, Inc.*, 2007 U.S. LEXIS 4745 at 32-36 (U.S.S.C., April 30, 2007).

**4.9    SCOPE AND CONTENT OF THE PRIOR ART**[32] **[DISPUTED – Bridgestone's**

**Proposed Instruction]**

      In arriving at your decision on the issue of whether or not the claimed invention is

obvious to one of ordinary skill in the art, you must first determine the scope and content of the

prior art.  This means that you must determine what qualifies as prior art, and what prior art is

reasonably pertinent to the particular problem with which the inventor was faced.

      What qualifies as prior art depends in part on whether it existed before the

effective filing date of a patent.  Here, the prior art includes: prior patents that issued before the

following dates, prior publications with a publication date before the following dates, U.S.

patents with a filing date before the following dates, and anything in public use or on sale in the

United States before the following dates:

1.      July 8, 1993 for Bridgestone's '852 Patent;

2.      October 14, 1994 for Bridgestone's '817 Patent;

3.      March 1, 1996 for Bridgestone's '834 Patent;

4.      March 11, 1996 for Bridgestone's '707 Patent;

5.      November 27, 2000 for Acushnet's '705 Patent; and

6.      May 30, 2001 for Bridgestone's '961 Patent.

      There is one dispute about an effective filing date in this case, with respect to

Bridgestone's '652 patent.  You must decide whether Acushnet has proven by clear and

---

[32]    From *Mary Kay* Instructions at 3.10; *see also* 1993 Model Instructions at 4.8.1.

convincing evidence[33] whether Bridgestone's '652 patent is not entitled to an earlier effective filing date based on Bridgestone's prior filing of a Japanese patent application.

A U.S. patent application may claim the "benefit" of an earlier filing date of a foreign patent application. This means that, for some purposes, the U.S. patent is considered to have been filed on the date that the earlier foreign patent application was filed. To receive the earlier effective filing date, the foreign application must contain a written description of the invention, and of the manner and process of making and using the invention, in such full, clear, concise and exact terms as to enable any person skilled in the art to which it pertains to make and to use the full scope of the invention as claimed in the later patent. You are instructed that the Japanese patent application contains a written description of the invention claimed in the '652 patent if the Japanese application reasonably conveys to one of skill in the art that the inventors possessed the subject matter claimed in the '652 patent at the time the Japanese application was filed.[34] It is not necessary that the Japanese patent application describe the invention exactly.[35] If you find that the '652 patent is not entitled to the filing date of the Japanese application, May 11, 1989, then the Fujii reference may be considered as prior art; if you find that the '652 patent does receive that filing date, then the Fujii reference is not prior art.

---

[33]    *Itron, Inc. v. Benghiat*, 2003 WL 22037710, *4 (D. Minn. Aug. 29, 2003) ("Itron [declaratory judgment plaintiff] claims that Benghiat [patent owner] has the burden of proving its entitlement to the 1981 [priority] date, but this is a misstatement of law. *See Ralston Purina Co. v. Far-Mar-Co.*, 772 F.2d 1570, 1573 (Fed. Cir. 1985) ("A patent is presumed valid, and the burden of persuasion to the contrary is and remains on the party asserting invalidity.")).

[34]    *Tronzo v. Biomet, Inc.*, 156 F.3d 1154, 1158 (Fed. Cir. 1998); *K&K Jump Start/Chargers, Inc. v. Schumacher Elec. Corp.*, 13 Fed. Appx. 982 (Fed. Cir. 2001) (citing *Tronzo*).

[35]    *Vas-Cath Inc. v. Mahurkar*, 935 F.2d 1555, 1563-64 (Fed. Cir. 1991).

**4.9     SCOPE AND CONTENT OF THE PRIOR ART[36] [DISPUTED – Acushnet's**

**Proposed Instruction]**

      Determining the scope and content of the prior art means that you should determine

what is disclosed in the prior art relied on by the accused party.  You must decide whether this

prior art was reasonably relevant to the particular problem the inventor faced in making the

invention covered by the patent claims.  Such relevant prior art includes prior art in the field of the

invention, and also prior art from other fields that a person of ordinary skill would look to when

attempting to solve the problem.

