IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| BRIDGESTONE SPORTS CO., LTD., and BRIDGESTONE GOLF, INC., | ) ) ) | |
| Plaintiffs, | ) ) | C. A. No. 05-132 (JJF) |
| v. | ) ) | **PUBLIC VERSION** |
| ACUSHNET COMPANY, | ) ) | |
| Defendant. | ) | |

### ACUSHNET COMPANY'S REPLY IN SUPPORT OF IT'S *DAUBERT* MOTION TO EXCLUDE PORTIONS OF THE EXPERT TESTIMONY OF LARRY CADORNIGA

OF COUNSEL:

Alan M. Grimaldi
Joseph P. Lavelle
Kenneth W. Donnelly
HOWREY LLP
1299 Pennsylvania Avenue, N.W.
Washington, DC 20004
Tel: (202) 783-0800

Dated: May 18, 2007
Public Version Dated: May 25, 2007
797979/ 28946

Richard L. Horwitz (#2246)
David E. Moore (#3983)
POTTER ANDERSON & CORROON LLP
Hercules Plaza, 6th Floor
1313 North Market Street
P. O. Box 951
Wilmington, DE 19899-0951
Tel: (302) 984-6000
rhorwitz@potteranderson.com
dmoore@potteranderson.com

*Attorneys for Defendant*
*Acushnet Company*

**TABLE OF CONTENTS**

I.   MR. CADORNIGA IS UNQUALIFIED TO GIVE HIS OPINION ON STATISTICS AND, BESIDES THAT, NEVER DID AN ANALYSIS TO SUPPORT HIS OPINION .................................................................................................1

II.  BRIDGESTONE HAS NOT ESTABLISHED THAT MR. CADORNIGA'S NOW-CLAIMED METHODS ARE RELIABLE ......................2

III. CONCLUSION.................................................................................................5

# TABLE OF AUTHORITIES

**CASES**

**Page(s)**

*Glaros v. H.H. Robertson Co.*,
   797 F.2d 1564 (Fed. Cir. 1986)..................................................................................2

*Invitrogen Corp. v. Clontech Labs., Inc.*,
   429 F.3d 1052 (Fed. Cir. 2005)..................................................................................5

*Johnston v. IVAC Corp.*,
   885 F.2d 1574 (Fed. Cir. 1989)..................................................................................5

*Kerrigan v. Maxon Ind.*,
   223 F. Supp. 2d 626 (E.D. Pa. 2002).........................................................................5

*Waldorf v. Shuta*,
   142 F.3d 601 (3d Cir. 1998).......................................................................................2

**STATUTES, RULES & REGULATIONS**

Fed. R. Civ. P. 56(d) ..........................................................................................................2

Acushnet Company ("Acushnet") files this reply memorandum in support of its *Daubert* Motion to Exclude Portions of the Expert Testimony of Larry Cadorniga.

## I. MR. CADORNIGA IS UNQUALIFIED TO GIVE HIS OPINION ON STATISTICS AND, BESIDES THAT, NEVER DID AN ANALYSIS TO SUPPORT HIS OPINION

In its opening brief, Acushnet showed that Mr. Cadorniga is unqualified as a statistical expert and that he failed to undertake any statistical analysis that will assist the trier of fact to determine infringement on an entire massive population of golf balls. (D.I. 463). In particular, [REDACTED]. Incredibly, even apart from his admitted lack of qualifications in statistics, Mr. Cadorniga admits he did not apply any particular technique – let alone a scientific one – to render his opinion.

In its opposition, Bridgestone fails to proffer any evidence that Mr. Cadorniga, or its other expert, Dr. Caulfield, is indeed qualified to offer the jury an opinion concerning the statistical significance of the test undertaken on these balls. Bridgestone does not and cannot dispute Mr. Cadorniga's lack of statistical qualifications. He said so himself. (*See* D.I. 369, Ex. 6, 3/12/2007 Cadorniga Tr. at 19:1-3; 278:22–280:12). Instead, all that Bridgestone argues is that Mr. Cadorniga is a "true golf ball expert" who has provided a "detailed and sound opinion" of infringement and who relied upon a "well-accepted" industry practice regarding the properties of golf balls. (D.I. 495 at 1). On the last point in particular, Bridgestone asserts this even though: (A) there is no reliance on this "well-accepted" industry practice anywhere to be found in Mr. Cadorniga's report (*see, e.g., id.*, D.I. 495, Ex. 9, 1/16/2007 Cadorniga Report at 6); and (B) Mr. Cadorniga testified that he applied no particular analysis to his opinion. (D.I. 369, Ex. 1, 3/12/2007 Cadorniga Tr. at 275:20 to 278:13). Indeed, in view of Mr. Cadorniga's testimony and the dearth of

analysis in his report on this issue, the most favorable and fair characterization one might give his allegedly "detailed and sound" analysis is that it was simply a "gut reaction."

