IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| BRIDGESTONE SPORTS CO., LTD., and BRIDGESTONE GOLF, INC., | ) ) ) C. A. No. 05-132 (JJF) |
| Plaintiffs, | ) ) ) **PUBLIC VERSION** |
| v. | ) ) |
| ACUSHNET COMPANY, | ) ) |
| Defendant. | ) |

### ACUSHNET'S REPLY BRIEF IN SUPPORT OF ITS *DAUBERT* MOTION TO EXCLUDE PORTIONS OF THE EXPERT TESTIMONY OF <u>KIM BLAIR AND JOHN CALABRIA</u>

OF COUNSEL:

Alan M. Grimaldi
Joseph P. Lavelle
Kenneth W. Donnelly
HOWREY LLP
1299 Pennsylvania Avenue, N.W.
Washington, DC 20004
Tel: (202) 783-0800

Dated: May 18, 2007
Public Version Dated: May 25, 2007
797982/ 28946

Richard L. Horwitz (#2246)
David E. Moore (#3983)
POTTER ANDERSON & CORROON LLP
Hercules Plaza, 6th Floor
1313 North Market Street
P. O. Box 951
Wilmington, DE 19899-0951
Tel: (302) 984-6000
rhorwitz@potteranderson.com
dmoore@potteranderson.com

*Attorneys for Defendant*
*Acushnet Company*

## TABLE OF CONTENTS

I.  DR. BLAIR'S TESTIMONY DOES NOT MEET THE
    REQUIREMENTS OF DAUBERT OR RULE 702 ................................................ 1

    A.  The Un-Rebutted Facts Show That Dr. Blair's Testimony is
        Nothing More Than Layman Commentary ................................................ 1

    B.  Bridgestone Fails to Establish Dr. Blair's Qualifications ........................ 2

II. MR. CALABRIA LIKEWISE HAS NO RELIABLE BASIS FOR HIS
    STATEMENTS ................................................................................................. 4

III. CONCLUSION ................................................................................................. 5

## TABLE OF AUTHORITIES

**CASES**

*Calhoun v. Yamaha Motor Corp., U.S.A.*,
    350 F.3d 316 (3d Cir. 2003)............................................................................3

*Concord Boat Corp. v. Brunswick Corp.*,
    207 F.3d 1039 (8th Cir. 2000) ........................................................................4

*Kerrigan v. Maxon Indus.*,
    223 F. Supp. 2d 626 (E.D. Pa 2002) ..............................................................2

**STATUTES, RULES & REGULATIONS**

Fed. R. Civ. P. 702 ................................................................................................ 1, 4-5

Acushnet Company ("Acushnet") files this reply brief in further support of its motion to exclude portions of the expert testimony of Kim Blair and John Calabria.

In its opening brief, Acushnet very selectively targeted portions of Mr. Blair's expert report and two sentences in Mr. Calabria's expert report to exclude from evidence at trial. Acushnet further gave specific bases for the exclusion, citing extensively to Mr. Blair's testimony. In its response, Bridgestone fails to rebut any of Acushnet's points. Instead, it spends the first four pages of its opposition summarizing the CVs of Dr. Blair and Mr. Calabria without making any connection to how their experience relates to their specific testimony. (*See* D.I. 492 at 1-4). Bridgestone then spends the last four pages summarily concluding that the experts' testimony meets the *Daubert* factors, again without citing to any specific testimony or the basis therefore. (*Id.* at 4-8). None of this is sufficient to defeat Acushnet's motion.

## I. DR. BLAIR'S TESTIMONY DOES NOT MEET THE REQUIREMENTS OF DAUBERT OR RULE 702

### A. The Un-Rebutted Facts Show That Dr. Blair's Testimony is Nothing More Than Layman Commentary

In its opening brief, Acushnet demonstrated (1) that Dr. Blair is not qualified to opine regarding the subject matter in Sections VIII-XI of his expert report (Introduction of the Performance Solid Ball, Innovations in Solid Ball Technology, Acushnet's Entry into the Performance Solid Ball Market and Acushnet's Commercial Success with the Pro V1 Ball), (2) that none of Dr. Blair's testimony is reliable since it is simply based on his own *ipse dixit*, which he admits may not be true, and (3) that his testimony will provide no assistance to the trier of fact other than that of an ordinary layman. (D.I. 458 at 6-9).

