IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| BRIDGESTONE SPORTS CO., LTD., and BRIDGESTONE GOLF, INC., <br><br> Plaintiffs, <br><br> v. <br><br> ACUSHNET COMPANY, <br><br> Defendant. | ) <br> ) C. A. No. 05-132 (JJF) <br> ) <br> ) <br> ) **PUBLIC VERSION** <br> ) <br> ) <br> ) <br> ) <br> ) |

**ACUSHNET'S REPLY MEMORANDUM IN SUPPORT OF
ITS DAUBERT MOTION TO EXCLUDE THE TESTIMONY AND REPORTS OF
BRIDGESTONE'S EXPERTS REGARDING INFRINGEMENT OF U.S. PATENT
NOS. 5,252,652 AND 6,634,961**

OF COUNSEL:

Alan M. Grimaldi
Joseph P. Lavelle
Kenneth W. Donnelly
HOWREY LLP
1299 Pennsylvania Avenue, N.W.
Washington, DC 20004
Tel: (202) 783-0800

Dated: May 18, 2007
Public Version Dated: May 25, 2007
797964 / 28946

Richard L. Horwitz (#2246)
David E. Moore (#3983)
POTTER ANDERSON & CORROON LLP
Hercules Plaza, 6th Floor
1313 North Market Street
P. O. Box 951
Wilmington, DE 19899-0951
Tel: (302) 984-6000
rhorwitz@potteranderson.com
dmoore@potteranderson.com

*Attorneys for Defendant
Acushnet Company*

# TABLE OF CONTENTS

| | | |
|---|---|---|
| I. | ACUSHNET'S MOTION IS PROCEDURALLY PROPER | 1 |
| II. | ACUSHNET NEVER TOLD BRIDGESTONE IT COULD IGNORE RECIPE CHANGE INFORMATION | 1 |
| III. | BRIDGESTONE'S EXPERTS' RELIANCE ON MR. DALTON'S DEPOSITION TESTIMONY WAS A PRETEXT FOR USING THE RECIPE IN THE GUIDELINES | 2 |
| IV. | BRIDGESTONE'S "NEW" JUSTIFICATIONS FOR ITS EXPERTS' FAILURES ARE UNAVAILING | 3 |
| V. | BRIDGESTONE HAD ACCESS TO RECIPE CHANGE DATA AND MESABI DATA DURING FACT DISCOVERY | 3 |
| VI. | BRIDGESTONE'S EXPERTS' UNSUPPORTED ASSUMPTIONS ABOUT THE PURITY OF ZDA AND ZN-PCTP ALSO RENDERS THEIR OPINIONS UNRELIABLE | 4 |

## TABLE OF AUTHORITIES

*Daubert V. Merrell Dow Pharmaceuticals, Inc.*,
    509 U.S. 579 (1993) ...................................................................................................... 1

*United States v. Downing*,
    753 F.2d 1224 (3d Cir. 1985)......................................................................................... 1

This is Acushnet Company's ("Acushnet") reply brief in further support of its Motion to Exclude the Testimony and Reports of Bridgestone's Experts Regarding U.S. Patent Nos. 5,252,652 and 6,634,961. (*See* D.I. 460).

## I. ACUSHNET'S MOTION IS PROCEDURALLY PROPER

Acushnet's *Daubert* motion is procedurally proper. It seeks the exclusion of testimony from Bridgestone's two infringement experts, Dr. Coughlin and Mr. Cadorniga, based on the fact that they disregarded the record evidence in this case and presented their infringement opinion based upon a fiction. If ever a situation called for a *Daubert* challenge, this is it. By its motion, Acushnet seeks the Court to preclude *inherently unreliable testimony* from experts, which is not sufficiently tied to the facts of the case. This is precisely the purpose of *Daubert* motions. "An additional consideration under Rule 702 . . . is whether expert testimony proffered in the case is sufficiently tied to the facts of the case that it will aid the jury in resolving a factual dispute." *Daubert v. Merrell Dow Pharms., Inc.,* 509 U.S. 579, 592 (1993) (quoting *United States v. Downing,* 753 F.2d 1224, 1242 (3d Cir. 1985)).

## II. ACUSHNET NEVER TOLD BRIDGESTONE IT COULD IGNORE RECIPE CHANGE INFORMATION

Bridgestone's only chance at proving infringement in this case is if it can convince the Court and then the jury that it is proper to rely exclusively on the single recipe of a guideline. If Bridgestone must acknowledge the reality that the recipe in the guideline does not reflect the core formulation actually used in Acushnet's products, its case is lost. Based on that foundation, Bridgestone attempts to argue that it is Acushnet's fault that Bridgestone's experts relied on the guideline recipe, *rather than actual recipes*, because Acushnet told them to. Again, this is wrong and is contrary to the record.

