IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

BRIDGESTONE SPORTS CO., LTD., and :
BRIDGESTONE GOLF, INC., :
: 
: 
Plaintiffs, : C.A. No. 05-132 (JJF)
v. :
:
ACUSHNET COMPANY, :
:
Defendant. :

## REPORT AND RECOMMENDATION OF SPECIAL MASTER

June 1, 2007

There are three categories of documents in this motion to compel. The first has to do with the eight of defendants' witnesses who may be called to offer expert testimony in accordance with Federal Rules of Evidence 702, 703 and 705. The second has to do with defendants' expert Mr. William Morgan, an employee of defendant. The third has to do with Dr. David L. Felker, an outside independent expert. The motions decided last week on May 24, 2007 were not motions to compel documents. They were motions to impose sanctions, to preclude evidence, and to withdraw admissions. They all sought, to a certain extent, negative results concerning evidence either to block, stop, or reverse discovery results that had been developed. The instant motion is positive in that it seeks the production of previously undisclosed documents. After consideration of the plaintiff's motion to compel

and the defendant's brief in opposition thereto, followed by plaintiff's reply to that opposition, the Special Master rules as follows.

### Dr. David L. Felker And The October 2000 Testing And Opinion Letter

Plaintiff here seeks documents that have been withheld based upon the exercise of privilege by the defendant to a certain opinion of counsel letter dated October 6, 2000. The plaintiff's previous motion for sanctions decided May 24, 2007 addresses the letter and the Special Master ruled that Dr. Felker's opinion testimony concerning the outcome of the 2000 testing would be allowed and plaintiff would be permitted to cross examine Dr. Felker about that opinion letter. Defendant stated at time that Dr. Felker read the opinion when it was provided to him in February 2007 regarding the EP '043 testing, but it did not change his opinion respecting plaintiff's '707 Patent.

Plaintiff cites at Exhibit K of its motion some 44 entries on defendant's privilege log that plaintiff believes are documents withheld based upon the exercise of privilege regarding the October 2000 opinion of counsel. Defendant's view is that Dr. Felker did not consider all of the documents plaintiff seeks, and therefore all of them are not discloseable. Plaintiff's position is that it is not making its claim because these are documents that Dr. Felker may have "considered" in regard to his opinion but makes its claim on the fundamental ground that when defendants handed over the opinion of counsel letter on March 2, 2007, it waived privilege to any documents related to that 2000 opinion of counsel letter.

2

The Special Master concludes that the plaintiff is correct and that those documents identified as Exhibit K to plaintiff's motion to compel should be disclosed to plaintiff if they are materials withheld based upon privilege of the October 2000 opinion of counsel.

It is important at this late stage of the proceedings that defendants give special attention to its review of the documents identified on Exhibit K in order to minimize the extent absolutely necessary for the need of an *en camera* review of documents on Exhibit K. If any of the documents in Exhibit K are in any way related to any of the contents of the October 2000 opinion letter, they are required to be disclosed to the plaintiff by reason of the waiver of privilege found to apply to the October 2000 opinion of counsel letter.

### Eight Defendant Witnesses Who Are Characterized As Witnesses Who May Testify In Regard To Federal Rules Of Evidence 702, 703 or 705

Plaintiff contends that under Rule 26(a)(2)(B) these eight witnesses will be witnesses who will be rendering expert opinions for the defendant, and for that reason, the plaintiff is entitled to be provided with the documents that these witnesses considered in formulating their opinions. Plaintiff adds that this is not limited to whether or not the witnesses relied on any such resources but merely whether they considered them in that process. Defendant argues that these are essentially fact witnesses, not primary expert witnesses who were specially retained for that purpose nor are they employees who regularly render opinions on behalf of the defendant in connection with their work. Defendant argues that the depositions make it plain that these witnesses are essentially fact witnesses and accordingly under 26(a)(2)(B), they are not required to either file a report or make

3

disclosures. Plaintiff counters that these are laboratory employees of the defendant that performed tests on defendant's behalf as far back as the 1990s, up until March 2005, and some more recently, and further who tested defendant's own products with a goal towards establishing either non-infringement or invalidity on behalf of defendant for use by defendant's independent experts, Dr. Felker, Dr. Koenig, and Dr. Lynch. Plaintiff adds that these are not primary factual witnesses who will describe facts concerning activities in a laboratory respecting tests, but are witnesses who will render opinions about those tests that relate to central patent infringement issues.