---

[36] CAFC Model Patent Jury Instruction No. 10.9.1.

## 4.10    DIFFERENCES OVER THE PRIOR ART[37] [AGREED]

You must next consider the differences, if any, between the prior art and the claimed invention.  Although it is proper for you to note any differences between the claimed invention and the prior art, you should not focus only on the differences.  You must consider the claimed invention as a whole and determine whether or not it would have been obvious in light of all of the prior art.  Each claim must be considered in its entirety.

---

[37]    From *Mary Kay* Instructions at 3.11; *see also* 1993 Model Instructions at 4.8.2.

**4.11   LEVEL OF ORDINARY SKILL[38] [DISPUTED – Bridgestone's Proposed Instruction]**

      Next, you are to determine the level of ordinary skill in the art to which the claimed invention pertains at the time the claimed invention was made. Factors to be considered in determining the level of ordinary skill in the pertinent art include the educational level of the inventor, the types of problems encountered in the art, the prior art patents and publications, the activities of others and prior art solutions to the problems encountered by the inventor, the sophistication of the technology and the education of others working in the field.

---

[38]    From *Mary Kay* Instructions at 3.12; *see also* 1993 Model Instructions at 4.8.3.

**4.11    LEVEL OF ORDINARY SKILL[39] [DISPUTED – Acushnet's Proposed Instruction]**

Obviousness is determined from the perspective or a person of ordinary skill in the art. This person is presumed to know all of the prior art, not just what the inventor may have known. When faced with a problem, this ordinary skilled person is able to apply his or her experience and ability to the problem and also to look to any available prior art to help solve the problem.

Factors to consider in determining the level of ordinary skill in the art include the educational level and experience of people working in the field, the types of problems faced by workers in the art and the solutions found to those problems, and the sophistication of the technology in the field.

You should keep in mind that the standard of non-obviousness in an art necessarily is raised as the art advances. New inventions, once they are known, define a new threshold from which innovation starts once more. As progress beginning from higher levels of achievement is expected in the normal course, the results of ordinary innovation are not entitled to patent protection.

---

[39] CAFC Model Patent Jury Instruction No. 10.9.3; *KSR Int'l Co. v. Teleflex, Inc.*, 2007 U.S. LEXIS 4745 at 52 (U.S.S.C., April 30, 2007).

## 4.12    OBJECTIVE CRITERIA CONCERNING OBVIOUSNESS (SECONDARY CONSIDERATIONS)40 [DISAGREED – Bridgestone's Proposed Instruction]

In making your decision as to the obviousness or non-obviousness of the claimed invention, you must consider the following objective evidence which may tend to show non-obviousness of the claims at issue:

1.    Commercial success or lack of commercial success of products covered by the patents in suit;

2.    A long felt need in the art which was satisfied by the invention of the patent in suit;

3.    The failure of others to make the invention;

4.    Copying of the invention by others in the field;

5.    Unexpected results achieved by the invention;

6.    Praise of the invention by the infringer or others in the field;

7.    Expressions of disbelief or skepticism by those skilled in the art upon learning of the invention;

8.    Whether the inventor proceeded in a direction contrary to the accepted wisdom of those skilled in the art; and

9.    The taking of licenses under the patent by others.

However, there must be a connection between the evidence showing any of these factors and the claimed invention if this evidence is to be given weight by you in arriving at your conclusion on the obviousness issue.  For example, if commercial success is due to advertising,

---

40    From *Mary Kay* Instructions at 3.15; *see also* 1993 Model Instructions at 4.8.4.

promotion, salesmanship or the like, or is due to features of the product other than those claimed in the patent in suit, then any commercial success may have no relation to the issue of obviousness.

**4.12    OBJECTIVE    CRITERIA    CONCERNING    OBVIOUSNESS (SECONDARY CONSIDERATIONS) [41] [DISAGREED – Acushnet's Proposed Instruction]**

In making your decision as to the obviousness or non-obviousness of the claimed invention, you must consider the following objective evidence which may tend to show non-obviousness of the claims at issue:

1.     Commercial success or lack of commercial success of products covered by the patents in suit;

2.     A long felt need in the art which was satisfied by the invention of the patent in suit;

3.     Unexpected results achieved by the invention;

4.     The taking of licenses under the patent by others.

However, there must be a connection between the evidence showing any of these factors and the claimed invention if this evidence is to be given weight by you in arriving at your conclusion on the obviousness issue.  For example, if commercial success is due to advertising, promotion, salesmanship or the like, or is due to features of the product other than those claimed in the patent in suit, then any commercial success may have no relation to the issue of obviousness.