No matter Bridgestone's after-the-fact effort to shine up Mr. Cadorniga's analysis, however, the bottom line is that he is admittedly not an expert in statistics and he undertook no particular form of analysis at all when he rendered his opinion that "the accused Acushnet golf balls tested" were "a statistically significant sample." "Gut reaction" aside, on these facts, ███████████████████████████████████████ ███████████████████████████████████████. Accordingly, Acushnet is entitled to an order precluding Mr. Cadorniga from offering "expert" testimony that all accused golf balls infringe the '707, '834, and '791 patents. *See* Fed. R. Civ. P. 56(d); *Glaros v. H.H. Robertson Co.*, 797 F.2d 1564, 1570 (Fed. Cir. 1986). At a minimum, Mr. Cadorniga's testimony on infringement should be limited to an opinion as to the golf balls actually tested.

## II. BRIDGESTONE HAS NOT ESTABLISHED THAT MR. CADORNIGA'S NOW-CLAIMED METHODS ARE RELIABLE

Even if Bridgestone can re-write history with its assertion that Mr. Cadorniga performed some form of "well-accepted" analysis in rendering his extrapolating opinion, its argument still misses the point – Bridgestone cannot rely upon Mr. Cadorniga to extrapolate from the measurements reported in Acushnet documents, plus Dr. Caulfield's tests, to render an opinion regarding infringement for balls that he did not measure. Acushnet's competitive ball data, for example, does not change the undisputed fact that Mr. Cadorniga is not qualified to give a statistical opinion. His opinion that these specific balls are representative of all accused balls is nothing other than a layman's speculative commentary that is therefore inadmissible as expert testimony. *See Waldorf v. Shuta*, 142 F.3d 601, 625 (3d Cir. 1998). Mr. Cadorniga's analysis is reliable for proving the properties of the balls that Dr. Caulfield tested, and nothing more.

2

Furthermore, Bridgestone has proffered no evidence to show that the balls that Dr. Caulfield tested are representative of the entire population of accused golf balls. Instead, the evidence is that Bridgestone "just sent somebody out to the store and bought some balls." (*See* D.I. 369, Ex. 1, 3/12/2007 Cadorniga Tr. at 283:20-22). In one case, the balls were purchased used from "lostgolfballs.com," and likely sat first in the bottom of the pond. (*See* D.I. 488, Ex. 3, picture of egg carton marked Pro V1 392; D.I. 488, Ex. 4, page from lostgolfballs.com accessed on May 11, 2007). On the other hand, the un-rebutted testimony of Acushnet's well-qualified expert established that it is essential that the golf balls tested by Dr. Caulfield be representative of all of the accused products – otherwise it is impossible to extrapolate the results of those tests to all of the accused products. (*See* D.I. 369, Ex. 15, 2/20/2007 Sutton Report at ¶ 15).

Also, Acushnet pointed out in its opening brief that Mr. Cadorniga's "mean value" analysis is meaningless in the field of statistics, and is an improper method of proving infringement. Bridgestone argues that it is proper because Acushnet uses "averaging" in other contexts. Bridgestone's argument is unsound, however, because Acushnet does not use "averaging" for the purpose that Mr. Cadorniga uses it.

Mr. Cadorniga uses the "average" of tests data to prove the properties of all of the hundreds of millions of accused golf balls. Acushnet never uses the "average" to prove the properties of all of its balls.

3

[REDACTED]

As for Bridgestone's argument that Dr. Caulfield performed all the testing with the appropriate equipment, and in-line with industry standards and protocols, Bridgestone misses the point still again. The propriety of Dr. Caulfield's testing methods and protocols are not at issue in Acushnet's motion. [REDACTED]. Moreover, as with Mr. Cadorniga, it is undisputed that Dr. Caulfield has not provided, nor has Bridgestone shown that he is qualified to provide, any analysis or opinion regarding the statistical significance of the any particular balls that he tested in connection with his expert report.[1]