Specifically, Acushnet proved the following:

- Dr. Blair had *never* devoted any professional time to working on golf-related research or investigations until the year 2000. (D.I. 458, Ex. 4, Blair Tr. at 11:13-24). Only twice in his career had he been involved in matters specific to golf

balls – and both of those were his supervision of MIT undergraduate thesis related to the aerodynamics and dimple patterns on golf balls. (*Id.* at 35:20-36:3; 11:22-13:10; 15:13-16:5).

- Dr. Blair had *never* authored any papers on golf balls or golf ball technology, never made golf balls, worked for a golf ball company or conducted any professional research in the area of golf balls. (*Id.* at 74:1-19). Other than the patents in suit, Dr. Blair had *never* read a patent related to golf balls. The first time Dr. Blair ever visited a golf ball manufacturing facility was when he visited Bridgestone's Covington, Georgia facility. Dr. Blair has never spoken to any professional golfers. (*Id.* at 77:5-79:6).

- For his opinion, Dr. Blair relied solely on his own internet research, as well as selected exhibits from Bill Morgan's deposition testimony. (*Id.* at 49:16-54:21; 56:9 -58:19). Dr. Blair's testimony was simply a report of what the documents said, which is nothing more than a layman's report, and therefore inadmissible as expert testimony. (*Id.* at 128:8-130:4).

Bridgestone has failed to acknowledge, let alone rebut, any of this evidence.

### B.   Bridgestone Fails to Establish Dr. Blair's Qualifications

The full extent of Bridgestone's argument that Dr. Blair is qualified is Bridgestone's statement: "There is no doubt [] Dr. Blair... [is] qualified." (D.I. 492 at 7). Without more, Bridgestone has failed to meet its burden. *See Kerrigan v. Maxon Indus.*, 223 F. Supp. 2d 626, 630 (E.D. Pa 2002) (The plaintiff must establish the expert's qualifications and the reliability and fit of the proposed testimony by a "preponderance of proof.").

Even if Bridgestone could show that Dr. Blair is qualified to render his opinions, Bridgestone has failed to show that his opinions are reliable. Bridgestone argues that Dr. Blair's opinions are reliable solely because his report is "thoroughly and fully annotated

2

with citations to the record developed in this case to date." (D.I. 492 at 7). To be considered reliable, however, an expert's opinion must be based on the "methods and procedures of science" rather than on "subjective belief or unsupported speculation." *Calhoun v. Yamaha Motor Corp., U.S.A.*, 350 F.3d 316, 321 (3d Cir. 2003).

Dr. Blair himself admitted that many of his conclusions were speculation based on his subjective conclusions gleaned from hearsay in newspaper articles and other materials he found on the internet related to topics he otherwise knew nothing about. Dr. Blair admitted, for example, that his statement "[b]y the mid-1990's, most of industry had been turning away from wound balls," simply was the "opinion of manufacturers" in the industry that he read in the articles he found on-line. And he admitted that he really had no idea what was going on at Acushnet when he said that "it appeared there was no effort to innovate in their [wound balls] design." (D.I. 458, Ex. 4, Blair Tr. at 122:20-124:8).

Dr. Blair also readily admitted that he never read the prosecution histories of any of the patents-in-suit; or the prior art of the prosecution histories of the patents; or any other golf ball patents at all. (*Id.* at 66:19-69:5). Dr. Blair did not analyze the claims of the patent, nor did he identify which Bridgestone patents were used in which Bridgestone balls or if any of the patents were in use in the golf ball art at all. (*Id.* at 96:10-98:18).

Finally, Bridgestone argues in its opposition that Dr. Blair's testimony is relevant and will assist the trier of fact because Acushnet's "copying, careful monitoring and benchmarking off of Bridgestone's golf balls and patents is relevant to the issues of validity and infringement."[1] (D.I. 492 at 7). However, although Dr. Blair stated in his report that "Acushnet was quick to recognize, but slow to respond, to the industry shift in the 1990's and struggled to develop a successful entry into the performance solid ball

---

[1] This is the first time that Bridgestone has informed Acushnet that it intends to offer Dr. Blair to opine on Acushnet's "copying, careful monitoring and benchmarking off of Bridgestone's golf balls and patents." On that ground too Acushnet seeks to exclude Dr. Blair's testimony.