Acushnet never told Bridgestone that it could rely exclusively on the core recipe contained in the manufacturing guidelines; and there is no deposition testimony, document, or evidence otherwise, to which Bridgestone can point to dispute this. In fact,

despite taking over twenty depositions of Acushnet employees, Bridgestone never asked the direct question of whether such exclusive reliance is proper. Why? It is undoubtedly because Bridgestone already knew the answer and did not want to hear it.

While Bridgestone attempts to gloss over the point in its opposition, it admits, as it must, that Acushnet informed it that *recipe change notices* must be considered. (D.I. 494, p. 3-4). Bridgestone further admits that Acushnet *timely* produced recipe change notices in response to interrogatories *requesting core formulation information. Id.* This, by itself, should have negated any assumption that the guidelines could be used in isolation. Yet, despite this, neither of Bridgestone's experts considered any change notices in their reports, even though acknowledging the very existence of the notices.

### III. BRIDGESTONE'S EXPERTS' RELIANCE ON MR. DALTON'S DEPOSITION TESTIMONY WAS A PRETEXT FOR USING THE RECIPE IN THE GUIDELINES

Although Bridgestone now attempts to bring up new reasons for why Dr. Coughlin ignored recipe changes, the only basis that Dr. Coughlin provided *in his expert report* is that one of Acushnet's witnesses, Mr. Jeffrey Dalton, represented that any change to core recipe listed in the guidelines would have been for "issues … related to manufacturability." (Ex. 1 – 7/20/06 Dalton Tr. 136).[1] How this statement can be construed to mean that change notices can be ignored is mystifying.[2]

---

[1] Mr. Cadorniga also based his decision to ignore recipe changes on Mr. Dalton's supposed testimony. But unlike Dr. Coughlin, Mr. Cadorniga adds that he also came to his conclusion to ignore change notices "based on his more than 30 years of experience." (Ex. 2 – 1/16/07 Cadorniga Rep., p. 10). This statement is puzzling, as Mr. Cadorniga's experience is irrelevant to whether Acushnet used a recipe contained in a guideline.

[2] Dr. Coughlin also stated that he relied on Mr. Dalton's testimony that the guidelines were "the best place to look for specifications for a product." As discussed elsewhere, the guidelines contain a multitude of *specifications*, including those related to the type of cover, the size of the ball, the target compression, the blended specific gravity, the type of extrusion die, the extrusion conditions and numerous other items related to the method of constructing the golf ball. Mr. Dalton testified accurately that the best place to determine such specifications would be the manufacturing guidelines. This had nothing to do, however, with the core recipe in the guidelines. (*See* D.I. 482, p. 3; D.I. 410, p. 5-6).

2

In any event, Dr. Coughlin's and Mr. Cadorniga's reliance on this testimony is plainly a pretext for their decision to rely on the recipe in the guidelines without any factual basis for doing so. Any reliable infringement analysis would have had to consider the core recipe formula change notices, regardless of how Mr. Dalton testified.

### IV. BRIDGESTONE'S "NEW" JUSTIFICATIONS FOR ITS EXPERTS' FAILURES ARE UNAVAILING

The fact that Bridgestone attempts to support its experts' decision to ignore recipe changes based on misrepresented excerpts from Mr. Dalton's deposition testimony is strikingly inconsistent with its admission, in a different brief, that Mr. Dalton told them that change notices must be considered. In a recent brief, Bridgestone stated: "Mr. Dalton testified (as a 30(b)(6) designee) in *July 2006* that, to determine core formulations, the 'manufacturing guidelines manual must be reviewed *in light of change notices, including recipe changes*.'" (D.I. 305, at 12). Nevertheless, Bridgestone still argues here that Mr. Dalton's testimony supports Bridgestone's experts' decision to ignore recipe changes. Bridgestone's position makes no sense. How can they acknowledge on the one hand that Mr. Dalton told them to look at recipe change data and on the other hand say that he did not tell them that?

Bridgestone further argues now that its experts did not review change notices because it was too difficult. (D.I. 494, p. 5). This argument is after-the-fact attorney justification, for it was not contained within either Dr. Coughlin or Mr. Cadorniga's expert reports. Moreover, the fact that reviewing the recipe change notices is difficult or is time consuming is not a proper basis for deciding to ignore them altogether.

### V. BRIDGESTONE HAD ACCESS TO RECIPE CHANGE DATA AND MESABI DATA DURING FACT DISCOVERY

Bridgestone argues that its experts could not have used recipe change data, because Acushnet did not timely produce it to them. (D.I. 494, p. 2). This is not true. Acushnet provided boxes of recipe change and change notice data to Bridgestone as far

3

back *as 2005*. (*See, e.g.*, AB 13145 – 15262 and AB 15636 – 16036). Still, neither of Bridgestone's experts considered and factored into their opinions any of these changes.