The plaintiff's and defendant's briefs on this issue evolved around the applicability of the expert report and disclosure requirements of Rule 26(a)(2)(B). They cite case authorities from a variety of jurisdictions including the District of Delaware and the Third Circuit with the plaintiff coming down on the side of the requirement that the disclosure obligation must be fulfilled, and the defendant coming down on the side of the issue suggesting that the plain wording of the rule does not require the eight witnesses to provide a report with disclosures. The authorities relied on by the parties favor their respective view because of the particular facts of the authority or cases relied upon in those cases. None of that authority matches this case except the wording of 26(a)(2)(B) coupled with the absence of evidence from the plaintiff that the 8 witnesses are either specially retained to give expert testimony or employees whose duties regularly involve giving expert testimony. The Special Master sides with the defendant that the rule exempts their employees from submitting a report.

On February 13, 2007, plaintiff objected to the defendant's disclosure of 11 defendant employees as witnesses who may present evidence at the trial under Rule 702, 703, or 705 of the Federal Rules of Evidence. The grounds for that objection were then, as they are now, that no report was provided under 26(a)(2)(B) to which defendant responded that the terms of the Rule do not require these employee witnesses to file a report with disclosures. In a letter response on February 22, 2007, defendant withdrew the names of three of the witnesses as potential expert witnesses, and reserved the right to call them as fact witnesses. (See plaintiff's Exhibit B to its motion). In response to plaintiff's earlier objection that there was no information to explain the substance of the witnesses' intended testimony, it asked that defendant identify substantive areas in which plaintiff could expect the employees to offer testimony. Defendant responded that while the federal rule (meaning 26(a)(2)(B) I presume) did not require that, in the spirit of cooperation, it would identify what it characterized as a "non-exhaustive list of substantive areas the witnesses may present as evidence at trial under 702, 703, or 705 of the Federal Rules of Evidence. This list followed:

- Jeff Dalton – testing relied upon by Dr. Felker and Dr. Koenig and knowledge of one of ordinary skill in the art;

- Steve Aoyama – testing relied upon by Dr. Lynch and knowledge of one of ordinary skill in the art;

- Jay Williams – testing relied upon by Dr. Felker;

- Traci Olson – testing relied upon by Dr. Felker

5

- Ken Welchman – information relied upon by Dr. Felker and knowledge of one of ordinary skill in the art;

- Rastko Gajic – information relied upon by Dr. Felker and knowledge of one of ordinary skill in the art;

- Pat Elliott – information relied upon by Dr. Felker and knowledge of one of ordinary skill in the art; and

- David Bulpett – testing relied upon by Dr. Felker and Dr. Koenig and knowledge of one of ordinary skill in the art.

The defendant's letter of February 22, 2007 states that as to all eight witnesses, they will presumably speak to either testing or information furnished to plaintiff's expert witnesses, Dr. Felker, and Dr. Koenig, or Dr. Lynch. While defendant is not required to file reports with disclosures for these witnesses under 26(a)(2)(B), disclosure is required in respect to Drs. Felker, Koenig, and Lynch regarding any information that they considered in formulating their opinions, which includes information relied upon or not relied upon. Here, that would include the testing results provided to by Felker, Koenig and Lynch as respects witnesses Dalton, Aoyama, Williams, Olson, and Bulpett; and information provided to by Dr. Felker from witnesses, Welchman, Gagic and Elliott.

Defendant shall give to plaintiff within ten days of the date of the Report and Recommendation copies of all reports of testing, and other information provided at any time to plaintiff's experts Felker, Koenig and Lynch for their consideration, as experts for defendant regarding the issues in this case.