---

[41]     From *Mary Kay* Instructions at 3.15; *see also* 1993 Model Instructions at 4.8.4.

**4.13     OBVIOUSNESS -- HINDSIGHT [DISPUTED – Bridgestone's Proposed Instruction]**

In evaluating whether an invention is obvious in light of prior art, you may not use hindsight to combine references to piece together the invention.  You must determine whether there was an apparent reason to combine the known elements in the fashion claimed by the patent at issue.  It is not proper to use the patent in suit as a guide through the maze of prior art references, combining the right references in the right way so as to achieve the result of the claims in suit.  If you find the available prior art shows each of the elements of the claims in suit, you must determine whether it would then have been obvious to a person of ordinary skill in the art to combine or coordinate these elements in the same manner as the claims in suit.

**4.13    OBVIOUSNESS -- HINDSIGHT [DISPUTED – Acushnet's Proposed Instruction]**

A person of ordinary skill in the art is presumed to have knowledge of the relevant prior art at the time of the patentee's invention. If you find the available prior art shows each of the elements of the claims in suit, you must determine whether it would then have been obvious to a person of ordinary skill in the art to combine or coordinate these elements in the same manner as the claims in suit. You should not rely on hindsight while undertaking this evaluation. In evaluating whether an invention is obvious in light of prior art, you may not use hindsight to combine references to piece together the invention. You must determine whether there was a reason to combine the known elements in the fashion claimed by the patent at issue. However, when there is a design need or market pressure to solve a problem and there are a finite number of identified, predictable solutions, a person of ordinary skill in the art has good reason to pursue the known options within his or her technical grasp.

**4.14     LACHES**[42] **[DISPUTED – Acushnet's Proposed Instruction; Bridgestone would not include this instruction]**

The parties also assert a defense to the infringement allegations called laches. The defense of laches, if proven by a preponderance of the evidence, prevents a patent owner from recovering damages prior to the filing of the lawsuit.

For the laches defense to apply, the party asserting the defense must prove two things: (1) that the patent owner delayed in bringing a lawsuit for an unreasonable and inexcusable length of time after it knew or should have known of the potential infringement, and (2) that the delay has resulted in material prejudice or injury to the party asserting the defense. Prejudice or injury can be either economic or evidentiary. Economic harm is harm that results from a change in the accused party's economic position during the period of delay. Evidentiary harm is harm that results from the passage of time, such that the accused party's ability to present any defense to the alleged infringement has been impaired.

If you find by a preponderance of the evidence that the patent owner delayed filing suit more than six years after the patent owner knew or should have known of the potential infringement, then a presumption of laches is inferred. The patent owner can overcome this presumption if it shown either that its delay in bringing suit was not unreasonable, or that the accused party was not prejudiced by the patent owner's delay.

---

[42] Final Jury Charge, *St. Clair Intellectual Property Consultants, Inc. v. Canon, Inc.,* United States District Court for the District of Delaware (October 21, 2004), C.A. No. 03-241 (JJF).

## 5.0 DAMAGES

**5.1    DAMAGES – GENERALLY**

If, after considering all of the evidence and the law as I have stated it, you determine that (i) Acushnet does not infringe any of the Bridgestone patents-in-suit, or (ii) all of the claim(s) that you find infringed are invalid, then you need go no further in your deliberations with respect to the Bridgestone patents-in-suit. On the other hand, if you decide that at least one claim of Bridgestone's patents-in-suit is both infringed and not invalid, you must then turn to the issue of damages.

Similarly, if, after considering all of the evidence and the law as I have stated it, you determine that (i) Bridgestone does not infringe any of the Acushnet patents-in-suit, or (ii) all of the claim(s) that you find infringed are invalid, then you need go no further in your deliberations with respect to the Acushnet patents-in-suit. On the other hand, if you decide that at least one claim of Acushnet's patents-in-suit is both infringed and not invalid, you must then turn to the issue of damages.