All in all, Bridgestone's opposition is nothing more than a post hoc attempt by its attorneys to fill in the reasons for Mr. Cadorniga's opinion while ignoring his lack of credentials to have the extrapolating opinion that he gave. Mr. Cadorniga explained his analysis (what there was of it) and his reasoning in his deposition – he stated that his opinions on infringement were based upon Dr. Caulfield's testing – and nothing else. (*See* D.I. 369, Ex. 1, 3/12/2007 Cadorniga Tr. at 291:7 - 292:6; 294:1 - 295:10). Bridgestone's attorneys cannot supply additional bases to connect the facts in the record to Mr. Cadorniga's opinion now.[2] "Unsubstantiated attorney argument regarding the

---

[1] Bridgestone never designated Dr. Caulfield as an expert witness in statistics during the expert discovery phase of this case; nor does Dr. Caulfield purport to be an expert on statistics; in his report, he states that he is competent to testify regarding the "material properties and material property testing of golf balls." (D.I. 495, Ex. 2, 1/16/2007 Caulfield Report at ¶ 8). Moreover, Bridgestone does not intend to call him to testify to statistical matters at trial. (*See* D.I. 463, Ex. 1, 5/2/2007 Bridgestone's Proposed Witness List at 5). Bridgestone had ample time to provide a rebuttal witness to Acushnet's statistical expert, Clifton Sutton, during expert discovery, which it failed to do.

[2] Bridgestone includes a table in its motion of hardness testing upon which it claims Mr. Cadorniga relied. Five of the documents identified on the table, records from the

4

meaning of technical evidence is no substitute for competent, substantiated expert testimony." *Invitrogen Corp. v. Clontech Labs., Inc.*, 429 F.3d 1052, 1068 (Fed. Cir. 2005) (discrediting expert where the only connection between record evidence cited by him and his conclusions was attorney argument); *Johnston v. IVAC Corp.*, 885 F.2d 1574, 1581 (Fed. Cir. 1989) (attorney argument is no substitute for evidence). Acushnet has demonstrated that Mr. Cadorniga's expert opinion is at best nothing more than an account of the examination of the golf balls tested by Dr. Caulfield, not "an informative explanation of the methods upon which he relied to test his theory that" all of the accused golf balls infringe the '707, '834, and '791 patents. *See Kerrigan v. Maxon Ind.*, 223 F.Supp.2d 626, 638 (E.D. Pa 2002) (rejecting an expert's extrapolation from observations of one device to a theory regarding the behavior of a proposed new design).

### III. CONCLUSION

Acushnet respectfully requests that its motion be granted.

Respectfully submitted,

POTTER ANDERSON & CORROON LLP

| | |
|---|---|
| OF COUNSEL:<br><br>Alan M. Grimaldi<br>Joseph P. Lavelle<br>Kenneth W. Donnelly<br>HOWREY LLP<br>1299 Pennsylvania Ave., N.W.<br>Washington, DC 20004<br>Telephone: (202) 783-0800<br><br>Dated: May 18, 2007<br>Public Version Dated: May 25, 2007<br>797979 / 28946 | By: */s/ Richard L. Horwitz*<br>Richard L. Horwitz (#2246)<br>David E. Moore (#3983)<br>Hercules Plaza, 6th Floor<br>1313 N. Market Street<br>P.O. Box 951<br>Wilmington, DE 19899-0951<br>(302) 984-6000<br>rhorwitz@potteranderson.com<br>dmoore@potteranderson.com<br><br>*Attorneys for Defendant*<br>*Acushnet Company* |

---

Competitive Ball Database showing properties of the Pro V1 golf ball relevant to the '707 patent, were not mentioned in Mr. Cadorniga's expert report on the '707 patent. (*See* D.I. 495 Ex. 1, Tab E p. 5-9).

5

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

### CERTIFICATE OF SERVICE

I, Richard L. Horwitz, hereby certify that on May 25, 2007, the attached document was hand delivered to the following persons and was electronically filed with the Clerk of the Court using CM/ECF which will send notification to the registered attorney(s) of record that the document has been filed and is available for viewing and downloading:

Jack B. Blumenfeld
Maryellen Noreika
Leslie A. Polizoti
Morris, Nichols, Arsht & Tunnell
1201 N. Market Street
Wilmington, DE  19801

I hereby certify that on May 25, 2007, I have Electronically Mailed the documents to the following:

Robert M. Masters
Paul, Hastings, Janofsky & Walker LLP
875 15th Street, N.W.
Washington, D.C.  20005
RobMasters@paulhastings.com

/s/ Richard L. Horwitz
Richard L. Horwitz
David E. Moore
Potter Anderson & Corroon LLP
Hercules Plaza – Sixth Floor
1313 North Market Street
P.O. Box 951
Wilmington, DE  19899-0951
(302) 984-6000
rhorwitz@potteranderson.com
dmoore@potteranderson.com

680012 / 28946