3

market," he testified that he did not "really feel that [] [he] had enough information about the details of the patents and what they were trying to do at that particular time" to opine whether or not Acushnet was having trouble designing around existing golf ball patents or "developing golf balls that were competitive on performance without infringing on Bridgestone's suite of intellectual property covering solid ball technology." (D.I. 458, Ex. 4, Blair Tr. at 130:13-134:13).

Thus, other than the few articles he read, Dr. Blair did not know what was going on in the golf ball industry in 2000, and he admittedly had no idea what was going on at Acushnet during that time period. Since Dr. Blair's testimony is pure speculation, it should be excluded. *Concord Boat Corp. v. Brunswick Corp.*, 207 F.3d 1039, 1057 (8th Cir. 2000) (where there are "deficiencies in the foundation of the opinion," the expert's conclusions are "mere speculation" and inadmissible). He offers nothing more than a layperson would and therefore his testimony fails under *Daubert* and Rule 702.

Bridgestone also contends that Dr. Blair's testimony is relevant because it will rebut Acushnet's arguments that Bridgestone's patents exist in a crowded art. (D.I. 492 at 7-8). However, it is hard to believe that a man who has never read another patent in his life would be qualified to opine whether the patents-in-suit exist in a crowded art.

## II. MR. CALABRIA LIKEWISE HAS NO RELIABLE BASIS FOR HIS STATEMENTS

In its opening brief, Acushnet challenged only the admissibility of Mr. Calabria's testimony regarding Acushnet's entrance into the solid ball market. On pages 16 and 17 of his opening expert report, Mr. Calabria opines that in 1995-96, Acushnet "finally began to recognize the significance of this new multilayer solid ball technology," but it was not until 2000 that Acushnet "appears to have had no choice but to rush to produce a multilayer solid ball." (D.I. 458, Ex. 3, Calabria 1/16/2007 Report at 16-17). In response to the fact that Mr. Calabria has no support for this statement and his equivocation is obvious in the use of the phrase "appears to," Bridgestone points only to

4

an Acushnet document ████████████████████████████████████." (D.I. 492 at 6). Bridgestone has failed to establish that this is reliable testimony and therefore it is inadmissible under Rule 702.

### III. CONCLUSION

For the foregoing reasons, Acushnet respectfully requests the Court grant its motion to exclude the portions of the expert testimony of Kim Blair and John Calabria identified above.

POTTER ANDERSON & CORROON LLP

OF COUNSEL:

Alan M. Grimaldi
Joseph P. Lavelle
Kenneth W. Donnelly
HOWREY LLP
1299 Pennsylvania Ave., N.W.
Washington, DC 20004
Telephone: (202) 783-0800

Dated: May 18, 2007
Public Version Dated: May 25, 2007
797982 / 28946

By:  /s/ Richard L. Horwitz
Richard L. Horwitz (#2246)
David E. Moore (#3983)
Hercules Plaza, 6th Floor
1313 N. Market Street
P.O. Box 951
Wilmington, DE 19899-0951
(302) 984-6000
rhorwitz@potteranderson.com
dmoore@potteranderson.com

*Attorneys For Defendant Acushnet Company*

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

## CERTIFICATE OF SERVICE

I, Richard L. Horwitz, hereby certify that on May 25, 2007, the attached document was hand delivered to the following persons and was electronically filed with the Clerk of the Court using CM/ECF which will send notification to the registered attorney(s) of record that the document has been filed and is available for viewing and downloading:

Jack B. Blumenfeld
Maryellen Noreika
Leslie A. Polizoti
Morris, Nichols, Arsht & Tunnell
1201 N. Market Street
Wilmington, DE 19801

I hereby certify that on May 25, 2007, I have Electronically Mailed the documents to the following:

Robert M. Masters
Paul, Hastings, Janofsky & Walker LLP
875 15th Street, N.W.
Washington, D.C. 20005
RobMasters@paulhastings.com

/s/ Richard L. Horwitz
Richard L. Horwitz
David E. Moore
Potter Anderson & Corroon LLP
Hercules Plaza – Sixth Floor
1313 North Market Street
P.O. Box 951
Wilmington, DE 19899-0951
(302) 984-6000
rhorwitz@potteranderson.com
dmoore@potteranderson.com

680012 / 28946