Bridgestone's further argument that Acushnet did not tell Bridgestone that it intended to rely, in part, on factory-floor Mesabi data until expert reports is irrelevant. Acushnet produced all relevant information from which the core formulations could be determined. This included access to its Mesabi data. It is undisputed that Acushnet offered Bridgestone the opportunity to inspect the Mesabi data by coming to Acushnet in early September of 2006 and several additional times thereafter. (Ex. 3 – Seal Decl. ¶ 4-5). The fact that Bridgestone chose to ignore the recipe changes and passed over opportunities to inspect the Mesabi system is not Acushnet's fault. Bridgestone and its experts strategically ignored this information, since these facts negate infringement. This is borne out by Bridgestone's statement that it intends to rely on the guidelines at trial, even if all of the Mesabi data is allowed in the case. (D.I. 494, p. 6).

## VI. BRIDGESTONE'S EXPERTS' UNSUPPORTED ASSUMPTIONS ABOUT THE PURITY OF ZDA AND ZN-PCTP ALSO RENDERS THEIR OPINIONS UNRELIABLE



Still, Bridgestone and its experts persist with their untested and otherwise unsubstantiated assumptions about the purity level based on several dead ends.

First, contrary to Bridgestone's argument, the guidelines do not state the purity of the ZDA. ███████████████████████████████████.

4



Mr. Bissonnette, however, was *not* Acushnet's 30(b)(6) witness on core formulations. Rather, he was Acushnet's 30(b)(6) witness on the prosecution history of the '705 patent. (Ex. 6 – 6/6/06 Bissonnette Tr. 5:18-6:17; Ex. 7 – Notice of Rule 30(b)(6) Deposition). Acushnet's actual 30(b)(6) witness on core formulations, Mr. Rastko Gajic, testified that ▮▮▮▮▮▮▮▮▮▮▮▮▮. (Ex. 12 – 3/1/07 Gajic Tr. 237:16-238:9).

▮▮▮▮▮▮▮▮▮▮▮▮▮ (Ex. 8 – 1/31/07 Sartomer Ltr; Ex. 4 – 5/10/07 Ogle Declaration; Ex. 9 – 9/15/06 Voorheis Tr. 297:17-298:2; Ex. 10 – Dannier Certificates of Analysis; Ex. 11 – e-China Certificates of Analysis). Having proffered opinions on whether Acushnet infringes the '961 and '652 patents that are irreconcilable with the undisputed facts, their opinions in this regard cannot pass *Daubert*.

Acushnet respectfully requests the Court to preclude Mr. Cadorniga and Dr. Coughlin from testifying regarding the infringement of the '652 and '961 patents.

                                              POTTER ANDERSON & CORROON LLP

| | |
|---|---|
| OF COUNSEL:<br>Alan M. Grimaldi<br>Joseph P. Lavelle<br>Kenneth W. Donnelly<br>HOWREY LLP<br>1299 Pennsylvania Ave., N.W.<br>Washington, DC 20004<br>Telephone: (202) 783-0800<br><br>Dated: May 18, 2007<br>Public Version Dated: May 25, 2007<br>797964 / 28946 | By: /s/ *Richard L. Horwitz*<br>     Richard L. Horwitz (#2246)<br>     David E. Moore (#3983)<br>     Hercules Plaza, 6th Floor<br>     1313 N. Market Street<br>     P.O. Box 951<br>     Wilmington, DE 19899-0951<br>     (302) 984-6000<br>     rhorwitz@potteranderson.com<br>     dmoore@potteranderson.com<br><br>*Attorneys For Defendant / Counterclaim Plaintiff / Acushnet Company* |

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

**CERTIFICATE OF SERVICE**

I, Richard L. Horwitz, hereby certify that on May 25, 2007, the attached document was hand delivered to the following persons and was electronically filed with the Clerk of the Court using CM/ECF which will send notification to the registered attorney(s) of record that the document has been filed and is available for viewing and downloading:

Jack B. Blumenfeld
Maryellen Noreika
Leslie A. Polizoti
Morris, Nichols, Arsht & Tunnell
1201 N. Market Street
Wilmington, DE  19801

I hereby certify that on May 25, 2007, I have Electronically Mailed the documents to the following:

Robert M. Masters
Paul, Hastings, Janofsky & Walker LLP
875 15th Street, N.W.
Washington, D.C.  20005
RobMasters@paulhastings.com

/s/ Richard L. Horwitz
Richard L. Horwitz
David E. Moore
Potter Anderson & Corroon LLP
Hercules Plaza – Sixth Floor
1313 North Market Street
P.O. Box 951
Wilmington, DE  19899-0951
(302) 984-6000
rhorwitz@potteranderson.com
dmoore@potteranderson.com

680012 / 28946