## Declaration of William E. Morgan – Senior Vice President of Research and Development of Golf Balls at Acushnet Company

Defendant has identified William E. Morgan under 26(b)(2)(A) as a witness who is expected to offer opinions at the trial. Defendant served a declaration of Mr. Morgan that is a 23-page chronicle of Mr. Morgan's background in the golf industry for 25 years and 20 years experience with the defendant primarily associated with research and development. The declaration focuses on the development of golf ball technology from the 1960s (see Exhibit M, Paragraphs 10 through 27 of the Declaration) through 1996. At about this point in the Declaration beginning with Paragraph 35, Mr. Morgan focused upon precise golf ball technology and at Paragraph 45, commenced its discussion of the specific development of the Pro V1 golf ball in 1995 and 1996. The Declaration is laced with direct and indirect criticisms of positions taken in this case by Bridgestone on certain products. At Paragraph 60-62, he sets forth an example of his view of what Acushnet does to avoid infringing patents of its competitors, and in particular to Bridgestone's Patent No. 5,252,652 ('652). He goes into some detail of the technology associated with making the golf ball core. In Paragraph 63-78, he criticizes certain of the plaintiff's experts and their conclusions about a variety of market leadership positions purportedly held by plaintiff. He concludes with his view that Acushnet has had good results over the years in developing golf ball technology and denies that they were slow to react to developments, but were very well prepared and executed better than their competitors to produce the best golf ball on the market. The Special Master cannot tell from this lengthy declaration exactly what opinions will be elicited

from Mr. Morgan at the trial. His deposition was taken and presumably plaintiff has some inkling of what that will be, but that has not been conveyed to the Special Master. In accordance with Mr. Morgan's declaration, he has a degree from the University of Dallas in 1977 with a BS in Biochemistry and he stated that he is an inventor of over 50 U.S. patents, all related to golf ball technology. He is also shown as being named as an inventor on over 20 additional U.S. patent applications published and pending, presumably in the golf field. It appears initially that Mr. Morgan is qualified to speak about his management experiences at Acushnet related to research and development and to his knowledge of the history of the development of golf ball technology over the years as he was a prominent participant in the progress of that industry. Some of this information will likely be determined by the trial judge to be relevant to a jury's understanding of the industry with particular focus on the history of golf ball technology and how it has evolved over time up until the pertinent time associated with the issues in this case.

Plaintiff emphasizes that portion of his declaration that addresses plaintiff's patented golf ball 5, 252, 652 ('652). Plaintiff cites in its reply brief Paragraph 60 of the Morgan Declaration that speaks about the process of avoiding infringing patents of competitors by designing around crucial elements of those patented products. The declaration goes on to speak about the chemical components and combinations such as PCTP or a zinc salt of PCTP when making a golf ball core. In Paragraph 61, it goes on to state, for example, that "we use much more than 2 parts of the sulfur compound in the Pro V1... He adds other

8

steps that were done in his opinion to avoid infringement of '652. This subject was raised at his deposition, and he was asked whether he had reviewed any documents that indicate parts per 100 of PCTP in defendant's golf balls, and he said no and acknowledged that it was just his general understanding as to the ingredients at issue in golf balls that were the subject of the litigation. He also testified as to having seen some opinions of counsel but could not be specific as to any one in particular. (See Exhibit I to Plaintiff's Reply). Mr. Morgan's declaration is considered by the Special Master to be a report of a proposed expert witness under 26(a)(2)(B).

The Special Master concludes that the extent to which defendant expects Mr. Morgan to be called upon to offer opinion respecting plaintiffs '652 patent, it will provide to the plaintiff within seven (7) days of the date of this Report and Recommendation all documents and communication that were considered by Mr. Morgan concerning patent '652.

This Special Master's Report and Recommendation will become a final order of the court unless objection is timely taken pursuant to Federal Rule of Civil Procedure 53(g).

LOUIS C. BECHTLE,
Special Master

Date: June 1, 2007