## 5.2    COMPENSATORY DAMAGES IN GENERAL [AGREED]

The patent laws provide that in the case of infringement of a valid patent claim, the owner of the patent shall be awarded damages adequate to compensate for the infringement, but in no event less than a reasonable royalty for the use made of the invention by the infringer. Damages are compensation for all losses suffered as a result of the infringement.

It is not relevant to the question of damages whether the infringer benefited from, realized profits from or even lost money as a result of the acts of infringement. The only issue is the amount necessary to adequately compensate the patent owner for the infringement. Adequate compensation should return the patent owner to the position it would have occupied had there been no infringement.

5.3        **FORESEEABILITY** [43] **[DISPUTED — Bridgestone's Proposed Instruction Acushnet would not include]**

The fact that the accused party did not foresee that it would cause the patent owner's damage at the time it infringed is irrelevant to the computation of damages.

---

[43]        1993 D. Del. Uniform Model Jury Instructions, Instruction 6.2.

**5.4    BURDEN OF PROOF – REASONABLE CERTAINTY [AGREED]**

If you find that either party has infringed any valid patent claims, you must determine the extent of damages.  The patent owner has the burden of proving damages by a preponderance of the evidence.  As you recall, that means that the patent owner has to produce evidence that, when considered in the light of all the facts, leads you to believe that what the patent owner claims is more likely true than not.  To put it differently, if you were to put the patent owner's and the accused infringer's evidence on the opposite sides of a scale, the evidence supporting the patent owner's claims would have to make the scales tip somewhat on its side.

The patent owner is entitled to damages that can be proven with "reasonable certainty."   On one hand, reasonable certainty does not require proof of damages with mathematical precision.  Mere difficulty in ascertaining damages is not fatal to the patent owner.  On the other hand, the patent owner is not entitled to speculative damages, that is, you should not award any amount for loss, which, although possible, is wholly remote or left to conjecture and/or guess.  You may base your evaluation of "reasonable certainty" on opinion evidence.

**5.5    DATE DAMAGES MAY BEGIN – MARKING [AGREED]**

The date that the patent owner first gave notice to the accused party of its claim of patent infringement is the date at which patent damages begin to be calculated. This date is in dispute here, and it is up to you to determine what that date is. The patent owner has the burden to prove by a preponderance of the evidence the date it gave notice.

The patent owner can give notice in two ways. The first way is to give notice to the public in general. The patent owner can do this by placing the word "patent" or the abbreviation "PAT" with the number of the patent on substantially all the products it sold that included the patented invention. This type of notice is effective from the date the patent owner and its licensees began to mark substantially all of their products that use the patented invention with the patent number. If the patent owner and its licensees did not mark substantially all of their products that use the patented invention with the patent number, then the patent owner did not provide notice in this way.

A second way the patent owner can provide notice of its patents is to communicate to the accused party a specific charge that the allegedly infringing product infringed a specific patent. This type of notice is effective from the time it is given.

If you find that the patent owner, before filing this lawsuit, did not properly mark its products or did not notify the accused party by communicating a specific charge that the allegedly infringing products infringed, then the patent owner can only recover damages for infringement that occurred after it filed suit on March 7, 2005.

**5.6    REASONABLE ROYALTY AS A MEASURE OF DAMAGES** [44]
**[DISPUTED – Bridgestone's Proposed Instruction]**

A reasonable royalty is the minimum permissible measure of damages set by the patent laws and is not necessarily the actual measure of damages, but is merely the floor below which damages should not fall. Accordingly, you may find damages in excess of a reasonable royalty if you find that the facts so warrant.

A reasonable royalty is the amount of money that would be agreed to in a hypothetical arms-length negotiation between the patent owner and the infringer, with both operating under the assumption that the negotiated patents are valid and are being infringed.

The reasonable royalty must be calculated as of the point in time just prior when when infringement began, which in this case would be the July 2000 time period.

In the hypothetical arms-length negotiation, you must assume that both parties are willing participants. You must assume that the person negotiating on behalf of the infringer was willing to take a license and would have known that the asserted claims were valid, enforceable and infringed. You must also assume that the patent owner was willing to grant a license. Finally, you should also assume that both the patent owner and the infringer knew all pertinent information at the time of the hypothetical negotiations.

Having that in mind, you may consider any relevant facts in determining the reasonable royalty for the infringer's use of the patented invention, including the opinion testimony of experts.

---

[44]    From *Affymetrix* Instructions at 5.6 and 1993 Model Instructions at 6.10.

**5.6    REASONABLE ROYALTY AS A MEASURE OF DAMAGES[45] [DISPUTED –**

**Acushnet's Proposed Instruction]**

A reasonable royalty is the amount of money that would be agreed to in a hypothetical arms length negotiation between the owner of a patent and the infringer.

In determining a reasonable royalty, you should place yourself at the point in time at which you believe the arms-length negotiation that I just referred to would have been likely to have occurred. This is typically just before the alleged infringement began.

In the hypothetical arms-length negotiation, you must assume that both parties are willing participants, and that the person negotiating on behalf of the infringer was willing to take a license.

Having that in mind, you may consider any relevant fact in determining the reasonable royalty for the infringer's use of the patented invention, including the opinion testimony of experts.

---

[45] Del. Model Instructions at 6.10.

**5.7     FACTORS FOR DETERMINING REASONABLE ROYALTY  [AGREED]**

In determining such a reasonable royalty, some of the factors that should be considered are:

1.     the royalties received by the patent owner for licensing others under the patents-in-suit;

2.     the rates paid by the licensee for the use of other patents comparable to the patents-in-suit;

3.     the nature and scope of the license, as exclusive or non-exclusive; or as restricted or nonrestricted in terms of territory or with respect to whom the manufactured product may be sold;

4.     the patent owner's established policy and marketing program to maintain its patent exclusivity by not licensing others to use the invention or by granting licenses under special conditions designed to preserve that exclusivity;

5.     the commercial relationship between the patent owner and the infringer, such as, whether they are competitors in the same territory in the same line of business;

6.     the effect of selling the patented specialty in promoting sales of other products of the infringer, the existing value of the invention to the patent owner as a generator or sales of his non-patented items, and the extent of such derivative or convoyed sales;

7.     the duration of the patent and the term of the licenses;

8.     the established profitability of the product made under the patent, its commercial success, and its current popularity;

9.  the utility and advantages of the patent property over the old modes or devices, if any, that had been used for working out similar results;

10. the nature of the patented invention, the character of the commercial embodiment of it as owned and produced by the patent owner, and the benefits to those who have used the invention;

11. the extent to which the infringer has made use of the invention, and any evidence probative of the value of that use;

12. the portion of the profit or of the selling price that may be customary in the particular business or in comparable businesses to allow for the use of the invention or analogous inventions;

13. the portion of the realizable profit that should be credited to the invention as distinguished from non-patented elements, the manufacturing process, business risks, or significant features or improvements added by the infringer;

14. the opinion testimony of qualified experts; and

15. any other economic factor that a normally prudent businessman would, under similar circumstances, take into consideration in negotiating the hypothetical license.

**5.8     INTEREST[46] [DISPUTED – Bridgestone's Proposed Instruction; Acushnet would not include this instruction]**

Neither of the parties' calculations include interest. Therefore, in arriving at your damages calculation, you should not consider interest in any way, because it is the function of the Court to award or deny interest.

---

[46]     From *Affymetrix* Instructions at 5.8.

## 5.9    CLOSING STATEMENT - DAMAGES [AGREED]

In determining the issue of damages, the Court instructs you that the law does not permit an award of a greater sum than the monetary loss which the patent owner has suffered as a result of the alleged infringement.  If, under the Court's instructions, you find that either party is entitled to damages, in fixing the amount of such damages you may not include and/or add to an otherwise just award any sum for purposes of punishing the infringing party or to set an example.

## 5.10    CURATIVE INSTRUCTION [AGREED]

The fact that I have instructed you regarding damages should not be construed as intimating any view of the Court as to which party is entitled to prevail in this case. Instructions regarding damages are given for your guidance in the event that the evidence leads you to find in favor of either party.

## 6.0     DELIBERATION AND VERDICT

### 6.1     INTRODUCTION [AGREED]

That concludes the part of my instructions explaining the rules for considering some of the testimony and evidence. Now let me finish up by explaining some things about your deliberations in the jury room, and your possible verdicts.

Once you start deliberating, do not talk to the jury officer, or to me, or to anyone else except each other about the case. If you have any questions or messages, you must write them down on a piece of paper, sign them, and then give them to the jury officer. The officer will give them to me, and I will respond as soon as I can. I may have to talk to the lawyers about what you have asked, so it may take me some time to get back to you. Any questions or messages normally should be sent to me through your foreperson, who by custom of this Court is juror No. 1.

One more thing about messages. Do not ever write down or tell anyone how you stand on your votes. For example, do not write down or tell anyone that you are split 4-4, or 6-2, or whatever your vote happens to be. That should stay secret until you are finished.

## 6.2    UNANIMOUS VERDICT [AGREED]

Your verdict must represent the considered judgment of each juror. In order for you as a jury to return a verdict, it is necessary that each juror agree to the verdict. Your verdict must be unanimous.

It is your duty, as jurors, to consult with one another and to deliberate with a view towards reaching an agreement, if you can do so without violence to your individual judgment. Each of you must decide the case for yourself, but do so only after an impartial consideration of the evidence with your fellow jurors. In the course of your deliberations, do not hesitate to reexamine your own views and change your opinion, if convinced it is erroneous. But do not surrender your honest conviction as to the weight or effect of evidence solely because of the opinion of your fellow jurors, or for the purpose of returning a verdict. Remember at all times that you are not partisans. You are judges – judges of the facts. Your sole interest is to seek the truth from the evidence in the case.

A form of verdict has been prepared for you. [Court explains form of verdict to the jury.] You will take this form to the jury room and when and if you have reached unanimous agreement as to your verdict, you will have your foreperson fill in, date and sign the form. You will then return to the courtroom and your foreperson will give your verdict.

It is proper to add the caution that nothing said in these instructions and nothing in the form of verdict is meant to suggest or convey in any way or manner any intimation as to what verdict I think you should find. What the verdict shall be is the sole and exclusive duty and responsibility of the jury.

## 6.3    DUTY TO DELIBERATE [AGREED]

Now that all the evidence is in and the arguments are completed, you are free to talk about the case in the jury room. In fact, it is your duty to talk with each other about the evidence, and to make every reasonable effort you can to reach unanimous agreement. Talk with each other, listen carefully and respectfully to each other's views, and keep an open mind as you listen to what your fellow jurors have to say. Try your best to work out your differences. Do not hesitate to change your mind if you are convinced that other jurors are right and that your original position was wrong.

But do not ever change your mind just because other jurors see things differently, or just to get the case over with. In the end, your vote must be exactly that – your own vote. It is important for you to reach unanimous agreement, but only if you can do so honestly and in good conscience.

No one will be allowed to hear your discussions in the jury room, and no record will be made of what you say. So you should all feel free to speak your minds.

Listen carefully to what the other jurors have to say, and then decide for yourself.

**6.4     COURT HAS NO OPINION [AGREED]**

Let me finish up by repeating something that I said to you earlier.  Nothing that I have said or done during this trial was meant to influence your decision in any way.  You must decide the case yourselves based on the evidence presented.

## CERTIFICATE OF SERVICE

I certify that on May 22, 2007 I electronically filed the foregoing with the Clerk of the Court using CM/ECF, which will send notification of such filing(s) to Richard L. Horwitz and David E. Moore.

I further certify that I caused copies to be served upon the following on May 22, 2007 in the manner indicated:

### BY E-MAIL & HAND

Richard L. Horwitz, Esquire
POTTER ANDERSON & CORROON LLP
1313 N. Market Street
Wilmington, DE  19801

### BY E-MAIL & FEDERAL EXPRESS

Joseph P. Lavelle, Esquire
HOWREY LLP
1299 Pennsylvania Avenue, NW
Washington, DC  20004


*/s/ Leslie A. Polizoti*
Leslie A. Polizoti (#4299)
MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Wilmington, DE  19801
(302) 658-9200
lpolizoti@mnat.com